**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., *et al.*,[1] | Case Nos. 26-16388 (CMG) |
| Debtors. | (Joint Administration Requested) |

**SIMAD DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN INTERIM ORDER
(I) AUTHORIZING THE SIMAD DEBTORS' IMMEDIATE USE OF CASH
COLLATERAL AND EXISTING BANK ACCOUNTS FOR PURPOSES OF
SATISFYING PREPETITION GROSS SALARIES, PAYROLL TAXES, AND
OTHER CRITICAL EXPENSES, (II) AUTHORIZING THE SIMAD DEBTORS
TO SATISFY AND DIRECT PAYROLL BANKS TO HONOR CERTAIN
PREPETITION GROSS SALARIES AND PAYROLL TAXES OF THEIR
EMPLOYEES, (III) AUTHORIZING THE SIMAD DEBTORS' CONTINUED
USE OF THEIR CASH MANAGEMENT SYSTEM, HONOR CERTAIN**

---

[1]    A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD.  The location of SIMAD Debtor SIMAD Holding Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

**PREPETITION OBLIGATIONS RELATED THERETO, AND CONTINUE
ADDITIONAL TRANSACTIONS, AND
(IV) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTINE M. GRAVELLE
CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT:

The above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors"),[2] by and through their proposed undersigned counsel, respectfully state as follows in support of this motion (the "Motion"):

**Relief Requested**

1.     Through this Motion, the SIMAD Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Emergency Interim Order"): (a) authorizing the SIMAD Debtors' immediate use of cash collateral and their existing bank accounts for purposes of satisfying prepetition gross salaries, payroll taxes and other emergent expenses; (b) authorizing the SIMAD Debtors to direct their payroll banks to honor certain prepetition gross salaries, payroll taxes and other related expenses of their employees; and (c) authorizing, but not directing, the SIMAD Debtors to (i) continue using their cash management system, (ii) honor certain prepetition obligations related thereto, and (iii) continue additional transactions and funding consistent with the SIMAD Debtors' historical practices funded through a centralized account under the control of the SIMAD Debtors' independent Chief Restructuring Officer, Asaf Ravid (the "SIMAD CRO"); and (d) granting related relief.  The SIMAD Debtors are imminently seeking the foregoing relief on an interim basis.

2.     The SIMAD Debtors own and operate 30 summer camps around the country that primarily operate from June to August.  Each of the camps are held indirectly by SIMAD Holdings

---

[2]     The relief sought in the Motion only relates to the SIMAD Debtors identified on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD.

Ltd. ("SIMAD"), a BVI company.  Recognizing the significant liabilities that faced the SIMAD Debtors leading up to these chapter 11 cases, the SIMAD Debtors appointed the SIMAD CRO, who—together with the existing camp directors—now has full operational control over the SIMAD Debtors and their businesses.  As described below, the SIMAD Debtors sought relief through these filings to invoke the automatic stay and stave off the potential exercise of remedies by merchant cash advance and short-term funders and lenders, potentially depriving the Debtors of access to their cash.

3.      The SIMAD Debtors now need to access cash collateral to pay critical employee and related expenses and continue using their bank accounts.  Such relief is essential so that the SIMAD Debtors' summer camps are assured of their ability to open at the end of June and operate without interruption.

4.      Accordingly, the SIMAD Debtors seek on an emergency basis the limited relief set forth herein.  The SIMAD Debtors intend to return to the Court for more fulsome relief in the coming days.

### Jurisdiction and Venue

5.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.).  The SIMAD Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3

7.     The bases for the relief requested herein are sections 105(a), 363, 503, 507, and 541(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 9013-1, and 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

**Background**

**A.  The SIMAD Debtors' Business[3]**

8.     Since 2006, the SIMAD Debtors have largely operated as summer camps.[4]  The SIMAD Debtors employ thousands of employees over their various properties, including directors, counselors, educational staff, medical staff, kitchen staff, and maintenance teams.  The SIMAD Debtors recruit high-quality staff who have ample experience in fields of training, pedagogy, safety, management and the like.  In addition to employing regionally located camp staff, the SIMAD Debtors also hire international staff members for the summers who reside in the United States on a work visa.

