UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**BLANK ROME LLP**
Ira L. Herman, Esquire (*pro hac vice* forthcoming)
Evan J. Zucker, Esquire (NJ Bar No. 11932008)
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
ira.herman@blankrome.com
evan.zucker@blankrome.com

**BLANK ROME LLP**
Jordan L. Williams, Esquire (*pro hac vice* forthcoming)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
(215) 569-5500
jordan.williams@blankrome.com

*Attorneys for Union of Orthodox Jewish Congregations
of America, doing business as each of (i) the Orthodox
Union, (ii) the OU, (iii) NCSY, and (iv) Yachad*

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD.,<br><br>                    Debtor. | Case No.:    26-16388<br><br>Chapter:    11<br><br>Judge:    Hon. Christine M. Gravelle |

**STATEMENT OF THE ORTHODOX UNION IN RESPONSE TO SIMAD
DEBTORS' MOTION FOR USE OF CASH COLLATERAL
AND FOR RELATED RELIEF**

The Union of Orthodox Jewish Congregations of America, doing business as each of (i)

the Orthodox Union, (ii) the OU, (iii) NCSY, and (iv) Yachad (collectively, the "OU"), by and

through their undersigned counsel hereby files this statement (this "Statement") in response to the

above captioned debtors' (the "SIMAD Debtors") *Motion for Entry of Interim and Final Orders*

*(I) Authorizing the SIMAD Debtors to Use Cash Collateral, (II) Granting Adequate Protection to*

*the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic*

*Stay, and (V) Granting Related Relief* [Docket No. 61] (the "<u>Motion</u>"),  and respectfully state as

follows:

<b><u>PRELIMINARY STATEMENT</u></b>

1.      The OU support the SIMAD Debtors' request to use cash collateral to operate their

summer camp businesses in the ordinary course.  Without funding at appropriate levels, the

summer camps operated by a group of those SIMAD Debtors will not be able to open and provide

the high-quality camping experience they have provided in the past, harming thousands of

campers, including special needs campers, and their families.    Nevertheless, the OU has

substantive concerns regarding the relief requested..  Critically, the Initial Budget does not

adequately provide the information needed to understand how the individual summer camps

caught up in these jointly administered, but not substantively consolidated, cases can successfully

operate in the ordinary course.

2.      Due to the existing information vacuum, the OU's concern is simple but neither

profound nor theoretical: funds the OU may pay on behalf of hundreds of campers  to one or more

of the SIMAD Debtors for the benefit of specific campers, may be diverted to other SIMAD

Debtors or used to pay administrative expenses associated with these chapter 11 cases, rather than

being used to provide the camping experience hundreds of children, including special needs

children are expecting, by leaving the camps these children attend without sufficient resources to

operate safely and provide the quality camping experience that they have provided in the past,

through the entire camping season.

3.      This concern is neither hypothetical nor remote. Camp for certain of the SIMAD

Debtors begins as soon as this Sunday, June 22, 2026, and the others shortly thereafter. While the

OU is committed to paying for its campers, it is concerned that such payments will not be used for

the benefit of the intended SIMAD Debtor and the OU campers using that camp's facilities and

2

respectfully requests that the Court condition any order authorizing the SIMAD Debtors' use of cash collateral on adequate assurances that ensure the OU's funds are used for the purpose for which they are to be remitted.

## **RELEVANT BACKGROUND**

4.      The OU is the one of the largest Orthodox Jewish organizations in the United States. Founded in 1898, the OU supports a network of synagogues, youth programs, Jewish and Religious Zionist advocacy programs, programs for the disabled, and localized religious study programs.

5.      Within the umbrella of the OU, NCSY operates as one of the largest Jewish youth organizations in North America. NCSY's summer camps offer experiences for Jewish youth, combining recreation, Jewish education, and character development in a nurturing environment.

6.      Separately, Yachad, the National Jewish Council for Disabilities, is dedicated to addressing the needs of individuals with disabilities and ensuring their inclusion in the Jewish community. Yachad's summer programming serves children and young adults with serious physical, intellectual, and developmental disabilities, providing them with a camp experience that would otherwise be unavailable to them. Yachad's summer camps are staffed with specially trained counselors, therapists, and medical professionals who provide the individualized care and supervision that these campers require. For many of these children, Yachad's summer camp is the only opportunity they have to experience the joy, socialization, and independence that a camp environment provides. The families of these children depend on Yachad's programs not only for their children's enrichment but also for essential respite during the summer months.

7.      The OU, through NCSY and Yachad, operates summer camps for children at facilities owned by certain of the SIMAD Debtors pursuant to several written agreements. Specifically, the OU uses space at three SIMAD Debtor-owned camp properties: Camp Lavi, Camp Mogen Avraham, and Camp Mesorah. Camp Lavi operates through Lavco LLC and Lavland

3

LLC and is located in Pennsylvania. Camp Mogen Avraham operates through Mogenavco LLC and Mogenavland LLC and is located in New York. Camp Mesorah operates through Mesorahco LLC and Mesorahland LLC and is located in New York. Under the written agreements, the OU is obligated to pay the SIMAD Debtors for the use of these camp facilities for the summer 2026 season. The outstanding balance for the summer 2026 season remains due and owing to the SIMAD Debtors.

