| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**LOWENSTEIN SANDLER LLP**<br>Eric S. Chafetz, Esq.<br>Philip J. Gross, Esq.<br>One Lowenstein Drive<br>Roseland, NJ 07068<br>Telephone: (973) 597-2500<br>Email: echafetz@lowenstein.com<br>        pgross@lowenstein.com<br><br>*Counsel to the Willow Lake Parties* |

| In re: | Chapter 11 |
|---|---|
| SIMAD HOLDINGS LTD., *et al.*,[1] | Case Nos. 26-16388 (CMG) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF THE WILLOW LAKE PARTIES TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING POSTPETITION FINANCING AND RESERVATION OF RIGHTS REGARDING SALE/BIDDING PROCEDURES MOTION**

Willow Lake Day Camps, Inc. ("Willow Lake Inc.") and Steven Weissman, Wendy Saiff, and certain of their relatives (collectively, the "Willow Lake Individual Owners," and, together with Willow Lake Inc., collectively, the "Willow Lake Parties"), entities and parties that collectively own 50% of the Membership Interests in Willow Lake Day Camps, LLC ("WL CampCo"), and 50% of the shares in Willow Lake Land Corporation ("WL LandCo"), by and through undersigned counsel, hereby submit this limited objection and reservation of rights (this

---

[1] A complete list of the SIMAD Debtors (as defined in the DIP Motion) in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holding Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

"Limited Objection") to (i) the *SIMAD Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the SIMAD Debtor Borrowers to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 225] (the "DIP Motion"); and (ii) the *SIMAD Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* [Docket No. 227] (the "Sale Motion").

In support of this Limited Objection, the Willow Lake Parties respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      The Willow Lake Parties do not object to the Debtors obtaining DIP financing or to the approval of bidding procedures or a sale marketing process, both of which are undoubtedly necessary and critical to maximizing value for the SIMAD Debtors and ensuring all of the underlying camps are able to operate in the ordinary course of business this summer and into the future.

2.      Rather, this Limited Objection is directed solely to the extent the DIP Motion, proposed Interim DIP Order,[2] any proposed Final DIP Order, the Sale Motion, the proposed Bidding Procedures Order (and related proposed Bidding Procedures), and/or any final Sale Order(s) entered thereunder purport to authorize, approve, validate, recognize, or otherwise facilitate the granting of liens upon, pledging of, transfer of, or sale of the SIMAD Debtors'

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the DIP Motion and/or the Sale Motion.

purported 50% membership interests in WL CampCo and 50% share ownership in WL LandCo (collectively, the "SIMAD Willow Lake Interests") [3] in contravention of the governing organizational documents applicable to those non-debtor entities, specifically the (i) Operating Agreement of WL CampCo dated May 31, 2012 (the "WL CampCo Operating Agreement"), and (ii) the Shareholder Agreement of WL LandCo dated June 6, 2012 (the "WL LandCo Shareholder Agreement").[4]

3. The Debtors' purported ownership interests in WL CampCo and WL LandCo, and specifically the SIMAD Willow Lake Interests, are subject to express binding contractual restrictions governing transfers, assignments, pledges, encumbrances, grants of security interests, and rights of first refusal, including unanimous consent requirements and contractual purchase rights.

4. Those restrictions in the WL CampCo Operating Agreement include, among other things, unanimous consent requirements before any membership interests or shares may be pledged or encumbered, together with contractual restrictions governing the transfer or sale of such interests. *See* WL CampCo Operating Agreement, at Section 12.1 ("Except to the extent expressly stated in Section 12.2 below or in Article 14, **each Member hereby agrees not to**, directly or indirectly, sell, transfer, assign, endorse, mortgage, pledge, hypothecate, grant an option to any party to acquire, **grant a security interest in or otherwise dispose of or encumber his, her or**

---

[3] Among other issues, upon information and belief, the SIMAD Debtors' purported ownership of the 50% equity interests in WL CampCo and WL LandCo is in dispute on account of a pledge of 50% of the SIMAD Debtors' interests in WL CampCo and WL LandCo to Charles Maltzman, another director of the Willow Lake Camp (as defined below), prior to the Petition Date. If pledged, then the SIMAD Debtors would only have a 25% interest in WL CampCo and WL LandCo. However, what is undisputed is the 50% ownership interest that the Willow Lake Parties hold in WL CampCo and WL LandCo.

