Recorded: 5/6/2024 9:56:40 AM
Fee Amt: $70.00  Page 1 of 20
Receipt#: 202400018542
IL Rental Housing Fund: $18.00
Lake County IL
Anthony Vega Lake County Clerk

**File# 8032713**

# MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

## BY

## BANNER LANDCO LLC
### "Mortgagor"

## TO

## MIZZEN CAPITAL II, LP
### "Mortgagee"

Dated: As of May 2, 2024

## AMOUNT U.S. $5,000,000.00

## MORTGAGED PROPERTY:

1225 Riverwoods Road, Lake Forest, Illinois

This instrument affects real and personal property situated in:

1225 Riverwoods Road, Town of Lake Forest, County of Lake, State of Illinois.
Tax Identification Numbers: 15-12-300-019, 15-12-300-016, 15-12-100-016.

## AFTER RECORDING, PLEASE RETURN TO:

SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, Connecticut 06103
Attention: James C. Schulwolf, Esq.

SG-21146444v3

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT (this "**Mortgage**"), is made as of the 2nd day of May, 2024, by **BANNER LANDCO LLC,** an Illinois limited liability company, having a principal place of business at 1225 Riverwoods Road, Lake Forest, Illinois 60045 ("**Mortgagor**") in favor of **MIZZEN CAPITAL II, LP**, a Delaware limited partnership, in its capacities as administrative agent and collateral agent for the benefit of the Purchasers (as defined in the NPA (as defined below)) and any other holder of the Secured Obligations (as defined in the NPA), with an address of with an office at 263 Tresser Blvd, 9th Fl, Stamford, Connecticut 06901  (in such capacities, together with any successors and permitted assigns, the "**Agent**"), as mortgagee (the "**Mortgagee**"). All capitalized terms used and not defined herein shall have the meaning ascribed to such term in the NPA (as defined below).

WHEREAS, Mortgagee has made a commercial mortgage loan to Mortgagor's affiliate, SIMAD Holdings LLC, a New York limited liability company (the "**Borrower**") , pursuant to that certain Note Purchase Agreement dated as of the date hereof among the Borrower, DAMIS Holdings, LLC, a New York limited liability company, Michael Shabsels, an individual, David Shabsels, an individual, Shabsels Management Trust, a Nevada trust, Shabsels Management LLC, a Nevada limited liability company, Shabsels Gift, LLC, a Nevada limited liability company, Shabsels Gift Trust, a Nevada trust, and certain additional individuals and entities that are named therein as guarantors (collectively, the "**Guarantors**" and, together with the Borrower, the "**Loan Parties**"), the Purchasers from time to time party thereto and the Agent (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**NPA**"), which Loan is evidenced by the Notes.

WHEREAS, the Notes are guaranteed by the Mortgagor (and the other Guarantors as defined in the NPA), pursuant to which Mortgagor unconditionally guaranteed the due and punctual payment and performance of the Borrower's obligations under the Notes and the NPA (the "**Guaranty**"), including repayment in full of the Loan, pursuant to the terms of the NPA.

WHEREAS, the Mortgagor acknowledges that it shall materially benefit from Mortgagee's agreeing to make the Loan to Borrower.

Mortgagor for the consideration of Ten Dollars ($10.00) and other good and valuable consideration received to Mortgagor's satisfaction from Mortgagee and to secure (a) the Guaranty obligations of the Mortgagor made pursuant to the guaranty provisions included in the NPA and (b) other obligations and liabilities due or to become due Mortgagee, all amounts, sums and expenses paid hereunder by Mortgagee according to the terms hereof and all other obligations and liabilities of Mortgagor under this Mortgage, the NPA and all other instruments now or hereafter evidencing or securing such obligations or any part thereof (this Mortgage, the NPA, the Notes and all such other instruments (including, without limitation, the Loan Documents (as defined in the NPA)), all as may be amended, restated, extended, supplemented or otherwise modified from time to time, herein collectively called, the "**Loan Documents**") together with all interest on the said indebtedness, obligations, liabilities, amounts, sums and expenses (all of the aforesaid, collectively, the "**Indebtedness**"), Mortgagor hereby mortgages, gives, grants, bargains, sells, warrants, conveys, aliens, remises, releases, assigns, sets over and confirms to Mortgagee, its successors and assigns forever, the following property, interests and rights whether now owned or held or hereafter acquired (hereinafter collectively referred to as the "**Mortgaged Property**"):

(a)    All right, title and interest in and to the real property or properties more particularly described on **Schedule A** attached hereto and made a part hereof (collectively, the "**Land**");

SG-21146444v3

(b)    All additional lands, estates and development rights hereafter acquired by Mortgagor for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise, be expressly made subject to the lien thereof (collectively, the "**Additional Land**");

(c)    Any and all buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located on the Land or any part thereof (collectively, the "**Improvements**"; the Land, the Additional Land and the Improvements hereinafter collectively referred to as the "**Real Property**");

(d)    All easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, oil, gas and mineral rights, air rights and development rights, zoning rights, tax credits or benefits and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever in any way now or hereafter belonging, relating or pertaining to the Real Property or any part thereof and the reversion and reversions, remainder and remainders and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land or any part thereof to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both in law and in equity, of Mortgagor in, of and to the Real Property and every part and parcel thereof, with the appurtenances thereto;

(e)    All machinery, equipment, fixtures, and other property of every kind and nature whatsoever owned by Mortgagor or in which Mortgagor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto and usable in connection with the present or future operation and occupancy of the Real Property and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor or in which Mortgagor has or shall have an interest (to the extent of such interest) now or hereafter located upon the Real Property or appurtenant thereto or usable in connection with the present or future operation and occupancy of the Real Property, including but not limited to all heating, ventilating, air conditioning, plumbing, lighting, communications and elevator machinery, equipment and fixtures, together with any and all replacements thereof and additions thereto (hereinafter collectively called the "**Equipment**") and the right, title and interest of Mortgagor in and to any of the Equipment which may be subject to any security agreements (as defined in the Uniform Commercial Code of the State in which the Mortgaged Property is located (the "**Uniform Commercial Code**")) superior, inferior or pari passu in lien to the lien of this Mortgage. In connection with Equipment which is leased to Mortgagor or which is subject to a lien or security interest which is superior to the lien of this Mortgage, this Mortgage shall also cover all right, title and interest of Mortgagor in and to all deposits and the benefit of all payments now or hereafter made with respect to such Equipment;

(f)    All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Real Property or any part thereof, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade or for any other injury to or decrease in the value of the Real Property;

(g)    All leases and subleases (including, without limitation, all guarantees thereof and security therefor and any letters of credit now owned or hereafter acquired by, or delivered or required to be delivered to, Mortgagor by any tenant of the Mortgaged Property as additional security for the performance of such tenant's obligations under its Lease or constituting "supporting obligations" for such leases and guarantees, as such term is defined in Article 9 of the Uniform Commercial Code), all letter of credit rights and any and all proceeds of such letters of credit or right to receive the proceeds of such letters

3

of credit or to otherwise receive the benefit of any draw upon any such letter of credit, whether such right, title and interest of Mortgagor is classified as a supporting obligation, letter of credit right, account, contract right, general intangible or instrument under applicable law, together with all proceeds thereof and other agreements affecting the use, enjoyment and/or occupancy of the Real Property or any part thereof, now or hereafter entered into (including any use or occupancy arrangements created pursuant to Section 365(h) of Title 11 of the United States Code (the "**Bankruptcy Code**") or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property), together with any extension or renewal of the same (collectively, the "**Leases**") and all income, rents, issues, profits, revenues and proceeds including, but not limited to, all oil and gas or other mineral royalties and bonuses from the Real Property (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings or any assignment for the benefit of creditors in respect of any tenant or occupant of any portion of the Real Property and all claims as a creditor in connection with any of the foregoing) (collectively, the "**Rents**") and all proceeds from the sale, cancellation, surrender or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Indebtedness;

