UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

BLANK ROME LLP
Michael B. Schaedle, Esquire
Josef W. Mintz, Esquire
Lawrence R. Thomas III, Esquire
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
(215) 569-5500
mike.schaedle@blankrome.com
josef.mintz@blankrome.com
lorenzo.thomas@blankrome.com

*Attorneys for Mitchell Black and Camping
Management Corporation*

|  |  |
|---|---|
| In re: | Case No.:  26-16388 |
| SIMAD HOLDINGS LTD., | Chapter:  11 |
| Debtor. | Judge:   Hon. Christine M. Gravelle |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CAMPING
MANAGEMENT CORPORATION AND MITCHELL BLACK IN RESPONSE
TO (I) THE SIMAD DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS AUTHORIZING POSTPETITION FINANCING AND (II) THE
SIMAD DEBTORS' MOTION FOR ENTRY OF AN ORDER
<u>APPROVING BIDDING PROCEDURES</u>**

Camping Management Corporation ("<u>CMC</u>") and Mitchell "Mickey" Black ("<u>Mr.
Black</u>"), by and through their undersigned counsel, hereby file this Limited Objection and
Reservation of Rights (this "<u>Objection</u>") in response to (I) the SIMAD Debtors' *Motion for Entry
of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing Pursuant
to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e); (II) Granting
Liens and Providing Superpriority Administrative Expense Status; (III) Modifying the Automatic
Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 225] (the

1

"DIP Motion") and (II) the SIMAD Debtors' *Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets; (II) Approving the Form and Manner of Notice; (III) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 227] (the "Sale Motion"), and respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      CMC is a secured creditor of Debtors Pine Forest Campco LLC ("Campco") and Pine Forest Landco LLC ("Landco", and together with Campco, the "Pine Forest Debtors"), holding a Subordinated Promissory Note dated December 13, 2022 in the original principal amount of $3,860,000.00 (the "Subordinated Note"), secured by (a) a subordinated mortgage on real property in Pike County, Pennsylvania (the "Subordinate Mortgage"), (b) a UCC security interest in fixtures and chattels, (c) a pledge of 100% of the membership interests in Campco and Landco, and (d) personal guaranties of Michael and David Shabsels.

2.      Mr. Black is the President of CMC and the current President of Pine Forest Camp—a 4th generation family operator of a camp now in its 95th season of continuous operation. Mr. Black has devoted his career to Pine Forest Camp and has a deep personal and professional commitment to its continued success.

3.      CMC and Mr. Black do not oppose the Debtors' efforts to obtain postpetition financing or to conduct a sale process. To the contrary, CMC and Mr. Black support the Debtors' efforts to preserve value, ensure continuity of camp operations, and maximize recoveries for all stakeholders. This Objection is filed solely to ensure that the resulting orders do not inadvertently impair or extinguish rights that are expressly preserved under the governing agreements, and is consistent with CMC's right under both the Wayne Bank and Mizzen subordination agreements to

2

"prove, preserve, or protect (but not enforce) its rights in the Collateral."

## I.  **LIMITED OBJECTION TO THE DIP MOTION**

### A.  **Joinder in Wayne Bank's Limited Objection**

4.  CMC and Mr. Black hereby join in and adopt by reference the Limited Objection of Wayne Bank to the Debtors' Motion for Entry of Interim and Final Orders Authorizing Postpetition Financing [Docket No. 252] (the "Wayne Bank DIP Objection"). CMC agrees with Wayne Bank that the proposed Interim Order should be construed to grant DIP Liens, Priming Liens, Adequate Protection Liens, replacement liens, superpriority claims, and all other liens and security interests solely upon assets owned by the entities comprising the "SIMAD Debtor Borrowers," as such term is defined in the DIP Motion and the DIP Documents, and not upon assets owned by any other SIMAD Debtor—including, critically, the Pine Forest Debtors. CMC further joins in Wayne Bank's proposed modification language set forth in paragraph 13 of the Wayne Bank DIP Objection. The Pine Forest Debtors are not SIMAD Debtor Borrowers, and their assets—which constitute CMC's collateral—should not be encumbered by the DIP Facility.

### B.  **The Proposed Marshalling Waiver Impairs CMC's Rights.**

5.  The DIP Motion seeks a waiver of the equitable doctrine of marshalling "against the DIP Agent and the DIP Lenders, with respect to the collateral securing the DIP Loans or the Prepetition Obligations." CMC objects to any marshalling waiver that would bind CMC or extinguish CMC's contractual right to compel Wayne Bank and Mizzen Capital, LP ("Mizzen") to satisfy their claims from non-Pine Forest collateral before proceeding against Pine Forest assets. Neither the Subordination and Intercreditor Agreement with Wayne Bank (the "Wayne Bank Subordination Agreement") nor the Subordination Agreement with Mizzen (the "Mizzen

3

Subordination Agreement") contains a waiver of marshalling rights, and entry of the Interim DIP Order should not override CMC's contractual marshalling rights.

**C.      CMC Has Not Consented to Priming.**

6.      The DIP Motion provides that "holders of the Primed Liens shall be deemed to have consented to the priming of the Primed Liens." CMC has not consented to the priming of its liens and cannot be "deemed" to have consented. CMC is not a party to the DIP Documents. To the extent the proposed Interim Order purports to prime CMC's liens on Pine Forest assets, CMC objects absent a finding of adequate protection under 11 U.S.C. § 364(d)(1)(B). CMC joins Wayne Bank in objecting to any priming of its liens without notice and a hearing.

