**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., *et al.*,[1] | Case No. 26-16388 (CMG) |
| Debtors. | (Jointly Administered) |

**CONSENT ORDER APPROVING MESORAH**
**EMERGENCY DIP TERM SHEET ON AN INTERIM BASIS**

The relief set forth on the following pages, numbered two (2) through ten (10), is hereby

**ORDERED.**

---

[1]    A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD.  The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

(Page | 2)

Debtors:           SIMAD HOLDINGS LTD., *et al.*

Case No.           26-16388 (CMG)

Caption of Order:  Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis

This consent order (the "Consent Order") is made by and between Mesorahco LLC and Mesorahland LLC (the "Mesorah Debtors") and DH1 Holdings LLC, successor to Wayne Bank ("DIP Lender" and, together with the Mesorah Debtors, the "Parties"), by and through their duly authorized representative or undersigned counsel.

**WHEREAS**, as on June 4, 2026, the Mesorah Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code;

**WHEREAS,** the Mesorah Debtors have an emergent need for liquidity and obtained a commitment from the DIP Lender to provide up to $4,000,000 in debtor-in-possession financing facility, including $1,000,000 upon entry of this Consent Order and a total of $1,800,000 between entry of this Consent Order and the Final Hearing, on the terms set forth in the Debtor-in-Possession Financing Term Sheet attached hereto as **Exhibit A** (the "Emergency DIP Term Sheet",[2] the financing facility described therein the "DIP Advance", and the obligations created therein, the "DIP Obligations"); and

**WHEREAS,** the Mesorah Debtors have been unable to obtain (a) unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense, or (b) credit for money borrowed secured by a lien on property of the estates on more favorable terms and conditions than those provided in the Emergency DIP Term Sheet and this Consent Order. The Mesorah Debtors are unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections; and

---

[2]   Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Emergency DIP Term Sheet.

(Page | 3)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis |

**WHEREAS,** the DIP Lender is the successor in interest to Wayne Bank pursuant to that certain Assignment of Negotiable Instrument dated June 25, 2026, and the DIP Advance constitutes additional financing under the Existing Loan Documents (as defined in the Emergency DIP Term Sheet); and

**WHEREAS,** the Mesorah Debtors and the DIP Lender acknowledge and agree that this Consent Order and the Emergency DIP Term Sheet modify, amend, and supersede any and all prior agreements, documents, and instruments to the extent set forth in Paragraph 4 below, including without limitation the Existing Loan Documents (as defined in the Emergency DIP Term Sheet), any intercreditor agreements (including that certain Intercreditor and Subordination Agreement dated August 9, 2017), subordination agreements, or similar agreements by and among Wayne Bank, Mizzen Capital LP, Mizzen Capital II, LP (collectively, "Mizzen"), the U.S. Small Business Administration and/or any other party; and

**WHEREAS**, the Parties have agreed upon the terms set forth in this Consent Order, for which the Parties seek approval hereby.

**NOW THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION THE PARTIES HERETO ACKNOWLEDGE RECEIVING, IT IS HEREBY STIPULATED, AGREED AND ORDERED AS FOLLOWS:**

1.     The recitals set forth above are hereby made an integral part of the Consent Order and are incorporated herein.

2.     The Emergency DIP Term Sheet is **APPROVED** on an interim basis.

3.     Upon the entry of this Consent Order, the DIP Liens shall pursuant to § 364(d)(1) of the Bankruptcy Code, be perfected, first-priority senior priming liens on, and security interests,

(Page | 4)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis |

in all DIP Collateral that is subject to the existing liens in favor of any party holding liens in or security interests on assets of the Mesorah Debtors (the "Prepetition Secured Parties"), including the DIP Lender (in its capacity as successor to Wayne Bank with respect to the prepetition Existing Loan Documents), Mizzen (as defined below) and the U.S. Small Business Administration (the "SBA"), which liens and security interest secure any prepetition obligations of the Mesorah Debtors (the "Primed Liens").  Such Primed Liens shall (x) be primed by and made subject and subordinate to the perfected first-priority senior priming DIP Liens granted to the DIP Lender hereunder and (y) any liens granted after the Petition Date as adequate protection of any Primed Liens shall also be primed, all as provided in the Consent Order.  The granting of the DIP Liens is a condition to the Mesorah Debtors' borrowings under the Emergency DIP Term Sheet, which borrowing is necessary for the Mesorah Debtors to be able to continue to operate their business and administer the Chapter 11 Cases for the benefit of their estates and creditors.  The parties holding Primed Liens have consented to such treatment, and the terms of the adequate protection arrangements provided for herein are fair and reasonable and otherwise sufficient under the circumstances to adequately protect the Prepetition Secured Parties against any diminution in value with respect to the DIP Collateral as provided for herein; provided, however, Mizzen's consent is limited to the extension of DIP Advances totaling $1,800,000 on an interim basis under this Consent Order and any further DIP Advances beyond $1,800,000 as may approved at a final hearing shall be subject to Mizzen's written consent or pursuant to court order.

