

**Order Filed on June 26, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Counsel to the Debtors
and Debtors in Possession*

HOLDINGS LTD., *et al.*,[1]

Debtors.

-16388 (CMG)

(Jointly Administered)

### ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) APPROVING THE STALKING HORSE BID PROTECTIONS, (III) SCHEDULING BID DEADLINES AND AUCTION(S), (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (VI) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered two (2) through seventeen (17), is

**ORDERED**.

**DATED: June 26, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

---

[1] A complete list of the SIMAD Debtors in these chapter 11 cases ented each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD.  The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

(Page | 2)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al*. |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

Upon the *Motion For Entry of an Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors"), for entry of an order (this "Order") (a) authorizing and approving the proposed marketing, auction, and bidding procedures attached hereto as **Exhibit 1** to the Order (the "Bidding Procedures"), by which the SIMAD Debtors will solicit and, if value-maximizing, select the highest or otherwise best offer(s) for the purchase of some, all, or substantially all of the Sale Package(s), (b) approving the Stalking Horse Bid Protections, if any, (c) establishing the Schedule, (d) approving the manner of notice of the Auction(s), as may be necessary, (e) approving procedures for the assumption and assignment of certain Executory Contracts and Unexpired Leases in connection with any Sale Transaction(s), if any, and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

(Page | 3)

Debtors:            SIMAD HOLDINGS LTD., *et al.*

Case No.           26-16388 (CMG)

Caption of Order:   Order (I) Approving the Bidding Procedures (II) Approving the Stalking
                    Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s),
                    (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing
                    Notice and Procedures for the Assumption and Assignment of Contracts and
                    Leases, and (VI) Granting Related Relief

and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having

found that it may enter a final order consistent with Article III of the United States Constitution; and

this Court having found that the SIMAD Debtors' notice of the Motion was appropriate under the

circumstances and no other notice need be provided; and this Court having reviewed the Motion and

having heard the statements in support of the relief requested therein at a hearing before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing, establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court and after due deliberation and sufficient cause appearing therefor

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      The SIMAD Debtors have articulated good and sufficient reasons for authorizing

and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the

circumstances and designed to maximize the recovery on, and realizable value of the SIMAD

Debtors' estates, including with respect to the proposed procedures for providing Stalking Horse

Bid Protections as determined by the SIMAD Debtors in a sound exercise of their business

judgment in accordance with the Bidding Procedures.

3.      The SIMAD Debtors' proposed notice of the Motion and the Hearing was

(i) appropriate and reasonably calculated to provide all interested parties with timely and proper

notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy

Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of these

(Page | 4)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

chapter 11 cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

4.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

I.    **Important Dates and Deadlines.**

5.      **Bid Deadline**. **July 17, 2026, at 4:00 p.m. prevailing Eastern Time**, is the deadline by which all Bids must be **actually received** by the parties specified in the Bidding Procedures.

6.      **Stalking Horse Bidder(s) and Bid Protections**. The SIMAD Debtors, upon entry of this Order, shall be authorized, but are not obligated or directed, in an exercise of their reasonable business judgment, to designate one or more Stalking Horse Bidder(s) with respect to the applicable Sale Package(s) and enter into such stalking horse agreements (the "Stalking Horse Agreement(s)"), and subject to paragraphs 7 and 8 of this Order, to provide such Stalking Horse Bidder(s) with Stalking Horse Bid Protections.

7.      In the event that the SIMAD Debtors enter into a Stalking Horse Agreement(s) with one or more Stalking Horse Bidder(s), on or before **July 9, 2026 at 4:00 p.m., prevailing Eastern Time**, the SIMAD Debtors shall file with the Court and serve a copy of the Stalking Horse Notice(s) on the Stalking Horse Bidder(s), the U.S. Trustee, counsel to the DIP Agent, counsel to the Bond Trustee, counsel to Bank of New Hampshire, counsel to any other Secured Creditor to the extent

(Page | 5)
Debtors:            SIMAD HOLDINGS LTD., *et al.*
Case No.            26-16388 (CMG)
Caption of Order:   Order (I) Approving the Bidding Procedures (II) Approving the Stalking
                    Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s),
                    (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing
                    Notice and Procedures for the Assumption and Assignment of Contracts and
                    Leases, and (VI) Granting Related Relief

such Stalking Horse Notice applies to such Secured Creditor's collateral, and counsel to any statutory committees appointed in these chapter 11 cases. For the avoidance of doubt, nothing contained in this Order shall prevent the SIMAD Debtors from selecting Stalking Horse Bidder(s) and entering into Stalking Horse Agreement(s) prior to the Stalking Horse Deadline. Any Stalking Horse Notice(s) shall seek approval of the designation of such Stalking Horse Agreement(s) and the Stalking Horse Bid Protections which shall include: (a) the identity of the Stalking Horse Bidder(s); (b) the amount of the Stalking Horse Bid(s); (c) the proposed Stalking Horse Bid Protections to be provided to the Stalking Horse Bidder(s); (d) the terms of the Stalking Horse Agreement(s); and (e) the applicable Sale Package(s) to which the Stalking Horse Bid(s) relates. Any objection to (i) the Stalking Horse Bid Protections set forth in a Stalking Horse Notice(s) or (ii) the designation of the Stalking Horse Agreement(s) (a "Stalking Horse Objection"), shall be filed no later than three (3) business days after the filing of the applicable Stalking Horse Notice at 4:00 p.m., (prevailing Eastern Time). If a timely Stalking Horse Objection is filed, the SIMAD Debtors are authorized to seek an expedited hearing with respect to the Stalking Horse Objection as soon as reasonably possible, subject to the Court's availability. Absent any timely Stalking Horse Objections, the Stalking Horse Bid Protections set forth in the Stalking Horse Notice(s) and the designation of the Stalking Horse Agreement(s) are approved.

8.      Upon approval of the designation of one or more Stalking Horse Agreement(s), the SIMAD Debtors are authorized, but not directed, to incur and pay the Stalking Horse Bid Protections to each such Stalking Horse Bidder(s) subject to the terms of the applicable Stalking

(Page | 6)

Debtors:            SIMAD HOLDINGS LTD., *et al*.
Case No.            26-16388 (CMG)
Caption of Order:   Order (I) Approving the Bidding Procedures (II) Approving the Stalking
                    Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s),
                    (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing
                    Notice and Procedures for the Assumption and Assignment of Contracts and
                    Leases, and (VI) Granting Related Relief

Horse Agreement(s) and this Order; *provided* that the SIMAD Debtors shall not pay Stalking

Horse Bid Protections to any Stalking Horse Bidder(s) on account of the portion of the Purchase

Price of such Bid that is a credit bid, assumption of liabilities, or other non-cash (or cash

equivalent) consideration, nor provide any Stalking Horse Bid Protections to an insider or affiliate

of the SIMAD Debtors; *provided*, further, that, except with the consent of the Bank of New

Hampshire or the Bond Trustee, the Stalking Horse Bid Protections shall be paid solely from the

gross proceeds of any Sale Transaction with a Successful Bidder other than the Stalking Horse

Bidder(s).

9.      **Auction(s)**. The date and time of the Auction(s), if needed, is **July 28, 2026, at

10:00 a.m. prevailing Eastern Time**, which time may be extended by the SIMAD Debtors upon

written notice to the Court. The Auction(s) will be held virtually, via Zoom or such other location

designated by the SIMAD Debtors.  Only the SIMAD Debtors, the Consultation Parties, the

Qualified Bidders, the U.S. Trustee, and any other parties as the SIMAD Debtors may determine

in their reasonable discretion, in each case, along with the representatives and advisors, shall be

entitled to participate in the Auction(s), and only Qualified Bidders will be entitled to make

Overbids (as defined in the Bidding Procedures) at the Auction(s); *provided*, *however*, that any

party in interest will be permitted to attend the Auction(s).  The SIMAD Debtors shall send written

notice of the date, time, and place of the Auction(s) to the Qualified Bidders, the Consultation

Parties, and the U.S. Trustee no later than two (2) business days before such Auction(s), and will

post notice of the date, time, and place of the Auction(s) no later than two (2) business days before

(Page | 7)
Debtors:          SIMAD HOLDINGS LTD., *et al.*
Case No.          26-16388 (CMG)
Caption of Order: Order (I) Approving the Bidding Procedures (II) Approving the Stalking
                  Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s),
                  (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing
                  Notice and Procedures for the Assumption and Assignment of Contracts and
                  Leases, and (VI) Granting Related Relief

such Auction(s) on the website of the SIMAD Debtors' claims and noticing agent, Kroll Restructuring Administration (the "Claims and Noticing Agent"), at https://restructuring.ra.kroll.com/SIMAD.

10.    **Notice(s) of Successful Bidder**. As soon as reasonably practicable after the conclusion of the Auction(s), the SIMAD Debtors shall file the Notice(s) of Successful Bidder(s).

11.    **Sale Objection Deadline**.[3] Objections to any Sale Transaction(s), Sale Order and the Notice(s) of Successful Bidder(s) ("Sale Objection Deadline"), if any, must be made on or before **July 31, 2026, at 4:00 p.m., prevailing Eastern Time**. For the avoidance of doubt, this does not include objections made in connection with any Assumption Notice or Supplemental Assumption Notice (each defined below) and any such objection must be made in accordance with the Assumption and Assignment Procedures.

12.    **Failure to Object**. If any party fails to timely file with the Court and serve an objection by the Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to any Sale Transaction(s), such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of any Sale Transaction(s), including the transfer of the applicable Sale Package(s) to the Successful Bidder(s), free and clear of all liens, claims, interests,

---

[3]    To the extent that the Auction concludes less than two (2) days prior to the Sale Objection Deadline, the SIMAD Debtors shall file a notice on the docket indicating that the Auction is ongoing and that the new Sale Objection Deadline, which shall be two (2) days after the Notice of Successful Bidder is filed, shall be listed in such Notice of Successful Bidder.

