**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Bradford J. Sandler, Esq.
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Maxim B. Litvak, Esq. (admitted *pro hac vice*)
Theodore S. Heckel, Sr., Esq. (*pro hac vice* forthcoming)
PACHULSKI STANG ZIEHL & JONES LLP
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:     bsandler@pszjlaw.com
           rfeinstein@pszjlaw.com
           mlitvak@pszjlaw.com
           theckel@pszjlaw.com

*Counsel to Metropolitan Partners Group Administration,*
*LLC; Metropolitan Partners Fund VIII Investments LLC;*
*Metropolitan Partners Fund VIII LP; Metropolitan*
*Levered Partners Fund VIII LP; and Metropolitan*
*Offshore Partners Fund VII, LP*

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,<br><br>Debtors.[1] | Case No. 26-16388 (CMG)<br><br>Chapter 11<br><br>Judge:  Hon. Christine M. Gravelle |

**METROPOLITAN PARTNERS GROUP ADMINISTRATION, LLC, METROPOLITAN
PARTNERS FUND VIII INVESTMENTS LLC, METROPOLITAN PARTNERS FUND
VIII LP, METROPOLITAN LEVERED PARTNERS FUND VIII LP, AND
METROPOLITAN OFFSHORE PARTNERS FUND VII, LP'S OBJECTION TO FINAL
APPROVAL OF DIP FINANCING MOTION AND MOTION TO ADJOURN THE
FINAL DIP HEARING UNTIL AN OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IS APPOINTED IN THESE CASES**

---

[1]   A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtors' tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of SIMAD Debtor SIMAD Holding Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

4922-0326-3930.7 56838.00001

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

OBJECTION............................................................................................................................. 3

I.      The Final Hearing Should Be Continued Until a Committee is Appointed ..................... 3

II.     Alternatively, the Roll-Up DIP Loans Should be Denied or Only Approved

        Subject to Certain Conditions ...................................................................................... 4

III.    The DIP Fees are Excessive.......................................................................................... 7

IV.     The DIP Motion Contains Various Overreaching Requests That Prejudice

        Unsecured Creditors...................................................................................................... 7

        A.      Unencumbered Litigation Assets Should Remain Unencumbered and Free

                of Any Liens or Superpriority Claims ................................................................ 7

        B.      The Proposed Section 506(c), Marshaling, and "Equities of the Case"

                Waivers are Inappropriate................................................................................ 10

        C.      The Lien Validation and Challenge Provisions are Objectionable...................... 13

        D.      Milestones...................................................................................................... 14

        E.      Other Issues With the DIP Facility .................................................................. 15

RESERVATION OF RIGHTS ................................................................................................... 15

CONCLUSION......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Buncher Co. v. Official Comm. (In re GenFarm Ltd. P'ship IV)*
229 F.3d 245 (3d Cir. 2000) .......................................................................................... 9

*Cullen Ctr. Bank & Tr. v. Hensley (In re Criswell)* 102 F.3d 1411 (5th Cir. 1997)....................... 9

*Delbridge v. Prod'n Credit Ass'n*
104 B.R. 824 (E.D. Mich. 1989)..................................................................................... 12

*Frank v. Mich. State Unemployment Agency (In re Thompson Boat Co.)*
252 F.3d 852 (6th Cir. 2001) .......................................................................................... 9

*Gaudet v. Babin (In re Zedda)*
103 F.3d 1195 (5th Cir. 1997) ........................................................................................ 9

*Hartford Fire Ins. v. Northwest Bank Minn. (In re Lockwood Corp.)*
223 B.R. 170, (B.A.P. 8th Cir. 1998) ............................................................................. 11

*In re Ames Dep't Stores, Inc.*
115 B.R. 34 (Bankr. S.D.N.Y. 1990)............................................................................... 5

*In re Aqua Assocs.*
123 B.R. 192 (Bankr. E.D. Pa. 1991) ............................................................................. 5

*In re Bruin E&P Partners, LLC*
No. 20-33605 (Bankr. S.D. Tex. Jul. 17, 2020)......................................................... 5, 6

*In re Codesco, Inc.*
18 B.R. 225 (Bankr. S.D.N.Y. 1982)............................................................................... 11

*In re Colad Grp.*
324 B.R. 208 (Bankr. W.D.N.Y. 2005) .......................................................................... 11

*In re Crouse Grp., Inc.*
71 B.R. 544 (Bankr. E.D. Pa. 1987) ............................................................................... 5

*In re Equalnet Comm'cn Corp.*
258 B.R. 368 (Bankr. S.D. Tex. 2000) ........................................................................... 5

*In re Excel Maritime Carriers, Ltd.*
No. 13-23060 (RDD) (Bankr. S.D.N.Y. Aug. 6, 2013)................................................. 9

*In re FCX, Inc.*
54 B.R. 833 (Bankr. E.D.N.C. 1985)............................................................................... 5

*In re Laffite's Harbor Dev. I, LP*
No. 17-36191, 2018 Bankr. LEXIS 2 (Bankr. S.D. Tex. Jan. 2, 2018) ...................... 5

