# EXHIBIT A

## LEASE AGREEMENT

**LEASE AGREEMENT** (this "**Agreement**") made and entered into as of the 18 day of September, 2024, by and between Greenvilleland LLC, a New York limited liability company, having an office at 50 Quality Street, #110357, Trumbull, Connecticut 06611 ("**Landlord**"), and Vaad Linyonei Birur Yahadus, a New Jersey non-profit corporation (doing business as Camp Tal), having an office at 41 Sunset Road, Lakewood, New Jersey 08701 ("**Tenant**").  (Tenant and Landlord may sometime be referred to individually as a "**Party**" and collectively as the "**Parties**".)

## W I T N E S S E T H:

## ARTICLE 1

## 1.1 PREMISES

Landlord hereby leases to Tenant and Tenant hereby leases from Landlord (the "**Lease**") the entirety of the facilities and campground located at the property and premises known as 150 Ingalside Road, Greenville, New York 12083 (the "**Campground**"), consisting of bunkhouses, dorms and staff housing at a different physical address (the "**Housing**"), along with use of common areas including playgrounds, fields, courts, pool, lake, recreational facilities, infirmary, laundry room, kitchen/dining room, classroom facilities, and Bais Medrash/ Shul, located on the Campground (the "**Common Areas**") as described below (the Housing and Common Areas referred to collectively as the "**Premises**").

## 1.2     USE OF PREMISES, RIGHTS TO SUBLEASE

A.     The Premises shall be occupied and used by Tenant for any purposes lawfully-permitted by the ordinances of Greene County and all other applicable state and federal laws ("**Campers**"), any and all directors, officers, employees, staff, or volunteers of Tenant (collectively, "**Employees**") (the "**Permitted Use**).  Tenant is permitted to use, and hereby guarantees that it will use the Premises, solely at its and its Campers' and Employees', and its and their guests' own risk, in a manner compliant with all laws, rules, regulations, executive orders, and governmental orders of any and all nature. Tenant shall have access to and use of the Common Areas as provided herein.

B.     Tenant warrants and represents that it has conducted its own due diligence to ensure that the Premises are suitable for Tenant's intended use, and that it has inspected the Premises and Campground and accepts same in "as-is" condition. Tenant further acknowledges that Landlord has made no representation or warranty of any kind with respect to the Campground, Premises or the condition thereof, except with regards to the repairs outlined in Exhibit B.  Prior to the beginning of the Term, a representative of each party shall do a walk-through of the entire Premises to confirm that they are acceptable to Tenant.

C.      Landlord shall make available to Tenant, at no additional cost, furniture for the shul, the arts and crafts room, canteen, daycare, bunkhouses and staff housing and equipment for the baking room and the kitchen.  Upon the end of the Term, Tenants shall return the kitchen in the state it was at the beginning of the Term, meaning that all of the ovens are cleaned, the two walk-in refrigerators, walk-in freezer and all of the pantries are completely emptied of their contents, although the pantries may contain disposable cutlery, cups, plates and bowls.  In the event that any such furniture or equipment is broken, Tenant shall replace it at its sole cost and expense.

D.      Tenant shall not use the Premises or permit them to be used in any manner that results in waste of the Premises or that shall constitute a nuisance. Tenant shall not use the Premises or permit them to be used for any illegal purpose. Additionally, Tenant agrees not to use or allow the use of firearms or illegal drugs in or on the Premises or Campground at any time during the Term or thereafter.  Smoking (including the use of all electronic cigarette or vape products) is prohibited in all bunkhouses and staff housing units.  Tenant, Campers and Employees shall not (and Tenant shall ensure that Subtenants and Tenant's Renters (as such terms are defined in this Section 1.2) shall not) litter, deface or otherwise damage the Premises, and will not cause any environmental or health code violations, or violate any other law, rule, ordinance, or order, and will remain responsible and liable for any such damage, violations or injuries of any kind, to property or person, resulting from such violations.

E.      Tenant may sublease the Premises to another party (a "**Subtenant**") for either portion of any Session of the Term (as such terms are defined in Section 1.3 herein), at no additional cost or expense owed by Tenant to Landlord.  Any amounts from Subtenants shall belong to Tenant, and any amounts paid by a Subtenant directly to Landlord shall be immediately sent to Tenant.  Tenant shall ensure that any Subtenant shall comply with the provisions of this Agreement governing the use and care of the Premises.  Should Subtenant materially fail to comply with such provisions, Landlord shall provide notice to Tenant of such failure, and Tenant and Subtenant shall have two (2) business days to remedy such failure, or Subtenant shall be forced to vacate the Premises.  The provisions of Section 5.2(D) herein shall apply to Subtenant.

