UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**
Mitchell Malzberg, Esq.
Law Offices of Mitchell J. Malzberg, LLC
PO Box 5122
6 E. Main Street, Suite 7
Clinton, New Jersey 08809
Telephone: (908) 323-2958
Facsimile: (908) 933-0808
mmalzberg@mjmalzberglaw.com
*Counsel to Sports & Arts Center at Island
Lake, Inc.*

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., et. al.<br><br><div align="center">Debtors</div> | Chapter 11<br><br>Case Nos. 26-16388 (CMG)<br><br>Jointly Administered |

**OBJECTION OF SPORTS & ARTS CENTER AT ISLAND LAKE, INC. TO SIMAD
DEBTORS' MOTION FOR ENTRY OF FINAL ORDER AUTHORIZING
SIMAD DEBTOR BORROWERS TO OBTAIN POST-PETITION FINANCING
<u>AS TO ISLAND LAKE LANDCO AND ISLAND LAKE CAMPCO ONLY</u>**

Sports & Arts Center at Island Lake, Inc. ("<u>Sport</u>") hereby files this Objection (the

"<u>Objection</u>") to the *SIMAD Debtors' Motion for Entry of Final Orders as to Island Lake Landco*

*and Island Lake Campco only (I) Authorizing the SIMAD Debtor Borrowers to Obtain Post-*

*Petition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense*

*Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting*

*Related Relief* [Dkt. Nos. 225 and 299] (the "<u>DIP Motion</u>")[1], and respectfully states as follows:

---

[1]  Capitalized terms used but not defined in this Objection have the meaning ascribed to them in the DIP Motion.

**STATEMENT OF FACTS**

1.      Sport emphasizes that it supports the Island Lake Camp remaining open and the sale process.  However, as a first position lienholder of Island Lake Landco, LLC ("Island Landco") Sport objects to the DIP Financing, as defined below, with respect to solely Island Landco and the Debtor Island Lake Campco, LLC ("Island Campco").

2.      On June 4, 2026 and June 5, 2026 (the "Petition Date") the SIMAD Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are consolidated for administrative Purposes only.

3.      As stated in the DIP Motion, the Debtors and the DIP Lender propose the DIP Facility that, inter alia, provides a loan facility of up to $180 million, the DIP Loan, consisting of up to $60 million of new money and up to a $120 million roll-up of a portion of the outstanding pre-petition principal of the Series A Bonds issued by SIMAD Holdings, Ltd. and held by the Series A Bondholders.

4.      The DIP Facility, in its entirety, is proposed to obtain, inter alia, (i) a first priority lien on all real estate of all SIMAD Debtors Borrowers, including the real estate owned by Island Landco; and (ii) a superpriority administrative expense claim against each of the SIMAD Debtor Borrowers' estates, which includes Island Landco and Island Campco.

5.      As referenced in paragraphs 12-14 of the First Day Declaration (Doc. No. 62), prior to the Petition Date in December 2025, the Debtor SIMAD Holdings Ltd. ("SIMAD") the parent of each of the SIMAD Debtors issued the Series A Bonds (the "Bonds") held by the public (the "Bondholders") in the approximate amount of $211,600,000 bearing fixed annual interest at a rate of 7% (the "Bond Financing").  The Trustee for the Bonds is Mishmeret Trust Company Ltd. ("Mishmeret"). The Bonds were secured by a pledge of collateral from SIMAD, including Mortgages on properties of certain of the SIMAD Debtors, including the Island Lake

Property.  No evidence has been provided as to whether any of the bond proceeds were used by the SIMAD Debtors, whose assets were pledged as collateral.

