*EXHIBIT "A"*

202200000557

Instrument

VOLUME PAGE
6069   81

202200000557
Filed for Record in
WAYNE COUNTY, PA
DEBORAH L BATES
01-21-2022 At 11:14 am.
MORTGAGE          119.75
OR VOLUME   6069 PAGE   81 - 108

**PREPARED BY:**
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Attention: Daniel L. Mita, Esquire
(215) 979-7335

**AFTER RECORDING RETURN TO:**
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Attention: Daniel L. Mita, Esquire
(215) 979-7335

**Tax Parcel Nos.**: 23-0-0131-0016.002; 23-0-0131-0022; 23-0-0131-0021; 23-0-0131-0016; 23-0-0131-007; 23-0-0131-0020.001; 23-0-0131-0023; 23-0-0131-0037; & 20-0-0131-0037.A

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

## CERTAIN DEFINITIONS

(A) "**Security Instrument**" means this document, which is dated January 13, 2022 and effective as of January 18, 2022 (the "**Effective Date**").

(B) "**Borrower**" is, jointly and severally, ISLAND LAKE LANDCO LLC and ISLAND LAKE CAMPCO LLC, each a Pennsylvania limited liability company owned, directly or indirectly, by Michael Shabsels and David Shabsels, with an address of c/o Michael Shabsels, 444 East 58th Street, Apt. 3C, New York, New York 10022. Borrower is the Borrower under this Security Instrument.

(C) "**Lender**" is SPORTS & ARTS CENTER AT ISLAND LAKE, INC., a Pennsylvania corporation with an address of 19 Byram Meadows Rd. Chappaqua, NY 10514. Lender is the Lender under this Security Instrument.

(D) "**Note**" means that certain Seller Note dated the Effective Date, made by Borrower in favor of and for the benefit of Lender, as the same may be amended from time to time. The Note states that Borrower owes Lender a principal amount of Three Million Two Hundred Fifty-Four Thousand Four Hundred Forty-Five and 00/100 Dollars (U.S. $3,254,445.00), and any accrued interest thereof.

(E) "**Guaranty**" means that certain Guaranty dated as of the Effective Date, made by

1

Instrument   VOLUME PAGE
Description   069   82

Michael Shabsels, an individual, and David Shabsels, an individual in favor of and for the benefit of Lender, as the same may be amended from time to time.

(F)   "**Property**" means that certain property of the Borrower, with improvements erected thereon, consisting of the following land located in: (a) Scott Township, Wayne County, Commonwealth of Pennsylvania: consisting of (i) the premises known as Tax Map Identification Number 23-0-0131-0016.002, consisting of approximately 87 acres; (ii) the premises known as Tax Map Identification Number 23-0-0131-0022, consisting of approximately 1 acre; (iii) the premises known as Tax Map Identification Number 23-0-0131-0021, consisting of approximately 20 acres; (iv) the premises known as Tax Map Identification Number 23-0-0131-0016, consisting of approximately 4 acres; (v) the premises known as Tax Map Identification Number 23-0-0131-007, consisting of approximately 26 acres; (vi) the premises known as Tax Map Identification Number 23-0-0131-0020.001, consisting of approximately 2 acres; (vii) the premises known as Tax Map Identification Number 23-0-0131-0023, consisting of approximately 149 acres; (viii) the premises known as Tax Map Identification Number 23-0-0131-0037, consisting of approximately 153 acres; and (b) Preston Township, Wayne County, Commonwealth of Pennsylvania, consisting of the premises known as Tax Map Identification Number 20-0-0131-0037.A, consisting of approximately 23 acres; both the foregoing premises in "a" and "b" in the aggregate consisting of approximately 465 acres, as more fully described in Exhibit "A" attached hereto and made a part hereof (the "**Land**"); and

     i.    All buildings, structures and improvements of every kind now or hereafter erected on, under or over the Land (the "**Improvements**") (the Land and the Improvements being hereinafter referred to as, collectively, the "**Real Estate**"); and

     ii.    All fixtures, systems, machinery, equipment and other articles of real, personal or mixed property owned by Borrower now or hereafter attached to, situate or installed in or upon, or used in the operation or maintenance of, the Real Estate, whether or not such real, personal or mixed property is or shall be affixed to the same, and all replacements, substitutions, accretions and proceeds of the foregoing (collectively, "**Fixtures**") including, without limitation:

        (a)  all furnishings, furniture, and appliances; all articles of interior decoration, floor, wall and window coverings; all equipment; all supplies, tools, accessories; all storm and screen windows, shutters, doors, awnings, signs, trees, and other plantings; furnaces, heaters, heating equipment and all fixtures and equipment relating and appurtenant thereto; stoves; ranges; oil and gas burners and fixtures appurtenant thereto; hot water heaters; plumbing and bathroom fixtures and systems appurtenant thereto; electric and other lighting fixtures and systems; television cables, conduits and antennas; air-conditioning systems and equipment; window shades and curtain rods, screens, screen doors, storm windows, storm doors and other doors; awnings; stair carpets and wall to wall carpeting; refrigerators, dishwashers, washing machines and dryers; burglar and fire alarm systems;

fences, pools and pool equipment, waste water treatment plants, trees and shrubs and plants; docks; baseball/softball fields, basketball, tennis and other courts; fences and posts; all swimming pools and related equipment; and all other improvements thereon or thereto; and

iii. All leases, licenses, occupancy agreements, or agreements to lease all or any part of the Real Estate and all extensions, renewals, amendments, and modifications thereof, and any options, rights of first refusal, or guarantees relating thereto (collectively, "**Leases**"); all rents, income, receipts, revenues, security deposits, escrow accounts, reserves, issues, profits, awards, royalties, and payments of any kind payable under the Leases or otherwise arising from the Real Estate (collectively, the "**Income**"); all contract rights, accounts receivable and general intangibles relating to the Real Estate or the use, occupancy, maintenance, construction, repair or operation thereof; all management agreements, franchise agreements, utility agreements and deposits, building service contracts, maintenance contracts, construction contracts, architect's agreements; all maps, plans, surveys and specifications; all warranties and guaranties; all permits, licenses and approvals; all insurance policies, books of account and other documents, of whatever kind or character, relating to the use, construction upon, occupancy, leasing, sale or operation of the Real Estate;

　　i. All estates, rights, tenements, hereditaments, privileges, easements, and appurtenances of any kind benefitting the Real Estate; all means of access to and from the Real Estate, whether public or private; all water, gas, oil, and mineral rights; all rights of Borrower as declarant or unit owner under any declaration of condominium or declaration of a planned community applicable to any of the Real Estate not released from the lien of this Security Instrument; production and drilling rights, lease payments and all related benefits, and all other claims or demands of Borrower, either at law or in equity, in possession or expectancy, of, in, or to the Real Estate; and

iv. All "**Proceeds**" of any of the above-described Property, which term shall have the meaning given to it in the Uniform Commercial Code of the Commonwealth of Pennsylvania (the "**UCC**") and shall additionally include whatever is received upon the use, lease, sale, exchange, collection, or other utilization or any disposition of any of the above-described Property, voluntary or involuntary, whether cash or non-cash, including proceeds of insurance and condemnation awards, rental or lease payments, accounts, chattel paper, instruments, documents, contract rights, general intangibles, equipment and inventory.

(E) "**Loan**" means the debt evidenced by the Note.

(G) "**Applicable Law**" means all controlling applicable federal, state and local statutes,

regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(H) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

GRANT OF MORTGAGE

This Security Instrument is executed, acknowledged and delivered by Borrower to secure and enforce the following obligations and liabilities: (i) the repayment of the Loan and all sums coming due or required to be paid or advanced in connection with or arising from the Loan, and the Note including all renewals, extensions and modifications of the Note; and (ii) the performance of all of the terms, covenants, conditions, agreements, obligations and liabilities of Borrower under this Security Instrument the Note, and the Guaranty (collectively, the "**Loan Documents**"). For this purpose, Borrower has granted, conveyed, bargained, sold, aliened, enfeoffed, released, confirmed, assigned to, granted a security interest in and mortgaged, and by these presents does hereby grant, convey, bargain, sell, alien, enfeoff, release, confirm, assign to, grant a security interest in and mortgage unto Lender the Property, whether presently in existence or to come into existence at some future time.

