**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., *et al.*,[1] | Case No. 26-16388 (CMG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF PRIVATE SALE TRANSACTION**

**PLEASE TAKE NOTICE** that, June 4, and June 5, 2026 (collectively, the "Petition Date") the above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

**PLEASE TAKE FURTHER NOTICE** that, on June 26, 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and*

---

[1]   A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD.  The location of Debtor SIMAD Holdings, Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

10353786

*Leases, and (VI) Granting Related Relief* [Docket No. [298]] (the "<u>Bidding Procedures Order</u>"),[2] whereby the Court approved the Private Sale Procedures.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Private Sale Procedures, the SIMAD Debtors propose to sell the Assets associated with Camp Mesorah, located at 325 N. Pond Rd., Guilford, NY 13870 (the "<u>Mesorah Private Sale</u>") to DHAN Masores LLC, or its designee, as successor to Wayne Bank and DIP Lender under the *Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis* [Docket No. 287], via credit bid of its secured claims pursuant to Section 363(k) of the Bankruptcy Code, in the manner described below and in the Proposed Sale Order (as defined below).  Attached hereto as **<u>Exhibit A</u>** is a summary of the key terms of the Private Sale, attached hereto as **<u>Exhibit B</u>** is a copy of the proposed Sale Order (the "<u>Proposed Sale Order</u>"), and attached hereto as **<u>Exhibit C</u>** is a copy of the proposed Asset Purchase Agreement (the "<u>Proposed Asset Purchase Agreement</u>").  The Proposed Sale Order and Proposed Asset Purchase Agreement remain subject to ongoing review and revisions by the Proposed Purchaser and the SIMAD Debtors in all respects.  The Mesorah Private Sale is subject to the satisfaction of all closing conditions set forth in Article VIII of the Proposed Asset Purchase Agreement, including those set forth in Section 8.02. To the extent that there are any material revisions to the Proposed Sale Order and Proposed Asset Purchase Agreement, the SIMAD Debtors will file the revised documents on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Private Sale Procedures, the deadline to object to the Mesorah Private Sale and Proposed Sale Order is **<u>July 27, 2026</u>** (the "<u>Objection Deadline</u>").  Any objection must: (i) be in writing; (ii) state with particularity the legal and factual bases for the objection; and (iii) be filed with the Court and served so as to be actually received by the Objection Deadline by: (a) proposed counsel to the SIMAD Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, NJ 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com); (b) counsel to the Proposed Purchaser, Porzio, Bromberg & Newman, P.C., 5 Sylvan Way, Parsippany, NJ 07054, Attn: Warren A. Martin, Esq. (wjmartin@pbnlaw.com) and Kelly D. Curtin, Esq. (kdcurtin@pbnlaw.com); and (c) the Office of the United States Trustee. If no objections are received by the Objection Deadline, the SIMAD Debtors will submit the Proposed Sale Order to the Court for approval without further hearing.

[*Remainder of page intentionally left blank*]

---

[2]   Capitalized terms sed but not otherwise defined herein have the meaning ascribed to them in the Bidding Procedures Order.

10353786

Dated: July 20, 2026

/s/ *Michale D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:      msirota@coleschotz.com
             wusatine@coleschotz.com
             dbass@coleschotz.com
             fyudkin@coleschotz.com
             dharris@coleschotz.com

*Counsel to the Debtors and
Debtors in Possession*

3

10353786

**Exhibit A**

| Private Sale Notice Information | |
|---|---|
| Assets Being Sold | All Assets, interests, and rights of SIMAD Debtors Mesorahland LLC and Mesorahco LLC (collectively, the "Mesorah Debtors"), as more fully set forth in the Proposed Sale Order and Proposed Asset Purchase Agreement attached hereto as **Exhibit B** and **Exhibit C**, respectively. |
| Seller Debtor(s) | Mesorahland LLC and Mesorahco LLC |
| Proposed Purchaser | DHAN Masores LLC ("Proposed Purchaser"), or its designee |
| Holders of Any Encumbrances | (x) Mizzen Capital LP and Mizzen Capital II, LP[3] and (y) the U.S. Small Business Administration |
| Proposed Purchase Price | Credit bid in the amount of all obligations owing to Buyer under (i) the Existing Loan Documents (as defined in the DIP Consent Order), including all principal, accrued and unpaid interest, fees, costs, and expenses comprised of at least $3,808,362.95, and (ii) the DIP Advance (as defined in the DIP Consent Order [Docket No. 287]), including all principal, accrued and unpaid interest, fees, costs, and expenses comprised of at least $1,800,000 (the "Credit Bid Amount"), plus Assumed Liabilities. |
| Material Economic Terms and Conditions | Pursuant to the terms of the Proposed Sale Order and Proposed Asset Purchase Agreement, the Purchaser has agreed to acquire substantially all assets of the Mesorah Debtors via credit bid pursuant to Section 363(k) of the Bankruptcy Code, free and clear of all liens, claims, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code. In addition to the credit bid, the Purchaser has agreed to assume certain Assumed Liabilities of the |

---

[3] Buyer and Mizzen Capital LP and Mizzen Capital II LP (collectively, the "Junior Secured Lender") have entered into a separate settlement agreement pursuant to which Buyer has agreed to pay the Junior Secured Lender $50,000 and, following the Closing, issue to the Junior Secured Lender a contingent 5% equity interest in Buyer (or its acquisition vehicle), which becomes effective only after Buyer has recovered its invested capital. This settlement agreement is between Buyer and the Junior Secured Lender only, does not involve the Sellers or their estates, and does not constitute additional consideration for the Acquired Assets.

10353786

|  | Sellers. Terms and conditions are set forth in the Proposed Asset Purchase Agreement attached as **Exhibit C**. |
|---|---|
| Any commission, fees, or similar expenses to be paid in connection with such Proposed Transaction | N/A |

5

10353786

## Exhibit B

**Proposed Sale Order**

10353786

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| SIMAD HOLDINGS LTD., *et al*.,[1] | Case No. 26-16388 (CMG) |
| | |
| Debtors. | (Jointly Administered) |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT
BETWEEN DHAN MASORES LLC AND THE MESORAH DEBTORS,
(II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF
MESORAHLAND LLC AND MESORAHCO LLC FREE AND CLEAR OF ALL
LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b),
363(f), AND 363(k), (III) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES PURSUANT TO 11 U.S.C. § 365, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through fourteen (14), is

hereby **ORDERED**.

---

[1]   A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings, Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

10353834

Page 2
Debtors:        SIMAD HOLDINGS LTD., *et al.*
Case No.:       26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

Upon the notice of private sale (the "Private Sale Notice") filed by the above-captioned

debtors and debtors-in-possession (collectively, the "Debtors") on July 20, 2026 [Docket No. ___],

the Asset Purchase Agreement dated as of July 20, 2026 (the "APA"), by and among DHAN

Masores LLC, a New York limited liability company (or its designee) (the "Buyer"), and

Mesorahland LLC and Mesorahco LLC (the "Mesorah Debtors" or "Sellers"), the Bidding

Procedures Order entered on June 26, 2026 [Docket No. 298] (the "Bidding Procedures Order"),

the Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis entered on

June 26, 2026 [Docket No. 287] (the "DIP Consent Order"), any other documents filed in support

thereof, and the Court having considered the Private Sale Notice and any responses or objections

thereto; and the objection deadline of July 27, 2026 having expired; and the Court having held a

hearing (the "Sale Hearing"), if any; and this Court having determined that the legal and factual

bases set forth in the Motion and at the Sale Hearing, if any, establish just cause for the relief granted

herein; and upon all of the proceedings had before this Court; and after due deliberation and

sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.      Jurisdiction and Venue. This Court has jurisdiction over the Debtors' chapter 11

cases, including this matter, pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of

Reference of the United States District Court for the District of New Jersey. This is a core

proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§

1408 and 1409.

10353834

Page 3
Debtors:   SIMAD HOLDINGS LTD., *et al.*
Case No.:   26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

B.      Statutory Predicates.  The statutory predicates for the relief sought herein are Sections 105(a), 363(b), 363(f), 363(k), 363(m), 365, and 1146(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

C.      Notice.  Proper, timely, adequate, and sufficient notice of the Private Sale Notice, the APA, and the Sale Hearing was provided to all parties entitled to notice in accordance with the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including (i) counsel to the Buyer (Porzio, Bromberg & Newman, P.C.), (ii) the Office of the United States Trustee, (iii) all creditors and parties in interest in these chapter 11 cases, (iv) all parties asserting liens on the Acquired Assets, including Mizzen Capital LP, Mizzen Capital II LP, and the U.S. Small Business Administration, (v) all non-debtor counterparties to the Assumed Contracts, and (vi) all applicable governmental authorities.  The Private Sale Notice was filed on July [ ], 2026, and the 7-day objection deadline of July [ ], 2026 expired with no objections filed (or all objections having been resolved, withdrawn, or overruled).  No further or other notice of the Private Sale Notice, the APA, or the Sale Hearing is required.

D.      Sound Business Purpose.  The Debtors have demonstrated a sound business purpose and compelling justification for consummating the sale of the Acquired Assets (as defined in the APA) to the Buyer under 11 U.S.C. § 363(b).  The DIP lender (Buyer) is willing to acquire the property via credit bid, preserving whatever going-concern value exists and relieving the estates of the ongoing carrying costs associated with maintaining an asset operating at a loss.  The Debtors'

10353834

Page 4
Debtors:         SIMAD HOLDINGS LTD., *et al.*
Case No.:        26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
                 Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
                 LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
                 363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
                 Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

---

decision to sell the Acquired Assets outside a plan of reorganization pursuant to the Private Sale

Procedures approved in the Bidding Procedures Order was an exercise of the Debtors' sound

business judgment, is in the best interests of the Debtors, their estates, their creditors, and all parties

in interest, and should be approved.

  E.  Adequate Consideration; Credit Bid.  The consideration provided by the Buyer for

the Acquired Assets constitutes fair and adequate consideration.  The Purchase Price consists of a

credit bid in the aggregate amount of at least $5,608,362.95, comprised of (x) $3,808,362.95 in

prepetition secured indebtedness under that certain Loan Agreement dated August 8, 2017 and all

related loan documents (the "Existing Loan Documents"), and (y) $1,800,000 of DIP Obligations

under the DIP Consent Order [Docket No. 287] (collectively, the "Credit Bid Amount"), plus

assumption of the Assumed Liabilities and payment of the Cure Amounts.  Pursuant to 11 U.S.C.

§ 363(k), the Buyer, as the holder of allowed secured claims against the Mesorah Debtors, is entitled

to credit bid such claims in connection with the sale of the Acquired Assets.

  F.  Arm's Length Transaction; Good Faith Purchaser.  The APA was negotiated,

proposed, and entered into by the Sellers and the Buyer without collusion, in good faith, and from

arm's length bargaining positions.  The Buyer is an existing secured creditor of the Mesorah Debtors

exercising its statutory right to credit bid under 11 U.S.C. § 363(k).  Neither the Buyer nor any of

its Affiliates (as defined in the APA) is an insider of the Debtors as that term is defined in 11 U.S.C.

§ 101(31).  The Buyer is a good faith purchaser of the Acquired Assets within the meaning of 11

U.S.C. § 363(m) and is entitled to all of the protections afforded thereby.  The Buyer has not

engaged in any conduct that would prevent the application of 11 U.S.C. § 363(m).  The APA was

10353834

Page 5
Debtors:        SIMAD HOLDINGS LTD., *et al.*
Case No.:       26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

not entered into for the purpose of hindering, delaying, or defrauding any creditor of the Debtors.

Buyer and Mizzen Capital LP and Mizzen Capital II LP (collectively, the "Junior Secured Lender")

have entered into a separate settlement agreement pursuant to which Buyer has agreed to pay the

Junior Secured Lender $50,000 and, following the Closing, issue to the Junior Secured Lender a

contingent 5% equity interest in Buyer (or its acquisition vehicle), which becomes effective only

after Buyer has recovered its invested capital.  This settlement agreement is between Buyer and the

Junior Secured Lender only, does not involve the Sellers or their estates, does not constitute

additional consideration for the Acquired Assets, and does not detract from the Court's findings in

this paragraph F.

