UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**STINSON LLP**
Richard J.L. Lomuscio (NJ #037461999)
Maggie B. Burrus (*pro hac vice* pending)
140 Broadway, Suite 2330
New York, New York 10005
Telephone (646) 883-7675
richard.lomuscio@stinson.com
maggie.burrus@stinson.com

*Counsel for Enhanced Capital Pennsylvania Rural Fund, LLC*

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., et al.,[1] | Case No. 26-16388 (CMG) |
| Debtors. | (Jointly Administered) |

**ENHANCED CAPITAL PENNSYLVANIA RURAL FUND, LLC'S LIMITED
OBJECTION TO CHEN-A-WANDA PRIVATE SALE AND PROPOSED SALE ORDER**

COMES NOW, Enhanced Capital Pennsylvania Rural Fund, LLC ("Lender"), a Delaware

limited liability company, by and through its undersigned counsel, and for its limited objection

("Objection") to Debtors BAHS Operating Inc. ("BAHS Operating") and BAHS Holdings LLC's

("BAHS Holdings" and together with BAHS Operating, the "BAHS Debtors") proposed sale of

assets associated with Camp Chen-A-Wanda (the "Chen-A-Wanda Assets") as set forth in the

*Notice of Private Sale Transaction* (Docket No. 509) (the "Sale Notice"),[2] to the extent the BAHS

---

[1]   A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax
      identification number may be obtained on the website of the SIMAD Debtors' claims and
      noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD
      Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these
      chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to
      them in the Sale Notice and the *Order (I) Approving the Bidding Procedures, (II) Approving*

Debtors are proposing to sell the Chen-A-Wanda Assets free and clear of Lender's lien without Lender's lien attaching to the proceeds of the sale of the Chen-A-Wanda Assets, and states as follows:

## INTRODUCTION

Lender has no objection to, and generally supports, the BAHS Debtors' efforts to pursue a value maximizing sale of the Chen-A-Wanda Assets for the benefit of its creditors. However, Lender does object to the proposed sale of the Chen-A-Wanda Assets to the extent the BAHS Debtors seek entry of an order selling the Chen-A-Wanda Assets free and clear of Lender's lien on the Real Property.

Lender holds a valid and perfected lien in the Real Property. To secure Debtor Green Lane Operatingco, LLC's obligations to Lender under that certain Loan Agreement described more fully herein, Debtor BAHS Holdings, as guarantor, pledged as security for its guaranty the real property located at 355 Camp Road, Thompson, PA 18465 (the "Real Property") and executed a mortgage. Lender subsequently recorded the mortgage, creating a valid and perfected lien on the Real Property.

Debtors have not satisfied their obligations under the Loan Agreement, Lender has not released its lien in the Real Property, and Lender does not consent to the sale of the Real Property free and clear of its valid and perfected lien in the same. To the extent the Debtors intend to sell the Chen-A-Wanda Assets free and clear of Lender's valid and perfected lien, the lien must attach to the proceeds from the sale of the Real Property.

---

*the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* (Docket No. 298) (the "Bidding Procedures Order").

Accordingly, Lender objects to the sale of the Chen-A-Wanda Assets to the extent the BAHS Debtors seek to sell the Real Property free and clear of Lender's lien without Lender's lien attaching to the proceeds of the sale of the Real Property in the same order, priority, validity and extent prior to the Closing.

**RELEVANT BACKGROUND**

**A.      The Loan Documents**

1.      On January 31, 2022, Green Lane Operatingco, LLC ("Borrower"), a Pennsylvania limited liability company, and Lender entered into that certain Loan and Security Agreement (the "Loan Agreement"), as amended, restated or otherwise modified from time to time, pursuant to which Lender provided a term loan to Debtor in an original principal amount equal to $2,000,000.00 (the "Term Loan"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.

2.      The Term Loan was evidenced by that certain Secured Term Note (as amended, restated or otherwise modified from time to time, the "Note") dated as of January 31, 2022, in favor of Lender. A true and correct copy of the Note is attached hereto as **Exhibit B**.

