# EXHIBIT "2"

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $15,000,000.00 | 06-30-2025 | 07-05-2050 | [redacted]7461 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** IAFAOPERATINGCO, LLC; BELGRADE LAKES SUMMER CAMPS LLC; WAUKEELA OPERATINGCO LLC; MAINEWEKEELACO LLC; POLAND CAMPCO LLC; WM CAMP, LLC; CAMP MED-O-LARK, INC.; and BANNER OPERATINGCO LLC
1745 Bear Pond Road
Hartford, ME 04220

**Lender:** Newtek Business Services Holdco 6, Inc.
200 S. Orange Avenue, Suite 1175
Orlando, FL 32801

---

**Principal Amount: $15,000,000.00** **Date of Note: June 30, 2025**

**PROMISE TO PAY. IAFAOPERATINGCO, LLC; BELGRADE LAKES SUMMER CAMPS LLC; WAUKEELA OPERATINGCO LLC; MAINEWEKEELACO LLC; POLAND CAMPCO LLC; WM CAMP, LLC; CAMP MED-O-LARK, INC.; and BANNER OPERATINGCO LLC ("Borrower") jointly and severally promise to pay to Newtek Business Services Holdco 6, Inc. ("Lender"), or order, in lawful money of the United States of America, the principal amount of Fifteen Million & 00/100 Dollars ($15,000,000.00), together with interest on the unpaid principal balance from June 30, 2025, until paid in full.**

**PAYMENT. Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 299 payments of $175,355.30 each payment and an irregular last payment estimated at $175,355.30. Borrower's first payment is due August 5, 2025, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on July 5, 2050, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest as shown on the most recent statement or bill provided to Borrower (if no statement or bill has been provided for any reason, it shall be applied to the unpaid interest accrued since the last payment); then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**MINIMUM BALANCE.** Borrower shall maintain at all times during the term hereof, a minimum average balance of **$250,000.00** on deposit with the Lender (the “Minimum Balance”) until this Note is paid in full. In the event that the Borrower fails to maintain the Minimum Balance with the Lender, and such failure continues for thirty (30) days following notice to Borrower, then and in such event, the interest rate then payable under this Note, shall be increased by **one hundred (100) basis points** until the Minimum Balance is established or re-established with the Lender. Any reserve accounts established will count toward the minimum deposit requirement, but said reserves will not be in lieu of establishing the deposits/operating account

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the 5-Year Treasury Rate as posted in the Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each Five (5) years. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.820% per annum.** Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 9.500 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 13.320%. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the effective rate of interest on this Note be less than 13.320% per annum or more than the maximum rate allowed by applicable law. Whenever changes occur in the interest rate, Lender, at its option, may do one or more of the following: (A) change Borrower's payments by setting a new payment amount calculated by amortizing the outstanding principal balance at the new interest rate over the remaining term of the loan, (B) increase Borrower's payments to cover accruing interest if the interest rate adjustment is an increase, (C) change the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and change Borrower's final payment amount.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note. (Initial Here** ________ **)**

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. **Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: A prepayment penalty spanning the initial three (3) years of the loan term would be applicable each year as follows - 5%/ 3% / 1%. The Loan Agreement will allow for partial principal reductions up to 10% of the original principal loan balance each year over and above the scheduled monthly payment without triggering the penalty.**

**--Five percent (5%) of the amount prepaid during the first year;**
**--Three percent (3%) of the amount prepaid during the second year;**
**--One percent (1%) of the amount prepaid during the third year;**

**Partial payments shall be credited in inverse order of maturity and all prepayments must be accompanied by payment of all accrued interest to the date of the prepayment. There shall be no prepayment penalty if the Borrower is required to make a prepayment to the Lender as a result of an involuntary transfer of the Property. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due.**

Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Newtek Business Services Holdco 6, Inc.; 200 S. Orange Avenue, Suite 1175; Orlando, FL 32801.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $35.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated June 30, 2025, to a trustee in favor of Lender on real property located in Lee County, State of Florida, Lee County, State of Alabama, Wayne County, State of Inidiana, Greene County, State of Arkansas, Frederick County, State of Virginia, Oklahoma County, State of Oklahoma, San Joaquin County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

