# EXHIBIT "11"

# CONTROL AGREEMENT - DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $4,650,000.00 | 06-27-2025 | 07-05-2050 | [redacted]8495 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** **IAFAOPERATINGCO, LLC; BELGRADE LAKESSUMMER CAMPS LLC; WAUKEELA OPERATINGCO LLC; MAINEWEKEELACO LLC; POLAND CAMPCO LLC; WM CAMP, LLC; CAMP MED-O-LARK, INC.; and BANNER OPERATINGCO LLC**

**Lender:** **Newtek Business Services Holdco 6, Inc.**
**200 S. Orange Avenue, Suite 1175**
**Orlando, FL 32801**

---

**Debtor: IAFAOPERATINGCO, LLC; BELGRADE LAKES WAUKEELA OPERATINGCO LLC; WEKEELAND LLC; MAINEWEKEELACO LLC; POLAND CAMPCO LLC; WM CAMP, LLC; CAMP MED-O-LARK, INC.; and BANNER OPERATINGCO LLC**
1745 Bear Pond Road Hartford, ME 04220

**Secured Party:**
**Newtek Bank, National Association**
**Orlando Office**
**200 S. Orange Avenue, Suite 1175**
**Orlando, FL 32801**

**Depository Institution:**
**Newtek Bank, National Association Attn: Closing**
**1111 Brickell Avenue**
**Miami, FL 33131**

**AGREEMENT.** In consideration of the provisions of this Agreement, and for other good and valuable consideration, which has been received by the parties, the Debtor, the Secured Party, and the Depository Institution agree to all of the provisions in this Agreement.

**W I T N E S S E T H:**

A. Debtor and Secured Party have entered into that certain Security Agreement, dated as of even or near date herewith (as same may be amended, restated, modified and supplemented from time to time, the "**Security Agreement**"), pursuant to which Debtor has granted a security interest to Secured Party in all of the right, title and interest of Debtor in and to that certain deposit account, account number 375490940 maintained by Borrower with Depository Institution (the "**Account**").

B. Depository Institution acknowledges that, as of the date hereof, it maintains, in the name of the Debtor, the Account, and that the Account is a "deposit account" and Depository Institution is a "bank," each as defined in <u>Section 9-102</u> of the Uniform Commercial Code of the State of New York (the "**UCC**"). In addition to the terms and conditions of this Agreement, the Account is governed by the terms and conditions of any deposit account agreements and other related agreements that Debtor has with Depository Institution, including without limitation all agreements concerning banking products and services, treasury management documentation, account booklets containing the terms and conditions of the Account, signature cards, fee schedules, disclosures, specification sheets and change of terms notices (collectively, with all applicable services descriptions and/or agreements, the "**Deposit Agreements**"). The provisions of this Agreement shall supersede the provisions of the Deposit Agreements only to the extent the provisions herein are inconsistent with the Deposit Agreements, and in all other respects, the Deposit Agreements shall remain in full force and effect.

C. Debtor hereby confirms to Depository Institution that Debtor has granted to Secured Party a security interest as required by the Security Agreement in the following (collectively, the "Account Collateral"): (a) the Account and (b) the Items. The term "**Items**" means, collectively, all checks, drafts, instruments, certificates of deposit, cash and other items at any time received for deposit in the Account (subject to specific instructions in effect for processing items), wire transfers of funds, automated clearing house ("**ACH**") entries, credits from merchant card transactions and other electronic funds transfers or other funds deposited in, credited to, or held for deposit in or credit to, the Account.

D. The parties desire to enter into this Agreement in order (i) to establish "control" (as defined in Section 9-104 of the UCC) in the Account, (ii) to set forth their relative rights and duties with respect to the Account Collateral and (iii) to set forth the services that Depository Institution will provide with respect to the Account.

