**Exhibit "71"**

**APPRAISAL REPORT**

# Shabsels Brothers Summer Camps

**1133 Northwest L Street**
Wayne County
Richmond, Indiana 47374

Newtek Bank, National Association and its affiliates and subsidiaries
1981 Marcus Avenue, Suite 130
Lake Success, New York 11042

Tracking #754745-54305935

**EFFECTIVE DATE OF THE APPRAISAL:**
"As Is" June 12, 2025

**PRISM REALTY VALUATION & CONSULTING, LLC**
**FILE NUMBER: 25-311-SR**

**APPRAISER:**
Mark E. Mitchell, MAI, AI-GRS
Prism Realty Valuation and Consulting, LLC
120 Sears Avenue, Suite 215
Louisville, Kentucky 40207





PRVC

PRISM REALTY VALUATION & CONSULTING

June 27, 2025

Newtek Bank, National Association and its affiliates and subsidiaries
1981 Marcus Avenue, Suite 130
Lake Success, New York 11042

SUBJECT: 1133 Northwest L Street
Wayne County
Richmond, Indiana 47374
Tracking #754745-54305935
PRVC 25-311 SR

To Whom It May Concern:

We are pleased to transmit the appraisal report prepared for the referenced property. The purpose of this appraisal is to derive an opinion of the "as is" market value of the leased fee estate of the property as of June 12, 2025, the effective date of the appraisal. Our opinion of market value is premised upon the Assumptions and Limiting Conditions beginning on Page 3. The definition of market value is in Addendum A.

This report is intended to comply with the reporting requirements set forth under Standard Rule 2-2 of the Uniform Standards of Professional Appraisal Practice for an appraisal report.

The subject is an industrial building on 17.15 acres (according to the assessor) with a gross area of 220,285 square feet constructed in 1955 with additions in 1982 to 2007. The building is a distribution building with a 28- to 30-foot ceiling height and 8.8% Class C office space. The property is not marketed or under a contract or option to buy. The building is 100% leased to TSN East, LLC. The lessee has been a tenant for 20+ years and signed a 5th amendment to the lease in June 2023. The lease extends to March 21, 2029. The current lease rate is $2.72 with steps to $3.04 in April of 2028. The contract rent is slightly below market. There is a renewal period for an additional 5 years.

Mark E. Mitchell, MAI 120 Sears Avenue, Suite 215 Louisville, Kentucky 40207 ● 502.290.8263 ● fax 502.714.7312 ● mmitchell@prismrvc.com

Based on the analyses and conclusions, and subject to the definitions, assumptions, and limiting conditions expressed in this report, it is our opinion that the “as is” market value of the leased fee estate of the subject, as of June 12, 2025, is:

**SIX MILLION TWO HUNDRED THOUSAND DOLLARS**
**$6,200,000**

The preceding value conclusion is not subject to any extraordinary assumptions and there are no hypothetical conditions. If the assumptions are invalid, the market value may be negatively impacted.

If you have any questions or comments, please contact the undersigned. Thank you for the opportunity to serve.

Respectfully Submitted,

PRISM REALTY VALUATION & CONSULTING, LLC

Mark E. Mitchell, MAI, AI-GRS,
Certified General Real Estate Appraiser
Indiana Certificate #CG49300053

# TABLE OF CONTENTS

PAGE NO.

**CERTIFICATION** ... **1**

**ASSUMPTIONS AND LIMITING CONDITIONS** ... **3**

**SUMMARY OF SALIENT FACTS AND CONCLUSIONS** ... **6**

**GENERAL INFORMATION** ... **7**

- Identification of Subject ... 7
- Current Ownership, Sales History, and Status ... 7
- Purpose, Property Rights, and Effective Date ... 7
- Intended Use of the Appraisal ... 7
- Scope of Appraisal ... 7
- Regional Analysis ... 10
- Neighborhood Analysis ... 13
- Demographics ... 14
- Market Analysis Summary ... 15
- Exposure Time and Marketing Period ... 18

**PROPERTY ANALYSIS** ... **19**

- Description and Analysis of the Land ... 19
- Description and Analysis of the Improvements ... 21
- Highest and Best Use Analyses ... 28

**VALUATION ANALYSIS** ... **30**

- Valuation Methodology ... 30
- Sales Comparison Approach ... 31
- Income Capitalization Approach ... 15
- Analysis of Income ... 26
- Reconciliation ... 31
- Insurable Replacement Cost ... 33

**ADDENDA**

- Definitions ... Addendum A
- Property Information ... Addendum B
- Qualifications of Appraiser ... Addendum C
- Engagement Letter ... Addendum D

# CERTIFICATION

We certify that, to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.
2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.
3. We have no present or prospective interest in the property that is the subject of this report, and we have no personal interest with respect to the parties involved.
4. We have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
5. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.
6. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
7. Our analyses, opinions, and conclusions have been developed, and this report has been prepared, in compliance with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute, in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP) as promulgated by the Appraisal Standards Board of The Appraisal Foundation, and in accordance with the appraisal-related mandates within Title XI of the Federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA).
8. Mark E. Mitchell, MAI, AI-GRS, made a personal inspection of the property that is the subject of this report on June 12, 2025.
9. No one provided significant assistance to the person signing this report.
10. This appraisal is not based on a requested minimum valuation, a specific valuation, or the approval of a loan.
11. The appraisers have not relied on unsupported conclusions relating to characteristics such as race, color, religion, national origin, gender, marital status, familial status, age, receipt of public assistance income, handicap, or an unsupported conclusion that homogeneity of such characteristics is necessary to maximize value.
12. It is our opinion that the subject does not include any enhancement in value as a result of any natural, cultural, recreational, or scientific influences retrospective or prospective.

13. We have extensive experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.
14. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.
15. I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
16. As of the date of this appraisal, Mark E. Mitchell, MAI, AI-GRS, has completed the requirements of the continuing education program of the Appraisal Institute.

Mark E. Mitchell, MAI, AI-GRS
Certified General Real Estate Appraiser
Indiana Certificate #CG49300053

# ASSUMPTIONS AND LIMITING CONDITIONS

In conducting this appraisal, we have assumed, except as otherwise noted in our report, as follows:

1. The title is marketable and free and clear of all liens, encumbrances, encroachments, easements, and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.
2. There are no existing judgments or pending or threatened litigation that could affect the value of the property.
3. There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.
4. The property is in compliance with all applicable building, environmental, zoning, and other federal, state, and local laws, regulations, and codes.

Our appraisal report is subject to the following limiting conditions, except as otherwise noted in our report.

1. An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.
2. The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the affect of subsequent events.
3. No changes in any federal, state, or local laws, regulations, or codes (including, without limitation, the Internal Revenue Code) are anticipated.
4. No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.
5. We are not required to give testimony or to be in attendance in Court or any government or other hearing with reference to the property without written contractual arrangements having been made relative to such additional employment.
6. We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.
7. No opinion is expressed as to the value of subsurface oil, gas, or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.
8. We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other

legal matters, geologic considerations, such as soils and seismic stability, and civil, mechanical, electrical, structural, and other engineering and environmental matters.

9. The distribution of the total valuation in this report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. This appraisal report shall be considered only in its entirety. No part of this appraisal report shall be utilized separately or out of context.

10. Neither all, nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute), shall be disseminated through advertising media, public relations media, news media, or any other means of communication (including without limitation prospectuses, private offering memoranda, and other offering material provided to prospective investors) without the prior written consent of the appraisers.

11. Information, estimates, and opinions contained in this report, obtained from sources outside of the office of the undersigned, are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in this appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. No assurance is provided that the methodology and/or results of the appraisal will not be successfully challenged by the Internal Revenue Service. In particular, the methodology for appraising certain types of properties, including without limitation, government subsidized housing, which has been the subject of debate.

14. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

15. No consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

16. The current purchasing power of the dollar is the basis for the value stated in our appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

17. The value found herein is subject to these and to any other assumptions or conditions set forth in the body of this report which may have been omitted from this list of Assumptions and Limiting Conditions.

18. The analyses contained in this report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment, and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may

occur; therefore, actual results achieved during the period covered by our analysis will vary from our estimates, and the variations may be material.

19. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of this property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. In as much as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, we cannot comment on compliance to ADA. Given that compliance can change with each owner's financial ability to cure non-accessibility, the value of the subject does not consider possible non-compliance. Specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

20. This appraisal report has been prepared for the exclusive benefit of Newtek Bank, National Assocaition and its affiliates and subsidiaries; 1981 Marcus Avenue, Suite 130; Lake Success, New York 11042. It may not be used or relied upon by any other party. All parties who use or rely upon any information in this report without our written consent do so at their own risk.

21. No studies have been provided to us indicating the presence or absence of hazardous materials on the site or in the improvements, and our valuation is predicated upon the property being free and clear of any environment hazards.

22. We have not been provided with any evidence or documentation as to the presence or location of any flood plain areas and/or wetlands. Wetlands generally include swamps, marshes, bogs, and similar areas. We are not qualified to detect such areas. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

# SUMMARY OF SALIENT FACTS AND CONCLUSIONS

| INDUSTRIAL BUILDING | |
|---|---|
| **Property** | 1133 Northwest L Street<br>Wayne County<br>Richmond, Indiana 40258 |
| **Property Tax Identification Numbers** | 89-16-30-000-309.000-030 |
| **Effective Date of the Appraisal** | "As Is" June 12, 2025 |
| **Date of the Report** | June 18, 2025 |
| **Owner of Record** | 1133 Northwest L Street Real Estate, LLC |
| **Land Size** | 17.15 Acres |
| **Gross Building Area (GBA)** | 220,285 Square Feet |
| **Current Occupancy** | 100% Leased |
| **Year Built** | 1955, additions in 1982 to 2007 |
| **Zoning Designation** | I-2, Industrial District |
| **Flood Plain Map Panel # and Date** | 18177C0256E; Effective Date: April 2, 2015 |
| **Flood Plain Designation** | Zone X |
| **Real Estate Taxes, Year 2025** | $47,062 (E) |
| **Highest and Best Use As Improved** | Industrial Use |
| **Property Rights Appraised** | Leased Fee Estate |
| **Estimated Exposure Time and Marketing Period** | Less than 6 to 9 Months, Less than 6 to 9 Months |

| **Market Value Indications** | **"As Is" Market Value** |
|---|---|
| **Cost Approach** | Not Considered |
| **Sales Comparison Approach** | $6,600,000 |
| **Income Capitalization Approach** | $6,200,000 |
| **Market Value Conclusion** | **$6,200,000** |

### *STRENGTHS*

- As indicated in the Market Analysis, market rents have been increasing at 4.9% per year.
- Months to lease is less than 10 months

### *WEAKNESS*

- Due to inflation and tariffs, rising construction costs are a risk factor.
- Mortgage interest rates have remained steady for the past twelve months.

# GENERAL INFORMATION

## IDENTIFICATION OF SUBJECT

The subject is an industrial building located at 1133 Northwest L Street. The subject is identified as parcel number 89-16-30-000-309.000-030 according to the Wayne County Assessor.

## CURRENT OWNERSHIP, SALES HISTORY, AND STATUS

The subject is owned by 1133 Northwest L Street Real Estate, LLC. The property was transferred on October 4, 2017, from the FR Northwest L Street, LLC, according to Document ID 2017008174, for $5,050,000. The transfer was arm's length. To our knowledge, no other sale or transfer of ownership has occurred within the past three years. As of the effective date, the property is not subject to an agreement of sale or an option to buy. The subject is leased to TSN East, LLC. The lease agreement is 5 years and was signed in June 2023.

## PURPOSE, PROPERTY RIGHTS, AND EFFECTIVE DATE

The purpose of this appraisal is to derive our opinion of the leased fee interest of the "as is" market value of the subject as of June 12, 2025, the effective date of the appraisal. Unless otherwise stated, all factors pertinent to determining value have been considered as of this date. The property was inspected on June 12, 2025, by Mark E. Mitchell, MAI, AI-GRS.

## INTENDED USE OF THE APPRAISAL

The intended user is Newtek Bank, National Association and its affiliates and subsidiaries, its successors or assigns and any participating financial institutions. The valuation assignment was developed consistent with the scope specified by Newtek Bank, National Association and its affiliates and subsidiaries.

## SCOPE OF APPRAISAL

Newtek Bank, National Association and its affiliates and subsidiaries, Service 1st, LLC engaged us to appraise the subject property and provide an appraisal report. As part of this appraisal, we have completed the following steps to gather, confirm, and analyze the data.

- The lender and the borrower supplied the following information:
  - Financial Information
  - Lease Agreement

- The neighborhood and subject property were inspected on June 12, 2025. Sources of information for the neighborhood analysis include local publications and information in our database. Secondary data for population, households, and income levels was derived from Site to Do Business. This information includes census data, projections, and forecasts. The history of the subject was based on courthouse records, as well as discussions with the owners, as of the effective date of the appraisal. For purpose of analysis, we relied on the information from the Wayne County Assessor office.

- The building and site descriptions were determined through our physical inspection of the subject property as well as public information. We prepared a highest and best use analysis of the subject as vacant and improved.

- We collected and confirmed market information needed to consider the sales comparison and income capitalization approaches. The data was based on available data from secondary sources including Multiple Listing Service and LoopNet. The databases were searched between the effective date of the appraisal and the report date. We interviewed agents active in the market about sales and leasing of properties in the area. Our work file includes all of the comparable databases including sales, leases, costs, and expenses. An appraisal report was prepared setting forth the conclusion derived in this analysis, as well as a summary of the information upon which the conclusions are based.

This report involves an appraisal of the subject and conforms to the requirements of the Uniform Standards of Professional Appraisal Practice (USPAP), the Appraisal Institute, and the appraisal guidelines set forth in the Financial Institutions Reform Recovery Enforcement Act (FIRREA).

The following information was unavailable:

- Title Report
- ADA Compliance Report
- Environmental Report
- Site Plan
- Building Plans

The unavailable information is assumed to not materially impact the value.

Additional information regarding the appraisal methods used Cane be found in the individual sections of this report. Pertinent definitions, including the definition of market value and property rights appraised, are in Addendum A.

The scope of work is believed to have been completed to the depth required for this assignment as indicated by the client. If the client believes the scope does not meet their needs or requirements, please contact our firm immediately.

# REGIONAL ANALYSIS

## *BOUNDARIES*

The subject area is Wayne County, in east Indiana. The regional analysis is along the I-70 corridor between Indianapolis and Dayton Ohio.

## *LOCATION*

The subject is in the city of Richmond. Major arterials are I-70, US 27, US 35 and US 40.

## *AREA MAP*



## *DEMOGRAPHICS SUMMARY*

The 2024 population was 65,950 persons and is estimated to be 65,353 in 2029, or an annual decline rate of -0.18%. The median household income for 2024 was $54,980.

| Summary | Census 2010 | Census 2020 | 2024 | 2029 |
|---|---|---|---|---|
| Population | 68,917 | 66,553 | 65,950 | 65,353 |
| Households | 27,551 | 27,409 | 27,399 | 27,526 |
| Families | 18,126 | 16,903 | 16,488 | 16,424 |
| Average Household Size | 2.41 | 2.35 | 2.33 | 2.30 |
| Owner Occupied Housing Units | 18,526 | 18,012 | 18,705 | 19,011 |
| Renter Occupied Housing Units | 9,025 | 9,397 | 8,694 | 8,515 |
| Median Age | 40.2 | 41.4 | 41.4 | 42.1 |

| Trends: 2024-2029 Annual Rate | Area | State | National |
|---|---|---|---|
| Population | -0.18% | 0.24% | 0.38% |
| Households | 0.09% | 0.47% | 0.64% |
| Families | -0.08% | 0.33% | 0.56% |
| Owner HHs | 0.33% | 0.75% | 0.97% |
| Median Household Income | 3.98% | 2.98% | 2.95% |

| | 2024 | | 2029 | |
|---|---|---|---|---|
| Households by Income | Number | Percent | Number | Percent |
| <$15,000 | 3,072 | 11.2% | 2,500 | 9.1% |
| $15,000 - $24,999 | 2,377 | 8.7% | 1,990 | 7.2% |
| $25,000 - $34,999 | 2,707 | 9.9% | 2,438 | 8.9% |
| $35,000 - $49,999 | 4,502 | 16.4% | 3,989 | 14.5% |
| $50,000 - $74,999 | 3,961 | 14.5% | 3,840 | 14.0% |
| $75,000 - $99,999 | 4,464 | 16.3% | 4,730 | 17.2% |
| $100,000 - $149,999 | 3,894 | 14.2% | 4,718 | 17.1% |
| $150,000 - $199,999 | 1,195 | 4.4% | 1,781 | 6.5% |
| $200,000+ | 1,227 | 4.5% | 1,540 | 5.6% |
| | | | | |
| Median Household Income | $54,980 | | $66,812 | |
| Average Household Income | $76,886 | | $90,036 | |
| Per Capita Income | $32,074 | | $38,055 | |

*Source: Site To Do Business 2025*




*Source: Site To Do Business 2025*

## *EMPLOYMENT DATA*

The employment levels for Wayne County have shown a stabilization of 29,680 jobs as of March 2025. The unemployment rate is at 3.2%.




*Source: FRED 2025*




*Source: FRED 2025*

The employment segmentation is 43.3% service, 20.2% retail trade and 15.3% manufacturing. Major employers are Sugar Creek Ford and Reid Health.

## *OUTLOOK*

Given the history of the growth trends, it is our opinion that the values in the subject neighborhood are expected to generally be stable in the near future. Population growth is stagnant relative to Indiana and the U.S.

# NEIGHBORHOOD ANALYSIS

## *BOUNDARIES*

The subject is in the western portion of Richmond. For the purposes of this report, the neighborhood boundaries are described as the western portion of Wayne County. The boundaries are the city of Richmond.




## *PRIVATE/PUBLIC TRANSPORTATION LINKAGES*

Primary access to the neighborhood is from I-70, US 27, and US 40. Public transportation is provided in the city.

## *TRENDS*

During the last five years, the subject's neighborhood has experienced an average increase in residential and industrial development. Major industrial buildings are All Coast Logistics with 900,000 square feet, Richmond Center Manufacturing with 562,000 square feet, and Beiden with 537,000 square feet. Major retail buildings are Richmond Mall with 270,000 square feet and Gateway Shopping Center with 200,000 square feet.

## DEMOGRAPHICS

Households are increasing and the population is increasing in the three-mile radius. Median household income is $76,715.

| | 1 mile | 2 miles | 3 miles |
|---|---|---|---|
| **Census 2020 Summary** | | | |
| Population | 2,693 | 15,412 | 38,217 |
| Households | 1,034 | 6,041 | 15,365 |
| Average Household Size | 2.60 | 2.55 | 2.48 |
| **2024 Summary** | | | |
| Population | 2,644 | 15,360 | 38,398 |
| Households | 1,013 | 6,020 | 15,404 |
| Families | 686 | 4,069 | 10,072 |
| Average Household Size | 2.61 | 2.55 | 2.49 |
| Owner Occupied Housing Units | 877 | 4,728 | 11,394 |
| Renter Occupied Housing Units | 136 | 1,292 | 4,010 |
| Median Age | 39.0 | 39.3 | 39.7 |
| Median Household Income | $78,737 | $68,246 | $65,057 |
| Average Household Income | $96,458 | $83,109 | $82,346 |
| **2029 Summary** | | | |
| Population | 2,616 | 15,395 | 38,641 |
| Households | 999 | 6,034 | 15,469 |
| Families | 673 | 4,042 | 10,041 |
| Average Household Size | 2.62 | 2.55 | 2.49 |
| Owner Occupied Housing Units | 873 | 4,760 | 11,522 |
| Renter Occupied Housing Units | 126 | 1,274 | 3,946 |
| Median Age | 39.6 | 40.3 | 40.6 |
| Median Household Income | $89,417 | $79,231 | $76,719 |
| Average Household Income | $113,953 | $97,027 | $96,700 |
| **Trends: 2024-2029 Annual Rate** | | | |
| Population | -0.21% | 0.05% | 0.13% |
| Households | -0.28% | 0.05% | 0.08% |
| Families | -0.38% | -0.13% | -0.06% |
| Owner Households | -0.09% | 0.13% | 0.22% |
| Median Household Income | 2.58% | 3.03% | 3.35% |

### *OUTLOOK AND CONCLUSIONS*

In summary, the neighborhood is primarily influenced by retail and office users to the south. Demand for residential, commercial, and industrial is average growth.

## MARKET ANALYSIS SUMMARY

The subject is in Richmond, Indiana. Most of the area's buildings were constructed from the late 1950s to the 2000s.

### *SUBMARKET OVERVIEW*

The market area is defined as I-70 corridor between Indianapolis, Indiana and Dayton, Ohio. It consisted of industrial buildings ranging from 100,000 to 500,000 square feet constructed between 1950 to the 2000's.

| INVENTORY SF | UNDER CONSTRUCTION SF | 12 MO NET ABSORPTION SF | VACANCY RATE | MARKET ASKING RENT/SF | MARKET SALE PRICE/SF | MARKET CAP RATE |
|---|---|---|---|---|---|---|
| 12.8M +0% | 0 - | (80.2K) -114.7% | 7.8% +0.6% | $4.62 +4.7% | $37 +6.9% | 11.3% -0.2% |
| Prior Period 12.8M | Prior Period 0 | Prior Period 546K | Prior Period 7.2% | Prior Period $4.41 | Prior Period $35 | Prior Period 11.5% |

*Source: CoStar 2025*

Asking rents trended higher, and vacancy rates trended lower, which are positive signs for the market. The market area is 12.8 million square feet, and the average rent is $4.62 per square foot.




