UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-1

WARD W. BENSON
STEPHEN S. HO
Trial Attorneys, Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 227
Washington, D.C. 20044
(202) 514-9642
(202) 514-6866 (Fax)
ward.w.benson@usdoj.gov
stephen.s.ho@usdoj.gov
Counsel for the United States

In re:

SIMAD HOLDINGS LTD., *et al.*,

Debtors.

Chapter 11

Case No. 26-16388 (CMG)

**UNITED STATES' RESPONSE TO MOTION FOR TAX DETERMINATION**

Debtors move for a determination that buyers of its real property need not withhold taxes based on a regulation that only applies to foreclosure proceedings. The Court should deny the debtors' motion.

It is beyond dispute that a debtor in bankruptcy is required to comply with all tax filing, withholding, and payment obligations generally applicable to a business, unless a statute permits otherwise. 28 U.S.C. § 960; *Otte v. United States*, 419 U.S. 43 (1976); 11 U.S.C. § 346(h)[1], 26 U.S.C. 6012(b)(3). The only wrinkle in this matter is that the disputed withholding obligation falls on the party transacting with the debtors, not the debtors themselves. But that is all the

[1] This provision deals with state and local withholding obligations. But since § 346 serves to harmonize the treatment of federal and state taxes under the Bankruptcy Code, it can be inferred that the same obligation exists under federal law and is applicable in bankruptcy cases. *See Hall v. United States*, 566 U.S. 506, 514-515 and fn. 4 (2012).

more reason not to grant the special relief sought. There is no legal basis to excuse a *nondebtor* from its tax obligations simply because it is doing business with a debtor in bankruptcy. The debtors are only seeking this relief because it will push the practical deadline to fully pay their post-petition income taxes into the future, potentially after all the proceeds of their real estate sales have been paid to creditors and estate professionals. The Court should not condone this conduct.

Even if the Court had some inclination to grant the motion, it lacks jurisdiction to do so. Section 505(a)'s grant of jurisdiction is limited to determining "the amount or legality of any tax." It does not permit a bankruptcy court to determine a matter antecedent to a tax or a future tax liability. Additionally, the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a) expressly deprives courts of jurisdiction to enjoin the IRS from assessing taxes against nondebtors, including the withholding taxes for which the purchasers of the debtors' assets could be held liable under IRC § 1461. The Court thus lacks jurisdiction to grant the requested relief.

And jurisdiction aside, the facts set forth in the motion show the debtors are not entitled to a determination that no withholding is required. IRC § 1445(a) provides that "in the case of any disposition of a United States real property interest … by a foreign person, the transferee shall be required to deduct and withhold a tax equal to 15 percent of the amount realized on the disposition." The debtors contend that they will not realize any amount of the proceeds of these sales because the funds will all be distributed to creditors. That may be true from an economic standpoint, but they ignore the true meaning of "amount realized" as used in § 1445. The Internal Revenue Code defines the term as: "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." 26 U.S.C.A. § 1001(b). Here there is no dispute that the

debtors have or will receive cash from the buyers of their real property. Based on their own alleged facts, they are therefore not entitled to have the buyers excused from the statutory withholding requirement.

Finally, the requested relief is not compelled by any underlying bankruptcy policies nor should it be necessary if these cases are actually headed for a confirmed plan that complies with the Bankruptcy Code. First, the amount of any required tax withholdings is subject to a statutory trust in favor of the United States, IRC §7501(a), and thus is not property of the debtors' estates. *Begier v. I.R.S.*, 496 U.S. 53, 67 (1990) (prepetition payment of withholdings on employees' wages not an avoidable preference because they were not property of the debtor/employer). Payment of the withheld funds to the IRS thus would not violate any of the Code's priority rules regarding estate property. Second, in a Chapter 11 case, the debtor is required to meet its tax obligations as they become due, 28 U.S.C. § 960, and any delinquent post-petition taxes must be paid in full on the effective date along with all other administrative expenses. 11 U.S.C. § 1129(a)(9)(A). There should be no concern about the IRS receiving a disproportionate share of its administrative expenses via withholdings unless the estates' professionals, before a plan has even been filed[2], believe these cases are headed towards administrative insolvency. If they do, that is a much bigger problem that they and the Court should be addressing now.

<u>ARGUMENT</u>

The Court should deny the motion. It lacks jurisdiction to grant the requested relief, and the regulatory exception for foreclosure proceedings does not apply here. Nor are they entitled to the requested relief on the merits. Denial is therefore appropriate.

