**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |
| In re:<br><br>DAMIS Holdings LLC, *et al.*,[2]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16439 (CMG)<br><br>(Jointly Administered) |

**DEBTORS' JOINT MOTION FOR ENTRY OF ORDER (A) MODIFYING AND (B) APPLYING TO DAMIS HOLDINGS LLC THE ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) APPROVING THE STALKING HORSE BID PROTECTIONS, (III) SCHEDULING BID DEADLINES AND AUCTION(S), (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (VI) GRANTING RELATED RELIEF**

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

[2] A complete list of the DAMIS Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the DAMIS Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/DAMIS. The location of Debtor DAMIS Holdings LLC's principal place of business and the DAMIS Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

TO THE HONORABLE CHIEF JUDGE CHRISTINE M. GRAVELLE,
CHIEF JUDGE, UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (as applicable, the "SIMAD Debtors", or the "DAMIS Debtors", and together, the "Debtors") by and through their undersigned counsel, submit this joint motion (the "Joint Motion") seeking entry of an order modifying and applying to the DAMIS Debtors solely for purposes of the Kiwi Sale Process (as defined below) that certain *Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (IV) Granting Related Relief* [SIMAD Docket No. 298] (the "SIMAD Bidding Procedures Order")[1] entered in the chapter 11 cases of the SIMAD Debtors and state as follows in support of this Joint Motion:

## Preliminary Statement

1. Since entry of the SIMAD Bidding Procedures Order, the SIMAD Debtors and their advisors have continued their efforts to market and monetize the assets associated with Kiwi Operatingco LLC ("Kiwi Operatingo"), Kiwi Landco LLC ("Kiwi Landco") and DASMAS Landco LLC ("DASMAS") (collectively, the "Kiwi Assets").[2] Under the direction of the SIMAD Debtors' investment banker, SSG Advisors, LLC ("SSG"), the SIMAD debtors conducted an extensive marketing process designed to maximize value for all stakeholders. In June 2026 alone, SSG contacted more than 280 prospective strategic and financial purchasers and facilitated access

---

1 Capitalized terms used but not defined herein shall have the meaning ascribed to them in the SIMAD Bidding Procedures Order.

2 Kiwi Operatingco is a SIMAD Debtor and operates the Kiwi Country Day Camp. Kiwi Landco is a DAMIS Debtor and owns the land on which Kiwi Country Day Camp operates. DASMAS is a DAMIS Debtor and owns a residence adjoining the camp property that is used by the camp manager.

to diligence materials through a virtual data room. By the commencement of the SIMAD Debtors' auction process on July 28, 2026, more than 150 confidentiality agreements had been executed, and more than 50 qualified bids had been received across the portfolio.

2. Throughout that process, the Kiwi Assets generated meaningful interest from both standalone purchasers and bidders pursuing larger portfolio transactions. Prior to the July 28, 2026 auction, however, the SIMAD Debtors determined that additional time was necessary to address issues unique to the Kiwi Assets. Accordingly, while the auction proceeded for other camps, the SIMAD Debtors deferred the sale process for the Kiwi Assets in order to maximize value and facilitate a more orderly transaction process. At that time, the Kiwi Assets had attracted one (1) standalone qualified bid and eight (8) qualified portfolio bids.

3. Following substantial progress in addressing the complexities associated with the proposed transfer of the Kiwi Assets which involve assets owned by Debtors in two separately administered estates, SSG re-engaged the market. Beginning on August 31, 2026, SSG contacted more than seventy (70) parties that had previously executed confidentiality agreements or otherwise expressed interest in the Kiwi Assets. The renewed process generated significant competitive interest. By September 10, 2026, the SIMAD Debtors had received three (3) standalone bids for the Kiwi Assets, each at a value exceeding bids received during the initial marketing process. Those bidders consisted of the current DIP lender to Kiwi Operatingco and two (2) independent third-party purchasers, each of whom submitted a bid deposit and expressed a desire to proceed expeditiously. Those efforts ultimately culminated in the identification of a stalking horse bidder for the Kiwi Assets. The Debtors believe the proposed stalking horse transaction establishes a meaningful value floor while preserving the opportunity for additional value through a competitive process. Moreover, given the seasonal nature of the business and the

importance of preserving momentum heading into the 2027 camp season, the Debtors believe it is imperative to move forward promptly with a Court-approved sale process.

4. To that end, the Debtors now seek to utilize the sale framework previously approved by the Court in the SIMAD Debtors' chapter 11 cases, with limited modifications tailored to the contemplated transaction and the stakeholder constituencies of the Debtors that are affected thereby.

