**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*

**Order Filed on October 13, 2026**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**_AMENDED_ ORDER (I) APPROVING ASSET PURCHASE AGREEMENT BETWEEN FRIENDS OF CHATEAUGAY LLC AND CHATEAUGAY CAMPCO LLC AND CHATEAUGAY LANDCO LLC (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF CHATEAUGAY CAMPCO LLC AND CHATEAUGAY LANDCO LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b), AND 363(f), (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through sixteen (16), is hereby **ORDERED**.

**DATED: October 13, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings, Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

Upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seeking entry of an order (this "Sale Order"), pursuant to the Bankruptcy Code, Bankruptcy Rules and Local Rules, authorizing and approving the Debtors' entry into and performance under the terms and conditions of that certain asset purchase agreement dated as of September 9, 2026 [Docket No. 1093] (the "APA") (together with the schedules and/ or exhibits thereto and all related documents, and as may be amended, supplemented or otherwise modified from time to time after the date hereof), attached hereto as Exhibit A, by and among the Seller(s) and Friends of Chateaugay LLC (together with any successors and permitted assigns, or designees, the "Buyer"); and the Court having entered the Bidding Procedures Order on June 26, 2026 [Docket No. 298] (the "Bidding Procedures Order") approving the bidding procedures (the "Bidding Procedures"), and the Debtors having filed *a Notice of Filing of Stalking Horse Bidder and Stalking Horse Agreement* on September 10, 2027 [Docket No. 1093] (the "Stalking Horse Notice") and a *Notice of Cancellation of Auction and Successful Bidder* on September 16, 2026 [Docket No. 1140] (the "Sale Notice"), pursuant to which the SIMAD Debtors provided notice, *inter alia*, that (x) the Auction was cancelled, (y) the Buyer, pursuant to the APA, was determined to be the Successful Bidder and (z) the deadline for filing of objections to the approval and consummation of the transactions set forth in the APA was September 23, 2026; and on September 24, 2026, the Debtors having filed a *Certification of No Objection with Respect to SIMAD Debtors' Sale of the Assets of Chateaugay Campco LLC and Chateaugay Landco LLC Pursuant to Stalking*

*Horse Agreement with Friends of Chateaugay LLC* [Docket No. 1186] reflecting that no such objections or other responses to the Sale Notice were filed; and the Debtors having identified the Buyer's bid as the Successful Bid for the Purchased Assets in accordance with the Bidding Procedures; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A. Jurisdiction and Venue. This Court has jurisdiction over the Debtors' chapter 11 cases, including this matter, pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the District of New Jersey. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Statutory Predicates. The statutory predicates for the relief sought herein are Sections 105(a), 363(b), 363(f), 363(m), 365, and 1146(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

C. Notice. Proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Notice, and the APA was provided to all parties entitled to notice in accordance with the

Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including (i) counsel to the Buyer (Jeffer Mangels & Mitchell, LLP), (ii) the Office of the United States Trustee, (iii) the Official Committee of Unsecured Creditors (the "Committee"), (iv) all creditors and parties in interest in these chapter 11 cases, (v) all parties asserting liens on the Acquired Assets, (vi) all non-debtor counterparties to the Assumed Contracts, and (vii) all applicable governmental authorities. No further or other notice of the Sale Notice or the APA is or shall be required.

D. Sound Business Purpose. The Debtors have demonstrated a sound business purpose and compelling justification for consummating the sale of the Acquired Assets (as defined in the APA) to the Buyer under 11 U.S.C. § 363(b). The Buyer is willing to acquire the property for the Purchase Price in an amount equal the outstanding principal balance of the DIP Facility (as defined in the APA) and the prepetition debt of Community Bank, National Association ("Community Bank"), plus all interest accrued thereon and all fees and expenses payable in connection therewith, *plus* (y) fees due and payable to SSG Capital Advisors, LLC, in an amount not to exceed $60,000.00, which sum for (x) and (y) is expected to be approximately $3,563,978.67, in cash (the "Cash Payment"), plus Cure Amounts (as defined in the APA), plus the assumption of Assumed Liabilities (as defined in the APA and which include any Liabilities (including all accrued interest as of the Closing Date (as defined in the APA)) on account of that certain Subordinated Promissory Note dated June 23, 2022 in the principal amount of $1,045,000, executed by Chateaugay Landco

