| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-1<br><br>WARD W. BENSON<br>STEPHEN S. HO<br>Trial Attorneys, Tax Litigation Branch<br>Civil Division, Department of Justice<br>P.O. Box 227<br>Washington, D.C. 20044<br>(202) 514-9642<br>(202) 514-6866 (Fax)<br>ward.w.benson@usdoj.gov<br>stephen.s.ho@usdoj.gov<br>Counsel for the United States | Chapter 11<br><br>Case No. 26-16388 (CMG) |
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,<br><br>Debtors. | |

**UNITED STATES' OPPOSITION TO SETTLEMENT MOTION**

The Court should deny the joint motion to approve a settlement between the unsecured creditors committee and Mishmeret Trust Company Ltd. (Dkt. No. 1336). $13 million will be paid to general unsecured creditors without, it would appear, providing for all priority claims or administrative expenses. It also provides $8 million to estate professionals in a case where all parties seem intent on not paying the IRS's future administrative claim, which would have equal priority to all allowed administrative professional expenses. 11 U.S.C. §§ 503(a) and (b); 1129(a)(9)(A). In addition to not satisfying the "fair and equitable requirement" for approval of a settlement, no evidence has been presented to support the other factors the Court must assess.[1]

[1] In the event the movants seek to remedy this deficiency and comply with the local rules, D.N.J. LBR 9013-1(a)(2), the United States reserves its right to cross-examine anyone on whose written testimony the movants will attempt to rely.

The United States also has indicated its willingness to mediate this dispute, and so the debtors cannot possibly argue that this settlement is the only path forward. The Court should therefore deny approval.

## BACKGROUND

### The IRS's Standing to Challenge the Motion

At least until the debtors convincingly show otherwise, the Court should presume that the Internal Revenue Service will have a significant income tax claim against the lead debtor for tax year 2026. This claim will be entitled to administrative expense priority. 11 U.S.C. § 503(b)(1)(A). The debtors admit that they will realize a gain from the sale of their properties. (Oct. 5, 2026 Tr. 38:2-3). That gain will trigger an income tax liability, unless they can show a sufficiently high basis in the properties and/or sufficient other deductions and credits to offset the taxable gain.

Under applicable tax law, the burden is on them to do so. *Brooks v. Comm'r of Internal Revenue*, 109 F.4th 205, 213 (4th Cir. 2024) (citing *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943) and *INDOPCO, Inc. v. Comm'r,* 503 U.S. 79, 84 (1992)); *In re Lee*, 660 B.R. 763, 774 (Bankr. D.S.C. 2024) ("It is the taxpayer who bears the burden of establishing the basis for each transaction ... and when a taxpayer fails to meet this burden, it is proper to assume that the asset has a zero basis[.]") (quoting *United States v. Brooks*, No. 6:17-cv-02010-TMC-JDA, 2018 WL 7568392, at *6 (D.S.C. Dec. 19, 2018)).

That burden applies in bankruptcy proceedings. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 21 (2000) ("Congress of course may do what it likes with entitlements in bankruptcy, but there is no sign that Congress meant to alter the burdens of production and persuasion on tax claims.").

The debtors' stated intent to shift their liabilities to the Shabselses cannot change the Court's analysis of their current tax obligations. They have admitted that under applicable tax law, SIMAD Holdings will be liable for any income tax liability related to the sale of its subsidiaries' properties. No provision of the Bankruptcy Code allows the Court to excuse them from this liability based on what relief they may seek in the future. "Congress is free (and in some cases has chosen) to use the bankruptcy code to control certain aspects of how federal or state tax law operates during reorganizations. But, when the code hasn't [indicated] otherwise, our attention is rightly turned to the underlying tax law to see who owes what…." *In re Dawes*, 652 F.3d 1236, 1239 (10th Cir. 2011) (Gorsuch, J.).

The Court therefore must presume, for the present time, that the United States holds a claim entitled to administrative priority, albeit one that is currently unliquidated. The United States therefore has standing to challenge the Motion to the extent that it could impair the United States' recovery on that claim in this case.

**The Settlement Violates the Priority Rules Applicable to the United States' Administrative Tax Claim**

The settlement purports to resolve various claims identified in paragraph 12(a) of the Final DIP Order. (Dkt. No. 552). It is clear from the provision's extensive discussions of the requirements for the Creditors' Committee to seek standing to prosecute the claims and the other parties eligible to bring them that these claims are property of the estate. These are not claims that belong to the Committee itself.

Nonetheless, the settlement provides that the Prepetition Secured Parties will pay $13 million into a GUC Trust Account which: (1) will not be treated as estate property; and (2) will be used solely to satisfy the claims of general unsecured creditors. The settlement does not provide for any payments to the estate itself or to any other parties holding claims against the

estate. It further provides for an Approved Budget with an $8.1 million line item for Committee professional fees, which it also deems non-estate property.

