**Exhibit "B"**
**The Mortgage**

1. Collateral Mortgage, Security Agreement and Assignment of Leases and Rents given by Kiwi Landco LLC, LLC to Putnam County Savings Bank in the principal sum of One Million Three Hundred Thousand and 00/100 Dollars ($1,300,000.00) dated August 28, 2013 and recorded September 4, 2013 in the Office of the Clerk of Putnam County, New York as Liber 6284 at Page 241 ("Mortgage A")

2. Which Mortgage A was modified and/or extended by Modification and Extension Agreement between KIWI LANDCO LLC and PCSB BANK in the reduced principal sum of $646,035.01 dated July 15, 2024 and intended to be duly recorded in the Office of the Clerk of Putnam, New York

# Exhibit B

KIWI LANDCO LLC

("Guarantor")

to

PUTNAM COUNTY SAVINGS BANK

("Lender")

---

# COLLATERAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

---

Dated: August 28, 2013

Mortgaged Premises

| | |
|---|---|
| Location: | 825 Union Valley Road and 1-5 Blossom Lane |
| Section: | 77 / 77 |
| Block: | 1 / 1 |
| Lot: | 32 / 41 |
| County: | Putnam / Putnam |

PREPARED BY:
Daniels, Porco and Lusardi, LLP
102 Gleneida Avenue
Carmel, New York 10512

| | |
|---|---|
| Attention: | Emily J. Westbrook, Esq. |
| File No.: | 35,028RE |
| Title No.: | 13-17892-PU, issued by Kingston Abstract, Inc. as Agent for Commonwealth Land Title Insurance Company |

THIS COLLATERALMORTGAGE, SECURITY AGREEMENT, AND ASSIGNMENT OF LEASES AND RENTS (the "Mortgage") is given this 28th day of August, 2013, by **KIWI LANDCO LLC**, a limited liability company organized and existing under the laws of the State of New York with an address of 825 Union Valley Road, Mahopac, New York 10541 (the "Guarantor") in favor of **PUTNAM COUNTY SAVINGS BANK**, a mutual savings bank organized and existing under the laws of the State of New York with its principal place of business located at 2477 Route 6, Brewster, New York 10509 (the "Lender").

WITNESSETH:

WHEREAS, the Guarantor executed a guaranty of payment of even date herewith (the "Guaranty"), pursuant to which it unconditionally guaranteed payment of the indebtedness evidenced by that certain Mortgage Note dated the date hereof from **KIWI OPERATINGCO LLC**, a limited liability company organized and existing under the laws of the State of New York with an address of 825 Union Valley Road, Mahopac, New York 10541 (the "Borrower") to Lender in the principal sum of **One Million Three Hundred Thousand Dollars and No Cents ($1,300,000.00)** (said note, together with any modifications, extensions, renewals or consolidations thereof called the "Note" and said indebtedness, interest thereon, and any and all other sums due or becoming due under any of the Loan Documents (as hereinafter defined) collectively called the "Debt"); and

WHEREAS, Guarantor and Lender desire that the Guaranty be secured by this Mortgage;

NOW THEREFORE, in consideration of the loan evidenced by the Note, from which Guarantor derives substantial direct and indirect economic benefit, to secure the Guaranty, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor by these presents does hereby mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and hypothecate unto Lender the real property described in Exhibit "A" attached hereto and made a part hereof (the "Premises"), and the buildings, structures, units, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the "Improvements").

TOGETHER WITH: all right, title, interest and estate of Guarantor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements together with the following property, rights, interests and estates collectively called the "Mortgaged Property"):

(a) all easements, rights of way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or, pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Guarantor of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b) all machinery, equipment, fixtures (including but not limited to all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature whatsoever owned by Guarantor, or in which Guarantor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and

all building equipment, materials and supplies of any nature whatsoever owned by Guarantor, or in which Guarantor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Premises and the Improvements (hereinafter collectively called the "Equipment"), and the right, title and interest of Guarantor in and to any of the Equipment which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Mortgaged Property is located (the "Uniform Commercial Code"), superior in lien to the lien of this Mortgage;

(c) all awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Mortgaged Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property;

(d) all leases and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore or hereafter entered into (the "Leases") and all rents, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements (the "Rents") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e) all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(f) the right, in the name and on behalf of Guarantor, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Lender in the Mortgaged Property;

TO HAVE AND TO HOLD the above granted and described Mortgaged Property unto and to the use and benefit of Lender, and the successors and assigns of Lender, forever;

PROVIDED, HOWEVER, that this Mortgage is made upon the express condition that upon payment in full to Lender of the Debt at the time and in the manner provided in the Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void;

PROVIDED FURTHER, HOWEVER, notwithstanding anything contained herein to the contrary the maximum amount of indebtedness secured by this Mortgage at the time of execution hereof or which under any contingency may become secured by this Mortgage at any time hereafter is the unpaid principal balance of the Note, plus (a) any monies expended by Lender to preserve the Mortgaged Property and/or its interest therein including without limitation payments of taxes, charges, or assessments which may be imposed by law upon the Mortgaged Property; (b) any premiums on insurance policies covering the Mortgaged Property paid by Lender; (c) any expenses, including attorneys fees, incurred by Lender in upholding the lien of, or enforcing the terms of, this Mortgage, including but not limited to expenses of any litigation; (d) any amount, cost or charges to which the Lender becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority; and (e) accrued and unpaid interest chargeable under the Note, this Mortgage, and/or the Other Security Documents (hereinafter defined);

AND Guarantor represents and warrants to and covenants and agrees with Lender as follows:

1. Payment of Debt and Incorporation of Covenants, Conditions, and Agreements. Guarantor will pay the Debt at the time and in the manner provided in the Guaranty.All the covenants, conditions and agreements contained in the Note; the Guaranty; any and all instruments other than this Mortgage and the Guaranty now or hereafter executed by one or more of the Borrower, the Guarantor and any other party which wholly or partially secure or guaranty payment of the Note (the "Other Security Documents"); and any and all instruments other than the Note, the Guaranty, this Mortgage, and the Other Security Documents now or hereafter executed by one or more of the Borrower, the Guarantor and any other party in favor of Lender pertaining to the Debt (collectively, the "Ancillary Documents") are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein. The Note, the Guaranty, this Mortgage, the Other Security Documents, and the Ancillary Documents are hereinafter collectively referred to as the "Loan Documents."

2. Warranty of Title. Guarantor warrants that Guarantor has good and marketable title to the Mortgaged Property and has the right to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Guarantor possesses an unencumbered fee estate in the Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the Title Insurance Policy No. 13-17892-PU issued by Kingston Abstract, Inc., as agent for Commonwealth Land Title Insurance Company insuring the lien of this Mortgage. Guarantor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Lender against the claims of all persons whomsoever.

3. Insurance. (a) Guarantor will keep the Mortgaged Property insured against loss or damage by fire, flood and such other hazards, risks and matters, including without limitation, business interruption, rental loss, public liability, and boiler damage and liability, as Lender may from time to time require in amounts required by Lender, and shall pay the premiums for such insurance (the "Insurance Premiums") as the same become due and payable. All policies of insurance (the "Policies") shall be issued by insurers acceptable to Lender and shall contain the standard New York Lender non contribution clause naming Lender as the entity to which all payments made by such insurance company shall be paid. Guarantor will assign and deliver the Policies to Lender. Not later than fifteen (15) days prior to the expiration date of each of the Policies, Guarantor will deliver evidence satisfactory to Lender of the renewal of each of the Policies.

(b) If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Guarantor shall provide notice thereof to the insurer in accordance with the terms and conditions of the policies, and shall give prompt notice thereof to Lender. Sums paid to Lender by any insurer may be retained and applied by Lender, after deduction of Lender's reasonable costs and expenses of collection, toward payment of the Debt in such priority and proportions as Lender in its sole and absolute discretion shall deem proper or, at the discretion of Lender, either in whole or in part, to Guarantor for such purposes as Lender shall designate. In the event of any conflict, inconsistency or ambiguity between the provisions of this paragraph 3 and the provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire, the provisions of this paragraph 3 shall control.

4. Payment of Taxes, etc. Guarantor shall pay all taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "Taxes") and all ground rents, maintenance charges, other governmental impositions, and other charges, including without limitation vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "Other Charges") as same become due and payable. Guarantor will deliver to Lender, promptly upon Lender's request, evidence satisfactory to Lender that the Taxes and Other

Charges have been so paid or are not then delinquent. Guarantor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property, and shall promptly pay for all utility services provided to the Mortgaged Property. Guarantor shall furnish to Lender receipts for the payment of the Taxes, Other Charges and said utility services prior to the date the same shall become delinquent.

5. Escrow Fund. Guarantor shall, at the option of Lender, pay to Lender on the first day of each calendar month (a) one twelfth of an amount which would be sufficient to pay the Taxes payable, or estimated by Lender to be payable, during the next ensuing twelve (12) months and (b) one twelfth of an amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said amounts in (a) and (b) above hereinafter called the "Escrow Fund").. Guarantor hereby pledges to Lender any and all monies now or hereafter deposited in the Escrow Fund as additional security for the payment of the Debt. Lender will apply the Escrow Fund to payments of Taxes and Insurance Premiums required to be made by Guarantor pursuant to paragraphs 3 and 4 hereof. If the amount of the Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to paragraphs 3 and 4 hereof, Lender shall, in its discretion, return any excess to Guarantor or credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, Lender may deal with the person shown on the records of Lender to be the owner of the Mortgaged Property. If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above, Guarantor shall promptly pay to Lender, upon demand, an amount which Lender shall estimate as sufficient to make up the deficiency. Upon the occurrence of an Event of Default (hereinafter defined) Lender may apply any sums then present in the Escrow Fund to the payment of the following items in any order in its uncontrolled discretion:

(i) Taxes and Other Charges;

(ii) Insurance Premiums;

(iii) Interest on the unpaid principal balance of the Note;

(iv) Amortization of the unpaid principal balance of the Note;

(v) All other sums payable pursuant to the Note, this Mortgage and the Other Security Documents, including without limitation advances made by Lender pursuant to the terms of this Mortgage.

Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt. The Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Lender. No earnings or interest on the Escrow Fund shall be payable to Guarantor.

6. Condemnation. Guarantor shall promptly give Lender notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Lender copies of any and all papers served in connection with such proceedings. Notwithstanding any taking by any public or quasi public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Guarantor shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and in this Mortgage and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Lender, after the deduction of expenses of collection, toward the reduction or discharge of the Debt. Lender shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note. Lender may apply any such award or payment to the reduction or discharge of the Debt whether or not then due

and payable. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Lender of such award or payment, Lender shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt.

7. Leases and Rents. (a) Lender is hereby granted and assigned by Guarantor the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this Mortgage constituting a present, absolute assignment of the Leases and the Rents. Nevertheless, subject to the terms of this paragraph 7, Lender grants to Guarantor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Guarantor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon or at any time after an Event of Default, the license granted to Guarantor herein may be revoked by Lender, and Lender may enter upon the Mortgaged Property, and collect, retain and apply the Rents toward payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

(b) All Leases shall be written on the standard form of lease which has been approved by Lender. Upon request, Guarantor shall furnish Lender with executed copies of all Leases. No material changes may be made to the Lender approved standard lease without the prior written consent of Lender. In addition, all renewals of Leases and all proposed leases shall provide for rental rates comparable to existing local fair market value rates and shall be arms length transactions. All proposed leases shall be subject to the prior approval of the Lender. All Leases shall provide that they are subordinate to this Mortgage, that the lessee agrees to attorn to Lender in the event of foreclosure, a deed in lieu of foreclosure, or like event, and that the lessee shall be required to furnish tenant estoppel certificates upon request of Guarantor or Lender. Guarantor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Lender of all notices of default which Guarantor shall send or receive thereunder; (iii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of lessor's interest in the Leases or the Rents; (vi) shall not alter, modify or change the terms of the Leases without the prior written consent of Lender, or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (vii) shall not alter, modify or change the terms of any guaranty of the Leases or cancel or terminate such guaranty without the prior written consent of Lender; (viii) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Lender; and (ix) shall execute and deliver at the request of Lender all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Lender shall from time to time require. Lender shall have all of the rights against lessees of the Mortgaged Property set forth in Section 291 f of the Real Property Law of New York.

8. Maintenance of Mortgaged Property. Guarantor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair. The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment) without the consent of Lender. Guarantor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof. Guarantor shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn or dilapidated or which may be affected by any proceeding of the character referred to in paragraph 6 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises. Guarantor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be

made of the Mortgaged Property or any part thereof. If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Guarantor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Lender.

9. Transfer or Encumbrance of the Mortgaged Property. (a) Guarantor acknowledges that Lender has examined and relied on the creditworthiness of Guarantor and experience of Guarantor in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Lender will continue to rely on Guarantor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt. Guarantor acknowledges that Lender has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Guarantor default in the repayment of the Debt, Lender can recover the Debt by a sale of the Mortgaged Property. Guarantor shall not, without the prior written consent of Lender, sell, convey, alien, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof or permit the Mortgaged Property or any part thereof to be sold, conveyed, aliened, mortgaged, encumbered, pledged or otherwise transferred. Notwithstanding the foregoing, Lender shall consent any request by Guarantor to encumber the Mortgaged Premises with a third (3rd) position mortgage lien, provided that, at the time of such request, (i) neither Borrower nor Guarantor is in default under any of the Loan Documents, (ii) the Borrower can demonstrate, to the Lender's satisfaction, a debt service coverage ratio of no less than 2X, (iii) the aggregate mortgage indebtedness affecting the Mortgaged Premises if the proposed third mortgage were filed against the Premises would not exceed sixty-five percent (65%) of the value of the Mortgaged Premises (such value to be determined by Lender based upon appraisals conducted at Borrower's expense by a licensed appraiser selected by Lender), and (iv) the Lender providing the financing in connection with such third mortgage shall agree, upon Lender's request, to enter into a Debt Subordination Agreement and/or Inter-creditor Agreement with Lender upon terms acceptable to Lender.

(b) A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this paragraph 9 shall be deemed to include (i) execution of an installment sales agreement whereby Guarantor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) execution of an agreement whereby Guarantor leases all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder, or a sale, assignment or other transfer of, or the grant of a security interest in Guarantor's right, title and interest in and to any Leases or any Rents; (iii) if Guarantor is a business entity, the voluntary or involuntary sale(s), conveyance(s) or transfer(s) of such business entity's stock or membership or partnership interests, as applicable (or the stock or membership or partnership interests of any business entity directly or indirectly controlling such business entity by operation of law or otherwise), or the creation or issuance of new stock or membership or partnership interests, as applicable. which results in an aggregate of more than ten percent (10%) of such business entity's stock or membership or partnership interests, as applicable, becoming vested in a party or parties who are not stockholders, members, or partners, as applicable, on the date hereof; and (iv) if Guarantor is a business entity, the change, removal or resignation of a President, Chief Executive Officer, Managing Partner, or Managing Member, as applicable, of Guarantor. Notwithstanding the foregoing, the members of the Borrower existing on the date hereof (each a "Current Member") shall have the right to transfer all or a portion of their interest in Borrower without Lender's consent *provided* (i) no Event of Default exists hereunder or under any of the other Loan Documents at the time of the contemplated transfer, (ii) Borrower gives Lender notice of the contemplated transfer together with copies of all instruments to be executed to effect the same not less than ten (10) business days prior to the date of the contemplated transfer, (iii) the transfer is made to one or more of the following Excepted Transferees: non-minor immediate family member(s) of a Current Member; a trust, the holders of the beneficial interests in which are a Current Member and/or non-minor immediate family members of a Current Member; a limited liability company, the member(s) of which is/are a Current

Member and/or non-minor immediate family members of a Current Member; or a limited liability company in which Michael Shabsels holds a controlling interest, (iv) Michael Shabsels and/or David Shabsels maintains control and management of Borrower and the Mortgaged Premises subsequent to such transfer(s), and (v) further provided that any transfer(s) allowed under these exceptions shall not, in the aggregate, result in the alienation of more than a twenty-five percent (25%) ownership interest in Borrower.

(c) Lender reserves the right to condition the consent required hereunder upon a modification of the terms hereof and/or upon assumption of this Mortgage by the proposed transferee, payment of a transfer fee, or such other conditions as Lender shall determine in its sole discretion to be in the interest of Lender. Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Guarantor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property without Lender's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Lender has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

10. Estoppel Certificates. (a) After request by Lender, Guarantor, within ten (10) days, shall furnish Lender with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) claimed offsets or defenses to the payment of the Debt, if any, and (vi) a certification that the Loan Documents are valid, legal and binding obligations and have not been modified or, if modified, giving particulars of such modification(s). (b) Upon Lender's request, Guarantor will, within ten (10) days, furnish Lender with estoppel certificates from any lessees under the Leases as required by their respective Leases.

11. Changes in the Laws Regarding Taxation. If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Mortgaged Property, Guarantor will pay such tax, with interest and penalties thereon, if any. In the event Lender is advised by counsel chosen by it that the payment of such tax or interest and penalties by Guarantor would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then in any such event, Lender shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

12. No Credits on Account of the Debt. Guarantor will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

13. Documentary Stamp. If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Guarantor will pay for the same, with interest and penalties thereon, if any.

14. Usury Laws. The Loan Documents are subject to the express condition that at no time shall Guarantor be obligated or required to pay interest on the Debt at a rate which could subject the holder of

the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Guarantor is permitted by applicable law to contract or agree to pay. If by the terms of any of the Loan Documents, Guarantor is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

15. Books and Records. Guarantor shall keep adequate books and records of account in accordance with generally accepted accounting practices consistently applied, and make the such books and records available to Lender for inspection at Lender's request.

16. Performance of Other Agreements. Guarantor shall observe and perform each and every term to be observed or performed by Guarantor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

17. Further Acts, etc. Guarantor will, at the cost of Guarantor, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the Mortgaged Property and rights hereby mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Guarantor may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Guarantor, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Guarantor or without the signature of Guarantor to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Mortgaged Property. Guarantor grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including without limitation such rights and remedies available to Lender pursuant to this paragraph 17.

