# Exhibit C

KIWI LANDCO LLC

(the "Guarantor")

to

PUTNAM COUNTY SAVINGS BANK

("Lender")

---

# COLLATERAL ASSIGNMENT OF LEASES AND RENTS

---

Dated: August 28, 2013

<u>Mortgaged Premises</u>

| | |
|---|---|
| Location: | 825 Union Valley Road and 1-5 Blossom Lane |
| Section: | 77 / 77 |
| Block: | 1 / 1 |
| Lot: | 32 / 41 |
| County: | Putnam / Putnam |

PREPARED BY:
Daniels, Porco and Lusardi, LLP
102 Gleneida Avenue
Carmel, New York 10512

| | |
|---|---|
| Attention: | Emily J. Westbrook, Esq. |
| File No.: | 35,028RE |
| Title No.: | 13-17892-PU, issued by Kingston Abstract, Inc. as Agent for Commonwealth Land Title Insurance Company |

THIS COLLATERALASSIGNMENT OF LEASES AND RENTS (the "Assignment") is made the 28th day of August, 2013, by **KIWI LANDCO LLC,** a limited liability company organized and existing under the laws of the State of New York with an address of 825 Union Valley Road, Mahopac, New York 10541 (the "Guarantor") in favor of **PUTNAM COUNTY SAVINGS BANK**, a mutual savings bank organized and existing under the laws of the State of New York with its principal place of business located at 2477 Route 6, Brewster, New York 10509 (the "Lender"). In consideration of the Loan (as hereinafter defined) and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor and Lender hereby agree as follows:

1. The Debt. This Assignment is made in connection with a loan in the principal sum of **One Million Three Hundred Thousand Dollars and No Cents ($1,300,000.00)** made by Lender to **KIWI OPERATINGCO LLC**, a limited liability company organized and existing under the laws of the State of New York with an address of 825 Union Valley Road, Mahopac, New York 10541 (the "Borrower") on the date hereof (the "Loan"), and is given for the purposes of securing (i) payment and performance of that certain Guaranty of Payment of even date herewith (the "Guaranty"), pursuant to which Guarantor guaranteed unconditional payment and performance of that certain Mortgage Note dated the date hereof made by Borrower to Lender in the principal sum of **One Million Three Hundred Thousand Dollars and No Cents ($1,300,000.00)** (said note, together with any modifications, extensions, renewals or consolidations thereof called the "Note"), and (ii) the payment and performance of the "Debt." The term "Debt," as used in this Assignment, means (i) all principal, interest, and any other sum of money now or hereafter owed by Borrower pursuant to the terms of the Note, (ii) any sum of money now or hereafter owed to Lender pursuant to the terms of that certain Collateral Mortgage, Security Agreement and Assignment of Leases and Rents dated the date hereof in the principal sum of One Million Three Hundred Thousand Dollars and No Cents ($1,300,000.00) given by Guarantor to Lender (together with any amendments, modifications, extensions, substitutions, or consolidations thereof, the "Mortgage"); and (iii) any sum of money now or hereafter owed by Borrower and/or third parties pursuant to the terms of any other instruments now or hereafter executed by Borrower and/or third parties in favor of Lender which evidence, pertain to, and/or wholly or partially secure or guarantee payment of, the Loan (collectively, the "Other Security Documents")(the Note, Mortgage, and Other Security Documents collectively called the "Loan Documents'); and (iv) any and all non-monetary obligations, covenants, and agreements contained in the Loan Documents. All representations, warranties, covenants, conditions and agreements contained in the Loan Documents as same may be modified, renewed, substituted or extended are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

2. Property Assigned. Guarantor, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby grants, transfers, and assigns to Lender its entire interest in and to:

a. All leases, subleases, licenses, franchises, concessions or grants of other possessory interests, tenancies, and any other agreements affecting the use, possession, occupancy or enjoyment of the that certain lot, parcel or piece of land more particularly described in Exhibit "A" annexed hereto (said lot, parcel or piece of land together with any and all buildings, structures, fixtures, and improvements now or hereafter located thereon called the "Mortgaged Property") or any part thereof, whether now or hereafter existing or entered into (including, without limitation, any use or occupancy arrangements created pursuant to Section 365(d) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or occupant of any portion of the Mortgaged Property) and all amendments, modifications, supplements, extensions or renewals thereof, whether now or hereafter existing and all amendments, modifications, supplements, extensions or renewals thereof (collectively, the "Leases.")

b. The right to enforce, whether at law or in equity or by any other means, all terms, covenants and provisions of the Leases.

c. All rents, issues, profits, royalties (including all oil and gas or other hydrocarbon substances), earnings, receipts, revenues, accounts, account receivable, security deposits and other deposits (subject to the prior right of the tenants making such deposits) and income, including, without limitation, fixed, additional and percentage rents, and all operating expense reimbursements, reimbursements for increases in taxes, sums paid by tenants to Guarantor to reimburse Guarantor for amounts originally paid or to be paid by Guarantor or any of Guarantor's affiliates for which such tenants were liable, as, or example, tenant improvements costs in excess of any work letter, lease takeover costs, moving expenses and tax and operating expense pass-throughs for which a tenant is solely liable, parking, maintenance, common area, tax, insurance, utility and service charges and contributions, proceeds of sale of electricity, gas, heating, air-conditioning and other utilities and services, deficiency rents and liquidated damages, and other benefits now or hereafter derived from any portion of the Mortgaged Property or otherwise due and payable or to become due and payable as a result of any ownership, use, possession, occupancy or operation thereof and/or services rendered, goods provided and business conducted in connection therewith (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or other occupants of any portion of the Mortgaged Property and all claims as a creditor in connection with any of the foregoing) and all cash or security deposits, advance rentals, and all deposits or payments of a similar nature relating thereto, now or hereafter,

including during any period of redemption, derived from the Mortgaged Property or any portion thereof and all proceeds from the cancellation, surrender, sale or other disposition of the Leases (collectively, the "Rents").

d. All of Guarantor's claims and rights (the "Bankruptcy Claims") to the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code

e. All of Guarantor's right, title and interest in and claims under any and all lease guaranties, letters of credit and any other credit support (individually, a "Lease Guaranty", and collectively, the "Lease Guaranties") given by any guarantor in connection with any of the Leases or leasing commissions (individually, a "Lease Guarantor", and collectively, the "Lease Guarantors") to Guarantor.

f. All proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

g. All rights, powers, privileges, options and other benefits of Guarantor as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation the immediate and continuing right to make claim for, receive, collect and receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Indebtedness), and to do all other things which Guarantor or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

h. The right, at Lender's option, upon revocation of the License, to enter upon the Mortgaged Property in person, by Lender or by court-appointed receiver, to collect the Rents.

i. Guarantor's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Paragraph 7 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Mortgaged Property.

j. Any and all other rights of Guarantor in and to the items set forth in subsections (a) through (i) above, and all amendments, modifications, replacements, renewals and substitutions thereof.

