**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**ROBINSON & COLE LLP**
Evan M. Lazerowitz (063232013)
Rachel Jaffe Mauceri (038102001)
Brya M. Keilson (022502004)
666 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 451-2900
Email: elazerowitz@rc.com
Email: rmauceri@rc.com
Email: bkeilson@rc.com

**MCDERMOTT WILL & SCHULTE LLP**
Darren Azman (admitted *pro hac vice*)
Kristin K. Going (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
Email: dazman@mcdermottlaw.com
Email: kgoing@mcdermottlaw.com

**MCDERMOTT WILL & SCHULTE LLP**
Rachel Biblo Block (admitted *pro hac vice*)
2801 North Harwood Street, Suite 2600
Dallas, Texas 75201
Telephone: (214) 295-8000
Email: rbibloblock@mcdermottlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 26-16388 (CMG)<br><br>(Jointly Administered) |

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

**DECLARATION OF NICHOLAS WEBER IN SUPPORT OF THE JOINT MOTION OF THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THE LENDER PARTIES FOR ENTRY OF AN ORDER (I) APPROVING SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019, AND (II) GRANTING RELATED RELIEF**

I, Nicholas Weber, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I submit this declaration (this "Declaration") in support of the *Joint Motion of the Debtors, the Official Committee of Unsecured Creditors, and the Lender Parties for Entry of an Order (I) Approving Settlement Pursuant to Bankruptcy Rule 9019, and (II) Granting Related Relief* [Docket No. 1336] (the "Settlement Motion"),[2] and in response to the *United States' Opposition to Settlement Motion* [Docket No. 1368] (the "Objection").

2. I am a Managing Director of M3 Advisory Partners, LP ("M3"), the financial advisor to the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases. I have more than ten years of experience advising creditors' committees, creditors, and debtors in complex restructurings and chapter 11 cases.

3. Since M3's retention, I managed the M3 team responsible for: (a) analyzing the Debtors' capital structure, prepetition secured debt, and postpetition financing; (b) supporting the Committee's investigation of the liens and claims asserted by the Prepetition Secured Parties; and (c) supporting the Committee in the negotiations that produced the Settlement.

4. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the M3 team working under my supervision, and my experience and knowledge of the Debtors' cases. Nothing in this Declaration is intended to waive, and the Committee does not

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Settlement Motion or the Objection, as applicable.

waive, the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection. If called upon to testify, I could and would testify competently to the facts set forth herein.

**THE FINAL DIP ORDER, THE DEBTORS' STIPULATIONS, AND THE COMMITTEE'S CHALLENGE RIGHTS**

5. On July 21, 2026, the Court entered the Final DIP Order [Docket No. 552], approving postpetition financing provided by Klirmark Opportunity Fund IV LP and the Series A Bondholders, consisting of $58 million of new money loans and a roll-up of $116 million of prepetition bond debt. Final DIP Order at pp. 3–4.

6. My understanding of the Final DIP Order is that it contains stipulations regarding the Prepetition Liens, the Prepetition Obligations, and the releases of the Prepetition Secured Parties (the "Debtors' Stipulations"), which are binding on the Debtors. Final DIP Order ¶¶ F(i)–(iv), 12(a), 24. The Committee, in addition to other parties in interest other than the Debtors, could challenge the Debtors' Stipulations and releases by commencing a Challenge prior to the Challenge Period Termination Date. *Id.* ¶ 12(a). The Final DIP Order limited the amount of proceeds of the DIP Facility, DIP Collateral, and Prepetition Collateral, including Cash Collateral, that the Committee could use to investigate potential Challenges. *Id.* ¶ 27.

7. The Challenge Period Termination Date was extended by agreement to permit the Committee to conduct its investigation and enable the parties to pursue settlement discussions, and it is currently tolled as to the Committee under the Term Sheet. Term Sheet, "Termination."

**THE COMMITTEE'S INVESTIGATION AND THE COMMITTEE'S ADVISORS' ROLE**

8. Promptly following its appointment, the Committee, through its counsel and

M3, commenced an investigation of the Prepetition Secured Parties' asserted liens and claims and the prepetition bond transaction, and the Committee's investigation focused on the claims to be released pursuant to paragraph 24 of the Final DIP Order. The Committee served requests for production on the Debtors and subpoenas on third parties and obtained thousands of documents produced by the Prepetition Trustee, the Debtors, and third parties. Under the direction of Committee counsel, M3 reviewed the financial records produced by the Debtors and Mishmeret, together with financing documents and an English translation of the Prospectus, and analyzed the prepetition bond transaction, including the flow of the bond proceeds, the Debtors' resulting capital structure, and the Debtors' financial statements.

