UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**Order Filed on October 26, 2026**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| In Re: | Case No.: 26-16388-CMG |
| SIMAD Holdings Ltd. | Chapter: 11 |
| | Hearing Date: 10/26/2026 |
| | Judge: Christine M. Gravelle |

**ORDER**
**(I) APPROVING SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019 AND**
**(II) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through eight (8), is **ORDERED**.

**DATED: October 26, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
Email: wusatine@coleschotz.com
Email: dbass@coleschotz.com
Email: fyudkin@coleschotz.com
Email: dharris@coleschotz.com

*Counsel to the Debtors and Debtors in Possession*

**-and-**

**RIKER DANZIG LLP**
Joseph L. Schwartz
Daniel A. Bloom
John D. Stern
7 Giralda Farms, Suite 250
Madison, New Jersey 07940
Telephone: (973) 538-0800
Email: jschwartz@riker.com
Email: dbloom@riker.com
Email: jstern@riker.com

**CHAPMAN AND CUTLER LLP**
Michael Friedman (admitted *pro hac vice*)
Jorge Eric Coronel Hamilton (admitted *pro hac vice*)
1270 Avenue of the Americas, 30th Floor
New York, New York 10020
Telephone: (212) 655-2508
Email: friedman@chapman.com
Email: jcoronel@chapman.com

*Counsel to the Lender Parties*

**ROBINSON & COLE LLP**
Evan M. Lazerowitz
Rachel Jaffe Mauceri
Brya M. Keilson
666 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 451-2900
Email: elazerowitz@rc.com
Email: rmauceri@rc.com
Email: bkeilson@rc.com

**MCDERMOTT WILL & SCHULTE LLP**
Darren Azman (admitted *pro hac vice*)
Kristin K. Going (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
Email: dazman@mcdermottlaw.com
Email: kgoing@mcdermottlaw.com

**MCDERMOTT WILL & SCHULTE LLP**
Rachel Biblo Block (admitted *pro hac vice*)
2801 North Harwood Street, Suite 2600
Dallas, Texas 75201
Telephone: (214) 295-8000
Email: rbibloblock@mcdermottlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., *et al.*, | Case No.: 26-16388 (CMG) |
| Debtors.[1] | (Jointly Administered) |

**ORDER (I) APPROVING SETTLEMENT PURSUANT TO**
**BANKRUPTCY RULE 9019 AND (II) GRANTING RELATED RELIEF**

Upon the joint motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "Committee"), and Mishmeret Trust Company Ltd., in its capacities as DIP Agent and Prepetition Trustee (together, the "Lender Parties," and, together with the Committee, the "Settlement Parties"), for entry of an order (this "Order"), pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019, (i) approving the settlement (the "Settlement") between the Committee and the Lender Parties memorialized in the term sheet attached hereto as **Exhibit 1** (the "Term Sheet"); (ii) approving the budget attached hereto as **Exhibit 2** (the "Approved Budget"); and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and consideration of the Motion and the relief requested therein being a core

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion or the Term Sheet, as applicable.

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion and the opportunity for a hearing thereon having been provided in accordance with Bankruptcy Rule 2002 and the Local Rules, and no other or further notice being required; and this Court having held a hearing, if necessary, to consider the relief requested in the Motion; and the Court having determined that the legal and factual bases set forth in the Motion and at any such hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

A. The Settlement is fair, reasonable, and in the best interests of the Debtors, their estates, and their creditors, and satisfies the standards for approval under Bankruptcy Rule 9019 and *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996).

B. The Settlement was negotiated in good faith and at arm's length among the Settlement Parties, each of which was represented by independent counsel.

C. The Settlement Fund (i) constitutes a voluntary contribution by the Prepetition Secured Parties from their own recoveries on account of the Prepetition Secured Claim, (ii) is held in trust solely for the benefit of holders of allowed general unsecured claims free and clear of all

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

DIP Liens, Prepetition Liens, Adequate Protection Liens, DIP Superpriority Claims, Adequate Protection Claims, the Carve-Out, and any other liens, claims, or encumbrances, (iii) is not property of the Debtors' estates, and (iv) does not constitute DIP Collateral, Prepetition Collateral, or Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code.

D. As required by the Term Sheet, the Debtors, the Committee, and the Lender Parties have agreed upon the Approved Budget. The DIP Secured Parties and the Prepetition Secured Parties have consented to the Debtors' continued use of Cash Collateral in accordance with the Approved Budget, and such consent satisfies section 363(c)(2)(A) of the Bankruptcy Code.

