**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

**Order Filed on October 26, 2026**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**ORDER APPROVING KIWI OPERATINGCO LLC**
**EMERGENCY DIP TERM SHEET (SECOND ADVANCE) ON A FINAL BASIS**

The relief set forth on the following pages, numbered two (2) through three (3), is hereby

**ORDERED.**

**DATED: October 26, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

Upon the application [Docket No. 1194] of the above-captioned debtors and debtors-in-possession (collectively, the "SIMAD Debtors"), including Kiwi Operatingco LLC ("Kiwi"), in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), seeking entry of a *Consent Order Approving Kiwi Operatingco LLC Emergency DIP Term Sheet on an Interim Basis* (the "Emergency Financing Order") by and between by and between Kiwi and LKOE Associates, LLC ("LKOE" and, together with Kiwi, the "Parties") pursuant to which LKOE agreed to provide debtor in possession financing to Kiwi in the principal amount of $130,000 on the terms set forth in the Summary of Terms and Conditions of Debtor-in-Possession Loan Facility attached to the Emergency Financing Order (the "Emergency DIP Term Sheet"); and on September 25, 2026, the Court having entered the Emergency Financing Order [Docket No. 1197] approving the Emergency DIP Term Sheet (second advance) on an interim basis; and the Emergency Financing Order having scheduling a final hearing on the Emergency Financing Order for October 26, 2026, and an objection deadline for October 19, 2026; and no objection having been filed with respect to the Emergency Financing Order or the Emergency DIP Term Sheet approved thereby; and it appearing that no other or further notice of the relief granted herein need be given under the circumstances; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1. The Emergency DIP Term Sheet in form attached hereto as **Exhibit 1** is **APPROVED** on a final basis. The Emergency Financing Order shall be deemed a final order for all purposes.

2. The Parties are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order.

3. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

4. Notwithstanding anything in the Bankruptcy Rules or the Bankruptcy Local Rules, the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

**Exhibit 1**

**SUMMARY OF TERMS AND CONDITIONS OF
DEBTOR-IN-POSSESSION LOAN FACILITY**

**SEPTEMBER 25, 2026**

The following term sheet (the "**Term Sheet**") represents a summary of certain terms and conditions of a proposed debtor-in-possession financing for the benefit of the KOC Borrower (as defined below), a debtor in the bankruptcy cases jointly administered as *In re SIMAD Holdings, Ltd., et al.*, Case No. 26-16388 (CMG) (the "**Chapter 11 Case**") filed on June 4, 2026 in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**").

| | |
|---|---|
| KOC Borrower: | Kiwi Operating Co., LLC (the "**KOC Borrower**"). |
| DIP Lender: | LKQE Associates, LLC ("**LKQE**" or the "**DIP Lender**") |
| Amount and Form of DIP Loan: | A single draw debtor-in-possession term loan ("**Second DIP Loan**") in the principal amount of $130,000.00 (the "**Loan Commitment**"), consisting of a single advance of $130,000 to the KOC Borrower, available upon entry of the Interim Order of the Bankruptcy Court and the other applicable terms and conditions of this Term Sheet (the "**Second KOC Advance**"). The Second KOC Advance shall be in addition to the initial DIP advance previously made by the DIP Lender in the principal amount of Five Hundred Thousand ($500,000.00) Dollars (the "**Initial KOC Advance**") pursuant to the initial DIP Loan (the "**Initial DIP Loan**") approved pursuant to that *certain Order Approving Kiwi Operatingco LLC Emergency DIP Term Sheet on a Final Basis* [Docket No. 931].<br><br>The KOC Borrower shall use commercially reasonable efforts to cause the $130,000 previously deposited by the DIP Lender into escrow on August 20, 2026, 2026 (the "**Escrow Deposit**") to be utilized in connection with the Second KOC Advance. If the KOC Borrower is unable, for logistical or timing reasons, to utilize the Escrow Deposit as part of the Second KOC Advance within the timeframe in which such Second KOC Advance is required, the DIP Lender shall make up to $130,000 of other funds available for the Second KOC Advance.<br><br>Notwithstanding anything herein to the contrary, the DIP Lender shall have no obligation to make any additional advances. |
| DIP Loan Documents: | The terms and conditions governing the DIP Facility shall be set forth in one or more definitive documents, all of which shall be in form and substance satisfactory to the DIP Lender in its sole discretion (the "**Second DIP Loan Documents**"); *provided however* that for the purposes of the Second KOC Advance, such funds may be provided under the terms and conditions of the Interim Order. For the avoidance of doubt, following the Second KOC Advance, the DIP Lender shall have no obligation to make any additional advance. |



