**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**THE SIMAD DEBTORS' REPLY TO THE RESPONSE OF ORCAFUNDING LLC TO THE JOINDER AND SUPPLEMENTAL MEMORANDUM OF THE DAMIS DEBTORS, AND FURTHER MEMORANDUM IN SUPPORT OF A DETERMINATION THAT THE ORCAFUNDING SALE OF FUTURE RECEIPTS AGREEMENTS ARE SALES, NOT LOANS**

The above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors") respectfully submit this reply (this "Reply") to the *Response of OrcaFunding LLC to the Joinder and Supplemental Memorandum of the DAMIS Debtors, and Further Memorandum in Support of a Determination That the OrcaFunding Sale of Future Receipts Agreements Are Sales, Not Loans* [Docket No. 1480] (the "Response") in further support of *The SIMAD Debtors' (I) Memorandum in Law in Support of a Determination That the OrcaFunding Sale of Future Receipts Agreements are Disguised Loans and Not True Sales and (II) Opposition to OrcaFunding LLC's Memorandum of Law in Support of a Determination That the OrcaFunding Sale of Future Receipts Agreements are Sales, Not Loans* [Docket No. 1156] (the "Memorandum of Law")[2] following the hearing held by the Court on September 29, 2026 (the "Hearing").

---

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Memorandum of Law.

**REPLY**

The SIMAD Debtors adopt and incorporate the Memorandum of Law and the arguments made at the Hearing. Point II of the Response seeks to "complete" a record that is already closed, after both parties had a full opportunity to be heard at the Hearing. As discussed below, nothing in the Response alters the conclusion that the MCA Loan Agreements are disguised loans, not true sales of accounts receivable.

OrcaFunding first tries to clarify "What OrcaFunding Bought, and Why the Sellers Kept the Rest," asserting that it "did not buy the Sellers' receipts" but rather "the "Specified Percentage of them." Response ¶ 33. Whatever OrcaFunding purports to have "purchased," it exercised no control or "dominion" over any "Specified Percentage" of the actual receipts. Tr. 108:11–109:5; 134:9–18. Instead, it debited fixed weekly amounts of $43,750 and $125,000 from the SIMAD Debtors' bank accounts by ACH, from a single account designated by Mr. Shabsels, while the SIMAD Debtors used every other dollar without restriction. Tr. 79:21–80:15; 81:20–22; 108:11–20. OrcaFunding's recovery was capped by the "Periodic Amount," regardless of how the "Specified Percentage" of the SIMAD Debtors' accounts performed. Tr. 107:22–109:5. Indeed, OrcaFunding's counsel conceded at the Hearing that OrcaFunding's recovery is "capped at the purchase amount." Tr. 98:1–3. However the documents were "structured," OrcaFunding was a lender receiving fixed payments on a recurring schedule. SIMAD Mem. at 27–28.

OrcaFunding next repeats that Section 4 is a true reconciliation because it is mandatory and "retrospective." Response ¶ 36. It is not. As described at the Hearing, a true reconciliation would require OrcaFunding to purchase and bear the risk of a specified account, collect on it, and remit any excess to the SIMAD Debtors. Tr. 113:5–114:16. The "Reconciliation" in the MCA Loan Agreements provides for no such purchase, no transfer of "risk" that is the touchstone of the

Court's analysis, and no obligation to return any excess. Tr. 114:17–115:16. Rather, Section 4 contemplates a self-serving calculation of "average revenue" that OrcaFunding alone performs, from documents it controls. Tr. 111:24–112:20; SIMAD Mem. at 17–19. OrcaFunding's counsel conceded as much, acknowledging that Section 4(d) "does potentially grant Orca some discretion in determining average revenue for the purpose of reconciliation, we're not going to fight that point." Tr. 91:10–14. And the "Specified Percentage" itself was simply backed into from the weekly payment, which was calculated by dividing the purchased amount by 32 weeks. Tr. 114:22–115:10. This further confirms that the 32-week collection period under the MCA Loan Agreements is a *de facto* finite term. Tr. 119:11–122:9; SIMAD Mem. at 19–21.

OrcaFunding also repeats its refrain that *Apollo Funding* bars review of the reconciliation provision because the merchant there never invoked it. Response ¶¶ 44-45. As explained in the Memorandum of Law and at the Hearing, *Apollo Funding* has not prevented numerous bankruptcy courts from analyzing whether a merchant cash advance is a disguised loan or a true sale, and the ruling is not as expansive as OrcaFunding suggests. SIMAD Mem. at 19, n.5; Tr. 118:1–119:11. Unlike the *Kossoff* agreements, which were entered into between 2016 and 2020, the MCA Loan Agreements were executed in April and May 2026, mere weeks before the Petition Date, leaving "barely a track record" on which to invoke reconciliation. Tr. 89:18–20; 118:8–15; 135:24–136:2. It would be highly prejudicial if a chapter 11 debtor could not seek a determination that a merchant cash advance agreement is a disguised loan under the *LG Funding Factors* simply because no reconciliation had been performed. That cannot be the rule here, given the importance of the issue in these chapter 11 cases and the sheer size of the pool of merchant cash advances on which the SIMAD Debtors were obligated as of the Petition Date.

The SIMAD Debtors will not repeat their arguments that (a) OrcaFunding's filing of a proof of claim and UCC-1 financing statements is conduct typical of a lender (¶¶ 46–49) and (b) OrcaFunding swore to being an unsecured "creditor" with claims of $5.4 million against each SIMAD Debtor under a rider its own counsel drafted. Tr. 64:14–67:1; 76:1–77:2; 110:5–111:5. That rider says nothing about a protective filing, and OrcaFunding has never amended its proofs of claim. Tr. 67:13–16; 134:20–135:8. OrcaFunding's UCC-1 financing statements likewise describe the purported purchased receipts as "collateral" of a "secured party," and the filings against non-Debtors remain of record. Tr. 58:13–60:7; 63:15–64:2. OrcaFunding acted—and continues to act—as a lender seeking recovery from the SIMAD Debtors' estates.

Finally, OrcaFunding attempts to distinguish *M Design Village*, a decision from this District that it failed to cite in its brief. Tr. 101:12–20; 104:10–11. Judge Hall's decision remains good law and holds that the sale of future receipts that have not yet come into existence is "both a metaphysical and legal impossibility." Tr. 102:6–104:14. U.C.C. § 9-204(a) does not change the result; it provides only that, in addition to a security interest in primary collateral, "a security agreement may create or provide for a security interest in after-acquired collateral." *Id.* Here, as in *M Design Village*, the MCA Loan Agreements purport to sell "future receipts" that did not yet exist and were not specifically identified. Tr. 103:10–22; 105:7–106:8.

## CONCLUSION

As described in the Memorandum of Law, at the Hearing, and in the full record before the Court, the MCA Loan Agreements are, in substance, high-interest loans disguised as purchases of future receivables loans, not true sales. Tr. 121:3–122:3; 125:9–19. OrcaFunding never bore the risk on any particular receipt, making the MCA Loan Agreements more like "mutually-guaranteed loans" with more than 200 jointly and severally liable Sellers whose accounts were considered by

OrcaFunding's own witness, as "one giant, multi-part account." Tr. 79:16–20; 106:9–107:22; 116:8–117:25; 140:10–12. The SIMAD Debtors respectfully request that this Court determine that the MCA Loan Agreements are disguised loans and grant such other and further relief as this Court deems just and proper.

Dated: November 9, 2026

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors and*
*Debtors in Possession*