**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*

**Order Filed on November 10, 2026**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT BETWEEN YES CAMPS, LLC, AS BUYER, AND BANNER OPERATINGCO LLC AND BANNER LANDCO LLC, AS SELLERS, (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF SELLERS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b), AND 363(f), (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. <u>§ 365, AND (IV) GRANTING RELATED RELIEF</u>**

The relief set forth on the following pages, numbered two (2) through eighteen (18), is hereby **ORDERED**.

**DATED: November 10, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

---

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings, Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

Upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seeking entry of an order (this "Sale Order"), pursuant to the Bankruptcy Code, Bankruptcy Rules and Local Rules, authorizing and approving the Debtors' entry into and performance under the terms and conditions of that certain asset purchase agreement dated November 9, 2026 (together with the schedules and/ or exhibits thereto and all related documents, and as may be amended, supplemented or otherwise modified from time to time after the date hereof), attached hereto as Exhibit A (the "APA")[2], by and among the Sellers and YES Camps, LLC (together with any successors and permitted assigns, or designees, the "Buyer"); and the Court having entered the Bidding Procedures Order on June 26, 2026 [Docket No. 298] (the "Bidding Procedures Order") approving the bidding procedures (the "Bidding Procedures"), and the Court having considered any responses or objections thereto; and the Debtors having identified the Buyer's bid as the Successful Bid (as defined in the Bidding Procedures) for the Acquired Assets following conclusion of the Auction in accordance with the Bidding Procedures and as set forth in the *Notice of Designation of Successful Bidders with Respect to Certain of the SIMAD Debtors' Assets* [Docket No. 789] (the "Sale Notice") and the objection deadline of August 6, 2026 having expired; and the Court having held a hearing (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and this Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing,

[2] Capitalized terms not defined in this Sale Order have the meanings ascribed to them in the APA.

establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A. Jurisdiction and Venue. This Court has jurisdiction over the Debtors' chapter 11 cases, including this matter, pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the District of New Jersey. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Statutory Predicates. The statutory predicates for the relief sought herein are Sections 105(a), 363(b), 363(f), 363(m), 365, and 1146(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

C. Notice. Proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Notice, the APA, the Sale Hearing, and the Debtors' assumption and assignment to Buyer of the Assumed Contracts was provided to all parties entitled to notice in accordance with the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including (i) counsel to the Buyer (Davis Graham & Stubbs LLP, 3400 Walnut Street, Denver, Colorado, 80205, Attn: Adam L. Hirsch), (ii) the Office of the United States Trustee, (iii) the

Official Committee of Unsecured Creditors (the "Committee"), (iv) all creditors and parties in interest in these chapter 11 cases, (v) all parties asserting liens on the Acquired Assets, (vi) all non-debtor counterparties to the Assumed Contracts, and (vii) all applicable governmental and taxing authorities. No further or other notice of the Motion, the Auction, the Sale Notice, the APA, the Sale Hearing, or the Debtors' assumption and assignment to Buyer of the Assumed Contracts is or shall be required.

D. Title to Assets. The Acquired Assets constitute property of the Sellers' estates, and the Sellers are the sole and lawful owners of the Acquired Assets and hold good, valid, and marketable title thereto (subject to Permitted Encumbrances). The sale, transfer, and conveyance of the Acquired Assets to Buyer will be a legal, valid, and effective sale, transfer, and conveyance of the Acquired Assets and will vest the Buyer with all right, title, and interest of the Sellers in and to the Acquired Assets free and clear of all Encumbrances (as defined below), except for Permitted Encumbrances. Except as expressly provided for in this Sale Order and the APA, Buyer shall have no liability for any claims against or liabilities of the Debtors or their estates.

E. Sound Business Purpose. The Debtors have demonstrated a sound business purpose and compelling justification for consummating the sale of the Acquired Assets to the Buyer under 11 U.S.C. § 363(b). The Buyer is willing to acquire the Acquired Assets for the Purchase Price of: (a) $26,880,000 in cash; (b) the Cure Amounts; and (c) the assumption of Assumed Liabilities, without this consideration, the Sellers will not have sufficient liquidity to continue to operate

throughout this summer and thereafter. The Debtors' decision to sell the Acquired Assets outside a plan of reorganization pursuant to the procedures approved in the Bidding Procedures Order was an exercise of the Debtors' sound business judgment, is in the best interests of the Debtors, their estates, their creditors, and all parties in interest, and should be approved.

