UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**MONTHLY FEE STATEMENT COVER SHEET**
**FOR THE PERIOD OCTOBER 1, 2026 THROUGH OCTOBER 31, 2026**

| | |
|---|---|
| In re SIMAD Holdings, Ltd., *et al.*[1] | Applicant: FTI Consulting, Inc. |
| Case No. 26-16388 (CMG) | Client: Debtors and Debtors in Possession |
| Chapter 11 | Case Filed: June 4 and June 5, 2026 |

COMPLETION AND SIGNING OF THIS FORM CONSTITUTES A CERTIFICATION UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746.

RETENTION ORDER ATTACHED.

*/s/ Cynthia Romano* 11/13/2026
CYNTHIA ROMANO Date

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings, Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

## SECTION I
## FEE SUMMARY

Summary of Amounts Requested for the Period
October 1, 2026 through October 31, 2026 (the "**Compensation Period**")

| | |
|---|---|
| Fee Total | $1,720,241.50 |
| Disbursement Total | $4,534.49 |
| Total Fees Plus Disbursements | $1,724,775.99 |

Summary of Amounts Requested for Previous Periods

| | |
|---|---|
| Total Previous Fees and Expenses Requested: | $9,403,151.09 |
| Total Fees and Expenses Allowed to Date: | $0.00 |
| Total Retainer Remaining: | $0.00 |
| Total Holdback: | $1,864,380.70 |
| Total Received by Applicant: | $5,868,055.86 |

| Professional[2] | Position | Team | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| Christopher Creger | Senior Managing Director | Corporate Finance / Bankruptcy | 1,495 | 233.2 | $348,634.00 |
| Christopher Pizzo | Senior Managing Director | Corporate Finance / Bankruptcy | 1,495 | 45.0 | $67,275.00 |
| Cynthia Romano | Senior Managing Director | Corporate Finance / Bankruptcy | 1,495 | 5.5 | $8,222.50 |
| Edith Wong | Senior Managing Director | Forensic Accounting / Non-Bankruptcy | 1,460 | 0.5 | $730.00 |
| Joshua Beets | Managing Director | Corporate Finance / Bankruptcy | 1,195 | 143.4 | $171,363.00 |
| Russell Laughlin | Senior Director | Corporate Finance / Bankruptcy | 1,100 | 175.9 | $193,490.00 |
| Vivek Ram | Senior Director | Corporate Finance / Bankruptcy | 1,055 | 137.0 | $144,535.00 |
| Constantino Kyprianou | Director | Technology | 350 | 0.6 | $210.00 |
| Jade Damas Calixto | Director | Forensic Accounting / Non-Bankruptcy | 985 | 3.0 | $2,955.00 |
| Mihai Cirstea | Director | Corporate Finance / Bankruptcy | 1,000 | 118.8 | $118,800.00 |
| David Lee | Senior Consultant | Corporate Finance / Bankruptcy | 715 | 81.6 | $58,344.00 |
| Evan Hudgins | Senior Consultant | Corporate Finance / Bankruptcy | 850 | 228.6 | $194,310.00 |
| Max Pidgeon | Senior Consultant | Corporate Finance / Bankruptcy | 850 | 164.7 | $139,995.00 |
| Melissa Cundiff | Senior Consultant | Forensic Accounting / Non-Bankruptcy | 740 | 0.9 | $666.00 |
| Reagan Jones | Senior Consultant | Corporate Finance / Bankruptcy | 785 | 171.2 | $134,392.00 |
| Ethan Xie | Consultant | Corporate Finance / Bankruptcy | 535 | 12.5 | $6,687.50 |
| Finnley Collins | Consultant | Corporate Finance / Bankruptcy | 535 | 1.0 | $535.00 |
| John Flittner | Consultant | Corporate Finance / Bankruptcy | 535 | 17.5 | $9,362.50 |
| Kavi Bommakanti | Consultant | Corporate Finance / Bankruptcy | 595 | 209.8 | $124,831.00 |
| **SUBTOTAL** | | | | **1,750.7** | **$1,725,337.50** |
| | *Less: Professionals with Less than Five Billable Hours*[3] | | | *6.0* | *$5,096.00* |
| **GRAND TOTAL** | | | | **1,744.7** | **$1,720,241.50** |

2 The Fee Summary is sorted by FTI position and then alphabetically by professional name.

3 Professionals who billed fewer than five hours during the October period have been written off in their entirety. Accordingly, 5 professionals, representing 6.0 hours and $5,096.00 in fees, have been excluded from the amounts reflected herein.

## SECTION II
## SUMMARY OF SERVICES

| Task Category | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 239.0 | $226,627.50 |
| 7 | Prepare for and Attend Court Hearings | 5.4 | $6,879.00 |
| 12 | Monthly Operating Reports | 115.4 | $97,498.00 |
| 13 | SOFAs & SOALs | 60.6 | $54,736.00 |
| 14 | General Bankruptcy Reporting | 19.3 | $14,875.00 |
| 15 | Claims Management, Reconciliation and Resolution | 252.2 | $285,618.00 |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 481.8 | $464,379.00 |
| 17 | Litigation / Dispute Related | 4.4 | $4,351.00 |
| 19 | Billing/Staffing Reports | 113.1 | $90,414.00 |
| 21 | Bank Reporting/Lender Engagement | 173.6 | $193,784.00 |
| 27 | Treasury Management | 71.1 | $62,294.50 |
| 28 | Cash Forecasting | 156.1 | $161,414.00 |
| 29 | Vendor Management | 26.3 | $24,154.00 |
| 31 | UCC Diligence | 32.4 | $38,313.50 |
| | **SUBTOTAL** | **1,750.7** | **$1,725,337.50** |
| | *Less: Professionals with Less than Five Billable Hours* | *6.0* | *$5,096.00* |
| | **GRAND TOTAL** | **1,744.7** | **$1,720,241.50** |

## SECTION III
## SUMMARY OF DISBURSEMENTS

| Disbursement Type | Amount |
|---|---|
| Transportation | $1,696.53 |
| Other[4] | $200.00 |
| Working Meals | $2,637.96 |
| **Total** | **$4,534.49** |

4 The "Other" disbursement category includes a purchased service for FTI technology related matters for $200.

## SECTION IV
## CASE HISTORY

(1) Date case filed: June 4 and June 5, 2026

(2) Chapter under which case commenced: Chapter 11

(3) Date of retention: July 14, 2026, *nunc pro tunc* to June 8, 2026. *See* **Exhibit A**.

If limit on number of hours or other limitations to retention, set forth: n/a

(4) The Applicant provides certain financial advisory and consulting services to the Debtors:[5]

(a) Services include the refinement and enhancement of the Debtors' thirteen (13)-week cash flow forecast, assisting the Debtors with treasury management, tracking and reporting actual cash flow against the budget, preparation of first day motions, preparation of financial analyses and reports for distribution to lenders and other relevant constituents, and supporting the sale process.

(b) The Applicant rendered all other services set forth on the invoices attached hereto as **Exhibit B and C**.[6]

(5) Anticipated distribution to creditors:

(a) Administration expense: Unknown at this time.

(b) Secured creditors: Unknown at this time.

(c) Priority creditors: Unknown at this time.

(d) General unsecured creditors: Unknown at this time.

(6) Final disposition of case and percentage of dividend paid to creditors: Unknown at this time.

[5] The following summary is intended to highlight the general categories of services the Applicant rendered on behalf of the Debtors and for the benefit of the estates; it is not intended to itemize each and every professional service which the Applicant performed.

[6] The invoices attached hereto as **Exhibit B and C** contain detailed descriptions of the services rendered and expenses incurred by the Applicant during the Compensation Period.

# **Exhibit A**

## **Retention Order**

Order Filed on July 14, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC.**
**AS FINANCIAL ADVISOR EFFECTIVE AS OF JUNE 8, 2026**

The relief set forth on the following pages, numbered two (2) through nine (9), is **ORDERED.**

**DATED: July 14, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

1 A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al.* |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISOR EFFECTIVE AS OF JUNE 8, 2026 |

Upon the *SIMAD Debtors' Application for Entry of an Order Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor as of June 8, 2026* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors"), for entry of an order (this "Order") (a) authorizing the SIMAD Debtors to employ and retain FTI Consulting, Inc. ("FTI") as the SIMAD Debtors' financial advisor as of June 8, 2026 in accordance with the terms and conditions set forth in two engagement letters between FTI and certain of the SIMAD Debtors (the "Engagement Letters") which are attached as **Exhibit 1** and **Exhibit 2** to this Order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and (b) approving the provisions of the Engagement Letters, including the compensation arrangements and indemnification and reimbursement provisions set forth therein, all as more fully set forth in the Application; and upon the First Day Declaration; and upon the Romano Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that sufficient cause exists for the relief set forth herein; and this Court having found that the SIMAD Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court being satisfied, based on the representations made in the Application and the Romano Declaration, that (a) FTI does not hold or represent an interest adverse to the SIMAD Debtors' estates and (b) FTI is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Application is granted as set forth herein.

2. Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3. In accordance with sections 327(a) and 328 of the Bankruptcy Code, the SIMAD Debtors are hereby authorized to retain FTI as financial advisors to the SIMAD Debtors, effective as of June 8, 2026, on the terms set forth in the Engagement Letters, as modified by this Order.

4. The terms of the Engagement Letters, including, without limitation, the indemnification provisions, are approved in all respects, as modified by this Order.

5. Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letters, FTI shall file interim and final fee applications for allowance of compensation and reimbursement of reasonable and documented out-of-pocket expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules as may then be applicable,

the Local Rules, the Fee Guidelines, any interim compensation orders entered by this Court, and any amendments or mofidications thereto.

6. FTI is entitled to reimbursement of actual and necessary expenses. In the event that, during the pendency of these chapter 11 cases, FTI requests reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be billed in one-tenth hour increments and shall be included in FTI's fee applications, and such invoices and time records shall be in compliance with the Local Rules, the U.S. Trustee Guidelines, and the standards of section 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Notwithstanding the foregoing, FTI shall only be reimbursed for any legal fees incurred in connection with these chapter 11 cases to the extent permitted under applicable law. All rights are reserved to permit objection to any request for reimbursement of expenses, including but not limited to any request for the reimbursement of legal fees of FTI's independent counsel. Notwithstanding anything in the Application, the Romano Declaration, or the Engagement Letters to the contrary, FTI shall not seek reimbursement from the SIMAD Debtors' estates for any fees incurred in defending any of FTI's fee applications in these chapter 11 cases.

7. The indemnification, contribution, and reimbursement provisions included in the Engagement Letters are approved, subject to the following:

> a) The indemnified Party shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Indemnity Agreement for services, unless such services and the indemnification, contribution, or reimbursement therefore are approved by this Court.

b) Notwithstanding any provisions of the Engagement Letters to the contrary, the SIMAD Debtors shall have no obligation to indemnify the Indemnified Parties or provide contribution or reimbursement to an Indemnified Party for any claim or expense that is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from any Indemnified Party's willful misconduct, gross negligence, fraud, self-dealing, or bad faith; (ii) for a contractual dispute in which the SIMAD Debtors allege the breach of an Indemnified Party's obligations under the Engagement Letters unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing to be a claim or expense for which an Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letters, as modified by this Order;

c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, an Indemnified Party believes that it is entitled to the payment of any amounts by the SIMAD Debtors on account of the SIMAD Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letters (as modified by this Order), including, without limitation, the advancement of defense costs, the Indemnified Party or FTI must file an application therefore in this Court, and the SIMAD Debtors may not pay any such amounts to such Indemnified Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification, contribution, or reimbursement by an Indemnified Party, and is not a provision limiting the duration of the SIMAD Debtors' obligation to indemnify, or make contributions or reimbursement to, the Indemnified Party. All parties in interest shall retain the right to object to any demand by any Indemnified Party for indemnification, contribution, and/or reimbursement; and

d) any limitations of liability provisions in the Engagement Letters (including the Indemnification Agreement) are deemed to be of no force and effect with respect to the services to be provided pursuant to this Order.

8. Any limitations of liability provisions or limitation on amounts to be contributed provisions in the Application, Engagement Letters and the attachments to the Engagement Letters

including but not limited to section 6.2 of the Standard Terms & Conditions shall be eliminated during the pendency of these Chapter 11 Cases.

9. FTI will keep its time records in tenth-of-an-hour increments in accordance with Local Rule 2016-1 of this Court and shall otherwise comply with the requirements of that Local Rule, as well as Bankruptcy Rule 2016(a), and the Fee Guidelines.

10. FTI will only bill fifty percent (50%) for non-working travel.

11. Notwithstanding anything to the contrary contained in the Application, the Romano Declaration, the Engagement Letters or any other provision in this Order, FTI's interim and final applications for compensation and reimbursement of fees and actual expenses shall be subject to review under the reasonableness standard in section 330 of the Bankruptcy Code.

12. Notwithstanding anything in the Application to the contrary and for the avoidance of doubt, FTI will not be entitled to recover attorneys' fees or expenses for defending its fee applications in these chapter 11 cases.

13. Prior to applying any increases in its hourly rates, FTI shall provide ten (10) business days' notice of any such increases to the Debtor, the U.S. Trustee, and the Committee, and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

14. Notwithstanding anything in the Application, the Romano Declaration or the Engagement Letters to the contrary, to the extent FTI retains the services of independent

contractors or subcontractors (collectively, the "<u>Contractors</u>") in these chapter 11 cases to conduct certain of its investment banking services under the Engagement Letters in its stead and FTI seeks to pass through to the SIMAD Debtors, and requests to be reimbursed for, the fees and/or costs of the Contractors, FTI shall (a) pass through the fees of such Contractors to the SIMAD Debtors at the same rate that FTI pays the Contractors; (b) seek reimbursement for actual costs of the Contractors only; (c) ensure that the Contractors perform the conflicts check required by Bankruptcy Rule 2014 and file with the Court such disclosures as required by Bankruptcy Rule 2014; and (d) attach any such Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications filed in these chapter 11 cases.

15. None of the fees payable to FTI under the Engagement Letters shall constitute a "bonus" or fee enhancement under applicable law.

16. Notwithstanding anything in the Application to the contrary, FTI shall seek reimbursement from the SIMAD Debtors' estates for its engagement-related expenses at FTI's actual cost paid.

17. Section 5.1 of the Standard Terms & Conditions attached to the Engagement Letters is revised to reflect that termination will only be allowed upon entry of an Order by the Bankruptcy Court.

18. Such services other than set forth in the Application that the SIMAD Debtors may request that FTI provide during the course of these chapter 11 cases, and as agreed to by FTI, shall be subject to separate application and order of this Court.

19. Notwithstanding anything in the Application or the Engagement Letters to the

contrary, FTI shall provide any and all monthly fee statements, interim fee applications, and final fee applications in searchable electronic format ("LEDES" or "Excel") to the U.S. Trustee.

20. The services that FTI will provide to the SIMAD Debtors will be appropriately directed by the SIMAD Debtors so as to avoid duplication of efforts among the other professionals retained in these chapter 11 cases and performed in accordance with applicable standards of the profession. FTI will work collaboratively with the SIMAD Debtors' management and other professionals to avoid duplication of services. The SIMAD Debtors believe that the services to be provided by FTI will complement and will not be duplicative of any services of the SIMAD Debtors' other professionals.

21. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

22. To the extent there is any inconsistency between the terms of the Application, the Romano Declaration, and this Order, the terms of this Order shall govern.

23. The SIMAD Debtors and FTI are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

24. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25. Notwithstanding anything in the Application, the Romano Declaration, or the Engagement Letters to the contrary, the requirement for the SIMAD Debtors to pay interest if

Case 26-16388-CMG Doc 148 Filed 07/13/26 Entered 07/13/26 11:29:59 Desc Main
Document Page 9 of 14



payment is not received within thirty (30) days of invoice date at the rate of one and one half percent (1 ½ %) a month is null and void during the pendency of these chapter 11 cases.

26. The last paragraph of section 3 of the June 8, 2026 Engagement Letter is null and void during the pendency of these chapter 11 cases.

27. Notwithstanding anything in the Application, the Romano Declaration, or the Engagement Letters to the contrary, the requirement for the SIMAD Debtors to dispute invoices within either 20 or 30 days of receipt and to object to such invoices in that time period are null and void during the pendency of these bankruptcy cases.

28. Notwithstanding anything to the contrary in the Application, the Romano Declaration or the Engagement Letters, section 7.2 of the Standard Terms & Conditions shall be null and void during the pendency of these cases and this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Engagement Letters and this Order.

29. Notwithstanding anything to the contrary in the Application, the Romano Declaration or the Engagement Letters, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Engagement Letters and this Order.

# Exhibit 1

## Engagement Letter

FTI CONSULTING

**<u>PRIVATE & CONFIDENTIAL</u>**

**June 8, 2026**

SIMAD HOLDINGS LTD.
50 Quality Street, #110357
Trumbull, Connecticut, 06611
Attn: Asaf Ravid
Email: aravid@circleinv.com

**<u>Re: SIMAD HOLDINGS LTD. AND ITS JOINTLY ADMINISTERED DEBTORS</u>**

Dear Asaf:

1. **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by SIMAD Holdings Ltd. and its jointly administered debtors and debtors in possession (collectively, the "SIMAD Debtors," the "Company," or "Client") to provide certain financial advisory and consulting services (the "Services"). This letter of engagement (the "Engagement Letter") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided (the provision of such Services, the "Engagement").

2. **Scope of Services**

The Services, to be performed at your direction, are expected to include the following:

- Refine the Company's existing 13-week cash flow forecast to incorporate enhanced receipts and disbursements forecasting, validate underlying assumptions, identify liquidity risks and timing gaps, and develop a reliable short-term liquidity management tool to support operational decision-making, stakeholder communications, and contingency planning.;

- Assist the Company in reviewing the Company's current business outlook and near-term business plan, including but not limited to business plan, requirements to keep operating, and opportunities, if any, for liquidity, profitability, and capital enhancement;

- Assist the Company in producing financial analyses for and reporting to existing or perspective lenders and other constituents, as requested;

- Advise the Company on strategies for developing and negotiating potential restructuring proposals with senior creditors, bondholders, and other key stakeholders, as applicable;

FTI CONSULTING

- Perform such other services and analyses relating to the Company that are or become required on behalf of and at the behest of the Company, and which are mutually agreed to in writing.

**Requirements of Filing for Bankruptcy Court Protection**
In connection with the Company's chapter 11 cases, FTI has been asked to:

- Develop a detailed approach to preparing the Company for one or more bankruptcy proceedings, some of which have already commenced, including any potential recognition of U.S. proceedings, if necessary. The preparation will be structured in the most cost effective and efficient manner possible suitable for the situation;

- Assist the Company in implementing such plan as requested by the Company;

- Prepare the necessary financial and operating information for the:
  - Preparation of bankruptcy petitions and related documents;
  - Assisting with developing accounting and operating procedures to segregate prepetition and post-petition business transactions;
  - Assisting in the development of a creditor matrix;
  - Developing training materials and assist in training Company personnel with respect to chapter 11 procedures;
  - Assisting in the identification of executory contracts and unexpired leases;
  - Preparation of the statements of financial affairs, schedules, monthly operating reports, and other regular reports required in such proceedings;
  - Assisting in the development of a Key Employee Incentive Plan and a Key Employee Retention Plan, if needed;
  - Compilation and analysis of the information necessary for "First Day" and "Second Day" motions and orders; and
  - Establish the necessary procedures and processes to allow for the timely satisfaction of court mandated reporting requirements;

**Requirements of Operating Under Bankruptcy Court Protection**

- Develop framework necessary to administer a comprehensive Chapter 11 claims process;

- Assist the Company to prepare for the most efficient and effective resolution of any potential court-based restructuring, whether implemented through a Chapter 11 plan, a section 363 sale, or any other structure;

- Attend meetings and assist in discussions with potential lenders, investors, creditors, committee(s), other parties in interest and/or professionals hired by the same, as requested by the Company;

- Assist the Company in negotiations with creditors, suppliers, lessors and other interested parties as appropriate;

- Assist the Company with the preparation and confirmation of a value optimizing Chapter 11 plan, and/or a sale of certain or substantially all the Company's assets pursuant to section 363 of the Bankruptcy Code;

- Upon written request and with agreement by FTI, advise on communications plans, externally and internally, including employees, suppliers, customers, and other constituencies;

- Render such other general business consulting or such other assistance as the Company's management or counsel may deem necessary that are consistent with the role of a financial advisor, not duplicative of services provided by other professionals in this proceeding and are mutually agreed to; and

- Assist the Company with any other customary services typical for an engagement of this type as may be mutually agreed to;

The Services may be performed by FTI or by any subsidiary or affiliate of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' or affiliates' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary, each affiliate, and any such agents or independent contractors and their employees. For purposes of this Engagement Contract, the term "affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract, or otherwise.

The Services, as outlined above, are subject to change as mutually agreed between FTI and Client in writing.

FTI is engaged by Client to provide financial advisory and consulting services only. Accordingly, while FTI may from time to time suggest options which may be available to Client and further give FTI's professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with Client, its management, and board of directors. FTI and its employees will not make any management decisions for Client and will not be responsible for communicating information concerning Client to the public, Client's shareholders, or others.

As part of the Services, FTI may be requested to assist Client (and Client's counsel or other advisors) in negotiating with Client's creditors and equity holders and with other interested parties. In the event that FTI participates in such negotiations, the representations made and the positions advanced will be those of Client and its management, not FTI or its employees.

In connection with the pending chapter 11 cases, if FTI's retention is approved, FTI's role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases [under a general retainer], subject to court approval. FTI's role also will encompass all out-of-court planning and negotiations attendant to these tasks.

As usual, FTI's Engagement is to represent Client and not its individual directors, officers, employees, or shareholders. FTI, however, anticipates that FTI may provide information or advice to directors, officers, or employees in their corporate capacities over the course of the Engagement.

3. **Fees and Expenses**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by FTI's standard hourly rates, summarized as follows:

**United States**

| | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $1,270 – 1,580 |
| Directors / Senior Directors / Managing Directors | 940 – 1,195 |
| Consultants / Senior Consultants | 535 – 850 |
| Administrative / Paraprofessionals | 195 – 395 |

Hourly rates are generally revised periodically. To the extent this Engagement requires services of FTI's International divisions or personnel, the time will be multiplied by FTI's standard hourly rates applicable on International engagements. Note that FTI does not provide any assurance regarding the outcome of FTI's work, and FTI's fees will not be contingent on the results of such work.

All payments will be due upon receipt of the invoice. For Client's information and use, FTI's Taxpayer Identification Number is 52-1261113. If Client disputes any of the fees or expenses on a specific invoice, Client shall notify FTI within thirty (30) days of receipt of the invoice of such a dispute. If Client fails to notify FTI within the thirty (30) day period, Client shall have waived its right to dispute such invoice.

Without limiting FTI's other rights and remedies, if any payment is not paid by Client within thirty (30) days of the date of invoice, then interest shall accrue, from the thirty-first (31st) day until payment in full is received, at the rate of one and one half (1 ½ %) percent per month. Nothing herein shall be construed as extending the due date of payments to be made by Client under this Engagement Contract. In addition to any other remedies set forth above and any other remedies available at law, FTI reserves the right to suspend Services until payment is received on past-due invoices. It is FTI's normal practice to be paid in full for all work performed to date prior to issuance of a report, deposition testimony, and/or trial testimony. Client agrees to pay all court costs, attorney fees (whether or not contingent on collection from Client) and other expenses, which may be associated with the collection of unpaid invoices. Should Client require FTI to submit invoices via an electronic billing service, any associated fees incurred for these electronic billing services shall be billed directly to Client for reimbursement.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on Client's behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the Engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations, and other expenses specifically related to the Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this Engagement to which FTI is not a party, FTI will be compensated by Client at FTI's regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto. Client shall be responsible for all sales, use,

FTI CONSULTING

and excise taxes, and any other similar taxes, duties, and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by Client hereunder.

**Additional Payment Terms**

Due to the pending chapter 11 cases, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. Client agrees to file a motion in the bankruptcy court seeking the establishment of procedures for the payment of interim (monthly) fees and expenses during the case. If the bankruptcy court approves such a procedure, FTI will submit invoices on account against FTI's final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of FTI's internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of FTI's Engagement.

Post-petition fees, charges, and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the bankruptcy court. Client understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, Client shall nevertheless remain liable for payment of court-approved post-petition fees and expenses. Such items are afforded administrative priority under Bankruptcy Code section 503(b)(1). Bankruptcy Code section 1129(a)(9)(A) provides that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment).

If a dispute develops about FTI's fees, Client may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

4. **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this Engagement Letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties, and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of engagement, undertakings, agreements, understandings, correspondence, and other communications, whether written or oral, regarding the Services.

5. **Conflicts of Interest**

FTI has undertaken a limited review of its records to determine FTI's professional relationships with Client and this Engagement. As Client may be aware, FTI is regularly retained by the administrative agent and/or other members of Client's lending group (or law firms retained by the administrative agent or lending group members). However, such representations are in matters unrelated to this Engagement.

From the results of such review, FTI was not made aware of any conflicts of interest or additional relationships that FTI believes would preclude FTI from performing the Services. However, as Client knows, FTI is a large consulting firm with numerous offices globally. FTI is regularly engaged by new

FTI CONSULTING

clients, which may include one or more parties with interests potentially adverse to Client. The FTI professionals providing Services hereunder will not accept an engagement that directly conflicts with this Engagement without Client's prior written consent.

6. **Acknowledgement and Acceptance**

Please acknowledge acceptance of the terms of this Engagement Contract by signing the confirmation below and returning a copy to us at the above address.

If you have any questions regarding this Engagement Letter or the attached Standard Terms and Conditions, please do not hesitate to contact Cynthia Romano at (617) 970-7383.

Sincerely,

**FTI CONSULTING, INC.**

By: ________________________
Cynthia Romano
Senior Managing Director

Attachment – As stated
Confirmation of Terms of Engagement

**Client agree to engage FTI Consulting, Inc. upon the terms of this Engagement Contract, which includes the attached Standard Terms and Conditions.**

**SIMAD HOLDINGS LTD.**

By: ________________________
Asaf Ravid
Chief Restructuring Officer

Date: 6.11.2026

FTI CONSULTING

| Contact Information of the person designated to receive & approve invoices: | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |
| Email: | |
| AP Invoice Email (if applicable): | |
| **Invoice Processing Information** | |
| Please list any information required on the Invoice (i.e., Purchase Order #, Hours by Resource, Fees broken down by workstream, etc.) | |
| Require invoice submission via electronic billing system? | |
| If yes, please provide the necessary electronic billing system information (i.e., e-bill internet address): | |

**FTI CONSULTING, INC.**

**STANDARD TERMS AND CONDITIONS**

The following are the Standard Terms and Conditions on which FTI will provide the Services to as set forth within the attached Engagement Letter with SIMAD HOLDINGS LTD dated June 8, 2026. The Engagement Letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services to the exclusion of any other express or implied terms, including any conditions, warranties, and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of engagement, undertakings, agreements, understandings, correspondence, and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract. Capitalized terms used but not defined shall have the meanings assigned in the Engagement Letter to which these Standard Terms and Conditions are attached.

**1. Reports and Advice**

1.1 **Use and purpose of advice and reports** – Any advice given or report issued by FTI is provided solely for Client's use and benefit and only in connection with the purpose for which the Services are rendered. Unless required by law, Client shall not provide any advice given or report issued by FTI to any third party, or refer to FTI or the Services, without FTI's prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. Notwithstanding the foregoing, Client may disclose any advice given or report issued by FTI to Client's affiliates and its and their respective directors, officers, employees, legal counsel, accountants, and auditors who have a need to know, and who are bound by written agreements and/or rules of professional conduct/ethics to maintain confidentiality. In no event, regardless of whether consent has been provided, shall FTI assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

1.2 **Ownership** – If FTI is required to deliver, prepare or otherwise produce a written deliverable in connection with the Services, then Client will, conditioned upon FTI's actual receipt of payment for the Services rendered (and expenses incurred, if any) necessary to prepare and issue such deliverable, obtain ownership of such deliverable in its final form, subject to the restrictions on use or disclosure contained herein. To the extent that FTI uses any of its intellectual property ("FTI IP") in connection with the Services or any deliverable, then such FTI IP shall, at all times, remain the property of FTI. Client shall not acquire any ownership right or interest in FTI IP; provided, however, FTI grants to Client a perpetual, worldwide, irrevocable, limited license to use the FTI IP for the sole purpose for which such deliverable was prepared. FTI shall have all ownership and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting FTI's business.

**2. Information and Assistance**

2.1 **Provision of information and assistance** – FTI's performance of the Services is dependent upon Client providing FTI with such information and assistance as FTI may reasonably require from time to time. FTI shall rely on such information without independent verification. If FTI's performance of its obligations under this Engagement Contract is prevented or delayed by any act or omission of Client or its agents,

FTI CONSULTING

subcontractors, consultants, or employees, FTI shall not be deemed in breach of its obligations under this Engagement Contract or otherwise liable for any damages sustained or incurred by Client, in each case, to the extent arising directly or indirectly from such prevention or delay.

2.2 **Punctual and accurate information** –Client shall use reasonable skill, care, and attention to ensure that all information FTI may reasonably require is provided on a timely basis and is accurate, complete, and relevant for the purpose for which it is required. Client shall also notify FTI if either party subsequently learns that any information provided is incorrect, inaccurate, or otherwise should not be relied upon.

2.3 **No assurance on financial data** – While FTI's work may include an analysis of financial and accounting data, the Services will not include an audit, compilation, or review of any kind of any financial statements or components thereof. Client management will be responsible for any and all financial information they provide to FTI during the course of this Engagement, and FTI will not examine, compile, or verify any such financial information. Moreover, the circumstances of the Engagement may cause FTI's advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, FTI will not express any opinion or other form of assurance on the financial statements of Client or any other person.

2.4 **Prospective financial information** – In the event the Services involve prospective financial information, FTI's work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and FTI will express no assurance of any kind on such information. There will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material. FTI will take no responsibility for the achievability of results or events projected or anticipated by Client's management.

## 3. Additional Services

3.1 **Responsibility for other parties** –Client shall be solely responsible for the work and fees of any other party engaged by Client to provide services in connection with the Engagement regardless of whether such party was introduced to Client by FTI. Except as provided in this Engagement Contract, FTI shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting, or taxation matters. Further, FTI acknowledges that it is not authorized under this Engagement Contract to engage any third party to provide services or advice to Client, other than FTI's affiliates, agents, or independent contractors engaged to provide Services, without Client's written authorization.

## 4. Confidentiality, Data Protection, Artificial Intelligence

4.1 **Restrictions on confidential information** – All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between the parties. Except as provided below, no party will disclose the other party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

4.1.1 is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2 is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3 is or has been independently developed by the recipient.

4.2 **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable, not less than 2 business days' notice in writing is first given to the other party.

4.3 **Citation of Engagement** – Without prejudice to Clauses 4.1 and 4.2 above, Client hereby agrees that FTI shall be entitled to cite the performance of the Services hereunder to FTI's clients and prospective clients as an indication of FTI's experience and use Client's name and logo in connection with such disclosure, unless FTI and Client specifically agree otherwise in writing.

4.4 **Internal quality reviews** – Notwithstanding the above, FTI may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5 **Maintenance of workpapers** – Notwithstanding the above, FTI may keep one archival set of its working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with FTI's internal policies.

4.6 **Data protection** - In this paragraph, the terms "controller", "personal data", "processed", "processor", and "processing" shall have the meaning given to them, or any equivalent terms, in applicable data protection laws. FTI and Client will each act as separate and individual controllers in relation to any personal data processed by Client or FTI in connection with this Engagement Contract. FTI and Client will each comply with its own respective obligations under applicable data protection laws in relation to their processing of personal data under this Engagement Contract. Should the Services involve cross-border transfers of personal data, FTI and Client hereby enter into Module 1 of the EU Standard Contractual Clauses published by the European Commission and the UK Addendum to the EU Standard Contractual Clauses published by the ICO (where applicable) (together the "**Standard Contractual Clauses**"), with either Client or FTI acting as data exporter and either Client or FTI as data importer, as appropriate, in respect of any international transfer of personal data which would be prohibited by applicable data protection law in the absence of the Standard Contractual Clauses, in the form, manner, and version set out at https://ftitechnology.com/trust/cidta in effect as of the date of this Engagement Contract. Client acknowledges that FTI may appoint processors to process personal data on its behalf in connection with the Services. Such processors may be located overseas. Where required by applicable data protection law, FTI will enter into appropriate safeguards with these processors. Client and FTI agree that no "sale" (as that term is defined under applicable data protection laws) of personal data is intended as part of the Engagement Contract, and both parties will take steps to ensure no sale occurs. The parties agree that any provision of personal data by one party to another under the Engagement Contract is necessary to perform a business purpose and is not part of, and is explicitly excluded from, the exchange of consideration, or any other thing of value, between the parties.

