UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |
| SIMAD HOLDINGS LTD., *et al.*,<br><br>Plaintiffs,<br>v.<br><br>MULLIGAN FUNDING LLC and<br>FINWISE BANK,<br><br>Defendants. | Adv. Pro. No. 26 – ________ |

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

**SIMAD DEBTORS' ADVERSARY COMPLAINT AGAINST**
**MULLIGAN FUNDING LLC AND FINWISE BANK**

Plaintiffs, the above-captioned debtors and debtors in possession (collectively, as specifically identified below, the "SIMAD Debtors") by and through undersigned counsel, file this complaint (the "Complaint") against Mulligan Funding LLC ("Mulligan") and FinWise Bank ("FinWise," and together with Mulligan, the "Defendants"). In support of this Complaint, the SIMAD Debtors allege as follows:

**NATURE OF THE ACTION**

1. This adversary proceeding concerns two loans originated by Defendant FinWise in January 2026 and the fifty-six (56) proofs of claim subsequently filed by Defendant Mulligan against the Plaintiffs' bankruptcy estates. Through those Proofs of Claim (defined below), Mulligan asserts claims exceeding $17 million against each Plaintiff based upon merchant cash advance (MCA) loan agreements that were executed by non-Debtor entities, and a subsequent addendum purporting to unilaterally bind more than one hundred (100) additional entities, including each of the Plaintiffs.

2. The Proofs of Claim and supporting documentation present substantial questions regarding the ownership, enforceability, and secured status of the alleged obligations. Although Mulligan identifies itself as the creditor, the claim documents simultaneously identify FinWise as the lender and describe Mulligan as FinWise's servicer and agent. The Plaintiffs therefore seek a determination of the parties' respective rights and interests in the Loans (defined below), including the identity of the entity that owns and holds the indebtedness and the authority, if any, of Mulligan to assert the Proofs of Claim in its own name.

3. The Plaintiffs further seek determinations regarding whether the Loans constitute valid and enforceable obligations of the Plaintiffs. The Loan Agreements (defined below)

identify DAMIS Holdings, LLC and SIMAD Holdings LLC as the borrowers, while the purported liability of the Plaintiffs arose solely through a Borrower Addendum (defined below) executed by others and without documentation demonstrating authority to bind each Plaintiff. Moreover, upon information and belief, the Plaintiffs did not receive the proceeds of the Loans despite being charged with liability for repayment and the grant of security interests.

4. This adversary proceeding also challenges the secured status asserted in certain Proofs of Claim. Mulligan alleges that security interests were perfected through UCC financing statements filed shortly before the commencement of these Chapter 11 Cases, yet the Proofs of Claim do not include documentation establishing the ownership, assignment, perfection, or enforceability of any such liens. The Plaintiffs therefore seek determinations regarding the validity, extent, priority, perfection, and secured status of any alleged security interests.

5. In addition, the Plaintiffs seek to avoid and recover transfers made in connection with the Loans, including both monetary transfers made during the preference period and transfers arising from the late perfection of alleged security interests. The Plaintiffs allege that such transfers are avoidable pursuant to sections 547 and 548 of the Bankruptcy Code and recoverable pursuant to section 550, and further seek preservation of any avoided liens or interests for the benefit of their estates pursuant to section 551.

6. Accordingly, the Plaintiffs seek, among other relief, (i) declaratory relief concerning the secured status of the Claims, (ii) disallowance or reclassification of the Proofs of Claim, (iii) avoidance of the challenged transfers and liens, (iv) recovery of avoidable transfers, (v) preservation of avoided liens and interests for the benefit of the estates, and (vi) such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.) by the United States District Court for the District of New Jersey.

8. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9. This Court has personal jurisdiction over the Defendants pursuant to Rule 7004 of the Bankruptcy Rules.

10. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11. Pursuant to Rule 7008 of the Bankruptcy Rules, the SIMAD Debtors consent to the entry of final orders or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

12. The statutory predicates for the relief sought herein are sections 502, 544, 547, 548, 550, and 551 of the Bankruptcy Code.

## THE PARTIES

13. The "Plaintiffs," or the "SIMAD Debtors," are each of Achim Landco LLC,[2] Achim Operatingco LLC, BAHS Holdings LLC, BAHS Operating Inc., Banner Landco LLC, Banner Operatingco LLC, Belgrade Lakes Summer Camps LLC, Bluestar Landco, LLC,

[2] Although Achim Landco LLC and Poland Campco LLC are named as "Debtor Borrowers" in the Proofs of Claim and included as "Borrowers" on Exhibit A to the Borrower Addendum, Mulligan did not file a proof of claim against those entities. Both Achim Landco LLC and Poland Campco LLC are plaintiffs in this action because it remains unclear whether the Defendants assert claims against them pursuant to the Loan Agreements.

Bluestar Operatingco, LLC, Camp Med-O-Lark, Inc., Chateaugay Campco LLC, Chateaugay Landco LLC, Club Getaway Landco, LLC, Club Getaway Operatingco, LLC, Country Roads Landco LLC, Country Roads Operatingco LLC, Eagle's Landing Day Camp LLC, Green Lane Landco, LLC, Green Lane Operatingco, LLC, Greenvilleland LLC, IAFALANDCO, LLC, IAFAOPERATINGCO, LLC, Island Lake Campco LLC, Island Lake Landco LLC, Kiwi Operatingco LLC, Lavco LLC, Lavland LLC, MaineWekeelaco, LLC, Malka Operatingco LLC, Meadowbrook Landco LLC, Meadowbrook Operatingco LLC, Mesorahco LLC, Mesorahland LLC, Mill Road Landco LLC, Mogenavco LLC, Mogenavland LLC, Mohawkcampco LLC, Mohawk Country Day School, Inc., Mohawkland LLC, Pine Forest Campco LLC, Pine Forest Landco LLC, Poland Campco LLC,[3] Poland Landco LLC, RDM Camps, LLC, Rolling Hills Landco LLC, Rolling Hills Operatingco LLC, Shab Holdings LLC, Shab Operating Inc., SIMAD Holdings Ltd., Summit Camp, LLC, Washington Lake LLC, Waukeela Landco LLC, Waukeela Operatingco LLC, Wekeeland LLC, WM Camp, LLC, and WM Land, LLC, and are debtors and debtors in possession in these jointly administered Chapter 11 Cases.