9.     Within the summer camp framework of the SIMAD Debtors' business operations, the SIMAD Debtors purchase, manage and operate summer camps for children and teenagers (aged 7 to 16).  As of the Petition Date, the SIMAD Debtors operate 30 summer camps which are primarily active during the summer months (June through August).[5]  Eight of these camps are day camps and the remaining are sleepaway camps.  The SIMAD Debtors' summer camps are located

---

[3]  Some of the information in this section was obtained by publicly available information concerning the SIMAD Debtors.

[4]  Certain affiliates of the SIMAD Debtors own and operate multifamily properties, offices, hotels, and retail space. Those affiliates also filed emergency chapter 11 petitions and will seek to be separately administered from the SIMAD Debtors' chapter 11 cases.

[5]  One of those camps, Willow Lake Day Camp, is not a chapter 11 debtor.

predominantly throughout the eastern United States region, including in New Jersey, New York, Maine, Pennsylvania, among others, in which approximately 20,500 children enroll each year. As much as 5% of the campers are from outside of the United States.

10.    The SIMAD Debtors' camps capture a large and diversified audience through the various types of camp-options offered, such as camps focused on sports, academics, arts, technology, and religion. Each camp has its own unique character and internal culture. The camps are separately branded and operate independently, including through their own management team, individualized staff, distinct accounting departments, and dedicated operational infrastructure. An average summer camp operates on dozens to hundreds of acres of land which include residential facilities (i.e., cabins or rooms), a central dining hall, sports facilities (basketball, soccer, and tennis courts, swimming pools), arts and crafts areas, theatre, natural spaces, hiking trails, and a clinic. The camp's daily activities are typically structured by pre-planned, full day agendas and include wake-up calls, breakfast, morning activities, lunch breaks, afternoon activities, dinner, and evening social activities. The camps operate full residential programs under the supervision of a professional staff, with each group of campers assigned to a dedicated counselor. All in all, the camps provide a comprehensive package where each camper is covered for their accommodation, meals, classes, activities, basic medical services, and sometimes organized transportation from central pick-up points. These are services that the SIMAD Debtors arrange for well in advance of the summer to make sure the appropriate vendors and accommodations are ready for the season.

11.    The camps' main source of income is derived from payments of the registration fees made by parents for their children's participation in the summer camps. Deposits for any given summer are due the year prior. The SIMAD Debtors' expenses for one summer season alone cost tens of millions. Registration and payments are made in advance of the summer season.

5

Another portion of income, albeit less material, is generated through the sale of food and clothing on the campgrounds, as well as from the SIMAD Debtors leasing the space during the year to private events or groups and educational institutions.

12.     Each camp maintains and operates its own bank account for operating expenses. Effective as of the Petition Date, the SIMAD Debtors' controlling shareholders, David Shabsels and Michael Shabsels, ceded control over the SIMAD Debtors' bank accounts to the SIMAD CRO. The CRO is in the process of assessing the finances maintained in each of the bank accounts and familiarizing himself with the SIMAD Debtors' operational expenses.  A list of the SIMAD Debtors' bank accounts is attached as **Exhibit B** and those bank accounts are used to fund all of the camp related expenses.