8.     On June 4 and June 5, 2026, each of the SIMAD Debtors filed their chapter 11 petitions.

9.     On June 14, 2026, the SIMAD Debtors filed the Motion seeking authority to use Cash Collateral on an interim basis. The Motion states that as of the Petition Date, the SIMAD Debtors have approximately $18,800,000 of cash on hand and that they will use the Cash Collateral to, among other things, pay employees, vendors, key service providers, and make payments necessary for the continued management, operation, and preservation of the SIMAD Debtors' business.

10.     On June 16, 2026, the SIMAD Debtors filed the Initial Budget.

### STATEMENT

11.     The OU's written agreements with the SIMAD Debtors are executory contracts within the meaning of 11 U.S.C. § 365. The SIMAD Debtors expect the OU to continue performing under these written agreements - that is, to pay the outstanding summer 2026 balance - while the SIMAD Debtors operate in chapter 11. However, the SIMAD Debtors have not yet provided the OU with any assurance that the payments the OU will remit actually will be retained by the three camps that the OU uses. The SIMAD Debtors operate thirty camps. Many of those camps are burdened by substantial secured debt. The OU has no security interest in the SIMAD Debtors' cash. Yet, the OU's fear is that the substantial payments it will make to the SIMAD Debtors will

be pooled with other cash and redirected to camps that are in greater financial distress, leaving Camp Lavi, Camp Mogen Avraham, and Camp Mesorah without the resources necessary to provide the camp experience that the OU bargained for and that the children in its care deserve.

12. The OU is responsible for the welfare of hundreds of children, including seriously disabled/special needs children who require specialized care, trained staff, medical professionals, and adapted facilities. If the SIMAD Debtors divert the OU's payments to prop up other camps in their portfolio, the consequences could be devastating: camps may run out of operating funds mid-summer, staff may go unpaid, vendors may refuse to deliver food and supplies, including medical supplies, and children may be left without the care and supervision they require.

13. The Initial Budget does not provide information regarding the individual SIMAD Debtors' ability to meet their ongoing obligations, as the information provided in the Initial Budget is presented on a consolidated basis in these jointly administered, but not substantively consolidated cases.

14. Accordingly, the OU respectfully requests that the Court, in connection with any order authorizing the SIMAD Debtors' use of Cash Collateral, include protections ensuring that:

A. The SIMAD Debtors file and serve a revised Initial Budget, which includes a camp-by-camp breakdown showing the SIMAD Debtors' proposed allocation of cash to each of their thirty camps, including that the amounts allocated to Camp Lavi, Camp Mogen Avraham, and Camp Mesorah are sufficient for those camps to operate at the same high level as they have in past years;

B. Any payments received by the SIMAD Debtors from the OU in connection with Camp Lavi, Camp Mogen Avraham, and Camp Mesorah be segregated and used exclusively for the operation of those three camps and not commingled with funds designated for other Debtor camps or used to satisfy obligations unrelated to the OU's campers; and

C. The SIMAD Debtors provide the OU with adequate assurance of future performance under the written agreements, including assurances that the camps will be staffed, supplied, and operated at the level agreed to, consistent with past practices.

15. The OU does not seek to impede the SIMAD Debtors' restructuring or to prevent the SIMAD Debtors from accessing the liquidity necessary to operate their camps. To the contrary,

the OU shares the SIMAD Debtors' goal of ensuring that the summer camp season proceeds without disruption. But the OU cannot, in good conscience, remit substantial payments to the SIMAD Debtors that it has contracted with, without the assurance that those funds will be used for the camps at which the OU's children will be living and receiving care this summer and that those camps are adequately funded for the entire camping season. The Court has the statutory authority and the equitable power to fashion appropriate protections. The OU respectfully requests that it do so.

## **CONCLUSION**

WHEREFORE, the OU respectfully requests that the Court grant the relief set forth herein, or such other and further relief as the Court deems just and proper

Dated: June 16, 2026

**BLANK ROME LLP**

By:  */s/ Evan J. Zucker*
Ira L. Herman, Esquire (*pro hac vice* forthcoming)
Evan J. Zucker, Esquire (NJ Bar No. 11932008)
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
ira.herman@blankrome.com
evan.zucker@blankrome.com

**BLANK ROME LLP**
Jordan L. Williams, Esquire (*pro hac vice* forthcoming)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
(215) 569-5500
jordan.williams@blankrome.com

*Counsel to the Union of Orthodox Jewish*
*Congregations of America, doing business as each*
*of (i) the Orthodox Union, (ii) the OU, (iii) NCSY,*
*and (iv) Yachad*

6