[4] The Debtors and Willow Lake Parties have copies of these agreements, and the Willow Lake Parties will make these agreements available to any parties and the Court to the extent necessary for the interim hearing on the DIP Motion and Sale Motion.

**its Interest or Interests in the Company** and any economic benefit therein **except with the consent of all of the members**, except as otherwise provided herein."); WL CampCo Operating Agreement, at Section 12.2 ("Any purported transfer of Interests not in compliance with Section 12.1 or Article 14 shall be null and void, regardless of any notice provided to the Company."); WL CampCo Operating Agreement, at Section 14.1 (imposing additional restrictions on "Bound Persons", which include both members and indirect holders of member-owned entities, and providing that no Bound Person may encumber, pledge, or otherwise use membership interests "as security for a loan" without the "prior written consent of all of the other Bound Persons, **which consent may be withheld for any reason**.").

5. Similar restrictions exist regarding the shares held pursuant to the WL LandCo Shareholder Agreement. *See* WL LandCo Shareholder Agreement, at Section 1.01 ("During a Shareholder's lifetime, Shareholder shall not, voluntarily or involuntarily, encumber, sell, transfer, alienate, pledge or dispose of any or all of the shares of stock of the Company now owned or hereafter acquired by the Shareholder, except in accordance with this Agreement. **No Shareholder shall encumber, pledge, or otherwise use any of the Shareholder's shares as security for a loan, except with the prior written consent of all of the other Shareholders, which consent may be withheld for any reason**."); WL LandCo Shareholder Agreement, at Section 2.01 ("[i]f at any time a Shareholder wishes to sell or otherwise dispose of the Shareholder's shares of the Company to a third party, **he must first obtain the written consent of all of the other Shareholders, which consent may be withheld for any reason**").

6. To be clear, there has been no written consent from Steven Weissman, Wendy Saiff, Willow Lake Day Camps, Inc., or the other Willow Lake Individual Owners authorizing the pledge, sale, transfer, or other granting of rights in the SIMAD Willow Lake Interests.

7.      Moreover, neither David Shabsels, Michael Shabsels, nor SIMAD Holdings Ltd., as the successor owner of those interests, possesses greater rights in the SIMAD Willow Lake Interests than those conveyed under the governing organizational documents.

8.      Indeed, SIMAD Holdings Ltd., as assignee of the SIMAD Willow Lake Interests, upon information and belief, expressly accepted the assignment of the WL CampCo membership interests subject to the applicable Operating Agreement(s) and agreed to be bound by the terms thereof.

9.      Despite these restrictions, paragraph 7(a) of the proposed Interim DIP Order purports to grant the DIP Agent, for the benefit of the DIP Secured Parties, a first priority lien in the "DIP Collateral"[5] and to deem any contractual or other agreement restrictions on pledging, granting liens, and/or transferring such equity interests to be "inconsistent with the applicable provisions of the Bankruptcy Code" and therefore "have no force or effect with respect to the granting of the DIP Liens . . ."  Moreover, paragraph 7(b)(i) of the Interim DIP Order purports to grant the DIP Lenders first priority liens on "Unencumbered Property", which is defined to include "equity interests of subsidiaries".

10.     Additionally, the Sale Motion similarly purports to sell all of the SIMAD Debtors' assets—which includes the SIMAD Willow Lake Interests—"free and clear of all liens, claims rights, interests, pledges, obligations, restrictions, limitations . . ."  Sale Motion, at para. 3.

---

[5] "DIP Collateral" is defined in the DIP Term Sheet (annexed to the DIP Motion) to include "***all assets of the Borrowers*** (and their bankruptcy estates) of any nature whatsoever and wherever located, whether first arising prior to or following the Petition Date, now owned or hereafter acquired."  *See* DIP Motion, at pg. 106 of 149 (DIP Term Sheet, at pg. 4). "Borrowers" include SIMAD Holdings, Ltd. *See* DIP Motion, at pg. 103 of 149 (DIP Term Sheet, at pg. 1) which purports to own 50% of the membership and/or stock in the WL CampCo and WL LandCo.  *See* Exhibit A to the *Declaration of Assaf Ravid, Chief Restructuring Officer of the SIMAD Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 62] (listing Debtor SIMAD Holdings, Ltd. as holder of 50% interests in WL LandCo and WL CampCo).