(h)     All proceeds of and any unearned premiums on any insurance policies covering the Real Property or any part thereof including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof, for damage to the Real Property or any part thereof;

(i)     All tax refunds, including interest thereon, tax credits and tax abatements and the right to receive or benefit from the same, which may be payable or available with respect to the Real Property;

(j)     The right, in the name and on behalf of Mortgagor, to appear in and defend any action or proceeding brought with respect to the Real Property or any part thereof and to commence any action or proceeding to protect the interest of Mortgagee in the Real Property or any part thereof;

(k)     All accounts receivable, utility or other deposits, intangibles, contract rights, interests, estates or other claims, both in law and in equity, which Mortgagor now has or may hereafter acquire in the Real Property or any part thereof, and all funds and deposit accounts and other accounts into which any funds of Mortgagor are now or hereafter deposited to be held by, on behalf of or for the benefit of, Mortgagee;

(l)     All accounts established for the purpose of deposits by Mortgagor of proceeds resulting from the operations of the Mortgaged Property and/or Mortgagor's business;

(m)     All rights which Mortgagor now has or may hereafter acquire to be indemnified and/or held harmless from any liability, loss, damage, cost or expense (including, without limitation, attorneys' fees and disbursements) relating to the Real Property or any part thereof;

(n)     All plans and specifications, maps, surveys, studies, reports, contracts, subcontracts, service contracts, management contracts, franchise agreements and other agreements, franchises, trade names, trademarks, symbols, service marks, approvals, consents, permits, special permits, licenses and rights, whether governmental or otherwise, respecting the use, occupation, development, construction and/or operation of the Real Property or any part thereof or the activities conducted thereon or therein, or otherwise pertaining to the Real Property or any part thereof; and

4

SG-21146444v3

(o)    All proceeds, products, offspring, rents and profits from any of the foregoing, including without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing, and all other, further or additional title, estates, interest or rights which may exist now or at any time be acquired by Mortgagor in or to any of the foregoing, including, without limitation, the Real Property, or any part thereof.

WITH RESPECT to any portion of the Mortgaged Property which is not real estate under the laws of the State in which the Mortgaged Property is located (said property hereinafter referred to as the "Collateral"), Mortgagor hereby grants, transfers, assigns, bargains, sells and conveys a security interest in the Collateral to Mortgagee for the purposes set forth hereunder and Mortgagee shall be vested with all rights, power and authority granted hereunder or by law to Mortgagee with respect thereto.

TO HAVE AND TO HOLD the above granted and described Mortgaged Property unto and to the use and benefit of Mortgagee and the successors and assigns of Mortgagee forever, to its and their proper use and behoof, together with all and singular the tenements, hereditaments, and appurtenances belonging or in anywise appertaining thereto, whether now owned or acquired hereafter, with the reversions, remainders, rents, issues, incomes and profits thereof, and all of the estate, right, title, interest and claim whatsoever which Mortgagor now has or which may hereafter acquire in and to the Mortgaged Property.

AND ALSO, Mortgagor does for itself, and its successors and assigns, covenant with Mortgagee, its successors and assigns, that at and until the ensealing of these presents, it is well seized of the Mortgaged Property as a good indefeasible estate and it has good right to bargain, sell and convey the same in the manner and form as above written, and the same are free from all Liens and encumbrances whatsoever except for all matters of record as of the date hereof (hereinafter collectively referred to as the "Permitted Encumbrances").

AND FURTHERMORE, Mortgagor does by these presents bind itself and its successors and assigns forever to WARRANT AND DEFEND the above granted and bargained Mortgaged Property to Mortgagee, its successors and assigns, against all claims and demands whatsoever, except as aforesaid.

MORTGAGOR COVENANTS WITH THE MORTGAGEE SO LONG AS THIS MORTGAGE IS IN EFFECT AS FOLLOWS:

1.    INDEBTEDNESS. Mortgagor shall provide the guaranty as provided in the NPA and as provided in the other Loan Documents, which shall secure Borrower's obligations under the Notes. This Mortgage secures Mortgagor's guaranty obligations. Additionally, Mortgagor acknowledges and agrees that any amounts now or hereafter due and owing from Mortgagor or Borrower to Mortgagee arising from or in connection with any interest rate swap agreement, now existing or hereafter entered into between Mortgagor and/or Borrower and Mortgagee, and any costs incurred by Mortgagee in connection therewith, including, without limitation, any interest, expenses, fees, penalties or other charges associated with any obligations undertaken by Mortgagee to hedge or offset Mortgagee's obligations pursuant to such swap agreement, or the termination of any such obligations, shall be (i) deemed additional interest and/or a related expense (to be determined in the sole discretion of Mortgagee) due in connection with the principal amount of the Indebtedness and the Guaranty secured by this Mortgage, (ii) included (in the manner described above) as part of the Indebtedness secured by this Mortgage, and secured by this Mortgage to the full extent thereof, and (iii) included in any judgment in any proceeding instituted by Mortgagee or its agents against Mortgagor for foreclosure of this Mortgage or otherwise.

2.    INSURANCE. Mortgagor shall keep, or cause Borrower to keep, the Mortgaged Property insured against each risk to which the Mortgaged Property may from time to time be subject (including fire, vandalism and other risks covered by all risk insurance; if requested by Mortgagee, earthquake; if the

5

SG-21146444v3

Mortgaged Property or any portion thereof are located in an area identified as an area having special flood hazards and in which flood insurance has been made available, flood; and loss of rents by reason of such risks) for the benefit of Mortgagee and otherwise in accordance with the NPA. Such insurance shall be provided in such amounts, for such periods, in such form, with such special endorsements, on such terms and by such companies and against such risks as shall be satisfactory to Mortgagee. Without limiting the generality of the preceding two sentences, each policy pursuant to which such insurance is provided shall contain a mortgagee clause, in form and substance satisfactory to Mortgagee, (a) naming Mortgagee as mortgagee and (b) providing that (i) all moneys payable pursuant to such insurance shall be payable to Mortgagee, (ii) such insurance shall not be affected by any act or neglect of Mortgagor, Borrower or Mortgagee, any occupancy, operation or use of the Mortgaged Property or any portion thereof for purposes more hazardous than permitted by the terms of such policy, any foreclosure or other proceeding or notice of sale relating to the Mortgaged Property or any portion thereof or any change in the title to, or ownership of, the Mortgaged Property or any portion thereof, and (iii) such policy and such mortgagee clause may not be canceled or amended except upon thirty (30) days' prior written notice to Mortgagee. Mortgagor hereby assigns and shall deliver or cause to be delivered each policy pursuant to which any such insurance is provided to Mortgagee. Mortgagee does not in any way represent that such insurance, whether in scope or coverage or limits of coverage, is adequate or sufficient to protect the business or interest of Mortgagor and/or Borrower. In the event of the foreclosure of this Mortgage, or a transfer of title to the Mortgaged Property in extinguishment of the Indebtedness, all right, title and interest of Mortgagor in and to any such policies then in force shall pass to the purchaser or grantee of the Mortgaged Property. Mortgagor consents that Mortgagee may retain and apply the proceeds of any such insurance in satisfaction or reduction of the Indebtedness, whether or not then due and payable, or it may pay the same, wholly or in part, to Mortgagor for the repair or replacement of the Mortgaged Property or for any other purpose satisfactory to Mortgagee, without affecting the lien of this Mortgage for the full amount of the Indebtedness before the making of such payment.

3.    **ALTERATIONS, DEMOLITION OR REMOVAL**. No building, structure, other improvement, fixture or equipment or other personal property constituting any portion of the Mortgaged Property shall be, or permitted to be, removed, demolished or substantially altered without the prior written consent of Mortgagee. Notwithstanding anything to the contrary in the preceding sentence, Mortgagor shall not be required to repair or replace obsolete equipment or improvements that are no longer utilized and necessary in the regular operation of the Mortgaged Property or business of Mortgagor in the normal course.