**D.      Adequate Protection to Mizzen Must Remain Subject to the Senior Debt Cap.**

7.      Any adequate protection, replacement liens, or superpriority claims granted to Mizzen in connection with the DIP Facility must remain subject to the Senior Debt Cap of $5,720,000.00 in principal (plus interest, fees, costs, expenses, and indemnities) set forth in the Mizzen Subordination Agreement (the "Senior Debt Cap"). CMC has not consented to any increase in the Senior Debt Cap. The Mizzen Subordination Agreement expressly provides that once Mizzen has received aggregate payments equal to the Senior Debt Cap, "any further rights of Mizzen to receive any payments with respect to the Indebtedness shall be subordinated to the right of the Creditor to receive payment in full of the obligations owed under the Creditor Loan Documents" (the "flip provision"). The DIP Order should expressly preserve this contractual limitation.

**E.      CMC Requires Adequate Protection.**

8.      To the extent the DIP Facility purports to encumber Pine Forest assets (which CMC contends it should not, consistent with the Wayne Bank DIP Objection), CMC requests junior

adequate protection consistent with its position in the cash collateral orders entered in these cases: (a) a junior replacement lien on postpetition collateral of the Pine Forest Debtors, (b) a junior superpriority administrative expense claim under 11 U.S.C. § 507(b), (c) maintenance of insurance on the Pine Forest real property, and (d) periodic reporting to CMC on the condition and operation of Pine Forest assets.

## II.      LIMITED OBJECTION TO THE SALE MOTION

### A.      Sale Proceeds Must Respect the Senior Debt Cap and Flip Provision.

9.      The Sale Motion contemplates sales of the Debtors' assets free and clear of liens under 11 U.S.C. § 363(f), with liens attaching to sale proceeds. CMC does not object to a sale process but requires that any proceeds waterfall for a sale of Pine Forest assets respect the Senior Debt Cap and flip provision—i.e., that Mizzen not receive proceeds from Pine Forest assets in excess of the Senior Debt Cap ahead of CMC. CMC requests that any sale order expressly incorporate the Senior Debt Cap and flip provision and direct the closing or disbursing agent to track and report aggregate distributions to Mizzen from all sources.

### B.      CMC Requests Consultation Party Status for Pine Forest Sales.

10.      CMC requests designation as a Consultation Party (or equivalent notice and consultation rights) with respect to any sale of Pine Forest assets. CMC and Mr. Black have unique institutional knowledge of Pine Forest operations and value that would benefit the sale process, and CMC holds direct security interests in the very assets being sold.

### C.      CMC Reserves Its Credit Bid Rights and Mr. Black May Seek to Bid.

11.      CMC reserves its right to credit bid under 11 U.S.C. § 363(k) at any auction of Pine Forest assets. Mr. Black, as the 4th-generation operator of Pine Forest Camp, may wish to

participate in the sale process individually or with a partner.

**D.     CMC Must Receive Private Sale Notices.**

12.     CMC holds a recorded mortgage and security interests in the Pine Forest assets. CMC must be identified as a "Secured Creditor" for purposes of the Private Sale Procedures set forth in the Sale Motion and must receive any Private Sale Notice relating to Pine Forest assets.

**E.     Bidders Must Disclose their Operational Intent.**

13.     Mr. Black is the current President of Pine Forest Camp and has devoted his career to its success. CMC and Mr. Black request that any Sale Order require bidders for Pine Forest assets to disclose their intentions regarding the retention of existing management, continuity of camp operations, and long-term operational plans. Such disclosures are material to evaluating whether a bid maximizes value.

<u>**RESERVATION OF RIGHTS**</u>

14.     CMC and Mr. Black expressly reserve all rights, claims, and defenses in includingthe right to amend and supplement this limited objection at any hearing.  Nothing herein shall be construed as (a) consent to use of CMC's collateral, (b) a waiver of any right, claim, or defense, (c) an admission of the validity, priority, or extent of any other party's claims or liens, (d) consent to priming of CMC's liens, (e) consent to any increase in the Senior Debt Cap, or (f) a limitation on CMC's or Mr. Black's right to seek further relief from this Court.

<u>**CONCLUSION**</u>

CMC and Mr. Black respectfully request that the Court (a) enter the proposed Interim DIP Order only as modified in the Wayne Bank DIP Objection, expressly limiting the collateral securing the DIP Facility to assets owned by the defined SIMAD Debtor Borrowers, preserving

CMC's rights with respect to all other collateral, (b) enter the proposed biding procedures order as modified herein; and (c) granting such other and further relief as the Court deems just and proper.

Dated:  June 26, 2026

Respectfully submitted,

**BLANK ROME LLP**

By:  */s/ Josef W. Mintz*
Michael B. Schaedle (NJ No. 31971992)
Josef W. Mintz (NJ No. 13422008)
Lawrence R. Thomas III (*pro hac vice pending*)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5500
Fax:    (215) 569-5555
Email: mike.schaedle@blankrome.com
        josef.mintz@blankrome.com
        lorenzo.thomas@blankrome.com

*Counsel for Mitchell Black and Camping Management Corporation*