4.    Notwithstanding anything to the contrary in the Existing Loan Documents (including without limitation Section 12 of the Loan Agreement dated August 8, 2017 and all negative covenants contained therein), any intercreditor agreement (including without limitation

(Page | 5)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis |

the Intercreditor and Subordination Agreement dated August 9, 2017), subordination agreement, or any other agreement or document by and among Wayne Bank, the DIP Lender, Mizzen, the SBA, or any other Prepetition Secured Party, this Consent Order and the Emergency DIP Term Sheet shall control to the extent of any conflict or inconsistency with any such agreement or document and the Court hereby orders that the superseding, modification, and waiver provisions set forth in the Emergency DIP Term Sheet under the heading "Conflicts and Governing Provisions" are approved and enforceable in all respects; provided, however, Mizzen's consent to any such modification of any intercreditor agreement to which it and Wayne Bank are parties is limited to the extension of DIP Advances totaling $1,800,000 on an interim basis under this Consent Order and further DIP Advances beyond $1,800,000 as may approved at a final hearing shall be subject to Mizzen's written consent or pursuant to court order.

5.    **Mizzen Capital LP**

(a)    As adequate protection for the post-petition diminution in value of any of Mizzen Capital LP's ("Mizzen's") interests in the DIP Collateral as more particularly described in the Mesorah Mortgage and ALR (as defined in the *Interim Order Authorizing the SIMAD Debtors to use Cash Collateral, if Any of Mizzen Capital, LP and Mizzen Capital II LP Pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001 and Scheduling Final Hearing Date* [Docket No. 150] (the "Interim Mizzen Cash Collateral Order") arising from, resulting from or attributable to (a) the imposition of the automatic stay, or the use, sale or lease of such DIP Collateral, or (b) the Mesorah Debtors' entry into the Emergency DIP Term Sheet, the extension of post-petition financing thereunder, and subsequent receipt of funding thereunder (any such diminution in value,

(Page | 6)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis |

the "<u>Mizzen Diminution in Value</u>"), Mizzen shall be entitled to the following (collectively, the

"<u>Emergency Mizzen DIP Adequate Protection</u>"):

i.       Mizzen is granted a replacement perfected security interest under 11

U.S.C. § 361(2) in the assets of the Mesorah Debtors: (x) only to the extent of such Mizzen

Diminution in Value; (y) only to the extent such Mizzen's pre-petition claims and liens are valid;

and (z) with the same priority in the post-petition collateral and proceeds thereof of the Mesorah

Debtors that Mizzen held in the pre-petition DIP Collateral of the Mesorah Debtors, if any

ii.       The replacement lien and security interest granted herein is

automatically deemed perfected upon entry of this Consent Order without the necessity of Mizzen

taking possession of its Collateral in the Mesorah Debtors or filing financing statements,

mortgages or other documents.

iii.       Subject to the limitations set forth in Paragraph 4(a)(i)(x)-(z), and

solely to the extent that the adequate protection herein provided is insufficient to protect Mizzen

I's interest in its Collateral of the Mesorah Debtors from such Mizzen Diminution in Value, Mizzen

I shall have a super-priority administrative expense claim to the extent of such Mizzen Diminution

in Value, pursuant to 11 U.S.C. § 507(b), senior to any and all claims against the Mesorah Debtors

under 11 U.S.C. § 507(a)(2), whether in this proceeding or in any succeeding proceeding, subject

only to fees of the United States Trustee, the DIP Obligations and DIP Protections, and any other

adequate protection super-priority lien having priority in the Collateral.

iv.       The Emergency Mizzen DIP Adequate Protection shall be in

addition to the adequate protection provided under the Interim Mizzen Cash Collateral Order and

(Page | 7)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis |

the Emergency DIP Adequate Protection provided under the *Consent Order Approving Pine Forest Emergency DIP Term Sheet on an Interim Basis* [Docket No. 203].