(Page | 8)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

and encumbrances pursuant to section 363(f) of the Bankruptcy Code (with the foregoing attaching to the proceeds in the same order, validity, and extent as existed prior to the closing), and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

13.      **Sale Hearing**. **August 4, 2026 at 1:00 p.m., prevailing Eastern Time**, or as soon thereafter as the SIMAD Debtors may be heard, is the date and time for the hearing for the Court to consider the Successful Bid(s), if needed (the "Sale Hearing").  The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required. Upon entry of this Order, the SIMAD Debtors are authorized to perform any obligations of the SIMAD Debtors set forth in the Stalking Horse Agreement(s) or other applicable purchase agreement that are intended to be performed prior to the Sale Hearing or entry of the applicable Sale Order.

**II.      Auction(s), Bidding Procedures, Auction Notice(s), and Related Relief.**

14.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction(s). Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The SIMAD Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.  Subject to the terms of the Bidding Procedures, the SIMAD Debtors, in consultation with the Consultation Parties, may modify the Bidding Procedures as necessary or appropriate to maximize value for their estates except as expressly prohibited by this Order; *provided* that the

(Page | 9)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al*. |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

SIMAD Debtors may not (i) modify the consultation or consent rights of Bank of New Hampshire, the Bond Trustee, the DIP Agent, or any other Secured Creditor with respect to such Secured Creditor's collateral, or (ii) subject to the challenge rights of other parties in interest, abridge or limit the rights of Bank of New Hampshire, the DIP Agent, the Bond Trustee or any other Secured Creditor to credit bid.

15.     Pursuant to the Bidding Procedures, the SIMAD Debtors, in their business judgment after consultation with the Consultation Parties, may (a) determine which Qualified Bid is the highest or otherwise best offer, (b) reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the SIMAD Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of any Sale Transaction(s), or (iii) contrary to the best interests of the SIMAD Debtors, their estates, their creditors, and other stakeholders, and (c) impose such other terms and conditions upon Potential Purchasers as the SIMAD Debtors determine to be in the best interests of the SIMAD Debtors' estates in these chapter 11 cases.

16.     If the SIMAD Debtors determine not to conduct the Auction(s), then the SIMAD Debtors shall file a notice with the Court of such determination within three (3) business day of the making of such determination by the SIMAD Debtors.

17.     Any deposit(s) (including any Good Faith Deposit) provided by a Stalking Horse Bidder or other Bidder shall be held in escrow by the SIMAD Debtors or their agent and shall not become property of the SIMAD Debtors' bankruptcy estates unless and until released from escrow

(Page | 10)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al*. |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

to the SIMAD Debtors pursuant to the terms of the applicable purchase agreement, escrow agreement, the Bidding Procedures, or order of this Court, as applicable.

18.     The Auction Notice(s), substantially in the form attached hereto as **Exhibit 2**, are hereby approved. Within two (2) calendar days after entry of the Order, the SIMAD Debtors will cause the Auction Notice(s) (i) to be served upon the parties that received notice of the Motion., (ii) to be posted on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD and (iii) to be published, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the SIMAD Debtors to provide notice to any other potential interested parties.

19.     Pursuant to Local Rule 6004-2: (a) each bidder participating at the Auction(s) shall be required to confirm that it has not engaged in any bad faith or collusion with respect to the bidding or any Sale Transaction(s), as set forth in the Bidding Procedures; (b) the Auction(s) shall be conducted openly and all parties in interest will be permitted to attend; and (c) the bidding at the Auction(s) will be documented, recorded, or videotaped.

**III.     Assumption and Assignment Procedures.**

20.     The procedures set forth below regarding the Assumed Contracts proposed to be assumed by the SIMAD Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder(s), if any, pursuant to section 365(f) of the Bankruptcy Code in connection with any Sale Transaction(s) are hereby approved to the extent set forth herein.

(Page | 11)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al*. |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

21.      These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the SIMAD Debtors' Executory Contracts and Unexpired Leases to be assumed and assigned in connection with any Sale Transaction(s), if any, subject to the payment of any amount necessary to satisfy all defaults and actual pecuniary loss to the Contract or Lease Counterparty resulting from such defaults, including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the relevant counterparty can assert under an Executory Contract or Unexpired Lease, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to a Contract (the foregoing amounts as stated in the Assumption Notice, the "Cure Payments"):

(a)      **Notice of Assumption**. As soon as reasonably practicable but in no event later than **July 21, 2026**, the SIMAD Debtors shall file on the docket and serve a notice of contracts assumed and assigned to any Successful Bidders(s) (the "Assumption Notice"), in substantially the form attached hereto as **Exhibit 3**, via first-class mail on the Contract or Lease Counterparties. The Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Executory Contract or Unexpired Lease, (ii) the identity of the Contract or Lease Counterparty, (iii) the SIMAD Debtors' good faith estimates of the Cure Payments, if any, required in connection with the Executory Contract or Unexpired Lease, and (iv) the Sale Objection Deadline; *provided*, however, that service of an Assumption Notice does not constitute an admission that any Executory Contract and/or Unexpired Lease listed thereon is an executory contract or unexpired lease or that such stated Cure Payment constitutes a claim against the SIMAD Debtors or a right against any Successful Bidder(s), all rights with respect thereto being expressly reserved. Further, the inclusion of a contract on the Assumption Notice is not a guarantee that such contract will ultimately be assumed and assigned.

(Page | 12)

| Debtors: | SIMAD HOLDINGS LTD., *et al*. |
|---|---|
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

**(b)** **Cure Payments**. The payment of the applicable Cure Payments by the SIMAD Debtors and/or the Successful Bidder(s), as applicable, shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the ultimately assumed Executory Contract or Unexpired Lease by the SIMAD Debtors and the assignment of such Executory Contract or Unexpired Lease to the Successful Bidder(s), constitute adequate assurance of future performance thereof.

**(c)** **Supplemental Assumption Notice**. To the extent the SIMAD Debtors, at any time after the Auction(s) (or, if no Auction is held, the Bid Deadline) (i) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder(s), (ii) remove any Executory Contracts or Unexpired Leases from the Assumption Notice, and/or (iii) modify the previously stated Cure Payment associated with any Executory Contract or Unexpired Lease, the SIMAD Debtors will promptly file with this Court and serve by first-class mail a supplemental notice of contract or lease assumption (a "Supplemental Assumption Notice") on each of the Contract or Lease Counterparties affected by the Supplemental Assumption Notice. Each Supplemental Assumption Notice will include the same information with respect to listed Executory Contracts or Unexpired Leases as was included in the Assumption Notice. Except as otherwise provided in any purchase agreement, the SIMAD Debtors (in consultation with the Successful Bidder(s)) may designate additional Executory Contracts and Unexpired Leases to be assumed and assigned up to two (2) business days prior to the Closing and may remove Executory Contracts or Unexpired Leases from the list of Executory Contracts and Unexpired Leases up to two (2) business days prior to Closing.

**(d)** **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, state the correct Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon (a) proposed counsel to the SIMAD Debtors, (b) counsel to the Successful Bidder(s), and (c) any other party that has filed a notice of appearance in these chapter 11 cases, so as to be **actually received**

(Page | 13)
Debtors:         SIMAD HOLDINGS LTD., *et al.*
Case No.         26-16388 (CMG)
Caption of Order:  Order (I) Approving the Bidding Procedures (II) Approving the Stalking
                   Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s),
                   (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing
                   Notice and Procedures for the Assumption and Assignment of Contracts and
                   Leases, and (VI) Granting Related Relief

---

**no later than 4:00 p.m., prevailing Eastern Time, on the date that is ten (10) calendar days after service of the Assumption Notice and in no event later than 4:00 p.m., prevailing Eastern Time on July 31, 2026 or the deadline set forth in any Supplemental Assumption Notice, as applicable**. The SIMAD Debtors may modify the Sale Objection Deadline, including the deadline to object to a proposed Cure Payment, and the deadline set forth in a Supplemental Assumption Notice by filing a notice of such modification on the Court's docket.

(e)    **Dispute Resolution**. In the event that the SIMAD Debtors and a Contract or Lease Counterparty cannot resolve an objection to a Cure Payment, the Executory Contract or Unexpired Lease at issue may be assumed by the SIMAD Debtors and assigned to the Successful Bidder; *provided* that the SIMAD Debtors shall segregate the Cure Payment that the Contract or Lease Counterparty asserts is required to be paid, pending a resolution of the dispute by the Court or mutual agreement by the parties. If an objection to the proposed assumption and assignment of an Executory Contract or Unexpired Release or related Cure Payment proposed in connection with any Sale Transaction(s) remains unresolved as of the Sale Hearing, the SIMAD Debtors shall seek a hearing before this Court to determine the Cure Payments, if any, and approve the assumption of the applicable Executory Contract or Unexpired Lease.

(f)    **Contract or Lease Assumption**. No Executory Contract or Unexpired Lease shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Executory Contract or Unexpired Lease or (ii) the date any Sale Transaction(s) closed.

22.    Any party failing to timely file an objection to the Cure Payments or the proposed assumption and assignment of an Executory Contract or Unexpired Lease listed on the Assumption Notice or a Supplemental Assumption Notice is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Executory Contract or Unexpired Lease, (c) the related relief requested in the Motion, and (d) the applicable Sale Transaction(s). Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption

(Page | 14)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al*. |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

and assignment of the Executory Contract or Unexpired Lease, adequate assurance of future performance, the relief requested in the Motion, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder(s) for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the SIMAD Debtors and the Successful Bidder(s) with respect to such party's Executory Contract or Unexpired Lease.