*In re Metaldyne Corp.*
No. 09-13412, 2009 Bankr LEXIS 1533(Bankr. S.D.N.Y. June 23, 2009) ................ 12

*In re Muma Servs.*
322 B.R. 541 (Bankr. D. Del. 2005) ................................................................................. 12

*In re NEC Holdings Corp.*
No. 10-11890 (Bankr. D. Del. July, 13, 2010) ................................................................. 11

*In re Roblin Indus., Inc.*
52 B.R. 241 (Bankr. W.D.N.Y. 1985) ................................................................................ 4

*In re Saybrook Mfg. Co.*
963 F.2d 1490 (11th Cir. 1992) .......................................................................................... 6

*In re Tenney Village Co.*
104 B.R. 562 (Bankr. D.N.H. 1989) ................................................................................... 5

*In re Tri-Union Dev. Corp.*
253 B.R. 808 (Bankr. S.D. Tex. 2000) ............................................................................... 5

*In re Vanguard Diversified, Inc.*
31 B.R. 364 (Bankr. E.D.N.Y. 1983) .................................................................................. 4

*In re Verasun*
No. 08-12606 (BLS) (Bankr. D. Del. Dec. 3, 2008) .......................................................... 6

*McFarland v. Leyh (In re Texas Gen. Petrol. Corp.)*
52 F.3d 1330 (5th Cir. 1995) .............................................................................................. 9

*Official Comm. of Unsecured Creditors v. Goold Elecs. Corp. (In re Goold Elecs. Corp.)*
No. 93-4196, 1993 U.S. Dist. LEXIS 14318 (N.D. Ill. Sept. 20, 1993) ............................ 9

*Official Comm. v. Hudson United Bankr. (In re America's Hobby Center)*,
223 B.R. 275 (Bankr. S.D.N.Y. 1998) .............................................................................. 12

*Official Comm. v. New World Pasta Co.*
322 B.R. 560 (M.D. Pa. 2005) ............................................................................................ 5

*Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus.)*
57 F.3d 321 (3d Cir. 1995) ................................................................................................ 11

*Ramette v. United States (In re Bame)*,
279 B.R. 833 (8th Cir. B.A.P. 2002) ................................................................................. 12

*Reynolds v. Servisfirst Bank* (*In re Stanford*)
17 F.4th 116 (11th Cir. 2021) ............................................................................................. 6

*Sikirica v. No Respondent (In re Kaib)*
448 B.R. 373 (Bankr. W.D. Pa. 2011) ................................................................................ 5

*Sprint Nextel Corp. v. U.S. Bank Nat'l Ass'n (In re TerreStar Networks)*
457 B.R. 254 (Bankr. S.D.N.Y. 2011) .............................................................................. 12

*United Capital Corp. v. Sapolin Paints, Inc. (In re Sapolin Paints, Inc.*)
11 B.R. 930 (Bankr. E.D.N.Y. 1981) .................................................................................. 9

**STATUTES**

11 U.S.C. §  1129(b)(2)(A)..................................................................................................... 6

11 U.S.C. §  552(b) .............................................................................................................. 12

11 U.S.C. § 364 .................................................................................................................... 6

11 U.S.C. § 364(d) ............................................................................................................... 5

11 U.S.C. § 503(b)(9) ......................................................................................................... 11

11 U.S.C. § 506(c) ................................................................................................... 3, 10, 11, 12

11 U.S.C. § 552 .................................................................................................................... 3

**OTHER AUTHORITIES**

1 COLLIER LENDING INSTITUTIONS & THE BANKRUPTCY CODE ¶ 5.03[2][b] ................................. 6

3 COLLIER ON BANKRUPTCY ¶ 364.06[2] (16th ed.) ......................................................... 6

5 COLLIER ON BANKRUPTCY ¶ 541.14 at n.1 .................................................................. 9

Metropolitan Partners Group Administration, LLC, Metropolitan Partners Fund VIII Investments LLC, Metropolitan Partners Fund VIII LP, Metropolitan Levered Partners Fund VIII LP, and Metropolitan Offshore Partners Fund VII, LP (together, "Metropolitan"), lenders to certain of the above-captioned SIMAD Debtors, hereby submit this objection to approval on a final basis of the *SIMAD Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the SIMAD Debtor Borrowers to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 225] (the "DIP Motion"),[1] and in support thereof Metropolitan respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Metropolitan is owed approximately $25 million, making it the largest general unsecured creditor in these cases.  Metropolitan's claim against the SIMAD Debtors arises from the guaranty by the lead debtor in this case, SIMAD Holdings Ltd., as well as debtor SIMAD Equities LLC, of obligations owed to Metropolitan under a three-year delayed draw term loan agreement dated April 30, 2025, pursuant to which Metropolitan lent $50 million to the borrowers under that agreement.[2]

2.     No official creditors' committee has yet been appointed in the case.  The delay in that appointment is due in large part to the Debtors' failure to file the required top 20 general unsecured creditors list with their petitions on June 4, 2026.  The Debtors did not file a consolidated top 50 general unsecured creditors' list [Docket No. 91] until June 15, 2026, and only then could the United States Trustee belatedly begin the process of soliciting creditors interested in sitting on

---

[1]     Capitalized terms not defined herein shall have the meanings set forth in the DIP Motion.