F.      Prior to or following each Session of the Term, either Landlord or Tenant may make the Premises available to temporary renters for a lawful purpose (each, a "**Renter**"), **provided, however**, that: (i) any such Renter complies with the provisions of this Agreement governing the use and care of the Premises, and (ii) both parties agree to the scheduling of a Renter's usage, in order to prevent scheduling conflicts.  The Party that makes the Premises available is responsible to ensure the Renter's compliance with the provisions of this Agreement governing the use and care of the Premises.  The following provisions of this Agreement will not apply as pertains to Landlord's Renters- (i) Section 1.2.A regarding assumption of risk; (ii) 1.2.C regarding repairs, (iii) 1.2.D regarding permissible use, (iv) 4.1B regarding Landlord's disclaimers of liability, (v) Section 5.1 regarding Tenant's Covenants; and (vi) Section 5.2 regarding Tenant's compliance with the rules. After deducting all of Landlord's and all of Tenant's costs and expenses, which reasonably relate to a Party's finding Renters and satisfying the reasonable requirements of Renters at the Premises), the party receiving the revenue from a Renter shall pay the other party fifty percent (50%) of its revenue in making the Premises available to a Renter.  Tenant hereby acknowledges that, prior to the date of this Agreement, Landlord has agreed to made the Premises available to a third-party on September 26-29, 2024 for a Shabbaton, and that Tenant shall have

Page 2 of 19

no right to any revenue from such Shabbaton. Landlord shall terminate any other previous agreements with other camps which relate to the Premises.

### 1.3 TERM

The term of this Lease (the "**Term**") shall be September 10, 2024 through October 1, 2029, unless this Lease shall terminate sooner pursuant to any of the terms of this Lease or pursuant to law, or on the covenants, conditions and agreements hereinbefore and hereinafter stated.  The Term shall consist of five (5) summer sessions, beginning in late June and ending in late August of each calendar year, (each a "**Session**").  The dates of each Session shall be agreed-upon in writing by the Parties no later than the October 1 preceding the commencement of each Session.

### 1.4 END OF SESSION

At the end of each Session, Tenant shall surrender the Premises to Landlord broom clean and in good order and condition, ordinary wear and tear excepted.  Tenant shall remove all of its property in the Premises, including but not limited to Tenant's furniture and installations (as allowed herein), and shall at its own cost and expense repair any damage caused by such removal, as well as any damage, structural or non-structural, interior or exterior, personal property, fixtures, installations and/or real property, at or to the Premises or Campground, caused by or because of Tenant, its Campers, Employees, volunteers, guests, invitees, licensees and/or any person or entity associated with and/or on the Premises or Campground because of the Tenant.  Any existing building on the Premises may be used by Tenant as a storage facility. Tenant's obligation to observe or perform this covenant shall survive the expiration or prior termination of this Agreement.  Prior to Tenant's surrender of the Premises following a Session, a representative of each party shall do a walk-through of the entire Premises to confirm and agree that the provisions of this Section have been followed, or to identify the areas requiring repair, as described in this Section 1.4.

### ARTICLE 2

### 2.1  RENT

A.      <u>Basic Rent</u>.  The rent for Tenant to occupy and use the Premises as described herein during each Session of the Term shall be One Million Dollars ($1,000,000) (the **"Rent"**).  Rent paid to Landlord shall be non-refundable. Rent for the initial Session of the Term shall be payable as follows:

- One Hundred Thousand Dollars ($100,000) payable within seven (7) business days of the full-execution of this Agreement
- Balance payable at the rate of One Hundred Fifty Thousand Dollars ($150,000) per month, on the twentieth day of every month (or the next business day if the twentieth is not a business day), beginning January 20, 2025, through June 20, 2025

The Rent payments for each subsequent Session shall be payable as follows:

- One Hundred Thousand Dollars ($100,000) payable no later than October 1 preceding the commencement of such Session being paid
- Balance payable in six (6) equal installments, on the first business day of every month, beginning the January preceding the commencement of such Session and ending on the June preceding the commencement of such Session

B.      Landlord reserves the right to increase the Rent annually in accordance with the annual cost-of-living adjustment, as promulgated by the Social Security Administration of the federal government.

## 2.2  ADDITIONAL RENT

A.      Operating Costs.  Tenant shall be responsible for paying all of the following costs incurred during each Session of the Term: electricity, gas, water, sewage, phone service, Internet and cable charges, waste removal, pool maintenance, and any costs associated with the usage of the Premises.  Notwithstanding the foregoing, Landlord shall be responsible for real estate taxes for the Premises, property insurance for the Premises and the salary and expenses of the caretaker on the Premises.  No later than June 2, 2025, Tenant shall pay Thirty Thousand Dollars ($30,000) to the Landlord to be held as an advance on the costs described in this subsection for which Tenant is responsible (the "**Advance**").  As the bills and invoices for such charges are received by Landlord, they will be forwarded to the Tenant, along with an accounting with the application of all such charges against the Advance.  Should the Advance be depleted, upon the receipt of additional bills and invoices, Landlord shall send them, together with an invoice to Tenant of what amount is owed to Landlord for such charges.  Such invoice shall be paid to Landlord within five (5) business days of Tenant's receipt of such invoice.  All charges for which Tenant is responsible described in this sub-section shall be collectively defined as "Additional Rent".

B.      There are no additional costs, fees or expenses payable by Tenant other than those expressly stated in this Agreement.