6. Sport is a pre-petition secured creditor holding a first position Mortgage lien pursuant to that certain *Mortgage, Assignment of Leases and Rents and Security Agreement* dated on or about January 18, 2022 (the "Sport Mortgage") whereby Island Landco granted to Sport a Mortgage on real property located at 50 Island Lake Road, Starrucca, PA, 18462 (the "Island Lake Property"), which was duly recorded on January 21, 2022.  A true and correct copy of the recorded Sport Mortgage is attached hereto as **Exhibit "A".**

7. The Sport Mortgage secures the obligations of Island Landco under that certain Seller Note dated on or about January 18, 2022 (the "Note Purchase Agreement"), by and between Island Lake Landco LLC and Island Lake Campco LLC, (hereinafter collectively "Island Lake Camp") as borrowers.  The original principal amount of the Note Purchase Agreement was $3,350,000.

8. As of the Petition Date, the outstanding principal amount owed under the Note Purchase Agreement is at least $3,400,000.

9. By way of further background, prior to the Bondholder Financing of the Island Lake Camp indebtedness, the Sport Mortgage was a second lien behind Wayne Bank's $900,000 Mortgage. The Sport Mortgage was later subordinated to Mizzen Capital's $1,000,000 loan.  Both Wayne and Mizzen's loans were satisfied by the Bondholder Financing **but not the Sport Mortgage.**

10. Sport never subordinated its loan as part of the Bondholder Financing.  The only subordination that Sport agreed to was the Mizzen loan which pre-dated the Bondholder Financing.  At the time of the Bondholder Financing, the principals of the SIMAD Debtors had asked Sport to subordinate the Sport Mortgage and/or receive a replacement lien on property

owned by DIMAS and Sport refused.  There is no recorded agreement subordinating the Sport Mortgage to the Bondholder Financing.

11.     The Wayne and Mizzen Mortgages were discharged at the time of the Bondholder Financing.  The Debtor, the Bondholders and Wayne along with the title company for the Bondholders were aware of the Sport Mortgage all along during the Bondholder Financing.  Further, the Bondholders and the SIMAD Debtors knew that Sport was not involved in the Bondholder Financing and that Sport was not providing the satisfaction of the Sport Mortgage. **Consequently, there is no duly executed or recorded discharge of the Sport Mortgage by Sport**.

12.     However, when Wayne prepared its Mortgage satisfaction for the Bondholder Financing through Instrument 202600354 recorded January 13, 2026) (the "Void Release"), same contained a scrivener's error which, as to that error, renders it void *ab initio*.  The satisfaction was prepared to release Wayne Bank's own $900,000 Mortgage but mistakenly cited the Sport Mortgage by instrument number and page — Instrument 202200000557, Vol. 6069, Pg. 81–108.  Of note, Wayne Bank later recorded a corrective satisfaction on April 20, 2026 for its own actual Mortgage (Instrument 202603711, correctly referencing Instrument 202200000555, Pg. 28–57).  Wayne never advised Sport of the scrivener's error.

13.     Wayne Bank is not a party to the 2022 Sport Mortgage   and therefore, had no authority to discharge it. **<u>Wayne's satisfaction and release as to the Sport Mortgage was clearly erroneous and a scrivener's error</u>**.  The Bondholders, their title company and Wayne should have recognized this prior to any recordation of this scrivener's error.  Further, the satisfaction recites Wayne Bank's own $900,000 debt, underscoring the fact that the mis-citation was a blatant scrivener's error.  Obviously, this highlights Wayne's clear intent to satisfy only its own Mortgage.   As to the Sport Mortgage, it was not Wayne's to release on

its face, and the satisfaction is clearly void as to the 2022 Sport Mortgage. As a result, the 2022 Sport Mortgage is in first-position priority without prejudice, release, or waiver, and is superior to the Bondholder Financing, which is second in position.    Of note, the Bondholders' Mortgage was recorded eight (8) days after the Wayne satisfaction.   Cumulatively, the facts demonstrate that the 2026 recorded instruments were all related to the Bondholder Financing and Sport was not involved in the Financing.