BORROWER COVENANTS that as of the Effective Date Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, under and subject, as aforesaid, to any other encumbrances of record.

Borrower and Lender covenant and agree as follows:

1.      <u>Payment</u>.   Borrower shall pay the debt evidenced by the Note on the date(s) specified in the Note.

2.      <u>Charges; Liens</u>.   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to or arising from the Property that can attain priority over this Security Instrument, leasehold payments or ground rents on the Property.

Borrower shall promptly discharge any lien (other than any other mortgage related to the acquisition or improvement of the Property, or those listed on Exhibit B attached hereto or any mortgage that may refinance, in whole or in part, any of such mortgages listed on Exhibit B, whether securing indebtedness in an amount less than, equal to or greater than the indebtedness secured thereby at the time of the refinancing, any of the foregoing, each a "**Senior Mortgage**"), which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender

4

subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 2.

3.     <u>Property Insurance</u>.   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage". This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender reasonably requires; provided, however, that such coverage shall be on a replacement cost basis in an amount not less than full replacement value of the Property.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as Lender and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. Borrower shall provide to Lender upon Lender's request, form time-to-time, certificates of insurance evidencing the insurance required by this Section 3, and shall provide Lender a new certificate of insurance at least 30 days before the expiration of any existing insurance policy. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as Lender and/or as an additional loss payee.

4.     <u>Preservation, Maintenance and Protection of the Property; Inspections</u>.   Borrower shall not destroy, damage or impair the Property, abandon the Property or allow the Property to deteriorate or commit waste on the Property. Borrower shall perform all maintenance required to keep the Property in at least the same condition as now exists and otherwise in accordance with this Security Instrument and all Applicable Law. If the Property is damaged by fire or other casualty, Borrower shall restore the Property to the condition it was in prior to such damage, unless Lender agrees otherwise in writing.

5.     <u>Notices</u>.   All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice required or permitted hereunder shall be deemed to have been received either: (a) when delivered by hand and the party giving such notice has received a signed receipt thereof; or (b) one (1) business day following the date deposited with Federal Express or other recognized overnight courier for next business day delivery; or (c) three (3) days following the date deposited in the United States mail, postage prepaid, by registered or certified mail, return receipt requested, addressed as follows (or addressed in such other manner as the party being notified shall have requested by written notice to the other party). Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The Borrower's notice address shall be the Property's address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change

of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

6.      Assignment of Rents (Income). Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Income; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Assignment of Leases and Section 13 of this Security Instrument, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Income. Borrower shall hold the Income, or a portion thereof sufficient to discharge all current sums due on the Loan, for use in the payment of such sums and enforce the terms of the Leases.

7.      Governing Law; Severability; Rules of Construction. This Security Interest is both a real property mortgage and a "security agreement" within the meaning of the UCC. Borrower shall execute, deliver, file and refile any financing statements, continuation statements, or other security agreements that Lender may require to confirm the lien of this Security Instrument with respect to such property. Borrower irrevocably appoints Lender attorney-in-fact for Borrower to execute, deliver and file such instrument. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property; and Borrower hereby grants to Lender a security interest in all of the foregoing. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the other Loan Documents conflict with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the other Loan Documents which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

8.      Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 8, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by

6

Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred without Lender's prior written consent, other than the conveyance of an encumbrance therein pursuant to a mortgage or deed of trust in favor of the holder of a Senior Mortgage, the entire mortgage debt shall become due and payable immediately unless Lender shall elect, in Lender's sole discretion, to give Borrower notice of acceleration. If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 5 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

9.      Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any lien permitted by Lender to have priority over this Security Instrument.  The proceeds of such award shall be used first to pay the outstanding amount secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

10.     Default; Right to Make Advances. If Borrower should fail to pay or perform any of its obligations with respect to the Property as required hereunder, or otherwise fails to pay or perform (or commence and proceed diligently to perform) any of its other obligations under this Security Instrument or the other Loan Documents, then Lender, at its election, shall have the right, but not the obligation, after ten (10) days' notice and failure by Borrower in that time to cure, to: make any payment or expenditure and to take any action which Borrower should have made or taken or which Lender deems advisable to protect the security of this Security Instrument or the Property. Such action shall be without prejudice to any of Lender's rights or remedies available under this Security Instrument or otherwise at law or in equity, including, without limitation: (a) the right to institute an action of mortgage foreclosure against the Property; (b) institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note or in the other Loan Documents; (c) declare the entire amount due obligations under this Security Instrument and/or the other Loan Documents to be accelerated and immediately due and payable; or (d) take such other action for realization on the security intended to be provided under this Security Instrument as permitted by Applicable Law.  All such sums, as well as costs and expenses, advanced by Lender shall be due on demand from Borrower to Lender, shall become part of the Loan secured by this Security Instrument, and shall bear interest at the applicable rate provided in the Note until repayment in full to Lender.

11.     Default; Confession of Judgement. Upon the occurrence of an any default under this Security Instrument and at all times thereafter if such default has not been cured in all respects after ten (10) days' notice and failure by Borrower in that time to cure, Lender may, with legal action, take possession and control of the Property to the exclusion of Borrower and all others. Lender shall have the authority while so in possession to insure (at Borrower's expense) against all risks by reason of having taken such possession and Borrower will transfer and deliver to the

Instrument                                    VOLUME   PAGE
20260010734R   Desc069   88

Lender all policies of insurance upon the Property not theretofore transferred and delivered to Lender. FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PROPERTY UPON THE OCCURRENCE OF ANY UNCURED DEFAULT, BORROWER HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA THE REAL ESTATE IS LOCATED OR ELSEWHERE AS ATTORNEY FOR BORROWER AND ALL PERSONS CLAIMING UNDER OR THROUGH BORROWER, TO CONFESS JUDGMENT IN EJECTMENT AND CONFESS JUDGMENT FOR RECOVERY OF POSSESSION OF THE PROPERTY AND TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER, AND ALL PERSONS CLAIMING UNDER OR THROUGH BORROWER IN FAVOR OF LENDER FOR RECOVERY BY LENDER OF POSSESSION THEREOF, FOR WHICH THIS SECURITY INSTRUMENT , OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE PROPERTY SHALL REMAIN IN OR BE RESTORED TO BORROWER, LENDER SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS TO CONFESS JUDGMENT IN EJECTMENT AND CONFESS JUDGMENT FOR RECOVERY OF POSSESSION OF THE PROPERTY. LENDER MAY BRING AN ACTION TO CONFESS JUDGMENT IN EJECTMENT AND TO CONFESS JUDGMENT FOR RECOVERY OF POSSESSION OF THE PROPERTY BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS SECURITY INSTRUMENT OR TO ENFORCE ANY LOAN DOCUMENT, OR AFTER ENTRY OF JUDGMENT THEREON OR ON ANY LOAN DOCUMENT, OR AFTER A SHERIFF'S SALE OF THE PROPERTY IN WHICH LENDER IS THE SUCCESSFUL BIDDER, IT BEING THE UNDERSTANDING OF THE PARTIES THAT THE AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR OBTAINING POSSESSION IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS SECURITY INSTRUMENT AND THE OTHER RELEASE AGREEMENT DOCUMENTS, AND SHALL SURVIVE ANY EXECUTION SALE TO LENDER.

BY AGREEING THAT LENDER MAY CONFESS JUDGMENT HEREUNDER BORROWER, FOR ITSELF AND ANY OTHER PERSONS OR ENTITIES NOW OR HEREAFTER IN POSSESSION OF ALL OR ANY PART OF THE PROPERTY, WAIVES THE RIGHT TO NOTICE IN A PRIOR JUDICIAL PROCEEDING TO DETERMINE THEIR RIGHTS AND LIABILITIES AND THE OPPORTUNITY TO RAISE ANY DEFENSE, SET OFF, COUNTERCLAIM OR OTHER CLAIM AGAINST SUCH ACTION BY LENDER.