G.      Free and Clear.  The Sellers are the rightful owners of the Acquired Assets.  The

Acquired Assets shall be transferred to the Buyer free and clear of all liens, claims, interests, and

encumbrances (collectively, "Encumbrances") of any kind or nature whatsoever, including without

limitation any Encumbrances of Mizzen Capital LP, Mizzen Capital II LP, and the U.S. Small

Business Administration (SBA), other than Permitted Encumbrances and Assumed Liabilities as

set forth in the APA, pursuant to 11 U.S.C. § 363(f), because in each case one or more of the

conditions set forth in 11 U.S.C. § 363(f)(1) through (5) have been satisfied with respect to each

such Encumbrance.  Specifically, a bona fide dispute exists as to the extent and priority of the junior

liens (per the Interim Cash Collateral Order), satisfying § 363(f)(4); alternatively, all holders of

Encumbrances who did not object to the sale, or whose objections were overruled, are deemed to

have consented to the sale pursuant to § 363(f)(2).  All Encumbrances shall attach to the proceeds

of the sale with the same validity, extent, and priority as existed immediately prior to the sale;

10353834

Page 6
Debtors:        SIMAD HOLDINGS LTD., *et al.*
Case No.:       26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

*provided*, *however*, that because the Transaction is being consummated through a credit bid of the

Buyer's allowed secured claims under 11 U.S.C. § 363(k), there are no cash proceeds of the sale,

and the Buyer's secured claims are satisfied and extinguished in their entirety by application of the

Credit Bid Amount.

H.       No Successor Liability.  The Buyer is not a successor to the Sellers or their estates

by reason of any theory of law or equity and shall not assume or be deemed to assume, or in any

way be responsible for, any liability or obligation of the Sellers or their estates, including without

limitation any bulk transfer law, tax, or theory of successor, transferee, or vicarious liability,

whether known or unknown as of the Closing (as defined in the APA), now existing or hereafter

arising, whether fixed or contingent, and whether asserted or unasserted, with respect to the Sellers,

the Acquired Assets, or any obligation of the Sellers arising prior to the Closing, except as expressly

provided in the APA as an Assumed Liability.  The Assumed Liabilities are limited solely to those

liabilities expressly provided for in the APA; the Buyer does not assume any other administrative

expense claims, priority claims, or tax liabilities of the Sellers.

I.       Assumption and Assignment of Contracts.  The assumption and assignment of the

Assumed Contracts (as defined in the APA) to the Buyer pursuant to Section 365 of the Bankruptcy

Code is integral to the APA, is in the best interests of the Debtors, their estates, and their creditors,

and represents a valid and proper exercise of the Debtors' business judgment.  The Buyer has

demonstrated adequate assurance of future performance under the Assumed Contracts within the

meaning of 11 U.S.C. §§ 365(b)(1) and 365(f)(2).  The Cure Amounts, as determined by the

10353834

Page 7
Debtors:        SIMAD HOLDINGS LTD., *et al.*
Case No.:       26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

Bankruptcy Court and to be paid by the Buyer in connection with the Closing, are sufficient to satisfy all monetary defaults required to be cured under 11 U.S.C. § 365(b)(1)(A).

J.      Transfer Taxes.  The transfer of the Acquired Assets to the Buyer pursuant to this Order and the APA constitutes a transfer under a plan confirmed under Section 1146(a) of the Bankruptcy Code, or alternatively pursuant to Section 363 of the Bankruptcy Code, and is exempt from stamp taxes, transfer taxes, real estate transfer taxes, mortgage recording taxes, and similar taxes under applicable state or federal law.

K.      Private Sale Procedures.  The Transaction was conducted in accordance with the Private Sale Procedures approved under the Bidding Procedures Order [Docket No. 298].  The Private Sale Notice was duly filed on July 20, 2026, and the notice and objection period was completed in full compliance with the requirements of the Bidding Procedures Order.

L.      Legal Authority.  The legal requirements for approval of the sale have been satisfied. The sale is authorized pursuant to 11 U.S.C. §§ 105(a), 363(b), 363(f), 363(k), and 365.

M.      Waiver of Stay.  Good cause has been shown for waiver of the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).  The Transaction should be consummated promptly to preserve the going-concern value of Camp Mesorah.  Immediate effectiveness of this Order is warranted.

**IT IS HEREBY ORDERED THAT:**

1.      Approval of the APA and the Transaction.  The APA, including all exhibits, schedules, and ancillary documents thereto, and the transaction contemplated thereby (the "Transaction"), are hereby approved in their entirety pursuant to 11 U.S.C. §§ 105(a), 363(b),

10353834

Page 8
Debtors:          SIMAD HOLDINGS LTD., *et al.*
Case No.:         26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
                  Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
                  LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
                  363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
                  Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

363(f), 363(k), and 365.  The Sellers are authorized and directed to perform under, consummate, and implement the terms of the APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and consummate the Transaction. This Order is in form and substance reasonably acceptable to the Buyer as required under the APA.

2.      Authorization of Credit Bid.  Pursuant to 11 U.S.C. § 363(k), the Buyer is authorized to credit bid in the amount of all obligations owing to Buyer under (i) the Existing Loan Documents (as defined in the DIP Consent Order), including all principal, accrued and unpaid interest, fees, costs, and expenses comprised of at least $3,808,362.95, and (ii) the DIP Advance (as defined in the DIP Consent Order [Docket No. 287]), including all principal, accrued and unpaid interest, fees, costs, and expenses comprised of at least $1,800,000 (the "Credit Bid Amount"), as the Purchase Price for the Acquired Assets.  The Credit Bid Amount constitutes full satisfaction of all obligations of the Mesorah Debtors owing to the Buyer under the Existing Loan Documents and the DIP Advance (as defined in the DIP Consent Order), and upon the Closing, such obligations shall be deemed satisfied, paid in full, and extinguished.

3.      Transfer Free and Clear.  Pursuant to 11 U.S.C. §§ 363(b), 363(f), and 363(k), the Sellers are authorized and directed to sell, assign, transfer, convey, and deliver the Acquired Assets (as defined in the APA) to the Buyer (or its designee), and the Buyer is authorized to acquire the Acquired Assets, free and clear of all Encumbrances of any kind or nature whatsoever, including without limitation all liens, claims, and encumbrances of Mizzen Capital LP, Mizzen Capital II LP, and the U.S. Small Business Administration, other than Permitted Encumbrances and Assumed Liabilities (as defined in the APA).  All such Encumbrances shall attach to the proceeds of the sale

10353834

Page 9
Debtors:     SIMAD HOLDINGS LTD., *et al.*
Case No.:    26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

with the same validity, extent, and priority as existed immediately prior to the sale; *provided*, *however*, that because the Transaction is being consummated through a credit bid of the Buyer's allowed secured claims under 11 U.S.C. § 363(k), there are no cash proceeds of the sale, and the Buyer's secured claims arising under the Existing Loan Documents and the DIP Advance are hereby satisfied and extinguished in their entirety upon the Closing. To the extent any junior lienholder asserts an interest in the Acquired Assets, such interest is extinguished upon entry of this Order.

4.      <u>Good Faith Finding; Section 363(m) Protections</u>.   The Buyer is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to all of the protections afforded thereby. The reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the sale to the Buyer unless such authorization is duly stayed pending such appeal. The Buyer has acted in good faith in all respects in connection with this proceeding. Neither the Sellers nor the Buyer has engaged in any action or inaction that would cause or permit the sale to be avoided, or costs or damages to be imposed, under 11 U.S.C. § 363(n).

5.      <u>No Successor Liability</u>.   The Buyer shall not be deemed, by operation of law or otherwise, a successor to the Sellers or their estates, and the Buyer shall have no successor, transferee, or vicarious liabilities of any kind or character, whether known or unknown, now existing or hereafter arising, whether fixed or contingent, and whether asserted or unasserted. Without limiting the generality of the foregoing, and except to the extent the Buyer expressly assumes an Assumed Liability under the APA, the Buyer shall not have any liability whatsoever with respect to the Sellers' or their predecessors' businesses or operations, or any liabilities of the

10353834

Page 10
Debtors:      SIMAD HOLDINGS LTD., *et al.*
Case No.:     26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
              Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
              LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
              363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
              Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

Sellers that arise, are based on, relate to, or are in any way attributable to periods prior to the Closing, including without limitation any (a) liabilities on any theory of successor or transferee liability, (b) liabilities arising under any environmental law, (c) liabilities relating to the Debtors' employees, (d) liabilities under any collective bargaining agreement, (e) liabilities under any pension or benefit plan, (f) liabilities arising under any bulk transfer or similar laws, (g) administrative expense claims or priority claims in the Bankruptcy Cases, or (h) liabilities for taxes of the Sellers for any pre-Closing period.

6.      Assumption and Assignment of Assumed Contracts.  Pursuant to 11 U.S.C. §§ 365(a), 365(b), and 365(f), the Sellers are authorized and directed to assume and assign to the Buyer, and the Buyer is authorized to accept the assignment of, the Assumed Contracts listed on Schedule 2.10(a) to the APA, effective as of the Closing.  The Buyer has provided adequate assurance of future performance under the Assumed Contracts within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Anti-assignment provisions in the Assumed Contracts shall not restrict, limit, or prohibit the assumption and assignment of such contracts and do not constitute a breach or default thereunder.  The Buyer's contract designation period under the APA may be extended by the Buyer in its discretion as provided therein.

7.      Cure Amounts.  The Cure Amounts set forth on Schedule 2.10(a) to the APA, or as otherwise determined by the Court, represent all amounts that must be paid to cure all defaults under the Assumed Contracts pursuant to 11 U.S.C. § 365(b)(1).  Upon payment by the Buyer of the Cure Amounts at Closing, all defaults under the Assumed Contracts shall be deemed cured, and non-

10353834

Page 11
Debtors:       SIMAD HOLDINGS LTD., *et al.*
Case No.:      26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

debtor counterparties shall be forever barred from asserting any claim or cause of action against the Buyer arising from any pre-Closing default under the Assumed Contracts.

8.      Transfer Taxes.  Pursuant to 11 U.S.C. § 1146(a), the sale, transfer, and delivery of the Acquired Assets to the Buyer shall not be subject to any stamp tax, transfer tax, real estate transfer tax, mortgage recording tax, or similar tax.  All federal, state, and local governmental agencies and recording offices, including any County Clerk's Office, are directed to accept for recording any and all documents, instruments, or deeds necessary to effectuate and consummate the Transaction, free and clear of any transfer taxes, document stamps, or similar charges.

9.      Buyer Designation Right.  The Buyer is authorized to assign its rights under the APA and this Order to any affiliate or designee of the Buyer (the "Designee") without further order of this Court and without the consent of the Sellers.  Any such Designee shall be deemed a good faith purchaser entitled to all of the protections of 11 U.S.C. § 363(m) and this Order.

10.     Injunction.  All Persons (as defined in 11 U.S.C. § 101(41)) are forever prohibited and enjoined from taking any action against the Buyer (or its Designee), its successors, assigns, properties, or the Acquired Assets to recover any claim, Encumbrance, or interest that such Person had or may have had with respect to the Sellers or the Acquired Assets that is extinguished or otherwise discharged by this Order, except as expressly permitted by this Order or the APA.  This injunction shall specifically apply to, without limitation, Mizzen Capital LP, Mizzen Capital II LP, and the U.S. Small Business Administration with respect to any liens, claims, or interests they may assert against the Acquired Assets.

10353834

Page 12
Debtors:        SIMAD HOLDINGS LTD., *et al.*
Case No.:       26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

11.    Direction to Third Parties.  All entities that are presently, or on the Closing Date may be, in possession of any of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to the Buyer on the Closing Date.  On the Closing Date, the Sellers' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release their Encumbrances on the Acquired Assets, if any, as such Encumbrances may have been recorded or may otherwise exist.  The Sellers shall cooperate with the Buyer during the 90-day period following the Closing Date with respect to transition matters as provided in the APA.

12.    Self-Executing.  The provisions of this Order authorizing the sale and transfer of the Acquired Assets free and clear of all Encumbrances shall be self-executing, and neither the Sellers nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.  If any Person or entity that has filed financing statements, mortgages, mechanics' liens, lis pendens, or other documents evidencing any Encumbrance against the Acquired Assets shall not have delivered to the Buyer at or before Closing, in proper form for filing, termination statements, releases, or instruments of satisfaction, then (i) the Buyer is authorized to execute and file such termination statements, releases, or instruments of satisfaction on behalf of such Person, and (ii) a certified copy of this Order may be filed with any recording office as conclusive evidence of the release of all such Encumbrances.