3.      Lender also entered into several ancillary agreements to the Term Loan, including, (i) that certain Guaranty Agreement between BAHS Holdings and Lender dated as of even date (the "BAHS Holdings Guaranty"); (ii) that certain Entity Guaranty Agreement between BAHS Operating and Lender dated as of even date (the "BAHS Operating Guaranty"); (iii) that certain Guaranty Agreement between Green Lane Landco, LLC ("Green Lane Landco") and Lender dated as of even date (the "Green Lane Landco Guaranty"); and (iv) that certain Guaranty Agreement between Michael Shabsels and David Shabsels and Lender dated as of even date (the "Individual Guarantees" and, together with the BAHS Holdings Guaranty, BAHS Operating Guaranty, and

3

Green Lane Landco Guaranty, the "Term Loan Guarantees"). True and correct copies of the Term Loan Guarantees are attached hereto as **Exhibit C**.

4.      More specifically, BAHS Holdings, as guarantor, pledged as security for the BAHS Holdings Guaranty certain real property located at 355[3] Camp Road, Thompson, Susquehanna County, Pennsylvania, 18465, and executed that certain Mortgage, Assignment of Leases, and Security Agreement (the "Mortgage") dated as of January 31, 2022, in favor of Lender. The Mortgage was recorded in the Recorder of Deeds Office of Susquehanna County, Pennsylvania, on February 16, 2022, as Instrument No. 202201254. A true and correct copy of the Camp Road Mortgage is attached hereto as **Exhibit D**.[4]

5.      On October 28, 2022, Borrower and Lender entered into that certain First Amendment to Loan and Security Agreement (the "First Amendment"), pursuant to which Lender agreed to subordinate its interests in the Real Property in favor of Bank of America, N.A., as Administrative Agent under that Certain Credit Agreement between Borrower, Green Lane

---

[3]   By its terms, the Mortgage encumbers Debtor BAHS Holdings' interest in the real property commonly known as 355 Camp Road, Thompson, PA 18465,[3] which is legally described in Schedule A to the Mortgage, and all of the buildings, improvements, fixtures, equipment, easements, rights, appurtenances, leases, rents, contract rights, income and proceeds located at or derived from Camp Chen-A-Wanda. *See* Ex. D.

The Mortgage contains a scrivener's error insofar as it identifies the street address of Camp Chen-A-Wanda as 335 Camp Road, Thompson, PA 18465. The correct street address of Camp Chen-A-Wanda is 355 Camp Road, Thompson, PA 18465, as reflected in both the Sale Notice and the Proposed Asset Purchase Agreement. Notwithstanding this discrepancy, the parcel identification number, Parcel ID No. 171.00-1-024.00,000, set forth in the Mortgage is identical to that identified in the Proposed Asset Purchase Agreement.

[4]   Additionally, Debtor Green Lane Landco, as guarantor, pledged as security for the Green Lane Landco Guaranty that real property located at 249 Camp Green Lane Road, Salford, Montgomery County Pennsylvania 18957, and executed that certain Mortgage, Assignment of Leases, and Security Agreement dated as of January 31, 2022, in favor of Lender. The Mortgage was recorded in the Recorder of Deeds Office of Montgomery County, Pennsylvania, on March 9, 2022, as Instrument No. 2022029414.

Propertyco LLC and certain of Borrower's other affiliates.[5] A true and correct copy of the First Amendment is attached hereto as **Exhibit E**.

6.     The First Amendment was evidenced by that certain Amended and Restated Secured Term Note (the "First Amended Note"), dated as of even date, which amended and restated the Note and reflected a remaining principal balance of $2,000,000.00.  A true and correct copy of the First Amended Note is attached hereto as **Exhibit F**.

7.     On March 27, 2024, Borrower and Lender entered into that certain Second Amendment to Loan and Security Agreement (the "Second Amendment"), pursuant to which Lender provided Borrower an additional loan in the principal amount of $500,000.00. A true and correct copy of the Second Amendment is attached hereto as **Exhibit G**.

8.     The Second Amendment was evidenced by that certain Subsequent Term Note A dated as of even date, in favor of Lender. A true and correct copy of the Subsequent Term Note A is attached hereto as **Exhibit H**.

9.     On December 17, 2025, Borrower and Lender entered into that certain Third Amendment to Loan and Security Agreement (the "Third Amendment"), pursuant to which Lender agreed to Borrower's entry into that certain Credit Agreement between Borrower, Green Lane Landco, BAHS Holdings, and Mishmeret Trust Services, Ltd. ("Mishmeret") wherein Borrower, Green Lane Landco, and BAHS Holdings granted a first priority lien on all of their assets to Mishmeret. A true and correct copy of the Third Amendment is attached hereto as **Exhibit I.**

10.     The Third Amendment was evidenced by that certain Second Amended and Restated Secured Term Note (the "Second Amended Note") dated as of even date, which amended

---

[5]   As more fully described below, BOA's lien has been satisfied and released. Accordingly, Lender's Mortgage Lien is no longer subordinate to BOA's lien, and Lender holds a first lien on the Real Property.

and restated the Note and reflected a remaining principal balance of $2,500,000.00. A true and correct copy of the Second Amended Note is attached hereto as **Exhibit J**.