(B) an Assignment of All Rents to Lender on real property located inLee County, State of Florida, Lee County, State of Alabama, Wayne County, State of Inidiana, Greene County, State of Arkansas, Frederick County, State of Virginia, Oklahoma County, State of Oklahoma, San Joaquin County, State of California.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives,

successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Newtek Business Services Holdco 6, Inc., 200 S. Orange Avenue, Suite 1175, Orlando, FL 32801.

**CHOICE OF VENUE.** Borrower agrees that all actions or proceedings arising out of or in connection with this Agreement, any other Related Document or any of the transactions contemplated hereby or thereby shall be tried and litigated exclusively (a) in the state courts or federal courts located in Miami-Dade County, State of Florida or (b) at the sole option of Lender any other court in which Lender shall initiate legal or equitable proceedings and which has subject matter jurisdiction over the matter in controversy. Borrower hereby irrevocably waives any objection to the laying of venue of any such action or proceeding in any such court and any claim that any such action or proceeding has been brought in an inconvenient forum. A final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law.

**WAIVER OF JURY TRIAL. BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF THIS AGREEMENT OR ANY RELATED DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY). BORROWER CERTIFIES THAT NO REPRESENTATIVE, AGENT, OR ATTORNEY OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. BORROWER ACKNOWLEDGES THAT LENDER HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER RELATED DOCUMENTS BY, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS IN THIS SECTION..**

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of State of Florida without regard to its conflict of law provisions. This Agreement has been accepted by Lender in the State of Florida.

**ACH DEPOSITORY REQUIREMENT.** Borrower shall establish and maintain a depository account with Newtek Bank, National Association to serve as the primary business operating account from which all payment due under the subject loan agreement shall be made monthly via ACH debit.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE. Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.**

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

[REMAINDER OF THIS PAGE BLANK - SIGNATURE PAGE FOLLOWS]

**BORROWER:**

**IAFAOPERATINGCO, LLC**

By: ______________________
Michael Shabsels, Manager ofIAFAOPERATINGCO, LLC

By: ______________________
David Shabsels, Manager of IAFAOPERATINGCO, LLC

**BELGRADE LAKES SUMMER CAMPS LLC**

By: ______________________
Michael Shabsels, Manager of BELGRADE LAKES SUMMER CAMPS LLC

By: ______________________
David Shabsels, Manager of BELGRADE LAKES SUMMER CAMPS LLC

**WAUKEELA OPERATINGCO LLC**

By: ______________________
Michael Shabsels, Manager of WAUKEELA OPERATINGCO LLC

By: ______________________
David Shabsels, Manager of WAUKEELA OPERATINGCO LLC

**MAINEWEKEELACO LLC**

By: ______________________
Michael Shabsels, Manager of MAINEWEKEELACO LLC

By: ______________________
David Shabsels, Manager of MAINEWEKEELACO LLC

**POLAND CAMPCO LLC**

By: ______________________
Michael Shabsels, Manager of POLAND CAMPCO LLC

By: ______________________
David Shabsels, Manager of POLAND CAMPCO LLC

**WM CAMP, LLC**

By: ______________________
Michael Shabsels, Manager of WM CAMP, LLC

By: ______________________
David Shabsels, Manager of WM CAMP, LLC

**CAMP MED-O-LARK, INC.**

By: ______________________
Michael Shabsels, President of CAMP MED-O-LARK, INC.

By: ______________________
Authorized Signer for CAMP MED-O-LARK, INC.

**BANNER OPERATINGCO LLC**

By: ______________________
Michael Shabsels, Manager of BANNER OPERATINGCO LLC

**Florida Documentary Stamp Tax**

**Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the Mortgage and Assignment of All Rents securing this Note.**

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - FL C:\CFI\LPL\D20.FC TR-10415 PR-26