**NOW THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:**

**Section 1. <u>Duties of Depository Institution</u>.**

(a) <u>The Account</u>. Depository Institution shall establish and maintain the Account entitled as follows:

Name: CAMP MED-O-LARK, INC
Account No.: [redacted]
ABA No.: 026004297

(b) <u>Control</u>. In furtherance of the intentions of the parties hereto, this Agreement constitutes written notice by Secured Party to Depository Institution of Secured Party's security interest in the Account and this Agreement constitutes an "authenticated record" for purposes of Section 9-104(a)(2) of the UCC and is being entered into to give Secured Party control of the Account as contemplated by Section 9-104(a)(2) of the UCC. Depository Institution agrees that it will comply exclusively with withdrawal or entitlement orders and other directions or instructions from Secured Pary without the need for any further authorization of Debtor and will not comply with any withdrawal or entitlement orders or any other directions or instructions concerning the Account originated by Debtor without the prior written consent of Secured Party.

(c) <u>No Debtor Rights</u>. Debtor agrees that it shall have no right to issue withdrawal, payment, transfer, delivery, disposition or other instructions or any other right or ability to control, access, pick up, withdraw or transfer, deliver or dispose of Items or funds from the Account without Secured Party's prior written consent with respect thereto. Depository Institution agrees that it will comply exclusively with

instructions from Secured Party directing the disposition of funds in the Account without the need for any further authorization of Debtor. Except as otherwise provided for herein, Depository Institution will not permit the withdrawal or other disposition of any funds in the Account by Debtor without Secured Party's prior written consent. Depository Institution has not, and will not, agree with any third party to comply with instructions or other directions concerning the Account or the disposition of any funds therein originated by such third party without the prior written consent of Secured Party.

(d) Amendment and Termination of Instructions. Only the Secured Party (without the need for any further authorization for Debtor) may amend or terminate any authorizations or instructions with respect to the Account by written notice to Depository Institution, and Depository Institution shall not honor any amendments or other changes to authorizations or instructions with respect to the Account received from Debtor or any other person or entity.

(e) Security Interest in Items. Debtor and Depository Institution hereby agree that all proceeds of all Items deposited in the Account from time to time, together with all other funds received by Depository Institution in the Account via wire transfer, ACH, merchant card transactions and other electronic funds transfers, or otherwise, shall be held for the benefit of Secured Party and subject to the security interest granted to Secured Party by Debtor.

(f) Returned Items. Depository Institution hereby waives any and all rights it may have at law or otherwise to set off, or make any claim, against the Account, except Depository Institution expressly reserves all of Depository Institution's present and future rights (whether described as rights of setoff, banker's lien, chargeback or otherwise, and whether available to Depository Institution under law or any other agreement between Depository Institution and Debtor concerning the Account or otherwise) with respect to (i) any item deposited to the Account and returned unpaid, or with respect to which Depository Institution fails to receive final settlement, whether for insufficient funds or for any other reason, including but not limited to the claim of a forged instrument; (ii) any item subject to a claim against Depository Institution of breach of transfer or presentment warranty under the UCC; (iii) any ACH entry credited to the Account and returned unpaid or subject to an adjustment entry under applicable clearing house rules, whether for insufficient funds or for any other reason; (iv) any credit to the Account from a merchant card transaction, against which a contractual demand for chargeback has been made; (v) any credit to the Account made in error; and (vi) Depository Institution's usual and customary charges for services rendered in connection with the Account including the payment of Depository Institution's fees and expenses for maintenance of the Account. Items, entries, and transactions described in clauses (i) through (v) of this subsection (f) are hereinafter collectively referred to as "**Returned Items.**" Returned Items will be re-deposited the first time and if any Returned Items are returned unpaid a second time for whatever reason such Returned Items shall be debited to the Account under advice and returned to Debtor.

(g) Available Funds. Debtor agrees that withdrawals or transfers from the Account will not at any time exceed the available funds in the Account, as determined by Depository Institution's current availability schedule and subject to Depository Institution's right to place holds for uncollected funds pursuant to Federal Reserve Regulation CC. In all instances, Debtor shall remain liable to Depository Institution for all Returned Items.

(h) Monthly Report; System Access. Debtor authorizes Depository Institution, and Depository Institution agrees (without requiring Debtor's further authorization or instruction), to send or make available via Depository Institution's internet banking system or otherwise, at least a monthly report to Debtor and Secured Party containing information specifying the amount deposited into and withdrawn from the Account for the previous month.