*Source: CoStar 2025*

## MARKET RENT

Market rents appreciated 4.9% over the past 5 years.




*Source: CoStar 2025*

## OCCUPANCY

Occupancy rates for the past 10 years are stabilized at 82% to 99%.




*Source: CoStar 2025*

### NET ABSORPTION

Net absorption was negative in 2023 and 2024.




*Source: CoStar 2025*

### MONTHS TO LEASE

Months to lease was 10 months for 2024.




*Source: CoStar 2025*

### DEMAND ANALYSIS

The prospects for the market area for industrial use in the short term are not expected to change because of the expected and forecasted growth of the overall market.

### *Market Analysis Conclusions*

Supply and demand factors indicate that vacancy is 5% to 10% in the short term. Market rents and months to lease are positive indicators. The supply of buildings for sale has remained stable for the past 12 months. We are projecting a vacancy rate of 5%, which is more in line with the historic 10-year period.

## Exposure Time and Marketing Period

Generally, exposure time relates to what has occurred (retrospective) and is occurring (current) in the market, whereas marketing period is a projection (prospective) of what is likely to occur in the market. Any sound opinion of value must consider what has occurred and what will most likely occur. Both time periods are a function of price, time, use, and the cost and availability of funds. The primary difference between the two time periods is that we also consider anticipated changes in market conditions (trends) for the marketing period.

Assuming professional marketing to potential purchasers of the subject type at or near the market value concluded in this report, we estimate a marketing period of less than 6 to 9 months. This estimate is based primarily on the subject's size, age, and location.

Based on the market value estimated herein, the total exposure and marketing time are forecasted to be less than 6 to 9 months.

# PROPERTY ANALYSIS

## DESCRIPTION AND ANALYSIS OF THE LAND

The subject is on the northwest corner of Northwest L Street and Northwest 11th Street. The surrounding uses are industrial. The subject site is summarized as follows. The subject abuts the Norfolk Southern Railroad to the south. The description is based on our inspection and information gathered from public records.




### *PHYSICAL FEATURES*

**Land Area:** 17.15 Acres

**Configuration:** Irregular

**Topography:** Level

**Drainage:** Adequate to onsite storms drains. Water run-off flows towards the south.

**Flood Plain Community Panel #:** 18177C0256E; Effective Date: April 2, 2015, Zone X

**Access:** Access is via NW 11th Street

**Frontage:** 1,070 front feet along NW 11th Street, 55 feet along NW L Street, and 852 feet along NW N Street

**Environmental Hazards:** Environmental evaluation is beyond our scope of expertise. A qualified engineer should be consulted on this matter. No obvious hazardous materials or conditions were observed during our inspection.

**Condition:** Average

**Traffic Levels:** Low

## *LEGAL*

**Zoning Designation:** I-2, Industrial District

**Permitted Uses:** Industrial

**Conformance:** Based on our inspection, the current use of the site constitutes a legally permissible use that conforms to the current zoning ordinance.

**Easements, Encumbrances, and Moratoria:** We were not provided a current title report to review and are not aware of any easements, encumbrances, or restrictions that would adversely affect the site's use. A title search is recommended to determine whether any adverse conditions exist. We are not aware of any moratoria on development that would affect the property.

**Encroachments:** We were not provided with a survey. An inspection of the site revealed no apparent encroachments that impact the site's utility.

## *UTILITIES*

All public utilities.

## *SUMMARY OF LAND DESCRIPTION*

The subject site is more than adequate for uses permitted by zoning, including industrial use, and the available utilities adequately serve the site. The site has adequate frontage and depth for industrial use.

## DESCRIPTION AND ANALYSIS OF THE IMPROVEMENTS

The subject is an industrial building with 220,285 square feet (19,640 square feet of office space and the maintenance building 8,525 square feet included). The office space is considered to be Class "C".



View Of North Elevation



View Of North Elevation



View Of North Elevation



View Of East Elevation





View Of East Elevation

View Of East Elevation





View Of West Elevation

View Of West Elevation





View Of South Elevation

View Of Parking Lot





View Of Parking Lot

View Of Parking Lot



View Of Interior Office




View Of Interior Office




View Of Interior Office



View Of Interior Office



View Of Interior Warehouse




View Of Interior Warehouse


View Of Interior Warehouse


View Of Interior Warehouse


View Of Interior Warehouse



View Of Interior Warehouse


View Of Interior Warehouse


View Of Maintenance Building



View Of Maintenance Building

### *EXTERIOR DESCRIPTION*

There are two buildings: a warehouse with 211,760 square feet and a maintenance building with 8,525 square feet

**General Property Type:** Industrial

**Gross Building Area (GBA):** 220,285 Square Feet (19,490 square feet of office)

**Source of Square Footage Information:** Measurements, Assessor

**Stories:** One

**Current Occupancy:** 100% Leased

**Year Built:** 1955, 1982 to 2007, Maintenance building 1981

**Estimated Effective Age:** 20 Years

**Remaining Economic Life:** 30 Years

**Estimated Physical Life:** 50 Years

**Type/Quality of Construction:** Class C, Concrete Block and Metal Class S

**Foundation:** Concrete footings

**Structural Frame:** Concrete

**Exterior Walls/Windows:** Concrete Block and Metal, metal overhang, metal siding/Aluminum framed doors, and double pane windows.

**Roof:** Metal decking, and truss, metal gutters and downspouts

**Miscellaneous:** 35 dock high doors and nine drive-in doors

### *INTERIOR DESCRIPTION*

**Interior Walls:** Office - drywall and glass partitions, Warehouse - insulation

**Floor Cover:** Office -Tile, carpet, Warehouse - sealed concrete

**Ceiling Cover:** Office - drywall, Warehouse – insulation, Ceiling Height 12' to 28 feet, the average is estimated at 18 feet

**Lighting:** Fluorescent and LED

**Miscellaneous:** Breakroom, conference rooms. The building was used for cold storage prior to 2000. The freezer and cooler space have 26' ceiling height and was constructed in 1978.

**Condition:** Average

### *EQUIPMENT AND MECHANICAL SYSTEMS*

**HVAC:** Office has forced air gas and central air conditioning; Warehouse has overhead gas heat.

**Electrical:** 1,000-amp service, three-phase with breakers, separate meters

**Plumbing:** There are three restrooms with two fixtures, locker rooms PVC plumbing, gas water heaters and breakroom fixture.

**Condition:** Average

**Maintenance Building**

The maintenance building is metal exterior walls and roof. The interior is insulated with sealed concrete floors. The building was constructed in 1981. Ceiling height is 20 feet. There is a truck scale within the building. The building has eight drive-in doors.

### *SITE IMPROVEMENTS*

**Number of Parking Spaces:** 150 asphalt parking spaces, truck parking

**Surface Type/Condition:** Asphalt and concrete, Average Condition

**Site Improvements:** Sidewalk, exterior lighting, fencing

**Drainage and Retention:** Adequate; storm sewer drainage systems allow site water to be collected

## *IMPROVEMENTS ANALYSIS*

**Deferred Maintenance:** There is no major deferred maintenance.

**Quality of Construction:** Average

**Functional Utility:** Our inspection did not reveal any significant items of functional obsolescence.

**ADA Compliance:** Assumed ADA compliant

**Environmental:** Environmental evaluation is beyond our scope of expertise. Upon physical inspection of the site and improvements, no indication "to the untrained eye" of environmental hazard was found. Unless stated otherwise, we assume no hazardous conditions exist on or near the subject.

## *REAL ESTATE TAX ANALYSIS*

Real estate tax assessments are a function of the Department of Assessments and Taxation and are estimated by jurisdiction of Wayne County.

For the tax year, January 1, 2025 through December 31, 2025, the estimated real estate taxes for the subject are the assessed value divided by 100, then multiplied by the composite rate of 2.261. The real estate assessment is $2,081,200 or real estate taxes of $47,062. The real estate taxes will be based on the market value.

| Real Estate Taxes | | | | |
|---|---|---|---|---|
| | 2022 | 2023 | 2024 | Projected |
| | $ 2,210,800 | $ 2,210,800 | $ 2,081,200 | |
| Total Taxes | $ 2,210,800 | $ 2,210,800 | $ 2,081,200 | $ 6,200,000 |
| Rate | 2.297 | 2.375 | 2.261 | 2.261 |
| Total Taxes | $ 50,786 | $ 52,511 | $ 47,062 | $ 140,201 |

# HIGHEST AND BEST USE ANALYSES

## *PROCESS*

Before a property's value can be concluded, the highest and best use of the property must be determined for both the subject site as though vacant, and for the property as currently improved (if applicable). The highest and best use must be:

- Legally permissible under the zoning laws and other restrictions that apply to the site.
- Physically possible for the site.
- Economically feasible.
- Capable of producing the highest net return on investment (i.e. highest value) from among the possible, permissible, and economically feasible uses.

## *AS THOUGH VACANT*

### LEGALLY PERMISSIBLE

Zoning codes, land use plans, easements, and private deed restrictions often restrict permitted uses. The site is zoned I-2, Industrial District. Allowed uses are industrial. Given prevailing land use patterns in the area and recognizing the principle of conformity, only industrial has been given further consideration in determining the highest and best use of the site, as though it is vacant.

### PHYSICALLY POSSIBLE

The subject is located within Richmond Industrial Park. The site's physical characteristics should reasonably accommodate any use that is not restricted by its size. It has adequate frontage and access Northwest L Street and Northwest 11th Street.

### FINANCIALLY FEASIBLE

Based on the information gathered from the market, there is currently modest demand for similar properties in the market area. Also, based on the analyses performed in the following sections of this report, land in the market is priced at a level that is considered competitive in today's economic climate.

### MAXIMALLY PRODUCTIVE

Industrial is the only use that meets the previous three tests. Accordingly, it is concluded to be maximally profitable and the highest and best use of the site, as though vacant.

## *AS IMPROVED*

### LEGALLY PERMISSIBLE

As improved, the subject property appears to be a legally conforming use.

### PHYSICALLY POSSIBLE

The subject is improved with an industrial building on a 17.15-acre site that conforms to its surrounding uses. The site has frontage and access from Northwest L Street and Northwest 11th Street. The ceiling height and percentage of office space are typical of most industrial manufacturing buildings. The building does not suffer from significant functional obsolescence.

### FINANCIALLY FEASIBLE

Financial feasibility, such as income-producing real estate, is based on how much income it can generate net of the required operating expenses. If the resulting net operating income motivates continued operation, the land is being put to a productive and financially feasible use. The subject can produce net cash flow. The existing improvements provide contributory value to the site, and no alternate use would result in greater value. Therefore, utilization of the existing improvements is financially feasible.

### MAXIMALLY PRODUCTIVE

The maximally productive use should conform to neighborhood trends and be consistent with nearby land uses. The single use that produces the greatest return on investment and usually the highest price and value is typically the highest and best use. As shown in the applicable valuation sections, properties like the subject have been acquired and continue to be used as industrial buildings. None of the comparable properties were acquired for conversion to an alternate use. This provides evidence suggesting that the current use is maximally productive. The property is leased. The most likely buyer is an investor.

# VALUATION ANALYSIS

## VALUATION METHODOLOGY

The traditional methods of processing market data into a value indication include:

- Cost Approach
- Sales Comparison Approach
- Income Capitalization Approach

The cost approach assumes that the informed purchaser would pay no more than the cost of producing a substitute property with the same utility. This approach is particularly applicable when the improvements being appraised are relatively new and represent the highest and best use of the land, or when the property has unique or specialized improvements for which there is little or no sales data from comparable properties.

The sales comparison approach assumes that an informed purchaser would pay no more for a property than the cost of acquiring another existing property with the same utility. This approach is especially appropriate when an active market provides sufficient reliable data that can be verified from authoritative sources. The sales comparison approach is less reliable in an inactive market or when estimating the value of properties for which no real comparable sales data is available. It is also questionable when sales data cannot be verified with principals to the transaction.

The income capitalization approach reflects the market's perception of a relationship between a property's potential income and its market value, a relationship expressed as a capitalization rate. This approach converts the anticipated benefits (dollar income or amenities) derived from property ownership into a value indication through capitalization. This approach is widely applied when appraising income-producing properties.

We have used the two of the three approaches (the sales comparison approach and the income capitalization approach) to determine the market value in preparing this report. The reconciliation at the end of this appraisal report discusses each approach's relative strengths and weaknesses and reconciles the estimated market value.

## SALES COMPARISON APPROACH

The sales comparison approach to value involves estimating market value using the following steps: To value the subject, we have researched, analyzed, and confirmed improved sales in the region. All of the sales are leased fee estate. The sales are 140,960 square feet to 251,310 square feet and sold from $20.69 per square foot to $51.43 per square foot. The sales comparison grid, which follows this discussion, summarizes pertinent data and appropriate adjustments. The basis for the sales comparison approach is dollar per square foot.

| No. | Location | Sale Date | Price | Building Size (SF) | Price/ SF |
|---|---|---|---|---|---|
| 1. | 1205 E Lincoln St | 10/20/2023 | $6,820,000 | 170,623 | $39.97 |
| 2. | 500 N US Highway 31 | 01/01/2024 | $5,200,000 | 251,310 | $20.69 |
| 3. | 1505 Industrial Dr | 07/17/2023 | $7,250,000 | 140,960 | $51.43 |
| 4. | 2860 N National Rd | 11/25/2024 | $3,950,000 | 145,278 | $27.19 |
| 5. | 13065 Anderson Rd | 02/10/2025 | $7,900,000 | 193,675 | $40.79 |



**Improved Sale No. 1**




| | |
|---|---|
| **Property Identification** | |
| **Record ID** | 17885 |
| **Property Type** | Industrial, Warehouse/Manufacturing |
| **Address** | 1205 E Lincoln St, Nappanee, Elkhart County, Indiana 46550 |
| **Tax ID** | 20-14-31-404-008.000-029 |
| **Sale Data** | |
| **Grantor** | Air Investments, LLC |
| **Grantee** | Grandview Park Partners, LLC |
| **Sale Date** | October 20, 2023 |
| **Deed Book/Page** | 04618 |
| **Property Rights** | Leased Fee |
| **Conditions of Sale** | Market |
| **Financing** | Conventional |
| **Verification** | Rod Beer/Beer Slabaugh; 574-773-3413, Other sources: PVA/2025 |
| **Sale Price** | $6,820,000 |
| **Cash Equivalent** | $6,820,000 |
| **Adjusted Price** | $6,820,000 |
| **Land Data** | |
| **Land Size** | 14.660 Acres or 638,590 SF |
| **Zoning** | M-2, Industrial |
| **Topography** | Level |
| **Utilities** | E, G, S, W |
| **Flood Info** | Zone X |
| **General Physical Data** | |
| **Building Type** | Single Tenant |

**Improved Sale No. 1 (Cont.)**

| | |
|---|---|
| **Gross SF** | 170,623 |
| | |
| **Construction Type** | Metal |
| **Roof Type** | Metal |
| **Foundation** | Concrete |
| **Stories** | 1 |
| **Floor Height** | 20' |
| **Year Built** | 1973 Reno 2020 |
| **Condition** | Average |
| | |
| **Truck High Docks** | 4 |
| **Drive-in Doors** | 6 |
| | |
| **Income Analysis** | |
| **Net Operating Income** | $472,155 |
| | |
| **Indicators** | |
| **Sale Price/Gross SF** | $39.97 |
| **Floor Area Ratio** | 0.27 |
| **Land to Building Ratio** | 3.74:1 |
| **Occupancy at Sale** | 100 |
| **Overall or Cap Rate** | 6.92% |
| **Net Operating Income/Sq. Ft.** | $2.77 |

**Remarks**

170,623 square foot industrial property sold in Oct 2023 for $6,820,000, leased to Lippert Components Manufacturing at time of sale Lease has 9 years remaining with 2.25% annual increase

**Improved Sale No. 2**




| | |
|---|---|
| **<u>Property Identification</u>** | |
| **Record ID** | 17133 |
| **Property Type** | Industrial, Warehouse |
| **Property Name** | Austin Distribution Center |
| **Address** | 500 N US Highway 31, Austin, Scott County, Indiana 47102 |
| **Tax ID** | 72-03-36-200-013.000-002 |

| | |
|---|---|
| **<u>Sale Data</u>** | |
| **Grantor** | Warehouse Enterprises, LLC |
| **Grantee** | Post Road Warehousing II, LLC |
| **Sale Date** | January 01, 2024 |
| **Deed Book/Page** | 2024004046 |
| **Property Rights** | Leased Fee |
| **Conditions of Sale** | Market |
| **Financing** | Conventional |
| **Verification** | Denis King/Warehouse Enterprises; 502-803-1071, Other sources: PVA/2024 |
| | |
| **Sale Price** | $5,200,000 |
| **Cash Equivalent** | $5,200,000 |
| **Adjusted Price** | $5,200,000 |

| | |
|---|---|
| **<u>Land Data</u>** | |
| **Land Size** | 10.280 Acres or 447,797 SF |
| **Zoning** | HI, Heavy Industrial |
| **Topography** | Level |
| **Utilities** | E, G, S, W |
| **Shape** | Irregular |
| **Flood Info** | Zone X |

**Improved Sale No. 2 (Cont.)**

| | |
|---|---|
| **General Physical Data** | |
| **Building Type** | Multi-Tenant |
| **Gross SF** | 251,310 |
| | |
| **Construction Type** | Steel |
| **Roof Type** | Metal |
| **Foundation** | Concrete |
| **Electrical** | 1,200 Amp, 220-480V, 3 ph |
| **Sprinklers** | Yes |
| **Stories** | 1 |
| **Floor Height** | 20' |
| **Year Built** | 1934 Renov 2020 |
| **Condition** | Average |
| | |
| **Truck High Docks** | 26 |
| **Levelers** | 3 |
| **Drive-in Doors** | 1 |
| | |
| **Income Analysis** | |
| **Net Operating Income** | $478,400 |
| | |
| **Indicators** | |
| **Sale Price/Gross SF** | $20.69 |
| **Floor Area Ratio** | 0.56 |
| **Land to Building Ratio** | 1.78:1 |
| **Overall or Cap Rate** | 9.2% |
| **Net Operating Income/Sq. Ft.** | $1.90 |

**Remarks**

Industrial building with 251,310 square feet, including 8,400 square feet of office space, sold in January 2024 for $5,200,000. The Property was fully occupied at the time of sale, and the seller was motivated to divest due to medical reasons.