---

[2] On September 11, 2026, the debtors sought to extend the exclusivity period to file a plan to January 3, 2027. (Dkt. No. 1106).

**Sections 105(a) and 505(a) Do Not Grant Jurisdiction for the Requested Declaratory Relief**

Contrary to the debtors' contention, §§ 105 and 505(a) do not grant this Court jurisdiction or authority to grant any of the declaratory relief requested in the motion.

The Court's jurisdiction over tax disputes is limited by both the Bankruptcy Code and Title 28. The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought....

28 U.S.C. § 2201(a). This Court's jurisdiction thus is subject to two initial limitations: (1) there must be an *actual controversy* over a tax-related issue; and (2) the relief sought must come within the scope of § 505.[3] *In re UAL Corp.*, 336 B.R. 370, 372-374 (Bank. N.D. Ill. 2006). *See also In re Dycoal, Inc.*, No. 05-679, 2006 WL 360642, at *9 (W.D. Pa. Feb. 15, 2006) ("§ 505(a) does not vitiate the case or controversy requirement"). The portion of § 505 relevant to this case permits a bankruptcy court to "determine the amount or legality of any tax." 11 U.S.C. § 505(a).

---

[3] There may be some question as to whether § 505(a)(1) is itself jurisdictional and whether there may be another jurisdictional basis for the relief sought. *Compare Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 925 (3d Cir. 1990) (holding that 28 U.S.C. § 1334, not 11 U.S.C. § 505, was the sole determinant of a bankruptcy court's jurisdiction over the tax liability of a non-debtor, but also suggesting that § 505 may, in some other context, be jurisdictional) *with In re Custom Distribution Services Inc*., 224 F.3d 235, 239-40, n. 3 (3d Cir. 2000) (trustee's failure to comply with administrative request requirement in § 505(a)(2)(B) deprives bankruptcy court of subject matter jurisdiction over refund claim). To the extent Third Circuit law is that § 505 does not deny subject matter jurisdiction here, the United States asserts that it does purely to preserve the argument on appeal. And, even if there is subject matter jurisdiction here, the United States nonetheless contends that there is no statutory authorization for the relief sought. *See Dycoal*, 327 B.R. at 225-226.

The result of these two limitations is that a bankruptcy court can only make determinations about extant tax liabilities; it cannot determine future tax liabilities or matters antecedent to a tax liability. *In re Dycoal, Inc.*, 327 B.R. 220, 227 (Bankr. W.D. Pa. 2005) ("the Court, when ruling under § 505(a)(1), is, as a matter of law, confined to only ruling upon existent tax liabilities of a debtor, that is the Court cannot, pursuant to § 505(a)(1), make determinations regarding tax issues that merely impact upon a future tax liability of a debtor") (citing *In re Grand Chevrolet, Inc.*, 153 B.R. 296, 298-300 (C.D. Cal. 1993) ("Section 505 does not contain any specific language allowing a bankruptcy court to render declaratory judgments concerning the nature or amount of tax liabilities that may arise in the future, or to determine one issue that will affect the amount of a tax liability on a tax return not yet filed.") and *In re Inter Urban Broadcasting of Cincinnati, Inc.*, 180 B.R. 153, 155-56 (Bank. E.D. La. 1995)); *In re GYPC, Inc.*, No. 17-31030, 2021 WL 4618410, at *3 (Bankr. S.D. Ohio Oct. 5, 2021) ("Congress determined that, with certain exceptions, a bankruptcy court could determine the amount or legality of a tax, no more and no less.").

Here, the debtors are not seeking the determination of any extant tax liabilities. To the extent they are seeking determinations of their own taxes, the nature of federal income tax liabilities is that they do not arise until the end of the tax year when all events necessary for the calculation have occurred. *In re Affirmative Insurance Holdings Inc.*, 620 B.R. 73, 83-84 (D. Del. 2020). Until the tax year ends and the debtors have formally asserted a tax liability the IRS can contest, there is no ripe actual case or controversy for the Court to adjudicate. *Dycoal*, 327 B.R. at 228 (citing *Grand Chevrolet*, at 299, and *Inter Urban Broadcasting*, at 155-156). And to the extent they want determinations regarding the purchasers' withholding liabilities, that issue will not be ripe until the transactions have actually taken place.