5. Among other things, the proposed modifications would: (a) establish a bid deadline of October 19, 2026; (b) schedule an auction for October 21, 2026; (c) schedule a sale hearing for the hearing currently scheduled in the SIMAD Debtors chapter 11 cases on October 26, 2026; and (d) designate certain lender parties and the DAMIS Committee (defined below) as additional consultation parties.

6. Rather than establish an entirely separate sale process when time is of the essence, or utilize the services of an investment banker other than SSG, the Debtors submit that applying the existing SIMAD Bidding Procedures Order to the DAMIS Debtors' chapter 11 cases in order to sell the DAMIS Debtors' portion of the Kiwi Assets (the "Kiwi Sale Process"), together with the limited modifications requested herein, will promote judicial efficiency, reduce administrative expense, avoid duplicative proceedings, preserve the benefits of a sale framework already approved by this Court, and maximize value for the benefit of all stakeholders. Accordingly, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), granting the relief requested herein.

## Relief Requested

7. By this Joint Motion, the Debtors seek entry of the Order (i) modifying and applying to the DAMIS Debtors' chapter 11 cases solely with respect to the Kiwi Sale Process, *provided that*, except as expressly modified herein, the SIMAD Bidding Procedures Order shall

remain in full force and effect in the SIMAD Debtors' chapter 11 cases; (ii) establishing certain dates and deadlines related thereto, including a Bid Deadline, Auction, and Sale Hearing, (iii) designating the applicable committees, existing lenders, and other asset-level lenders as Consultation Parties for purposes of the Kiwi Sale Process, and (iv) granting such other and further relief as may be just and proper.

**Jurisdiction and Venue**

8. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Joint Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory and legal predicates for the relief requested herein are sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 1007(c) and 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

**Background**

11. On June 4, 2026, June 5, 2026, August 11, 2026 and September 14, 2026 (collectively, the "Petition Date"), certain of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The SIMAD Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered under Case No. 26-16388 (CMG) pursuant to Bankruptcy Rule 1015(b) [SIMAD Docket No. 15]. The DAMIS Debtors'

chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered under Case No. 26-16439 (CMG) pursuant to Bankruptcy Rule 1015(b) [DAMIS Docket Nos. 35, 1123 & 1224]. The Debtors are operating their business and managing their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

12. On July 9, 2026, an Official Committee of Unsecured Creditors was appointed by the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee") in the SIMAD Debtors' chapter 11 cases [SIMAD Docket No. 438] (the "SIMAD Committee"). On August 21, 2026, an Official Committee of Unsecured Creditors was appointed by the U.S. Trustee in the DAMIS Debtors' chapter 11 cases [DAMIS Docket No. 846] (the "DAMIS Committee").

13. Information regarding the respective Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the chapter 11 cases can be found in their respective First Day Declarations, which are incorporated herein by reference.

**Modifications to the SIMAD Bidding Procedures Order**

**I. The Bidding Procedures, As Modified**.

14. Because the Debtors seek only limited modifications and to apply the existing SIMAD Bidding Procedures Order, the Bidding Procedures are not restated herein. Except as expressly modified by this Joint Motion and the proposed Order, the Bidding Procedures and the SIMAD Bidding Procedures Order shall remain in full force and effect in the SIMAD Debtors' chapter 11 cases.

15. The Debtors seek only two substantive modifications to the SIMAD Bidding Procedures Order. First, the Debtors seek to revise the sale timeline to reflect the proposed milestones for the Kiwi Sale Process, including an October 19, 2026 Bid Deadline, an October 21,

2026 Auction Date (if necessary), and an October 26, 2026 Sale Hearing. Second, the Debtors seek to supplement the existing Consultation Parties to include Beacon Bank and Trust Company ("Beacon Bank"), which is secured on assets held by Kiwi Operatingco and Kiwi Landco, The Bank of Greene County, which is secured in assets owned by DASMAS, each of whom has a significant interest in the Kiwi Assets and the Kiwi Sale Process, and the DAMIS Committee. Other than these limited modifications, the Debtors seek to apply the existing SIMAD Bidding Procedures Order to the DAMIS Debtors' chapter 11 cases for purposes of the Kiwi Sale Process without material change.