LLC and Chateaugay Campco, LLC in favor of Harold Lyons, as amended, modified, and restated) (the "Lyons Subordinated Promissory Note"), and without this consideration, Chateaugay Landco LLC and Chateaugay Campco, LLC will not have sufficient liquidity to continue to operate and satisfy their obligations under the DIP Facility. The Debtors' decision to sell the Acquired Assets outside a plan of reorganization pursuant to the procedures approved in the Bidding Procedures Order was an exercise of the Debtors' sound business judgment, is in the best interests of the Debtors, their estates, their creditors, and all parties in interest, and should be approved.

E. Adequate Consideration; Cash, Cure Amounts, and Assumed Liabilities. The consideration provided by the Buyer for the Acquired Assets constitutes fair and adequate consideration. The Purchase Price consists of the Cash Payment; (b) the Cure Amounts; and (c) the assumption of Assumed Liabilities, including, without limitation, the assumption of Liabilities on account of the Lyons Subordinated Promissory Note, as amended, modified, and restated.

F. Arm's Length Transaction; Good Faith Purchaser. The APA was negotiated, proposed, and entered into by the Sellers and the Buyer without collusion, in good faith, and from arm's length bargaining positions. Neither the Buyer nor any of its Affiliates (as defined in the APA) is an insider of the Debtors as that term is defined in 11 U.S.C. § 101(31). The Buyer is a good faith purchaser of the Acquired Assets within the meaning of 11 U.S.C. § 363(m) and is entitled to all of the protections afforded thereby. The Buyer has not engaged in any conduct that

would prevent the application of 11 U.S.C. § 363(m). The APA was not entered into for the purpose of hindering, delaying, or defrauding any creditor of the Debtors.

G. Free and Clear. The Sellers are the rightful owners of the Acquired Assets. The Acquired Assets shall be transferred to the Buyer free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever (collectively, "Encumbrances"), including without limitation any Encumbrances or other interests in favor of Community Bank, Harold Lyons, individually or as assignee of Chateaugay Lake Camp Inc., and any merchant cash advance and short-term funders and lenders, other than Permitted Encumbrances and Assumed Liabilities as set forth in the APA (which for the avoidance of doubt shall include any Liabilities under the Lyons Subordinated Promissory Note, as amended, modified, and restated), pursuant to 11 U.S.C. § 363(f), because in each case one or more of the conditions set forth in 11 U.S.C. § 363(f)(1) through (5) have been satisfied with respect to each such Encumbrance. All holders of Encumbrances who did not object to the sale, or whose objections were overruled, are deemed to have consented to the sale pursuant to § 363(f)(2). All Encumbrances shall attach to the proceeds of the sale with the same validity, extent, and priority as existed immediately prior to the sale; *provided*, *however*, any Encumbrance held by Harold Lyons, individually, or as assignee of Chateaugay Lake Camp, Inc., shall not attach to the proceeds of sale, as the Liabilities on account of the Lyons Subordinated Promissory Note (including all accrued interest as of the Closing Date), as amended, modified, and restated with the consent of Harold Lyons, is an Assumed Liability.

H. No Successor Liability. The Buyer is not a successor to the Sellers or their estates by reason of any theory of law or equity and shall not assume or agree to pay, satisfy, discharge, or perform, and shall not be deemed by the execution and delivery of the APA or the consummation of the transactions contemplated thereby to have assumed or agreed to pay, satisfy, discharge, or perform, and shall have no liability for, any Excluded Liability (as defined in the APA).