**The Motion Offers Minimal Facts and Contradicts Prior Positions**

The motion provides no details as to the nature of the specific claims involved here. It only vaguely states that the "Committee's investigation raised significant concerns regarding, among other things, the attachment and perfection of the Prepetition Trustee's asserted liens." (Mot. ¶ 18). No facts are offered as to what the concerns are, Mishmeret's defenses, and the range of possible outcomes. Vague statements are made about the need to litigate in Israel. No explanation is given, however, for why challenges to liens on property located in the United States would need to be litigated abroad or even would be governed by foreign law. *See* Unif. Commercial Code (2022) §§ 1-301, 9-109(a)(1), (c)(3); 9-301(1). Nor do the movants explain why a judgment in a lien avoidance action would need to be liquidated anywhere, let alone abroad.

The most glaring omission, though, is that the debtors do not seem to take any position on the merits of the committee's arguments *regarding estate causes of action* or Mishmeret's potential defenses. They are not even parties to the settlement. (Mot., p. 1). They merely assert their support for it. (*Id.*).

It is worth noting that the motion takes several positions that are diametrically opposed to assertions the debtors and Mishmeret made while briefing and arguing the debtors' motion to determine tax withholding obligations. (Dkt. No. 1141 and 1305). First, central to the relief sought in that motion was the debtors' contention that all the real property potentially subject to FIRPTA withholding obligations was unquestionably fully encumbered such that all sale proceeds would be paid directly to secured lenders. (See Dkt. No. 1305, ¶¶ 24-25). Debtors'

counsel publicly took that position as recently as the October 5 hearing on that motion and brushed aside the undersigned's flagging of the debtors' stated intent to challenge Mishmeret's liens. (Tr. 14:8-15:10; 48:11-49:18). And yet, six days later, the debtors asserted in the present motion that the Committee has raised sufficiently valid challenges to Mishmeret's liens to warrant a $13 million payment to avert their potential avoidance.

Second, in response to the tax motion, the United States argued that funds in possession of potential buyers to be withheld and paid over under FIRPTA were not estate property, meaning their payment would not violate the Bankruptcy Code's priority rules. (Dkt. No. 1286, pp. 3) Taxes to be withheld, collected, or paid over to the Internal Revenue Service are held in a statutory trust and thus not property of a debtor's estate, even when actually in the debtor's possession. 26 U.S.C. §§ 1445, 1461, and 7501; *Begier v. I.R.S.*, 496 U.S. 53, 67 (1990). It's not clear if the debtors disagreed, but they repeatedly referred to FIRPTA withholdings coming from "gross sale proceeds," presumably suggesting that they were property of the estate. *See* 11 U.S.C. § 541(a)(1), (6). Now they contend, though, that anything paid by Mishmeret to settle estate claims is somehow not estate property.

Third, they contended that if the required FIRPTA withholdings were paid, which they estimated at approximately $13.5 million, "[s]uch a result would have devastating consequences for the Exempt Entities' estates." (Dkt. No. 1305, p. 4). They insisted that the "diversion of millions of dollars in sale proceeds would materially impair the Exempt Entities' ability to consummate a successful restructuring, satisfy secured and other creditor claims, and emerge from Chapter 11." (*Id.*). Now they seek permission to pay almost that exact amount to general unsecured creditors who truly are not entitled to anything in a bankruptcy case.

## ARGUMENT

The Court should deny approval of the settlement motion. It is exactly the kind of "backdoor means" of defeating the Bankruptcy Code's priority rules that have been disfavored in recent years. *See In re Hertz Corp.*, 120 F.4th 1181, 1201 (3d Cir. 2024) (quoting *Czyzewski v. Jevic Holding Corp*., 580 U.S. 451, 465 (2017)). The debtors could never confirm a plan, over the United States' objection, that called for the priority-violating distributions contained in the proposed settlement. The Court should therefore reject the settlement and require the movants to negotiate with the United States on a plan that respects the priority to which the Internal Revenue Service's administrative tax claims are entitled to.

As undersigned counsel previously indicated in communications with the Court and other parties, the United States is perfectly willing to engage in mediation on these issues. There is no legal or practical justification for the Court to tolerate precisely the kind of "collusion" the Supreme Court has decried—"senior secured creditors and general unsecured creditors teaming up to squeeze out priority unsecured creditors." *Jevic*, at 470 (citing B*ank of America Nat. Trust and Sav. Assn. v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 444 (1999)).