18. Recording of Mortgage. Guarantor upon the execution and delivery of this Mortgage and thereafter, from time to time, shall promptly cause this Mortgage, and the other Security Documents creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property, and each instrument of further assurance, to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Mortgaged Property. Guarantor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any consolidations, modifications, extensions, or mortgages supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, consolidations, modifications, extensions, or any mortgages supplemental hereto, any security instrument with respect to tile Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Guarantor shall hold harmless and indemnify Lender, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

19. Submission of Financials and Reports. At all times while the Debt remains unpaid, Guarantor shall furnish to the Lender annually (a) the Balance Sheet, Profit & Loss Statement and corporate tax returns of Guarantor, to be delivered to Lender within one hundred twenty (120) days of each fiscal year

end, provided, however, that if an extension for the time to file any tax return has been filed, a copy of such extension shall be delivered to Lender within one hundred twenty (120) days of fiscal year end with the tax return to follow no later than the expiration date of such extension, (b) if Guarantor is an entity, a certified statement signed by Guarantor setting forth the names and addresses of the officers of the Guarantor, the names and addresses of each member/partner/shareholder (as applicable) of Guarantor, and the percent ownership interest of each such member/partner/shareholder, to be delivered to Lender within thirty(30) days of each calendar year end, (c) if Guarantor is a trustee or trustees acting on behalf of a trust, a certified statement setting forth the names and addresses of all presently acting trustees, or successor trustees, as applicable, of said trust, and the names and addresses of all living beneficiaries of said trust, to be delivered to Lender within thirty(30) days of each calendar year end, (d) signed copies of all leases to which Guarantor is a party, and a certified rent roll signed and dated by Guarantor detailing the names of all tenants of the Improvements, the portion of the Improvements occupied by each tenant, the rent and any other charges payable under each lease, and the term of each lease, to be delivered to Lender within one hundred twenty (120) days of each calendar year end, and (e) an annual operating statement of the Mortgaged Property detailing the total revenues received and total expenses incurred certified by Guarantor and the Borrower and delivered to Lender within one hundred twenty (120) days of each calendar year end. All financial statements and returns required hereunder shall be prepared by a certified public accountant reasonably acceptable to the Lender, in such detail as the Lender may reasonably require. Guarantor shall further furnish to the Lender within ten (10) days of Lender's reasonable demand therefor, other information or records relating to (i) the operation of the Mortgaged Premises, (ii) the financial affairs of the Guarantor or Guarantor, and/or (iii) any other matter or thing Lender reasonably determines relevant to the repayment of, or security for, the Debt. Failure to comply with the terms of this paragraph will constitute a default under the terms and conditions of this Mortgage.

20. Events of Default. The Debt shall become immediately due and payable at the option of Lender upon any one or more of the following events ("Event of Default"):

(a) if any of the Taxes or Other Charges are not paid when due and payable;

(b) if the Policies are not kept in full force and effect, or if the Policies are not assigned and delivered to Lender upon request;

(c) if Guarantor violates or does not comply with any of the provisions of paragraphs 7, 9, 31 or 32 hereof;

(d) if the Mortgaged Property becomes subject to any mechanic's, materialman's or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) days;

(e) if Guarantor fails to promptly cure any violations of laws or ordinances affecting, or which may be interpreted to affect, the Mortgaged Property;

(f) if Borrower shall make an assignment for the benefit of creditors or shall generally be unable to pay its debts as they become due;

(g) if a receiver, liquidator or trustee of Borrower or of Guarantor shall be appointed; if Borrower or Guarantor shall be adjudicated a bankrupt or insolvent; if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in, by, Borrower or Guarantor; or if any proceeding for the dissolution or liquidation of

Borrower or of Guarantor shall be instituted, provided, however, that if any such appointment, adjudication, petition or proceeding is involuntary and not consented to by Borrower or Guarantor, the same shall not constitute an Event of Default if discharged, stayed or dismissed within sixty (60) days;

(h) if any representation or warranty of Borrower, or of any person guaranteeing payment of the Debt or any portion thereof or performance by Borrower of any of the terms of any of the Loan Documents, such persons including but not limited to Guarantor (each such person being a "General Guarantor") made herein, in a guaranty of the Debt, or in any certificate, report, financial statement or other instrument or document furnished to Lender, shall have been false or misleading in any material respect when made;

(i) if that certain Lease affecting the Mortgaged Premises dated August 28, 2013 between the Guarantor, as Landlord, and the Borrower, as Tenant shall be amended, modified, assigned, sublet, surrendered, or terminated without the express written consent of Lender.

(j) if for more than ten (10) days after notice from Lender, Guarantor shall continue to be in default under any other term, covenant or condition of this Mortgage; or

(k) if Guarantor or Borrower shall be in default under any of the other Loan Documents, subject to any grace period and/or right to cure expressly set forth therein

21. <u>Sale of Mortgaged Property</u>. If this Mortgage is foreclosed, the Mortgaged Property, or any interest therein, may in the sole and absolute discretion of Lender, be sold in one or more parcels or in several interests or portions and in any order or manner.

22. <u>Right to Cure Defaults</u>. Upon the occurrence of any Event of Default or if Guarantor fails to make any payment or to do any act as herein provided, Lender may, but without any obligation to do so and without notice to or demand on Guarantor and without releasing Guarantor from any obligation hereunder, make or do the same in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this paragraph 22, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All such costs and expenses incurred by Lender in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender. All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the Other Security Documents and shall be immediately due and payable upon demand by Lender therefor.

23. <u>Right of Entry</u>. Lender and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times.

24. <u>Appointment of Receiver</u>. The holder of this Mortgage, upon the occurrence of an Event of Default or in any action to foreclose this Mortgage or upon the actual or threatened waste to any part of the Mortgaged Property, shall be entitled to the appointment of a receiver without notice and without

regard to the value of the Mortgaged Property as security for the Debt, or the solvency or insolvency of any person liable for the payment of the Debt.

25. Reasonable Use and Occupancy. In addition to the rights which Lender may have herein, upon the occurrence of any Event of Default, Lender, at its option, may require Guarantor to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Guarantor or may require Guarantor to vacate and surrender possession of the Mortgaged Property to Lender or to such receiver and, in default thereof, Guarantor may be evicted by summary proceedings or otherwise.

26. Security Agreement. This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Guarantor in the Mortgaged Property. Guarantor by executing and delivering this Mortgage has granted and hereby grants to Lender, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this paragraph 26 the "Collateral"). If an Event of Default shall occur, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Following the occurrence of an Event of Default, Guarantor shall, at Lender's request or demand and at Guarantor's sole cost and expense, assemble the Collateral and make it available to Lender at a convenient place acceptable to Lender. Guarantor shall pay to Lender on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Guarantor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Guarantor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its sole and absolute discretion shall deem proper.

27. Actions and Proceedings. Lender has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Guarantor, which Lender, in its discretion, decides should be brought to protect its interest in the Mortgaged Property. Lender shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

28. Waiver of Counterclaim. Guarantor hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender, and waives trial by jury in any action or proceeding brought by either party hereto against the other or in any counterclaim asserted by Lender against Guarantor, or in any matters whatsoever arising out of or in any way connected with any of the Loan Documents or the Debt.

29. Recovery of Sums Required To Be Paid. Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Guarantor existing at the time such earlier action was commenced.

30. Marshalling and Other Matters. Guarantor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, Guarantor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Guarantor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

31. Hazardous Materials. Guarantor represents, warrants and covenants that to the best of the Guarantor's knowledge and after due inquiry:

(i) That the Mortgaged Property and the proposed use thereof complies with all Environmental Laws, and the Guarantor agrees to comply with all such Environmental Laws as they may be amended from time to time.

(ii) That the Mortgaged Property is free of Environmental Liens and that there are no pending investigations, injunctions, clean up orders, consent decrees, litigation, enforcement proceedings or other contingent liabilities affecting the Mortgaged Property and the Guarantor agrees to immediately comply with all of the foregoing should they arise in the future.

(iii) That the Mortgaged Property is free of hazardous contamination or releases of Hazardous Materials (hereinafter defined) except those that are both (a) in compliance with Environmental Laws and with permits issued thereto, if any, and (b) either (i) in amounts not in excess of that necessary to operate the Mortgaged Property or (ii) fully disclosed to and approved by Lender in writing pursuant to an Environmental Report. Should any such hazardous contamination or release of Hazardous Materials be discovered in the future, the Guarantor agrees to immediately remove them or cure any violation in connection therewith so that the Mortgaged Property complies with all such laws and regulations as amended from time to time.

(iv) The Guarantor shall give immediate notice to the Lender of any Environmental Liens, pending investigations, injunctions, clean up orders, consent decrees, litigation, enforcement proceedings or other proceedings concerning the Mortgaged Property and the Guarantor shall indemnify and hold the Lender harmless from any loss or liability including reasonable attorney's fees, in connection with the foregoing.

(v) A violation of any of the provisions contained in this Paragraph 31 shall also be deemed to be an Event of Default under this Mortgage.

(vi) In the event that a violation of any Environmental Laws occurs the Lender shall have the option (but not the obligation) to cure the violation and the Guarantor agrees to reimburse all costs thereof together with interest at the Default Rate to the Lender and the cost of said cure shall be secured by this Mortgage. If this is a building loan mortgage the parties agree that unexpended funds may be used to pay the costs enumerated above.

(vii) The Guarantor hereby understands and agrees that compliance by the Guarantor with the covenants contained in this Paragraph 31 is of the highest priority to all who are or may be concerned with the Mortgaged Property, and the Guarantor agrees to strictly comply with the provisions hereof.

(viii) Within ten (10) days after an Environmental Lien is filed, Guarantor shall furnish a surety bond to the Lender in an amount satisfactory to the Lender to guarantee first lien status to the Lender. Failure to furnish such surety bond within said time shall, at the option of the Lender, constitute an Event of Default.

(ix) The obligations and liabilities of Guarantor under this paragraph 31 shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

For purposes of this Mortgage, "Environmental Laws" means any present and future federal, state and local laws, statutes, ordinances, rules, regulations, standards, policies and other government directives or requirements, as well as common law, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act and the Resource Conservation and Recovery Act that apply to Guarantor or the Property and relate to Hazardous Materials or protection of human health or the environment. "Environmental Lien(s)" means all Liens and other encumbrances imposed pursuant to any Environmental Law, whether due to any act or omission of Guarantor or any other Person. "Environmental Report" means the written reports resulting from the environmental site assessments of the Property delivered to Lender. "Hazardous Materials" shall mean petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives, flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material", "hazardous waste", "toxic substance", "toxic pollutant", "contaminant", or "pollutant" within the meaning of any Environmental Law. "Release" of any Hazardous Materials includes but is not limited to any release, deposit, discharge, emission, leaking, spilling, seeping, migrating, injecting, pumping, pouring, emptying, escaping, dumping, disposing or other movement of Hazardous Materials.