Such assignment being effective with respect to future Leases, Rents, Lease Guaranties, Bankruptcy Claims, proceeds, and other rights and powers enumerated above without further or supplemental assignment.

3. Representations and Warranties. Guarantor represents and warrants to Lender that (i) Guarantor has provided Lender with true copies of all presently existing Leases, including any and all modifications or amendments thereto, (ii) Guarantor is the sole owner of the entire lessor's interest in the Leases and Rents; (iii) the Leases are valid and enforceable; (iii) none of the Rents have been assigned or otherwise pledged or hypothecated; (iv) none of the Rents have

been collected for more than one (1) month in advance; (v) Guarantor has full power and authority to execute and deliver this Assignment; and any action, consent, or approval required in connection with the execution and delivery of this Assignment has been taken or obtained; (vi) the terms and performance of this Assignment do not conflict with any law, regulation, or judicial order applicable to the Guarantor or constitute a default under any agreement under which Guarantor is bound or to which Guarantor or the Mortgaged Property is subject; (vii) any and all premises demised under the Leases have been completed and the tenants under the Leases have accepted and taken possession of the same on a rent paying basis; and (viii) no offsets or defenses to the payment of any portion of the Rents exists or is claimed by any tenant.

4. Affirmative Covenants. Guarantor covenants with Lender that Guarantor (a) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (b) shall promptly send copies to Lender of all notices of default which Guarantor shall send or receive thereunder; (c) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed, short of termination thereof; (d) shall not collect any of the Rents more than one (1) month in advance; (e) shall not execute any other assignment, pledge or hypothecation of lessor's interest in the Leases or the Rents, except in connection with tertiary mortgage financing authorized under the terms of the Note; (f) shall not, without the prior written consent of Lender, except in the ordinary course of business, alter, modify or change the terms of the Leases or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Mortgaged Property or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (g) shall not, without the prior written consent of Lender, except in the ordinary course of business, alter, modify or change the terms of any guaranty of any of the Leases or cancel or terminate any such guaranty; (h) shall not consent to any assignment of or subletting under the Leases not in accordance with its terms, except in the ordinary course of business, without the prior written consent of Lender; (i) shall, at the request of Lender, execute and deliver all such further assurances, confirmations and assignments in connection with the Leases, Rents, or Mortgaged Property as Lender shall from time to time require; and (j) shall not enter into any new lease of the Mortgaged Property except on a form of lease approved by Lender.

Guarantor further covenants with Lender that, in the event that Guarantor and any tenant under any of the Leases shall enter into an early termination agreement wherein Guarantor receives a termination payment or should Guarantor receive a lump sum payment by reason of a settlement or judgment against a tenant, Guarantor hereby acknowledges that such payment is subject to the Lender's lien and further subject to the terms and conditions of this Assignment. Lender may, at its option, elect to require Guarantor to pay such amount to Lender, to be applied in reduction of the Debt.

Guarantor further covenants with Lender that (a) all Leases shall be written on a form of lease which has been approved by Lender; (b) upon request, Guarantor shall furnish Lender with executed copies of all then-existing Leases; (c) no material changes may be made to the Lender-approved form of lease without the prior written consent of Lender; (d) all renewals of Leases and all proposed leases shall provide for rental rates comparable to existing local market rates and shall be arms length transactions; (e) all proposed leases shall be subject to the prior approval of the Lender; and (f) all Leases shall provide that they are subordinate to the Mortgage and that the lessees must, at the option of Lender, attorn to Lender.

5. Present Assignment. Guarantor intends that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Paragraph 5 and Paragraph 7 hereof, Lender grants to Guarantor a revocable license to collect and receive the Rents, as well as other sums due under the Lease Guaranties (the "License"). Guarantor shall hold the Rents, as well as all sums received pursuant to any Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.

6. Notice to Lessees. Guarantor hereby authorizes and directs the lessees named in the Leases or any other future lessees or occupants of the Mortgaged Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease Guaranties upon receipt from Lender of written notice to the effect that Lender is then the holder of this Assignment and that an Event of Default (as defined in the Note) exists, and to continue so to do until otherwise notified by Lender.

7. Remedies of Lender. Upon the occurrence of an Event of Default (as defined in the Note), Lender may, at its option, without waiving such Event of Default, revoke the License, either in its entirety or with respect to any specified portion of the Rents and Lender shall immediately be entitled to possession of all Rents and sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Mortgaged Property. In addition, Lender may, at its option, without waiving such Event of Default, without regard to the adequacy of the security for the Indebtedness, either in person or by Lender, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Guarantor and its agents and servants from the Mortgaged Property, without liability for trespass, damages or otherwise and exclude Guarantor and its agents or servants wholly therefrom, and take possession of the Mortgaged Property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Mortgaged Property on such terms and for such period of time as Lender may deem proper and either with or without taking possession of the Mortgaged Property in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Lease Guaranties, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as Lender may deem proper and may apply the Rents and sums received pursuant to any Lease

Guaranties to the payment of the following in such order and proportion as Lender in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Mortgaged Property, including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may reasonably deem necessary or desirable and all reasonable expenses of operating and maintaining the Mortgaged Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Lender may reasonably deem necessary or desirable, and the reasonable cost of all alterations, renovations, repairs or replacements, and all expenses incidental to taking and retaining possession of the Mortgaged Property; and (b) the Indebtedness, together with all costs and reasonable attorneys' fees. In addition, upon the occurrence of an Event of Default, Lender, at its option, may (1) complete any construction on the Mortgaged Property in such manner and form as Lender deems advisable, (2) exercise all rights and powers of Guarantor, including, without limitation, the right to negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Mortgaged Property and all sums due under any Lease Guaranties, (3) either require Guarantor to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Mortgaged Property as may be in possession of Guarantor or (4) require Guarantor to vacate and surrender possession of the Mortgaged Property to Lender or to such receiver and, in default thereof, Guarantor may be evicted by summary proceedings or otherwise.