9. The Committee's advisors shared the facts and summaries developed through their work with the Committee, and that information informed the Committee's evaluation of the Challenges and its settlement positions. To avoid prejudicing the estates should the Settlement not be approved, I do not describe the Committee's specific analysis, any specific claims, or the Committee's litigation strategy in this Declaration.

**<u>THE SETTLEMENT NEGOTIATIONS</u>**

10. Beginning in September 2026 and continuing through the extended Challenge Period, the Committee and the Lender Parties, each represented by separate counsel, negotiated a resolution of the Challenges. Over several weeks, the parties exchanged multiple settlement proposals and counterproposals addressing, among other things, continued funding of these chapter 11 cases, the preservation of estate claims against non-settling parties, and the amount and structure of a settlement fund.

11. The negotiations culminated in the Term Sheet, executed on October 11, 2026, and I understand that the Debtors joined the Settlement Motion to support the Settlement and to confirm their agreement to the Approved Budget. The Settlement remains subject to entry

of a final order approving the Settlement Motion and approval by the requisite majority of the Prepetition Bondholders. If the Settlement Effective Date and the funding of the Settlement Fund have not occurred by the November 7, 2026 Outside Date, which may be extended only by mutual written agreement of the Settlement Parties, either Settlement Party may terminate the Term Sheet. Term Sheet, "Conditions Precedent," "Termination."

**THE COMMITTEE'S ASSESSMENT OF THE SETTLEMENT**

12. Based on my experience and the Committee's advisors' work in these cases, my assessment of the Settlement is as follows.

13. The Prepetition Secured Parties dispute the Challenges and have stated that they would contest them if litigated. Any recovery from litigation would therefore be uncertain in both amount and timing.

14. The bonds were issued in Israel and listed on the Tel Aviv Stock Exchange under a Hebrew-language deed of trust, with Mishmeret, an Israeli company, as trustee, and the bonds are publicly held by a group of foreign bondholders.

15. Based on M3's participation in the Committee's investigation, I understand that prosecuting the Challenges would involve cross-border discovery, translation of Hebrew-language documents, foreign-law, and experts, and would likely take months, if not years, to resolve, at material cost to the estates. The Final DIP Order limits the Committee's use of proceeds of the DIP Facility, DIP Collateral, and Prepetition Collateral for its investigation at $250,000.

16. Based on my discussions with the Debtors' professionals, my understanding is that prior to the Settlement, Mishmeret had not approved the continued use of cash collateral for the period past the initial budget ending September 11, 2026. Under the Term Sheet, the estates and their creditors receive: (a) the Lender Parties' consent to the use of cash collateral

under the Approved Budget to fund these cases; (b) a $13 million Settlement Fund, funded by the Prepetition Secured Parties from amounts otherwise recoverable by them on account of the Prepetition Secured Claim and reserved for the benefit of holders of allowed general unsecured claims; (c) the Professional Fee Escrow; (d) the fixing of the Lender Parties' claims; (e) the Lender Parties' commitment to support a chapter 11 plan; and (f) the Prepetition Secured Parties' cooperation in the investigation and prosecution of estate claims against non-settling parties, which are preserved. Term Sheet, "Settlement Fund," "Continued DIP Funding," "Plan Support / Liquidating Trust," "Cooperation on Litigation Targets," "Reservation of Rights against Non-Settling Parties." Absent the Settlement, the $13 million would remain with the Prepetition Secured Parties unless Challenge litigation is eventually successful.

17. The Term Sheet does not address the allowance, priority, or treatment of any administrative expense claim or priority tax claim, including any claim the United States has asserted or may assert.

18. Following the investigations and negotiations described above, and after receiving reports from M3 and the Committee's other professionals on those matters, the Committee entered into the Term Sheet.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on October 23, 2026.

*/s/ Nicholas Weber*
Nicholas Weber
Managing Director,
M3 Advisory Partners, LP