E. The Professional Fee Escrow, and all funds deposited into it, are held solely for the payment of allowed fees and expenses of Escrowed Professional Persons. They do not constitute property of the Debtors' estates, DIP Collateral, Prepetition Collateral, or Cash Collateral. The funding of the Approved Budget and the Professional Fee Escrow from sale proceeds as provided in the Term Sheet is an integral component of the Settlement.

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth herein.

2. The Settlement and the Term Sheet, attached hereto as **Exhibit 1** and incorporated herein by reference, are approved in their entirety. In the event of any inconsistency between the Term Sheet and this Order, this Order shall govern.

3. The Approved Budget attached hereto as **Exhibit 2** is approved and shall constitute the Approved DIP Budget for all purposes under the Final DIP Order and the DIP Documents, subject to any Permitted Budget Variances and any subsequent updates agreed among the Debtors, the Committee, and the Lender Parties in accordance with the Term Sheet. The Debtors are

authorized to use proceeds of the DIP Facility and Cash Collateral in accordance with the Approved Budget and the Final DIP Order (as amended herein), and the Final DIP Order is deemed amended accordingly. Notwithstanding that the Approved Budget covers the period through October 31, 2026, any amounts authorized in the Approved Budget that remain unused as of October 31, 2026 may be used after such date, and the Debtors' authorization to use, and the Lender Parties' consent to the use of, Cash Collateral for such authorized amounts shall not expire or otherwise be limited solely by reason of the end of the budget period.

4. The Debtors and the Settlement Parties are authorized to take all actions necessary or appropriate to implement and effectuate the Settlement and the Term Sheet, in accordance with the terms and conditions set forth or provided for therein, without further order of this Court.

5. The Settlement Fund shall be held in trust in the GUC Trust Account solely for the benefit of holders of allowed general unsecured claims. The Settlement Fund and the GUC Trust Account shall not constitute property of the Debtors' estates, shall not constitute DIP Collateral, Prepetition Collateral, or Cash Collateral of any entity within the meaning of section 363(a) of the Bankruptcy Code or otherwise, and shall be free and clear of all DIP Liens, Prepetition Liens, Adequate Protection Liens, DIP Superpriority Claims, Adequate Protection Claims, the Carve-Out, and any other liens, claims, or encumbrances. No portion of the Settlement Fund or any amounts in the GUC Trust Account shall be distributed on account of any deficiency claim of the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders. The GUC Trust Account shall be maintained by the Debtors solely as custodian, shall not be part of the Debtors' cash management system, and shall not be subject to setoff or recoupment, and withdrawals from the GUC Trust Account shall be made only at the direction of the Committee (or its successor or designee). No

provision of the Final DIP Order, the DIP Documents, any cash collateral order, or any cash management order entered in these chapter 11 cases shall apply to, attach to, or encumber the Settlement Fund or the GUC Trust Account. The provisions of this paragraph shall survive conversion or dismissal of these chapter 11 cases and confirmation of any chapter 11 plan.

6. Notwithstanding anything to the contrary in the Final DIP Order, the DIP Documents, the Prepetition Loan Documents, any sale order, or any other order of this Court, the Approved Budget shall be funded in full from the proceeds of any sale or other disposition of the Debtors' assets before any such proceeds are paid, distributed, or released to or for the benefit of MTC, the Lender Parties, the DIP Secured Parties, or the Prepetition Secured Parties. All budgeted fees and expenses of the Escrowed Professional Persons through the effective date of a chapter 11 plan shall be deposited from such proceeds into the Professional Fee Escrow. The Professional Fee Escrow and all funds in it: (i) shall not constitute property of the Debtors' estates, shall not constitute DIP Collateral, Prepetition Collateral, or Cash Collateral of any entity within the meaning of section 363(a) of the Bankruptcy Code or otherwise; and (ii) shall be free and clear of all DIP Liens, Prepetition Liens, Adequate Protection Liens, DIP Superpriority Claims, Adequate Protection Claims, and any other liens, claims, or encumbrances; provided, however, following payment in full of all allowed fees and expenses of the Escrowed Professional Persons, any funds remaining in the Professional Fee Escrow shall be released to the Debtors' estates.