CSDOCS/71829/0001-54191349v2
September 25, 2026

| | |
|---|---|
| DIP Loan Maturity: | The DIP Obligations, inclusive of the First KOC Advance and the Second KOC Advance, shall be due and payable upon the earliest of:<br>i. the date that is three (3) months after the Second KOC Advance under the Second DIP Loan;<br>ii. October 31, 2026, if the KOC Borrower's assets are not subject to an auction for the sale of the KOC Borrower's assets on or before October 15, 2026<br>iii. the closing date of the sale of the KOC Borrower's assets pursuant to an order entered by the Bankruptcy Court;<br>iv. the acceleration of the Second DIP Loan by the DIP Lender following the occurrence or during the continuation of an Event of Default (as defined below);<br>v. upon the payment of any insurance or condemnation proceeds relating to a material portion of the DIP Collateral; and<br>vi. the confirmation of a plan of reorganization or liquidation of the KOC Borrower (such earliest date, the "**Maturity Date**"). |
| DIP Facility Interest Rate: | Interest will accrue at a variable rate per annum equal to the One-Month Term Secured Overnight Financing Rate (SOFR) based on the market data published on a date which is two (2) U.S. Government Securities Business Days prior to the closing of the Chicago Mercantile Exchange, Inc. or its licensees as applicable, with all rights reserved or otherwise licensed by the Chicago Mercantile Exchange, Inc. plus a margin of 6.5% as such rate changes from time to time. The SOFR floor rate will be 3.50%.<br><br>Interest shall be payable in cash on the first business day of each calendar month, commencing on the first such date following the funding of the Second KOC Advance. All remaining accrued and unpaid interest shall be paid on the Maturity Date. |
| Fees | DIP Lender shall receive an origination fee of 2.0% of the Loan Commitment and an exit fee of 2.0% of the Loan Commitment fully earned upon the entry of the Interim Order by the Bankruptcy Court. The origination fee shall be payable with the Second KOC Advance and the exit fee shall be payable from the proceeds of a sale of substantially all of the KOC Borrower's assets. |
| DIP Loan Availability: | Commencing on the date of the Bankruptcy Court's entry of the Interim Order, the Second DIP Loan shall be made available to the KOC Borrower in an aggregate amount up to the lesser of the Loan Commitment and the amount of borrowings authorized by the Interim Order and, in turn, the Final Order, as applicable, and in any case in accordance with the DIP Budget (as defined below). |
| Use of Proceeds: | Proceeds of the Second DIP Loan shall be used by the KOC Borrower subject to DIP Budget approved in connection with the Initial KOC Advance to fund general corporate working capital and capital expenditure needs of the KOC Borrower, including to fund operations, |