F. Adequate Consideration; Cash, Cure Amounts, and Assumed Liabilities. The consideration provided by the Buyer for the Acquired Assets constitutes fair and adequate consideration and constitutes reasonably equivalent value for the Acquired Assets. The Purchase Price consists of (a) $26,880,000 in cash; (b) the Cure Amounts; and (c) the assumption of Assumed Liabilities.

G. Arm's Length Transaction; Good Faith Purchaser. The APA was negotiated, proposed, and entered into by the Sellers and the Buyer without collusion, in good faith, and from arm's length bargaining positions. Neither the Buyer nor any of its Affiliates is an insider of the Debtors as that term is defined in 11 U.S.C. § 101(31). The Buyer is a good faith purchaser of the Acquired Assets within the meaning of 11 U.S.C. § 363(m) and is entitled to all of the protections afforded thereby. The Buyer has not engaged in any conduct that would prevent the application of 11 U.S.C. § 363(m). The APA was not entered into for the purpose of hindering, delaying, or defrauding any creditor of the Debtors.

H. Free and Clear. The Sellers are the rightful owners of the Acquired Assets. The Acquired Assets shall be transferred to the Buyer free and clear of all liens, claims, interests, and

encumbrances of any kind or nature whatsoever, including without limitation any Encumbrances as defined in the APA (collectively, "Encumbrances"), other than Permitted Encumbrances and Assumed Liabilities as set forth in the APA, pursuant to 11 U.S.C. § 363(f), because in each case one or more of the conditions set forth in 11 U.S.C. § 363(f)(1) through (5) have been satisfied with respect to each such Encumbrance. All holders of Encumbrances who did not object to the sale, or whose objections were overruled, are deemed to have consented to the sale pursuant to § 363(f)(2). All Encumbrances (other than Permitted Encumbrances) shall attach to the proceeds of the sale with the same validity, extent, and priority as existed immediately prior to the sale.

I. No Successor Liability. The Buyer is not a successor to the Debtors or their estates by reason of any theory of law or equity and shall not assume or agree to pay, satisfy, discharge, or perform, and shall not be deemed by the execution and delivery of the APA or the consummation of the transactions contemplated thereby to have assumed or agreed to pay, satisfy, discharge, or perform, and shall have no liability for, any Excluded Liability.

J. Assumption and Assignment of Contracts. The assumption and assignment of the Assumed Contracts to the Buyer pursuant to Section 365 of the Bankruptcy Code is integral to the APA, is in the best interests of the Debtors, their estates, and their creditors, and represents a valid and proper exercise of the Debtors' business judgment. The Buyer has demonstrated adequate assurance of future performance under the Assumed Contracts within the meaning of 11 U.S.C. §§ 365(b)(1) and 365(f)(2). The Cure Amounts, as determined by the Bankruptcy Court and to be paid

by the Buyer in connection with the Closing, are sufficient to satisfy all monetary defaults required to be cured under 11 U.S.C. § 365(b)(1)(A).

K. Transfer Taxes. To the extent applicable, the transfer of the Acquired Assets to the Buyer pursuant to this Sale Order and the APA constitutes a transfer pursuant to Section 363 of the Bankruptcy Code, and is exempt from stamp taxes, transfer taxes, real estate transfer taxes, mortgage recording taxes, and similar taxes under applicable state or federal law.

L. Sale Procedures. The Transaction was conducted in accordance with the Bidding Procedures approved under the Bidding Procedures Order [Docket No. 298]. The Sale Notice was duly filed on August 4, 2026, and the notice and objection period was completed in full compliance with the requirements of the Bidding Procedures Order.

M. Legal Authority. The legal requirements for approval of the sale have been satisfied. The sale is authorized pursuant to 11 U.S.C. §§ 105(a), 363, and 365.

N. Waiver of Stay. Good cause has been shown for waiver of the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d). The Transaction should be consummated promptly in accordance with the APA to preserve the going-concern value of the Camp Business, including, without limitation, the Acquired Assets. Immediate effectiveness of this Order is warranted.

**IT IS HEREBY ORDERED THAT:**

1. Approval of the APA and the Transaction. The APA, including all exhibits, schedules, and ancillary documents thereto, and the transactions contemplated thereby

(the "Transactions"), are hereby approved in their entirety pursuant to 11 U.S.C. §§ 105(a), 363, and 365. The Sellers are authorized and directed to execute, deliver, perform under, consummate, and implement the terms of the APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and consummate the Transactions. This Order is in form and substance reasonably acceptable to the Buyer as required under the APA.

2. Objections. Any and all objections to the entry of this Order and approval of the Transaction that have not been withdrawn, waived, or resolved prior to the Sale Hearing are hereby denied and overruled on the merits with prejudice.