FTI CONSULTING

4.7 **Artificial Intelligence** – In the course of providing the Services to Client, FTI may utilize artificial intelligence ("AI") technologies, including machine learning, large language models, and generative AI. The AI technologies utilized by FTI may be developed internally by FTI, developed for FTI, or otherwise contained within third-party software. FTI has developed a policy setting forth guidelines and principles for its personnel regarding the responsible and ethical development, deployment and use of AI technologies. Additionally, FTI requires that its suppliers' use of AI conforms with FTI's existing standards or requirements, including those regarding confidentiality, data protection and information security.

**5. Termination**

5.1 **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, FTI will stop all work immediately. Client will be responsible for all fees and expenses incurred by FTI through the date the termination notice is received.

5.2 **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter and Clauses 1.1, 4, 6, and 7 of these Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6. Indemnification, Liability Limitation, and Other Matters**

6.1 **Indemnification** – Client agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors, and employees (collectively "Indemnified Persons") from and against any and all third party claims, for liabilities, damages, obligations, costs, and expenses (including reasonable attorneys' fees and expenses and costs of investigation) (collectively, "Losses") arising out of or relating to Client's retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services, or other matters relating to or arising from this Engagement Contract, except to the extent that any such Losses shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted (an "Adverse Determination"). Client shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance. FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2 **Limitation of liability** – Client agrees that no Indemnified Person shall be liable to Client or its respective successors, affiliates, or assigns, for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect, or punitive damages, damages for lost profits or opportunities, or other like damages or claims of any kind. In the event that FTI agrees hereunder and/or in writing to accept liability to more than one party, the limit of FTI's liability set forth in this Section 6.2 shall be shared between the parties, and in no event shall FTI's aggregate liability exceed the total amount of the fees paid to FTI under this Engagement Contract.

**7. Governing Law, Jurisdiction, WAIVER OF JURY TRIAL, Compliance with Law, Notice, and Miscellaneous**

FTI CONSULTING

7.1 **Governing Law** – The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2 **Jurisdiction; Service** – The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute, or difference concerning the Engagement Contract and any matter arising from it. The Bankruptcy Court having jurisdiction over Client's Bankruptcy case shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such courts and irrevocably waive any right they may have to object to any action being brought in these courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction. Each party agrees that it may be served with legal process, including a summons and complaint, by a recognized overnight courier (e.g., Federal Express, UPS) and agrees to waive personal service of the same in any action or lawsuit. Service under this provision may be directed to each party's notice address as provided in Section 7.5. The notice address shall be deemed valid unless updated or changed by written notice.

7.3 **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, CLIENT, AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

7.4 **Compliance with Laws –** Each of FTI and Client agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery, and other economic sanctions laws and regulations of the United States, United Kingdom, European Union, and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. Client further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. Each of FTI and Client shall promptly notify the other party in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by such party or its directors, officers, employees, or agents.

7.5 **Notice –** All notices, requests, consents, claims, demands, waivers, and other formal communications under this Engagement Contract shall be in writing and shall be deemed to have been given (a) when delivered by hand, (b) when received by the addressee, if sent by a nationally recognized overnight courier (evidence of receipt requested), (c) on the date sent by email if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient (in each case, if successfully transmitted and with a copy sent via one of the other methods of delivery specified in this paragraph), or (d) upon delivery, if mailed by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below, or at such other address for a party as shall be specified in a notice given in accordance with this paragraph:

If to FTI: FTI Consulting, Inc.
555 12th Street NW, Suite 700
Washington, D.C., 20004
Attn: Legal Department

FTI CONSULTING

Email: LegalNotices@fticonsulting.com

If to Client: SIMAD HOLDINGS LTD.
50 Quality Street, #110357
Trumbull, Connecticut, 06611
Attn: Asaf Ravid
Email: aravid@circleinv.com

7.6 **Miscellaneous** – Client shall not assign any of its rights or delegate any of its obligations under this Engagement Contract without the prior written consent of FTI. Any purported assignment or delegation in violation of this provision is null and void. No assignment or delegation relieves Client of any of its obligations under this Engagement Contract. This Engagement Contract represents the entire understanding of the parties hereto and supersedes any and all other prior agreements among the parties regarding the subject matter hereof; shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors, and permitted assigns; may be executed and sent electronically (followed by originals sent via regular mail if requested by a party), and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument; and may not be waived, modified or amended unless in writing and signed by a representative of Client and FTI. The provisions of this Engagement Contract shall be severable. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a waiver thereof. This Engagement Contract is for the sole benefit of the parties hereto and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason hereof.

## SCHEDULE A

## FTI STANDARD RELEASE LETTER

[Date]

[Third Party Name]
[Address]
[City, State Zip]

To whom it may concern.

Pursuant to that engagement letter dated _____ __, 202_ (the "Engagement Letter") between FTI Consulting, Inc. ("FTI") and _________ ("Client"), FTI has been engaged to perform certain services solely for Client (the "Services") in connection with ____________________________.

Client has requested that FTI provide [name of recipient] (the "Recipient") access to the report of its findings dated [date] and including any subsequent revisions, updates, or addendums thereto (together, the "Report"). Recipient acknowledges that this Report was prepared at the direction of Client, was performed exclusively for Client's sole benefit and use, may not include all procedures deemed necessary for the purposes of Recipient, and that certain findings and information may have been communicated to Client that are not reflected in the Report. Recipient further acknowledges that (a) the Report is being provided for informational purposes only; (b) the Report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI as to the accuracy, completeness, and/or fairness of presentation of the Report or any statements or information contained therein; and (c) Recipient will make any decisions based on its own investigation, due diligence, and analysis, independent of, and without reliance on or reference to, the contents of the Report or any other opinions or conclusions of FTI.

In consideration of FTI allowing Recipient access to the Report and, if requested by Recipient, discussing the Report, Recipient agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to Recipient in connection with such access.

Recipient agrees to release FTI and its personnel from any claims or causes of action by Recipient that arise as a result of FTI permitting Recipient access to the Report. Recipient agrees not to sue or participate in any way (except as required by a validly issued court order or subpoena) in any legal proceeding, dispute, or cause of action against FTI arising out of or relating to the Report, including any claim that Recipient has in any way relied upon the Report. Recipient acknowledges that FTI does not owe or accept a duty to Recipient, whether in contract or in tort, or however otherwise arising.

Further, Recipient agrees not to disclose or distribute the Report, or any other information received orally or in writing from FTI, to any other parties without FTI's prior written consent. Notwithstanding the foregoing, Recipient may disclose the Report (a) to its Affiliates and its and their respective directors, officers, and employees, (the "Representatives") who have a need to receive the Report in connection with the purpose for which the Report is being provided to Recipient and solely for informational purposes, (b) to its legal counsel, accountants, and auditors

who are bound by written agreements and/or rules of professional conduct/ethics to maintain the Report as confidential ("Professional Advisors"), (c) to its advisors (including but not limited to financial advisors), consultants, lenders, and/or potential investors, provided that, before any disclosure of the Report, each advisor, consultant, lender, and/or potential investor executes its own release letter with FTI with terms no less restrictive than those contained herein, provided, further that Recipient remains responsible for any breach of this letter agreement by its Representatives or Professional Advisors. Recipient may also disclose the Report as required by any applicable law, or by order or ruling of any competent judicial, governmental, regulatory, or supervisory body, provided, to the extent legally permissible, Recipient provides FTI with written notice promptly upon becoming aware of such obligation and reasonably cooperates with FTI, at FTI's expense, in FTI's efforts to obtain a protective order and/or limit the scope of such disclosure. Notwithstanding the foregoing, no notice is required regarding any disclosure of any information to a regulator or governmental agency having jurisdiction over Recipient or its Affiliates in the course of such regulator's or governmental agency's routine examination, reporting, audit, or inspection not targeting the Report or the Services. For purposes of this letter agreement, the term "Affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with Recipient, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract, or otherwise.

Recipient's obligations hereunder do not prohibit Recipient from disclosing, without attribution or reference in any matter to FTI or the Report, any information that: (a) is or becomes publicly available other than by a breach of this letter agreement; (b) is or becomes available to Recipient from a third party who is known by Recipient to not be prohibited from disclosing such information by a contractual or legal obligation; (c) is known to Recipient prior to the date of this letter agreement; or (d) that Recipient develops independently without the use of or reliance on the Report. FTI is not authorized to and does not waive any other non-use or non-disclosure obligations which may apply to Client's or any other party's information that may be subject to confidentiality agreements.

This letter agreement constitutes the entire agreement between the parties regarding the subject matter hereof and shall be governed by the laws of the State of New York, without giving effect to the choice of law provisions thereof.

Please confirm Recipient's agreement with the foregoing by signing and dating a copy of this letter and returning it to FTI.

Sincerely,

__________________________________

Cynthia Romano
Senior Managing Director
FTI Consulting, Inc.

Acknowledged, accepted, and agreed:

[ENTER RECIPIENT NAME]

By: __________________________________

(Name of Company official)

Case 26-13888-CMG Doc 19 Filed 01/13/26 Entered 01/13/26 11:28:59 Desc Main Document Page 26 of 43

# <u>Exhibit 2</u>

## Engagement Letter

FTI CONSULTING

June 18, 2026

Philip A. Selden
Cole Schotz P.C.
1875 K Street NW, Suite 475
Washington, D.C. 20006

Asaf Ravid
SIMAD Holdings LTD
50 Quality Street, #110357
Trumball, CT 06611

**Re: *SIMAD Holdings LTD Forensic Analysis***

Dear Philip:

This letter will confirm the retention of FTI Consulting, Inc. a ("FTI") by Cole Schotz P.C. ("Counsel"), in connection with its representation of SIMAD Holdings LTD ("Client") in the above referenced matter (the "Engagement") and incorporates by reference our June 8, 2026 engagement letter. FTI will work under the direction of Counsel in this matter.

The services, to be performed at your direction, are expected to include the following:

**Funds-Tracing Exercise**

- Trace the flow of funds through accounts owned by the Client to DAMIS Holdings LTD, or affiliates, including the initial receipt of bond proceeds and all outgoing transfers.
- For each transaction, record the date, amount, originating account, receiving party, and any available description or reference information.
- Prepare schedules and flow charts that illustrate the movement of bond proceeds from issuance through downstream transfers during selected periods, including the chronology of significant transfers.

**Bank Reconciliations**

- Establish an accurate and complete picture of cash activity and balances across the Clients accounts for selected periods.
- For each account, obtain and reconcile bank statements against the Client's internal books and records, identify and document reconciling items, and flag any unreconciled variances for further review.

The services may be performed by FTI or by any subsidiary or Affiliate of FTI, as FTI shall determine. FTI may also provide services through its or its subsidiaries' or Affiliates' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary, Affiliate, and to any such agents or independent contractors and their employees. For purposes of this Engagement Contract, the term "Affiliate" shall

mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term “control” means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise.

All professional conclusions will be those of the FTI professionals working on this matter. Counsel and the Client will make available to FTI the documents necessary for FTI to complete the analysis. Should FTI determine that additional documents are necessary, FTI will make all requests for such records through Counsel.

I will maintain overall administrative responsibility for the Engagement, including billing and client relations. I will be actively involved in the performance of the Engagement and will use such other staff for assistance as deemed necessary. FTI’s work will be billed at hourly rates applied to productive hours engaged in providing service and out-of-pocket expenses. Hourly rates are based upon the experience and skills of the personnel involved.

The current hourly rates by professional level are the following ranges:

| | |
|---|---|
| Senior Managing Directors | $1,270-1,580 |
| Directors / Senior Directors/Managing Directors | 940-1,195 |
| Consultants / Senior Consultants | 535-850 |
| Administrative / Paraprofessionals | 195-395 |

FTI understands that Client will be solely responsible for payment of its fees and expenses. As such, FTI will submit invoices for its fees and expenses incurred in connection with this Engagement directly to the Client, with a copy sent to Counsel. The parties acknowledge and agree that the attorney-client privilege between Counsel and FTI shall remain notwithstanding the fact that Client is billed directly for services provided under this Engagement. The name and address of the Client designee to receive and approve FTI’s invoice is indicated on the signature page of this letter.

Certain of our services may be subject to sales taxes when oral or written reports are delivered by us in a state that levies sales tax on fees for investigative services. Where divisible, fees for services that are taxable will be detailed separately from non-taxable services.

FTI will be actively reviewing documents and talking with Counsel to develop an understanding of the issues and supporting materials that have been collected to date. After this initial review, FTI will be able to prepare an estimate of the required work effort and associated fees. The nature of FTI’s work will require that the estimate be flexible, but FTI will discuss in advance with Counsel any substantial variances.

A copy of FTI’s standard terms and conditions, which Counsel and Client accept and hereby agree to, is attached, and together with this letter of engagement, constitute the “Engagement Contract.” The Engagement Contract comprises the entire agreement relating to the subject matter hereof, to the exclusion of any other express or implied terms, including any conditions, warranties and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of

engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the subject matter hereof.

Counsel and the Client acknowledge their respective agreement with this Engagement Contract as evidenced by their signatures below. In the event only Counsel is executing on behalf of its Client, Counsel represents and warrants that Client has been notified of the terms of this Engagement Contract, agrees to be bound hereby and has authorized Counsel to enter into this Engagement Contract on Client's behalf. Please return to FTI the signed copy of this Engagement Contract. FTI will not be able to begin work until it has received an executed Engagement Contract. If this Engagement Contract is not executed by Counsel and/or Client and returned to FTI within ten days of the date of this letter, the offer to provide services is revoked and this Engagement Contract shall be deemed null and void.

Very truly yours,

FTI CONSULTING, INC.

By: ________________________________

Jay Spinella
Senior Managing Director

Accepted by: Cole Schotz P.C.

By: ________________________________

Print Name: Philip Selden

Title: ________________________________

Date: 6/25/26

Email: pselden@coleschotz.com

Accepted by: SIMAD Holdings LTD

By: ________________________________

Print Name: Asaf Ravid

Title: CRO

Date: 06/25/2026

Email: aravid@circleinv.com

Name and Address of person designated to receive and approve invoices related to this Engagement:

Name: Asaf Ravid

Address: ______________________

Phone: 347-962-0701

Email: aravid@circleinv.com

**FTI policy requires that we have contact information on file for the party ultimately responsible for payment (Client) to FTI. If this person is different than the person designated above to receive and approve invoices, please complete:**

Name: ______________________

Address: ______________________

Phone: ______________________

Email: ______________________

**Does Client require invoices to be submitted via an electronic billing system? Yes:____ No:____**

*If yes, which billing system*? __________________________

| **Contact Information of the person designated to receive & approve invoices:** | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |
| Email: | |
| AP Invoice Email (if applicable): | |
| **Invoice Processing Information** | |
| Please list any information required on the Invoice (i.e., Purchase Order #, Hours by Resource, Fees broken down by workstream, etc) | |
| Require invoice submission via electronic billing system? | |
| If yes, please provide the necessary electronic billing system information (i.e., e-bill internet address): | |

FTI CONSULTING

**FTI STANDARD TERMS AND CONDITIONS**

FEES; PAYMENT TERMS

FTI's rates are subject to adjustment from time to time and at least annually effective October 1. FTI will advise Client and Counsel immediately if a rate adjustment is being made. Further, if any work needs to be performed by FTI personnel in our international offices, such work will be billed at the rates set forth for the specific international office.

FTI will bill for reimbursement of reasonable and customary out-of-pocket expenses that are directly incurred on the Engagement, such as messenger, travel, meals, accommodations, computing resources, and other expenses specifically related to the Engagement. Client shall be responsible for all sales, use, and excise taxes, and any other similar taxes, duties, and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by Client hereunder. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this Engagement to which FTI is not a party, Client will compensate FTI at its hourly rates and reimburse FTI for reasonable direct and allocated expenses (including counsel fees) with respect thereto.

All payments will be due upon receipt of the invoice. For your information and use, FTI's Taxpayer Identification Number is 52-1261113. In the event Client disputes any of the fees or expenses on a specific invoice, the Client shall notify FTI within twenty (20) days of receipt of the invoice of such a dispute. If Client fails to notify FTI within the twenty (20) day period, the Client shall have waived its right to dispute such invoice.

Without limiting FTI's other rights and remedies, in the event any payment is not paid by Client within thirty (30) days of the date of invoice, then interest shall accrue, from the thirty-first (31st) day until payment in full is received, at the rate of one and one half (1 ½ %) percent per month. Nothing herein shall be construed as extending the due date of payments to be made by Client under this Engagement Contract. In addition to any other remedies set forth above, and any other remedies available at law, FTI reserves the right to halt further services until payment is received on past-due invoices. It is FTI's normal practice to be paid in full for all work performed to date prior to issuance of a report, deposition testimony and/or trial testimony. Client agrees to pay all court costs, attorney fees (whether or not contingent on collection from Client) and other expenses which may be associated with the collection of unpaid invoices.

All payments under this Engagement Contract shall be made in cleared funds, without any deduction or set-off and free and clear of and without deduction for or on account of any taxes, levies, imports, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental, fiscal or other authority. If Client is compelled to make any such deduction or such deduction is imposed by any governmental, fiscal or other authority, Client will pay to FTI such additional amounts as are necessary to ensure receipt by FTI of the full amount which FTI would have received but for the deduction.

FTI's fees and expenses are not contingent upon the final results, nor does it guarantee any result or resolution in connection with this Engagement. FTI will meet with Counsel regularly to discuss the ongoing work and associated fees and FTI will rely on Counsel to communicate these items to the Client.

CONFLICTS OF INTEREST

FTI is a global firm and, through its practice groups and Affiliates, provides a variety of services to third parties on a non-exclusive basis including by way of example and not limitation, Forensic and Litigation Consulting, Technology Services, Corporate Finance/Restructuring, Economic Consulting and Strategic Communications. Other professionals of FTI may be engaged by parties with interests that are adverse to and may not be consistent with the interests of Counsel and Client. During the pendency of this Engagement, the FTI professionals providing services hereunder will not provide services in this matter to a party that is adverse to Client in this matter.

CONFIDENTIALITY

The parties hereto agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving services under this Engagement Contract. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. FTI understands that the confidential information, as well as its work product and files may become subject to discovery; however, until such materials are sought by subpoena or other process, they will be maintained by FTI as confidential. It is agreed that those materials and all other working papers and other documents prepared by FTI pursuant to this Engagement will be maintained as confidential materials and will not be disclosed to third parties without Counsel's consent, except as may be required by law, regulation, or judicial or administrative process. Unless prohibited by law, FTI agrees to notify Counsel promptly of any of the following events: (a) a request by anyone to examine, inspect, or copy such documents or records; or (b) any attempt to serve, or the actual service of, any court order, subpoena, or summons upon FTI that requires the production of such documents or records. Confidential information shall not include information that is or becomes generally available to the public other than as a result of a breach of a non-disclosure obligation hereunder, is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information, or is or has been independently developed by the recipient. Without prejudice to the above, the Client hereby agrees that FTI shall be entitled to cite the performance of the services hereunder to its clients and prospective clients as an indication of FTI's experience and use the Client's name and logo in association with such disclosure, unless FTI and the Client specifically agree otherwise in writing.

WORK PRODUCT; OWNERSHIP OF DELIVERABLES

Any deliverable or other advice given or report issued by FTI is provided solely for Client's use and benefit and only in connection with the purposes in which the services hereunder are provided, including but not limited to all Permitted Disclosures (defined below). Except for Permitted Disclosures (defined below), Client shall not provide any deliverable or other advice given or report issued by FTI to any third party, or refer to FTI or its services, without FTI's prior written consent, which consent shall not be unreasonably withheld or delayed but may be conditioned on the recipient executing a third party release letter in the form provided by FTI. "Permitted Disclosures" means any disclosure that is (a) required by law or legal process or is made in connection with the services or the related investigation, including disclosures in connection with related investigations, remediation, dispute or litigation; or (b) made to Client's Affiliates and its and their respective directors, officers, employees, legal counsel, accountants and auditors who have a need to know, and who are bound by written agreements and/or rules of professional conduct/ethics to maintain confidentiality. In no event shall FTI assume any responsibility to any third party to which any deliverable, advice or report is disclosed or otherwise made available.

If FTI is required to deliver, prepare or otherwise produce a written deliverable in connection with the services, then Client will, conditioned upon FTI's actual receipt of payment for the services rendered (and expenses incurred, if any) necessary to prepare and issue such deliverable, obtain ownership of such deliverable in its final form, subject to the restrictions on use or disclosure contained herein. To the extent that FTI uses any of its intellectual property ("FTI IP") in connection with the Services or any deliverable, then such FTI IP shall, at all times, remain the property of FTI. Client shall not acquire any ownership right or interest in FTI IP; provided, however, FTI grants to Client a perpetual, worldwide, irrevocable, limited license to use the FTI IP for the sole purpose for which such deliverable was prepared. FTI shall have all ownership and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting FTI's business.

INFORMATION AND ASSISTANCE

While FTI's work may include an analysis of financial and accounting data, the services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Client management will be responsible for any and all financial information they provide to FTI during the course of this Engagement, and FTI will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause FTI's advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, FTI will not express any opinion or other form of assurance on financial statements of the Client.

In the event the services involve prospective financial information, FTI's work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and FTI will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. FTI will take no responsibility for the achievability of results or events projected or anticipated by the management of the Client.

PERSONAL DATA; DATA PROTECTION; ARTIFICIAL INTELLIGENCE

The Client shall notify FTI in writing if Client delivers to FTI any personally identifiable information or equivalent and the Client shall instruct FTI in writing if any additional measures (i.e. data transfer protections) are required. Upon written notice to the Client, FTI will, at its option, degauss, destroy or return to the Client all original materials provided by the Client and/or Counsel to FTI, and all materials created by FTI specifically for the Client as a result of an engagement; provided, however, that with respect to back-up media, such materials will be overwritten, degaussed or destroyed, subject to FTI's normal schedule for overwriting and destruction, as the case may be.

In this paragraph, the terms "controller", "personal data", "processed", "processor", "processing" shall have the meaning given to them, or any equivalent terms, in applicable data protection laws. FTI and the Client will each act as separate and individual controllers in relation to any personal data processed by the Client or FTI in connection with this Engagement Contract. FTI and the Client will each comply with its own respective obligations under applicable data protection laws in relation to their processing of personal data under this Engagement Contract. Should the services involve cross border transfers of personal data, FTI and the Client hereby enter into Module 1 of the EU Standard Contractual Clauses

published by the European Commission and the UK Addendum to the EU Standard Contractual Clauses published by the ICO (where applicable) (together the ("Standard Contractual Clauses")), with either the Client or FTI acting as data exporter and either the Client or FTI as data importer, as appropriate), in respect of any international transfer of personal data which would be prohibited by applicable data protection law in the absence of the Standard Contractual Clauses, in the form, manner, and version set out at https://ftitechnology.com/trust/cidta, in effect as of the date of this Engagement Contract. The Client acknowledges that FTI may appoint processors to process personal data on its behalf in connection with the services. Such processors may be located overseas. Where required by applicable data protection law, FTI will enter into appropriate safeguards with these processors. Client and FTI agree that no "sale" (as that term is defined under applicable data protection laws) of personal data is intended as part of the Engagement Contract, and both parties will take steps to ensure no sale occurs. The parties agree that any provision of personal data by one party to another under the Engagement Contract is necessary to perform a business purpose and is not part of, and explicitly excluded from, the exchange of consideration, or any other thing of value, between the parties.

In the course of providing the services to Counsel and Client, FTI may utilize artificial intelligence ("AI") technologies, including machine learning, large language models, and generative AI. The AI technologies utilized by FTI may be developed internally by FTI, developed for FTI, or otherwise contained within third-party software. FTI has developed a policy setting forth guidelines and principles for its personnel regarding the responsible and ethical development, deployment and use of AI technologies. Additionally, FTI requires that its suppliers' use of AI conforms with FTI's existing standards or requirements, including those regarding confidentiality, data protection and information security.

LIABILITY AND INDEMNITY

Client and Counsel agree that FTI shall not be liable under this Engagement Contract to the Client, Counsel, or their respective successors, assigns or Affiliates for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. In no event shall FTI be liable for punitive or consequential damages of any kind. In the event that FTI agrees hereunder and/or in writing to accept liability to more than one party, the limit of FTI's liability set forth in this paragraph shall be shared between the parties, and in no event shall FTI's aggregate liability exceed the total amount of the fees paid to FTI under this Engagement Contract. The Client shall indemnify FTI, and hold FTI harmless against any and all claims by third parties for losses, damages or liabilities, including reasonable attorneys' fees and expenses ("Losses"), arising in any manner out of or in connection with this Engagement, unless it is finally judicially determined that such Losses resulted from the gross negligence or willful misconduct of FTI. The terms of this paragraph shall survive the termination of this Engagement Contract and shall apply to any controlling person, director, officer, employee or affiliate of FTI.

MISCELLANEOUS

The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, New York City, shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an

inconvenient forum or to claim that those Courts do not have jurisdiction. In the event that differences concerning the services or other matters arising hereunder should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense, Counsel, the Client and FTI irrevocably and unconditionally agree to waive a trial by jury in any action, proceeding or counterclaim arising out of or relating to the Engagement Contract.

Each party agrees that it may be served with legal process, including a summons and complaint, by recognized overnight courier (e.g. Federal Express, UPS) and agrees to waive personal service of the same in any action or lawsuit. Service under this provision may be directed to each party's notice address as provided herein. The notice address shall be deemed valid unless updated or changed by written notice.

Each of FTI and the Client agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. The Client further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. Each of FTI and the Client shall promptly notify the other in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by such party or its directors, officers, employees or agents.

All notices, requests, consents, claims, demands, waivers and other formal communications under this Engagement Contract shall be in writing and shall be deemed to have been given (a) when delivered by hand, (b) when received by the addressee, if sent by a nationally recognized overnight courier (evidence of receipt requested), (c) on the date sent by email if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient (in each case, if successfully transmitted and with a copy sent via one of the other methods of delivery specified in this paragraph), or (d) upon delivery, if mailed by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below, or at such other address for a party as shall be specified in a notice given in accordance with this paragraph:

If to FTI: FTI Consulting, Inc.
555 12th Street NW, Suite 700
Washington, D.C., 20004
Attn: Legal Department
Email: LegalNotices@fticonsulting.com

**<u>Confidential Information of FTI Consulting</u>**

June 25, 2026

Philip A. Selden
Cole Schotz P.C.
1875 K Street NW, Suite 475
Washington, D.C. 20006

Asaf Ravid
SIMAD Holdings LTD
50 Quality Street, #110357
Trumball, CT 06611

**Re: Addendum to Letter of Engagement dated June 18, 2026 by and between FTI Consulting, Inc., and SIMAD Holdings LTD**

**1. Introduction**

This Addendum to that certain Letter of Engagement by and among FTI Consulting, Inc., Cole Schotz P.C. ("Counsel"), and SIMAD Holdings LTD (the "Client") dated June 18, 2026 (the "Engagement Contract"), hereby supplements the Engagement Contract with respect to the specific services set forth below that will be provided by FTI's subsidiary, FTI Consulting Technology LLC ("FTI Tech") and revises the payment terms accordingly (hereinafter referred to as the "Addendum"). This Addendum is in connection with the Counsel's/Client's request that FTI Tech provide additional services to Counsel and the Client pursuant to the terms of the Engagement Contract. This Addendum confirms that we have been retained by the Client to provide certain consulting services (the "Services") as set out below. The term of this Addendum shall begin on the date that you execute this Addendum and terminate upon completion of the Services, unless otherwise extended by agreement of the parties. References in the Engagement Contract and in this Addendum to FTI shall include both FTI Consulting, Inc. and FTI Consulting Technology LLC.

**2. Scope of our Services**

The Services, to be performed at your direction, are set forth on Exhibit A, attached hereto.

**3. Fees**

The Client shall be solely responsible for the payment of FTI Tech's fees in connection with FTI Tech's provision of the Services. At this time, the complete scope and volume of electronic devices and data sources requiring collection have not yet been determined. Once additional information becomes available regarding the number, type, location, and complexity of the devices and data sources to be collected, we reserve the right to provide a revised fee estimate and billing rates specific to the digital forensic collection work.

**4. Additional Terms and Conditions Governing the Services**

The Engagement Contract is hereby amended with respect to the Services by adding the following provisions:

Depending on certain state and/or municipality regulations, FTI may be required to collect sales and use tax on certain of FTI's products and services. Alternatively, client shall provide documentation of direct pay certification or exemption from such taxes.

Neither Client nor its Counsel acquires any interest in the copyright or any other intellectual property rights, including but not limited to any source code, enabling technology, information or other processes, know-how, scripts or sub-routines in or related to any software and/or intellectual property owned or licensed by FTI (the "FTI IP") and FTI shall be the sole and exclusive owner and copyright proprietor of all rights and title in and to the FTI IP in whatever stage of completion. Except as expressly set forth herein, all rights and licenses granted to Client are non-transferable and non-assignable. FTI reserves all rights not expressly granted herein. The FTI IP specifically excludes the content of any documents collected by or furnished to FTI by or on behalf of the Client or its Counsel (the "Client Data"). Client represents and warrants that the Client is the owner of the Client Data or otherwise has the express right to provide the Client Data to FTI in connection with FTI's provision of services hereunder.

In the event FTI's provision of Review Services (as defined herein) shall be performed using Client's or Counsel's software (the "3rd Party Software") licensed by Client or Counsel (the "Licensee"), the Licensee represents and warrants to FTI that the Licensee has the right to grant to FTI and the Reviewers (as defined herein) a sublicense to use the 3rd Party Software in connection with FTI's provision of Review Services. The Licensee further agrees to indemnify FTI and the Reviewers, and hold FTI and the Reviewers harmless from and against any and all claims for Losses (as defined herein) arising out of FTI's and the Reviewers' use of the 3rd Party Software.

Any advice given, or report issued by FTI is provided solely for Counsel's and Client's use and benefit and only in connection with the purpose for which the Services are rendered. Unless required by law, neither Client nor Counsel shall provide any advice given or report issued by FTI to any third party, or refer to FTI or the Services, without FTI's prior written consent, which shall be conditioned on the execution of a third party release letter in a form provided by FTI. Notwithstanding the foregoing, the Client may disclose any advice given or report issued by FTI to its Affiliates and its and their respective directors, officers, employees, legal counsel, accountants and auditors who have a need to know, and who are bound by written agreements and/or rules of professional conduct/ethics to maintain confidentiality. Further, nothing herein shall restrict Counsel or Client from using or disclosing any production logs, summaries, or reports provided in connection with the provision of e-discovery services by FTI. In no event, regardless of whether consent has been provided, shall FTI assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

In connection with the provision of services hereunder, and to provide the Client with 24-hour support, FTI may utilize the services of FTI personnel outside of the United States. FTI may utilize the services of and disclose Client Data to third parties in connection with (a) data retrieval, storage and transmission; (b) technical and support operations; and (c) products licensed by FTI for its delivery of services. In addition, if this Engagement will involve processing, analysis, management or transformation of data, in order to enable FTI to provide continuous support, such data may be

processed by those FTI teams or Affiliates in the United States, United Kingdom, India, and/or Australia (the "Third Countries"). By Client's and/or Counsel's signature on this Engagement Contract, Client consents to (a) the FTI Affiliates and teams processing Client's data in the Third Countries on Client's behalf, and (b) FTI's transfer of such data to those FTI Affiliates may be deemed a restricted transfer as defined in applicable data protection laws between Client or its relevant Affiliate and FTI or its relevant Affiliate. Notwithstanding the foregoing, Client and Counsel further acknowledge that FTI's email and associated collaboration records are processed through Microsoft 365 which is configured based on the designated location of the FTI personnel the email was addressed to and in accordance with multi-geo locations as published on: https://learn.microsoft.com/en-us/microsoft-365/enterprise/microsoft-365-multi-geo?view=o365-worldwide#microsoft-365-multi-geo-availability. FTI's global email archiving and spam filtering are provided through Mimecast which is replicated and retained, unless otherwise subject to an applicable legal process or litigation hold, for up to three (3) years in Germany. Client and Counsel consent to any Client Data provided to FTI by email will be replicated and retained accordingly. To the extent that the Client or Counsel wishes to transmit certain information or any data to FTI and objects to that data being replicated and retained in accordance with this clause, Client and Counsel will use a communication or transmission method other than e-mail and agree to not transmit or otherwise disclose Client Data or personal data via email to FTI.

Document review services (the "Review Services") requested by Client will be performed by FTI or a subcontractor of FTI (together, the "Reviewers"). The Reviewers are subject to the same conflict of interest and confidentiality undertakings as those set forth in this Engagement Contract. Notwithstanding the foregoing, FTI shall be entitled to disclose the existence of this Engagement to other law firms engaging FTI for Review Services solely for such law firm's conflict review purposes. Client, Counsel and FTI acknowledge and agree that the Review Services shall include document review for both responsiveness and privilege purposes. Client, Counsel and FTI further acknowledge and agree that FTI is not a law firm, Counsel shall oversee the responsiveness and privilege review, the Review Services will be at the direction of Counsel, and all final determinations regarding relevance, privilege and production shall be in the sole determinations of Counsel.