14. Defendant FinWise Bank is a Utah state-chartered bank with its principal place of business in Murray, Utah. FinWise is the original lender under the Loan Agreements (as defined below).

15. Defendant Mulligan is a Delaware limited liability company with its principal place of business at 4715 Viewridge Ave., Suite 100, San Diego, California, 92123. Mulligan is identified as both the creditor, acting on its own behalf, and a servicer, acting as agent for FinWise.

---

[3] See footnote 2.

## FACTUAL BACKGROUND

### I. The Chapter 11 Cases.

16. On June 4 and 5, 2026 (the "Petition Date"), the SIMAD Debtors commenced their chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On June 8, 2026, this Court entered an order directing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 15].

17. The SIMAD Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Pursuant to sections 1107(a) and 323(b) of the Bankruptcy Code, the Plaintiffs have the authority and capacity to commence and prosecute this adversary proceeding.

18. On July 6, 2026, the United States Trustee for Regions 3 & 9 filed a notice appointing an official committee of unsecured creditors [Docket No. 438]. As of the date of this filing, no request for a trustee or examiner has been filed.

19. A detailed description of the Debtors and their business, including the facts and circumstances giving rise to these Chapter 11 Cases, is set forth in the *Declaration of Assaf Ravid, Chief Restructuring Officer of the SIMAD Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 62].

### II. The Loan Documents.

20. On January 20, 2026, DAMIS Holdings, LLC and SIMAD Holdings LLC,[4] as borrowers (the "Affiliate-Borrowers"), and FinWise, as lender, entered into a Business Loan and

---

4 The Affiliate-Borrowers are not SIMAD Debtors. The Affiliate-Borrowers are also debtors and debtors in possession in chapter 11 cases pending before this Court, but those cases are not jointly administered with these Chapter 11 Cases. The applicable case numbers are 26-16439 (CMG) (DAMIS Holdings, LLC) and 26-16515 (CMG) (SIMAD Holdings LLC).

Security Agreement (the "First Loan Agreement"), pursuant to which FinWise agreed to make a loan of $7,500,000 to the Affiliate-Borrowers (the "First Loan").

21. Also on January 20, 2026, the Affiliate-Borrowers and FinWise entered into another Business Loan and Security Agreement (the "Second Loan Agreement" and, together with the First Loan Agreement, the "Loan Agreements"), pursuant to which FinWise agreed to make a second loan of $7,500,000 to the Affiliate-Borrowers (the "Second Loan" and, together with the First Loan, the "Loans").

22. The Loan Agreements each required the Affiliate-Borrowers to make 50.4 biweekly payments of $211,309.50, for a total repayment to FinWise of $10,650,000 on account of each Loan. *See* Loan Agreements, Supplement. This repayment accounts for an annual percentage interest rate of approximately 40.36% over the two-year term of each Loan. The Loan Agreements further provided for a security interest in "(i) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers to Borrower via credit card or debit card transactions; and (ii) all other tangible and intangible personal property." *Id.* at § 11.

23. In addition to the Loan Agreements, Mulligan sent David and Michael Shabsels a letter on January 20, 2026 (the "Borrower Addendum"), which stated that, "[t]his letter will serve as a Borrower Addendum to the Business Loan and Security Agreement Supplement as part of and incorporated into the Business Loan Security Agreement dated January 20, 2026." The letter further stated that "[y]ou agree that 'Borrower' is defined as follows: The Borrowers Listed on the first page of the Business Loan and Security Agreement Supplement plus all entities listed on the attached Exhibit A (see Exhibit A)."

24. The Borrower Addendum purports to add over one hundred (100) entities as "Borrowers" to the Loan Agreements, including each of the fifty-six (56) Plaintiffs filing this Complaint. However, there is no express assent by the Plaintiffs to be bound by the terms of the Loan Agreements. Instead, the Borrower Addendum appears to have been electronically signed by each of David Shabsels and Michael Shabsels "for DAMIS Holdings LLC/SIMAD Holdings LLC and Exhibit A entities." The Plaintiffs are not aware of any corporate resolutions or other actions authorizing the Shabsels to unilaterally incur debt or grant security interests on behalf of each of the SIMAD Debtors, and, as explained below, Mulligan does not attach any such documentation to its proofs of claim.

25. Following execution, FinWise disbursed $14.7 million in loan proceeds on January 21, 2026 to SIMAD Debtor Washington Lake LLC ("Washington Lake"). On the same date that Washington Lake received the funds from FinWise, the full amount was wired to non-Debtor 1750 Wells Real Estate LLC ("1750 Wells"). Thus, to the extent the Loan Agreements and Borrower Addendum are enforceable against the SIMAD Debtors, they remained obligated to repay the Loans and were saddled with the potential security interests with no corresponding benefit, which renders the SIMAD Debtors' incurrence of those obligations avoidable as constructively fraudulent transfers (the "Avoidable Loan Obligations"). Additionally, between January 21, 2026 and January 22, 2026, 1750 Wells disbursed the full $14.7 million, upon information and belief, to make payments to merchant cash advance lenders.

26. Months after the execution of the Loan Agreements and the grant of any potential security interest embodied in the Loan Agreements, the Defendants caused Corporation Service Company ("CSC") to file UCC-1 financing statements (the "UCC Statements") in an attempt to perfect their purported security interests before the anticipated filing of these Chapter 11 Cases.

While the Defendants were not identified on the face of the UCC Statements, CSC confirmed, in response to a Rule 2004 subpoena, that it filed the UCC Statements on behalf of "Mulligan Funding LLC (FinWise Bank)." The UCC Statements were filed one day before (and in some cases on the same day as) the Petition Date. The Plaintiffs therefore believe that any perfection effected by the UCC Statements constitutes an avoidable transfer (the "Avoidable Perfection Transfers").

## III. The Avoidable Money Transfers.

27. Within the ninety (90) days preceding the Petition Date, Washington Lake made transfers to Mulligan totaling $2,958,333.00 (collectively, the "Avoidable 90-Day Transfers"). A schedule reflecting the date and amount of each payment is attached hereto as **Exhibit B**.[5] To the extent the Loan Agreements and Borrower Addendum are enforceable against the SIMAD Debtors, these transfers were made on account of Washington Lake's antecedent debt arising under the Loan Agreements and made for the benefit of Mulligan and/or FinWise.