### B.  The Bankruptcy Filings

13.     On June 4, and June 5, 2026 (collectively, the "Petition Date"), each of the SIMAD Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The SIMAD Debtors have simultaneously filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The SIMAD Debtors are operating their business and managing their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

14.     These chapter 11 cases were precipitated by the potential catastrophic impact on the SIMAD Debtors' ability to operate resulting from the substantial purported duplicate debt obligations to which the SIMAD Debtors were made a party.  Among other things, as of May 31, 2026, the SIMAD Debtors were in default on payments owed to Israeli Bondholders in connection

6

with obligations due under certain Debentures (Series A) (defined below).  Further, in the days leading up to the filings, the SIMAD Debtors' and their affiliates' estates were at risk of that certain merchant cash advance and short-term funders and lenders (the "MCA Lenders") alleged to be owed in excess of $100,000,000 may exercise remedies upon default that may have left the SIMAD Debtors without access to cash and accounts receivable.[6]  In efforts to mitigate that risk within the weeks leading up to opening day for the various summer camps, the SIMAD Debtors appointed the SIMAD CRO, filed these chapter 11 cases to invoke the automatic stay and allow the SIMAD CRO to help guide the process through the chapter 11 proceedings.

15.     The Debtor SIMAD Holdings Ltd. ("SIMAD") also holds certain certificates of indebtedness (nonconvertible) which are being offered to the public in Israel and are registered for trading on the Tel Aviv Stock Exchange, then, for as long as securities of the Company namely debentures that are publicly held (the "Debentures (Series A)").  The Debentures (Series A) with a par value of NIS 620,000,000 (or approximately $211,600,000) bear a fixed annual interest rate of 7% and are not linked (principal and interest) to any index.  In order to secure the SIMAD Debtors' obligations towards certain Israeli Bondholders with respect to the Debentures (Series A), SIMAD pledged certain collateral in favor of the Bondholders and the Trustees for the Bondholders.[7]  The principal payments of the Debentures (Series A) were to be made annually on November 30 each year from 2026 through 2030.  The interest of the Debentures (Series A) was to be paid semi-annually on May 31 and November 30 from 2026 through 2030.  The SIMAD

---

[6]     Based on information available, the SIMAD Debtors do not believe that the MCA Lenders have a perfected interest in the cash in the SIMAD Debtors' bank accounts through deposit account control agreements.

[7]     The Trustees have asserted a lien on all of the SIMAD Debtors' assets, including cash.  The SIMAD Debtors are continuing to review the liens and security interests held by the Trustees for the Bondholders, and all rights of the parties are reserved.

Debtors defaulted in making the first interest payment of the Debentures (Series A) due on May 31, 2026.

**Basis for Relief Requested**

16.     By this Motion, the SIMAD Debtors seek emergent authority on an interim basis to use their cash, including amounts that may constitute cash collateral, to satisfy prepetition gross salaries, payroll taxes and other emergent expenses and to direct their banks to honor those payments.  Additionally, the SIMAD Debtors seek an interim order authorizing, but not directing, the SIMAD Debtors to (i) continue using their cash management system, including their existing bank accounts, (ii) honor certain prepetition obligations related thereto, and (iii) continue additional transactions and funding consistent with the SIMAD Debtors' historical practices funded through a centralized account under the control of the SIMAD CRO.

17.     To the extent the SIMAD Debtors' cash as of the Petition Date is cash collateral, each Debtor, as a chapter 11 debtor-in-possession has the statutory right to use cash collateral to operate its business.[8]  The standards governing a debtor's use of cash collateral are set forth in section 363(c)(2) of the Bankruptcy Code, which provides:

> The trustee [or debtor-in-possession] may not use, sell or lease cash collateral under paragraph 1 of this subsection, unless –
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provision of this section.

11 U.S.C. § 363(c)(2).

---

[8]     The SIMAD Debtors and their professionals are examining whether any of the cash in the SIMAD Debtors' bank accounts as of the Petition Date was subject to a valid lien and security interest.  Subject to further review and investigation, the SIMAD Debtors are not aware that any lender has a perfected lien or security interest in the SIMAD Debtors' cash as of the Petition Date.