11.     Accordingly, while the Willow Lake Parties do not oppose the Debtors' efforts to obtain financing or pursue a sale process, for the reasons set forth below, they respectfully object to any provision of the proposed Interim DIP Order, Final DIP Order, the proposed Bidding Procedures Order, or any subsequent Sale Order that could be construed as authorizing, validating, recognizing, perfecting, or otherwise permitting: (i) the pledge or encumbrance of the Debtors' purported SIMAD Willow Lake Interests; or (ii) any attempt to transfer or sell such interests free and clear of the contractual restrictions, consent rights, and rights of first refusal contained in the governing organizational documents.

12.     The Willow Lake Parties respectfully request that the Court expressly preserve those contractual rights and clarify that nothing contained in any order entered on either Motion adjudicates, impairs, modifies, or otherwise affects those rights.

**BACKGROUND**

13.     As noted in the prior Reservation of Rights [Docket No. 96] filed by the Willow Lake Parties, the Willow Lake Parties are in a unique position in these chapter 11 cases.

14.     Willow Lake Inc., which is wholly-owned by Steven Weissman and Wendy Saiff and <u>not</u> controlled or operated by any of the SIMAD Debtors or Michael and David Shabsels (collectively, the "<u>Shabsels</u>"), is the 50% member of Willow Lake Day Camps LLC ("<u>WL CampCo</u>"), which operates the Willow Lake Day Camp (the "<u>Willow Lake Camp</u>") in Lake Hopatcong, New Jersey. Additionally, the Willow Lake Individual Owners collectively hold and own 50% of the shares of Willow Lake Land Corporation ("<u>WL LandCo</u>"), which, in turn, owns and leases to WL CampCo the land on which the Willow Lake Camp operates.

15.     WL CampCo and WL LandCo are not debtors in these Chapter 11 cases. WL CampCo continues to own and operate Willow Lake Day Camp outside of bankruptcy and the Willow Lake Parties continue to run and control WL CampCo's operations and bank accounts.

16.     The Willow Lake Parties collectively own fifty percent (50%) of the interests in WL CampCo and WL LandCo. The Debtors contend that SIMAD Holdings Ltd. owns the remaining fifty percent (50%) interests following a series of transfers.

17.     As noted above, WL CampCo is governed by the WL CampCo Operating Agreement dated May 31, 2012. Among other things, that Operating Agreement provides that: (a) transactions involving more than $20,000 require approval by the requisite Managers; (b) membership interests may not be sold, assigned, mortgaged, pledged, hypothecated, subjected to a security interest, or otherwise encumbered absent the consent required under the Operating Agreement; (c) unauthorized transfers are expressly declared "null and void"; and (d) no "Bound Person" may encumber or pledge Restricted Equity as security for a loan without the prior written consent of the other Bound Persons, which consent may be refused for any reason.

18.     As further noted above, WL LandCo likewise is governed by organizational documents restricting the transfer and encumbrance of its shares. The governing WL LandCo Shareholder Agreement provides that no shareholder may encumber, pledge, or otherwise use its shares as security for any loan without the prior written consent of all other shareholders and further grants contractual rights governing transfers of those shares, including rights of first refusal.

19.     The Willow Lake Parties have never consented to the pledge, encumbrance, transfer, or sale of the Debtors' purported interests in WL CampCo or WL LandCo in favor of the proposed DIP lenders or any third-party purchaser.  In fact, the Willow Lake Parties did not

become aware that the SIMAD Debtors owned 50% of the interests in either WL CampCo or WL LandCo until after the Petition Date.

20.     Nevertheless, the DIP Motion seeks authority to grant first-priority liens upon broad categories of "Unencumbered Property," expressly including "equity interests of subsidiaries". *See* DIP Motion, at pg. 17; proposed Interim DIP Order, at para 7(b)(i) (at pg. 67 of 149 to DIP Motion).  Likewise, the Sale Motion establishes procedures through which the Debtors may later seek authority to market and sell such interests pursuant to section 363 of the Bankruptcy Code.

21.     To the extent the proposed DIP Order, the Sale Motion, or any order entered thereunder could be construed to authorize or facilitate the pledge, encumbrance, transfer, or sale of the SIMAD Willow Lake Interests in a manner inconsistent with the governing organizational documents, the Willow Lake Parties respectfully object and expressly reserve all rights with respect to such interests, including all rights arising under the applicable WL CampCo Operating Agreement, WL LandCo Shareholder Agreement, Purchase Agreement, Assignment Agreement, and applicable non-bankruptcy law.