4.    **WASTE AND CHANGE IN USE**. Mortgagor shall not (and shall cause Borrower to not) commit or permit any waste on the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which may in any way increase any ordinary fire, environmental or other risk arising out of construction or operation.

5.    **MAINTENANCE AND REPAIRS**. Mortgagor shall keep and maintain, or cause to be kept and maintained, all buildings, structures, other improvements, fixtures and equipment and other personal property constituting any portion of the Mortgaged Property and the sidewalks and curbs abutting the Mortgaged Property in good order and rentable and tenantable condition and state of repair. In the event that the Mortgaged Property or any portion thereof shall be damaged or destroyed by fire or any other casualty, or in the event of the condemnation or taking of any portion of the Mortgaged Property as a result of any exercise of the power of eminent domain, Mortgagor shall promptly restore, replace, rebuild or alter (or cause the same to be restored, replaced, built or altered) the same as nearly as possible to the condition immediately prior to such fire, other casualty, condemnation or taking without regard to the adequacy of any proceeds of any insurance or award received. Mortgagor shall give prompt written notice to Mortgagee of any such damage or destruction or of the commencement of any condemnation or eminent domain proceeding affecting the Mortgaged Property or any portion thereof. Mortgagor shall pay, or cause to be paid, to Mortgagee so much of (a) any award or compensation resulting from any condemnation

6

SG-21146444v3

proceedings as is attributable to the Mortgaged Property and/or any other Collateral up to the outstanding amount of the Indebtedness, and (b) the insurance proceeds or settlement award resulting from any casualty as is attributable to all or any portion of the Mortgaged Property or any other Collateral up to the outstanding amount of the Indebtedness, and Mortgagor hereby directs such payments to be made directly to Mortgagee and Mortgagor hereby assigns to Mortgagee Mortgagor's rights thereto.

6.      **EXISTENCE AND AUTHORITY.** Mortgagor represents and warrants, and continues to represent and warrant as long as this Mortgage is in effect, as follows: (a) Mortgagor is duly organized, validly existing and in good standing under the laws of the State of Illinois and will do all things necessary to preserve and keep in full force and effect the existence, franchises, rights and privileges of Mortgagor as a limited liability company, under the laws of the State of Illinois; (b) Mortgagor has the full power and authority to grant the mortgage lien hereunder and to execute, deliver and perform its obligations in accordance with this Mortgage and the other Loan Documents to which it is a party; (c) the execution and delivery of this Mortgage will not (i) violate any applicable law of any governmental authority or any judgment or order of any court, other governmental authority or arbitrator; (ii) violate any agreement to which Mortgagor is a party; or (iii) result in a lien or encumbrance on any of its assets (other than the mortgage lien hereunder); (d) Mortgagor's articles of organization, operating agreement or other organizational or governing documents (collectively, "**Governing Documents**") do not prohibit any term or condition of this Mortgage; (e) each authorization, approval or consent from, each registration and filing with, each declaration and notice to, and each other act by or relating to, any party required as a condition of Mortgagor's execution, delivery or performance of this Mortgage (including any member's, manager's or similar approvals) has been duly obtained and is in full force and effect and no other action is required under its Governing Documents or otherwise; and (f) Mortgagor has the power and authority to transact the business in which it is engaged and is duly licensed or qualified and in good standing in each jurisdiction in which the conduct of its business or ownership of property requires such licensing or such qualifications.

7.      **TAXES AND ASSESSMENTS**. Unless paid from an escrow established pursuant to **Section 8** of this Mortgage, Mortgagor shall pay all taxes, general and special assessments and other governmental impositions with respect to the Mortgaged Property before the same becomes due. Upon request by Mortgagee, Mortgagor shall promptly deliver to Mortgagee receipted bills showing payment of all such taxes, assessments and impositions within the applicable grace period.

8.      **ESCROW FOR TAXES, ASSESSMENTS AND INSURANCE**. Mortgagor shall, without duplication to any payments required to be made to a senior lender, pay (a) monthly to Mortgagee on or before the first day of each and every calendar month, until the Indebtedness is paid in full, a sum equal to one-twelfth ($1/12^{th}$) of the yearly taxes, general and special assessments, other governmental impositions and other liens and charges with respect to the Mortgaged Property, to be imposed for the ensuing year, as estimated by Mortgagee in good faith, and annual premiums for insurance on the Mortgaged Property and (b) an initial payment such that, when such monthly payments are added thereto, the total of such payments will be sufficient to pay such taxes, assessments, impositions and other liens and charges and such insurance premiums on or before the date when they become due. Absent manifest error, Mortgagee's calculation as to the amount to be paid into escrow shall be deemed conclusive. So long as no Event of Default (as hereinafter defined) shall have occurred or exists Mortgagee shall hold such payments in trust in an account maintained with Mortgagee without obligation to pay interest thereon, except such interest as may be mandatory by any applicable statute, regulation or other law, to pay, to the extent funds are available, such taxes, assessments, impositions and other liens and charges and such insurance premiums within a reasonable time after they become due; provided, however, that upon the occurrence or existence of any Event of Default, Mortgagee may apply the balance of any such payments held to the Indebtedness. If the total of such payments made by Mortgagor shall exceed the amount of such payments made by Mortgagee, such excess shall be held or credited by Mortgagee for the benefit of Mortgagor. If the total of such payments made by Mortgagor shall be less than the amount of such taxes, assessments,

7

impositions and other liens and charges and such insurance premiums, then Mortgagor shall pay to Mortgagee any amount necessary to make up the deficiency on or before the date when any such amount shall be due.

9. **LEASES**. Mortgagor shall not (a) amend, cancel, abridge, terminate, or otherwise modify any Lease of the Mortgaged Property or of any portion thereof or (b) accept any prepayment of installments of Rent to become due thereunder for more than one month in advance, without the prior written consent of Mortgagee. Mortgagor shall not make any new Lease in place of or any Lease renewal or extension of any Lease of the Mortgaged Property *or* any portion thereof (other than those that Mortgagor as landlord may be required to grant by the terms of an existing Lease) without the prior written consent of Mortgagee. Upon request by Mortgagee, Mortgagor shall promptly furnish to Mortgagee a written statement containing the names and mailing addresses of all lessees of the Mortgaged Property or of any portion thereof, the terms of their respective Leases, the space occupied and the rentals payable thereunder and copies of their respective Leases and shall cooperate in effecting delivery of notice of this covenant to each affected lessee.

10. **ASSIGNMENT OF LEASES AND RENTS**. Mortgagor hereby assigns to Mortgagee all existing and future Leases of the Mortgaged Property or any portion thereof (including any amendments, renewals, extensions or modifications thereof) and the Rents, issues and profits of the Mortgaged Property, as further security for the payment of the Indebtedness, and, subject to 735 ILCS 5/15-1703, Mortgagor grants to Mortgagee the right to enter upon and to take possession of the Mortgaged Property for the purpose of collecting the same and to let the Mortgaged Property or any portion thereof, and after payment of each cost and expense (including each fee and disbursement of counsel to Mortgagee) incurred by Mortgagee in such entry and collection, to apply the remainder of the same to the Indebtedness, without affecting its right to maintain any action theretofore instituted, or to bring any action thereafter, to enforce the payment of the Indebtedness. In the event Mortgagee exercises such rights, it shall not thereby be deemed a mortgagee in possession, and it shall not in any way be made liable for any act or omission. Mortgagor shall not assign such Leases, Rents, issues or profits or any interest therein or grant any similar rights to any other person without Mortgagee's prior written consent. Mortgagee hereby waives the right to enter upon and to take possession of the Mortgaged Property for the purpose of collecting said Rents, issues and profits, and Mortgagor shall be entitled to collect the same, until the occurrence and during the continuance of any Event of Default, but such right of Mortgagor shall, in Mortgagee's sole discretion, be revoked by Mortgagee upon the occurrence and during the continuance of any Event of Default. Upon the occurrence and during the continuance of any Event of Default, Mortgagor shall pay monthly in advance to Mortgagee, or to any receiver appointed to collect said Rents, issues and profits, a fair and reasonable monthly rental value for the use and occupation of the Mortgaged Property by Mortgagor, and upon default in any such payment shall vacate and surrender the possession of the Mortgaged Property to Mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings. The rights and remedies under this section and any separately recorded assignment of rents and/or leases in favor of Mortgagee shall be cumulative. In the event of any irreconcilable inconsistencies between such agreements and this section, the separately recorded assignment of rents and/or leases shall control.