   6.   **SBA.**

   (a)   As adequate protection for the post-petition diminution in value of any interests in the "Collateral" (as defined in the *Interim Order Authorizing the SIMAD Debtors to use Cash Collateral of the U.S. Small Business Administration Pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001 and Scheduling Final Hearing Date* [Docket No. 142] (the "Interim SBA Cash Collateral Order")) of the SBA arising from, resulting from or attributable to (a) the imposition of the automatic stay, or the use, sale or lease of such Collateral, or (b) the Mesorah Debtors' entry into the Emergency DIP Term Sheet, the extension of post-petition financing thereunder, and subsequent receipt of funding thereunder (any such diminution in value, the "SBA Diminution in Value"), SBA shall be entitled to the following (collectively, the "Emergency SBA DIP Adequate Protection"):

   i.   SBA is granted a replacement perfected security interest under 11 U.S.C. § 361(2) in the assets of the Mesorah Debtors: (x) only to the extent of such SBA Diminution in Value; (y) only to the extent such pre-petition claims and liens are valid; and (z) with the same priority in the post-petition collateral and proceeds thereof of the Mesorah Debtors that SBA held in the pre-petition Collateral of the Mesorah Debtors, if any.

   ii.   The replacement lien and security interest granted herein is automatically deemed perfected upon entry of this Consent Order without the necessity of the SBA taking possession of its Collateral in the Mesorah Debtors or filing financing statements, mortgages or other documents.

(Page | 8)

Debtors:           SIMAD HOLDINGS LTD., *et al.*
Case No.           26-16388 (CMG)
Caption of Order:  Consent Order Approving Mesorah Emergency DIP Term Sheet on an
                   Interim Basis

iii.     Subject to the limitations set forth in Paragraph 5(a)(i)(x)-(z), and solely to the extent that the adequate protection herein provided is insufficient to protect the SBA's interest in its Collateral of the Mesorah Debtors from such SBA Diminution in Value, SBA shall have a super-priority administrative expense claim to the extent of such SBA Diminution in Value, pursuant to 11 U.S.C. § 507(b), senior to any and all claims against the Mesorah Debtors under 11 U.S.C. § 507(a)(2), whether in this proceeding or in any succeeding proceeding, subject only to fees of the United States Trustee, the DIP Obligations and DIP Protections and any other adequate protection super-priority lien having priority in the Collateral.

iv.     The Emergency SBA DIP Adequate Protection shall be in addition to the adequate protection provided under the SBA Cash Collateral Order.

7.     The Mesorah Debtors shall provide Mizzen, the SBA, and any statutory committees appointed in these cases with: (A) a copy of the Approved Budget within two (2) business days of its approval; (B) copies of any weekly actual-to-budget reporting provided to the DIP Lender.

8.     Nothing herein shall prejudice the rights of any party in interest, including (a) Mizzen, (b) the SBA, (c) the Office of the United States Trustee or (d) any statutory committee appointed in these chapter 11 cases, to object to approval of the Emergency DIP Term Sheet or any subsequent debtor-in-possession loan provided by the DIP Lender on a final basis, as well as any sale under the Bid Procedures Order, and all such rights are reserved.

9.     The Parties are authorized to take all actions necessary to effectuate the relief granted pursuant to this Consent Order.

10.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Consent Order.

(Page | 9)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis |

11.     This Consent Order may be executed and delivered in any number of original or facsimile or electronic counterparts, each of which shall be deemed an original.

12.     The Mesorah Debtors shall serve by regular mail a copy of this Consent Order on all parties required to receive such service pursuant to Local Rule 9013-5(f).

13.     Notwithstanding anything in the Bankruptcy Rules or the Bankruptcy Local Rules, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.     The Mesorah Debtors shall comply with the Sale Milestones, Credit Bid Rights, negative covenants, Events of Default, reporting obligations, and remedies provisions set forth in the Emergency DIP Term Sheet, all of which are incorporated herein by reference and shall be enforceable as if set forth in full in this Consent Order. Capitalized terms used but not defined in this Consent Order shall have the meanings given to them in the Emergency DIP Term Sheet.