23.     The SIMAD Debtors shall, concurrently with the Assumption Notice, provide evidence to each Executory Contract or Unexpired Lease Counterparty that the proposed assignee has the ability to comply with the requirements of adequate assurance of future performance; *provided* that any such evidence that constitutes nonpublic information shall be provided on a confidential basis.  All Bidders are deemed to consent to the transmission of such evidence of adequate assurance of future performance on a confidential basis to counsel for the applicable Executory Contract or Unexpired Lease Counterparty via email with such information to be used only for the purpose of assessing the applicable Bidder.

24.     The inclusion of an Executory Contract or Unexpired Lease in the Assumption Notice or a Supplemental Assumption Notice will not obligate any SIMAD Debtor to assume any Executory Contract or Unexpired Lease listed thereon or a Successful Bidder to accept assignment of such assumed Executory Contract or Unexpired Lease. Only those Executory Contracts and Unexpired Leases that are included on a schedule of assumed and assigned contracts attached to the executed definitive asset purchase agreement with a Successful Bidder (including amendments

(Page | 15)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al*. |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the applicable Successful Bidder. No Executory Contract or Unexpired Lease in the Assumption Notice or a Supplemental Assumption Notice shall be assumed other than in connection with (and concurrently with the effectiveness of) the assignment of such Executory Contract or Unexpired Lease to the applicable Successful Bidder.

## IV.    **Miscellaneous**.

25.    Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the SIMAD Debtors and any Stalking Horse Bidder(s), if applicable, or any other Potential Purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, or related agreements or any letters of credit relating thereto, or any rights, remedies, or defenses of the SIMAD Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to the Auction(s), the Bidding Procedures, any Sale Transaction(s), and any related items (including, if necessary, to seek an extension of the Bid Deadline).

26.    The SIMAD Debtors may modify any of the dates and deadlines set forth herein without further order of the Court in consultation with the Consultation Parties; *provided* that the SIMAD Debtors will serve notice (email from the SIMAD Debtor's proposed counsel, Cole Schotz P.C., to suffice) to any Qualified Bidder(s), Stalking Horse Bidder(s), and the U.S. Trustee, as applicable and appropriate, informing them of such modification.  The SIMAD Debtors are further authorized, but not directed, to conduct multiple Sale Transaction(s) and/or Auction(s) (as

(Page | 16)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief |

necessary) in substantial conformity with the Schedule and Bidding Procedures established through this Order.

27.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

28.     In the event of any inconsistencies between this Order, the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

29.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the SIMAD Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the SIMAD Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is a secured claim, an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the SIMAD Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the SIMAD Debtors' estates; (g) a waiver or limitation of the SIMAD Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any

(Page | 17)
Debtors:          SIMAD HOLDINGS LTD., *et al*.
Case No.          26-16388 (CMG)
Caption of Order: Order (I) Approving the Bidding Procedures (II) Approving the Stalking
                  Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s),
                  (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing
                  Notice and Procedures for the Assumption and Assignment of Contracts and
                  Leases, and (VI) Granting Related Relief

other applicable law; (h) a concession by the SIMAD Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; or (i) a waiver of the obligation of any party in interest to file a proof of claim. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the SIMAD Debtors' rights to subsequently dispute such claim.

30.     The SIMAD Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

31.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon entry hereof.

32.     Notice of the Motion as provided herein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

33.     For the avoidance of doubt, the assets of One Canal Place Leasing LLC and One Canal Place Real Estate LLC are not subject to the Motion or the relief approved herein.

34.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit 1

## Bidding Procedures

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., *et al.*,[1] | Case No. 26-16388 (CMG) |
| Debtors. | (Jointly Administered) |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT,**
**AND ANALYSIS OF BIDS IN CONNECTION WITH THE**
**SALE OF THE SIMAD DEBTORS' SALE PACKAGES**

On June 4, 2026 and June 5, 2026, the above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court").

---

[1]    A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

On [●], 2026, the Court entered an order (the "Bidding Procedures Order"), approving, among other things, these bidding procedures (the "Bidding Procedures").[2] These Bidding Procedures set forth the process by which the SIMAD Debtors are authorized to solicit bids and conduct an auction or multiple auctions (each, an "Auction").

Copies of the Bidding Procedures Order or any other documents in the SIMAD Debtors' chapter 11 cases are available upon request to the SIMAD Debtors' Claims and Noticing Agent, by visiting the website of the Claims and Noticing Agent at https://restructuring.ra.kroll.com/SIMAD.

## I.      Sale Package(s) to be Auctioned.

The SIMAD Debtors are seeking to sell all, substantially all, or a portion of the assets (collectively, the "Assets")[3] relating their portfolio of summer camps in one or more sale transactions.  **For the avoidance of doubt, the SIMAD Debtors may sell camps in a single transaction, several transactions or on an individual basis.**

## II.     Public Announcement of Auction(s).

Within two (2) business days after entry of the Bidding Procedures Order, the SIMAD Debtors shall (i) cause a notice of an Auction(s) substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Auction Notice(s)"), the Order, and the Bidding Procedures, to be served on the parties that received notice of the Motion, (ii) post the Auction Notice(s) on the website of the SIMAD Debtors' Claims and Noticing agent at https://restructuring.ra.kroll.com/SIMAD, and (iii) submit for publication the Auction Notice(s), with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the SIMAD Debtors.

## III.    Potential Purchaser Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the applicable Sale Package (a "Potential Purchaser") must deliver or have previously delivered to the SIMAD Debtors and their advisors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

a.      an executed confidentiality agreement (a "Confidentiality Agreement") in a form and substance acceptable to the SIMAD Debtors;

---

[2]   Capitalized terms used but not defined herein shall have the meanings given to them in the Bidding Procedures Order.

[3]   For the avoidance of doubt, the SIMAD Debtors' assets associated with its real property located at 365 Canal Street, New Orleans, LA 70130 are not subject to these Bidding Procedures.

b.      identification of the Potential Purchaser and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale Transaction;

c.      a statement of what Sale Package(s) the Potential Purchaser intends to acquire;

d.      sufficient information that the Potential Purchaser has or can reasonably obtain the financial capacity to close the contemplated Sale Transaction(s), the adequacy of which must be acceptable to the SIMAD Debtors; and

e.      a statement detailing whether the Potential Purchaser is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid to the extent reasonably practicable.

The SIMAD Debtors, in consultation with their advisors and the Consultation Parties,[4] will determine and notify each Potential Purchaser whether such Potential Purchaser has submitted adequate documents so that such Potential Purchaser may proceed to conduct due diligence and submit a bid (such Potential Purchaser that complies with the foregoing conditions, an "Acceptable Bidder").  For the avoidance of doubt, an Acceptable Bidder shall not be eligible to participate in the Auction(s) unless such Acceptable Bidder meets the requirements set forth in section IV below.  For the avoidance of doubt, in the event that any secured creditor authorized to submit a credit bid pursuant to any order of the Bankruptcy Court, applicable underlying security or credit agreement and related credit documentation including any intercreditor agreement or any agent or designee of such secured creditor, elects to submit a credit bid for any Sale Package(s), each such secured creditor, or such secured creditor's agent or designee, if applicable, shall be an Acceptable Bidder and shall not be required to comply with the aforementioned potential bidder requirements of this Section III, subject to any applicable challenge rights relating to the validity of such underlying security or credit agreement and related credit documentation, on the basis that the alleged secured creditor is not entitled to credit bid their alleged interests.  **To the extent a Secured Creditor submits a credit bid, it shall not be one of the Consultation Parties with respect to such Secured Creditor's collateral for which is submits a credit bid.**

## IV.    Qualified Bid Requirements.

To be eligible to participate in the Auction(s), an Acceptable Bidder must deliver to the SIMAD Debtors and their advisors an irrevocable offer to purchase the applicable Sale Package(s) in the form of a document signed by the Acceptable Bidder (each, a "Bid," and if such Bid meets the requirements of this section, a "Qualified Bid"), and shall meet the following criteria, in each

---

[4]    The Consultation Parties shall mean the following: (i) counsel to any official committees appointed in these chapter 11 cases, (ii) counsel to Bank of New Hampshire, (iii) counsel to Mishmeret Trust Company, Ltd. in its capacity as Trustee for the Debentures (Series A) (the "Bond Trustee"), (iv) counsel to Mishmeret Trust Company, Ltd. in its capacity as DIP agent (the "DIP Agent"), and counsel to any other Secured Creditor with respect to any Sale of its collateral.