[2]     To be clear, Metropolitan is a private lending institution that provides growth capital to small and mid-sized businesses, and is not a merchant cash advance lender.

an official creditors' committee.  Metropolitan was identified as the largest unsecured creditor on that list.

3.	At the hearing to approve the DIP Motion on an interim basis held on June 26, 2026, the Court rightfully expressed concern that the Final Hearing on the DIP Motion should be scheduled to allow time for an official creditors' committee to be formed so that it can weigh in on the DIP Motion.  The Final Hearing is currently scheduled for July 13, 2026, with an objection deadline of today, July 6, 2026.  Unfortunately, the Office of the United States Trustee has not yet appointed a committee, so the objection deadline is passing today without the opportunity for a committee to object prior to the deadline.

4.	Metropolitan objects to the hearing on the DIP Motion proceeding on a final basis unless and until an official committee is formed and has a meaningful opportunity to address the serious issues raised by the DIP Motion that will adversely affect the rights of general unsecured creditors.  The Debtors should not be rewarded for their failure to attach a top unsecured creditors list to their petition, which delayed the appointment of a committee, by having this motion proceed without the statutory body representing the voice of general unsecured creditors having an opportunity to be heard on the matter.

5.	The Debtors' estates will not be prejudiced if the Final Hearing is delayed.  The Approved DIP Budget contemplates that the Debtors have only borrowed approximately $10.4 million out of the total $20 million of new money borrowings previously approved under the Interim DIP Order.  The Debtors therefore can make additional draws under the DIP Facility in order to provide them with adequate liquidity to continue the Final Hearing.  Further, the applicable milestone under the DIP Term Sheet to obtain a Final DIP Order is July 24, 2026, so there is no need to rush before a committee is appointed.  Accordingly, Metropolitan moves this Court to

adjourn the Final Hearing on the DIP Motion until such time that a committee is appointed and able to competently weigh in on the relief sought in the DIP Motion.

6.      In the event that the Final Hearing on the DIP Motion is not adjourned as requested, Metropolitan objects to the DIP Motion on a final basis on the substantive grounds set forth herein, including that the DIP Loan is overreaching and excessive in certain respects.  Specifically, Metropolitan objects to the proposed rollup of prepetition debt; the extent of the commitment and exit fees, particularly on the rolled up debt; any liens or superpriority claims on, or payable from, proceeds of avoidance actions, including potential avoidance claims against the Prepetition Secured Parties themselves (which is tantamount to a release) and others involved in the allegedly tainted bond offering; and the imposition of a Challenge provision that improperly limits the ability of a committee to exercise its statutory duties.  Additionally, the Debtors seek a section 506(c) surcharge waiver in favor of the DIP Lenders and the Prepetition Secured Parties, which should be denied unless the Debtors can prove that all of the Debtors' projected administrative expenses (including an adequate professional fee budget for committee professionals) will be satisfied and the case will be run on an administratively solvent basis.  Likewise, all equities of the case and section 552 rights of the estates should be reserved to ensure administratively solvent estates.

7.      For the reasons set forth herein, the Court should adjourn the Final Hearing on the DIP Motion until a committee is formed and has an adequate opportunity to weigh in on the merits of the relief sought in the DIP Motion, or otherwise deny the relief requested in the DIP Motion on a final basis on the grounds set forth herein.

## **OBJECTION**

### I.      **The Final Hearing Should Be Continued Until a Committee is Appointed**

8.      Metropolitan requests that the Final Hearing is adjourned until an official committee of unsecured creditors is appointed.  As addressed above, for whatever reason, the

Debtors filed their list of top general unsecured creditors late, specifically on June 15, 2026, eleven days after their petition date [Docket No. 91]. The United States Trustee could not begin the process of appointing a committee until then and no committee has been appointed as yet. Metropolitan urges the Court to delay the Final Hearing until a committee is appointed and has a chance to get up to speed on this case.

9. Importantly, the Debtors should have the financial wherewithal to continue to maintain operations during a continuance consistent with the provisions of the Interim DIP Order. The Apporoved Budget reflects that the Debtors continue to have nearly $10 million of borrowing capacity under the Interim DIP Order. The Debtors' estates therefore would suffer no prejudice in pushing the Final Hearing until a committee is in place.

10. Further, the DIP Lenders are committed to fund under the DIP Facility through July 24, 2026, which is the applicable milestone under the DIP Term Sheet for entry of the Final DIP Order.

## II. Alternatively, the Roll-Up DIP Loans Should be Denied or Only Approved Subject to Certain Conditions

11. If the Court is not inclined to continue the Final Hearing, Metropolitan objects to final approval of the DIP Facility as currently proposed. The proposed Roll-Up DIP Loans under the DIP Facility were expressly made subject to entry of the Final Order. Metropolitan objects to approval of the proposed Roll-Up DIP Loans through the Final DIP Order for the reasons set forth below.

12. A court should only approve a proposed debtor in possession financing if the debtor meets its burden to prove that such financing "is in the best interest of the general creditor body."[3]

---

[3] *In re Roblin Indus., Inc.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (*citing In re Vanguard Diversified, Inc.*, 31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983)); *see also In re Tenney Village Co.*, 104 B.R. 562, 569 (Bankr. D.N.H.