## 2.3  SECURITY DEPOSIT

No later than June 2, 2025 and the first business day in June of each year of the Term, Tenant will have deposited with Landlord the sum of Sixty Thousand Dollars ($60,000) as security for the faithful performance and observance by Tenant during each Session of the terms, provisions and conditions of this Agreement (the "**Security Deposit**").  It is agreed that in the event Tenant defaults in respect of any of the terms, provisions, and conditions of this Agreement beyond any applicable notice and/or cure periods, including, but not limited to, the payment of Rent and/or Additional Rent as herein defined, Landlord may use, apply or retain the whole or any part of the Security Deposit so deposited to the extent required for the payment of any Rent and/or Additional Rent or any other sum as to which Tenant is in default or for any sum which Landlord may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this Agreement beyond any applicable notice and/or cure periods, including but

not limited to, any damages (including damage to grass on the Premises or to the fields in the Common Area) or deficiency accrued before or after summary proceedings or other re-entry by Landlord.   In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this Agreement, the Security Deposit shall be returned to Tenant no later than September 10 of each year of the Term for the preceding Session.   Tenant covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as Security Deposit and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

## 2.4  TENANT'S RESPONSIBILITIES

Except when rented to Landlord's Renters, Tenant shall be responsible for providing, at its sole cost and expense, sufficient staff to directly supervise its Campers; a licensed lifeguard for supervising Campers in any swimming activities (if any); a licensed healthcare professional for the care of its Campers; transportation costs to, from and around the Premises (as needed); any food, beverage, paper goods, utensils and/or other supplies required by its Campers, and/or any other supplies required for its Campers. Tenant shall also be responsible for all program-specific expenses including but not limited to apparel; use of laundry machines; transportation and trip costs for Campers and Employees, as and when applicable.

## ARTICLE 3

## 3.1 INSURANCE

A.      Tenant shall obtain and keep in full force and effect during the Term and/or any extension thereof, at its own cost and expense, to protect Landlord, Landlord's agents, and/or any superior mortgagee, naming Tenant as insured and specifically naming Landlord and "Malka Operatingco LLC" as additional insureds, on a primary, non-contributory basis, the following forms of insurance issued by financially responsible insurance carriers licensed by the State of New York: (1) Comprehensive General Liability (CGL) insurance (including covering the liability of Tenant to Landlord by virtue of any indemnification agreement in this Agreement, and including proof that there is no employee injury, labor law, or third party action over exclusion), covering bodily injury, property damage liability, personal injury, and legal liability, all in connection with the use and occupancy of or the condition of the Premises, the Campground and the related Common Areas, in amounts not less than: (a) Five Million Dollars ($5,000,000) general aggregate; , which may be made up with a combination of primary CGL and Umbrella Liability policies; and (b) One Million Dollars ($1,000,000) per occurrence; (2) valid Workers Compensation coverage in the State of New York; (3) Excess Liability (umbrella) coverage with limits not less than One Million Dollars ($1,000,000.00); (4) Automobile coverage with limits not less than One Million Dollars ($1,000,000.00) per accident, including hired and non-owned automobiles.  Tenant shall insure that Subtenants carry insurance complying with the guidelines contained in this Section 3.1(A).

B.      Tenant shall deliver to Landlord a copy of said insurance policy(ies) or certificate(s) thereof, including proof of payment of the applicable premiums, at least ten (10) business days prior to the commencement of each Term, so that Landlord's insurance carrier can confirm that

they are acceptable.  If such carrier has issues with the coverage, such issues shall be brought to the attention of Tenant so that they can be resolved to the mutual satisfaction of both Tenant's insurance carrier and Landlord's insurance carrier.  Tenant shall stipulate that the foregoing policies shall not be cancelled or substantially changed without thirty (30) days' notice of cancellation or non-renewal (except 10 days for nonpayment of premium), sent to Landlord at Landlord's address set forth hereinabove, and shall cover the Term.

C.      Tenant shall require subcontractors (i.e., any outside caterers, performing groups or other providers of goods or services who may be hired by Tenant to enter the Campground and/or Premises in order to provide such goods or services to Tenant, Campers, Employees or Tenant's visitors) (referred to as the "User" for the purposes of this Agreement) to comply with the insurance requirements set forth on **Exhibit A** attached hereto and made a part hereof. For the avoidance of doubt, any musicians and the like that are hired by Tenant shall <u>not</u> be subject to the insurance requirements set forth in this <u>Section 3.1</u>, but instead are subject only to the requirements of **Exhibit A**.

## ARTICLE 4

### 4.1 NO LIABILITY OF LANDLORD

A.      Landlord or Landlord's agents have made no representations or promises with respect to the Campground or the Premises, except herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this Agreement.

Landlord or Landlord's agents have made no representations or promises with respect to the Campground or the Premises, and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this Agreement.  Subject to the terms of this Agreement, this Agreement and the obligation of Tenant to pay Rent and Additional Rent hereunder and to perform all of the other covenants and agreements hereunder on the part of Tenant to be performed shall in no way be affected, impaired or excused because Landlord is unable to fulfill any of its obligations under this Agreement, including if Landlord is so prevented or delayed from so doing by reason of Force Majeure Event (as defined in Section 8.1(F) herein) or if Tenant or Subtenant is forced by regulatory or administrative order to cease operations on a date prior to the end of its summer session of the Term, as provided in Section 5.2(D).