14.    It is clear that the Bondholders were aware and/or should have been aware of the Sport Mortgage at the time of the Bondholder Financing.  All parties had constructive knowledge of the Sport Mortgage and that it was not being discharged.  The Bondholders and their title company accepted a defective satisfaction from Wayne.  The Sport Mortgage was never discharged and stands in first position without prejudice, release or waiver and is superior to the Bondholders $188,000,000 Mortgage recorded eight days later after the Bondholder Financing.   The Bondholder Mortgage is in second position, having been recorded eight (8) days after the Wayne satisfaction.  The Sport Mortgage was recorded 4 years prior.  The Bondholders, Wayne, the Debtor, and the title company knew or should have known that the Wayne satisfaction was a clear scrivener's error.  There is no recorded instrument executed by Sport discharging the Sport Mortgage.  Pennsylvania has a first in time/first to record rule.  *21 P.S. Section 351*.  It is clear that Sport has a duly recorded first position Mortgage on the Island Lake Property.  *See* attached Table annexed hereto as **Exhibit "B"** which is instructive as to the lien history.   On June 24, 2026, the Debtors filed the DIP Motion to approve the DIP Financing. The Court entered an Interim DIP Order on June 29, 2026 (Dkt No. 335) with a final hearing returnable on July 13, 2026, which has now been continued to July 16, 2026.

15.    Annexed hereto as **Exhibit "C"** is a copy of the December 31, 2025 Leitner Berman appraisal of all the 30 SIMAD camps valuing the camps at $466,600,000.

16.     Annexed hereto as **Exhibit "D"** are the relevant pages of the aforementioned appraisal valuing Island Lake Camp Debtors at $14,400,000.  The Island Landco and Island Campco are hereinafter collectively referred to as "Island Lake Camp Debtors".

17.     Included in **Exhibit "D"** are financials for the Island Lake Camp Debtors for the year 2024 and 2025.  The financials reflect that the Island Lake Camp Debtors are profitable with profits in excess of $1,000,000 each year.

18.     As of the Petition Date, the Island Lake Camp Debtors had well over $2,400,000 and $200,000 in receivables to fund camp operations.  The principals of Sport were former owners of Island Lake Camp and have intimate knowledge as to what projected cash needs would be for this summer's camp operations.  The Sport principals believe that the Island Lake Camp Debtors' expenditures to operate on a weekly basis should not exceed $150,000-$200,000 per week.  As such, it is the position of Sport that there is no need for DIP financing as the Island Lake Camp Debtors have sufficient liquidity to fund operations.

## OBJECTION TO DIP FINANCING

19.      A court should only approve debtor in possession financing if such financing "is in the best interest of the general creditor body." *In re Roblin Industries, Inc.,* 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (citing *In re Vanguard Diversified, Inc.,* 31 B.R. 364, 366 (Bankr. E.D.N.Y. (1983)); See also *In re Tenney Village Co., Inc.*, 104 B.R. 562, 569 (Bankr. D. N.H. 1989) ("The debtor's prevailing obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries").  Moreover, the proposed financing must be "fair, reasonable, and adequate." *In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

20.     With respect to the Island Lake Camp Debtors, Sport emphasizes that the court should only look at the creditor body of the Island Lake Camp Debtors and the facts as to the Island Lake Camp Debtors as this case is only administratively consolidated.

## DIP FUNDING AS TO ISLAND LAKE
## CAMP DEBTORS IS NOT NECESSARY

21.     Sport files this Objection to the final DIP loan due to the fact that the Island Lake Camp Debtors have more than sufficient liquidity to fund operations for camp operations and/or until a closing of the sale of Island Lake Camp.  As such, there is no need for a DIP loan to fund the Island Lake Camp operations for this summer and up to and through the sale process.  Island Lake Camp Debtors have over $2,400,000 and $200,000 in receivables to fund operations through the end of the 2026 camp session at or near the Petition Date.  Operations to fund Island Lake Camp should not exceed $200,000 per week.  As such, given the Island Lake Camp Debtors have over $2,400,000 in funds, there is sufficient liquidity to fund operations of the camp and there is no need for DIP lending as to Island Lake Camp. Further, the roll-up, if permitted here, would detrimentally impact Sport's lien inasmuch as that would unfairly create a first position lienholder in front of Sport.