_____
Borrower's Initials

8

**MORTGAGEE HEREBY WAIVES AND DISCLAIMS ANY AND ALL DUTIES THAT MAY BE REQUIRED OF OR IMPOSED ON IT PURSUANT TO 20 PA.C.S. § 5601.3(B) OR ANY OTHER APPLICABLE LAW IN CONNECTION WITH ANY POWER OF ATTORNEY GRANTED TO IT HEREIN AND THE EXERCISE THEREOF. MORTGAGOR HEREBY ACKNOWLEDGES AND CONSENTS TO THE WAIVER AND DISCLAIMER OF ANY AND ALL SUCH DUTIES BY MORTGAGEE.**

12.    <u>Remedies Continued; Repossession</u>. Upon the occurrence of a default and at all times thereafter if such default has not been cured in all respects after ten (10) days' notice and failure by Borrower in that time to cure, Lender shall have the right to take possession of any portion of the Property constituting fixtures or other personal property subject to the UCC, and any records pertaining thereto. then Lender shall have the right to use, operate, manage, lease or otherwise control the Property in any lawful manner and, in its sole discretion but without any obligation to do so, insure, maintain, repair, renovate, alter or remove such Property; use, in connection with any assembly, use or disposition of such Property, any name or designation that has been used to identify the Property; sell or otherwise dispose of all or any of such Property at any public or private sale at any time or times without advertisement or demand upon or notice to Borrower, all of which are expressly waived to the extent permitted by law, with the right of Lender or its nominee to become purchaser at any sale (unless prohibited by statute) free from any equity of redemption and from all other claims, and after deducting all legal and other expenses for maintaining or selling such Property, and all reasonable attorneys' fees, legal or other expenses for collection, sale and delivery, apply the remaining proceeds of any sale to pay (or hold as a reserve against) the obligations under this Security Instrument and the other Loan Documents and exercise all rights and remedies of a secured party under the UCC or any other applicable law.

13.    <u>Remedies Continued; Assignment of Leases and Rents (Income)</u>. Upon the occurrence of a default and at all times thereafter if such default has not been cured in all respects after ten (10) days' notice and failure by Borrower in that time to cure, the license granted to Borrower under <u>Section 6</u> hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (a) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (b) complete any construction on the Property in such manner and form as Lender deems advisable; (c) make alterations, additions, renewals, replacements and improvements to or on the Property; (d) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants and demand, sue for, collect and receive all Income of the Property and every part thereof; (e) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Income, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied

by Borrower; (f) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (g) apply the receipts from the Property to the payment and performance of the obligations under the Loan Documents (including, without limitation, the payment of the debt due under the Note), in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees and costs) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, other charges, insurance premiums and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees.

14. **Security and Priority of Advances.** This Security Instrument secures future advances. Advances may be made and indebtedness incurred from time to time hereafter, but each such advance or indebtedness shall be secured hereby as if made on the date hereof. This Security Instrument also secures (i) all advances made by Lender with respect to the Property for the payment of real estate taxes, water and sewer rents, assessments, maintenance charges, insurance premiums or costs incurred for the protection of any of the Property or the lien of this Security Instrument, (ii) all expenses incurred by Lender by reason of a default hereunder, and (iii) all advances made by Lender to enable completion of construction of improvements to the Property, if any. As provided in 42 Pa. C.S.A. §8144, this Security Instrument shall constitute a lien on the Property from the time this Security Instrument is left of record (or, if this is a purchase money mortgage, from the time of delivery hereof to Lender) for, among other things, all such advances and expenses, plus interest thereon, regardless of the time when such advances are made or such expenses are incurred. Borrower hereby covenants and agrees that it will not exercise, and hereby waives, its right under 42 Pa. C.S.A. §8143(c) to limit the indebtedness secured by this Security Instrument.

15. **Indemnity.** Borrower shall indemnify, defend and hold an Indemnified Party harmless from and against any claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, punitive damages, foreseeable and unforeseeable consequential damages, of whatever kind or nature (including, but not limited to, reasonable attorneys' fees and other costs of defense) (collectively, the "**Losses**"), imposed upon or incurred by or asserted against any Indemnified Party from or in any way related to: (a) ownership of this Security Instrument, the Property or any interest therein or receipt of any Income; (b) any amendment to, or restructuring of this Security Instrument and any other Loan Documents; (c) any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Security Agreement the other Loan Documents, whether or not suit is filed in connection with same, or in connection with Borrower, any guarantor or indemnitor and/or any partner, member, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; (d) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (e) any use, non-use or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas,

streets or ways; (f) any failure on the part of Borrower to perform or to be in compliance with any of the terms of this Security Instrument; (g) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (h) any failure of the Property to be in compliance with any Applicable Law; (i) the enforcement by any of the Indemnified Parties of the provisions of this Section 15; (j) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in any Lease; (k) the payment of any commission, charge or brokerage fee to anyone claiming through Borrower (or any affiliate thereof) which may be payable in connection with the funding of the Note; or (m) any misrepresentation made by Borrower in this Security Instrument or in any other Loan Documents. The indemnification of Lender under this Section 15 shall survive the release or termination of this Security Instrument and shall remain effective notwithstanding any foreclosure of this Security Instrument or other execution against the Property or acceptance of a deed in lieu of foreclosure.

16.    Subordination. The rights of Lender under this Security Instrument (including, without limitation the rights of the Lender to any Proceeds) are subject and subordinate to the rights of any holder of any Senior Mortgage, as the same may be extended, modified or amended by any document or instrument from time to time. Upon Borrower's written request, Lender agrees to promptly enter into such subordination and/or intercreditor agreement(s) with the holder of any Senior Mortgage, in commercially reasonable form and substance, as may be requested by Borrower or the holder of any such Senior Mortgage from time to time (each, a "**Subordination Agreement**"). For purposes of clarification, it is the intention of the parties hereto that the existence of this Security Instrument shall not in any way hinder Borrower from utilizing the Property as security for any indebtedness refinancing the mortgage(s) encumbering the Property on the Effective Date, without any limitation on the dollar amount thereof. For the avoidance of doubt, Any applicable standard form of document requested by a Federally or State chartered and/or FDIC Member bank or financial institution shall be deemed commercially reasonable. Also for purposes of clarification, any such form of subordination and/or intercreditor agreement reasonably requested by any holder of a mortgage listed on Exhibit B shall be executed and delivered by the Lender on or prior to the date of this Security Agreement.

17.    Covenant Running with the Land. Any act or agreement specified herein to be done or performed by Borrower shall be construed as a covenant running with the land and shall be binding upon Borrower and its successors and assigns as if each had personally made such agreement, provided that such covenants shall terminate upon satisfaction of this Security Instrument or release of this Security Instrument (as to the part of the Property released).

18.    Amendment. Any amendment, modification, consent or waiver which may be hereafter requested by Borrower or otherwise required must be in writing and signed by both Borrower and Lender.

19.    Headings. The headings of sections have been included in this Security Instrument for

Instrument 34   VOLUME PAGE
069   92

convenience of reference only and shall not be considered in interpreting this Security Instrument.

20.     Severability. If any provision of this Security Instrument shall be held for any reason to be invalid, illegal or unenforceable, such impairment shall not affect any other provision of this Security Instrument.

21.     Receipt of Copy. Borrower acknowledges receipt of conformed copies of the Note, the Guaranty, and this Security Instrument.

22.     Limitation on Mortgagee's Responsibility. No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the Borrower or any other person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any Tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Mortgagee a "mortgagee in possession.

[REMAINDER OF PAGE IS INTENTIONALLY BLANK]

[SIGNATURE APPEARS ON THE NEXT PAGE]

IN WITNESS WHEREOF, Borrower, intending to be legally bound hereby, has duly executed this Security Interment, under seal, as of the Effective Date.

Witness/Attest:                          **BORROWER:**

By: _____

                                         ISLAND LAKE LANDCO LLC

                                         By: _____
                                         Name: David Shabsels
                                         Title: Manager

By: _____

                                         ISLAND LAKE CAMPCO LLC

                                         By: _____
                                         Name: David Shabsels
                                         Title: Manager

[REMAINDER OF PAGE IS INTENTIONALLY BLANK]

[ACKNOWLEDGEMENT APPEARS ON THE NEXT PAGE]

13

STATE OF NEW JERSEY

:SS

COUNTY OF PASSAIC        ;

On this date, January 13, 2022, before me, the undersigned, a Notary Public for the state and county aforesaid, personally appeared David Shabsels, who acknowledged himself to be a Manager of ISLAND LAKE LANDCO LLC, a Pennsylvania limited liability company, and that he, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the limited liability company by himself as Manager.