13.    Recording.  This Order shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, secretaries of state, federal,

10353834

Page 13
Debtors:        SIMAD HOLDINGS LTD., *et al.*
Case No.:       26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
                Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
                LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
                363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
                Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

---

state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or otherwise, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets.  A certified copy of this Order may be filed with the appropriate clerk or recording office and shall constitute conclusive evidence of the free and clear transfer of the Acquired Assets to the Buyer.

14.     <u>Waiver of Stay</u>.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry, and the 14-day stays imposed by such rules are hereby waived.  The Sellers and the Buyer are authorized to close the Transaction immediately upon satisfaction of the conditions to closing set forth in the APA, but in no event later than the Outside Date of July 31, 2026.

15.     <u>Binding Effect</u>.  This Order shall be binding upon (a) the Sellers, (b) all creditors of the Sellers, (c) holders of Encumbrances on the Acquired Assets, (d) all non-debtor counterparties to the Assumed Contracts, and (e) all other parties in interest and their respective successors and assigns, whether or not such parties were served with notice of the Sale Hearing, and (f) any trustees, examiners, or other fiduciaries subsequently appointed in the Sellers' chapter 11 cases or upon a conversion to chapter 7 of any Seller's case. This Order shall inure to the benefit of the Buyer and its successors, assigns, and Designees.

16.     <u>Survival</u>.  The terms and provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any chapter 11 plan in these cases, (b) converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code,

10353834

Page 14
Debtors:        SIMAD HOLDINGS LTD., *et al.*
Case No.:       26-16388 (CMG)
Caption of Order: Order (I) Approving Asset Purchase Agreement Between DHAN Masores LLC and the Mesorah
Debtors, (II) Authorizing the Sale of Substantially All Assets of Mesorahland LLC and Mesorahco
LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b),
363(f), and 363(k), (III) Authorizing the Assumption and Assignment of Certain Executory
Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief

(c) dismissing these chapter 11 cases, or (d) pursuant to which this Court abstains from hearing these cases.  The terms of this Order shall continue in full force and effect notwithstanding any such subsequent order.

17.     Conflicts.  To the extent that any provision of this Order conflicts with any provision of the APA, the terms of this Order shall govern and control.  To the extent that there is any inconsistency between this Order and any other order entered in these chapter 11 cases, the terms of this Order shall govern.

18.     Retention of Jurisdiction.  This Court retains exclusive jurisdiction to (a) enforce and implement the terms and provisions of this Order and the APA, including all amendments thereto and any waivers and consents thereunder, (b) resolve any disputes arising in connection with this Order, the APA, or the Transaction, (c) interpret, implement, and enforce the provisions of this Order, (d) adjudicate any claims or disputes regarding the Cure Amounts, (e) protect the Buyer and its successors, assigns, and Designees against any Encumbrances in accordance with this Order, and (f) enter such further orders as may be necessary or appropriate to implement or effectuate the provisions of this Order.

10353834

## Exhibit C

**Proposed Asset Purchase Agreement**

10353786

# ASSET PURCHASE AGREEMENT

by and among

## DHAN MASORES LLC,

as Buyer;

and

## MESORAHLAND LLC AND MESORAHCO LLC,

as Sellers

**Dated as of July 20, 2026**

10353578
53706719

## TABLE OF CONTENTS

ARTICLE I. DEFINITIONS ....................................................................................................2

ARTICLE II. PURCHASE AND SALE ..................................................................................8
    Section 2.01        Acquired Assets ...............................................................8
    Section 2.02        Excluded Assets ..............................................................10
    Section 2.03        Assumed Liabilities ........................................................11
    Section 2.04        Excluded Liabilities ........................................................11
    Section 2.05        Further Assurances..........................................................12
    Section 2.06        Purchase Price ................................................................12
    Section 2.07        Deposit; Payment of Purchase Price. ...................................13
    Section 2.08        Transfer Taxes ...............................................................13
    Section 2.09        Allocation of Purchase Price............................................13
    Section 2.10        Allocation of Purchase Price............................................13

ARTICLE III. CLOSING .....................................................................................................14
    Section 3.01        Closing .........................................................................14
    Section 3.02        Sellers' Closing Deliverables............................................14
    Section 3.03        Buyer Closing Deliverables ..............................................15

ARTICLE IV. REPRESENTATIONS AND WARRANTIES OF SELLERS ...........................16
    Section 4.01        Organization and Qualification of Sellers............................16
    Section 4.02        Authority of Sellers ........................................................16
    Section 4.03        No Conflicts ..................................................................16
    Section 4.04        Title to Acquired Assets...................................................16
    Section 4.05        Litigation......................................................................16
    Section 4.06        Compliance with Laws; Permits .......................................17
    Section 4.07        Brokers ........................................................................17
    Section 4.08        No Other Representations .................................................17

ARTICLE V. REPRESENTATIONS AND WARRANTIES OF BUYER .................................17
    Section 5.01        Organization of Buyer.....................................................17
    Section 5.02        Authority of Buyer .........................................................17
    Section 5.03        No Conflicts ..................................................................17
    Section 5.04        Sufficiency of Funds .......................................................18
    Section 5.05        Litigation......................................................................18
    Section 5.06        Brokers ........................................................................18
    Section 5.07        No Outside Reliance ........................................................18
    Section 5.08        Adequate Assurances Regarding Executory Contracts.......................18

ARTICLE VI. COVENANTS ................................................................................................18
    Section 6.01        Conduct of Business ........................................................18
    Section 6.02        Access to Information ......................................................19
    Section 6.03        Efforts; Consents.............................................................19
    Section 6.04        Bankruptcy Court Matters.................................................19

i

Section 6.05    Publicity ................................................................................................19
Section 6.06    Confidentiality ........................................................................................20
Section 6.07    Notification of Certain Matters ...............................................................20
Section 6.08    Bulk Transfer Laws..................................................................................20
Section 6.09    Employee Matters ....................................................................................20

ARTICLE VII. TAX MATTERS .................................................................................................21
Section 7.01    Transfer Taxes .........................................................................................21
Section 7.02    Cooperation on Tax Matters ....................................................................21

ARTICLE VIII. CONDITIONS TO CLOSING.............................................................................21
Section 8.01    Conditions to Obligations of All Parties...................................................21
Section 8.02    Conditions to Obligations of Buyer .........................................................22
Section 8.03    Conditions to Obligations of Sellers ........................................................23

ARTICLE IX. TERMINATION.....................................................................................................23
Section 9.01    Termination...............................................................................................23
Section 9.02    Effect of Termination................................................................................24
Section 9.03    Remedies...................................................................................................24

ARTICLE X. MISCELLANEOUS ...............................................................................................25
Section 10.01    Survival....................................................................................................25
Section 10.02    Notices .....................................................................................................25
Section 10.03    Interpretation............................................................................................26
Section 10.04    Severability ..............................................................................................26
Section 10.05    Entire Agreement .....................................................................................26
Section 10.06    Assignment...............................................................................................26
Section 10.07    Amendment and Waiver ...........................................................................26
Section 10.08    Governing Law; Jurisdiction; Service of Process; Waiver of Jury Trial
                 27
Section 10.09    Specific Performance ...............................................................................27
Section 10.10    Counterparts.............................................................................................27
Section 10.11    No Third-Party Beneficiaries....................................................................27
Section 10.12    "As Is, Where Is" Transaction .................................................................27
Section 10.13    No Successor Liability..............................................................................28

Exhibits

Exhibit A      Form of Bill of Sale

Schedules

Schedule 2.10(a)        Assumed Contract List

10353578
53706719

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement") is dated as of July 20, 2026 (the "Effective Date"), and is entered into by and among DHAN Masores LLC, a New York limited liability company (or its permitted designee) ("Buyer") and each of the "Sellers" identified on the signature pages hereto (each a "Seller" and collectively, the "Sellers"). Each of Buyer and Sellers are at times referred to herein individually as a "Party" and together as the "Parties". Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in Article I.

## RECITALS

WHEREAS, on June 4, 2026 and June 5, 2026, Sellers commenced bankruptcy cases which are being jointly administered under Case No. 26-16388 (CMG) (the "Bankruptcy Case") under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, in connection with the Bankruptcy Case, Sellers desire to sell, transfer, convey, assign and deliver to Buyer, all of the Acquired Assets, and Buyer desires to: (i) purchase, acquire and assume all of the Acquired Assets and all of the Assumed Liabilities (and no other liabilities) (each as defined herein); and (ii) consummate such other transactions as are contemplated by this Agreement, in each case upon the terms and conditions set forth in this Agreement (with all such transactions referred to as the "Transaction");

WHEREAS, the Parties intend to effectuate the Transaction through a sale of the Acquired Assets pursuant to Sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey, all on the terms and subject to the conditions set forth in this Agreement and in the Sale Order (as defined herein);

WHEREAS, Buyer's affiliate is the successor in interest to Wayne Bank pursuant to that certain Assignment of Negotiable Instrument dated June 25, 2026, and is the DIP Lender under the *Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis* entered by the Bankruptcy Court on June 26, 2026 (the "DIP Consent Order"), and Buyer intends to consummate the Transaction by credit bidding all or a portion of its secured claims pursuant to Section 363(k) of the Bankruptcy Code;

WHEREAS, Buyer has entered into a separate settlement agreement with Mizzen Capital LP and Mizzen Capital II LP (collectively, the "Junior Secured Lender"), pursuant to which Buyer has agreed to pay the Junior Secured Lender $50,000 and, following the Closing, issue to the Junior Secured Lender a contingent 5% equity interest in Buyer (or its acquisition vehicle), which becomes effective only after Buyer has recovered its invested capital; such settlement agreement is between Buyer and the Junior Secured Lender only, is not part of the Purchase Price or other consideration for the Acquired Assets under this Agreement, and does not involve Sellers or their estates; and

1

10353578
53706719

WHEREAS, Sellers' and Buyer's willingness to consummate the Transaction is subject to, among other things, the entry of the Sale Order by the Bankruptcy Court, and this Transaction constitutes a private sale pursuant to the Private Sale Procedures approved under the Bidding Procedures Order.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I.
## DEFINITIONS

The following terms have the meanings specified or referred to in this Article I:

"Accounts Receivable" means (a) all accounts, accounts receivable, payment intangibles, rights to payment, notes, notes receivable, negotiable instruments, chattel paper, and vendor rebates of Sellers, and (b) any security interest, claim, remedy or other right related to any of the foregoing.

"Acquired Assets" has the meaning set forth in Section 2.01.

"Administrative Claim" means a Claim arising under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code.

"Affiliate" means, with respect to any Person, any other Person that directly or indirectly controls, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

"Agreement" has the meaning set forth in the preamble.

"Alternative Transaction" means any transaction or series of transactions (other than the Transaction) pursuant to which any Person or group of Persons (other than Buyer or any of its Affiliates) directly or indirectly acquires or would acquire any of the Acquired Assets, whether by sale, merger, recapitalization, reorganization, or otherwise.

"Assumed Contract List" has the meaning set forth in 0.

"Assumed Contracts" means those Contracts that have been assigned to and assumed by Buyer pursuant to Section 2.10 and section 365 of the Bankruptcy Code.

"Assumed Liabilities" has the meaning set forth in Section 2.03.

"Assumed Permits" means all Permits, but excluding all Permits to the extent solely related to any Excluded Asset.

10353578
53706719

"Bankruptcy Case" has the meaning set forth in the recitals.

"Bankruptcy Causes of Action" means any and all claims, rights, causes of action, suits, and proceedings, whether known or unknown, arising under chapter 5 of the Bankruptcy Code (including Sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code) or any analogous state or federal law, including all preference, fraudulent transfer or conveyance, and other avoidance claims, rights, and causes of action, together with any and all proceeds, recoveries, and rights to recovery (whether judicial or otherwise) arising therefrom or related thereto, that are or may be asserted by, or on behalf of, the Sellers, their estates, or any trustee, examiner, or other estate representative.

"Bankruptcy Code" has the meaning set forth in the recitals.

"Bankruptcy Court" has the meaning set forth in the recitals.

"Bankruptcy Rules" has the meaning set forth in the recitals.

"Bid Procedures" means the procedures governing the solicitation of bids for the Acquired Assets and, to the extent applicable, the conduct of the Auction, as approved by the Bankruptcy Court pursuant to the Bid Procedures Order.