11.    By its express terms, the effectiveness of the Third Amendment was subject to, among other things, the satisfaction of the following conditions precedent:

> (c) The execution and delivery of Mortgage Releases by Lender for the Mortgages given in favor of Lender by each Affiliate on the Closing Date;
>
> (d) Within ninety (90) days from the date hereof, unless such date is extended by Lender in Lender's sole discretion, a duly executed Guaranty Agreement executed by Secured Guarantor which owns the Real Property, in substantially the same form as attached hereto as Exhibit B;
>
> (e) Within ninety (90) days from the date hereof, unless such date is extended by Lender in Lender's sole discretion, Lender shall have received (i) a duly executed Mortgage from each Secured Guarantor in form and satisfactory to Lender covering the Real Property; (ii) a pro forma lender's title insurance policy issued by a title company acceptable to Lender in the amount of the Secured Term Note, in form and substance satisfactory to the Lender (including having insured amounts and containing endorsements as may be required by the Lender) and insuring the lien of the Mortgages and showing no Liens prior to the Lender's Liens, other than Permitted Liens and Liens for ad valorem taxes not yet due and payable; (iii) a certification from the National Research Center, or any successor agency thereto, regarding each parcel of real property securing any portion of the Obligations identifying whether such property lies within any flood plain and, if such property does lie within a flood plain, then Secured Guarantor shall procure flood insurance for such property; and (iv) such other certificates, documents and information as are reasonably requested by the Lender in connection with the foregoing, each in form and substance satisfactory to the Lender . . . .

Ex. G § 3.

12.    The conditions precedent were never satisfied.

13.    *First*, Borrower failed to deliver "a duly executed Mortgage," or any other documents required by section 3(e) of the Third Amendment, from each Secured Guarantor within ninety (90) days of the parties' execution of the Third Amendment. *See* Exh. G § 3(e). Lender did not extend the ninety-day period. *See* Ex. G.

6

14.     *Second*, the Borrower failed to deliver "a duly executed Guaranty Agreement" within ninety (90) days of the parties' execution of the Third Amendment. *See* Ex. G § 3(d). Lender did not extend the ninety-day period. *See* Ex. G.

15.     *Third*, as a result of the Borrower's failure to deliver a duly executed Mortgage (and other required documents), Lender did not execute a release for the Mortgage. *See* Ex. G § 3(c).

**B.      Amounts Owing as of the Petition Date**

16.     As of the Petition Date, $2,503,031.24, exclusive of any late fees or charges or attorneys' fees, was due and owing to Lender under the terms of the Loan Documents. *See* Payoff Statement, attached hereto as **Exhibit K**.

**C.      Camp Chen-A-Wanda Private Sale**

17.     On June 6, 2026, the Court entered the Bidding Procedures Order and approved the Private Sale Procedures.

18.     On July 17, 2026, Debtors filed the Sale Notice advising of their intention to sell the Chen-A-Wanda Assets "free and clear of all Encumbrances pursuant to section 363(f) of the Bankruptcy Code, with any such Encumbrances to attach to the proceeds of the Chen-A-Wanda Private Sale in the same order, priority, validity and extent as existed prior to the Closing." Dkt No. 509 at 2.[6]

19.     Therein, Debtors identified the following Encumbrances on the Chen-A-Wanda Assets:

(i) a UCC-1 Financing Statement filed by Mishmeret Trust Company Ltd. Against BAHS Operating Inc. and BAHS Operating LLC prior to the Petition Date, on January 20, 2026, with the Secretary of State of Pennsylvania, Filing No. 20260120012846;

---

[6]     As of the date of this filing, Lender has not been served with the Sale Notice despite its interest in the Real Property.

(ii) a UCC-1 Financing Statement filed against BAHS Operating Inc. d/b/a Camp Chen-A-Wanda, on May 19, 2026, with the Secretary of State of Pennsylvania, Filing No. 20260519126995, by Corporation Service Company, As Representative; and

(iii) a UCC-1 Financing Statement filed by U.S. Small Business Administration against BAHS Operating Inc., prior to the Petition Date, on June 28, 2020, with the Secretary of State of Pennsylvania, Filing No. 2020062800044 (the "2020 SBA Financing Statement").