(i) Rights Of Depository Institution. The Depository Institution does not have to pay uncollected funds. The Depository Institution does not have to make funds available before it is required to do so under federal law. The Depository Institution may comply with all applicable laws, regulations, rules, court orders, and other legal process.

**Section 2. Fees and Charges.**

(a) To compensate Depository Institution for performing the herein-described services, Debtor agrees to pay the fees owed to Depository Institution, including without limitation those fees and expenses set forth on the attached Schedule of Fees and Expenses which may be amended by Depository Institution from time to time upon at least 30 days' prior written notice to Debtor and Secured Party. Depository Institution shall debit the Account under advice on a monthly basis for its reasonable and customary fees and charges relating to the Account (including without limitation those fees and expenses set forth on the attached Schedule of Fees and Expenses which may be amended by Depository Institution from time to time upon at least 30 days' prior written notice to Debtor and Secured Party) and shall include its fees in the monthly report required pursuant to Section 1(h). Debtor agrees to pay Depository Institution, upon demand, all costs and expenses, including reasonable attorneys' fees and disbursements, incurred by Depository Institution in the preparation, negotiation and administration of this Agreement (including any amendments hereto or additional instruments or agreements required hereunder); and Debtor authorizes Depository Institution to charge the Account for such costs and expenses.
Debtor agrees to pay Depository Institution for all Returned Items and for all service charges, returned check fees and any other charges to which Depository Institution may be entitled for servicing and maintaining the Account (collectively with Returned Items, the "**Charges**") and authorizes Depository Institution to charge other accounts maintained with Depository Institution by Debtor for such Charges. In the event that there are insufficient collected funds on deposit in such other accounts to pay the Charges, Debtor and Secured Party agree that Depository Institution may debit the Account the amount of such Charges. With respect to any Returned Item, if Debtor fails to repay Depository Institution in accordance with this section, then Secured Party shall repay Depository Institution the amount of such Returned Item within ten (10) business days of receipt of written demand for such payment, provided that (i) such demand is received within ninety (90) days of the date such Returned Item was credited to the Account, and (ii) Secured Party or its respective designee received the proceeds of such Returned Item.

**Section 3. Representations And Agreements**. The Debtor represents to the Secured Party and agrees that: (a) no person or entity except the Secured Party has control over any of the Account Collateral; (b) neither the Debtor, nor to the best of Debtor's knowledge, the Depository Institution, has entered into any acknowledgment or agreement (including but not limited to any control agreement, pledged account agreement, blocked account agreement, or other acknowledgment or agreement) that gives any person or entity except the Secured Party (or acknowledges) control over any of the Account Collateral or any security interest, pledge, assignment, other interest, lien or other right or title in any of the Account Collateral; (c) Debtor will not permit any person or entity except the Secured Party to have control over any of the Account Collateral or any security interest, pledge, assignment, other interest, lien or other right or title in any of the Collateral; (d) Debtor will not enter into any acknowledgment or agreement (including but not limited to any control agreement, pledged account agreement, blocked account agreement, or other acknowledgment or agreement) that gives any person or entity except the Secured Party (or acknowledges) control over any of the Account Collateral, or any security interest, pledge, assignment, other interest, lien or other right or title in any of the Account Collateral; (e) unless the Secured Party otherwise requests or agrees in writing, the Debtor is and will remain the sole account holder of the Account; (f) no person or entity (except the Debtor, the Secured Party and the Depository Institution) has made a claim against any of the Account Collateral, or claims any security interest, pledge, assignment, other interest, lien or other right or title in any of the Account Collateral; and (g) Debtor and the Depository Institution will immediately notify the Secured Party if any person or entity (other than the Debtor, the Secured Party or the Depository Institution) makes a claim against any of the Collateral, or claims any security interest, pledge, assignment, other interest, lien or other right or title in any of the Collateral.