**Improved Sale No. 3**




| | |
|---|---|
| **Property Identification** | |
| **Record ID** | 17555 |
| **Property Type** | Industrial, Manufacturing |
| **Address** | 1505 Industrial Dr, North Vernon, Jennings County, Indiana 47265 |
| **Tax ID** | 40-09-28-400-083.000-004, 40-09-27-300-021.003-004 |
| | |
| **Sale Data** | |
| **Grantor** | Scilin, LLC |
| **Grantee** | North Vernon Investments, LLC |
| **Sale Date** | July 17, 2023 |
| **Deed Book/Page** | 2023/002200 |
| **Property Rights** | Leased Fee |
| **Conditions of Sale** | Market |
| **Financing** | Conventional |
| **Verification** | Ed Halabut/JLL(Broker); 312-228-2007, Other sources: PVA/2024 |
| | |
| **Sale Price** | $7,250,000 |
| **Cash Equivalent** | $7,250,000 |
| **Adjusted Price** | $7,250,000 |
| | |
| **Land Data** | |
| **Land Size** | 11.500 Acres or 500,940 SF |
| **Zoning** | I-H |
| **Topography** | Level |
| **Utilities** | E, G, S, W |

**Improved Sale No. 3 (Cont.)**

| | | |
|---|---|---|
| **Flood Info** | Zone X | |
| **General Physical Data** | | |
| **Building Type** | Single Tenant | |
| **Gross SF** | 140,960 | |
| **Construction Type** | Metal | |
| **Roof Type** | Metal | |
| **Foundation** | Concrete | |
| **Stories** | 1 | |
| **Floor Height** | 20' | |
| **Year Built** | 1977 2000 ren 2003 | |
| **Condition** | Average | |
| **Parking** | Surface | 235 |
| **Truck High Docks** | 19 | |
| **Levelers** | 19 | |
| **Drive-in Doors** | 7 | |
| **Income Analysis** | | |
| **Net Operating Income** | $594,500 | |
| **Indicators** | | |
| **Sale Price/Gross SF** | $51.43 | |
| **Floor Area Ratio** | 0.28 | |
| **Land to Building Ratio** | 3.55:1 | |
| **Occupancy at Sale** | 100 | |
| **Overall or Cap Rate** | 8.2% | |
| **Net Operating Income/Sq. Ft.** | $4.22 | |

**Remarks**

140,960 square feet industrial building sold in July 2023 for $7,250,000. The Sale includes two parcels. At the time of the sale, the tenant was Martinrea International, and the and the NOI for 2023 was $594,500. 9% office

**Improved Sale No. 4**




**Property Identification**

| | |
|---|---|
| **Record ID** | 17878 |
| **Property Type** | Industrial, Warehouse |
| **Address** | 2860 N National Rd, Columbus, Barthlomew County, Indiana 47201 |
| **Tax ID** | 03-96-18-000-000.600-005 |

**Sale Data**

| | |
|---|---|
| **Grantor** | Pa-Il-In, LLC |
| **Grantee** | 2860 North, LLC |
| **Sale Date** | November 25, 2024 |
| **Deed Book/Page** | 2024009342 |
| **Property Rights** | Leased Fee |
| **Conditions of Sale** | Market |
| **Financing** | Conventional |
| **Verification** | Dean Bingham; 217 342 4443, Other sources: PVA/2025 |
| **Sale Price** | $3,950,000 |
| **Cash Equivalent** | $3,950,000 |
| **Adjusted Price** | $3,950,000 |

**Land Data**

| | |
|---|---|
| **Land Size** | 7.180 Acres or 312,761 SF |
| **Zoning** | I |
| **Topography** | Level |
| **Utilities** | E, G, S, W |
| **Flood Info** | Zone X |

**General Physical Data**

| | |
|---|---|
| **Building Type** | Single Tenant |

**Improved Sale No. 4 (Cont.)**

| | | |
|---|---|---|
| **Gross SF** | 145,278 | |
| | | |
| **Construction Type** | Metal/Masonry | |
| **Roof Type** | Flat | |
| **Foundation** | Concrete | |
| **Stories** | 1 | |
| **Year Built** | 1970 | |
| **Condition** | Average | |
| | | |
| **Parking** | Surface | 130 |
| | | |
| **Truck High Docks** | 10 | |
| **Drive-in Doors** | 3 | |
| | | |
| **<u>Income Analysis</u>** | | |
| **Net Operating Income** | $296,250 | |
| | | |
| **<u>Indicators</u>** | | |
| **Sale Price/Gross SF** | $27.19 | |
| **Floor Area Ratio** | 0.46 | |
| **Land to Building Ratio** | 2.15:1 | |
| **Overall or Cap Rate** | 7.5% | |
| **Net Operating Income/Sq. Ft.** | $2.04 | |

**Remarks**

Industrial building with 145,278 square feet sold in November 2024 for $3,950,000, Agracel Inc., regional industrial investment and broker. 8% office, Confirmed with seller

**Improved Sale No. 5**



**Property Identification**

| | |
|---|---|
| **Record ID** | 17887 |
| **Property Type** | Industrial, Warehouse |
| **Address** | 13065 Anderson Rd, Granger, St Joseph County, Indiana 46530 |
| **Tax ID** | 71-04-13-427-001.000-011 |

**Sale Data**

| | |
|---|---|
| **Grantor** | MWD Holdings, LLC |
| **Grantee** | F Street Granger, LLC |
| **Sale Date** | February 10, 2025 |
| **Deed Book/Page** | 2025-03028 |
| **Property Rights** | Leased Fee |
| **Verification** | Gregory Pink/Bradley Company; 574-220-8636, Other sources: PVA/2025 |
| **Sale Price** | $7,900,000 |
| **Cash Equivalent** | $7,900,000 |
| **Adjusted Price** | $7,900,000 |

**Land Data**

| | |
|---|---|
| **Land Size** | 24.330 Acres or 1,059,815 SF |
| **Zoning** | I, Industrial |
| **Topography** | Level |
| **Flood Info** | Zone X |

**Improved Sale No. 5 (Cont.)**

| | |
|---|---|
| **General Physical Data** | |
| **Building Type** | Single Tenant |
| **Gross SF** | 193,675 |
| | |
| **Construction Type** | Metal |
| **Roof Type** | Metal |
| **Foundation** | Concrete |
| **Electrical** | Heavy |
| **Stories** | 1 |
| **Floor Height** | 20' |
| **Year Built** | 1986 Renovated 2024 |
| **Condition** | Average |
| | |
| **Indicators** | |
| **Sale Price/Gross SF** | $40.79 |
| **Floor Area Ratio** | 0.18 |
| **Land to Building Ratio** | 5.47:1 |

**Remarks**

193,675 square foot industrial building sold in Jan 2025 for $$7,900,000. Cap Rate 8.95%, Property had 2.6 million in renovations to include new roof, LED lighting, loading dock improvements, insulation repairs, parking lot work and office demolition

## *ADJUSTMENTS*

### REAL PROPERTY RIGHTS CONVEYED

This adjustment is generally applied to reflect the transfer of property rights that differ from those being appraised, such as differences between properties leased at market rent and those leased at rent levels either below or above market. The length of remaining leases also influences required adjustments.

### FINANCING TERMS

This adjustment is generally applied to a property that transfers with atypical financing such as having assumed an existing mortgage at a favorable interest rate. No adjustment was required.

### CONDITIONS OF SALE

This adjustment category reflects extraordinary motivations of the buyer and the seller to complete the sale. No adjustment was required.

### EXPENDITURES AFTER PURCHASE

Expenditures after purchase are anticipated capital expenditures by the buyer at the time of purchase.

If the previous adjustments are required, they are applied sequentially in the order indicated.

### MARKET CONDITIONS

The improved sales have sold since 2023. Mortgage interest rates and capitalization rates are 30 to 60 basis points higher. The market condition adjustment is downward 1% per year.

### LOCATION/DENSITY

This adjustment category generally reflects differences between the subject location and density. All of the comparables are in the general area of the subject.

| Land / Density Adjustment | | | | | |
|---|---|---|---|---|---|
| **Comparable** | **1** | **2** | **3** | **4** | **5** |
| **Address** | **1205 E Lincoln St** | **500 N US Highway 31** | **1505 Industrial Dr** | **2860 N National Road** | **13065 Anderson Road** |
| **Size GBA** | 170,623 | 251,310 | 140,960 | 145,278 | 193,675 |
| | | | | | |
| **Acres** | 14.60 | 10.28 | 11.50 | 7.18 | 24.34 |
| **Land Price** | $ 45,000 | $ 25,000 | $ 45,000 | $ 45,000 | $ 25,000 |
| **Allocated Land Value** | $ 657,000 | $ 257,000 | $ 517,500 | $ 323,100 | $ 608,500 |
| | | | | | |
| **SP/GBA** | $ 40 | $ 21 | $ 51 | $ 27 | $ 41 |
| **LV/GBA** | $ 4 | $ 1 | $ 4 | $ 2 | $ 3 |
| **BLG/GBA** | $ 36 | $ 20 | $ 48 | $ 25 | $ 38 |
| **Subect LV** | $515,000 | $515,000 | $515,000 | $515,000 | $515,000 |
| **Subect GBA** | 220,285 | 220,285 | 220,285 | 220,285 | 220,285 |
| **LV/GBA** | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 |
| | | | | | |
| **Difference** | $ (2) | $ 1 | $ (1) | $ 0 | $ (1) |
| **Adjustment** | **-4%** | **6%** | **-3%** | **0%** | **-2%** |

### PHYSICAL CHARACTERISTICS (AGE/CONDITION)

This adjustment category generally reflects differences between the subject and the comparables in age and condition. The adjustment is based on 2% per year of the difference in the effective age of the comparables relative to the subject.

| Age/ Condition | | | | | |
|---|---|---|---|---|---|
| | **1** | **2** | **3** | **4** | **5** |
| | **1205 E Lincoln St** | **500 N US Highway 31** | **1505 Industrial Dr** | **2860 N National Road** | **13065 Anderson Road** |
| Effective Age | 15 | 30 | 20 | 30 | 12 |
| Subject Effective Age | 20 | 20 | 20 | 20 | 20 |
| Difference | -5 | 10 | 0 | 10 | -8 |
| Times: Dep | 2 | 2 | 2 | 2 | 2 |
| **Percent Depreciation** | **-10%** | **20%** | **0%** | **20%** | **-16%** |

### OFFICE PERCENTAGE

The office percentage for the subject is 8.8%. The comparables are 3.3% to 12%. The office space for the subject is Class "C" and the comparables are Class "B-" to "C". The adjustment is 0.8% for the difference in the percentage of office space.

### SIZE/UTILITY

This adjustment category generally addresses any difference between the size of the subject and the comparables. The subject is 220,285 square feet. The comparables are 140,960 square feet to 251,310 square feet. IS #3 and #4 were adjusted downward 5% based on MVS and paired sales.

### EFFECTIVE CEILING HEIGHT

This adjustment category generally addresses any difference between the ceiling height. The subject's average ceiling height is 18 feet. The comparables are 20 feet to 24 feet. The adjustment is 0.5% for each foot of difference in effective ceiling height based on paired sales and MVS. IS #1, #2, #3, #4, and #5 have been adjusted.

### SUMMARY

IS #1 is an industrial building on East Lincoln Street in Nappanee, Indiana. The building was constructed in 1973 and renovated in 2020. It was purchased as an investment property at a capitalization rate of 6.9%. The improvements were average for the market. This sale was given weight.

IS #2, on North US Highway 31 in Austin, Indiana, was purchased by a regional investor. The seller had a medical condition that influenced the sale. The building was used as a warehouse. It was constructed in 1934 and renovated in 2020. The sale was given less weight.

IS #3 is an industrial building on Industrial Drive in North Vernon, Indiana. It was constructed in 1977 and renovated in 2003. An investor purchased the building, and the sale was given less weight.

IS #4 is on North National Road in Columbus, Indiana. It was purchased by a regional investor. The building was constructed in 1970 and had a lower effective age. The sale was given less weight.

IS #5 is an industrial building on Anderson Road in Granger, Indiana. It was purchased by an investor. The building has a higher effective age. The sale was given weight.

Placing primary weight on IS# 1 and #5, we have concluded a value of $30 per square foot. The sales were adjusted to $25 to $42 per square foot. Consequently, the sales comparison approach indicates a value calculated as follows:

**"As Is" Market Value**
**220,285 Square Feet X $30 per Square Foot = $6,600,000 Rounded**

## Sales Comparison Approach

| | SUBJECT | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|
| KEY NUMBER | | 17885 | 17133 | 17555 | 17878 | 17887 |
| NAME | | | | | | |
| ADDRESS | 1133 Northwest L Street | 1205 E Lincoln St | 500 N US Highway 31 | 1505 Industrial Dr | 2860 N National Road | 13065 Anderson Road |
| CITY | Richmond | Nappanee | Austin | North Vernon | Columbus | Granger |
| STATE | Indiana | Indiana | Indiana | Indiana | Indiana | Indiana |
| DATE OF SALE | N/A | October-23 | January-24 | July-23 | November-24 | February-25 |
| SALE PRICE | N/A | $6,820,000 | $5,200,000 | $7,250,000 | $3,950,000 | $7,900,000 |
| CASH EQUIV/AMT | N/A | $6,820,000 | $5,200,000 | $7,250,000 | $3,950,000 | $7,900,000 |
| GROSS LEASABLE AREA | 220,285 | 170,623 | 251,310 | 140,960 | 145,278 | 193,675 |
| GROSS BUILDING AREA | 220,285 | 170,623 | 251,310 | 140,960 | 145,278 | 193,675 |
| LAND AREA (SF) | 747,054 | 638,590 | 447,797 | 500,940 | 312,761 | 1,059,815 |
| LAND AREA (ACRES) | 17.15 | 14.66 | 10.28 | 11.50 | 7.18 | 24.33 |
| YEAR BUILT | 1955 Addition 1982 to 2007 | 1973 Reno 2020 | 1934 Reno 2020 | 1977 Reno 2003 | 1970 | 1986 Ren 2024 |
| CEILING HEIGHT | 20 | 20 | 20 | 20 | 24 | 20 |
| OFFICE % | 8.8% | 7.0% | 3.3% | 12.0% | 8.0% | 10.0% |
| USE | Industrial | Industrial | Industrial | Industrial | Industrial | Industrial |
| EFFECTIVE AGE | 20 | 15 | 30 | 20 | 30 | 12 |
| CONDITION | Average | Average | Average | Average | Average | Average |
| LAND/BUILDING | 3.4 | 3.7 | 1.8 | 3.6 | 2.2 | 5.5 |
| **PRICE PER GBA** | | $39.97 | $20.69 | $51.43 | $27.19 | $40.79 |
| PROPERTY RIGHTS | | Leased Fee Estate | Leased Fee Estate | Leased Fee Estate | Leased Fee Estate | Leased Fee Estate |
| DOLLAR ADJUSTMENT | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| PERCENTAGE ADJUSTMENT | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| FINANCING TERMS | | Cash Equiv | Cash Equiv | Cash Equiv | Cash Equiv | Cash Equiv |
| DOLLAR ADJUSTMENT | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| PERCENTAGE ADJUSTMENT | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| CONDITIONS OF SALE | | Market | Market | Market | Market | Market |
| DOLLAR ADJUSTMENT | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| PERCENTAGE ADJUSTMENT | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| EXPENDITURES AFTER PURCHASE | | | | | | |
| DOLLAR ADJUSTMENT | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| PERCENTAGE ADJUSTMENT | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| TOTAL ADJUSTMENTS | | | | | | |
| DOLLAR ADJUSTMENT | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| PERCENTAGE ADJUSTMENT | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| PRICE PER GBA | | $39.97 | $20.69 | $51.43 | $27.19 | $40.79 |
| MARKET CONDITIONS | | | | | | |
| % ADJUSTMENT | | -2.00% | -1.00% | -2.00% | -1.00% | 0.00% |
| ADJUSTMENT $/SF | | ($0.80) | ($0.21) | ($1.03) | ($0.27) | $0.00 |
| **ADJUSTED $/SF** | | **$39.17** | **$20.48** | **$50.40** | **$26.92** | **$40.79** |
| LOCATION/DENSITY | | | | | | |
| DOLLAR ADJUSTMENT | | ($1.50) | $1.30 | ($1.31) | $0.11 | ($0.80) |
| PERCENTAGE ADJUSTMENT | | -3.82% | 6.36% | -2.59% | 0.42% | -1.97% |
| AGE-CONDITION | | | | | | |
| DOLLAR ADJUSTMENT | | ($4.00) | $4.14 | $0.00 | $5.44 | ($6.53) |
| PERCENTAGE ADJUSTMENT | | -10.00% | 20.00% | 0.00% | 20.00% | -16.00% |
| OFFICE % | | | | | | |
| DOLLAR ADJUSTMENT | | $0.58 | $0.91 | ($1.27) | $0.18 | ($0.38) |
| PERCENTAGE ADJUSTMENT | | 1.48% | 4.44% | -2.52% | 0.68% | -0.92% |
| SIZE | | | | | | |
| DOLLAR ADJUSTMENT | | $0.00 | $0.00 | ($2.52) | ($1.35) | $0.00 |
| PERCENTAGE ADJUSTMENT | | 0.00% | 0.00% | -5.00% | -5.00% | 0.00% |
| EFFECTIVE CEILING HEIGHT | | | | | | |
| DOLLAR ADJUSTMENT | | $0.00 | $0.00 | $0.00 | ($0.54) | $0.00 |
| PERCENTAGE ADJUSTMENT | | 0.00% | 0.00% | 0.00% | -2.00% | 0.00% |
| **NET ADJUSTMENT** | | ($4.92) | $6.35 | ($5.10) | $3.84 | ($7.71) |
| **NET PERCENT ADJUSTMENT** | | -12.30% | 30.69% | -9.91% | 14.14% | -18.89% |
| **ADJUSTED PRICE** | | **$34** | **$27** | **$45** | **$31** | **$33** |

| ….MARKET RANGE PER GBA…. | |
|---|---|
| **MAXIMUM =** | **$45** |
| **MINIMUM =** | **$27** |

| …..INDICATED SUBJECT VALUE….. | | |
|---|---|---|
| **220,285** | **SQUARE FEET @** | |
| **$30** | **PER GBA =** | **$6,608,550** |
| | **ROUNDED TO:** | **$6,600,000** |

# INCOME CAPITALIZATION APPROACH

## *INTRODUCTION*

The income capitalization approach uses one or more techniques in which the subject's anticipated net operating income is capitalized into a value indication. The validity of this value indication depends on the quality of the data available to estimate income, vacancy, and expenses, and to select a capitalization rate. Other important factors concern the characteristics of the income stream, its economic life span, and the method used to convert the net income into value.

In this analysis, we have used only the direct capitalization method because investors for this property type are currently emphasizing this method.

## *SUBJECT STATUS*

The subject is leased to TSN East, LLC on a NNN basis. TSN East, LLC has leased the building for 20+ years. The lessee renewed the lease in June 2023 for a five-year period beginning in April 2024. The lessee has an option for another 5-year extension.

**Subject Lease Summary**

| Tenant | Lease Date | Term | Size | Annual Rent | $/S.F. | Lessor Expenses | Lessee Expenses |
|---|---|---|---|---|---|---|---|
| TSN East LLC | Nov-24 | 5.0 | 220,285 | $ 599,308 | $ 2.72 | MG, A | TX, I, EM, IM, U |
| | April-24 | March-25 | 220,285 | $590,452 | $2.68 | | |
| | April-25 | March-26 | 220,285 | $599,308 | $2.72 | | |
| | April-26 | March-27 | 220,285 | $608,298 | $2.76 | | |
| | April-27 | March-28 | 220,285 | $617,422 | $2.80 | | |
| | April-28 | March-29 | 220,285 | $662,684 | $3.01 | | |

Key: TX- Taxes; Ins- Insurance; EM- Exterior Maintenance; IM- Interior Maintenance, UT- Utilities; MG- Management; A - Administration, E- Electric

## *RENT COMPARABLES*

The lease comparables are warehouse and manufacturing buildings between 116,560 square feet and 251,310 square feet. The unadjusted comparable rents are $2.65 to $4.23 per square foot.

**Lease Comparables**

| # | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| **KEY #** | 3979 | 3980 | 3982 | 3983 | 3988 |
| **Address** | **500 N US Hwy 31** | **1625 Saint George Road** | **1535 Fieldhouse Ave** | **2211 S Defiance St** | **301 S Butterfield** |
| **City** | Austin | Evansville | Elkhart | Archbold | Munice |
| **State** | IN | IN | IN | OH | IN |
| **Use** | Industrial | Industrial | Industrial | Industrial | Industrial |
| **Date of Lease** | 2023 | 2023 | 2023 | 2021 | 2024 |
| **Size (SF)** | 251,310 | 205,982 | 246,000 | 206,000 | 116,560 |
| **Annual Rent** | $ 816,758 | $ 871,304 | $ 651,900 | $ 762,200 | $ 448,756 |
| **$/SF** | $3.25 | $4.23 | $2.65 | $3.70 | $3.85 |
| **Year Built** | 1934 Reno 2020 | 1943 Ren 2018-19 | 1953 | 1976 | 1969 |
| **Ceiling Height** | 20 | 31 | 16 | 26 | 30 |
| **Office %** | 5% | 5% | 8% | 10% | 8% |
| **Landlord Pays** | | | | | |
| **TX** | | X | | | |
| **INS** | | X | | | |
| **EM** | | | | | |
| **IM** | | | | | |
| **UT** | | | | | |
| **MG** | X | X | X | X | X |
| **A** | X | X | X | X | X |
| **$/Adj** | $ - | $ (1.50) | $ - | $ - | $ - |
| **Adjusted Rent $/SF** | **$3.25** | **$2.73** | **$2.65** | **$3.70** | **$3.85** |
| **Location** | Similar | Similar | Similar | Similar | Similar |
| | 0% | 0% | 0% | 0% | 0% |
| **Size** | Similar | Similar | Similar | Similar | Similar |
| | 0% | 0% | 0% | 0% | 0% |
| **Age/Condition** | Superior | Similar | Inferior | Similar | Superior |
| | -10% | 0% | 10% | 0% | -15% |
| **Adjusted Rent $/SF** | $ 2.93 | $ 2.73 | $ 2.92 | $ 3.70 | $ 3.27 |

Key: TX- Taxes; Ins- Insurance; EM- Exterior Maintenance; IM- Interior Maintenance, UT- Utilities; MG- Management; A - Administration


Chicago
Aurora
Gary
3
4
Toledo
Cleveland
Fort Wayne
Akron
Peoria
Mansfield
Lafayette
Kokomo
Ohio
5
Illinois
Champaign
S
Columbus
Springfield
Indianapolis
Dayton
Terre Haute
Cincinnati
1
Ohio River Islands National Wildlife Refuge
Charleston
Louisville
Frankfort
2
Lexington
Kentucky
Cape Girardeau
Daniel Boone National Forest
Bowling Green
Cumberland Plateau
Kingsport
Bristol
Clarksville
Blue Ridge

**Improved Lease No. 1**



**Property Identification**

| | |
|---|---|
| **Record ID** | 3979 |
| **Property Type** | Industrial, Warehouse/Distribution |
| **Property Name** | Austin Distribution Center |
| **Address** | 500 N US Highway 31, Austin, Scott County, Indiana 47102 |

**Physical Data**

| | |
|---|---|
| **Land Size** | 10.000 Acres or 435,600 SF |
| **Gross SF** | 251,310 |
| **Construction Type** | Steel |
| **Roof Type** | Flat |
| **Foundation** | Concrete |
| **Stories** | 1 |
| **Floor Height** | 20' |
| **Industrial** | Class "B" |
| **Year Built** | 1934 |
| **Condition** | Average |

**General Lease Data**

| | |
|---|---|
| **Tenant** | Confidential |
| **Lease Type** | MG |
| **Tenant Size** | 251,310 to 251,310 |

**General Tenant Summary**

| | |
|---|---|
| **Verification** | David Stith/Stith Commercial Brokers; 812-378-9899 |

**Rent Analysis**

| | |
|---|---|
| **Rent** | $3.25 - $3.25/SF; $3.25/SF Average |

**Remarks**

Start date July 2023

**Improved Lease No. 2**



**Property Identification**

| | |
|---|---|
| **Record ID** | 3980 |
| **Property Type** | Industrial, Warehouse/Manufacturing |
| **Address** | 1625 Saint George Rd, Evansville, Vanderburgh County, Indiana 47711 |

**Physical Data**

| | |
|---|---|
| **Land Size** | 16.160 Acres or 703,930 SF |
| **Gross SF** | 205,982 |
| | |
| **Construction Type** | Masonry |
| **Roof Type** | Flat |
| **Foundation** | Concrete |
| **Electrical** | Heavy |
| **Stories** | 2 |
| **Floor Height** | 31' |
| **Industrial** | Class "C" |
| **Year Built** | 1943 Renov 2018-2019 |
| **Condition** | Average |

**General Lease Data**

| | |
|---|---|
| **Tenant** | SRG Global Trim |

**Improved Lease No. 2 (Cont.)**

| | |
|---|---|
| **Typical Lease Term** | 5 Years |
| **Tenant Size** | 205,982 to 205,982 |

**General Tenant Summary**

| | |
|---|---|
| **Verification** | Patrick Dedering/Phoenix Investors; 414-376-6933 |

**Rent Analysis**

| | |
|---|---|
| **Rent** | $4.23 - $4.23/SF; $4.23/SF Average |

**Remarks**

Start date May 2023

**Improved Lease No. 3**



**Property Identification**

| | |
|---|---|
| **Record ID** | 3982 |
| **Property Type** | Industrial, Manufacturing |
| **Address** | 1535 Fieldhouse Avenue, Elkhart, Elkhart County, Indiana 46517 |
| **Tax ID** | 20-06-18-203-009.000-011 |

**Physical Data**

| | |
|---|---|
| **Land Size** | 27.000 Acres or 1,176,120 SF |
| **Gross SF** | 446,280 |
| **Construction Type** | Masonry |
| **Roof Type** | Flat |
| **Foundation** | Slab |
| **Stories** | 1 |
| **Floor Height** | 16' |
| **Industrial** | Class B |
| **Year Built** | 1953 |
| **Condition** | Average |

**General Lease Data**

| | |
|---|---|
| **Tenant** | MJB Wood Group |
| **Lease Type** | NNN |
| **Tenant Size** | 246,000 to 246,000 |

**General Tenant Summary**

| | |
|---|---|
| **Verification** | Ryan White/Pinnacle Properties; 574-315-9615, Other sources: PVA 06/2025 |

**Rent Analysis**

| | |
|---|---|
| **Rent** | $2.65 - $2.65/SF; $2.65/SF Average |

**Remarks**

South Suite - 246,000 Square Feet, Start Date - January 2023, Lease Term - 2 Years, Rent - $2.65/NNN, Tenant - MJB Wood Group

The building has 16 loading docks and 3 drive-in doors. In January 2025, the property was listed for sale for $15,920,320.