Section 105(a) does not save the debtors here. First, it is not a jurisdictional provision and thus cannot provide subject matter jurisdiction. *In re W.R. Grace & Co.*, 591 F.3d 164, 170 (3d Cir. 2009) ("While § 105(a) of the Bankruptcy Code allows a bankruptcy court to issue any order necessary to carry out the provisions of the Code, it 'does not provide an independent source of federal subject matter jurisdiction.'" (quoting *In re Combustion Eng'g, Inc*., 391 F.3d 190, 225 (3d Cir.2004))). Nor can § 105 make up for § 505's limitation to actual tax liabilities. *In re Dycoal, Inc*., 327 B.R. 220, 226 (Bankr. W.D. Pa. 2005) ("§ 105(a), by itself, does not provide the Court with sufficient authorization to render a declaratory judgment vis-a-vis a tax issue of a type that would be inconsistent with that which can be granted via § 505(a)(1).") (citing *In re Kaplan*, 104 F.3d 589, 598 (3rd Cir.1997)); *GYPC*, at *2 (§ 105 "does not allow the court to 'contravene specific statutory provisions [such as § 505].'") (quoting *Law v. Siegel*, 571 U.S. 415, 421 (2014)).

The Court should therefore deny the motion to the extent it seeks declaratory relief regarding any matters other than actual extant tax liabilities.

**The Tax Anti-Injunction Act Bars the Requested Injunctive Relief**

This Court should deny the motion because the Tax Anti-Injunction Act deprives it of jurisdiction to grant the requested relief. The Tax Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). The Act's principal purpose is '"the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference.'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736-737 (1974) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). The Act bars injunctive relief even if the threatened collection action "would cause an irreparable injury, such

as the ruination of the taxpayer's enterprise." *Bob Jones Univ*., 416 U.S. at 745. It instead requires that a taxpayer assert his legal right to disputed sums in a suit for refund. *Id.*, at 736-37; *Beale v. Internal Revenue Service*, 256 Fed.Appx. 550 (3d. Cir. 2007) (federal district courts lack subject matter jurisdiction to entertain challenges to collection actions relating to outstanding employment tax liabilities).

The Tax Anti-Injunction Act applies to bankruptcy courts notwithstanding § 105's broad grant to issue injunctive relief. *In re Dutch Masters Meats, Inc*., 182 B.R. 405, 408 (Bankr. M.D. Pa. 1995) (citing *In re Becker's Motor Trans., Inc.*, 632 F.2d 242, 246 (3d Cir. 1980), *cert. denied*, 450 U.S. 916 (1981)); *In re Heritage Vill. Church & Missionary Fellowship, Inc.*, 851 F.2d 104, 105 (4th Cir. 1988) ("There is no express provision in the Bankruptcy Code indicating congressional intent that the Code supersede the Anti–Injunction Act."). It therefore has long been held to bar any attempt by a bankruptcy court to enjoin the IRS from assessing or collecting IRC § 6672 penalties against nondebtor individuals who fail to withhold FICA and income taxes on behalf of a debtor's employees. *Plainwell, Inc. v. United States (In re Plainwell, Inc.)*, No. 00-4350 (JWV), 04-17-KAJ, 2004 WL 2345717, *2 (D. Del. Oct. 7, 2004); *In re LaSalle Rolling Mills, Inc.*, 832 F.2d 390 (7th Cir. 1987); *A to Z Welding & Mfg. Co. Inc. v. United States*, 803 F.2d 932, 933 (8th Cir. 1986); *American Bicycle Ass'n. v. United States (In re American Bicycle Ass'n.)*, 895 F.2d 1277, 1279 (9th Cir. 1990); *J.J. Re-Bar Corp., Inc v. United States (In re J.J. Re-Bar Corp., Inc.)*, 644 F.3d 952, 955-956 (9th Cir. 2011); *In re Condado Rest. Grp. Inc.*, No. 16-01329 BKT, 2017 WL 2483721, at *2 (Bankr. D.P.R. June 7, 2017); *In re East Wind Indus., Inc.*, 61 B.R. 408, 411 (D.N.J. 1986). *See also*, *Pazzo Pazzo, Inc. v. New Jersey*, No. 07-cv-1558(WJM), 2007 WL 4166017, *3 (D.N.J. Nov. 20, 2007) (the Tax Injunction Act, 28 U.S.C.

§ 1341, deprived the bankruptcy court of jurisdiction to enforce release provisions in a confirmed plan against the state of New Jersey).