## II. The Proposed Schedule

16. The Debtors are seeking approval of the Bidding Procedures with the limited modifications identified herein (the "Modified Bidding Procedures") and the following proposed schedule (the "Schedule") to establish a clear and open process for the solicitation, receipt, and evaluation of third-party bids for the Kiwi Assets. Moreover, the Debtors, in their sound business judgment, reserve the right to alter the timing of the Schedule as necessary under the circumstances, in order to maximize the value of the estates, in each case in accordance with the Modified Bidding Procedures. The Debtors respectfully request that the Court approve the below proposed Schedule.

| Action | Description | Deadline |
|---|---|---|
| **Bid Deadline** | The deadline by which any Acceptable Bidders must submit all binding Bids to be evaluated as Qualified Bids to participate in the Auction, if any. | October 19, 2026, at 4:00 p.m. prevailing Eastern Time |
| **Auction** | The Auction, if needed, will be virtually via Zoom, or such other location as determined by the Debtors. | October 21, 2026, at 10:00 a.m. prevailing Eastern Time |

| Action | Description | Deadline |
| --- | --- | --- |
| **Notice of Successful Bidder** | As soon as reasonably practicable after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline), the Debtors will file on the docket, but not serve, a notice identifying the Successful Bidder (as defined in the Bidding Procedures) (each, a "Notice of Successful Bidder"), identifying the applicable Successful Bidder, the applicable Sale Package, and key terms of the agreement. | As soon as reasonably practicable after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline) |
| **Sale Objection Deadline**[3] | The deadline by which objections to the entry of an order by the Court approving any Sale Transaction or objections to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Executory Contract or Unexpired Lease (the "Sale Objection Deadline") must be filed with the Court and served so as to be actually received by the appropriate notice parties. | October 23, 2026, at 4:00 p.m. prevailing Eastern Time |
| **Sale Objection Reply Deadline** | Deadline for the Debtors and any other parties supporting the Sale Transaction to respond to any objections to such Sale Transaction. | October 25, 2026, at 4:00 p.m. prevailing Eastern Time |
| **Sale Hearing** | Date for a hearing at which the Court will consider approving any Sale Transaction to the Potential Purchaser. | October 26, 2026, at 12:00 p.m. prevailing Eastern Time or such other date as may be scheduled by the Court |

17. The timeline contemplated in the foregoing Schedule is essential for the Debtors' swift emergence from chapter 11 and preserving the value of the Debtors' estates. The proposed Schedule is designed to assure all stakeholders, including campers and camp families, that Kiwi will be operating long into the future. Accordingly, the Debtors believe the relief requested herein is in the best interest of the Debtors' estates, will provide interested parties with sufficient opportunity to participate, and, therefore, should be approved.

---

3 To the extent that the Auction concludes less than two (2) days prior to the Sale Objection Deadline, the Debtors shall file a notice on the docket advising the parties of a new Sale Objection Deadline.

**Basis for Relief**

18. The Debtors seek only limited modifications to the already Court-approved Bidding Procedures and the application of that framework to the sale of the Kiwi Assets in both the SIMAD Debtors' and the DAMIS Debtors' chapter 11 cases. Except as expressly modified herein, the SIMAD Bidding Procedures Order and the procedures approved thereunder shall remain in full force and effect in the SIMAD Debtors' chapter 11 cases.

19. "When conducting an asset sale, the ultimate responsibility of the debtor, and the primary focus of the bankruptcy court, is the maximization of the value of the assets sold." John J. Jerome & Robert D. Drain, *Bankruptcy Court is Newest Arena for M&A Action*, N.Y.L.J., June 3, 1991; *see In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"); *In re Adams Res. Expl. Corp.*, 2017 WL 5493616, at *12 (Bankr. D. Del. May 24, 2017) ("The relief requested in the Sale Motion is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate and its creditors."). In furtherance of that goal, bidding procedures and bid protections, such as those proposed here, may be used in court-supervised sales because they streamline the acquisition process, "help to provide an adequate basis by which to compare offers," and maximize value. Jerome & Drain (1991) at 8, col. 4; *see In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999) (recognizing that bid protections "encourage a prospective bidder to do the due diligence that is the prerequisite to any bid by assuring the prospective bidder that it will receive compensation for that undertaking if it is unsuccessful"); *In re Dura Automotive Sys., Inc.*, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007) (recognizing that bidding

procedures "intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales"); *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and bid protections "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Metaldyne Corp.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("[b]idder protections are granted when a bidder provides a floor for bidding by expending resources to conduct due diligence and allowing its bid to be shopped around for a higher offer").