I. Assumption and Assignment of Contracts. The assumption and assignment of the Assumed Contracts (as defined in the APA) to the Buyer pursuant to Section 365 of the Bankruptcy Code is integral to the APA, is in the best interests of the Debtors, their estates, and their creditors, and represents a valid and proper exercise of the Debtors' business judgment. The Buyer has demonstrated adequate assurance of future performance under the Assumed Contracts within the meaning of 11 U.S.C. §§ 365(b)(1) and 365(f)(2). The Cure Amounts, as set forth on Schedule 2.01(a) to the APA and as determined by the Bankruptcy Court and to be paid by the Buyer in connection with the Closing, are sufficient to satisfy all monetary defaults required to be cured under 11 U.S.C. § 365(b)(1)(A).

J. Sale Procedures. The Transaction was conducted in accordance with the Sale Procedures approved under the Bidding Procedures Order [Docket No. 298]. The Sale Notice was duly filed on September 16, 2026, and the notice and objection period was completed in full compliance with the requirements of the Bidding Procedures Order.

K. Legal Authority. The legal requirements for approval of the sale have been satisfied. The sale is authorized pursuant to 11 U.S.C. §§ 105(a), 363(b), 363(f), and 365.

L. Waiver of Stay. Good cause has been shown for waiver of the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d). The Transaction may be consummated promptly to preserve the going-concern value of Camp Chateaugay. Immediate effectiveness of this Order is warranted.

M. Bulk Transfer Laws. No bulk sales or bulk transfer laws of any jurisdiction apply to the Transaction. The Sellers' non-compliance with any such laws in connection with the Transaction shall not subject the Buyer to any liability, and the transfer of the Acquired Assets shall be free and clear of any Encumbrances arising out of or related to any bulks sale or bulk transfer laws.

**IT IS HEREBY ORDERED THAT:**

1. Approval of the APA and the Transaction. The APA, including all exhibits, schedules, and ancillary documents thereto, and the transaction contemplated thereby (the "Transaction"), are hereby approved in their entirety pursuant to 11 U.S.C. §§ 105(a), 363(b), 363(f), and 365. The Sellers are authorized and directed to perform under, consummate, and implement the terms of the APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and consummate the Transaction. This Order is in form and substance reasonably acceptable to the Buyer as required under the APA.

2. Transfer Free and Clear. Pursuant to 11 U.S.C. §§ 363(b), and 363(f), the Sellers are authorized and directed to sell, assign, transfer, convey, and deliver the Acquired Assets (as defined in the APA) to the Buyer (or its designee), and the Buyer is authorized to acquire the Acquired Assets, free and clear of all Encumbrances of any kind or nature whatsoever, including without limitation all liens, claims, and encumbrances of Community Bank, Harold Lyons, individually or as assignee of Chateaugay Lake Camp Inc., and any merchant cash advance and short-term funders and lenders, other than Permitted Encumbrances and Assumed Liabilities (as defined in the APA). All such Encumbrances shall attach to the proceeds of the sale with the same validity, extent, and priority as existed immediately prior to the sale; *provided*, *however*, any Encumbrance held by Harold Lyons, individually, or as assignee of Chateaugay Lake Camp, Inc., shall not attach to the proceeds of sale, as the Liabilities on account of the Lyons Subordinated Promissory Note (including all accrued interest as of the Closing Date), as amended, modified, and restated with the consent of Harold Lyons, is an Assumed Liability. To the extent any person or entity, including any lienholder, asserts an interest in the Acquired Assets, such interest is extinguished upon entry of this Order. No "bulk sales," "bulk transfer," or similar Laws of any jurisdiction shall apply to the Transaction.

3. Repayment of Community Bank Obligations. The Debtors shall segregate such amounts from the Cash Payment as are necessary to satisfy the CBNA DIP Obligations and the Prepetition Obligations (each as defined in that certain *Final Order (I) Authorizing the Chateaugay*

*Debtor Borrowers to Obtain Postpetition Financing, (II) Authorizing the Chateaugay Debtor Borrowers to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 1040]) due as of the Closing Date (collectively, the "Community Bank Obligations"). The Debtors shall be authorized, at the time of Closing, to pay to Community Bank such amounts as are necessary to satisfy the Community Bank Obligations in full and the payment of any such amounts shall be applied to the Community Bank Obligations.