**Applicable Legal Standards**

A court may approve a settlement pursuant to Rule 9019 upon making a determination that it is "fair and equitable" and in the best interest of creditors and the estate. *In re Biolitec, Inc.*, 528 B.R. 261, 266 (Bankr. D.N.J. 2014) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968)). "Settlements are favored, but the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." *In re Nutraquest, Inc*., 434 F.3d 639, 644 (3d Cir. 2006). The proponent of a settlement has the burden of proving its reasonableness and that it is in the

best interests of the estate. *In re Roper & Twardowsky, LLC*, 559 B.R. 375, 394 (Bankr. D.N.J. 2016).

"Under the 'fair and equitable' standard, [a court must] look to the fairness of the settlement to other persons, i.e., the parties who did not settle. *In re Nutraquest, Inc*., 434 F.3d 639, 645 (3d Cir. 2006) (citing *TMT*, at 435). Put more concretely, "[a] settlement is fair and equitable as long as 'senior interests are entitled to full priority over junior ones.'" *Biolitec*, 528 B.R. at 266 (quoting *In re AWECO, Inc*., 725 F.2d 293, 298 (5th Cir.1984)). *Accord In re Royal Alice Props*., LLC, 637 B.R. 465, 476–77 (Bankr. E.D. La. 2021) ("The words 'fair and equitable' are terms of art—they mean that senior interests are entitle to full priority over junior ones." (quoting *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc*.), 119 F.3d 349, 355 (5th Cir. 1997)). Indeed,

> whether a particular settlement's distribution scheme complies with the Code's priority scheme *must be the most important factor* for the bankruptcy court to consider when determining whether a settlement is "fair and equitable" under Rule 9019. The court must be certain that parties to a settlement have not employed a settlement as a means to avoid the priority strictures of the Bankruptcy Code.

*In re Iridium Operating LLC*, 478 F.3d 452, 464 (2d Cir. 2007) (emphasis added). And lest the movants forget, administrative expense holders have priority over general unsecured creditors. *In re TAJ Graphics Enters., L.L.C*., 162 F.4th 791, 797 (6th Cir. 2025) (citing *Jevic*., 580 U.S. at 457.

"In evaluating whether a proposed settlement is in the best interest of creditors and the estate, courts look to the following factors: '(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.'" *Biolitec, Inc*., 528 B.R. at 266–67 (quoting *In re Martin*, 91 F.3d 389, 393 (3d Cir.

1996)). "'[T]he Court must look to the consideration for settlement. This analysis pits the value of rights relinquished by the [estate] versus the value received in return.'" *Roper*, 559 at 394 (quoting *In re McDermott*, 2008 WL 877964, at *4 (Bankr. D.N.J. Mar. 27, 2008). "Regarding, the fourth factor … courts must consider the effect of the settlement on all parties to the proceeding—the entire creditor body—and not individual creditor interests." *Roper*, at 394 (quoting *Biolitec*, at 270)).

**The Settlement Is Not "Fair and Equitable"**

The Court should deny approval of the settlement because it is not fair and equitable—it blatantly violates the Bankruptcy Code's priority rules.

The Internal Revenue Service should be presumed to have a significant administrative expense claim against SIMAD Holdings, Ltd. Unless that debtor's case is dismissed or converted to chapter 7, it will need to end in a confirmed chapter 11 plan. That plan must pay the IRS's administrative claim in full unless the IRS agrees to less favorable treatment. 11 U.S.C. § 1129(a)(9)(A). That is true even if SIMAD Holdings has no cash of its own. There is no administrative insolvency exception to § 1129(a) or a chapter 11 debtor's statutory obligation to pay its post-petition taxes as they come due. *Compare* 28 U.S.C. § 960(b) *with* (c).

The settlement nevertheless would grant $8 million to estate professionals, whose claims are entitled to equal priority with the IRS's, and $13 million to general unsecured creditors, whose claims are unquestionably junior to the IRS's. These funds are property of the estate because they are proceeds of estate causes of action. *Jevic*, 580 U.S. at 459 ("The Bankruptcy Court and the parties were aware that any proceeds from [a fraudulent conveyance] suit would belong not to the unsecured creditors, but to the bankruptcy estate." (citing §§ 541(a)(1), (6))); *In re Tovan Constr., Inc.*, No. 19-12423-KHK, 2021 WL 1235359, at *3 (Bankr. E.D. Va. Mar. 31,

2021) ("given that the settlement purports to settle estate claims, the distributions provided for by the settlement are proceeds of property of the estate and therefore must adhere to the Code's priority schemes."). *See also* 11 U.S.C. § 551 ("Any transfer avoided under section [544 or 548] of this title … is preserved for the benefit of the estate…."). They therefore must be distributed in accordance with the Code's priority scheme regardless of whether the settling parties choose to label them as non-estate property.