32. Asbestos. Guarantor represents and warrants that, to the best of Guarantor's knowledge, after due inquiry and investigation, that there is no asbestos or material containing asbestos ("Asbestos") on the Mortgaged Property, and that no owner or occupant nor any prior owner or occupant of the Mortgaged Property has received any notice or advice from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property. Guarantor covenants that the Mortgaged Property shall be kept free of Asbestos, and neither Guarantor nor any occupant of the Mortgaged Property shall install, or permit to be installed, Asbestos on the Mortgaged Property. Guarantor shall comply with, and ensure compliance by all occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations with respect to Asbestos, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations. In the event that Guarantor receives any notice or advice from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property, Guarantor shall immediately notify Lender. Guarantor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove

all Asbestos from the Mortgaged Property in accordance with all applicable federal, state and local laws, ordinances, rules and regulations. The obligations and liabilities of Guarantor under this paragraph 32 shall survive any entry of a judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

33. Indemnification. Guarantor shall protect, defend, indemnify and save harmless Lender from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Lender by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Guarantor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (1) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099 B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with the Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (g) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Materials on, from, or affecting the Mortgaged Property or any other property or the presence of Asbestos on the Mortgaged Property; (h) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials or Asbestos; (i) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials or Asbestos; or (j) any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Materials or Asbestos including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses. Any amounts payable to Lender by reason of the application of this paragraph 33 shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Lender until paid. The obligations and liabilities of Guarantor under this paragraph 33 shall survive any termination, satisfaction, assignment, entry of a judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

34. Notices. Any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed given when postmarked, addressed and mailed by first class mail to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Guarantor or Lender, as the case may be, shall in like manner designate in writing.

35. Authority. (a) Guarantor represents and warrants to Lender that Guarantor (and the undersigned representative of Guarantor, if any) has full power, authority and legal right to execute this Mortgage, and to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Guarantor's part to be performed.

(b) Guarantor represents and warrants that Guarantor is not a "foreign person" within the meaning of 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

36. Waiver of Notice. Guarantor shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Lender to Guarantor and except with respect to matters for which Lender is required by applicable law to give notice, and Guarantor hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Lender to Guarantor.

37. Remedies of Guarantor. In the event that a claim or adjudication is made that Lender has acted unreasonably or unreasonably delayed acting in any case where by law or under the Loan Documents, it has an obligation to act reasonably or promptly, Lender shall not be liable for any monetary damages, and Guarantor's remedies shall be limited to injunctive relief or declaratory judgment.

38. Sole Discretion of Lender. Wherever pursuant to this Mortgage, Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

39. Non Waiver. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Guarantor shall not be relieved of Guarantor's obligations hereunder by reason of (a) the failure of Lender to comply with any request of Borrower or Guarantor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of any of the other Loan Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or any of the other Loan Documents. Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its sole and absolute discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Mortgage. The rights of Lender under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

40. No Oral Change. This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Guarantor or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

41. Liability. If Guarantor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Mortgage shall be binding upon and inure to the benefit of Guarantor and Lender and their respective successors and assigns forever.

42. Inapplicable Provisions. If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

43. Headings, etc. The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

44. Counterparts. This Mortgage may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

45. Definitions. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "Guarantor" shall mean "each Guarantor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, and the words "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

46. Non-Residential Property. Guarantor represents that this Mortgage does NOT encumber real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having its own separate cooking facilities.

47. Lien Law Covenant. Pursuant to Section 13 of the Lien Law of the State of New York, Borrower shall receive the sums secured hereby and shall hold the right to receive such sums as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

48. Bank Account(s) of Guarantor. For so long as Lender is the owner and holder of the Note, Guarantor shall maintain its primary checking, money market, and savings account(s) with Lender in the name of Guarantor. Lender shall be authorized to automatically deduct and make payments of interest, principal, escrow, fees and any other expenses due the Lender under the Guaranty from said account(s).

49. First Mortgage. It is intended that this Mortgage shall constitute a First lien on the Mortgaged Property.

IN WITNESS WHEREOF, this Mortgage has been executed by Guarantor the day and year first above written.

KIWI LANDCO LLC

By: Michael Shabsels
Title: Manager

STATE OF NEW YORK

}ss:

COUNTY OF PUTNAM

On the 28th day of **August**, in the year **2013** before me, the undersigned personally appeared **Michael Shabsels** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

STEPHEN M SMITH
NOTARY PUBLIC STATE OF NEW YORK
PUTNAM COUNTY
LIC. #02SM6182509
COMM. EXP. 3/12/15

**EXHIBIT "A"**

**PARCEL I (SBL #77.17-1-32, 825 Union Valley Road):**

All that certain plot, piece or parcel of land, together with the buildings and improvements situated thereon, situate, lying and being in the Town of Carmel, County of Putnam and State of New York, known and designated as Lot 1 on a certain map entitled "Final Plat, Subdivision Prepared for Brad & Karla Brown and Camp Kiwi, Inc." which said map was dated September 6, 1992 and filed in the Putnam County Clerk's Office on June 11, 1993 as Map #2587.

**PARCEL II (SBL #77.13-1-41, 1-5 Blossom Lane):**

Also all that certain plot, piece or parcel of land, together with the buildings and improvements situated thereon, situate, lying and being in the Town of Carmel, County of Putnam and State of New York, bounded and described as follows:

Beginning at a point on the southerly line of Union Valley Road, said point marking the northwesterly corner of the herein described parcel and the northeasterly corner of the lands of Camp Kiwi, Inc. as described in Liber 453 page 106;

Thence southerly along the division line between the lands of Camp Kiwi, Inc. and the herein described parcel the following courses and distances:

South 1 degree 42' 30" West 186.23 feet to a fence post,

North 85 degrees 59' 00" West 37.05 feet to a point

South 1 degree 47' 20" West 417.11 feet to a point marking the southwesterly corner of the herein described parcel and the northwesterly corner of the lands of Camp Kiwi, Inc. as described in Liber 910 page 013;

Thence easterly along the division line between the lands of Camp Kiwi, Inc. and the herein described parcel North 81 degrees 50' 20" East 112.79 feet to a point on the westerly line of Blossom Road marking the southeasterly corner of the herein described parcel and the northeasterly corner of the lands of Camp Kiwi, Inc.;

Thence Northerly along the westerly line of said Blossom Road and passing through a concrete monument found set at 22.02 feet from said corner North 8 degrees 35' East 582.17 feet to a point at the intersection of the westerly line of said Blossom Road with the southerly line of Union Valley Road, said point is marking the northeasterly corner of the herein described parcel;

Thence westerly along the southerly line of said Union Valley Road North 87 degrees 03' West 71.93 feet and North 85 degrees 56' West 71.38 feet to the point or place of beginning.

Also an easement over and across all that certain plot, piece or parcel of land, situate in the Town of Carmel, Putnam County, New York together with the buildings and improvements situate thereon, being shown as the cross-hatched "Playing Field Use Easement (0.561± acres)" on survey map entitled "Final

Plat Subdivision Prepared for Brad & Karla Brown and Camp Kiwi, Inc." filed in the Office of the Putnam County Clerk on June 11,1993 as Filed Map No. 2857, said easement area being more particularly bounded and described as follows:

Beginning at a point which is distant 249.39 feet on a course of N 03° 44' 11" W 90.09 feet from an old cross cut with drill hole found on the north face of a wall being the south westerly corner; thence from said point of beginning the following five (5) courses and distances:

1. N 03° 44' 11" W along lands of Camp Kiwi 260 feet;

2. Continuing along said lands N 17° 00' 00" E 150 feet;

3. N 36° 23' 04" E 105 feet;

4. Thence through lands now of Brown S 05° 54' 46" 317.98 feet and S 18° 15' 13" W 180.20 feet to the point and place of beginning. Containing 0.56± acres.

Being a portion of the premises conveyed by Bradford Brown and Karla Brown to Karla Brown by deed dated June 8, 2006, recorded in the Putnam County Clerk's Office as Document Number 1502159 in Liber 1750 of Deeds page 38.

Said easement area shall be maintained by the Party of the Second Part in a neat and clean condition and may be used for any and all school sports, camp or recreational activities relating to the operation of the Camp, School or other facility related to the adjoining 12.887± acre parcel shown as Lot 1 on said Filed Map #2857 provided that said use shall be at the sole risk of the Party of the Second Part, its successors and/or assigns, and the Party of the First Part shall be held harmless by the Party of the Second Part from any claim or liability arising out of or in connection with such use or the condition of the easement premises unless arising out of the gross negligence or intentional and willful acts of the Party of the First Part. This shall be deemed a covenant running with the land and binding upon the heirs, legal representatives, successors and assigns of both parties to this Deed.

This grant confirms the playing field use easement set forth on the Filed Map and used by the Camp openly, notoriously, continuously and under claim of right since 1992 and shall act as the Declaration referred to on the Map.