8. Other Remedies. Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder shall be deemed to be a waiver by Lender of its rights and remedies under the Note, the Mortgage, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Debt and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Guarantor hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Guarantor under this Assignment, the Mortgage, the Note, the other Loan Documents or otherwise with respect to the Loan in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Mortgage, the Note, or any of the other Loan Documents (provided, however, that the foregoing shall not be deemed a waiver of Guarantor's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Guarantor's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

9. Remedies of Guarantor. In the event that a claim or adjudication is made that Lender has acted unreasonably or unreasonably delayed acting in any case where by law or under the Loan Documents it has an obligation to act reasonably or promptly, Lender shall not be liable for any monetary damages, and Guarantor's remedies shall be limited to injunctive relief or declaratory judgment.

10. Other Security. Lender may take or release other security for the payment of the Indebtedness, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Indebtedness without prejudice to any of its rights under this Assignment.

11. Bankruptcy, (a) Upon or at any time after the occurrence of an Event of Default, Lender shall have the right to proceed in its own name or in the name of Guarantor in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Guarantor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code, (b) If there shall be filed by or against Guarantor a petition under the Bankruptcy Code, and Guarantor, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Guarantor shall give Lender not less than ten (10) days' prior notice of the date on which Guarantor shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Guarantor within such ten-day period a notice stating that (i) Lender demands that Guarantor assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Guarantor the notice described in the preceding sentence, Guarantor shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

12. No Liability of Lender. This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender. Lender shall not be liable for any loss sustained by Guarantor resulting from Lender's failure to let the Mortgaged Property after an Event of Default or from any other act or omission of Lender in managing the Mortgaged Property after an Event of Default unless such loss is caused by the willful misconduct or bad faith of Lender. Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment, and Guarantor shall indemnify Lender for, and hold Lender harmless from, any and all liability, loss or damage that may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands that may be asserted against Lender by reason of any

alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties. Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Mortgage and the Other Security Documents and Guarantor shall reimburse Lender therefor immediately upon demand and upon the failure of Guarantor so to do, Lender may, at its option, declare all sums secured by this Assignment and by the Mortgage and the other Loan Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Mortgaged Property by the tenants or any other parties, or for any dangerous or defective condition of the Mortgaged Property including, without limitation, the presence of any Hazardous Materials (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

13. No Mortgagee in Possession. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Lender. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Guarantor.

14. Further Assurances. Guarantor will, at the cost of Guarantor, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter so to be, or which Guarantor may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Guarantor to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

15. Termination of Assignment. Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Mortgage duly executed by Lender, this Assignment shall become and be void and of no effect. Notwithstanding the foregoing, in the event the Note and Mortgage are assigned to a third party purchaser of the Loan, Lender shall either file a termination of this Assignment or, at the request of such purchaser, execute a no-recourse assignment of this Assignment in favor of said purchaser. The costs of preparing such termination or assignment, as the case may be, and the reasonable attorneys fees incurred by

Lender in connection with such termination or assignment shall be borne by the Borrower and/or the Guarantor.

16. Non Waiver. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Guarantor shall not be relieved of Guarantor's obligations hereunder by reason of (i) failure of Lender to comply with any request of Guarantor or any other party to take any action to enforce any of the provisions hereof or any of the Loan Documents, (ii) the release regardless of consideration, of the whole or any part of the Mortgaged Property, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Mortgage or the other Loan Documents. Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment. The rights of Lender under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

17. No Oral Change. This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Guarantor or Lender, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

18. Sole Discretion of Lender. Wherever pursuant to this Mortgage, Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

19. Guarantor Liability Joint and Several. If Guarantor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Mortgage shall be binding upon and inure to the benefit of Guarantor and Lender and their respective successors and assigns forever.

20. Conflict with Mortgage. I case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms which provide greater rights or security to the Lender shall prevail.

21. Section 291-f Agreement. This Assignment is intended to be, and shall operate as, an agreement described in Section 291-f of the Real Mortgaged Property Law of the State of New York and shall be entitled to the benefits afforded thereby.

22. Certain Definitions. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Guarantor " shall mean "each Guarantor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Mortgage, together with any extensions, renewals, modifications, or consolidations thereof," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein; and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorney, paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Mortgaged Property, the Leases and the Rents and enforcing its rights hereunder. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

23. Governing Law. This Assignment was negotiated in the state of New York, and made by Guarantor and accepted by lender in the state of New York, and the proceeds of the note were disbursed from the state of New York, which state the parties agree has a substantial relationship to the parties and to the underlying transaction embodied hereby, and in all respects, including, without limiting the generality of the foregoing, matters of construction, validity and performance, this assignment and the obligations arising hereunder shall be governed by, and construed in accordance with, the laws of the state of New York applicable to contracts made and performed in such state (without regard to principles of conflict laws) and any applicable law of the United states of America, except that at all times the provisions for the creation, perfection, and enforcement of the interests created pursuant hereto and pursuant to the other loan documents with respect to the property shall be governed by and construed according to the law of the state in which the property is located, it being understood that, to the fullest extent permitted by the law of such state, the law of the state of New York shall govern the construction, validity and enforceability of all loan documents and all of the obligations arising hereunder or thereunder. To the fullest extent permitted by law, Guarantor hereby unconditionally and irrevocably waives any claim to assert that the law of any other jurisdiction governs this assignment and the note, and this assignment and the note shall be governed by and construed in accordance with the laws of the state of New York pursuant to section 5-1401 of the New York General Obligations Law. Any legal suit, action or proceeding against lender or Guarantor arising out of or relating to this assignment may at lender's option be instituted in any federal or state court in the county of Putnam, state of New York, pursuant to section 5-1402 of the New York general obligations law, and Guarantor waives any objections that it may now or hereafter have based on venue and/or forum non conveniens of any such suit, action or

proceeding, and Guarantor hereby irrevocably submits to the jurisdiction of any such court in any suit, action or proceeding.