7. Upon the later of (a) the Settlement Effective Date and (b) the funding of the Settlement Fund in accordance with the Term Sheet, the restrictions set forth in paragraph 12(b) of the Final DIP Order with respect to distributions on account of the Roll-Up Obligations, including the requirement that such proceeds be held in a segregated account, shall no longer apply,

and the Final DIP Order and the DIP Documents shall be deemed amended to the extent necessary to permit and effectuate the Settlement.

8. Upon the later of (a) the Settlement Effective Date and (b) the funding of the Settlement Fund, all Challenges preserved by the Committee shall be deemed finally resolved for all purposes under paragraph 12 of the Final DIP Order, and the Challenge Period Termination Date shall be deemed to have occurred. Through the earlier of (x) the Settlement Effective Date and funding of the Settlement Fund and (y) the Termination Date, the Challenge Period Termination Date is and shall remain tolled as to the Committee, and upon any termination of the Term Sheet in accordance with its terms, the Challenge Period Termination Date shall be automatically extended for the Committee for five (5) business days following the Termination Date, in each case as set forth in the Term Sheet.

9. Upon entry of this Order, the $250,000 limitation set forth in paragraph 27 of the Final DIP Order shall no longer apply to, or restrict the payment of, the allowed fees and expenses of the Committee's professionals incurred at any time, whether before, on, or after the date hereof, in connection with the investigation or prosecution of Challenges or the negotiation, documentation, and implementation of the Settlement, and paragraph 27 of the Final DIP Order is deemed amended accordingly. Nothing in the Final DIP Order, including paragraph 27 thereof, shall impair the payment of such allowed fees and expenses, in accordance with the Term Sheet, the applicable budget, and any interim compensation procedures in effect in these chapter 11 cases.

10. Nothing in this Order or the Term Sheet shall release, waive, or impair any claims or causes of action of the Debtors or their estates against any non-settling party, including, without limitation, the Debtors' insiders, equity holders, or any other party that is not a Settlement Party,

all of which are expressly preserved.

11. The Term Sheet and this Order shall be binding on the Settlement Parties, the Debtors' estates, and all parties in interest, including any subsequently appointed trustee or other estate representative in these chapter 11 cases or in any successor cases under any chapter of the Bankruptcy Code.

12. The stays provided by Bankruptcy Rules 6004(h) and 7062 are hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

13. This Court shall retain original and exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order and the Term Sheet.

# **EXHIBIT 1**

**Term Sheet**

*Execution Version*

# SIMAD HOLDINGS LTD., *ET AL.*
# SETTLEMENT TERM SHEET[1]

This term sheet (this "Term Sheet"), dated as of October 11, 2026, by and among (i) the Official Committee of Unsecured Creditors (the "Committee") appointed on July 9, 2026 in the chapter 11 cases (the "Cases") of SIMAD Holdings Ltd., *et al.*, Case No. 26-16388 (CMG), commenced on June 4 and 5, 2026 and pending in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), and (ii) Mishmeret Trust Company Ltd. ("MTC"), in its capacity as DIP Agent under the DIP Documents,[2] and in its capacity as Prepetition Trustee under the Deed of Trust dated November 27, 2025 (together, the "Lender Parties," and, with the Committee, the "Settlement Parties"), sets forth the terms of a consensual settlement (the "Settlement") of the Committee's Challenges against the Lender Parties (solely on account of the Roll-Up DIP Loans and the Prepetition Secured Claim (as defined below)).

This Term Sheet shall be subject to Rule 408 of the Federal Rules of Evidence and any similar state or foreign law equivalents. Upon execution by all Settlement Parties and satisfaction of the Conditions Precedent set forth herein, this Term Sheet shall constitute the definitive and binding settlement agreement among the Settlement Parties with respect to the Settlement. Except as set forth herein with respect to the Rule 9019 Motion, no additional definitive documentation shall be required to effectuate the Settlement, although the Settlement Parties may enter into additional documentation to the extent necessary to implement the terms hereof. For the avoidance of doubt, this Term Sheet does not constitute a solicitation for the acceptance or rejection of any plan of reorganization or liquidation.

| **Settlement Terms** | |
|---|---|
| **Settlement Fund** | (a) The Prepetition Secured Parties hold allowed secured claims in the aggregate principal amount of $98,162,349 as of the Petition Date, plus accrued interest, fees, and expenses from and after the Petition Date (the "Prepetition Secured Claim")[3]; and (b) the DIP Lenders hold allowed secured claims on account of the Roll-Up DIP Loans in the aggregate amount of $120,680,264 including accrued interest and fees through November 1, 2026, plus expenses, in each case, as provided in the Final DIP Order.<br>In connection with the Settlement contemplated by this Term Sheet, the Prepetition Secured Parties will provide $13,000,000 (the "Settlement Fund"), as a voluntary contribution from amounts otherwise recoverable by the Prepetition Secured Parties on account of the Prepetition Secured Claim, solely for the benefit of holders of |

[1] Capitalized terms used but not defined in this Term Sheet shall have the meanings ascribed to them in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 552] (the "Final DIP Order").