| | |
|---|---|
| | and to pay administrative expenses in the Chapter 11 Case as permitted by the Bankruptcy Court or otherwise approved by the Bankruptcy Court, including without limitation, Professional Fees.<br><br>In no event shall any proceeds of the Second DIP Loan be used to satisfy any claim or obligation of a non-KOC Borrower Debtor.<br><br>No portion of the Second DIP Loan shall be used in connection with asserting any claims or causes of action against the DIP Lender or any of its respective advisors, agents and sub-agents, including for formal discovery proceedings in anticipation thereof, or challenging any lien thereof. |
| Budget and Variance: | On or before the fifth (5th) business day before the end of every four-week period beginning with the date of entry of the Interim Order, the DIP Lender may request an updated budget, and in such case, the KOC Borrower shall deliver to the DIP Lender and its attorneys, and counsel to and any official committee for unsecured creditors appointed in these jointly administered Chapter 11 Cases (the "**Creditors Committee**"), an updated budget for the subsequent 12-week period (a "**Subsequent DIP Budget**"), which shall be in form and substance acceptable to the DIP Lender. The DIP Budget or any Subsequent DIP Budget approved by the DIP Lender shall be deemed to constitute the "Approved DIP Budget" for purposes of the Interim Order (and this Interim Order to the extent it becomes a Final Order).<br><br>Each Approved DIP Budget delivered shall be accompanied by such supporting documentation as requested by the DIP Lender and shall be prepared in good faith based upon assumptions believed to be reasonable at the time of preparation thereof. "**Budget Period**" means the initial four-week period set forth in the Approved DIP Budget in effect at such time.<br>**Permitted Variances:** Commencing with the third (3rd) full calendar week after the entry of the Interim Order, Permitted Variances shall be tested on each Friday on a weekly basis for the Loan Parties' actual expenditures (the "**Operating Disbursements**") (each such date, a "**Testing Date**"). The Loan Parties shall not permit Operating Disbursements for any one-week period to be more than 115% of the Budgeted Disbursements on an aggregate basis as set forth in the Approved DIP Budget with respect to such period (the "**Permitted Variances**"). To the extent that actual aggregate disbursements as of any Testing Date are less than the aggregate budgeted disbursements as of such Testing Date (a "**Favorable Variance**"), such Favorable Variance may be carried forward and added to the permitted disbursements for a subsequent testing period.<br>**Budget Variance Reporting:** Commencing after the third (3rd) full week after the entry of the Interim Order, on or before 5:00 p.m. (prevailing Eastern time) on Thursday of every calendar week ending on Friday, the Loan Parties shall deliver to the DIP Lender, the DIP Lenders' |

| | |
|---|---|
| | Advisors, and counsel to the Creditors' Committee, if any, a budget variance report/reconciliation (each, a "**Variance Report**") in form reasonably satisfactory to the DIP Lender (the "**Approved DIP Budget Variance Report**"), setting forth in detail (i) the Operating Disbursements for the immediate one-week period ending on the applicable Testing Date; and (ii) as to each material variance contained in the Approved DIP Budget Variance Report and required to be tested, an indication as to whether such variance is temporary or permanent and an analysis and explanation in reasonable detail for any such material variance. In addition, the Loan Parties shall provide a detailed, line-by-line computation of actual versus budget deviations on a bi-weekly basis beginning in the third week following entry of the Interim Order, with brief but meaningful commentary for each material line-item deviation (both favorable and unfavorable) when comparing actuals to the Approved DIP Budget for all variances greater than $5,000. |
| Collateral: | All assets of the KOC Borrower (and its bankruptcy estate) of any nature whatsoever and wherever located, whether first arising prior to or following the Petition Date, now owned or hereafter acquired, including but not limited to (a) all accounts; (b) all cash and currency; (c) all chattel paper; (d) all deposit accounts; (e) all documents; (f) all equipment; (g) all fixtures; (h) all general intangibles; (i) all instruments; (j) all inventory; (k) all investment property; (l) all letter-of-credit rights; (m) all goods; (n) all other personal property and assets owned by the KOC Borrower; (o) all books and records pertaining to the foregoing; and (p) all real property (collectively, the "**DIP Collateral**"); provided, however, for the avoidance of doubt, the DIP Collateral shall not include any commercial tort claims, claims against directors and officers, and avoidance action claims. |
| Legal Fees: | The Debtors shall pay the reasonable and documented attorneys' fees, and out-of-pocket expenses of the DIP Lender incurred in connection with the Second DIP Loan, or the Chapter 11 Case, within ten (10) days of delivery of a statement to the Debtors, the U.S. Trustee, and any Creditors Committee. For the avoidance of doubt, these statements shall not be required to be filed with the Bankruptcy Court or be subject to Bankruptcy Court approval. |
| Liens and Priorities: | The Second DIP Loan shall be secured by a first priority lien in the Collateral with the DIP Lender's liens to be deemed effective and automatically perfected upon the date of the Interim Order without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of, or over, any Collateral, subject only to the Permitted Liens and *pari passu* with the liens granted to the DIP Lender pursuant to the Initial KOC Advance and the DIP Loan approved pursuant to that certain *Order Approving Kiwi Operatingco LLC* |