3. Transfer Free and Clear. Pursuant to 11 U.S.C. §§ 363(b), and 363(f), the Sellers' sale, assignment, transfer, conveyance, and delivery of the Acquired Assets to the Buyer (or its designee), and the Buyer's acquisition of the Acquired Assets from Sellers pursuant to the APA and this Sale Order shall be free and clear of all Encumbrances of any kind or nature whatsoever, other than Permitted Encumbrances and Assumed Liabilities. All such Encumbrances (other than Permitted Encumbrances) shall attach to the proceeds of the sale with the same validity, extent, and priority as existed immediately prior to the sale. To the extent any junior lienholder asserts an interest in the Acquired Assets, such interest is extinguished upon entry of this Sale Order.

4. Good Faith Finding; Section 363(m) Protections; No Collusion. The Buyer is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to all of the protections afforded thereby. The reversal or modification on appeal of the authorization provided herein to

consummate the Transactions shall not affect the validity of the sale to the Buyer. The Buyer has acted in good faith in all respects in connection with this proceeding and the Transactions. Neither the Sellers nor the Buyer have engaged in any action or inaction that would cause or permit the sale to be avoided, or costs, damages, or other recovery to be imposed, under 11 U.S.C. § 363(n).

5. Sale Process; Consultation. The Debtors, in consultation with the Consultation Parties (as defined in the Bidding Procedures Order), including counsel to Mishmeret Trust Company Ltd., in its capacities as DIP Agent and as trustee for the Series A Bondholders, and the Committee, conducted a marketing and sale process for the Acquired Assets in accordance with the Bidding Procedures Order. Accordingly, the Buyer's bid, as reflected in the APA, constitutes the highest or otherwise best offer for the Acquired Assets.

6. No Successor Liability. Except as expressly provided in the APA, Buyer does not assume or agree to pay, satisfy, discharge, or perform, and shall not be deemed by the execution and delivery of the APA or the consummation of the transactions contemplated thereby to have assumed or agreed to pay, satisfy, discharge, or perform, and shall have no liability for, any Excluded Liability. Buyer shall have no liability or responsibility for any liability or other obligation of any Seller arising under or related to the Acquired Assets other than as expressly set forth in the APA, including, without limitation, (1) successor or vicarious liability of any kind or character, including, without limitation, any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, or substantial continuity, or (2) claims based on

sexual misconduct, personal injury, negligence, or child safety. Buyer is not, and shall not be, a successor to Sellers by reason of any theory of law or equity.

7. Assumption and Assignment of Assumed Contracts. Pursuant to 11 U.S.C. §§ 365(a), 365(b), and 365(f), the Sellers are authorized and directed to assume and assign to the Buyer, and the Buyer is authorized to accept the assignment of, the Assumed Contracts, effective as of the Closing. The Buyer has provided adequate assurance of future performance under the Assumed Contracts within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B). Anti-assignment provisions in the Assumed Contracts shall not restrict, limit, or prohibit the assumption and assignment of such contracts and do not constitute a breach or default thereunder. The assignment of the Assumed Contracts to Buyer shall not constitute a default or breach under any Assumed Contract, and no consent or approval of any Person is required for the assumption and assignment of any Assumed Contract. The Buyer's contract designation period under the APA may be extended by the Buyer in its discretion as provided therein.

8. Cure Amounts. The Cure Amounts set forth on Schedule 2.10(a) to the APA, or as otherwise determined by final, non-appealable order of the Court or agreed in writing between Buyer and the non-Debtor counterparty to an Assumed Contract, represent all amounts that must be paid to cure all defaults under the Assumed Contracts pursuant to 11 U.S.C. § 365(b)(1). Upon payment by the Buyer of the Cure Amounts at Closing, all defaults under the Assumed Contracts shall be deemed cured, and non-Debtor counterparties shall be forever barred from asserting any

claim or cause of action against the Buyer arising from any pre-Closing default under the Assumed Contracts.

9. Unresolved Cure and Assignment Objections. The Sellers' assumption of the Assumed Contracts is subject to consummation of the Transaction. To the extent that an objection by a counterparty to any Assumed Contract, including any objection relating to the applicable Cure Amount, is not resolved prior to the Closing Date, the Sellers, with the consent of the Buyer and in accordance with the APA, may elect to (a) not assume and assign such Assumed Contract to the Buyer; (b) postpone the assumption and assignment of such Assumed Contract until resolution of such objection, without delaying the closing of the Transaction; (c) if the objection relates solely to the amount of the Cure Amount, pay the undisputed portion of the applicable Cure Amount to the counterparty on the Closing Date, reserve the disputed portion, and assume and assign such Assumed Contract on the Closing Date; or (d) proceed with the assumption and assignment on such terms as are otherwise mutually agreeable to the applicable counterparty, the Sellers, and the Buyer. Notwithstanding the closing of the Sale and the absence of any objection thereto by any party asserting a Cure Objection, all Cure Objections are expressly preserved, and nothing herein or in the closing of the Sale shall be deemed to waive, release, resolve, prejudice, or otherwise affect such Cure Objections.