All of FTI's reviewers work remotely. Client has been informed that FTI implements various security measures to protect the integrity of Clients documents and data. Further, FTI takes reasonable steps to protect the security and integrity of Client's documents and data while Reviewers are working from a remote work location. At Client's request, FTI can provide Client with more detailed information regarding the security procedures it employs for the Review Services.

The Parties agree that they will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. The Client further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. Each Party shall promptly

notify the other in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by the non-compliant Party or its directors, officers, employees or agents.

**5.** If this Engagement involves, is expected to involve the processing of, or if FTI otherwise receives: (i) personal data as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 as amended, and/or (ii) personal information as governed by the California Consumer Privacy Act or any other data subject to the data protection laws of any other country, state or territory which apply to such processing, the terms of the FTI Consulting Data Protection Addendum (the “DPA”), published at https://www.ftitechnology.com/trust/dpa shall apply to this Engagement and it shall form an integral part of this Engagement Contract. In the event of a conflict between the terms of this Engagement Contract and the terms of the DPA, the terms of the DPA shall prevail in relation to the processing of such personal data and/or personal information. For purposes of this Engagement Contract, the term “Affiliate” shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term “control” means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise.

To the extent FTI creates, receives, or maintains Protected Health Information (as defined by the Health Insurance Portability and Accountability Act of 1996) on Client’s behalf as part of the Services or Engagement, FTI will enter into a Business Associate Agreement with the Client. In the event of any conflict between the Business Associate Agreement, on the one hand, and the terms of this Engagement Contract and/or the DPA, on the other hand, the terms of the Business Associate Agreement shall prevail in relation to the creation, receipt or maintenance of Protected Health Information.

The provision of our Services under this Engagement Contract may involve the use of Artificial Intelligence (“AI”) technology. In order to provide AI services, FTI may leverage AI model/services providers (together, "AI Technology”). FTI undertakes to conduct the appropriate assessments and testing to incorporate responsible, lawful and ethical AI solutions and, although FTI will review the AI Technology outputs in order to evaluate accuracy and efficacy, Client acknowledges and agrees to the following: 1) some data may be incompatible with the AI Technology, 2) both the accuracy and quality of the outputs from AI Technology can be influenced by the quality of the data, and as such, may produce inaccurate or erroneous outputs, 3) FTI may produce aggregate, anonymized statistics about some of the AI Technology related tasks which will not identify the Client or the underlying Client Data, 4) prompts created and used to instruct any models may be stored as part of the AI Technology application or subject to clause 10 of the DPA, 5) Client Data sent to the AI Technology may be processed ephemerally within the AI model/services providers regions, but will not be retained by the AI model/services provider, nor do these services use any Client Data to train their AI models. However, FTI does not manage or participate in the updates to the AI models being leveraged through the AI Technology. Client also acknowledges and agrees the use of the AI Technology provided by FTI, will be in accordance with applicable laws and regulations governing the use of AI Technology including but not limited to the appropriate disclosures required for AI generated or AI derived content. Accordingly, Client will not use the AI

Technology or require FTI to use the AI Technology in any manner that does not duly observe and comply with applicable laws, FTI's governing policies or best practices.

**6. Other Terms and Conditions**

Unless specifically indicated within this Addendum, all terms and conditions of the Engagement Contract shall remain in full force and effect.

**7. Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Addendum by signing below.

If you have any questions regarding this letter, please do not hesitate to contact Corey Gildart at (212) 850 - 5621.

Very truly yours,

FTI CONSULTING TECHNOLOGY LLC

By: ______________________________

Name: Corey E. Gildart

Title: Senior Managing Director

FTI CONSULTING, INC.

By: ______________________________

Name: Jay Spinella

Title: Senior Managing Director

ACKNOWLEDGED AND AGREED:

By: ______________________________

Name: Asaf Ravid

Title: Chief Restructuring Officer

COLE SCHOTZ, P.C.

Name: Philip Selden

Does client require invoices to be submitted via an electronic billing system? Yes___ No X

## EXHIBIT A

FTI shall provide digital forensic collection services, as requested by the Client, which may include the identification, preservation, collection, and forensic imaging of electronically stored information from relevant custodians and data sources. Such services may include collecting data from desktop and laptop computers, mobile devices, email accounts, cloud-based storage repositories, collaboration and messaging platforms, and other relevant electronic systems.

The scope of collections may include, but is not limited to, computers, mobile phones, email accounts, messaging applications, cloud storage environments (including OneDrive and similar platforms), and other repositories containing potentially relevant information. FTI may also perform related activities necessary to preserve the integrity of the collected data, including chain-of-custody documentation, forensic imaging, data preservation, and collection validation procedures.

The specific custodians, devices, accounts, systems, and data sources to be collected will be determined in consultation with the Client and may be refined as additional information becomes available throughout the engagement.

Based on our understanding of the requirements and using the below assumptions, this proposal outlines the services FTI will provide and the estimated fees for an initial 2 custodian collection and preservation (1 individual custodian and 1 corporate custodian [shared Dropbox]. This budget estimate does not include data processing fees and/or consulting hours associated with analysis of the collected data beyond the collections effort.

| Item | Unit Type | Low Hours | High Hours | Blended Rate | Low Cost | High Cost | Comments |
|---|---|---|---|---|---|---|---|
| **Interviews & Onboarding** | Hours | 0.5 | 1 | $672.50 | $175.00 | $995.00 | Initial project onboarding and coordination discussions. |
| **Travel Costs** | Expense | 0 | 0 | $250.00 | $0.00 | $0.00 | Assumes local travel to counsel's NYC office, and handled with local resources. |
| **Computer Device Collection** | Hours per Device | 4 | 8 | $350.00 | $1,400.00 | $2,800.00 | Assumes standard Windows OS device imaging; does not include image extraction or analysis work. |
| **Mobile Device Collection** | Hours per Device | 2 | 6 | $350.00 | $700.00 | $2,100.00 | Assumes advanced logical iOS device imaging; does not include FFS imaging. |
| **Full File System Tech Fee** | Device | 1 | 1 | $2,500.00 | $2,500.00 | $2,500.00 | Additional licensing fee of $2,500 per device FFS collection required; assumes none for this project. |
| **Email Credential Exchange** | Hours per Account | 0.5 | 1 | $672.50 | $175.00 | $995.00 | Coordinate keys/creds with IT resources/personnel, and verify access to all necessary endpoints |
| **Email Collections** | Hours per Account | 1 | 2 | $350.00 | $350.00 | $700.00 | Assumes standard eDiscovery collections of Gmail data; does not include custom work, e.g. API work. |
| **Cloud File Extractions** | Hours per Account | 4 | 8 | $672.50 | $1,400.00 | $7,960.00 | Assumes a combination of traditional cloud forensics and custom programming solutions, e.g. |
| **Dropbox** | Account | 1 | 4 | $672.50 | $350.00 | $3,980.00 | Only includes preservation and collection of items currently accessible on enterprise box; no analysis. |
| **Chain of Custody** | Custodian per mo. | 1 | 1 | $100.00 | $1,200.00 | $1,200.00 | Chain of custody fee for securely maintaining preservation copies of evidence, in lab or on secure |
| **Data Handling & Tracking** | Hours | 2 | 5 | $672.50 | $700.00 | $1,750.00 | Includes documentation and tracking efforts in support of chain of custody, etc. |
| **BUDGET RANGE** | | | | | ***$8,950.00*** | ***$24,980.00*** | **Target budget with expected range of outcomes b/w ~$9K and ~$25K; discussion purposes only; assumes 6 mo. preservation for 2 custodians; subject to change based on complexity, size, etc.** |
| **TARGET BUDGET** | | | | | **$16,965.00** | | |

## EXHIBIT B: Rate Table

| One-Time Service Description | Unit | Rate (USD) |
|---|---|---|
| Brainspace Analytics (Document) (US) | Document | 0.01 |
| Database Decommission (US) | Each | 2,500.00 |
| Inbound data processing (US, Unit, Inbound/Outbound) | GB | 20.00 |
| Review data loading (processing outbound - promoted to review) (US, Unit, Inbound/Outbound) | GB | 85.00 |
| Emerging Data Sources Processing & Enrichment (US, Unit, Inbound/Outbound) | GB | 95.00 |
| Forensic Image Extraction (US) | Image | 500.00 |
| Forensic or logical data collection (US) | Hour | 350.00 |
| FTI reporting and analysis time (US) | Hour | 500.00 |
| TIFF / OCR / Endorsements (US) | GB | 250.00 |
| **Monthly Service Description** | **Unit** | **Rate (USD)** |
| Chain of Custody and Reference Data Storage (US) | Custodian | 100.00 |
| Near Line Data Hosting (US, 1000/mo. minimum) | GB | 5.00 |
| Online Data Hosting (US, Unit, 1000/mo. minimum) | GB | 9.00 |
| User fees (US, Relativity) | User | >= 1 @75.00 |

| Task Based Billing Rates* | Rate Per Hour (USD) |
|---|---|
| Task Based Billing: Data Collection and Management (US) | 350 |
| Task Based Billing: Emerging Digital Data Handling (Collect and Transform) (US) | 350 |
| Task Based Billing: Tech Time (US) | 265 |
| Task Based Billing: Case Management (US) | 495 |
| **Custom Requests and Strategic and Expert Services** (all other services) | Varies – See Professional Rate Table |

| | Standard Rates per Hour | |
|---|---|---|
| **Professional Title** | **Low (USD)** | **High (USD)** |
| Professional Time Consultant (US) | 250 | 370 |
| Professional Time Senior Consultant (US) | 300 | 490 |
| Professional Time Director (US) | 425 | 670 |
| Professional Time Senior Director (US) | 550 | 825 |
| Professional Time Managing Director (US) | 750 | 995 |
| Professional Time Senior Managing Director (US) | 750 | 995 |

# Exhibit B

## Detail of Time Entries

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/1/26 | Christopher Creger | 0.5 | Review Summit draft of settlement statement. |
| 3 | Asset Monetization/M&A/Refinancing | 10/1/26 | Kavi Bommakanti | 0.7 | Review correspondences regarding camp sales and funding needs. |
| 3 | Asset Monetization/M&A/Refinancing | 10/1/26 | Kavi Bommakanti | 0.8 | Review insurance payments made in Q3 for sale related matters. |
| 3 | Asset Monetization/M&A/Refinancing | 10/2/26 | Joshua Beets | 0.2 | Review of Bank of New Hampshire settlement statement. |
| 3 | Asset Monetization/M&A/Refinancing | 10/5/26 | Joshua Beets | 0.3 | Finalize One Canal Broker Listing agreement to initiate a sale process. |
| 3 | Asset Monetization/M&A/Refinancing | 10/5/26 | Kavi Bommakanti | 2.8 | Update funds flows for various camps based on additional information provided. |
| 3 | Asset Monetization/M&A/Refinancing | 10/5/26 | Kavi Bommakanti | 0.7 | Review correspondences regarding waterfall and camp sales to update internal analyses. |
| 3 | Asset Monetization/M&A/Refinancing | 10/5/26 | Mihai Cirstea | 0.7 | Update weekly cash reconciliation file in support of camp sale closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/5/26 | Mihai Cirstea | 1.1 | Prepare and confirm operating cash balances with camp directors across 16 camp reporting entities in support of camp sale closing activities and ongoing liquidity monitoring. |
| 3 | Asset Monetization/M&A/Refinancing | 10/5/26 | Russell Laughlin | 2.0 | Prepare a post-close analysis of which camps need to have A/P paid by Debtor's estate. |
| 3 | Asset Monetization/M&A/Refinancing | 10/5/26 | Russell Laughlin | 2.0 | Update payoff instruction document for Summit. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Christopher Creger | 1.1 | Assess additional documentation requirements to support reconciliation of financial transactions and identification of potential estate recoveries. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Christopher Pizzo | 0.3 | Review Summit payoff letter and provide instruction to FTI team. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Joshua Beets | 0.8 | Review of settlement statement for a specific camp. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Kavi Bommakanti | 2.8 | Update funds flows for various camps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Kavi Bommakanti | 0.8 | Review correspondences regarding waterfall and camp sales to update internal analyses. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Reagan Jones | 1.7 | Analyze funding requirements in the sale proceeds account. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Reagan Jones | 1.4 | Analyze funding requirements in the professional fee escrow account. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Russell Laughlin | 2.0 | Update payoff instruction document for Summit. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Vivek Ram | 0.9 | Check records of Pine Forest closing and cash reconciliations. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Vivek Ram | 1.8 | Review additional updates to specific camp closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Vivek Ram | 1.7 | Assist with further camp closings, aligning with payoff amounts and settlement statements. |
| 3 | Asset Monetization/M&A/Refinancing | 10/6/26 | Vivek Ram | 0.5 | Review updates to settlement term sheet. |
| 3 | Asset Monetization/M&A/Refinancing | 10/7/26 | Joshua Beets | 0.1 | Review of settlement agreement for a specific camp. |
| 3 | Asset Monetization/M&A/Refinancing | 10/7/26 | Joshua Beets | 0.1 | Call with broker about listing One Canal on the market to sell. |
| 3 | Asset Monetization/M&A/Refinancing | 10/7/26 | Reagan Jones | 1.3 | Update the Flagstar sale proceeds account schedule for applicable reserves. |
| 3 | Asset Monetization/M&A/Refinancing | 10/7/26 | Russell Laughlin | 2.0 | Prepare analysis of specific camp closing items. |
| 3 | Asset Monetization/M&A/Refinancing | 10/7/26 | Vivek Ram | 0.5 | Review updates to camp closings from counsel and counterparty. |
| 3 | Asset Monetization/M&A/Refinancing | 10/8/26 | Christopher Creger | 1.6 | Review and evaluate revised Mohawk sale funds flow and closing proceeds allocation, including U.S. Trustee fee caps and anticipated payroll and utility obligations. |
| 3 | Asset Monetization/M&A/Refinancing | 10/8/26 | Christopher Pizzo | 0.3 | Review sale progress and related issues for Mohawk, Banner Day, and Kiwi. |
| 3 | Asset Monetization/M&A/Refinancing | 10/8/26 | Joshua Beets | 1.1 | Review potential issues with future camp closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/8/26 | Joshua Beets | 1.2 | Review of Mohawk funds flow for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/8/26 | Kavi Bommakanti | 0.3 | Update Mohawk funds flow based on additional information provided. |
| 3 | Asset Monetization/M&A/Refinancing | 10/8/26 | Kavi Bommakanti | 2.5 | Update a specific camp sale waterfall. |
| 3 | Asset Monetization/M&A/Refinancing | 10/8/26 | Kavi Bommakanti | 2.5 | Update funds flow and one pager waterfalls. |
| 3 | Asset Monetization/M&A/Refinancing | 10/8/26 | Vivek Ram | 1.5 | Assist with preparation of Mohawk funds flow for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/9/26 | Christopher Creger | 0.8 | Assess treatment of unreimbursed expenses and intercompany funding allocations following the respective asset sales, and provide direction to FTI professionals. |
| 3 | Asset Monetization/M&A/Refinancing | 10/9/26 | David Lee | 0.5 | Identify correspondence regarding sale proceeds to update internal trackers. |
| 3 | Asset Monetization/M&A/Refinancing | 10/9/26 | Reagan Jones | 1.4 | Revise reconciliation schedule for sale proceeds reserves. |
| 3 | Asset Monetization/M&A/Refinancing | 10/10/26 | Joshua Beets | 1.6 | Review cash flows to attach to settlement agreement for a specific camp. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/11/26 | David Lee | 0.5 | Review correspondence regarding sale proceeds and next steps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Christopher Creger | 0.5 | Call with SSG, Cole Schotz, CRO, and FTI team to review remaining camp sales to close and next steps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Christopher Pizzo | 0.5 | Call with SSG, Cole Schotz, CRO, and FTI team to review remaining camp sales to close and next steps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Christopher Pizzo | 0.9 | Assist in preparing the funds flow for Mohawk including settlement agreement items. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Christopher Pizzo | 0.7 | Review and comment on revisions required to the Mohawk funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Joshua Beets | 0.5 | Call with SSG, Cole Schotz, CRO, and FTI team to review remaining camp sales to close and next steps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Joshua Beets | 2.0 | Review of funds flow to Mohawk for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Joshua Beets | 0.3 | Review of timeline for the remaining camp sales closing. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Joshua Beets | 0.4 | Coordinate broker retention for One Canal. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Kavi Bommakanti | 0.8 | Review correspondences regarding budget and camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Kavi Bommakanti | 2.0 | Review Mohawk funds flows. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Kavi Bommakanti | 1.5 | Create a consolidated funds flow file to track camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Kavi Bommakanti | 3.0 | Continue to revise Mohawk funds flows per updated instructions. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Kavi Bommakanti | 0.7 | Review and distribute completed settlement statements. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Kavi Bommakanti | 1.5 | Finalize Mohawk funds flows. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Max Pidgeon | 0.5 | Review communications regarding specific camp sales to update funds flows. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Reagan Jones | 0.5 | Review status of remaining camp closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Russell Laughlin | 3.0 | Update Mohawk payoff analysis. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Vivek Ram | 0.5 | Call with SSG, Cole Schotz, CRO, and FTI team to review remaining camp sales to close and next steps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Vivek Ram | 2.9 | Review and prepare for close of Mohawk transaction. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/12/26 | Vivek Ram | 1.1 | Update and align Mohawk funds flow calculations and output. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Christopher Creger | 0.7 | Evaluate outstanding funding requirements and necessary revisions to the closing funds flow for Mohawk. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Christopher Creger | 1.5 | Evaluate Mohawk sale closing preparations and proposed funds flow, including allocation of sale proceeds and outstanding payroll and operating obligations. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Christopher Pizzo | 0.4 | Review Mohawk sale closing related matters. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Joshua Beets | 0.1 | Coordinate broker retention for One Canal. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Kavi Bommakanti | 1.5 | Continue to update consolidated funds flow summary. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Kavi Bommakanti | 3.0 | Update consolidated funds flow file. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Kavi Bommakanti | 0.8 | Review correspondences regarding camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Kavi Bommakanti | 3.0 | Update consolidated funds flow summary. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Reagan Jones | 1.8 | Analyze sale proceeds account at Flagstar to determine pending transfers. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Russell Laughlin | 2.4 | Update Mohawk funds flow and amounts to reserve per conversation with ACRO. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Russell Laughlin | 0.5 | Discuss Mohawk funds flow and amounts to reserve with ACRO. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Russell Laughlin | 2.2 | Review summary analysis Flow of Funds for all closed camps to date. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Vivek Ram | 0.5 | Review Mohawk funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/13/26 | Vivek Ram | 0.7 | Continue to review additional funding and liquidity needs, transaction closing specifics, and organize camp fund transfers. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Christopher Creger | 1.7 | Review and evaluate SIMAD Flagstar cash reconciliation, including sale proceeds, contingency reserves, and interaccount transfers. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | David Lee | 0.8 | Review correspondence to respond to inquiries regarding sales and closed camp A/P. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Joshua Beets | 0.5 | Coordinate post-close wind down of camps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Kavi Bommakanti | 1.2 | Review and update cash received from closed sales in funds flow and waterfall. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Max Pidgeon | 0.5 | Review specific APAs for cash reconciliation purposes at multiple camps. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Reagan Jones | 1.3 | Calculate SSG transaction fees to move from the sale proceeds account. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Reagan Jones | 1.5 | Calculate UST fees to move from the sale proceeds account. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Reagan Jones | 1.8 | Calculate Blue Star excess sale proceeds to move from the professional fee account. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Russell Laughlin | 3.0 | Review and distribute consolidated summary of Flow of Funds PDF files. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Russell Laughlin | 0.8 | Discuss Mohawk funds flow with ACRO. |
| 3 | Asset Monetization/M&A/Refinancing | 10/14/26 | Russell Laughlin | 3.0 | Review consolidated summary and Flow of Funds analysis. |
| 3 | Asset Monetization/M&A/Refinancing | 10/15/26 | Christopher Creger | 0.6 | Assess implications of anticipated closing dates on estate liquidity, creditor distributions, and coordination of closing responsibilities. |
| 3 | Asset Monetization/M&A/Refinancing | 10/15/26 | Christopher Pizzo | 0.5 | Call with Cole Schotz, SSG, CRO and ACRO, and FTI team regarding the timing of the rest of the camp sales closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/15/26 | Joshua Beets | 0.5 | Call with Cole Schotz, SSG, CRO and ACRO, and FTI team regarding the timing of the rest of the camp sales closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/15/26 | Joshua Beets | 0.2 | Review potential issues with remaining camp sales closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/15/26 | Max Pidgeon | 0.5 | Call with Cole Schotz, SSG, CRO and ACRO, and FTI team regarding the timing of the rest of the camp sales closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/15/26 | Reagan Jones | 1.9 | Revise sale proceeds Flagstar reconciliation schedule. |
| 3 | Asset Monetization/M&A/Refinancing | 10/15/26 | Reagan Jones | 2.1 | Revise professional fee reserve Flagstar reconciliation schedule for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/15/26 | Vivek Ram | 0.5 | Call with Cole Schotz, SSG, CRO and ACRO, and FTI team regarding the timing of the rest of the camp sales closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/15/26 | Vivek Ram | 0.9 | Review updated expenses for various camp closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/16/26 | Joshua Beets | 1.7 | Coordinate closing logistics for camp closings next week. |
| 3 | Asset Monetization/M&A/Refinancing | 10/16/26 | Reagan Jones | 2.2 | Analyze Flagstar sale proceeds account balances to determine remaining transfers to the professional fee account. |
| 3 | Asset Monetization/M&A/Refinancing | 10/16/26 | Vivek Ram | 1.4 | Review updates to Banner Day and Chateaugay transaction closing, assessing liquidity and legal impact. |
| 3 | Asset Monetization/M&A/Refinancing | 10/17/26 | Christopher Pizzo | 0.3 | Revise Banner Day open items related to sale process. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Christopher Creger | 0.3 | Call with Cole Schotz, buyer of Windsor Mountain, and FTI team to discuss Windsor Mountain APA. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Christopher Creger | 0.6 | Call with Cole Schotz, SSG, CRO, and FTI team regarding status update of remaining camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Christopher Creger | 1.4 | Review and update Mohawk funds flow analysis to communicate to CRO. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Christopher Pizzo | 0.6 | Call with Cole Schotz, SSG, CRO, and FTI team regarding status update of remaining camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Joshua Beets | 0.3 | Call with Cole Schotz, buyer of Windsor Mountain, and FTI team to discuss Windsor Mountain APA. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Joshua Beets | 0.6 | Call with Cole Schotz, SSG, CRO, and FTI team regarding status update of remaining camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Joshua Beets | 0.1 | Gather tax returns to support sale negotiations. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Kavi Bommakanti | 2.8 | Update BNH payoff in funds flows and summary. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Kavi Bommakanti | 2.8 | Create Chateaugay funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Kavi Bommakanti | 0.8 | Review correspondences regarding camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Reagan Jones | 2.6 | Reconcile transaction activity in the Flagstar sale proceeds account. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Russell Laughlin | 0.5 | Review closing schedule for camps not yet sold. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Russell Laughlin | 0.2 | Update Windsor Mountain contract analysis in advance of closing. |
| 3 | Asset Monetization/M&A/Refinancing | 10/19/26 | Vivek Ram | 1.2 | Review updates to further camp closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/20/26 | Christopher Creger | 1.5 | Review and analyze FIRPTA withholding exposure across asset sale transactions, including purchase price allocations, withholding assumptions, and impacts on creditor recoveries. |
| 3 | Asset Monetization/M&A/Refinancing | 10/20/26 | Christopher Creger | 1.1 | Review and provide comments to Chateaugay Closing Schedule and related flow of funds for internal team. |
| 3 | Asset Monetization/M&A/Refinancing | 10/20/26 | Joshua Beets | 0.6 | Review closing items for sales on remaining camps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/20/26 | Max Pidgeon | 1.5 | Recalculate MogenAv property taxes based on statements provided. |
| 3 | Asset Monetization/M&A/Refinancing | 10/20/26 | Russell Laughlin | 3.0 | Prepare Chateaugay wire instruction document for sale of camp. |
| 3 | Asset Monetization/M&A/Refinancing | 10/20/26 | Russell Laughlin | 3.0 | Prepare Chateaugay flow of funds document from sale of camp. |
| 3 | Asset Monetization/M&A/Refinancing | 10/20/26 | Russell Laughlin | 0.5 | Update Windsor Mountain contract analysis in advance of closing. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/21/26 | Christopher Creger | 0.8 | Evaluate FIRPTA withholding and reserve treatment across Mohawk, Willow Lake, Mill Road, Achim, and remaining camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/21/26 | Christopher Pizzo | 0.5 | Attend Kiwi auction. |
| 3 | Asset Monetization/M&A/Refinancing | 10/21/26 | Joshua Beets | 0.2 | Coordinate broker retention for One Canal for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/21/26 | Kavi Bommakanti | 0.5 | Review correspondences regarding camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/21/26 | Reagan Jones | 2.7 | Prepare schedule of sale proceeds by camp for the Flagstar reconciliation schedule. |
| 3 | Asset Monetization/M&A/Refinancing | 10/21/26 | Russell Laughlin | 3.0 | Update Chateaugay flow of funds document and send summary email with open items to Cole Schotz team. |
| 3 | Asset Monetization/M&A/Refinancing | 10/22/26 | Christopher Pizzo | 0.5 | Call with SSG, Cole Schotz, CRO, and FTI team regarding status and plan for camps yet to be sold. |
| 3 | Asset Monetization/M&A/Refinancing | 10/22/26 | Christopher Pizzo | 0.6 | Review and update assumptions for Banner Day sale and other sales related matters. |
| 3 | Asset Monetization/M&A/Refinancing | 10/22/26 | Joshua Beets | 0.5 | Call with SSG, Cole Schotz, CRO, and FTI team regarding status and plan for camps yet to be sold. |
| 3 | Asset Monetization/M&A/Refinancing | 10/22/26 | Reagan Jones | 1.7 | Analyze the bid deposit schedule to determine latest balances held. |
| 3 | Asset Monetization/M&A/Refinancing | 10/23/26 | Christopher Pizzo | 0.5 | Review Kiwi net proceeds calculations for sale related matters. |
| 3 | Asset Monetization/M&A/Refinancing | 10/23/26 | Joshua Beets | 0.9 | Review financials of multiple camps to give to multiple buyers. |
| 3 | Asset Monetization/M&A/Refinancing | 10/23/26 | Kavi Bommakanti | 0.8 | Review correspondences regarding camp sales to identify updates to funds flows. |
| 3 | Asset Monetization/M&A/Refinancing | 10/23/26 | Max Pidgeon | 1.8 | Compile data requests for buyer of Club Getaway. |
| 3 | Asset Monetization/M&A/Refinancing | 10/23/26 | Max Pidgeon | 0.5 | Review sale related materials for One Canal Place. |
| 3 | Asset Monetization/M&A/Refinancing | 10/23/26 | Russell Laughlin | 0.6 | Review Club Getaway financial package in support of closing and APA negotiation. |
| 3 | Asset Monetization/M&A/Refinancing | 10/23/26 | Russell Laughlin | 2.5 | Update Chateaugay flow of funds and wire summary documents. |
| 3 | Asset Monetization/M&A/Refinancing | 10/25/26 | Max Pidgeon | 0.6 | Read MogenAv APA to identify post closing payments. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Christopher Creger | 0.5 | Call with Cole Schotz, SSG, CRO and FTI team regarding camps yet to sell. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Christopher Pizzo | 0.4 | Call with Cole Schotz, SSG, CRO and FTI team regarding camps yet to sell (Partial). |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Joshua Beets | 0.5 | Call with Cole Schotz, SSG, CRO and FTI team regarding camps yet to sell. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Joshua Beets | 1.4 | Review of closing payments for camps closing this week. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Kavi Bommakanti | 0.7 | Review correspondences regarding camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Kavi Bommakanti | 1.8 | Update Chateaugay funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Kavi Bommakanti | 1.8 | Communicate with camp director to update figures required for closing. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Kavi Bommakanti | 2.3 | Work on Club Getaway funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Max Pidgeon | 0.5 | Call with FTI team regarding MogenAv A/P outstanding for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Max Pidgeon | 0.9 | Call with MogenAv camp director to discuss amounts owed to debtor at close of camp sale. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Max Pidgeon | 0.9 | Update MogenAv settlement statement for additional invoices for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Max Pidgeon | 0.6 | Finalize and send amounts due to buyer of MogenAv. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Max Pidgeon | 0.6 | Call with buyer of MogenAv to discuss amounts due to seller. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Max Pidgeon | 2.1 | Go through all A/P at MogenAv to identify pre versus post Closing Date A/P. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Max Pidgeon | 0.5 | Split out MogenAv electricity A/P based on service periods for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Russell Laughlin | 0.5 | Call with Cole Schotz, SSG, CRO and FTI team regarding camps yet to sell. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Russell Laughlin | 0.5 | Call with FTI team regarding MogenAv A/P outstanding for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Russell Laughlin | 2.1 | Update Chateaugay flow of funds and wire summary documents per guidance from Cole Schotz team. |
| 3 | Asset Monetization/M&A/Refinancing | 10/26/26 | Russell Laughlin | 0.2 | Call with Cole Schotz to discuss closing items for Chateaugay. |
| 3 | Asset Monetization/M&A/Refinancing | 10/27/26 | Joshua Beets | 1.2 | Review of closing payments for camps closing this week. |
| 3 | Asset Monetization/M&A/Refinancing | 10/27/26 | Kavi Bommakanti | 2.3 | Update Chateaugay funds flow for closing. |
| 3 | Asset Monetization/M&A/Refinancing | 10/27/26 | Kavi Bommakanti | 1.5 | Analyze AP and update funds flow for Club Getaway. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/27/26 | Kavi Bommakanti | 1.0 | Update Club Getaway funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/27/26 | Max Pidgeon | 1.5 | Update MogenAv obligations based on new assumptions for sale related purposes. |
| 3 | Asset Monetization/M&A/Refinancing | 10/27/26 | Max Pidgeon | 1.1 | Update MogenAv funds flow based on information from camp director. |
| 3 | Asset Monetization/M&A/Refinancing | 10/27/26 | Max Pidgeon | 1.9 | Update MogenAv settlement amounts based on information from Camp Director and ACRO. |
| 3 | Asset Monetization/M&A/Refinancing | 10/27/26 | Reagan Jones | 1.5 | Update Flagstar reconciliation schedule for sale proceeds bridge. |
| 3 | Asset Monetization/M&A/Refinancing | 10/27/26 | Russell Laughlin | 1.7 | Update Chateaugay flow of funds and wire summary documents per guidance from Cole Schotz team. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Joshua Beets | 0.4 | Review of closing payments for camps closing this week. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Joshua Beets | 0.4 | Coordinate signing a broker retention for One Canal. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Kavi Bommakanti | 2.1 | Update Kiwi funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Kavi Bommakanti | 0.7 | Update camp sale funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Max Pidgeon | 1.4 | Review MogenAv draft settlement statement. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Max Pidgeon | 0.4 | Investigate and update a property tax dispute with a camp. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Reagan Jones | 2.2 | Update Flagstar reconciliation sale proceeds bridge for FIRPTA and other tax amounts in the waterfall. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Russell Laughlin | 0.8 | Call to discuss the Club Getaway and MogenAv Flow of Funds and supporting schedules with Cole Schotz. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Russell Laughlin | 1.2 | Calls with Club Getaway Camp director to discuss Club Getaway funds flow open items. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Russell Laughlin | 1.3 | Review MogenAv flow of funds. |
| 3 | Asset Monetization/M&A/Refinancing | 10/28/26 | Russell Laughlin | 2.9 | Update Club Getaway and MogenAv Flow of Funds and supporting schedules. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Christopher Creger | 0.4 | Call with SSG, Cole Schotz, CRO, and FTI team regarding remaining camps to be sold and next steps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Christopher Pizzo | 0.4 | Call with SSG, Cole Schotz, CRO, and FTI team regarding remaining camps to be sold and next steps. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Joshua Beets | 0.4 | Call with SSG, Cole Schotz, CRO, and FTI team regarding remaining camps to be sold and next steps. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Joshua Beets | 0.7 | Finalize closing documents for camps closing this week. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Kavi Bommakanti | 2.3 | Update financial reporting package and funds flow for sale closing. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Kavi Bommakanti | 0.9 | Update funds flows and review correspondences regarding sale closings. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Max Pidgeon | 1.0 | Correspond with Cole Schotz and buyer of MogenAv to finalize settlement statement for MogenAv. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Russell Laughlin | 0.5 | Confirm Club Getaway operating cash amount to transfer post-close with Camp Director. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Russell Laughlin | 3.0 | Facilitate Club Getaway closing, including review of funds flow and settlement statement. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Russell Laughlin | 0.8 | Call to discuss open Club Getaway items with Cole Schotz regarding the sale process. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Russell Laughlin | 2.0 | Review MogenAv funds flow and settlement statement. |
| 3 | Asset Monetization/M&A/Refinancing | 10/29/26 | Russell Laughlin | 0.5 | Review open items and timeline for remaining camp sales. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Christopher Creger | 1.2 | Discuss Camp Chateaugay sale status and remaining closing requirements with debtor professionals. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Joshua Beets | 0.2 | Call with Cole Schotz and Buyer's counsel on a camp about closing adjustments. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Joshua Beets | 0.7 | Finalize closing amounts for camps closing this week. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Kavi Bommakanti | 0.5 | Work on a specific camp's funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Kavi Bommakanti | 0.8 | Review correspondences regarding camp sales to identify updates to be made. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Kavi Bommakanti | 1.5 | Create reserves summary for camp funds flow. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Max Pidgeon | 1.2 | Call with title company regarding updates to settlement statement at MogenAv. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Max Pidgeon | 1.3 | Multiple calls with buyer to discuss settlement statement for MogenAv. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Max Pidgeon | 1.1 | Update property tax calculations for MogenAv based on additional support provided. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Max Pidgeon | 1.7 | Continue to update settlement statement related calculations for MogenAv based on additional support provided. |
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Russell Laughlin | 2.2 | Update and approve MogenAv funds flow and settlement statement for closing. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 3 | Asset Monetization/M&A/Refinancing | 10/30/26 | Russell Laughlin | 2.5 | Coordinate distribution of Club Getaway operating funds to the buyer entity with Camp Director, SIMAD controller, and FTI team. |
| | **Task Code 3 Total** | | | **239.0** | |