28. At the time of the Avoidable 90-Day Transfers, Washington Lake was insolvent because its liabilities materially exceeded its assets. Washington Lake's assets were fully encumbered by liens senior to any liens purportedly held by the Defendants, leaving little or no value to satisfy the Defendants' claims. Upon information and belief, the aggregate amount of the Avoidable 90-Day Transfers exceeded the value that would have been available to the Defendants on account of their claims in a chapter 7 liquidation. As a result, the Defendants would have received substantially less on account of their claims in a chapter 7 liquidation had the Avoidable 90-Day Transfers not been made.

[5] The dates and amounts of the Avoidable 90-Day Transfers correspond to the payment history provided in the Proofs of Claim.

29. Within the two years preceding the Petition Date, Washington Lake made transfers to Mulligan totaling $9,476,586.60 (which includes the Avoidable 90-Day Transfers) (the "Avoidable 2-Year Transfers"). A schedule reflecting the date and amount of each payment is attached hereto as **Exhibit C**. Upon information and belief, (i) Washington Lake was insolvent at the time of these transfers because its liabilities materially exceeded its assets and (ii) the Avoidable 2-Year Transfers were used to repay indebtedness incurred for the benefit of persons or entities other than Washington Lake, while Washington Lake received no value from the underlying loans. Accordingly, Washington Lake did not receive reasonably equivalent value in exchange for the Avoidable 2-Year Transfers.

## IV. The Proofs of Claim.

30. On August 14, 2026, Mulligan filed fifty-six (56) substantially identical proofs of claim against the Plaintiffs (collectively, the "Proofs of Claim"), each asserting a claim in the amount of $17,073,810.00 arising from the Loans.[6] The Proofs of Claim are based on the same Loan Agreements, Borrower Addendum, and supporting documents.

31. The Proofs of Claim identify Mulligan as the current creditor and represent that the claims were not acquired from another entity. At the same time, the supporting documentation identifies FinWise as the lender, states that Mulligan is the "duly appointed servicer" of the Loans, and describes Mulligan as FinWise's agent authorized to enforce FinWise's rights.

32. The documents attached to the Proofs of Claim do not establish whether Mulligan owns the Loans, merely services the Loans for FinWise, or acts in some other capacity. Nor do the Proofs of Claim include any loan assignment, transfer agreement, endorsement, servicing

[6] A summary chart of the Proofs of Claim is attached hereto as **Exhibit A**.

agreement, power of attorney, or other document establishing Mulligan's authority to assert the claims ***in its own name***.

33. Rather, the Affidavit of Assignment and Right to Sue attached to the Proofs of Claim grants Mulligan authority to service the Loans and ***exercise FinWise's rights, as agent***. The affidavit does not identify any transfer of ownership of the Loans or any assignment of the underlying indebtedness from FinWise to Mulligan.

34. The Proofs of Claim similarly fail to establish the ownership or perfection of any alleged security interests. Although Mulligan asserts that financing statements were filed with respect to certain Debtors, no financing statements, assignments, amendments, or other perfection documents were attached to the Proofs of Claim. The Proofs of Claim therefore do not establish whether any security interest is held by FinWise, Mulligan, or any other entity.

35. Because the Proofs of Claim do not identify the actual holder of the indebtedness, do not establish Mulligan's capacity to assert the claims, and do not include documentation supporting the asserted secured status of certain claims, the Plaintiffs are unable to determine from the face of the Proofs of Claim the validity, ownership, enforceability, priority, extent, or secured status of the obligations asserted therein. The Plaintiffs therefore reserve all rights to object to the Proofs of Claim on any additional grounds revealed through discovery.



54112151

## CAUSES OF ACTION[7]

**COUNT ONE**
**(Avoidance of Preferential Transfers (Debits) — 11 U.S.C. § 547(b))**
**(Washington Lake LLC against Mulligan and FinWise)**

36. Plaintiff Washington Lake LLC incorporates all the preceding paragraphs by reference.

37. During the ninety (90) days prior to the filing of these Chapter 11 Cases (the "Preference Period"), Washington Lake made the Avoidable 90-Day Transfers to, or for the benefit of, Mulligan and/or FinWise, in the amounts set forth on **Exhibit B**, which is incorporated by reference herein.

38. During the Preference Period and at the time of the Avoidable 90-Day Transfers, the Defendants were creditors, or agents of creditors, of Washington Lake within the meaning of section 547(b)(1) of the Bankruptcy Code, by virtue of the Loans.

39. The Avoidable 90-Day Transfers were made for or on account of one or more antecedent debts owed by Washington Lake and made from funds in an account maintained by Washington Lake, and as such, were transfers of an interest in property of Washington Lake.

40. The Avoidable 90-Day Transfers were made while Washington Lake was insolvent. Washington Lake is entitled to the presumption that it was insolvent for the Avoidable 90-Day Transfers made during the Preference Period pursuant to section 547(f) of the

[7] The Federal Rules of Civil Procedure (the "Federal Rules") expressly permit pleading in the alternative. Federal Rule 8(d), made applicable here by Bankruptcy Rule 7008, states, in relevant part, that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones," and that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."

For the avoidance of doubt, the Plaintiffs assert that the Loan Agreements and Borrower Addendum are not enforceable, do not obligate them to repay the Loans, and cannot serve as the basis of a valid claim. However, to the extent the Court finds that such Loan Agreements and Borrower Addendum *are* enforceable against the Plaintiffs, certain causes of action are pled here based on the alternative theory that transfers made on account of the resulting antecedent debt are avoidable under the Bankruptcy Code.

Bankruptcy Code. Further, Washington Lake's liabilities exceeded the value of its assets during the Preference Period.

41. The Avoidable 90-Day Transfers enabled the Defendants to receive more than they would receive if (i) Washington Lake's case were a case under chapter 7 of the Bankruptcy Code, (ii) the Avoidable 90-Day Transfers had not been made, and (iii) Defendants received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

42. Defendants were either the initial transferee of the Avoidable 90-Day Transfers, the immediate or mediate transferees of the initial transferee of the Avoidable 90-Day Transfers, or the entities for whose benefit the Avoidable 90-Day Transfers were made.