18.     Further, bankruptcy courts regularly treat requests for authority to continue using existing cash management systems, including the SIMAD Debtors' existing bank accounts, as a relatively "simple matter." *In re Baldwin United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). To avoid a material disruption to their business operations and to minimize administrative expense to their estates, the SIMAD Debtors request authority, on an emergency basis, and subject to further application and order of the Court, to continue using their existing bank accounts. Requiring the SIMAD Debtors at this crucial period of time to change their accounts and deposits and payment procedures abruptly would result in harm to the SIMAD Debtors, their estates, and their creditors because it would leave the SIMAD Debtors without access to their cash as they navigate the opening of camp and onboarding campers and staff.

19.     Moreover, as it relates to the payment of prepetition wages, courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

20.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under

section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See In re Just for Feet*, 242 B.R. at 825–26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

21. The SIMAD Debtors' emergency use of their cash, including their cash collateral, and their existing bank accounts, is crucial to avoid interruption of the SIMAD Debtors' operations caused by lack of funds. Children are scheduled to start at the summer camps in a matter of weeks. Families have already paid for their children to attend the SIMAD Debtors' camps for this summer. The SIMAD Debtors have taken substantial steps towards preparing the necessary accompanying services and accommodations for the 2026 camp season, including having arranged for transportation services, meal preparation, special enrichment activities, and have hired and fully

10

trained their seasonal staff (including the international staff members who are in the United States on visas and must comply with strict legal obligations regarding their employment, housing and overall safety). Unless the SIMAD Debtors are authorized to use their cash, including cash collateral, and existing bank accounts, the SIMAD Debtors will be unable at this critical juncture to satisfy prepetition gross salaries, payroll taxes and other emergent and related expenses, which are critical to getting the camps open and continue the SIMAD Debtors' business operations. The SIMAD Debtors submit that application of the "necessity of payment" doctrine here establishes that the SIMAD Debtors should be authorized to honor payroll. If the SIMAD Debtors are not authorized to fulfill their payroll obligations, the SIMAD Debtors' relationship with their employees will be adversely affected and the employees' morale, dedication, confidence and cooperation might be irreparably compromised. The camp staff's support for the SIMAD Debtors' reorganization efforts is critical and cannot be jeopardized. Equally important, absent the entry of this Emergency Interim Order granting the relief requested in the Motion, the employees may suffer significant financial hardship.

22. The SIMAD Debtors further submit that parties in interest will not be harmed by their maintenance of their current cash management system and access to the cash in their existing bank accounts to meet their obligations immediately coming due and needed to get the camps open and operational. Pending a further hearing, the SIMAD CRO intends to only pay amounts from these bank accounts needed to ensure the camps can timely open and become operational to allow the SIMAD Debtors to maintain ordinary course operations.

### Request of Waiver of Stay

23. To the extent that the relief sought in this Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the SIMAD Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the SIMAD Debtors request

that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the SIMAD Debtors to be able to continue to operate their business and preserve the value of their estates.

## Reservation of Rights

24.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the SIMAD Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the SIMAD Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is a secured claim, an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the SIMAD Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the SIMAD Debtors' estates; (g) a waiver or limitation of the SIMAD Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the SIMAD Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k)

12

otherwise affecting the SIMAD Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the SIMAD Debtors' rights to subsequently dispute such claim.

## No Prior Request

25.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

## Notice

26.    The SIMAD Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of New Jersey; (b) the MCA Lenders (via email), if known; (c) counsel to the Mishmeret Trust Company, (the "Indenture Trustee"), (d) the SIMAD Debtors' existing banking institutions; (e) the SIMAD Debtors' payroll processor; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The SIMAD Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank.*]

13

**WHEREFORE**, the SIMAD Debtors request that the Court enter the Emergency Interim Order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: June 7, 2026

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Felice R. Yudkin
David M. Bass
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com
            dbass@coleschotz.com
            dharris@coleschotz.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