## LIMITED OBJECTION

**I.      THE PROPOSED DIP ORDERS CANNOT APPROVE OR GRANT ANY LIEN, PLEDGE, OR ENCUMBRANCE IN FAVOR OF THE DIP LENDERS ON THE DEBTORS' PURPORTED EQUITY INTERESTS IN WL CAMPCO OR WL LANDCO.**

22.     It is well settled that the Bankruptcy Code does not enlarge a debtor's property rights. Rather, "[p]roperty interests are created and defined by state law," and absent a contrary federal interest, such interests are analyzed under applicable non-bankruptcy law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Likewise, the Supreme Court has reaffirmed that "[a] bankruptcy estate cannot possess anything more than the debtor itself did outside bankruptcy." *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 382 (2019); *see also In re Congoleum*

*Corp.*, No. 03-51524, 2008 WL 4186899, at *4 (Bankr. D.N.J. Sept. 2, 2008) ("[U]nless federal bankruptcy law has specifically preempted a state law restriction imposed on property of the estate, the trustee's rights in the property are limited to only those rights that the debtor possessed pre-petition. In other words, without explicit federal preemption, the trustee does not have greater rights in the property of the estate than the debtor had before filing for bankruptcy.") (quoting *Integrated Solutions, Inc. v. Service Support Specialties, Inc.,* 124 F.3d 487, 492–93 (3d Cir.1997)).

23.     Bankruptcy courts likewise recognize that ownership interests in companies remain subject to the restrictions contained in the governing organizational documents.  *See In re IT Group, Inc.*, 302 B.R. 483 (D. Del. 2003); *In re Hafen*, 625 B.R. 529, 531 (Bankr. D. Utah 2020), aff'd, 2021 WL 4097478 (10th Cir. BAP 2021); *In re Kramer*, No. WY-21-005, 2022 WL 17176411 (10th Cir. BAP Nov. 23, 2022).

24.     Likewise, in *In re 3P Hightstown, LLC*, No. 21-14511, 2021 WL 3122409 (Bankr. D.N.J. July 22, 2021), this Court recognized that the authority of those acting on behalf of a business entity is determined by the governing organizational documents and applicable state law. Relying upon *Price v. Gurney*, 324 U.S. 100 (1945), Judge Kaplan held that bankruptcy relief may not be predicated upon corporate action taken without the authority required under the governing organizational documents.

25.     Here, as noted above, the WL CampCo Operating Agreement and the WL LandCo Shareholder Agreement both expressly prohibit pledges, grants of security interests, and other encumbrances of the Debtors' purported equity interests absent the required written consent of the Willow Lake Parties, who are the undisputed 50% owners of the membership interests and/or shares in WL CampCo and WL LandCo, respectively. No such consent has been requested or

obtained, and the governing documents expressly state that such consent is expressly required and may be withheld for any reason.

26.     Accordingly, while the Willow Lake Parties do not request that the Court finally adjudicate these contractual issues in connection with an emergent hearing on the DIP Motion, the Court should not enter any order that could later be construed as approving, validating, recognizing, or perfecting a lien upon SIMAD Willow Lake Interests that the Debtors were contractually prohibited from pledging.

II.     **THE BIDDING PROCEDURES ORDER AND ANY SALE ORDER SHOULD EXPRESSLY PRESERVE THE CONTRACTUAL TRANSFER RESTRICTIONS, CONSENT RIGHTS, AND RIGHTS OF FIRST REFUSAL GOVERNING THE WILLOW LAKE EQUITY INTERESTS.**

27.     The Willow Lake Parties likewise do not object to the SIMAD Debtors' approval of Bidding Procedures or the Debtors pursuing a sale and marketing process for assets of the bankruptcy estates generally.

28.     Indeed, the Willow Lake Parties, as the 50% owners with operational and managerial control over Willow Lake Camp, have every intention of bidding on the Debtors' purported SIMAD Willow Lake Interests (and, in fact, have already submitted a bid to purchase such interests to the SIMAD Debtors' investment banker, SSG Advisors, LLC).

29.     The Sale Motion, however, contemplates the potential future sale of equity interests and other assets pursuant to section 363 of the Bankruptcy Code. To the extent the SIMAD Debtors later seek authority to sell their purported interests in WL CampCo or WL LandCo to other third parties, those interests must remain subject to the governing organizational documents, including contractual restrictions governing transfers, consent rights, and rights of first refusal.