11. **SECURITY AGREEMENT**. This Mortgage constitutes a security agreement under the Uniform Commercial Code, and Mortgagor hereby grants to Mortgagee, to secure the Guaranty, a continuing security interest in the Collateral. Mortgagee shall have the right to file in any public office, without the signature of Mortgagor, any financing statement relating to such items of Collateral. Mortgagee shall have each applicable right and remedy of a secured party under the Uniform Commercial Code and each applicable right and remedy pursuant to any other law or pursuant to this Mortgage. A carbon, photographic or other reproduction of this Mortgage or any financing statement relating to this Mortgage shall be sufficient as a financing statement within the meaning of the Uniform Commercial Code. It is the intention of the Mortgagor and the Mortgagee that the Mortgagee shall have a valid and enforceable

8

perfected second priority security interest under the Uniform Commercial Code in the Collateral, which is subject only to the Permitted Encumbrances.

12. **NO TRANSFER**. Mortgagor shall not, without Mortgagee's prior written consent or as otherwise specifically permitted in the NPA, sell, convey or transfer, or permit the sale, conveyance or transfer of, the Mortgaged Property or any portion thereof or any interest therein or contract to do so. Any change in the direct or indirect membership interest of Mortgagor or any member of Mortgagor, whether by operation of law or otherwise, shall be deemed a sale, conveyance or transfer of the Mortgaged Property within the meaning of this **Section 12**.

13. **NO SECONDARY FINANCING OR OTHER LIENS**. Except as otherwise specifically permitted in the NPA, Mortgagor shall not, without Mortgagee's prior written consent, (a) mortgage, pledge, assign, grant a security interest in, all or any portion of the Mortgaged Property, or (b) cause any other Lien or encumbrance to be made, or permit any other Lien or encumbrance to exist, upon the Mortgaged Property or any portion thereof.

14. **COMPLIANCE WITH LAWS**. Mortgagor represents and warrants to Mortgagee, and shall continue to represent and warrant as long as this Mortgage is in effect, as follows: (a) to best of Mortgagor's knowledge after due and diligent inquiry, the buildings, structures and other improvements now constituting any portion of the Mortgaged Property are in compliance in all material respects with all applicable statutes, regulations and other laws (including all applicable zoning, building, fire and health codes and ordinances and the Americans With Disabilities Act of 1990) and all applicable deed restrictions, if any, and is not and shall not be used for any illegal purpose; and (b) such compliance is based solely upon Mortgagor's ownership of the Mortgaged Property and not upon title to or interest in any other property. Mortgagor shall comply with, or cause compliance with, all statutes, regulations and other laws (including all applicable zoning, building, fire and health codes and ordinances and the Americans With Disabilities Acts of 1990), all other requirements of all governmental authorities whatsoever having jurisdiction over or with respect to the Mortgaged Property or any portion thereof or the use or occupation thereof and with all applicable deed restrictions, if any.

15. **WARRANTY OF TITLE; TITLE INSURANCE**. Mortgagor represents and warrants to Mortgagee, and continues to represent and warrant as long as this Mortgage is in effect, that Mortgagor holds good and marketable title in fee simple absolute to the Mortgaged Property. Mortgagor shall furnish to Mortgagee at Mortgagor's own cost and expense a title insurance policy in the then amount of the Indebtedness, (a) naming Mortgagee as the insured mortgagee, (b) covering the lien on the Mortgaged Property granted pursuant to this Mortgage, (c) containing no exception not approved by Mortgagee, (d) issued by a title insurance company qualified to do business in the State of Illinois and satisfactory to Mortgagee, and (e) otherwise in form and substance satisfactory to Mortgagee.

16. **COVENANTS AND CERTAIN RIGHTS AND OBLIGATIONS**.

(a) Mortgagor shall deliver, or cause to be delivered, to Mortgagee the information set forth in **Section 4.1** of the NPA and such additional information, reports or statements as Mortgagee may from time to time request regarding the financial and business affairs of Mortgagor, Borrower and/or any Guarantor.

(b) Mortgagee may take such action as Mortgagee deems appropriate to protect the Mortgaged Property or the status or priority of, and security interests created by, the liens of this Mortgage, including: entry upon the Mortgaged Property to protect the Mortgaged Property from deterioration or damage, or to cause the Mortgaged Property to be put in compliance with any governmental, insurance rating or contract requirements; payment of amounts due on liens or any security interests having priority

9

SG-21146444v3

over this Mortgage; payment of any tax or charge for purposes of assuring the priority or enforceability of this Mortgage; obtaining insurance on the Mortgaged Property (including flood insurance); or commencement or defense of any legal action or proceeding to assess or protect the validity or priority of the liens of, and security interests created by, this Mortgage. On demand, Mortgagor shall reimburse Mortgagee for all expenses in taking any such action, with interest at the Default Interest Rate (as defined in the Notes), and the amount thereof shall be secured by this Mortgage and shall, to the extent permitted by law, be in addition to the maximum amount of the Indebtedness evidenced by the Notes and the NPA.

(c)      Mortgagor authorizes Mortgagee, without notice, demand or any reservation of rights and without affecting this Mortgage, from time to time: (i) to accept from any Person and hold additional collateral for the payment of the Indebtedness or any part thereof, and to exchange, enforce or refrain from enforcing, or release such collateral or any part thereof; (ii) to accept and hold any endorsement or guaranty of payment of the Indebtedness or any part thereof, and to release or substitute any such obligation of any Guarantor or any Person who has given any collateral as security for the payment of the Indebtedness or any part thereof, or any other Person in any way obligated to pay the Indebtedness or any part thereof, and to enforce or refrain from enforcing, or compromise or modify, the terms of any obligation of any Guarantor or Person; (iii) upon the occurrence and during the continuance of an Event of Default, to direct the order or manner of the disposition of any and all collateral and the enforcement of any and all endorsements and guaranties relating to the Indebtedness or any part thereof as Mortgagee, in its sole discretion, may determine; and (iv) upon the occurrence and during the continuance of an Event of Default to determine the manner, amount and time of application of payments and credits, if any, to be made on all or any part of any component or components of the Indebtedness (whether principal, interest, costs and expenses, or otherwise) including if the amount of the Indebtedness secured by this Mortgage is less than the total amount of the obligations under the Notes or the NPA to make any such application to such obligations under the Notes or the NPA, if any, in excess of the amount of the Indebtedness secured by this Mortgage.

(d)      Notwithstanding the occurrence of an Event of Default, this Mortgage shall remain valid, binding and enforceable: (i) without deduction by reason of any setoff, defense or counterclaim of Mortgagor, Borrower or any Guarantor, (ii) without requiring protest or notice of nonpayment or notice of default to Mortgagor, Borrower, to any Guarantor, or to any other Person; (iii) without demand for payment or proof of such demand; (iv) without requiring Mortgagee to resort first to Mortgagor, Borrower or to any guaranty or any collateral which Mortgagee may hold; (v) without requiring notice of acceptance hereof or assent hereto by Mortgagee; and (vi) without requiring notice that any indebtedness has been incurred or of the reliance by Mortgagee upon this Mortgage; all of which Mortgagor hereby waives.