15.     A final hearing on this Consent Order will be conducted on **July 13, 2026, at 10:00 a.m. (ET)** before the Honorable Christine M. Gravelle, Chief United States Bankruptcy Judge, in Courtroom #3 of the United States Bankruptcy Court, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, NJ 08608.  Any creditor or other interested party having any objection to this Consent Order shall file with the Clerk of this Court and serve upon counsel for the Mesorah Debtors, counsel to the DIP Lender, counsel to Mizzen Capital, counsel to the SBA and the Office of the United States Trustee by or before **July 7, 2026, at 5:00 p.m. (ET)**.  If no objections are filed and advocated at such hearing, then this Consent Order shall continue in full force and effect and shall be deemed a final order without further notice or hearing in accordance with Fed. R. Bankr. P. 4001(d)(3).

(Page | 10)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis |

16. Wayne Bank and Mizzen each consent to this Consent Order, including without limitation the priming of their respective liens pursuant to Paragraph 3, the modification and superseding of the Existing Loan Documents and intercreditor agreements pursuant to Paragraph 4, and the DIP Advance and DIP Protections granted to the DIP Lender, and each waives any right to object to this Consent Order or the Emergency DIP Term Sheet on any basis; provided, however, Mizzen's consent and waiver is limited to the extension of DIP Advances totaling $1,800,000 on an interim basis under this Consent Order and any further DIP Advances beyond $1,800,000 as may approved at a final hearing shall be subject to Mizzen's written consent or pursuant to court order.

*[Remainder of page intentionally left blank]*

Dated: June 26, 2026

/s/ *Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
        wusatine@coleschotz.com
         dbass@coleschotz.com
        fyudkin@coleschotz.com
        dharris@coleschotz.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

Dated: June 26, 2026

/s/ *Warren A. Martin*
**PORZIO BROMBERG & NEWMAN, P.C.**
Warren A. Martin, Esq.
Kelly D. Curtin, Esq.
5 Sylvan Way
P.O. Box 218
Parsippany, NJ  07054
Telephone: (973) 889-4006
Email: wjmartin@pbnlaw.com
        kdcurtin@pbnlaw.com

*Counsel to DH1 Holdings LLC*

**<u>Exhibit A</u>**

## DEBTOR-IN-POSSESSION FINANCING TERM SHEET

This Term Sheet sets forth the principal terms and conditions pursuant to which DH1 Holdings LLC, as successor to Wayne Bank (the "DIP Lender") will provide debtor-in-possession financing to Mesorahland LLC and Mesorahco LLC (the "Mesorah Debtors") in connection with the Mesorah Debtors' Chapter 11 Cases (as defined below).

- Borrowers

Means Mesorahland LLC and Mesorahco LLC, each a debtor and debtor-in-possession in cases pending under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Chapter 11 Cases"), as debtor and debtor-in-possession.

- Lender

DH1 Holdings LLC, as successor to Wayne Bank.

- DIP Facility

A debtor-in-possession loan in the principal amount of up to Four Million Dollars ($4,000,000.00) (the "DIP Advance") pursuant to the Loan Agreement dated August 8, 2017 (together with all ancillary documents, the "Existing Loan Documents"), this Term Sheet and the Consent Order, which DIP Advance shall be funded as follows: (i) upon the Bankruptcy Court's entry of the Consent Order, the DIP Lender shall make available $1,000,000 of the DIP Advance, (ii) prior to the entry of the Final Order, the DIP Lender shall make available additional amounts up to $800,000, and (iii) following the entry of the Final Order, the DIP Lender shall make available the remaining amount up to $2,200,000.

- Purpose

The DIP Advance shall be used solely by the Mesorah Debtors to fund the operation, maintenance, preservation, and marketing of the Mesorah Debtors' camp business and related assets, together with such other administrative expenses of the Mesorah Debtors, in accordance with the Approved Budget (as defined below).  No portion of the DIP Advance shall be transferred, lent, or made available to any other debtor, affiliate, or third party.

- Interest Rate

Fourteen percent (14.0%) per annum.

DIP Finance fee two (2%) percent, payable in kind.

- Maturity

The earliest to occur of:

(a) confirmation of a Chapter 11 plan in the Mesorah Debtors' Chapter 11 Cases;
(b) sale of substantially all of the Mesorah Debtor's assets;
(c) conversion of the Mesorah Debtors' Chapter 11 Cases to Chapter 7;

(d) dismissal of the Mesorah Debtors' Chapter 11 Cases;

(e) appointment of a Chapter 11 trustee in the Mesorah Debtors' Chapter 11 Cases; or

(f) such other date as agreed by the parties.