case, on or prior to the Bid Deadline (as defined below) (such Acceptable Bidder that complies with the forthcoming conditions, a "Qualified Bidder"):

i.  **Purchased Sale Package(s) and Assumed Liabilities.** Each Bid must clearly state the following: (a) which Sale Package(s) and which Assets or equity the Acceptable Bidder seeks to purchase; (b) if applicable, the liabilities and obligations to be assumed, including any debt and cure costs to be assumed; and (c) any executory contracts (the "Executory Contracts") and unexpired leases (the "Unexpired Leases") to be received by assignment;

ii.  **Good Faith Deposit.** Each Bid must be accompanied by a cash deposit in the amount equal to ten (10) percent of the aggregate Purchase Price of the Bid, to be held in an escrow account to be identified and established by the SIMAD Debtors (the "Good Faith Deposit").  To the extent that a Bid is modified at or prior to the Auction(s), the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals ten (10) percent of the increased aggregate Purchase Price promptly and in no event later than one (1) business day following the conclusion of the Auction(s);

iii.  **Purchase Price.** Each Bid must: (a) clearly set forth the purchase price to be paid for the applicable Sale Package(s) (the "Purchase Price"); (b) identify separately the cash and noncash components of the Purchase Price; (c) indicate the allocation of the Purchase Price among the applicable Sale Package Assets (including liabilities and obligations to be assumed in connection with any Sale Transaction(s)); provided that, for the avoidance of doubt, such allocation shall not prejudice the rights of any party in interest to contest such allocation; and (d) describe its proposed post-emergence debt obligations and liquidity position for the post-reorganization company, if the Bid contemplates to effectuate the sale through a plan of reorganization.  The Purchase Price should be a single point value in U.S. dollars on a cash-free, debt-free basis.  Any Bid for substantially all of the applicable Sale Package Assets must also include a statement as to whether the Bid is conditioned on purchasing all of the business or whether the Bid should be viewed as a separate Bid for one or more Sale Package(s);

iv.  **Tax Structure; Structure**. Each Bid must specify with particularity its tax structure, including whether it is intended to be structured in a tax-free manner or if the SIMAD Debtors will incur any incremental tax liabilities under the Bid.  Each Bid must also identify the structure proposed for undertaking any Sale Transaction(s), including the specific Sale Package(s) of the SIMAD Debtors Assets being acquired and liabilities being assumed, the proposed steps to accomplish the Sale(s), and any financial, legal, or tax considerations upon which the Bid's proposed structure relies;

v.  **Sources of Financing**. To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate any Sale Transaction(s) set forth in its Bid with cash on hand, the Bid must include evidence of committed financing, documented to the SIMAD Debtors' satisfaction, in consultation with

the Consultation Parties, that demonstrates that the Acceptable Bidder has received sufficient funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction(s) and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the SIMAD Debtors;

vi.   **Same or Better Terms; Bid Documents**. Each Bid must include duly executed and non-contingent transaction documents necessary to effectuate any Sale Transaction(s) contemplated in the Bid (the "Bid Documents") and must be submitted by the deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures (the "Bid Deadline").  The Bid Documents shall include, at a minimum: (a) a purchase agreement, the form of which will be provided to Acceptable Bidders no later than July 1, including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate any Sale Transaction(s), along with copies that are marked to reflect any amendments and modifications from the purchase agreement provided, which amendments and modifications may not be materially more burdensome than or otherwise inconsistent with the Bidding Procedures, (b) a schedule of contracts and leases to be rejected to the extent applicable to the Bid, (c) any other material documents integral to such Bid, and (d) a statement from the Acceptable Bidder that (i) it is prepared to enter into any Sale Transaction(s), subject to any necessary regulatory approvals, as specified by the Acceptable Bidder in such Bid Documents and (ii) the Bid will be irrevocable (whether or not such Bid is selected as the Successful Bid or next highest or otherwise best bid) (the "Back-Up Bid") until the confirmation of a plan;

vii.   **No Qualified Bidder Bid Protections**. Unless such Bid is selected as a Stalking Horse Bid, such Bid must include a statement that the Bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Sale Package;

viii.   **No Fees**. Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the bidding process and any Sale Transaction, and by submitting its Bid(s) is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code, any breakup fee, termination fee, or similar type of payment or reimbursement; provided that the SIMAD Debtors are authorized to provide the Stalking Horse Bid Protections (defined below) to one or more Stalking Horse Bidders in accordance with the Bidding Procedures;

ix.   **Employee Obligations**. Each Bid must include a description of the Acceptable Bidder's intentions with respect to the relevant members of the SIMAD Debtors'

current management team, camp leadership team and, to the extent known, other employees, and a description of any contemplated incentive plan, to the extent applicable;

x.   **Adequate Assurance of Future Performance and Information.** Each Bid must (i) identify the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned in connection with the proposed Sale Transaction(s), (ii) provide for the Cure Payments (as defined in the Order) related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder, (iii) demonstrate, in the SIMAD Debtors' business judgment, that the Acceptable Bidder can provide adequate assurance of future performance under all such Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code, (iv) be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the SIMAD Debtors, that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate the proposed Sale Transaction(s) (the "Closing(s)"), and (b) can provide adequate assurance of future performance in connection with the proposed Sale Transaction(s), and (v) identify a contact person that parties may contact to obtain additional Adequate Assurance Information;

xi.   **Contingencies; No Financing or Diligence Outs.** Each Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of such Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline;

xii.   **Identity & Corporate Authority**. Each Bid must (i) fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the proposed Purchaser is an entity formed for the purpose of consummating the Sale(s)), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the Sale Transaction(s) on the terms contemplated by the parties, and (ii) include contact information for the specific person(s) and counsel whom the SIMAD Debtors' advisors should contact regarding such Bid.  Each Bid must also fully disclose any business relationships, affiliations, or agreements with the SIMAD Debtors, any other known, potential, prospective bidder or Qualified Bidder, or any officer, director, or equity security holder of the SIMAD Debtors;

xiii.   **As-Is, Where-Is**. Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the applicable Sale Package(s) in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever,

whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement;

xiv.   **Authorization**. Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the contemplated Sale Transaction(s);

xv.   **Joint Bids**. The SIMAD Debtors will be authorized to approve joint Bids in their reasonable business judgment in consultation with the Consultation Parties on a case-by-case basis, so long as a joint bid meets the Qualified Bid requirements and the applicable bidders otherwise comply with the Bidding Procedures;

xvi.   **Acknowledgement of Compliance with Bidding Procedures, Bidding Order, Bankruptcy Code, and Non-Bankruptcy Law**. Each Acceptable Bidder in connection with each Bid submitted must acknowledge its compliance in all respects with the Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code and any applicable non-bankruptcy law;

xvii.   **No Collusion**. Each Acceptable Bidder must, in writing, (a) acknowledge that it has not engaged in any collusion with respect to any Bids or any Sale Transaction(s), specifying that it did not agree with any other Acceptable Bidders or Potential Purchaser to control price; and (b) agree not to engage in any collusion with respect to any Bids, the Auction(s), or any Sale Transaction(s).  For the avoidance of doubt, this requirement does not restrict Potential Purchaser(s) from working with other Potential Purchaser(s) with the SIMAD Debtors' prior written consent (email shall suffice);

xviii.   **Good Faith Offer**. Each Bid must constitute a good faith, bona fide offer to consummate any proposed Sale Transaction(s);

xix.   **Back-Up Bid**. Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder if the Acceptable Bidder's Bid is the next highest or otherwise best bid after the Successful Bid for the applicable portion of the applicable Sale Package(s);

xx.   **Regulatory and Third-Party Approvals and Covenants**. Each Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale Transaction(s), if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the applicable purchase agreement and/or confirmation of the SIMAD Debtors' chapter 11 plan (the "Plan"), those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible). Each Bid must include the forms

necessary for submission of regulatory approval of any Sale Transaction(s), as applicable;

xxi. **Expected Closing Date**. Each Bid must state the Acceptable Bidder's expected Closing date;

xxii. **Time Frame for Closing**. A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the SIMAD Debtors in consultation with the Consultation Parties;

xxiii. **Adherence to Bidding Procedures**. By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of the Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction(s) after conclusion of the Auction(s);

xxiv. **Consent to Jurisdiction**. Each Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the SIMAD Debtors' qualification of: (i) Bid(s), (ii) Auction(s), (iii) Sale(s), (iv) Sale Transaction(s) and the construction and (v) enforcement of the Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bid(s), the Bid Documents, and any and all other agreements entered into in connection with any Sale Transaction(s), and the Closing(s), as applicable;

xxv. **Allocation Condition**. If a Bid has an allocation of value across Sale Package(s), or otherwise across multiple segments of the SIMAD Debtors' businesses, a statement indicating such allocation of value across such Sale Package(s) or segments; and

xxvi. **Conditions to Closing**. Each Bid must identify with particularity each and every condition to closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required;

Only Bids fulfilling all of the preceding requirements contained in this section, or as otherwise determined in the SIMAD Debtors' reasonable business judgment, in consultation with the Consultation Parties, may be deemed to be a Qualified Bid and only those parties submitting Qualified Bids may, in the SIMAD Debtors' reasonable business judgment, be deemed to be Qualified Bidders; *provided that*, notwithstanding anything to the contrary herein, in the event that any secured creditor authorized to submit a credit bid pursuant to any applicable order of the Bankruptcy Court, underlying security or credit agreement and related credit documentation including any intercreditor agreement or any agent or designee of such secured creditor, elects to submit a credit bid for any Sale Package(s), such secured creditor, or such secured creditor's agent or designee, if applicable, shall be a Qualified Bidder and such Bid shall be a Qualified Bid *provided, however*, (i) that such secured creditor shall not be required to submit a Good Faith Deposit, (ii) such Bid shall not be required to serve as a Backup Bid subject to this Section IV, and

**(iii) such secured creditor shall not be a Consultation Party with respect such Secured Creditor's collateral for which it submits a credit bid**; *provided* that such secured creditors, or such secured creditor's agent or designee, if applicable, must comply with the requirements listed in sections (iv), (vi), (viii), (ix), (xi), (xiv), (xvi), (xviii), (xxi), (xxii), (xxiii), (xxiv), (xxv), (xxvi) of this Section IV.

Neither the SIMAD Debtors nor any of their advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the applicable Sale Package(s) and any liabilities and obligations to be assumed in connection with any Sale Transaction(s), including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of any Sale Transaction(s) with governmental laws, the truth, accuracy, or completeness of any documents related to the applicable Sale Package(s) or any other information provided by or on behalf of the SIMAD Debtors to a bidder, or any other matter or thing regarding the applicable Sale Package(s). All bidders must acknowledge and agree that upon closing, the SIMAD Debtors shall sell and transfer to the Successful Bidder(s), and the Successful Bidder(s) shall purchase and accept, the applicable Sale Package(s), as applicable, except to the extent expressly provided in the Court's Sale Order.  Neither the SIMAD Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the applicable Sale Package(s) and any liabilities and obligations to be assumed in connection with any Sale Transaction(s), or otherwise relating thereto that the SIMAD Debtors, any advisor, or agent representing or purporting to represent the SIMAD Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the SIMAD Debtors only) specifically set forth in the Court's Sale Order.