Moreover, the proposed financing must be "fair, reasonable, and adequate."[4]    Postpetition financing should not be authorized if its primary purpose is to benefit or improve the position of a particular secured lender.[5]    Indeed, courts have long acknowledged the unequal bargaining power that is inherent in negotiations leading to proposed postpetition financing, as well as the significant harm that can befall creditors if the proposed financier is permitted to exploit its leverage position.[6] The proposed DIP Facility should not simply become a tool for the Series A Bondholders to enhance their collateral position.[7]

---

1989) ("The debtor's prevailing obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries.").

[4]    *In re Crouse Grp., Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

[5]    *See, e.g.*, *In re Aqua Assocs.*, 123 B.R. 192, 195–98 (Bankr. E.D. Pa. 1991) ("[C]redit should not be approved when it is sought for the primary benefit of a party other than the debtor."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) ("[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."); *Tenney Village*, 104 B.R. at 568 (stating that debtor in possession financing terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of the secured creditor").

[6]    *See, e.g.*, *In re FCX, Inc.*, 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985) ("[T]he court should not ignore the basic injustice of an agreement in which the debtor, acting out of desperation, has compromised the rights of unsecured creditors.").

[7]    *See, e.g.*, *In re Tri-Union Dev. Corp.*, 253 B.R. 808, 814 (Bankr. S.D. Tex. 2000) (noting that "it is improper under the current Code and caselaw for the debtor, pre-confirmation, to cross-collateralize or 'refinance and recollateralize' a prepetition secured debt secured by substantially all of the debtor's assets"); *In re Equalnet Comm'cn Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000) (denying a roll-up of prepetition debt into postpetition debt where the result of the roll-up would be an enhancement to the secured creditors' collateral position); *Sikirica v. No Respondent (In re Kaib)*, 448 B.R. 373, 376 n.2 (Bankr. W.D. Pa. 2011) (noting that cross-collateralization is generally disallowed in bankruptcy); *Official Comm. v. New World Pasta Co.*, 322 B.R. 560, 569 n.4 (M.D. Pa. 2005) (noting that roll-up provisions "have the effect of improving the priority of a prepetition creditor"); *In re Tenney Village Co.*, 104 B.R. 562, 570 (Bankr. D.N.H. 1989) (holding that "Section 364(d) speaks only of the granting of liens as security for new credit authorized by the Court"); *In re Ames Dept. Stores*, 115 B.R. at 38–39 ("[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."); *In re Laffite's Harbor Dev. I, LP*, No. 17-36191, 2018 Bankr. LEXIS 2, at *6 (Bankr. S.D. Tex. Jan. 2, 2018) ("While certain favorable terms may be permitted as a reasonable exercise of the debtor's business judgment, bankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender.  Thus, courts look to whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest."); *see also* Tr. of Hr'g at 67:9–10, *In re Bruin E&P Partners, LLC*, No. 20-33605 (Bankr. S.D. Tex. Jul. 17, 2020) (noting that roll-ups are "heavily disfavored under the Bankruptcy Code").

13.    Roll-ups are "generally viewed as a more controversial form of adequate protection that courts will approve sparingly."[8]  They are generally disfavored because they provide no benefit to the estate while favoring certain prepetition creditors over others.[9]  Roll-ups can generally harm unsecured creditors in at least two ways.  First, they enhance the lenders' collateral package by providing liens on unencumbered assets that would otherwise be available to unsecured creditors.  Second, the Bankruptcy Code requires this "rolled-up" debt to be repaid in full and in cash in order for a debtor to emerge successfully from chapter 11, thereby exacerbating the risk of administrative insolvency and precluding the debtor from treating the prepetition rolled-up debt in accordance with section 1129(b)(2)(A) of the Bankruptcy Code.[10]

14.    The proposed roll-up of $120 Million in Prepetition Obligations is excessive and unnecessary and should be denied.  If the Court is inclined to grant any rollup, however, then any rollup should (i) remain subject to the committee's and other parties' Challenge rights; (ii) exclude previously unencumbered assets, such as (by example only, and not by way of limitation) avoidance actions, commercial tort claims, and the proceeds thereof; and (iii) require the DIP Lenders to marshal away from any assets other than their prepetition collateral.

---

[8]    1 COLLIER LENDING INSTITUTIONS & THE BANKRUPTCY CODE ¶ 5.03[2][b] (citing cases).

[9]    *In re Bruin E&P Partners, LLC*, Tr. of Hr'g at 67:9–10, No. 20-33605 (Bankr. S.D. Tex July 17, 2020) (finding that roll-ups are "heavily disfavored under the Bankruptcy Code"); *In re Verasun*, No. 08-12606 (BLS) (Bankr. D. Del. Dec. 3, 2008) [ECF No. 316] (noting that bankruptcy courts have found that "rollups are not favored. They are strongly discouraged on day one, and the bottom line is that for approval a substantial showing [of need for the financing] has to be made."). *See also In re Saybrook Mfg. Co.*, 963 F.2d 1490, 1494–96 (11th Cir. 1992) (noting that postpetition cross-collateralization is an "extremely controversial form of Chapter 11 financing" and holding that it was not authorized by section 364 of the Bankruptcy Code); *Reynolds v. Servisfirst Bank* (*In re Stanford*), 17 F.4th 116, 128 (11th Cir. 2021) (Jordan, J., concurring) (discussing the increase in requests for roll-ups since *Saybrook Manufacturing*, and describing roll-ups as "a formally distinct but functionally similar financing arrangement" to cross-collateralization).