B.      Except as expressly provided herein, Landlord and its Agents (as such term is defined in Section 4.1(D) herein) shall not be liable for any damage to any property of Tenant, or its Campers, employees, persons parking at, visiting, or employed/working at the Campground and/or Premises, or the property of others which is entrusted to employees of Tenant or Landlord, except to the extent any such loss or damage is suffered as a result of the negligence or willful acts of Landlord, its agents, (sub)contractors, servants or employees. Landlord and its agents shall not be liable for any injury or damage to persons (including death) or property resulting from fire, explosion, falling debris, steam, gas, electricity, water, rain leaks from any part of the Premises, or from the pipes, appliances or plumbing works or from the roof(s) or sub-surface(s) or from any other place or by

Page 6 of 19

dampness or by any other cause of whatsoever nature, unless caused by or due to the negligence or willful acts of Landlord or its Agents.

C.    Landlord is not involved in any manner, nor does it assume any responsibility for any programs, training instructions, exercises, recreational activities, including, but not limited to, swimming, archery, sports, or any other activity of any nature which Tenant decides to engage and/or implement while on the Campground and/or Premises. Except for Landlord Renters, Landlord assumes no responsibility for any injuries (including death) sustained by Tenant, Subtenants, Renters, Campers, Employees, or its or their guests, invitees, licensees and/or any person or entity associated with and/or on the Premises or Campground because of the Tenant, Subtenant or Renter, due to programs, training instructions, exercises, recreational activities, including, but not limited to, swimming, archery, sports, or any other activity of any nature which Tenant, any Subtenant or any Renter decides to engage and/or implement while on the Campground and/or Premises, unless caused by or due to the negligence or willful misconduct of Landlord or its Agents.

D.    Except as expressly provided herein, no recourse shall be had on any of Landlord's or Tenant's obligations or liability under this Agreement or for any claim based thereon or otherwise in respect thereof against, any member of, employee, agent, servant, officer or director, , of any entity, any partner or joint venturer of any partnership or joint venture, any successor of any such entity, or against any principal, disclosed or undisclosed, or any affiliate of any party of Landlord or Tenant, which shall be included in the term "**Agents**", whether directly or through either party or through any receiver, assignee, agent, trustee in bankruptcy or through any other person, firm or corporation, whether by virtue of any constitution, statute or rule of law or by enforcement of any assessment or penalty or otherwise, all such liability being expressly waived and released by Landlord and Tenant, and their affiliates, successors, and assigns.

E.    Tenant's rights to collect any damages is limited to Landlord's interest in the Premises, for payment of any damages, judgment or other court remedy it has or may have as against the Landlord.

## 4.2 INDEMNIFICATION OF LANDLORD

A.    Tenant will indemnify and save harmless Landlord against and from any liabilities, demands, actions, suits or causes of action, obligations, damages, penalties, claims, costs, charges and expenses, including, without limitation, reasonable attorneys' fees and other costs of defending against the same (collectively, "**Claims**"), which may be imposed upon or incurred by or asserted against Landlord by reason of any of the following occurring during the Term:

(i)    any loss, damage, or personal injury (including death) in any matter, cause or event arising out of the particular use or occupancy of the Premises, Campground, and any part or facilities thereof during or after the Term by Tenant, Subtenants, Renters (except Landlord Renters), Campers, Employees, or its or their agents, (sub)contractors, guests, or invitees;

Page 7 of 19

(ii)                any work or thing done in, or about the Premises, Campground, or any part thereof by Tenant, Subtenants, Renters (except Landlord Renters),, Employees, or its or their agents, (sub)contractors, or Campers;

(iii)               any use, possession, occupation, condition, operation, maintenance or management of the Campground, Premises or any part thereof, or any parking area, passageway, or driveway adjacent thereto by Tenant, Subtenants, Renters (except Landlord Renters), Campers, Employees, or its or their agents, (sub)contractors, guests, or invitees, except if caused by Landlord or its Agents;

(iv)               any accident, injury or damage to any property occurring in, or about the Campground, Premises, or any part thereof or any sidewalk, curb, parking area, passageway or driveway adjacent thereto caused by Tenant, Subtenants, Renters (except Landlord Renters),, Campers, Employees, or its or their agents, (sub)contractors, guests, or invitees;

(v)                any exposure to, or contraction of, COVID-19 or any other infectious disease by Tenant, Subtenants, Renters (except Landlord Renters),, Campers, Employees, or its or their agents, (sub)contractors, guests, or invitees;

(vi)               any negligence on the part of by Tenant, Subtenants, Renters (except Landlord Renters),, Campers, Employees, or its or their agents, (sub)contractors, guests, or invitees; or

(vi)               any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this Agreement, on its part to be performed or complied with beyond the expiration of applicable grace, notice and cure period.

B.      In case any action or proceeding is brought against Landlord by reason of any such Claims, Tenant, upon timely notice from Landlord, will, at Tenant's expense, resist or defend such action or proceeding by counsel reasonably approved by Landlord in writing, such approval not to be unreasonably withheld, and Tenant shall pay any judgment or perform any decree resulting therefrom. Landlord hereby agrees, without the necessity of further consents, to be represented by counsel designated by the insurance company which has issued insurance policies that provide coverage to the Landlord as an additional insured.

C.      Tenant's liability hereunder extends to the acts or omissions of any Tenant, Subtenant, Renter (except Landlord Renters),, Camper, or Employee, or its or their guests, invitees, subtenants, or assignees, but shall not extend to negligent acts or omissions or willful misconduct of Landlord or its Agents.