22.     Given the first position lien of Sport and the value of Island Lake Camp Debtors, there is no need to grant the DIP lender a superpriority lien ahead of Sport's first position lien or a roll-up as to the Island Lake Camp Debtors.  The DIP Lender is adequately protected based on Island Lake Camp being valued at $14 million dollars.  See **Exhibit "D"** which are the relevant pages of the bondholders' appraisal of Island Lake Camp.   Even if the court were to overrule this objection and authorize the DIP lending, the DIP Lender should not be granted a first position priming lien nor should the court grant the roll-up.  In other words, Sports lien should not be primed in any respect as the DIP lender is more than adequately protected given the liquidity and the value of Island Lake Camp Debtors.

23.     The DIP facility is not in the best interest of the Island Lake Camp Debtors and should not be granted.  Post-petition financing is not warranted if its primary purpose is to benefit or improve the position of a particular secured lender.  *See, e.g., In re Aqua Assocs.*, 123 B.R. 192, 195-98 (Bankr. E.D. Pa. 1991) ("[C]redit should not be approved when it is

sought for the primary benefit of a party other than the debtor."); *In re Ames Dep't Stores, Inc.*, Case 18-12741-LMI, Doc 114, Filed 04/10/18, Page 6 of 17 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) ("[A] proposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate.").  The law and courts have long acknowledged the unequal bargaining power inherent in negotiations leading to proposed post-petition financing, as well as the very significant harm that can befall creditors if the proposed financier is enabled to exploit its leverage position.  See, e.g., *In re FCX, Inc.*, 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985) ("[T]he court should not ignore the basic injustice of an agreement in which the debtor, acting out of desperation, has compromised the rights of other secured or unsecured creditors.").  As to the Island Lake Camp Debtors, if granted, the borrowing will only benefit the DIP lender and bondholders due to the roll-up and granting of the superpriority lien ahead of the Sport Mortgage to the detriment of Sport and all other creditors.

24.     Any budget as to Island Lake Camp requires further scrutiny.  It is the position of Sport that DIP Financing is not necessary as to the Island Lake Camp Debtors. Sport's lien should not be primed.   Given there is no need for Financing, if the court were to approve the DIP Financing as to Island Lake Camps, the Financing should be strictly limited given the Island Lake Camps cash liquidity on hand.   Further, no roll-up should be applicable as to the Island Lake Camp Debtors.  The DIP lender is more than adequately protected.   Prior to seeking any Financing, Sport should be given an opportunity to object to the need for use of the DIP facility.

25.     It is the position of Sport that the Financing will discriminate against Sport if the court were to allow the DIP Financing where a need for same has not been demonstrated.

There has been no showing that any of the interim DIP Financing Loan was spent on the Island Lake Camp Debtors.

26.     While the Debtor did give some adequate protection in the Interim DIP Order, the proposed DIP Financing seeks a priming lien, roll-up and superpriority administrative claim ahead of Sport and it fails to provide the necessary adequate protection to Sport as required under the Bankruptcy Code at Section 364(d) especially in light of the significant value of Island Lake Camp and its liquidity.  Section 364(d) provides that a court may authorize a debtor to obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien only if, among other things, "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1)(B).  When seeking to obtain a priming lien pursuant to Section 364(d), the debtor bears the burden of proof on showing that pre-petition secured creditors are adequately protected.  *See* 11 U.S.C. § 364(d)(2); *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994) ("A debtor has the burden to establish that the holder of the lien to be subordinated has adequate protection.").   Such a determination "is made on a case-by-case basis," and a proposal for adequate protection "should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing." *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564.   Here, if this court were to allow the superpriority lien and roll-up, Sport is *not* being given the same level of protection given that DIP Financing is not necessary.

27.     The DIP lenders seek liens on not only all of the SIMAD Debtors property but also seek to encumber assets they presently do not have any liens on such as avoidance actions and commercial tort claims-litigation.   Further, the DIP Lenders seek to have the roll-up lien amount of $120,000,000 apply in this amount as to all of the SIMAD Debtors.  In other words,

the DIP facility treats the SIMAD debtors as substantively consolidated.   This Court should not permit the roll-up or borrowing as to Island Lake Camp as there is no need for any DIP Financing for the Island Lake Camp Debtors.