My Commission expires: December 10, 2026



Eric S. Ruder, Notary Public

(NOTARIAL SEAL)

ERIC S RUDER
Notary Public - State of New Jersey
Commission # 50179928
My Comm. Expires Dec. 10, 2026

STATE OF NEW JERSEY            :

:SS

COUNTY OF PASSAIC            :

On this date, January 13, 2022, before me, the undersigned, a Notary Public for the state and county aforesaid, personally appeared David Shabsels, who acknowledged himself to be a Manager of ISLAND LAKE CAMPCO LLC, a Pennsylvania limited liability company, and that he, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the limited liability company by himself as Manager.

My Commission expires: December 10, 2026

Eric S. Ruder, Notary Public

ERIC S RUDER
Notary Public - State of New Jersey
Commission # 50179928
My Comm. Expires Dec. 10, 2026

(NOTARIAL SEAL)

[REMAINDER OF PAGE IS INTENTIONALLY BLANK]

[CERTIFICATION APPEARS ON THE NEXT PAGE]

14

The address of the within named Lender is:

Sports & Arts Center at Island Lake, Inc.
1540 Broadway
New York, NY 10036-4086

By: _____
      On behalf of the Lender


[REMAINDER OF PAGE IS INTENTIONALLY BLANK]

Instrument                        VOLUME PAGE
6069    96

# EXHIBIT "A"

# Legal Description

Instrument
VOLUME   PAGE
069      97

**AS TO PARCEL NO. 23-0-0131-0016.0002, Sports & Arts Center at Island Lake, Inc.:**

PARCEL I

ALL that certain piece or parcel of land situate in the Township of Scott, County of Wayne and Commonwealth of Pennsylvania, bounded and described as follows:

BEGINNING at a corner in the center of Legislative Route 63059 leading from Shehawken to Scott Center, said corner being in the southerly line of lands of Edward Dix, thence from the point of beginning and continuing along the center of Legislative Route 63059 the following four (4) courses and distances:

(1)  S 7  deg  43 min  W   160.25 feet
(2)  S 7  deg  50 min  W    98.75 feet
(3)  S 9  deg  00 min  W   141.55 feet
(4)  S 9  deg  55 min  W   195.44 feet to the northeasterly corner of lands of Thomas Doherty; thence along lands of Thomas Doherty, the following four (4) courses and distances:
(1)  S 71  deg  37 min  W  166.57 feet
(2)  S 67  deg  47 min  W  342.85 feet to an iron pin corner
(3)  S 14  deg  32 min  W  473.51 feet to an iron pin corner
(4)  S 89  deg  56 min  E  484.84 feet to a corner in the center of L.R. 63059; thence continuing along the center of L.R. 63059, the following seventeen (17) courses and distances:
(1)  S 8   deg  22 min  W  165.74 feet
(2)  S 7   deg  17 min  W  122.81 feet
(3)  S 6   deg  35 min  W  127.12 feet
(4)  S 6   deg  21 min  W  122.65 feet
(5)  S 6   deg  04 min  W  119.58 feet
(6)  S 5   deg  49 min  W  129.97 feet
(7)  S 5   deg  37 min  W  116.36 feet
(8)  S 5   deg  49 min  W  120.31 feet
(9)  S 5   deg  24 min  W  127.59 feet
(10)  S 8   deg  13 min  W  121.91 feet
(11)  S 14  deg  59 min  W   54.50 feet
(12)  S 17  deg  38 min  W   50.72 feet
(13)  S 20  deg  42 min  W   61.70 feet
(14)  S 21  deg  56 min  W   55.98 feet
(15)  S 22  deg  00 min  W   34.11 feet to the intersection of Township Road 781
(16)  S 22  deg  35 min  W   37.21 feet
(17)  S 27  deg  26 min  W   82.23 feet to the northeasterly corner of lands of Lois Westgate; thence along lands of Lois Westgate the following three (3) courses and distances:
(1)  N 62  deg  34 min  W   75.0 feet
(2)  S 27  deg  26 min  W  100.0 feet
(3)  S 62  deg  34 min  E   75.0 feet to a corner in the center of L.R. 63059; thence continuing along the center of L.R. 63059 the following four (4) courses and distances:
(1)  S 28  deg  15 min  W   77.45 feet
(2)  S 26  deg  35 min  W   83.25 feet
(3)  S 26  deg  52 min  E  100.00 feet
(4)  S 24  deg  24 min  W   42.90 feet to a corner of lands to be retained by Theodore Giresi; thence along lands of Theodore Giresi, N 63 deg 09 min W 299.0 feet to a high water line; thence along the high water line S 54 deg 44 min W 245.1 feet to a corner of lands of Edward Travis; thence along lands of Edward Travis N 11 deg 52 min W 2194.5 feet to an iron pin and N 15 deg 04 min W 1386.0 feet to an iron pin and stones corner in line of lands of the aforementioned Edward Dix; thence along lands of

Edward Dix S 81 deg 58 min E 1964.18 feet to the place of BEGINNING.

Grantors also provide herein that a certain right-of-way easement excepted and reserved as part of a 4.3 acre parcel is and forevermore shall be terminated due to the fact that the aforementioned 4.3 acre parcel has since been conveyed to a third party.

PARCEL II

ALL THAT CERTAIN property located in Scott Township, Wayne County, Pennsylvania, being any and all property lying westerly of the westerly line of the George Simms Warrant and the most northeasterly line provided for in a description in a deed conveying property from the Grantors to ILC Holding, L.P., the bearing and distance of said line being South 10 degrees 08 minutes 06 seconds East 1018.06 feet, and the prolongation of the same in a northwesterly direction along lands now or formerly of Jeffrey M. Jancarek, et al (Deed Book 467, page 1168) and lands now or formerly of Thomas J. Toton, Jr. (Deed Book 467, page 1164), of 1176.44 to an iron pin corner found, being a triangular parcel of land with the easterly and westerly sides described aforesaid and the southerly side along a lot and/or parcel of land now or formerly in the tenure of John and Maria Anna Cantone (Deed Book 455, page 337) and containing an undetermined amount of land, all to be identified on a map to be filed in conjunction with the conveyance from Travis to ILC Holding, L.P.


**AS TO PARCEL NO's. 23-0-0131-0022, 23-0-0131-0021 & 23-0-0131-0016, MBR Land Development Corp.:**

ALL THOSE CERTAIN pieces or parcels of land lying, situate and being in the Township of Scott, County of Wayne and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

PARCEL I

BEGINNING at a point in the center of the highway leading from Shehawken to Scott Center known as State Highway Route No. 63059, and being in the northerly line of the Eden Stanton Farm; thence along the same following the present line fence part of which is an old stone wall north 77 degrees 30 minutes west about 600 feet to a corner in edge of the old mill pond, known as the Tallman or Henry Stanton Mill Pond; thence about north 13 degrees West 890 feet to a point on the westerly side of said pond and in line of Edward and Harry Travis, Jr., formerly Harry Travis, Sr.; thence along the same about North 17 degrees 30 minutes west about 2525 feet to a corner a hard maple tree in line of Edward Dix; thence along the same, South 81 degrees East 2075 feet to the center said above mentioned road; thence along the same, South 5 degrees West 599 feet to a corner center said road in line of one Dorothy formerly Austin Haynes, said point being opposite the end of an old line wall; thence along the same North 70 degrees 30 minutes West 555 feet to a stones corner; thence south 3 degrees 15 minutes west 421 feet; thence south 80 degrees east 434 feet to a point center said road; thence along same south 1 1/2 degrees 30 minutes 1295 feet and south 24 degrees 30 minutes west 1151 to the place of BEGINNING.