"Bid Procedures Order" means the order of the Bankruptcy Court dated June 26, 2026 approving the Bid Procedures.

"Business Day" means any day other than a Saturday, Sunday or a day on which commercial banks located in New York, New York are authorized or required by Law to be closed for business.

"Buyer" has the meaning set forth in the preamble.

"Camp" means recreational and/or informal educational programs for Campers during the Camp Season in a communal traditional residential camp environment.

"Camp Business" means the establishment and management of the Camp conducted for Campers during the Camp Season. Such business includes recruitment of Campers, staff, procurement of necessary provisions, lease or ownership of real estate, creation of programs and events and follow-up relations with Campers, prospective Campers, and their parents.  The Camp Business may also include the rental of the facilities of the Camp during periods other than the Camp Season.

"Camp Season" shall mean the months of June, July and August in a specific calendar year.

"Campers" means juveniles and adolescents who attend the Camp.

"Claim" means a "claim" as defined in section 101(5) of the Bankruptcy Code, whether arising before or after the Petition Date.

10353578
53706719

"Closing" has the meaning set forth in Section 3.01.

"Closing Date" has the meaning set forth in Section 3.01.

"Code" means the Internal Revenue Code of 1986, as amended.

"Contract" means any written or oral agreement, contract, lease, sublease, license, sublicense, obligation, promise, undertaking, commitment, or other binding arrangement or understanding.

"Cure Amounts" means all amounts that must be paid and all obligations that must otherwise be satisfied pursuant to Sections 365(b)(1)(A) and (B) of the Bankruptcy Code in connection with the assumption and assignment of the Assumed Contracts pursuant to Section 365 of the Bankruptcy Code, as determined by the Bankruptcy Court.

"Current Employees" means all employees of Sellers employed as of the day before the Closing Date, whether active or not (including those on short-term disability, leave of absence, paid or unpaid, or long-term disability).

"Deposit" has the meaning set forth in Section 2.07(a).

"DIP Advance" means the debtor-in-possession loan made by Buyer to Sellers pursuant to the DIP Consent Order and the Emergency DIP Term Sheet attached thereto.

"DIP Consent Order" means the Consent Order Approving Mesorah Emergency DIP Term Sheet on an Interim Basis entered by the Bankruptcy Court on June 26, 2026 [Docket No. 287].

"Credit Bid Amount" has the meaning set forth in Section 2.06.

"DIP Facility" means any debtor-in-possession credit facility entered into by Sellers in connection with the Bankruptcy Cases.

"Dollars" or "$" means the lawful currency of the United States.

"Domain Names" means Internet electronic addresses, uniform resource locators and alphanumeric designations associated therewith registered with or assigned by any domain name registrar, domain name registry or other domain name registration authority as part of an electronic address on the Internet and all applications for any of the foregoing.

"Effective Date" has the meaning set forth in the preamble.

"Existing Loan Documents" means, collectively, that certain Loan Agreement dated August 8, 2017 by and among Wayne Bank, Mesorahland LLC, Mesorahco LLC, and the other parties thereto, together with all notes, mortgages, security agreements, assignments of rents, guaranties, and other ancillary documents executed in connection therewith, as the same may have been amended, modified, supplemented, or restated from time to time.

4

10353578
53706719

"Encumbrance" means any lien, pledge, security interest, charge, claim, mortgage, deed of trust, option, right of first refusal, preemptive right, restriction on transfer, or other encumbrance of any kind or nature, including but not limited to any and all liens, claims and encumbrances of Mizzen and the Small Business Administration (SBA) as well as any restriction on use, voting, transfer, receipt of income, or exercise of any other attribute of ownership.

"ERISA" means the United States Employee Retirement Income Security Act of 1974.

"Excluded Assets" has the meaning set forth in Section 2.02.

"Excluded Claims" means all (a) rights (including rights of set-off and rights of recoupment), claims, causes of action, lawsuits, judgments, privileges, counterclaims, defenses, demands, right of recovery, rights of set-off, rights of subrogation and all other rights of any kind of the Sellers against (i) directors and officers of Seller, and (ii) third parties solely to the extent arising in respect of any Excluded Asset or Excluded Liability, and (b) Bankruptcy Causes of Action.

"Excluded Liabilities" has the meaning set forth in Section 2.04.

"Final Order" means an Order of the Bankruptcy Court (or any court of competent jurisdiction) as to which the time to file an appeal, motion for rehearing, or writ of certiorari has expired and no appeal, motion for rehearing, or writ of certiorari is pending; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule, may be filed shall not cause an Order not to be a Final Order.

"Former Employees" means all individuals who have been employed by Sellers who are not Current Employees.

"GAAP" means United States generally accepted accounting principles, consistently applied.

"Governmental Authority" means any federal, state, provincial, local, municipal, foreign, or other government, or any department, commission, board, bureau, agency, regulatory authority, instrumentality, or political subdivision thereof, or any court, arbitral body, or similar body of competent jurisdiction.

"Health Plans" means all health plans including, but not limited to, health, dental, life, disability and long-term care insurance.

"Intellectual Property" means, collectively, in the United States and all countries or jurisdictions foreign thereto, (a) all inventions (whether patentable or unpatentable and whether or not reduced to practice), all improvements thereto, and all Patents, (b) all Trademarks, all goodwill associated therewith, and all applications, registrations, and renewals in connection therewith, (c) all moral rights, copyrights and other rights in any work of authorship, compilation, derivative work or mask work and all applications, registrations, and renewals in connection therewith, (d) all trade secrets and confidential business information (including confidential ideas, research and development, know-how, methods, formulas, compositions, production processes and techniques,

5

10353578
53706719

technical and other data, designs, drawings, specifications, customer and supplier lists, pricing and cost information, and business and marketing plans and proposals), (e) Software, (f) all other proprietary and intellectual property rights, (g) all copies and tangible embodiments of any of the foregoing (in whatever form or medium), (h) the exclusive right to display, perform, reproduce, make, use, sell, distribute, import, export and create derivative works or improvements based on any of the foregoing and (i) all income, royalties, damages and payments related to any of the foregoing (including damages and payments for past, present or future infringements, misappropriations or other conflicts with any intellectual property), and the right to sue and recover for past, present or future infringements, misappropriations or other conflict with any intellectual property.

"Inventory" means all of Sellers' now owned and hereafter acquired raw materials and work-in-process therefor and all of Sellers' tangible property used in the operation of the Sellers' business or that are otherwise included in the Acquired Assets and are permitted to be sold and transferred under applicable Law.

"Law" means any federal, state, provincial, local, municipal, foreign, international, or multinational constitution, statute, treaty, rule, regulation, ordinance, order, code, or other similar requirement enacted, adopted, promulgated, or applied by any Governmental Authority.

"Liabilities" means any debt, liability, commitment, or obligation of any kind, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due.

"Material Adverse Effect" means any change, effect, event, occurrence, development, or state of facts that, individually or in the aggregate with all other changes, effects, events, occurrences, developments, or states of facts, (a) has had or would reasonably be expected to have a material adverse effect on the Acquired Assets or the ability of Sellers to consummate the Transaction, or (b) prevents or materially impairs or delays, or would reasonably be expected to prevent or materially impair or delay, the ability of Sellers to consummate the Transaction; provided, however, that in no event shall any of the following, alone or in combination, be deemed to constitute, or be taken into account in determining whether there has been, a Material Adverse Effect: (i) changes in general economic or political conditions or the securities, credit, or financial markets in general in the United States or any other jurisdiction in which Sellers operates; (ii) changes in conditions generally affecting the industries in which Sellers operates; (iii) the announcement or pendency of this Agreement or the Transaction, including the impact thereof on the relationships, contractual or otherwise, of Sellers with employees, customers, suppliers, distributors, partners, or other third parties; (iv) any change in Law or GAAP (or any interpretation thereof) after the date hereof; (v) acts of war (whether or not declared), sabotage, terrorism, military actions, or the escalation or worsening of any of the foregoing; (vi) any natural or man-made disaster, pandemic, epidemic, disease outbreak, or acts of God; (vii) the filing or commencement of the Bankruptcy Cases or any events or circumstances resulting therefrom; (viii) any action taken or omitted to be taken by Sellers at the written request or with the prior written consent of Buyer; (ix) any failure by Sellers to meet any internal or external projections, forecasts, or estimates of revenue, earnings, or other financial metrics (provided that the underlying causes

6

10353578
53706719

of such failure may be taken into account unless otherwise excluded by this definition); or (x) any matter disclosed on the Schedules hereto.

"Order" means any order, judgment, injunction, ruling, writ, assessment, or decree of any Governmental Authority.

"Outside Date" means July 31, 2026; provided, however, that the Outside Date may be extended by mutual written agreement of the Parties.

"Patents" means all letters patent and pending applications for patents of the United States and all countries and jurisdictions foreign thereto and all reissues, reexamined patents, divisions, continuations, continuations-in-part, revisions, and extensions thereof.

"Permits" means all licenses, permits, certificates, approvals, registrations, consents, authorizations, franchises, variances, exemptions, and orders issued or granted by a Governmental Authority.

"Permitted Encumbrances" means (a) Encumbrances arising under this Agreement; (b) statutory liens for current Taxes not yet due and payable or the amount or validity of which is being contested in good faith by appropriate proceedings; (c) mechanics', carriers', workers', repairers', and similar statutory liens arising or incurred in the ordinary course of business for amounts not yet due and payable or the amount or validity of which is being contested in good faith by appropriate proceedings; and (d) zoning, entitlement, conservation restrictions, and other land use and environmental regulations by Governmental Authorities that do not materially interfere with the present use of the applicable asset.

"Person" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity.

"Petition Date" means the dates on which Sellers filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"Purchase Price" has the meaning set forth in Section 2.06.

"Records" means the books, records, information, ledgers, files, invoices, documents, work papers, correspondence, lists (including customer lists, supplier lists and mailing lists), plans (whether written, electronic or in any other medium), drawings, designs, specifications, creative materials, advertising and promotional materials, marketing plans, studies, reports, data and similar materials related to the Camp Business, including without limitation a current schedule of Seller's Campers.

"Sale Hearing" means the hearing, if any, before the Bankruptcy Court to approve the Sale Order.

"Sale Motion" means the motion(s) or notice(s) of private sale filed by Sellers with the Bankruptcy Court seeking entry of the Sale Order.

10353578
53706719

"Sale Order" means an order of the Bankruptcy Court, in form and substance reasonably acceptable to Buyer, entered pursuant to, inter alia, Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, approving and authorizing (a) the sale of the Acquired Assets to Buyer via credit bid pursuant to Section 363(k) of the Bankruptcy Code, free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities), pursuant to Section 363(f) of the Bankruptcy Code, (b) the assumption and assignment of the Assumed Contracts to Buyer pursuant to Section 365 of the Bankruptcy Code, (c) this Agreement and the Transaction, and (d) such other and further relief as is customary for transactions of this type.

"Schedules" means the disclosure schedules delivered by Sellers to Buyer in connection with the execution of this Agreement.

"Seller" or "Sellers" has the meaning set forth in the preamble.

"Software" means all websites, computer software and firmware (including source code, executable code, data, databases, user interfaces and related documentation).

"Tax Return" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto.

"Taxes" means all federal, state, local, and foreign income, profits, franchise, gross receipts, environmental, customs duty, capital stock, severance, stamp, payroll, sales, employment, unemployment, disability, use, property, withholding, excise, production, value added, occupancy, and other taxes, duties, or assessments of any nature whatsoever, together with all interest, penalties, and additions thereto imposed with respect to such amounts.

"Trademarks" means, in the United States and all countries and jurisdictions foreign thereto, registered trademarks, registered service marks, trademark and service mark applications, unregistered trademarks and service marks, registered trade names and unregistered trade names, corporate names, fictitious names, registered trade dress and unregistered trade dress, logos, slogans, Internet domain names, rights in telephone numbers, and other indicia of source, origin, endorsement, sponsorship or certification, together with all translations, adaptations, derivations, combinations and renewals thereof.

"Transfer Taxes" has the meaning set forth in Section 2.08.

"2026 Camp Season" means the Camp Season during calendar year 2026.