*Id.* at 2 n.3; *see also Id.* at 4 (listing "Holders of Any Encumbrances") and 11 (describing the Encumbrances and holders thereof).

20.     The Debtors did not, however, identify any encumbrances on or related to the Real Property.[7]

### D.     Priority of Lender's Lien

21.     As described above, Lender recorded the Mortgage on February 16, 2022.

22.     While Lender subsequently subordinated its lien in the Real Property to the lien of BOA, BOA released its lien on the Real Property pursuant to that certain Discharge Piece dated as of December 31, 2025 and recorded in the Recorder of Deeds Office of Susquehanna County, Pennsylvania, on January 6, 2026, as Instrument No. 202600062 (the "BOA Discharge").  A true and correct copy of the BOA discharge is attached hereto as **Exhibit L**.

23.     Lender is aware of no other liens senior to its valid and perfected lien on the Real Property.

---

[7]     Upon information and belief, Mishmeret holds a mortgage dated as of December 31, 2025, and recorded on January 20, 2026 (the "Mishmeret Mortgage") that is junior to Lender's mortgage. The Debtors do not identify the Mishmeret Mortgage as an Encumbrance in the Sale Notice.

### ARGUMENT

24.     "The Bankruptcy Code itself plainly protects a security interest even when the assets to which the interests attach are sold in a section 363(f) sale." *In re Old Cold, LLC*, 976 F.3d 107, 118 (1st Cir. 2020). Specifically, the Bankruptcy Code mandates that a Court "prohibit or condition [the] use, sale, or lease [of property] as is necessary to provide adequate protection of such interest" if "an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased" so requests. 11 U.S.C.A. § 363. This "often means that those security 'interests attach to the proceeds of the sale.' " *Old Cold, LLC*, 976 F.3d at 118 (citing 11 U.S.C. § 363(e)).[8]

25.     "The concept of adequate protection finds its basis in the Fifth Amendment's protection of property interests. *In re Dispirito*, 371 B.R. 695, 698 (Bankr. D.N.J. 2007) (citing H.R.Rep. No. 95–595, 338–40 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 6294–6297). "Adequate protection is also grounded in the belief that secured creditors should not be deprived of the benefit of their bargain." *Id.*; *see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to [e]nsure that the creditor receives the value for which [it] bargained pre-bankruptcy.").

26.     Here, however, Lender is not getting the benefit of its bargain. At present, the Sale Notice does not contemplate the attachment of Lender's valid and perfected lien to the proceeds from the sale of the Chen-A-Wanda Assets. As a result, the entry of an order approving the sale of

---

[8]  Indeed, the authority of a bankruptcy court to permit the sale of secured property free and clear of existing liens, *with those liens attaching to the proceeds*, has long been recognized. *See Van Huffel v. Harkelrode*, 284 U.S. 225 (1931); *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502 (1938), *reh'g denied*, *Wright v. Union Cent. L. Ins. Co.*, 305 U.S. 668 (1938); *Allebach v. Thomas*, 16 F.2d 853 (4th Cir. 1927), *cert. denied*, 274 U.S. 744 (1927).

9

the Chen-A-Wanda Assets, as drafted, would have the effect of extinguishing Lender's valid and perfected lien on its collateral.

27.     Lender's interest in the Real Property must be adequately protected. Accordingly, Lender's valid and perfected lien must attach to any proceeds from the sale of the Real Property in the same order, priority, validity and extent as existed prior to Closing along with the other Encumbrances identified in the Sale Notice.

### CONCLUSION

WHEREFORE, Lender respectfully requests the Court enter an Order directing the Debtors to (i) amend the definition of Encumbrance in the Sale Notice, the Proposed Sale Order, and the Proposed Asset Purchase Agreement to include Lender's valid and perfected lien in the Real Property; (ii) approve the attachment of Lender's valid and perfected security interest to the proceeds of any sale of the Real Property; and (iii) grant such other and further relief as this Court deems just and proper.

Dated: July 24, 2026

By: /s/ *Richard J.L. Lomuscio*
Richard J.L. Lomuscio (NJ #037461999)
Maigreade B. Burrus (*pro hac vice* pending)
**STINSON LLP**
140 Broadway, Suite 2330
New York, New York
Telephone: (646) 883-7675
richard.lomuscio@stinson.com
maggie.burrus@stinson.com

*Counsel for Enhanced Capital Pennsylvania Rural Fund, LLC*

10