**Section 4. Indemnification.**

(a) Depository Institution shall not be liable for any claims, suits, actions, costs, damages, liabilities or expenses ("**Liabilities**") in connection with the subject matter of this Agreement other than Liabilities caused by the gross negligence or willful misconduct of Depository Institution, and Debtor and Secured Party and their respective successors and assigns, jointly and severally, hereby agree to indemnify and hold harmless Depository Institution and the directors, officers, employees and agents of Depository Institution and the successors and assigns of

Depository Institution from and against any and all Liabilities, legal fees, law suits or legal proceedings, including, without limitation, reasonable fees and disbursements of legal counsel incurred by Depository Institution in any action or proceeding between Debtor or Secured Party and Depository Institution or between Depository Institution and any third party or otherwise, without regard to the merit or lack of merit thereof, arising from or in connection with any acts or omissions taken by Depository Institution or any director, officer, employee or agent of any of them, as applicable, in connection with this Agreement, other than Liabilities caused by the gross negligence or willful misconduct of Depository Institution. Notwithstanding anything to the contrary contained herein, Depository Institution shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that Depository Institution's gross negligence or willful misconduct was the primary cause of any loss to Debtor or the Secured Party. Depository Institution may execute any of its powers or perform any of its duties hereunder directly or through agents or attorneys and may consult with counsel, accountants and other skilled persons to be selected and retained by it at the cost and expense of Debtor. Nothing contained herein shall be deemed to prohibit Depository Institution from complying with its customary procedures in the event that it is served with any legal process with respect to the Account.

(b) The parties hereto agree that Depository Institution's sole responsibility to Secured Party, Debtor or any third party for errors made by Depository Institution in processing any Deposits shall be to process a correcting entry in the next regularly scheduled processing of the work after receipt of notification from either Secured Party, Debtor or any third party of such error or after discovery of such error by Depository Institution, as the case may be, unless such error was due to Depository Institution's gross negligence or willful misconduct. Depository Institution shall not be liable for any damage or loss resulting from any delay or failure of performance arising out of the acts or omissions of any third parties, including, but not limited to, various communication services, courier services, the Federal Reserve System, any other bank or any third party who may be affected by funds transactions, fire, mechanical, computer or electrical failures or other unforeseen contingencies, strikes or other causes beyond the reasonable control of Depository Institution. In no event shall Depository Institution be liable for lost profits or consequential, special, direct (except for those direct damages attributable to Depository Institution's gross negligence or willful misconduct), indirect or punitive damages, even if Depository Institution has been advised of the possibility of the foregoing.

**Section 5.** **Successors and Assigns; Assignments.** The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns. This Agreement may be assigned by Secured Party to any successor of Secured Party under the Security Agreement, provided that written notice thereof is given by Secured Party to Depository Institution. This Agreement may be assigned by Depository Institution to any successor institution in connection with any merger, acquisition or other consolidation of Depository Institution. This Agreement may not be assigned by Debtor without the prior written consent of Depository Institution and Secured Party.

**Section 6.** **Termination.** This Agreement shall continue in effect until Secured Party has notified Depository Institution in writing that this Agreement, or its security interest in the Account Collateral, is terminated. Upon receipt of such notice, the obligations of Depository Institution hereunder with respect to the operation and maintenance of the Account after the receipt of such notice shall terminate. Depository Institution reserves the right, unilaterally, to terminate this Agreement, such termination to be effective upon thirty (30) business days' written notice to Secured Party and Debtor.

**Section 7.** **Complete Agreement.** This Agreement and the instructions and notices required or permitted to be executed and delivered hereunder set forth the entire agreement of the parties with respect to the subject matter hereof, and, subject to Section 8 below, supersede any prior agreement and contemporaneous oral agreements of the parties concerning its subject matter.

**Section 8.** **Amendments; Other Agreements**. This Agreement may be amended from time to time in writing by all parties hereto. This Agreement is supplemented by the terms and conditions of the Deposit Agreements, and to the extent the terms of such Deposit Agreements conflict with this Agreement, the specific terms of this Agreement shall control; provided, however, that this Agreement shall not alter or affect any mandatory arbitration provision currently in effect between Depository Institution and Debtor pursuant to the Deposit Agreements.