**Improved Lease No. 4**



| | | |
|---|---|---|
| **Property Identification** | | |
| **Record ID** | 3983 | |
| **Property Type** | Industrial, Warehouse/Manufacturing | |
| **Address** | 2211 S Defiance St, Archbold, Fulton County, Ohio 43502 | |
| **Physical Data** | | |
| **Land Size** | 18.560 Acres or 808,474 SF | |
| **Gross SF** | 206,115 | |
| **Parking** | Surface | 90 |
| **Construction Type** | Metal | |
| **Roof Type** | Metal | |
| **Foundation** | Concrete | |
| **Stories** | 1 | |
| **Floor Height** | 26' | |
| **Industrial** | Class "B" | |
| **Year Built** | 1976 | |
| **Condition** | Average | |
| **General Lease Data** | | |
| **Tenant** | Arrow Tru-Line | |
| **Typical Lease Term** | 20 Years | |
| **Lease Type** | NNN | |
| **Tenant Size** | 206,000 to 206,000 | |
| **General Tenant Summary** | | |
| **Verification** | Chelsea Mandel/Stream Capital Partners, LLC; 347-410-0163 | |
| **Rent Analysis** | | |
| **Rent** | $3.70 - $3.70/SF; $3.70/SF Average | |

**Remarks**
Start Date Dec 2021, 2% annual increase

**Improved Lease No. 5**



| | |
|---|---|
| **Property Identification** | |
| **Record ID** | 3988 |
| **Property Type** | Industrial, Food Processing |
| **Address** | 301 South Butterfield Road, Muncie, Delaware County, Indiana 47303 |
| | |
| **Physical Data** | |
| **Gross SF** | 188,000 |
| | |
| **Construction Type** | Metal |
| **Roof Type** | Metal |
| **Foundation** | Slab |
| **Sprinklers** | Wet System |
| **Stories** | 1 |
| **Floor Height** | 30' |
| **Industrial** | Class A |
| **Year Built** | 1969 |
| **Condition** | Average |
| | |
| **General Lease Data** | |
| **Tenant Size** | 116,560 to 116,560 |
| | |
| **General Tenant Summary** | |
| **Verification** | Matthew Burton; 765-216-6142 |
| | |
| **Rent Analysis** | |
| **Rent** | $3.85 - $3.85/SF; $3.85/SF Average |

**Remarks**

116,560 Square Feet (8% Office Space), Start Date - January 2024 (Renewal), Lease Term - 5 Years, Rent - $3.85/NNN, Tenant - Sinflex Paper Company

The building includes 8 exterior docks, 1 drive-in dock, and 8 exterior levelators. The property is located on a rail line.

### ADJUSTMENT PROCESS

The subject contract rents are generally within the range of the comparable rents. The rents that we have utilized represent the best available information that could be compared to the subject property. The major elements of comparison for an analysis of this type include expense structure, condition of lease, market conditions, the location of the real estate, its physical traits, and the economic characteristics of the property.

### EXPENSE STRUCTURE

This adjustment accounts for any impact that the lease's expense structure may have on the rental rate. The typical lease is NNN. Lease #2 was adjusted -$1.50 for a modified gross basis.

### CONDITIONS OF LEASE

This category accounts for other factors that may have influenced the rental rate, such as tenant and/or landlord motivation, or other atypical lease negotiations. All of the comparables were considered similar to the subject and no adjustments were required for this category.

### MARKET CONDITIONS

This adjustment category accounts for differences in economic conditions between the appraisal's effective date and the comparable's transaction date, such as those caused by changing supply and demand factors, rental rates, vacancy rates, and/or capitalization rates. Leases are from 2023 to 2024 and are considered similar to the subject.

### LOCATION

The appeal of a property's location to users and/or investors in a particular property type can significantly influence rental rates. This factor broadly considers the impact of demographics, geographical attributes, access to transportation networks, and local land use trends on pricing. Location comparisons can often be derived or even quantified by examining rent, vacancy, capitalization rates, and land value trends in the subject and competitive areas. All of the leases had a similar location.

### SIZE

The subject is 220,285 square feet, and the lease comparables are 188,000 to 251,310 square feet. All sizes were considered similar.

### AGE/CONDITION

The estimated effective age was used to determine the adjustment. Leases #1, #3, and #5 were adjusted.

### TOTAL PROPERTY ADJUSTMENTS

Leases #1, #2, and #3 were given the most weight because of their similar location, size, and use of warehouse. The contract rent is slightly below the market rent, but is reasonable.

## ANALYSIS OF INCOME

### PROJECTED BASE RENT

The projected gross income is based on rents, as reflected in the current leases. The resulting projected base rent is $599,308, and pass-throughs are $206,286.

### VACANCY AND COLLECTION LOSS

This category represents both the rent loss caused by physical Vacancy and the credit loss projected for the subject. Based on a cursory review during the market rent survey process, Vacancy levels in the submarket were generally about 5% to 10%. We are projecting a vacancy rate of 5%, which is more in line with the historic 10-year period and the tenant's longevity. Based on the current market vacancy level, a stabilized vacancy and collection loss for the subject is estimated at 5%.

The effective gross income is $765,315.

## *ANALYSIS OF OPERATING EXPENSES*

Operating expenses similar to subject are as follows:

| Expense Analysis - Industrial | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Class B | | Class B | | Class B | | Class B | |
| | 2024 | | 2024 | | 2023 | | 2023 | |
| | Elkhart | | Indianapolis | | South Bend | | Evansville | |
| | IN | | Indiana polis | | IN | | IN | |
| | 150K | 1985 | 250K | Built 1995 | 185K | Built 1965 Reno 2020 | 180K | Built 1990 |
| | $/SF | % | $/SF | % | $/SF | % | $/SF | % |
| REAL ESTATE TAXES | $ 1.25 | | $ 1.95 | | $ 1.58 | | $ 1.25 | |
| INSURANCE | $ 0.21 | | $ 0.28 | | $ 0.20 | | $ 0.31 | |
| UTILITIES | | | | | | | | |
| MAINTENANCE | $ 0.04 | | $ 0.38 | | . | | | |
| ADMINSTRATION | $ 0.30 | | $ 0.05 | | $ 0.05 | | $ 0.15 | |
| OTHER OPERATING | $ 0.10 | | $ 0.15 | | $ 0.15 | | | |
| RESERVES FOR REPLACEMENTS | | | | | | | | |
| MANAGEMENT | $ 0.22 | | $ 0.15 | | $ 0.20 | | $ 0.30 | |
| **Total Operating Expenses** | **$2.12** | | **$2.96** | | **$2.18** | 31.0% | **$2.01** | 21.0% |
| Source: Appraisals | | | | | | | | |

### REAL ESTATE TAXES

This expense category includes all local, county, and state assessments for real property. The real estate tax analysis section of this report addresses this topic in detail. The estimated real estate taxes will be based on the market value.

### INSURANCE

This expense category includes property and casualty insurance for the subject. This expense is estimated to be $0.30 per square foot. This is in line with the comparable properties.

### UTILITIES

Total utility charges include common area electricity expenses and water. The utilities are the responsibility of the tenant.

### REPAIRS/MAINTENANCE

This expense category includes repairs and maintenance expenses, including roll over costs, grounds expenses, and miscellaneous costs associated with general repairs. This expense is the responsibility of the tenant.

### ADMINISTRATIVE AND LEGAL FEES

This expense includes office supplies and professional fees such as accounting and legal fees. Total administrative and legal fees are estimated at $0.10 per square foot.

### RESERVES & REPLACEMENTS

The reserves and replacements include those items such as long-term capital improvements. These items include roof replacement, parking lot maintenance, and exterior siding replacement. The replacement allowance has been estimated at $0.25 per square foot.

### MANAGEMENT FEE

This is an expense item representing the sum paid or the value of management service provided. Management fees are considered to be an expense of operation, whether management services are contracted or provided by the property owner. This expense is estimated at a rate of 3.0% of the effective gross income.

### TOTAL OPERATING EXPENSES

Total operating expenses are estimated to be $306,345, or $1.39 per square foot. The subject expenses are lower than the comparable expenses and reflect the building's projected real estate taxes.

## *NET OPERATING INCOME (NOI)*

The subject's stabilized net operating income, calculated by deducting the projected operating expenses from the projected effective gross income, is $458,969, including reserves and replacements.

## Income Reconstruction

| | FORECAST YEAR | |
|---|---|---|
| | INCOME RECONSTRUCTION | PER GBA |
| BASE RENT | 599,308 | 2.72 |
| RECOVERY INCOME | 206,286 | 0.94 |
| POTENTIAL GROSS INCOME | 805,594 | 3.66 |
| VACANCY/CREDIT LOSS | (40,280) | (0.18) |
| **EFFECTIVE GROSS INCOME** | **$765,315** | **$3.47** |
| | | |
| REAL ESTATE TAXES | 140,201 | 0.64 |
| INSURANCE | 66,086 | 0.30 |
| UTILITIES | 0 | 0.00 |
| MAINTENACE & REPAIRS | 0 | 0.00 |
| GENERAL ADMINSTRATIVE/OTHER | 22,029 | 0.10 |
| RESERVES FOR REPLACEMENTS | 55,071 | 0.25 |
| SUBTOTAL | 283,386 | 1.29 |
| MANAGEMENT FEE | 22,959 | 0.10 |
| **TOTAL EXPENSES** | **$306,345** | **$1.39** |
| | | |
| **NET OPERATING INCOME** | **$458,969** | **$2.08** |
| | | |
| BASE RENT PER UNIT | $2.72 | |
| EXPENSES PER UNIT | $1.39 | |
| EXPENSES AS % EGI | 40.03% | |
| VACANCY/CREDIT LOSS | -5.00% | |

### *DIRECT CAPITALIZATION ANALYSIS*

#### CAPITALIZATION RATE ANALYSIS

The comparables range from 6.9% to 9.2%. The sales occurred from 2023 to 2025. Capitalization rates have increased 30 to 60 points since 2022.

- Sale #1 was sold in 2023 to a regional investor with conventional financing. The tenant was a national publicly traded company with a year lease.

- Sale #2 was sold in 2024 to a regional investor. The sale was influenced by the motivation of the buyer. The sale was given less weight.

- Sale #3 was sold in 2023 to a regional investor with conventional financing. The sale was given weight.

- Sale #4 was sold in 2024 to a national investment partnership with conventional financing. The sale was given weight.

- Sale #5 sold in 2025 to a regional investor with conventional financing. The tenant, a regional manufacturer, was long term with 5-year extensions. The capitalization rate was given weight.

The comparable sales did not include reserves and replacements. The subject would have appealed to a regional or national investor. The most weight is given to Sale #1 and #4. The projected capitalization rate is 7.4%.

| Capitalization Rates | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 |
| | | Industrial | Industrial | Industrial | Industrial | Industrial | Industrial |
| | | 1205 E Lincoln St | 500 N US Highway 31 | 1505 Industrial Dr | 2860 N National Road | 13065 Anderson Road | Realty Rates |
| City | | Nappanee | Austin | North Vernon | Columbus | Granger | |
| State | | Indiana | Indiana | Indiana | Indiana | Indiana | |
| Size (GBA) | | 170,623 | 251,310 | 140,960 | 145,278 | 193,675 | |
| Date | | October-23 | January-24 | July-23 | November-24 | February-25 | 2025- 1Q |
| Year Built | | 1973 Reno 2020 | 1951 Ren 2003 | 1977 | 1970 | 1970 | |
| Sales Price | | $6,820,000 | $5,200,000 | $7,250,000 | $3,950,000 | $7,900,000 | |
| $/GBA | | $40 | $21 | $51 | $27 | $41 | |
| Ro | | 6.9% | 9.2% | 8.2% | 7.5% | 9.0% | 7.9% |
| Analysis | | | | | | | |
| Date of Sale | | | | | | | |
| | Trend | Equal | Equal | Equal | Equal | Equal | Equal |
| Age of Improvements | | | | | | | |
| | Trend | Lower | Equal | Lower | Equal | Equal | Equal |
| Location | | | | | | | |
| | Trend | Equal | Equal | Lower | Equal | Lower | Equal |
| Quality of Income Stream | | | | | | | |
| | Trend | Equal | Equal | Equal | Equal | Equal | Equal |
| Overall | | Lower | Equal | Lower | Equal | Lower | Equal |

### VALUE INDICATION - DIRECT CAPITALIZATION

Applying the capitalization rate of 7.4% to the stabilized net operating income of $458,969 gives a value indication for the real estate "as is" market value of $6,200,000.

| | |
|---|---|
| **Effective Gross Income** | $765,315 |
| **Less Expenses** | $306,345 |
| **Net Operating Income** | $458,969 |
| **Going-In Capitalization Rate** | 7.40% |
| **Capitalized Value Indication** | $ 6,202,289 |
| **Rounded to** | $ 6,200,000 |

### *VALUE INDICATION - INCOME CAPITALIZATION APPROACH*

Our analysis of the income capitalization approach has resulted in the following value indications.

**"As Is" Market Value**

**By the Income Capitalization Approach: $6,200,000**

## RECONCILIATION

Reconciliation involves the analysis of alternative value indications to determine a final value conclusion. Reconciliation is required because different value indications result from the use of multiple approaches and within the application of a single approach. The values indicated by our analyses are as follows:

| **Market Value Indications** | **"As Is" Market Value** |
|---|---|
| **Cost Approach** | Not Considered |
| **Sales Comparison Approach** | $6,600,000 |
| **Income Capitalization Approach** | $6,200,000 |
| **Market Value Conclusion** | **$6,200,000** |

The cost approach is most reliable for newer properties with no significant accrued depreciation level. The subject was constructed in 1955 with additions in 1982 to 2007. The subject has physical depreciation. Investors do not rely on the cost approach. The approach was omitted which does not impact the reliability of the appraisal.

The sales comparison approach is most reliable when several similar properties have recently sold in an active market. There is market sale activity for industrial properties of the subject's type. The comparable sales strongly support a value indication in the marketplace. Because of differences in the various elements of comparison, significant adjustments are required for many sales. The subject is leased and the sales comparison approach is given secondary weight.

The income capitalization approach is often given primary reliance when evaluating investment properties. The value derived in the income capitalization approach is supported by a relatively large quantity of market data regarding rental rates, expenses, and capitalization rates and is considered consistent with market indications. An investor is the most likely purchaser of the appraised property, and a typical investor would place the most significant reliance on the income capitalization approach. For these reasons, the income capitalization approach was used in this analysis.

Based on the analyses and conclusions, and subject to the definitions, assumptions, and limiting conditions expressed in this report, it is our opinion that the "as is" market value of the leased fee estate of the subject, as of June 12, 2025, is:

**SIX MILLION TWO HUNDRED THOUSAND DOLLARS**
**$6,200,000**

The preceding value conclusion is not subject to any extraordinary assumptions and there are no hypothetical conditions. If the assumptions are invalid, the market value may be negatively impacted.

# INSURABLE REPLACEMENT COST

## *ANALYSIS OF INSURABLE REPLACEMENT COST*

Insurable replacement cost is a value used by insurance companies as the basis for insurable amounts. It is often considered to be replacement or reproduction cost plus allowances for debris removal or demolition less deterioration and no insurable items. (*Marshall Valuation Service, sec. 3, p. 2, March 2003)*

For our insurable replacement cost analysis, we have utilized replacement cost new without consideration to physical deterioration.

It is noted that insurance exclusions or additions are a matter of underwriting and not a matter of valuation. We have designed this insurable replacement analysis under the assumption of a total loss with insurance exclusions and additions as presented by *Marshall*. The insurance exclusions and additions should be reviewed for applicability to the specific insurance coverage.

## *REPLACEMENT COST*

Replacement cost is the cost to construct, at current prices, a building with utility equivalent to the subject, using modern materials and current standards, design, and layout. Within this insurable replacement cost analysis, the direct and indirect replacement costs of the improvements are calculated using Marshall. Upon deriving the replacement cost new of the improvements, the insurable replacement cost is calculated by adding the cost associated with demolition/debris removal and subtracting applicable cost that would typically survive a total loss. These items include below grade foundations, underground piping and excavated basement area, and architect's fees. The indicated improvements for this analysis are those physical building improvements. Site improvements such as curbs, gutters, asphalt paving, and landscaping are not typically considered within the insurable replacement cost.

### DIRECT COSTS

Direct costs are the expenditures for labor and construction materials, including contractor's overhead and profit. *Marshall Valuation Service (Marshall)* provides the basis for the direct cost estimate, as is shown in detail in the recapitulation of the Cost Approach at the conclusion of the section. Note that *Marshall's* base cost includes architect's fees and construction loan fees and interest.

### EXCLUSIONS FOR INSURABLE REPLACEMENT COST

Various construction items or components will not likely be destroyed even if a total loss occurs. Examples include excavation work to create a basement, underground piping, and foundations that are below grade. However, this assumes that a building that has been destroyed will be reconstructed in the same manner and using the same foundation "foot print".