The liability arising from the withholding obligations of the purchasers of the debtors' real property is functionally identical to § 6672 liability. "Every person required to deduct and withhold tax under section 1445 is made liable for that tax by section 1461." 26 C.F.R. § 1.1445-1(e)(1). Thus, "if a transferee is required to deduct and withhold tax under section 1445 but fails to do so, then the tax shall be assessed against and collected from that transferee." 26 C.F.R. § 1.1445-1(e)(1). Moreover, the failure of the principals of a transferee to effectuate the withholdings can directly give rise to § 6672 liability. 26 C.F.R. § 1.1445-1(e)(2). The Anti-Injunction Act thus clearly deprives the Court of jurisdiction to grant the injunctive relief sought in the motion, including directing the purchasers not to withhold any portion of the proceeds and pay it over to the IRS and barring the IRS from assessing any liability for their failure to so. The Court should therefore decline to grant any such relief.

**The Court Cannot Employ the Special Procedures for Foreclosures**

The debtors incorrectly suggest that this Court can invoke the special procedural rules available to courts overseeing foreclosure proceedings. *See* 26 C.F.R. § 1.1445-2(d)(3). The most obvious problem with this suggestion is that this bankruptcy case is not a foreclosure proceeding, and so this court is not a permissible forum to employ the procedural exception. *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, 32 F.4th 548, 557 (6th Cir. 2022) ("If a regulation's meaning is plain, the court must give the 'it effect, as the court would any law.'" (quoting *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019))). Congress, when drafting the Internal Revenue Code, has used terms such as "foreclosures," "receivers," "receiverships," as distinct from bankruptcies and bankruptcy trustees. *E.g.* IRC § 6012(b)(3) ("In a case where a

receiver, trustee in a case under title 11 …, or assignee … has possession of or holds title to all or substantially all the property or business of a corporation, …, such receiver, trustee, or assignee shall make the return of income for such corporation…"); § 368(a)(3)(A) ("the term 'title 11 or similar case' means--(i) a case under title 11 of the United States Code, or (ii) a receivership, foreclosure, or similar proceeding in a Federal or State court.").[4] Based on the clear language of the regulation, the special procedures requested by the debtors are not available in these bankruptcy cases.

And even if the Court were open to going beyond the plain meaning of the regulation, it cannot make the requested determinations on the factual record before it. A foreclosure court may determine an "alternative amount" to be withheld, which is

> the entire amount, if any, determined by a court or trustee with jurisdiction over the matter, that accrues to the debtor/transferor out of the amount realized from the foreclosure sale. The **amount of any mortgage, lien, or other security agreement <u>secured by the property</u>**, that is terminated, assumed by another person, or otherwise extinguished (as to the debtor/transferor) shall not be treated as an amount that accrues to the debtor/transferor for purposes of this § 1.1445–2(d)(3)(i)(A).

26 C.F.R. § 1.1445-2(d)(3)(i)(A)(2) (emphasis added). The motion makes the following admission that is crucial, despite being relegated to a footnote.

> [4] The scheduled debt includes secured and unsecured claims as reflected on the SIMAD Debtors' books and records. The scheduled debt also includes claims that the SIMAD Debtors have asserted are contingent, unliquidated and undisputed. The SIMAD Debtors have not yet completed a thorough review of the proofs of claims that have been filed against the SIMAD Debtors.

---

[4] The debtors cite two decisions from the same case purportedly extending 26 C.F.R. § 1.1445-2(d)(3) to a receivership case. But that was a tax collection and lien enforcement case (i.e., a foreclosure proceeding) *initiated by the United States* in which the United States moved for the appointment of a receiver pursuant to IRC § 7403(d). (Dkt. Nos. 1, 13-15, 25; case no.: 5:99-cv-00161-HLA (M.D. Fla.)). The liens that resulted in no amount being realized in the two decisions cited *were federal tax lien*, presumably undisputed by the United States, and the United States consented to the sale. (Dkt. Nos. 318, ¶¶ 10, 13; 431, ¶¶ 4, 8). The cited decisions thus have no relevant to the current cases.

(Mot., p. 4 n. 4). The debtors thereby acknowledge they do not know which, if any, valid mortgages, liens, or security interests encumbering *the actual real property to be sold* will be extinguished through the contemplated sales. The motion makes no attempt to distinguish between debt secured by real property and debt secured by personal property.[5] Nor, obviously, can this Court now, prior to any sales, know what the amount realized will be; that could only be done after the consideration for each sale is agreed on. There is no way, then, for this Court to determine the "alternative amount" that would need to be withheld.