20. In overseeing a sale subject to an auction process, the bankruptcy court must weigh: on the one hand, providing for an orderly bidding process, recognizing the danger that absent such a fixed and fair process bidders may decline to participate in the auction; and, on the other hand, retaining the liberty to respond to differing circumstances so as to obtain the greatest return for the bankrupt estate. *In re Fin. News Network, Inc.*, 980 F.2d 165, 166 (2d Cir. 1992). Because the bankruptcy court must perform this balancing act, "a bankruptcy judge's broad discretionary power in conducting the sale of a debtor's assets should not be narrowed by technical rules mindlessly followed" that "reduce the broad discretion and flexibility a bankruptcy court must necessarily have to enhance the value of the estates before it." *Id.* at 169–70; *see Dura Automotive*, 2007 WL 7728109 at *90 ("The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.").

21. In addition, section 105(a) of the Bankruptcy Code grants the Court broad equitable authority to issue any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Courts routinely rely on section 105(a), in conjunction

with section 363, to implement procedures designed to facilitate the orderly administration of chapter 11 cases and maximize value for stakeholders.

22. Here, application of the SIMAD Bidding Procedures Order to the Kiwi Sale Process in both the SIMAD Debtors' and DAMIS Debtors' chapter 11 cases, with the limited modifications requested herein, will promote efficient case administration, avoid duplicative sale processes and hearings, reduce unnecessary administrative expense, and facilitate a coordinated and value-maximizing sale process for the Kiwi Assets. Accordingly, the Court may properly exercise its authority under section 105(a) to approve and implement the modified sale process requested in this Joint Motion.

23. Rather than utilizing the approved sale procedures in the DAMIS Debtors' chapter 11 cases (which relate to a class of assets different than the Kiwi Assets and where the Kiwi Assets have already been exposed to a thorough marketing process), the Debtors seek to utilize the existing sale framework approved by the Court in the SIMAD Debtors' cases. The Debtors submit that applying the Modified Bidding Procedures to the Kiwi Sale Process will promote efficiency, reduce administrative expense for the Debtors, and provide a fair and transparent mechanism for determining the highest or otherwise best offer for the Kiwi Assets. The requested modifications are narrow and transaction-specific. Among other things, given the complexities at issue with the Kiwi Assets, the Debtors seek to: (a) apply the SIMAD Bidding Procedures Order to the DAMIS Debtors' chapter 11 cases for the sale of the Kiwi Assets; (b) establish an October 19, 2026 Bid Deadline, an October 21, 2026 Auction Date (if necessary), and an October 26, 2026 Sale Hearing; (c) designate the DAMIS Committee and certain lender parties as Consultation Parties; and (d) modify the Bidding Procedures to the extent necessary to implement the requested relief.

24. The Debtors seek to modify the SIMAD Bidding Procedures Order to include the DAMIS Committee, Beacon Bank and The Bank of Greene County as Consultation Parties for purposes of the Kiwi Sale Process. Beacon Bank and The Bank of Greene County each hold significant interests relating to the Kiwi Assets and, accordingly, have a direct stake in the outcome of the proposed sale process and any transaction implemented thereunder. Including Beacon Bank and The Bank of Greene County as Consultation Parties will help ensure that stakeholders with material interests in the Kiwi Assets remain informed regarding key developments in the sale process and have an opportunity to provide input with respect to matters affecting their respective interests. The Debtors believe that consultation with such parties will facilitate an efficient and transparent sale process, assist in resolving issues as they arise, and reduce the risk of delays that could adversely affect value.

25. The requested modification does not otherwise alter the Debtors' fiduciary obligations. Rather, it merely ensures that parties with significant interests in the Kiwi Assets are afforded the same consultation rights already provided to other key stakeholder constituencies under the SIMAD Bidding Procedures Order. Accordingly, the Debtors submit that expanding the definition of Consultation Parties to include the DAMIS Committee, Beacon Bank and The Bank of Greene County is reasonable, appropriate, and in the best interests of the Debtors' estates.

26. The Debtors respectfully submit that the Modified Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings in bankruptcy proceedings and are consistent with the controlling legal standard in the Third Circuit. Accordingly, the Debtors request that the Court approve the Modified Bidding Procedures as a valid exercise of the Debtors' business judgment.