4. Good Faith Finding; Section 363(m) Protections. The Buyer is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to all of the protections afforded thereby. The reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the sale to the Buyer unless such authorization is duly stayed pending such appeal. The Buyer has acted in good faith in all respects in connection with this proceeding. Neither the Sellers nor the Buyer have engaged in any action or inaction that would cause or permit the sale to be avoided, or costs or damages to be imposed, under 11 U.S.C. § 363(n).

5. No Successor Liability. Except as expressly provided in the APA, Buyer does not assume or agree to pay, satisfy, discharge, or perform, and shall not be deemed by the execution and delivery of the APA or the consummation of the transactions contemplated thereby to have assumed or agreed to pay, satisfy, discharge, or perform, and shall have no liability for, any

Excluded Liability (as defined in the APA). Buyer is not, and shall not be, a successor to Sellers by reason of any theory of law or equity.

6. Assumption and Assignment of Assumed Contracts. Pursuant to 11 U.S.C. §§ 365(a), 365(b), and 365(f), the Sellers are authorized and directed to assume and assign to the Buyer, and the Buyer is authorized to accept the assignment of, the Assumed Contracts listed on Schedule 2.01(a) to the APA, effective as of the Closing. The Buyer has provided adequate assurance of future performance under the Assumed Contracts within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B). Anti-assignment provisions in the Assumed Contracts shall not restrict, limit, or prohibit the assumption and assignment of such contracts and do not constitute a breach or default thereunder. The Buyer's contract designation period under the APA may be extended by the Buyer in its discretion as provided therein.

7. Cure Amounts. The Cure Amounts set forth on Schedule 2.01(a) to the APA, or as otherwise determined by the Court, represent all amounts that must be paid to cure all defaults under the Assumed Contracts pursuant to 11 U.S.C. § 365(b)(1). Upon payment by the Buyer of the Cure Amounts at Closing, all defaults under the Assumed Contracts shall be deemed cured, and non-debtor counterparties shall be forever barred from asserting any claim or cause of action against the Buyer arising from any pre-Closing default under the Assumed Contracts.

8. Unresolved Cure and Assignment Objections. The Sellers' assumption of the Assumed Contracts is subject to consummation of the Transaction. To the extent that an objection

(if any) by a counterparty to any Assumed Contract, including any objection relating to the applicable Cure Amount, is not resolved prior to the Closing Date, the Sellers, with the consent of the Buyer and in accordance with the APA, may elect to (a) not assume and assign such Assumed Contract to the Buyer; (b) postpone the assumption and assignment of such Assumed Contract until resolution of such objection, without delaying the closing of the Transaction; (c) if the objection relates solely to the amount of the Cure Amount, pay the undisputed portion of the applicable Cure Amount to the counterparty on the Closing Date, reserve the disputed portion, and assume and assign such Assumed Contract on the Closing Date; or (d) proceed with the assumption and assignment on such terms as are otherwise mutually agreeable to the applicable counterparty, the Sellers, and the Buyer.

9. Buyer Designation Right. The Buyer is authorized to assign its rights under the APA and this Order to any affiliate or designee of the Buyer (the "Designee") without further order of this Court and without the consent of the Sellers; *provided* that the Buyer shall remain liable for all of its obligations thereunder following any such assignment. Any such Designee shall be deemed a good faith purchaser entitled to all of the protections of 11 U.S.C. § 363(m) and this Order.

10. Injunction. All Persons (as defined in 11 U.S.C. § 101(41)) are forever prohibited and enjoined from taking any action against the Buyer (or its Designee), its successors, assigns, properties, or the Acquired Assets to recover any claim, Encumbrance, or interest that such Person

had or may have had with respect to the Sellers or the Acquired Assets that is extinguished or otherwise discharged by this Order, except as expressly permitted by this Order or the APA. This injunction shall specifically apply to, without limitation, Community Bank, any merchant cash advance and short-term funders and lenders with respect to any liens, claims, or interests they may assert against the Acquired Assets, and to Harold Lyons except that Harold Lyons shall not be enjoined with respect to the enforcement of the Lyons Subordinated Promissory Note against the Buyer, subject and pursuant to such agreement between the Buyer and Harold Lyons for the amendment, modification and restatement of the Lyons Subordinated Promissory Note and related mortgage.