The fact that this settlement is not expressly part of a chapter 11 plan does not make its terms acceptable. In *Jevic*, the Supreme Court held out the possibility that *interim* distributions that violate the priority scheme may be permissible, but generally only in circumstances that "enable a successful reorganization and make even the disfavored creditors better off." 580 U.S. at 468 (quoting *In re Kmart Corp*., 359 F.3d 866, 872 (7th Cir. 2004)). But this is no interim distribution—it presumably sets up the final treatment of general unsecured claims under the plan that debtors counsel promises will be filed soon. It's hard to imagine what other distributions will be provided for in a plan not already included in the DIP orders and this proposed settlement.

Even if this could be considered an interim distribution, it is not permissible. No explanation is given for why this priority-violating arrangement is necessary—other than the obvious assumption that the general unsecured creditors want it. That is not sufficient.

> The Committee has a fiduciary duty to maximize their recovery of the Estate's assets. If in pursuit of that duty, it reaches a settlement that in some way impairs the rule of priorities, it must come before the bankruptcy court with specific and credible grounds to justify that deviation and the court must carefully articulate its reasons for approval of the agreement.

*Iridium*, 478 F.3d at 466 (citations omitted). None is given here, and no evidence has been submitted to the Court from which it could make the requested determination. Finally, unlike

other kinds of permitted interim distributions, there can be no argument that this one makes even the disfavored creditor—the United States—better off.

**The Martin Factors Are Not Met**

Even if a priority-violating settlement were permissible, the movants did not make the requisite showing that the proposed settlement is in the best interests of all creditors and the estates.

As to the estates, the Court must compare the "'rights relinquished by the [estate] versus the value received in return.'" *Roper*, 559 at 394 (quoting *McDermott*, at *4). *Acord In re NovaPro Holdings, LLC*, 815 F. App'x 655, 658 (3d Cir. 2020). The settlement clearly fails this test. By design, estate causes of action are being relinquished, and nothing is being received in return. All cash is being put into funds for general unsecured creditors and their professionals, none of which are deemed to be estate property.

Properly recognizing the settlement proceeds as estate property would not satisfy *Martin*—the settling parties offer no facts from which the Court could even hazard a guess as to the value of the lien avoidance claims and the costs of prosecuting them. At most, the Court can infer the claims have a value of at least $13 million. But as noted above, if the primary relief sought would likely be the avoidance of liens on sale proceeds held in escrow in the United States, there should be no obstacles to collection. Nor are any actual facts given to show the costs and other difficulties in litigating the claims.

The debtors bear the burden on these factors, and they have not come close to meeting that burden. "To make an informed and independent judgment … the court needs facts, not allegations." *TMT Trailer Ferry*, 390 U.S. at 437. It "'must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of

the estate.'" *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (quoting *Martin*, 91 F.3d at 393), *aff'd*, No. 03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006). It cannot simply rely on "bald assertions" by the parties. *In re ID Liquidation One, LLC*, 555 F. App'x 202, 207 (3d Cir. 2014) (quoting *TMT Trailer Ferry*, 390 U.S. at 439). But that is all the movants have offered in support on the first three factors.

The movants fail to satisfy the final factor—the paramount interests of the creditors. "[C]ourts must consider the effect of the settlement on all parties to the proceeding—the entire creditor body—and not individual creditor interests." *Roper*, at 394 (quoting *Biolitec*, at 270)). After all, a trustee (who is the party actually entitled to file a motion under FRBP 9019), "has a fiduciary relationship with *all* creditors of the estate" and has the "duty to maximize the value of the estate." *Martin*, 91 F.3d at 394 (emphasis in original) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353–55 (1985)).

The motion refers to the general unsecured creditors as if that group were coterminous with the entire creditor body. It is not. In addition to small priority tax claims, the United States will likely have a substantial administrative claim entitled to the highest priority among unsecured claims. The settlement, which skips priority and administrative claims, thus cannot be considered in the best interest of *all* creditors; it is only in the interest of the portion of the creditor body least entitled to payment.

## CONCLUSION

For the reasons given above, the Court should deny approval of the settlement. It is not fair and equitable because it violates the Code's priority rules, and the proponents have not offered any specific facts, supported by admissible evidence, to satisfy the *Martin* factors. The

Court should direct the parties to mediation in the hopes of resolving this and their other disputes.

Dated: October 21, 2026

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General
Tax Litigation Branch

*/s/ Ward W. Benson*
WARD W. BENSON
STEPHEN S. HO
Trial Attorneys
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 227
Washington, D.C. 20044
(202) 514-9642 (Benson)
(202) 514-6866 (Fax)
ward.w.benson@usdoj.gov
*Counsel for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to all parties registered to receive such filing.

*/s/ Ward W. Benson*
WARD W. BENSON
Trial Attorney
U.S. Department of Justice
*Attorney for the United States of America*