**MODIFICATION AND EXTENSION AGREEMENT**

**THIS MODIFICATION AND EXTENSION AGREEMENT** (the "Agreement") is made the **15th** day of **July, 2024** by and between

**PCSB Bank f/k/a PUTNAM COUNTY SAVINGS BANK**, a New York Commercial Bank duly organized and existing under the laws of the State of New York, with its principal place of business located at 2651 Strang Blvd., Yorktown Heights, New York 10589 and is a wholly owned subsidiary of Brookline Bancorp. Inc. duly organized and existing pursuant to the laws of the State of Delaware and maintaining its principal place of business at 131 Clarendon Street, Boston, MA 02116 a mutual savings bank organized and existing under the laws of the State of New York,

hereinafter designated as the party of the first part,

and **KIWI LANDCO LLC**, a limited liability company organized and existing under the laws of the State of New York with an address of 825 Union Valley Road, Mahopac, New York 10541

hereinafter designated as the party of the second part,

**WITNESSETH**, that the party of the first part, the holder of the following mortgage(s) and of the note(s) secured thereby:

> Mortgage given by Kiwi Landco LLC to Putnam County Savings Bank n/k/a PCSB Bank in the principal sum of One Million Three Hundred Thousand and 00/100 ($1,300,0000.00) dated August 28, 2013 and recorded September 4, 2013 in the Office of the Clerk of Putnam County, New York as Liber 6284 at Page241.

now a valid first lien upon those certain premises situate Town of Carmel, County of Putnam and State of New York more particularly described in Schedule "A" annexed hereto (the "Premises"),

and on which note(s) there is now due the sum of **Six Hundred Forty-Six Thousand Thirty-Five and 00/100 Dollars ($646,035.01)**, with interest thereon, in consideration of one dollar paid by said party of the second part, and other valuable consideration, the receipt whereof is hereby acknowledged, has, pursuant to that certain Amended and Restated Mortgage Note of even date herewith executed by the party of the second part in favor of the party of the first part (the "Note"), extended the time of payment of the principal indebtedness secured by said note(s), and does hereby extend the maturity of said mortgage(s), so that each shall be due and payable on

**SEPTEMBER 1, 2033.**

**PROVIDED** that the party of the second part pay interest on the amount owing on the Note from the **8th** day of **July, 2024** forward at the rate provided for therein, and comply with all other terms of said Note and all terms of said mortgage, as hereby modified (hereinafter, the "Mortgage").

**AND** the party of the second part, in consideration of the above extension, does hereby assume, covenant and agree to pay said principal sum and interest as above set forth and to comply with all other terms of the Note and of the Mortgage.

**AND** the party of the second part further covenants with the party of the first part as follows:

1. That the party of the second part will pay the indebtedness as hereinbefore provided.
2. That the party of the second part will keep the buildings on the Premises insured against loss by fire for the benefit of the party of the first part; that he will assign and deliver the policies to the party of the first part; and that he will reimburse the party of the first part

for any premiums paid for insurance made by the party of the first part on default of the party of the second part in so insuring the buildings or in so assigning and delivering the policies.

3. That no building on the Premises shall be altered, removed or demolished without the consent of the party of the first part.

4. That the whole of said principal sum and interest shall become due at the option of the party of the first part : after default in the payment of any installment of principal or of interest for fifteen days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the party of the first part for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided. An assessment which has been made payable in installments at the application of the party of the second part or lessee of the Premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first installment becomes due or payable or a lien.

5. That the holder of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6. That the party of the second part will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the party of the first part may pay the same.

7. That the party of the second part within five days upon request in person or within ten days upon request by mall will furnish a written statement duly acknowledged of the amount due on this Mortgage and whether any offsets or defenses exist against the Mortgage debt.

8. That notice and demand or request may be in writing and may be served in person or by mail.

9. That the party of the second part warrants the title to the Premises.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the party of the second part, within thirty days after notice and demand, will keep the Premises insured against war risk and any other hazard that may reasonably be required by the party of the first part. All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said Premises, or so much thereof as may be affected by said Mortgage, may be sold in one parcel.

12. That if any action or proceeding be commenced (except an action to foreclose said Mortgage or to collect the debt secured thereby), to which action or proceeding the party of the first part is made a party, or in which it becomes necessary to defend or uphold the lien of said Mortgage, all sums paid by the party of the first part for the expense of any litigation to prosecute or defend the rights and lien created by said Mortgage (including reasonable counsel fees), shall be paid by the party of the second part, together with interest thereof at the rate of six per cent. per annum, and any such sum and the interest thereon shall be a lien on said Premises, prior to any right, or title to, interest in or claim upon said Premises attaching or accruing subsequent to the lien of said Mortgage, and shall be deemed to be secured by said Mortgage. In any action or proceeding to foreclose said Mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

13. That the party of the second part hereby assigns to the party of the first part the rents, issues and profits of the Premises as further security for the payment of said indebtedness, and the party of the second part grants to the party of the first part the right to enter upon the Premises for the purpose of collecting the same and to let the Premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until said Mortgage is paid. The party of the first part hereby waives the right to enter upon said Premises for the purpose of collecting said rents, issues and profits and the party of the second part shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in said Mortgage, and agrees

to use such rents, issues and profits in payment of principal and interest becoming due on said Mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said Premises, but such right of the party of the second part may be revoked by the party of the first part upon any default, on five days' written notice. The party of the second part will not, without the written consent of the party of the first part, receive or collect rent from any tenant of said Premises or any part thereof for a period of more than one month in advance, and in the event of any default under said Mortgage will pay monthly in advance to the party of the first part, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of said Premises or of such part thereof as may be in the possession of the party of the second part, and upon default in any such payment will vacate and surrender the possession of said Premises to the part of the first part or to such receiver, and in default thereof may be evicted by summary proceedings.

14. That the whole of said principal sum and the interest shall become due at the option of the party of the first part : (a) after failure to exhibit to the party of the first part, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or removal of any building on the Premises without the written consent of the party of the first part; or (c) after the assignment of the rents of the Premises or any part thereof without the written consent of the party of the first part; or (d) if the buildings on said Premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the Premises within three months from the issuance thereof; or (f) if on application of the party of the first part two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the Premises; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the party of the second part, in the event of the passage of any law deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or (i) if the party of the second part fails to keep, observe and perform any of the covenants, conditions or agreements contained in said Mortgage or in this agreement.

15. That the lien of said Mortgage is hereby extended so as to cover all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said Premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said Premises, together with any and all replacements thereof and additions thereto.

16. That the party of the second part does hereby assign to the party of the first part all awards heretofore and hereafter made to the party of the bond part for taking by eminent domain the whole or any part of said Premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the party of the first part, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquaintances therefore, and to apply the same toward the payment of the Mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said party of the second part hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the party of the first part, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

17. That the party of the second part is now the owner of the Premises upon which said Mortgage is a valid **first** lien for the amount above specified with interest thereon at the rate above set forth, and that there are no, defenses or offsets to said Mortgage or to the debt which it secures.

18. That the principal, interest and any and all other sums due under the Note shall be a lien on the Premises, secured by the Mortgage, and that when the terms and provisions contained in the Note or the Mortgage in any way conflict with the terms and provisions contained in this Agreement, the terms and provisions herein contained shall prevail. Except to the extent modified by this Agreement, the Note and Mortgage are hereby ratified and confirmed.

19. This Agreement may not be changed or terminated orally. The covenants contained in this Agreement shall run with the land and bind the party of the second part, the heirs, personal representatives, successors and assigns of the party of the second part and all subsequent owners, encumbrancers, tenants and sub-tenants of the Premises, and shall ensure to the benefit of the party of the first part, the personal representatives, successors and assigns of the party of the first part and all subsequent holders of the Note and the Mortgage. The word "party" shall be construed as if it reads "parties" whenever the sense of this agreement so requires.

20. **A Rider is attached hereto and forms a part hereof.**

**IN WITNESS WHEREOF**, this Agreement has been duly executed by the parties hereto the day and year first above written.

IN PRESENCE OF:

PCSB BANK

By: [signature]
Name: JUSTIN MANEEN
Title: Vice President, Commercial Lending

STATE OF NEW YORK

ss:

COUNTY OF WESTCHESTER

On the 24th day of **July** in the year **2024** before me, the undersigned, personally appeared **JUSTIN MANEEN** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Victoria Matsuyama
Notary Public

Victoria Matsuyama
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01MA6438674
Qualified in Putnam County
Commission Expires 08/22/2026

SIGNATURE PAGE FOR MODIFICATION AND EXTENSION AGREEMENT

KIWI LANDCO LLC

By: MICHAEL SHABSELS
Title: Manager

STATE OF NEW YORK
ss:
COUNTY OF New York

On the 15 day of **July,** in the year **2024** before me, the undersigned personally appeared **MICHAEL SHABSELS** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

GEORGE E ANTTILA
Notary Public - State of New York
No. 01AN6340144
Qualified in Kings County
My Commission Expires April 11, 2028

**MODIFICATION AND EXTENSION AGREEMENT**

Title No.:

PCSB BANK

with

KIWI LANDCO LLC

Section: 77/77
Block: 1/1
Lot: 32/41
County or Town:
Carmel / Putnam County

Record and Return By Mail To:

**RIDER TO**

**MODIFICATION AND EXTENSION AGREEMENT**

**PCSB BANK with KIWI LANDCO LLC**

**DATED: July 15, 2024**

This Rider supplements and amends that certain Modification and Extension Agreement ("MEA") dated **July 15, 2024** by and between **PCSB BANK**, a New York Commercial Bank duly organized and existing under the laws of the State of New York, with its principal place of business located at 2651 Strang Blvd., Yorktown Heights, New York 10589 and is a wholly owned subsidiary of Brookline Bancorp. Inc. duly organized and existing pursuant to the laws of the State of Delaware and maintaining its principal place of business at 131 Clarendon Street, Boston, MA 02116 (the "Lender") and **KIWI LANDCO LLC**, a limited liability company organized and existing under the laws of the State of New York with an address of 825 Union Valley Road, Mahopac, New York 10541 (the "Borrower"). In the event of a conflict between the terms of the MEA and this Rider, this Rider shall govern and prevail. The MEA and this Rider are hereinafter collectively referred to as the "Mortgage."