24. Waiver of Trial by Jury. GUARANTOR AND LENDER EACH HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, THE GUARANTY, OR ANY OF THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

25. Inapplicable Provisions. If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

26. Headings, etc. The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

27. Bind and Inure. This Assignment shall be binding upon Guarantor, its heirs, executors, administrators, successors and assigns and any subsequent owner of the Mortgaged Property, and shall inure to the benefit of Lender, its successors and assigns.

28. Notices. All notices or other written communications hereunder shall be delivered in accordance with the terms of the Mortgage.

29. Counterparts. This Assignment may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, Guarantor has executed this instrument the day and year first above written.

KIWI LANDCO LLC

By: Michael Shabsels
Title: Manager

STATE OF NEW YORK

}ss:

COUNTY OF PUTNAM

On the **28th** day of **August,** in the year **2013** before me, the undersigned personally appeared **Michael Shabsels** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

STEPHEN M SMITH
NOTARY PUBLIC STATE OF NEW YORK
PUTNAM COUNTY
LIC. #02SM6162509
COMM. EXP. 3/12/15

**Exhibit "A"**
**The Mortgaged Property**

**PARCEL I (SBL #77.17-1-32, 825 Union Valley Road):**

All that certain plot, piece or parcel of land, together with the buildings and improvements situated thereon, situate, lying and being in the Town of Carmel, County of Putnam and State of New York, known and designated as Lot 1 on a certain map entitled "Final Plat, Subdivision Prepared for Brad & Karla Brown and Camp Kiwi, Inc." which said map was dated September 6, 1992 and filed in the Putnam County Clerk's Office on June 11, 1993 as Map #2587.

**PARCEL II (SBL #77.13-1-41, 1-5 Blossom Lane):**

Also all that certain plot, piece or parcel of land, together with the buildings and improvements situated thereon, situate, lying and being in the Town of Carmel, County of Putnam and State of New York, bounded and described as follows:

Beginning at a point on the southerly line of Union Valley Road, said point marking the northwesterly corner of the herein described parcel and the northeasterly corner of the lands of Camp Kiwi, Inc. as described in Liber 453 page 106;

Thence southerly along the division line between the lands of Camp Kiwi, Inc. and the herein described parcel the following courses and distances:

South 1 degree 42' 30" West 186.23 feet to a fence post,

North 85 degrees 59' 00" West 37.05 feet to a point

South 1 degree 47' 20" West 417.11 feet to a point marking the southwesterly corner of the herein described parcel and the northwesterly corner of the lands of Camp Kiwi, Inc. as described in Liber 910 page 013;

Thence easterly along the division line between the lands of Camp Kiwi, Inc. and the herein described parcel North 81 degrees 50' 20" East 112.79 feet to a point on the westerly line of Blossom Road marking the southeasterly corner of the herein described parcel and the northeasterly corner of the lands of Camp Kiwi, Inc.;

Thence Northerly along the westerly line of said Blossom Road and passing through a concrete monument found set at 22.02 feet from said corner North 8 degrees 35' East 582.17 feet to a point at the intersection of the westerly line of said Blossom Road with the southerly line of Union Valley Road, said point is marking the northeasterly corner of the herein described parcel;

Thence westerly along the southerly line of said Union Valley Road North 87 degrees 03' West 71.93 feet and North 85 degrees 56' West 71.38 feet to the point or place of beginning.

Also an easement over and across all that certain plot, piece or parcel of land, situate in the Town of Carmel, Putnam County, New York together with the buildings and improvements situate thereon, being shown as the cross-hatched "Playing Field Use Easement (0.561± acres)" on survey map entitled "Final

Plat Subdivision Prepared for Brad & Karla Brown and Camp Kiwi, Inc." filed in the Office of the Putnam County Clerk on June 11,1993 as Filed Map No. 2857, said easement area being more particularly bounded and described as follows:

Beginning at a point which is distant 249.39 feet on a course of N 03° 44' 11" W 90.09 feet from an old cross cut with drill hole found on the north face of a wall being the south westerly corner; thence from said point of beginning the following five (5) courses and distances:

1. N 03° 44' 11" W along lands of Camp Kiwi 260 feet;

2. Continuing along said lands N 17° 00' 00" E 150 feet;

3. N 36° 23' 04" E 105 feet;

4. Thence through lands now of Brown S 05° 54' 46" 317.98 feet and S 18° 15' 13" W 180.20 feet to the point and place of beginning. Containing 0.56± acres.

Being a portion of the premises conveyed by Bradford Brown and Karla Brown to Karla Brown by deed dated June 8, 2006, recorded in the Putnam County Clerk's Office as Document Number 1502159 in Liber 1750 of Deeds page 38.

Said easement area shall be maintained by the Party of the Second Part in a neat and clean condition and may be used for any and all school sports, camp or recreational activities relating to the operation of the Camp, School or other facility related to the adjoining 12.887± acre parcel shown as Lot 1 on said Filed Map #2857 provided that said use shall be at the sole risk of the Party of the Second Part, its successors and/or assigns, and the Party of the First Part shall be held harmless by the Party of the Second Part from any claim or liability arising out of or in connection with such use or the condition of the easement premises unless arising out of the gross negligence or intentional and willful acts of the Party of the First Part. This shall be deemed a covenant running with the land and binding upon the heirs, legal representatives, successors and assigns of both parties to this Deed.

This grant confirms the playing field use easement set forth on the Filed Map and used by the Camp openly, notoriously, continuously and under claim of right since 1992 and shall act as the Declaration referred to on the Map.