[3] The Prepetition Secured Parties are also holding $17,907,000 in their account, which funds will be used to reduce the outstanding amount required to be paid on account of the Prepetition Secured Claim.

| Settlement Terms | |
|---|---|
| | allowed general unsecured claims. The Prepetition Secured Parties shall permit and consent to the use of proceeds otherwise distributable to the Prepetition Secured Parties to fund the Settlement Fund in full, in cash, by wire transfer directly to a segregated account maintained in the name of the Debtors solely as custodian (the "GUC Trust Account"). Such funding shall occur contemporaneously with, and as a condition to, any distribution to or for the benefit of the Lender Parties on account of the Roll-Up DIP Loans. The Settlement Fund and the GUC Trust Account shall be held in trust solely for holders of allowed general unsecured claims. The Settlement Fund and the GUC Trust Account shall not constitute property of the Debtors' estates and shall not constitute DIP Collateral, Prepetition Collateral, or Cash Collateral. The Settlement Fund and the GUC Trust Account shall be free and clear of all liens, claims, and interests, including the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, and any superpriority claims. The GUC Trust Account shall not be part of the Debtors' cash management system or subject to setoff, and withdrawals shall be made only at the direction of the Committee (or its successor or designee). The Settlement Fund shall be administered and distributed by the Committee (or its successor or designee) in its sole discretion. These rights shall survive the conversion or dismissal of the Cases and the confirmation of any chapter 11 plan. |
| **Reservation of Rights in connection with Chapter 11 Plan** | Notwithstanding anything to the contrary set forth herein, the Settlement Parties agree and acknowledge that, to the extent there are insufficient funds available to pay all allowed administrative expenses as provided for in the chapter 11 plan, the Settlement Parties agree to meet and confer in good faith with the Debtors regarding potential resolutions of such shortfall to facilitate the confirmation of the chapter 11 plan. |
| **Deficiency Claims of Lender Parties** | The Lender Parties, the holders of Debentures, and the DIP Lenders shall not recover any portion of the Settlement Fund on account of any unsecured deficiency claims. Any and all distributions from the Settlement Fund shall be made solely to holders of allowed general unsecured claims (excluding any unsecured deficiency claims of the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders).<br>This provision applies solely to distributions from the Settlement Fund. To the extent the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders hold allowed unsecured deficiency claims (if any), such parties shall be entitled to participate pro rata with other holders of allowed general unsecured claims in any distributions from sources other than the Settlement Fund. |

| **Settlement Terms** | |
|---|---|
| **Continued DIP Funding** | The Lender Parties shall consent to the Debtors' use of cash collateral to fund the Cases through confirmation and consummation of a chapter 11 plan, on (a) a budget agreed to by the Lender Parties, the Debtors, and the Committee (the "Approved Budget"), and (b) milestones agreed to by and among the Lender Parties, the Debtors, and the Committee. The Approved Budget shall include a line item for Committee professional fees in an amount not less than $8.1 million (which, for the avoidance of doubt, is inclusive of the approximately $2.334 million already in the Budget annexed to the Final DIP Order). Notwithstanding that the Approved Budget covers the period through October 31, 2026, any amounts authorized in the Approved Budget that remain unused as of October 31, 2026 may be used after such date, and the Lender Parties' consent to the use of Cash Collateral for such authorized amounts shall not expire or otherwise be limited solely by reason of the end of the budget period.<br><br>Notwithstanding anything to the contrary in the Final DIP Order, the DIP Documents, the Prepetition Loan Documents, this Term Sheet, any sale order, or any other order of the Bankruptcy Court, the Approved Budget shall be funded in full from the proceeds of any sale or other disposition of the Debtors' assets before any such proceeds are paid, distributed, or released to or for the benefit of MTC, the Lender Parties, the DIP Lenders, or the Prepetition Secured Parties. Without limiting the foregoing, all budgeted fees and expenses of Professional Persons (as defined in the Final DIP Order) and the other professionals in line item 26. of the Approved Budget (collectively, the "Escrowed Professional Persons") through the effective date of a chapter 11 plan shall be deposited from such proceeds into a segregated escrow account solely for the payment of allowed fees and expenses of the Escrowed Professional Persons (the "Professional Fee Escrow").<br><br>The Professional Fee Escrow and all funds in it: (i) shall not constitute property of the Debtors' estates, DIP Collateral, Prepetition Collateral, or Cash Collateral; (ii) shall be free and clear of all liens, claims, interests, and encumbrances of any person, including the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, the DIP Superpriority Claims, the Adequate Protection Claims, and any other superpriority claims, and none of the foregoing shall attach to the Professional Fee Escrow; (iii) shall not be subject to setoff, recoupment, sweep, or any mandatory prepayment under the DIP Documents; and (iv) shall be used solely to pay allowed fees and expenses of the Escrowed Professional Persons as and when allowed by the Bankruptcy Court.<br><br>The Approved Budget and all line items in it (including, for the avoidance of doubt, the Committee professional fees line item and |