| | |
|---|---|
| | *Emergency DIP Term Sheet on a Final Basis* [Docket No. 931]; *provided however*, that DIP Lender may require the execution by the Loan Parties and the recording of certain of such documents, as determined by the DIP Lender in its sole discretion. All liens and security interests granted to LKQE under the Interim Order and DIP Loan Documents shall be the "DIP Liens".<br>The DIP Liens shall:<br>a) pursuant to section 364(c)(1) of the Bankruptcy Code, be valid, binding liens with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114;<br>b) pursuant to section 364(c)(1) of the Bankruptcy Code, be a valid, binding, enforceable and automatic lien on all prepetition and Postpetition property of the KOC Borrower that is not subject to a valid, perfected, non-avoidable lien;<br>c) pursuant to section 364(c)(1) of the Bankruptcy Code, be valid, binding enforceable and automatically fully-perfected first priority senior priming security interest in and liens upon all DIP Collateral, including all tangible and intangible prepetition and postpetition property of the KOC Borrower, which priming liens shall be senior in priority to all existing liens on such property, subject and subordinate only to the Permitted Liens, but senior to all other prepetition secured debt of the KOC Borrower.<br>d) Permitted Liens shall include (i) the prepetition indebtedness due to Beacon Bank as successor to Putnam County Savings Bank, pursuant to that certain Mortgage Note dated August 28, 2013 and related documents, which indebtedness is approximately $488,952 as of the Petition Date; and (ii) the indebtedness due LEAF Capital Funding, LLC and/or its Assigns relating to Specific Equipment – Kyocera Copier, all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins) and secured by a UCC-1 filed on 11/26/2025 at Filing No. 202511267559051. |
| Affirmative Covenants: | The Second DIP Loan Documents shall include such affirmative covenants as are usual and customary for transactions of this type (and to include reporting covenants, including with respect to the DIP Budget and permitted variances), update meetings and/or calls with the DIP Lender and the CRO, advisors to CRO, SSG, and FTI as reasonably requested. The Debtors and their professionals shall provide LKQE with periodic updates on the sale process. |
| Negative Covenants: | The Second DIP Loan Documents shall include such negative covenants as are usual and customary for transactions of this type (and to include |

| | |
|---|---|
| | limitations on indebtedness, liens, investments, acquisitions, restricted payments and dispositions of assets). |
| Events of Default: | The Second DIP Loan Documents will include events of default that are usual and customary for financings of this kind and that are reasonably acceptable to the DIP Lender (each an "**Event of Default**"), including, without limitation, the following:<br><br>Failure to make payments to DIP Lender when due;<br><br>Breaches of representations and warranties;<br><br>The Chapter 11 Case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code; a trustee, receiver, interim receiver or receiver and manager shall be appointed in the Chapter 11 Case, or a responsible officer or an examiner with enlarged powers shall be appointed in the Chapter 11 Case; provided, however, for the avoidance of doubt that the appointment of an examiner with investigatory powers shall not constitute an Event of Default;<br><br>Any super-priority administrative expense claim or lien that is *pari passu* with or senior to the claims, charges or liens of the DIP Lender or the DIP Lender shall have arisen or be authorized or allowed;<br><br>Except for payments to the DIP Lender, the Debtors shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables, other than payments authorized by the Bankruptcy Court in orders entered upon pleadings in form and substance satisfactory to the DIP Lender, in its sole discretion;<br><br>The Bankruptcy Court shall enter an order granting relief from the automatic stay to any creditor or party in interest: (i) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of the KOC Borrower; or (ii) to permit other actions that would have a material adverse effect on the KOC Borrower or their estates;<br><br>An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying the Interim Order or any Final Order, or the Debtors shall apply for the entry of such an order, without the prior written consent of the DIP Lender;<br><br>Any of the Second DIP Loan Documents shall cease to be valid or effective or shall be contested by the Debtors; |