10. Transfer Taxes. To the extent applicable, the sale, transfer, and delivery of the Acquired Assets to the Buyer shall not be subject to any stamp tax, bulk sales tax, transfer tax, real

estate transfer tax, mortgage recording tax, or similar tax. All federal, state, and local governmental agencies and recording offices, including any County Clerk's Office, are directed to accept for recording any and all documents, instruments, or deeds necessary to effectuate and consummate the Transaction, free and clear of any transfer taxes, document stamps, or similar charges.

11. Buyer Designation Right. The Buyer is authorized to assign its rights under the APA and this Order to any affiliate or designee of the Buyer (the "Designee") without further order of this Court and without the consent of the Sellers as provided in the APA. Any such Designee shall be deemed the Buyer for all purposes hereunder and shall be entitled to all rights and protections under this Sale Order, including, without limitation, a good faith purchaser entitled to all of the protections of 11 U.S.C. § 363(m) and this Sale Order.

12. Injunction. All Persons (as defined in 11 U.S.C. § 101(41)) are forever prohibited and enjoined from taking any action against the Buyer (or its Designee), its successors, assigns, affiliates, members, managers, officers, employees, properties, or the Acquired Assets to recover any claim, Encumbrance, or other interest that such Person had or may have had with respect to the Debtors, including, without limitation, the Sellers, or the Acquired Assets that is extinguished or otherwise discharged by this Sale Order or otherwise excluded pursuant to the APA and this Sale Order, except as expressly permitted by this Sale Order or the APA.

13. Purchase Price Allocation. For the avoidance of doubt, the allocation of the Purchase Price set forth in Section 2.06 of the APA shall be without prejudice to the rights of the Debtors

under Section 2.09 of the APA and the rights of any party in interest, including, without limitation, the Committee, to seek a different allocation in connection with any proceeding in the Debtors' bankruptcy cases. Entry of this Sale Order shall not constitute approval of any allocation of the Purchase Price or a finding or determination that the allocation of sale proceeds among the Sellers is fair, reasonable, or appropriate.

14. DIP Financing. For the avoidance of doubt, all proceeds of the Transaction shall be subject to and applied and distributed in accordance with the terms and conditions of the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 552] (the "Final DIP Order"), including, without limitation, the requirements of paragraph 12(b) thereof.

15. For the avoidance of doubt, the attachment of Encumbrances to the proceeds of the Transaction shall not constitute a determination of the validity, extent, priority, or enforceability of any such Encumbrance and nothing in this Order shall impair, limit, or otherwise affect the rights of parties to Challenge (as defined in paragraph 12 of the Final DIP Order) the validity, extent, priority, or enforceability of the Encumbrances under and subject to paragraph 12 of the Final DIP Order.

16. For the avoidance of doubt, nothing in this Sale Order or the APA shall release, impair, waive, or otherwise affect any Challenges (as defined in the Final DIP Order) or Lender Avoidance Actions (as defined in the Final DIP Order) preserved pursuant to the Final DIP Order, all of which are expressly preserved and retained by the Sellers' estates regardless of the consummation of the Transaction.

17. FSA. In connection with the sale of the assets of Debtor Banner Operating Co., LLC ("Banner") to Buyer:

(a) To the extent that Banner accepts any deposits on registrations for 2027 camp attendees ("Deposits") via payment card transactions processed by Banner's current payment processor, FS Holdco, Inc. d/b/a FS Acquiring ("FSA"), before the closing of such sale, FSA is hereby authorized and permitted to hold all proceeds of such deposit transactions in reserve, pending both the closing of the sale and Buyer's election as to whether to take an assignment of the executory merchant processing agreement between Banner and FSA pursuant to section 365 of the Bankruptcy Code.