**EXHIBIT B**

**SIMAD Holdings, Ltd. - CASE NO. 26-16388**

**DETAIL OF TIME ENTRIES**

**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 7 | Prepare for and Attend Court Hearings | 10/5/26 | Joshua Beets | 1.4 | Virtual attendance at court hearing regarding tax matters. |
| 7 | Prepare for and Attend Court Hearings | 10/8/26 | Christopher Creger | 0.6 | Virtual attendance in SIMAD emergency hearing regarding FIRPTA withholding requirements and potential implications for estate sale proceeds and creditor recoveries. |
| 7 | Prepare for and Attend Court Hearings | 10/8/26 | Joshua Beets | 0.6 | Virtual attendance in SIMAD emergency hearing regarding FIRPTA withholding requirements and potential implications for estate sale proceeds and creditor recoveries. |
| 7 | Prepare for and Attend Court Hearings | 10/8/26 | Vivek Ram | 0.6 | Virtual attendance in SIMAD emergency hearing regarding FIRPTA withholding requirements and potential implications for estate sale proceeds and creditor recoveries. |
| 7 | Prepare for and Attend Court Hearings | 10/26/26 | Christopher Creger | 1.1 | Virtual attendance at court hearing about settlement. |
| 7 | Prepare for and Attend Court Hearings | 10/26/26 | Joshua Beets | 1.1 | Virtual attendance at court hearing about settlement. |
| | **Task Code 7 Total** | | | **5.4** | |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 12 | Monthly Operating Reports | 10/5/26 | David Lee | 0.5 | Review September MORs process to maximize efficiency in preparation. |
| 12 | Monthly Operating Reports | 10/9/26 | David Lee | 1.0 | Review financials from Company regarding September MORs. |
| 12 | Monthly Operating Reports | 10/9/26 | Joshua Beets | 0.2 | Review of MOR process for September update. |
| 12 | Monthly Operating Reports | 10/11/26 | David Lee | 2.0 | Review financials from Company relating to September MOR reporting. |
| 12 | Monthly Operating Reports | 10/12/26 | Mihai Cirstea | 0.5 | Review cash balances reported in September MORs. |
| 12 | Monthly Operating Reports | 10/13/26 | David Lee | 0.5 | Review updated financials from CFO for September MORs. |
| 12 | Monthly Operating Reports | 10/13/26 | David Lee | 0.8 | Prepare income statement and sale adjustments for September MORs. |
| 12 | Monthly Operating Reports | 10/13/26 | David Lee | 0.3 | Review balance sheet in August MORs for sales treatments to apply to September MOR. |
| 12 | Monthly Operating Reports | 10/13/26 | David Lee | 0.6 | Review income statement and sales adjustments to August sales for September MORs. |
| 12 | Monthly Operating Reports | 10/13/26 | David Lee | 0.5 | Begin to review Part 7 questions for September MORs. |
| 12 | Monthly Operating Reports | 10/14/26 | David Lee | 0.8 | Review additional MOR financials from CFO for September MORs. |
| 12 | Monthly Operating Reports | 10/15/26 | David Lee | 0.8 | Review correspondence and requests regarding September MORs from FTI team. |
| 12 | Monthly Operating Reports | 10/15/26 | David Lee | 2.3 | Populate income statement line items into September MORs. |
| 12 | Monthly Operating Reports | 10/15/26 | David Lee | 2.1 | Continue to populate income statement line items into September MORs. |
| 12 | Monthly Operating Reports | 10/15/26 | David Lee | 1.1 | Review financials submitted by CFO for September MORs. |
| 12 | Monthly Operating Reports | 10/15/26 | Russell Laughlin | 2.2 | Review MOR financials from CFO for September. |
| 12 | Monthly Operating Reports | 10/16/26 | David Lee | 1.0 | Review One Canal and specific camp's September MORs. |
| 12 | Monthly Operating Reports | 10/16/26 | David Lee | 1.8 | Review newly provided financials from CFO for September MORs. |
| 12 | Monthly Operating Reports | 10/16/26 | Russell Laughlin | 1.1 | Review September MOR financials prepared by internal FTI team. |
| 12 | Monthly Operating Reports | 10/17/26 | David Lee | 0.7 | Finalize income statement for September MORs. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 12 | Monthly Operating Reports | 10/17/26 | David Lee | 1.0 | Continue to work on balance sheet line items for September MORs. |
| 12 | Monthly Operating Reports | 10/18/26 | David Lee | 1.3 | Gather and input balance sheet line items for September MORs. |
| 12 | Monthly Operating Reports | 10/19/26 | Christopher Creger | 0.5 | Call with FTI team to review September MORs. |
| 12 | Monthly Operating Reports | 10/19/26 | Christopher Pizzo | 0.5 | Call with FTI team to review September MORs. |
| 12 | Monthly Operating Reports | 10/19/26 | David Lee | 0.5 | Call with FTI team to review September MORs. |
| 12 | Monthly Operating Reports | 10/19/26 | David Lee | 0.5 | Update September MORs based on internal team comments. |
| 12 | Monthly Operating Reports | 10/19/26 | Russell Laughlin | 1.1 | Review September MOR plan for transition. |
| 12 | Monthly Operating Reports | 10/20/26 | David Lee | 0.9 | Continue to review September MORs. |
| 12 | Monthly Operating Reports | 10/21/26 | David Lee | 2.1 | Continue to update support and financials for September MORs. |
| 12 | Monthly Operating Reports | 10/21/26 | David Lee | 0.8 | Continue to update support and financials for September MORs. |
| 12 | Monthly Operating Reports | 10/21/26 | David Lee | 1.4 | Continue to update support and financials for September MORs. |
| 12 | Monthly Operating Reports | 10/21/26 | David Lee | 0.7 | Continue to update support and financials for September MORs. |
| 12 | Monthly Operating Reports | 10/21/26 | David Lee | 3.0 | Update balance sheet items and financials for September MORs. |
| 12 | Monthly Operating Reports | 10/22/26 | Christopher Creger | 1.5 | Review and discuss September MORs with internal FTI team. |
| 12 | Monthly Operating Reports | 10/22/26 | David Lee | 0.9 | Continue to update September MORs for additional updates provided by internal FTI team. |
| 12 | Monthly Operating Reports | 10/22/26 | David Lee | 1.5 | Continue to update September MORs for additional updates provided by internal FTI team. |
| 12 | Monthly Operating Reports | 10/22/26 | David Lee | 1.4 | Continue to update September MORs for additional updates provided by internal FTI team. |
| 12 | Monthly Operating Reports | 10/22/26 | David Lee | 1.5 | Review and discuss September MORs with internal FTI team. |
| 12 | Monthly Operating Reports | 10/22/26 | David Lee | 0.4 | Review September MORs for finalization. |
| 12 | Monthly Operating Reports | 10/22/26 | David Lee | 1.1 | Update September MORs for additional updates provided by internal FTI team. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 12 | Monthly Operating Reports | 10/22/26 | Joshua Beets | 0.3 | Review of September MORs. |
| 12 | Monthly Operating Reports | 10/22/26 | Russell Laughlin | 1.5 | Review and discuss September MORs with internal FTI team. |
| 12 | Monthly Operating Reports | 10/22/26 | Russell Laughlin | 3.0 | Review and update September MORs. |
| 12 | Monthly Operating Reports | 10/23/26 | David Lee | 0.5 | Call with FTI team to review September MORs. |
| 12 | Monthly Operating Reports | 10/23/26 | David Lee | 2.0 | Review and update September MORs. |
| 12 | Monthly Operating Reports | 10/23/26 | David Lee | 1.0 | Update September MORs based on comments from internal FTI team. |
| 12 | Monthly Operating Reports | 10/23/26 | David Lee | 1.5 | Edit global notes and exhibit for September MORs. |
| 12 | Monthly Operating Reports | 10/23/26 | David Lee | 0.9 | Review September MORs to finalize and prepare for meeting with internal FTI team. |
| 12 | Monthly Operating Reports | 10/23/26 | Russell Laughlin | 0.5 | Call with FTI team to review September MORs. |
| 12 | Monthly Operating Reports | 10/23/26 | Russell Laughlin | 3.0 | Review and make further updates to the September MOR. |
| 12 | Monthly Operating Reports | 10/25/26 | David Lee | 1.2 | Review and update Part 7 of MORs for September MORs and global notes. |
| 12 | Monthly Operating Reports | 10/25/26 | Russell Laughlin | 2.1 | Review and update September MOR to account for camp sales proceeds and related lender distributions. |
| 12 | Monthly Operating Reports | 10/26/26 | Christopher Pizzo | 1.2 | Call with FTI team to review the September MORs. |
| 12 | Monthly Operating Reports | 10/26/26 | David Lee | 1.2 | Call with FTI team to review the September MORs. |
| 12 | Monthly Operating Reports | 10/26/26 | David Lee | 0.5 | Update September MORs including adjustments to part 7. |
| 12 | Monthly Operating Reports | 10/26/26 | David Lee | 0.4 | Develop table of SIMAD Holdings non operating disbursements for September MORs. |
| 12 | Monthly Operating Reports | 10/26/26 | David Lee | 0.5 | Update professional fees section of September MORs. |
| 12 | Monthly Operating Reports | 10/26/26 | David Lee | 0.4 | Update the September MORs before reviewing with FTI Team. |
| 12 | Monthly Operating Reports | 10/26/26 | David Lee | 0.3 | Review the August and September MORs balance sheet differences. |
| 12 | Monthly Operating Reports | 10/26/26 | David Lee | 1.0 | Generate September MOR PDFs for distribution and filing. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 12 | Monthly Operating Reports | 10/26/26 | Joshua Beets | 1.7 | Review of September MORs. |
| 12 | Monthly Operating Reports | 10/26/26 | Russell Laughlin | 1.2 | Call with FTI team to review the September MORs. |
| 12 | Monthly Operating Reports | 10/26/26 | Russell Laughlin | 3.0 | Review and update September MORs to prepare for filing. |
| 12 | Monthly Operating Reports | 10/27/26 | David Lee | 0.5 | Prepare for PDF population process for September MORs. |
| 12 | Monthly Operating Reports | 10/27/26 | David Lee | 1.2 | Review issues regarding camper deposits for September MORs. |
| 12 | Monthly Operating Reports | 10/27/26 | David Lee | 1.9 | Update UST Fee calculation and 2027 deposits schedule in September MORs. |
| 12 | Monthly Operating Reports | 10/27/26 | Joshua Beets | 1.4 | Review of September MORs. |
| 12 | Monthly Operating Reports | 10/27/26 | Russell Laughlin | 2.4 | Review and update UST fee analysis for September MORs. |
| 12 | Monthly Operating Reports | 10/28/26 | Christopher Creger | 0.6 | Discuss September MOR reconciliations and filing requirements with management and debtor counsel. |
| 12 | Monthly Operating Reports | 10/28/26 | Christopher Creger | 0.5 | Review U.S. Trustee fee calculations and camper deposit treatment in September MORs. |
| 12 | Monthly Operating Reports | 10/28/26 | Christopher Pizzo | 0.6 | Call with CRO and FTI team to review September MORs. |
| 12 | Monthly Operating Reports | 10/28/26 | David Lee | 0.6 | Call with CRO and FTI team to review September MORs. |
| 12 | Monthly Operating Reports | 10/28/26 | David Lee | 1.3 | Call with FTI team regarding September MORs population. |
| 12 | Monthly Operating Reports | 10/28/26 | David Lee | 1.5 | Call with FTI team to discuss MOR report changes. |
| 12 | Monthly Operating Reports | 10/28/26 | David Lee | 0.8 | Participate in call with FTI team regarding September MOR updates. |
| 12 | Monthly Operating Reports | 10/28/26 | David Lee | 0.4 | Continue to review September MORs populated by FTI Team. |
| 12 | Monthly Operating Reports | 10/28/26 | David Lee | 0.8 | Review September MORs populated by FTI Team. |
| 12 | Monthly Operating Reports | 10/28/26 | David Lee | 1.0 | Prepare for September MORs call with CRO. |
| 12 | Monthly Operating Reports | 10/28/26 | Ethan Xie | 1.3 | Call with FTI team regarding September MORs population. |
| 12 | Monthly Operating Reports | 10/28/26 | Ethan Xie | 0.7 | Continue to populate September MORs for the 61 entities of SIMAD. |

EXHIBIT B

SIMAD Holdings, Ltd. - CASE NO. 26-16388

DETAIL OF TIME ENTRIES

FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 12 | Monthly Operating Reports | 10/28/26 | Ethan Xie | 1.7 | Continue to populate September MORs for the 61 entities of SIMAD. |
| 12 | Monthly Operating Reports | 10/28/26 | Ethan Xie | 1.3 | Continue to populate September MORs for the 61 entities of SIMAD. |
| 12 | Monthly Operating Reports | 10/28/26 | Ethan Xie | 0.8 | Participate in call with FTI team regarding September MOR updates. |
| 12 | Monthly Operating Reports | 10/28/26 | Ethan Xie | 2.3 | Populate September MORs for the 61 entities of SIMAD. |
| 12 | Monthly Operating Reports | 10/28/26 | Joshua Beets | 0.7 | Review of September MORs. |
| 12 | Monthly Operating Reports | 10/28/26 | Russell Laughlin | 0.6 | Call with CRO and FTI team to review September MORs. |
| 12 | Monthly Operating Reports | 10/28/26 | Russell Laughlin | 1.5 | Call with FTI team to discuss MOR report changes. |
| 12 | Monthly Operating Reports | 10/28/26 | Russell Laughlin | 3.0 | Update the September MOR analysis. |
| 12 | Monthly Operating Reports | 10/29/26 | David Lee | 0.8 | Review and update September MORs based on additional information. |
| 12 | Monthly Operating Reports | 10/29/26 | David Lee | 0.9 | Review September MORs to implement identified updates. |
| 12 | Monthly Operating Reports | 10/29/26 | David Lee | 0.5 | Review September MOR population and provide comments. |
| 12 | Monthly Operating Reports | 10/29/26 | David Lee | 1.1 | Edit and adjust September MOR global notes based on Cole Schotz request. |
| 12 | Monthly Operating Reports | 10/29/26 | David Lee | 0.6 | Conduct final check of September MORs to prepare for filing. |
| 12 | Monthly Operating Reports | 10/29/26 | Ethan Xie | 1.0 | Continue to revise September MOR documents with updated information. |
| 12 | Monthly Operating Reports | 10/29/26 | Ethan Xie | 0.9 | Continue to revise September MOR documents with updated information. |
| 12 | Monthly Operating Reports | 10/29/26 | Ethan Xie | 2.5 | Revise September MOR documents with updated information. |
| 12 | Monthly Operating Reports | 10/29/26 | Russell Laughlin | 0.4 | Update MOR global notes per comments from Cole Schotz. |
| 12 | Monthly Operating Reports | 10/29/26 | Russell Laughlin | 1.5 | Review draft MOR PDFs prior to filing. |
| 12 | Monthly Operating Reports | 10/30/26 | David Lee | 2.0 | Create an MOR update document to provide to FTI team. |
| 12 | Monthly Operating Reports | 10/30/26 | David Lee | 0.3 | Identify September MOR disbursement amounts. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 12 | Monthly Operating Reports | 10/30/26 | David Lee | 0.8 | Update schedule of US Trustee fee payments for September MOR. |
| 12 | Monthly Operating Reports | 10/30/26 | David Lee | 0.4 | Continue to update schedule of US Trustee fee payments for September MOR. |
| | **Task Code 12 Total** | | | **115.4** | |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 13 | SOFAs & SOALs | 10/5/26 | Christopher Creger | 1.3 | Review findings on previously unrecorded MCA payments and potential preferential transfers to potentially prepare an amendment to the SOFA. |
| 13 | SOFAs & SOALs | 10/5/26 | Joshua Beets | 0.3 | Review of proposed revisions to SOFA/SOAL. |
| 13 | SOFAs & SOALs | 10/5/26 | Kavi Bommakanti | 0.7 | Review bank statements for MCA payments for all camps for SOFA and SOAL amendment related updates. |
| 13 | SOFAs & SOALs | 10/5/26 | Max Pidgeon | 2.2 | Continue to look through bank statements for additional payments not in QuickBooks for SOFA amendment related purposes. |
| 13 | SOFAs & SOALs | 10/5/26 | Max Pidgeon | 1.0 | Look through bank statements for additional payments not in QuickBooks for SOFA amendment related purposes. |
| 13 | SOFAs & SOALs | 10/6/26 | Joshua Beets | 2.4 | Review proposed amendment to SOFA/SOAL. |
| 13 | SOFAs & SOALs | 10/6/26 | Max Pidgeon | 1.4 | Update addresses for parties relating to the SOFA amendment. |
| 13 | SOFAs & SOALs | 10/6/26 | Max Pidgeon | 0.4 | Continue to update addresses for parties relating to the SOFA amendment. |
| 13 | SOFAs & SOALs | 10/6/26 | Russell Laughlin | 3.0 | Revise SOFA submission based on missing transactions data. |
| 13 | SOFAs & SOALs | 10/7/26 | Christopher Creger | 1.3 | Review and coordinate revisions to SOFA/SOALs and provide direction regarding scope of review, identified discrepancies, and next steps for management approval and amended filings. |
| 13 | SOFAs & SOALs | 10/7/26 | Christopher Creger | 1.1 | Review the proposed amendments to SOFA, including undisclosed transfers, insider and related-party payments, and potential duplicate transactions. |
| 13 | SOFAs & SOALs | 10/7/26 | Joshua Beets | 1.8 | Review of revisions to SOFA/SOAL. |
| 13 | SOFAs & SOALs | 10/8/26 | John Flittner | 2.7 | Reconcile QuickBooks logs with actual bank statements to identify discrepancies and missing transactions to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/8/26 | John Flittner | 2.6 | Continue to reconcile QuickBooks logs with actual bank statements to identify discrepancies and missing transactions to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/8/26 | John Flittner | 2.2 | Continue to reconcile QuickBooks logs with actual bank statements to identify discrepancies and missing transactions to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/8/26 | Joshua Beets | 2.2 | Review of revisions to SOFA/SOAL. |
| 13 | SOFAs & SOALs | 10/8/26 | Max Pidgeon | 1.9 | Identify insider transfers from bank statements to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/8/26 | Max Pidgeon | 1.5 | Continue to identify insider transfers from bank statements to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/8/26 | Max Pidgeon | 3.0 | Continue to identify insider transfers from bank statements to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/9/26 | John Flittner | 2.3 | Continue to work on QuickBooks vs. bank account reconciliation for SOFA question 4 amendment. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 13 | SOFAs & SOALs | 10/9/26 | John Flittner | 1.7 | Continue to work on QuickBooks vs. bank account reconciliation for SOFA question 4 amendment. |
| 13 | SOFAs & SOALs | 10/9/26 | Max Pidgeon | 1.2 | Continue to identify insider transfers from bank statements to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/9/26 | Max Pidgeon | 0.5 | Continue to identify insider transfers from bank statements to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/12/26 | John Flittner | 2.0 | Continue to work on reconciling bank statements and QuickBooks transactions for SOFA question 4 amendment. |
| 13 | SOFAs & SOALs | 10/12/26 | Max Pidgeon | 2.0 | Continue to identify insider transfers from bank statements to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/12/26 | Max Pidgeon | 0.6 | Continue to identify insider transfers from bank statements to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/12/26 | Max Pidgeon | 2.5 | Continue to identify insider transfers from bank statements to amend SOFA question 4. |
| 13 | SOFAs & SOALs | 10/13/26 | Max Pidgeon | 2.1 | Update SOFA question 4 amendment listing. |
| 13 | SOFAs & SOALs | 10/14/26 | Christopher Creger | 0.5 | Call with FTI team to review proposed amendments to Question 4 of the Debtors’ Statements of Financial Affairs. |
| 13 | SOFAs & SOALs | 10/14/26 | John Flittner | 0.5 | Call with FTI team to review proposed amendments to Question 4 of the Debtors’ Statements of Financial Affairs. |
| 13 | SOFAs & SOALs | 10/14/26 | Joshua Beets | 1.2 | Review of revisions to SOFA/SOAL. |
| 13 | SOFAs & SOALs | 10/14/26 | Max Pidgeon | 0.5 | Call with FTI team to review proposed amendments to Question 4 of the Debtors’ Statements of Financial Affairs. |
| 13 | SOFAs & SOALs | 10/14/26 | Max Pidgeon | 0.4 | Review and update recommended amendment to SOFA question 4 based on FTI team comments. |
| 13 | SOFAs & SOALs | 10/14/26 | Max Pidgeon | 1.0 | Update SOFA question 4 amendment listing. |
| 13 | SOFAs & SOALs | 10/14/26 | Russell Laughlin | 0.5 | Call with FTI team to review proposed amendments to Question 4 of the Debtors’ Statements of Financial Affairs. |
| 13 | SOFAs & SOALs | 10/14/26 | Vivek Ram | 0.5 | Call with FTI team to review proposed amendments to Question 4 of the Debtors’ Statements of Financial Affairs. |
| 13 | SOFAs & SOALs | 10/16/26 | Joshua Beets | 0.2 | Review of revisions to SOFA/SOALs. |
| 13 | SOFAs & SOALs | 10/16/26 | Max Pidgeon | 1.5 | Update SOFA question 4 amendment listing. |
| 13 | SOFAs & SOALs | 10/22/26 | Christopher Creger | 0.9 | Review and respond to the proposed amendment to SOFA question 4. |
| 13 | SOFAs & SOALs | 10/22/26 | Joshua Beets | 0.8 | Review of revisions to SOFA/SOAL. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 13 | SOFAs & SOALs | 10/22/26 | Max Pidgeon | 0.4 | Update SOFA amendment to send to Kroll to file based on FTI team comments. |
| 13 | SOFAs & SOALs | 10/22/26 | Max Pidgeon | 1.6 | Update SOFA amendment to send to Kroll to file. |
| 13 | SOFAs & SOALs | 10/23/26 | Christopher Creger | 0.8 | Review and respond to Amendment to SOFA question 4. |
| 13 | SOFAs & SOALs | 10/23/26 | Max Pidgeon | 0.8 | Finalize SOFA question 4 amendment and send to CRO. |
| 13 | SOFAs & SOALs | 10/23/26 | Reagan Jones | 0.6 | Analyze DAMIS docket for SOFA/SOAL filings. |
| | **Task Code 13 Total** | | | **60.6** | |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 14 | General Bankruptcy Reporting | 10/5/26 | David Lee | 0.8 | Begin to pull data for insurance and critical vendor reporting. |
| 14 | General Bankruptcy Reporting | 10/5/26 | David Lee | 0.8 | Lay out process for insurance and critical vendor reporting. |
| 14 | General Bankruptcy Reporting | 10/6/26 | David Lee | 0.5 | Continue to save down transaction detail for September for insurance and critical vendor reporting. |
| 14 | General Bankruptcy Reporting | 10/7/26 | David Lee | 1.1 | Continue to prepare and compile data for insurance and critical vendor reporting. |
| 14 | General Bankruptcy Reporting | 10/7/26 | David Lee | 1.2 | Continue to prepare and compile data for insurance and critical vendor reporting. |
| 14 | General Bankruptcy Reporting | 10/8/26 | David Lee | 1.4 | Aggregate A/P data to align with prepetition A/P for insurance and critical vendor reporting. |
| 14 | General Bankruptcy Reporting | 10/8/26 | David Lee | 0.5 | Review correspondence regarding sales and bankruptcy reporting. |
| 14 | General Bankruptcy Reporting | 10/8/26 | David Lee | 1.9 | Finalize data consolidation and cleaning for insurance and critical vendor reporting. |
| 14 | General Bankruptcy Reporting | 10/8/26 | David Lee | 1.2 | Finalize critical vendor data aggregation exercise for bankruptcy reporting. |
| 14 | General Bankruptcy Reporting | 10/8/26 | Finnley Collins | 1.0 | Update internal disbursements reconciliation analysis for bankruptcy reporting. |
| 14 | General Bankruptcy Reporting | 10/9/26 | David Lee | 0.8 | Iterate on feedback regarding insurance and critical vendor reporting from FTI Team. |
| 14 | General Bankruptcy Reporting | 10/9/26 | David Lee | 0.2 | Review and identify insurance and critical vendor reporting documentation for multiple camps. |
| 14 | General Bankruptcy Reporting | 10/9/26 | David Lee | 0.5 | Finalize critical vendor data aggregation exercise for bankruptcy reporting. |
| 14 | General Bankruptcy Reporting | 10/13/26 | David Lee | 0.8 | Iterate on critical vendor reporting per FTI Team request. |
| 14 | General Bankruptcy Reporting | 10/13/26 | David Lee | 1.0 | Add updated detail to critical vendor reporting per FTI Team request. |
| 14 | General Bankruptcy Reporting | 10/13/26 | David Lee | 0.4 | Finalize critical vendor reporting for FTI Team and US Trustee. |
| 14 | General Bankruptcy Reporting | 10/13/26 | Russell Laughlin | 0.9 | Review critical vendor and insurance motion reporting for September. |
| 14 | General Bankruptcy Reporting | 10/14/26 | David Lee | 0.6 | Update contracts schedule with updated data for general bankruptcy reporting. |
| 14 | General Bankruptcy Reporting | 10/19/26 | Max Pidgeon | 0.8 | Review and send 2024 tax return information to Cole Schotz for general bankruptcy reporting. |
| 14 | General Bankruptcy Reporting | 10/19/26 | Max Pidgeon | 0.5 | Request additional information on specific transactions from SIMAD team for general bankruptcy reporting purposes. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 14 | General Bankruptcy Reporting | 10/23/26 | Constantino Kyprianou | 0.6 | Call with Cole Schotz to coordinate the return of hard copy documents for reporting related purposes. |
| 14 | General Bankruptcy Reporting | 10/28/26 | Max Pidgeon | 0.7 | Identify assets sold for bankruptcy reporting letter for Cole Schotz. |
| 14 | General Bankruptcy Reporting | 10/29/26 | Christopher Creger | 1.1 | Discuss SIMAD revenue recognition and related bankruptcy financial reporting treatment. |
| | **Task Code 14 Total** | | | **19.3** | |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/1/26 | Christopher Creger | 0.7 | Review potential claims and communicate plan of action to team. |
| 15 | Claims Management, Reconciliation and Resolution | 10/1/26 | Evan Hudgins | 2.9 | Update administrative claims figures for camp closing adjustments. |
| 15 | Claims Management, Reconciliation and Resolution | 10/1/26 | Evan Hudgins | 2.2 | Update waterfall analysis with updated claims treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/1/26 | Joshua Beets | 0.3 | Review of waterfall and potential claim issues. |
| 15 | Claims Management, Reconciliation and Resolution | 10/1/26 | Vivek Ram | 1.3 | Make additional changes to waterfall and claims priority per counsel feedback. |
| 15 | Claims Management, Reconciliation and Resolution | 10/5/26 | Evan Hudgins | 2.6 | Update liquidation analysis with modified claims treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/5/26 | Mihai Cirstea | 2.7 | Continue preparation of convenience class claims analysis in support of the Debtors' liquidating plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/6/26 | Christopher Creger | 2.9 | Continue extensive review and refinement of HLA assumptions, including updates to asset realizations, secured claims, administrative expenses, and projected creditor recoveries. |
| 15 | Claims Management, Reconciliation and Resolution | 10/6/26 | Christopher Creger | 2.1 | Review and evaluate HLA assumptions, including treatment and priority of disputed secured and MCA claims, Ch. 7 administrative expenses, and allocation of recoveries across collateral pools. |
| 15 | Claims Management, Reconciliation and Resolution | 10/6/26 | Christopher Creger | 1.5 | Review revised UCC and Mishmeret settlement term sheet and related correspondence, including analysis of administrative claim funding protections and Debtors' obligations under the proposed settlement. |
| 15 | Claims Management, Reconciliation and Resolution | 10/6/26 | Evan Hudgins | 2.5 | Update liquidation analysis with updated claims and Ch.7 trustee figures. |
| 15 | Claims Management, Reconciliation and Resolution | 10/6/26 | Mihai Cirstea | 2.2 | Analyze convenience class claims in support of the Debtors' liquidating plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/6/26 | Mihai Cirstea | 2.4 | Continue preparation of convenience class claims analysis in support of the Debtors' liquidating plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/6/26 | Mihai Cirstea | 0.5 | Continue preparing convenience class claims analysis in support of the Debtors' liquidating plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/6/26 | Mihai Cirstea | 2.9 | Continue preparing convenience class claims analysis in support of the Debtors' liquidating plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/7/26 | Christopher Creger | 1.2 | Review and evaluate revised recovery waterfall and supporting financial schedules, including treatment of disputed secured claims and remaining DIP-funded operating cash. |
| 15 | Claims Management, Reconciliation and Resolution | 10/7/26 | Christopher Creger | 1.3 | Review and reconcile Mishmeret bondholder claim calculations and proposed settlement amounts, including differences in foreign exchange rates, Roll-Up obligations, and exit fees. |
| 15 | Claims Management, Reconciliation and Resolution | 10/7/26 | Evan Hudgins | 2.8 | Update administrative claims figures for camp closing adjustments. |
| 15 | Claims Management, Reconciliation and Resolution | 10/7/26 | Evan Hudgins | 2.7 | Update waterfall analysis with updated claims treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/8/26 | Christopher Creger | 0.9 | Assess MCA claim duplication, insufficient documentation, disputed priority classifications, and secured-status challenges under UCC §9-309. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/8/26 | Christopher Creger | 1.1 | Review and analyze claims reconciliation, including evaluation of disputed claims, proposed omnibus objection categories, and reconciliation of asserted amounts against Debtors' books and records. |
| 15 | Claims Management, Reconciliation and Resolution | 10/8/26 | Christopher Creger | 0.9 | Conduct review of HLA, including Chapter 7 trustee fee calculations, statutory claims priorities, secured creditor recoveries by collateral pool, and consistency with the proposed Chapter 11 Plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/8/26 | Christopher Creger | 1.7 | Develop claim-level objection methodologies and supporting schedules, including objection strategy, lien search requirements, and preparation of consolidated exhibits for Kroll and proposed claim objection filings. |
| 15 | Claims Management, Reconciliation and Resolution | 10/8/26 | Christopher Creger | 0.9 | Review and respond to multiple inquiries from UCC advisors and internal FTI team regarding the revised waterfall, including secured claim classifications and liquidation trust funding assumptions. |
| 15 | Claims Management, Reconciliation and Resolution | 10/9/26 | Christopher Creger | 1.6 | Review and revise proposed omnibus claim objection addressing disputed secured status of MCA lenders, including reconciliation of 71 claims across six funders. |
| 15 | Claims Management, Reconciliation and Resolution | 10/9/26 | Evan Hudgins | 2.2 | Prepare consolidated liquidation claims analysis by collateral pool. |
| 15 | Claims Management, Reconciliation and Resolution | 10/9/26 | Evan Hudgins | 2.1 | Update liquidation analysis Ch.7 and Ch.11 waterfalls with updated claims treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/9/26 | Joshua Beets | 1.4 | Review multiple claims to be recategorized. |
| 15 | Claims Management, Reconciliation and Resolution | 10/9/26 | Vivek Ram | 0.8 | Review claims objections for counsel review. |
| 15 | Claims Management, Reconciliation and Resolution | 10/10/26 | Christopher Creger | 0.8 | Assess treatment of Mulligan's disputed secured claim, revised collateral allocations, secured creditor deficiency claims, convenience class distributions, and subordinated claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/12/26 | Christopher Creger | 1.3 | Assess Debtors' counsel's recommendation to address Mulligan Funding claims through a separate adversary proceeding and provide direction to FTI professionals. |
| 15 | Claims Management, Reconciliation and Resolution | 10/12/26 | Christopher Creger | 0.9 | Evaluate disputed secured claims, deficiency and guaranty obligations, allocation of the $13 million GUC settlement fund, convenience class treatment, and intercompany claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/12/26 | Christopher Creger | 1.0 | Review and analyze SIMAD bondholder convenience class and general unsecured creditor claims, including claim eligibility, classification, and projected recoveries under the proposed Chapter 11 Plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/12/26 | Christopher Creger | 1.4 | Review and evaluate proposed SIMAD First Omnibus Claims Objection, including disputed secured classifications of MCA lender claims and proposed reclassification to general unsecured status. |
| 15 | Claims Management, Reconciliation and Resolution | 10/12/26 | Christopher Creger | 0.5 | Review proposed claims objections, including disputed secured status of MCA lender claims, supporting claim classifications, and potential reclassification to general unsecured claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/12/26 | Evan Hudgins | 2.6 | Update liquidation analysis with updated claims and Ch.7 trustee figures. |
| 15 | Claims Management, Reconciliation and Resolution | 10/12/26 | Joshua Beets | 0.4 | Review of claims to reclassify. |
| 15 | Claims Management, Reconciliation and Resolution | 10/12/26 | Russell Laughlin | 1.8 | Update draft Claims document for First Omnibus Objection. |
| 15 | Claims Management, Reconciliation and Resolution | 10/12/26 | Vivek Ram | 0.6 | Review updates to claims objections. |
| 15 | Claims Management, Reconciliation and Resolution | 10/13/26 | Christopher Creger | 0.8 | Assess Mulligan claim allocations, BNH administrative expense treatment, Chapter 7 and Chapter 11 waterfall priorities, convenience class distributions, and the GUC settlement fund. |