43. Washington Lake, with its professional advisors, reviewed its books and records to determine whether the Avoidable 90-Day Transfers qualified as preferential transfers and to evaluate reasonably known affirmative defenses available to the Defendants. Based upon such reasonable review, Washington Lake has determined that the Avoidable 90-Day Transfers are subject to avoidance and recovery.

44. By reason of the foregoing, the Avoidable 90-Day Transfers should be avoided and set aside as preferential transfers pursuant to section 547(b) of the Bankruptcy Code.

**COUNT TWO**
**(Avoidance of Preferential Transfers (Perfection) — 11 U.S.C. § 547(b))**

45. The Plaintiffs incorporate all the preceding paragraphs by reference.

46. Pursuant to 11 U.S.C. § 547(e), where perfection occurs more than thirty (30) days after attachment, the transfer is deemed made at the time of perfection. As such, to the extent that the Loan Agreements are enforceable against the Plaintiffs at all, any security interest granted to FinWise and/or Mulligan in the Plaintiffs' property would have attached upon the Shabsels' execution of the January 20, 2026 Borrower Addendum.

47. However, based upon the Plaintiffs' investigation and records, as well as CSC's response to the Rule 2004 subpoena, the Defendants did not file the UCC Statements seeking to perfect such security interests until June 3, 2026 or June 4, 2026, as applicable, meaning perfection occurred more than thirty (30) days after attachment (as described above, the "Avoidable Perfection Transfers").

48. For purposes of section 547 of the Bankruptcy Code, the creation and perfection of a lien constitutes a transfer of an interest in the Plaintiffs' property. During the Preference Period and at the time of filing of the UCC Statements, Defendants were each a creditor, or the agent of a creditor, of the Plaintiffs within the meaning of section 547(b)(1) of the Bankruptcy Code by virtue of the Loans.

49. The Avoidable Perfection Transfers were made for or on account of one or more antecedent debts owed by one or more of the Plaintiffs, on account of the Loans.

50. The Avoidable Perfection Transfers were made while the Plaintiffs were insolvent. The Plaintiffs are entitled to the presumption that they were insolvent during the Preference Period pursuant to section 547(f) of the Bankruptcy Code. Further, each Plaintiff's liabilities exceeded the value of its assets during the Preference Period.

51. The Avoidable Perfection Transfers were made during the Preference Period.

52. The Avoidable Perfection Transfers enabled the Defendants to receive more than they would receive if (i) the SIMAD Debtors' cases were cases under chapter 7 of the Bankruptcy Code, (ii) the Avoidable Perfection Transfers had not been made, and (iii) Defendants received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

53. Defendants were either the initial transferees of the Avoidable Perfection Transfers, the immediate or mediate transferees of the initial transferee of the Avoidable Perfection Transfers, or the entities for whose benefit the Avoidable Perfection Transfers were made.

54. The Plaintiffs, with their professional advisors, reviewed their books and records to determine whether the Avoidable Perfection Transfers qualified as preferential transfers and to evaluate reasonably known affirmative defenses available to the Defendants. Based upon such reasonable review, the Plaintiffs have determined that the Avoidable Perfection Transfers are subject to avoidance and recovery.

55. By reason of the foregoing, the Avoidable Perfection Transfers should be avoided and set aside as preferential transfer(s) pursuant to section 547(b) of the Bankruptcy Code.

**COUNT THREE**
**(Declaratory Judgment Regarding the Secured Status of the Claims—28 U.S.C. § 2201 and 11 U.S.C. § 506)**

56. The Plaintiffs incorporate all the preceding paragraphs by reference.

57. Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Bankruptcy courts, as units of the district court, have the authority to issue declaratory judgments.

58. Courts have jurisdiction to issue declaratory relief where "[t]he facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations and citation omitted).

59. Here, there is an actual, justiciable controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, which is both necessary and appropriate.

60. Section 506(a) of the Bankruptcy Code provides that a creditor holds a secured claim only to the extent of the value of such creditor's interest in property of the estate and holds an unsecured claim to the extent that such value is insufficient to support the asserted claim.

61. The Defendants contend that certain of the Proofs of Claim are secured by liens arising from the Loan Agreements and UCC Statements. Plaintiffs dispute the validity, ownership, attachment, perfection, priority, extent, enforceability, and continued existence of any such liens.

62. An actual and justiciable controversy therefore exists regarding whether the Defendants hold any secured claim against the Plaintiffs, the extent to which any claim is secured, and the value and nature of any property allegedly securing such claims.

63. Resolution of the foregoing issues is necessary to determine the proper classification, treatment, and allowance of the Proofs of Claim and the parties' respective rights in these Chapter 11 Cases.

64. Accordingly, the Plaintiffs seek entry of a judgment declaring, among other things:

(a) That, following avoidance of the Avoidable Perfection Transfers, the Defendants' claims, if any, are unsecured;

(b) That, pursuant to section 506(a) of the Bankruptcy Code, the Defendants do not hold secured claims against the Plaintiffs or, alternatively, a determination of the extent, if any, to which the Defendants hold secured claims;

(c) That the Defendants' respective rights, if any, against the Plaintiffs' property are limited accordingly; and

(d) Such other declarations regarding the ownership, validity, extent, priority, enforceability, and secured status of the Defendants' claims as the Court deems just and proper.

**COUNT FOUR**
**(Disallowance of Claims – § 502(b) of the Bankruptcy Code and Bankruptcy Rule 3001)**

65. The Plaintiffs incorporate all the preceding paragraphs by reference.

66. On August 14, 2026, Mulligan filed the Proofs of Claim identified on **Exhibit A**, asserting claims in the amount of $17,073,810.00 against each of the Plaintiffs arising from the Loans.

67. The Plaintiffs object to the Proofs of Claim in their entirety and dispute, among other things, the validity, ownership, enforceability, priority, extent, and secured status of the obligations asserted therein.

68. Bankruptcy Rule 3001(c)(1) requires a claimant asserting a claim based on a writing to file the writing upon which the claim is based. Bankruptcy Rule 3001(d) further requires a claimant asserting a security interest in property of the debtor to accompany the proof of claim with evidence that the security interest has been perfected. The Proofs of Claim fail to satisfy these requirements. As a result, the Proofs of Claim are not entitled to prima facie validity under Bankruptcy Rule 3001(f).