**Exhibit A**

**Proposed Emergency Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>　　　Debtors. | Chapter 11<br><br>Case Nos. 26-16388 (CMG)<br><br>(Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING THE SIMAD DEBTORS' IMMEDIATE USE OF CASH COLLATERAL AND EXISTING BANK ACCOUNTS FOR PURPOSES OF SATISFYING PREPETITION GROSS SALARIES, PAYROLL TAXES, AND OTHER CRITICAL EXPENSES, (II) AUTHORIZING THE SIMAD DEBTORS TO SATISFY AND DIRECT PAYROLL BANKS TO HONOR CERTAIN PREPETITION GROSS SALARIES AND PAYROLL TAXES OF THEIR EMPLOYEES, (III) AUTHORIZING THE SIMAD DEBTORS' CONTINUED USE OF THEIR CASH MANAGEMENT SYSTEM, HONOR CERTAIN**

---

[1]    A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD.  The location of Debtor SIMAD Holding Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

**PREPETITION OBLIGATIONS RELATED THERETO, AND CONTINUE
ADDITIONAL TRANSACTIONS, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through seven (7) is

**ORDERED**.

(Page | 2)

Debtors:                SIMAD HOLDINGS LTD., *et al.*
Case No.                26-16388 (CMG)
Caption of Order:       Interim Order (I) Authorizing the SIMAD Debtors' Immediate Use of Cash Collateral and Existing Bank Accounts For Purposes of Satisfying Prepetition Gross Salaries, Payroll Taxes, and Other Critical Expenses, (II) Authorizing the SIMAD Debtors to Satisfy and Direct Payroll Banks to Honor Certain Prepetition Gross Salaries and Payroll Taxes of their Employees, (III) Authorizing the SIMAD Debtors' Continued Use of Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Continue Additional Transactions, and (IV) Granting Related Relief

Upon the *SIMAD Debtors' Emergency Motion for Entry of An Interim Order (I) Authorizing the SIMAD Debtors' Immediate Use of Cash Collateral and Existing Bank Accounts For Purposes of Satisfying Prepetition Gross Salaries, Payroll Taxes, and Other Critical Expenses, (II) Authorizing the Debtors to Satisfy and Direct Payroll Banks to Honor Certain Prepetition Gross Salaries and Payroll Taxes of their Employees, (III) Authorizing the SIMAD Debtors' Continued Use of Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Continue Additional Transactions, and (IV) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors"), for entry of an emergency interim order (this "Emergency Interim Order") (a) authorizing the SIMAD Debtors' emergency use of cash, including cash collateral, and their existing bank accounts for purposes of satisfying prepetition gross salaries, payroll taxes and other emergent expenses, and granting adequate protection as necessary; (b) authorizing the SIMAD Debtors to direct their payroll banks to honor certain prepetition gross salaries, payroll taxes and other related expenses of their employees; and (c) authorizing, but not directing, the SIMAD Debtors to (i) continue using their cash management system, (ii) honor certain prepetition obligations related thereto, and (iii) continue additional transactions and funding consistent with

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 3)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Interim Order (I) Authorizing the SIMAD Debtors' Immediate Use of Cash Collateral and Existing Bank Accounts For Purposes of Satisfying Prepetition Gross Salaries, Payroll Taxes, and Other Critical Expenses, (II) Authorizing the SIMAD Debtors to Satisfy and Direct Payroll Banks to Honor Certain Prepetition Gross Salaries and Payroll Taxes of their Employees, (III) Authorizing the SIMAD Debtors' Continued Use of Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Continue Additional Transactions, and (IV) Granting Related Relief |

the SIMAD Debtors' historical practices funded through a centralized account under the control of the SIMAD CRO; and (d) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the SIMAD Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on an interim basis as set forth herein.