30.     Thus, nothing in the Bidding Procedures Order should be construed as determining that the Debtors possess transferable interests free and clear of those contractual restrictions or as

prejudging whether any proposed purchaser may acquire greater rights than the SIMAD Debtors themselves possess in these interests under applicable non-bankruptcy law.

31.    The Willow Lake Parties expressly reserve all rights to object to any proposed sale of the SIMAD Debtors' purported SIMAD Willow Lake Interests, including, without limitation, on the grounds that any proposed transfer violates the governing organizational documents, contractual consent requirements, rights of first refusal, or other restrictions running with those interests.

## **RESERVATION OF RIGHTS**

32.    The Willow Lake Parties expressly reserve all rights, claims, causes of action, defenses, objections, and remedies, including any contractual indemnity rights, with respect to: (a) the ownership, transferability, pledgeability, validity, perfection, priority, and extent of any purported lien or security interest affecting WL CampCo or WL LandCo; (b) the WL CampCo Operating Agreement, the WL LandCo Shareholder Agreement, the Purchase Agreement, the Assignment Agreement, and all related and ancillary governing organizational documents; (c) the enforceability of all contractual consent rights and rights of first refusal; (d) any future attempt by the Debtors, the DIP Lenders, the DIP Agent, the DIP Secured Party, any purchaser(s), the Bond Trustee, or any other party to assert rights greater than those possessed by the Debtors immediately prior to the Petition Date; and (e) the purported pledge of 50% of the SIMAD Debtors' purported SIMAD Willow Lake Interests as described above in footnote 3.

33.    The Willow Lake Parties further reserve the right to supplement this Limited Objection, object to any proposed asset purchase agreement or other motion or order affecting WL CampCo or WL LandCo, commence, defend or seek to join in any adversary proceeding or contested matter relating to such interests, and seek such additional relief as may be appropriate.

**PROPOSED CLARIFYING LANGUAGE**

34.     To the extent the Court is inclined to grant the relief requested in either the DIP Motion or the Sale Motion on an interim basis, the Willow Lake Parties respectfully request that the Court include language substantially as follows in any proposed DIP Orders or Bidding Procedures Order:

> Notwithstanding anything contained in this Order to the contrary, nothing herein shall be construed to (i) authorize, approve, validate, recognize, create, perfect, or otherwise grant any lien, pledge, security interest, transfer, or sale of the Debtors' purported membership interests in Willow Lake Day Camps, LLC ("WL CampCo") or shares of Willow Lake Land Corporation ("WL LandCo"); (ii) determine whether such interests may be pledged, transferred, or sold under the applicable WL CampCo Operating Agreement, WL LandCo Shareholder Agreement, Purchase Agreement relating to WL CampCo and WL LandCo, Assignment Agreement that assigned equity interests in WL CampCo and WL LandCo to the SIMAD Debtors, or other governing organizational documents or applicable non-bankruptcy law; (iii) adjudicate the validity, enforceability, perfection, priority, extent, or avoidability of any purported lien, pledge, transfer, assignment, or security interest affecting such interests in WL CampCo and WL LandCo; (iv) prejudice, impair, waive, release, or otherwise affect any contractual rights, consent rights, rights of first refusal, claims, defenses, objections, or causes of action of the Willow Lake Parties; or (v) prejudice or impair claims that any party may assert regarding the purported pledge of 50% of the SIMAD Willow Lake Interests to Charles Maltzman, another director of the Willow Lake Camp, prior to the Petition Date, all of which are expressly preserved.

**CONCLUSION**

WHEREFORE, the Willow Lake Parties respectfully request that the Court grant this Limited Objection except to the extent set forth herein, expressly preserve all rights of the Willow Lake Parties arising under the governing organizational documents and applicable non-bankruptcy law, and grant such other and further relief as the Court deems just and proper.

Dated: June 25, 2026                          Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

By: _/s/ Eric S. Chafetz_
Eric S. Chafetz, Esq. (017402004)
Philip J. Gross, Esq. (025882008)
One Lowenstein Drive

Roseland, NJ 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-6247
E-mail: echafetz@lowenstein.com
          pgross@lowenstein.com

*Counsel to the Willow Lake Parties*