(e)      The enforceability of this Mortgage shall not be affected by: (i) any failure to perfect or continue the perfection of any security interest in or other lien on any collateral securing payment of the Indebtedness; (ii) the invalidity, unenforceability, or loss or change in priority of any such security interest or other lien; (iii) any failure to protect, preserve or insure any such collateral; (iv) any defense arising by reason of the cessation from any cause whatsoever of liability of Mortgagor, Borrower or any Guarantor; (v) any compromise of any obligation of Mortgagor, Borrower or any Guarantor; (vi) the invalidity or unenforceability of any of the Indebtedness; or (vii) any renewal, extension, acceleration, or other change in the time for payment, or the terms of the interest on the Indebtedness or any part thereof; all of which Mortgagor hereby waives.

(f)      If Mortgagee shall receive from or on behalf of Mortgagor any sum less than the full amount then due and payable, Mortgagee may, but shall not be obligated to, accept the same and, if it elects to accept any such payment, it may without waiving any Event of Default: (i) apply such payment on account of the Indebtedness or any amount payable hereunder, or under the NPA or any of the other Loan

SG-21146444v3

Documents, or (ii) hold same or any part thereof, without liability for interest, in a special account and from time to time apply same or any part thereof as specified in subsection (i) of this subsection.

17.    **INTENTIONALLY OMITTED**.

18.    **APPLICATION OF AND INTEREST ON CONDEMNATION AWARD**. Mortgagor consents that Mortgagee may retain and apply the proceeds of any award by a condemning authority in satisfaction or reduction of the Indebtedness, whether or not then due and payable, or it may pay the same, wholly or in part, to Mortgagor for the restoration or alteration of the Mortgaged Property or for any other purpose satisfactory to Mortgagee, without affecting the lien of this Mortgage for the full amount of the Indebtedness before the making of such payment. In the event of the condemnation or taking by eminent domain of the Mortgaged Property or any portion thereof, Mortgagee shall not be limited to the interest paid on the award by the condemning authority, but shall be entitled to receive out of the award interest on the Indebtedness in accordance with its terms.

19.    **APPOINTMENT OF RECEIVER**. In addition to any other remedy, upon the occurrence and during the continuance of any Event of Default, Mortgagee, in any action to foreclose this Mortgage, shall be entitled, without notice or demand and without regard to the adequacy of any security for the Indebtedness or the solvency or insolvency of any Person liable for the payment thereof, to the appointment of a receiver to take possession of and be responsible for the Mortgaged Property and of the rents, issues and profits of the Mortgaged Property.

20.    **SALE IN ONE OR MORE PARCELS**. In case of a foreclosure sale, the Mortgaged Property may be sold in one or more parcels, any provision of any statute, regulation or other law to the contrary notwithstanding.

21.    **ESTOPPEL STATEMENT**. Upon request by Mortgagee, Mortgagor shall furnish to Mortgagee, within five (5) days if such request is made in person or within ten (10) days if such request is otherwise made, a written statement duly acknowledged of the amount of the Indebtedness and whether any offsets or defenses exist against the Indebtedness.

22.    **RIGHT TO INSPECT AND EXAMINE**. Upon request and prior notice (except that upon the occurrence and during the continuance of an Event of Default no such notice shall be required) by Mortgagee, Mortgagor shall immediately permit Mortgagee and each officer, employee, accountant, attorney and other agent of Mortgagee to enter and inspect the Mortgaged Property and to examine, audit, copy and extract each record of Mortgagor or Borrower relating to the Mortgaged Property or any portion thereof, subject to all applicable laws.

23.    **AUTHORIZATION AND POWER OF ATTORNEY**. Mortgagee is irrevocably and unconditionally authorized to take, and Mortgagor irrevocably and unconditionally appoints Mortgagee as the attorney-in-fact of Mortgagor, with full power of substitution and of revocation, to take, in the name of Mortgagor or otherwise at the sole option of Mortgagee, each action relating to the Mortgaged Property or any portion thereof that, subject to this Mortgage, Mortgagor could take in the same manner, to the same extent and with the same effect as if Mortgagor were to take such action; provided, however, that Mortgagee shall not have the right, pursuant to such authorization or as such attorney-in-fact unless an Event of Default has occurred and is continuing, to sell or otherwise dispose of the Mortgaged Property or any portion thereof. Such power of attorney is coupled with an interest in favor of Mortgagee.

24.    **FURTHER ASSURANCES**. Promptly upon request by Mortgagee, Mortgagor shall execute and deliver each writing, and take each other action, that Mortgagee shall deem necessary or desirable at the sole option of Mortgagee (a) to perfect or accomplish any lien or security interest granted,

11

SG-21146444v3

or assignment made, pursuant to this Mortgage; (b) otherwise to accomplish any purpose of this Mortgage; (c) in connection with any transaction contemplated by this Mortgage; or (d) in connection with the Mortgaged Property or any portion thereof.

25.    **ENVIRONMENTAL REPRESENTATIONS, WARRANTIES AND INDEMNIFICATION.** Mortgagor represents and warrants, and continues to represent and warrant as long as this Mortgage is in effect, to Mortgagee that, subject to the information set forth in the environmental reports heretofore provided to the Mortgagee, (a) Mortgagor, Borrower and the Mortgaged Property are, to the best of Mortgagor's knowledge after due and diligent inquiry, in compliance with each statute, regulation or other law and each judgment, order or award of any court, agency or other governmental authority or of any arbitrator (individually an "**Environmental Requirement**") relating to the protection of any water, water vapor, land surface or subsurface, air, fish, wildlife, biota or other natural resources or governing the use, storage, treatment, generation, transportation, processing, handling, production or disposal of any chemical, natural or synthetic substance, waste, pollutant or contaminant (collectively "**Hazardous Materials**"), (b) Neither Mortgagor nor Borrower has been charged with, or received any notice that Mortgagor or borrower is under investigation for, the failure to comply with any Environmental Requirement, nor has Mortgagor or Borrower received any notice that Mortgagor or Borrower has or may have any liability or responsibility under any Environmental Requirement with respect to the Mortgaged Property or otherwise, (c) the Mortgaged Property has never been used for (i) the storage, treatment, generation, transportation, processing, handling, production or disposal of Hazardous Materials, except as permitted by law, (ii) a landfill or other waste disposal site, or (iii) military purposes, (d) no underground storage tanks are presently located on the Mortgaged Property and any tanks that may have been on the Mortgaged Property have been removed in accordance with all governmental regulations, including, without limitation, all Environmental Requirements, (e) the environmental media at the Mortgaged Property does not contain Hazardous Materials beyond any legally permitted level, (f) there has never been any release, threatened release, migration or uncontrolled presence of any Hazardous Materials on, at or from the Mortgaged Property or, to the knowledge of Mortgagor, within the immediate vicinity of the Mortgaged Property, and (g) Mortgagor has not received any notice of any such release, threatened release, migration or uncontrolled presence. Mortgagor shall not cause or permit the Mortgaged Property to be used in any way that would result in any of the representations and warranties contained in the preceding sentence to be false or misleading, in any material respects, at any future time. To the extent any such representation or warranty at any time is or becomes false or misleading, Mortgagor shall promptly notify Mortgagee thereof. If at any time Mortgagor obtains any evidence or information which suggests that potential environmental problems may exist on, at or about the Mortgaged Property, Mortgagee may request Mortgagor, at Mortgagor's own cost and expense, to conduct and complete investigations, studies, sampling and testing with respect to the Mortgaged Property requested by Mortgagee. Mortgagor shall promptly furnish to Mortgagee copies of all such investigations, studies, samplings and tests. Mortgagor shall (a) conduct and complete all such investigations, studies, samplings and testing, and all remedial, removal and other actions necessary with respect to the Mortgaged Property, in accordance with all applicable Environmental Requirements and promptly furnish to Mortgagee copies of all documents generated in connection therewith and (b) defend, reimburse, indemnify and hold harmless Mortgagee, its employees, agents, officers and directors, from and against any claims, demands, penalties, fines, liabilities, settlements, damages, costs or expenses of whatever kind or nature, known or unknown, contingent or otherwise, arising out of, or in any way related to, the violation of, or other liability or responsibility under, any Environmental Requirements, or the release, threatened release, migration or uncontrolled presence of any Hazardous Materials on, at or from the Mortgaged Property including attorney and consultant fees, investigation and laboratory fees, court costs and litigation expenses. In the event this Mortgage is foreclosed, or Mortgagor tenders a deed in lieu of foreclosure which Mortgagee agrees to accept, Mortgagor shall be responsible to deliver the Mortgaged Property to Mortgagee free of any and all Hazardous Materials other than any that are (a) normally used in Mortgagor's or its tenant's business, and (b) located and maintained thereon in compliance with all applicable Environmental Requirements and in a condition that conforms with all applicable Environmental

12

SG-21146444v3

Requirements. The provisions of this **Section 25** shall be in addition to any and all other obligations and liabilities Mortgagor or Borrower may have to Mortgagee at common law or under the NPA or any other agreement with Mortgagee, and shall survive the transactions contemplated in this Mortgage and the termination of this Mortgage.