- Existing Debt and Liens

As a material inducement to the DIP Lender's willingness to provide the DIP Advance, subject to the rights of all parties (except the Mesorah Debtors) in interest to challenge the following stipulation, the Mesorah Debtors acknowledge, stipulate, and agree that:

1. The indebtedness owing to the DIP Lender, as successor to Wayne Bank, under the Existing Loan Documents is valid, binding, enforceable, due and owing, and not subject to any offset, defense, counterclaim, recoupment, objection, avoidance claim, lender liability claim, equitable subordination claim, recharacterization claim, or other challenge of any kind.

2. The DIP Lender as successor to Wayne Bank holds valid, binding, properly perfected, enforceable, and first-priority liens and security interests in the collateral owned by the Mesorah Debtors as described in the Existing Loan Documents, including the real property encumbered by the existing mortgage and all proceeds thereof.

3. The Mesorah Debtors possess no claims, defenses, causes of action, offsets, objections, or challenges against Wayne Bank or its liens.

4. The Mesorah Debtors shall not contest or challenge the amount, validity, perfection, priority, extent, or enforceability of Wayne Bank's or DIP Lender's claims, liens, mortgages, security interests, or loan documents as same existed as of the Petition Date.

- Protective Advance

The DIP Advance shall constitute a protective advance made pursuant to and in furtherance of the DIP Lender's rights under the Existing Loan Documents.

The DIP Advance shall be deemed added to and secured by the indebtedness evidenced by the Existing Loan Documents and shall be secured by the existing mortgage and all collateral securing the prepetition obligations, with the same priority and validity as the prepetition indebtedness.

- Administrative Expense Claim

The DIP Lender is hereby granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim," together with the DIP Liens, the "DIP Protections") pursuant to § 364(c)(1) of the Bankruptcy Code in each of the Chapter 11 Cases for the DIP Advance, having priority over any and all other claims against the Mesorah Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under §§ 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a final order), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may

become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, but specifically excluding any proceeds or property recovered in connection with the pursuit of any action under chapter 5 of the Bankruptcy Code (including, without limitation, §§ 544, 545, 547, 548, 549, 550, and 553 thereof), and any similar or related claims, causes of action, or rights arising under applicable state or other non-bankruptcy law ("Avoidance Actions"). The DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11 Cases.

- Security

To secure the DIP Advance, the DIP Lender is hereby granted pursuant to, and in accordance with, §§ 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, valid, enforceable and fully perfected liens (the "DIP Liens") in and on all of the DIP Collateral (as defined below), including, without limitation, all of each Mesorah Debtor's now owned or hereafter acquired right, title, and interest in and to all real property, cash, accounts, accounts receivable, goods, inventory, property, plant and equipment, intellectual property, contract rights, prepaid expenses, deposits, general intangibles, real estate, leaseholds, and all cash and other property held therein, and any and all proceeds and property recovered therefrom (collectively, the "DIP Collateral"). The DIP Collateral shall specifically exclude any tax refunds or related rights and claims, all intercompany claims, commercial tort claims, and any proceeds or property recovered in connection with any Avoidance Actions, and such other causes of action of each Mesorah Debtor or its respective estate.

- Budget and Future Financing

The Mesorah Debtors shall operate in accordance with a budget approved by Lender (the "Approved Budget") provided to counsel for the Lender on June 25, 2026; *provided that*, the actual results of all disbursements set forth in the Approved Budget on a cumulative basis shall not vary by more than twenty percent (20%) of the amount projected in the Approved Budget measured weekly (the "Permitted Variance").

- Events of Default

Events of Default shall include:

(a) unauthorized use of DIP proceeds; including but not limited to the transfer of any DIP Advance to a debtor or an affiliate other than the Mesorah Debtors;

(b) failure to comply with the Approved Budget, subject to the Permitted Variance;

(c) failure to obtain interim order satisfactory to the DIP Lender;

(d) conversion or dismissal of the Mesorah Debtors' Chapter 11 Cases;

(e) failure to maintain insurance on collateral;

(f) failure to pay obligations at maturity;

(g) failure of the Mesorah Debtors to seek approval of a private sale of substantially all of the Mesorah Debtors' assets to the DIP Lender on or before June 29, 2026 (which, if approved by the Court, may be through the process approved in the Bidding Procedures Order with regard to private sales);

(h) if the Court approves Bidding Procedures Order and the proposed process for approval of private sales and an objection to the private sale is filed on or before July 6, 2026 in accordance with the Bidding Procedures Order, failure of the Mesorah Debtors to obtain a hearing on such objection on or before July 10, 2026 (it being understood that the Mesorah Debtors will make all reasonable efforts to obtain an expedited hearing with respect to such objection, subject to the Court's availability);

(i) the filing by the Mesorah Debtors of any motion or application seeking authority to obtain postpetition financing from any person or entity other than the DIP Lender without the prior written consent of the DIP Lender; or

(j) the entry of any order granting any other superpriority administrative expense claim or lien that is pari passu with or senior to the DIP Protections, other than as expressly permitted herein.