There shall be no communications between or among Potential Purchasers and/or Acceptable Bidders unless the SIMAD Debtors' advisors have authorized such communication in writing (email to suffice). The SIMAD Debtors reserve the right, in their business judgment, in consultation with the Consultation Parties, to disqualify any Potential Purchasers or Acceptable Bidders that have communications between or amongst themselves without the prior authorization of the SIMAD Debtors' advisors. For the avoidance of doubt, the joining of Bids between Potential Purchasers or Acceptable Bidders may be permitted by the SIMAD Debtors in their business judgment in consultation with the Consultation Parties.

No later than two (2) business days prior to the Auction(s), the SIMAD Debtors, in consultation with the Consultation Parties, shall determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction(s). Any Bid that is not deemed a Qualified Bid shall not be considered by the SIMAD Debtors; provided that if the SIMAD Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the SIMAD Debtors may provide the Acceptable Bidder with the opportunity to remedy any deficiencies prior to the commencement of the Auction(s).

V.      **Right to Credit Bid.**

Notwithstanding anything set forth herein or in these Bidding Procedures, any Qualified Bidder who has a valid and perfected lien on any portion of the applicable Sale Package(s) of the

SIMAD Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided*, further, that Secured Creditors shall not be permitted to credit bid at or after the Auction(s), unless the Secured Creditor notifies the SIMAD Debtors (email between counsel being sufficient) that they intend to credit bid at least three (3) calendar days before the commencement of the Auction(s) and relinquishes all of its rights as a Consultation Party with respect to the evaluation and qualification of competing Bids for the Assets included in their Bid or with respect to seeking and/or obtaining information about other Bids, unless and until such party unequivocally revokes its Bid and waives its right to continue in the bidding process, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures.

Any credit bid made by a Secured Creditor will be deemed to be a cash Bid solely for purposes of the SIMAD Debtors' evaluation of Bids (including the SIMAD Debtors' evaluation of Qualified Bids and subsequent Bids). Any Secured Creditor shall be deemed to be an Acceptable Bidder, shall be deemed to have submitted a Qualified Bid, and may participate in any Auction(s) with respect to any assets constituting collateral of such Secured Creditor; *provided* that the credit bid must be submitted no later than three days prior to the Auction. For the avoidance of doubt, in the event that any secured creditor authorized to submit a credit bid pursuant to any applicable underlying security or credit agreement and related credit documentation including any intercreditor agreement or any agent or designee of such secured creditor, subject to any applicable challenge rights relating to the validity of such underlying security or credit agreement and related credit documentation, elects to submit a credit bid for any Sale Package(s), each such secured creditor, or such secured creditor's agent or designee, if applicable, shall be an Acceptable Bidder (notwithstanding whether such party complies with the aforementioned potential bidder requirements). Any credit submitted by a secured creditor shall be subject to any applicable challenge rights relating to the validity of such underlying security or credit agreement and related credit documentation, on the basis that the alleged secured creditor is not entitled to credit bid their alleged interests. For the avoidance of doubt, (i) the DIP Agent shall be deemed a Qualified Bidder with respect to the DIP Agent's collateral; (ii) the Bond Trustee shall be deemed a Qualified Bidder with respect to the Bond Trustee's collateral; (iii) the Bank of New Hampshire shall be deemed a Qualified Bidder with respect to Bank of New Hampshire's collateral; and (iv) any other Secured Creditor shall be deemed a Qualified Bidder with respect to such Secured Creditor's collateral.

## VI.    __Obtaining Due Diligence Access__.

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the SIMAD Debtors' electronic data room, and additional non-public information regarding the SIMAD Debtors; provided that such access may be terminated by the SIMAD Debtors in their reasonable discretion, including if: (i) an Acceptable Bidder does not become a Qualified Bidder; (ii) the SIMAD Debtors determine any bidder is no longer an Acceptable Bidder; or (iii) these Bidding Procedures are terminated. **No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement**. Beginning on the date the SIMAD Debtors determine that a party is an Acceptable Bidder, or as soon as reasonably practicable thereafter, the SIMAD Debtors will provide such Acceptable Bidder with access to an

electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request.

Acceptable Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the SIMAD Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the SIMAD Debtors without the prior written consent of the SIMAD Debtors (email to suffice).  The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the SIMAD Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Acceptable Bidders, the SIMAD Debtors shall not furnish any confidential information relating to the SIMAD Debtors or a potential transaction to any person except an Acceptable Bidder or such Acceptable Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement; *provided,* however, that the Consultation Parties shall have access to the data room and all due diligence materials.

The SIMAD Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided that* the SIMAD Debtors may decline to provide such information to Acceptable Bidders who, in the SIMAD Debtors' reasonable business judgment, have not established, or who have raised doubt, that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction. For any Potential Purchaser who is a competitor or customer of the SIMAD Debtors or is affiliated with any competitors or customers of the SIMAD Debtors, or otherwise presents a bona fide competitive or strategic concern, the SIMAD Debtors reserve the right to withhold or modify any diligence materials that the SIMAD Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Potential Purchaser.

### A.      Communications with Acceptable Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Acceptable Bidders (including any Qualified Bidders) shall be through SSG Capital Advisors, LLC. The SIMAD Debtors reserve the right, in their reasonable business judgment to disqualify any Acceptable Bidders that have communications between and amongst themselves without the prior written consent of the SIMAD Debtors (email to suffice).

The SIMAD Debtors have designated Alexander D. Lamm at SSG (alamm@ssgca.com) to coordinate all reasonable requests for additional information and due diligence access.

B.      **Due Diligence from Acceptable Bidders (including Qualified Bidders).**

Each Acceptable Bidder (including any Qualified Bidder) and their respective advisors shall comply with all reasonable requests for additional information and due diligence access requested by the SIMAD Debtors or their advisors, regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated Sale Transaction(s). Failure by an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder(s), if any) to comply with such reasonable requests for additional information and due diligence access may be a basis for the SIMAD Debtors, to determine that such Acceptable Bidder is no longer an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder(s), if any) or that a bid made by such bidder is not a Qualified Bid.

VII.    **Bid Deadline**.

Binding Bids must be submitted in writing to the following parties (the "Notice Parties") so as to be **actually received** no later than **4:00 p.m. (prevailing Eastern Time) on July 17, 2026** (the "Bid Deadline"):

(i)     proposed counsel to the SIMAD Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn. Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine, Esq. (wusatine@coleschotz.com), David M. Bass, Esq. (dbass@coleschotz.com), Felice R. Yudkin, Esq. (fyudkin@coleschotz.com), and Daniel J. Harris, Esq. (dharris@coleschotz.com); and

(ii)    the SIMAD Debtors' proposed investment banker, SSG Capital Advisors, LLC, Attn: J. Scott Victor (jsvictor@ssgca.com), Teresa C. Kohl (tkohl@ssgca.com), Craig D. Warznak (cwarznak@ssgca.com), Alexander D. Lamm (alamm@ssgca.com) and Dylan E. Rush (drush@ssgca.com); and

(iii)   counsel to any statutorily appointed committees in these chapter 11 cases.

The SIMAD Debtors may extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment for all or certain Acceptable Bidders, in consultation with the Consultation Parties.

VIII.   **Evaluation of Qualified Bids.**

The SIMAD Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the SIMAD Debtors' business judgment, in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid or combination of Qualified Bids for the Sale Package or portion(s) thereof, as applicable (the "Starting Bid"). The SIMAD Debtors shall promptly (and in no event later than twenty-four (24) hours after receipt by the SIMAD Debtors) provide to the U.S. Trustee and the Consultation Parties copies of all Bids received by the SIMAD Debtors; *provided* that the U.S. Trustee and the Consultation Parties must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the SIMAD Debtors and the applicable bidder. The SIMAD Debtors shall keep the Consultation

Parties reasonably informed of all interested parties that become Acceptable Bidders and the status of their due diligence.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the SIMAD Debtors may consider the following factors, in consultation with the Consultation Parties, in addition to any other factors that the SIMAD Debtors deem appropriate: (a) the amount and nature of the total consideration, which includes but is not limited to, assumed liabilities (administrative liabilities, Cure Payments); (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the SIMAD Debtors' estates from the Sale Transaction(s) contemplated by the Bid Documents; (d) the SIMAD Debtors' regulatory requirements; (e) the tax consequences of such Qualified Bid; (f) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a plan or a sale pursuant to section 363 of the Bankruptcy Code; (g) the certainty of a Qualified Bid leading to a confirmed plan; and (h) any other consideration that may impact the SIMAD Debtors' stakeholders. Prior to commencing the Auction(s), the SIMAD Debtors shall notify the Stalking Horse Bidder(s), if any, and all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction(s) with respect to the applicable Sale Package(s). At such time, the SIMAD Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder(s), if any, and each Qualified Bidder.