[10]   *See, e.g.*, 3 COLLIER ON BANKRUPTCY ¶ 364.06[2] (16th ed.).

### III.    The DIP Fees are Excessive

15.    The DIP Facility includes an Origination Fee of 2.5% and an Exit Fee of 2.25% on the entire commitment under the DIP Facility, which upon entry of the proposed Final DIP Order would include the Roll-Up DIP Loans of $120 million.

16.    The proposed fees chargeable to the Debtors' estates under the DIP Facility should be reduced, and such fees should not be charged on any Roll-Up DIP Amount.  The Interim DIP Order expressly makes the Origination Fee and the Exit Fee on the Roll-Up DIP Loans subject to entry of the Final DIP Order.  *See* Final DIP Order at para. 35 ("any portion of the Origination Fee and Exit Fee on account of or attributable to, the Roll-Up DIP Loans shall be subject to and effective upon entry of the Final Order if such relief is granted).

17.    Metropolitan submits that no fees should be charged on any DIP Roll-UP Loans. In the aggregate, the DIP Lenders are seeking to collect $5.7 million in fees for the Debtors to have the privilege of elevating prepetition debt to post-petition debt.  In all, the DIP Lenders are seeking an aggregate of $8.55 million in commitment and exit fees on a facility that provides $60 million in new money, or a whopping 14.25%, which is wildly out of market for a priming DIP loan, particularly one with a short (six months) term.  No fees should be allowed on account of the Roll-Up DIP Loans.  Additionally, the Origination Fee and the Exit Fee should be reduced even on the New Money DIP Loans given that the DIP Lenders are already Prepetition Secured Parties and will be charging the Debtors over 10% per annum in interest under the DIP Facility.

### IV.    The DIP Motion Contains Various Overreaching Requests That Prejudice Unsecured Creditors

#### A.    *Unencumbered Litigation Assets Should Remain Unencumbered and Free of Any Liens or Superpriority Claims*

18.    The Debtors propose to encumber assets that otherwise would be available to unsecured creditors in favor of the DIP Lenders and, through the proposed roll-up and grant of

4922-0326-3930.7 56838.00001                                              7

adequate protection, the Prepetition Secured Parties.  Such assets include commercial tort claims, avoidance actions (including potential claims against the Prepetition Secured Parties themselves), and the proceeds thereof.  Litigation claims, in particular, may have substantial value in these cases as they relate to, among other things, the scheme by which the camp assets were transferred to the Debtors and used to collateralize the bond offering in violation of numerous pre-existing loan agreements, including Metropolitan's loan agreement, and the apparent fraud surrounding the bond issuance and the disposition of the proceeds.  The Prepetition Secured Parties know that they may have potential liability and are no doubt seeking what is tantamount to a release by encumbering the very claims that the estates may have against themselves.  The Court should deny any liens or superpriority claim on potential estate causes of actions against the Prepetition Secured Parties.

19.     Access to the DIP Facility and use of cash collateral stands to benefit primarily the Prepetition Secured Parties to the detriment of unsecured creditors by substantially enhancing their collateral position, particularly by allowing them to receive the proceeds of the Debtors' previously unencumbered assets.  The only way to preserve and protect the interests of unsecured creditors under such circumstances is to treat the estates' unencumbered assets, particularly litigation claims which could be key to unsecured creditor recoveries in these cases, as free and clear of any liens or superpriority claims of the DIP Lenders or the Prepetition Secured Parties.

20.     Even as to the New Money DIP Loans, the DIP Lenders should be required, at a minimum, to marshal away from any previously unencumbered assets and to turn to such assets only after all commercially reasonable efforts to recover from the Prepetition Collateral have been exhausted.  As proposed, the DIP Facility would immediately encumber all such previously unencumbered assets in favor of the DIP Lenders and the Prepetition Secured Parties, eliminating virtually any prospect of recovery by unsecured creditors.

21.     Avoidance actions (and the proceeds thereof) specifically are uniquely designed for

the benefit of general creditors of the estate, not secured creditors, and such actions should not be

encumbered in favor of secured lenders.[11]   Avoidance actions are statutory rights intended to

ensure equitable distributions of a debtor's estate.[12]   Indeed, avoidance powers are intended to

allow a debtor in possession or other party with standing to gain recoveries for the benefit of all

unsecured creditors.[13]   Accordingly, bankruptcy courts often restrict a debtor's ability to pledge

avoidance actions and their proceeds as collateral.[14]

22.     Here, there is no basis for the DIP Lenders and the Prepetition Secured Parties to

take liens and superpriority claims on the Debtors' unencumbered litigation when the Debtors'

estates could be left administratively insolvent, leaving unsecured creditors with no other source

of recovery.  Among other things, as noted in Metropolitan's objections to the Interim DIP Order

---

[11]  *See Official Comm. of Unsecured Creditors v. Goold Elecs. Corp. (In re Goold Elecs. Corp.)*, No. 93-4196, 1993 U.S. Dist. LEXIS 14318, at *12 (N.D. Ill. Sept. 20, 1993) (vacating a bankruptcy court order approving post-petition financing "to the extent that the order assigns to the bank a security interest in the debtor's preference actions").