## 4.3 INDEMNIFICATION OF TENANT

A.      Landlord will indemnify and save harmless Tenant against and from any Claims which may be imposed upon or incurred by or asserted against Tenant by reason of any of the following occurring during the term of this Lease:

Page 8 of 19

(i)        (i)    any loss, damage, or personal injury (including death) in any matter, cause or thing arising out of the particular use or occupancy of the Premises, Campground, and any part or facilities thereof during or after the Term by Landlord, its employees, agents, (sub)contractors, guests, or invitees including Landlord Renters;

(ii)        any work or thing done in, or about the Premises, Campground, or any part thereof by Landlord, its employees, agents, (sub)contractors, guest or invitees including Landlord Renters;

(iii)        any use, possession, occupation, condition, operation, maintenance or management of the Campground, Premises or any part thereof, or any parking area, passageway, or driveway adjacent thereto by Landlord, its employees, agents, (sub)contractors, guests or invitees including Landlord Renters, except if caused by Tenant, Subtenants, Renters, Campers, Employees, or its or their agents, (sub)contractors, guests or invitees unless caused by Landlord Renters;

(iv)        any accident, injury or damage to any property occurring in, or about the Campground, Premises, or any part thereof or any sidewalk, curb, parking area, passageway or driveway adjacent thereto caused by Landlord, its employees, agents, (sub)contractors, guests or invitees including Landlord Renters;

(v)        any exposure to, or contraction of, COVID-19 or any other infectious disease by Landlord, employees, agents, (sub)contractors, guests, or invitees including Landlord Renters;

(vi)        any negligence on the part of Landlord, its employees, agents, (sub)contractors, guests, or invitees including Landlord Renters; or

(vii)        any failure on the part of Landlord to perform or comply with any of the covenants, agreements, terms or conditions contained in this Agreement, on its part to be performed or complied with beyond the expiration of applicable grace, notice and cure period.

B      In case any action or proceeding is brought against Tenant by reason of any such Claims, Landlord, upon timely notice from Tenant, will, at Landlord's expense, resist or defend such action or proceeding by counsel reasonably approved by Tenant in writing, such approval not to be unreasonably withheld, and Landlord shall pay any judgment or perform any decree resulting therefrom. Tenant hereby agrees, without the necessity of further consents, to be represented by counsel designated by the insurance company which has issued insurance policies that provide coverage to Tenant as an additional insured.

C.      Landlord's liability hereunder extends to the acts or omissions of any of Landlord's guests, invitees, subtenants, assignees, employee, staff, agent or (sub)contractor, but shall not extend to negligent acts or omissions or willful misconduct of Tenant, Subtenants, Renters except Landlord Renters, Campers, or Employees, or its or their guests, invitees, subtenants, assignees, agents or (sub)contractors.

## ARTICLE 5

### 5.1 TENANT COVENANTS

A.      Except during a period where the Premises is rented to Landlord Renters, Tenant agrees to provide adequate staff and supervision for all activities and in all areas of the Campground and/or Premises during the Term and during any time which its Campers, guests, or invitees remain thereon, to ensure that said activities are carried on in a safe and orderly manner, consistent with the needs of the Campers, guests, or invitees in the Tenant's program, and in further compliance with the other provisions of this Agreement, including, without limitation, Section 5.2(B).

B.      Tenant agrees that cars and other vehicles will only be allowed on the Campground and/or Premises with communication to and permission from Landlord, and that no cars are permitted to be driven over or to park on any grass, fields or playing courts at the Premises.

C.      Tenant shall comply with the suggested occupancy limits for each of the units compromising the Housing.  Tenant's failure to comply with such limits shall constitute an Event of Default (as such term is defined in Section 7.1(A) herein).

### 5.2 COMPLIANCE WITH ANY RULES AND REGULATIONS

A.      Prior to the commencement of the Term and for any Session during the Term, Tenant, at its sole cost and expense, shall obtain all necessary permits, licenses and authorizations from the appropriate federal, state, county and municipal authorities in order to use the Premises in the manner in which Tenant intends to the use the Premises.  Tenant shall provide to Landlord copies of all such permits, licenses and authorizations upon Tenant's receipt from the appropriate governmental authority.

B.      From and after the date on which Tenant and/or is Campers assume use or occupancy of the Premises, Tenant shall comply (and shall cause Subtenants and Tenant Renters to comply), at its expense, with all laws, orders, ordinances, zoning requirements and regulations of federal, state, county and municipal authorities that are applicable to its manner of use of the Premises (but nothing herein shall be deemed to require Tenant to make any structural or capital alterations or repairs to the Premises). Tenant may, at its sole cost and expense, contest the validity of any such law, ordinance, rule, order or regulation.

C.      Tenant is responsible for any fines and costs to cure any violations, sanctions, or penalties imposed by any federal, state, county, municipal or other authority at the Premises caused by Tenant in connection with Tenant's use of the Premises and/or in connection with Tenant's occupancy of the Premises, and shall pay any and all fine, penalties and/or violations assessed or levied as against or as related to the Premises within thirty (30) days of notice to Tenant thereof, whether such notice is made by the government or by the Landlord, and shall obtain written verification of dismissal of any such fine or violation within a reasonable time period thereafter, which it shall provide to Landlord. Tenant shall hold Landlord harmless from all of said matters

Page 10 of 19

including any and all enforcement violations caused by Tenant, any Subtenant, or any Tenant Renter.