28.     As of the Petition Date, the outstanding principal balance owed to Sport was not less than $3,400,000 under the Note Purchase Agreement.  While the Debtors have offered Sport some protection, the Debtors have not demonstrated the need in this case for DIP lending nor have they agreed to limit the DIP lending or put in place proper controls to show that Sport will remain adequately protected as a result of the DIP Financing.  Sport therefore respectfully requests that the Court deny the DIP Financing as to these Debtors.  Again, this is based on the DIP lenders' own appraisal as to Island Lake Camp indicating it is valued at $14 million dollars and there is no need for a first position lien and a roll-up as the DIP lender is adequately protected as to the Island Lake Camp Debtors.

29.     As such, the Island Lake Camp Debtors have failed to meet their burden in proving that the proposed DIP facility is even necessary and of value to these Debtors.  The DIP facility will merely improve the position of the DIP lender-bondholders to the detriment of the Island Lake Camp Debtors, Sport and other creditors.  Consequently, the DIP Financing motion is not in the best interest of the Island Lake Camp Debtors and should be denied to the extent that the liens granted pursuant to the DIP Financing will prime Sports' lien on the Island Lake Property without Sport receiving adequate protection to prevent any diminution in its collateral value caused by the DIP Financing.

30.     Further, while Sport maintains DIP funding as to Island Lake Camp is not necessary, Sport did offer to provide DIP funding for the Island Lake Camp Debtors on more favorable terms than the DIP Lender.   Sport offered a DIP loan to the Island Lake Camp Debtors to borrow up to $700,000 as a first position lien as long as the Sport Mortgage remains

in its position ahead of the bondholders.   Sport will receive 2 points and the interest rate will be 6.55% plus SOFR.  The loan term would be the same term as the DIP lender.  Sport would be granted a first position lien and roll-up (or acknowledgement that the Sport Mortgage is pre-petition in first position).  If the Debtor needs a 2-month extension as to the loan term, Sport would grant same conditioned on Sport being paid an additional 2 points.  Since Sport has offered better alternative financing, this is yet another reason the Court should not approve the DIP Financing as to the Island Lake Camp Debtors.

## THE ROLL-UP AND PRIMING LIEN SHOULD NOT BE GRANTED

31.    It is anticipated that the Debtor (and consequently the Bondholders) will argue that the Sport Mortgage is voidable under the Trustee's strong-arm powers pursuant to 11 U.S.C. 544.  This argument must fail as the extent and validity of the liens must properly be determined via the filing of an Adversary Proceeding Complaint.  Clearly, this is required given that Sport never provided a satisfaction of the Sport Mortgage.   The scrivener's error in the satisfaction by Wayne adversely affected, prejudiced and damaged Sport despite the clear fact that Wayne Bank, the Bondholders and title company at a minimum were aware of the Sport Mortgage at the time of the Financing.  Priority, liability and damages must be preserved and reserved as to the Wayne satisfaction instrument recorded scrivener's error which occurred not through any action of Sport and unbeknownst to Sport.  Any DIP Order should not release these claims.  At this juncture, this court must afford protections to Sport so it is not prejudiced inasmuch as Sport has equitable remedies, claims and damages against Wayne Bank, the Bondholders and the title company involved in the Financing.  All of the aforementioned knew or should have known of Sport's Mortgage and the fact that Sport's Mortgage is not discharged. Wayne Bank, the Bondholders and the title company were aware of this at the time of the Financing.  If the court grants the roll-up and priming lien, the relief would be nothing short of

inequitable as a roll-up and priming lien would reward the parties who caused the harm to Sport's Mortgage yet <u>Sport did not take any action in the chain of title to have the Mortgage discharged in any way</u>. In short, the Debtor and Bondholders should not reap the unintended benefit of an uncorrected scrivener's error to the detriment of Sport.