ALSO EXCEPTING AND RESERVING 7,500 square feet of land conveyed by Stephen Cifersky, et. ux., to Leo E. Stanton, et. ux. by deed dated September 28, 1967 and such rights as set forth therein, which deed was recorded in Wayne County Deed Book 240, Page 471.

PARCEL II

BEGINNING at a point in the center of the State Road from Shehawken to Scott Center, said point marked with an iron pipe on the East side of highway and being 93.2 feet toward Shehawken from the southwest

corner of the foundation of the house of Leo Stanton; thence along center of highway, North 24 degrees East 209 feet to an iron pipe corner; thence still along land of said Stanton, south 24 degrees west 209 feet to an iron pipe corner; thence still along other land of Leo Stanton, north 75 degrees West 209 feet to the place of BEGINNING.

PARCEL III

First (Tract): BEING a part of the George Sims tract bounded and described as follows:

BEGINNING at a post and stones the southeast corner of what is called the Holton lot running thence South sixty-six and one-half degrees west eighty-eight perches to a post and stones at the margin of the mill pond; thence south 30 degrees west nineteen perches to a post and stones; thence south eighty-five degrees east one hundred and eighty-two perches to a maple tree corner in the line of Chas. Roberts land; thence along said line north 23 1/2 degrees west 180 perches to a post and stones corner on the margin of the Island Pond; thence along the margin of said Pond in a westerly direction to a post and stones in line of the Holton lot; thence south 23 1/2 degrees east to the place of BEGINNING.

Second (Tract): BEGINNING at a corner of the public road leading to Balls Eddy; thence south 86 ½ degrees west along the original line in the warrantee name of George Sims 144 perches to a beech tree corner; thence south 25 ½ degrees east along the original line 84 perches to land conveyed to S. E. Stanton to a post and stones corner; thence east 25 ½ degrees north along line of S. G. Stanton back to the public road 95 perches along said public road as it runs 37 perches to the place of BEGINNING.

Third (Tract): Part of the George Sims tract and conveyed by John H. Gould to H.D. Williams and by said H.D. Williams to George H. Williams, except so much as was conveyed by George H. Williams to S.E. Stanton, the same being part of tract of land no. 94 in the warrantee name of George Sims, bounded as follows:

BEGINNING in the southwest line of said lot of a corner near the Tallman Mill Pond; thence north 27 degrees west 133 rods to a corner; thence north 63 degrees east 80 rods to a corner; thence south 27 degrees east 133 rods to a corner; thence south 63 degrees west 80 rods to the place of BEGINNING.

EXCEPTING AND RESERVING a certain piece of land commencing at the Island Pond at a corner of T.W. Richmond's land; thence south 23 1/2 degrees east 80 perches to a maple and stones corner; thence north 85 degrees west about 80 perches to a post and stones in said line; thence north or nearly so back to said Island Pond to a stones corner; thence along said pond to the place of BEGINNING. (Conveyed to Leroy D. Stanton, recorded in Deed Book 53, Page 166)

Fourth (Tract): BEGINNING at a corner in the southwest line of a tract of land granted to George Sims by the Commonwealth of Pennsylvania near the Tallman Hill Pond, and running thence north 63 degrees east 80 rods, thence north 27 degrees west 12 rods west 44 rods to a basswood tree on the bank of the outlet of the Island Pond, thence along said Mill Pond at high water mark to the southwest line of the aid George Simms tract; and thence to the place of BEGINNING. (Conveyed to Sidney F. Stanton by George H. Williams, et ux, recorded in Deed Book 29, Page 657)

ALSO excepting and reserving therefrom the following tracts of land, to wit;

Lot consisting of 4 acres and 62 perches which S. E. Stanton and wife by deed dated May 1, 1879 recorded in Deed Book 57, Page 7, granted and conveyed to A.W. Dix.

One lot sixty by sixty-five feet which Elihu Haynes, et. ux. by deed dated February 10, 1921 and recorded

in Deed Book 115 Page 444, granted and conveyed to Berton Smith.

Also a lot consisting of two tracts of land which Elihu Haynes et. ux. by deed dated May 14, 1923, recorded in Deed Book No. 120, Page 29, granted and conveyed to Irving Dix.

ALSO one lot which Elihu Haynes by deed dated April 15, 1929, recorded in Deed Book No. 130, Page 585, granted and conveyed to Andrew Hokeson.

EXCEPTING AND RESERVING however to the Grantors, their heirs and assigns out of the above described premises the lands conveyed by Stephen Cifersky, et. ux. by deed dated the 28th day of September 1967 and intended to be recorded. Conveying 7500 square feet be the same more or less.

ALSO excepting and reserving to the former Grantors their heirs and assigns the following two pieces or parcels of land.

Parcel I: ALL that certain parcel of land situate in the Township of Scott, County of Wayne and Commonwealth of Pennsylvania, bounded as follows:

BEGINNING at a point in the center of the State Road from Shehawken to Scott Center, said point marked with an iron pipe on the East side of the highway and being 93.2 feet toward Shehawken from the Southwest corner of the foundation of the house of Leo Stanton; thence along center of highway north 24 degrees east 209 feet to an iron pipe on east side of highway to mark the line; thence along other land of Leo Stanton South 75 degrees east 209 feet to an iron pipe corner; thence still along land of said Stanton South 24 degrees West 209 feet to an iron pipe corner; thence still along other land of Leo Stanton, North 75 degrees West 209 feet to the place of BEGINNING.

PARCEL II: BEGINNING at a point in the Shehawken to Scott Center Highway on the north side of the Out Lot Creek; thence along said highway 25 feet; thence following along the southerly side of lot owners road about 300 feet or to the westerly shore of Island Lake, thence along the shore southerly 60 feet to said Out Lot Creek; thence along the said creek westerly to center of said Shehawken to Scott Center Highway, the place of BEGINNING.

ALSO EXCEPTING AND RESERVING to the Grantees their heirs and assigns, the exclusive right to use so much of the waters of Island Lake, for boating, fishing and bathing as lie in the area bounded on the one side by the shoreline of the above described property; on the opposite side by a line parallel with and 150 distant from said shoreline, and on the two remaining sides by lines extending from points on the shoreline where the side lines of the above described property meeting the margin of the lake to the line 150 from and parallel to the shoreline, and if projected, would coverage in the center of the lake.

EXCEPTING AND RESERVING therefrom the island or islands situate within the boundaries of the above mentioned Island Lake.

EXCEPTING AND RESERVING however, three separate parcels therefrom:

1. Approximately an acre of land upon which is located the residence of the Grantors.
2. 7,500 square feet being the lot across the road.
3. The lot of land between the outlet creek and a private road which lot has 25 feet frontage on the road and sixty feet frontage on the lake, together with all the lake rights conveyed to the former Grantors by Helen M. Oakes, as aforesaid.

EXCEPTING AND RESERVING all rights of way for power lines, rights in Island Lake conveyed to Irving Dix recorded in Wayne County Deed Book 141, Page 516 and to Helen K. Oakes in Deed Book 179, Page 5 and such rights were conveyed to Charles W. Klein on August 29, 1958 recorded in Deed Book 200, Page 358.

EXCEPTING AND RESERVING all that certain parcel of property containing 89.40 acres, more or less, which was conveyed to C. Richard Owens and Karen Owens by deed dated August 19, 1984 and recorded at Deed Book 417, Page 1064.

**AS TO PARCEL NO. 23-0-0131-0020.0001, MBR Land Development Corp.:**

ALL that certain piece or parcel of land, situate, lying and being in the Township of Scott, County of Wayne and State of Pennsylvania, bounded and described as follows:

BEGINNING at a point being a spike near the center of the intersection of Legislative Routes 63059 and Township Road T-781; thence along the center of Township T-781 South 80 degrees 17 minutes East 358.17 feet to a point being a spike in the center of said Township Road; thence on a course of North 9 degrees 43 minutes East and along other land of the Grantor 229.06 feet to a stake being the common corner of the land herein conveyed, other lands of the Grantor and land now or formerly of Burton Smith; thence along land now or formerly of Burton Smith North 77 degrees West 323.74 feet to a spike near the center of Legislative Route 63059; thence through Legislative Route 63059 South 17 degrees 33 minutes West 250 feet to the place of BEGINNING.