## ARTICLE II.
## PURCHASE AND SALE

**Section 2.01  Acquired Assets**.  On the terms and subject to the conditions of this Agreement, at the Closing, Sellers shall sell, assign, transfer, convey, and deliver to Buyer, and Buyer shall purchase, acquire, and accept from Sellers, free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities), other than the Excluded Assets, all of the Sellers' assets, rights, properties of every nature, kind and description, tangible or intangible

8

(including goodwill), whether now existing or hereafter acquired, wheresoever situated, relating to or used or held for use in connection with the Camp Business as currently conducted, including without limitation, the following assets (collectively, the "Acquired Assets"):

(a)     all Accounts Receivable of Sellers as of the Closing;

(b)     all Inventory of Sellers as of the Closing, including all rights of Sellers to receive such Inventory, supplies and materials which are on order as of the Closing;

(c)     all deposits (including, without limitation, deposits in transit, customer deposits and security deposits for rent, electricity, telephone, utilities, Health Plans or otherwise) and other prepaid charges and expenses of Sellers;

(d)     all Assumed Contracts that have been assumed by and assigned to Buyer pursuant to Section 2.10;

(e)     all Intellectual Property owned by Sellers and all of Sellers' rights to use other Intellectual Property;

(f)     all items of machinery, equipment, supplies, furniture and fixtures owned by Sellers as of the Closing;

(g)     all Records related to the Acquired Assets and Assumed Liabilities;

(h)     all goodwill associated with the Acquired Assets, including all goodwill associated with the Intellectual Property owned by Sellers and all rights under any confidentiality agreements executed by any third party for the benefit of any of Sellers to the extent relating to the Acquired Assets and/or the Assumed Liabilities (or any portion thereof);

(i)     all rights of Sellers under non-disclosure or confidentiality, noncompete, or nonsolicitation agreements with current or former employees, directors, consultants, independent contractors and agents of any of Sellers;

(j)     all of the Assumed Permits or all of the rights and benefits accruing under any Permits;

(k)     other than with respect to any insurance proceeds related to, arising out of, or in connection with any directors' and officers' liability insurance policies, the amount of, and all rights to any, insurance proceeds received by any of Sellers after the date hereof in respect of (i) the loss, destruction or condemnation of any Acquired Assets occurring on or after the Closing or (ii) any Assumed Liabilities;

(l)     except for the Excluded Claims, all causes of action, lawsuits, judgments, claims, refunds, rights of recovery, rights of set-off, counterclaims, defenses, demands, warranty claims, rights to indemnification, contribution, advancement of expenses or reimbursement, or similar rights of any Seller (at any time or in any manner arising or existing, whether choate or inchoate, known or unknown, now existing or hereafter acquired, contingent or noncontingent)

9

10353578
53706719

related to the Acquired Assets, to the extent the transfer of the foregoing is effective under applicable non-bankruptcy law;

(m)   all rights under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers, contractors and any other Person related to the Acquired Assets;

(n)   the right to receive and retain mail relating to Accounts Receivable payments and other communications of Sellers and the right to bill and receive payment for services performed but unbilled or unpaid as of the Closing;

(o)   all telephone numbers, fax numbers, e-mail addresses, websites, URLs and internet domain names;

(p)   all real property owned by Sellers, including without limitation the property known as "Camp Mesorah" located at 325 North Pond Road, Guilford, Chenango County, New York, together with all buildings, improvements, fixtures, and appurtenances thereto; and

(q)   all cash and cash equivalents of Sellers;

Notwithstanding anything herein to the contrary, Buyer may, from time to time, remove any Acquired Asset from this Section 2.01 in its sole and absolute discretion until the Closing and elect to treat such Contract, Permit or other asset as an Excluded Asset; provided that no such removal shall result in any adjustment to the Purchase Price.

**Section 2.02   Excluded Assets**.   Notwithstanding anything to the contrary in this Agreement, Sellers shall retain, and shall not sell, assign, transfer, convey, or deliver to Buyer, and Buyer shall not purchase, acquire, or accept from Sellers, any of the following assets of Sellers (collectively, the "Excluded Assets"):

(a)   all of Sellers' certificates of incorporation and other organizational documents, qualifications to conduct business as a foreign entity, arrangements with registered agents relating to foreign qualifications, taxpayer and other identification numbers, seals, minute books, stock transfer books, stock certificates and other documents solely relating to the organization, maintenance and existence of any Seller as a corporation, limited liability company or other entity;

(b)   all Contracts, in each case, other than the Assumed Contracts;

(c)   the Excluded Claims;

(d)   any (1) confidential personnel and medical Records pertaining to any Current Employees or Former Employees to the extent the transfer and disclosure of such information is prohibited by applicable Law, (2) other Records that Sellers are required by Law to retain and (3) any Records or other documents relating to the Bankruptcy Cases that are protected by the attorney-client privilege;

(e)   all Permits, other than the Assumed Permits;

10353578
53706719

(f)    all directors' and officers' liability insurance policies and any proceeds arising out of, or related to, such directors' and officers' liability insurance policies;

(g)    the rights of Sellers under this Agreement;

(h)    all Tax Records of the Sellers;

(i)    all Records related to the Excluded Assets;

(j)    any unused retainers paid by the Sellers to any third party prior to the Closing (for professional services or otherwise) or any amounts remaining in any escrow or similar account used to fund the same; and

(k)    any Claims of any Seller against any of its directors, officers, insiders, or affiliates.

**Section 2.03   Assumed Liabilities**.  On the terms and subject to the conditions of this Agreement, at the Closing, Buyer shall assume and agree to pay, perform, and discharge when due, the following Liabilities of Sellers (collectively, the "Assumed Liabilities"):

(a)    all Liabilities arising under the Assumed Contracts that arise from and after the Closing Date and relate to periods from and after the Closing Date;

(b)    any Liabilities for Taxes of Sellers for any period; provided however, that the amount of prepetition Taxes to be assumed by the Buyer shall be limited to $10,000 in the aggregate;

(c)    any Liabilities on account of valid claims arising under 11 U.S.C. § 503(b)(9) against Sellers for goods received by Sellers in the ordinary course of business within twenty (20) days before the Petition Date; provided, however, that the aggregate amount of such § 503(b)(9) claims to be assumed by Buyer shall not exceed $200,000;

(d)    all Liabilities arising out of unpaid administrative expense claims (other than professional or transaction fees, which are addressed in Section 2.03(g) below)) in the Bankruptcy Cases related solely to Sellers' Camp Business that are attributable to the ordinary course, postpetition operation of Sellers' Camp Business, whether or not such claims were included in the Approved Budget (as defined in the DIP Consent Order);

(e)    any Liabilities that arise out of the operation of the Camp Business that arise from and after the Closing Date and relate to periods from and after the Closing Date;

(f)    all Cure Amounts relating to the assumption and assignment of the Assumed Contracts to Buyer; and

(g)    Liabilities of Sellers on account of professional or transaction fees incurred in the Sellers' Bankruptcy Cases in an amount to be agreed upon between Buyer and Sellers.

11

10353578
53706719

**Section 2.04   Excluded Liabilities**.  Notwithstanding anything to the contrary in this Agreement, Buyer shall not assume or be obligated to pay, perform, or discharge any Liabilities of Sellers other than the Assumed Liabilities (collectively, the "Excluded Liabilities"), including the following:

(a)      any Liability arising under any Excluded Asset;

(b)      any Liability for any claim, action, suit, investigation, or proceeding pending or threatened against Sellers or any of their Affiliates;

(c)      any Liability under any employee benefit plan or relating to any current or former employees, independent contractors, or directors of Sellers;

(d)      any Liability arising out of or relating to any violation of Law by Sellers;

(e)      any indebtedness for borrowed money, including any obligations under the DIP Facility or any other debtor-in-possession financing, and any pre-petition secured or unsecured indebtedness;

(f)      any Liability arising out of or relating to any Excluded Asset;

(g)      any Liability to the extent arising out of or relating to any breach, default, or violation by Sellers prior to the Closing Date under any Contract (other than Cure Amounts);

(h)      any Liability relating to any rejected executory contract or unexpired lease; and

(i)      any other Liabilities of Sellers not specifically included in the Assumed Liabilities.

**Section 2.05   Further Assurances**.  From and after the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the Transaction.

**Section 2.06   Purchase Price**.  The aggregate purchase price for the Acquired Assets (the "Purchase Price") shall be an amount equal to:

(a)      a credit bid in the amount of all obligations owing to Buyer under (i) the Existing Loan Documents (as defined in the DIP Consent Order), including all principal, accrued and unpaid interest, fees, costs, and expenses, and (ii) the DIP Advance (as defined in the DIP Consent Order), including all principal, accrued and unpaid interest, fees, costs, and expenses (collectively, the "Credit Bid Amount");

(b)      the Cure Amounts; plus

12

10353578
53706719

(c)     the assumption of the Assumed Liabilities.

For the avoidance of doubt, the Purchase Price does not include, and is not affected by, any payment or equity interest issued by Buyer to the Junior Secured Lender pursuant to the separate settlement agreement described in the recitals.

**Section 2.07   [Reserved].**

(a)     [Intentionally Omitted.]

(b)     **Payment at Closing**. At the Closing, the Credit Bid Amount shall be applied against and shall satisfy in full the obligations owing to Buyer under the Existing Loan Documents and the DIP Advance. No cash payment shall be required from Buyer at Closing other than the Cure Amounts (if any) and any Transfer Taxes payable by Buyer.

(c)     [Intentionally Omitted.]

**Section 2.08   Transfer Taxes**.  All transfer, documentary, sales, use, stamp, registration, recording, value-added, and other similar Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the Transaction ("Transfer Taxes") shall be borne by Buyer; provided, however, that the parties shall cooperate in good faith to minimize the amount of any Transfer Taxes and to avail themselves of any available exemptions from any such Transfer Taxes, including under Section 1146(a) of the Bankruptcy Code.

**Section 2.09   Allocation of Purchase Price**.  Within thirty (30) days after the Closing Date, Buyer shall prepare and deliver to Sellers a schedule allocating the Purchase Price (and any Assumed Liabilities to the extent properly taken into account as part of the consideration for U.S. federal income tax purposes) among the Acquired Assets in accordance with Section 1060 of the Code and the Treasury Regulations thereunder. Sellers shall have thirty (30) days to review and comment on such schedule. Buyer and Sellers shall endeavor in good faith to resolve any disagreements. If Buyer and Sellers are unable to resolve any such disagreement within fifteen (15) days, such disagreement shall be resolved by a nationally recognized independent accounting firm mutually acceptable to Buyer and Sellers, whose determination shall be final and binding. The fees and expenses of such accounting firm shall be borne equally by Buyer and Sellers. Buyer and Sellers agree to file all Tax Returns in a manner consistent with such allocation and shall not take any position inconsistent therewith in any Tax proceeding, audit, or otherwise, except as required by applicable Law.

**Section 2.10   Assumed Contracts**.

(a)     Section 2.10(a) of the Disclosure Schedule (the "Assumed Contract List") sets forth a list of all Contracts to which a Seller is a party and which Buyer has designated to be included as an Assumed Contract, together with estimated Cure Amounts for each Assumed Contract.  From and after the date hereof, until two (2) days after the Closing (subject to further extension by the Buyer), Buyer shall be entitled to make additions and deletions to the Assumed Contract List by delivery of written notice to Sellers (which shall then serve notice on the non-

13

10353578
53706719

debtor counterparties to each of the Contracts so added or deleted); provided that Buyer shall pay any net increase in the sum of Cure Amounts and non-debtor counterparties' Administrative Claims resulting directly from such designation of additional Assumed Contracts (the intent being that there will be no net negative effect on the bankruptcy estate due to a net increase in Cure Amounts and non-debtor counterparties' Administrative Claims resulting from any additional assumptions).  Any such deleted Contract shall be deemed to no longer be an Assumed Contract and any such added Contract shall be deemed an Assumed Contract.  Any Contract that is designated (or deemed to be designated) for exclusion and rejection pursuant to this section shall constitute an "Excluded Contract" as of the Closing Date.

(b)    In connection with the assumption and assignment to Buyer of any Assumed Contract that is executory pursuant to this Section 2.10, the allowed Cure Amounts, if any, necessary to cure all monetary defaults, if any, and to pay all actual or pecuniary losses that have resulted from such defaults under the Assumed Contracts, shall be paid by Buyer at the Closing as part of the Purchase Price in Section 2.06.