**Section 9.** **Notices**. All notices and requests required or permitted under this Agreement (a "**Notice**") shall be given in writing and shall be effective for all purposes if either hand delivered with receipt acknowledged, or by a nationally recognized overnight delivery service (such as Federal Express or UPS), or by certified or registered United States mail, return receipt requested, postage prepaid, in each case addressed as follows (or to such other address or Person as a party shall designate from time to time by notice to the other party):

If to Depository Institution:

Newtek Bank, National Association
1111 Brickell Avenue, Suite 135
Miami, FL 33131
Attn: President

With a copy to:

NewtekOne, Inc.
4800 T-Rex Ave., Suite 120
Boca Raton, FL 33431
Attn: Chief Legal Officer
If to Debtor, at the address therefor set forth on the first page of this Agreement:

If to Secured Party:
Newtek Bank, National Association
Orlando Office
200 S. Orange Avenue, Suite 1175
Orlando, FL 32801
Attn: President

With a copy to:

NewtekOne, Inc.
4800 T-Rex Ave., Suite 120
Boca Raton, FL 33431
Attn: Chief Legal Officer

A Notice shall be deemed to have been given: (i) if sent by hand delivery, upon delivery, (ii) if sent by nationally recognized overnight delivery service, upon delivery (or rejection by recipient) or (iii) if by certified or registered United States mail, return receipt requested, postage prepaid, upon delivery.

**Section 10.** Governing Law; Venue; WAIVER OF TRIAL BY JURY. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Florida (excluding the choice of law rules thereof). Each of the parties hereto hereby consents and agrees that the

state courts or federal courts located in Miami-Dade County, Florida (the “Acceptable Forums”) each shall have personal jurisdiction and proper venue with respect to any dispute between any of the parties hereto relating to the subject matter hereof. In any dispute with the Depository Institution and/or Secured Party, Debtor will not raise, and hereby expressly waives, any objection or defense to any such jurisdiction as an inconvenient forum. Should such proceeding be initiated in any other forum, Debtor waives any right to oppose any motion or application made by Secured Party or Depository Institution to transfer such proceeding to an Acceptable Forums. ANY ACTION OR PROCEEDING ARISING OUT OF OR CONCERNING THIS AGREEMENT SHALL BE HEARD BY A JUDGE SITTING WITHOUT A JURY AND EACH PARTY HERETO WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY MATTER CONCERNING THIS AGREEMENT. Florida shall be deemed to be Depository Institution’s “jurisdiction” within the meaning of Section 9-304 of the UCC.

**Section 11.** Certain Matters Affecting Depository Institution. Depository Institution may rely and shall be protected in acting or refraining from acting upon any notice (including but not limited to electronically confirmed facsimiles of such notice) reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties. The duties and obligations of Depository Institution set forth in this Agreement shall be determined solely by the express provisions of this Agreement. Depository Institution shall not be liable except for the performance of its duties and obligations as are specifically set forth in this Agreement (and subject to any limitations thereon as set forth in this Agreement), and no implied covenants or obligations shall be read into this Agreement against Depository Institution. The designation of Depository Institution’s jurisdiction for purposes of Article 9 of the Uniform Commercial Code in this Agreement shall be controlling in the event of any conflict between this Agreement and any other agreement between Depository Institution and Debtor governing any Account.

**Section 12.** Interpleader. If at any time Depository Institution, in good faith, is in doubt as to the action it should take under this Agreement, Depository Institution shall have the right to commence an interpleader action at Debtor’s sole cost and expense and to take no further action except in accordance with joint instructions from Secured Party and Debtor or in accordance with the final order of the court in such action.

**Section 13.** No Precedent in Negotiation. Each of the Secured Party and Debtor respectively agrees that it shall not cite or refer to this Agreement as a precedent in any negotiation of any other account agreement to which Secured Party, Debtor or any of their respective affiliates and Depository Institution shall be party.