## *CONCLUSION OF INSURABLE REPLACEMENT COST*

After applying the reconciled additions and exclusions to the replacement cost of the building improvement, the derived insurable replacement cost is as follows:

| Insurable Replacement Cost | |
|---|---|
| Main Building | $16,560,000 |
| Maintenance Building | $745,000 |
| Total Replacement Cost | $17,305,000 |

**Insurable Replacement Cost- Main Building**

| | | | | | |
|---|---|---|---|---|---|
| **BUILDING SUMMARY** | | | | | |
| MARSHALL VALUATION SERVICE | | | | BASE COST | $61.00 |
| SECTION | 14 | | | Sprinklers | $3.16 |
| PAGE | 26 | | | | $0.00 |
| CLASS | C/S | | | | $0.00 |
| TYPE | Storage Warehouse | | | **SUBTOTAL** | $64.16 |
| BUILDING LIFE | 50 | | | Current Multiplier | 1.05 |
| EFFECTIVE AGE | 0 | | | Locational Multiplier | 0.98 |
| QUALITY | Average | | | Perimeter Multiplier | 1.13 |
| YEAR BUILT | 1955 | | | Wall Height Multiplier | 1.00 |
| | | | | **ADJUSTED COST** | $74.80 |
| **CONSTRUCTION COSTS** | | | | | |
| Building | | | | | |
| 211,760 SF | @ | $74.80 = | | | $15,839,941 |
| | | SUBTOTAL | | | $15,839,941 |
| | 0.00% | ENTREPRENEURIAL PROFIT (ROUNDED) | | | $0 |
| | | **REPLACEMENT COST NEW** | | | $15,839,941 |
| **INSURABLE VALUE** | | | | | |
| REPLACEMENT COST NEW | | | | | $15,839,941 |
| DEMOLITION/DEBRIS REMOVAL | | 12% | | | $1,900,793 |
| EXCLUDED VALUE | | | | | |
| Basement Excavation | | 0% | | | $0 |
| Foundations Below Grade | | 2.2% | | | ($348,479) |
| Piping Below Grade | | Negligible | | | $0 |
| Architects' Fees | | 5.4% | | | ($855,357) |
| INSURABLE VALUE | | | | | |
| | | **INSURABLE VALUE** | | | **$16,536,898** |
| | | **INDICATED INSURABLE VALUE** | | | **$16,560,000** |

# Insurable Replacement Cost-Maintenance Building

**BUILDING SUMMARY**

| | | | |
|---|---|---|---|
| MARSHALL VALUATION SERVICE | | BASE COST | $68.00 |
| SECTION | 11 | Sprinklers | $4.50 |
| PAGE | 29 | HVAC | $0.00 |
| CLASS | C | | $0.00 |
| TYPE | Industrial | **SUBTOTAL** | $72.50 |
| BUILDING LIFE | 50 | Current Multiplier | 1.035 |
| EFFECTIVE AGE | 15 | Locational Multiplier | 0.980 |
| QUALITY | Average | Perimeter Multiplier | 1.094 |
| YEAR BUILT | 2005 | Wall Height Multiplier | 1.041 |
| | | **ADJUSTED COST** | $83.75 |

**CONSTRUCTION COSTS**

| | | | | |
|---|---|---|---|---|
| Building | | | | |
| 8,525 SF | @ | $83.75 = | | $713,948 |
| | | SUBTOTAL | | $713,948 |
| 0.00% | | ENTREPRENEURIAL PROFIT (ROUNDED) | | $0 |
| | | **REPLACEMENT COST NEW** | | $713,948 |

**INSURABLE VALUE**

| | | |
|---|---|---|
| REPLACEMENT COST NEW | | $713,948 |
| DEMOLITION/DEBRIS REMOVAL | 12% | $85,674 |
| EXCLUDED VALUE | | |
| Basement Excavation | 0% | $0 |
| Foundations Below Grade | 2.2% | ($15,707) |
| Piping Below Grade | Negligible | $0 |
| Architects' Fees | 5.4% | ($38,553) |
| INSURABLE VALUE | | |

| | |
|---|---|
| **INSURABLE VALUE** | **$745,362** |
| **INDICATED INSURABLE VALUE** | **$745,362** |
| **ROUNDED TO:** | **$745,000** |

# ADDENDUM A

# DEFINITIONS

The definitions included in this addendum have been extracted, solely or in combination, from definitions and descriptions printed in:

- The Uniform Standards of Professional Appraisal Practice 2024 Edition (USPAP)
- The Dictionary of Real Estate Appraisal, Seventh Edition, Appraisal Institute, Chicago, Illinois, 2022 (Dictionary)

***ACCRUED DEPRECIATION***
The difference between the reproduction or replacement cost of the improvements on the effective date of the appraisal and the market value of the improvements on the same date. (*Dictionary*)

***APPRAISAL***
The act or process of developing an opinion of value; an opinion of value. (*USPAP*)

***BUSINESS VALUE***
A value enhancement that results from items of intangible personal property such as marketing and management skill, an assembled work force, working capital, trade names, franchises, patents, trademarks, contracts, leases, and operating agreements (*Dictionary*).

***CLIENT***
The party or parties who engage, by employment or contract, an appraiser in a specific assignment.

***DEFERRED MAINTENANCE***
Curable, physical deterioration that should be corrected immediately, although work has not commenced; denotes the need for immediate expenditures, but does not necessarily suggest inadequate maintenance in the past. (*Dictionary*)

***DISCOUNTED CASH FLOW (DCF) ANALYSIS***
The procedure in which a discount rate is applied to a set of projected income streams and a reversion. The analyst specifies the quantity, variability, timing, and duration of the income streams as well as the quantity and timing of the reversion and discounts each to its present value at a specified yield rate. DCF analysis Cane be applied with any yield capitalization technique and may be performed on either a lease-by-lease or aggregate basis. (*Dictionary*)

***EFFECTIVE DATE OF THE APPRAISAL***
The date at which the value opinion is an appraisal applies, which may or may not be the date of inspection; the date of the market conditions that provide the context for the value opinion. Current appraisals occur when the effective date of the appraisal is contemporaneous with the date of the report. Prospective value opinions (effective date of the appraisal subsequent to the date of the report) are intended to reflect the current expectations and perceptions along with available factual data. Retrospective value opinions are likely to apply as of a specific historic date; the opinions are intended to reflect the expectations and perceptions of market participants at the specified date, along with available factual data. Data subsequent to the effective date may be considered in estimating a retrospective value as a confirmation of trends. (*Dictionary and USPAP)*

***ENTREPRENEURIAL PROFIT***
Entrepreneurial profit is a "market-derived figure that represents the amount an entrepreneur **expects** to receive for his or her contribution to a project"; may be measured by the difference between the total cost of a property (cost of development) and its market value (property value after completion), which represents the entrepreneur's compensation for the risk and expertise associated with development. The term "entrepreneurial incentive" has the same definition as profit, but the perspective of the use of the word "incentive" is forward-looking (expected reward), whereas the use of the word "profit" indicates a retrospective perspective of a quantifiable amount earned. Unless otherwise noted, as used in this report, the terms are synonymous. (*Definition and Eleventh Edition*)

***EXPOSURE TIME***
Exposure time is the estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal. (*USPAP and Dictionary*)

***EXTRAORDINARY ASSUMPTION***
An assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions.

***FEE SIMPLE ESTATE***
Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat. (*Dictionary*)

***GOING-CONCERN VALUE***
The value created by a proven property operation; considered as a separate entity to be valued with a specific business establishment. (*Dictionary*)

***GROSS BUILDING AREA (GBA)***
The total floor area of a building, including below-grade space but excluding unenclosed areas; measured from the exterior of the walls. (*Dictionary*)

***GROSS LEASABLE AREA (GLA)***
The total floor area designed for the occupancy and exclusive use of tenants, including basements and mezzanines, and measured from the center of partitioning to outside wall surfaces; the standard measure for shopping centers. (*Dictionary*)

***HIGHEST AND BEST USE***
The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum profitability. (*Dictionary*)

***HYPOTHETICAL CONDITION***

A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.

***INSURABLE VALUE***

The Appraisal Institute defines insurable value as the value based on the replacement and/or reproduction cost of physical items that are subject to loss from hazards. It is that portion of an asset or asset group that is acknowledged or recognized under the provisions of an applicable loss insurance policy. *Marshall Valuation Service* defines insurable value as the "replacement or reproduction cost less deterioration and non-insurable items." (*MVS* and *Dictionary*)

***INVESTMENT VALUE***

The specific value of an investment to a particular investor or class of investors based on individual investment requirements; distinguished from market value, which is impersonal and detached. (*Dictionary*)

***LEASED FEE ESTATE***

An ownership interest held by a landlord with the rights of use and occupancy conveyed by lease to others. The rights of the lessor (the leased fee owner) and the leased fee are specified by contract terms contained within the lease. (*Dictionary*)

***LEASEHOLD ESTATE***

The interest held by the lessee (the tenant or renter) through a lease conveying the rights of use and occupancy for a stated term under certain conditions. (*Dictionary*)

***MARKET VALUE***

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;
- Both parties are well informed or well advised, and acting in what they consider their best interests;
- A reasonable time is allowed for exposure in the open market;
- Payment is made in terms of cash in United States dollars or in terms of financial arrangements comparable thereto; and
- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale. (*USPAP, according to the Federal Register, CFR 34.43(F)*)

***MARKETING PERIOD***

A reasonable marketing period is the period of time it might take to sell a property interest in real estate at or near the concluded market value during the period immediately following the effective date of the appraisal. A marketing period is a function of price, time, use, and anticipated market conditions.

***RENTABLE AREA (NRA)***

The (net) rentable area is the amount of space on which rent is based; it is calculated according to local practice. (*Dictionary*)

***REPLACEMENT COST***

The estimated cost to construct, at current prices as of the effective date of the appraisal, a building with utility equivalent to the building being appraised, using modern materials and current standards, design and layout. (*Dictionary and USPAP*)

***REPRODUCTION COST***

The estimated cost to construct, at current prices as of the effective date of the appraisal, an exact duplicate or replica of the building being appraised, using the same materials, construction standards, design, layout, and quality of workmanship and embodying all the deficiencies, super adequacies, and obsolescence of the subject building. (*Dictionary*)

***USABLE AREA***

The actual occupied area computed by measuring the finished surface of the office side of corridor and other permanent walls, to the center of partitions that separate the office from adjoining usable areas and to the inside finished surface of the dominant portion of the permanent outer building walls. No deductions are made for columns and projection necessary to the building. (*Dictionary*)

***USE VALUE***

The value a specific property has for a specific use. (*Dictionary*)

# ADDENDUM B

# PROPERTY INFORMATION

## *PLAT MAP*


891630000302011030
891630000302008030
891630000302017030
891630000302009030
891630000302014030
NW N ST
NW 11TH ST
Richmond
891630000302000030
891630000309000030
891630000308000030
891630340102000030
891630340101000030
NW L ST
NW L ST
891631100103002030

## *ZONING MAP*



## *FLOOD MAP*

CoreLogic | RiskMeter

The closest match to 1133 NW L Street, richmond, in is 1133 NW L ST RICHMOND, IN 47374-1402

1133 NW L ST RICHMOND, IN 47374-1402

LOCATION ACCURACY: Excellent

### Flood Zone Determination Report

**Flood Zone Determination:** **OUT**

| PANEL DATE | April 02, 2015 | MAP NUMBER | 18177C0256E |
|---|---|---|---|




© 2025 CoreLogic, Inc. All rights reserved. CORELOGIC, RISKMETER, PXPOINT and the CoreLogic logo are trademarks of CoreLogic, Inc. and/or its subsidiaries. All other trademarks are the property of their respective holders

## *PROPERTY CARD*

**89-16-30-000-309.000-030** | **1133 NORTHWEST L STREET R** | **1133 NW L ST** | **350, Industrial Warehouse** | **WAYNE COM-154594 (029)/** 1/4

**General Information**

**Parcel Number**
89-16-30-000-309.000-030

**Local Parcel Number**
46-30-000-309.000-29

**Tax ID:**
029-05670-00

**Routing Number**

**Property Class 350**
Industrial Warehouse

**Year: 2025**

**Location Information**

**County**
WAYNE

**Township**
WAYNE TOWNSHIP

**District 030 (Local 029)**
RICHMOND CITY -WAYNE TWP

**School Corp 8385**
RICHMOND COMMUNITY

**Neighborhood 154594-029**
WAYNE COM-154594 (029)

**Section/Plat**
4630000

**Location Address (1)**
1133 NW L ST
RICHMOND, IN 47374

**Zoning**

**Subdivision**

**Lot**

**Market Model**
N/A

**Characteristics**

| | |
|---|---|
| **Topography** | **Flood Hazard** ☐ |
| **Public Utilities** All | **ERA** ☐ |
| **Streets or Roads** Paved | **TIF** ☑ |

**Neighborhood Life Cycle Stage**
Static

**Printed** Tuesday, April 29, 2025

**Review Group** 2030

**Ownership**

1133 NORTHWEST L STREET REAL
25 COLONIAL DR
TRUMBULL, CT 06611

**Legal**

PT SW SEC 30-14-1 16.6A & 0.547A *TIF*

**Transfer of Ownership**

| Date | Owner | Doc ID | Code | Book/Page | Adj Sale Price | V/I |
|---|---|---|---|---|---|---|
| 10/04/2017 | 1133 NORTHWEST L | 2017008174 | SW | / | $5,050,000 | I |
| 01/01/1900 | FR NORTHWEST L S | | CO | / | | I |

**Notes**

**1/27/2022 Misc:** 2022 GENERAL REVAL

**4/12/2021 Misc:** 21p22- 2021 Equalization review J-H/Nexus

**7/27/2017 Misc:** 2018: GENERAL REVALUATION

**Industrial**

**Valuation Records (Work In Progress values are not certified values and are subject to change)**

| 2025 | | 2025 | 2024 | 2023 | 2022 | 2021 |
|---|---|---|---|---|---|---|
| 2025 | **Assessment Year** | 2025 | 2024 | 2023 | 2022 | 2021 |
| WIP | **Reason For Change** | AA | AA | AA | AA | AA |
| 04/01/2025 | **As Of Date** | 04/22/2025 | 04/17/2024 | 04/20/2023 | 04/22/2022 | 04/16/2021 |
| Indiana Cost Mod | **Valuation Method** | Indiana Cost Mod | Indiana Cost Mod | Indiana Cost Mod | Indiana Cost Mod | Indiana Cost Mod |
| 1.0000 | **Equalization Factor** | 1.0000 | 1.0000 | 1.0000 | 1.0000 | 1.0000 |
| | **Notice Required** | ☐ | ☐ | ☐ | ☐ | ☐ |
| **$210,900** | **Land** | **$210,900** | **$210,900** | **$210,900** | **$210,900** | **$205,800** |
| $0 | Land Res (1) | $0 | $0 | $0 | $0 | $0 |
| $0 | Land Non Res (2) | $0 | $0 | $0 | $0 | $0 |
| $210,900 | Land Non Res (3) | $210,900 | $210,900 | $210,900 | $210,900 | $205,800 |
| **$1,870,300** | **Improvement** | **$1,870,300** | **$1,999,900** | **$1,999,900** | **$2,022,800** | **$1,935,100** |
| $0 | Imp Res (1) | $0 | $0 | $0 | $0 | $0 |
| $0 | Imp Non Res (2) | $0 | $0 | $0 | $0 | $0 |
| $1,870,300 | Imp Non Res (3) | $1,870,300 | $1,999,900 | $1,999,900 | $2,022,800 | $1,935,100 |
| **$2,081,200** | **Total** | **$2,081,200** | **$2,210,800** | **$2,210,800** | **$2,233,700** | **$2,140,900** |
| $0 | Total Res (1) | $0 | $0 | $0 | $0 | $0 |
| $0 | Total Non Res (2) | $0 | $0 | $0 | $0 | $0 |
| $2,081,200 | Total Non Res (3) | $2,081,200 | $2,210,800 | $2,210,800 | $2,233,700 | $2,140,900 |

**Land Data (Standard Depth: Res 100', CI 100' Base Lot: Res 100' X 0', CI 100' X 0')**

| Land Type | Pricing Method | Soil ID | Act Front. | Size | Factor | Rate | Adj. Rate | Ext. Value | Infl. % | Market Factor | Cap 1 | Cap 2 | Cap 3 | Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | A | | 0 | 11.000000 | 1.00 | $12,300 | $12,300 | $135,300 | 0% | 1.0000 | 0.00 | 0.00 | 100.00 | $135,300 |
| 12 | A | | 0 | 3.000000 | 1.00 | $12,300 | $12,300 | $36,900 | 0% | 1.0000 | 0.00 | 0.00 | 100.00 | $36,900 |
| 13 | A | | 0 | 3.147000 | 1.00 | $12,300 | $12,300 | $38,708 | 0% | 1.0000 | 0.00 | 0.00 | 100.00 | $38,710 |

**Land Computations**

| | |
|---|---|
| Calculated Acreage | 17.15 |
| Actual Frontage | 0 |
| Developer Discount | ☐ |
| Parcel Acreage | 17.15 |
| 81 Legal Drain NV | 0.00 |
| 82 Public Roads NV | 0.00 |
| 83 UT Towers NV | 0.00 |
| 9 Homesite | 0.00 |
| 91/92 Acres | 0.00 |
| Total Acres Farmland | 17.15 |
| Farmland Value | $0 |
| Measured Acreage | 0.00 |
| Avg Farmland Value/Acre | 0.0 |
| Value of Farmland | $0 |
| Classified Total | $0 |
| Farm / Classifed Value | $0 |
| Homesite(s) Value | $0 |
| 91/92 Value | $0 |
| Supp. Page Land Value | |
| CAP 1 Value | $0 |
| CAP 2 Value | $0 |
| CAP 3 Value | $210,900 |
| **Total Value** | **$210,900** |

**Data Source** External Only **Collector** 07/22/2021 rc **Appraiser** 07/27/2021 rc

# 1133 NORTHWEST L STREET; RICHMOND, INDIANA 47374

89-16-30-000-309.000-030 | 1133 NORTHWEST L STREET R | 1133 NW L ST | 350, Industrial Warehouse | WAYNE COM-154594 (029)/ | 2/4

**General Information**

| | | | |
|---|---|---|---|
| **Occupancy** | C/I Building | **Pre. Use** | Light Warehouse |
| **Description** | Mixed Use Com | **Pre. Framing** | Fire Resistant |
| **Story Height** | 1 | **Pre. Finish** | Unfinished |
| **Type** | N/A | **# of Units** | 0 |

| | SB | B | 1 | U |
|---|---|---|---|---|
| **Wall Type** | | | 1: 1(2160') | |
| **Heating** | | | 115498 sqft | |
| **A/C** | | | | |
| **Sprinkler** | | | 198262 sqft | |

**Plumbing RES/CI**

| | # | TF | # | TF |
|---|---|---|---|---|
| **Full Bath** | 0 | 0 | 0 | 0 |
| **Half Bath** | 0 | 0 | 0 | 0 |
| **Kitchen Sinks** | 0 | 0 | 0 | 0 |
| **Water Heaters** | 0 | 0 | 0 | 0 |
| **Add Fixtures** | | 0 | 30 | 30 |
| **Total** | 0 | 0 | 30 | 30 |

**Roofing**

☐ Built Up ☐ Tile ☐ Metal
☐ Wood ☐ Asphalt ☐ Slate
☐ Other

**GCK Adjustments**

☐ Low Prof ☐ Ext Sheat ☐ Insulatio
☐ SteelGP ☐ AluSR ☐ Int Liner
☐ HGSR ☐ PPS ☐ Sand Pnl

**Exterior Features**

| Description | Area | Value |
|---|---|---|




**Floor/Use Computations**

| | |
|---|---|
| Pricing Key | GCI |
| Use | LWRHSE |
| Use Area | 198262 sqft |
| Area Not in Use | 0 sqft |
| Use % | 100.0% |
| Eff Perimeter | 2160' |
| PAR | 1 |
| # of Units / AC | 0 / N |
| Avg Unit sz\|dpth | |
| Floor | 1 |
| Wall Height | 26' |
| **Base Rate** | **$40.47** |
| Frame Adj | $0.00 |
| Wall Height Adj | $2.16 |
| Dock Floor | $0.00 |
| Roof Deck | $0.00 |
| **Adj Base Rate** | **$42.63** |
| BPA Factor | 1.00 |
| **Sub Total (rate)** | **$42.63** |
| Interior Finish | $0.00 |
| Partitions | $0.00 |
| Heating | ($0.67) |
| A/C | $0.00 |
| Sprinkler | $1.96 |
| Lighting | $0.00 |
| Unit Finish/SR | $0.00 |
| GCK Adj. | $0.00 |
| **S.F. Price** | **$43.92** |
| **Sub-Total** | |
| Unit Cost | $0.00 |
| Elevated Floor | $0.00 |
| **Total (Use)** | $8,708,080 |

**Special Features**

| Description | Value |
|---|---|
| CSF, I 2640sqft | $17,340 |
| CSF, I 29300sqft | $208,910 |
| CSF, I 18800sqft | $111,860 |
| Mezz 6272sqft | $310,966 |
| Mezz 1353sqft | $67,082 |
| Mezz 704sqft | $34,904 |

**Other Plumbing**

| Description | Value |
|---|---|
| 2 x Ref Wat Cooler | $2600 |

**Building Computations**

| | | | |
|---|---|---|---|
| **Sub-Total (all floors)** | **$8,708,080** | Garages | $0 |
| Racquetball/Squash | $0 | Fireplaces | $0 |
| Theater Balcony | $0 | **Sub-Total (building)** | **$9,589,457** |
| Plumbing | $48,000 | Quality (Grade) | $1 |
| Other Plumbing | $2,600 | Location Multiplier | 0.85 |
| Special Features | $830,777 | **Repl. Cost New** | **$8,151,038** |
| Exterior Features | $0 | | |

**Summary of Improvements**

| Description | Story Height | Constr Type | Grade | Year Built | Eff Year | Eff Co Age nd | Base Rate | LCM | Adj Rate | Size | RCN | Norm Dep | Remain. Value | Abn Obs | PC | Nbhd | Mrkt | Cap 1 | Cap 2 | Cap 3 | Improv Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1: Mixed Use Commercial | 1 | Concrete | C | 1960 | 1960 | 65 A | | 0.85 | | 198,262 sqft | $8,151,038 | 80% | $1,630,210 | 0% | 100% | 1.000 | 1.000 | 0.00 | 0.00 | 100.00 | $1,630,200 |
| 2: Fencing | 1 | 9 Gauge | C | 1960 | 1960 | 65 A | $15.94 | 0.85 | $17.19 | 2500' x 6' | $42,980 | 80% | $8,600 | 0% | 100% | 1.000 | 1.000 | 0.00 | 0.00 | 100.00 | $8,600 |
| 3: Paving | 1 | Asphalt | C | 1979 | 1979 | 46 A | $3.05 | 0.85 | $2.59 | 204,000 sqft | $528,870 | 80% | $105,770 | 0% | 100% | 1.000 | 1.000 | 0.00 | 0.00 | 100.00 | $105,800 |
| 4: Utility Shed | 1 | SV | B | 1960 | 1960 | 65 A | | 0.85 | | 100 sqft | | 65% | | 0% | 100% | 1.000 | 1.000 | 0.00 | 0.00 | 100.00 | $0 |