**Debtors Seek to Shift the Burden of Administrative Insolvency to the IRS**

Ultimately, the only real purpose of the motion appears to be to foist the risk of administrative insolvency on to the IRS. The debtors' prime assets are large parcels of real property, many with lake access, that were purchased many decades ago. For example, according to their websites, Camp Waukeela and the Pine Hill and Lake Oswego camps were founded in 1922, 1931 and 1961, respectively. The properties inevitably are carrying substantial unrealized gains. The sale of these properties during these cases could potentially produce large income tax liabilities entitled to administrative expense priority. 11 U.S.C. § 503(b)(1)(B).

Compliance with § 1445's withholding obligations by the purchasers of the debtors' real property poses a problem for the estates' professionals and secured creditors—it ensures that the IRS's administrative expense claims will actually get paid. As a practical matter, excusing the purchasers from withholding pushes 100% of the payment obligation to after confirmation, when the funds may no longer exist to pay the taxes and any penalties imposed for failure to make estimated payments based on intervening land sales. In the meantime, of course, the estates'

[5] The supplement filed by the debtors on September 30, 2026, does not materially rectify the motion's failure to specify which debts are actually secured by specific real properties.

professionals will receive 80-100% of their fees on an interim basis and thus bear little risk from eventual administrative insolvency. (See Dkt. No. 550).

Congress has a strong policy of protecting withholdings that is repeatedly stated throughout the United States Code. When incurred prepetition, they are entitled to priority regardless of how long ago they arose, § 507(a)(8)(C), and are never dischargeable for individuals, even under the chapter 13 "super discharge." § 523(a)(1)(A); 1328(a)(2). Post-petition, Congress requires timely payment of all taxes and gives them administrative expense priority. 28. U.S.C. § 960(b); 11 U.S.C. §§ 503(b)(1)(B)-(D). Congress considered what to do with administrative insolvent debtors when it comes to their tax liabilities; it chose not to make any exceptions for withholding requirements. In 26 U.S.C. § 6658(a)(1), Congress provided a bankruptcy estate that is administratively insolvent can be absolved of certain additions to tax (like the failure-to-pay and failure-to-file penalties). Congress made clear, though, that none of those exemptions apply to "any liability for an addition to the tax which arises from the failure to pay or deposit a tax withheld or collected from others and required to be paid to the United States." 26 U.S.C. § 6658(b).

There is no reason for the Court to countenance the tactic employed here. If the estates' professionals believe that some or all of these cases cannot end in confirmable plans, that issue should be addressed now. The solution should not be to shift all the risk of administrative insolvency on to the United States Treasury.

**The Protections of § 363(m) Are Not Available**

While not mentioned in the body of the motion, paragraph 6 of the attached proposed order seeks to impose the protections provided by § 363(m) to this § 505 motion. Section 363(m) provides that

> The reversal or modification on appeal of an authorization under … this section of a sale or lease of property **does not affect the validity of a sale or lease under such authorization** to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

(emphasis added). The proposed order grants the following:

> Reversal or modification of this Order on appeal **shall not affect the validity of the relief granted to, or the FIRPTA treatment of, any Purchaser** that acquired assets in good faith, absent a stay pending appeal. The Purchaser holds no security interest in the acquired assets and **the sales are not undertaken for a principal purpose of avoiding Section 1445.** The presumption of Treasury Regulation § 1.1445-2(d)(3)(v) does not apply.

(emphasis added). The transferees of the debtors' real property are not in any way entitled to the protections of § 363(m) here. The relief requested will not and cannot be authorized by § 363(b) and (c), nor does § 363(m) insulate from review relief so tangential to a sale. *See In re ICL Holding Co.*, 802 F.3d 547, 553-555 (3d Cir. 2015). The debtors thus are not entitled to any protection on appeal provided by § 363(m).

CONCLUSION

For the foregoing reasons, the Court should deny the motion and require transferees of the debtors' properties to comply with their statutory withholding obligations. The motion is the corporate equivalent of an individual debtor asking the Court to excuse his employer from withholding taxes from his wages to free up cash to fund his case. No bankruptcy court would permit that. The Court should categorically reject the relief sought here as quickly as would reject the analogous request of an individual debtor.

//

//

Dated: October 1, 2026

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General
Tax Litigation Branch

*/s/ Ward W. Benson*
WARD W. BENSON
STEPHEN S. HO
Trial Attorneys
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 227
Washington, D.C. 20044
(202) 514-9642 (Benson)
(202) 514-6866 (Fax)
ward.w.benson@usdoj.gov
*Counsel for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to all parties registered to receive such filing.

*/s/ Ward W. Benson*
WARD W. BENSON
Trial Attorney
U.S. Department of Justice
*Attorney for the United States of America*