**Reservation of Rights**

27. Notwithstanding anything to the contrary herein, nothing contained in this Joint Motion or any actions taken pursuant to any order granting the relief requested by this Joint Motion is intended or should be construed as (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is a secured claim, an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Joint Motion or any order granting the relief requested by this Joint Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Joint Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not

intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

28. No prior request for the relief sought in this Joint Motion has been made to this Court or any other court.

## Notice

29. The SIMAD Debtors and DAMIS Debtors, as applicable, will provide notice of this Joint Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Bond Trustee (in the SIMAD Debtors' Chapter 11 Cases); (c) counsel to the DIP Agent (in the SIMAD Debtors' Chapter 11 Cases); (d) counsel to the SIMAD Committee; (e) counsel to the DAMIS Committee; (f) counsel to Beacon Bank, (g) counsel to The Bank of Greene County; (h) any party that has expressed interest in the Kiwi Assets; (i) any entity that has asserted a lien on the Kiwi assets (in addition to Beacon Bank and The Bank of Greene County), and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 in each of the SIMAD Debtors' Chapter 11 Cases and the DAMIS Debtors' Chapter 11 Cases. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors request that the Court enter the Order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

[*Signature Page Follows*]

Dated: October 9, 2026

*<u>/s/ Michael D. Sirota</u>*
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the SIMAD Debtors and Debtors in Possession*

*<u>/s/ Michael P. Pompeo</u>*
**FAEGRE DRINKER BIDDLE & REATH LLP**
Michael P. Pompeo
600 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 549-7000 (Telephone)
(973) 360-9831 (Facsimile)
michael.pompeo@faegredrinker.com

and

Ian J. Bambrick (*pro hac vice*)
Patrick A. Jackson (*pro hac vice*)
Sarah E. Silveira (*pro hac vice*)
222 Delaware Ave. Suite 1410
Wilmington, DE 19801
(302) 467-4200 (Telephone)
(302) 467-4201 (Facsimile)
ian.bambrick@faegredrinker.com
patrick.jackson@faegredrinker.com
sarah.silveira@faegredrinker.com

and

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**

Adam C. Rogoff (*pro hac vice*)
Megan M. Wasson (*pro hac vice*)
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100 (Telephone)
(212) 715-8000 (Facsimile)
adam.rogoff@hsfkramer.com
megan.wasson@hsfkramer.com

*Counsel to the DAMIS Debtors and Debtors in Possession*

# **Exhibit A**

## **Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |
| In re:<br><br>DAMIS Holdings LLC, *et al.*,[2]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16439 (CMG)<br><br>(Jointly Administered) |

**ORDER (A) MODIFYING AND (B) APPLYING TO DAMIS HOLDINGS LLC THE ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) APPROVING THE STALKING HORSE BID PROTECTIONS, (III) SCHEDULING BID DEADLINES AND AUCTION(S), (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (VI) GRANTING RELATED RELIEF**

The relief set forth on the following pages numbered three (3) through nine (9), is hereby **ORDERED**.

1 A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

2 A complete list of the DAMIS Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the DAMIS Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/DAMIS. The location of Debtor DAMIS Holdings LLC's principal place of business and the DAMIS Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

<table>
<tr><td>UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY</td><td></td></tr>
<tr><td>Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>COLE SCHOTZ P.C.<br>Michael D. Sirota<br>Warren A. Usatine<br>David M. Bass<br>Felice R. Yudkin<br>Daniel J. Harris<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Telephone: (201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>dbass@coleschotz.com<br>fyudkin@coleschotz.com<br>dharris@coleschotz.com<br><br>Counsel to the Debtors<br>and Debtors in Possession</td><td>FAEGRE DRINKER BIDDLE & REATH LLP<br>Michael P. Pompeo<br>600 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>(973) 549-7000 (Telephone)<br>(973) 360-9831 (Facsimile)<br>michael.pompeo@faegredrinker.com<br><br>and<br><br>Ian J. Bambrick (pro hac vice)<br>Patrick A. Jackson (pro hac vice)<br>Sarah E. Silveira (pro hac vice)<br>222 Delaware Ave. Suite 1410<br>Wilmington, DE 19801<br>(302) 467-4200 (Telephone)<br>(302) 467-4201 (Facsimile)<br>ian.bambrick@faegredrinker.com<br>patrick.jackson@faegredrinker.com<br>sarah.silveira@faegredrinker.com<br><br>and<br><br>HERBERT SMITH FREEHILLS KRAMER (US) LLP<br><br>Adam C. Rogoff (pro hac vice)<br>Megan M. Wasson (pro hac vice)<br>1177 Avenue of the Americas<br>New York, New York 10036<br>(212) 715-9100 (Telephone)<br>(212) 715-8000 (Facsimile)<br>adam.rogoff@hsfkramer.com<br>megan.wasson@hsfkramer.com<br><br>Counsel to the DAMIS Debtors and Debtors in Possession</td></tr>
</table>