11. Purchase Price Allocation. For the avoidance of doubt, the allocation of the Purchase Price set forth in Section 2.06 of the APA shall be without prejudice to the rights of the Debtors under Section 2.09 of the APA and the rights of any party in interest, including, without limitation, the Committee, to seek a different allocation in connection with any proceeding in the Cases. Entry of this Order shall not constitute approval of any allocation of the Purchase Price or a finding or determination that the allocation of sale proceeds among the Sellers is fair, reasonable, or appropriate.

12. Direction to Third Parties. All entities that are presently, or on the Closing Date may be, in possession of any of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to the Buyer on the Closing Date. On the Closing Date, the Sellers' creditors

are authorized and directed to execute such documents and take all other actions as may be necessary to release their Encumbrances on the Acquired Assets, if any, as such Encumbrances may have been recorded or may otherwise exist. The Sellers shall cooperate with the Buyer following the Closing Date with respect to transition matters.

13. Self-Executing. The provisions of this Order authorizing the sale and transfer of the Acquired Assets free and clear of all Encumbrances shall be self-executing, and neither the Sellers nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. If any Person or entity that has filed financing statements, mortgages, mechanics' liens, lis pendens, or other documents evidencing any Encumbrance against the Acquired Assets shall not have delivered to the Buyer at or before Closing, in proper form for filing, termination statements, releases, or instruments of satisfaction, then (i) the Buyer is authorized to execute and file such termination statements, releases, or instruments of satisfaction on behalf of such Person, and (ii) a certified copy of this Order may be filed with any recording office as conclusive evidence of the release of all such Encumbrances.

14. Recording. This Order shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by

operation of law, the duties of their office, or otherwise, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets. A certified copy of this Order may be filed with the appropriate clerk or recording office and shall constitute conclusive evidence of the free and clear transfer of the Acquired Assets to the Buyer.

15. Waiver of Stay. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry, and the 14-day stays imposed by such rules are hereby waived. The Sellers and the Buyer are authorized to close the Transaction immediately upon satisfaction of the conditions to closing set forth in the APA, but in no event later than the Outside Date (as defined in the APA) of the APA.

16. Binding Effect. This Order shall be binding upon (a) the Sellers, (b) all creditors of the Sellers, (c) holders of Encumbrances on the Acquired Assets, (d) all non-debtor counterparties to the Assumed Contracts, and (e) all other parties in interest and their respective successors and assigns, whether or not such parties were served with notice of the Transaction, and (f) any trustees, examiners, or other fiduciaries subsequently appointed in the Sellers' chapter 11 cases or upon a conversion to chapter 7 of any Seller’s case. This Order shall inure to the benefit of the Buyer and its successors, assigns, and Designees.

17. Survival. The terms and provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any chapter 11 plan in

these cases, (b) converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, (c) dismissing these chapter 11 cases, or (d) pursuant to which this Court abstains from hearing these cases. The terms of this Order shall continue in full force and effect notwithstanding any such subsequent order.

18. Conflicts. To the extent that any provision of this Order conflicts with any provision of the APA, the terms of this Order shall govern and control. To the extent that there is any inconsistency between this Order and any other order entered in these chapter 11 cases, the terms of this Order shall govern.

19. Retention of Jurisdiction. This Court retains exclusive jurisdiction to (a) enforce and implement the terms and provisions of this Order and the APA (including any injunction hereunder), including all amendments thereto and any waivers and consents thereunder, (b) resolve any disputes arising in connection with this Order, the APA, or the Transaction, (c) interpret, implement, and enforce the provisions of this Order, (d) adjudicate any claims or disputes regarding the Cure Amounts, (e) protect the Buyer and its successors, assigns, and Designees against any Encumbrances in accordance with this Order, and (f) enter such further orders as may be necessary or appropriate to implement or effectuate the provisions of this Order.