**WITNESSETH:**

To secure the payment of an indebtedness in the principal sum of **Six Hundred Forty-Six Thousand Thirty-Five and 01/100 Dollars ($646,035.01)** lawful money of the United States of America, to be paid with interest according to a certain Amended and Restated Mortgage Note dated the date hereof made by Borrower in favor of Lender (said note together with any amendments, extensions, renewals, modifications, consolidations, or replacements thereof collectively referred to as the "Note," and said indebtedness, interest and any and all other sums due or becoming due under the Loan Documents (as hereinafter defined) collectively referred to as the "Debt"), Borrower has mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated and by these presents does mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, assign and hypothecate unto Lender the real property described in Exhibit "A" attached hereto and made a part hereof (the "Premises"), and the buildings, structures, units, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (hereinafter collectively referred to as the "Improvements").

TOGETHER WITH: all right, title, interest and estate of Borrower now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements together with the following property, rights, interests and estates collectively called the "Mortgaged Property"):

(a) all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or, pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b) all machinery, equipment, fixtures (including but not limited to all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and

usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Premises and the Improvements (hereinafter collectively called the "Equipment"), and the right, title and interest of Borrower in and to any of the Equipment which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Mortgaged Property is located (the "Uniform Commercial Code"), superior in lien to the lien of this Mortgage;

(c) all awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Mortgaged Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of said right), or for a change of grade, or for any other injury to or decrease in the value of the Mortgaged Property;

(d) all leases and other agreements affecting the use, enjoyment or occupancy of the Premises and the Improvements heretofore or hereafter entered into (the "Leases") and all rents, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Premises and the Improvements (the "Rents") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e) all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(f) the right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceeding to protect the interest of Lender in the Mortgaged Property;

TO HAVE AND TO HOLD the above granted and described Mortgaged Property unto and to the use and benefit of Lender, and the successors and assigns of Lender, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay to Lender the Debt at the time and in the manner provided in the Loan Documents and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, these presents and the estate hereby granted shall cease, terminate and be void;

PROVIDED FURTHER, HOWEVER, notwithstanding anything contained herein to the contrary the maximum amount of indebtedness secured by this Mortgage at the time of execution hereof or which under any contingency may become secured by this Mortgage at any time hereafter is the unpaid principal balance of the Note, plus (a) any monies expended by Lender to preserve the Mortgaged Property and/or its interest therein including without limitation payments of taxes, charges, or assessments which may be imposed by law upon the Mortgaged Property; (b) any premiums on insurance policies covering the Mortgaged Property paid by Lender; (c) any expenses, including attorneys fees, incurred by Lender in upholding the lien of, or enforcing the terms of, this Mortgage, including but not limited to expenses of any litigation; (d) any amount, cost or charges to which the Lender becomes subrogated, upon payment, whether under recognized principles of law or equity, or under express statutory authority; (e) late fees, if any; and (f) accrued and unpaid interest chargeable under the Note, this Mortgage, and/or the Other Security Documents (hereinafter defined);

AND Borrower represents and warrants to and covenants and agrees with Lender as follows:

1. Payment of Debt and Incorporation of Covenants, Conditions, and Agreements. Borrower will pay the Debt at the time and in the manner provided in the Loan Documents. All the covenants, conditions and agreements contained in (a) the Note and (b) any and all other instruments other than the Note or this Mortgage now or hereafter executed by Borrower and/or others which wholly or partially evidence, secure or guaranty payment of the Note (the "Other Security Documents"), and (c) any and all other instruments now or hereafter executed by Borrower and/or others in favor of Lender pertaining to the Debt (such instruments, the Note, the Mortgage, and the Other Security Documents collectively called the "Loan Documents") are hereby made a part of this Mortgage to the same extent and with title same force as if fully set forth herein.

2. Warranty of Title. Borrower warrants that Borrower has good and marketable title to the Mortgaged Property and has the right to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, assign and hypothecate the same and that Borrower possesses an unencumbered fee estate in the Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the Title Insurance Policy issued by Kingston Abstract, Inc. as agent for Commonwealth Land title Insurance Company insuring the lien of this Mortgage. Borrower shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Lender against the claims of all persons whomsoever.

3. Insurance. (a) Borrower will keep the Mortgaged Property insured against loss or damage by fire, flood and such other hazards, risks and matters, including without limitation, business interruption, rental loss, public liability, and boiler damage and liability, as Lender may from time to time require in amounts required by Lender, and shall pay the premiums for such insurance (the "Insurance Premiums") as the same become due and payable. All policies of insurance (the "Policies") shall be issued by insurers acceptable to Lender and shall contain the standard New York Lender non-contribution clause naming Lender as the entity to which all payments made by such insurance company shall be paid. Borrower will assign and deliver the Policies to Lender. Not later than fifteen (15) days prior to the expiration date of each of the Policies, Borrower will deliver evidence satisfactory to Lender of the renewal of each of the Policies.

(b) If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, Borrower shall provide notice thereof to the insurer in accordance with the terms and conditions of the policies, and shall give prompt notice thereof to Lender. Sums paid to Lender by any insurer may be retained and applied by Lender, after deduction of Lender's reasonable costs and expenses of collection, toward payment of the Debt in such priority and proportions as Lender in its sole and absolute discretion shall deem proper or, at the discretion of Lender, either in whole or in part, to Borrower for such purposes as Lender shall designate. In the event of any conflict, inconsistency or ambiguity between the provisions of this paragraph 3 and the provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire, the provisions of this paragraph 3 shall control.

4. Payment of Taxes, etc. Borrower shall pay all taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "Taxes") and all ground rents, maintenance charges, other governmental impositions, and other charges, including without limitation vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "Other Charges") as same become due and payable. Borrower will deliver to Lender, promptly upon Lender's request, evidence satisfactory to Lender that the Taxes and Other Charges have been so paid or are not then delinquent. Borrower shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property, and shall promptly pay for all utility services provided to the Mortgaged Property. Borrower shall furnish to Lender receipts for the payment of the Taxes, Other Charges and said utility services prior to the date the same shall become delinquent.

5. Escrow Fund. Borrower shall, at the option of Lender, pay to Lender on the first day of each calendar month (a) one-twelfth of an amount which would be sufficient to pay the Taxes payable, or estimated by Lender to be payable, during the next ensuing twelve (12) months and (b) one-twelfth of an amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (said amounts in (a) and (b) above hereinafter called the "Escrow Fund"). The Escrow Fund and the payments of interest or principal or both, payable pursuant to the Note shall be added together and shall be paid as an aggregate sum by Borrower to Lender. Borrower hereby pledges to Lender any and all monies now or hereafter deposited in the Escrow Fund as additional security for the payment of the Debt. Lender will apply the Escrow Fund to payments of Taxes and Insurance Premiums required to be made by Borrower pursuant to paragraphs 3 and 4 hereof. If the amount of the Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to paragraphs 3 and 4 hereof, Lender shall, in its discretion, return any excess to Borrower or credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, Lender may deal with the person shown on the records of Lender to be the owner of the Mortgaged Property. If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above, Borrower shall promptly pay to Lender, upon demand, an amount which Lender shall estimate as sufficient to make up the deficiency. Upon the occurrence of an Event

of Default (hereinafter defined) Lender may apply any sums then present in the Escrow Fund to the payment of the following items in any order in its uncontrolled discretion:

(i) Taxes and Other Charges;

(ii) Insurance Premiums;

(iii) Interest on the unpaid principal balance of the Note;

(iv) Amortization of the unpaid principal balance of the Note;

(v) All other sums payable pursuant to the Note, this Mortgage and the Other Security Documents, including without limitation advances made by Lender pursuant to the terms of this Mortgage.

Until expended or applied as above provided, any amounts in the Escrow Fund shall constitute additional security for the Debt. The Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Lender. No earnings or interest on the Escrow Fund shall be payable to Borrower.

6. Condemnation. Borrower shall promptly give Lender notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Lender copies of any and all papers served in connection with such proceedings. Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Borrower shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and in this Mortgage and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Lender, after the deduction of expenses of collection, toward the reduction or discharge of the Debt. Lender shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided herein and in the Note. Lender may apply any such award or payment to the reduction or discharge of the Debt whether or not then due and payable. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Lender of such award or payment, Lender shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive said award or payment, or a portion thereof sufficient to pay the Debt.

7. Leases and Rents. (a) Lender is hereby granted and assigned by Borrower the right to enter the Mortgaged Property for the purpose of enforcing its interest in the Leases and the Rents, this Mortgage constituting a present, absolute assignment of the Leases and the Rents. Nevertheless, subject to the terms of this paragraph 7, Lender grants to Borrower a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums. Upon or at any time after an Event of Default, the license granted to Borrower herein may be revoked by Lender, and Lender may enter upon the Mortgaged Property, and collect, retain and apply the Rents toward payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

(b) All Leases shall be written on the standard form of lease which has been approved by Lender. Upon request, Borrower shall furnish Lender with executed copies of all Leases. No material changes may be made to the Lender-approved standard lease without the prior written consent of Lender. In addition, all renewals of Leases and all proposed leases shall provide for rental rates comparable to existing local fair market value rates and shall be arms-length transactions. All proposed leases shall be subject to the prior approval of the Lender. All Leases shall provide that they are subordinate to this Mortgage, that the lessee agrees to attorn to Lender in the event of foreclosure, a deed in lieu of foreclosure, or like event, and that the lessee shall be required to furnish tenant estoppel certificates upon request of Borrower or Lender. Borrower (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Lender of all notices of default which Borrower shall send or receive thereunder; (iii) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of lessor's

interest in the Leases or the Rents; (vi) shall not alter, modify or change the terms of the Leases without the prior written consent of Lender, or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Premises or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (vii) shall not alter, modify or change the terms of any guaranty of the Leases or cancel or terminate such guaranty without the prior written consent of Lender; (viii) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Lender; and (ix) shall execute and deliver at the request of Lender all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Lender shall from time to time require. Lender shall have all of the rights against lessees of the Mortgaged Property set forth in Section 291-f of the Real Property Law of New York.