KIWI LANDCO LLC

(the "Guarantor")

to

PCSB BANK

("Lender")

---

**COLLATERAL ASSIGNMENT OF LEASES AND RENTS**

---

Dated: July 15, 2024

<u>Mortgaged Premises</u>

Location: 825 Union Valley Road and 1-5 Blossom Lane
Section: 77 / 77
Block: 1 / 1
Lot: 32 / 41
County: Putnam / Putnam

PREPARED BY:
Daniels, Porco and Lusardi, LLP
102 Gleneida Avenue
Carmel, New York 10512

Attention: David E. Daniels, Esq.
File No.: 35,028RE
Title No.: 13-17892-PU, issued by Kingston Abstract, Inc.
as Agent for Commonwealth Land Title Insurance Company

THIS COLLATERAL ASSIGNMENT OF LEASES AND RENTS (the "Assignment") is made the 15th day of **July, 2024**, by **KIWI LANDCO LLC,** a limited liability company organized and existing under the laws of the State of New York with an address of 825 Union Valley Road, Mahopac, New York 10541 (the "Guarantor") in favor of **PCSB BANK** New York Commercial Bank duly organized and existing under the laws of the State of New York, with its principal place of business located at 2651 Strang Blvd., Yorktown Heights, New York 10589 and is a wholly owned subsidiary of Brookline Bancorp. Inc. duly organized and existing pursuant to the laws of the State of Delaware and maintaining its principal place of business at 131 Clarendon Street, Boston, MA 02116 a mutual savings bank organized and existing under the laws of the State of New York, (the "Lender"). In consideration of the Loan (as hereinafter defined) and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor and Lender hereby agree as follows:

1. The Debt. This Assignment is made in connection with a loan in the principal sum of **Six Hundred Forty-Six Thousand Thirty-Five and 01/100 Dollars ($646,035.01)** made by Lender to **KIWI OPERATINGCO LLC**, a limited liability company organized and existing under the laws of the State of New York with an address of 825 Union Valley Road, Mahopac, New York 10541 (the "Borrower") on the date hereof (the "Loan"), and is given for the purposes of securing (i) payment and performance of that certain Guaranty of Payment of even date herewith (the "Guaranty"), pursuant to which Guarantor guaranteed unconditional payment and performance of that certain Amended and Restated Mortgage Note dated the date hereof made by Borrower to Lender in the principal sum of **Six Hundred Forty-Six Thousand Thirty-Five and 01/100 Dollars ($646,035.01)** (said note, together with any modifications, extensions, renewals or consolidations thereof called the "Note"), and (ii) the payment and performance of the "Debt." The term "Debt," as used in this Assignment, means (i) all principal, interest, and any other sum of money now or hereafter owed by Borrower pursuant to the terms of the Note, (ii) any sum of money now or hereafter owed to Lender pursuant to the terms of that certain Collateral Mortgage, Security Agreement and Assignment of Leases and Rents dated the date hereof in the principal sum of **Six Hundred Forty-Six Thousand Thirty-Five and 01/100 Dollars ($646,035.01)** given by Guarantor to Lender (together with any amendments, modifications, extensions, substitutions, or consolidations thereof, the "Mortgage"); and (iii) any sum of money now or hereafter owed by Borrower and/or third parties pursuant to the terms of any other instruments now or hereafter executed by Borrower and/or third parties in favor of Lender which evidence, pertain to, and/or wholly or partially secure or guarantee payment of, the Loan (collectively, the "Other Security Documents")(the Note, Mortgage, and Other Security Documents collectively called the "Loan Documents'); and (iv) any and all non-monetary obligations, covenants, and agreements contained in the Loan Documents. All representations, warranties, covenants, conditions and agreements contained in the Loan Documents as same may be modified, renewed, substituted or extended are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

2. Property Assigned. Guarantor, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby grants, transfers, and assigns to Lender its entire interest in and to:

a. All leases, subleases, licenses, franchises, concessions or grants of other possessory interests, tenancies, and any other agreements affecting the use, possession, occupancy or enjoyment of the that certain lot, parcel or piece of land more particularly described in Exhibit "A" annexed hereto (said lot, parcel or piece of land together with any and all buildings, structures, fixtures, and improvements now or hereafter located thereon called the "Mortgaged Property") or any part thereof, whether now or hereafter existing or entered into (including, without limitation, any use or occupancy arrangements created pursuant to Section 365(d) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or occupant of any portion of the Mortgaged Property) and all amendments, modifications, supplements, extensions or renewals thereof, whether now or hereafter existing and all amendments, modifications, supplements, extensions or renewals thereof (collectively, the "Leases.")

b. The right to enforce, whether at law or in equity or by any other means, all terms, covenants and provisions of the Leases.

c. All rents, issues, profits, royalties (including all oil and gas or other hydrocarbon substances), earnings, receipts, revenues, accounts, account receivable, security deposits and other deposits (subject to the prior right of the tenants making such deposits) and income, including, without limitation, fixed, additional and percentage rents, and all operating expense reimbursements, reimbursements for increases in taxes, sums paid by tenants to Guarantor to reimburse Guarantor for amounts originally paid or to be paid by Guarantor or any of Guarantor's affiliates for which such tenants were liable, as, or example, tenant improvements costs in excess of any work letter, lease takeover costs, moving expenses and tax and operating expense pass-throughs for which a tenant is solely liable, parking, maintenance, common area, tax, insurance, utility and service charges and contributions, proceeds of sale of electricity, gas, heating, air-conditioning and other utilities and services, deficiency rents and liquidated damages, and other benefits now or hereafter derived from any portion of the Mortgaged Property or otherwise due and payable or to become due and payable as a result of any ownership, use, possession, occupancy or operation thereof and/or services rendered, goods provided and business conducted in connection therewith (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or other occupants of any portion of the Mortgaged Property and all claims as a creditor in connection with any of the foregoing) and all cash or security deposits, advance rentals, and all deposits or payments of a similar nature relating thereto, now or hereafter, including during any period of

redemption, derived from the Mortgaged Property or any portion thereof and all proceeds from the cancellation, surrender, sale or other disposition of the Leases (collectively, the "Rents").

d. All of Guarantor's claims and rights (the "Bankruptcy Claims") to the payment of damages arising from any rejection by a lessee of any Lease under the Bankruptcy Code

e. All of Guarantor's right, title and interest in and claims under any and all lease guaranties, letters of credit and any other credit support (individually, a "Lease Guaranty", and collectively, the "Lease Guaranties") given by any guarantor in connection with any of the Leases or leasing commissions (individually, a "Lease Guarantor", and collectively, the "Lease Guarantors") to Guarantor.

f. All proceeds from the sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

g. All rights, powers, privileges, options and other benefits of Guarantor as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation the immediate and continuing right to make claim for, receive, collect and receipt for all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Indebtedness), and to do all other things which Guarantor or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

h. The right, at Lender's option, upon revocation of the License, to enter upon the Mortgaged Property in person, by Lender or by court-appointed receiver, to collect the Rents.

i. Guarantor's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Paragraph 7 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Mortgaged Property.

j. Any and all other rights of Guarantor in and to the items set forth in subsections (a) through (i) above, and all amendments, modifications, replacements, renewals and substitutions thereof.