| **Settlement Terms** | |
|---|---|
| | the Professional Fee Escrow) shall be separate from and shall not reduce the Settlement Fund. |
| **Challenge Investigation Fees and Expenses** | The $250,000 amount referenced in paragraph 27 of the Final DIP Order shall no longer restrict the use of the DIP Facility, DIP Collateral, or Prepetition Collateral, including Cash Collateral, to pay the allowed fees and expenses of the Committee's advisors incurred in connection with the investigation or prosecution of Challenges.<br>For the avoidance of doubt, nothing herein limits or conditions the Committee's advisors' existing right to incur, bill, and seek allowance and payment of such fees and expenses in accordance with the Bankruptcy Code and applicable orders of the Bankruptcy Court, and such fees and expenses shall be separate from and shall not reduce the Settlement Fund. |
| **Plan Support / Liquidating Trust** | The Lender Parties shall each support a chapter 11 plan that provides for the creation of a liquidating trust to, among other things, pursue estate claims and causes of action for the benefit of general unsecured creditors.<br>The liquidating trustee shall be jointly selected by the Debtors and the Committee, and, if the Prepetition Secured Parties do not hold any deficiency claims, in consultation with the DIP Agent and the DIP Lenders; provided that if the Prepetition Secured Parties hold any deficiency claims, the liquidating trustee shall instead be jointly selected by the Debtors, the Committee, and the Prepetition Secured Parties.<br>The Committee agrees to (a) support confirmation of a chapter 11 plan that is consistent in all material respects with the terms of the Settlement, and (b) recommend that holders of allowed general unsecured claims vote to accept such a plan. |
| **Cooperation on Litigation Targets** | The Prepetition Secured Parties shall reasonably cooperate in good faith with the estates' (or their successors' or designees') investigation and prosecution of avoidance actions and any other causes of action the estates (or their successors or designees) pursue against third parties; provided that, to the extent such cooperation is requested by the estates (or their successors or designees), the Prepetition Secured Parties shall be entitled to reimbursement for their documented fees, costs, and expenses (including attorneys' fees) incurred in connection with providing such cooperation. |
| **Amendments to Final DIP Order** | (a) Upon the Settlement Effective Date (as defined below), and concurrently with the funding of the Settlement Fund, the restrictions set forth in paragraph 12(b) of the Final DIP Order with respect to distributions on account of the Roll-Up Obligations and the |