| | |
|---|---|
| | The Debtors shall fail to comply in any respect with the Interim Order or any Final Order;<br><br>The Debtors shall file a chapter 11 plan that does not propose to indefeasibly repay the Second DIP Loan in full in cash on the plan effective date, unless otherwise consented to in writing by the DIP Lender;<br><br>The Debtors shall fail to comply with any of the affirmative covenants, or take any action in violation of any of the negative covenants, set forth in the Second DIP Loan Documents;<br><br>Cessation of the DIP liens or the DIP claims to be valid, perfected and enforceable; and<br><br>Entry of an order in any Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the DIP Obligations. |
| Remedies: | The DIP Documents will contain customary remedies, including, without limitation, the right following the occurrence of an Event of Default or the Maturity Date to (i) stop funding the Second DIP Loan; (ii) declare the Second DIP Loan to be immediately due and payable; and (iii) realize on all Collateral without the necessity of obtaining any further relief or order from the Bankruptcy Court. |
| Conditions Precedent: | The obligation of the DIP Lender to make any DIP Loan will be subject to customary closing conditions for this type of financing in form and substance satisfactory to the DIP Lender, in its sole discretion, including: (i) the entry of an Interim Order and, upon expiration of the Interim Order, the entry of a Final Order; (ii) the execution and delivery of the Second DIP Loan Documents; *provided* that the DIP Lender shall fund the Second KOC Advance to the KOC Borrower upon entry of the Interim Order and execution of this Term Sheet prior to execution and delivery of the Second DIP Loan Documents; (iii) receipt by the DIP Lender of a Budget in form and substance satisfactory to the DIP Lender; (5) no default or Event of Default shall have occurred and be continuing; and (vi) payment of all out-of-pocket costs, fees |
| Ongoing Conditions to Borrowing: | The conditions to all borrowings will include requirements relating to prior written notice of borrowing, the accuracy of representations and warranties, and the absence of any default or Event of Default and will otherwise be customary and appropriate for this type of financing. |
| Indemnity / Release: | The Debtors shall indemnify, pay and hold harmless the DIP Lender (and its directors, officers, employees, professionals and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence, bad faith, fraud, |

| | |
|---|---|
| | or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction).<br><br>The Second DIP Loan Documents and any interim and final order thereon shall provide for a full, absolute, plenary and unconditional release of the DIP Lender, in its capacity as such, of any liability for any and all claims, causes of action or other rights of the Debtors; provided that such release shall not release any claims or liabilities against the DIP Lender that a court of competent jurisdiction pursuant to a final, non-appealable order determines result from the bad faith, fraud, gross negligence, or willful misconduct of the DIP Lender. |
| Governing Law/Jurisdiction | The Debtors will submit to the non-exclusive jurisdiction and venue of the Bankruptcy Court, or in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, then in any state or federal court of competent jurisdiction in the state of New York; and shall waive any right to trial by jury.<br>The Second DIP Loan Documents shall be governed by New York law. |

KOC Borrower shall have delivered to LKQE, sufficiently in advance of closing, all information and documentation required by LKQE to evidence or facilitate both the KOC Borrower's and LKQE compliance with all applicable laws and regulations, including, without limitation, all "know your customer" rules in effect from time to time pursuant to the Bank Secrecy Act, USA PATRIOT Act and other applicable laws. Any failure by the KOC Borrower or any necessary third party to deliver to LKQE in a timely manner, any material information or documentation, or if LKQE reasonably determines that opening any account contemplated herein would potentially violate LKQE regulatory compliance policies or applicable law, shall permit LKQE to withdraw or cancel this financing offer, without liability.

**Please respond with acceptance of this proposal no later than five (5) business days from the date of issuance.**

**KIWI OPERATING CO, LLC**

By:______________________________________
Name:

**LKQE ASSOCIATES, LLC**

__________________________________________