(b) In the event that Buyer elects to have Banner assume and assign its agreement with FSA to Buyer, and in order to permit FSA, conditioned upon Buyer's satisfaction of reasonable underwriting requirements and/or receipt of security reasonably acceptable to FSA, to release any reserved funds to Buyer upon closing of the sale without exposure to any resulting risk of loss, Buyer shall be directly liable to FSA for all obligations incurred by FSA relating to the Deposits, notwithstanding that the transactions originated and were processed prior to the closing, including, without limitation, (i) if appropriate in Buyer's discretion, responding to and submitting a supported opposition to any customer disputes as to the Deposits, and (ii) the obligation to pay, or promptly reimburse FSA for paying or permit FSA to recover via setoff or recoupment any chargebacks that are allowed in favor of customers as a result from such disputes, as well as any associated fees or other monetary obligations.

(c) In the event that Buyer elects not to take an assignment of Banner's agreement with FSA, and in order to permit FSA, conditioned upon Buyer's satisfaction of reasonable underwriting requirements and/or receipt of security reasonably acceptable to FSA, to release any reserved funds to Buyer upon closing of the sale without exposure to any resulting risk of loss, Buyer shall nonetheless (i) if appropriate in Buyer's discretion, respond to and submit a supported opposition to any customer disputes as to the Deposits, and/or (ii) indemnify and hold FSA harmless from and against any chargebacks that are allowed in favor of customers as a result from such disputes, and promptly reimburse FSA for any payments made by or funds debited from FSA in satisfaction of such chargebacks, as well as any associated fees or other monetary obligations.

18. Direction to Third Parties. All entities that are presently, or on the Closing Date may be, in possession of any of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to the Buyer on the Closing Date. On the Closing Date, the Sellers' creditors are authorized and directed to execute such documents and take all other actions as may be reasonably requested to release their Encumbrances on the Acquired Assets, if any, as such Encumbrances may have been recorded or may otherwise exist. The Sellers shall cooperate with the Buyer following the Closing Date with respect to transition matters.

19. Self-Executing. The provisions of this Sale Order authorizing the sale and transfer of the Acquired Assets free and clear of all Encumbrances shall be self-executing, and neither the Sellers nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order. Without limiting the effect of the foregoing, if any Person or entity that has filed financing statements, mortgages, mechanics' liens, lis pendens, or other documents

evidencing any Encumbrance against the Acquired Assets shall not have delivered to the Buyer at or before Closing, in proper form for filing, termination statements, releases, or instruments of satisfaction, then (i) the Buyer is authorized to execute and file such termination statements, releases, or instruments of satisfaction on behalf of such Person, and (ii) a certified copy of this Sale Order may be filed with any recording office as conclusive evidence of the release of all such Encumbrances.

20. Recording. This Sale Order shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or otherwise, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets. A certified copy of this Sale Order may be filed with the appropriate clerk or recording office and shall constitute conclusive evidence of the free and clear transfer of the Acquired Assets to the Buyer.

21. Waiver of Stay. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry, and the 14-day stays imposed by such rules are hereby waived. The Sellers and the Buyer are authorized to close

the Transactions immediately upon satisfaction or waiver of the conditions to closing set forth in the APA, but in no event later than the Outside Date of the APA.

22. Binding Effect. This Sale Order shall be binding upon (a) the Debtors and Sellers, (b) all creditors of the Debtors and Sellers, (c) holders of Encumbrances on the Acquired Assets, (d) all non-debtor counterparties to the Assumed Contracts, and (e) all other parties in interest and their respective successors and assigns, whether or not such parties were served with notice of the Sale Hearing, and (f) any trustees, examiners, or other fiduciaries subsequently appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 of any Debtor's case. This Sale Order shall inure to the benefit of the Buyer and its successors, assigns, and Designees.

23. Survival. The terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any chapter 11 plan in these cases, (b) converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, (c) dismissing these chapter 11 cases, or (d) pursuant to which this Court abstains from hearing these cases. The terms of this Sale Order shall continue in full force and effect notwithstanding any such subsequent order.

24. Conflicts. To the extent that any provision of this Sale Order conflicts with any provision of the APA, the terms of this Sale Order shall govern and control. To the extent that there is any inconsistency between this Sale Order and any other order entered in these chapter 11 cases, the terms of this Sale Order shall govern.

25. Retention of Jurisdiction. This Court retains exclusive jurisdiction to (a) enforce and implement the terms and provisions of this Sale Order and the APA (including any injunction hereunder), including all amendments thereto and any waivers and consents thereunder, (b) resolve any disputes arising in connection with this Sale Order, the APA, or the Transaction, (c) interpret, implement, and enforce the provisions of this Sale Order, (d) adjudicate any claims or disputes regarding the Cure Amounts, (e) protect the Buyer and its successors, assigns, and Designees against any Encumbrances in accordance with this Sale Order, and (f) enter such further orders as may be necessary or appropriate to implement or effectuate the provisions of this Sale Order.