EXHIBIT B

SIMAD Holdings, Ltd. - CASE NO. 26-16388

DETAIL OF TIME ENTRIES

FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/13/26 | Christopher Creger | 1.5 | Evaluate administrative claim funding, DIP lien priorities, disputed MCA claims, intercompany obligations, and subordinated claims across collateral pools. |
| 15 | Claims Management, Reconciliation and Resolution | 10/13/26 | Mihai Cirstea | 1.7 | Develop additional analyses to test the convenience class structure. |
| 15 | Claims Management, Reconciliation and Resolution | 10/13/26 | Mihai Cirstea | 2.1 | Continue preparing convenience class analysis for the Debtors' liquidating plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/13/26 | Mihai Cirstea | 2.7 | Update convenience class analysis and GUC analysis in connection with Plan classification and treatment of Class 8 and Class 9 claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Christopher Creger | 1.9 | Evaluate convenience class analysis, including claim eligibility, proposed classification thresholds, opt-down elections, and projected creditor recoveries under the Chapter 11 Plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Evan Hudgins | 2.3 | Update liquidation analysis for updated secured claims treatment allocations. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Joshua Beets | 1.7 | Review of convenience class claims modeling. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Mihai Cirstea | 0.7 | Prepare preliminary recommendation regarding convenience class structure, including automatic threshold, recovery percentage and per-holder cap, and irrevocable election terms. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Mihai Cirstea | 0.6 | Update convenience class claimant analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Mihai Cirstea | 0.8 | Analyze alternative convenience class recovery percentages and per-holder caps. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Mihai Cirstea | 2.3 | Revise convenience class analysis to incorporate net claims basis and holder-level aggregation across Debtors and affiliates. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Russell Laughlin | 1.0 | Review convenience class analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Vivek Ram | 1.5 | Review of convenience class analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/14/26 | Vivek Ram | 2.8 | Review, discuss, and update waterfall and claims analysis with additional information and assumptions. |
| 15 | Claims Management, Reconciliation and Resolution | 10/15/26 | Christopher Creger | 1.7 | Review revised HLA, including Chapter 7 and Chapter 11 DIP allocations, cross-collateralized obligations, consolidated GUC recoveries, and treatment of non-Plan Debtor claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/15/26 | Christopher Creger | 1.1 | Evaluate administrative expense funding, intercompany claims, disputed secured liens, and reconciliation of Mishmeret's claims to the proposed Rule 9019 settlement. |
| 15 | Claims Management, Reconciliation and Resolution | 10/15/26 | Christopher Creger | 0.9 | Provide direction to FTI team regarding claims adjustments, financial model revisions, proposed Plan and Disclosure Statement modifications, and coordination with Debtors' counsel on convenience class eligibility. |
| 15 | Claims Management, Reconciliation and Resolution | 10/15/26 | Christopher Creger | 0.9 | Evaluate convenience class restructuring analysis, including claims population reconciliation, opt-down elections, recovery sensitivities, and proposed Class 9 treatment under the Chapter 11 Plan. |
| 15 | Claims Management, Reconciliation and Resolution | 10/15/26 | Evan Hudgins | 2.8 | Update liquidation analysis secured claim deficiency analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/15/26 | Joshua Beets | 0.5 | Review of convenience class claims modeling. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/15/26 | Russell Laughlin | 1.2 | Review convenience class analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Christopher Creger | 0.8 | Provide direction to FTI team regarding outstanding claims reconciliations, validation of model revisions, and preparation of proposed Plan and Disclosure Statement modifications. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Christopher Creger | 1.7 | Review and evaluate revised HLA, including allocation of Mulligan Funding's secured claim across collateral pools and resulting Chapter 7 versus Chapter 11 creditor recoveries. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Christopher Creger | 0.9 | Review and evaluate revised SIMAD convenience class analysis, including proposed Class 9 eligibility, creditor claim populations, opt-down elections, and recovery sensitivities. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Max Pidgeon | 0.7 | Identify Enhanced Capital payments at specific camps. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Mihai Cirstea | 0.8 | Prepare efficient frontier analysis of convenience class threshold, recovery, and cap scenarios. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Mihai Cirstea | 0.4 | Review claims register for government claimant reclassifications, duplicate claims, and priority claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Mihai Cirstea | 0.7 | Add scenario analysis to convenience class model and quantify impact on holder population and recoveries. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Mihai Cirstea | 0.2 | Update summary schedule and scenario grid to tie unsecured creditor settlement fund to the Rule 9019 term sheet. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Mihai Cirstea | 0.4 | Correspond with FTI team regarding convenience class analysis and proposed Class 9 treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Mihai Cirstea | 0.4 | Analyze cost and holder-count outcomes across convenience class scenarios for proposed Class 9 treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Mihai Cirstea | 0.3 | Analyze general unsecured claims register to identify holders below alternative convenience class thresholds. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Russell Laughlin | 1.8 | Review convenience class analysis updates. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Russell Laughlin | 1.9 | Review Plan and secured Claims objection from Cole Schotz and Kroll team. |
| 15 | Claims Management, Reconciliation and Resolution | 10/16/26 | Vivek Ram | 1.0 | Update HLA and waterfall treatment of secured claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/17/26 | Christopher Creger | 1.1 | Review and evaluate revised SIMAD convenience class analysis and supporting financial model. |
| 15 | Claims Management, Reconciliation and Resolution | 10/17/26 | Mihai Cirstea | 0.8 | Distribute updated claims summary and scenario grid to FTI team for review. |
| 15 | Claims Management, Reconciliation and Resolution | 10/17/26 | Mihai Cirstea | 0.8 | Update sensitivity tables in claims reconciliation to include additional claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/17/26 | Mihai Cirstea | 0.6 | Prepare correspondence to Debtors' counsel regarding proposed Class 9 treatment and related Plan revisions. |
| 15 | Claims Management, Reconciliation and Resolution | 10/17/26 | Mihai Cirstea | 0.9 | Estimate claim adjustments for anticipated Plan objections in convenience class schedules. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/17/26 | Mihai Cirstea | 0.7 | Analyze impact of proposed convenience class on residual general unsecured class voting and impairment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/17/26 | Mihai Cirstea | 0.7 | Prepare election sensitivity tables for holders above the convenience class threshold. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Christopher Creger | 0.9 | Analyze 2026 Israel Securities Authority annual reporting fee, including potential prepetition versus post petition claim classification and authorization under the First Day taxes and fees order. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Christopher Creger | 1.1 | Evaluate Mulligan claim allocation methodology, reconcile liquidation assumptions with updated waterfall calculations, and identify outstanding claim treatment and recovery issues. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Evan Hudgins | 1.3 | Review camp director employment contracts. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Joshua Beets | 1.1 | Review of camp director potential claims for bonuses. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Joshua Beets | 1.2 | Review of convenience class claims modeling. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Mihai Cirstea | 0.7 | Reclassify certain Class 8 claims by creditor type and update voting analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Mihai Cirstea | 0.5 | Review comments from FTI team regarding convenience class analysis and Class 8 and 9 composition. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Mihai Cirstea | 0.8 | Review potential insider claims within Class 9 for impaired accepting class analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Mihai Cirstea | 0.8 | Analyze convenience class election sensitivity across alternative thresholds and cap sizes. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Mihai Cirstea | 0.7 | Revise claims register schedules to reflect creditor consolidations and reclassifications. |
| 15 | Claims Management, Reconciliation and Resolution | 10/19/26 | Russell Laughlin | 2.8 | Review and update convenience class analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Christopher Creger | 1.6 | Analyze claims register and HLA, including attribution of GUCs across collateral pools, identification of duplicate and protective proofs of claim, and reconciliation of claim amounts. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Christopher Creger | 0.9 | Review and analyze supporting claims calculations and estimated bonus payments, including comparison to historical bonus amounts and identification of amounts not supported by contractual formulas. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Christopher Creger | 1.9 | Review and analyze updated waterfall, recovery bridge, and cash reconciliation schedules, including FIRPTA withholding, Enhanced Capital escrow reserves, and potential secured claim reclassifications. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Evan Hudgins | 2.1 | Build GUC claims analysis by collateral pool. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Evan Hudgins | 1.6 | Correspond with Cole Schotz about secured and GUC claims treatment by collateral pool. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Evan Hudgins | 2.3 | Update liquidation analysis secured claims allocations and associated support. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Evan Hudgins | 2.6 | Update liquidation analysis claims support data and secured claims treatment. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Joshua Beets | 0.1 | Review of camp director potential claims for bonuses. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Joshua Beets | 2.7 | Review of convenience class claims modeling. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Mihai Cirstea | 0.5 | Correspond with FTI team regarding edits to convenience class analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Vivek Ram | 1.1 | Review updates to GUC recoveries and impact on convenience class. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Vivek Ram | 2.2 | Assist with further HLA and claims reconciliation clarifications. |
| 15 | Claims Management, Reconciliation and Resolution | 10/20/26 | Vivek Ram | 1.4 | Continue to assist with further HLA and claims reconciliation clarifications. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Christopher Creger | 0.7 | Evaluate implications of separate Camp Business and Holding Company Chapter 11 Plans for allocation of litigation recoveries, potential claims assignments, and Liquidation Trust structures. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Christopher Creger | 0.5 | Respond to CRO regarding supporting calculations and estimated bonus payments, including evaluation of underlying assumptions and calculation methodologies. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Christopher Creger | 1.5 | Review and analyze convenience class structure and creditor recovery calculations, including reconciliation of claims populations and recovery assumptions between the HLA and convenience class model. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Christopher Creger | 1.1 | Review potential intercompany claims and avoidance recoveries arising from bond proceeds transferred from SIMAD Equities to DAMIS. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Christopher Creger | 1.3 | Review and analyze potential intercompany claims between Debtors and Holding Company Debtors, including the approximately $53 million in bond proceeds transferred through SIMAD Equities and DAMIS. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Christopher Creger | 0.9 | Review discrepancies between HLA and convenience class model, including attribution of GUCs by Debtor and collateral pool and treatment of multiple claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Evan Hudgins | 1.8 | Reconcile GUC claims to claims register and convenience class analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Evan Hudgins | 2.3 | Update liquidation analysis with updated secured claims treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Joshua Beets | 2.4 | Review of convenience class claims modeling. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Mihai Cirstea | 0.4 | Correspond with FTI team regarding draft liquidation analysis and convenience class reconciliation. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Mihai Cirstea | 2.5 | Reconcile claims register to the liquidation analysis and convenience class analysis by claim category. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Mihai Cirstea | 1.3 | Document and conform differences in claims treatment between the liquidation and convenience class analyses. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Mihai Cirstea | 0.7 | Revise convenience class analysis to reflect all Plan sources of recovery for general unsecured creditors. |
| 15 | Claims Management, Reconciliation and Resolution | 10/21/26 | Mihai Cirstea | 1.1 | Analyze case documents to establish a consistent definition of types of claims. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Christopher Creger | 0.9 | Analyze merchant cash advance claims and proposed omnibus claims objections, including E Advance and American Choice proofs of claim, asserted secured status, and supporting financing agreements. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Christopher Creger | 0.8 | Evaluate replacing the proposed impaired Class 9 with an unimpaired de minimis claims class, including alternative eligibility thresholds, holder aggregation, priority and insider screening, and funding requirements. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Christopher Creger | 1.4 | Review and analyze HLA and recovery scenarios, including Mulligan secured claim allocation, Kiwi collateral proceeds and administrative expenses, and treatment of secured and priority tax claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Christopher Creger | 0.6 | Analyze Visions secured claim dispute and proposed summary judgment motion, including UCC financing statement filing requirements and potential limitations arising from fixture filing provisions. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Christopher Creger | 0.8 | Review convenience class alternatives in light of updated HLA and projected Class 8 recoveries, including implications for creditor treatment, voting, and plan confirmation. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Christopher Creger | 0.5 | Review Kiwi secured claim treatment in the HLA, including Beacon's senior mortgage and UCC liens and Mahopac's asserted claim arising from debt secured by Bellotto-owned property. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Christopher Creger | 1.2 | Review waterfall and recovery bridge, including reconciliation of professional fee contingency reclassifications and changes in secured, administrative, and priority claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Evan Hudgins | 2.8 | Reconcile E Advance, Enhanced Capital, and Mulligan secured claims documentation and allocations. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Evan Hudgins | 2.2 | Update liquidation analysis supporting claims schedules. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Mihai Cirstea | 1.3 | Prepare general unsecured recovery analysis under alternative claims scenarios. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Mihai Cirstea | 1.4 | Analyze costs and electing holders under alternative convenience class structures. |
| 15 | Claims Management, Reconciliation and Resolution | 10/22/26 | Mihai Cirstea | 1.2 | Analyze existing convenience class structure across general unsecured recovery scenarios. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Christopher Creger | 0.7 | Assess potential discrepancies in payroll withholding, employer contribution, and penalty amounts, including Meadowbrook claim classifications. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Christopher Creger | 0.7 | Evaluate implications for creditor distributions and outstanding Mahopac claim documentation. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Christopher Creger | 1.4 | Review and analyze HLA and revised priority tax claim treatment, including incorporation of IRS and state taxing authority claims into waterfalls and reconciliation of amended proofs of claim. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Christopher Creger | 1.2 | Review and analyze proposed revisions to waterfall and HLA arising from Kiwi secured claim corrections. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Christopher Creger | 1.8 | Review Disclosure Statement retained causes of action and proposed Liquidation Trust asset schedules, including potential avoidance and recovery claims involving DAMIS and related party transfers. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Christopher Creger | 1.2 | Review HLA and proposed revisions to SBA Economic Injury Disaster Loan claim treatment, including lien perfection, collateral priority, and potential superiority claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Christopher Creger | 1.5 | Review HLA and supporting tax claims schedules, including reconciliation of asserted priority tax claims and evaluation of priority versus general unsecured classifications. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Evan Hudgins | 2.3 | Update liquidation analysis claims sensitivity scenarios. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Evan Hudgins | 1.6 | Update liquidation analysis waterfalls and recoveries with priority tax claim figures. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Joshua Beets | 1.2 | Review of de minimis class. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Max Pidgeon | 0.7 | Edit tenant dispute and claims letter for One Canal Place. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Mihai Cirstea | 1.1 | Update convenience class analysis for revised general unsecured recovery assumption. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Mihai Cirstea | 0.9 | Analyze interaction between cost cap and implied fixed recovery under convenience class structure. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Mihai Cirstea | 1.2 | Revise claims class summary presentation for base case and fallback structures. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Mihai Cirstea | 2.3 | Prepare de minimis claims class sizing analysis across threshold scenarios. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Mihai Cirstea | 1.2 | Analyze de minimis class costs under the cost cap to develop threshold recommendation. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Mihai Cirstea | 0.5 | Correspond with FTI team regarding de minimis and convenience class analyses. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Mihai Cirstea | 0.4 | Update de minimis sizing analysis for priority, tax, and insider claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Mihai Cirstea | 0.9 | Analyze impact of holder-level aggregation on de minimis class eligibility. |
| 15 | Claims Management, Reconciliation and Resolution | 10/23/26 | Mihai Cirstea | 0.7 | Prepare funding source allocation for de minimis class payments. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Christopher Creger | 1.5 | Review Kiwi secured claims and lien priorities, including Mahopac, Beacon, and Mulligan obligations. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Christopher Creger | 1.7 | Analyze Kiwi prepetition and post petition Mahopac payments to evaluate potential fraudulent transfer and unauthorized post petition transfer claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Christopher Creger | 1.5 | Evaluate secured creditor treatment and claim classifications, including Newtek, Mulligan, E Advance, and E.F. Hutton. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Evan Hudgins | 2.1 | Update liquidation analysis claims support data and secured claims treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Evan Hudgins | 2.3 | Build liquidation analysis POC priority tax schedule from claims register. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Evan Hudgins | 2.4 | Update liquidation analysis with updated claims treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Evan Hudgins | 1.6 | Review proofs of claim for various secured claims. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Evan Hudgins | 1.8 | Update liquidation analysis de minimis claims treatment. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Joshua Beets | 1.1 | Review of de minimis class. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Joshua Beets | 0.8 | Review of omnibus claims objections. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Mihai Cirstea | 0.5 | Review comments from FTI team regarding the de minimis and convenience class analysis for the Plan and Disclosure Statement. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Mihai Cirstea | 2.2 | Update the convenience class analysis to link the GUC recovery inputs to the updated hypothetical liquidation analysis and recalculate the de minimis and fallback class figures. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Mihai Cirstea | 0.6 | Review the recommended de minimis threshold and the fallback convenience class structure. |
| 15 | Claims Management, Reconciliation and Resolution | 10/26/26 | Mihai Cirstea | 2.6 | Conform the eligible claims population in the convenience class analysis to the hypothetical liquidation analysis. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Christopher Creger | 1.5 | Review retained causes of action and reconcile intercompany transfers, insider transactions, and avoidance claims with the team. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Christopher Creger | 0.8 | Analyze Ch. 7 distribution priorities and proposed corrections to administrative, wage, and tax claim recoveries. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Christopher Creger | 0.6 | Review Class 9 de minimis treatment and reconcile claim populations and projected recoveries. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Christopher Creger | 1.6 | Review E.F. Hutton claim and engagement terms to assess potential objections. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Christopher Creger | 0.6 | Discuss camp director bonus obligations and related financial considerations. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Evan Hudgins | 2.5 | Update liquidation analysis waterfall sequencing and priority tax claims treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Evan Hudgins | 2.4 | Update liquidation analysis DIP, secured claims, and GUC treatment. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Evan Hudgins | 1.6 | Review camp director employment contracts and correspond regarding bonuses. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Joshua Beets | 2.1 | Review of camp director potential claims for bonuses. |
| 15 | Claims Management, Reconciliation and Resolution | 10/27/26 | Joshua Beets | 1.9 | Review of de minimis class. |
| 15 | Claims Management, Reconciliation and Resolution | 10/28/26 | Christopher Creger | 0.7 | Review Camp Tal, Mulligan, and Summit secured claim allocations in the waterfall. |
| 15 | Claims Management, Reconciliation and Resolution | 10/28/26 | Christopher Creger | 1.1 | Review Mulligan adversary complaint and provide comments on claim objections and lien avoidance. |
| 15 | Claims Management, Reconciliation and Resolution | 10/28/26 | Christopher Creger | 0.2 | Review camp director bonus conditions. |
| 15 | Claims Management, Reconciliation and Resolution | 10/28/26 | Christopher Creger | 0.5 | Analyze waterfall variances in administrative claims, priority taxes, and FIRPTA reserves. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 15 | Claims Management, Reconciliation and Resolution | 10/28/26 | Evan Hudgins | 2.8 | Update liquidation analysis with waterfall sequencing, claims treatment, and notes detail updates. |
| 15 | Claims Management, Reconciliation and Resolution | 10/28/26 | Evan Hudgins | 1.1 | Review camp director bonus support calculations. |
| 15 | Claims Management, Reconciliation and Resolution | 10/28/26 | Joshua Beets | 1.1 | Review of de minimis class. |
| 15 | Claims Management, Reconciliation and Resolution | 10/30/26 | Christopher Creger | 1.3 | Evaluate Class 9 settlement funding and voting treatment and direct revisions to FTI team. |
| 15 | Claims Management, Reconciliation and Resolution | 10/30/26 | Christopher Creger | 0.5 | Analyze Mulligan secured claim allocations and Kiwi lien adjustments. |
| 15 | Claims Management, Reconciliation and Resolution | 10/30/26 | Christopher Creger | 0.9 | Evaluate Wayne and Chateaugay secured claim deficiencies and liquidation cost allocations against plan treatment. |
| | **Task Code 15 Total** | | | **252.2** | |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Christopher Creger | 0.5 | Call with CRO, ACRO, and FTI team to review waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Christopher Creger | 0.9 | Call with FTI team to discuss needed changes to the overall plan. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Christopher Creger | 1.5 | Review revised settlement term sheet (Mishmeret) for counsel. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Christopher Creger | 0.8 | Review waterfall calculations and potential recovery. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Christopher Pizzo | 0.1 | Review recommended changes to the Waterfall based on CRO feedback. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Christopher Pizzo | 0.5 | Call with CRO, ACRO, and FTI team to review waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Evan Hudgins | 0.5 | Call with CRO, ACRO, and FTI team to review waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Evan Hudgins | 2.7 | Update waterfall analysis bridge from previous version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Evan Hudgins | 2.3 | Update waterfall analysis with revised formatting and schedules. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Joshua Beets | 1.9 | Review of Plan and Disclosure Statement. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Joshua Beets | 1.8 | Review of revisions to waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Kavi Bommakanti | 0.5 | Call with CRO, ACRO, and FTI team to review waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Reagan Jones | 1.7 | Prepare waterfall and fee analysis to circulate to FTI team. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Russell Laughlin | 2.1 | Reconcile waterfall to specific camp sales and closures. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Vivek Ram | 0.5 | Call with CRO, ACRO, and FTI team to review waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Vivek Ram | 0.9 | Call with FTI team to discuss needed changes to the overall plan. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Vivek Ram | 1.1 | Identify and update waterfall analysis with recommended changes from CRO and ACRO. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/1/26 | Vivek Ram | 0.8 | Review outstanding issues on plan, disclosure statement and Litigation Trust. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Christopher Creger | 0.8 | Complete additional review and refine responses to revised draft Plan of Liquidation. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Christopher Creger | 0.7 | Review and respond to questions regarding waterfall updates. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Christopher Creger | 0.9 | Review and discuss additional changes to the waterfall with the internal FTI team. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Christopher Pizzo | 1.4 | Address comments and revise BNH waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Christopher Pizzo | 1.2 | Review and comment on waterfall revisions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Christopher Pizzo | 0.9 | Review and discuss additional changes to the waterfall with the internal FTI team. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Evan Hudgins | 2.7 | Update waterfall and liquidation analysis with Mishmeret recovery calculations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Evan Hudgins | 2.8 | Update liquidation analysis with carve out and other waterfall changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Joshua Beets | 2.4 | Review revisions to Bank of New Hampshire waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Joshua Beets | 2.4 | Review revisions to Bonds waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Kavi Bommakanti | 0.8 | Review correspondences regarding waterfall to implement in waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/2/26 | Vivek Ram | 0.9 | Review and discuss additional changes to the waterfall with the internal FTI team. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/3/26 | Christopher Pizzo | 1.1 | Review, update, and send waterfall to Bondholder trustee and advisors and UCC. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/4/26 | Christopher Pizzo | 0.8 | Review and comment on revised BNH waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/5/26 | Christopher Creger | 2.5 | Respond to specific MCA payment questions and potential preferential transfers, including prioritization of BNH-related camps to assess potential estate recoveries. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/5/26 | Christopher Pizzo | 1.0 | Review and revise BNH waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/5/26 | Evan Hudgins | 1.5 | Consolidate liquidation analysis outstanding questions and diligence items. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/5/26 | Evan Hudgins | 2.3 | Update liquidation analysis waterfall mechanics with updated reserves and credit bid treatment. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/5/26 | Joshua Beets | 2.2 | Review of revisions to Bank of New Hampshire waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/5/26 | Joshua Beets | 0.4 | Review potential preference issues in overall plan. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/5/26 | Russell Laughlin | 1.2 | Review professional fee analysis for overall plan. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/5/26 | Vivek Ram | 2.4 | Continue to update and provide answers to follow up questions on waterfall. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/5/26 | Vivek Ram | 1.2 | Continue to update and provide answers to follow up questions on waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/6/26 | Evan Hudgins | 1.6 | Update liquidation analysis waterfall with contingency account treatment and other items. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/6/26 | Evan Hudgins | 2.7 | Update liquidation analysis with carve out and other waterfall changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/6/26 | Joshua Beets | 1.4 | Review hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Christopher Creger | 0.5 | Call with Mintz, Cole Schotz, and FTI team regarding BNH waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Christopher Creger | 1.0 | Coordinate revisions to BNH recovery presentation to ensure all camp cash is properly reflected, supporting schedules reconcile, and related footnote disclosures are updated. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Evan Hudgins | 2.1 | Build liquidation analysis and consolidated incremental ch.7 cost analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Evan Hudgins | 2.3 | Update liquidation analysis with carve out and other waterfall changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Joshua Beets | 0.5 | Call with Mintz, Cole Schotz, and FTI team regarding BNH waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Joshua Beets | 2.2 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Vivek Ram | 0.5 | Call with Mintz, Cole Schotz, and FTI team regarding BNH waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Vivek Ram | 2.1 | Prepare follow up schedules from waterfall and proceeds. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Vivek Ram | 2.7 | Review and assist with HLA assumptions, comments, and changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/7/26 | Vivek Ram | 1.0 | Update the waterfall model based on comments from BNH and UCC. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Christopher Creger | 0.5 | Call with internal FTI team regarding HLA updates, outstanding financial matters, and related engagement developments. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Christopher Creger | 0.7 | Review and evaluate Wayne Bank's treatment under the Pine Forest and Mesorah sale transactions, including loan assignment, credit bid structure, and assumption of secured indebtedness by purchasers. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Evan Hudgins | 2.8 | Build liquidation analysis and Ch.11 scenario analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Evan Hudgins | 2.4 | Build liquidation analysis and Ch.11 waterfall for BNH camps. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Evan Hudgins | 2.6 | Build liquidation analysis and Ch.11 waterfall for bond camps. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Evan Hudgins | 2.1 | Build liquidation analysis Ch.11 waterfall for Wayne and other camps. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Joshua Beets | 0.9 | Review hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Kavi Bommakanti | 0.5 | Call with internal FTI team regarding HLA updates, outstanding financial matters, and related engagement developments. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Kavi Bommakanti | 0.5 | Review correspondences regarding waterfall and camp sales. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Kavi Bommakanti | 3.0 | Discuss updates with FTI team regarding cash reconciliation and waterfall updates. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Vivek Ram | 1.1 | Assist with specific questions on HLA and waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Vivek Ram | 0.5 | Call with internal FTI team regarding HLA updates, outstanding financial matters, and related engagement developments. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/8/26 | Vivek Ram | 3.0 | Discuss updates with FTI team regarding cash reconciliation and waterfall updates. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Christopher Creger | 1.1 | Review post-closing obligations under the Transition Services Agreement, including requirements to maintain Debtor entities in Ch. 11 through completion of buyer transition services. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Evan Hudgins | 2.3 | Update liquidation analysis Ch.11 waterfall with requested changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Evan Hudgins | 2.5 | Update liquidation analysis Ch.7 waterfall with requested changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Joshua Beets | 0.5 | Review tax withholdings in overall plan. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Joshua Beets | 0.2 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Kavi Bommakanti | 0.7 | Review correspondences regarding waterfall and camp sales to update internal sale analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Reagan Jones | 1.6 | Analyze waterfall sale proceeds and reserve schedules. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Russell Laughlin | 3.0 | Review updated plan and disclosures documents, as well as critical issues list. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Russell Laughlin | 3.0 | Review hypothetical liquidation analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Vivek Ram | 1.3 | Review additional HLA feedback and potential changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Vivek Ram | 1.9 | Review and make adjustments to waterfall regarding bank reconciliations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/9/26 | Vivek Ram | 1.9 | Continue to review and make adjustments to waterfall regarding bank reconciliations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/10/26 | Christopher Creger | 1.1 | Assess implications of extending the anticipated confirmation timeline into November and coordinate with FTI professionals, Debtors' counsel, and creditor advisors to resolve funding questions. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/10/26 | Christopher Creger | 0.7 | Prepare and communicate detailed funding analysis to UCC counsel and Debtors' professionals, distinguishing existing escrow balances from additional funding obligations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/10/26 | Christopher Creger | 1.2 | Review and evaluate updated HLA, including comparative Ch. 7 and Ch. 11 creditor recoveries, administrative expense priorities, and collateral-specific distribution waterfalls. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/11/26 | Joshua Beets | 1.1 | Review settlement agreement with UCC and bonds. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/11/26 | Vivek Ram | 2.9 | Update various reports and schedules related to finalization of settlement agreement. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/12/26 | Christopher Creger | 1.4 | Coordinate resolution of outstanding legal and classification issues with Debtors' counsel to finalize the HLA for Plan confirmation. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/12/26 | Christopher Creger | 0.9 | Evaluate allocation of settlement proceeds, convenience class distributions, and implications for the bondholder recovery waterfall and creditor distributions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/12/26 | Evan Hudgins | 2.5 | Update liquidation analysis incremental Ch.7 liquidation cost figures. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/12/26 | Evan Hudgins | 2.8 | Update liquidation analysis with carve out and other waterfall changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/12/26 | Vivek Ram | 1.2 | Assist with updates to HLA. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/12/26 | Vivek Ram | 0.9 | Review updated assumptions for FIRPTA tax withholdings. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/13/26 | Christopher Creger | 1.4 | Provide direction to FTI team regarding recovery waterfall revisions and supporting reconciliations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/13/26 | Christopher Creger | 1.2 | Review and evaluate extended reporting period insurance options, including three-year tail coverage for employment practices, cyber, and D&O liabilities arising from pre-closing operations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/13/26 | Evan Hudgins | 2.6 | Update liquidation analysis Ch.11 waterfall for BNH, Wayne and other camps. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/13/26 | Evan Hudgins | 2.7 | Update liquidation analysis Ch.11 waterfall with requested changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/13/26 | Evan Hudgins | 2.9 | Update liquidation analysis waterfall mechanics with updated reserves and credit bid treatment. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/13/26 | Joshua Beets | 1.9 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/13/26 | Joshua Beets | 0.9 | Review of revisions to waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/13/26 | Kavi Bommakanti | 1.0 | Update waterfall for latest transaction. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/13/26 | Vivek Ram | 1.5 | Review and discuss additional updates to HLA. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Christopher Creger | 1.0 | Assess material discrepancies in Chateaugay projected recoveries, Kiwi DIP availability, and Pine Forest wind-down costs, including consistency between Chapter 7 and Chapter 11 scenarios. |