69. The Proofs of Claim identify Mulligan as the current creditor and represent that the claims were not acquired from another entity. At the same time, the supporting documentation identifies FinWise as the lender under the Loans and describes Mulligan as FinWise's servicer and agent authorized to exercise FinWise's rights. The Proofs of Claim therefore fail to establish whether Mulligan owns the claims, merely services the claims, or otherwise possesses authority to assert the claims in its own name.

70. To the extent Mulligan contends that it owns the Loans or the corresponding claims, the Proofs of Claim do not include any assignment, transfer agreement, endorsement, or other documentation evidencing a transfer of the indebtedness from FinWise to Mulligan.

71. To the extent Mulligan contends that it acts solely as servicer, agent, or representative of FinWise, the Proofs of Claim do not include sufficient documentation establishing its authority to file and prosecute claims in its own name against the Plaintiffs' estates.

72. The Proofs of Claim further fail to establish that the Plaintiffs became obligated under the Loan Agreements. The underlying Loan Agreements identify DAMIS Holdings, LLC and SIMAD Holdings LLC as borrowers. The purported liability of the Plaintiffs arises, if at all, from the Borrower Addendum. However, the Proofs of Claim do not include resolutions, authorizations, consents, or other corporate records establishing that David Shabsels and Michael Shabsels possessed authority to bind each Plaintiff to approximately $17 million of indebtedness and the grant of related security interests. Moreover, neither the Loan Agreements nor the Borrower Addendum even purport to obligate SIMAD Holdings Ltd., so the Proof of Claim filed in Case No. 26-16388 (CMG) is invalid on its face.

73. In addition, the Plaintiffs are informed and believe that they did not receive any of the proceeds of the Loans. The Proofs of Claim do not establish that the Plaintiffs received consideration sufficient to support the obligations asserted against them.

74. As to the claims asserted as secured claims, the Proofs of Claim do not include financing statements, assignments, amendments, continuation statements, or other documents establishing the existence, validity, ownership, perfection, priority, or extent of any alleged security interest.

75. The Proofs of Claim therefore fail to provide sufficient documentation to establish the validity and enforceability of the claims asserted against the Plaintiffs or the secured status of any portion thereof.

76. Further, the Proofs of Claim reflect Loans with an estimated annual percentage rate of 40.36%. The SIMAD Debtors are entities formed under the laws of Connecticut, Illinois, Pennsylvania, New York, North Carolina, New Jersey, Maine, New Hampshire, and the British Virgin Islands. Upon information and belief, the 40.36% annual percentage rate exceeds the maximum rate permitted under one or more applicable state usury laws. Accordingly, the Proofs of Claim should be disallowed to the extent they seek to recover interest in excess of that permitted by applicable law.

77. Lastly, the Proofs of Claim assert that the SIMAD Debtors owe approximately $17,073,810 despite the fact that the original combined principal of the Loans was only $15,000,000. The Proofs of Claim and exhibits do not adequately identify outstanding principal, accrued prepetition interest, default interest, fees, charges, or other amounts comprising the total. As such, the Plaintiffs are unable to determine whether the asserted claims include interest that had not accrued as of the Petition Date, which is expressly not permitted under section 502(b)(2)

of the Bankruptcy Code. To the extent the Proofs of Claim include such unmatured interest, those amounts must be disallowed.

78. Pursuant to 11 U.S.C. § 502(b) and Bankruptcy Rule 3001, the Proofs of Claim should be disallowed, reclassified, reduced, or otherwise modified to the extent determined by the Court after adjudication of the issues raised herein.

79. Accordingly, the Plaintiffs seek entry of an order (a) sustaining this objection to the Proofs of Claim, (b) disallowing the Proofs of Claim to the extent asserted by a party lacking authority or standing to assert them, (c) disallowing the Proofs of Claim to the extent they are unsupported or unenforceable against the Plaintiffs, or constitute unmatured interest, (d) reclassifying any claims not supported by valid and perfected liens as unsecured claims, and (e) granting such other relief as the Court deems just and proper.

**COUNT FIVE**
**(Avoidance of Fraudulent Transfers (Debits) – § 548 of the Bankruptcy Code)**
**(Washington Lake LLC against Mulligan and FinWise)**

80. Washington Lake incorporates all the preceding paragraphs by reference.

81. The Avoidable 2-Year Transfers were made from funds in an account maintained by Washington Lake, and as such, were transfers of an interest in property of Washington Lake.

82. The Avoidable 2-Year Transfers were made within two (2) years prior to the Petition Date.

83. Washington Lake did not receive reasonably equivalent value in exchange for the Avoidable 2-Year Transfers because (i) Washington Lake received no consideration, much less reasonably equivalent value, in exchange for the Avoidable 2-Year Transfers, and (ii) Washington Lake: (a) was insolvent at the time of the Avoidable 2-Year Transfers or became insolvent as a result of the Avoidable 2-Year Transfers; (b) was engaged in business or a

transaction for which any property remaining with Washington Lake was unreasonably small capital at the time of, or as a result of, the Avoidable 2-Year Transfers; or (c) intended to incur, or believed that it would incur, debts that would be beyond Washington Lake's ability to pay as such debts matured.

84. Defendants were either the initial transferee of the Avoidable 2-Year Transfers, the immediate or mediate transferee of the initial transferee of the Avoidable 2-Year Transfers, or the entity for whose benefit the Avoidable 2-Year Transfers were made.

85. By reason of the foregoing, the Avoidable 2-Year Transfers should be avoided and set aside as a fraudulent transfer pursuant to section 548 of the Bankruptcy Code.

**COUNT SIX**
**(Avoidance of Fraudulent Transfers (Perfection) – § 548 of the Bankruptcy Code)**

86. The Plaintiffs incorporate all the preceding paragraphs by reference.

87. The Avoidable Perfection Transfers were made within two (2) years prior to the Petition Date.

88. The Plaintiffs did not receive reasonably equivalent value in exchange for the Avoidable Perfection Transfers because (i) the Plaintiffs received no consideration, much less reasonably equivalent value, in exchange for the Avoidable Perfection Transfers, and (ii) the SIMAD Debtors: (a) were insolvent at the time of the Avoidable Perfection Transfers or became insolvent as a result of the Avoidable Perfection Transfers; (b) were engaged in business or a transaction for which any property remaining with the SIMAD Debtors was unreasonably small capital at the time of, or as a result of, the Avoidable Perfection Transfers; or (c) intended to incur, or believed that they would incur, debts that would be beyond the SIMAD Debtors' ability to pay as such debts matured.