2. The SIMAD Debtors are authorized to use their cash, including cash collateral, and existing bank accounts for the limited purpose of satisfying prepetition gross salaries, payroll taxes and other emergent expenses necessary to open the camps to become operational, relating to the

(Page | 4)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Interim Order (I) Authorizing the SIMAD Debtors' Immediate Use of Cash Collateral and Existing Bank Accounts For Purposes of Satisfying Prepetition Gross Salaries, Payroll Taxes, and Other Critical Expenses, (II) Authorizing the SIMAD Debtors to Satisfy and Direct Payroll Banks to Honor Certain Prepetition Gross Salaries and Payroll Taxes of their Employees, (III) Authorizing the SIMAD Debtors' Continued Use of Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Continue Additional Transactions, and (IV) Granting Related Relief |

period from the Petition Date, through and including June 15, 2026, in accordance with the budget attached hereto as **Schedule 1**.

3.      The SIMAD Debtors existing bank accounts are hereby authorized and directed to receive, process, honor and pay all checks, drafts, and automatic clearing house and wire transfers drawn on the SIMAD Debtors' bank accounts to the extent authorized herein or directed by the SIMAD Debtors, whether presented, drawn or issued before or after the commencement of the bankruptcy case for payment by the holder thereof, provided that sufficient funds, whether deposited prior to or subsequent to the commencement of the bankruptcy case, are in, or otherwise are available pursuant to the SIMAD Debtors' cash management system to fund, the relevant bank accounts to cover and permit payment thereof.

4.      Any objections to the entry of this Emergency Interim Order, to the extent not withdrawn or settled, are overruled.

5.      All parties' rights and remedies, including the Indenture Trustee and the MCA Lenders, are reserved.  Any objection to the Court's entry of further interim or final relief may be preserved for a further hearing on the relief sought in this Motion or any other or additional relief sought by the SIMAD Debtors at a later date.  Notwithstanding, upon written notice to all parties on no less than one (1) business days' notice, the SIMAD Debtors may seek an extension of the relief granted in this Emergency Interim Order subject to approval of this Court.

(Page | 5)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Interim Order (I) Authorizing the SIMAD Debtors' Immediate Use of Cash Collateral and Existing Bank Accounts For Purposes of Satisfying Prepetition Gross Salaries, Payroll Taxes, and Other Critical Expenses, (II) Authorizing the SIMAD Debtors to Satisfy and Direct Payroll Banks to Honor Certain Prepetition Gross Salaries and Payroll Taxes of their Employees, (III) Authorizing the SIMAD Debtors' Continued Use of Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Continue Additional Transactions, and (IV) Granting Related Relief |

6.      Pursuant to sections 361 and 363(e) of the Bankruptcy Code, to the extent that the Trustees and Bondholders hold a valid and enforceable security interest in the cash collateral covered by this order, the Trustees and the Bondholders shall be entitled to adequate protection of such interest consistent with sections 363(e) and 361 or other applicable provisions of the Bankruptcy Code. Notwithstanding anything contained in the Motion or herein, all rights of the Trustees, the Bondholders, and any other secured creditors to object to any form of adequate protection and to request adequate protection are reserved.

7.      Notwithstanding the relief granted in this Emergency Interim Order and any actions taken pursuant to such relief, nothing in this Emergency Interim Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the SIMAD Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the SIMAD Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is a secured claim, an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Emergency Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request, approval, or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code (or otherwise affect the SIMAD Debtors' rights under section 365 of the

(Page | 6)
Debtors:          SIMAD HOLDINGS LTD., *et al.*
Case No.          26-16388 (CMG)
Caption of Order: Interim Order (I) Authorizing the SIMAD Debtors' Immediate Use of Cash Collateral and Existing Bank Accounts For Purposes of Satisfying Prepetition Gross Salaries, Payroll Taxes, and Other Critical Expenses, (II) Authorizing the SIMAD Debtors to Satisfy and Direct Payroll Banks to Honor Certain Prepetition Gross Salaries and Payroll Taxes of their Employees, (III) Authorizing the SIMAD Debtors' Continued Use of Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Continue Additional Transactions, and (IV) Granting Related Relief

Bankruptcy Code); (f) an admission by the SIMAD Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the SIMAD Debtors' estates; (g) a waiver or limitation of the SIMAD Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) a concession by the SIMAD Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; or (i) a waiver of the obligation of any party in interest to file a proof of claim. Any payment made pursuant to this Emergency Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the SIMAD Debtors' rights to subsequently dispute such claim.