26.     **EVENTS OF DEFAULT**.

(a)     The occurrence of any Event of Default (as defined therein) under the NPA or any of the other Loan Documents shall constitute an Event of Default hereunder.

(b)     Mortgagee, at its sole election, may declare all or any part of any Indebtedness not payable on demand to be immediately due and payable without demand or notice of any kind upon the occurrence and during the continuance of any Event of Default. All or any part of any Indebtedness not payable on demand shall be automatically and immediately due and payable, without demand or notice of any kind, upon the occurrence of one or more Events of Default under **Sections 7.7 and 7.8** of the NPA. The provisions of this paragraph are not intended in any way to affect any rights of Mortgagee with respect to any Indebtedness which may now or hereafter be payable on demand.

(c)     Upon the occurrence and during the continuance of an Event of Default, whether or not foreclosure proceedings have been instituted, Mortgagor shall, upon demand, surrender possession of the Mortgaged Property to Mortgagee. If Mortgagor remains in possession of the Mortgaged Property after the occurrence of an Event of Default and demand by Mortgagee, the possession shall be as tenant of Mortgagee and Mortgagor agrees to pay in advance upon demand to Mortgagee a reasonable monthly rental for the Mortgaged Property or portion so occupied. Mortgagee may dispossess, by summary proceedings or otherwise, any tenant of Mortgagor defaulting in the payment of rent. If a receiver is appointed, this covenant shall inure to the benefit of such receiver. Mortgagee may, at its option, foreclose this Mortgage subject to the rights of tenants of the Mortgaged Property which are subordinate to the lien of this Mortgage.

(d)     If the Indebtedness, as evidenced by a single note or other written instrument shall exceed the amount secured by this Mortgage, or as evidenced by a combination of same that singularly or in part collectively may be less than said secured amount but combined exceed said secured amount, Mortgagee, in any foreclosure hereof, shall have the right to sue and collect the excess in the same action as commenced for the foreclosure hereof, and recover a money judgment for said excess with all the rights attendant thereto, including the issuance of an execution to the sheriff for collection thereof, and Mortgagor hereby waives any defense based upon a claim that in doing so, Mortgagee is splitting its cause of action if it seeks to foreclose this Mortgage for part of the indebtedness and recover at law for another part.

(e)     Upon the occurrence and during the continuance of an Event of Default, Mortgagee may pursue, take or refrain from pursuing any remedy for collection of the Indebtedness, including foreclosure of this Mortgage.

(f)     Mortgagee may, either with or without entry or taking possession of the Mortgaged Property as provided in this Mortgage or otherwise, personally or by its agents or attorneys, and without prejudice to the right to bring an action of foreclosure of this Mortgage: (i) sell the Mortgaged Property or any part thereof pursuant to any procedures provided by applicable law allowing non-judicial foreclosure of this Mortgage by sale, and all estate, right, title, interest, claim and demand therein, and right of redemption thereof, at one or more sales as an entirety or in parcels, and at such time and place upon such terms and after such notice thereof as may be required or permitted by applicable law or (ii) take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Notes, the NPA, this Mortgage or any of the other Loan Documents, or in aid of the execution of any power granted in this Mortgage, or for any

13

foreclosure under this Mortgage, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee may elect. Any reference in this Mortgage to an action or right of Mortgagee in regard to or in connection with a "foreclosure proceeding" shall be deemed to include a sale and/or proceeding under this subsection, including a non-judicial foreclosure of mortgage by sale.

(g)     An Event of Default shall be deemed to be "continuing" for all purposes of this Mortgage and the other Loan Documents, notwithstanding any purported curing of such Event of Default, unless, prior to the receipt by Mortgagor of a notice from Mortgagee stating that Mortgagee shall have elected to accelerate the Indebtedness, Mortgagor shall have cured such Event of Default to the satisfaction of Mortgagee and so notified Mortgagee and Mortgagee shall have accepted such cure in writing or Mortgagee shall have waived such Event of Default in writing.

27.     **EXPENSES**. Mortgagor shall pay to Mortgagee on demand and after presentation of bills and invoices all reasonable costs and expenses (including attorneys' fees and disbursements whether for internal or outside counsel) incurred by Mortgagee in connection with the Indebtedness or this Mortgage including costs of collection, of preserving or exercising any right or remedy of Mortgagee under this Mortgage or any related security agreement or guaranty, of workout or bankruptcy proceedings by or against Mortgagor, of defending against any claim asserted as a direct or indirect result of the Indebtedness or of performing any obligation of Mortgagor pursuant to this Mortgage or otherwise (including payment of any amount Mortgagor is obligated to pay pursuant to this Mortgage and performance of any obligation of Mortgagor pursuant to this Mortgage). Mortgagor agrees to defend and indemnify Mortgagee from any and all third party claims arising from Mortgagor's duties as owner and/or occupant of the Mortgaged Property, and further agrees to pay, upon demand, any expense that Mortgagee may incur (including attorneys' fees and disbursements whether for internal or outside counsel) due to Mortgagor's failure to provide appropriate defense and indemnification to Mortgagee in a timely manner. Mortgagee reserves the right to have Mortgagor pay, upon demand, administrative fee(s) in regard to any administrative action Mortgagee is required or requested to take including the preparation of discharges, releases or assignments to third parties. Costs and expenses shall accrue interest at the Default Interest Rate set forth in the Notes from the date of demand until payment is actually received by Mortgagee. Each such cost and expense and any interest thereon shall constitute part of the Indebtedness and be secured by this Mortgage and may be added to the judgment in any suit brought by Mortgagee or its agents against Mortgagor on this Mortgage.

28.     **NOTICES**. Any demand or notice hereunder or under any applicable law pertaining hereto shall be in writing and duly given if delivered to Mortgagor (at its address on Mortgagee's records) or to Mortgagee (at the address on page one and separately to Mortgagee officer responsible for Mortgagor's relationship with Mortgagee with a copy to: Shipman & Goodwin LLP, One Constitution Plaza, Hartford, Connecticut 06103, Attn: James Schulwolf, Esq.). Such notice or demand shall be deemed sufficiently given for all purposes when delivered (i) by personal service and shall be deemed effective when delivered, (ii) by mail or courier and shall be deemed effective three (3) Business Days after deposit in an official depository maintained by the United States Post Office for the collection of mail, or (iii) one (1) business day after delivery to a nationally recognized overnight courier service (e.g.. Federal Express).

29.     **LITIGATION.** Mortgagor shall promptly notify Mortgagee in writing of any litigation, proceeding, or counterclaim against, or of any investigation of, Mortgagor or Borrower (or the threat thereof) as provided in the NPA. Mortgagor shall furnish to Mortgagee such information regarding any such litigation, proceeding, counterclaim, or investigation as Mortgagee shall request.