- Remedies

Upon an Event of Default, the DIP Lender may, on five (5) business days' notice to the Mesorah Debtors (with a copy to the United States Trustee and any statutory committee), and subject to further order of the Bankruptcy Court on shortened notice: (a) accelerate the DIP Obligations; (b) terminate the commitment; (c) exercise remedies against the DIP Collateral; (d) exercise the Credit Bid Rights; and (e) exercise all other available rights and remedies.

- Court Approval

This Term Sheet is subject to approval by the Bankruptcy Court pursuant to consent interim order and thereafter final orders in form and substance satisfactory to the DIP Lender.

- Credit Bid Rights

The DIP Lender may credit bid all or any portion of the DIP Advance and prepetition indebtedness under the Existing Loan Documents at any sale of the Mesorah Debtors' assets, under § 363 of the Bankruptcy Code, a Chapter 11 plan, or otherwise (the "Credit Bid Rights"). The Mesorah Debtors shall not seek or support any action to limit the Credit Bid Rights; any attempt shall constitute an Event of Default.

- Private Sale Milestones

The Mesorah Debtors shall comply with the following milestones (the "Sale Milestones"): (i) file a (x) notice of private sale under the proposed Bidding Procedures Order or (y) motion for approval of a private sale to the DIP Lender via credit bid immediately (but no later than one (1) business day) following entry of the Bidding Procedures Order; and (ii) if the Court enters the Bidding Procedures Order and an objection to the private sale to the DIP Lender is filed on or before July 6, 2026 on accordance with the Bidding Procedures Order, schedule a hearing with the Court to hear such objection to the sale on or before July 10, 2026, subject to the Court's availability.  The parties may extend the Sale Milestones by written agreement (email being sufficient).  The "Bidding Procedures Motion" means the motion filed by the Mesorah Debtors

on June 24, 2026 seeking an order approving bidding and sale procedures [Docket No. 227] (such order, the "Bidding Procedures Order").

- Conflicts and Governing Provisions

Notwithstanding anything in the Existing Loan Documents (including Section 12 of the Loan Agreement dated August 8, 2017), any intercreditor agreement (including the Intercreditor and Subordination Agreement dated August 9, 2017), or any other agreement among Wayne Bank, the DIP Lender, Mizzen, the SBA, or any other party, this Term Sheet and the Consent Order control. Any conflicting provisions are hereby waived and superseded, self-executing upon entry of the Consent Order.

- Negative Covenants

Without the DIP Lender's prior written consent, the Mesorah Debtors shall not: (a) seek appointment of a trustee, examiner with enlarged powers, or conversion to Chapter 7; (b) pursue any alternative transaction not consistent with the Credit Bid Rights (except with the consent of the DIP Lender); (c) pay prepetition debt not authorized by the Consent Order or the Approved Budget; (d) use cash collateral outside of the Approved Budget; or (e) impair or encumber the DIP Collateral.

- Reporting and Information Rights

The Mesorah Debtors shall provide the DIP Lender with: (a) notice within two (2) business days of any filing that could affect the DIP Lender's rights; (b) notice of any proposed sale or encumbrance of DIP Collateral outside the ordinary course; (c) copies of monthly operating reports; and (d) access to inspect properties and books and records on reasonable notice.

- Waivers

Subject to entry of a final order, the Mesorah Debtors waive and shall not assert any right to surcharge the DIP Collateral or any other collateral of the DIP Lender under § 506(c) of the Bankruptcy Code or otherwise. Subject to entry of a final order, the Mesorah Debtors further waive and shall not invoke the equitable doctrine of marshaling or any similar doctrine with respect to any of the DIP Collateral or any other collateral of the DIP Lender.

- Binding Effect

This Term Sheet sets forth the material terms of the proposed DIP Advance and shall serve as the basis for the preparation of definitive loan documents, if any, DIP financing motions, and proposed interim and final financing orders.