## IX.   Stalking Horse Bid(s)

Pursuant to the Order, the SIMAD Debtors may, in consultation with the Consultation Parties, select one or more Qualified Bidders (each, a "Stalking Horse Bid") to act as a stalking horse bidder(s) (the "Stalking Horse Bidder(s)") in connection with the Auction(s) and in connection with any stalking horse agreement with the Stalking Horse Bidder(s) (the "Stalking Horse Agreement(s)"), provide a break-up fee (the "Break Up Fee") not to exceed three percent (3%) of the Purchase Price and agree to reimburse the reasonable and documented out-of-pocket fees and expenses of such Stalking Horse Bidder(s) (the "Expense Reimbursement" and, together with the Break Up Fee, the "Stalking Horse Bid Protections") not to exceed one percent (1%) of the Purchase Price; provided, however, that the SIMAD Debtors shall not agree to, incur, or pay any Stalking Horse Bid Protections from the proceeds of any Sale Transaction without the prior written consent of (i) Bank of New Hampshire with respect to its collateral, (ii) the DIP Agent with respect to its collateral, (iii) the Bond Trustee with respect to its collateral, (iv) or any other Secured Creditor with respect to such Secured Creditor's collateral.  To the extent the SIMAD Debtors designate more than one Stalking Horse Bidder pursuant to the Bidding Procedures, no two Stalking Horse Bidders will be designated with respect to any of the same Sale Package(s). The SIMAD Debtors shall not pay Stalking Horse Bid Protections to any Stalking Horse Bidder(s) on account of the portion of the Purchase Price of such Bid that is a credit bid, assumption of liabilities, or other non-cash (or cash equivalent) consideration, nor provide any Stalking Horse Bid Protections to an insider or affiliate of the SIMAD Debtors.

To the extent the SIMAD Debtors, consistent with the Bidding Procedures, offer Stalking Horse Bid Protections to any additional Stalking Horse Bidder(s), the SIMAD Debtors shall disclose such Stalking Horse Bid Protections in a corresponding notice designating such Stalking Horse Bidder(s) (each, a "Stalking Horse Notice") and serve the Stalking Horse Notice on the Stalking Horse Bidder, the U.S. Trustee, and the Consultation Parties.  The Stalking Horse Notice

shall include: (a) the identity of the Stalking Horse Bidder; (b) the amount of the Stalking Horse Bid; (c) the proposed Stalking Horse Bid Protections to be provided to the Stalking Horse Bidder; (d) the terms of the Stalking Horse Agreement; and (e) the applicable Sale Package(s) to which the Stalking Horse Bid relates.  Any objection to (i) the Stalking Horse Bid Protections set forth in the Stalking Horse Notice or (ii) the designation of the Stalking Horse Bidder (a "Stalking Horse Objection"), shall be filed no later than three (3) business day after the filing of the Stalking Horse Notice at 4:00 p.m. (prevailing Eastern Time).  If a timely Stalking Horse Objection is filed, the SIMAD Debtors are authorized to seek an expedited hearing with respect to the Stalking Horse Objection as soon as reasonably possible, subject to the Court's availability.  Absent any timely Stalking Horse Objections, the Stalking Horse Bid Protections set forth in the Stalking Horse Notice(s) and the designation of the Stalking Horse Agreement(s) are approved. Absent any timely Stalking Horse Objection, the Court may approve the Stalking Horse Bid Protections set forth in the Stalking Horse Notice and the designation of the Stalking Horse Bidder(s) without further hearing. Upon approval of the designation of a Stalking Horse Bidder(s), the SIMAD Debtors are authorized, but not directed, to incur and pay the Stalking Horse Bid Protections to each Stalking Horse Bidder; *provided*, *however*, that, except with the consent of the Bank of New Hampshire or the Bond Trustee, the Stalking Horse Bid Protections shall be paid solely from the gross proceeds of any Sale Transaction with a Successful Bidder other than the Stalking Horse Bidder(s).

## X.      No Qualified Bids; No Auction(s).

If the SIMAD Debtors do not receive a Qualified Bid or combination of Qualified Bids by the Bid Deadline (or by such date reflecting an extension of the Bid Deadline by the SIMAD Debtors for all or some Acceptable Bidders), the SIMAD Debtors reserve the right to cancel the Auction(s). In the event the only Qualified Bid or combination of Qualified Bids with respect to the applicable Sale Package(s) received by the Bid Deadline is a credit bid, then the Auction(s) will not occur, and the Stalking Horse Bid or the Qualified Bid will be deemed to be the Successful Bid(s) for the Assets to which the Stalking Horse Bid or Qualified Bid relates. The SIMAD Debtors shall, as soon as reasonably practicable after the Bid Deadline, file notice of any cancellation of the Auction(s) with the Court.

## XI.     Modification of the Bid Procedures.

The SIMAD Debtors reserve the right to modify the Bidding Procedures, in consultation with the Consultation Parties, in good faith to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction(s), additional terms and conditions on any Sale Transaction(s).  The SIMAD Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder(s); *provided* that the SIMAD Debtors may not (i) modify the consultation or consent rights of Bank of New Hampshire, the DIP Agent, the Bond Trustee, or any other Secured Creditor with respect to such Secured Creditor's collateral as a Consultation Party or (ii) subject to the challenge rights of parties in interest, abridge or limit the rights of Bank of New Hampshire, the DIP Agent, the Bond Trustee, or any other Secured Creditor with respect to such Secured Creditor's collateral to credit bid.

## XII.    Private Sale Procedures

The Debtors may, in their business judgment, in consultation with the Consultation Parties, after entry of the Order, select a Successful Bidder for any of the Assets (each, a "Private Sale") without holding an Auction for such Assets, including any specific camp property pursuant to the procedures described herein (the "Private Sale Procedures").

  i. To the extent the SIMAD Debtors determine a Private Sale is in the SIMAD Debtors' estates best interests with respect to any Asset, the SIMAD Debtors shall file a notice (each, a "Private Sale Notice") with the Court identifying: (i) the Assets being sold; (ii) the SIMAD Debtor that directly owns the Assets; (iii) the proposed Purchaser of the Assets; (iv) the holders of any Encumbrances or asserted Encumbrances on the Assets known to the SIMAD Debtors; (v) the proposed Purchase Price; (vi) the material economic terms and conditions of the proposed Sale Transaction; (vii) any commission, fees, or similar expenses to be paid in connection with such Proposed Transaction; and (viii) a copy of the proposed Sale Order approving the proposed Private Sale. The SIMAD Debtors shall serve the Private Sale Notice on the U.S. Trustee, any statutory committee appointed in these chapter 11 cases, any Secured Creditor with respect to the Assets subject to the Private Sale, and any party reasonably known to allege it is a Secured Creditor with respect to the Assets subject to the Private Sale Notice;

  ii. The Private Sale Notice shall establish an objection deadline (the "Private Sale Objection Deadline") seven (7) calendar days after the filing of the Private Sale Notice for parties in interest to objection (each, a "Private Sale Objection") to the proposed Private Sale. To the extent no Private Sale Objections are filed prior to the Private Sale Objection Deadline, the SIMAD Debtors may file a Certificate of No Objection and submit the applicable proposed Sale Order to the Court for approval; and

  iii. Notwithstanding anything to the contrary herein, no Private Sale Notice for the Sale of any Assets that constitute collateral securing the obligations owed to Bank of New Hampshire, the Bond Trustee, the DIP Agent, or any other Secured Creditor with respect to such Secured Creditor's collateral shall be filed without the prior written consent (not to be unreasonably withheld) of such parties if the proposed Purchase Price for such Assets, net of all costs and expenses of the sale (including any commissions, fees, or similar expenses), would be insufficient to indefeasibly pay in full in cash all outstanding obligations owed to such party that are secured by such Assets.

## XIII. Auction(s).

Other than as expressly set forth herein, if the SIMAD Debtors receive more than one Qualified Bid for the applicable Sale Package(s)) by the Bid Deadline, the SIMAD Debtors shall conduct the Auction(s) to determine the Successful Bidder(s) in their reasonable business judgment with respect to the applicable Sale Package(s). If one or more Qualified Bids (other than the Bid submitted by the Stalking Horse Bidder(s), if any) are received by the Bid Deadline with respect to the applicable Sale Package, then the SIMAD Debtors shall conduct the Auction(s) with

respect to the applicable Sale Package in accordance with the Auction Procedures (as defined below).

If the SIMAD Debtors determine that they have received no Qualified Bids other than any Stalking Horse Bid(s) or they have received only a single Qualified Bid, then the Auction(s) will not occur, and the Stalking Horse Bid(s) or the Qualified Bid will be deemed to be the Successful Bid(s) for the Sale Package(s) to which such Stalking Horse Bid(s) relate. The SIMAD Debtors shall file a notice with the Court within one (1) business day of making such a determination.

The Auction(s), if necessary, shall commence on **July 28, 2026 at 10:00 a.m. (prevailing Eastern Time)**, or such later time or other place as the SIMAD Debtors may determine. The Auction(s) shall be held virtually, via Zoom or such other location designated by the SIMAD Debtors.