[12]  Avoidance actions are not property of a debtor's estate but rather are a construct of bankruptcy law for the benefit of unsecured creditors.  *See* 5 COLLIER ON BANKRUPTCY ¶ 541.14 at n.1 ("The avoiding powers of a debtor in possession granted in chapter 5 of the [Bankruptcy] Code are not property of the estate but statutorily created powers to recover property."); *see also Frank v. Mich. State Unemployment Agency (In re Thompson Boat Co.)*, 252 F.3d 852, 854 (6th Cir. 2001) (affirming the lower courts' determination that "the Bankruptcy Code allows only a trustee, not debtors, to initiate a preference action to avoid certain transfers, so proceeds recovered are property of the bankruptcy estate, not the debtor"); *Cullen Ctr. Bank & Tr. v. Hensley (In re Criswell)*, 102 F.3d 1411, 1414 (5th Cir. 1997) (noting that avoidance powers under the Bankruptcy Code were created to "facilitate[e] the prime bankruptcy policy of equality of distribution among creditors of the debtor").

[13]  *See Buncher Co. v. Official Comm. (In re GenFarm Ltd. P'ship IV)*, 229 F.3d 245, 250 (3d Cir. 2000).

[14]  *See, e.g.*, *Gaudet v. Babin (In re Zedda)*, 103 F.3d 1195, 1203 (5th Cir. 1997) ("A trustee's avoidance powers are intended to benefit the debtor's creditors, as such powers facilitate a trustee's recovery of as much property as possible for distribution to the [unsecured] creditors."); *McFarland v. Leyh (In re Texas Gen. Petrol. Corp.)*, 52 F.3d 1330, 1335–36 (5th Cir. 1995) ("[T]he proceeds recovered in an avoidance action satisfy the claims of priority and general unsecured creditors before the debtor benefits."); *In re Excel Maritime Carriers, Ltd.*, No. 13-23060 (RDD) (Bankr. S.D.N.Y. Aug. 6, 2013) (ECF No. 133) (excluding avoidance actions and proceeds thereof from the scope of adequate protection liens and property that could be used to pay superpriority administrative expense claims); *United Capital Corp. v. Sapolin Paints, Inc. (In re Sapolin Paints, Inc.)*, 11 B.R. 930, 937 (Bankr. E.D.N.Y. 1981) ("[N]either a trustee . . . nor a debtor-in-possession, can assign, sell or otherwise transfer the right to maintain a suit to avoid a preference.").

and the bidding procedures motion,[15] according to the prospectus for the bond offering, the camps were valued at an aggregate of approximately $465 million as of 18 months ago, and that amount is substantially more (by tens of millions of dollars) than the aggregate of the bond debt and the mortgages on the underlying properties. Hence, the DIP Lenders and the Prepetition Secured Parties should have no need to take liens on avoidance actions (particularly potential avoidance actions against themselves) or at least the DIP Lenders should be required to marshall away from such proceeds.

23. Accordingly, any Final DIP Order should make clear that no DIP liens or adequate protection liens should attach to any of the Debtors' previously unencumbered assets, including, without limitation, avoidance actions, commercial tort claims, or the proceeds thereof and any associated superpriority claims shall not be payable from such assets.

### B. The Proposed Section 506(c), Marshaling, and "Equities of the Case" Waivers are Inappropriate

24. Metropolitan objects to this case potentially being run without the Debtors having the capacity to pay all legitimate administrative claims that benefitted the estates. Yet, the Debtors intend to grant broad waivers of Bankruptcy Code section 506(c) surcharge, marshaling, and "equities of the case" rights as to the DIP Lenders and the Prepetition Secured Parties. The Approved DIP Budget is a single page lacking in detail, such that there is no basis to determine that all known and anticipated administrative expense claims will be funded and paid on a current basis. These cases should not be run on the backs of unsecured creditors, especially when many of the expenses incurred by the estates are to preserve the Prepetition Collateral.

---

[15] Docket No. 269 and 271, which are incorporated herein by reference.

25.     Through the proposed section 506(c) waiver, the Debtors would irrevocably waive the estates' rights to charge certain costs or expenses incurred in the administration of the Chapter 11 Cases.  This provision should be stricken from any Final DIP Order unless and until adequate provision has been made for prompt payment of all accrued and unpaid administrative expenses.  The effect of the proposed section 506(c) waiver is to eliminate a further avenue of recovery for the Debtors' estates.  This result contravenes the essential purpose of section 506(c) of the Bankruptcy Code.[16]  As courts have recognized, DIP financing that contains an inadequate budget coupled with a surcharge waiver should not be approved unless modified to provide for timely payment of administrative claims.[17]

26.     The Debtors also seek to restrict the Court's ability to implement equitable marshaling.[18]  The waiver of any marshaling requirements is prejudicial at this stage, especially where estate litigation claims have yet to be investigated by a committee (or possibility any other person or entity), but which may have substantial value for creditors.  Indeed, there may be no other assets available to fund distributions to unsecured creditors.  Marshaling may be a key remedy in ensuring that unsecured creditors do not bear the brunt of the expenses of the chapter 11

---

[16]   *See Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus.)*, 57 F.3d 321, 325 (3d Cir. 1995) (citation omitted) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor . . . .  The rule understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate . . . ."); *see also In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs.").