D.      In the event that any federal, state, county, municipal or other authority with jurisdiction over the Premises determines that any violation occurring at the Premises due to the ongoing actions of Tenant, Subtenants, Campers, Employees or its or their agents or (sub)contractors must necessitate the closing of the Premises or such authority issues a regulatory or administrative order to cease operations and to close the Premises, Tenant shall (or cause Subtenant to) vacate the Premises for such Session and shall have no right to a refund of all or any part of the Rent or Additional Rent paid to Landlord for such Session.

E.      Tenant, Subtenants, Tenant Renters, Campers, Employees, and its or their agents, (sub)contractors, guests and invitees shall observe faithfully, and comply strictly with, any Rules and Regulations as Landlord or Landlord's agents may from time to time adopt (provided that for any new Rules and Regulations, there shall be no material change in Tenant's rights or obligations under this Agreement). Notice of any additional Rules or Regulations shall be given in such manner as Landlord may elect.

## 5.3 LANDLORD COVENANTS, WARRANTIES AND REPRESENTATIONS

To induce Tenant to execute this Agreement, and in consideration thereof, Landlord covenants, warrants and represents to Tenant as follows:

A.      Landlord represents that it has full authority to enter into this Agreement; that this Agreement, when executed on behalf of Landlord, constitutes a binding obligation of Landlord; and the officer of Landlord executing this Agreement has been duly authorized to so execute by the Landlord.

B.      No third-party consents or approvals are required in order for Landlord to enter into this Agreement.

C.      The Campground and Premises are in compliance with all applicable laws, regulations, rules and ordinances, and shall remain in compliance throughout the Term.  To the extent required by any governmental or quasi-governmental authority or agency, Landlord, at its sole cost and expense, shall make the necessary repairs and take the necessary action required to bring the Campground and Premises into compliance with all such laws, regulations, rules and ordinances.

D.      There are no encumbrances, easements, covenants or restrictions (of record or otherwise) or legal claims or impediments which would prevent or interfere with Tenant's use of the Premises or otherwise materially adversely affect any of Tenant's rights hereunder.

E.      This Agreement does not violate the provisions of any instrument heretofore executed or binding on Landlord, or affecting or encumbering the Campground.

# ARTICLE 6

## 6.1 REPAIRS AND MAINTENANCE

A.      By taking possession of the Premises, Tenant shall be deemed to have accepted the Premises as being in good and sanitary order, condition and repair, except the repairs outlined in Exhibit B. Tenant shall at Tenant's cost, keep the Premises and every part thereof in good condition and repair except for ordinary wear and tear. Tenant shall upon the expiration of each Session, or sooner termination of this Lease, surrender the Premises to the Landlord in good condition, ordinary wear and tear excepted.

B.      Except with regard to the alterations and repairs listed in Exhibit B, Landlord shall have no obligation to alter, remodel, improve, repair, decorate or paint the Campground, Premises or any part thereof and the parties hereto affirm that Landlord has made no representations to Tenant respecting the condition of the Premises or the Campground facilities except as specifically herein set forth. Any repairs or maintenance to supplemental cooling equipment required for Tenant's needs are the responsibility of Tenant.

C.      Notwithstanding the above provisions, Landlord shall ensure that all current buildings are in legal working condition.  The Landlord shall provide suitable accommodation when Tenants' summer camp grows and require more beds.  Landlord shall repair and maintain the Campground, the Common Areas, the structural portions of the buildings on the Premises, including the roof, foundation, exterior walls, interior structural walls, all structural components, and the standard plumbing, heating and electrical systems furnished by Landlord, unless such maintenance and repairs are necessitated in part or in whole by the negligence or willful misconduct of Tenant, Subtenants, Renters, Campers, Employees or its or their agents, (sub)contractors or invitees, in which case Tenant shall pay to Landlord the reasonable cost of such maintenance and repairs. Tenant shall give Landlord written notice of any required repairs or maintenance.  Repairs shall be made by Landlord within a reasonable time (depending on the nature of the repair needed) after receiving notice or having actual knowledge of the need for a repair.  Landlord shall not be liable for any failure to repair or to perform any maintenance unless such failure shall persist for an unreasonable time after Tenant's written notice.  Landlord shall also make all repairs necessitating a capital expenditure. Landlord shall arrange for the removal of refuse, rubbish, and garbage once per day from the main facility and from designated supplied garbage cans.  Landlord will supervise and bear the costs of the waste water treatment center at the Premises.

D.      Except as specifically herein set forth, there shall be no abatement of rent and no liability of Landlord by reason of any injury to or interference with Tenant's or Subtenant's business arising from the making of any repairs, alterations or improvements to any portion of the Campground or Premises or to fixtures, appurtenances and equipment therein, unless the Premises is more than 25% unusable during the pendency of the repairs and such repairs adversely affect the use of the Premises by Tenant.

## ARTICLE 7

### 7.1 DEFAULTS AND REMEDIES;
### WAIVER OF REDEMPTION

A.      <u>Tenant Default</u>.  If (i)Tenant defaults in fulfilling any of the covenants of this Agreement, then, in any one or more of such events, upon Landlord serving a written fifteen (15) day notice upon Tenant specifying the nature of said default, and upon the expiration of said fifteen (15) day period, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of such a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, such circumstance shall constitute an "**Event of Default**".  Upon an Event of Default, Landlord shall have all remedies given to it at law or in equity.  Notwithstanding anything to the contrary in this Agreement, in no event, shall Tenant be liable for any consequential or punitive damages.