32. Moreover, the proposed DIP Financing essentially effectuates a substantive consolidation without an evidentiary hearing on the Debtors' satisfaction of the elements required by the Third Circuit decision in *Owens Corning*. *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005). If the *Owens Corning* analysis[2] were performed, the Court would find that the Island Lake Camp Debtors and many of the other camps:

(i)     had cash on hand and were capable of generating sufficient revenues such that no DIP Financing would be necessary as to their respective camp(s);

(ii)     the cash on hand and additional revenues would provide sufficient monies to cover any necessary expense associated with the actual professional fees attributed to said camp; and

(iii)     the cash on hand, additional revenues and sale proceeds of such camps would pay all claims attributed to such camp in full with the remaining proceeds (which unequivocally exist) being available for the Bondholders and equity interest holder of such camp.

33. Frankly, the Bondholders should not have been provided a Mortgage in the first instance but rather should have been given a pledge of SIMAD's equity interest. We presume that very little if any of the Bondholder Financing went to fund the camps (or at least not the Island Lake Camp Debtors) and that the bond monies were used instead by SIMAD, DIMAS or their equity interest holders.

---

[2] *In re Owens Corning* carves out the factors required to be satisfied by a Debtor when seeking consolidation. In re Owens Corning, 419 F.3d 195 (3d Cir. 2005) *Owens Corning* dictated that what must be proven is (i) that pre-petition, the entities to be consolidated disregarded separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) that post-petition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors. <u>Id.</u>

**IT WOULD BE INEQUITABLE TO SUBORDINATE OR AVOID
SPORTS' MORTGAGE AS TO THE DIP FINANCING WEIGHING
THE FACTS, CIRCUMSTANCES, AND EQUITIES HEREIN**

34.     For the reasons outlined *supra*, the facts and circumstances of this unique setting involving the obvious scrivener's error which adversely impacts the Mortgage of innocent party, Sport who was uninvolved in the Bond Financing transaction dictates denial of the roll-up and priming lien.

**RESERVATION OF RIGHTS**

35.     Sport continues to engage in discussions with the Debtor in good faith in an attempt to resolve Sport's objections to the DIP Financing Motion and issues with Sport's Mortgage.  Given each of the SIMAD Debtor entities are separate, the granting of the roll-up in essence substantively consolidates these cases to the detriment of Creditors. Specifically, as to Sport, it not only primes Sport's Mortgage but if the court considers the argument as to the Sport lien and grants the roll-up and priming lien, it further rewards the Bondholders and the innocent party, Sport is left harmed and severely prejudiced due to the inequitable actions of others despite Sport's validly recorded Mortgage.   Sport reserves all rights with respect to the relief sought in the DIP Financing Motion and expressly reserves the right to raise additional issues-objections regarding the DIP Financing Motion, (and/or join in as to objections as to other parties objections), the release and granting of liens and approval of the Proposed Final Order at or prior to the hearing on the same.

**CONCLUSION**

36.     In conclusion, DIP Financing should be denied as it relates to the Island Lake Camp Debtors who do not need Financing since they do not need the funds.  Moreover, the roll-up and priming lien should not be granted inasmuch as a roll-up and priming lien would be inequitable and substantively consolidate these Debtor entities in violation of *Owens*

*Corning*.  Finally, it would be inequitable to subordinate or avoid Sport's Mortgage in view of the facts, circumstances and equities to be weighed herein.

37.    For all of the foregoing reasons, Sport respectfully requests that the Court deny final approval of the DIP Financing Motion as it relates to Island Lake Camp Debtors.

**WHEREFORE**, Sport respectfully requests entry of an order denying the relief requested in the DIP Financing Motion on a final basis as set forth in this Objection, and granting such other and further relief as the Court deems just and proper.

Dated: July 7, 2026

Respectfully submitted,

*/s/ Mitchell Malzberg*
Mitchell Malzberg, Esq.
**LAW OFFICES OF MITCHELL J. MALZBERG, LLC**
PO Box 5122
6 E. Main Street, Suite 7
Clinton, NJ 08809
P: 908-323-2958
F: 908-933-0808
E: mmalzberg@mjmalzberglaw.com