Excepting and Reserving therefrom for use in common by the Grantor, Grantees, their heirs and assigns, a dirt road 25 feet in width adjoining the northeasterly boundary of the land herein conveyed and running from Legislative Route 63059 to other lands of the prior Grantor.

**AS TO PARCEL NO. 23-0-0131-0023, MBR Land Development Corp.:**

PARCEL I: All that certain piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Township of Scott, County of Wayne and Commonwealth of Pennsylvania, bounded and described according to a plan of survey made by George E. Ferris, R.S., dated February 23, 1965, as follows:

BEGINNING at a pipe in Township Road 781 where said Road abuts the Northwestern corner of property of A. Murphy; thence along the same and along land of Earl Alpha, South 18 degrees 50 minutes East 2645 feet to a point in line of land of C. Allan; thence partially along the same South 71 degrees 30 minutes West 860 feet to a post and stones, a corner of
land of E. Travis; thence along the same North 18 degrees 20 minutes West 1515 feet to a point; thence still along the same North 81 degrees 45 minutes West 1372 feet to a point; thence North 00 degrees 10 minutes East 247 feet to a point; thence North 03 degrees East 400 feet to a point; thence North 78 degrees 35 minutes West 372 feet to a point; thence North 02 degrees 20 minutes West 222.50 feet to a point in Township Road 781; thence in and along the same South 78 degrees 15 minutes East 393 feet to a point; thence leaving said Road, North 03 degrees East 378 feet, mor or less, to the mean high waterline of Island Lake; thence Eastwardly and Northwardly along the mean high waterline of Island Lake to the southern boundary line of land of Edward Dix, North 71 degrees 30 minutes East 500 feet more or less, to stones; thence still along land of Edward Dix, North 18 degrees 30 minutes West 1459 feet to a point in line of land of Robert Shelly; thence along the same South 80 degrees 00 minutes East 1630 feet to stones; thence still along land of Robert Shelly, South 18 degrees 45 minutes East 1445 feet to a point in Township Road 781; thence in and along the same the 7 following courses and distances: (1) South 89 degrees West 351.080 feet to a point; (2) South 81 degrees 30 minutes West 100 feet to a point; (3) South 74 degrees 00 minutes West 200 feet to a point; (4) South 65 degrees West 200 feet to a point; (5) South

Case 26-16388-CMG   Doc 408-1   Filed 07/08/26   Entered 07/08/26 00:30:34   Desc
Exhibit A   Page 23 of 29

Instrument
Description

VOLUME PAGE
069   102

50 degrees 10 minutes West 325 feet to a point; (6) South 44 degrees West 134.30 feet to a point; (7) South 57 degrees 30 minutes West 200 feet to a pipe, the place of BEGINNING.

PARCEL II: ALSO, the Grantors herein release and quit claim to the said Grantee, its successors and assigns, ALL THAT CERTAIN interest in real estate located in the Township of Scott, County of Wayne and State of Pennsylvania, described as follows: ALL that part of Warranty Lot 94 in the name of George Simm, which is covered by the waters of Island Lake and also includes the islands in the said lake. The said land being an area of 35.8 acres, more or less, and being bounded by the margin of the said Island Lake, along lands nor or formerly of Charles Buhling, Irving S. Dix and others.

The exclusive right to use so much of the waters of Island Lake for boating, fishing, and bathing as lie in the area bounded on the one side by the shore line of the property of Charles W. Klein and Miriam C. Cline, his wife, David H. Klein and Ruth B. Klein, his wife and Norman S. Klein as more fully set forth in deed dated June 22, 1951 and recorded in Wayne County Deed Book 178 page 170; on the opposite side by a line parallel with 150 feet distant from said shore line, and on the two remaining sides by lines extending from points on the shore line where the side lines of the above described property meet the margin of the lake to the line 150 feet from and parallel to the shore line, and if projected, would converge in the center of the lake.

ALSO to the Grantee, its successors and assigns, the undivided one-half interest in and to the Island or Islands situate within the boundaries of the above mentioned Island Lake.

TOGETHER with the right to use the interior waters of Island Lake 150 feet from the shore line thereof in common with others for boating, fishing and bathing; and with the privilege of taking water from and cutting ice from said lake for domestic purposes only. Also together with an undivided one-half interest in and to the land lying under the water of Island Lake, Such ownership, however is limited to the actual land lying under the waters of the lake and does not in any way effect the enjoyment of the use of the surface thereof-or the water constituting Island Lake.

PARCEL III: ALL that certain property located in Scott Township, Wayne County, Pennsylvania, being triangular pieces of property located southerly and westerly to lines 53 and 54 on the map to be filed in conjunction with the conveyance from Travis to ILC Holding, L.P.

**AS TO PARCEL NO. 23-0-0131-0007:**

ALL THOSE CERTAIN pieces or parcels of land lying, situate and being in the Township of Scott, County of Wayne and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

PARCEL ONE: BEGINNING at a stake and stones at the southwest corner of lands described in a deed to Snell (DB 239, P. 566) said point is further described as being in the easterly line of lands described in a deed to Zito (DB 354, P. 307); thence from said place of beginning South 78 degrees 48 minutes East 933.5 feet along the line of said lands of Snell to a point, thence South 11 degrees 12 minutes West 48.5 feet along the line of a parcel described in a deed to Eleanor P. Jones (DB 136, P. 176) to a point; thence South 35 degrees 26 minutes East 72.10 feet continuing along the line of said Jones parcel to a point; thence North 26 degrees 25 minutes East, 101.5 feet still continuing along the line of said Jones parcel to a point in the line of the aforesaid lands of Snell; thence South 78 degrees 48 minutes East 50.8 feet along the line of said lands of Snell to an iron pipe at the northwest corner of a parcel described in a deed to Lawrence (DB 292, P. 1057); thence South 11 degrees 42 minutes West, 1051.65 feet along the line of said Lawrence parcel, to and along the line of parcel described in a deed to Oppelt (DB 331, P. 1129); thence North 78 degrees 22 minutes West 57.4 feet to a pile of stones; thence North 76 degrees 36 minutes West 955.1 feet along the line of lands described in a deed to Island Lake Camp, Inc. (DB 164, P.

576) to a pile of stones; thence North 08 degrees 48 minutes East 1015.3 feet to and along the aforesaid line of lands of Zito to the point or place of BEGINNING.

SUBJECT to any easement of record to public utilities.

PARCEL TWO: BEGINNING at an iron pin at the most westerly corner of a parcel described in a deed to Oppelt (DB 331, p. 1129) said point also being the most westerly corner of land described in a deed to Torres (DB 227, P. 1165) said point of beginning also being at the terminus of course #6 of the description of Parcel One above; thence from said point of beginning South 17 degrees 20 minutes 44 seconds East 688.13 feet along the line of said Torres parcel to a point at the southwest corner thereof; thence continuing on the same South 17 degrees 20 minutes 44 seconds East for a distance of 753.42 feet to point in the centerline of traveled way of Township Road 655; thence North 87 degrees 52 minutes West 53.14 feet along said centerline of traveled way to a point; thence North 17 degrees 20 minutes 44 seconds West, 1452.06 feet along the line of lands of Island Lake Camp, Inc. (DB 164, P. 576) to a pile of stones at the terminus of course #7 of the above described 24.50 acre parcel, be the same more or less; thence South 77 degrees 55 minutes 20 seconds East, 57.4 feet along the southerly line of said 24.50 acre parcel, more or less, to the point or place of BEGINNING.

UNDER AND SUBJECT to the rights in others to use the 1.66 acre parcel for purposes of ingress, egress and regress to adjoining properties.

EXCEPTING all that portion of the above described 1.66 acre parcel, be the same more or less, now used or previously conveyed for public highway purposes.

SUBJECT to any easements of record to public utilities.

See Wayne County Map Book 40, page 62.

**AS TO PARCEL NO's. 23-0-0131-0037 & 20-0-0131-0037.A, ILC Holding, L.P.:**

ALL those certain pieces, parcels or tracts of land lying, situate and being partly in the Township of Scott and partly in the Township of Preston, County of Wayne and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

THIS DEED/INDENTURE, Intends to transfer title to lands identified, depicted and setforth on Wayne County Tax Map No. 131, as Taxable Parcels 15.A, 37 and 37A.