(c)    Sellers shall use their respective commercially reasonable efforts to obtain an order of the Bankruptcy Court to assign the Assumed Contracts to Buyer (the "Assumption Approval") on the terms set forth in this Section 2.10.  In the event Sellers are unable to assign any such Assumed Contract to Buyer pursuant to an order of the Bankruptcy Court, then the Parties shall use their commercially reasonable efforts to obtain, and to cooperate in obtaining, all Consents from Governmental Authorities and third parties necessary to assume and assign such Assumed Contracts to Buyer, including, in the case of Buyer, paying any applicable Cure Amounts; provided, however, that Sellers' obligations hereunder shall only continue until the Bankruptcy Cases are closed or dismissed.

## ARTICLE III.
## CLOSING

**Section 3.01   Closing**.  Subject to the satisfaction or waiver of the conditions set forth in Article VIII, the closing of the Transaction (the "Closing") shall take place remotely by exchange of documents and signatures electronically (or by such other means as the parties may agree) on the date that is no later than three (3) Business Days after the satisfaction or waiver of all conditions set forth in Article VIII (other than those conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions at the Closing), or at such other time and place as Buyer and Sellers may mutually agree in writing (the date on which the Closing actually occurs, the "Closing Date").

**Section 3.02   Sellers' Closing Deliverables**. At the Closing, Sellers shall deliver or cause to be delivered to Buyer the following:

(a)    a bill of sale, substantially in the form attached hereto as Exhibit A, duly executed by Sellers, evidencing the sale, transfer, conveyance, and assignment of the Acquired Assets to Buyer;

14

10353578
53706719

(b)     an assignment and assumption agreement, in a form agreed to by Buyer and Sellers, duly executed by Sellers, evidencing the assignment of the Assumed Contracts and the assumption of the Assumed Liabilities by Buyer;

(c)     a certificate executed by an authorized officer of Sellers, dated as of the Closing Date, certifying that the conditions set forth in Section 8.02(a) and Section 8.02(b) have been satisfied;

(d)     a certificate of the Secretary (or equivalent officer) of Sellers certifying (i) the resolutions duly adopted by the governing body of Sellers authorizing the execution and delivery of this Agreement and the consummation of the Transaction (as approved by the Bankruptcy Court), and (ii) the incumbency and signatures of the officers of Sellers executing this Agreement and any other documents delivered in connection herewith;

(e)     a non-foreign affidavit dated as of the Closing Date, sworn under penalty of perjury and in form and substance required under the Treasury Regulations issued pursuant to Section 1445 of the Code, stating that Sellers are not a "foreign person" as defined in Section 1445 of the Code;

(f)     certified copies of (i) the Sale Order, in form and substance acceptable to Buyer, conveying the Assets free and clear of all liens claims and Encumbrances, and (ii) the Bid Procedures Order, in each case as entered by the Bankruptcy Court; and

(g)     such other documents, instruments, or certificates as Buyer may reasonably request to evidence and effectuate the consummation of the Transaction.

**Section 3.03   Buyer Closing Deliverables**. At the Closing, Buyer shall deliver or cause to be delivered to Sellers the following:

(a)     evidence of the application of the Credit Bid Amount against the obligations owing to Buyer under the Existing Loan Documents and the DIP Advance, together with payment of the Cure Amounts (if any) and any Transfer Taxes payable by Buyer, by wire transfer of immediately available funds;

(b)     the assignment and assumption agreement, in a form agreed to by Buyer and Sellers, duly executed by Buyer, evidencing the assumption of the Assumed Liabilities by Buyer;

(c)     a certificate executed by an authorized officer of Buyer, dated as of the Closing Date, certifying that the conditions set forth in Section 8.03(a) and Section 8.03(b) have been satisfied;

(d)     a certificate of the Secretary or Assistant Secretary (or equivalent officer) of Buyer certifying (i) the resolutions duly adopted by the governing body of Buyer authorizing the execution and delivery of this Agreement and the consummation of the Transaction, and (ii) the incumbency and signatures of the officers of Buyer executing this Agreement and any other documents delivered in connection herewith; and

15

10353578
53706719

(e)     such other documents, instruments, or certificates as Sellers may reasonably request to evidence and effectuate the consummation of the Transaction.

## ARTICLE IV.
## REPRESENTATIONS AND WARRANTIES OF SELLERS

Except as set forth in the correspondingly numbered Sections of the Schedules, Sellers represent and warrant to Buyer that the statements contained in this Article IV are true and correct as of the Effective Date and as of the Closing Date.

**Section 4.01   Organization and Qualification of Sellers**.  Each Seller is a limited liability company duly organized, validly existing, and in good standing under the Laws of the State of its incorporation/formation, and has all requisite power and authority to own, lease, and operate its properties and to carry on its business as presently conducted.

**Section 4.02   Authority of Sellers**.  Subject to the entry of the Sale Order, Sellers have full power and authority to execute and deliver this Agreement and each other agreement, document, or instrument to be executed and delivered by Sellers in connection herewith, to perform its obligations hereunder and thereunder, and to consummate the Transaction. The execution, delivery, and performance of this Agreement and the consummation of the Transaction have been duly authorized by all necessary action on the part of Sellers (including, to the extent required, approval of the Bankruptcy Court). This Agreement has been duly executed and delivered by Sellers and, assuming the due authorization, execution, and delivery by Buyer, and subject to entry of the Sale Order, constitutes a legal, valid, and binding obligation of Sellers, enforceable against Sellers in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

**Section 4.03   No Conflicts**.  Subject to entry of the Sale Order, the execution, delivery, and performance of this Agreement by Sellers and the consummation of the Transaction do not and will not (a) violate, conflict with, or result in a breach of any provision of the certificate of formation, limited liability company agreement, certificate of incorporation, bylaws, or other organizational documents of Sellers, (b) violate or result in a breach of any Law applicable to Sellers, or (c) except as would not reasonably be expected to have a Material Adverse Effect, violate, conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, or cancel, or require any notice under any Contract to which any Seller is a party or by which any Seller or any of its assets is bound.

**Section 4.04   Title to Acquired Assets**.  Subject to entry of the Sale Order, Sellers have good and valid title to, or a valid leasehold interest in, the Acquired Assets, free and clear of all Encumbrances, other than Permitted Encumbrances.

**Section 4.05   Litigation**.  Except for the Bankruptcy Cases, there is no action, suit, claim, investigation, or proceeding pending or, to the actual knowledge of Sellers, threatened against Sellers that (a) challenges or seeks to enjoin, alter, or materially delay the consummation of the Transaction, or (b) would reasonably be expected to have a Material Adverse Effect.

16

**Section 4.06   Compliance with Laws; Permits**.   Except as would not reasonably be expected to have a Material Adverse Effect, Sellers are in compliance in all material respects with all Laws applicable to the Acquired Assets or the ownership or operation thereof.

**Section 4.07   Brokers**.   No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the Transaction or any other transaction document based upon arrangements made by or on behalf of Sellers.

**Section 4.08   No Other Representations**.   Except for the representations and warranties expressly set forth in this Article IV, neither Sellers nor any other Person on behalf of Sellers makes any express or implied representation or warranty with respect to Sellers, the Acquired Assets, or the Transaction, and Sellers disclaim any other representations or warranties, whether made by Sellers or any of their Affiliates, officers, directors, employees, agents, or representatives. EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS ARTICLE IV, SELLERS MAKE NO EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY, AND SELLERS HEREBY DISCLAIM ANY SUCH REPRESENTATION OR WARRANTY WITH RESPECT TO THE EXECUTION AND DELIVERY OF THIS AGREEMENT AND THE CONSUMMATION OF THE TRANSACTION, INCLUDING ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT.

**ARTICLE V.**
**REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer represents and warrants to Sellers that the statements contained in this Article V are true and correct as of the date of this Agreement and as of the Closing Date.

**Section 5.01   Organization of Buyer**. Buyer is a limited liability company duly organized, validly existing, and in good standing under the Laws of the State of New York, and has all requisite limited liability company power and authority to own, lease, and operate its properties and to carry on its business as presently conducted.

**Section 5.02   Authority of Buyer**. Buyer has full limited liability company power and authority to execute and deliver this Agreement and each other agreement, document, or instrument to be executed and delivered by Buyer in connection herewith, to perform its obligations hereunder and thereunder, and to consummate the Transaction. The execution, delivery, and performance of this Agreement and the consummation of the Transaction have been duly authorized by all necessary limited liability company action on the part of Buyer. This Agreement has been duly executed and delivered by Buyer and, assuming the due authorization, execution, and delivery by Sellers, constitutes a legal, valid, and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

**Section 5.03   No Conflicts**. The execution, delivery, and performance of this Agreement by Buyer and the consummation of the Transaction do not and will not (a) violate, conflict with,

17

or result in a breach of any provision of the certificate of incorporation, bylaws, or other organizational documents of Buyer, (b) violate or result in a breach of any Law applicable to Buyer, or (c) except as would not reasonably be expected to prevent or materially impair or delay the consummation of the Transaction, violate, conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify, or cancel, or require any notice under any Contract to which Buyer is a party or by which Buyer or any of its assets is bound.

**Section 5.04   Sufficiency of Funds**.   Buyer holds valid, binding, enforceable, and properly perfected secured claims against Sellers under (a) the Existing Loan Documents and (b) the DIP Consent Order, in an aggregate amount sufficient to credit bid the Purchase Price pursuant to Section 363(k) of the Bankruptcy Code.  Buyer has, and at the Closing will have, immediately available funds sufficient to pay the Cure Amounts and any Transfer Taxes and all other cash amounts payable by Buyer hereunder and to consummate the Transaction.  Buyer is a "good faith" purchaser, as such term is used in the Bankruptcy Code and the court decisions thereunder.

**Section 5.05   Litigation**. There is no action, suit, claim, investigation, or proceeding pending or, to the knowledge of Buyer, threatened against Buyer that challenges or seeks to enjoin, alter, or materially delay the consummation of the Transaction.

**Section 5.06   Brokers**.   No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission from Buyer in connection with the Transaction based upon arrangements made by or on behalf of Buyer.

**Section 5.07   No Outside Reliance**. Buyer acknowledges and agrees that (a) Buyer has conducted its own independent investigation, review, and analysis of the business, operations, assets, liabilities, results of operations, financial condition, and prospects of Sellers and the Acquired Assets, which investigation, review, and analysis was performed by Buyer and its Affiliates and representatives, (b) Buyer has been afforded access to the books and records, facilities, equipment, Contracts, and other assets of Sellers that Buyer and its representatives have requested to review, and (c) in entering into this Agreement, Buyer has relied solely upon its own investigation and analysis and the representations and warranties expressly set forth in Article IV (as qualified by the Schedules) and acknowledges that, except as expressly set forth in Article IV, neither Sellers nor any of its Affiliates or representatives makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or representatives.

**Section 5.08   Adequate Assurances Regarding Executory Contracts.**  Buyer as of the Closing will be capable of satisfying the conditions contained in sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Assumed Contracts.

## ARTICLE VI.
## COVENANTS

**Section 6.01   Conduct of Business**. From the date hereof until the earlier of the Closing or the termination of this Agreement in accordance with its terms, Sellers shall (a) use commercially reasonable efforts to maintain the Acquired Assets in good working order (ordinary

18

10353578
53706719

wear and tear excepted), (b) not take any action that would reasonably be expected to result in a Material Adverse Effect, (c) maintain all insurance coverage on the Acquired Assets in full force and effect, (d) not sell, transfer, lease, license, or otherwise dispose of or encumber any Acquired Asset outside the ordinary course of business without Buyer's prior written consent, (e) not enter into, amend, terminate, or waive any rights under any Contract that would be an Assumed Contract without Buyer's prior written consent, and (f) operate in accordance with the Approved Budget (as defined in the DIP Consent Order).  Risk of loss with respect to the Acquired Assets shall remain with Sellers until the Closing.

Section 6.02   **Access to Information**. From the date hereof until the earlier of the Closing or the termination of this Agreement in accordance with its terms, Sellers shall (a) provide Buyer and its representatives with reasonable access during normal business hours, upon reasonable advance notice, to the personnel, properties, books, records, and Contracts relating to the Acquired Assets, and (b) furnish to Buyer such financial, operating, and other data and information relating to the Acquired Assets as Buyer may reasonably request. Notwithstanding the foregoing, Sellers shall not be required to provide access or information to the extent that (i) such access or the provision of such information would violate any Law or binding agreement, (ii) such information is subject to attorney-client privilege or attorney work-product protection, or (iii) such access or the provision of such information would be unreasonably disruptive to the operations of Sellers.