**Section 14.** Headings. The section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

**Section 15.** Counterparts. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopier, facsimile machine, portable document format (“**PDF**”) or other electronic means (including electronic signature services such as DocuSign) shall be as effective as delivery of a manually executed counterpart of this Agreement. The effectiveness of any such documents and signatures shall, subject to applicable laws, have the same force and effect as manually signed originals and shall be binding on Debtor, Depository Institution and Secured Party. Secured Party may also require that any such documents and signatures be confirmed by a manually signed original thereof; provided, however, that the failure to request or deliver the same shall not limit the effectiveness of any facsimile document or signature. No party may raise the use of a telecopier, facsimile machine, PDF or other electronic means, or the fact that any signature was transmitted through the use of a telecopier, facsimile machine, PDF or other electronic means, as a defense to the enforcement of this Agreement.

**SCHEDULE OF FEES AND EXPENSES**

All services will be provided at the Depository Institution’s standard fees and rates in effect at such time unless otherwise specifically negotiated and agreed to in writing between the Depository Institution and Debtor or otherwise set forth in this Schedule of Fees and Expenses.

**Blocked Account Fee**

Blocked Account Monthly Fee: $350

*****Remainder of page left intentionally blank. Signature page follows.*****

# CONTROL AGREEMENT - DEPOSIT ACCOUNT
## (Continued)



**IN WITNESS WHEREOF, the parties hereto have executed this Agreement in several counterparts (each of which shall be deemed an original) as from the date first above written.**

**This Agreement is dated as of June 30, 2025.**

**BORROWER:**

**MAINEWEKEELACO, LLC**

BY: DocuSigned by: David Shabsels 69B4BC0438C5406...
David Shabsels, Manager of MAINEWEKEELACO, LLC

BY: DocuSigned by: Michael Shabsels BCBB5FD96F7645C...
Michael Shabsels, Manager of MAINEWEKEELACO, LLC

**IAFAOPRATINGCO, LLC**

BY: DocuSigned by: David Shabsels 69B4BC0438C5406...
David Shabsels, Manager of IAFAOPRATINGCO, LLC

BY: DocuSigned by: Michael Shabsels BCBB5FD96F7645C...
Michael Shabsels, Manager of IAFAOPRATINGCO, LLC

**BELGRADE LAKES SUMMER CAMPS LLC**

BY: DocuSigned by: David Shabsels 69B4BC0438C5406...
David Shabsels, Manager of BELGRADE LAKES SUMMER CAMPS LLC

BY: DocuSigned by: Michael Shabsels BCBB5FD96F7645C...
Michael Shabsels, Manager of BELGRADE LAKES SUMMER CAMPS LLC

**WAUKEELA OPERATINGCO LLC**

BY: DocuSigned by: David Shabsels 69B4BC0438C5406...
David Shabsels, Manager of WAUKEELA OPERATINGCO LLC

BY: DocuSigned by: Michael Shabsels BCBB5FD96F7645C...
Michael Shabsels, Manager of WAUKEELA OPERATINGCO LLC

**POLAND CAMPCO LLC**

BY: DocuSigned by: David Shabsels 69B4BC0438C5406...
David Shabsels, Manager of POLAND CAMPCO LLC

BY: DocuSigned by: Michael Shabsels BCBB5FD96F7645C...
Michael Shabsels, Manager of POLAND CAMPCO LLC

**WM CAMP, LLC**

BY: DocuSigned by: David Shabsels 69B4BC0438C5406...
David Shabsels, Manager of WM CAMP, LLC

BY: DocuSigned by: Michael Shabsels BCBB5FD96F7645C...
Michael Shabsels, Manager of WM CAMP, LL

**CAMP MED-O-LARK, INC.**

BY: DocuSigned by: David Shabsels 69B4BC0438C5406...
David Shabsels, Manager of CAMP MED-O-LARK, INC.

BY: DocuSigned by: Michael Shabsels BCBB5FD96F7645C...
Michael Shabsels, Manager of CAMP MED-O-LARK, INC.

**BANNER OPERATINGCO LLC**

BY: DocuSigned by: David Shabsels 69B4BC0438C5406...
David Shabsels, Manager of BANNER OPERATINGCO LLC

BY: DocuSigned by: Michael Shabsels BCBB5FD96F7645C...
Michael Shabsels, Manager of BANNER OPERATINGCO LLC

**LENDER:**

**NEWTEK BUSINESS SERVICES HOLDCO 6, INC.**

**X**______________________________________
**Authorized Signer**