**Total all pages** $1,870,300

**Total this page** $1,744,600

# 1133 NORTHWEST L STREET; RICHMOND, INDIANA 47374

89-16-30-000-309.000-030 | 1133 NORTHWEST L STREET R | 1133 NW L ST | 350, Industrial Warehouse | WAYNE COM-154594 (029)/ | 3/4

**Floor/Use Computations**

| | |
|---|---|
| Pricing Key | |
| Use | |
| Use Area | |
| Area Not in Use | |
| Use % | |
| Eff Perimeter | |
| PAR | |
| # of Units / AC | |
| Avg Unit sz/dpth | |
| Floor | |
| Wall Height | |
| **Base Rate** | |
| Frame Adj | |
| Wall Height Adj | |
| Dock Floor | |
| Roof Deck | |
| **Adj Base Rate** | |
| BPA Factor | |
| **Sub Total (rate)** | |
| Interior Finish | |
| Partitions | |
| Heating | |
| A/C | |
| Sprinkler | |
| Lighting | |
| Unit Finish/SR | |
| GCK Adj. | |
| **S.F. Price** | |
| **Sub-Total** | |
| Unit Cost | |
| Elevated Floor | |
| **Total (Use)** | |

**Special Features**

| Description | Value |
|---|---|
| Mezz 2904sqft | $79,715 |

**Exterior Features**

| Description | Area | Value |
|---|---|---|

**Other Plumbing**

| Description | Value |
|---|---|

**Summary of Improvements**

| Description | Story Height | Constr Type | Grade | Year Built | Eff Year | Eff Co Age nd | Base Rate | LCM | Adj Rate | Size | RCN | Norm Dep | Remain. Value | Abn Obs | PC | Nbhd | Mrkt | Cap 1 | Cap 2 | Cap 3 | Improv Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Total all pages** $1,870,300

# 1133 NORTHWEST L STREET; RICHMOND, INDIANA 47374

89-16-30-000-309.000-030 | 1133 NORTHWEST L STREET R | 1133 NW L ST | 350, Industrial Warehouse | WAYNE COM-154594 (029)/ | 4/4

**General Information**

| | | | |
|---|---|---|---|
| **Occupancy** | C/I Building | **Pre. Use** | Commercial Garage |
| **Description** | Mixed Use Com | **Pre. Framing** | Fire Resistant |
| **Story Height** | 1 | **Pre. Finish** | Unfinished |
| **Type** | N/A | **# of Units** | 0 |

| | SB | B | 1 | U |
|---|---|---|---|---|
| **Wall Type** | | | 1: 1(414') | |
| **Heating** | | | 10096 sqft | |
| **A/C** | | | | |
| **Sprinkler** | | | | |

**Plumbing RES/CI**

| | # | TF | # | TF |
|---|---|---|---|---|
| **Full Bath** | 0 | 0 | 0 | 0 |
| **Half Bath** | 0 | 0 | 0 | 0 |
| **Kitchen Sinks** | 0 | 0 | 0 | 0 |
| **Water Heaters** | 0 | 0 | 0 | 0 |
| **Add Fixtures** | | 0 | 3 | 3 |
| **Total** | 0 | 0 | 3 | 3 |

**Roofing**

☐ Built Up ☐ Tile ☐ Metal
☐ Wood ☐ Asphalt ☐ Slate
☐ Other

**GCK Adjustments**

☐ Low Prof ☐ Ext Sheat ☐ Insulatio
☐ SteelGP ☐ AluSR ☐ Int Liner
☐ HGSR ☐ PPS ☐ Sand Pnl

**Exterior Features**

| Description | Area | Value |
|---|---|---|




**Floor/Use Computations**

| | |
|---|---|
| Pricing Key | GCI |
| Use | COMGAR |
| Use Area | 10096 sqft |
| Area Not in Use | 0 sqft |
| Use % | 100.0% |
| Eff Perimeter | 414' |
| PAR | 4 |
| # of Units / AC | 0 / N |
| Avg Unit sz\|dpth | |
| Floor | 1 |
| Wall Height | 18' |
| **Base Rate** | $69.78 |
| Frame Adj | $0.00 |
| Wall Height Adj | $2.96 |
| Dock Floor | $0.00 |
| Roof Deck | $0.00 |
| **Adj Base Rate** | $72.74 |
| BPA Factor | 1.00 |
| **Sub Total (rate)** | $72.74 |
| Interior Finish | $0.00 |
| Partitions | $0.00 |
| Heating | $0.00 |
| A/C | $0.00 |
| Sprinkler | $0.00 |
| Lighting | $0.00 |
| Unit Finish/SR | $0.00 |
| GCK Adj. | $0.00 |
| **S.F. Price** | $72.74 |
| **Sub-Total** | |
| Unit Cost | $0.00 |
| Elevated Floor | $0.00 |
| **Total (Use)** | $734,383 |

**Special Features**

| Description | Value |
|---|---|

**Other Plumbing**

| Description | Value |
|---|---|

**Building Computations**

| | | | |
|---|---|---|---|
| **Sub-Total (all floors)** | $734,383 | Garages | $0 |
| Racquetball/Squash | $0 | Fireplaces | $0 |
| Theater Balcony | $0 | **Sub-Total (building)** | $739,183 |
| Plumbing | $4,800 | Quality (Grade) | $1 |
| Other Plumbing | $0 | Location Multiplier | 0.85 |
| Special Features | $0 | **Repl. Cost New** | $628,306 |
| Exterior Features | $0 | | |

**Summary of Improvements**

| Description | Story Height | Constr Type | Grade | Year Built | Eff Year | Eff Co Age nd | Base Rate | LCM | Adj Rate | Size | RCN | Norm Dep | Remain. Value | Abn Obs | PC | Nbhd | Mrkt | Cap 1 | Cap 2 | Cap 3 | Improv Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1: Mixed Use Commercial | 1 | Wood Fr | C | 1960 | 1973 | 52 A | | 0.85 | | 10,096 sqft | $628,306 | 80% | $125,660 | 0% | 100% | 1.000 | 1.000 | 0.00 | 0.00 | 100.00 | $125,700 |

**Total all pages** $1,870,300 **Total this page** $125,700

# Wayne County, IN

## Property Tax Exemption

Apply for Property Tax Exemption

## Assessment Appeals Process

Would you like to submit an appeal for the assessment of this property? Click here to open an instruction document.

File an Appeal

## Summary

| | |
|---|---|
| **Tax ID** | 029-05670-00 |
| **State Parcel ID** | 89-16-30-000-309.000-030 |
| **Map #** | 46-30-000-309.000-29 |
| **Property Address** | 1133 NW L ST<br>RICHMOND |
| **Sec/Twp/Rng** | n/a |
| **Tax Set** | RICHMOND |
| **Subdivision** | n/a |
| **Brief Tax Description** | PT SW SEC 30-14-1 16.6A & 0.547A *TIF*<br>(Note: Not to be used on legal documents) |
| **Book/Page** | DR: 6-28-76 385-13*DR: 416-417*WD: 7-6-01 2001008547*WD: 10-10-01 2001013002*AC#6179*WD: 6-14-04 2004007603*WD: 1/19/06 2006000631*SWD: 10-4-17 2017008174 |
| **Acres** | 17.147 |
| **Class** | 350 IND WHSE-350 |

INFRAME Street View
Plat Map
Web Soil Survey

## Owners

**Deeded Owner**
1133 NORTHWEST L STREET REAL ESTATE LLC
25 COLONIAL DR
TRUMBULL, CT 06611

## Land

| Land Type | Soil ID | Act Front. | Eff. Depth | Size | Rate | Adj. Rate | Ext. Value | Infl. % | Value |
|---|---|---|---|---|---|---|---|---|---|
| PRIMARY | | 0 | 0 | 11.000000 | $12,300.00 | $12,300.00 | $135,300.00 | 0% | $135,300.00 |
| UNDEVELOPED USABLE | | 0 | 0 | 3.147000 | $12,300.00 | $12,300.00 | $38,708.10 | 0% | $38,710.00 |
| SECONDARY | | 0 | 0 | 3.000000 | $12,300.00 | $12,300.00 | $36,900.00 | 0% | $36,900.00 |

## Commercial Buildings

**Description** Mixed Use Commercial

| | SB | B | 1 | U |
|---|---|---|---|---|
| **Wall Type** | | | 1 | |
| **Heating** | | | 115498 | |
| **A/C** | | | | |
| **Sprinkler** | | | 198262 | |

| Plumbing RES/CI | # | TF | # | TF |
|---|---|---|---|---|
| **Total** | 0 | 0 | 30 | 30 |

| Special Feature | Size/Qty |
|---|---|
| Cold Storage Facilities, Insulation | 2640 |
| Cold Storage Facilities, Insulation | 29300 |
| Cold Storage Facilities, Insulation | 18800 |
| Mezzanine | 6272 |
| Mezzanine | 1353 |
| Mezzanine | 704 |
| Mezzanine | 2904 |

| Other Plumbing | Qty |
|---|---|
| Water Cooler Refrig | 2 |

| | |
|---|---|
| **Use Area** | 198,262 |
| **Not in Use** | 0 |
| **Use** | Light Warehouse |
| **Floor** | 1 |

| Description | Mixed Use Commercial | | | |
|---|---|---|---|---|
| | SB | B | 1 | U |
| Wall Type | | | 1 | |
| Heating | | | 10096 | |
| A/C | | | | |
| Sprinkler | | | | |

| Use Area | 10,096 |
|---|---|
| Not in Use | 0 |
| Use | Commercial Garage |
| Floor | 1 |

| Plumbing RES/CI | # | TF | # | TF |
|---|---|---|---|---|
| Total | 0 | 0 | 3 | 3 |

### Improvements

| Descr | PC | Grade | Year Built | Eff Year | Cond | LCM | Size | Nbhd Factor | Mrkt Factor |
|---|---|---|---|---|---|---|---|---|---|
| Paving | 100 | C | 1979 | 1979 | A | 1.01 | 204000 | 1 | 0 |
| Fencing | 100 | C | 1960 | 1960 | A | 1.01 | 0 | 1 | 0 |
| Utility Shed | 100 | B | 1960 | 1960 | A | 1.01 | 100 | 1 | 0 |
| Mixed Use Commercial | 100 | C | 1960 | 1960 | A | 1.01 | 198262 | 1 | 0 |
| Mixed Use Commercial | 100 | C | 1960 | 1973 | A | 1.01 | 10096 | 1 | 0 |

### Valuation

| Assessment Year | 2025 | 2024 | 2023 | 2022 | 2021 |
|---|---|---|---|---|---|
| Reason | Annual Adjustment | Annual Adjustment | Annual Adjustment | Annual Adjustment | Annual Adjustment |
| As Of Date | 4/22/2025 | 4/17/2024 | 4/20/2023 | 4/22/2022 | 4/16/2021 |
| Land | $210,900 | $210,900 | $210,900 | $210,900 | $205,800 |
| Land Res (1) | $0 | $0 | $0 | $0 | $0 |
| Land Non Res (2) | $0 | $0 | $0 | $0 | $0 |
| Land Non Res (3) | $210,900 | $210,900 | $210,900 | $210,900 | $205,800 |
| Improvement | $1,870,300 | $1,999,900 | $1,999,900 | $2,022,800 | $1,935,100 |
| Imp Res (1) | $0 | $0 | $0 | $0 | $0 |
| Imp Non Res (2) | $0 | $0 | $0 | $0 | $0 |
| Imp Non Res (3) | $1,870,300 | $1,999,900 | $1,999,900 | $2,022,800 | $1,935,100 |
| Total | $2,081,200 | $2,210,800 | $2,210,800 | $2,233,700 | $2,140,900 |
| Total Res (1) | $0 | $0 | $0 | $0 | $0 |
| Total Non Res (2) | $0 | $0 | $0 | $0 | $0 |
| Total Non Res (3) | $2,081,200 | $2,210,800 | $2,210,800 | $2,233,700 | $2,140,900 |

### Tax History

Detail:

| Tax Year | Type | Category | Description | Amount | Balance Due | ACTotal |
|---|---|---|---|---|---|---|
| 2024 PAYABLE 2025 | Spring Tax | Tax | 24/25 Spring Tax | $33,161.99 | $26,210.09 | 0.00 |
| 2024 PAYABLE 2025 | Fall Tax | Tax | 24/25 Fall Tax | $33,161.99 | $33,161.99 | 0.00 |
| 2023 PAYABLE 2024 | Spring Tax | Tax | 23/24 Spring Tax | $33,162.00 | $0.00 | 0.00 |
| 2023 PAYABLE 2024 | Fall Tax | Tax | 23/24 Fall Tax | $33,162.00 | $0.00 | 0.00 |

Delinquent payments made after the fall due date will still show due in the year they were originally assessed. If paid, payment will show in the next tax year.

Total:

| Tax Year | Amount | Balance Due |
|---|---|---|
| 2024 PAYABLE 2025 | $66,323.98 | $59,372.08 |
| 2023 PAYABLE 2024 | $66,324.00 | $0.00 |

### Pay Taxes Online

Pay Taxes Online

## Payments

**Detail:**

| Tax Year | Payment Date | Paid By | Amount |
|---|---|---|---|
| 2024 PAYABLE 2025 | 03/11/2025 | BUNZEL USA INC | $6,951.90 |
| 2023 PAYABLE 2024 | 11/12/2024 | BUNZEL USA INC | $26,210.10 |
| 2023 PAYABLE 2024 | 05/10/2024 | BUNZL USA INC | $40,113.90 |

**Total:**

| Tax Year | Amount |
|---|---|
| 2024 PAYABLE 2025 | $6,951.90 |
| 2023 PAYABLE 2024 | $66,324.00 |

## Transfers

| Transfer Date | Buyer Name | Seller Name | Type | Description |
|---|---|---|---|---|
| 06/14/2004 | SNKTW - INDIANA LLC | MC LANE/MIDWEST, INC | | |
| 01/19/2006 | FR NORTHWEST L STREET LLC | SNKTW - INDIANA LLC | | |
| 10/04/2017 | 1133 NORTHWEST L STREET REAL ESTATE LLC | FR NORTHWEST L STREET LLC | Straight | Special Warranty Deed - 2017008174 |

## Property Record Cards

View 2025 Property Record Card(PDF) View 2024 Property Record Card(PDF) View 2023 Property Record Card(PDF) View 2022 Property Record Card(PDF)
View 2021 Property Record Card(PDF) View 2020 Property Record Card(PDF) View 2019 Property Record Card(PDF) View 2018 Property Record Card(PDF)
View 2017 Property Record Card(PDF) View 2016 Property Record Card(PDF) View 2015 Property Record Card(PDF) View 2014 Property Record Card(PDF)
View 2013 Property Record Card(PDF) View 2012 Property Record Card(PDF) View 2011 Property Record Card(PDF) View 2010 Property Record Card(PDF)

## Sketches


402'
160'
100'
268'
Mixed Use Commercial
1s CB
S
198262
377'
160'
201'
276'
184'
32'




No data available for the following modules: Homestead Verification, Residential Dwellings, Deductions, Permits.

The information in this web site represents current data from a working file which is updated continuously. Information is believed reliable, but its accuracy cannot be guaranteed. No warranty, expressed or implied, is provided for the data herein, or its use.
User Privacy Policy GDPR Privacy Notice
Last Data Upload: 6/10/2025 7:51:46 AM

Contact Us

Developed by
SCHNEIDER

## *LEASE AMENDMENTS*

FIRST AMENDMENT
TO
LEASE AGREEMENT

THIS FIRST AMENDMENT ("**First Amendment**") to Lease Agreement dated this 2nd day of August, 2007 by and between FIRST INDUSTRIAL, L.P., a Delaware limited partnership, as successor to SNKTW-Indiana LLC, a Colorado limited liability company (hereinafter called the "**Landlord**"), and TSN EAST, LLC, a Missouri limited liability company (hereinafter called the "**Tenant**").

WITNESSETH

WHEREAS, Landlord and Tenant entered into a certain Lease Agreement dated October 1, 2004 (the "**Lease**") pursuant to which Tenant leased that certain space located at 1133 Northwest L Street, Richmond, Indiana 47374 (the "Building") said Leased Premises containing 209, 380 rentable square feet (the "Premises");

WHEREAS, the Tenant wishes to extend its occupancy in the Premises under the same terms and conditions as stated in the Lease except as amended below.

NOW, THEREFORE, in consideration of the foregoing Premises and the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

1. **Recitals:** The recitals set forth above are incorporated herein by this reference with the same force and effect as if fully set forth hereinafter.

2. **Capitalized Terms:** Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Lease.

3. **Term:** The Initial Term of the Lease is hereby extended for an additional two (2) years commencing October 1, 2009 and expiring on September 30, 2011 (the "Expiration Date").

4. **Base Rent:** Section 3(A) is hereby deleted and the following substituted in its place.

   During the Initial Term, Tenant shall pay to Landlord Basic Annual Rent in the amounts as follows:

| | | |
|---|---|---|
| Annual Base Rent | 10/1/04-9/30/07 | $504,000.00 |
| Monthly Base Rent | 10/1/04-9/30/07 | $ 42,000.00 |
| Annual Base Rent | 10/1/07-9/30/09 | $429,229.96 |
| Monthly Base Rent | 10/1/07-9/30/09 | $ 35,769.08 |
| Annual Base Rent | 10/1/09-9/30/11 | $450,167.04 |
| Monthly Base Rent | 10/1/09-9/30/11 | $ 37,513.92 |

5. **Repairs and Maintenance:** The last sentence of Section 8(D) is hereby deleted and the following substituted in its place.

The cost of any such capital improvements, repairs, or replacements shall be amortized on a straight-line basis over the estimated useful life thereof, together with interest at the Interest Rate (as defined in Article 7) and the amortized installments and interest attributable to the Lease term (including any Renewal Term) shall be an Operating Expense under Article 5 of this Lease, payable monthly on the due dates for Basic Annual Rent; provided however, that any costs for capital expenditures incurred by Landlord in the performance of its obligations under Section 8(c) above shall not be included as Operating Expenses.

6. **Option to Reduce Premises:** Tenant's Option to Reduce Premises as defined in Article 33 of the Lease first referenced above is hereby deleted from the Lease Agreement. Previous notice received from Tenant exercising Option to Reduce Premises dated March 30, 2007 will be null and void and all downsizing penalties due by Tenant will not be required due to the deletion of said Option.

7. **Representation**: Tenant and Landlord each represent and warrant to the other that each such Party has not had any dealings with or entered into any agreements with any person, entity, realtor, broker, agent or finder in connection with the negotiation of this First Amendment.

All other terms and conditions of the Lease not expressly amended herein shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this First Amendment the day and year first above written.

LANDLORD:

**FIRST INDUSTRIAL, L.P.**

By: [signature] Printed Name: Douglas J. Swain

Title: Regional Director Printed Title: Regional Director

Date: August 6, 2007

TENANT:

**TSN EAST, LLC**

By: [signature] Printed Name: Derek Goodlin

Title: Vice President Printed Title: Vice President

Date: 8/3/07

SECOND AMENDMENT
TO
LEASE AGREEMENT

THIS SECOND AMENDMENT ("**Second Amendment**") to Lease Agreement dated this 13th day of April, 2011 by and between FIRST INDUSTRIAL, L.P., a Delaware limited partnership, (hereinafter called the "**Landlord**"), and TSN EAST, LLC, a Missouri limited liability company (hereinafter called the "**Tenant**").

WITNESSETH

WHEREAS, Landlord and Tenant entered into a certain Lease Agreement dated October 1, 2004, and that certain First Amendment to Lease Agreement dated August 6, 2007 (collectively the "**Lease**") pursuant to which Tenant leased that certain space located at 1133 Northwest L Street, Richmond, Indiana 47374 (the "Building") said Leased Premises containing 209, 380 rentable square feet (the "Premises");

WHEREAS, the Tenant wishes to extend its occupancy in the Premises under the same terms and conditions as stated in the Lease except as amended below.

NOW, THEREFORE, in consideration of the foregoing Premises and the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Landlord and Tenant hereby agree as follows:

1. **Recitals:** The recitals set forth above are incorporated herein by this reference with the same force and effect as if fully set forth hereinafter.

2. **Capitalized Terms:** Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Lease.

3. **Term:** The Initial Term of the Lease is hereby extended for an additional two (2) years commencing October 1, 2011 and expiring on September 30, 2013 (the "Expiration Date").

4. **Base Rent:** Section 3(A) is hereby deleted and the following substituted in its place.

   "During the Initial Term, Tenant shall pay to Landlord Basic Annual Rent in the amounts as follows:

| | | |
|---|---|---|
| Annual Base Rent | 10/1/11-9/30/13 | $471,105.00 |
| Monthly Base Rent | 10/1/11-9/30/13 | $ 39,258.75 |

5. **Tenant Improvements:** Landlord shall, at its own expense, provide and install the following within ninety (90) days after full execution of this Second Amendment:
   a) Replace warehouse lighting with high efficiency T8 fixtures;
   b) Install electric gate operator at truck entrance with card identification and voice communication at receiving dock; and
   c) Replace heating unit at shipping dock.