Upon the *Debtors' Joint Motion For Entry of an Order (A) Modifying And (B) Applying to DAMIS Holdings LLC the Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* (the "Joint Motion"),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) modifying and (b) applying to the DAMIS Debtors solely for purposes of the Kiwi Sale Process that certain *Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* [SIMAD Docket No. 298] (the "SIMAD Bidding Procedures Order"), all as more fully set forth in the Joint Motion; and upon the First Day Declarations; and the Court having jurisdiction to consider the Joint Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Joint Motion in this

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Joint Motion.

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that the Debtors' notice of the Joint Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Joint Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Joint Motion and at the Hearing, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Joint Motion is **GRANTED** as set forth herein.

2. The Debtors have articulated good and sufficient reasons for authorizing and approving and applying the Bidding Procedures, as expressly modified herein (the "Modified Bidding Procedures"), to the chapter 11 cases of the DAMIS Debtor solely with respect to the sale of the Kiwi Assetss

3. The Modified Bidding Procedures are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of the Debtors' estates, in a sound exercise of their business judgment in accordance with the Modified Bidding Procedures.

4. SSG shall be the sole and exclusive person or entity entitled to a fee or commission with respect to the sale of the Kiwi Assets.

5. The Debtors' notice of the Joint Motion was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

6. All objections to the relief requested in the Joint Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

## I. Important Dates and Deadlines.

7. **Bid Deadline**. **October 19, 2026, at 4:00 p.m. prevailing Eastern Time**, is the deadline by which all Bids must be **actually received** by the parties specified in the Modified Bidding Procedures.

8. **Auction**. The date and time of the Auction, if needed, is **October 21, 2026, at 10:00 a.m. prevailing Eastern Time**, which time may be extended by the Debtors upon written notice to the Court.

9. **Sale Objection Deadline**. Objections to any Sale Transaction, Sale Order and the Notice of Successful Bidder ("Sale Objection Deadline"), if any, must be made on or before **October 23, 2026, at 4:00 p.m., prevailing Eastern Time**.

10. **Sale Hearing**. **October 26, 2026 at 12:00 p.m., prevailing Eastern Time**, or as soon thereafter as the Debtors may be heard, is the date and time for the hearing for the Court to consider the Successful Bid, if needed (the "Sale Hearing"). The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

## II. Modified Bidding Procedures.

11. Except as otherwise provided in this Order, the Bidding Procedures, substantially in the form attached as **Exhibit 1** to the SIMAD Bidding Procedures Order, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction of the Kiwi Assets in the DAMIS Debtors' chapter 11 cases.

12. The definition of "Consultation Parties" under the SIMAD Bidding Procedures Order is modified to include: (a) the Official Committee of Unsecured Creditors appointed in the DAMIS Debtors' chapter 11 cases; (b) Beacon Bank; and (c) The Bank of Greene County. Each such party shall be entitled to the consultation rights afforded to Consultation Parties under the SIMAD Bidding Procedures Order.

13. Nothing in this Order or the Modified Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the Debtors and any Stalking Horse Bidder, if applicable, or any other Potential Purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, or related agreements or any letters of credit relating thereto, or any rights, remedies, or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to the Auction, the Modified Bidding Procedures, any Sale Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

14. The Debtors may modify any of the dates and deadlines set forth herein without further order of the Court in consultation with the Consultation Parties; *provided* that the Debtors will serve notice (email from the Debtors' counsel, to suffice) to any Qualified Bidder, Stalking Horse Bidder, and the U.S. Trustee, as applicable and appropriate, informing them of such modification. The Debtors are further authorized, but not directed, to conduct an Auction (as necessary) in substantial conformity with the Schedule and Modified Bidding Procedures.

15. The failure to include or reference a particular provision of the Modified Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

16. In the event of any inconsistencies between this Order, the SIMAD Bidding Procedures Order, the Joint Motion, and/or the Modified Bidding Procedures, this Order shall govern in all respects.

17. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is a secured claim, an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Order or the Joint Motion or any order granting the relief requested by the Joint Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Joint Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens;

or (i) a waiver of the obligation of any party in interest to file a proof of claim. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

18. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Joint Motion.

19. Notice of the Joint Motion as provided herein shall be deemed good and sufficient notice of such Joint Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

20. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.