8. Maintenance of Mortgaged Property. Borrower shall cause the Mortgaged Property to be maintained in a good and safe condition and repair. The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment) without the consent of Lender. Borrower shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof. Borrower shall promptly repair, replace or rebuild any part of the Mortgaged Property which may be destroyed by any casualty, or become damaged, worn or dilapidated or which may be affected by any proceeding of the character referred to in paragraph 6 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises. Borrower shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof. If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Borrower will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Lender.

9. Transfer or Encumbrance of the Mortgaged Property. (a) Borrower acknowledges that Lender has examined and relied on the creditworthiness of Borrower and experience of Borrower in owning and operating properties such as the Mortgaged Property in agreeing to make the loan secured hereby, and that Lender will continue to rely on Borrower's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt. Borrower acknowledges that Lender has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Borrower default in the repayment of the Debt, Lender can recover the Debt by a sale of the Mortgaged Property. Borrower shall not, without the prior written consent of Lender, sell, convey, alien, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof or permit the Mortgaged Property or any part thereof to be sold, conveyed, aliened, mortgaged, encumbered, pledged or otherwise transferred.

(b) A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this paragraph 9 shall be deemed to include (i) execution of an installment sales agreement whereby Borrower agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) execution of an agreement whereby Borrower leases all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder, or a sale, assignment or other transfer of, or the grant of a security interest in, Borrower's right, title and interest in and to any Leases or any Rents; (iii) if Borrower, any Guarantor (as hereinafter defined), or any general partner of Borrower or any Guarantor is a business entity, the voluntary or involuntary sale(s), conveyance(s) or transfer(s) of such business entity's stock or membership or partnership interests, as applicable (or the stock or membership or partnership interests of any business entity directly or indirectly controlling such business entity by operation of law or otherwise), or the creation or issuance of new stock or membership or partnership interests, as applicable, which results in an aggregate of more than ten percent (10%) of such business entity's stock or membership or partnership interests, as applicable, becoming vested in a party or parties who are not stockholders, members, or partners, as applicable, on the date hereof; and (iv) if Borrower, any Guarantor or any general partner of Borrower or any Guarantor is a business entity, the change, removal or resignation of a President, Chief Executive Officer, Managing Partner, or Managing Member, as applicable.

(c) Lender reserves the right to condition the consent required hereunder upon a modification of the terms hereof and/or upon assumption of this Mortgage by the proposed transferee, payment of a transfer fee, or such other conditions as Lender shall determine in its sole discretion to be in the interest of Lender. Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt

immediately due and payable upon Borrower's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property without Lender's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Lender has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

10. Estoppel Certificates. (a) After request by Lender, Borrower, within ten (10) days, shall furnish Lender with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) claimed offsets or defenses to the payment of the Debt, if any, and (vi) a certification that the Loan Documents are valid, legal and binding obligations and have not been modified or, if modified, giving particulars of such modification(s).

(b) Upon Lender's request, Borrower will, within ten (10) days, furnish Lender with estoppel certificates from any lessees under the Leases as required by their respective Leases.

11. Changes in the Laws Regarding Taxation. If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Mortgaged Property, Borrower will pay such tax, with interest and penalties thereon, if any. In the event Lender is advised by counsel chosen by it that the payment of such tax or interest and penalties by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then in any such event, Lender shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

12. No Credits on Account of the Debt. Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Mortgaged Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Mortgaged Property, or any part thereof, for real estate tax purposes by reason of this Mortgage or the Debt. In the event such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

13. Documentary Stamp. If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

14. Usury Laws. The Loan Documents are subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the Debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by applicable law to contract or agree to pay. If by the terms of any of the Loan Documents, Borrower is at any time required or obligated to pay interest on the Debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

15. Books and Records. Borrower shall keep adequate books and records of account in accordance with generally accepted accounting practices consistently applied, and make such books and records available to Lender for inspection at Lender's request.

16. Performance of Other Agreements. Borrower shall observe and perform each and every term to be observed or performed by Borrower pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

17. Further Acts, etc. Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the Mortgaged Property and rights hereby mortgaged, given, granted, bargained, sold, aliened, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or

which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. Borrower, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Mortgaged Property. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including without limitation such rights and remedies available to Lender pursuant to this paragraph 17.

18. Recording of Mortgage. Borrower upon the execution and delivery of this Mortgage and thereafter, from time to time, shall promptly cause this Mortgage, and the other Security Documents creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property, and each instrument of further assurance, to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Mortgaged Property. Borrower will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any consolidations, modifications, extensions, or mortgages supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, consolidations, modifications, extensions, or any mortgages supplemental hereto, any security instrument with respect to tile Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do. Borrower shall hold harmless and indemnify Lender, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

19. Submission of Financials and Reports. Submission of Financials and Reports. At all times while the Debt remains unpaid, Borrower shall furnish to the Lender annually (a) ) if the Borrower is a natural person, the personal financial statements and federal tax returns of Borrower, to be delivered to Lender within one hundred twenty (120) days of each calendar year end, provided, however, that if an extension for the time to file any such return has been filed, a copy of such extension shall be delivered to Lender within one hundred twenty (120) days of calendar year end with the tax return to follow no later than the expiration date of the extension; (b) if Borrower is not a natural person, the Balance Sheet, Profit & Loss Statement and corporate tax returns of Borrower, to be delivered to Lender within one hundred twenty (120) days of each fiscal year end, provided, however, that if an extension for the time to file any tax return has been filed, a copy of such extension shall be delivered to Lender within one hundred twenty (120) days of fiscal year end with the tax return to follow no later than the expiration date of such extension; (c) the personal financial statements and federal tax returns of any Guarantor who is a natural person, to be delivered to Lender within one hundred twenty (120) days of each calendar year end, provided, however, that if an extension for the time to file any such return has been filed, a copy of such extension shall be delivered to Lender within one hundred twenty (120) days of calendar year end with the tax return to follow no later than the expiration date of the extension (d) the Balance Sheet, Profit & Loss Statement and corporate tax returns of any corporate Guarantor, and any entity which controls, is controlled by, or is under common control with, Borrower (each an "Affiliated Entity") to be delivered to Lender within one hundred twenty (120) days of each fiscal year end, provided, however, that if an extension for the time to file any tax return has been filed, a copy of such extension shall be delivered to Lender within one hundred twenty (120) days of fiscal year end with the tax return to follow no later than the expiration date of such extension; (d) if Borrower is an entity, a certified statement signed by Borrower setting forth the names and addresses of the officers of the Borrower, the names and addresses of each member/ partner/shareholder (as applicable) of Borrower, and the percent ownership interest of each such member/ partner/shareholder, to be delivered to Lender within thirty(30) days of each calendar year end, (e) if Borrower is a trustee or trustees acting on behalf of a trust, a certified statement setting forth the names and addresses of all presently acting trustees, or successor trustees, as applicable, of said trust, and the names and addresses of all living beneficiaries of said trust, to be delivered to Lender within thirty(30) days of each calendar year end, (f) signed copies of all leases affecting the Mortgaged Property, and a certified rent roll signed and dated by Borrower detailing the names of all tenants of the Improvements, the portion of the Improvements occupied by each tenant, the rent and any other charges payable under each lease, and the term of each lease, to be delivered to Lender within one hundred twenty (120) days of each calendar year end, and (g) an annual operating statement of the Mortgaged Property detailing the total revenues received and total expenses incurred certified by Borrower and delivered to Lender

within one hundred twenty (120) days of each calendar year end. All financial statements and returns required hereunder shall be prepared by a certified public accountant reasonably acceptable to the Lender, in such detail as the Lender may reasonably require. Borrower shall further furnish to the Lender within ten (10) days of Lender's reasonable demand therefor, other information or records relating to (i) the operation of the Mortgaged Property, (ii) the financial affairs of the Borrower or Guarantor, and/or (iii) any other matter or thing Lender reasonably determines relevant to the repayment of, or security for, the Debt. Failure to comply with the terms of this paragraph will constitute a default under the terms and conditions of this Mortgage.

20. Events of Default. The Debt shall become immediately due and payable at the option of Lender upon any one or more of the following events ("Event of Default"):

(a) if any of the Taxes or Other Charges are not paid when due and payable;

(b) if the Policies are not kept in full force and effect, or if the Policies are not assigned and delivered to Lender upon request;

(c) if Borrower violates or does not comply with any of the provisions of paragraphs 7, 9, 31 or 32 hereof;

(d) if the Mortgaged Property becomes subject to any mechanic's, materialman's or other lien other than a lien for local real estate taxes and assessments not then due and payable and such lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) days;

(e) if Borrower fails to promptly cure any violations of laws or ordinances affecting, or which may be interpreted to affect, the Mortgaged Property;

(f) if Borrower or any Guarantor shall make an assignment for the benefit of creditors or if Borrower shall generally be unable to pay its debts as they become due;

(g) if a receiver, liquidator or trustee of Borrower or of any Guarantor shall be appointed; if Borrower or any Guarantor shall be adjudicated a bankrupt or insolvent; if Borrower shall be in default under any other mortgage or security agreement covering any part of the Mortgaged Property whether it be superior or junior in lien to this Mortgage; if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in, by, Borrower or any Guarantor; or if any proceeding for the dissolution or liquidation of Borrower or of any Guarantor shall be instituted, provided, however, that if any such appointment, adjudication, petition or proceeding is involuntary and not consented to by Borrower or such Guarantor, the same shall not constitute an Event of Default if discharged, stayed or dismissed within sixty (60) days;

(h) if any representation or warranty of Borrower, or of any person guaranteeing payment of the Debt or any portion thereof or performance by Borrower of any of the terms of any of the Loan Documents (such person being a "Guarantor"), made herein, in a guaranty of the Debt, or in any certificate, report, financial statement or other instrument or document furnished to Lender, shall have been false or misleading in any material respect when made;

(i) if for more than ten (10) days after notice from Lender, Borrower shall continue to be in default under any other term, covenant or condition of this Mortgage; or

(j) if Borrower shall be in default under any of the other Loan Documents, subject to any grace period and/or right to cure expressly set forth therein.