Such assignment being effective with respect to future Leases, Rents, Lease Guaranties, Bankruptcy Claims, proceeds, and other rights and powers enumerated above without further or supplemental assignment.

3. Representations and Warranties. Guarantor represents and warrants to Lender that (i) Guarantor has provided Lender with true copies of all presently existing Leases, including any and all modifications or amendments thereto, (ii) Guarantor is the sole owner of the entire lessor's interest in the Leases and Rents; (iii) the Leases are valid and enforceable; (iii) none of the Rents have been assigned or otherwise pledged or hypothecated; (iv) none of the Rents have been collected for more than one (1) month in advance; (v) Guarantor has full power and authority to execute and deliver this Assignment; and any action, consent, or approval required in connection

with the execution and delivery of this Assignment has been taken or obtained; (vi) the terms and performance of this Assignment do not conflict with any law, regulation, or judicial order applicable to the Guarantor or constitute a default under any agreement under which Guarantor is bound or to which Guarantor or the Mortgaged Property is subject; (vii) any and all premises demised under the Leases have been completed and the tenants under the Leases have accepted and taken possession of the same on a rent paying basis; and (viii) no offsets or defenses to the payment of any portion of the Rents exists or is claimed by any tenant.

4. Affirmative Covenants. Guarantor covenants with Lender that Guarantor (a) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (b) shall promptly send copies to Lender of all notices of default which Guarantor shall send or receive thereunder; (c) shall enforce all of the terms, covenants and conditions contained in the Leases upon the part of the lessees thereunder to be observed or performed, short of termination thereof; (d) shall not collect any of the Rents more than one (1) month in advance; (e) shall not execute any other assignment, pledge or hypothecation of lessor's interest in the Leases or the Rents, except in connection with tertiary mortgage financing authorized under the terms of the Note; (f) shall not, without the prior written consent of Lender, except in the ordinary course of business, alter, modify or change the terms of the Leases or cancel or terminate the Leases or accept a surrender thereof or convey or transfer or suffer or permit a conveyance or transfer of the Mortgaged Property or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, lessees thereunder; (g) shall not, without the prior written consent of Lender, except in the ordinary course of business, alter, modify or change the terms of any guaranty of any of the Leases or cancel or terminate any such guaranty; (h) shall not consent to any assignment of or subletting under the Leases not in accordance with its terms, except in the ordinary course of business, without the prior written consent of Lender; (i) shall, at the request of Lender, execute and deliver all such further assurances, confirmations and assignments in connection with the Leases, Rents, or Mortgaged Property as Lender shall from time to time require; and (j) shall not enter into any new lease of the Mortgaged Property except on a form of lease approved by Lender.

Guarantor further covenants with Lender that, in the event that Guarantor and any tenant under any of the Leases shall enter into an early termination agreement wherein Guarantor receives a termination payment or should Guarantor receive a lump sum payment by reason of a settlement or judgment against a tenant, Guarantor hereby acknowledges that such payment is subject to the Lender's lien and further subject to the terms and conditions of this Assignment. Lender may, at its option, elect to require Guarantor to pay such amount to Lender, to be applied in reduction of the Debt.

Guarantor further covenants with Lender that (a) all Leases shall be written on a form of lease which has been approved by Lender; (b) upon request, Guarantor shall furnish Lender with executed copies of all then-existing Leases; (c) no material changes may be made to the Lender-

approved form of lease without the prior written consent of Lender; (d) all renewals of Leases and all proposed leases shall provide for rental rates comparable to existing local market rates and shall be arms length transactions; (e) all proposed leases shall be subject to the prior approval of the Lender; and (f) all Leases shall provide that they are subordinate to the Mortgage and that the lessees must, at the option of Lender, attorn to Lender.

5. Present Assignment. Guarantor intends that this Assignment constitute a present, absolute assignment of the Leases, Rents, Lease Guaranties and Bankruptcy Claims, and not an assignment for additional security only. Nevertheless, subject to the terms of this Paragraph 5 and Paragraph 7 hereof, Lender grants to Guarantor a revocable license to collect and receive the Rents, as well as other sums due under the Lease Guaranties (the “License”). Guarantor shall hold the Rents, as well as all sums received pursuant to any Lease Guaranty, or a portion thereof sufficient to discharge all current sums due on the Indebtedness, in trust for the benefit of Lender for use in the payment of such sums.

6. Notice to Lessees. Guarantor hereby authorizes and directs the lessees named in the Leases or any other future lessees or occupants of the Mortgaged Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease Guaranties upon receipt from Lender of written notice to the effect that Lender is then the holder of this Assignment and that an Event of Default (as defined in the Note) exists, and to continue so to do until otherwise notified by Lender.

7. Remedies of Lender. Upon the occurrence of an Event of Default (as defined in the Note), Lender may, at its option, without waiving such Event of Default, revoke the License, either in its entirety or with respect to any specified portion of the Rents and Lender shall immediately be entitled to possession of all Rents and sums due under any Lease Guaranties, whether or not Lender enters upon or takes control of the Mortgaged Property. In addition, Lender may, at its option, without waiving such Event of Default, without regard to the adequacy of the security for the Indebtedness, either in person or by Lender, nominee or attorney, with or without bringing any action or proceeding, or by a receiver appointed by a court, dispossess Guarantor and its agents and servants from the Mortgaged Property, without liability for trespass, damages or otherwise and exclude Guarantor and its agents or servants wholly therefrom, and take possession of the Mortgaged Property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Mortgaged Property on such terms and for such period of time as Lender may deem proper and either with or without taking possession of the Mortgaged Property in its own name, demand, sue for or otherwise collect and receive all Rents and sums due under all Lease Guaranties, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as Lender may deem proper and may apply the Rents and sums received pursuant to any Lease Guaranties to the payment of the following in such order and proportion as Lender in its sole discretion may determine, any law, custom or use to the contrary notwithstanding: (a) all expenses of managing and securing the Mortgaged Property, including, without being limited thereto, the salaries, fees and wages of a

managing agent and such other employees or agents as Lender may reasonably deem necessary or desirable and all reasonable expenses of operating and maintaining the Mortgaged Property, including, without being limited thereto, all taxes, charges, claims, assessments, water charges, sewer rents and any other liens, and premiums for all insurance which Lender may reasonably deem necessary or desirable, and the reasonable cost of all alterations, renovations, repairs or replacements, and all expenses incidental to taking and retaining possession of the Mortgaged Property; and (b) the Indebtedness, together with all costs and reasonable attorneys' fees. In addition, upon the occurrence of an Event of Default, Lender, at its option, may (1) complete any construction on the Mortgaged Property in such manner and form as Lender deems advisable, (2) exercise all rights and powers of Guarantor, including, without limitation, the right to negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Mortgaged Property and all sums due under any Lease Guaranties, (3) either require Guarantor to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Mortgaged Property as may be in possession of Guarantor or (4) require Guarantor to vacate and surrender possession of the Mortgaged Property to Lender or to such receiver and, in default thereof, Guarantor may be evicted by summary proceedings or otherwise.