| **Settlement Terms** | |
|---|---|
| | requirement that proceeds otherwise distributable on account of the Roll-Up Obligations be held in a segregated account and not distributed to the DIP Secured Parties shall no longer apply.<br>(b) The Final DIP Order and the DIP Documents shall be deemed amended to the extent necessary to permit and effectuate this Settlement and all terms herein, including, without limitation, (i) the funding of the Settlement Fund into the GUC Trust Account free and clear of all liens, claims, and interests, (ii) the release of the restrictions set forth in paragraph 12(b) of the Final DIP Order as provided in paragraph (a) above, (iii) the funding in full of the Approved Budget from sale proceeds before any such proceeds are paid to or for the benefit of MTC, the Lender Parties, the DIP Lenders, or the Prepetition Secured Parties, (iv) the funding of the Professional Fee Escrow free and clear of all liens, claims, and superpriority claims, including the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, the DIP Superpriority Claims, and any other liens, claims, or encumbrances, and (v) following payment in full of all allowed fees and expenses of the Escrowed Professional Persons, any funds remaining in the Professional Fee Escrow shall be released to the Debtors' estates. Such amendments shall be deemed approved upon entry of the order approving the Rule 9019 Motion. The Settlement Parties shall seek approval of such amendments as part of the Rule 9019 Motion (as defined below). |
| **Resolution of Challenges** | Upon the later of (i) the Settlement Effective Date and (ii) the funding of the Settlement Fund, all Challenges preserved by the Committee shall be deemed finally resolved for all purposes under paragraph 12 of the Final DIP Order, and the Challenge Period Termination Date shall be deemed to have occurred. |
| **Releases** | Effective upon the later of (i) the Settlement Effective Date and (ii) the funding of the Settlement Fund, the Committee, on behalf of itself and the Debtors' estates (solely to the extent the Committee has authority to act on behalf of the estates with respect to the Challenges) (collectively, the "<u>Committee Releasing Parties</u>"), hereby fully, finally, and irrevocably releases, acquits, waives, and discharges each of the Released Parties (as defined in paragraph 24 of the Final DIP Order, and including, for the avoidance of doubt, the DIP Agent and the Prepetition Trustee) from any and all claims and causes of action of the type described in paragraph 24 of the Final DIP Order, in each case to the extent arising from or relating to any act, omission, transaction, or event occurring on or prior to the Settlement Effective Date.<br>For the avoidance of doubt, nothing in this section or elsewhere in this Term Sheet shall in any way limit or release the obligations of |

| Settlement Terms | |
|---|---|
| | any DIP Secured Party or Prepetition Secured Party under the DIP Documents, the DIP Orders, or the Prepetition Loan Documents.<br>The Committee will not object to the inclusion in the chapter 11 plan of releases in favor of the Lender Parties. For the avoidance of doubt, (i) the failure of the Bankruptcy Court to approve, any such releases shall not constitute a breach of this Term Sheet, give rise to any right of termination hereunder, or otherwise affect the Settlement, the Settlement Fund, or the Lender Parties' obligations under this Term Sheet, and (ii) nothing herein shall require the Committee to support any release that the Bankruptcy Court determines is not permitted under applicable law. |
| **Conditions Precedent** | The Settlement shall become effective upon the satisfaction of each of the following conditions (the date on which all conditions are satisfied, the "Settlement Effective Date"): (i) entry of a final order of the Bankruptcy Court granting the Committee's and the Lender Parties' joint motion to approve the Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Rule 9019 Motion"); and (ii) approval of the Settlement by the requisite majority of Prepetition Bondholders, as required under the applicable trust documents and certified by MTC ((i) and (ii) together, the "Conditions Precedent"). |
| **Reservation of Rights against Non-Settling Parties** | Except as expressly set forth herein, the Committee expressly reserves all rights, claims, causes of action, objections, defenses, and remedies on behalf of itself, the Debtors' estates, and general unsecured creditors against any non-settling parties, including, without limitation, the Debtors' insiders, equity holders, or any other party that is not a Settlement Party, and nothing herein shall release, waive, or impair any such claims and causes of action. |
| **Court Approval** | This Settlement is subject to the approval of the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. The Settlement Parties shall cooperate in good faith to prepare and file the Rule 9019 Motion and any supporting documents. |
| **FRE 408 / No Admission** | This Term Sheet and the negotiations relating hereto are subject to Rule 408 of the Federal Rules of Evidence and any similar state or foreign law equivalents. This Term Sheet does not constitute an admission of fact or law by any Settlement Party. |
| **Binding Effect / Definitive Documentation** | Upon execution by all Settlement Parties and satisfaction of the Conditions Precedent, this Term Sheet shall constitute the operative and binding settlement agreement among the Settlement Parties. The Settlement Parties may, but shall not be required to, enter into additional definitive documentation memorializing the terms hereof. |