EXHIBIT B

SIMAD Holdings, Ltd. - CASE NO. 26-16388

DETAIL OF TIME ENTRIES

FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Christopher Creger | 1.8 | Review and evaluate HLA and supporting recovery waterfalls, including reconciliation of non-Bond collateral proceeds and secured creditor payoffs. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Christopher Pizzo | 0.7 | Update SIMAD cash account three pager and revisions to waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Evan Hudgins | 2.8 | Update liquidation analysis Ch.11 waterfall for bond camps. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Evan Hudgins | 2.1 | Update liquidation analysis Ch.11 waterfall sequencing mechanics. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Evan Hudgins | 2.5 | Update liquidation analysis for Mulligan summary and sensitivity allocations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Joshua Beets | 0.8 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Joshua Beets | 1.7 | Review of revisions to waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Kavi Bommakanti | 2.7 | Compare original waterfall to updated version to identify updates. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Kavi Bommakanti | 1.2 | Review waterfall against settlement statements. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Kavi Bommakanti | 1.8 | Update investment bank fee calculations in waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Kavi Bommakanti | 3.0 | Update waterfall for closed sales. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Kavi Bommakanti | 1.8 | Update consolidated funds flow summary. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Russell Laughlin | 0.5 | Review hypothetical liquidation analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Vivek Ram | 2.6 | Continue to update and align waterfall with closed transactions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/14/26 | Vivek Ram | 2.7 | Synchronize waterfall outputs with funds flows and align to bank account reconciliations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Christopher Creger | 1.2 | Review and evaluate Challenge Period extensions and settlement term sheet provisions governing restrictions on Mishmeret Roll-Up distributions, including the treatment of segregated proceeds. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Christopher Pizzo | 0.4 | Correspond with FTI team via email regarding specific updates to the waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Christopher Pizzo | 0.7 | Review revised waterfall and communicate proposed updates to FTI team regarding same. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Evan Hudgins | 2.2 | Update liquidation analysis for convenience class treatment. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Evan Hudgins | 2.5 | Update liquidation analysis for updated GUC treatment. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Evan Hudgins | 2.4 | Update liquidation analysis supporting schedules. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Joshua Beets | 0.7 | Call with Cole Schotz about plan formation. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Joshua Beets | 1.3 | Review of plan updates based on additional assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Joshua Beets | 2.4 | Review of revisions to waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Kavi Bommakanti | 3.0 | Continue to update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Kavi Bommakanti | 2.5 | Finalize updated waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Kavi Bommakanti | 2.5 | Update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Vivek Ram | 3.0 | Continue to work and update waterfall output per internal FTI team feedback. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Vivek Ram | 0.7 | Review additional updates to FIRPTA tax escrow. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/15/26 | Vivek Ram | 1.2 | Update HLA and waterfall analysis based on additional assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Christopher Creger | 0.6 | Call with Cole Schotz and FTI team regarding hypothetical liquidation analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Christopher Creger | 1.2 | Provide direction to FTI team regarding reconciliation of changes against previously distributed waterfalls and validation of closing statement balances. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Christopher Creger | 1.8 | Review and evaluate FIRPTA withholding analysis and related implications for asset sale proceeds, available cash, and creditor recovery waterfalls. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Christopher Creger | 1.3 | Review and evaluate revised creditor recovery waterfall and reconciliation to actual sale closing funds flows. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Christopher Pizzo | 0.6 | Call with Cole Schotz and FTI team regarding hypothetical liquidation analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Evan Hudgins | 1.8 | Finalize liquidation analysis Ch.11 waterfall figures and mechanics. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Evan Hudgins | 2.2 | Finalize liquidation analysis Ch.7 waterfall figures and mechanics. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Joshua Beets | 0.6 | Call with Cole Schotz and FTI team regarding hypothetical liquidation analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Joshua Beets | 0.4 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Joshua Beets | 1.6 | Review of revisions to waterfall analysis. |