89. Defendants were either the initial transferee of the Avoidable Perfection Transfers, the immediate or mediate transferee of the initial transferee of the Avoidable Perfection Transfers, or the entity for whose benefit the Avoidable Perfection Transfers were made.

90. By reason of the foregoing, the Avoidable Perfection Transfers should be avoided and set aside as a fraudulent transfer pursuant to section 548 of the Bankruptcy Code.

**COUNT SEVEN**
**(Avoidance of Fraudulent Incurrence of Obligations – § 548 of the Bankruptcy Code)**

91. The Plaintiffs incorporate all the preceding paragraphs by reference.

92. As set forth above, to the extent the Loan Agreements and Borrower Addendum are enforceable against the Plaintiffs, they give rise to Avoidable Loan Obligations.

93. The Avoidable Loan Obligations were made within two (2) years prior to the Petition Date.

94. The Plaintiffs did not receive reasonably equivalent value in exchange for the Avoidable Loan Obligations because (i) the Plaintiffs received no consideration, much less reasonably equivalent value, in exchange for the Avoidable Loan Obligations, and (ii) the SIMAD Debtors: (a) were insolvent at the time of the Avoidable Loan Obligations or became insolvent as a result of the Avoidable Loan Obligations; (b) were engaged in business or a transaction for which any property remaining with the SIMAD Debtors was unreasonably small capital at the time of, or as a result of, the Avoidable Loan Obligations; or (c) intended to incur, or believed that they would incur, debts that would be beyond the SIMAD Debtors' ability to pay as such debts matured.

95. Defendants were either the initial transferee of the Avoidable Loan Obligations, the immediate or mediate transferee of the initial transferee of the Avoidable Loan Obligations, or the entity for whose benefit the Avoidable Loan Obligations were made.

96. By reason of the foregoing, the Avoidable Loan Obligations should be avoided and set aside as a fraudulent transfer pursuant to section 548 of the Bankruptcy Code.

**COUNT EIGHT**
**(Recovery of Avoided Transfers — 11 U.S.C. § 550)**

97. The Plaintiffs incorporate all the preceding paragraphs by reference.

98. As set forth in Counts One, Two, Five, and Six, the Plaintiffs are entitled to avoid the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and the Avoidable Perfection Transfers pursuant to sections 547 and/or 548 of the Bankruptcy Code.

99. Defendants were either the initial transferees of the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and Avoidable Perfection Transfers, the immediate or mediate transferees thereof, or the entities for whose benefit such transfers were made.

100. Pursuant to section 550(a) of the Bankruptcy Code, to the extent the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and/or Avoidable Perfection Transfers are avoided, the Plaintiffs are entitled to recover from Defendants the property transferred, or, if appropriate, the value of such property, for the benefit of the Plaintiffs' estates.

101. By reason of the foregoing, Plaintiffs are entitled to judgment against Defendants for recovery of the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and Avoidable Perfection Transfers, or the value thereof, together with pre-judgment interest, post-judgment interest, costs, and such other relief as the Court deems just and proper.

**COUNT NINE**
**(Preservation of Avoided Transfers and Liens — 11 U.S.C. § 551)**

102. The Plaintiffs incorporate all the preceding paragraphs by reference.

103. As set forth in Counts One, Two, Five, and Six, the Plaintiffs seek avoidance of the Avoidable 90-Day Transfers, Avoidable 2-Year Transfers, and the Avoidable Perfection Transfers pursuant to sections 547 and/or 548 of the Bankruptcy Code.

104. Pursuant to section 551 of the Bankruptcy Code, any transfer avoided under sections 547 or 548, including any lien or security interest avoided as a result of the Avoidable Perfection Transfers, is automatically preserved for the benefit of the Plaintiffs' estates.

105. By reason of the foregoing, Plaintiffs are entitled to an order preserving for the benefit of their estates any transfer, lien, security interest, or other property interest avoided pursuant to sections 547 and/or 548 of the Bankruptcy Code, including any liens arising from the Avoidable Perfection Transfers.

**COUNT TEN**
**(Disallowance of Claims – § 502(d) of the Bankruptcy Code)**

106. The Plaintiffs incorporate all the preceding paragraphs by reference.

107. Defendants have filed the Proofs of Claim against the Plaintiffs' estates, asserting claims arising from the Loans.

108. As set forth more fully herein, Plaintiffs seek avoidance of the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and the Avoidable Perfection Transfers pursuant to sections 547 and 548 of the Bankruptcy Code and recovery thereof pursuant to section 550 of the Bankruptcy Code.



54112151

109. Defendants were either the initial transferees of the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and Avoidable Perfection Transfers, the immediate or mediate transferees thereof, or the entities for whose benefit such transfers were made.

110. To the extent the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and/or the Avoidable Perfection Transfers are avoided pursuant to sections 547 and/or 548 of the Bankruptcy Code, Defendants are entities from whom recovery may be sought under section 550 of the Bankruptcy Code.

111. Upon information and belief, Defendants have not returned to the Plaintiffs the Avoidable 90-Day Transfers or the Avoidable 2-Year Transfers, have not relinquished any liens arising from the Avoidable Perfection Transfers, and have not otherwise paid the value of such transfers to the Plaintiffs.

112. Pursuant to section 502(d) of the Bankruptcy Code, any claim of an entity that is a transferee of an avoidable transfer, or from whom property is recoverable under section 550, shall be disallowed unless and until such entity has paid the amount, or turned over the property, for which such entity is liable.

113. Accordingly, unless and until Defendants satisfy any liability arising from the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and/or the Avoidable Perfection Transfers, the Proofs of Claim must be disallowed pursuant to section 502(d) of the Bankruptcy Code.

114. Plaintiffs therefore request entry of an order disallowing the Proofs of Claim unless and until Defendants have complied with any judgment entered under sections 550 and 551 of the Bankruptcy Code.