8.      The SIMAD Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Emergency Interim Order.

9.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized

(Page | 7)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Interim Order (I) Authorizing the SIMAD Debtors' Immediate Use of Cash Collateral and Existing Bank Accounts For Purposes of Satisfying Prepetition Gross Salaries, Payroll Taxes, and Other Critical Expenses, (II) Authorizing the SIMAD Debtors to Satisfy and Direct Payroll Banks to Honor Certain Prepetition Gross Salaries and Payroll Taxes of their Employees, (III) Authorizing the SIMAD Debtors' Continued Use of Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Continue Additional Transactions, and (IV) Granting Related Relief |

to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the SIMAD Debtors' designation of any particular check or electronic payment request as approved by this Emergency Interim Order.

10.     The requirements set forth in Bankruptcy Rule 6003(a) are satisfied by the contents of the Motion or otherwise deemed waived.

11.     The SIMAD Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Emergency Interim Order in accordance with the Motion.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Emergency Interim Order shall be effective and enforceable immediately upon entry hereof.

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

14.     Any party may move for modification of this Emergency Interim Order in accordance with Local Rule 9013-5(e).

15.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Emergency Interim Order.

<u>Schedule 1</u>

Budget

**BUDGET – TO BE FILED BEFORE HEARING**

**Exhibit B**

**SIMAD Debtors' Bank Accounts**

| Camp Name | Banking Institution | Account Number (Last 4) |
|---|---|---|
| Achim Landco LLC | TD Bank, N.A. | -6861 |
| Achim Operatingco LLC | JPMorgan Chase Bank, National Association | -8875 |
| Achim Operatingco LLC | Bank of America | -0061 |
| Achim Operatingco LLC | Bank of America | -3943 |
| BAHS Holdings LLC | TD Bank, N.A. | -6910 |
| BAHS Operating Inc. | TD Bank, N.A. | -2221 |
| BAHS Operating Inc. dba Chen-a-Wanda | First National Bank | -6181 |
| BAHS Operating Inc. dba Chen-a-Wanda | First National Bank | -6261 |
| BAHS Operating Inc. dba Chen-a-Wanda | First National Bank | -7431 |
| Banner Landco LLC | Byline Bank | -3470 |
| Banner Landco LLC | TD Bank, N.A. | -6887 |
| Banner Operatingco LLC | Byline Bank | -5712 |
| BELGRADE LAKES SUMMER CAMPS, LLC | Bank of New Hampshire | -8369 |
| BELGRADE LAKES SUMMER CAMPS, LLC | Bank of America | -6957 |
| Blue Star Operatingco LLC | Home Trust Bank | -7934 |
| Blue Star Operatingco LLC | Ramp Business Account | -3300 |
| Camp Med-O-Lark, Inc. | Bank of America | -0989 |
| Camp Med-O-Lark, Inc. | Bank of New Hampshire | -8419 |
| Chateaugay Campco LLC | Community Bank | -2480 |
| Chateaugay Campco LLC | Community Bank | -5710 |
| Chen-a-Wanda | Bank of America | -9454 |
| Club Getaway Landco, LLC | TD Bank, N.A. | -5342 |
| Club Getaway Operatingco LLC | Union Bank | -8589 |
| Club Getaway Operatingco LLC | Bank of America | -8258 |
| Country Roads Landco LLC | TD Bank, N.A. | -7166 |
| Country Roads Operatingco LLC | Bank of America | -8567 |
| Eagles Landing Day Camp LLC | Bank of America | -9496 |
| Green Lane | TD Bank, N.A. | -2349 |
| Green Lane Landco, LLC | TD Bank, N.A. | -5243 |
| Greenvilleland LLC | Bank of America | -4597 |
| IAFA Operatingco LLC | Bank of New Hampshire | -8351 |
| IAFA Operatingco LLC | Bank of Norway | -6318 |
| IAFA Operatingco LLC | Bank of America | -8850 |
| IAFALANDCO, LLC | TD Bank, N.A. | -6902 |
| Island Lake Campco LLC | Wayne Bank | -3819 |
| Island Lake Campco LLC | TD Bank, N.A. | -6141 |
| Kiwi Operatingco LLC | Beacon Bank | -1610 |
| Lavaland LLC | TD Bank, N.A. | -5227 |
| Lavco LLC | Wayne Bank | -4090 |
| Lavco LLC | Bank of America | -8290 |
| Mainewekeelaco LLC | TD Bank, N.A. | -3602 |
| Mainewekeelaco LLC | TD Bank, N.A. | -8098 |
| Mainewekeelaco LLC | Bank of New Hampshire | -8393 |
| Meadowbrook Landco LLC | TD Bank, N.A. | -1051 |
| Meadowbrook Operatingco LLC | Bank of America | -7621 |
| Meadowbrook Operatingco LLC | Peapack Bank | -2184 |
| Mesorahco LLC | TD Bank, N.A. | -6505 |
| Mesorahco LLC | Wayne Bank | -2231 |
| Mesorahland LLC | TD Bank, N.A. | -5269 |
| Mogenavco LLC | Bank of America | -1225 |
| Mogenavco LLC | Bank of America | -9943 |