30.     **NOTICE OF NON-COMPLIANCE**. Mortgagor shall notify Mortgagee in writing of any failure by Mortgagor or Borrower to comply with any provision of the NPA, the Notes, this Mortgage or any document executed in connection therewith immediately upon learning of such non-compliance, or if any representation, warranty or covenant contained in any such document is no longer true. Mortgagor shall

14

also immediately notify Mortgagee in writing if there is any material adverse change in any of the information or financial statements supplied to Mortgagee to induce Mortgagee to extend credit to Borrower or if such information or financial statement is required under this Mortgage or any other document executed in connection therewith.

31.    **COVENANTS SHALL RUN WITH THE LAND.** The covenants contained in this Mortgage shall run with the land and bind Mortgagor, each successor and assign of Mortgagor and each subsequent owner, encumbrancer, tenant and subtenant of the Mortgaged Property or any portion thereof, and shall inure to the benefit of, and be enforceable by Mortgagee and each successor and assign of Mortgagee.

32.    **NONWAIVER BY MORTGAGEE.** All rights and remedies of Mortgagee under this Mortgage and its other agreements with Mortgagor are cumulative, and no right or remedy shall be exclusive of any other right or remedy. No single, partial or delayed exercise by Mortgagee or its agents of any right or remedy shall preclude full and timely exercise by Mortgagee or its agents at any time of any right or remedy of Mortgagee without notice or demand, at Mortgagee's sole option. No course of dealing or other conduct, no oral agreement or representation made by Mortgagee or its agents or usage of trade shall operate as a waiver of any right or remedy of Mortgagee. No waiver of any right or remedy of Mortgagee hereunder shall be effective unless made specifically in writing by Mortgagee. No notice or demand on Mortgagor, Borrower or any Guarantor in any case shall entitle Mortgagor, Borrower or any Guarantor to any other or further notice in similar or other circumstances.

33.    **TERM; SURVIVAL.** The term of this Mortgage and Mortgagor's obligations hereunder shall continue until the Indebtedness has been paid in full to Mortgagee's satisfaction and all other obligations under the Notes and NPA are fully satisfied. Mortgagor's obligation to pay the costs and expenses hereunder shall survive the term of this Mortgage and entry of any judgment of foreclosure. Mortgagor's representations, warranties, covenants and agreements shall survive during the term of this Mortgage and shall be presumed to have been relied upon by Mortgagee. If after receipt of any payment of all or any part of the Indebtedness, Mortgagee is for any reason compelled to surrender such payment to any person or entity because such payment is determined to be void or voidable as a preference, impermissible set-off, or a diversion of trust funds, or for any other reason, this Mortgage shall continue in full force notwithstanding any contrary action which may have been taken by Mortgagee in reliance upon such payment, and any such contrary action so taken shall be without prejudice to Mortgagee's rights under this Mortgage and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

34.    **MISCELLANEOUS.** This Mortgage is absolute and unconditional. This Mortgage and all documents, including the NPA, the Notes, the Loan Documents, any guaranty and any other document required to be executed by Mortgagor, Borrower or any Guarantor in connection with the transaction contemplated hereby constitute the entire agreement and understanding between the parties hereto with respect to such transaction and supersedes all prior negotiations, courses of dealing, understandings, and agreements between such parties with respect to such transactions. This Mortgage is a binding obligation enforceable against Mortgagor and its successors and assigns and shall inure to the benefit of Mortgagee and its successors and assigns. Any reference herein to "**Mortgagee**" shall be deemed to include and apply to every subsequent holder of this Mortgage and any reference herein to "**Mortgagor**" or "**Guarantor**" shall include; (i) any successor individual or individuals, association, partnership, limited liability company or corporation to which all or substantially all of the business or assets of Mortgagor or any Guarantor, as the case may be, shall have been transferred; (ii) in the case of a partnership Mortgagor or any Guarantor (as the case may be) any new partnership which shall have been created by reason of the admission of any new partner or partners therein, or by reason of the dissolution of the existing partnership by voluntary agreement or the death, resignation or other withdrawal of any partner; and (iii) in the case of a corporate

15

SG-21146444v3

or limited liability company, Mortgagor or any Guarantor (as the case may be) any other entity into or with which Mortgagor or any Guarantor (as the case may be) shall have been merged, consolidated, reorganized, or absorbed. It is the intent of Mortgagor and Mortgagee that the provisions of this Mortgage shall be construed as affording to Mortgagee rights additional to, and not exclusive of, the rights conferred under the provisions contained in such statutory form. Unless the context otherwise clearly requires, references to plural includes the singular and references to the singular include the plural; the word "or" has the inclusive meaning represented by the phrase "and/or"; the word "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; and captions or section headings are solely for convenience and not part of the substance of this Mortgage. Any representation, warranty, covenant or agreement herein shall survive execution and delivery of this Mortgage and shall be deemed continuous. Each provision of this Mortgage shall be interpreted as consistent with existing law and shall be deemed amended to the extent necessary to comply with any conflicting law. If any provision nevertheless is held invalid, the other provisions shall remain in effect. Mortgagor agrees that in any legal proceeding, a photocopy of this Mortgage kept in Mortgagee's course of business may be admitted into evidence as an original.

35.    **GOVERNING LAW; JURISDICTION**. This Mortgage will be interpreted in accordance with the laws of the State of Illinois excluding its conflict of laws rules. **MORTGAGOR HEREBY IRREVOCABLY CONSENTS TO THE JURISDICTION OF STATE COURT IN LAKE COUNTY, ILLINOIS OR FEDERAL COURT COVERING LAKE COUNTY, ILLINOIS AND CONSENTS THAT MORTGAGEE MAY EFFECT ANY SERVICE OF PROCESS IN ANY  MANNER PERMITTED BY APPLICABLE LAW AND AT MORTGAGOR'S ADDRESS SET FORTH ABOVE FOR PROVIDING NOTICE OR DEMAND; PROVIDED THAT NOTHING CONTAINED IN THIS MORTGAGE WILL PREVENT MORTGAGEE FROM BRINGING ANY ACTION, ENFORCING ANY AWARD OR JUDGMENT OR EXERCISING ANY RIGHTS AGAINST MORTGAGOR, AGAINST ANY SECURITY OR AGAINST ANY PROPERTY OF MORTGAGOR WITHIN ANY OTHER COUNTY, STATE OR OTHER FOREIGN OR DOMESTIC JURISDICTION.** Mortgagor acknowledges and agrees that the venue provided above is the most convenient forum for Mortgagee and Mortgagor. Mortgagor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Mortgage.

36.    **WAIVER OF JURY TRIAL. MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY EACH WAIVE ANY RIGHT TO TRIAL BY JURY THEY MAY HAVE IN ANY ACTION OR PROCEEDING, IN LAW OR IN EQUITY, IN CONNECTION WITH THIS MORTGAGE OR THE TRANSACTIONS RELATED THERETO. MORTGAGOR REPRESENTS AND WARRANTS THAT NO REPRESENTATIVE OR AGENT OF MORTGAGEE HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT MORTGAGEE WILL NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS RIGHT TO JURY TRIAL WAIVER. MORTGAGOR ACKNOWLEDGES THAT MORTGAGEE HAS BEEN INDUCED TO ACCEPT THIS MORTGAGE BY, AMONG OTHER THINGS, THE PROVISIONS OF THIS SECTION.**

37.    **JOINT AND SEVERAL**. If there is more than one Mortgagor, each of them shall be jointly and severally liable for all amounts, which become due, and the performance of all obligations under this Mortgage and each other Loan Document, and the term "Mortgagor" shall include each as well as all of them.

38.    **REAL PROPERTY LAW**. The rights of Mortgagee arising under the clauses and covenants contained in this Mortgage shall be separate, distinct and cumulative and none of them shall be in exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one

SG-21146444v3

provision herein to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding.

39. **INTENTIONALLY OMITTED**.

40. **INTENTIONALLY OMITTED**.