The Auction(s) will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.      except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction(s);

b.      only the SIMAD Debtors, Qualified Bidders, Consultation Parties, and the U.S. Trustee, and such parties' representatives and advisors may attend the Auction(s); *provided* that Qualified Bidders may appear through a duly authorized representative (other than their counsel) bearing a valid and enforceable power of attorney or other written proof evidencing their ability to bind the applicable Qualified Bidder, which document(s) shall be delivered to the SIMAD Debtors and their advisors prior to the commencement of the Auction(s);

c.      the SIMAD Debtors, with the assistance of their advisors, shall direct and preside over any Auction(s);

d.      at the commencement of the Auction(s), the SIMAD Debtors may announce modified or additional procedures for conducting the Auction(s) and related rules governing the Auction(s), including time periods available to all Qualified Bidders to submit successive bid(s), or otherwise modify the Bidding Procedures, in each case in consultation with the Consultation Parties;

e.      the Qualified Bidders, including any Stalking Horse Bidder(s), if any, must appear in person or through duly-authorized representatives at the Auction(s);

f.      bidding shall begin with the Starting Bid(s);

g.      subsequent bids (each, an "Overbid") must comply with the following terms: at the Auction(s), the SIMAD Debtors shall announce the minimum increment by which any Overbid must increase in cash, cash equivalents, or other such consideration that the SIMAD Debtors may, in their reasonable business judgment, deem equivalent (including the right of a secured creditor to credit bid any remaining amount of its secured claims) over

the previous bid *plus*, in the event that the SIMAD Debtors have entered into a Stalking Horse Agreement to which the Overbid relates, the aggregate amount of Stalking Horse Bid Protections (including, for the avoidance of doubt, any Break Up Fees and/or Expense Reimbursements) under such Stalking Horse Agreement and/or Expense Reimbursement under such Stalking Horse Agreement (a "Minimum Overbid"). The SIMAD Debtors may, in their reasonable business judgment, announce increases or reductions to the Minimum Overbid at any time during the Auction(s). For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction(s) must contain a Purchase Price in cash, cash equivalents, or such other consideration that the SIMAD Debtors may, in their reasonable business judgment, deem equivalent (including the right of a secured creditor to credit bid any remaining amount of its secured claims) that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid;

h.      each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction(s), as determined by the SIMAD Debtors; *provided*, that, unless the SIMAD Debtors determine otherwise, a failure to respond and submit successive bid(s) at the Auction(s) will result in disqualification;

i.      during the course of the Auction(s), the SIMAD Debtors shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the SIMAD Debtors' view, the highest or otherwise best bid(s) with respect to the applicable Sale Package(s);

j.      to remain eligible to participate in the Auction(s), in each round of bidding, each Qualified Bidder must submit an Overbid with respect to such round of bidding and to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction(s);

k.      the Auction(s) will be transcribed to ensure an accurate recording of the bidding at the Auction(s);

l.      each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction(s). For the avoidance of doubt, this requirement does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the SIMAD Debtors' prior written consent (email to suffice);

m.      each Qualified Bidder will be required to confirm that its bid is a good faith, *bona fide* offer and it intends to consummate any Sale Transaction(s) if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction(s));

n.      subject to each Debtor's fiduciary obligations, including as set forth herein, the Court and the SIMAD Debtors will not consider bids made after the Auction(s) has been closed;

o.      the SIMAD Debtors, in their reasonable business judgment, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the SIMAD Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of any Sale Transaction(s), or (iii) contrary to the best interests of the SIMAD Debtors, their estates, their creditors, and other stakeholders;

p.      the SIMAD Debtors have the right to request any additional information that will allow the SIMAD Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the SIMAD Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction(s);

q.      the SIMAD Debtors reserve the right, in their business judgment, to adjourn the Auction(s) one or more times to, among other things, (a) facilitate discussions between the SIMAD Debtors and Qualified Bidders, (b) allow Qualified Bidders the opportunity to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the SIMAD Debtors with such additional evidence as the SIMAD Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount;

r.      notwithstanding anything herein to the contrary, the SIMAD Debtors may at any time choose to adjourn the Auction(s) by announcement at the Auction(s). The SIMAD Debtors shall promptly file notice of such adjournment with the Court; and

s.      the SIMAD Debtors reserve the right to further amend, waive, or otherwise modify the Auction Procedures at any time; *provided* that the SIMAD Debtors may not (i) modify the consultation or consent rights of the Consultation Parties, or (ii) subject to the challenge rights of parties in interest, abridge or limit the rights of Bank of New Hampshire, the DIP Agent, the Bond Trustee or any other Secured Creditor with respect to such Secured Creditor's collateral to credit bid with respect to each party's respective collateral.

For the avoidance of doubt, nothing in the Bidding Procedures, including the Auction Procedures, will prevent the SIMAD Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the SIMAD Debtors, in consultation with counsel).

Any auction rules adopted by the SIMAD Debtors will not modify any of the terms of any Stalking Horse Agreement(s) or the rights of the Stalking Horse Bidder(s), if any, without the consent of the Stalking Horse Bidder(s), if any.

Except as otherwise determined by the SIMAD Debtors, only (i) the SIMAD Debtors, (ii) the Office of the United States Trustee, (iii) any other Qualified Bidders, (iii) the Consultation Parties, and (iv) the respective representatives and professionals of the foregoing parties shall be

entitled to participate in the Auction(s), however, any party in interest will be permitted to attend the Auction(s).

The SIMAD Debtors shall send written notice of the date, time, and place of the Auction(s) to the Qualified Bidders the U.S. Trustee, and the Consultation Parties no later than two (2) business days before such Auction(s), and will post notice of the date, time, and place of the Auction(s) no later than two (2) business days before such Auction(s) on the website of the SIMAD Debtors' claims and noticing agent, at https://restructuring.ra.kroll.com/SIMAD.

## XIV.   <u>Acceptance of the Successful Bid(s).</u>

The Auction(s) shall continue until (i) there is only one Qualified Bid or a combination of Qualified Bids that the SIMAD Debtors determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, in consultation with the Consultation Parties, is the highest or otherwise best bid to purchase the applicable Sale Package(s), as applicable (each, a "<u>Successful Bid</u>"), and (ii) the SIMAD Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the SIMAD Debtors, at which point, the Auction(s) will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the SIMAD Debtors may, in consultation with the Consultation Parties, consider the following factors in addition to any other factors that the SIMAD Debtors deem appropriate: (a) the amount and nature of the total consideration, which includes but is not limited to, assumed liabilities (administrative liabilities, Cure Payments); (b) the likelihood of the Qualified Bidder's ability to close the Sale Transaction(s) and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the SIMAD Debtors' estates from the transaction contemplated by the Bid Documents; (d) the SIMAD Debtors' regulatory requirements; (e) the tax consequences of such Qualified Bid; (f) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a plan or a sale pursuant to section 363 of the Bankruptcy Code; (g) the certainty of a Qualified Bid leading to a confirmed plan; and (h) any other consideration that may impact the SIMAD Debtors' stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "<u>Successful Bidder</u>" with respect to the applicable Sale Package contemplated for purchase pursuant to such Successful Bid. The SIMAD Debtors shall file notice of the Successful Bid and the Successful Bidder with the Court as soon as reasonably practicable after conclusion of the Auction(s). Following conclusion of any Auction(s) and selection of a Successful Bidder, the SIMAD Debtors shall present the results of any Auction(s) at a hearing and shall seek (a) certain findings from the Court regarding the Auction(s), including, among other things, that (i) the Auction(s) was conducted, and the Successful Bidder(s) was selected, in accordance with these Bidding Procedures, (ii) the Auction(s) was fair in substance and procedure, and (iii) Closing of the Successful Bid(s) will provide the highest or otherwise best value for the applicable Sale Package(s), and is in the best interests of the SIMAD Debtors' estates, and (b) Court approval to enter into a binding purchase agreement with the Successful Bidder(s) on the terms of the Successful Bid(s); provided that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body

of any Debtor to take or refrain from taking any action that the SIMAD Debtors determined in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law. Within one (1) business day of the conclusion of any Auction(s), each Successful Bidder(s) (including both the Stalking Horse Bidder(s), if any, and Back-Up Bidder, if applicable, but excluding any Secured Creditor exercising its right to credit bid) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate Purchase Price such that the Successful Bidder's total cash deposit is equal to ten (10) percent of the aggregate Purchase Price, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the SIMAD Debtors. Each Successful Bidder and the SIMAD Debtors shall, as soon as possible, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XV.    Designation of Back-Up Bidder.

The Back-Up Bid to purchase any applicable Sale Package(s) (the "Back-Up Bidder") will be determined by the SIMAD Debtors at the conclusion of the Auction(s), and will be announced at that time to all the Qualified Bidders participating in the Auction(s). The SIMAD Debtors' selection of a Back-Up Bid shall be deemed final and the SIMAD Debtors shall not accept any further bids or offers to submit a bid after such selection; provided that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that the SIMAD Debtors determined in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law. The SIMAD Debtors will be authorized, but not required, to consummate any Sale Transaction(s) with the Back-Up Bidder without further order of the Court, so long as such Back-Up Bid shall have been approved in connection with the Court's approval of the Successful Bid, or subject to Court approval if not.

If for any reason a Successful Bidder fails to consummate the Sale Transaction(s) within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid, and the Back-Up Bidder shall be deemed a Successful Bidder and shall be required to consummate any Sale Transaction(s) with the SIMAD Debtors as soon as is reasonably practicable without further order of the Court, upon 24 hours advance notice filed with the Court. To the extent any objections are raised and remain unresolved, the Court may schedule a hearing on an expedited basis to adjudicate such objection.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) ninety (90) days following the hearing to consider the applicable order approving the Sale Transaction(s) (the "Sale Order"), (ii) confirmation of a plan, and (iii) the release of such Back-Up Bid by the SIMAD Debtors in writing (the "Back-Up Termination Date"). The SIMAD Debtors shall return the Back-Up Bidder's deposit owed within five (5) business days of the Back-Up Termination Date.

## XVI.    Approval of the Sale Transaction(s).

A hearing to consider approval of each Sale Transaction(s) (the "Sale Hearing"), is currently scheduled to take place on **August 4, 2026, at 1:00 p.m.**, prevailing Eastern Time, before the Honorable Christine M. Gravelle, or conducted consistent with the procedures established pursuant to the Court's standing orders.

At the Sale Hearing, certain findings will be sought from the Court regarding the Auction(s), including, among other things, that: (i) the Auction(s) occurred, and the Successful Bidder(s) were selected, in accordance with the Bidding Procedures; (ii) the Auction(s) were fair in substance and procedure; (iii) the Successful Bid(s) were Qualified Bid(s) as defined in the Bidding Procedures; and (iv) consummation of any Sale Transaction(s) as contemplated by the Successful Bid(s) in the Auction(s) will provide the highest or otherwise best offer for the applicable Sale Package and are in the best interests of the SIMAD Debtors and their estates. **The Sale Hearing may be continued to a later date by the SIMAD Debtors by sending notice to creditors or other parties in interest prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder(s), if any).**

Objections to the Sale Transaction(s) and the Sale Order must: (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served so as to be actually received by the SIMAD Debtors by **July 31, 2026[5], at 4:00 p.m., prevailing Eastern Time**.