[17]   *See In re NEC Holdings Corp.*, No. 10-11890 (Bankr. D. Del. July, 13, 2010) (ECF No. 233, and Tr. of Hr'g at 108:1–5, ECF No. 224) ("I need some evidence that there's a probability that admin claims are going to be paid in full, including 503(b)(9) claims or I won't approve the financing."); *Hartford Fire Ins. v. Northwest Bank Minn. (In re Lockwood Corp.)*, 223 B.R. 170, 176 (B.A.P. 8th Cir. 1998) (holding that a provision in a financing order purporting to immunize the postpetition lender from a section 506(c) surcharge was unenforceable); *In re Colad Grp.*, 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005) (refusing to approve a postpetition financing agreement to the extent that the agreement purported to modify statutory rights and obligations created by the Bankruptcy Code by prohibiting any surcharge of collateral under section 506(c)).

[18]   Interim Order ¶ 16.

cases, while having no prospect of any other distributions.[19]  The DIP Lenders and the the

Prepetition Secured Parties therefore should be required to marshal away from any previously

unencumbered assets and turn to such assets only after all commercially reasonable efforts to

recover from the Prepetition Collateral have been exhausted.

27.     Finally, the Debtors propose that the "equities of the case" exception under section

11 U.S.C. §  552(b) of the Bankruptcy Code should not apply to the DIP Lenders and the

Prepetition Seccured Parties.[20]  This exception allows a debtor, committee, or other party in interest

to exclude postpetition proceeds from prepetition collateral on equitable grounds, including to

avoid using unencumbered assets to fund the cost of a secured lender's foreclosure.  "The purpose

of the equity exception is to prevent a secured creditor from reaping benefits from collateral that

has appreciated in value as a result of the trustee's/debtor-in-possession's use of other assets of the

estate (which normally would go to general creditors) to cause the appreciated value."[21]  There is

no reason to waive such rights here.[22]

28.     It is unreasonable to ask unsecured creditors—through the unencumbered assets or

as administrative advances—to fund any shortfall in the Approved DIP Budget by way of the

estates' waiver of important creditor protections.  In sum, the requested waivers of section 506(c),

marshaling, and "equities of the case" rights are inappropriate without adequately taking into

---

[19]  *See Official Comm. v. Hudson United Bank (In re America's Hobby Ctr.)*, 223 B.R. 275, 287 (Bankr. S.D.N.Y. 1998); *see also Ramette v. United States (In re Bame)*, 279 B.R. 833 (B.A.P. 8th Cir. 2002) (invoking the marshaling doctrine against taxing authorities to benefit the estate's unsecured creditors).

[20]  Interim Order ¶ 16.

[21]  *In re Muma Servs.*, 322 B.R. 541, 558–59 (Bankr. D. Del. 2005) (quoting *Delbridge v. Prod'n Credit Ass'n*, 104 B.R. 824, 826-27 (E.D. Mich. 1989).

[22]  *See, e.g.*, *In re Metaldyne Corp.*, No. 09-13412, 2009 Bankr LEXIS 1533, at *19 (Bankr. S.D.N.Y. June 23, 2009) ("[T]he Court, in its discretion, declines to waive prospectively an argument that other parties in interest may make.  If, in the event, the Committee or any other party [in] interest argues that the equities of the case exception should apply to curtail a particular lender's rights, the Court will consider it."); *Sprint Nextel Corp. v. U.S. Bank Nat'l Ass'n (In re TerreStar Networks)*, 457 B.R. 254, 272–73 (Bankr. S.D.N.Y. 2011) (finding that a request for a section 552(b) waiver was premature because the factual record was not fully developed).

account estate remedies and where, as here, there is no certainty that adequate provision has been made for the prompt payment of all administrative expenses against the Debtors' estates.

### C.        The Lien Validation and Challenge Provisions are Objectionable

29.        Through the DIP Facility, the Debtors propose to circumscribe the ability of an official creditors' committee's ability to exercise its statutory duties.  The committee would be given an insufficient investigation budget of $50,000.  This is woefully inadequate for a committee to conduct a thorough investigation of, *inter alia*, the transactions involving the transfer of the camp assets to the Debtors, the Israeli bond offering (which may require the assistance of special Israeli counsel), the misapplication and disappearance of the loan proceeds that took place prior to the Petition Date and other matters pertinent to the validity and enforceability of the bondholder debts and asserted liens, such as the existence of an affirmative claims against them arising out of the bond offering and subsequent events. The committee's investigation budget should be increased to not less than $350,000.