B.      Upon an Event of Default, Landlord may, without further notice, re-enter the Premises and take action to dispossess Tenant, Subtenant, Campers, Employees or other occupant(s) of the Premises, by self-help, summary proceedings, or other legal process, and remove their effects and hold the Premises as if this Agreement had not been made, but Tenant shall remain liable hereunder as hereinafter provided.

C.      Upon an Event of Default: (i) Landlord may take the Security Deposit as liquidated damages in connection with the expenses incurred by Landlord in connection with the Event of Default, including putting the Premises in good order, or for preparing the same for re-rental or other usage, which may involve making such alterations, repairs, replacements and/or decorations in the Premises as Landlord in Landlord's sole judgment considers advisable and necessary for the purpose of re-letting the Premises; and/or (ii) Landlord may terminate this Agreement; and/or (iii) Landlord shall use commercially reasonable efforts to re-let the Premises or any part or parts thereof, either in the name of Landlord or otherwise, for a term or terms, and any rent received by Landlord from any replacement tenants in respect of periods paid by Tenant shall be credited against amount paid or owed by Tenant.  The parties have agreed that Landlord's actual damages, in the Event of Default, would be extremely difficult or impracticable to determine.  After negotiation, the parties have agreed that, considering all the circumstances, the amount the Security Deposit is a reasonable estimate of the damages that Landlord would incur in such event, and each party specifically confirms the accuracy of the statements made above and the fact that each party was represented by counsel who explained, at the time this Agreement was made, the consequences of this liquidated damages provision.  In the event of termination under this Section 7.1(C), Landlord shall not be required to return any Rent or Additional Rent payments made in advance by Tenant in respect of the current Session.

D.      Any action brought by Landlord may be an action for the full amount of all rents and damages suffered or to be suffered by Landlord. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Landlord shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings

and other remedies were not herein provided for. Mention in this Agreement of any particular remedy shall not preclude Landlord from any other remedy, in law or in equity.  The foregoing remedies and rights of Landlord are cumulative. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of Tenant's or Subtenant's eviction due to deliberate breach of the covenants and conditions of this Agreement. This waiver does not apply in case of eviction or dispossession due to circumstances beyond Tenant's or Subtenant's reasonable control, or in the event of Landlord's obtaining possession of the Premises for reasons other than deliberate violation by Tenant of the covenants and conditions of this Agreement.

## 7.2 NOTICES

All notices to be given hereunder shall be given by personal delivery to an officer or supervisor of the respective party, or by overnight courier addressed to the recipient party at its address given on the first page hereof or to such other address as such party may have furnished in a notice given pursuant to this provision.  All notices shall be deemed to have been given on the date it shall have been mailed as aforesaid.  Attorneys for a party shall be authorized to give notices on behalf of such party.

## ARTICLE 8

## 8.1 MISCELLANEOUS

A.      **No Waiver.**   Tenant and Landlord waive the right to trial by jury in any summary proceeding that may hereafter be instituted against it or in any action that may be brought hereunder, provided such waiver is not prohibited by law.  The failure of Landlord or Tenant to seek redress for violation of, or to insist upon the performance of, any covenant or condition of this Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having all the force and effect of an original violation. No employee of Landlord or of Landlord's agents shall have any power to accept the keys to the Premises prior to the termination or expiration of this Agreement. The delivery of keys to any employee of Landlord or of Landlord's agent shall not operate as a termination of this Agreement or a surrender of the Premises. No provision of this Agreement shall be deemed to have been waived by Landlord or Tenant, unless such waiver is in writing signed by Landlord or Tenant, as the case may be. Landlord may accept any payment without prejudice to Landlord's right to recover the balance of such Additional Rent or pursue any other remedy in this Agreement provided. The foregoing shall not prejudice Tenant's rights to dispute charges under this Agreement.

B.      **Complete Agreement; Modifications**.  This Agreement contains the entire agreement between Landlord and Tenant and supersedes all prior agreements or understandings with respect to the subject matter hereof and any executory agreement hereafter made between Landlord and Tenant shall be ineffective to change, modify, waive, release, discharge, terminate or effect an abandonment of this Agreement, in whole or in part, unless such executory agreement is signed by the party to be charged.  This Agreement may not be orally waived, terminated, changed or modified.

C.    **Captions**.  The captions of Articles and/or Sections in this Agreement are inserted only as a convenience, and for reference and they in no way define, limit or describe the scope of this Agreement or the intent of any provision thereof.  References to Articles and Sections are to those in this Agreement unless otherwise noted.

D.    **Binding Effect**. This Agreement will be binding upon, inure to the benefit and be enforceable by the parties hereto and their respective permitted successors and assigns.

E.    **Severability**.  If any term, covenant, condition or provision of this Agreement or the application thereof to any circumstance or to any person, firm or corporation shall be invalid or unenforceable to any extent, the remaining terms, covenants, conditions and provisions of this Agreement or the application thereof to any circumstances or to any person, firm or corporation other than those as to which any term, covenant, condition or provision is held invalid or unenforceable, shall not be affected thereby and each remaining term, covenant, condition and provision of this Agreement shall be valid and shall be enforceable to the fullest extent permitted by law.