THIS DEED/INDENTURE, ALSO, intends to describe the entire premises herein conveyed by means of a continuous perimeter description. This perimeter description shall "NOT" be construed as a METHOD which shall unsubdivide and/or consolidate EXISTING deed lots/parcels/tracts. The premises herein conveyed, are more particularly described, on the basis of a recent survey, as follows, to wit:

BEGINNING at a railroad spike corner set, located IN the center of the cartway of State Route 4037/Pa. L.R. 63059, AT the intersection of the aforesaid public highway, WITH a roadway (Legal status and right of way width, NOT conclusively determined), identified as a 50 (FIFTY) FOOT PRIVATE ROAD, as depicted and set forth on a certain plan/plat, recorded in Wayne County, Map Book Volume 68 at Page 99 (Also, for identification, SEE: M.B. 61, P. 106 – PRIVATE ROAD, FORMERLY TOWNSHIP ROAD 6 and M.B. 62, P. 24 – PRIVATE ROAD); thence, departing from said public highway, and GENERALLY along the center of the cartway of the aforesaid 50 (FIFTY) FOOT PRIVATE ROAD, along the northerly bounds of lands of Gilbert and Karen Loscig (D.B. 514, P. 1079; M.B. 68, P. 99 – LOT 1), the following 13 (thirteen) chord courses and distances (As Numbered On Plan/Plat – Note: Number Reference –

Typical herein):
1. North 79 degrees 36 minutes 00 seconds West     199.21 feet
2. North 79 degrees 36 minutes 00 seconds West      28.40 feet
3. North 85 degrees 16 minutes 00 seconds West      64.00 feet
4. North 82 degrees 39 minutes 00 seconds West     209.78 feet
5. North 73 degrees 25 minutes 00 seconds West      59.21 feet
6. North 44 degrees 37 minutes 00 seconds West      78.63 feet
7. North 28 degrees 03 minutes 00 seconds West      51.09 feet
8. North 69 degrees 09 minutes 00 seconds West      86.60 feet, crossing the outlet of a lake/pond
9. North 62 degrees 31 minutes 00 seconds West      81.12 feet
10. North 70 degrees 12 minutes 00 seconds West     153.77 feet
11. North 78 degrees 23 minutes 00 seconds West     122.97 feet
12. North 58 degrees 31 minutes 00 seconds West      83.12 feet and
13. North 39 degrees 09 minutes 00 seconds West     04.985 feet to a point or corner; thence, through the
bounds of said PRIVATE ROAD, 14. North 86 degrees 53 minutes 00 seconds East 31.56 feet to an iron
pipe corner set, located on the easterly side of said roadway and being the southwest corner of lands of
Jeffrey M. Jancarek & Stephen F. Jancarek (D.B.
467, P. 1168; M.B. 62, P. 24 – LOT 1); thence, departing from the easterly side of said roadway and
along the southerly bounds of lands of said Jancarek & Jancarek, 15. North 86 degrees 53 minutes 00
seconds East 253.04 feet to an iron pipe corner set, located ON the westerly shore of a lake/pond, AT
high-water mark and being the southeast
corner of lands of the aforesaid Jancarek & Jancarek; thence, along the westerly shore of said lake/pond,
at high-water mark, along the easterly bounds of lands of said Jancarek & Jancarek, the following 3
(three) chord courses and distances:
16. North 11 degrees 42 minutes 39 seconds West     124.82 feet
17. North 16 degrees 42 minutes 16 seconds West      90.41 feet and
18. North 05 degrees 07 minutes 50 seconds West      34.78 feet to a point or corner, being the northeast
corner of lands of the aforesaid Jancarek & Jancarek and being the southeast corner of lands of Anthony
J. & Patricia Dahm (R.B. 802, P. 126: M.B. 62, P. 24 – LOT 2); thence, continuing along the westerly
shore of said lake/pond at high-water mark, along the easterly bounds of lands of said Dahm, the
following 2 (two) chord courses and distances:
19. North 05 degrees 07 minutes 50 seconds West     108.35 feet and
20. North 00 degrees 43 minutes 15 seconds East      91.66 feet to a point or corner, being the northeast
corner of lands of the aforesaid Dahm and being the southeast corner of lands of Peter & Patricia Markey
(D.B. 491, P. 166; M.B. 62, P. 24 – LOT 3); thence, continuing along the westerly shore of said
lake/pond, at high-water mark, along the easterly bounds of lands of said Markey, the following 2 (two)
chord courses and distances:
21. North 00 degrees 43 minutes 15 seconds East      15.95 feet and
22. North 01 degrees 56 minutes 07 seconds West     184.05 feet to a point or corner, being the northeast
corner of lands of the aforesaid Markey and being the southeast corner of lands of Lamar & Jean M.
Benner (D.B. 472, P. 400; M.B. 62, P. 24 – LOT 4); thence, continuing along the westerly shore of said
lake/pond, at high-water mark, along the easterly bounds of lands of said Benner, the following 3 (three)
chord courses and distances:
23. North 01 degrees 56 minutes 07 seconds West      43.83 feet
24. North 13 degrees 26 minutes 49 seconds East      89.27 feet and
25. North 01 degrees 39 minutes 49 seconds East      67.00 feet to a point or corner, being the northeast
corner of lands of the aforesaid Benner and being the southeast corner of residual lands of the aforesaid
Jeffrey M. Jancarek & Stephen F. Jancarek (D.B. 467, P. 1168; M.B. 61, P. 106); thence, continuing
along the westerly/northwesterly shore of said lake/pond, at high-water mark, along the
easterly/southeasterly bounds of lands of said Jancarek & Jancarek, the following 13 (thirteen) chord
courses and distances:

26. North 06 degrees 28 minutes 29 seconds East    44.63    feet
27. North 29 degrees 54 minutes 36 seconds East   134.065   feet
28. North 21 degrees 38 minutes 56 seconds East   115.455   feet
29. North 50 degrees 48 minutes 39 seconds East    79.60    feet
30. North 36 degrees 29 minutes 10 seconds East    78.23    feet
31. North 15 degrees 57 minutes 23 seconds East   146.925   feet
32. North 40 degrees 19 minutes 03 seconds East   220.675   feet
33. North 38 degrees 04 minutes 13 seconds East   177.27    feet
34. North 36 degrees 14 minutes 13 seconds East   173.47    feet
35. North 37 degrees 25 minutes 18 seconds East   119.525   feet
36. North 24 degrees 17 minutes 13 seconds East   154.13    feet
37. North 30 degrees 56 minutes 58 seconds East   113.68    feet and
38. North 34 degrees 51 minutes 19 seconds East   197.385   feet to a point or corner, being the eastern most corner of

lands of the aforesaid Jancarek & Jancarek and being located on the westerly bounds of lands of Sports & Arts Center at Island Lake, Inc. (R. B. 822, P. 096; M.B. 54, P. 10); thence, departing from the northwesterly shore of said lake/pond, at high-water mark, through the waters of said lake/pond and along the westerly bounds of lands of the same, 39. South 10

degrees 08 minutes 06 seconds East 1018.06 feet to an iron pin corner found, located ON the easterly/southeasterly shore of the aforesaid lake/pond, AT high-water mark/line, being the southern most corner of lands of the aforesaid

Sports & Arts Center at Island Lake, Inc. and being a westerly corner of lands of John & Maria Anna Cantone (D.B. 455, P. 337; M.B. 54, P. 10); thence, along the easterly/southeasterly shore of said lake/pond, along the westerly bounds of lands of said Cantone, 40. South 38 degrees 06 minutes 54 seconds West 313.49 feet to a point or corner, being the southwest corner of lands of the aforesaid Cantone; thence, departing from the easterly/southeasterly shore of said

lake/pond and along the southerly bounds of lands of said Cantone, 41. South 77 degrees 02 minutes 06 seconds East 508.00 feet to a P.K. Nail corner found, located within the cartway of the aforementioned State Route 4037/Pa. L.R. 63059; thence, along and within the cartway of the same, 42. South 64 degrees 54 minutes 40 seconds East 00.565 feet to a point or corner, being the northwest corner of lands of Edward I. & Joanne G. Dix (D.B. 385, P. 742; M.B. 47, P. 41); thence, along and within the cartway of the aforesaid public highway, along the westerly bounds of lands of said Dix, the following 4 (four) chord courses and distances:

43. South 30 degrees 33 minutes 34 seconds West   122.71    feet
44. South 27 degrees 58 minutes 09 seconds West    51.49    feet
45. South 26 degrees 55 minutes 59 seconds West    83.42    feet and
46. South 25 degrees 55 minutes 39 seconds West    93.11    feet to a point or corner, being the southwest corner of lands of the aforesaid Dix and being the northwest corner of lands of Edward I. & Joanne G. Dix (D.B. 458, P. 008; M.B. 60, P. 44); thence, continuing along and within the cartway of the aforesaid public highway, along the westerly bounds of lands of said Dix (D.B. 458, P. 008), the following 2 (two) chord courses and distances:
47. South 23 degrees 29 minutes 54 seconds West    67.93    feet and
48. South 20 degrees 12 minutes 59 seconds West    84.65    feet to a point or corner, being the southwest corner of lands of the aforesaid Dix (D.B. 458, P. 008); thence, departing from said public highway and along the southerly bounds of lands of said Dix (D.B. 458, P. 008), 49. South 76 degrees 34 minutes 46 seconds East 949.52 feet to an iron pin corner found, being the southeast corner of lands of said Dix (D.B. 458, P. 008); thence, along the easterly bounds of lands of said Dix (D.B. 458, P. 008), 50. North 11 degrees 46 minutes 54 seconds East 151.00 feet to an iron pin corner set, being the northeast corner of lands of the aforesaid Dix (D.B. 458, P. 008) and being the southeast corner of lands of the aforesaid Dix (D.B. 385, P. 742); thence, along the easterly bounds of lands of said Dix (D.B. 385, P. 742), 51. North 12 degrees 57 minutes 14 seconds East 349.00 feet to an iron pin corner found, being the northeast corner of

lands of said Dix (D.B. 385, P. 742) and being located on the southerly bounds of lands of John & Maria Anna Cantone (D.B. 455, P. 337); thence, along the southerly bounds of lands of the same, 52. South 77 degrees 35 minutes 21 seconds East 476.48 feet to a beech tree corner, being the southeasterly corner of lands of said Cantone and being a westerly corner of lands of MBR Land Development Corp. (D.B. 543, P. 203 – First Described Parcel); thence, along common bounds of lands of said MBR Land Development Corp., the following 2 (two) chord courses and distances:
53. South 79 degrees 00 minutes 54 seconds East   1372.00   feet to an iron pin corner set and
54. South 15 degrees 57 minutes 17 seconds East 1515.00 feet to an iron pin set in stones corner found, being the southern most corner of lands of the aforesaid MBR Land Development Corp. and being located on the northerly bounds of lands of Calvin D. & Kuni M. Holbert (D.B. 225, P. 307 – First Described Parcel); thence, along the northerly bounds of lands of the same, 55. South 73 degrees 44 minutes 30 seconds West 2446.095 feet to an iron pin corner set; thence, 56. North 15 degrees 40 minutes 00 seconds West 01.835 feet to an iron pin corner found, being the eastern most corner of lands of Edward, Jr. & Maureen Travis (R.B. 762, P. 115; M.B. 68, P. 98 – LOT 2); thence, along the easterly bounds of lands of said Travis, 57. North 15 degrees 40 minutes 00 seconds West 200.00 feet to an iron pin corner found, being the northeast
corner of lands of the aforesaid Travis and being the southeast corner of lands of the aforesaid Gilbert & Karen Loscig; thence along the easterly bounds of lands of said Loscig, 58. North 15 degrees 40 minutes 00 seconds West 971.40 feet to an iron pin corner found, being the northeast corner of lands of said Loscig; thence, along the northerly bounds of lands of said Loscig; the following 2 (two) chord courses and distances:
59. North 76 degrees 23 minutes 00 seconds West   251.94   feet to an iron pin corner found and
60. North 78 degrees 55 minutes 00 seconds West   670.60   feet to a P.K. Nail corner found, located within the cartway of the aforementioned State Route 4037/Pa. L.R. 63059; thence, along and within the cartway of the same and continuing along common bounds of lands of said Loscig, 61. North 17 degrees 26 minutes 00 seconds East 30.83 feet to the place of BEGINNING.

CONTAINING, within bounds, a GROSS area of 175.1047 Acres of lands inclusive of that area occupied by; The waters of a lake/pond, public & private roads and utility companies, easements and rights of way AND supporting various improvements located thereon.

EXCEPTING AND RESERVING, HOWEVER, THEREFROM, a certain lot/parcel of land, CURRENTLY in the tenure of, and titled to, Vaughn Orval Buchanan and Diane Marie Buchanan, his wife, by DEED, dated December 14, 1994 and recorded in Wayne County Record Book Volume 996 at Page 345, the following description, of these premises, is pursuant thereto:

ALL that certain piece or parcel of land situate in the Township of Scott, County of Wayne, and State of Pennsylvania, bounded and described as follows, to wit:

BEGINNING at an iron pin on the easterly side of Legislative Route #63059 (now known as State Route 4037); thence along 160 feet in a northerly direction from said iron pin and along the said highway to the center of a driveway between the house and the barn; thence in an easterly direction a distance of 212 feet to an iron pin for a corner; thence in a southerly direction 154 feet to an iron pin for a corner; thence in a westerly direction 195 feet to the iron pin along said highway, being the place of BEGINNING.

These premises, EXCEPTED AND RESERVED, are more particularly described, on the basis of a recent survey, as follows, to wit:

BEGINNING at an iron pipe corner found, located on the easterly side of State Route 4037/Pa. L.R. 63059, said iron pipe corner being located the following 3 (three) chord courses and distances, 2 (two) measured along and within the cartway and 1 (one) measured through the bounds, respectively, of the said

public highway, FROM a railroad spike corner set, located at the intersection of said public highway with a private road, leading westerly:

62. North 18 degrees 00 minutes 05 seconds East     86.225  feet to a masonry nail set
63. North 18 degrees 59 minutes 55 seconds East    118.205  feet to a masonry nail set and
64. South 85 degrees 56 minutes 59 seconds East     17.62   feet; thence, along the easterly side of the aforesaid public highway,
65. North 18 degrees 28 minutes 22 seconds East     160.00  feet to a railroad spike corner set, located within a private driveway; thence, generally, along and within said private driveway,
66. South 82 degrees 47 minutes 03 seconds East     212.00  feet to a point or corner, located on the northeasterly side/edge of the intersection of two private driveways; thence departing from said intersection,
67. South 25 degrees 35 minutes 06 seconds West     154.00  feet to an iron pipe corner found; thence,
68. North 85 degrees 56 minutes 59 seconds West     195.00  feet to the place of BEGINNING.

UNDER AND SUBJECT to an undefined right of way for utility lines along the north side of the existing red shale road
as indicated in the aforementioned deed from Travis to Jancarek.

RELEASING, remising, and quit-claiming to the Grantees and any and all those immediate adjoinders any and all of Grantors' right, title and interest to all those lands or premises situate on the easterly side of a private roadway extending from Plat No. Reference 14 in a northwesterly direction to the term of owner-ship now or formerly of the Grantors, being 25 feet more or less in width, in common with any & all others having any rights of ingress, egress and regress in and/or to this private roadway.

RESERVING, however, to the Grantors, their heirs, successors and assigns, the right to use this 25 foot, more or less, strip of property for ingress, egress and/or regress in and to any other property of the Grantors, in common with others as aforesaid.

**I hereby certify that this document is
recorded in the Recorder's Office of
WAYNE COUNTY, PA
DEBORAH L BATES
RECORDER OF DEEDS**

## EXHIBIT "B"

Mortgage and Security Agreement dated January 13, 2020, to be effective January 18, 2022, from Island Lake Landco LLC to Wayne Bank, securing, among other things, a commercial loan in the principal amount of $900,000.