Section 6.03   **Efforts; Consents.** Subject to the terms and conditions of this Agreement, each of the parties hereto shall use its commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper, or advisable under applicable Law to consummate the Transaction as promptly as practicable, including (i) obtaining all necessary consents, approvals, or authorizations of, and making all filings with and giving all notices to, Governmental Authorities and other third parties, and (ii) obtaining all consents, approvals, or authorizations of third parties necessary for the consummation of the Transaction..

Section 6.04   **Bankruptcy Court Matters.**

(a)      **Private Sale**. The Transaction shall be consummated as a private sale pursuant to the Private Sale Procedures set forth in the Bid Procedures Order. No auction shall be required with respect to the Acquired Assets.

(b)      **Sale Order**.  Sellers shall use commercially reasonable efforts to obtain entry of the Sale Order by the Bankruptcy Court as promptly as practicable after the Sale Hearing.

(c)      **No Modification or Appeal**. Buyer shall not oppose, and Sellers shall not take any action that is intended to, or that would reasonably be expected to, result in the reversal, modification, or vacatur of the Bid Procedures Order or the Sale Order.

(d)      **Defense of Orders**. Each of Sellers and Buyer shall use their commercially reasonable efforts to take such actions as may be reasonably necessary to defend against any objection to the Sale Order or any appeal therefrom.

Section 6.05   **Publicity**.  Except as required by applicable Law (including any disclosure required by the Securities and Exchange Commission or other Governmental Authority or any

19

10353578
53706719

disclosure required in connection with the Bankruptcy Cases), no party hereto shall issue any press release or make any public announcement relating to this Agreement or the Transaction without the prior written consent of the other parties hereto (which consent shall not be unreasonably withheld, conditioned, or delayed).

**Section 6.06   Confidentiality**.   The parties acknowledge that certain confidential information has been and may be exchanged in connection with this Agreement. Each party agrees to keep confidential all information provided by the other party in connection with this Agreement that is not otherwise publicly available, and to use such information solely for the purposes of consummating the transactions contemplated hereby, except as required by applicable Law (including any disclosure required in connection with the Bankruptcy Cases).

**Section 6.07   Notification of Certain Matters**.   Each party hereto shall give prompt notice to the other parties of (a) the occurrence or non-occurrence of any event that has caused or would reasonably be expected to cause any condition to the obligations of any party to effect the transactions contemplated hereby not to be satisfied, and (b) any action, suit, claim, investigation, or proceeding commenced or, to the knowledge of such party, threatened against such party that relates to the consummation of the Transaction.

**Section 6.08   Bulk Transfer Laws**.   Buyer acknowledges that Sellers will not comply with the provisions of any bulk transfer Laws of any jurisdiction in connection with the transactions contemplated by this Agreement.   The Parties intend that pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Acquired Assets shall be free and clear of any Encumbrances on the Acquired Assets, including any Encumbrances arising out of the bulk transfer Laws, and the Parties shall take such steps as may be necessary or appropriate to so provide in the Sale Order.

**Section 6.09   Employee Matters**.

(a)      Prior to the Closing, Buyer shall offer (or cause a designee of Buyer to offer) to employ some or all Current Employees, with employment commencing on the Closing Date. For purposes of this Agreement, each Current Employee who receives such an offer of employment shall be referred to as an "Offeree."  Each Offeree who accepts such offer prior to the Closing shall be referred to herein as a "Transferred Employee."

(b)      Each Current Employee of Sellers who is not a Transferred Employee shall be referred to herein as an "Excluded Employee."

(c)      Following the date of this Agreement, Sellers shall provide reasonable cooperation and information to Buyer as reasonably requested by Buyer with respect to its determination of appropriate terms and conditions of employment for any Offeree.

(d)      Notwithstanding anything in this Agreement to the contrary and unless otherwise agreed to by Sellers and Buyer, Sellers shall process the payroll for and pay, or cause to be paid, the base wages, base salary and benefits that are due and payable on or prior to the Closing Date with respect to all employees of Sellers.  Sellers shall withhold and remit all applicable payroll taxes as required by Law on or prior to the Closing Date with respect to all employees of

20

10353578
53706719

Sellers as of such date.  Buyer shall process the payroll for and shall pay, or cause to be paid, base wages, base salary and benefits that accrue after the Closing Date with respect to all Transferred Employees. Buyer shall withhold and remit all applicable payroll taxes as required by Law after the Closing Date with respect to Transferred Employees.

(e)      Nothing contained herein shall be construed as requiring, and neither Sellers nor any of their Affiliates shall take any affirmative action that would have the effect of requiring, Buyer to continue any specific employee benefit plan or to continue the employment of any specific person.  Nothing in this Agreement is intended to establish, create or amend, nor shall anything in this Agreement be construed as establishing, creating or amending, any employee benefit plan, practice or program of Buyer, any of its Affiliates or any of Sellers' employee benefit plans, nor shall anything in this Agreement create or be construed as creating any contract of employment or as conferring upon any Transferred Employee or upon any other person, other than the parties to this Agreement in accordance with its terms, any rights to enforce any provisions of this Agreement under ERISA or otherwise.

Following the Closing Date until the end of the 2026 Camp Season, Buyer shall operate the Camp Business in substantially the same manner as Sellers have traditionally operated same and in accordance with all governmental requirements and further in accordance with the policies, rules, regulations and standards.

## ARTICLE VII.
## TAX MATTERS

**Section 7.01   Transfer Taxes**.  All Transfer Taxes shall be allocated as set forth in Section 2.08. The party required by applicable Law to file any Tax Return with respect to any Transfer Taxes shall timely file such Tax Return, and the other party shall cooperate with such filing party as reasonably requested.

**Section 7.02   Cooperation on Tax Matters**.  After the Closing, Sellers and Buyer agree to furnish or cause to be furnished to each other, upon reasonable request, as promptly as practicable, such information and assistance relating to the Acquired Assets as is reasonably necessary for the preparation and filing of any Tax Return, the making of any election relating to Taxes, the preparation for any audit by any taxing authority, and the prosecution or defense of any claim, suit, or proceeding relating to any Tax.

## ARTICLE VIII.
## CONDITIONS TO CLOSING

**Section 8.01   Conditions to Obligations of All Parties**.  The obligations of each party hereto to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or waiver by Buyer) of each of the following conditions as of the Closing:

(a)      *No Injunction*.  No Governmental Authority of competent jurisdiction shall have enacted, issued, promulgated, enforced, or entered any Law or Order that enjoins or otherwise prohibits the consummation of the transactions contemplated by this Agreement.

21

10353578
53706719

(b)    *Sale Order*.  The Bankruptcy Court shall have entered the Sale Order, and the Sale Order shall be a Final Order and shall not have been reversed, stayed, modified, or amended in any manner that is materially adverse to Buyer without Buyer's prior written consent.

**Section 8.02   Conditions to Obligations of Buyer**.    The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or waiver by Buyer) of each of the following additional conditions as of the Closing:

(a)    **Representations**.  (i) The representations and warranties of Sellers set forth in Section 4.1 (*Organization and Good Standing*) and Section 4.2 (*Authorization; Enforceability*) shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date (except for representations and warranties that are made as of a specific date, which shall be true and correct in all material respects as of such date), and (ii) the other representations and warranties of Sellers set forth in Article IV shall be true and correct (without giving effect to any limitation as to "materiality" or "Material Adverse Effect" or similar qualifications set forth therein) as of the Closing Date as though made on and as of the Closing Date (except for representations and warranties that are made as of a specific date, which shall be true and correct as of such date), except where the failure of such representations and warranties to be true and correct would not, individually or in the aggregate, have a Material Adverse Effect.

(b)    **Performance of Covenants**.  Sellers shall have performed or complied with in all material respects all of the covenants and agreements required to be performed or complied with by Sellers under this Agreement at or prior to the Closing.

(c)    **No Material Adverse Effect**.  Since the date hereof, there shall not have occurred any Material Adverse Effect.

(d)    **Closing Deliveries**.  Sellers shall have delivered (or be ready, willing, and able to deliver at the Closing) each of the items set forth in Section 3.2.

(e)    **Bid Procedures Order**.  The Bankruptcy Court shall have entered the Bid Procedures Order, and the Bid Procedures Order shall not have been reversed, stayed, modified, or amended in any manner that is materially adverse to Buyer without Buyer's prior written consent.

(f)    **DIP Consent Order**. The DIP Consent Order shall remain in full force and effect, shall not have been reversed, stayed, modified, or amended in any manner that is materially adverse to Buyer without Buyer's prior written consent, and no Event of Default (as defined in the DIP Consent Order) shall have occurred and be continuing (other than any Event of Default waived by Buyer).

(g)    **No Competing Sale**. No order shall have been entered by the Bankruptcy Court approving or authorizing the sale of any of the Acquired Assets to any Person other than Buyer.

(h)    **Buyer's Secured Claims.** Buyer shall hold, as of the Closing Date, valid and enforceable secured claims against Sellers in an amount sufficient to credit bid the Purchase

22

10353578
53706719

Price. In the event that Buyer's secured claims under the Existing Loan Documents and/or the DIP Consent Order are acquired, assigned, or transferred to any third party (whether pursuant to the exercise of any purchase option, court order, or otherwise) prior to the Closing, this condition shall be deemed to have failed and Buyer shall have no obligation to consummate the Transaction.

**Section 8.03   Conditions to Obligations of Sellers**.   The obligations of Sellers to consummate the transactions contemplated by this Agreement are subject to the satisfaction (or waiver by Sellers) of each of the following additional conditions as of the Closing:

(a)      **Representations**.  The representations and warranties of Buyer set forth in Article V shall be true and correct in all material respects as of the Closing Date as though made on and as of the Closing Date (except for representations and warranties that are made as of a specific date, which shall be true and correct in all material respects as of such date);

(b)      **Performance of Covenants**.  Buyer shall have performed or complied with in all material respects all of the covenants and agreements required to be performed or complied with by Buyer under this Agreement at or prior to the Closing.

(c)      **Closing Deliveries**. Buyer shall have delivered (or be ready, willing, and able to deliver at the Closing) each of the items set forth in Section 3.3.

## ARTICLE IX.
## TERMINATION

**Section 9.01   Termination**.  This Agreement may be terminated and the transactions contemplated hereby may be abandoned at any time prior to the Closing:

(a)      by the mutual written consent of Buyer and Sellers;

(b)      by either Buyer or Sellers, upon written notice to the other party, if the Closing shall not have occurred on or before the Outside Date; provided, however, that the right to terminate this Agreement pursuant to this Section 9.01(b) shall not be available to any party whose failure to fulfill any of its obligations hereunder has been the principal cause of, or resulted in, the failure of the Closing to occur on or before such date;

(c)      by Buyer, upon written notice to Sellers, if Sellers' representations or warranties set forth in this Agreement shall have been or become untrue or incorrect such that the conditions set forth in Section 8.02(a) would not be satisfied, or if Sellers shall have breached or failed to perform any covenant or agreement set forth in this Agreement such that the condition set forth in Section 8.02(b) would not be satisfied, and, in either case, such breach or failure is incapable of being cured prior to the Outside Date or is not cured within thirty (30) days after written notice thereof is given by Buyer to Sellers;

(d)      by Buyer, upon written notice to Sellers, if Sellers breach any provision of the DIP Consent Order or if an Event of Default (as defined therein) occurs;

10353578
53706719

(e)      by Buyer, upon written notice to Sellers, if there shall have occurred a Material Adverse Effect;

(f)      by Buyer, upon written notice to Sellers, if Buyer's secured claims under the Existing Loan Documents and/or the DIP Consent Order are acquired, assigned, or transferred to any third party prior to the Closing, whether pursuant to the exercise of any purchase option, court order, or otherwise;

(g)      by Sellers, upon written notice to Buyer, if any of Buyer's representations or warranties set forth in this Agreement shall have been or become untrue or incorrect such that the conditions set forth in Section 8.03(a) would not be satisfied, or if Buyer shall have breached or failed to perform any covenant or agreement set forth in this Agreement such that the condition set forth in Section 8.03(b) would not be satisfied, and, in either case, such breach or failure is incapable of being cured prior to the Outside Date or is not cured within thirty (30) days after written notice thereof is given by Sellers to Buyer;

(h)      [Intentionally Omitted.]