6. **Landlord Repairs and Maintenance:** Landlord shall, at its own expense, perform the following within ninety (90) days after full execution of this Second Amendment:
   a) Replace the ten (10) ton rooftop HVAC unit;
   b) Replace shutters on 2 exhaust fans; and
   c) Straighten and repair perimeter fence as mutually agreed upon between Landlord and Tenant; and
   d) Repair, crackfill and stripe parking lot as mutually agreed upon between Landlord and Tenant.

7. **Representation.**: Tenant and Landlord each represent and warrant to the other that each such Party has not had any dealings with or entered into any agreements with any person, entity, realtor, broker, agent or finder in connection with the negotiation of this Second Amendment.

All other terms and conditions of the Lease not expressly amended herein shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Second Amendment the day and year first above written.

LANDLORD:

**FIRST INDUSTRIAL, L.P.**

By: [signature] Printed Name: Mary Sullivan

Title: Regional Manager Printed Title: Regional Manager

Date: 4/21/11

TENANT:

**TSN EAST, LLC**

By: [signature] Printed Name: Derek Goodin

Title: VP Printed Title: Vice President

Date: 4/13/11

**THIRD AMENDMENT
TO
LEASE AGREEMENT**

THIS THIRD AMENDMENT ("3rd Amendment") to Lease Agreement is dated this 27th day of March, 2013, by and between FR NORTHWEST L STREET, LLC ("Landlord"), and TSN East, LLC, a Missouri Limited Liability Company ("Tenant").

RECITALS

WHEREAS Landlord and Tenant entered into a certain Lease Agreement dated October 1, 2004 (the "Original Lease") , as amended by that certain First (1st) Amendment dated August 6, 2007 ("First Amendment") and that certain Second (2nd) Amendment dated April 13, 2011 ("Second Amendment") (the Original Lease, the First Amendment and the Second Amendment are collectively referred to as the "Lease"), pursuant to which Tenant leased that certain space, as further described in the Lease (the "Premises") in the real property known as 1133 Northwest L Street, Richmond, IN 47374-1402 (the "Property") said Premises containing 209,380 rentable square feet; and

WHEREAS, the Tenant wishes to extend the term of the Lease, all on the same terms and conditions as stated in the Lease, except as amended below.

WITNESSETH

NOW, THEREFORE, in consideration of the foregoing Recitals and the mutual covenants herein contained, Landlord and Tenant hereby agree as follows:

1. **Recitals:** The recitals set forth above are incorporated herein by this reference with the same force and effect as if fully set forth hereinafter.

2. **Capitalized Terms:** Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Lease.

3. **Term:** The Term of the Lease is hereby extended for an additional forty-two (42) month period commencing on October 1, 2013 and expiring on March 31, 2017 (such period, the "**Extended Term**"). During the Extended Term, all of the conditions set forth in the original Lease shall remain in full force and effect, except as expressly modified by, or inconsistent with, the terms of this Amendment. All references in the Lease to the Term shall be deemed to also mean the Extended Term, as applicable, and all references in the Lease to the Expiration Date shall be deemed to mean the date on which the Extended Term expires.

4. **Basic Annual Rent:** Tenant's obligation to pay Basic Annual Rent and all other amounts due under the Lease shall continue as set forth in the Lease for the Extended Term, except that the Basic Annual Rent for the Premises shall be calculated in accordance with the following: As of the Renewal Commencement Date, the Basic Annual Rent in Article 3 of the Lease, is hereby deleted in its entirety and the following Basic Annual Rent is substituted in lieu of thereof:

**Base Rental Payments**

| Lease Period | Monthly Base Rent |
|---|---|
| 10/1/2013 – 3/31/2017 | $41,003.58 |

Except with respect to the Basic Annual Rent, Article 3of the Lease shall remain otherwise unmodified.

5. **Condition of Premises**. Tenant acknowledges that Tenant currently occupies the Premises pursuant to the Lease and is familiar with the condition of both the Premises and the Property, and Tenant hereby accepts the Premises during the Extended Term on a completely "AS-IS," "WHERE-IS" basis. Landlord shall not be obligated to make any repairs, replacements or improvements (whether structural or otherwise) of any kind or nature to the Premises in connection with, or in consideration of, this Amendment, except if and as specifically set forth in this Amendment or as required under the Lease. Landlord shall, at its sole cost and expense, replace three (3) dock doors (the "Landlord Improvements"). The Landlord Improvements shall be completed in accordance with the specifications contained in Exhibit A attached hereto and made a part hereof. The Landlord's Improvements shall be completed by May 1, 2013 ("Deadline Date"). All the Landlord Improvements shall be performed by Landlord in a good and workmanlike manner, in accordance with all applicable laws and regulations, and in accordance with this Amendment.

6. **Brokerage Commission**. Both Landlord and Tenant represent and warrant to the other that there are no claims for broker's commissions or finder's fees in connection with its execution of this Amendment, and each of Landlord and Tenant hereby indemnifies and saves the other and its respective affiliates, successors, and assigns harmless from any liability that the indemnitee may suffer or incur as a result of, or due to, any brokerage commission claim made by or through the indemnitor. The foregoing indemnity shall include reasonable attorneys' fees, and shall survive the termination or expiration of the Lease and this Amendment.

7. **Counterparts; Facsimile, PDF**. This Amendment may be executed in any number of identical counterparts, all of which, when taken together, shall constitute the same instrument. A facsimile or pdf copy of this Amendment shall be deemed an original for all relevant purposes.

IN WITNESS WHEREOF, the parties have executed this Amendment the day and year first above written.

LANDLORD:

FR Northwest L Street, LLC, a Delaware limited liability company
By: First Industrial, L.P., a Delaware limited partnership, its sole member
By: First Industrial Realty Trust, Inc., a Maryland corporation, its sole general partner

By: Daniel Meador
Its: Regional Director/Market Leader

TENANT:

TSN East, LLC, a Missouri Limited Liability Company

By: ______________________

Name: Derek Goodin

Its: Vice President

**Exhibit A**

**Landlord Improvements**

**Overhead Door Company Of Richmond**

The Genuine. The Original.

Offices
411 NW F Street
Richmond In
Telephone: 765-962-3032 Telephone: 1-800-930-3667
Fax: 765-962-0254 Fax: Same

Proposal #: 1-42
Q 100

| PROPOSAL SUBMITTED TO | | | Date | Attention |
|---|---|---|---|---|
| First Industrial | | | 2/14/2013 | Kelli |
| STREET: 9912 Windisch Rd | | | Job Name: TSN | |
| City: West Chester | State: OH | ZipCode: 45069 | Job Location: Richmond IN 47374 | |
| Phone Number: 513-454-0112 | Fax Number: 513-860-4702 | | Job Phone: 513-454-0112 | |

| ITEM # | QTY | SERIES | DOOR WIDTH | DOOR HEIGHT | OPENING WIDTH | OPENING HEIGHT | OPERATION | HEAD ROOM | JAMB TYPE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 3 | 432 | 8' 2' | 8' 0" | 8' 0 | 7' 11' | Manual | Full Vert | Steel |

FURNISH AND INSTALL:

The above sized 432 series sectional door(s) as manufactured by the Overhead Door Corporation. Door standard features to include the following:

Nominal 24 ga. roll-formed galvanized steel sections with expanded polystyrene insulation and polybonded laminated back covers: insulation value: R=7.35. Sections are to be constructed with rabbetted meeting rails to form weather tight joints, and 16ga. center and end stiles. Section thickness is to be 2" (nominal). Hinges, track, and fixtures will be galvanized.

PROPOSAL TO INCLUDE THE FOLLOWING:
Item 1 above to feature the following:
- (1) 24" X 7" Insulated DSB Lites, 1/2".
- (16) Weatherseal, Jamb Seal (407100).
- (8.17) Weatherseal,Blade Top Seal, dual flap (408972).
- (65.33) Full Vertical Track – Door up to 240 square feet

Option # 2 would be for 593 series doors with a steel back and a 12.7 R-Value like the doors we looked at on the other dock the cost of 3 doors installed including one glass per door — $ 4566.70

We hereby propose to complete in accordance with above specification, for the sum of.

**Three Thousand Nine Hundred Seventy Dollars and Seventy One Cents** — 3970.71

Signature ______________________ Direct Dial

**TERMS AND CONDITIONS**

Payment to be made as follows: 1/2 down to order balance at completion

Prices subject to change if not accepted in 30 days.

BY OTHERS: Jambs, spring pads, all wiring to motors and control stations, unless otherwise stated above, are not included.Purchaser agrees that doors shall remain in Seller's posession until paid in full. In the event Purchaser breaches or defaults under the terms and provisions of this Agreement, the Purchaser shall be responsible for the costs of collection, including reasonable attorneys' fees. There shall be a 1 1/2% service charge per month for all payments due and owing after 30 days. (Agreements are contingent upon strikes, accidents or delays beyond our control.)

**FOURTH AMENDMENT
TO
LEASE AGREEMENT**

THIS FOURTH AMENDMENT (**"4th Amendment"**) to Lease Agreement is dated OCTOBER 5, 2016, by and between FR NORTHWEST L STREET, LLC (**"Landlord"**), and TSN East, LLC, a Missouri limited liability company (**"Tenant"**).

RECITALS

WHEREAS Landlord and Tenant entered into a certain Lease Agreement dated October 1, 2004 (the **"Original Lease"**) , as amended by that certain First (1st) Amendment dated August 2, 2007 (**"First Amendment"**), that certain Second (2nd) Amendment dated April 13, 2011 (**"Second Amendment"**), and that certain Third (3rd) Amendment dated March 27, 2013 (**"Third Amendment"**) (the Original Lease and the three (3) Amendment(s) are collectively referred to as the **"Lease"**), pursuant to which Tenant leased that certain space, as further described in the Lease (the **"Premises"**) in the building commonly known as 1133 Northwest L Street, Richmond, IN 47374-1402 (the **"Building"**) said Premises containing 209,380 rentable square feet; and

WHEREAS, the Tenant wishes to extend the term of the Lease, all on the same terms and conditions as stated in the Lease, except as amended below.

WITNESSETH

NOW, THEREFORE, in consideration of the foregoing Recitals and the mutual covenants herein contained, Landlord and Tenant hereby agree as follows:

1. **Recitals.** The recitals set forth above are incorporated herein by this reference with the same force and effect as if fully set forth hereinafter.

2. **Capitalized Terms.** Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Lease.

3. **Term.** The Term of the Lease is hereby extended for an additional 84-month period commencing on April 1, 2017 (**"Renewal Commencement Date"**) and expiring on March 31, 2024 (such period, the **"Extended Term"**). During the Extended Term, all of the conditions set forth in the Lease shall remain in full force and effect, except as expressly modified by, or inconsistent with, the terms of this Amendment. All references in the Lease to the Term shall be deemed to also mean the Extended Term, as applicable, and all references in the Lease to the Expiration Date shall be deemed to mean the date on which the Extended Term expires.

4. **Basic Rent.** Tenant's obligation to pay Basic Rent and all other amounts due under the Lease shall continue as set forth in the Lease for the Extended Lease Term, except that the Basic Rent for the Premises shall be calculated in accordance with the following: As of the Renewal Commencement Date, the Basic Rent in Section 3(A) of the Original Lease (as amended by the First Amendment, Second Amendment and Third Amendment), is hereby deleted in its entirety and the following Base Rent table is substituted in lieu of thereof:

**Basic Rental Payments**

| Lease Period | Monthly Basic Rent |
|---|---|
| 4/1/2017 – 3/31/2018 | $41,876.00 |
| 4/1/2018 – 3/31/2019 | $42,748.42 |
| 4/1/2019 – 3/31/2020 | $43,620.83 |
| 4/1/2020 – 3/31/2021 | $44,493.25 |
| 4/1/2021 – 3/31/2022 | $45,365.67 |

| | |
|---|---|
| 4/1/2022 – 3/31/2023 | $46,238.08 |
| 4/1/2023 – 3/31/2024 | $47,110.50 |

Except with respect to the Basic Rent table, Section 3 of the Lease shall remain otherwise unmodified.

5. **Condition of Premises.** Tenant acknowledges that Tenant currently occupies the Premises pursuant to the Lease and is familiar with the condition of both the Premises and the Property, and Tenant hereby accepts the Premises during the Extended Term on a completely "AS-IS," "WHERE-IS" basis, except for the Extension Tenant Improvements (defined below) and subject to Landlord's obligations in the Lease. Landlord shall not be obligated to make any repairs, replacements or improvements (whether structural or otherwise) of any kind or nature to the Premises in connection with, or in consideration of, this Amendment, except if and as specifically set forth in this Amendment or as required under the Lease.

6. **Tenant Improvements.** Landlord shall provide a one-time allowance up to Fifty Thousand and No/100 Dollars ($50,000.00) (the "**Tenant Improvement Allowance**") for the construction, by Tenant, of certain improvements within the Premises (the "**Extension Tenant Improvements**"). The Tenant Improvement Allowance shall be only available for Tenant's use for work performed and submitted for reimbursement in accordance with the terms of this Amendment on or prior to June 30, 2017. The Extension Tenant Improvements shall be approved by Landlord (which consent shall not be unreasonably withheld, conditioned or delayed) and constructed by Tenant pursuant to the terms and conditions of the Original Lease, including, without limitation, Article 12 of the Original Lease. Payment of the Tenant Improvement Allowance shall be made by Landlord to Tenant within thirty (30) days following the last to occur of: (i) completion of the Extension Tenant Improvements; (ii) Landlord's receipt of Tenant's invoice substantiating the costs related thereto ("**TI Cost**"); (iii) Landlord's receipt of full and final waivers of liens from all parties performing labor or supplying materials or services in connection with the Extension Tenant Improvements showing that all of said parties have been compensated in full and waiving all liens in connection with the Premises and Building. In the event the TI Cost is less than the full amount of the Tenant Improvement Allowance, Landlord shall only provide the Tenant Improvement Allowance in the amount that equals the TI Cost.

7. **Broker.** Tenant covenants, warrants and represents that NAI LaSala-Sonnenberg was the only broker/consultant to represent Tenant in the negotiation of this Amendment. Each party agrees to and hereby does defend, indemnify and hold the other harmless against and from any brokerage commissions or finder's fees or claims therefore by a party claiming to have dealt with the indemnifying party and all costs, expenses and liabilities in connection therewith, including, without limitation, reasonable attorneys' fees and expenses, for any breach of the foregoing. The foregoing indemnification shall survive the termination or expiration of the Lease.

8. **Counterparts, Facsimile, PDF.** This Amendment may be executed in any number of identical counterparts, all of which, when taken together, shall constitute the same instrument. A facsimile or .pdf copy of this Amendment shall be deemed an original for all relevant purposes.

9. **Ratification.** Except as modified by this Amendment, the Lease shall remain otherwise unmodified and in full force and effect and the parties ratify and confirm the terms of the Lease as modified by this Amendment. The Lease (as amended hereby) contains the entire agreement between Landlord and Tenant as to the Premises, and there are no other agreements, oral or written, between Landlord and Tenant relating to the Premises.

10. **Conflict.** Except as amended hereby, the Lease shall be and remain in full force and effect. In the event of any conflict between the terms of the Lease and the terms of this Amendment, the terms of this Amendment shall control.

11. **Tenant Operations Inquiry**: Has Tenant been required to make filings and notices or obtain permits as required by Federal and/or State regulations for the operations at the Premises? Specifically:

a. SARA Title III Section 312 (Tier II) reports X *YES* *NO*

(> 10,000lbs. of hazardous materials STORED at any one time)

b. SARA Title III Section 313 (Tier III) Form R reports *YES* X *NO*

(> 10,000lbs. of hazardous materials USED per year)

c. NPDES or SPDES Stormwater Discharge permit *YES* X *NO*

(answer "No" if "No-Exposure Certification" filed)

d. EPA Hazardous Waste Generator ID Number *YES* X *NO*

Tenant is not obligated to provide updated information with regard to the above annually or at any other time during the Term of the Lease.

IN WITNESS WHEREOF, the parties have executed this Amendment the day and year first above written.

LANDLORD:

FR Northwest L Street, LLC, a Delaware limited liability company
By: First Industrial, L.P., a Delaware limited partnership, its sole member
By: First Industrial Realty Trust, Inc., a Maryland corporation, its sole general partner

By: Daniel Meador
Its: Regional Director/Market Leader

10/5/16
Date

TENANT:

TSN East, LLC, a Missouri limited liability company

By: ______
Name: Daniel J. Holt
Its: Secretary
Date: 10-4-16



SLC-7954061-3

**CONSENT AND REAFFIRMATION**

The undersigned (**"Guarantor"**) hereby (i) acknowledges receipt of a copy of the foregoing Fourth Amendment to Lease (the **"Amendment"**); (ii) consents to Tenant's execution and delivery thereof; (iii) agrees to be bound thereby; and (iv) affirms that nothing contained therein shall modify in any respect whatsoever its guaranty of the obligations of Tenant to Landlord pursuant to the terms of that certain Guaranty of Lease dated October 1, 2004 (the **"Guaranty"**) and reaffirms that the Guaranty is and shall continue to remain in full force and effect. Although Guarantor has been informed of the matters set forth herein and has acknowledged and agreed to same, Guarantor understands that Landlord has no obligation to inform Guarantor of such matters in the future or to seek Guarantor's acknowledgment or agreement to future amendments or waivers, and nothing herein shall create such a duty.

**IN WITNESS WHEREOF**, the undersigned has executed this Consent and Reaffirmation on and as of the date of such Amendment.

**GUARANTOR:**

BUNZL USA HOLDINGS, LLC,
a Virginia limited liability company

By: [signature]
Name: Daniel J. Lett
Its Secretary



SLC-7954061-3

# FIFTH AMENDMENT TO LEASE

THIS FIFTH AMENDMENT TO LEASE ("**Amendment**") dated this 12th day of June, 2023 ("**Effective Date**") by and between **1133 NORTHWEST L STREET LEASING LLC** (the "**Landlord**"), and **TSN EAST, LLC** ("**Tenant**").

RECITALS:

WHEREAS, Landlord (as successor in interest to SNKTW-Indiana, LLC) and Tenant are parties to that certain Lease Agreement dated as of October 1, 2024, as amended by that certain First Amendment to Lease Agreement dated August 2, 2007, that certain Second Amendment to Lease Agreement dated April 13, 2011, that certain Third Amendment to Lease Agreement dated March 27, 2013 and that certain Fourth Amendment to Lease Agreement dated October 5, 2016 (collectively, the "**Lease**"), whereby Tenant leases from Landlord that certain space, as further descried in the Lease (the "**Premises**") commonly known as 1133 Northwest L Street, Richmond, IN 47374-1402;

WHEREAS, Landlord and Tenant desire to amend the Lease in certain respects as described herein;

NOW, THEREFORE, for and in consideration of the premises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Landlord and Tenant agree as follows:

1. Capitalized Terms. Terms capitalized herein and not otherwise defined shall have the meanings ascribed to them in the Lease.

2. Term. The term of the Lease is hereby extended for an additional 5 years commencing April 1, 2024 and expiring on March 31, 2029 ("**Extension Term**"), on the same terms and conditions, except as herein modified.

3. Basic Rent. The Basic Rent payable by Tenant during the Extension Term shall be as follows:

| Period | Monthly Installment of Basic Rent |
|---|---|
| April 1, 2024- March 31, 2025 | $49,204.30 |
| April 1, 2025- March 31, 2026 | $49,942.36 |
| April 1, 2026- March 31, 2027 | $50,691.50 |
| April 1, 2027- March 31, 2028 | $51,451.87 |
| April 1, 2028- March 31, 2029 | $52,223.65 |

4. Option to Renew. Tenant may, at its election, extend the term of the Lease for one (1) renewal period of five (5) years ("**Renewal Term**") by giving written notice of such election to Landlord at least 180 days prior to the date on which the Lease would otherwise expire. If the Term of the Lease is so renewed, then the Lease will continue during the Renewal Term on all of the terms, covenants, conditions and agreements set forth in the Lease, except (A)

transaction. Landlord hereby acknowledges and agrees that the Tenant's Broker shall be entitled to a leasing commission from Landlord by virtue of this Amendment, which leasing commission shall be deemed earned and shall be paid by Landlord to said broker in accordance with, and subject to the terms of, a separate written agreement.

9. All other terms and conditions of the Lease not expressly amended herein shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Amendment the day and year first above written.