If Borrower consists of more than one Person, any reference to Borrower in this Paragraph shall be deemed to mean "Any one or more of the Persons collectively referred to as "Borrower" in this Mortgage."

21. Sale of Mortgaged Property. If this Mortgage is foreclosed, the Mortgaged Property, or any interest therein, may in the sole and absolute discretion of Lender, be sold in one or more parcels or in several interests or portions and in any order or manner.

22. Right to Cure Defaults. Upon the occurrence of any Event of Default or if Borrower fails to make any payment or to do any act as herein provided, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make or do the same in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Mortgaged Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this paragraph 22, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All such costs and expenses incurred by Lender in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate, for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender. All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Mortgage and the Other Security Documents and shall be immediately due and payable upon demand by Lender therefor.

23. Right of Entry. Lender and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times.

24. Appointment of Receiver. The holder of this Mortgage, upon the occurrence of an Event of Default or in any action to foreclose this Mortgage or upon the actual or threatened waste to any part of the Mortgaged Property, shall be entitled to the appointment of a receiver without notice and without regard to the value of the Mortgaged Property as security for the Debt, or the solvency or insolvency of any person liable for the payment of the Debt.

25. Reasonable Use and Occupancy. In addition to the rights which Lender may have herein, upon the occurrence of any Event of Default, Lender, at its option, may require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Mortgaged Property as may be occupied by Borrower or may require Borrower to vacate and surrender possession of the Mortgaged Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise.

26. Security Agreement. This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Mortgaged Property. Borrower by executing and delivering this Mortgage has granted and hereby grants to Lender, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this paragraph 26 the "Collateral"). If an Event of Default shall occur, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Lender, Borrower shall at its sole cost and expense assemble the Collateral and make it available to Lender at a convenient place acceptable to Lender. Borrower shall pay to Lender on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its sole and absolute discretion shall deem proper.

27. Actions and Proceedings. Lender has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its discretion, decides should be brought to

protect its interest in the Mortgaged Property. Lender shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

28. Waiver of Counterclaim. Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender, and waives trial by jury in any action or proceeding brought by either party hereto against the other or in any counterclaim asserted by Lender against Borrower, or in any matters whatsoever arising out of or in any way connected with any of the Loan Documents or the Debt.

29. Recovery of Sums Required To Be Paid. Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

30. Marshalling and Other Matters. Borrower hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

31. Hazardous Materials. Borrower represents, warrants and covenants that to the best of the Borrower's knowledge and after due inquiry:

(i) That the Mortgaged Property and the proposed use thereof complies with all Environmental Laws, and the Borrower agrees to comply with all such Environmental Laws as they may be amended from time to time.

(ii) That the Mortgaged Property is free of Environmental Liens and that there are no pending investigations, injunctions, clean-up orders, consent decrees, litigation, enforcement proceedings or other contingent liabilities affecting the Mortgaged Property and the Borrower agrees to immediately comply with all of the foregoing should they arise in the future.

(iii) That the Mortgaged Property is free of hazardous contamination or releases of Hazardous Materials (hereinafter defined) except those that are both (a) in compliance with Environmental Laws and with permits issued thereto, if any, and (b) either (i) in amounts not in excess of that necessary to operate the Mortgaged Property or (ii) fully disclosed to and approved by Lender in writing pursuant to an Environmental Report. Should any such hazardous contamination or release of Hazardous Materials be discovered in the future, the Borrower agrees to immediately remove them or cure any violation in connection therewith so that the Mortgaged Property complies with all such laws and regulations as amended from time to time.

(iv) The Borrower shall give immediate notice to the Lender of any Environmental Liens, pending investigations, injunctions, clean-up orders, consent decrees, litigation, enforcement proceedings or other proceedings concerning the Mortgaged Property and the Borrower shall indemnify and hold the Lender harmless from any loss or liability including reasonable attorney's fees, in connection with the foregoing.

(v) A violation of any of the provisions contained in this Paragraph 31 shall also be deemed to be an Event of Default under this Mortgage.

(vi) In the event that a violation of any Environmental Laws occurs the Lender shall have the option (but not the obligation) to cure the violation and the Borrower agrees to reimburse all costs thereof together with interest at the Default Rate to the Lender and the cost of said cure shall be secured by this

Mortgage. If this is a building loan mortgage the parties agree that unexpended funds may be used to pay the costs enumerated above.

(vii) The Borrower hereby understands and agrees that compliance by the Borrower with the covenants contained in this Paragraph 31 is of the highest priority to all who are or may be concerned with the Mortgaged Property, and the Borrower agrees to strictly comply with the provisions hereof.

(viii) Within ten (10) days after an Environmental Lien is filed, Borrower shall furnish a surety bond to the Lender in an amount satisfactory to the Lender to guarantee first lien status to the Lender. Failure to furnish such surety bond within said time shall, at the option of the Lender, constitute an Event of Default.

(ix) The obligations and liabilities of Borrower under this paragraph 31 shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

For purposes of this Mortgage, "Environmental Laws" means any present and future federal, state and local laws, statutes, ordinances, rules, regulations, standards, policies and other government directives or requirements, as well as common law, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act and the Resource Conservation and Recovery Act that apply to Borrower or the Property and relate to Hazardous Materials or protection of human health or the environment. "Environmental Lien(s)" means all Liens and other encumbrances imposed pursuant to any Environmental Law, whether due to any act or omission of Borrower or any other Person. "Environmental Report" means the written reports resulting from the environmental site assessments of the Property delivered to Lender. "Hazardous Materials" shall mean petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives, flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material", "hazardous waste", "toxic substance", "toxic pollutant", "contaminant", or "pollutant" within the meaning of any Environmental Law. "Release" of any Hazardous Materials includes but is not limited to any release, deposit, discharge, emission, leaking, spilling, seeping, migrating, injecting, pumping, pouring, emptying, escaping, dumping, disposing or other movement of Hazardous Materials.

32. Asbestos. Borrower represents and warrants that, to the best of Borrower's knowledge, after due inquiry and investigation, that there is no asbestos or material containing asbestos ("Asbestos") on the Mortgaged Property, and that no owner or occupant nor any prior owner or occupant of the Mortgaged Property has received any notice or advice from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property. Borrower covenants that the Mortgaged Property shall be kept free of Asbestos, and neither Borrower nor any occupant of the Mortgaged Property shall install, or permit to be installed, Asbestos on the Mortgaged Property. Borrower shall comply with, and ensure compliance by all occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations with respect to Asbestos, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations. In the event that Borrower receives any notice or advice from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property, Borrower shall immediately notify Lender. Borrower shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove all Asbestos from the Mortgaged Property in accordance with all applicable federal, state and local laws, ordinances, rules and regulations. The obligations and liabilities of Borrower under this paragraph 32 shall survive any entry of a judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

33. Indemnification. Borrower shall protect, defend, indemnify and save harmless Lender from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Lender by reason of (a) ownership of this Mortgage, the Mortgaged Property or

any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Borrower to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (1) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with the Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (g) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Materials on, from, or affecting the Mortgaged Property or any other property or the presence of Asbestos on the Mortgaged Property; (h) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials or Asbestos; (i) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials or Asbestos; or (j) any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Materials or Asbestos including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses. Any amounts payable to Lender by reason of the application of this paragraph 33 shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Lender until paid. The obligations and liabilities of Borrower under this paragraph 33 shall survive any termination, satisfaction, assignment, entry of a judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

34. Notices. Any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed given when postmarked, addressed and mailed by first class mail to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Borrower or Lender, as the case may be, shall in like manner designate in writing.

35. Authority. (a) Borrower represents and warrants to Lender that Borrower (and the undersigned representative of Borrower, if any) has full power, authority and legal right to execute this Mortgage, and to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Borrower's part to be performed.

(b) Borrower represents and warrants that Borrower is not a "foreign person" within the meaning of 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

36. Waiver of Notice. Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Lender is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Lender to Borrower.

37. Remedies of Borrower. In the event that a claim or adjudication is made that Lender has acted unreasonably or unreasonably delayed acting in any case where by law or under the Loan Documents, it has an obligation to act reasonably or promptly, Lender shall not be liable for any monetary damages, and Borrower's remedies shall be limited to injunctive relief or declaratory judgment.

38. Sole Discretion of Lender. Wherever pursuant to this Mortgage, Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

39. Non-Waiver. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (a) the failure of Lender to comply with any request

of Borrower or Guarantors to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of any of the other Loan Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or any of the other Loan Documents. Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its sole and absolute discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Mortgage. The rights of Lender under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

40. No Oral Change. This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

41. Liability. If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Mortgage shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

42. Inapplicable Provisions. If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

43. Headings, etc. The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

44. Counterparts. This Mortgage may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

45. Definitions. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, and the words "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

46. Lien Law Covenant. Pursuant to Section 13 of the Lien Law of the State of New York, Borrower shall receive the sums secured hereby and shall hold the right to receive such sums as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

47. Commercial Property. Borrower represents that this Mortgage DOES NOT encumber real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having its own separate cooking facilities.

48. First Mortgage. It is intended that this Mortgage shall constitute a first lien on the Mortgaged Property.