8. Other Remedies. Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder shall be deemed to be a waiver by Lender of its rights and remedies under the Note, the Mortgage, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Debt and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Guarantor hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Guarantor under this Assignment, the Mortgage, the Note, the other Loan Documents or otherwise with respect to the Loan in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Mortgage, the Note, or any of the other Loan Documents (provided, however, that the foregoing shall not be deemed a waiver of Guarantor's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Guarantor's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

9. Remedies of Guarantor. In the event that a claim or adjudication is made that Lender has acted unreasonably or unreasonably delayed acting in any case whereby law or under the Loan Documents it has an obligation to act reasonably or promptly, Lender shall not be liable for any

monetary damages, and Guarantor's remedies shall be limited to injunctive relief or declaratory judgment.

10. Other Security. Lender may take or release other security for the payment of the Indebtedness, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Indebtedness without prejudice to any of its rights under this Assignment.

11. Bankruptcy, (a) Upon or at any time after the occurrence of an Event of Default, Lender shall have the right to proceed in its own name or in the name of Guarantor in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Guarantor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code, (b) If there shall be filed by or against Guarantor a petition under the Bankruptcy Code, and Guarantor, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Guarantor shall give Lender not less than ten (10) days' prior notice of the date on which Guarantor shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Guarantor within such ten-day period a notice stating that (i) Lender demands that Guarantor assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Guarantor the notice described in the preceding sentence, Guarantor shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

12. No Liability of Lender. This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender. Lender shall not be liable for any loss sustained by Guarantor resulting from Lender's failure to let the Mortgaged Property after an Event of Default or from any other act or omission of Lender in managing the Mortgaged Property after an Event of Default unless such loss is caused by the willful misconduct or bad faith of Lender. Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment, and Guarantor shall indemnify Lender for, and hold Lender harmless from, any and all liability, loss or damage that may or might be incurred under the Leases, any Lease Guaranties or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands that may be asserted against Lender by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties. Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Mortgage and the Other Security Documents and Guarantor shall reimburse

Lender therefor immediately upon demand and upon the failure of Guarantor so to do, Lender may, at its option, declare all sums secured by this Assignment and by the Mortgage and the other Loan Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Mortgaged Property by the tenants or any other parties, or for any dangerous or defective condition of the Mortgaged Property including, without limitation, the presence of any Hazardous Materials (as defined in the Mortgage), or for any negligence in the management, upkeep, repair or control of the Mortgaged Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

13. No Mortgagee in Possession. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Mortgaged Property by Lender. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Guarantor.

14. Further Assurances. Guarantor will, at the cost of Guarantor, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter so to be, or which Guarantor may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Guarantor to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

15. Termination of Assignment. Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Mortgage duly executed by Lender, this Assignment shall become and be void and of no effect. Notwithstanding the foregoing, in the event the Note and Mortgage are assigned to a third party purchaser of the Loan, Lender shall either file a termination of this Assignment or, at the request of such purchaser, execute a no-recourse assignment of this Assignment in favor of said purchaser. The costs of preparing such termination or assignment, as the case may be, and the reasonable attorneys fees incurred by Lender in connection with such termination or assignment shall be borne by the Borrower and/or the Guarantor.

16. Non Waiver. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Guarantor shall not be relieved

of Guarantor's obligations hereunder by reason of (i) failure of Lender to comply with any request of Guarantor or any other party to take any action to enforce any of the provisions hereof or any of the Loan Documents, (ii) the release regardless of consideration, of the whole or any part of the Mortgaged Property, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Mortgage or the other Loan Documents. Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment. The rights of Lender under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

17. No Oral Change. This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Guarantor or Lender, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

18. Sole Discretion of Lender. Wherever pursuant to this Mortgage, Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

19. Guarantor Liability Joint and Several. If Guarantor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Mortgage shall be binding upon and inure to the benefit of Guarantor and Lender and their respective successors and assigns forever.

20. Conflict with Mortgage. I case of any conflict between the terms of this Assignment and the terms of the Mortgage, the terms which provide greater rights or security to the Lender shall prevail.

21. Section 291-f Agreement. This Assignment is intended to be, and shall operate as, an agreement described in Section 291-f of the Real Mortgaged Property Law of the State of New York and shall be entitled to the benefits afforded thereby.

22. Certain Definitions. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Guarantor " shall mean "each Guarantor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word

"Note" shall mean "the Note and any other evidence of indebtedness secured by the Mortgage, together with any extensions, renewals, modifications, or consolidations thereof," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words "Mortgaged Property" shall include any portion of the Mortgaged Property and any interest therein; and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorney, paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Mortgaged Property, the Leases and the Rents and enforcing its rights hereunder. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

23. Governing Law. This Assignment was negotiated in the state of New York, and made by Guarantor and accepted by lender in the state of New York, and the proceeds of the note were disbursed from the state of New York, which state the parties agree has a substantial relationship to the parties and to the underlying transaction embodied hereby, and in all respects, including, without limiting the generality of the foregoing, matters of construction, validity and performance, this assignment and the obligations arising hereunder shall be governed by, and construed in accordance with, the laws of the state of New York applicable to contracts made and performed in such state (without regard to principles of conflict laws) and any applicable law of the United states of America, except that at all times the provisions for the creation, perfection, and enforcement of the interests created pursuant hereto and pursuant to the other loan documents with respect to the property shall be governed by and construed according to the law of the state in which the property is located, it being understood that, to the fullest extent permitted by the law of such state, the law of the state of New York shall govern the construction, validity and enforceability of all loan documents and all of the obligations arising hereunder or thereunder. To the fullest extent permitted by law, Guarantor hereby unconditionally and irrevocably waives any claim to assert that the law of any other jurisdiction governs this assignment and the note, and this assignment and the note shall be governed by and construed in accordance with the laws of the state of New York pursuant to section 5-1401 of the New York General Obligations Law. Any legal suit, action or proceeding against lender or Guarantor arising out of or relating to this assignment may at lender's option be instituted in any federal or state court in the county of Putnam, state of New York, pursuant to section 5-1402 of the New York general obligations law, and Guarantor waives any objections that it may now or hereafter have based on venue and/or forum non conveniens of any such suit, action or proceeding, and Guarantor hereby irrevocably submits to the jurisdiction of any such court in any suit, action or proceeding.