| Settlement Terms | |
|---|---|
| **Counterparts / Amendments** | This Term Sheet may be executed in counterparts, each of which shall be deemed an original. This Term Sheet may not be amended or modified except by a written instrument signed by all Settlement Parties (which may be via email). |
| **Termination** | From and after the date of execution of this Term Sheet through the earlier of (a) the Settlement Effective Date and funding of the Settlement Fund and (b) the Termination Date (as defined below), the Challenge Period Termination Date shall be deemed tolled and shall not expire as to the Committee.<br>If the Settlement Effective Date and the funding of the Settlement Fund have not occurred on or before November 7, 2026 (the "Outside Date"), as such date may be extended by mutual written agreement of the Settlement Parties (which may be via email), either Settlement Party may terminate this Term Sheet upon written notice to the other Settlement Parties, in which event this Term Sheet shall be of no further force or effect and the Settlement Parties shall be restored to their respective positions as if this Term Sheet had not been executed, without prejudice to any rights, claims, or defenses of any Settlement Party. Upon termination of this Term Sheet in accordance with this provision (the date of such termination, the "Termination Date"), the Challenge Period Termination Date shall be deemed automatically extended for the Committee for five (5) business days following the Termination Date, and the Committee's right to commence or prosecute Challenges shall be preserved during such period without prejudice to the Committee's right to seek (i) a further consensual extension of the Challenge Period Termination Date from the Prepetition Secured Parties and the Debtors (without further order of the Bankruptcy Court) and/or (ii) a further extension of the Challenge Period Termination Date by order of the Bankruptcy Court. |
| **Dispute Resolution / Jurisdiction** | The Bankruptcy Court shall retain exclusive jurisdiction over any and all disputes, claims, or controversies arising out of, relating to, or in connection with this Term Sheet, the Settlement, or the transactions contemplated hereby, including, without limitation, the interpretation, enforcement, or termination of any provision hereof. |
| **DIP Superpriority Preservation** | The DIP Lenders' superpriority administrative expense claims under section 364(c)(1) of the Bankruptcy Code, all DIP Liens, all Adequate Protection Liens, all Adequate Protection Claims, and all other rights, remedies, and protections granted to the DIP Secured Parties and the Prepetition Secured Parties under the Final DIP Order and the DIP Documents shall be preserved in full force and effect and are not impaired, released, or otherwise modified by this Settlement; provided that none of the foregoing shall attach to, or be |

| **Settlement Terms** | |
|---|---|
| | asserted against, the Settlement Fund, the GUC Trust Account, or the Professional Fee Escrow, and the Approved Budget shall be funded as set forth in this Term Sheet. |
| **Interest/Fees Accrual** | Interest, fees, and expenses on the DIP Facility and the Prepetition Secured Claim shall continue to accrue and be payable in accordance with the terms of the governing DIP Documents, the Prepetition Loan Documents, and, to the extent modified, under the Final DIP Order. Nothing in this Term Sheet shall be construed to reduce, waive, or otherwise modify the accrual or payment of any such interest, fees, or expenses. |
| **Non-Disparagement** | Each Settlement Party agrees that it shall not, and shall direct its respective officers, directors, advisors, and representatives (in their capacities as such) not to, make or cause to be made any public statement that disparages or defames any other Settlement Party with respect to the Settlement, the terms of this Term Sheet, the Prepetition Secured Claim, or the DIP Facility. |

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Settlement Parties have executed this Term Sheet as of the date first written above.

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: */s/ Darren Azman*
Name: Darren Azman
Title: McDermott Will & Schulte LLP, in its capacity as
Co-Counsel to the Official Committee of Unsecured Creditors

**MISHMERET TRUST COMPANY LTD.**
*as Prepetition Trustee*

By: */s/ Michael Friedman*
Name: Michael Friedman
Title: Chapman and Cutler LLP, in its capacity as
Co-Counsel to the Prepetition Trustee

**MISHMERET TRUST COMPANY LTD.**
*as DIP Agent*

By: */s/ Michael Friedman*
Name: Michael Friedman
Title: Chapman and Cutler LLP, in its capacity as
Co-Counsel to the DIP Agent