EXHIBIT B

SIMAD Holdings, Ltd. - CASE NO. 26-16388

DETAIL OF TIME ENTRIES

FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Kavi Bommakanti | 3.0 | Continue to update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Kavi Bommakanti | 2.7 | Continue to update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Kavi Bommakanti | 1.5 | Finalize updated waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Kavi Bommakanti | 2.8 | Update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Vivek Ram | 0.7 | Assist with FIRPTA tax summary. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Vivek Ram | 0.9 | Continue to work on updates to HLA and waterfall analysis based on additional assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/16/26 | Vivek Ram | 2.9 | Update HLA and waterfall analysis based on additional assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Christopher Creger | 0.7 | Identify financial discrepancies, evaluate supporting assumptions, and develop recommended revisions and outstanding diligence items for waterfall analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Christopher Creger | 2.0 | Review waterfall and recovery bridge, including reconciliation of asset sale proceeds and closing funds flows, contingency adjustments, and creditor recovery calculations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Evan Hudgins | 2.4 | Draft disclosure statement liquidation analysis section. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Evan Hudgins | 1.5 | Finalize disclosure statement liquidation analysis draft. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Evan Hudgins | 2.6 | Finalize HLA formatting and output presentation. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Joshua Beets | 1.1 | Review of draft disclosure statement. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Kavi Bommakanti | 2.5 | Continue to update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Kavi Bommakanti | 2.4 | Update waterfall cash inflow analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Kavi Bommakanti | 2.7 | Update waterfall for new distribution package. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Russell Laughlin | 2.7 | Review updated liquidation analysis in support of plan disclosure. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Russell Laughlin | 2.1 | Review updated plan and disclosures documents. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Vivek Ram | 2.7 | Continue to work through updated comments to waterfall, HLA and synchronization of documents. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Vivek Ram | 2.4 | Continue to work through waterfall updates and calculations. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/19/26 | Vivek Ram | 1.2 | Continue to work through waterfall updates and calculations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Christopher Creger | 1.3 | Review Camp Business and Holding Company Plans and related Disclosure Statements, including allocation of merchant cash advance avoidance actions and potential recoveries among Debtor estates. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Christopher Creger | 1.6 | Review and analyze Flagstar cash reconciliation and account activity, including Mishmeret DIP repayment transfers, GUC settlement funding, and intercompany cash movements. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Evan Hudgins | 1.8 | Update Ch.7 liquidation wind-down support data and calculations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Evan Hudgins | 2.8 | Update liquidation analysis plan class treatment and bifurcation. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Joshua Beets | 1.2 | Review of comments to Plan. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Joshua Beets | 2.2 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Kavi Bommakanti | 2.9 | Continue to update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Kavi Bommakanti | 2.8 | Update BNH payoff in waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Kavi Bommakanti | 2.5 | Update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Kavi Bommakanti | 2.8 | Update waterfall for new distribution package. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Kavi Bommakanti | 0.8 | Update waterfall package and distribute. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Vivek Ram | 2.2 | Assist with further waterfall calculations, analyses, and output finalizations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/20/26 | Vivek Ram | 1.2 | Continue to assist with further waterfall calculations, analyses, and output finalizations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Christopher Creger | 0.9 | Call with FTI team to review the status of open workstreams including camp sale closures, waterfall updates, HLA updates, and others. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Christopher Pizzo | 0.9 | Call with FTI team to review the status of open workstreams including camp sale closures, waterfall updates, HLA updates, and others. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Evan Hudgins | 2.1 | Update liquidation analysis notes and supporting schedules per new plan construct. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Evan Hudgins | 2.0 | Update liquidation analysis outstanding diligence items and correspond with counsel. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Evan Hudgins | 3.0 | Update liquidation analysis with new plan construct per counsel directive. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Evan Hudgins | 2.7 | Update liquidation analysis with updated plan classes. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Joshua Beets | 0.9 | Call with FTI team to review the status of open workstreams including camp sale closures, waterfall updates, HLA updates, and others. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Joshua Beets | 2.4 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Kavi Bommakanti | 0.9 | Call with FTI team to review the status of open workstreams including camp sale closures, waterfall updates, HLA updates, and others. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Kavi Bommakanti | 2.5 | Continue to update waterfall package and distribute. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Kavi Bommakanti | 1.2 | Revise waterfall package and distribute. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Kavi Bommakanti | 2.9 | Update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Kavi Bommakanti | 2.8 | Update waterfall package and distribute. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Russell Laughlin | 3.0 | Review further updated liquidation analysis in support of plan disclosure. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Vivek Ram | 0.9 | Call with FTI team to review the status of open workstreams including camp sale closures, waterfall updates, HLA updates, and others. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Vivek Ram | 1.7 | Discuss updates to Plan structure and incorporate feedback. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Vivek Ram | 2.3 | Continue to work through waterfall and HLA updates per team feedback. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Vivek Ram | 2.1 | Continue to work through waterfall and HLA updates per team feedback. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Vivek Ram | 2.9 | Update convenience class and HLA synchronization. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/21/26 | Vivek Ram | 1.6 | Continue to update convenience class and HLA synchronization. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Christopher Creger | 1.0 | Assess implications of proposed reclassifications for the HLA, participating Debtor pools, and required claim reserves. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Christopher Creger | 1.3 | Develop revisions to supporting schedules, subtotal calculations, and explanatory footnotes in the waterfall analysis and coordinate outstanding adjustments with FTI team. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Christopher Creger | 1.0 | Identify discrepancies in Visions and Newtek recovery scenarios, potential duplicative expenses, and outstanding documentation requirements. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Christopher Pizzo | 1.3 | Review and provide comments on consolidated waterfall and bridge to prior versions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Evan Hudgins | 2.0 | Update disclosure statement draft with liquidation analysis changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Evan Hudgins | 2.3 | Update liquidation analysis Ch.11 waterfall with requested changes. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Evan Hudgins | 2.6 | Update liquidation analysis Ch.7 waterfall with requested changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Joshua Beets | 1.9 | Review and implement comments from FTI team to Plan. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Joshua Beets | 2.2 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Kavi Bommakanti | 3.0 | Continue to update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Kavi Bommakanti | 2.1 | Continue to update waterfall package and distribute. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Kavi Bommakanti | 2.7 | Continue to update waterfall package. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Kavi Bommakanti | 3.0 | Revise waterfall package and distribute. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Kavi Bommakanti | 2.8 | Update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Reagan Jones | 2.0 | Analyze latest draft of the waterfall for FIRPTA withholding schedule and other tables. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/22/26 | Vivek Ram | 0.5 | Review and discuss updated comments and changes to waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Christopher Creger | 1.1 | Coordinate recommended waterfall model revisions and explanatory disclosures with internal FTI team and bankruptcy counsel. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Christopher Pizzo | 0.6 | Review and comment on revisions to waterfall and waterfall bridge. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Evan Hudgins | 2.5 | Build liquidation analysis priority and secured tax schedules. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Evan Hudgins | 2.1 | Update disclosure statement draft with liquidation analysis changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Evan Hudgins | 1.8 | Update liquidation analysis recoveries and plan class treatment with requested changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Joshua Beets | 1.6 | Review retained causes of action schedule. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Joshua Beets | 1.4 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Kavi Bommakanti | 3.0 | Continue to update waterfall package. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Kavi Bommakanti | 2.8 | Update waterfall and bridge to prior version. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Reagan Jones | 1.4 | Analyze SOFA question 3 for retained causes of action. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Reagan Jones | 1.6 | Analyze SOFA question 4 for retained causes of action. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Reagan Jones | 1.0 | Analyze SOFA/SOAL questions for retained causes of action. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/23/26 | Reagan Jones | 0.3 | Create and update retained causes of action schedule. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Christopher Creger | 1.8 | Analyze updated HLA and reconcile Class 8 recoveries with convenience class assumptions, including residual proceeds, settlement funding, and trust reserves. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Christopher Creger | 1.1 | Continue to analyze updated HLA and reconcile Class 8 recoveries with convenience class assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Evan Hudgins | 2.2 | Update liquidation analysis wind down assumptions and supporting calculations. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Joshua Beets | 1.9 | Review of hypothetical liquidation analysis assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Joshua Beets | 1.1 | Review of retained causes of action schedule. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Kavi Bommakanti | 1.2 | Review waterfall to assist with outstanding deliverables. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Kavi Bommakanti | 0.4 | Continue to review waterfall to assist with outstanding deliverables. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Reagan Jones | 2.3 | Update the SOFA 3 retained causes of action schedule for Plan Debtors. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Reagan Jones | 2.3 | Update the SOFA 4 retained causes of action schedule for Plan Debtors. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/26/26 | Reagan Jones | 1.8 | Update the avoidance actions in the retained causes of action schedule for Plan Debtors. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Christopher Creger | 0.5 | Call with Cole Schotz, CRO, and FTI team regarding revisions to make to the waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Christopher Creger | 1.8 | Review Blue Star waterfall formulas and identify Mulligan allocation errors affecting unsecured creditor recoveries. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Christopher Creger | 0.7 | Review liquidation analysis and Disclosure Statement support and direct FTI team to make revisions to creditor recovery assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Christopher Creger | 1.5 | Reconcile FIRPTA, priority tax, and employee retention credit treatment between the waterfall and liquidation analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Christopher Creger | 1.8 | Discuss SIMAD liquidation waterfall and creditor distribution assumptions with CRO. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Christopher Pizzo | 0.5 | Call with Cole Schotz, CRO, and FTI team regarding revisions to make to the waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Evan Hudgins | 1.0 | Meet with Cole Schotz and FTI team to discuss disclosure statement draft and other related open items. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Evan Hudgins | 2.8 | Update liquidation analysis with updated GUC treatment per counsel. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Evan Hudgins | 1.8 | Finalize liquidation analysis notes and supporting schedules. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Joshua Beets | 0.5 | Call with Cole Schotz, CRO, and FTI team regarding revisions to make to the waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Joshua Beets | 1.0 | Meet with Cole Schotz and FTI team to discuss disclosure statement draft and other related open items. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Joshua Beets | 0.9 | Review of retained causes of action schedule. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Joshua Beets | 2.8 | Review of updates to the Disclosure Statement. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Kavi Bommakanti | 0.5 | Call with Cole Schotz, CRO, and FTI team regarding revisions to make to the waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Kavi Bommakanti | 1.5 | Finalize and internally distribute version of waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Kavi Bommakanti | 2.8 | Make additional updates to waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Kavi Bommakanti | 2.9 | Update waterfall based on comments from CRO. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Reagan Jones | 1.2 | Update retained causes of action schedule for insider payments to camp directors. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Reagan Jones | 1.7 | Update retained causes of action schedule for Plan Debtor mapping. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Reagan Jones | 0.4 | Correspond with Cole Schotz team regarding retained causes of action schedule. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Reagan Jones | 1.3 | Update retained causes of action schedule for insider payments to DAMIS. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/27/26 | Russell Laughlin | 1.1 | Review revised Plan and HLA analyses. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Christopher Creger | 0.8 | Reconcile Flagstar cash balances and Roll-Up payments with the waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Christopher Creger | 1.2 | Review revised waterfall and footnotes for consistency with sale proceeds, court orders, and creditor recoveries. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Christopher Creger | 1.7 | Reconcile FIRPTA withholding across Flagstar reporting, waterfall schedules, and liquidation analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Christopher Creger | 1.1 | Evaluate Mulligan lien avoidance implications for plan voting and confirmation procedures. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Evan Hudgins | 2.1 | Update disclosure statement draft with liquidation analysis changes. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Evan Hudgins | 2.5 | Update liquidation analysis with updated collateral pool construct per counsel. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Kavi Bommakanti | 3.0 | Continue additional waterfall updates. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Kavi Bommakanti | 0.8 | Continue additional waterfall updates. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Kavi Bommakanti | 1.2 | Continue to finalize and internally distribute version of waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Kavi Bommakanti | 1.7 | Begin additional waterfall updates. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Kavi Bommakanti | 1.8 | Review QuickBooks data to assist with updating the waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/28/26 | Reagan Jones | 1.6 | Update draft Disclosure Statement to include the retained causes of action schedule. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Evan Hudgins | 2.5 | Update liquidation analysis Ch.7 waterfall and recoveries with new collateral pool plan construct. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Evan Hudgins | 2.7 | Update liquidation analysis Ch.11 waterfall and recoveries with new collateral pool plan construct. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Evan Hudgins | 1.7 | Update liquidation analysis disclosure statement exhibits and recoveries with new collateral pool plan construct. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Evan Hudgins | 2.3 | Update liquidation analysis supporting schedules with new GUC settlement treatment. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Joshua Beets | 0.9 | Review of comments to disclosure statement. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Kavi Bommakanti | 1.7 | Continue to make additional updates to waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Kavi Bommakanti | 1.3 | Update waterfall to tie to updated HLA. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Kavi Bommakanti | 0.9 | Continue to make additional updates to waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Reagan Jones | 2.4 | Revise the retained causes of action schedule to align with the draft Mulligan Complaint. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/29/26 | Reagan Jones | 2.3 | Revise the retained causes of action schedule for Plan and Non-Plan Debtors. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Christopher Creger | 1.5 | Reconcile liquidation analysis recoveries and settlement distributions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Christopher Creger | 0.6 | Review revised liquidation analysis and confirm proposed settlement fund treatment and creditor recovery assumptions. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Christopher Creger | 0.6 | Coordinate final liquidation analysis revisions for review by CRO and Debtor counsel. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Christopher Creger | 1.3 | Evaluate Chateaugay seller-note treatment and potential remaining estate liability pending counsel confirmation. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Christopher Creger | 0.5 | Evaluate Wayne liquidation cost allocations and direct FTI team to clarify the supporting disclosures. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Evan Hudgins | 2.5 | Update disclosure statement draft with liquidation analysis changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Evan Hudgins | 1.9 | Update liquidation analysis recoveries and plan class treatment with requested changes. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Evan Hudgins | 2.3 | Revise liquidation analysis with updated GUC settlement and convenience class methodology. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Joshua Beets | 0.6 | Review hypothetical liquidation analysis. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Joshua Beets | 2.1 | Review edits to the disclosure statement. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Kavi Bommakanti | 0.3 | Draft responses relating to the waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Kavi Bommakanti | 0.3 | Review Chateaugay reserves to include in waterfall. |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 10/30/26 | Reagan Jones | 1.7 | Revise draft Disclosure Statement section on retained causes of action schedule. |
| | **Task Code 16 Total** | | | **481.8** | |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 17 | Litigation / Dispute Related | 10/6/26 | Melissa Cundiff | 0.3 | Pull and review bank statements for forensic related matters. |
| 17 | Litigation / Dispute Related | 10/6/26 | Melissa Cundiff | 0.6 | Review bank accounts and respond to inquiry from FTI Corporate Finance for forensic related matters. |
| 17 | Litigation / Dispute Related | 10/23/26 | Jade Damas Calixto | 3.0 | Extract general ledger from 2025-2026 for forensic related matters per Cole Schotz's request. |
| 17 | Litigation / Dispute Related | 10/26/26 | Edith Wong | 0.5 | Respond to EDNY subpoena request for forensic related matters. |
| | **Task Code 17 Total** | | | **4.4** | |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 19 | Billing/Staffing Reports | 10/1/26 | Kavi Bommakanti | 3.0 | Begin reviewing detailed entries for September fee application. |
| 19 | Billing/Staffing Reports | 10/1/26 | Kavi Bommakanti | 2.0 | Review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/1/26 | Max Pidgeon | 2.1 | Update September fee application template. |
| 19 | Billing/Staffing Reports | 10/1/26 | Max Pidgeon | 1.5 | Continue to update September fee application template. |
| 19 | Billing/Staffing Reports | 10/2/26 | Kavi Bommakanti | 2.0 | Review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/2/26 | Kavi Bommakanti | 3.0 | Review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/5/26 | Kavi Bommakanti | 1.8 | Continue to review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/5/26 | Kavi Bommakanti | 2.5 | Review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/5/26 | Max Pidgeon | 1.7 | Update September fee application time entries. |
| 19 | Billing/Staffing Reports | 10/5/26 | Max Pidgeon | 0.7 | Continue to update September fee application template. |
| 19 | Billing/Staffing Reports | 10/6/26 | Kavi Bommakanti | 1.7 | Review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/6/26 | Kavi Bommakanti | 3.0 | Continue to review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/6/26 | Max Pidgeon | 2.6 | Update September fee application to correct entries spanning multiple dates. |
| 19 | Billing/Staffing Reports | 10/6/26 | Max Pidgeon | 2.3 | Continue to update September fee application template. |
| 19 | Billing/Staffing Reports | 10/7/26 | Kavi Bommakanti | 3.0 | Continue to review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/7/26 | Kavi Bommakanti | 3.0 | Continue to review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/7/26 | Kavi Bommakanti | 2.0 | Review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/7/26 | Max Pidgeon | 2.5 | Continue to update September fee application to correct entries spanning multiple dates. |
| 19 | Billing/Staffing Reports | 10/7/26 | Max Pidgeon | 1.3 | Continue to update September fee application to correct entries spanning multiple dates. |
| 19 | Billing/Staffing Reports | 10/8/26 | Joshua Beets | 0.4 | Review of process for October fee application. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 19 | Billing/Staffing Reports | 10/8/26 | Max Pidgeon | 0.7 | Prepare September fee application. |
| 19 | Billing/Staffing Reports | 10/9/26 | Kavi Bommakanti | 0.5 | Continue to review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/9/26 | Kavi Bommakanti | 3.0 | Continue to review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/9/26 | Kavi Bommakanti | 3.0 | Review time detail for September fee application. |
| 19 | Billing/Staffing Reports | 10/12/26 | Max Pidgeon | 0.7 | Prepare CNO for August fee application. |
| 19 | Billing/Staffing Reports | 10/13/26 | John Flittner | 2.5 | Update September fee application for expenses. |
| 19 | Billing/Staffing Reports | 10/13/26 | Joshua Beets | 0.2 | Review and update FTI's CNO to file. |
| 19 | Billing/Staffing Reports | 10/13/26 | Max Pidgeon | 1.1 | Continue to update September fee application to correct entries spanning multiple dates. |
| 19 | Billing/Staffing Reports | 10/13/26 | Max Pidgeon | 1.3 | Continue to update September fee application to correct entries spanning multiple dates. |
| 19 | Billing/Staffing Reports | 10/14/26 | John Flittner | 1.0 | Continue work on revised expense narratives in September fee application. |
| 19 | Billing/Staffing Reports | 10/14/26 | Max Pidgeon | 1.1 | Update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/14/26 | Max Pidgeon | 0.3 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/14/26 | Max Pidgeon | 1.7 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/14/26 | Max Pidgeon | 1.1 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/15/26 | Max Pidgeon | 2.5 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/16/26 | Max Pidgeon | 0.5 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/16/26 | Max Pidgeon | 1.5 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/16/26 | Max Pidgeon | 0.9 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/19/26 | Max Pidgeon | 2.0 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/19/26 | Max Pidgeon | 1.1 | Continue to update September fee application for confidentiality purposes. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 19 | Billing/Staffing Reports | 10/19/26 | Max Pidgeon | 1.8 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/19/26 | Max Pidgeon | 3.0 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/20/26 | Max Pidgeon | 1.7 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/20/26 | Max Pidgeon | 2.2 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/20/26 | Max Pidgeon | 1.0 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/20/26 | Max Pidgeon | 1.5 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/21/26 | Max Pidgeon | 0.4 | Continue to update September fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/22/26 | Max Pidgeon | 2.0 | Update October fee application. |
| 19 | Billing/Staffing Reports | 10/22/26 | Max Pidgeon | 1.5 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/23/26 | Max Pidgeon | 1.2 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/23/26 | Max Pidgeon | 0.9 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/23/26 | Max Pidgeon | 0.6 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/26/26 | Cynthia Romano | 2.8 | Review draft of September fee app. |
| 19 | Billing/Staffing Reports | 10/26/26 | Cynthia Romano | 2.7 | Continue to review draft of September fee app. |
| 19 | Billing/Staffing Reports | 10/26/26 | Kavi Bommakanti | 0.6 | Review time detail for October fee application. |
| 19 | Billing/Staffing Reports | 10/26/26 | Max Pidgeon | 1.6 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/26/26 | Max Pidgeon | 0.9 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/26/26 | Max Pidgeon | 0.6 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/26/26 | Max Pidgeon | 1.1 | Update September fee app based on internal FTI comments. |
| 19 | Billing/Staffing Reports | 10/26/26 | Max Pidgeon | 2.2 | Continue to update September fee app based on internal FTI comments. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 19 | Billing/Staffing Reports | 10/28/26 | Max Pidgeon | 0.5 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/28/26 | Max Pidgeon | 0.6 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/28/26 | Max Pidgeon | 2.5 | Continue to update October fee application. |
| 19 | Billing/Staffing Reports | 10/28/26 | Max Pidgeon | 1.0 | Update October fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/29/26 | Max Pidgeon | 2.3 | Continue to update October fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/29/26 | Max Pidgeon | 2.5 | Finalize September fee application. |
| 19 | Billing/Staffing Reports | 10/29/26 | Max Pidgeon | 1.1 | Continue to update October fee application for fees. |
| 19 | Billing/Staffing Reports | 10/30/26 | Max Pidgeon | 2.5 | Continue to update October fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/30/26 | Max Pidgeon | 0.5 | Continue to update October fee application for confidentiality purposes. |
| 19 | Billing/Staffing Reports | 10/31/26 | Christopher Creger | 0.5 | Review professional fee applications and budget utilization. |
| | **Task Code 19 Total** | | | **113.1** | |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Christopher Creger | 0.5 | Review and respond internally regarding the borrowing certificate. |
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Mihai Cirstea | 1.4 | Analyze and update budget-versus-actual ending cash balances against QuickBooks book cash balances across 10 camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Mihai Cirstea | 1.4 | Analyze budget-versus-actual variances across 10 camp reporting entities to identify significant favorable and unfavorable cumulative variances. |
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Mihai Cirstea | 1.2 | Classify budget versus actual variances by identifying underlying drivers in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Mihai Cirstea | 0.5 | Call with SIMAD controller regarding reconciliation of variances between QuickBooks book cash balances and ending book cash balances across 4 camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Mihai Cirstea | 0.7 | Continue to analyze budget-versus-actual variances across all 10 camp reporting entities in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Mihai Cirstea | 0.4 | Correspond with camp director at Camp Mogen regarding entry of QuickBooks activity in support of weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Reagan Jones | 1.8 | Analyze Kiwi funding needs. |
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Russell Laughlin | 0.9 | Reconcile budget vs. actual analysis for positive cumulative variances. |
| 21 | Bank Reporting/Lender Engagement | 10/1/26 | Russell Laughlin | 3.0 | Review and discuss Budget vs. Actual reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Christopher Creger | 1.4 | Review Budget vs. Actuals Reporting for week ending 9/25/26. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Christopher Creger | 0.5 | Review the budget versus actual reporting packages for Week 15 and discuss internally regarding same. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Christopher Pizzo | 0.9 | Review weekly reporting of budget versus actuals analysis. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Mihai Cirstea | 0.6 | Finalize draft analysis of budget-versus-actual reporting packages in support of weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Mihai Cirstea | 0.9 | Implement internal FTI comments to the Week 15 budget-versus-actual reporting for weekly DIP budget compliance reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Mihai Cirstea | 0.6 | Prepare budget versus actual reporting packages for all lender groups and noticing parties. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Reagan Jones | 1.3 | Calculate amounts to pay bond advisors based on foreign currency rates. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Russell Laughlin | 2.2 | Review and update Budget vs. Actual reporting based on internal comments. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Russell Laughlin | 3.0 | Review and update budget vs. actual analysis. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Vivek Ram | 2.1 | Update waterfall based on comments from internal FTI team including breakout schedules as requested by lender. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Vivek Ram | 1.5 | Continue to update waterfall based on comments from internal FTI team including breakout schedules as requested by lender. |
| 21 | Bank Reporting/Lender Engagement | 10/2/26 | Vivek Ram | 1.5 | Continue to discuss, adjust, and provide interest calculations and support as requested by lenders. |
| 21 | Bank Reporting/Lender Engagement | 10/3/26 | Mihai Cirstea | 1.7 | Finalize and distribute camp-level reporting packages to applicable lender noticing parties in accordance with DIP reporting requirements. |
| 21 | Bank Reporting/Lender Engagement | 10/5/26 | Mihai Cirstea | 0.9 | Coordinate with camp directors to ensure timely completion of Week 16 QuickBooks updates in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/5/26 | Mihai Cirstea | 1.3 | Develop Week 16 budget-versus-actual reporting template by implementing updated formulas and variance analysis in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/5/26 | Mihai Cirstea | 1.5 | Map Flagstar Bank account activity to applicable reporting categories for proper classification and recording in QuickBooks. |
| 21 | Bank Reporting/Lender Engagement | 10/5/26 | Mihai Cirstea | 0.5 | Update Week 16 budget-versus-actual reporting template with bank balances across 10 camp reporting entities in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/5/26 | Russell Laughlin | 3.0 | Review and discuss Budget vs. Actual reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/5/26 | Vivek Ram | 1.6 | Prepare updated interest calculations to share with Mishmeret. |
| 21 | Bank Reporting/Lender Engagement | 10/6/26 | Christopher Creger | 0.9 | Review and coordinate updates to BNH borrowing certificate and supporting recovery waterfall, including allocation of credit bid proceeds between DIP and prepetition claims. |
| 21 | Bank Reporting/Lender Engagement | 10/6/26 | Christopher Creger | 0.9 | Review correspondence regarding Bank of America payoff for Summit, including confirmation of payoff amount, UCC approval, and outstanding payment requirements. |
| 21 | Bank Reporting/Lender Engagement | 10/6/26 | Mihai Cirstea | 0.7 | Correspond with SIMAD team regarding bank reconciliations for certain camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/6/26 | Mihai Cirstea | 1.9 | Incorporate Week 16 forecast into the budget-versus-actual reporting template and verify completeness and accuracy across 10 camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/6/26 | Reagan Jones | 2.4 | Analyze bond funds within Flagstar balances and correspond with FTI team regarding same. |
| 21 | Bank Reporting/Lender Engagement | 10/7/26 | Christopher Creger | 1.5 | Review preparation of BNH anticipated cash proceeds summary for lender Credit Committee review, including reconciliation of Flagstar balances and prior DIP repayments. |
| 21 | Bank Reporting/Lender Engagement | 10/7/26 | Mihai Cirstea | 0.9 | Analyze QuickBooks profit and loss statements across 10 camp reporting entities for completeness and accuracy in support of weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/7/26 | Mihai Cirstea | 0.3 | Correspond with SIMAD team regarding updates to Camp Mogen QuickBooks activity in support of weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/7/26 | Mihai Cirstea | 1.7 | Incorporate Week 16 actual results into the budget-versus-actual reporting template and verify completeness and accuracy across 10 camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/7/26 | Mihai Cirstea | 1.5 | Map actual operating results from profit and loss statements to applicable cash flow reporting categories in support of budget-versus-actual variance analysis. |
| 21 | Bank Reporting/Lender Engagement | 10/7/26 | Mihai Cirstea | 0.2 | Correspond with camp director at Camp Mogen regarding entry of QuickBooks activity in support of weekly DIP reporting. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 21 | Bank Reporting/Lender Engagement | 10/7/26 | Mihai Cirstea | 1.3 | Verify accuracy and consistency of profit and loss statement mappings to applicable 13-week cash flow reporting categories in support of weekly liquidity forecasting and DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/7/26 | Reagan Jones | 0.8 | Analyze the final DIP order for the bond and BNH camps. |
| 21 | Bank Reporting/Lender Engagement | 10/7/26 | Vivek Ram | 2.2 | Prepare bond calculations in waterfall and share with lenders. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Christopher Creger | 1.5 | Develop detailed revisions, sensitivity analyses, and supporting footnote disclosures, including model adjustments and presentation of the best-interests-of-creditors test. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Evan Hudgins | 2.6 | Build liquidation analysis and consolidate best interest test presentation. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Mihai Cirstea | 1.4 | Analyze budget-versus-actual ending cash balances against QuickBooks book cash balances across 10 camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Mihai Cirstea | 1.4 | Analyze budget-versus-actual variances across 10 camp reporting entities to identify significant favorable and unfavorable cumulative variances. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Mihai Cirstea | 0.7 | Analyze budget-versus-actual variances across all 10 camp reporting entities in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Mihai Cirstea | 1.2 | Classify variances by reviewing underlying driver in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Mihai Cirstea | 0.6 | Draft correspondence to FTI team regarding analysis of budget-versus-actual reporting packages in support of weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Mihai Cirstea | 0.5 | Call with SIMAD controller regarding reconciliation of variances between QuickBooks book cash balances and ending book cash balances across 4 camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Mihai Cirstea | 0.6 | Prepare reporting packages for all lender groups and noticing parties in support of weekly DIP budget reporting and case administration. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Mihai Cirstea | 0.4 | Correspond with camp director at Camp Mogen regarding entry of QuickBooks activity in support of weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Russell Laughlin | 2.5 | Review budget vs. actuals report for 4 bonds camps. |
| 21 | Bank Reporting/Lender Engagement | 10/8/26 | Russell Laughlin | 2.3 | Review budget vs. actuals report for remaining unsold camps. |
| 21 | Bank Reporting/Lender Engagement | 10/9/26 | Mihai Cirstea | 1.7 | Finalize the distribution of camp-level reporting packages to applicable lender noticing parties in accordance with DIP reporting requirements. |
| 21 | Bank Reporting/Lender Engagement | 10/11/26 | Christopher Creger | 1.7 | Assess Mishmeret bondholder claim calculations, including principal, monthly capitalized PIK interest, and exit fees through November 1. |
| 21 | Bank Reporting/Lender Engagement | 10/12/26 | Christopher Creger | 1.1 | Conduct review of HLA, including Chapter 7 and Chapter 11 recovery waterfalls, secured creditor priorities, administrative expense allocations, and compliance with the best-interests-of-creditors test. |
| 21 | Bank Reporting/Lender Engagement | 10/12/26 | Christopher Creger | 1.0 | Identify and revise discrepancies in transaction dates, deposit classifications, and interest allocations to update in the waterfall. |
| 21 | Bank Reporting/Lender Engagement | 10/12/26 | Christopher Creger | 2.1 | Review and reconcile bidder deposit escrow accounts, including validation of interest accruals, daily balances, and allocation of earned interest across returned deposits and outstanding escrow balances. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 21 | Bank Reporting/Lender Engagement | 10/12/26 | Mihai Cirstea | 1.2 | Finalize Week 16 budget-versus-actual reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/13/26 | Christopher Creger | 1.3 | Review and evaluate revised HLA, including reconciliation of Wayne Bank collateral proceeds, cross-collateralized DIP obligations, and disputed secured creditor deficiency claims. |
| 21 | Bank Reporting/Lender Engagement | 10/13/26 | Christopher Pizzo | 0.8 | Review budget versus actuals for remaining camps. |
| 21 | Bank Reporting/Lender Engagement | 10/13/26 | Christopher Pizzo | 0.3 | Review Mishmeret interest calculations. |
| 21 | Bank Reporting/Lender Engagement | 10/13/26 | Max Pidgeon | 1.9 | Create a schedule for One Canal Place to analyze bankruptcy related fees per lender request. |
| 21 | Bank Reporting/Lender Engagement | 10/14/26 | Evan Hudgins | 2.0 | Update budget vs actuals with forecast data. |
| 21 | Bank Reporting/Lender Engagement | 10/14/26 | Kavi Bommakanti | 0.8 | Update budget versus actuals analysis file. |
| 21 | Bank Reporting/Lender Engagement | 10/15/26 | Christopher Creger | 1.1 | Assess allocation of restricted cash among bondholder and non-bondholder collateral pools, reconcile budgeted versus actual expenditures, and identify discrepancies affecting DIP repayments. |
| 21 | Bank Reporting/Lender Engagement | 10/15/26 | Christopher Pizzo | 0.3 | Make revisions to Bondholders interest and cash on hand to apply against $116M. |
| 21 | Bank Reporting/Lender Engagement | 10/15/26 | Kavi Bommakanti | 2.0 | Update budget versus actuals file for multiple camps. |
| 21 | Bank Reporting/Lender Engagement | 10/15/26 | Vivek Ram | 0.4 | Prepare and organize final BNH draw request. |
| 21 | Bank Reporting/Lender Engagement | 10/15/26 | Vivek Ram | 1.2 | Discuss details around bond interest and settlement calculations. |
| 21 | Bank Reporting/Lender Engagement | 10/16/26 | Christopher Creger | 0.5 | Evaluate disputed claims, liquidation costs, and implications for projected creditor recoveries and the best-interests-of-creditors test. |
| 21 | Bank Reporting/Lender Engagement | 10/16/26 | Christopher Creger | 1.0 | Review and evaluate revised waterfall and treatment of Mishmeret claims, including reconciliation of prepetition principal, Roll-Up DIP obligations, and applicable post petition interest. |
| 21 | Bank Reporting/Lender Engagement | 10/16/26 | Christopher Creger | 0.4 | Analyze alternative allocation methodologies, administrative expense funding, and implications for the best-interests-of-creditors test. |
| 21 | Bank Reporting/Lender Engagement | 10/16/26 | Christopher Creger | 0.9 | Assess removal of superseded prepetition interest and settlement adjustment lines, application of segregated proceeds, and separate treatment of the GUC settlement contribution. |
| 21 | Bank Reporting/Lender Engagement | 10/16/26 | Evan Hudgins | 1.6 | Finalize budget vs actuals reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/16/26 | Evan Hudgins | 2.6 | Update budget vs actuals with QuickBooks and forecast data. |
| 21 | Bank Reporting/Lender Engagement | 10/16/26 | Russell Laughlin | 1.4 | Assist ACRO with effectuating Home Trust payoff for Blue Star prepetition debt. |
| 21 | Bank Reporting/Lender Engagement | 10/19/26 | Christopher Creger | 1.3 | Review and analyze HLA and recovery scenarios, including DIP financing allocations, collateral proceeds, secured claim priorities, administrative expenses, and best-interests-of-creditors considerations. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 21 | Bank Reporting/Lender Engagement | 10/19/26 | Christopher Pizzo | 0.5 | Review weekly camp level budget versus actuals and provide comments. |
| 21 | Bank Reporting/Lender Engagement | 10/19/26 | Evan Hudgins | 2.1 | Finalize budget vs. actuals open diligence items and presentation formatting for all camps. |
| 21 | Bank Reporting/Lender Engagement | 10/19/26 | Joshua Beets | 0.9 | Review of BNH payoff amounts. |
| 21 | Bank Reporting/Lender Engagement | 10/19/26 | Mihai Cirstea | 0.5 | Update Week 18 budget-versus-actual reporting template with bank balances for weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/19/26 | Mihai Cirstea | 1.1 | Update variance analysis in Week 18 budget-versus-actual reporting template. |
| 21 | Bank Reporting/Lender Engagement | 10/19/26 | Russell Laughlin | 2.1 | Review and update Budget vs. Actual analysis. |
| 21 | Bank Reporting/Lender Engagement | 10/20/26 | Christopher Creger | 1.0 | Evaluate potential claims objections, supporting documentation, and implications for creditor recoveries and the best-interests-of-creditors test. |
| 21 | Bank Reporting/Lender Engagement | 10/20/26 | Christopher Creger | 0.8 | Review and analyze BNH DIP financing payoff calculations, including reconciliation of Roll-Up and New Money principal balances, accrued interest, exit fees, prior repayments, and subsequent advances. |
| 21 | Bank Reporting/Lender Engagement | 10/20/26 | Christopher Pizzo | 0.2 | Review revised budget versus actuals reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/20/26 | Joshua Beets | 0.2 | Review of BNH payoff amounts. |
| 21 | Bank Reporting/Lender Engagement | 10/20/26 | Mihai Cirstea | 1.5 | Incorporate Week 18 forecast into budget-versus-actual reporting template. |
| 21 | Bank Reporting/Lender Engagement | 10/20/26 | Russell Laughlin | 2.4 | Update Budget vs. Actual analysis and send to internal FTI team for review. |
| 21 | Bank Reporting/Lender Engagement | 10/20/26 | Vivek Ram | 1.8 | Clarify and prepare debt paydown calculations and finalize amounts. |
| 21 | Bank Reporting/Lender Engagement | 10/21/26 | Christopher Creger | 1.0 | Review and analyze waterfall, including projected funding shortfall and alternative creditor recovery scenarios involving Visions and Newtek claim objections. |
| 21 | Bank Reporting/Lender Engagement | 10/21/26 | Mihai Cirstea | 0.9 | Review profit and loss mappings to 13-week cash flow categories for weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/21/26 | Mihai Cirstea | 0.6 | Prepare Week 18 book-to-bank cash reconciliation for Camp Kiwi. |
| 21 | Bank Reporting/Lender Engagement | 10/21/26 | Mihai Cirstea | 1.1 | Map actual profit and loss results to cash flow categories for budget-versus-actual analysis. |
| 21 | Bank Reporting/Lender Engagement | 10/21/26 | Mihai Cirstea | 0.9 | Review QuickBooks profit and loss statements across camp entities for weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/21/26 | Mihai Cirstea | 1.4 | Incorporate Week 18 actual results into budget-versus-actual reporting template. |
| 21 | Bank Reporting/Lender Engagement | 10/22/26 | Christopher Creger | 1.1 | Review waterfall and supporting recovery scenarios, including Enhanced Capital holdbacks, FIRPTA withholding treatment, DIP interest accruals, and potential earnings on segregated sale proceeds. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 21 | Bank Reporting/Lender Engagement | 10/22/26 | Christopher Pizzo | 0.3 | Continue to review budget versus actual analysis for all camps. |
| 21 | Bank Reporting/Lender Engagement | 10/22/26 | Mihai Cirstea | 0.7 | Analyze budget-versus-actual variances across camp entities for weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/22/26 | Mihai Cirstea | 0.9 | Reconcile budget-versus-actual ending cash to QuickBooks book cash balances across camp entities. |
| 21 | Bank Reporting/Lender Engagement | 10/22/26 | Russell Laughlin | 0.3 | Distribute Budget vs. Actual analysis. |
| 21 | Bank Reporting/Lender Engagement | 10/22/26 | Russell Laughlin | 3.0 | Update Budget vs. Actual analysis per comments and questions from internal FTI team. |
| 21 | Bank Reporting/Lender Engagement | 10/22/26 | Vivek Ram | 0.5 | Review final BNH payoff. |
| 21 | Bank Reporting/Lender Engagement | 10/23/26 | Kavi Bommakanti | 1.4 | Review transaction data for historical lender payments related to waterfall updates. |
| 21 | Bank Reporting/Lender Engagement | 10/23/26 | Mihai Cirstea | 0.6 | Draft budget-versus-actual reporting packages. |
| 21 | Bank Reporting/Lender Engagement | 10/23/26 | Mihai Cirstea | 0.6 | Prepare weekly DIP budget reporting packages for lender groups and noticing parties. |
| 21 | Bank Reporting/Lender Engagement | 10/25/26 | Mihai Cirstea | 0.8 | Finalize Week 18 budget-versus-actual reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/26/26 | Christopher Creger | 1.9 | Analyze bond financing documentation and disclosed controlling shareholder receivable repayment to identify potential additional recovery considerations. |
| 21 | Bank Reporting/Lender Engagement | 10/26/26 | Christopher Creger | 1.5 | Evaluate need to trace underlying bank transactions and reconcile disclosed repayments against bond proceeds transfers and intercompany obligations. |
| 21 | Bank Reporting/Lender Engagement | 10/26/26 | Reagan Jones | 1.5 | Analyze DIP uses based on Flagstar account activity. |
| 21 | Bank Reporting/Lender Engagement | 10/27/26 | Christopher Creger | 1.2 | Evaluate Mishmeret distributions and post petition interest treatment in the liquidation analysis. |
| 21 | Bank Reporting/Lender Engagement | 10/27/26 | Christopher Pizzo | 0.6 | Recalculate interest calculations on DIP roll up due to updated payoff assumptions. |
| 21 | Bank Reporting/Lender Engagement | 10/27/26 | Christopher Pizzo | 0.3 | Analyze reserves for UST fees, including related loan payments and payments of 2027 camper deposits. |
| 21 | Bank Reporting/Lender Engagement | 10/28/26 | Christopher Creger | 1.1 | Analyze potential disallowance of unmatured interest and fees in Mulligan's claim under section 502(b)(2). |
| 21 | Bank Reporting/Lender Engagement | 10/28/26 | Christopher Creger | 1.2 | Reconcile liquidation waterfall recoveries with the liquidation analysis, including Willow Lake and Mishmeret interest assumptions. |
| 21 | Bank Reporting/Lender Engagement | 10/28/26 | Christopher Creger | 0.4 | Review Flagstar reconciliation and assess Mishmeret cash credit treatment against secured debt and interest. |
| 21 | Bank Reporting/Lender Engagement | 10/28/26 | Christopher Creger | 0.7 | Analyze Mishmeret interest assumptions and related recovery implications. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 0.5 | Prepare consolidated Mishmeret payoff reconciliation and communicate potential recoveries to CRO and ACRO. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 0.7 | Review Roll-Up interest calculations against Flagstar payments to identify potential overpayments. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 0.8 | Analyze Mishmeret-held cash application to prepetition debt and potential post petition interest reductions. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 1.2 | Review proposed Mishmeret payoff adjustments and assess impacts on plan disclosures and waterfall recoveries. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 0.5 | Analyze Roll-Up interest and Flagstar payments for potential Mishmeret over-accruals. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 1.5 | Evaluate Mishmeret-held cash application and quantify potential post petition interest reductions. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 0.8 | Analyze Mishmeret Roll-Up interest and Flagstar payments to quantify potential over-accruals. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 0.6 | Evaluate Mishmeret cash credit treatment and quantify potential interest reductions. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 0.5 | Assess proposed Mishmeret payoff adjustments and related plan and waterfall implications. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Creger | 0.6 | Evaluate application of $17.9 million in Mishmeret-held cash and quantify approximately $1 million in potential interest reductions. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Christopher Pizzo | 0.6 | Review Mishmeret interest communications to identify updates. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Evan Hudgins | 1.9 | Update liquidation analysis DIP support calculation with updated post-petition interest methodology. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Max Pidgeon | 0.5 | Reach out to Fidelity to get bankruptcy related fees paid. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Mihai Cirstea | 1.1 | Develop Week 19 budget-versus-actual reporting template and implement variance analysis in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Mihai Cirstea | 0.9 | Analyze QuickBooks profit and loss statements across 7 camp reporting entities for completeness and accuracy in support of weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Mihai Cirstea | 1.5 | Incorporate Week 19 forecast into the budget-versus-actual reporting template across 7 camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Mihai Cirstea | 1.4 | Incorporate Week 19 actual results into the budget-versus-actual reporting template and verify completeness and accuracy across 7 camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Mihai Cirstea | 0.5 | Update Week 19 budget-versus-actual reporting template with bank balances across 7 camp reporting entities in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Mihai Cirstea | 1.1 | Reconcile actual operating results from profit and loss statements to applicable cash flow reporting categories in support of budget-versus-actual variance analysis. |
| 21 | Bank Reporting/Lender Engagement | 10/29/26 | Reagan Jones | 1.7 | Analyze Flagstar transaction data regarding DIP loan payoff transfers. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 21 | Bank Reporting/Lender Engagement | 10/30/26 | Christopher Creger | 0.8 | Analyze settlement fund treatment and Class 8 recoveries against Ch. 7 best-interests calculations. |
| 21 | Bank Reporting/Lender Engagement | 10/30/26 | Christopher Pizzo | 0.7 | Review the weekly budget versus actuals reports and provide comments to internal FTI team. |
| 21 | Bank Reporting/Lender Engagement | 10/30/26 | Kavi Bommakanti | 0.7 | Review interest calculations in waterfall. |
| 21 | Bank Reporting/Lender Engagement | 10/30/26 | Mihai Cirstea | 0.7 | Analyze budget-versus-actual variances across all 7 camp reporting entities in support of weekly DIP budget reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/30/26 | Mihai Cirstea | 0.9 | Analyze budget-versus-actual ending cash balances against QuickBooks book cash balances across 7 camp reporting entities. |
| 21 | Bank Reporting/Lender Engagement | 10/30/26 | Mihai Cirstea | 0.9 | Reconcile actuals data with 13-week cash flow reporting categories in support of weekly budget versus actuals report. |
| 21 | Bank Reporting/Lender Engagement | 10/30/26 | Russell Laughlin | 3.0 | Review current week Budget vs. Actuals. |
| 21 | Bank Reporting/Lender Engagement | 10/30/26 | Russell Laughlin | 1.4 | Draft response on diligence items from prior week Budget vs. Actuals. |
| 21 | Bank Reporting/Lender Engagement | 10/31/26 | Mihai Cirstea | 0.6 | Prepare budget-versus-actual reporting packages in support of weekly DIP reporting. |
| 21 | Bank Reporting/Lender Engagement | 10/31/26 | Mihai Cirstea | 0.5 | Review the Week 18 budget versus actual report and respond to related inquiries. |
| 21 | Bank Reporting/Lender Engagement | 10/31/26 | Mihai Cirstea | 0.6 | Continue to prepare budget-versus-actual reporting packages in support of weekly DIP reporting. |
| | **Task Code 21 Total** | | | **173.6** | |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 27 | Treasury Management | 10/1/26 | Reagan Jones | 1.4 | Analyze Flagstar operating account balances and overhead costs to pay. |
| 27 | Treasury Management | 10/1/26 | Reagan Jones | 2.3 | Analyze and reconcile Flagstar account balances and transaction activity. |
| 27 | Treasury Management | 10/1/26 | Russell Laughlin | 0.8 | Conduct further diligence with respect to Summit QuickBooks duplicate and erroneous entries. |
| 27 | Treasury Management | 10/2/26 | Reagan Jones | 1.6 | Update Flagstar reserve schedule with reserves from bond camps not yet received. |
| 27 | Treasury Management | 10/2/26 | Reagan Jones | 2.3 | Prepare schedule of reserves held at Flagstar. |
| 27 | Treasury Management | 10/5/26 | Reagan Jones | 1.6 | Analyze Flagstar bank transaction report through the week ended 10/2. |
| 27 | Treasury Management | 10/6/26 | Max Pidgeon | 1.3 | Confirm all bank statements match bank account listing. |
| 27 | Treasury Management | 10/6/26 | Reagan Jones | 1.4 | Analyze amounts held at camps not yet transferred to the Flagstar accounts. |
| 27 | Treasury Management | 10/6/26 | Vivek Ram | 2.1 | Review payment record and historical cash transfer activity, discussing with internal team. |
| 27 | Treasury Management | 10/7/26 | Christopher Creger | 1.0 | Review SIMAD Flagstar account reconciliation and related cash balances, including bond camp operating cash, reserve accounts, and pending transfers. |
| 27 | Treasury Management | 10/7/26 | Joshua Beets | 1.7 | Review of cash in accounts at Flagstar. |
| 27 | Treasury Management | 10/7/26 | Reagan Jones | 1.9 | Update the Flagstar operating account schedule for DIP proceeds paid out. |
| 27 | Treasury Management | 10/7/26 | Reagan Jones | 2.4 | Continue to prepare the Flagstar account reconciliation schedule. |
| 27 | Treasury Management | 10/8/26 | Christopher Pizzo | 0.4 | Review and revise analysis of cash held in reserve at SIMAD. |
| 27 | Treasury Management | 10/8/26 | Christopher Pizzo | 0.4 | Review and update an analysis of cash accounts held by Debtor to send to CRO. |
| 27 | Treasury Management | 10/8/26 | Joshua Beets | 0.6 | Review of cash in accounts at Flagstar to track recovery progress. |
| 27 | Treasury Management | 10/9/26 | Christopher Pizzo | 1.1 | Continue to revise 3 page document of cash held at SIMAD bank accounts and correspond with FTI team regarding same. |
| 27 | Treasury Management | 10/9/26 | Joshua Beets | 0.4 | Review cash in accounts at Flagstar. |
| 27 | Treasury Management | 10/9/26 | Reagan Jones | 1.6 | Update Flagstar reconciliation schedule for Mesorah and Pine Forest payments. |
| 27 | Treasury Management | 10/10/26 | Christopher Creger | 1.3 | Review, adjust, and analyze updated SIMAD Professional Fee Reserve Summary and supporting reconciliations to assess funding requirements under the Revised Budget (Rev. 3). |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 27 | Treasury Management | 10/12/26 | Reagan Jones | 0.4 | Correspond with CRO regarding latest transaction report. |
| 27 | Treasury Management | 10/12/26 | Russell Laughlin | 1.2 | Call with SIMAD controller and Windsor Mountain camp director to resolve QuickBooks issue for BvA reporting process. |
| 27 | Treasury Management | 10/13/26 | Reagan Jones | 1.4 | Analyze accounts at Flagstar to determine pending transfers. |
| 27 | Treasury Management | 10/13/26 | Reagan Jones | 0.7 | Correspond with CRO regarding batch payments in the transaction report. |
| 27 | Treasury Management | 10/13/26 | Reagan Jones | 2.5 | Analyze operating account at Flagstar to determine pending transfers. |
| 27 | Treasury Management | 10/14/26 | Reagan Jones | 1.9 | Calculate amounts to move to fund various other Flagstar reserve accounts. |
| 27 | Treasury Management | 10/15/26 | Reagan Jones | 2.5 | Correspond with CRO regarding latest Flagstar transaction report and update analysis with same. |
| 27 | Treasury Management | 10/15/26 | Reagan Jones | 0.2 | Correspond with CRO regarding pending Flagstar transfers. |
| 27 | Treasury Management | 10/16/26 | Joshua Beets | 0.3 | Review of bank statements for cash tracking. |
| 27 | Treasury Management | 10/16/26 | Reagan Jones | 2.1 | Analyze latest Flagstar transaction data to determine balances of pending transfers. |
| 27 | Treasury Management | 10/16/26 | Reagan Jones | 1.8 | Analyze Flagstar operating account balances to determine remaining transfers to the professional fee account. |
| 27 | Treasury Management | 10/19/26 | Reagan Jones | 2.1 | Reconcile transaction activity in the Flagstar operating account. |
| 27 | Treasury Management | 10/20/26 | Christopher Pizzo | 1.0 | Review and comment on analysis related to SIMAD cash accounts. |
| 27 | Treasury Management | 10/20/26 | Reagan Jones | 1.7 | Analyze reserve amounts in the waterfall and align Flagstar reconciliation to same. |
| 27 | Treasury Management | 10/20/26 | Reagan Jones | 2.3 | Revise Flagstar account reconciliation schedule for the allocated professional fee amounts held. |
| 27 | Treasury Management | 10/20/26 | Reagan Jones | 2.7 | Reconcile transaction activity in the Flagstar professional fee account. |
| 27 | Treasury Management | 10/20/26 | Reagan Jones | 1.7 | Revise Flagstar account reconciliation schedule for the correct amounts held in reserve. |
| 27 | Treasury Management | 10/21/26 | Reagan Jones | 0.3 | Correspond with ACRO regarding Flagstar account activity. |
| 27 | Treasury Management | 10/21/26 | Reagan Jones | 0.2 | Correspond with FTI team regarding Flagstar account activity. |
| 27 | Treasury Management | 10/21/26 | Reagan Jones | 1.7 | Revise footnotes and DIP uses schedule on the Flagstar account reconciliation schedule. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 27 | Treasury Management | 10/21/26 | Reagan Jones | 2.3 | Revise footnotes and reserve schedule on the Flagstar account reconciliation schedule. |
| 27 | Treasury Management | 10/21/26 | Reagan Jones | 1.8 | Revise footnotes and professional fee schedule on the Flagstar account reconciliation schedule. |
| 27 | Treasury Management | 10/22/26 | Reagan Jones | 1.7 | Revise the Flagstar account reconciliation schedule. |
| 27 | Treasury Management | 10/23/26 | Reagan Jones | 0.4 | Correspond with FTI team via email regarding the Flagstar account reconciliation. |
| 27 | Treasury Management | 10/26/26 | Reagan Jones | 1.2 | Analyze Flagstar account reconciliation schedule for month end September. |
| 27 | Treasury Management | 10/26/26 | Reagan Jones | 1.7 | Analyze Flagstar account transaction activity for the prior week. |
| 27 | Treasury Management | 10/27/26 | Christopher Pizzo | 0.7 | Review and provide comments and revisions to SIMAD cash accounts reconciliation deliverable. |
| 27 | Treasury Management | 10/28/26 | Max Pidgeon | 0.3 | Call with Corporate Realty regarding tenant disputes. |
| 27 | Treasury Management | 10/29/26 | Kavi Bommakanti | 1.6 | Pull balance sheets and P&Ls from QuickBooks for every camp per Cole Schotz request. |
| 27 | Treasury Management | 10/29/26 | Max Pidgeon | 1.0 | Pull balance sheets and P&Ls from QuickBooks for every camp per Cole Schotz request. |
| 27 | Treasury Management | 10/30/26 | Reagan Jones | 2.1 | Revise Flagstar reconciliation schedule to remove bridges to waterfall. |
| | **Task Code 27 Total** | | | **71.1** | |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 28 | Cash Forecasting | 10/1/26 | Christopher Creger | 0.7 | Review bond operating budgets to validate accuracy and implementation. |
| 28 | Cash Forecasting | 10/1/26 | Christopher Pizzo | 2.9 | Review and update bond budgets and waterfall to distribute to bondholder agent and UCC. |
| 28 | Cash Forecasting | 10/1/26 | Max Pidgeon | 0.8 | Identify transactions at specific camps for cash forecasting purposes. |
| 28 | Cash Forecasting | 10/1/26 | Russell Laughlin | 1.5 | Review updated assumptions in the budget. |
| 28 | Cash Forecasting | 10/1/26 | Vivek Ram | 2.5 | Work through various additional payment, bank account transfers, and liquidity issues at camps not yet sold. |
| 28 | Cash Forecasting | 10/2/26 | Christopher Pizzo | 0.4 | Make revisions to and break down the SIMAD reserve accounts held at Flagstar for cash forecasting purposes. |
| 28 | Cash Forecasting | 10/2/26 | Joshua Beets | 0.5 | Review One Canal cash flows. |
| 28 | Cash Forecasting | 10/2/26 | Max Pidgeon | 0.3 | Identify and correspond with Cole Schotz regarding ground rent payments for One Canal Place. |
| 28 | Cash Forecasting | 10/2/26 | Reagan Jones | 2.2 | Analyze BNH budgets for approved camp funding needs. |
| 28 | Cash Forecasting | 10/2/26 | Russell Laughlin | 3.0 | Review budget extensions and reforecast for multiple camps. |
| 28 | Cash Forecasting | 10/2/26 | Vivek Ram | 2.5 | Continue to work through various payment and liquidity needs for camps not yet closed. |
| 28 | Cash Forecasting | 10/5/26 | Joshua Beets | 0.6 | Review ground lease payment at One Canal for cash forecasting purposes. |
| 28 | Cash Forecasting | 10/5/26 | Joshua Beets | 0.9 | Review cash flow forecast for remaining camps that have not been sold yet. |
| 28 | Cash Forecasting | 10/5/26 | Max Pidgeon | 0.5 | Update One Canal Place budget based on new payment assumptions. |
| 28 | Cash Forecasting | 10/5/26 | Reagan Jones | 1.3 | Analyze Mohawk's cash balances in comparison to budgeted amounts. |
| 28 | Cash Forecasting | 10/5/26 | Reagan Jones | 1.9 | Analyze Mohawk extended budget and weekly funding need. |
| 28 | Cash Forecasting | 10/5/26 | Reagan Jones | 1.2 | Analyze Mohawk payroll needs and support provided from camp director. |
| 28 | Cash Forecasting | 10/5/26 | Reagan Jones | 1.8 | Calculate specific amounts to be paid per camp in current week. |
| 28 | Cash Forecasting | 10/5/26 | Vivek Ram | 0.9 | Discuss and review fee analysis updates and applications. |
| 28 | Cash Forecasting | 10/6/26 | Reagan Jones | 1.8 | Calculate amounts to pay board of directors fees. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 28 | Cash Forecasting | 10/6/26 | Russell Laughlin | 3.0 | Create budget extensions and reforecast for various camps. |
| 28 | Cash Forecasting | 10/6/26 | Vivek Ram | 0.8 | Implement additional updates to budget. |
| 28 | Cash Forecasting | 10/7/26 | Christopher Creger | 0.9 | Assess timing and allocation of total projected payments to BNH and communicate funding assumptions and supporting calculations to the FTI team. |
| 28 | Cash Forecasting | 10/7/26 | Christopher Pizzo | 0.3 | Review BNH total cash reconciliation analysis. |
| 28 | Cash Forecasting | 10/7/26 | Christopher Pizzo | 0.8 | Review SIMAD cash accounts and reconcile to draft deliverable. |
| 28 | Cash Forecasting | 10/7/26 | Reagan Jones | 0.6 | Correspond with FTI team regarding Chateaugay cash balances. |
| 28 | Cash Forecasting | 10/7/26 | Russell Laughlin | 3.0 | Review budget extensions and reforecast for Mohawk. |
| 28 | Cash Forecasting | 10/7/26 | Vivek Ram | 0.8 | Update budget based on additional information provided. |
| 28 | Cash Forecasting | 10/7/26 | Vivek Ram | 1.5 | Assist various camps with interim liquidity needs and shortfalls. |
| 28 | Cash Forecasting | 10/8/26 | Joshua Beets | 0.8 | Call with Fidelity counsel, Cole Schotz, and FTI team regarding One Canal budget. |
| 28 | Cash Forecasting | 10/8/26 | Joshua Beets | 0.3 | Review updates to One Canal Budget. |
| 28 | Cash Forecasting | 10/8/26 | Max Pidgeon | 0.8 | Call with Fidelity counsel, Cole Schotz, and FTI team regarding One Canal budget. |
| 28 | Cash Forecasting | 10/8/26 | Max Pidgeon | 1.0 | Update One Canal budget to extend through January. |
| 28 | Cash Forecasting | 10/8/26 | Reagan Jones | 1.3 | Calculate amounts to pay on 10/8 and correspond with FTI team regarding same. |
| 28 | Cash Forecasting | 10/8/26 | Reagan Jones | 1.8 | Analyze remaining amounts in bank accounts compared to the budgets. |
| 28 | Cash Forecasting | 10/8/26 | Russell Laughlin | 1.2 | Discuss Mohawk payroll funding and other items with ACRO. |
| 28 | Cash Forecasting | 10/8/26 | Vivek Ram | 0.6 | Review additional camp liquidity updates. |
| 28 | Cash Forecasting | 10/9/26 | Christopher Creger | 1.9 | Analyze funding obligations under the original approved budget vs. revised budget and assess differences between budgeted amounts, accrued fees, and projected expenditures. |
| 28 | Cash Forecasting | 10/9/26 | Christopher Creger | 2.1 | Conduct detailed review of SIMAD DIP sources and uses, Flagstar cash reconciliations, and supporting collateral reserve schedules to assess accuracy of projected Mishmeret recoveries. |
| 28 | Cash Forecasting | 10/9/26 | Joshua Beets | 0.6 | Review of One Canal cash forecast. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 28 | Cash Forecasting | 10/9/26 | Kavi Bommakanti | 0.8 | Update liquidity reserves tracker. |
| 28 | Cash Forecasting | 10/9/26 | Max Pidgeon | 0.5 | Update One Canal budget through January. |
| 28 | Cash Forecasting | 10/9/26 | Max Pidgeon | 2.4 | Continue to update One Canal budget through January. |
| 28 | Cash Forecasting | 10/9/26 | Max Pidgeon | 1.0 | Continue to update One Canal budget through January. |
| 28 | Cash Forecasting | 10/9/26 | Reagan Jones | 2.6 | Analyze budgeted amounts from Banner Day related to ongoing expenses. |
| 28 | Cash Forecasting | 10/9/26 | Vivek Ram | 0.8 | Continue to work on various camp level liquidity needs. |
| 28 | Cash Forecasting | 10/10/26 | Christopher Creger | 0.8 | Evaluate amounts invoiced and paid to date, existing Flagstar escrow balances, and incremental funding requirements, including allocation to bond collateral sale proceeds and related UST reserves. |
| 28 | Cash Forecasting | 10/10/26 | Christopher Pizzo | 1.1 | Correspond with FTI team and Cole Schotz regarding revisions to budgets (and impact on waterfall) in preparation for court document filings. |
| 28 | Cash Forecasting | 10/10/26 | Christopher Pizzo | 0.8 | Respond to Bondholder trustee regarding revisions to budgets in preparation for court document filings. |
| 28 | Cash Forecasting | 10/10/26 | Reagan Jones | 1.7 | Update fee schedule into deliverable for bond and UCC advisors. |
| 28 | Cash Forecasting | 10/10/26 | Reagan Jones | 1.2 | Revise latest DIP budget based on responses from UCC and bond advisors. |
| 28 | Cash Forecasting | 10/10/26 | Reagan Jones | 2.2 | Revise fee schedule to calculate unfunded amounts. |
| 28 | Cash Forecasting | 10/11/26 | Christopher Creger | 0.6 | Call with UCC advisor, Bondholder Trustee, Cole Schotz, and FTI team to discuss questions/revisions to the budget. |
| 28 | Cash Forecasting | 10/11/26 | Christopher Pizzo | 0.6 | Call with UCC advisor, Bondholder Trustee, Cole Schotz, and FTI team to discuss questions/revisions to the budget. |
| 28 | Cash Forecasting | 10/11/26 | Christopher Pizzo | 0.4 | Review and respond to questions from Bondholder Trustee and UCC regarding budget and requested revisions. |
| 28 | Cash Forecasting | 10/11/26 | Christopher Pizzo | 0.5 | Review and advise on revisions to budget. |
| 28 | Cash Forecasting | 10/11/26 | Christopher Pizzo | 1.9 | Make revisions to the budget based on interactions with UCC advisors, Bondholder Trustee, and SIMAD CRO. |
| 28 | Cash Forecasting | 10/11/26 | Reagan Jones | 2.3 | Revise cash flow forecast to further detail remaining contingency funds. |
| 28 | Cash Forecasting | 10/11/26 | Reagan Jones | 1.9 | Continue to revise cash flow forecast to further detail remaining contingency funds. |
| 28 | Cash Forecasting | 10/12/26 | Christopher Pizzo | 0.3 | Review Kiwi disposition planning and interim DIP funding. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 28 | Cash Forecasting | 10/12/26 | Joshua Beets | 0.9 | Review of One Canal cash forecast. |
| 28 | Cash Forecasting | 10/12/26 | Max Pidgeon | 0.9 | Continue to update One Canal budget through January. |
| 28 | Cash Forecasting | 10/12/26 | Reagan Jones | 0.4 | Continue to analyze budget based on latest invoices received. |
| 28 | Cash Forecasting | 10/12/26 | Reagan Jones | 0.7 | Continue to analyze budget based on latest invoices received. |
| 28 | Cash Forecasting | 10/12/26 | Reagan Jones | 0.3 | Analyze budget based on latest invoices received. |
| 28 | Cash Forecasting | 10/12/26 | Reagan Jones | 0.7 | Analyze Kiwi budget to determine latest funding needs. |
| 28 | Cash Forecasting | 10/12/26 | Reagan Jones | 0.9 | Continue to analyze Kiwi budget to determine latest funding needs. |
| 28 | Cash Forecasting | 10/12/26 | Reagan Jones | 0.9 | Update funding needs assumptions based on status of multiple camp closings. |
| 28 | Cash Forecasting | 10/12/26 | Vivek Ram | 0.7 | Assist with Kiwi budget and funding need. |
| 28 | Cash Forecasting | 10/12/26 | Vivek Ram | 0.8 | Review and update extended budgets. |
| 28 | Cash Forecasting | 10/13/26 | Christopher Creger | 0.5 | Call with Fidelity, Cole Schotz, and FTI team regarding the One Canal budget and cash use. |
| 28 | Cash Forecasting | 10/13/26 | Christopher Creger | 1.4 | Review and evaluate September disbursement reporting, including reconciliation of cash disbursements to bank activity, approved budgets, and supporting financial records. |
| 28 | Cash Forecasting | 10/13/26 | Joshua Beets | 0.5 | Call with Fidelity, Cole Schotz, and FTI team regarding the One Canal budget and cash use. |
| 28 | Cash Forecasting | 10/13/26 | Joshua Beets | 2.4 | Review of updates to One Canal Budget. |
| 28 | Cash Forecasting | 10/13/26 | Max Pidgeon | 0.5 | Call with Fidelity, Cole Schotz, and FTI team regarding the One Canal budget and cash use. |
| 28 | Cash Forecasting | 10/13/26 | Max Pidgeon | 1.0 | Update One Canal budget versus actual analysis. |
| 28 | Cash Forecasting | 10/13/26 | Vivek Ram | 2.7 | Review additional funding and liquidity needs, transaction closing specifics, and organize camp fund transfers. |
| 28 | Cash Forecasting | 10/13/26 | Vivek Ram | 1.7 | Review additional corporate costs and transaction related wires for payment and reimbursement. |
| 28 | Cash Forecasting | 10/14/26 | Christopher Creger | 0.8 | Provide direction to FTI team regarding required cash transfers, reconciliation of budgeted versus actual expenditures and updates to the bondholder recovery waterfall and supporting schedules. |
| 28 | Cash Forecasting | 10/14/26 | Joshua Beets | 0.2 | Review of One Canal budget vs. actuals. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 28 | Cash Forecasting | 10/14/26 | Max Pidgeon | 1.7 | Update One Canal budget versus actual analysis. |
| 28 | Cash Forecasting | 10/14/26 | Reagan Jones | 1.6 | Calculate UST fees to move from the professional fee account. |
| 28 | Cash Forecasting | 10/15/26 | Max Pidgeon | 0.5 | Update One Canal budget versus actual analysis. |
| 28 | Cash Forecasting | 10/15/26 | Vivek Ram | 0.8 | Review and organize specific payments in line with court approvals. |
| 28 | Cash Forecasting | 10/16/26 | Christopher Creger | 0.8 | Assess compliance with approved budget limitations, historical cash expenditures, outstanding APA closing conditions, and alternatives. |
| 28 | Cash Forecasting | 10/16/26 | Christopher Creger | 0.8 | Review and evaluate Banner Day Camp's outstanding operating obligations, payroll requirements, and liquidity constraints in connection with the pending asset sale and Chapter 11 wind-down. |
| 28 | Cash Forecasting | 10/16/26 | Joshua Beets | 0.4 | Review of One Canal budget to actuals for September. |
| 28 | Cash Forecasting | 10/16/26 | Max Pidgeon | 1.2 | Update One Canal September budget versus actual analysis. |
| 28 | Cash Forecasting | 10/19/26 | Christopher Pizzo | 0.5 | Review One Canal budget versus actual and provide comments. |
| 28 | Cash Forecasting | 10/19/26 | Joshua Beets | 0.8 | Review of Chateaugay cash position. |
| 28 | Cash Forecasting | 10/19/26 | Joshua Beets | 0.9 | Review of One Canal budget vs. actuals analysis. |
| 28 | Cash Forecasting | 10/19/26 | Reagan Jones | 2.2 | Analyze prior week transaction activity in the Flagstar account. |
| 28 | Cash Forecasting | 10/19/26 | Vivek Ram | 1.3 | Clarify and update BNH debt paydown calculations for cash forecasting purposes. |
| 28 | Cash Forecasting | 10/20/26 | Christopher Pizzo | 0.9 | Review One Canal budget versus actuals reporting. |
| 28 | Cash Forecasting | 10/20/26 | Joshua Beets | 0.9 | Review of One Canal budget vs. actuals. |
| 28 | Cash Forecasting | 10/20/26 | Max Pidgeon | 0.5 | Update One Canal budget versus actual based on internal FTI team comments. |
| 28 | Cash Forecasting | 10/20/26 | Max Pidgeon | 1.3 | Update One Canal budget versus actual analysis based on internal FTI team comments. |
| 28 | Cash Forecasting | 10/20/26 | Max Pidgeon | 0.9 | Review and update One Canal budget versus actual analysis. |
| 28 | Cash Forecasting | 10/21/26 | Christopher Pizzo | 0.7 | Review revisions to 3 page SIMAD cash balances workpaper. |
| 28 | Cash Forecasting | 10/21/26 | Joshua Beets | 0.2 | Review of BNH payoff amounts for cash forecasting purposes. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 28 | Cash Forecasting | 10/21/26 | Joshua Beets | 1.8 | Review of One Canal budget vs. actuals. |
| 28 | Cash Forecasting | 10/21/26 | Max Pidgeon | 2.4 | Continue to update One Canal budget versus actuals based on additional information provided by Corporate Realty. |
| 28 | Cash Forecasting | 10/21/26 | Max Pidgeon | 1.4 | Continue to update One Canal budget versus actuals based on additional information provided by Corporate Realty. |
| 28 | Cash Forecasting | 10/21/26 | Max Pidgeon | 1.5 | Continue to update One Canal budget versus actuals based on additional information provided by Corporate Realty. |
| 28 | Cash Forecasting | 10/21/26 | Max Pidgeon | 1.1 | Continue to update One Canal budget versus actuals based on additional information provided by Corporate Realty. |
| 28 | Cash Forecasting | 10/21/26 | Max Pidgeon | 1.3 | Update One Canal budget versus actuals based on additional information provided by Corporate Realty. |
| 28 | Cash Forecasting | 10/21/26 | Max Pidgeon | 0.9 | Call with Corporate Realty to discuss additional expenses incurred for September budget versus actuals. |
| 28 | Cash Forecasting | 10/21/26 | Russell Laughlin | 2.2 | Review One Canal Budget vs. Actuals analysis. |
| 28 | Cash Forecasting | 10/22/26 | Christopher Creger | 0.9 | Review and analyze Banner Day Camp's post petition operating expenses, payroll obligations, and available cash balances, including proposed funding for the Halloween Walk and employee retention costs. |
| 28 | Cash Forecasting | 10/22/26 | Joshua Beets | 0.4 | Review of cash needs at remaining camps. |
| 28 | Cash Forecasting | 10/22/26 | Max Pidgeon | 0.7 | Call with Corporate Realty regarding lease renewals. |
| 28 | Cash Forecasting | 10/22/26 | Reagan Jones | 1.6 | Analyze Chateaugay DIP budget. |
| 28 | Cash Forecasting | 10/22/26 | Reagan Jones | 1.2 | Analyze Kiwi DIP budget. |
| 28 | Cash Forecasting | 10/22/26 | Russell Laughlin | 1.0 | Review and update BNH payoff PDFs for cash forecasting purposes. |
| 28 | Cash Forecasting | 10/23/26 | Russell Laughlin | 0.5 | Call with ACRO to discuss Malka liquidity. |
| 28 | Cash Forecasting | 10/23/26 | Russell Laughlin | 1.2 | Update Malka liquidity analysis. |
| 28 | Cash Forecasting | 10/26/26 | Russell Laughlin | 3.0 | Review and update Budget vs. Actual analysis. |
| 28 | Cash Forecasting | 10/27/26 | David Lee | 0.5 | Prepare a schedule of UST fees for FTI Team. |
| 28 | Cash Forecasting | 10/27/26 | David Lee | 0.3 | Review and update UST fee schedule based on comments from internal FTI team. |
| 28 | Cash Forecasting | 10/27/26 | David Lee | 0.7 | Finalize preparation of UST fees schedule. |