## RESERVATION OF RIGHTS

115. As it relates to Plaintiffs' claim objection, this Complaint is without prejudice to the rights of the Plaintiffs or any other party in interest to object to any claim(s), including any of Defendants' claims, on any additional grounds as facts are further developed during discovery, and the Plaintiffs expressly reserve all other substantive or procedural objections that they may have. Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Plaintiffs, (ii) a waiver of the Plaintiffs' or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Plaintiffs' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law, or (iv) an approval, adoption, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that the Court enter judgment against the Defendants:

(a) avoiding and setting aside the Avoidable 90-Day Transfers and the Avoidable Perfection Transfers as preferential pursuant to section 547(b) of the Bankruptcy Code or, in the alternative, avoiding and setting aside such transfers, as well as the Avoidable 2-Year Transfers and the Avoidable Loan Obligations as fraudulent transfers pursuant to section 548 of the Bankruptcy Code;

(b) pursuant to section 550 of the Bankruptcy Code, directing the Defendants to return to Washington Lake LLC the property transferred pursuant to the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and the Avoidable Perfection Transfers or the value thereof, as applicable, together with interest and costs;

(c) preserving for the benefit of the Plaintiffs' estates, pursuant to section 551 of the Bankruptcy Code, any avoided transfer, lien, or other interest;

(d) declaring: (i) that, following avoidance of the Avoidable Perfection Transfers, the Defendants' claims, if any, are unsecured; (ii) that, pursuant to section 506(a) of the Bankruptcy Code, the Defendants do not hold allowed secured claims against



54112151

the Plaintiffs or, alternatively, a determination of the extent, if any, to which the Defendants hold allowed secured claims; (iii) that the Defendants' respective rights, if any, against the Plaintiffs' property are limited accordingly; and (iv) such other declarations regarding the ownership, validity, extent, priority, enforceability, and secured status of the Defendants' claims as the Court deems just and proper;

(e) disallowing all claims of the Defendants pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3001 and directing that the Claims Register be amended accordingly;

(f) disallowing any claims of the Defendants against the Plaintiffs' estates pursuant to section 502(d) of the Bankruptcy Code unless and until the Defendants return to the Plaintiffs the property transferred pursuant to the Avoidable 90-Day Transfers, the Avoidable 2-Year Transfers, and the Avoidable Perfection Transfers, or pay the value thereof;

(g) awarding post-judgment interest on all amounts awarded by the Court, at the maximum rate permitted by law, from the date of entry of judgment until paid in full;

(h) directing the Defendants to pay all amounts awarded by the Court, together with applicable interest and costs; and

(i) granting the Plaintiffs such other and further relief as the Court deems just and proper.

Dated: November 13, 2026

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Plaintiffs*

# EXHIBIT A

## Schedule of Proofs of Claim

| Claim No. | Date Filed | Creditor Name | Debtor Name | Amount of Claim |
|---|---|---|---|---|
| **Indicated as Unsecured** | | | | |
| 1338 | 8/14/2026 | Mulligan Funding, LLC | WM Camp, LLC | $17,073,810.00 |
| 1339 | 8/14/2026 | Mulligan Funding, LLC | WM Land, LLC | $17,073,810.00 |
| 1340 | 8/14/2026 | Mulligan Funding, LLC | Wekeeland LLC | $17,073,810.00 |
| 1452 | 8/14/2026 | Mulligan Funding, LLC | Mill Road Landco LLC | $17,073,810.00 |
| 1454 | 8/14/2026 | Mulligan Funding, LLC | Washington Lake LLC | $17,073,810.00 |
| 1462 | 8/14/2026 | Mulligan Funding, LLC | Poland Landco LLC[1] | $17,073,810.00 |
| 1465 | 8/14/2026 | Mulligan Funding, LLC | IAFAOPERATINGCO, LLC | $17,073,810.00 |
| 1467 | 8/14/2026 | Mulligan Funding, LLC | IAFALANDCO, LLC | $17,073,810.00 |
| 1518 | 8/14/2026 | Mulligan Funding, LLC | MaineWekeelaco, LLC | $17,073,810.00 |
| 1522 | 8/14/2026 | Mulligan Funding, LLC | Waukeela Operatingco LLC | $17,073,810.00 |
| 1525 | 8/14/2026 | Mulligan Funding, LLC | Camp Med-O-Lark, Inc. | $17,073,810.00 |
| 1527 | 8/14/2026 | Mulligan Funding, LLC | Belgrade Lakes Summer Camps LLC | $17,073,810.00 |
| 1530 | 8/14/2026 | Mulligan Funding, LLC | Eagle's Landing Day Camp LLC | $17,073,810.00 |
| 1533 | 8/14/2026 | Mulligan Funding, LLC | Country Roads Landco LLC | $17,073,810.00 |
| 1538 | 8/14/2026 | Mulligan Funding, LLC | Meadowbrook Landco LLC | $17,073,810.00 |
| 1547 | 8/14/2026 | Mulligan Funding, LLC | Rolling Hills Landco LLC | $17,073,810.00 |
| 1608 | 8/14/2026 | Mulligan Funding, LLC | Meadowbrook Operatingco LLC | $17,073,810.00 |
| 1615 | 8/14/2026 | Mulligan Funding, LLC | Country Roads Operatingco LLC | $17,073,810.00 |
| 1635 | 8/14/2026 | Mulligan Funding, LLC | Rolling Hills Operatingco LLC | $17,073,810.00 |

[1] This schedule excludes the duplicate proof of claim filed against Poland Landco LLC at Claim No. 1463.