| Camp Name | Banking Institution | Account Number (Last 4) |
|---|---|---|
| Mogenavland LLC | TD Bank, N.A. | -5219 |
| Mohawkcampco LLC | TD Bank, N.A. | -2403 |
| Mohawkcampco LLC | Bank of America | -4938 |
| Mohawkcampco LLC | Bank of America | -4941 |
| Mohawkland LLC | Bank of America | -1320 |
| Pine Forest Campco LLC | Wayne Bank | -9406 |
| Pine Forest Campco LLC | TD Bank, N.A. | -5606 |
| Pine Forest Landco LLC | Wayne Bank | -1684 |
| Poland Campco LLC | TD Bank, N.A. | -7139 |
| Poland Campco LLC | Bank of New Hampshire | -8377 |
| Poland Landco LLC | TD Bank, N.A. | -6879 |
| RDM Camps, LLC dba Camp Lokanda | Wayne Bank | -1758 |
| RDM Camps, LLC dba Camp Lokanda | TD Bank, N.A. | -2198 |
| Rolling Hills Operatingco LLC | Bank of America | -9503 |
| Rolling Hills Operatingco LLC | Bank of America | -1158 |
| Shab Holdings LLC dba Camp Echo | TD Bank, N.A. | -6928 |
| Shab Operating Inc | Bank of America | -7179 |
| Shab Operating Inc | Bank of America | -1776 |
| SIMAD Equities LLC | Bank of America | -2813 |
| SplashDown Beach Operatingco LLC | NBT Bank, National Association | -3443 |
| SplashDown Beach Operatingco LLC | NBT Bank, National Association | -6725 |
| Summit Camp LLC | Bank of America | -8287 |
| Summit Camp LLC | Bank of America | -8274 |
| Washington Lake, LLC | TD Bank, N.A. | -5251 |
| Waukeela Landco LLC | TD Bank, N.A. | -6895 |
| Waukeela Operatingco LLC | Bank of New Hampshire | -8385 |
| WM Camps LLC | TD Bank, N.A. | -4980 |
| WM Camps LLC | Bank of New Hampshire | -8401 |