41. **PAYMENT OF TRANSFER TAXES**. Upon any foreclosure of this Mortgage or any transfer in lieu of foreclosure, Mortgagor shall pay any transfer tax payable pursuant to Illinois law, as the same may be amended, supplemented and/or replaced from time to time (collectively, the "**Transfer Tax Law**"). Mortgagor shall, at any time immediately upon request therefore by Mortgagee, execute and deliver such affidavits, questionnaires and documents as may be necessary or desirable to enable Mortgagee to comply with said Transfer Tax Law. Mortgagor hereby indemnifies and agrees to hold Mortgagee harmless from and against any loss, cost, damage and expense (including, without limitation, attorneys' fees) that Mortgagee may suffer or incur by reason of Mortgagor's failure to comply with its obligations under this subsection. The foregoing indemnity shall survive any termination of this Mortgage, whether by foreclosure, deed in lieu of foreclosure, or otherwise.

42. **INTENTIONALLY OMITTED**.

43. **MAXIMUM AMOUNT OF INDEBTEDNESS**. Notwithstanding anything to the contrary in this Mortgage, the maximum aggregate principal amount of indebtedness that is, or under any contingency may be, secured by this Mortgage, either at execution or any time thereafter is **$5,000,000.00** (the "**Secured Amount**"), plus interest, late charges, default interest, and any prepayment premium as additional interest, thereon, and all other sums, charges, and fees payable as specified in the NPA, the Notes or the other Loan Documents, and amounts that Mortgagee expends after failure of Borrower to make such payments or perform such obligations under the Loan Documents, or after a declaration of default under the Mortgage to the extent that any such amounts shall constitute payment of (i) taxes, charges or assessments that may be imposed by law upon any Mortgaged Property; (ii) premiums on insurance policies covering any of the Mortgaged Property; (iii) expenses incurred in upholding the lien of this Mortgage, including the expenses of any litigation to prosecute or defend the rights and lien created by this Mortgage; (iv) any amount, cost or charge to which Mortgagee becomes subrogated, upon payment, whether under recognized principals of law or equity, or under express statutory authority; or, (v) any other amount secured by this Mortgage, which if not limited by the limitations set forth above, would not increase the amount of mortgage recording taxes, if any, payable with respect to this Mortgage; then, in each such event, such amounts or costs, together with interest thereon, shall be added to the indebtedness secured hereby and shall be secured by this Mortgage.

44. **ASSIGNMENT OF MORTGAGE**. Upon payment to Mortgagee of all of the outstanding Indebtedness as provided for herein, in the Notes, the NPA and the other Loan Documents (including, without limitation, all fees, costs, and expenses incurred by or on behalf of Mortgagee hereunder and/or under any other Loan Document or for which Mortgagee is entitled to be reimbursed hereunder or thereunder) and the performance by Mortgagor and Borrower of all of the obligations imposed on Mortgagor and Borrower in the Loan Documents, Mortgagee shall assign without recourse and without any representations and warranties all of its right, title and interest in and to the Notes and this Mortgage to a lender designated by Mortgagor (the "**Designated Lender**"), as long as all of the following conditions, in addition to Mortgagee's then current procedures and conditions with respect to any such assignment, are satisfied:

(a) the Designated Lender or Mortgagor requests such assignment in writing at least thirty (30) days prior to the prepayment or payment in full of the Indebtedness, which request shall include

SG-21146444v3

(i) such request to assign; (ii) the legal name and address of the Designated Lender; and (iii) an updated title search;

       (b)     such assignment shall be without recourse to Mortgagee and shall expressly disclaim any representations and warranties from Mortgagee;

       (c)     the Designating Lender is an institutional lender, a commercial bank, an insurance company, a pension fund or a conduit lender, or any other bona fide mortgage lender, which may include an institution not ordinarily in the business of holding mortgage loans, provided that the acquisition and holding of the Loan by such individual or entity is a bona fide transaction which complies with all applicable laws, regulations and codes;

       (d)     the delivery of such assignment occurs concurrently with the payment in full of the Indebtedness;

       (e)     such assignment can be accomplished without violating the provisions of applicable law or administrative regulations;

       (f)     Mortgagee shall deliver to the Designated Lender upon payment in full of the Indebtedness the original documents in its possession without recourse or representation and warranties;

       (g)     Mortgagor shall pay all Mortgagee's costs and expenses including, without limitation, any legal fees incurred in connection with any such assignment;

       (h)     no Event of Default or Potential Default exists; and

       (i)     such payment is not the result of Mortgagee's acceleration of the maturity date of the Loan.

    45.    **CONFLICT**. Notwithstanding anything to the contrary contained herein, to the extent of any conflict between the terms contained in this Mortgage and those contained in the NPA, the terms of the NPA shall prevail and control, except with respect to any conflict regarding the priority of a lien with regard to specific Mortgaged Property and/or Collateral then the terms of this Mortgage shall control.

[The Remainder of This Page Intentionally Left Blank]

18

**IN WITNESS WHEREOF**, this Mortgage has been duly executed by Mortgagor the day and year first above written.

<u>**MORTGAGOR:**</u>

**BANNER LANDCO LLC,**
an Illinois limited liability company

By: _____

Name:   Michael Shabsels
Title:    Manager

STATE OF NEW YORK ⟩
⟩ : SS. _____
COUNTY OF WESTCHESTER ⟩

On the 19th day of April in the year 2024, before me, the undersigned notary public, personally appeared Michael Shabsels, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person/entity upon behalf of which the individual acted, executed the instrument.

Name:   ERIC RUDER
Notary Public
My Commission Expires: Dec. 13, 2025

ERIC RUDER
Notary Public - State of New York
No. 02RU6426404
Qualified in Nassau County
My Comm. Expires Dec. 13, 2025

[SIGNATURE AND ACKNOWLEDGEMENT PAGE TO
MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT]
SG-21146444v2

## SCHEDULE A - PROPERTY DESCRIPTION

PARCEL 1:

THAT PART OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 43 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING WEST OF THE CENTER LINE OF THE DITCH OF DRAINAGE DISTRICT NO. 1 OF THE TOWNSHIP OF VERNON (SOMETIMES KNOWN AS THE WEST FORK OF THE NORTH BRANCH OF THE CHICAGO RIVER) (EXCEPT FROM THAT PART OF SAID SOUTH 1/2 OF THE NORTHWEST 1/4, THE SOUTH 345.91 FEET OF THE WEST 647.51 FEET THEREOF AND ALSO EXCEPTING THEREFROM THAT PART LYING NORTH OF A LINE 405.91 FEET NORTH OF THE SOUTH LINE OF AFORESAID QUARTER SECTION), IN LAKE COUNTY, ILLINOIS.

PARCEL 2:

THE NORTH 10 ACRES OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 12, TOWNSHIP 43 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THE WEST 647.51 FEET THEREOF), IN LAKE COUNTY, ILLINOIS.

PARCEL 3:

THAT PART OF THE NORTHEAST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 12, TOWNSHIP 43 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING SOUTH AND WEST OF THE CENTER LINE OF SAID DITCH OF DRAINAGE DISTRICT NO. 1 (EXCEPTING THEREFROM THAT PART LYING EAST OF A LINE 567.21 FEET EAST OF AND PARALLEL WITH THE WEST LINE OF SAID QUARTER SECTION), IN LAKE COUNTY, ILLINOIS.

PARCEL 4:

EASEMENT FOR THE BENEFIT OF PARCELS 1, 2 AND 3 WHEN TAKEN AS A TRACT, FOR INGRESS AND EGRESS, DRAINAGE AND PUBLIC UTILITIES OVER THE NORTH 130 FEET OF THE SOUTH 535.91 FEET OF THE WEST 80 FEET OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 12, TOWNSHIP 43 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, AS CREATED BY INSTRUMENT RECORDED APRIL 9, 1987 AS DOCUMENT 2554154, IN LAKE COUNTY, ILLINOIS.

[Schedule A]
SG-21146444v3