## XVII.  Return of Good Faith Deposit.

The Good Faith Deposit(s) of the Successful Bidder(s), if any, will, upon consummation of the Successful Bid(s), become property of the SIMAD Debtors' estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

If the Successful Bidder(s) (or Back-Up Bidder or Back-Up Bidders, if applicable), if any, fails to consummate the Successful Bid(s) (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit(s) of such Successful Bidder(s) (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the SIMAD Debtors and may be retained by the SIMAD Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the SIMAD Debtors.

The Good Faith Deposits of any unsuccessful Qualified Bidders (except for any Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidder(s)) will be returned within five (5) business days after consummation of the applicable Sale Transaction(s) or upon the permanent withdrawal of the applicable proposed Sale Transaction(s).

---

[5]   To the extent that the Auction concludes less than two (2) days prior to the Sale Objection Deadline, the SIMAD Debtors shall file a notice on the docket indicating that the Auction is ongoing and that the new Sale Objection Deadline, which shall be two (2) days after the Notice of Successful Bidder is filed, shall be listed in such Notice of Successful Bidder.

The Good Faith Deposit(s) of any Back-Up Bidder(s), if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days of the Back-Up Termination Date.

The return of any Good Faith Deposits of any Stalking Horse Bidder(s) will be subject to the terms of such Stalking Horse Bidders' Plan or purchase agreement, as applicable.  All such deposits shall be held in escrow and at no time shall be deemed property of the SIMAD Debtors' estates absent further order of the Court.

## XVIII. Reservation of Rights.

The SIMAD Debtors, in consultation with the Consultation Parties, reserve their rights to modify these Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction(s) (if held), additional terms and conditions on the Sale(s) in any manner that will best promote the goals of the bidding process including, without limitation: (i) extending the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction(s); (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction(s) (if held); (iv) canceling the Auction(s); (v) rejecting any or all Bid(s) or Qualified Bid(s); and (vi) adjusting the applicable Minimum Overbid. The SIMAD Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder(s); *provided* that the SIMAD Debtors may not (i) modify the consultation or consent rights of Bank of New Hampshire, the DIP Agent , Bond Trustee, or any other Secured Creditor with respect to such Secured Creditor's collateral as a Consultation Party, or (ii) subject to the challenge rights of parties in interest, abridge or limit the rights of Bank of New Hampshire to credit bid. Notwithstanding anything to the contrary herein, the SIMAD Debtors may elect to consummate the Sale Transaction(s) under section 363(f) of the Bankruptcy Code as opposed to pursuant to the Plan with the Successful Bidder(s). All parties expressly reserve all of their rights (and do not waive any such rights) to seek Court relief with regard to the Auction(s), the Bidding Procedures, any Sale Transaction(s), and any related items (including, if necessary, to seek an extension of the Bid Deadline).

## XIX. Consent to Jurisdiction.

All Qualified Bidders at the Auction(s) will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction(s), the Sale(s), the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction(s), as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction(s), any Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale(s) or Sale Transaction(s) if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

**XX**.   **Fiduciary Out.**

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a SIMAD Debtor or its board of directors, board of managers, or similar governing body of a SIMAD Debtor, or special committee of any board of any SIMAD Debtor, to take any action or to refrain from taking any action related to any Sale Transaction(s) or with respect to these Bidding Procedures, to the extent such SIMAD Debtor, board of directors, board of managers, or such similar governing body determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

**Exhibit 2**

**Form of Auction Notice**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., *et al.*,[1] | Case No. 26-16388 (CMG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF SALE BY AUCTION AND SALE HEARING**

PLEASE TAKE NOTICE that on [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief*

---

[1]   A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD.  The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

[Docket No. [●]] (the "Bidding Procedures Order")² in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors").

PLEASE TAKE FURTHER NOTICE that the SIMAD Debtors are soliciting offers for the purchase of all, substantially all, or any portion of the SIMAD Debtors' assets free and clear of all liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, encumbrances, and other interests (collectively, the "Encumbrances") consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order. **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

PLEASE TAKE FURTHER NOTICE that the deadline by which all binding bids must be actually received pursuant to the Bidding Procedures is **July 17, 2026, at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that if the SIMAD Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the SIMAD Debtors will conduct an auction or multiple auctions (each, an "Auction," and collectively, the "Auctions") of the applicable Sale Package(s) **on July 28, 2026, at 10:00 a.m. (prevailing Eastern Time)** virtually, via Zoom or such other location as determined by the SIMAD Debtors.

PLEASE TAKE FURTHER NOTICE that only the SIMAD Debtors, the Qualified Bidders, the U.S. Trustee, and any other parties as the SIMAD Debtors may determine in their reasonable discretion, in each case, along with the representatives and advisors, shall be entitled to participate in the Auction(s), and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction(s); *provided*, *however*, that any party in interest and their respective counsel will be permitted to attend the Auction(s). **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.** Copies of the Bidding Procedures, the Bidding Procedures Order, and any other related documents are available upon request to the SIMAD Debtors' Claims and Noticing Agent, by visiting the SIMAD Debtors' restructuring website at https://restructuring.ra.kroll.com/SIMAD.

PLEASE TAKE FURTHER NOTICE that the SIMAD Debtors will seek approval of any Sale Transaction(s) at a hearing scheduled to commence **on August 4, 2026 at 1:00 p.m., prevailing Eastern Time** (the "Sale Hearing") before the Honorable Christine M. Gravelle, or conducted consistent with the procedures established pursuant to the Court's standing orders.

PLEASE TAKE FURTHER NOTICE that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of any Sale Transaction(s) and any objections to proposed cure payments or the assumption and assignment of Executory Contracts or Unexpired Leases, must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection

---

² Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** on or before **July 31, 2026,**[3] **4:00 p.m., prevailing Eastern Time,** by the following parties:

(i)       proposed counsel to the SIMAD Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn. Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine, Esq. (wusatine@coleschotz.com), David M. Bass, Esq. (dbass@coleschotz.com), Felice R. Yudkin, Esq. (fyudkin@coleschotz.com), and Daniel J. Harris, Esq. (dharris@coleschotz.com); and

(ii)      counsel to any statutorily appointed committee.

## CONSEQUENCE OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR A SALE TRANSACTION, AS APPLICABLE, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE SIMAD DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

[*Remainder of Page Intentionally Left Blank*]

---

[3]   To the extent that the Auction concludes less than two (2) days prior to the Sale Objection Deadline, the SIMAD Debtors shall file a notice on the docket indicating that the Auction is ongoing and that the new Sale Objection Deadline, which shall be two (2) days after the Notice of Successful Bidder is filed, shall be listed in such Notice of Successful Bidder.

Dated: June [__], 2026

/s/
_____
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:       msirota@coleschotz.com
             wusatine@coleschotz.com
             dbass@coleschotz.com
             fyudkin@coleschotz.com
             dharris@coleschotz.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

<u>**Exhibit 3**</u>

**Form of Assumption Notice**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., *et al.*,[1] | Case No. 26-16388 (CMG) |
| Debtors. | (Jointly Administered) |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

---

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
> OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN
> EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
> OF THE SIMAD DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid(s), the SIMAD Debtors **may** assume and assign to the Successful Bidder(s) the Executory Contracts and Unexpired Leases listed on **Exhibit A** to which you are a counterparty, upon approval of any Sale Transaction(s). The SIMAD Debtors have conducted a review of their books and records and have determined that the Cure Payments for unpaid monetary obligations under such Executory Contract or Unexpired Lease is as set forth on **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Payments, object to a proposed assignment to the Successful Bidder of any Executory Contract or Unexpired Lease, or dispute the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payments, state the correct Cure Payments alleged to be owed under the applicable Contract or Lease Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served and **actually received no later than July 31, 2026, at 4:00 p.m. (prevailing Eastern Time)** (**the "Sale Objection Deadline"**) on the following parties:

(i)     proposed counsel to the SIMAD Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn. Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine, Esq. (wusatine@coleschotz.com), David M. Bass, Esq. (dbass@coleschotz.com), Felice R. Yudkin, Esq. (fyudkin@coleschotz.com), and Daniel J. Harris, Esq. (dharris@coleschotz.com);

(ii)    and counsel to any statutorily appointed committee.

---

[2]   Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Payments, the proposed assignment and assumption of any Executory Contract or Unexpired Lease, or adequate assurance of the Successful Bidder's ability to perform is filed by the Sale Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Payments as determined by the SIMAD Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Payments are due under the Executory Contract or Unexpired Lease, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of any Sale Transaction(s).

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease or related Cure Payments in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE TAKE FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Executory Contract or Unexpired Lease on the Assumption Notice or any Supplemental Assumption Notice does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed by the SIMAD Debtors at any time or assumed and assigned, and all rights of the SIMAD Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved. Moreover, the SIMAD Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the SIMAD Debtors and/or the Successful Bidder, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that nothing herein (i) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or amount of any claims of a Contract or Lease Counterparty against the SIMAD Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the SIMAD Debtors that may arise under such Executory Contract or Unexpired Leas

Dated: June [●], 2026

/s/

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
              wusatine@coleschotz.com
              dbass@coleschotz.com
              fyudkin@coleschotz.com
              dharris@coleschotz.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

**<u>Exhibit A</u>**

**Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases**

[*to be filed with Assumption Notice*]