30.        The proposed Challenge provision at paragraph 12 of the Interim DIP Order contains a hard end date of September 15, 2026 for any Challenge to be brought.  Any Challenge Period should be subject to extension for cause shown by the movant, *e.g.,* if the the Prepetition Secured Parties were to stonewall discovery frustrating a committee's investigation of the facts and circumstances surrounding the bond offering, additional time to bring a Challenge would be warranted.  The Challenge provision also requires a party bringing the Challenge to obtain standing during the Challenge Period, *i.e.,* to not just file a standing motion, but have it heard and granted within the 60-day period.  That is unrealistic and not market; the Final DIP Order should provide that so long as the standing motion with a proposed complaint attached is filed before the expiration of the Challenge Period, it is automatically tolled until ten (10) business days after the standing motion is decided.

4922-0326-3930.7 56838.00001                                                    13

31.     In addition, certain of the Debtors are limited liability companies, which could create standing issues for creditors under some courts' interpretations of applicable state law. Appropriate provisions must be added to any final order on the DIP Motion to preserve the committee's standing and rights to assert a Challenge on all available grounds, notwithstanding anything to the contrary in applicable non-bankruptcy law that may limit such claims in the case of Debtors that are limited liability companies.

### D.     *Milestones*

32.     As discussed in Metropolitan's initial objection to the DIP Motion, the DIP Facility as presented to the Court in the DIP Motion contained no milestones with respect to a sale process. Instead, the DIP Term Sheet recites that the Debtors will be required to comply with "…[o]ther milestones to be included in the DIP Loan Documents as mutually agreed by DIP Agent, KMK and the Borrowers, and in coordination with SSG." *See* DIP Motion at p. 18. Metropolitan reiterates its objection that is inappropriate and irregular for those parties to obtain a blank check to secretly set sale milestones in the future.

33.     As discussed at the June 26, 2026 hearing, any such milestones should be presented to the Court on regular notice so parties in interest can consider and, if appropriate object, in advance of the Final Hearing. While a week has elapsed since that hearing (and the contested hearing on the bidding procedures which resulted in a bid deadline and an auction date being set), nothing has been filed with the Court disclosing any additional sale milestones with only a week left to the Final Hearing. Metropolitan objects to the inclusion of any sale milestones absent notice and an opportunity to be heard, plus an opportunity for an official committee to be formed and to weigh in on the addition of further default triggers.

4922-0326-3930.7 56838.00001                                    14

### E.       Other Issues With the DIP Facility

34.     Metropolitan raises the following additional objections to any proposed Final DIP

Order:

- *Credit Bidding*.  Any credit bidding of the Prepetition Obligations, including the Roll-Up DIP Loans, must be subject to applicable Challenge rights of any committee and other parties in interest.

- *Payment Provisions*.  There should be no provisions requiring immediate payment of the Prepetition Obligations.  Any repayment of the Prepetition Obligations must be subject to the committee's and other parties' Challenge rights.

- *Remedies*.  Any exercise of remedies by the DIP Lenders as to the Roll-Up DIP Loans and the Prepetition Secured Parties should be subject to the parties' Challenge rights.  There also should be no limitation on what issues can be raised at any emergency hearing during the Remedies Notice Period.

The Court should not approve the DIP Facility unless and until the Debtors adequately address the foregoing issues through appropriate revisions to any Final DIP Order.

## RESERVATION OF RIGHTS

35.     To date, a proposed DIP Credit Agreement has not been filed with the Court, even though the DIP Motion states that there will be such agreement.  Metropolitan reserves all objections to any new terms and conditions that might be included in a to-be-filed DIP Credit Agreement in advance of the Final Hearing.

36.     Metropolitan also expressly reserves all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this Objection, to raise other and further objections to the DIP Motion and the form of Final DIP Order, and to introduce evidence prior to or at any hearing regarding the DIP Motion in the event that Metropolitan's objections are not resolved prior to such hearing.

## CONCLUSION

4922-0326-3930.7 56838.00001                                          15

Based on the foregoing, Metropolitan respectfully requests that the Court adjourn the Final Hearing on the DIP Motion until after an official creditors' committee is formed and has an opportunity to be heard on the DIP Motion, deny the DIP Motion until Metropolitan's objections set forth herein have been adequately addressed, and grant such other and further relief as the Court deems just and proper.

Dated:  July 6, 2026

/s/ Bradford J. Sandler

Bradford J. Sandler, Esq.
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Maxim B. Litvak, Esq. (admitted *pro hac vice*)
Theodore S. Heckel, Sr., Esq. (*pro hac vice* forthcoming)
**PACHULSKI STANG ZIEHL & JONES LLP**
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:    (212) 561-7700
Email:           bsandler@pszjlaw.com
                       rfeinstein@pszjlaw.com
                       mlitvak@pszjlaw.com
                       theckel@pszjlaw.com

*Counsel to Metropolitan Partners Group Administration, LLC, Metropolitan Partners Fund VIII Investments LLC, Metropolitan Partners Fund VIII LP, Metropolitan Levered Partners Fund VIII LP, and Metropolitan Offshore Partners Fund VII, LP*

4922-0326-3930.7 56838.00001                              16