F.    **Force Majeure**. In the event that either party is delayed in performance or compliance with a term, covenant or condition contained here (other than payment of Rent, Additional Rent or other sums due hereunder) by reason of fire, similar casualty, strikes, act of God, national or international pandemic, or unavailability of materials due to war or national emergency (collectively, a "**Force Majeure Event**"), the time of such party to comply with the applicable term, covenant or condition shall be extended for such periods as may be reasonably necessary and appropriate under the circumstances then existing. Nevertheless, once camp commences no such circumstances, no early vacatur/expiration /termination, and nothing contained or referenced herein or in this lease, shall operate to relieve the Tenant from its obligation to pay any amount due hereunder, nor allow for any extension of the Term or provide for additional possession of the Premises.

G    **Quiet Enjoyment**.  Landlord covenants that Tenant, upon paying the Rent, shall peacefully and quietly have, hold and enjoy the Premises throughout the respective Session, or until this Agreement is terminated as herein provided.  Notwithstanding the foregoing, Tenants, Subtenants, or Renters, or their affiliates may be granted access to the Premises for the purpose of maintenance or continuing operations.

H.    **Individual Non-Compete**.  In the event of earlier termination of this Agreement, for a period for one (1) year following such early termination, Benjamin Bar, Chaya Bar, Chanoch Saltz or Aharon Cohen (collectively, "**Principals**") shall not, without the prior written consent of Landlord, own, operate, advise, consult, manage or in any other way be involved with, or facilitate the operation of, a summer recreational facility located within one hundred fifty (150) miles of the Premises.  Principals specifically acknowledge and agree that the value to Landlord of any subsequent camp business conducted on the Premises would be substantially diminished if Principals were not to comply in all respects with this Section 8.1(H), and Principals have agreed to the covenants set forth in this Section 8.1(H) as an inducement to Landlord to enter into this Agreement.  Principals specifically acknowledge and agree that the covenants set forth in this

Page 15 of 19

Section 8.1(H) are commercially reasonable and necessary to protect Landlord's interest in its business at the Premises. Principals agrees that Landlord will suffer substantial damages in the event of a breach of the provisions of this Section 8.1(H), the amount of which may be difficult to establish promptly and with certainty. Notwithstanding the preceding sentence, Principals acknowledge and agree that a monetary remedy for a breach of the covenants set forth in this Section 8.1(H) hereof may be inadequate and further agrees that such a breach would cause Landlord irreparable harm, and that Landlord shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages. In the event of such a breach, Principals agree that Landlord shall be entitled to such injunctive relief, including temporary restraining orders, preliminary injunctions and permanent injunctions, as a court of competent jurisdiction shall determine.

I.        **Applicable Law**. This Agreement and all disputes hereunder shall be governed by, and construed in accordance with, the internal laws of the State of New York without giving effect to the conflicts or choice of law provisions of any other jurisdiction. Any claim or dispute arising under or in connection with this Agreement shall be brought and maintained in the state courts of the State of New York or any other court mutually agreed upon by both parties. Each of Tenant and Landlord submits to the jurisdiction of such courts and waives the right to contest jurisdiction or seek removal of any proceeding brought or maintained therein.

J.        **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed and legally delivered by signing and sending a PDF counterpart via email to the other party or its legal counsel, without the necessity of exchanging originally executed counterparts.

## 8.2 TENANT'S ADDITIONAL REPRESENTATIONS AND OBLIGATIONS

Tenant represents that it has full authority to enter into this Agreement; that this Agreement, when executed by Tenant, constitutes a binding obligation of Tenant; and the officer of Tenant executing this Agreement has been duly authorized to so execute by the Tenant.

**[REMAINDER OF PAGE INTENTIONALLY BLANK; SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties have duly-executed this Agreement as of this 18 day of September, 2024.

**LANDLORD**:

GREENVILLELAND LLC

By: _____
　　Michael Shabsels
　　Manager

**TENANT**:

VAAD LINYONEI BIRUR YAHADUS

By: _____
　　Print Name: Benjamin Bar
　　Title: President

**Agreed as to Section 8.1(H):**

_____
Benjamin Bar

_____
Chaya Bar

_____
Chanoch Saltz

_____
Aharon Cohen

# EXHIBIT A

## Subcontractor Insurance Requirements

The "User" throughout the term of their engagement at the Premises and/or Campground must carry commercial general liability insurance with limits not less than $1,000,000 per occurrence for bodily injury and property damage, including products and personal injury liability of at least $1,000,000, with a $2,000,000 general aggregate.  The "User" shall also carry automobile insurance (or hired and non-owned automobile liability if charter transportation is used) with limits not less than $1,000,000 per accident.  Evidence of Workers Compensation must also be provided.

Such policy(ies) shall name Landlord and "Malka Operatingco LLC" as additional insured on a primary and non-contributory basis.  Certificates of insurance complying with these requirements shall be delivered to Landlord at least ten (1) business days prior to "User's" entry onto the Premises.

## <u>EXHIBIT B</u>

## Landlord Construction and Repairs

Building of a Mikvah to be used for men and women.
Refurbishing of old staff houses and bunkhouses as and when they are needed.