(i)      by either Buyer or Sellers, upon written notice to the other parties, if any court of competent jurisdiction or other Governmental Authority shall have issued an Order permanently enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement, and such Order shall have become final and non-appealable;

(j)      by either Buyer or Sellers, upon written notice to the other parties, if the Bankruptcy Cases are dismissed or converted to cases under Chapter 7 of the Bankruptcy Code, or if a trustee is appointed in the Bankruptcy Cases; or

(k)      by either Buyer or Sellers, upon written notice to the other party, if the Bankruptcy Court shall have entered an Order authorizing Sellers to consummate an Alternative Transaction with a Person other than Buyer

**Section 9.02   Effect of Termination.**   In the event of termination of this Agreement pursuant to Section 9.01, this Agreement shall become void and of no effect, without any liability or obligation on the part of any party hereto (or any of their respective Affiliates, officers, directors, employees, agents, or representatives), except that (i) the provisions of this Section 9.02 (*Effect of Termination*), Section 9.03 (*Remedies*), and Article X (*General Provisions*) shall survive any termination of this Agreement, and (ii) no such termination shall relieve any party from liability for any willful breach of this Agreement or fraud.

**Section 9.03   Remedies.**

(a)      In the event that Buyer fails to consummate the Closing when all conditions to Buyer's obligations to close have been satisfied or waived (other than conditions that by their nature are to be satisfied at the Closing), Sellers' sole and exclusive remedy (except in the case of fraud or willful misconduct) shall be to seek specific performance of this Agreement in accordance with Section 10.09. For the avoidance of doubt, no deposit or liquidated damages shall be payable by Buyer.

24

10353578
53706719

(b)      In the event that this Agreement is terminated due to Sellers' breach or failure to perform, Buyer shall be entitled to seek specific performance and/or any other remedy available at law or in equity, including damages.

(c)      Notwithstanding anything to the contrary herein, in no event shall any party be liable to any other party for any punitive, exemplary, special, incidental, consequential, or indirect damages, including lost profits or loss of business opportunity, in connection with this Agreement or the Transaction.

## ARTICLE X.
## MISCELLANEOUS

**Section 10.01 Survival**. The representations, warranties, covenants, and agreements contained in this Agreement shall not survive the Closing and shall terminate at the Closing, except for (a) covenants and agreements that by their terms contemplate performance after the Closing, which shall survive until fully performed, and (b) claims based on fraud or willful misconduct.

**Section 10.02 Notices**.  Notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (a) when delivered personally to the recipient, (b) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid), (c) when sent by email (with confirmation of transmission) if sent during normal business hours of the recipient (and if not sent during normal business hours, then on the next Business Day), or (d) three (3) Business Days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, in each case addressed to the parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 10.02):

| | |
|---|---|
| if to Buyer, then to: | DHAN Masores LLC<br>c/o Jeffrey Zwick Esq.<br>Jeffrey Zwick & Associates, P.C.<br>2329 Nostrand Avenue, Suite 400<br>Brooklyn, New York 11210<br>718.513.2050 ext.123<br>jeffrey@jzlegal.com |
| with a copy (which shall not constitute notice) to: | Porzio, Bromberg & Newman, P.C.<br>5 Sylvan Way, P.O. Box 218<br>Parsippany, NJ 07054<br>Attention: Warren A. Martin, Esq. and<br>Kelly D. Curtin, Esq.<br>Email: wjmartin@pbnlaw.com;<br>kdcurtin@pbnlaw.com |
| if to Sellers, then to: | Asad Ravid<br>Email:  aravid@circleinv.com |

25

10353578
53706719

with a copy (which shall not       Cole Schotz P.C.
constitute notice) to:                 25 Main Street
                                   Hackensack, New Jersey 07601
                                   Attention: Roger Iorio, Esq.
                                   Email: riorio@coleschotz.com

**Section 10.03 Interpretation**.  When a reference is made in this Agreement to an Article, Section, Exhibit, or Schedule, such reference shall be to an Article, Section, Exhibit, or Schedule of this Agreement unless otherwise indicated. The words "include," "includes," and "including" when used herein shall be deemed in each case to be followed by the words "without limitation." The words "hereof," "herein," and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement. The term "or" is not exclusive. The definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms and to the masculine as well as to the feminine and neuter genders of such term.

**Section 10.04 Severability**.  If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement, and this Agreement shall be interpreted and construed as if such term or provision, to the extent the same shall have been held to be invalid, illegal, or unenforceable, had never been contained herein.

**Section 10.05 Entire Agreement**.   This Agreement, together with all Exhibits and Schedules hereto, constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements and undertakings, both written and oral, among the parties with respect to the subject matter hereof.

**Section 10.06 Assignment**.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Buyer may assign any or all of its rights and obligations hereunder to any Affiliate or designee of Buyer without the prior consent of Sellers, provided that Buyer shall remain liable for all of its obligations hereunder following any such assignment. Sellers may not assign this Agreement or any of their rights, interests, or obligations hereunder without the prior written consent of Buyer.

**Section 10.07 Amendment and Waiver**.  This Agreement may not be amended except by an instrument in writing signed by Buyer and Sellers. Any party hereto may (a) extend the time for the performance of any of the obligations or other acts of the other party, (b) waive any inaccuracies in the representations and warranties of the other party contained herein or in any document delivered by the other party pursuant hereto, or (c) waive compliance with any of the agreements of the other party or conditions to such party's obligations contained herein. Any such extension or waiver shall be valid only if set forth in an instrument in writing signed by the party to be bound thereby. No failure or delay by any party in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.

26

10353578
53706719

**Section 10.08  Governing Law; Jurisdiction; Service of Process; Waiver of Jury Trial**. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey (without application of principles of conflicts of law).   In connection with any controversy arising out of or related to this Agreement, Sellers and Buyer hereby irrevocably consent to the exclusive jurisdiction of the Bankruptcy Court, or if, and only if, the Bankruptcy Case has been closed, the courts of the State of New Jersey.  Sellers and Buyer each irrevocably consents to service of process out of the aforementioned courts and waives any objection which it may now or hereafter have to the laying of venue of any action or proceeding arising out of or in connection with this Agreement brought in the aforementioned courts. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, SUIT, OR PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTION.

**Section 10.09  Specific Performance**.  The parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. Accordingly, the parties agree that, prior to the termination of this Agreement, each party shall be entitled to seek an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement in the Bankruptcy Court (or, if the Bankruptcy Court does not have or declines to exercise jurisdiction, the state and federal courts located in the State of New Jersey), without proof of actual damages (and each party hereby waives any requirement for the securing or posting of any bond in connection with such remedy), this being in addition to any other remedy to which they are entitled at law or in equity. The parties further agree not to assert that a remedy of specific enforcement is unenforceable, invalid, contrary to Law, or inequitable for any reason.

**Section 10.10  Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**Section 10.11  No Third-Party Beneficiaries**.  Except as otherwise expressly provided herein, this Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 10.12  "As Is, Where Is" Transaction**.  Buyer acknowledges that the Acquired Assets are being sold on an "AS IS, WHERE IS" basis, with all faults, and Buyer has relied solely on its own investigation, analysis, and evaluation of the Acquired Assets in making its decision to enter into this Agreement. Buyer further acknowledges that, except for the representations and warranties expressly set forth in Article IV, Sellers have not made, and Sellers hereby expressly disclaim, any representations or warranties of any kind or nature, express or implied, at common law, by statute, or otherwise, relating to the Acquired Assets or the transactions contemplated

27

10353578
53706719

hereby, and Buyer hereby waives any claims related to the condition of the Acquired Assets or the accuracy or completeness of any information provided or made available to Buyer.

**Section 10.13 No Successor Liability**.  Except as expressly provided herein, Buyer does not assume or agree to pay, satisfy, discharge, or perform, and shall not be deemed by the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby to have assumed or agreed to pay, satisfy, discharge, or perform, and shall have no liability for, any Excluded Liability. Buyer is not, and shall not be, a successor to Sellers by reason of any theory of law or equity.

*[Signature Pages Follow]*

28

10353578
53706719

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**BUYER:**

**DHAN MASORES LLC**

By:_____
Name:   DAME NAFFA
Title:        M MEMB

**SELLERS:**

**MESORAHLAND LLC**

By:_____
Name:
Title:

**MESORAHCO LLC**

By:_____

Name:

Title:

29

53524946
10353578

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

**BUYER:**

**DHAN MASORES LLC**


By: _____
Name:
Title:


**SELLERS:**

**MESORAHLAND LLC**


By: _____
Name:  Asaf Ravid
Title:  CRO

**MESORAHCO LLC**


By: _____
Name:  Asaf Ravid
Title:  CRO

29

10353578
53706719

## EXHIBIT A

### FORM OF BILL OF SALE

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, _____ ("**Sellers**"), do hereby grant, bargain, transfer, sell, assign, convey and deliver to _____ ("**Buyer**"), all of their rights, title, and interest in and to the Acquired Assets, as such term is defined in the Asset Purchase Agreement, dated as of_____ (the "**Purchase Agreement**"), by and among Sellers and Buyer, to have and to hold the same unto Buyer, its successors and assigns, forever.

Buyer acknowledges that Sellers make no representation or warranty with respect to the assets being conveyed hereby except as specifically set forth in the Purchase Agreement.

Each Seller for itself, its successors and assigns, hereby covenants and agrees that, at any time and from time to time upon the written request of Buyer, Sellers will do, execute, acknowledge, and deliver or cause to be done, executed, acknowledged, and delivered, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney, and assurances as may be reasonably required by Buyer in order to assign, transfer, set over, convey, assure, and confirm unto and vest in Buyer, its successors and assigns, title to the assets sold, conveyed, and transferred by this Bill of Sale.

IN WITNESS WHEREOF, Sellers have duly executed this Bill of Sale as of _____, 2026.

[SELLERS]


By_____
Name:
Title:

10353578
53706719

**DISCLOSURE SCHEDULES**

**TO**

**ASSET PURCHASE AGREEMENT**

**by and among**

**DHAN MASORES LLC,**

**as the Buyer,**

**and**

**Mesorahland LLC & Mesorahco LLC,**

**as the Sellers**

Dated as of July 20, 2026

Reference is hereby made to that certain Asset Purchase Agreement (the "Agreement"), dated as of July 20, 2026, by and among DHAN Masores LLC, as Buyer, and Mesorahland LLC and Mesorahco LLC (collectively, the "Sellers").  All capitalized terms which are not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

The section numbers in these Disclosure Schedules correspond to the section numbers in the Agreement; provided, however, that the disclosure of any fact(s) or item(s) in these Disclosure Schedules relevant to any section of the Agreement shall be deemed to be disclosed with respect to any other section(s) of the Agreement to which the applicability and relevance of such disclosure is reasonably apparent on its face, whether or not these Disclosure Schedules include an explicit cross-reference to such other section(s) and whether or not such other section(s) contemplate these Disclosure Schedules.  The disclosure of any information in these Disclosure Schedules shall not be deemed to constitute an acknowledgment that such information is required to be disclosed in connection with the representations and warranties made by the Sellers in the Agreement, nor shall it be deemed an admission of any liability of, or concession as to any defense available to, the Sellers.  The inclusion of information in these Disclosure Schedules shall not be construed as an admission or agreement that such information is material to or outside the ordinary course of business of the Sellers.  No disclosure in these Disclosure Schedules relating to any possible breach or violation of any Contract or Law shall be construed as an admission or indication that any such breach or violation exists or has actually occurred.  All attachments to these Disclosure Schedules are incorporated by reference into the section of these Disclosure Schedules in which they are referenced.

71829/0001-53706852v2

**Schedule 2.10(a)**

**Assumed Contract List**

| Camp | Category | Contract Description | Estimated Cure Amount |
|---|---|---|---|
| Mesorah | Employment Agreements | Employment Agreement (Upper Staff) | $0 |
| Mesorah | Camper Agreements | Camper Agreement (Template) | $0 |
| Mesorah | Employment Agreements | Employment Agreement (Lower Staff) | $0 |
| Mesorah | Camper Agreements | Refund Policy | $0 |

2