LANDLORD:

**1133 NORTHWEST L STREET LEASING LLC**

By: ______________________
Name: Michael Shabsels
Title: Manager

TENANT:

**TSN EAST, LLC**

By: ______________________
Name: Daniel J. Lett
Title: Secretary

# ADDENDUM C

# QUALIFICATIONS OF APPRAISER

## PROFESSIONAL QUALIFICATIONS OF

## MARK E. MITCHELL, MAI, AI-GRS

| | | |
|---|---|---|
| **EXPERIENCE:** | Principal for Prism Realty Valuation & Consulting, with office in Louisville, Kentucky. Over thirty years of real estate appraisal and feasibility experience. Management of a general practice of appraisal and consultation of a wide variety of industrial, commercial, and development real estate primarily in Kentucky and Indiana. Assignments range from complex properties, environmental contamination, litigation, valuation consulting for apartments, shopping centers, office buildings, industrial, subdivisions, and special use properties. | |
| **PROFESSIONAL ACTIVITIES:** | Member: | Appraisal Institute (MAI, No. 10961)<br>Appraisal Institute AI-GRS<br>Bluegrass Chapter (My Old Kentucky Home Chapter) President 2003, Vice President 2001-2002, Board of Directors 1998-2001, Young Advisor Council 1998, General Demonstration Reports Subcommittee 2000-2003, Publication Sub-Committee 2000-2003, Publication Reviewer 2000 to Present, Demonstration Report Grader 2000 to Present, International relations Panel 2014-Present, Chairman of Demonstration Report 2015-2016 |
| | Licensed: | Kentucky General Appraiser License No. 000664<br>Indiana General Appraiser License No. CG49300053<br>Kentucky Real Estate Broker<br>Tennessee General Appraiser License No. 2641 |
| | Member: | Greater Louisville Association of Realtors<br>Urban Land Institute<br>International Association of Assessing Offices |
| | Lecturer: | Presentations on Louisville County Single Family Market to Louisville Board of Realtors, My Old Kentucky Home Chapter of Appraisal Institute and Louisville Home Builders Association. |
| | Instructor: | Instructor, Appraisal Institute 2004 – Present |
| | Reviewer: | "The Valuation of Wetlands", Second Addition, Mr. David Michael Keating, Appraisal Institute, 2002 |
| | Referee: | Appraisal Journal Reviewer 2018-Present |

**PROFESSIONAL QUALIFICATIONS OF**

**MARK E. MITCHELL, MAI, AI-GRS**

| | |
|---|---|
| EDUCATION: | Centre College, Danville, Kentucky<br>B.A. Degree, Economics, University of Louisville, Louisville, Kentucky<br>M.U.P., Master of Urban Planning, University of Louisville<br>Post Graduate Work, University of Louisville<br><br>Successfully completed numerous real estate related courses and seminars sponsored by the Appraisal Institute.<br><br>Currently certified by the Appraisal Institute's voluntary program of continuing<br><br>**Appraisal Education**<br>Appraiser as an Expert Witness<br>Impact of Short-Term Rentals<br>Livestock Ranch Seminar<br>Appraisal Automobile Dealerships<br>Advanced Land Valuation: Sound Solutions to Perplexing Problems.<br>Complex Litigation Appraisal Case Studies<br>Review Case Studies-General<br>Business Practices and Ethics<br>Small Hotel/Motel Valuation<br>Review Theory-General<br>Cool Tools-Technology for Real Estate Appraisers<br>The Lending World in Crisis-What Clients Need Their Appraisers to know Today<br>Understanding the Impact of the Interagency Appraisal and Evaluation Guidelines for Appraisers and Lenders<br>Valuation of Conservation Easements<br>Litigation Appraising: Specialized Topics and Applications<br>Real Estate Finance, Statistics and Valuation Modeling<br>General Appraiser Income Approach/Part 2<br>General Appraiser Sales Comparison Approach<br>General Appraiser Site Valuation and Cost Approach<br>General Appraiser Income Approach/Part 1<br>General Appraiser Market Analysis and Highest and Best Use<br>Office Building Valuation: A Contemporary Perspective<br>Subdivision Valuation<br>FHA and The New Residential Appraisal Forms<br>What Clients would Like Their Appraisers To Know<br>Opportunities For Appraisal Consultants Under Brownfields Act-02<br>Evaluation Commercial Construction<br>Basic Appraisal Principles<br>Basic Appraisal Procedures |

**PROFESSIONAL QUALIFICATIONS OF**

**MARK E. MITCHELL, MAI, AI-GRS (continued)**

| | |
|---|---|
| **CLIENTS:** | QUALIFIED BEFORE COURTS AND ADMINISTRATIVE BODIES:<br>Circuit Court of Campbell County, Kentucky; Circuit and District Court, Circuit Court of Jefferson County, Louisville, Kentucky; Kentucky Claims Commission, Kentucky Board of Tax Appeal (Real Property), Federal Bankruptcy Court, Western Kentucky District<br><br>FINANCIAL INSTITUTION:<br>PNC Bank, Bank of America, Peoples Bank, Centra Credit Union, Monticello Banking Company, First Harrison Bank, Wells Fargo Bank<br><br>LAW FIRMS:<br>Stites and Harbison; Frost Brown Todd; Ogden, Newell and Welch; Morris, Garlove, Waterman and Johnson; Bonnie Brown, Phyllis G Bossin & Associates, Tranter & Meier; Straw-Boone, Doheny, Bank & Mudd, PLLC and Burbank & Collins, PSC, Faegre Drinker Biddle & Realth, LLP<br><br>CORPORATIONS AND DEVELOPERS:<br>Humana, Louisville Water Company, Anthem, Turfway Park and Developers, Hollenbach- Oakly, Fenley Development, Glenview Trust Company, Rebound Inc.<br><br>GOVERNMENT:<br>City of Louisville, City of Middletown, Jefferson County PVA, Fayette County PVA, Fayette County Attorney's Office, United States Navy, Lincoln County Industrial Authority, Vanceburg-Lewis County Industrial Authority, Jefferson County regional Airport Authority, University of Kentucky |

**PROFESSIONAL QUALIFICATIONS OF**

**MARK E. MITCHELL, MAI, AI-GRS (continued)**

Indiana Professional Licensing Agency
Real Estate Appraiser Licensure Board
402 W. Washington Street, W072
Indianapolis, IN 46204

Certified General Appraiser

| License Number | Expire Date |
|---|---|
| CG49300053 | 06/30/2026 |

Mark Edward Mitchell

Eric J. Holcomb
Governor
State of Indiana

Lindsay M. Hyer
Executive Director
Indiana Professional Licensing Agency

# ADDENDUM D

# ENGAGEMENT LETTER

Commercial Appraisal Order Details Tracking #754748-54303935

**History (In Progress)**

06/09/25 02:46 PM Message from Client (Winfried Likumahuwa)
*Point of Contact:*

*Michael Shabsels*
*Email: m.shabsels@gmail.com*
*Mike Covino: (203) 594-7444*
*Amelia (Covino Team): (203) 716-8452*
*Ender (Covino Team): (917) 623-7383*
*Amelia Email: abrittani@luxmac.com*
*Ender Email: eerhan@luxmac.com*

06/09/25 02:44 PM Order Changed by Client (Winfried Likumahuwa)
*To View Change History: Click here.*

06/09/25 02:44 PM Message from Client (Winfried Likumahuwa)
*Remember the client's requirement:*

*The report and letter of transmittal will need to be address to:*

*Newtek Bank, National Association and its affiliates and subsidiaries*
*1981 Marcus Ave Suite 130*
*Lake Success, NY 11042*

*Please contact Michael Shabsels at Email: m.shabsels@gmail.com and Mike Covino: (203) 594-7444to set up the inspection and obtain all pertinent information.*

***Intended users clause: Newtek Bank, and National Association and its affiliates and subsidiaries* Please include the insurable value and remaining economic life*

06/09/25 02:31 PM Order accepted by Appraiser (Mark Mitchell) and In Progress

06/09/25 01:58 PM Bid Message by Client (Natasha Valvo)
*Notes: Point of Contact:*
*Michael Shabsels*
*Email: m.shabsels@gmail.com*
*Mike Covino: (203) 594-7444*

06/09/25 01:55 PM Bid Message by Client (Natasha Valvo)
*Notes: Hi Mark*
*I want to let you know that fee is not an issue with this order but getting it in on time is. If you have an even faster option please let me know. It is so important that this order goes smoothly because it is part of a large order that the client placed with multiple appraisals in different states. We need to show them that we are good at handling these types of bulk orders so that we are in the running to receive more work which then we can pass on to you in the future. If you run into any issues or feel that it is getting too difficult please don't get frustrated and instead bill us more if needed. It is most important that this gets completed on time and any revisions needed are handled swiftly.*
*Thanks*

06/09/25 01:52 PM Appraiser Mark Mitchell has been awarded this order by Client Natasha Valvo.

06/06/25 10:16 AM Message from Appraiser (Mark Mitchell)
*$2000 in 8 days*

*Thanks*
*Mark*

06/06/25 08:50 AM Bid Message by Client (Natasha Valvo)
*Notes: Good morning*
*Please give me an 8 business day turn time fee.*
*Thanks*

06/02/25 01:10 PM Appraiser Mark Mitchell submitted a bid on this order. Certified
*Amount: $1,850; Turn Time: 14 business days*

06/02/25 12:31 PM Bid Pending by Mark Mitchell

**Client Information**

| | | | |
|---|---|---|---|
| **Name** | Natasha Valvo | **Phone** | 412-200-2550 x543 |
| **Company** | Service 1st LLC | **Fax** | |
| **Address** | 1000 Cliff Mine Rd<br>Pittsburgh, PA 15275 | **E-mail** | nvalvo@service1inc.com |

**Vendor Information**

| | | | |
|---|---|---|---|
| **Name** | Mark Mitchell | **Phone** | 502-290-8263 |
| **Company** | Prism Realty Valuation & Consulting | **Fax** | |
| **Address** | 120 Sears Ave Suite 215<br>Louisville, KY 40207 | **E-mail** | mmitchell@prismrvc.com |

**Assignment Information**

| | | | |
|---|---|---|---|
| **Product** | Commercial Appraisal Report | | |
| **Order Fee** | $2,000 | **Payment Method** | Check |
| **Trans Fee** | | **Loan #** | 2767461 |
| **Due Date** | 6/19/2025 | **File #** | |
| **Other Ref #** | | **FHA#** | |
| **Internal Order #** | | **Sales Price** | |

**1133 NORTHWEST L STREET; RICHMOND, INDIANA 47374**

| | | | |
|---|---|---|---|
| Loan Type | | Lender Name | Newtek Bank, National Association and its affiliates and subsidiaries |
| Loan Purpose | | Lender Address | 1981 Marcus Avenue, Suite 130<br>Lake Success, NY 11042 |
| Invoice # | | Invoice Amt | |
| Ordered By | | DU Case File | |
| LPA Key | | PDAPI Key | Edit |
| BACE Submission ID | Edit | | |

**Property Information**

| | | | |
|---|---|---|---|
| Address | 1133 NW L St | Prop Type | |
| Unit Type | | Prop Rights | |
| City | Richmond | Legal Desc | |
| State | IN | Directions | **PLEASE GIVE ME AN 8 BUSINESS DAY TURN TIME IF POSSIBLE. INTERIOR INSPECTION REQUIRED. SIGNING APPRAISER MUST COMPLETE THE INTERIOR INSPECTION. * Please include the remaining economic life |
| Zip Code | 47374 | Characteristics | |
| Sq Ft | | | |
| Site Size | | | |

**Contact and Access Information**

| | | |
|---|---|---|
| Borrower: | Shabsels Brothers Summer Camps | Home: 111-111-1111 |
| Co-Borrower: | | |
| Owner: | | |
| Occupant: | | |
| Agent: | | |
| Other: | | |
| Appt. Contact: | | |

**Additional Comments or Instructions to the Vendor**

****PLEASE SEE SEPARATE ATTACHMENT UPLOADED TO THE ORDER WITH THE COMPLETE ORDER INSTRUCTIONS****

**PLEASE NOTIFY US IF YOU WILL NOT HAVE ACCESS TO ALL OF THE UNITS**

IF YOU ENCOUNTER ANY SITUATION THAT WOULD VIOLATE VALUATION INDEPENDENCE PLEASE REPORT IT IMMEDIATELY TO SERVICE 1ST AT THE FOLLOWING EMAIL ADDRESS. reportviolations@service1inc.com o Service 1st fully supports valuation independence. Our internal policies and procedures ensure strict adherence to all regulatory requirements and professional standards, including Appraiser Independence, USPAP, Dodd-Frank, and individual state requirements. Your assistance in reporting violations will help protect the valuation process from undue influences. The identity of the reporting person will be safe guarded so as to support and protect a process that encourages the open reporting of violations. Any individual reporting a violation will not be negatively impacted in work volume, assignment type, employment, or any other means for reporting the violation.
In accepting this order for an appraisal and submitting the requested appraisal, you, as the appraiser, certify that you: (1) are independent of the transaction; (2) have the requisite licensing, education, expertise, and experience necessary to competently complete the appraisal assignment in accordance with USPAP and all applicable industry standards; and (3) were not coerced in any way concerning the appraisal that you have submitted.
The client requires that you personally inspect the subject property and comparables included in the report; sub-contracting is not permitted. If anyone other than yourself will be providing assistance in the appraisal process, you must employ him or her, and we must receive their qualifications for the clients approval, prior to accepting this assignment.
The client requires that you personally inspect the subject property and comparables included in the report; sub-contracting is not permitted. If anyone other than yourself will be providing assistance in the appraisal process, you must employ him or her, and we must receive their qualifications for the clients approval, prior to accepting this assignment.

Service 1st operates in 50 states and the District of Columbia. AL #AL0185, AK 150891, AR #AMR-199, AZ #RAMC-40298, CA #3004699, CO #200001092, CT #AMC.0000217, DE #X7-0000131, FL #MC328, GA #257, HI AMC-1210, IA #92, ID AMC-4553, IL #558.000262, IN #AMC1700006, KS #KSP172, KY #176, LA #0229, MA 42, MD #32980, ME #AMC3854, MI #1202000193, MN #40548039, MO #2017019913, MS #AMC-133, MT #REA-AMC-LIC9341, NC #NC-1211, ND AMC-ND-2018-027, NE NE2017007, NH #AMC-161, NJ 42AC00009300, NM #AMC1198, NV #AMC.0000912, NY AMC_19_0271, OH #AMC.2019001807, OK #60197AMC, OR #AM-209, PA #AMC000200, RI #REA.0021-AMC, SC #20, SD #AMC-SD-1148-2017, TN #232, TX #2000244, UT #10504022-AMCO, VA #4009000174, VT #077.0131803.MAIN, WA #3000227, Washington D.C. AMC0028, WI #8-900, WV #WV010121, WY AMC-116

If you have any questions regarding this assignment please email our Manager of Commercial Valuations Natasha Phillips nvalvo@service1inc.com

**INSURABLE VALUE REQUIRED**

**DO NOT DISCUSS DELIVERY DATE OR FEE WITH ANYONE OTHER THAN SERVICE 1ST. WE ARE YOUR CLIENT. IF SOMEONE ELSE ASKS YOU FOR ANY INFORMATION ABOUT WHEN THEY WILL RECEIVE THE REPORT OR HOW MUCH THE FEE IS ASK THEM TO CALL THEIR SERVICER**

If you have any questions regarding this assignment please email our Manager of Commercial Valuations Natasha Phillips nvalvo@service1inc.com

The client will not accept any statement of financial limit on appraiser liability added to the appraisal.

NOTE: IF YOU HAVE PERFORMED VALUATION SERVICES FOR THE SUBJECT PROPERTY WITHIN THE LAST 3 YEARS THAT WAS NOT FOR THE CLIENT IN THIS ASSIGNMENT PLEASE CONTACT SERVICE 1st BEFORE STARTING ON THE ASSIGNMENT.

Appraisers must have access to and use CoStar data in the preparation of the appraisal. The appraiser is not limited to CoStar data only. If the appraiser finds alternate data they feel is more appropriate for the assignment they may substitute, but they need to have checked the CoStar data base completely to insure they are considering all available data for an assignment.

PLEASE ADD THE CLIENT ORDER NUMBER TO THE APPRAISAL IN A PROMINENT LOCATION WHERE IT CAN BE EASILY IDENTIFIED BY THE READER.

Per client request please provide a copy of the data/listing sheet for all comparable sales utilized in the appraisal

**Please do not place additional contingencies on the appraisal without prior consent from Service 1st.

**The client requests that recent comparable sales be utilized in the appraisal to reflect current market conditions.

EXTERIOR INSPECTIONS If the client has requested an exterior inspection, please do not contact the subject property owner or occupant as this is a client confidentiality request. Do not trespass on the subject property and do not disclose the client provided information or the clients identity.

**Please include the estimated value in the letter of transmittal.

The client has provided descriptive information about the subject property that was obtained from past valuations. If your research indicates a significant deviation from the client provided data, please provide your data source for that information, or support for your differing interpretation of the physical description or use of the subject property.

It is requested that the appraiser provide the current as-is market value of the property and comment on any listing information of the subject within the past year in addition to the sales history within the past 3 years.

If the appraiser has ever appraised the subject property it must be noted in the appraisal report.

The appraisal must include an adjustment grid, pictures of the comparable sale properties as well as a location map. The comparable sales should bracket the estimated value of the subject on both an unadjusted and adjusted basis.

Using only the GRM Method is not acceptable; the appraisal must include the Direct Capitalization Method. The appraisal must include pictures of the comparable rental properties as well as a location map.

reports include an adjustment grid for the comparables used in the Sales Comparison Approach.

PLEASE PROVIDE NEW, ORIGINAL, CLEAR PHOTOS OF THE FRONT, ALL SIDES, STREET AND ADDRESS VERIFICATION FOR THE SUBJECT PROPERTY. IF AN INTERIOR INSPECTION IS REQUESTED, PLEASE PROVIDE A MINIMUM OF 6 INTERIOR PHOTOS.

**A LOCATION MAP SHOWING THE SUBJECT AND ALL COMPS SHOULD ALSO BE INCLUDED.

***COMP PHOTOS MUST BE ORIGINALS (YOU CANNOT USE MLS)***

Please provide information on the microeconomic influences and trends that affect the subject property. These influences can include nearby competitive properties and developments, REO activity, nearby employment centers, traffic flows and other influences that directly influence the subject property. Provide a summary on the current trends and anticipated near term trends for these microeconomic influences.
Please provide information on the macroeconomic influences and trends affecting the subject property. These can include area employment trends, population trends, major road improvements and highway extensions, regional transportation trends including airports and railway hubs. Provide a summary on the current trends and anticipated near term trends for these macroeconomic influences.

Do not apply lease up charges if the subject building appears fully occupied. Please make the extraordinary assumption that the tenant will remain in place for an existing lease term or the owner/occupant will remain in the subject building.

EXTERIOR INSPECTIONS - The client has provided descriptive information about the subject property that was obtained from past valuations. PLEASE MAKE THE EXTRAORDINARY ASSUMPTION THE CLIENT PROVIDED GLA AND INTERIOR INFORMATION IS CORRECT FOR EXTERIOR INSPECTIONS. If your research indicates a significant deviation from the client provided data, please provide your data source for that information, or support for your differing interpretation of the physical description or use of the subject property.

INTERIOR INSPECTIONS PLEASE MEASURE THE SUBJECT BUILDING AND USE THAT INFORMATION IN YOUR APPRAISAL REPORT.

In accepting this order for an appraisal and submitting the requested appraisal, you, as the appraiser, certify that you: (1) are independent of the transaction; (2) have the requisite education, expertise, and experience necessary to competently complete the appraisal assignment; and (3) were not coerced in any way concerning the appraisal that you have submitted.

Service 1st operates in 50 states and the District of Columbia. AL #AL0185, AK, AR #AMR-199, AZ #RAMC-40298, CA #3004699, CO #200001092, CT #AMC.0000217, DE #X7-0000131, FL #MC328, GA #257, HI AMC-1210, IA #92, ID AMC-4553, IL #558.000262, IN #AMC1700006, KS #KSP172, KY #176, LA #0229, MA, MD #32980, ME #AMC3854, MI #1202000193, MN #40548039, MO #2017019913, MS #AMC-133, MT #REA-AMC-LIC9341, NC #NC-1211, ND, NE NE2017007, NH #AMC-161, NJ, NM #AMC1198, NV #AMC.0000912, NY, OH, OK #60197AMC, OR #AM-209, PA #AMC000200, RI, SC #20, SD #AMC-SD-1148-2017, TN #232, TX #2000244, UT #10504022-AMCO, VA #4009000174, VT #077.0131803.MAIN, WA #3000227, Washington D.C., WI #8-900, WV #WV010121, WY AMC-116

In accepting this assignment you hereby agree to the following:
1. The lender, Newtek Small Business Finance, LLC, is your client for this assignment. All appraisals shall be addressed and certified to either Newtek Small Business Finance, LLC its successors and/ or assigns as noted on the above letterhead.
2. All appraisals will conform to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), the Uniform Standards of Professional Appraisal Practice (USPAP) and to the

Appraisal Standards of Newtek Small Business Finance, LLC which standards are attached and identified as "Attachment A."
3. The Effective Date(s) in your appraisal should be the date of your inspection.
4. Complete appraisals must address the Sales Comparison and Cost approaches to value. It must incorporate a reasonable methodology, which reconciles these approaches into a value conclusion. If one or more approaches are not used, the appraiser must explain the reason for eliminating those approaches.
5. The Cost Approach alone is unacceptable for real estate (acceptable for personal property

**PLEASE GIVE ME AN 8 BUSINESS DAY TURN TIME IF POSSIBLE. INTERIOR INSPECTION REQUIRED. SIGNING APPRAISER MUST COMPLETE THE INTERIOR INSPECTION. * Please include the remaining economic life
Remember the client's requirement:

The report and letter of transmittal will need to be address to:

Newtek Bank, National Association and its affiliates and subsidiaries
1981 Marcus Ave Suite 130
Lake Success, NY 11042

Please contact Michael Shabsels at Email: m.shabsels@gmail.com and Mike Covino: (203) 594-7444to set up the inspection and obtain all pertinent information.

**Intended users clause: Newtek Bank, and National Association and its affiliates and subsidiaries* Please include the insurable value and remaining economic life