24. Waiver of Trial by Jury. GUARANTOR AND LENDER EACH HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY

THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, THE GUARANTY, OR ANY OF THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

25. Inapplicable Provisions. If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

26. Headings, etc. The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

27. Bind and Inure. This Assignment shall be binding upon Guarantor, its heirs, executors, administrators, successors and assigns and any subsequent owner of the Mortgaged Property, and shall inure to the benefit of Lender, its successors and assigns.

28. Notices. All notices or other written communications hereunder shall be delivered in accordance with the terms of the Mortgage.

29. Counterparts. This Assignment may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, Guarantor has executed this instrument the day and year first above written.

KIWI LANDCO LLC

______________________________
By: Michael Shabsels
Title: Manager

STATE OF NEW YORK
}ss:
COUNTY OF New York

GEORGE E ANTTILA
Notary Public - State of New York
No. 01AN6340144
Qualified in Kings County
My Commission Expires April 11, 2028

On the 15 day of **July**, in the year **2024** before me, the undersigned personally appeared **Michael Shabsels** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

______________________________
Notary Public

SIGNATURE PAGE FOR ASSIGNMENT OF LEASES AND RENTS

## Exhibit "A"
## The Mortgaged Property

**PARCEL I (SBL #77.17-1-32, 825 Union Valley Road):**

All that certain plot, piece or parcel of land, together with the buildings and improvements situated thereon, situate, lying and being in the Town of Carmel, County of Putnam and State of New York, known and designated as Lot 1 on a certain map entitled "Final Plat, Subdivision Prepared for Brad & Karla Brown and Camp Kiwi, Inc." which said map was dated September 6, 1992 and filed in the Putnam County Clerk's Office on June 11, 1993 as Map #2587.

**PARCEL II (SBL #77.13-1-41, 1-5 Blossom Lane):**

Also all that certain plot, piece or parcel of land, together with the buildings and improvements situated thereon, situate, lying and being in the Town of Carmel, County of Putnam and State of New York, bounded and described as follows:

Beginning at a point on the southerly line of Union Valley Road, said point marking the northwesterly corner of the herein described parcel and the northeasterly corner of the lands of Camp Kiwi, Inc. as described in Liber 453 page 106;

Thence southerly along the division line between the lands of Camp Kiwi, Inc. and the herein described parcel the following courses and distances:

South 1 degree 42' 30" West 186.23 feet to a fence post,

North 85 degrees 59' 00" West 37.05 feet to a point

South 1 degree 47' 20" West 417.11 feet to a point marking the southwesterly corner of the herein described parcel and the northwesterly corner of the lands of Camp Kiwi, Inc. as described in Liber 910 page 013;

Thence easterly along the division line between the lands of Camp Kiwi, Inc. and the herein described parcel North 81 degrees 50' 20" East 112.79 feet to a point on the westerly line of Blossom Road marking the southeasterly corner of the herein described parcel and the northeasterly corner of the lands of Camp Kiwi, Inc.;

Thence Northerly along the westerly line of said Blossom Road and passing through a concrete monument found set at 22.02 feet from said corner North 8 degrees 35' East 582.17 feet to a point at the intersection of the westerly line of said Blossom Road with the southerly line of Union Valley Road, said point is marking the northeasterly corner of the herein described parcel;

Thence westerly along the southerly line of said Union Valley Road North 87 degrees 03' West 71.93 feet and North 85 degrees 56' West 71.38 feet to the point or place of beginning.

Also an easement over and across all that certain plot, piece or parcel of land, situate in the Town of Carmel, Putnam County, New York together with the buildings and improvements situate thereon, being shown as the cross-hatched "Playing Field Use Easement (0.561± acres)" on survey map entitled "Final

Plat Subdivision Prepared for Brad & Karla Brown and Camp Kiwi, Inc." filed in the Office of the Putnam County Clerk on June 11,1993 as Filed Map No. 2857, said easement area being more particularly bounded and described as follows:

Beginning at a point which is distant 249.39 feet on a course of N 03° 44' 11" W 90.09 feet from an old cross cut with drill hole found on the north face of a wall being the south westerly corner; thence from said point of beginning the following five (5) courses and distances:

1. N 03° 44' 11" W along lands of Camp Kiwi 260 feet;

2. Continuing along said lands N 17° 00' 00" E 150 feet;

3. N 36° 23' 04" E 105 feet;

4. Thence through lands now of Brown S 05° 54' 46" 317.98 feet and S 18° 15' 13" W 180.20 feet to the point and place of beginning. Containing 0.56± acres.

Being a portion of the premises conveyed by Bradford Brown and Karla Brown to Karla Brown by deed dated June 8, 2006, recorded in the Putnam County Clerk's Office as Document Number 1502159 in Liber 1750 of Deeds page 38.

Said easement area shall be maintained by the Party of the Second Part in a neat and clean condition and may be used for any and all school sports, camp or recreational activities relating to the operation of the Camp, School or other facility related to the adjoining 12.887± acre parcel shown as Lot 1 on said Filed Map #2857 provided that said use shall be at the sole risk of the Party of the Second Part, its successors and/or assigns, and the Party of the First Part shall be held harmless by the Party of the Second Part from any claim or liability arising out of or in connection with such use or the condition of the easement premises unless arising out of the gross negligence or intentional and willful acts of the Party of the First Part. This shall be deemed a covenant running with the land and binding upon the heirs, legal representatives, successors and assigns of both parties to this Deed.

This grant confirms the playing field use easement set forth on the Filed Map and used by the Camp openly, notoriously, continuously and under claim of right since 1992 and shall act as the Declaration referred to on the Map.