# EXHIBIT 2

**Approved Budget**

**SIMAD Holdings**
*Bond Extended Budget, Excluding Club Getaway*

**Bond**

| No. | *$ in 000s* Forecast/Actual Week Ending | 16 Forecast 10/2/2026 | 17 Forecast 10/9/2026 | 18 Forecast 10/16/2026 | 19 Forecast 10/23/2026 | 20 Forecast 10/30/2026 | Total Start WE 10/02/26 End WE 10/30/26 |
|---|---|---|---|---|---|---|---|
| **I. Net Cash Flow** | | | | | | | |
| 1. | Camper Deposits | $ - | $ - | $ - | $ - | $ - | $ - |
| 2. | Tuition Refunds | (0) | 0 | - | - | - | (0) |
| 3. | Other Receipts | 3 | - | - | - | - | 3 |
| 4. | Intercompany Funding | - | - | - | - | - | - |
| 5. | Rental Income | - | - | - | - | - | - |
| 6. | **Total Receipts** | **$ 3** | **$ 0** | **$ -** | **$ -** | **$ -** | **$ 3** |
| 7. | Payroll & Benefits | (168) | (69) | (168) | (101) | (195) | (702) |
| 8. | Camp Operations | (98) | (77) | (22) | (16) | (12) | (225) |
| 9. | Rent Utilities & Maintenance | (68) | (37) | (10) | (13) | (13) | (141) |
| 10. | Insurance | (33) | - | (0) | - | - | (33) |
| 11. | Marketing & Enrollment | (2) | (1) | (3) | (1) | (3) | (10) |
| 12. | Other Operating | (30) | (13) | (3) | (2) | (6) | (54) |
| 13. | Intercompany | - | - | - | - | - | - |
| 14. | Taxes | (103) | - | - | - | - | (103) |
| 15. | **Total Operating Disbursements** | **$ (501)** | **$ (198)** | **$ (206)** | **$ (133)** | **$ (230)** | **$ (1,267)** |
| 16. | **Operating Cash Flow** | **$ (498)** | **$ (198)** | **$ (206)** | **$ (133)** | **$ (230)** | **$ (1,265)** |
| 17. | **Transfers to Restricted Cash** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |
| 18. | **Net Cash Flow** | **$ (498)** | **$ (198)** | **$ (206)** | **$ (133)** | **$ (230)** | **$ (1,265)** |
| **II. Cash Balances - Book** | | | | | | | |
| 19. | Beginning Balance | $ 236 | $ 134 | $ 64 | $ 55 | $ - | $ 236 |
| 20. | Net Cash Flow | (498) | (198) | (206) | (133) | (230) | (1,265) |
| 21. | Transfers In - Unallocated Operating Cash | 396 | 128 | 195 | 39 | 38 | 797 |
| 22. | Transfers In - Contingency Reserve for Camps | - | - | 2 | 38 | 192 | 232 |
| 23. | Transfers In - Contingency Reserve for Professional Fees | - | - | - | - | 4,197 | 4,197 |
| 24. | Transfers In - Sale Proceeds | - | - | - | - | 12,500 | 12,500 |
| 25. | Transfers Out - UST Fee Funding | - | - | - | - | (307) | (307) |
| 26. | Transfers Out - Professional Fee Funding | - | - | - | - | (16,390) | (16,390) |
| 27. | **Ending Cash Balance** | **$ 134** | **$ 64** | **$ 55** | **$ -** | **$ -** | **$ -** |
| | **Unallocated Operating Cash** | | | | | | **Total** |
| 28. | Beginning Balance | $ 797 | $ 400 | $ 273 | $ 77 | $ 38 | $ 797 |
| 29. | Transfers Out to Camps | (396) | (128) | (195) | (39) | (38) | (797) |
| 30. | **Ending Balance** | **$ 400** | **$ 273** | **$ 77** | **$ 38** | **$ -** | **$ -** |
| | **Contingency Reserve** | | | | | | **Total** |
| 31. | Beginning Balance | $ 4,429 | $ 4,429 | $ 4,429 | $ 4,428 | $ 4,389 | $ 4,429 |
| 32. | Transfers Out to Camps | - | - | (2) | (38) | (192) | (232) |
| 33. | Transfers Out for Professional Fees | - | - | - | - | (4,197) | (4,197) |
| 34. | **Ending Balance**[1] | **$ 4,429** | **$ 4,429** | **$ 4,428** | **$ 4,389** | **$ -** | **$ -** |
| | **Professional and UST Fee Funding** | | | | | | **Total** |
| 35. | Transfers In - Contingency Reserve for Professional Fees | $ - | $ - | $ - | $ - | $ 4,197 | $ 4,197 |
| 36. | Transfers In - Sale Proceeds | - | - | - | - | 12,500 | 12,500 |
| 37. | **Total Professional and UST Fee Funding** | **$ -** | **$ -** | **$ -** | **$ -** | **$ 16,697** | **$ 16,697** |

*Note: Net Cash Flow is intended to be funded from cash on hand at the camps, unused DIP funds held at Flagstar by Simad including funds in the contingency reserve, or funded by the buyer.*
*Professional and UST fees will be funded commensurate with sale closings and net proceeds therefrom.*
*1. Any and all remaining Contingency Funds held at Flagstar by Simad are assumed to then be added as a Source of Cash in the accompanying waterfall schedule.*