EXHIBIT B
SIMAD Holdings, Ltd. - CASE NO. 26-16388
DETAIL OF TIME ENTRIES
FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 28 | Cash Forecasting | 10/27/26 | Max Pidgeon | 0.4 | Finalize One Canal budget versus actual analysis to send to CRO. |
| 28 | Cash Forecasting | 10/27/26 | Reagan Jones | 1.5 | Analyze Flagstar UST fee funding and payments. |
| 28 | Cash Forecasting | 10/27/26 | Reagan Jones | 1.8 | Update Flagstar reconciliation schedule for roll-up payment bridge. |
| 28 | Cash Forecasting | 10/27/26 | Reagan Jones | 1.3 | Analyze Flagstar professional fee funding and payments. |
| 28 | Cash Forecasting | 10/28/26 | Christopher Creger | 0.5 | Examine Mulligan payment history and refinancing transactions for potential fraudulent transfer defenses and bank-tracing requirements. |
| 28 | Cash Forecasting | 10/28/26 | Christopher Pizzo | 0.2 | Review SIMAD cash account reconciliations. |
| 28 | Cash Forecasting | 10/28/26 | Joshua Beets | 1.1 | Review of camp director potential claims for bonuses. |
| 28 | Cash Forecasting | 10/28/26 | Reagan Jones | 2.5 | Update Flagstar reconciliation schedule for roll-up payment bridge and accompanying footnote. |
| 28 | Cash Forecasting | 10/28/26 | Russell Laughlin | 0.2 | Provide direction on Blue Star request for property tax reimbursement. |
| 28 | Cash Forecasting | 10/29/26 | Christopher Creger | 0.7 | Coordinate Mishmeret payoff reconciliation and potential recovery adjustments. |
| 28 | Cash Forecasting | 10/29/26 | Reagan Jones | 2.3 | Analyze Flagstar transaction data regarding professional fee payments. |
| 28 | Cash Forecasting | 10/30/26 | Christopher Creger | 1.9 | Coordinate professional fee allocation and overage reconciliations. |
| 28 | Cash Forecasting | 10/30/26 | Reagan Jones | 1.2 | Calculate September bond advisor professional fee payments to disburse. |
| 28 | Cash Forecasting | 10/31/26 | Christopher Creger | 0.5 | Review approved budget requirements and coordinate October actual-to-budget cash reporting. |
| 28 | Cash Forecasting | 10/31/26 | Christopher Creger | 0.7 | Evaluate October professional fee budget availability against actual and accrued fees. |
| 28 | Cash Forecasting | 10/31/26 | Reagan Jones | 0.2 | Analyze remaining budgeted professional fee amounts. |
| | **Task Code 28 Total** | | | **156.1** | |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 29 | Vendor Management | 10/1/26 | Joshua Beets | 0.8 | Correspond with Corporate Realty related to vendors at One Canal. |
| 29 | Vendor Management | 10/2/26 | Evan Hudgins | 1.5 | Update utility transition tracker and associated communication. |
| 29 | Vendor Management | 10/6/26 | Christopher Creger | 0.5 | Review correspondence and supporting invoices regarding proposed Camp Echo expense reimbursement. |
| 29 | Vendor Management | 10/6/26 | Evan Hudgins | 1.5 | Update utility transition tracker and associated communication. |
| 29 | Vendor Management | 10/6/26 | Joshua Beets | 0.7 | Review vendor payments to make at specific camps that have not sold yet. |
| 29 | Vendor Management | 10/7/26 | Max Pidgeon | 0.7 | Continue to review post petition payables to make at One Canal. |
| 29 | Vendor Management | 10/7/26 | Max Pidgeon | 1.3 | Review post petition payables to make at One Canal. |
| 29 | Vendor Management | 10/8/26 | Evan Hudgins | 1.8 | Update utility transition tracker and associated communication. |
| 29 | Vendor Management | 10/12/26 | Evan Hudgins | 2.0 | Update utility transition tracker and associated communication. |
| 29 | Vendor Management | 10/14/26 | Joshua Beets | 0.5 | Review of insurance payments to make at multiple camps. |
| 29 | Vendor Management | 10/14/26 | Russell Laughlin | 0.5 | Discuss insurance coverage with CFO and ACRO. |
| 29 | Vendor Management | 10/15/26 | Evan Hudgins | 1.9 | Update utility transition tracker and associated communication. |
| 29 | Vendor Management | 10/15/26 | Max Pidgeon | 1.0 | Identify payments to make at One Canal Place. |
| 29 | Vendor Management | 10/19/26 | Evan Hudgins | 1.7 | Update utility transition tracker and associated communication. |
| 29 | Vendor Management | 10/19/26 | Joshua Beets | 0.2 | Review of One Canal insurance. |
| 29 | Vendor Management | 10/21/26 | Joshua Beets | 0.3 | Review of expenses to pay at multiple camps. |
| 29 | Vendor Management | 10/21/26 | Max Pidgeon | 1.5 | Identify One Canal payables to approve. |
| 29 | Vendor Management | 10/22/26 | Joshua Beets | 0.7 | Review of expenses to pay at multiple camps. |
| 29 | Vendor Management | 10/22/26 | Max Pidgeon | 0.4 | Call with Corporate Realty regarding vendor payments. |
| 29 | Vendor Management | 10/22/26 | Max Pidgeon | 0.4 | Review payables at One Canal Place. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 29 | Vendor Management | 10/23/26 | Joshua Beets | 0.6 | Review of expenses to pay at multiple camps. |
| 29 | Vendor Management | 10/23/26 | Max Pidgeon | 0.8 | Continue to review payables at One Canal Place. |
| 29 | Vendor Management | 10/28/26 | Max Pidgeon | 0.9 | Review payments to be made at One Canal Place. |
| 29 | Vendor Management | 10/28/26 | Max Pidgeon | 0.5 | Discuss critical vendor payments needed at MogenAv with ACRO. |
| 29 | Vendor Management | 10/28/26 | Max Pidgeon | 0.3 | Continue to review payments to be made at One Canal Place. |
| 29 | Vendor Management | 10/28/26 | Reagan Jones | 1.3 | Compare Kroll requested payments against invoices received. |
| 29 | Vendor Management | 10/29/26 | Russell Laughlin | 0.5 | Review Meadowbrook invoices and discuss payment options with ACRO. |
| 29 | Vendor Management | 10/30/26 | Evan Hudgins | 1.5 | Update utility transition tracker and associated communication. |
| | **Task Code 29 Total** | | | **26.3** | |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 31 | UCC Diligence | 10/1/26 | Mihai Cirstea | 0.6 | Prepare camp-level reporting of 2027 camper deposit balances for the UCC. |
| 31 | UCC Diligence | 10/2/26 | Christopher Creger | 0.8 | Review stipulation with BNH and the Committee that resolves the Committee’s challenge and approves the revised budget. |
| 31 | UCC Diligence | 10/3/26 | Mihai Cirstea | 0.5 | Prepare Week 15 budget-versus-actual Excel reporting file for the UCC. |
| 31 | UCC Diligence | 10/5/26 | Joshua Beets | 0.4 | Respond to UCC's questions regarding the waterfall analysis. |
| 31 | UCC Diligence | 10/5/26 | Vivek Ram | 2.5 | Prepare and provide answers to UCC regarding cash need and shortfalls. |
| 31 | UCC Diligence | 10/6/26 | Christopher Creger | 1.2 | Review reporting requirements regarding 2027 camper deposits and coordinate with Debtors’ management to obtain updated Flagstar account balances by camp for weekly reporting to UCC advisors. |
| 31 | UCC Diligence | 10/6/26 | Mihai Cirstea | 0.5 | Prepare Week 16 budget-versus-actual Excel reporting file for the UCC. |
| 31 | UCC Diligence | 10/7/26 | Christopher Creger | 0.5 | Call with UCC advisor and FTI team regarding proposed Plan distributions, including distribution methodology and anticipated creditor recoveries. |
| 31 | UCC Diligence | 10/7/26 | Christopher Creger | 1.4 | Review and reconcile differing Mishmeret bondholder claim and payoff amounts reflected in the proposed UCC settlement term sheet, lender calculations, and FTI recovery waterfall. |
| 31 | UCC Diligence | 10/7/26 | Christopher Pizzo | 0.3 | Prepare Bondholder debt, interest, and FX calculations to send to UCC. |
| 31 | UCC Diligence | 10/7/26 | Joshua Beets | 1.6 | Review waterfall data to send to UCC. |
| 31 | UCC Diligence | 10/7/26 | Joshua Beets | 0.5 | Call with UCC advisor and FTI team regarding proposed Plan distributions, including distribution methodology and anticipated creditor recoveries. |
| 31 | UCC Diligence | 10/7/26 | Max Pidgeon | 1.0 | Package waterfall calculations to send to the UCC. |
| 31 | UCC Diligence | 10/7/26 | Max Pidgeon | 0.9 | Continue to package waterfall calculations to send to the UCC based on additional requests. |
| 31 | UCC Diligence | 10/8/26 | Christopher Creger | 1.2 | Evaluate treatment of the proposed UCC settlement, disputed MCA claims, and resulting impacts on administrative and unsecured creditor recoveries. |
| 31 | UCC Diligence | 10/8/26 | Joshua Beets | 0.2 | Correspond with UCC regarding Waterfall updates. |
| 31 | UCC Diligence | 10/8/26 | Mihai Cirstea | 0.6 | Prepare camp-level reporting of 2027 camper deposit balances for the UCC. |
| 31 | UCC Diligence | 10/8/26 | Russell Laughlin | 2.0 | Correspond with UCC regarding Bonds payoff amounts. |
| 31 | UCC Diligence | 10/8/26 | Vivek Ram | 1.4 | Prepare waterfall backup detail for UCC. |
| 31 | UCC Diligence | 10/9/26 | Joshua Beets | 0.4 | Respond to UCC's diligence questions on the updated waterfall analysis. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 31 | UCC Diligence | 10/9/26 | Mihai Cirstea | 0.5 | Prepare Week 16 budget-versus-actual Excel reporting file for the UCC. |
| 31 | UCC Diligence | 10/9/26 | Vivek Ram | 1.3 | Prepare additional responses to UCC questions and additional settlement detail. |
| 31 | UCC Diligence | 10/10/26 | Christopher Creger | 0.8 | Review and respond to multiple inquiries from lender and UCC counsel regarding settlement funding requirements and final budget assumptions. |
| 31 | UCC Diligence | 10/10/26 | Christopher Pizzo | 0.9 | Respond to UCC regarding revisions to budgets in preparation for court document filings. |
| 31 | UCC Diligence | 10/11/26 | Christopher Creger | 0.5 | Review and respond to questions from the UCC advisor regarding the settlement term sheet. |
| 31 | UCC Diligence | 10/14/26 | Mihai Cirstea | 0.5 | Prepare Week 16 budget-versus-actual Excel reporting file for the UCC. |
| 31 | UCC Diligence | 10/14/26 | Vivek Ram | 0.9 | Review of updated payoff letters from UCC and update waterfall analysis. |
| 31 | UCC Diligence | 10/15/26 | Joshua Beets | 0.8 | Respond to the UCC's questions on waterfall analysis. |
| 31 | UCC Diligence | 10/15/26 | Vivek Ram | 0.5 | Assist with additional questions from UCC on the waterfall analysis. |
| 31 | UCC Diligence | 10/19/26 | Mihai Cirstea | 0.6 | Prepare camp-level reporting of 2027 camper deposit balances for the UCC. |
| 31 | UCC Diligence | 10/21/26 | Christopher Creger | 0.5 | Call with UCC and FTI team regarding overall plan and related work. |
| 31 | UCC Diligence | 10/21/26 | Joshua Beets | 0.5 | Call with UCC and FTI team regarding overall plan and related work. |
| 31 | UCC Diligence | 10/27/26 | Reagan Jones | 0.6 | Correspond with UCC advisors regarding retained causes of action schedule. |
| 31 | UCC Diligence | 10/29/26 | Joshua Beets | 1.9 | Respond to specific questions from the UCC related to the Plan. |
| 31 | UCC Diligence | 10/29/26 | Max Pidgeon | 0.6 | Investigate QuickBooks to answer specific questions about camp Green Lane from the UCC. |
| 31 | UCC Diligence | 10/29/26 | Max Pidgeon | 0.5 | Continue to investigate QuickBooks to answer specific questions about camp Green Lane from the UCC. |
| 31 | UCC Diligence | 10/30/26 | Christopher Creger | 1.2 | Review waterfall and assess M3 inquiries regarding FIRPTA, professional fees, secured claims, and creditor recoveries. |
| 31 | UCC Diligence | 10/30/26 | Joshua Beets | 0.5 | Respond to UCC diligence request. |

**EXHIBIT B**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**DETAIL OF TIME ENTRIES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Task Category | Task Description | Date | Professional | Hours | Activity |
|---|---|---|---|---|---|
| 31 | UCC Diligence | 10/30/26 | Mihai Cirstea | 0.3 | Prepare camp-level reporting of 2027 camper deposit balances for the UCC. |
| | **Task Code 31 Total** | | | **32.4** | |

| | |
|---|---|
| **Grand Total** | **1,750.70** |

# **Exhibit C**

## Itemized Out-Of-Pocket Expenses

**EXHIBIT C**

**SIMAD Holdings, Ltd. - CASE NO. 26-16388**

**ITEMIZED OUT-OF-POCKET EXPENSES**

**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Professional | Expense Date | Expense Type | Expense Detail[1] | Amount[2] |
|---|---|---|---|---|
| Location 551, EEC DC | 10/31/26 | Other | Purchased service for FTI Technology related matters. | 200.00 |
| | | **Other Total** | | **200.00** |

**EXHIBIT C**

**SIMAD Holdings, Ltd. - CASE NO. 26-16388**

**ITEMIZED OUT-OF-POCKET EXPENSES**

**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Professional | Expense Date | Expense Type | Expense Detail[1] | Amount[2] |
|---|---|---|---|---|
| Vivek Ram | 09/14/26 | Transportation | Parking extension at office while working late on billable matter. | 22.15 |
| Vivek Ram | 09/15/26 | Transportation | Parking extension at office while working late on billable matter. | 22.15 |
| Vivek Ram | 09/16/26 | Transportation | Parking extension at office while working late on billable matter. | 22.15 |
| David Lee | 09/20/26 | Transportation | Transportation for self to office while working late on billable matter. | 100.98 |
| David Lee | 09/20/26 | Transportation | Transportation for self from office while working late on billable matter. | 126.99 |
| Kavi Bommakanti | 09/21/26 | Transportation | Transportation for self from office while working late on billable matter. | 28.97 |
| Christopher Creger | 09/22/26 | Transportation | Transportation for self from office while working late on billable matter. | 191.15 |
| Vivek Ram | 09/22/26 | Transportation | Parking extension at office while working late on billable matter. | 22.15 |
| Vivek Ram | 09/23/26 | Transportation | Parking extension at office while working late on billable matter. | 22.15 |
| Christopher Creger | 09/24/26 | Transportation | Transportation for self from office while working late on billable matter. | 213.04 |
| David Lee | 09/24/26 | Transportation | Transportation for self from office while working late on billable matter. | 83.98 |
| Vivek Ram | 09/24/26 | Transportation | Parking extension at office while working late on billable matter. | 22.15 |
| David Lee | 09/25/26 | Transportation | Transportation for self from office while working late on billable matter. | 115.62 |
| Christopher Creger | 09/26/26 | Transportation | Transportation for self from office while working late on billable matter. | 36.95 |
| Vivek Ram | 09/28/26 | Transportation | Parking extension at office while working late on billable matter. | 22.15 |
| Christopher Creger | 09/29/26 | Transportation | Transportation for self from office while working late on billable matter. | 201.59 |
| Vivek Ram | 10/01/26 | Transportation | Transportation for self to office while working late on billable matter. | 73.98 |

**EXHIBIT C**

**SIMAD Holdings, Ltd. - CASE NO. 26-16388**

**ITEMIZED OUT-OF-POCKET EXPENSES**

**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Professional | Expense Date | Expense Type | Expense Detail[1] | Amount[2] |
|---|---|---|---|---|
| Vivek Ram | 10/01/26 | Transportation | Transportation for self from office while working late on billable matter. | 64.98 |
| Christopher Creger | 10/10/26 | Transportation | Transportation for self from office while working late on billable matter. | 106.98 |
| Christopher Creger | 10/13/26 | Transportation | Transportation for self from office while working late on billable matter. | 154.93 |
| Ethan Xie | 10/28/26 | Transportation | Transportation for self from office while working late on billable matter. | 41.34 |
| | | **Transportation Total** | | **1,696.53** |

**EXHIBIT C**
**SIMAD Holdings, Ltd. - CASE NO. 26-16388**
**ITEMIZED OUT-OF-POCKET EXPENSES**
**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Professional | Expense Date | Expense Type | Expense Detail[1] | Amount[2] |
|---|---|---|---|---|
| Vivek Ram | 09/15/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |
| Vivek Ram | 09/16/26 | Working Meals | Meal for self, M. Pidgeon, R. Jones, K. Bommakanti, E. Hudgins, D. Lee, M. Cirstea (all FTI) while working late on billable matter. | 59.68 |
| Christopher Creger | 09/17/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |
| Vivek Ram | 09/17/26 | Working Meals | Meal for self, E. Hudgins, R. Laughlin, R. Jones, D. Lee (all FTI) while working late on billable matter. | 191.50 |
| Vivek Ram | 09/19/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |
| David Lee | 09/20/26 | Working Meals | Meal for self while working late on billable matter. | 14.00 |
| David Lee | 09/20/26 | Working Meals | Meal for self while working late on billable matter. | 14.08 |
| David Lee | 09/21/26 | Working Meals | Meal for self while working late on billable matter. | 8.09 |
| David Lee | 09/21/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |
| Kavi Bommakanti | 09/21/26 | Working Meals | Meal for self, V. Ram, M. Pidgeon, R. Jones, E. Hudgins (all FTI) while working late on billable matter. | 31.15 |
| Kavi Bommakanti | 09/21/26 | Working Meals | Meal for self, E. Hudgins, R. Jones, D. Lee, R. Laughlin, M. Pidgeon, V. Ram, M. Cirstea, F. Collins (all FTI) while working late on billable matter. | 212.73 |
| Reagan Jones | 09/21/26 | Working Meals | Meal for self while working late on billable matter. | 17.76 |
| David Lee | 09/22/26 | Working Meals | Meal for self while working late on billable matter. | 16.23 |
| David Lee | 09/22/26 | Working Meals | Meal for self while working late on billable matter. | 18.65 |
| Max Pidgeon | 09/22/26 | Working Meals | Meal for self, V. Ram, K. Bommakanti, R. Jones (all FTI) while working late on billable matter. | 39.24 |
| Max Pidgeon | 09/22/26 | Working Meals | Meal for self, R. Laughlin, V. Ram, K. Bommakanti, R. Jones, E. Hudgins, M. Cirstea, J. Flittner, F. Collins, D. Lee (all FTI) while working late on billable matter. | 241.59 |
| Max Pidgeon | 09/22/26 | Working Meals | Meal for self, V. Ram, R. Laughlin, J. Beets, K. Bommakanti, E. Hudgins, R. Jones, D. Lee (all FTI) while working late on billable matter. | 161.77 |

**EXHIBIT C**

**SIMAD Holdings, Ltd. - CASE NO. 26-16388**

**ITEMIZED OUT-OF-POCKET EXPENSES**

**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Professional | Expense Date | Expense Type | Expense Detail[1] | Amount[2] |
|---|---|---|---|---|
| Reagan Jones | 09/22/26 | Working Meals | Meal for self while working late on billable matter. | 20.23 |
| David Lee | 09/23/26 | Working Meals | Meal for self while working late on billable matter. | 4.01 |
| Kavi Bommakanti | 09/23/26 | Working Meals | Meal for self while working late on billable matter. | 6.47 |
| Vivek Ram | 09/23/26 | Working Meals | Meal for self, D. Lee, K. Bommakanti, R. Jones, M. Pidgeon, E. Hudgins, M. Cirstea (all FTI) while working late on billable matter. | 77.95 |
| David Lee | 09/24/26 | Working Meals | Meal for self while working late on billable matter. | 13.65 |
| David Lee | 09/24/26 | Working Meals | Meal for self while working late on billable matter. | 22.73 |
| David Lee | 09/24/26 | Working Meals | Meal for self while working late on billable matter. | 11.08 |
| Max Pidgeon | 09/24/26 | Working Meals | Meal for self, V. Ram, K. Bommakanti, D. Lee, R. Jones, E. Hudgins (all FTI) while working late on billable matter. | 34.38 |
| Reagan Jones | 09/24/26 | Working Meals | Meal for self, R. Laughlin, E. Hudgins, V. Ram, M. Cirstea, M. Pidgeon, K. Bommakanti, D. Lee (all FTI) while working late on billable matter. | 233.55 |
| Vivek Ram | 09/24/26 | Working Meals | Meal for self, E. Hudgins, M. Pidgeon, R. Laughlin, R. Jones, J. Beets, K. Bommakanti, D. Lee (all FTI) while working late on billable matter. | 287.52 |
| Vivek Ram | 09/29/26 | Working Meals | Meal for self, K. Bommakanti, M. Pidgeon, M. Cirstea, R. Jones, E. Hudgins (all FTI) while working late on billable matter. | 69.43 |
| Max Pidgeon | 09/30/26 | Working Meals | Meal for self while working late on billable matter. | 23.00 |
| Max Pidgeon | 10/01/26 | Working Meals | Meal for self while working late on billable matter. | 25.00 |
| Vivek Ram | 10/01/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |
| Vivek Ram | 10/03/26 | Working Meals | Meal for self while working late on billable matter. | 49.32 |
| David Lee | 10/07/26 | Working Meals | Meal for self while working late on billable matter. | 17.21 |
| Vivek Ram | 10/08/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |

**EXHIBIT C**

**SIMAD Holdings, Ltd. - CASE NO. 26-16388**

**ITEMIZED OUT-OF-POCKET EXPENSES**

**FOR THE PERIOD OCTOBER 1, 2026 TO OCTOBER 31, 2026**

| Professional | Expense Date | Expense Type | Expense Detail[1] | Amount[2] |
|---|---|---|---|---|
| David Lee | 10/09/26 | Working Meals | Meal for self while working late on billable matter. | 37.41 |
| Vivek Ram | 10/09/26 | Working Meals | Meal for self while working late on billable matter. | 47.70 |
| Christopher Creger | 10/10/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |
| Reagan Jones | 10/10/26 | Working Meals | Meal for self while working late on billable matter. | 16.13 |
| David Lee | 10/11/26 | Working Meals | Meal for self while working late on billable matter. | 32.50 |
| Reagan Jones | 10/11/26 | Working Meals | Meal for self while working late on billable matter. | 23.83 |
| Vivek Ram | 10/12/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |
| Vivek Ram | 10/12/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |
| David Lee | 10/15/26 | Working Meals | Meal for self while working late on billable matter. | 11.68 |
| Christopher Creger | 10/16/26 | Working Meals | Meal for self while working late on billable matter. | 50.00 |
| David Lee | 10/18/26 | Working Meals | Meal for self while working late on billable matter. | 37.24 |
| David Lee | 10/23/26 | Working Meals | Meal for self while working late on billable matter. | 9.47 |
| | | **Working Meals Total** | | **2,637.96** |
| | | **Grand Total** | | **4,534.49** |

Notes:

[1] Working "late" refers to later than 8pm.

[2] Meal expenses have been adjusted to reflect a $50 per person cap on reimbursable amounts, consistent with the approach applied throughout this analysis, with any excess written off.