| Claim No. | Date Filed | Creditor Name | Debtor Name | Amount of Claim |
|---|---|---|---|---|
| **Indicated as Secured**[2] | | | | |
| 1450 | 8/14/2026 | Mulligan Funding, LLC | Shab Holdings LLC | $17,073,810.00 |
| 1458 | 8/14/2026 | Mulligan Funding, LLC | Mohawk Country Day School, Inc. | $17,073,810.00 |
| 1459 | 8/14/2026 | Mulligan Funding, LLC | Malka Operatingco LLC | $17,073,810.00 |
| 1613 | 8/14/2026 | Mulligan Funding, LLC | SIMAD Holdings Ltd. | $17,073,810.00 |
| 1616 | 8/14/2026 | Mulligan Funding, LLC | Pine Forest Landco LLC | $17,073,810.00 |
| 1637 | 8/14/2026 | Mulligan Funding, LLC | Club Getaway Landco, LLC | $17,073,810.00 |
| 1639 | 8/14/2026 | Mulligan Funding, LLC | Lavco LLC | $17,073,810.00 |
| 1640 | 8/14/2026 | Mulligan Funding, LLC | Kiwi Operatingco LLC | $17,073,810.00 |
| 1641 | 8/14/2026 | Mulligan Funding, LLC | Banner Landco LLC | $17,073,810.00 |
| 1643 | 8/14/2026 | Mulligan Funding, LLC | Waukeela Landco LLC | $17,073,810.00 |
| 1646 | 8/14/2026 | Mulligan Funding, LLC | Summit Camp, LLC | $17,073,810.00 |
| 1647 | 8/14/2026 | Mulligan Funding, LLC | Island Lake Campco LLC | $17,073,810.00 |
| 1648 | 8/14/2026 | Mulligan Funding, LLC | Green Lane Landco, LLC | $17,073,810.00 |
| 1649 | 8/14/2026 | Mulligan Funding, LLC | Banner Operatingco LLC | $17,073,810.00 |
| 1650 | 8/14/2026 | Mulligan Funding, LLC | BAHS Holdings LLC | $17,073,810.00 |
| 1651 | 8/14/2026 | Mulligan Funding, LLC | Club Getaway Operatingco, LLC | $17,073,810.00 |
| 1652 | 8/14/2026 | Mulligan Funding, LLC | Chateaugay Campco LLC | $17,073,810.00 |
| 1653 | 8/14/2026 | Mulligan Funding, LLC | Achim Operatingco LLC[3] | $17,073,810.00 |
| 1655 | 8/14/2026 | Mulligan Funding, LLC | Mesorahland LLC | $17,073,810.00 |
| 1656 | 8/14/2026 | Mulligan Funding, LLC | Lavland LLC | $17,073,810.00 |
| 1657 | 8/14/2026 | Mulligan Funding, LLC | RDM Camps, LLC | $17,073,810.00 |
| 1658 | 8/14/2026 | Mulligan Funding, LLC | Shab Operating Inc. | $17,073,810.00 |
| 1659 | 8/14/2026 | Mulligan Funding, LLC | Bluestar Landco, LLC | $17,073,810.00 |

---

[2] The foregoing schedule reflects a summary of information contained in the Proofs of Claim. It is provided solely for convenience and shall not be construed as an admission or acknowledgment regarding the validity, amount, extent, priority, perfection, or secured status of any claim, all of which rights are expressly reserved by the SIMAD Debtors.

[3] This schedule excludes the duplicate proof of claim filed against Achim Operatingco LLC at Claim No. 1654.

| Claim No. | Date Filed | Creditor Name | Debtor Name | Amount of Claim |
|---|---|---|---|---|
| 1660 | 8/14/2026 | Mulligan Funding, LLC | BAHS Operating Inc. | $17,073,810.00 |
| 1661 | 8/14/2026 | Mulligan Funding, LLC | Bluestar Operatingco, LLC | $17,073,810.00 |
| 1662 | 8/14/2026 | Mulligan Funding, LLC | Green Lane Operatingco, LLC | $17,073,810.00 |
| 1663 | 8/14/2026 | Mulligan Funding, LLC | Chateaugay Landco LLC | $17,073,810.00 |
| 1671 | 8/14/2026 | Mulligan Funding, LLC | Mesorahco LLC | $17,073,810.00 |
| 1673 | 8/14/2026 | Mulligan Funding, LLC | Greenvilleland LLC | $17,073,810.00 |
| 1674 | 8/14/2026 | Mulligan Funding, LLC | Island Lake Landco LLC | $17,073,810.00 |
| 1677 | 8/14/2026 | Mulligan Funding, LLC | Mohawkland LLC | $17,073,810.00 |
| 1685 | 8/14/2026 | Mulligan Funding, LLC | Mogenavland LLC | $17,073,810.00 |
| 1687 | 8/14/2026 | Mulligan Funding, LLC | Mohawkcampco LLC | $17,073,810.00 |
| 1691 | 8/14/2026 | Mulligan Funding, LLC | Pine Forest Campco LLC | $17,073,810.00 |
| 1693 | 8/14/2026 | Mulligan Funding, LLC | Mogenavco LLC | $17,073,810.00 |

# EXHIBIT B

## Schedule of Avoidable 90-Day Transfers

| Date | Amount | Transferor | Transferee |
|---|---|---|---|
| 3/11/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 3/11/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 3/25/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 3/25/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 4/8/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 4/8/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 4/22/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 4/22/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 5/6/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 5/6/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 5/22/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 5/22/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 6/3/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 6/3/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| **Total** | **$2,958,333.00** | | |

# EXHIBIT C

## Schedule of Avoidable 2-Year Transfers

| Date | Amount | Transferor | Transferee |
|---|---|---|---|
| 07/08/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 07/15/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 07/22/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 07/29/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 08/05/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 08/12/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 08/19/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 08/26/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 09/02/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 09/09/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 09/15/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 09/16/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 09/22/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 09/23/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 09/29/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 09/30/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 10/06/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 10/07/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 10/14/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 10/14/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 10/20/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 10/21/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 10/27/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 10/28/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 11/03/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 11/04/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 11/10/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 11/12/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 11/17/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 11/18/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 11/24/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 11/24/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 11/25/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 12/01/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 12/01/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 12/02/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 12/08/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 12/08/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |

| | | | |
|---|---|---|---|
| 12/09/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 12/15/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 12/15/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 12/16/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 12/22/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 12/22/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 12/23/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 12/29/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 12/29/2025 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 12/30/2025 | $129,960.30 | Washington Lake LLC | Mulligan Funding |
| 01/05/2026 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 01/05/2026 | $77,976.20 | Washington Lake LLC | Mulligan Funding |
| 01/28/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 01/28/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 02/11/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 02/11/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 02/25/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 02/25/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 3/11/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 3/11/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 3/25/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 3/25/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 4/8/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 4/8/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 4/22/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 4/22/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 5/6/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 5/6/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 5/22/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 5/22/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 6/3/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| 6/3/2026 | $211,309.50 | Washington Lake LLC | Mulligan Funding |
| **Total** | **$9,476,586.60** | | |