**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**FEE APPLICATION COVER SHEET**

| | | | |
|---|---|---|---|
| IN RE: | SIMAD HOLDINGS LTD., et al.[1] | APPLICANT: | FTI Consulting, Inc. |
| CASE NO.: | 26-16388 (CMG) | CLIENT: | Debtors |
| CHAPTER: | 11 | CASE FILED: | June 4 and 5, 2026 |

---

**INTERIM APPLICATION OF FTI CONSULTING, INC.**
**FINANCIAL ADVISOR TO THE SIMAD DEBTORS, FOR**
**ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES**
**RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED**
**FOR THE PERIOD FROM JUNE 8, 2026 THROUGH OCTOBER 31, 2026**

**SECTION I**
**FEE SUMMARY**

☐ Monthly Fee Statement or ☑ 1st Interim ☐ Final Fee Application

| | Fees | Expenses |
|---|---|---|
| Total Previous Fee/Expenses Requested: | $11,042,145.50 | $85,782.08 |
| Total Fees/Expenses Allowed to Date: | $0.00 | $0.00 |
| Total Retainer (If Applicable): | $0.00 | $0.00 |
| Total Holdback (If Applicable): | $2,208,429.00 | $0.00 |
| Total Received by FTI Consulting, Inc.: | $5,792,016.80 | $76,039.06 |
| Total Fees/Expenses Outstanding | $5,250,128.70 | $9,743.02 |

---

1 A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings, Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

# SUMMARY OF PROFESSIONALS CHART

| Professional[2] | Position | Team | Billing Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| Chad Shandler | Senior Managing Director | Corporate Finance / Bankruptcy | 1,545 | 2.7 | $4,171.50 |
| Christopher Creger | Senior Managing Director | Corporate Finance / Bankruptcy | 1,495 | 898.0 | $1,342,510.00 |
| Christopher Pizzo | Senior Managing Director | Corporate Finance / Bankruptcy | 1,495 | 602.3 | $900,438.50 |
| Corey Gildart | Senior Managing Director | Technology | 995 | 1.5 | $1,492.50 |
| Cynthia Romano | Senior Managing Director | Corporate Finance / Bankruptcy | 1,495 | 37.9 | $56,660.50 |
| Edith Wong | Senior Managing Director | Forensic Accounting / Non-Bankruptcy | 1,460 | 92.4 | $134,904.00 |
| Joseph Spinella | Senior Managing Director | Forensic Accounting / Non-Bankruptcy | 1,580 | 16.5 | $26,070.00 |
| Peyman Yousefy | Senior Managing Director | Tax | 1,350 | 2.0 | $2,700.00 |
| Claudia Jocelyn | Managing Director | Tax | 1,195 | 2.6 | $3,107.00 |
| Joshua Beets | Managing Director | Corporate Finance / Bankruptcy | 1,195 | 970.0 | $1,159,150.00 |
| Philip Nathan | Managing Director | Forensic Accounting / Non-Bankruptcy | 1,270 | 71.2 | $90,424.00 |
| Julianna Fiorillo | Senior Director | Forensic Accounting / Non-Bankruptcy | 1,140 | 55.8 | $63,612.00 |
| Michelle Tager | Senior Director | Tax | 1,055 | 1.5 | $1,582.50 |
| Russell Laughlin | Senior Director | Corporate Finance / Bankruptcy | 1,100 | 917.5 | $1,009,250.00 |
| Vivek Ram | Senior Director | Corporate Finance / Bankruptcy | 1,055 | 1080.6 | $1,140,033.00 |
| Ashley Bayless | Director | Corporate Finance / Bankruptcy | 940 | 242.5 | $227,950.00 |
| Constantino Kyprianou | Director | Technology | 350 | 12.2 | $4,270.00 |
| Jade Damas Calixto | Director | Forensic Accounting / Non-Bankruptcy | 985 | 58.7 | $57,819.50 |
| Katherine Cardinal | Director | Tax | 1,045 | 3.3 | $3,448.50 |
| Mihai Cirstea | Director | Corporate Finance / Bankruptcy | 1,000 | 1039.2 | $1,039,200.00 |
| Nicholas Cianciolo | Director | Forensic Accounting / Non-Bankruptcy | 1,040 | 30.3 | $31,512.00 |
| Beulah Stillman | Senior Consultant | Forensic Accounting / Non-Bankruptcy | 815 | 23.5 | $19,152.50 |
| David Lee | Senior Consultant | Corporate Finance / Bankruptcy | 715 | 803.2 | $574,288.00 |
| Evan Hudgins | Senior Consultant | Corporate Finance / Bankruptcy | 850 | 690.3 | $586,755.00 |
| Joshua Hughes | Senior Consultant | Corporate Finance / Bankruptcy | 850 | 135.0 | $114,750.00 |
| Joshua Llamas | Senior Consultant | Corporate Finance / Bankruptcy | 785 | 5.2 | $4,082.00 |
| Max Pidgeon | Senior Consultant | Corporate Finance / Bankruptcy | 850 | 1076.1 | $914,685.00 |
| Melissa Cundiff | Senior Consultant | Forensic Accounting / Non-Bankruptcy | 740 | 84.9 | $62,826.00 |
| Reagan Jones | Senior Consultant | Corporate Finance / Bankruptcy | 785 | 1087.0 | $853,295.00 |
| Tammy Horio | Senior Consultant | Forensic Accounting / Non-Bankruptcy | 875 | 30.6 | $26,775.00 |
| Tyler Colman | Senior Consultant | Tax | 715 | 0.6 | $429.00 |
| Ethan Xie | Consultant | Corporate Finance / Bankruptcy | 535 | 12.5 | $6,687.50 |
| Finnley Collins | Consultant | Corporate Finance / Bankruptcy | 535 | 28.0 | $14,980.00 |
| Jaylin Menefee | Consultant | Technology | 350 | 2.1 | $735.00 |
| John Flittner | Consultant | Corporate Finance / Bankruptcy | 535 | 36.4 | $19,474.00 |
| Kavi Bommakanti | Consultant | Corporate Finance / Bankruptcy | 595 | 1010.5 | $601,247.50 |
| **SUBTOTAL** | | | | **11,164.6** | **$11,100,467.00** |

| | | | |
|---|---|---|---|
| | *Less: Professionals with Less than Five Billable Hours*[3] | *35.5* | *$36,593.00* |
| | *Less: 50% Discount for Non-Working Travel Time* | *18.7* | *$21,728.50* |
| **GRAND TOTAL** | | **11,110.4** | **$11,042,145.50** |

*[Remainder of page intentionally left blank.]*

[2] The Summary of Professionals Chart is sorted by FTI position and then alphabetically by professional name.

[3] Professionals who billed fewer than five hours during each month from the June to October period have been written off in their entirety in that month. Accordingly, 17 professionals' time, representing 35.5 hours and $36,593.00 in fees, have been excluded from the amounts reflected herein.

## SECTION II
## SUMMARY OF SERVICES

| Task Category | Task Description | Total Hours | Total Fees |
|---|---|---|---|
| 1 | Project Monitoring & Supervision | 104.2 | $138,413.00 |
| 2 | Analysis of Credit Agreements/Loan Documents | 87.5 | $105,793.50 |
| 3 | Asset Monetization/M&A/Refinancing | 1,532.3 | $1,623,822.00 |
| 6 | First-Day Motion and Bankruptcy Preparations | 311.6 | $284,565.50 |
| 7 | Prepare for and Attend Court Hearings | 67.3 | $86,479.00 |
| 8 | Communications/Meetings with Counsel | 49.8 | $61,236.00 |
| 9 | Communications/Meetings with Secured Creditors | 11.3 | $16,659.50 |
| 10 | Communications/Meetings with Financing Parties | 57.3 | $70,562.50 |
| 11 | Communications/Meetings with Other Parties | 11.9 | $13,596.50 |
| 12 | Monthly Operating Reports | 515.3 | $430,071.00 |
| 13 | SOFAs & SOALs | 632.1 | $607,688.50 |
| 14 | General Bankruptcy Reporting | 242.0 | $213,519.50 |
| 15 | Claims Management, Reconciliation and Resolution | 384.7 | $416,923.50 |
| 16 | POR/Plan Confirmation/Plan Implementation/Disclosure Statement | 1,023.1 | $1,066,269.00 |
| 17 | Litigation / Dispute Related | 444.0 | $472,721.50 |
| 18 | Retention Matters | 17.3 | $21,431.00 |
| 19 | Billing/Staffing Reports | 566.5 | $460,146.50 |
| 20 | Non-Working Travel | 38.7 | $43,912.00 |
| 21 | Bank Reporting/Lender Engagement | 1,242.0 | $1,247,278.00 |
| 27 | Treasury Management | 501.3 | $459,773.00 |
| 28 | Cash Forecasting | 1,944.7 | $1,860,639.00 |
| 29 | Vendor Management | 160.7 | $157,634.00 |
| 30 | Contract Assumption / Rejection Analysis | 66.1 | $51,666.50 |
| 31 | UCC Diligence | 147.7 | $167,345.50 |
| 32 | Cash Flow Validation & Analysis | 532.3 | $569,043.00 |
| 33 | Camp Director Support & Operational Oversight | 472.9 | $453,278.00 |
| | **SUBTOTAL** | **11,164.6** | **$11,100,467.00** |
| | *Less: Professionals with Less than Five Billable Hours* | *35.5* | *$36,593.00* |
| | *Less: 50% Discount for Non-Working Travel Time* | *18.7* | *$21,728.50* |
| | **GRAND TOTAL** | **11,110.4** | **$11,042,145.50** |

## SECTION III
## SUMMARY OF DISBURSEMENTS

| Disbursement Type | Amount |
|---|---|
| Airfare | $2,277.18 |
| Lodging | $1,582.56 |
| Other | $45,360.38 |
| Transportation | $9,281.66 |
| Working Meals | $27,280.30 |
| **Total** | **$85,782.08** |

I certify under penalty of perjury that the foregoing is true and correct.

Dated: November 16, 2026

/s/ *Cynthia Romano*
Cynthia Romano
Senior Managing Director

*Financial Advisor to the Chapter 11 Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., *et al.*,[1] | Case No. 26-16388 (CMG) |
| Debtors. | (Jointly Administered) |

**INTERIM APPLICATION OF FTI CONSULTING, INC.**
**FINANCIAL ADVISOR TO THE SIMAD DEBTORS, FOR**
**ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES**
**RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED**
**FOR THE PERIOD FROM JUNE 8, 2026 THROUGH OCTOBER 31, 2026**

FTI Consulting, Inc. ("FTI Consulting"), as financial advisor to the above-captioned debtors (collectively, the "SIMAD Debtors"), hereby submits its interim application (the "Application") for allowance of compensation for professional services rendered and reimbursement of out-of-pocket expenses incurred for the period from June 8, 2026 through October 31, 2026 (the "Interim Period"). FTI Consulting respectfully states as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings, Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

3. On June 4 and 5, 2026 (the "Petition Date"), each of the SIMAD Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On June 8, 2026, this Court entered an order directing the procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 15]. The SIMAD Debtors are operating their business and managing their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

4. A detailed description of the SIMAD Debtors and their business, including the facts and circumstances giving rise to the SIMAD Debtors' chapter 11 cases, is set forth in the *Declaration of Assaf Ravid, Chief Restructuring Officer of the SIMAD Debtors, in Support of the Chapter 11 Petitions and First Day Motions* [Docket No. 62] (the "First Day Declaration").

5. FTI Consulting provides services in areas ranging from corporate finance and interim management to economic consulting, forensic and litigation consulting, strategic communications, and technology. FTI Consulting's clients include many of the world's largest public companies, as well as a majority of the twenty-five largest banks and top one hundred law firms in the world. FTI Consulting's expertise includes liquidity and capital structure assessment, debt and equity restructuring advice, identification of reorganization alternatives, and crisis communications. FTI Consulting has significant experience assisting distressed companies with day-to-day management activities, including development of pro forma financials and business plans, cash flow management, identification and implementation of liquidity-enhancing and cost-saving strategies, and constituent communication plans and strategies.

6. FTI Consulting has a wealth of experience providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States, including in the following cases: *In re AZUL S.A.*, No. 25-11176 (SHL) (Bankr. S.D.N.Y.

May 28, 2025); *In re Broadway Realty I Co., LLC*, No. 25-11050 (DSJ) (Bankr. S.D.N.Y. May 21, 2025); *In re United Site Services, Inc.,* No. 25-23630 (MBK) (Bankr. D.N.J. Dec. 29, 2025); *In re Valves and Controls US, Inc.*, No. 25-11403 (TMH) (Bankr. D. Del. Oct. 14, 2025); *In re At Home Group Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. Sep. 5, 2025); *In re Marelli Automotive Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. Aug. 11, 2025); and *In re Invitae Corporation*, No. 24-11362 (MBK) (Bankr. D.N.J. Apr. 23, 2024).

7. The SIMAD Debtors' board of directors have authorized the Chief Restructuring Officer of the SIMAD Debtors to retain and employ professionals, including financial advisors, to provide all assistance they deem necessary or proper to successfully resolve the SIMAD Debtors' chapter 11 cases and the SIMAD Debtors have determined that the employment of FTI Consulting to serve as their financial advisor is necessary and proper.

8. Subsequent to the Petition Date, FTI Consulting was engaged by the SIMAD Debtors on June 8, 2026 to provide financial advisory services to the SIMAD Debtors during the pendency of the chapter 11 cases. From June 8, 2026 forward, FTI Consulting has supported the SIMAD Debtors' finance organizations with the preparation of first day motions and the development and management of the 13-week cash flow forecast. The June 18, 2026 Engagement Letter supplemented the services to be provided by FTI Consulting. Since FTI Consulting's initial engagement in June 2026, the FTI Consulting personnel providing services to the SIMAD Debtors (the "FTI Professionals") have worked closely with the SIMAD Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases. Throughout its engagement thus far, FTI Consulting has developed a great deal of institutional knowledge regarding the SIMAD Debtors' operations, finances, and systems. For these reasons, FTI Consulting is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these chapter 11 cases. Accordingly, FTI

Consulting's services are necessary to enable the SIMAD Debtors to maximize the value of their estates and reorganize successfully.

**FTI Consulting's Retention**

9. On June 27, 2026, the SIMAD Debtors filed the *Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor for the SIMAD Debtors Effective as of June 8, 2026 and (II) Granting Related Relief* [Docket No. 309].

10. On July 14, 2026, the Court entered the *Order (I) Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor for the Debtors Effective as of June 8, 2026 and (II) Granting Related Relief* [Docket No. 458] (the "Retention Order"), attached hereto as **Exhibit A**.

11. The Retention Order approved the terms of FTI Consulting's hourly fee and expense structure set forth in the Engagement Letter dated June 8, 2026, and authorized FTI Consulting to be compensated and reimbursed pursuant to section 330 of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, Bankruptcy Rules, Local Rules, U.S. Trustee Guidelines and any other applicable orders of this Court.

12. Pursuant to the Engagement Letter, Cynthia Romano is the Senior Managing Director responsible for this engagement, assisted by a staff of consultants at various levels with a wide range of relevant skills and abilities.

**PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED**

13. By this Application, FTI Consulting seeks entry of an order (i) allowing compensation for professional services rendered to the SIMAD Debtors during the Interim Period in the aggregate amount of $11,042,145.50 and (ii) reimbursement of expenses incurred

in connection with rendering such services in the aggregate amount of $85,782.08, for a total allowed amount of $11,127,927.58.

14. The fees sought by this Application represent an aggregate of 11,110.4 hours of professional time performing services for the SIMAD Debtors during the Interim Period.

15. In the ordinary course of its practice, FTI Consulting maintains computerized records of the time expended in rendering professional services on behalf of the SIMAD Debtors. Time entries are recorded in tenths of an hour with detailed descriptions of the services performed by each professional on behalf of the SIMAD Debtors. Detailed time entry records for time incurred during the Interim Period were included in the monthly fee statements previously filed with the Court. The fees and disbursements sought in this Application are billed at rates customarily charged by FTI Consulting and generally accepted by FTI Consulting's clients.

16. All the compensation and expenses sought by this Application were actual, reasonable, and necessary expenses of the SIMAD Debtors and preserve the value of the SIMAD Debtors' estates for the benefit of the SIMAD Debtors. These services required a high level of professional competence and expertise, and FTI Consulting submits that the services were performed efficiently and effectively. The hourly rates billed by FTI Consulting are customary for professional services rendered in similar matters and were fair and reasonable under the circumstances.

17. During the Interim Period, FTI Consulting has provided such consulting and advisory services as FTI Consulting and the SIMAD Debtors deem appropriate and feasible to advise the SIMAD Debtors in the course of these chapter 11 cases, including but not limited to the following:

- Refining the SIMAD Debtors' existing 13-week cash flow forecast to incorporate enhanced receipts and disbursements forecasting, validate underlying assumptions,

identify liquidity risks and timing gaps, and develop a reliable short-term liquidity management tool to support operational decision-making, stakeholder communications, and contingency planning;

- Assisting the SIMAD Debtors in reviewing the SIMAD Debtors' current business outlook and near-term business plan, including but not limited to requirements to keep operating and opportunities, if any, for liquidity, profitability, and capital enhancement;
- Assisting the SIMAD Debtors in producing financial analyses for and reporting to existing or prospective lenders and other constituents, as requested;
- Advising the SIMAD Debtors on strategies for developing and negotiating potential restructuring proposals with senior creditors, bondholders, and other key stakeholders, as applicable;
- Performing such other services and analyses relating to the SIMAD Debtors that are or become required on behalf of and at the behest of the SIMAD Debtors, and which are mutually agreed to in writing;
- Tracing the flow of funds through accounts owned by the SIMAD Debtors to DAMIS Holdings LTD, or affiliates, including the initial receipt of bond proceeds and all outgoing transfers;
- Recording the date, amount, originating account, receiving party, and any available description or reference information;
- Preparing schedules and flow charts that illustrate the movement of bond proceeds from issuance through downstream transfers during selected periods, including the chronology of significant transfers;
- Establishing an accurate and complete picture of cash activity and balances across the SIMAD Debtors' accounts for selected periods; and
- Obtaining and reconciling bank statements against the SIMAD Debtors' internal books and records, identifying and documenting reconciling items, and flagging any unreconciled variances for further review.

18. In addition to the foregoing, the following paragraphs are intended to highlight key services rendered by FTI Consulting during the Interim Period and are not meant to be a detailed description of all the work performed.

***Code 1 – Project Monitoring & Supervision (104.2 hours).***

19. Time billed to this task code relates to the overall management, oversight, and coordination of FTI Consulting's engagement, including internal team coordination, communications with the SIMAD Debtors' management and other professionals regarding case

status, and other case administration matters to ensure that services were provided efficiently and without unnecessary duplication.

***Code 2 – Analysis of Credit Agreements/Loan Documents (87.5 hours).***

20. Time billed to this category relates to the review and analysis of the SIMAD Debtors' credit agreements, loan documents, and other financing instruments, including the SIMAD Debtors' debt obligations and capital structure, proposed financing terms, and related documents and information requests.

***Code 3 – Asset Monetization/M&A/Refinancing (1,532.3 hours).***

21. Time billed to this category relates to assisting the SIMAD Debtors with asset monetization, merger and acquisition, and refinancing efforts, including supporting the sale process, auction, and closings, responding to diligence requests, preparing transaction-related financial analyses, and providing financial analysis to support decision-making throughout the sale process.

***Code 6 – First-Day Motion and Bankruptcy Preparations (311.6 hours).***

22. Time billed to this category relates to assisting the SIMAD Debtors in preparing for the commencement of the chapter 11 cases, including gathering information and preparing financial analyses and data supporting first-day motions and related relief, coordinating with the SIMAD Debtors' management, legal counsel, and other advisors, and assisting with the SIMAD Debtors' transition into chapter 11.

***Code 7 – Prepare for and Attend Court Hearings (67.3 hours).***

23. Time billed to this category relates to preparing for and attending, in person or virtually, hearings, meetings of creditors, and other court proceedings in these chapter 11 cases, including preparing supporting materials and testimony and following up on related matters.

***Code 8 – Communications/Meetings with Counsel (49.8 hours).***

24. Time billed to this category relates to communications and meetings with the SIMAD Debtors' legal counsel regarding case strategy, motions and pleadings, financing, sale, and plan matters, the status of ongoing workstreams, and other matters requiring coordination between FTI Consulting and counsel.

***Code 9 – Communications/Meetings with Secured Creditors (11.3 hours).***

25. Time billed to this category relates to communications and meetings with the SIMAD Debtors' secured creditors and their advisors, including discussions regarding financing and budget matters, providing financial information, and responding to inquiries and diligence requests.

***Code 10 – Communications/Meetings with Financing Parties (57.3 hours).***

26. Time billed to this category relates to communications and meetings with existing and prospective financing parties and their advisors, including providing financial information, responding to diligence requests, and supporting the SIMAD Debtors in connection with financing matters.

***Code 11 – Communications/Meetings with Other Parties (11.9 hours).***

27. Time billed to this category relates to communications and meetings with parties in interest other than the SIMAD Debtors' counsel, secured creditors, and financing parties, including the SIMAD Debtors' other professionals, potential transaction parties, and other stakeholders, as well as responding to their inquiries and information requests.

***Code 12 – Monthly Operating Reports (515.3 hours).***

28. Time billed to this category relates to assisting the SIMAD Debtors with the preparation and review of Monthly Operating Reports, including gathering and analyzing financial data and supporting information and ensuring compliance with applicable U.S. Trustee requirements.

***Code 13 – SOFAs & SOALs (632.1 hours).***

29. Time billed to this category relates to assisting the SIMAD Debtors with the preparation, review, and amendment of the Statements of Financial Affairs and Schedules of Assets and Liabilities, including gathering, analyzing, and verifying supporting data and coordinating with the SIMAD Debtors' management, legal counsel, and other advisors.

***Code 14 – General Bankruptcy Reporting (242.0 hours).***

30. Time billed to this category relates to assisting the SIMAD Debtors with bankruptcy reporting obligations other than the Monthly Operating Reports and the Statements of Financial Affairs and Schedules of Assets and Liabilities, including reporting required under orders of the Court, periodic reporting for the U.S. Trustee and other parties in interest, and the analysis of transaction data supporting such reporting.

***Code 15 – Claims Management, Reconciliation and Resolution (384.7 hours).***

31. Time billed to this category relates to assisting the SIMAD Debtors with claims management, reconciliation, and resolution, including reviewing and analyzing filed, scheduled, and potential claims, estimating claim pools and recoveries, and communicating with creditors regarding their claims.

***Code 16 – POR/Plan Confirmation/Plan Implementation/Disclosure Statement (1,023.1 hours).***

32. Time billed to this category relates to assisting the SIMAD Debtors with the development, negotiation, confirmation, and implementation of the chapter 11 plan and the preparation of the disclosure statement. This includes providing financial analyses supporting the plan and disclosure statement, reviewing and commenting on drafts of the plan, disclosure statement, and related documents, and participating in discussions with the SIMAD Debtors' management, legal counsel, and other parties in interest regarding plan-related issues and the plan confirmation process.

33. Time billed to this category also includes preparing and updating waterfall and recovery analyses to reflect sale proceeds, secured claims, and other case developments. This category also covers preparing and updating the hypothetical chapter 7 liquidation analysis, including estimated wind-down and incremental chapter 7 costs, as well as reviewing and reconciling DIP and bond payoff calculations, including related interest. In addition, time billed to this category relates to preparing supporting schedules for the plan and disclosure statement, analyzing proposed claims treatment, including convenience class treatment, and preparing reports and schedules in connection with settlement and plan confirmation matters.

***Code 17 – Litigation / Dispute Related (444.0 hours).***

34. Time billed to this category relates to assisting the SIMAD Debtors with litigation, investigation, and dispute-related matters, including responding to requests for information, collecting and analyzing financial records and data, and supporting legal counsel in connection with such matters.

***Code 18 – Retention Matters (17.3 hours).***

35. Time billed to this category relates to FTI Consulting's retention in these chapter 11 cases, including preparing the retention application and supporting declaration, disclosure analyses, and related engagement matters.

***Code 19 – Billing/Staffing Reports (566.5 hours).***

36. Time billed to this category relates to the preparation of FTI Consulting's fee statements and applications, including gathering and reviewing billing records and time entries, ensuring compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the U.S. Trustee Guidelines, and drafting and revising the applications for filing.

***Code 20 – Non-Working Travel (38.7 hours).***

37. Time billed to this category relates to non-working travel time incurred in connection with these chapter 11 cases. This travel was necessary for FTI Professionals to be

present in person on behalf of the SIMAD Debtors at meetings, proceedings, and other events where an on-site presence was required, including the auction of the SIMAD Debtors' assets. This category also covers travel to meet with the SIMAD Debtors' management and personnel to gather financial records and other information needed to support FTI Consulting's work in these chapter 11 cases.

***Code 21 – Bank Reporting/Lender Engagement (1,242.0 hours).***

38. Time billed to this category relates to preparing reporting for, and engaging with, the SIMAD Debtors' lenders and their advisors, including budget-to-actual and other periodic reporting required under the SIMAD Debtors' financing and cash collateral orders. This category also covers responding to lender diligence requests, preparing camp-level reporting packages for distribution to the applicable lenders, and participating in calls with the SIMAD Debtors' lenders, the Chief Restructuring Officer, and other professionals regarding such reporting.

39. A significant portion of the time billed to this category relates to the SIMAD Debtors' recurring budget-to-actual reporting process. This process involves gathering actual operating results for each of the SIMAD Debtors' camp reporting entities, mapping and reclassifying profit and loss results into the cash flow reporting categories used in the approved budgets, and reconciling book cash balances to bank balances and the SIMAD Debtors' accounting records.

***Code 27 – Treasury Management (501.3 hours).***

40. Time billed to this category relates to advising and assisting the SIMAD Debtors with treasury-related matters, including cash and bank account management, reconciliations, funding, and other financial analyses related to the SIMAD Debtors' liquidity.

***Code 28 – Cash Forecasting (1,944.7 hours).***

41. Time billed to this category relates to the development, maintenance, and updating of the SIMAD Debtors' cash flow forecasts and budgets, including the 13-week cash flow

forecast, cash collateral and DIP budgets, and related liquidity analyses. This work involves building and maintaining forecasts at both the camp and consolidated levels, incorporating assumptions and budget updates provided by management and the camp directors, mapping the SIMAD Debtors' accounting data to forecast categories, and periodically reforecasting the budgets.

42. The SIMAD Debtors' cash flow forecasts serve as a central tool in the administration of these chapter 11 cases. The forecasts are used to size and support the SIMAD Debtors' DIP financing and use of cash collateral, and they form the approved budgets against which the SIMAD Debtors' actual performance is measured and reported to their lenders. The forecasts also allow the SIMAD Debtors' management to monitor liquidity across the SIMAD Debtors' camps, make informed funding and disbursement decisions, and plan for the timing of asset sales and other case milestones.

***Code 29 – Vendor Management (160.7 hours).***

43. Time billed to this category relates to assisting the SIMAD Debtors with the management of vendor relationships, including vendor payment tracking and reporting, analyzing accounts payable, and addressing vendors and other related inquiries.

***Code 30 – Contract Assumption / Rejection Analysis (66.1 hours).***

44. Time billed to this category relates to assisting the SIMAD Debtors with the analysis of executory contracts and unexpired leases, including reviewing contracts, evaluating potential assumption or rejection and the related financial impact, analyzing cure amounts, and coordinating with legal counsel on related matters.

***Code 31 – UCC Diligence (147.7 hours).***

45. Time billed to this category relates to responding to diligence requests from the official committee of unsecured creditors and its advisors, including gathering and providing

financial information, preparing analyses and reports, and participating in calls with the committee and its advisors.

***Code 32 – Cash Flow Validation & Analysis (532.3 hours).***

46. Time billed to this category relates to the validation and analysis of the SIMAD Debtors' actual cash flows, including reconciling actual results to the SIMAD Debtors' bank activity and forecasts, analyzing variances, funding, and liquidity needs, and preparing related reporting for management and other stakeholders.

***Code 33 – Camp Director Support & Operational Oversight (472.9 hours).***

47. Time billed to this category relates to supporting the SIMAD Debtors' camp directors and providing operational oversight of the SIMAD Debtors' camp operations, including communicating with camp directors regarding financial, budgeting, reporting, and operational matters, and addressing operational issues arising during these chapter 11 cases.

48. FTI Consulting believes that the fees and out-of-pocket expenses requested are reasonable, actual and for necessary services rendered or expenses incurred on behalf of the SIMAD Debtors during the Interim Period.

**No Prior Request**

49. No prior request for the relief sought in this Application has been made to this or any other Court. This Application is made without prejudice to further or final applications based upon all relevant criteria, including the results achieved in these chapter 11 cases.

**Notice**

50. Notice of the Application has been or will be provided to those parties entitled to receive notice hereof in accordance with any applicable order of this Court.

**Conclusion**

**WHEREFORE**, FTI Consulting, as financial advisor to the SIMAD Debtors, respectfully requests that the Court enter an order providing: (i) an interim allowance in the amount of $11,042,145.50 as compensation for professional services rendered and reimbursement of out-of-pocket expenses incurred in the amount of $85,782.08 during the Interim Period; (ii) the SIMAD Debtors are authorized and directed to pay FTI Consulting the outstanding balance of $5,259,871.72; and (iii) such other and further relief as this Court deems proper.

Dated: November 16, 2026

*/s/ Cynthia Romano*

By: Cynthia Romano
Senior Managing Director

# **Exhibit A**

## **FTI Consulting's Retention Order**

Order Filed on July 14, 2026
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**ORDER AUTHORIZING THE**
**EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC.**
**AS FINANCIAL ADVISOR EFFECTIVE AS OF JUNE 8, 2026**

The relief set forth on the following pages, numbered two (2) through nine (9), is **ORDERED.**

**DATED: July 14, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

1 A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

Upon the *SIMAD Debtors' Application for Entry of an Order Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor as of June 8, 2026* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "SIMAD Debtors"), for entry of an order (this "Order") (a) authorizing the SIMAD Debtors to employ and retain FTI Consulting, Inc. ("FTI") as the SIMAD Debtors' financial advisor as of June 8, 2026 in accordance with the terms and conditions set forth in two engagement letters between FTI and certain of the SIMAD Debtors (the "Engagement Letters") which are attached as **Exhibit 1** and **Exhibit 2** to this Order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and (b) approving the provisions of the Engagement Letters, including the compensation arrangements and indemnification and reimbursement provisions set forth therein, all as more fully set forth in the Application; and upon the First Day Declaration; and upon the Romano Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that sufficient cause exists for the relief set forth herein; and this Court having found that the SIMAD Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

Case 26-16388-CMG Doc 1529 Filed 07/16/26 Entered 07/16/26 10:28:17 Desc Main
Document Page 23 of 63



this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court being satisfied, based on the representations made in the Application and the Romano Declaration, that (a) FTI does not hold or represent an interest adverse to the SIMAD Debtors' estates and (b) FTI is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Application is granted as set forth herein.

2. Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3. In accordance with sections 327(a) and 328 of the Bankruptcy Code, the SIMAD Debtors are hereby authorized to retain FTI as financial advisors to the SIMAD Debtors, effective as of June 8, 2026, on the terms set forth in the Engagement Letters, as modified by this Order.

4. The terms of the Engagement Letters, including, without limitation, the indemnification provisions, are approved in all respects, as modified by this Order.

5. Notwithstanding anything to the contrary contained herein or in the Application and/or Engagement Letters, FTI shall file interim and final fee applications for allowance of compensation and reimbursement of reasonable and documented out-of-pocket expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules as may then be applicable,

Case 26-16388-CMG Doc 159 Filed 07/16/26 Entered 07/16/26 12:26:59 Desc Main Document Page 24 of 63


the Local Rules, the Fee Guidelines, any interim compensation orders entered by this Court, and any amendments or mofidications thereto.

6. FTI is entitled to reimbursement of actual and necessary expenses. In the event that, during the pendency of these chapter 11 cases, FTI requests reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be billed in one-tenth hour increments and shall be included in FTI's fee applications, and such invoices and time records shall be in compliance with the Local Rules, the U.S. Trustee Guidelines, and the standards of section 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Notwithstanding the foregoing, FTI shall only be reimbursed for any legal fees incurred in connection with these chapter 11 cases to the extent permitted under applicable law. All rights are reserved to permit objection to any request for reimbursement of expenses, including but not limited to any request for the reimbursement of legal fees of FTI's independent counsel. Notwithstanding anything in the Application, the Romano Declaration, or the Engagement Letters to the contrary, FTI shall not seek reimbursement from the SIMAD Debtors' estates for any fees incurred in defending any of FTI's fee applications in these chapter 11 cases.

7. The indemnification, contribution, and reimbursement provisions included in the Engagement Letters are approved, subject to the following:

a) The indemnified Party shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Indemnity Agreement for services, unless such services and the indemnification, contribution, or reimbursement therefore are approved by this Court.

b) Notwithstanding any provisions of the Engagement Letters to the contrary, the SIMAD Debtors shall have no obligation to indemnify the Indemnified Parties or provide contribution or reimbursement to an Indemnified Party for any claim or expense that is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from any Indemnified Party's willful misconduct, gross negligence, fraud, self-dealing, or bad faith; (ii) for a contractual dispute in which the SIMAD Debtors allege the breach of an Indemnified Party's obligations under the Engagement Letters unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing to be a claim or expense for which an Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letters, as modified by this Order;

c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, an Indemnified Party believes that it is entitled to the payment of any amounts by the SIMAD Debtors on account of the SIMAD Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letters (as modified by this Order), including, without limitation, the advancement of defense costs, the Indemnified Party or FTI must file an application therefore in this Court, and the SIMAD Debtors may not pay any such amounts to such Indemnified Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification, contribution, or reimbursement by an Indemnified Party, and is not a provision limiting the duration of the SIMAD Debtors' obligation to indemnify, or make contributions or reimbursement to, the Indemnified Party. All parties in interest shall retain the right to object to any demand by any Indemnified Party for indemnification, contribution, and/or reimbursement; and

d) any limitations of liability provisions in the Engagement Letters (including the Indemnification Agreement) are deemed to be of no force and effect with respect to the services to be provided pursuant to this Order.

8. Any limitations of liability provisions or limitation on amounts to be contributed provisions in the Application, Engagement Letters and the attachments to the Engagement Letters

including but not limited to section 6.2 of the Standard Terms & Conditions shall be eliminated during the pendency of these Chapter 11 Cases.

9. FTI will keep its time records in tenth-of-an-hour increments in accordance with Local Rule 2016-1 of this Court and shall otherwise comply with the requirements of that Local Rule, as well as Bankruptcy Rule 2016(a), and the Fee Guidelines.

10. FTI will only bill fifty percent (50%) for non-working travel.

11. Notwithstanding anything to the contrary contained in the Application, the Romano Declaration, the Engagement Letters or any other provision in this Order, FTI's interim and final applications for compensation and reimbursement of fees and actual expenses shall be subject to review under the reasonableness standard in section 330 of the Bankruptcy Code.

12. Notwithstanding anything in the Application to the contrary and for the avoidance of doubt, FTI will not be entitled to recover attorneys' fees or expenses for defending its fee applications in these chapter 11 cases.

13. Prior to applying any increases in its hourly rates, FTI shall provide ten (10) business days' notice of any such increases to the Debtor, the U.S. Trustee, and the Committee, and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

14. Notwithstanding anything in the Application, the Romano Declaration or the Engagement Letters to the contrary, to the extent FTI retains the services of independent

contractors or subcontractors (collectively, the "Contractors") in these chapter 11 cases to conduct certain of its investment banking services under the Engagement Letters in its stead and FTI seeks to pass through to the SIMAD Debtors, and requests to be reimbursed for, the fees and/or costs of the Contractors, FTI shall (a) pass through the fees of such Contractors to the SIMAD Debtors at the same rate that FTI pays the Contractors; (b) seek reimbursement for actual costs of the Contractors only; (c) ensure that the Contractors perform the conflicts check required by Bankruptcy Rule 2014 and file with the Court such disclosures as required by Bankruptcy Rule 2014; and (d) attach any such Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications filed in these chapter 11 cases.

15. None of the fees payable to FTI under the Engagement Letters shall constitute a "bonus" or fee enhancement under applicable law.

16. Notwithstanding anything in the Application to the contrary, FTI shall seek reimbursement from the SIMAD Debtors' estates for its engagement-related expenses at FTI's actual cost paid.

17. Section 5.1 of the Standard Terms & Conditions attached to the Engagement Letters is revised to reflect that termination will only be allowed upon entry of an Order by the Bankruptcy Court.

18. Such services other than set forth in the Application that the SIMAD Debtors may request that FTI provide during the course of these chapter 11 cases, and as agreed to by FTI, shall be subject to separate application and order of this Court.

19. Notwithstanding anything in the Application or the Engagement Letters to the

contrary, FTI shall provide any and all monthly fee statements, interim fee applications, and final fee applications in searchable electronic format ("LEDES" or "Excel") to the U.S. Trustee.

20. The services that FTI will provide to the SIMAD Debtors will be appropriately directed by the SIMAD Debtors so as to avoid duplication of efforts among the other professionals retained in these chapter 11 cases and performed in accordance with applicable standards of the profession. FTI will work collaboratively with the SIMAD Debtors' management and other professionals to avoid duplication of services. The SIMAD Debtors believe that the services to be provided by FTI will complement and will not be duplicative of any services of the SIMAD Debtors' other professionals.

21. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

22. To the extent there is any inconsistency between the terms of the Application, the Romano Declaration, and this Order, the terms of this Order shall govern.

23. The SIMAD Debtors and FTI are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

24. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25. Notwithstanding anything in the Application, the Romano Declaration, or the Engagement Letters to the contrary, the requirement for the SIMAD Debtors to pay interest if

payment is not received within thirty (30) days of invoice date at the rate of one and one half percent (1 ½ %) a month is null and void during the pendency of these chapter 11 cases.

26. The last paragraph of section 3 of the June 8, 2026 Engagement Letter is null and void during the pendency of these chapter 11 cases.

27. Notwithstanding anything in the Application, the Romano Declaration, or the Engagement Letters to the contrary, the requirement for the SIMAD Debtors to dispute invoices within either 20 or 30 days of receipt and to object to such invoices in that time period are null and void during the pendency of these bankruptcy cases.

28. Notwithstanding anything to the contrary in the Application, the Romano Declaration or the Engagement Letters, section 7.2 of the Standard Terms & Conditions shall be null and void during the pendency of these cases and this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Engagement Letters and this Order.

29. Notwithstanding anything to the contrary in the Application, the Romano Declaration or the Engagement Letters, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Engagement Letters and this Order.

**<u>Exhibit 1</u>**

**Engagement Letter**

**PRIVATE & CONFIDENTIAL**

**June 8, 2026**

SIMAD HOLDINGS LTD.
50 Quality Street, #110357
Trumbull, Connecticut, 06611
Attn: Asaf Ravid
Email: aravid@circleinv.com

**Re: SIMAD HOLDINGS LTD. AND ITS JOINTLY ADMINISTERED DEBTORS**

Dear Asaf:

1. **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by SIMAD Holdings Ltd. and its jointly administered debtors and debtors in possession (collectively, the "SIMAD Debtors," the "Company," or "Client") to provide certain financial advisory and consulting services (the "Services"). This letter of engagement (the "Engagement Letter") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided (the provision of such Services, the "Engagement").

2. **Scope of Services**

The Services, to be performed at your direction, are expected to include the following:

- Refine the Company's existing 13-week cash flow forecast to incorporate enhanced receipts and disbursements forecasting, validate underlying assumptions, identify liquidity risks and timing gaps, and develop a reliable short-term liquidity management tool to support operational decision-making, stakeholder communications, and contingency planning.;

- Assist the Company in reviewing the Company's current business outlook and near-term business plan, including but not limited to business plan, requirements to keep operating, and opportunities, if any, for liquidity, profitability, and capital enhancement;

- Assist the Company in producing financial analyses for and reporting to existing or perspective lenders and other constituents, as requested;

- Advise the Company on strategies for developing and negotiating potential restructuring proposals with senior creditors, bondholders, and other key stakeholders, as applicable;

FTI CONSULTING

- Perform such other services and analyses relating to the Company that are or become required on behalf of and at the behest of the Company, and which are mutually agreed to in writing.

**<u>Requirements of Filing for Bankruptcy Court Protection</u>**
In connection with the Company's chapter 11 cases, FTI has been asked to:

- Develop a detailed approach to preparing the Company for one or more bankruptcy proceedings, some of which have already commenced, including any potential recognition of U.S. proceedings, if necessary. The preparation will be structured in the most cost effective and efficient manner possible suitable for the situation;

- Assist the Company in implementing such plan as requested by the Company;

- Prepare the necessary financial and operating information for the:
    - Preparation of bankruptcy petitions and related documents;
    - Assisting with developing accounting and operating procedures to segregate prepetition and post-petition business transactions;
    - Assisting in the development of a creditor matrix;
    - Developing training materials and assist in training Company personnel with respect to chapter 11 procedures;
    - Assisting in the identification of executory contracts and unexpired leases;
    - Preparation of the statements of financial affairs, schedules, monthly operating reports, and other regular reports required in such proceedings;
    - Assisting in the development of a Key Employee Incentive Plan and a Key Employee Retention Plan, if needed;
    - Compilation and analysis of the information necessary for "First Day" and "Second Day" motions and orders; and
    - Establish the necessary procedures and processes to allow for the timely satisfaction of court mandated reporting requirements;

**<u>Requirements of Operating Under Bankruptcy Court Protection</u>**

- Develop framework necessary to administer a comprehensive Chapter 11 claims process;

- Assist the Company to prepare for the most efficient and effective resolution of any potential court-based restructuring, whether implemented through a Chapter 11 plan, a section 363 sale, or any other structure;

- Attend meetings and assist in discussions with potential lenders, investors, creditors, committee(s), other parties in interest and/or professionals hired by the same, as requested by the Company;

- Assist the Company in negotiations with creditors, suppliers, lessors and other interested parties as appropriate;

- Assist the Company with the preparation and confirmation of a value optimizing Chapter 11 plan, and/or a sale of certain or substantially all the Company's assets pursuant to section 363 of the Bankruptcy Code;

- Upon written request and with agreement by FTI, advise on communications plans, externally and internally, including employees, suppliers, customers, and other constituencies;

- Render such other general business consulting or such other assistance as the Company's management or counsel may deem necessary that are consistent with the role of a financial advisor, not duplicative of services provided by other professionals in this proceeding and are mutually agreed to; and

- Assist the Company with any other customary services typical for an engagement of this type as may be mutually agreed to;

The Services may be performed by FTI or by any subsidiary or affiliate of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' or affiliates' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary, each affiliate, and any such agents or independent contractors and their employees. For purposes of this Engagement Contract, the term "affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract, or otherwise.

The Services, as outlined above, are subject to change as mutually agreed between FTI and Client in writing.

FTI is engaged by Client to provide financial advisory and consulting services only. Accordingly, while FTI may from time to time suggest options which may be available to Client and further give FTI's professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with Client, its management, and board of directors. FTI and its employees will not make any management decisions for Client and will not be responsible for communicating information concerning Client to the public, Client's shareholders, or others.

As part of the Services, FTI may be requested to assist Client (and Client's counsel or other advisors) in negotiating with Client's creditors and equity holders and with other interested parties. In the event that FTI participates in such negotiations, the representations made and the positions advanced will be those of Client and its management, not FTI or its employees.

In connection with the pending chapter 11 cases, if FTI's retention is approved, FTI's role will include serving as principal bankruptcy financial advisors to the debtors and debtors in possession in those cases [under a general retainer], subject to court approval. FTI's role also will encompass all out-of-court planning and negotiations attendant to these tasks.

FTI CONSULTING

As usual, FTI's Engagement is to represent Client and not its individual directors, officers, employees, or shareholders. FTI, however, anticipates that FTI may provide information or advice to directors, officers, or employees in their corporate capacities over the course of the Engagement.

3. **Fees and Expenses**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by FTI's standard hourly rates, summarized as follows:

**United States**

| | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $1,270 – 1,580 |
| Directors / Senior Directors / Managing Directors | 940 – 1,195 |
| Consultants / Senior Consultants | 535 – 850 |
| Administrative / Paraprofessionals | 195 – 395 |

Hourly rates are generally revised periodically. To the extent this Engagement requires services of FTI's International divisions or personnel, the time will be multiplied by FTI's standard hourly rates applicable on International engagements. Note that FTI does not provide any assurance regarding the outcome of FTI's work, and FTI's fees will not be contingent on the results of such work.

All payments will be due upon receipt of the invoice. For Client's information and use, FTI's Taxpayer Identification Number is 52-1261113. If Client disputes any of the fees or expenses on a specific invoice, Client shall notify FTI within thirty (30) days of receipt of the invoice of such a dispute. If Client fails to notify FTI within the thirty (30) day period, Client shall have waived its right to dispute such invoice.

Without limiting FTI's other rights and remedies, if any payment is not paid by Client within thirty (30) days of the date of invoice, then interest shall accrue, from the thirty-first (31st) day until payment in full is received, at the rate of one and one half (1 ½ %) percent per month. Nothing herein shall be construed as extending the due date of payments to be made by Client under this Engagement Contract. In addition to any other remedies set forth above and any other remedies available at law, FTI reserves the right to suspend Services until payment is received on past-due invoices. It is FTI's normal practice to be paid in full for all work performed to date prior to issuance of a report, deposition testimony, and/or trial testimony. Client agrees to pay all court costs, attorney fees (whether or not contingent on collection from Client) and other expenses, which may be associated with the collection of unpaid invoices. Should Client require FTI to submit invoices via an electronic billing service, any associated fees incurred for these electronic billing services shall be billed directly to Client for reimbursement.

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on Client's behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the Engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations, and other expenses specifically related to the Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this Engagement to which FTI is not a party, FTI will be compensated by Client at FTI's regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto. Client shall be responsible for all sales, use,

and excise taxes, and any other similar taxes, duties, and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by Client hereunder.

**Additional Payment Terms**

Due to the pending chapter 11 cases, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. Client agrees to file a motion in the bankruptcy court seeking the establishment of procedures for the payment of interim (monthly) fees and expenses during the case. If the bankruptcy court approves such a procedure, FTI will submit invoices on account against FTI's final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of FTI's internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of FTI's Engagement.

Post-petition fees, charges, and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the bankruptcy court. Client understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, Client shall nevertheless remain liable for payment of court-approved post-petition fees and expenses. Such items are afforded administrative priority under Bankruptcy Code section 503(b)(1). Bankruptcy Code section 1129(a)(9)(A) provides that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment).

If a dispute develops about FTI's fees, Client may be entitled under Part 137 of the Rules of the Chief Administrator of the New York Courts to arbitration of that dispute if it involves more than $150,000.

4. **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this Engagement Letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties, and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of engagement, undertakings, agreements, understandings, correspondence, and other communications, whether written or oral, regarding the Services.

5. **Conflicts of Interest**

FTI has undertaken a limited review of its records to determine FTI's professional relationships with Client and this Engagement. As Client may be aware, FTI is regularly retained by the administrative agent and/or other members of Client's lending group (or law firms retained by the administrative agent or lending group members). However, such representations are in matters unrelated to this Engagement.

From the results of such review, FTI was not made aware of any conflicts of interest or additional relationships that FTI believes would preclude FTI from performing the Services. However, as Client knows, FTI is a large consulting firm with numerous offices globally. FTI is regularly engaged by new

clients, which may include one or more parties with interests potentially adverse to Client. The FTI professionals providing Services hereunder will not accept an engagement that directly conflicts with this Engagement without Client's prior written consent.

6. **Acknowledgement and Acceptance**

Please acknowledge acceptance of the terms of this Engagement Contract by signing the confirmation below and returning a copy to us at the above address.

If you have any questions regarding this Engagement Letter or the attached Standard Terms and Conditions, please do not hesitate to contact Cynthia Romano at (617) 970-7383.

Sincerely,

**FTI CONSULTING, INC.**

By: ______________________
Cynthia Romano
Senior Managing Director

Attachment – As stated
Confirmation of Terms of Engagement

**Client agree to engage FTI Consulting, Inc. upon the terms of this Engagement Contract, which includes the attached Standard Terms and Conditions.**

**SIMAD HOLDINGS LTD.**

By: Asaf Ravid
Asaf Ravid
Chief Restructuring Officer

Date: 6.11.2026

FTI CONSULTING

| | |
|---|---|
| **Contact Information of the person designated to receive & approve invoices:** | |
| Name: | |
| Address: | |
| Phone: | |
| Email: | |
| AP Invoice Email (if applicable): | |
| **Invoice Processing Information** | |
| Please list any information required on the Invoice (i.e., Purchase Order #, Hours by Resource, Fees broken down by workstream, etc.) | |
| Require invoice submission via electronic billing system? | |
| If yes, please provide the necessary electronic billing system information (i.e., e-bill internet address): | |

FTI CONSULTING

## FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which FTI will provide the Services to as set forth within the attached Engagement Letter with SIMAD HOLDINGS LTD dated June 8, 2026. The Engagement Letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services to the exclusion of any other express or implied terms, including any conditions, warranties, and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of engagement, undertakings, agreements, understandings, correspondence, and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract. Capitalized terms used but not defined shall have the meanings assigned in the Engagement Letter to which these Standard Terms and Conditions are attached.

**1. Reports and Advice**

1.1 **Use and purpose of advice and reports** – Any advice given or report issued by FTI is provided solely for Client's use and benefit and only in connection with the purpose for which the Services are rendered. Unless required by law, Client shall not provide any advice given or report issued by FTI to any third party, or refer to FTI or the Services, without FTI's prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI and attached hereto as Schedule A. Notwithstanding the foregoing, Client may disclose any advice given or report issued by FTI to Client's affiliates and its and their respective directors, officers, employees, legal counsel, accountants, and auditors who have a need to know, and who are bound by written agreements and/or rules of professional conduct/ethics to maintain confidentiality. In no event, regardless of whether consent has been provided, shall FTI assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

1.2 **Ownership** – If FTI is required to deliver, prepare or otherwise produce a written deliverable in connection with the Services, then Client will, conditioned upon FTI's actual receipt of payment for the Services rendered (and expenses incurred, if any) necessary to prepare and issue such deliverable, obtain ownership of such deliverable in its final form, subject to the restrictions on use or disclosure contained herein. To the extent that FTI uses any of its intellectual property ("FTI IP") in connection with the Services or any deliverable, then such FTI IP shall, at all times, remain the property of FTI. Client shall not acquire any ownership right or interest in FTI IP; provided, however, FTI grants to Client a perpetual, worldwide, irrevocable, limited license to use the FTI IP for the sole purpose for which such deliverable was prepared. FTI shall have all ownership and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting FTI's business.

**2. Information and Assistance**

2.1 **Provision of information and assistance** – FTI's performance of the Services is dependent upon Client providing FTI with such information and assistance as FTI may reasonably require from time to time. FTI shall rely on such information without independent verification. If FTI's performance of its obligations under this Engagement Contract is prevented or delayed by any act or omission of Client or its agents,

subcontractors, consultants, or employees, FTI shall not be deemed in breach of its obligations under this Engagement Contract or otherwise liable for any damages sustained or incurred by Client, in each case, to the extent arising directly or indirectly from such prevention or delay.

2.2 **Punctual and accurate information** –Client shall use reasonable skill, care, and attention to ensure that all information FTI may reasonably require is provided on a timely basis and is accurate, complete, and relevant for the purpose for which it is required. Client shall also notify FTI if either party subsequently learns that any information provided is incorrect, inaccurate, or otherwise should not be relied upon.

2.3 **No assurance on financial data** – While FTI's work may include an analysis of financial and accounting data, the Services will not include an audit, compilation, or review of any kind of any financial statements or components thereof. Client management will be responsible for any and all financial information they provide to FTI during the course of this Engagement, and FTI will not examine, compile, or verify any such financial information. Moreover, the circumstances of the Engagement may cause FTI's advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, FTI will not express any opinion or other form of assurance on the financial statements of Client or any other person.

2.4 **Prospective financial information** – In the event the Services involve prospective financial information, FTI's work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and FTI will express no assurance of any kind on such information. There will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material. FTI will take no responsibility for the achievability of results or events projected or anticipated by Client's management.

**3. Additional Services**

3.1 **Responsibility for other parties** –Client shall be solely responsible for the work and fees of any other party engaged by Client to provide services in connection with the Engagement regardless of whether such party was introduced to Client by FTI. Except as provided in this Engagement Contract, FTI shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting, or taxation matters. Further, FTI acknowledges that it is not authorized under this Engagement Contract to engage any third party to provide services or advice to Client, other than FTI's affiliates, agents, or independent contractors engaged to provide Services, without Client's written authorization.

**4. Confidentiality, Data Protection, Artificial Intelligence**

4.1 **Restrictions on confidential information** – All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between the parties. Except as provided below, no party will disclose the other party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

FTI CONSULTING

4.1.1 is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2 is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3 is or has been independently developed by the recipient.

4.2 **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable, not less than 2 business days' notice in writing is first given to the other party.

4.3 **Citation of Engagement** – Without prejudice to Clauses 4.1 and 4.2 above, Client hereby agrees that FTI shall be entitled to cite the performance of the Services hereunder to FTI's clients and prospective clients as an indication of FTI's experience and use Client's name and logo in connection with such disclosure, unless FTI and Client specifically agree otherwise in writing.

4.4 **Internal quality reviews** – Notwithstanding the above, FTI may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews.

4.5 **Maintenance of workpapers** – Notwithstanding the above, FTI may keep one archival set of its working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with FTI's internal policies.

4.6 **Data protection** - In this paragraph, the terms "controller", "personal data", "processed", "processor", and "processing" shall have the meaning given to them, or any equivalent terms, in applicable data protection laws. FTI and Client will each act as separate and individual controllers in relation to any personal data processed by Client or FTI in connection with this Engagement Contract. FTI and Client will each comply with its own respective obligations under applicable data protection laws in relation to their processing of personal data under this Engagement Contract. Should the Services involve cross-border transfers of personal data, FTI and Client hereby enter into Module 1 of the EU Standard Contractual Clauses published by the European Commission and the UK Addendum to the EU Standard Contractual Clauses published by the ICO (where applicable) (together the "**Standard Contractual Clauses**"), with either Client or FTI acting as data exporter and either Client or FTI as data importer, as appropriate, in respect of any international transfer of personal data which would be prohibited by applicable data protection law in the absence of the Standard Contractual Clauses, in the form, manner, and version set out at https://ftitechnology.com/trust/cidta in effect as of the date of this Engagement Contract. Client acknowledges that FTI may appoint processors to process personal data on its behalf in connection with the Services. Such processors may be located overseas. Where required by applicable data protection law, FTI will enter into appropriate safeguards with these processors. Client and FTI agree that no "sale" (as that term is defined under applicable data protection laws) of personal data is intended as part of the Engagement Contract, and both parties will take steps to ensure no sale occurs. The parties agree that any provision of personal data by one party to another under the Engagement Contract is necessary to perform a business purpose and is not part of, and is explicitly excluded from, the exchange of consideration, or any other thing of value, between the parties.

4.7 **Artificial Intelligence** – In the course of providing the Services to Client, FTI may utilize artificial intelligence ("AI") technologies, including machine learning, large language models, and generative AI. The AI technologies utilized by FTI may be developed internally by FTI, developed for FTI, or otherwise contained within third-party software. FTI has developed a policy setting forth guidelines and principles for its personnel regarding the responsible and ethical development, deployment and use of AI technologies. Additionally, FTI requires that its suppliers' use of AI conforms with FTI's existing standards or requirements, including those regarding confidentiality, data protection and information security.

**5. Termination**

5.1 **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, FTI will stop all work immediately. Client will be responsible for all fees and expenses incurred by FTI through the date the termination notice is received.

5.2 **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter and Clauses 1.1, 4, 6, and 7 of these Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6. Indemnification, Liability Limitation, and Other Matters**

6.1 **Indemnification** – Client agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors, and employees (collectively "Indemnified Persons") from and against any and all third party claims, for liabilities, damages, obligations, costs, and expenses (including reasonable attorneys' fees and expenses and costs of investigation) (collectively, "Losses") arising out of or relating to Client's retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services, or other matters relating to or arising from this Engagement Contract, except to the extent that any such Losses shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted (an "Adverse Determination"). Client shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance. FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2 **Limitation of liability** – Client agrees that no Indemnified Person shall be liable to Client or its respective successors, affiliates, or assigns, for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect, or punitive damages, damages for lost profits or opportunities, or other like damages or claims of any kind. In the event that FTI agrees hereunder and/or in writing to accept liability to more than one party, the limit of FTI's liability set forth in this Section 6.2 shall be shared between the parties, and in no event shall FTI's aggregate liability exceed the total amount of the fees paid to FTI under this Engagement Contract.

**7. Governing Law, Jurisdiction, WAIVER OF JURY TRIAL, Compliance with Law, Notice, and Miscellaneous**

FTI CONSULTING

7.1 **Governing Law** – The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

7.2 **Jurisdiction; Service** – The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute, or difference concerning the Engagement Contract and any matter arising from it. The Bankruptcy Court having jurisdiction over Client's Bankruptcy case shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such courts and irrevocably waive any right they may have to object to any action being brought in these courts, to claim that the action has been brought in an inconvenient forum or to claim that those courts do not have jurisdiction. Each party agrees that it may be served with legal process, including a summons and complaint, by a recognized overnight courier (e.g., Federal Express, UPS) and agrees to waive personal service of the same in any action or lawsuit. Service under this provision may be directed to each party's notice address as provided in Section 7.5. The notice address shall be deemed valid unless updated or changed by written notice.

7.3 **WAIVER OF JURY TRIAL** – TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, CLIENT, AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE TO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR THIS ENGAGEMENT CONTRACT.

7.4 **Compliance with Laws –** Each of FTI and Client agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery, and other economic sanctions laws and regulations of the United States, United Kingdom, European Union, and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. Client further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. Each of FTI and Client shall promptly notify the other party in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by such party or its directors, officers, employees, or agents.

7.5 **Notice –** All notices, requests, consents, claims, demands, waivers, and other formal communications under this Engagement Contract shall be in writing and shall be deemed to have been given (a) when delivered by hand, (b) when received by the addressee, if sent by a nationally recognized overnight courier (evidence of receipt requested), (c) on the date sent by email if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient (in each case, if successfully transmitted and with a copy sent via one of the other methods of delivery specified in this paragraph), or (d) upon delivery, if mailed by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below, or at such other address for a party as shall be specified in a notice given in accordance with this paragraph:

If to FTI: FTI Consulting, Inc.
555 12th Street NW, Suite 700
Washington, D.C., 20004
Attn: Legal Department

Email: LegalNotices@fticonsulting.com

If to Client: SIMAD HOLDINGS LTD.
50 Quality Street, #110357
Trumbull, Connecticut, 06611
Attn: Asaf Ravid
Email: aravid@circleinv.com

7.6 **Miscellaneous** – Client shall not assign any of its rights or delegate any of its obligations under this Engagement Contract without the prior written consent of FTI. Any purported assignment or delegation in violation of this provision is null and void. No assignment or delegation relieves Client of any of its obligations under this Engagement Contract. This Engagement Contract represents the entire understanding of the parties hereto and supersedes any and all other prior agreements among the parties regarding the subject matter hereof; shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors, and permitted assigns; may be executed and sent electronically (followed by originals sent via regular mail if requested by a party), and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument; and may not be waived, modified or amended unless in writing and signed by a representative of Client and FTI. The provisions of this Engagement Contract shall be severable. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a waiver thereof. This Engagement Contract is for the sole benefit of the parties hereto and their respective successors and permitted assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason hereof.

**SCHEDULE A**

**FTI STANDARD RELEASE LETTER**

[Date]

[Third Party Name]
[Address]
[City, State Zip]

To whom it may concern.

Pursuant to that engagement letter dated _____ __, 202_ (the "Engagement Letter") between FTI Consulting, Inc. ("FTI") and _________ ("Client"), FTI has been engaged to perform certain services solely for Client (the "Services") in connection with ____________________________.

Client has requested that FTI provide [name of recipient] (the "Recipient") access to the report of its findings dated [date] and including any subsequent revisions, updates, or addendums thereto (together, the "Report"). Recipient acknowledges that this Report was prepared at the direction of Client, was performed exclusively for Client's sole benefit and use, may not include all procedures deemed necessary for the purposes of Recipient, and that certain findings and information may have been communicated to Client that are not reflected in the Report. Recipient further acknowledges that (a) the Report is being provided for informational purposes only; (b) the Report shall not constitute, either expressly or impliedly, any representation or affirmation by FTI as to the accuracy, completeness, and/or fairness of presentation of the Report or any statements or information contained therein; and (c) Recipient will make any decisions based on its own investigation, due diligence, and analysis, independent of, and without reliance on or reference to, the contents of the Report or any other opinions or conclusions of FTI.

In consideration of FTI allowing Recipient access to the Report and, if requested by Recipient, discussing the Report, Recipient agrees that it does not acquire any rights as a result of such access that it would not otherwise have had and acknowledges that FTI does not assume any duties or obligations to Recipient in connection with such access.

Recipient agrees to release FTI and its personnel from any claims or causes of action by Recipient that arise as a result of FTI permitting Recipient access to the Report. Recipient agrees not to sue or participate in any way (except as required by a validly issued court order or subpoena) in any legal proceeding, dispute, or cause of action against FTI arising out of or relating to the Report, including any claim that Recipient has in any way relied upon the Report. Recipient acknowledges that FTI does not owe or accept a duty to Recipient, whether in contract or in tort, or however otherwise arising.

Further, Recipient agrees not to disclose or distribute the Report, or any other information received orally or in writing from FTI, to any other parties without FTI's prior written consent. Notwithstanding the foregoing, Recipient may disclose the Report (a) to its Affiliates and its and their respective directors, officers, and employees, (the "Representatives") who have a need to receive the Report in connection with the purpose for which the Report is being provided to Recipient and solely for informational purposes, (b) to its legal counsel, accountants, and auditors

FTI CONSULTING

who are bound by written agreements and/or rules of professional conduct/ethics to maintain the Report as confidential ("Professional Advisors"), (c) to its advisors (including but not limited to financial advisors), consultants, lenders, and/or potential investors, provided that, before any disclosure of the Report, each advisor, consultant, lender, and/or potential investor executes its own release letter with FTI with terms no less restrictive than those contained herein, provided, further that Recipient remains responsible for any breach of this letter agreement by its Representatives or Professional Advisors. Recipient may also disclose the Report as required by any applicable law, or by order or ruling of any competent judicial, governmental, regulatory, or supervisory body, provided, to the extent legally permissible, Recipient provides FTI with written notice promptly upon becoming aware of such obligation and reasonably cooperates with FTI, at FTI's expense, in FTI's efforts to obtain a protective order and/or limit the scope of such disclosure. Notwithstanding the foregoing, no notice is required regarding any disclosure of any information to a regulator or governmental agency having jurisdiction over Recipient or its Affiliates in the course of such regulator's or governmental agency's routine examination, reporting, audit, or inspection not targeting the Report or the Services. For purposes of this letter agreement, the term "Affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with Recipient, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract, or otherwise.

Recipient's obligations hereunder do not prohibit Recipient from disclosing, without attribution or reference in any matter to FTI or the Report, any information that: (a) is or becomes publicly available other than by a breach of this letter agreement; (b) is or becomes available to Recipient from a third party who is known by Recipient to not be prohibited from disclosing such information by a contractual or legal obligation; (c) is known to Recipient prior to the date of this letter agreement; or (d) that Recipient develops independently without the use of or reliance on the Report. FTI is not authorized to and does not waive any other non-use or non-disclosure obligations which may apply to Client's or any other party's information that may be subject to confidentiality agreements.

This letter agreement constitutes the entire agreement between the parties regarding the subject matter hereof and shall be governed by the laws of the State of New York, without giving effect to the choice of law provisions thereof.

Please confirm Recipient's agreement with the foregoing by signing and dating a copy of this letter and returning it to FTI.

Sincerely,

___________________________________

Cynthia Romano
Senior Managing Director
FTI Consulting, Inc.

Acknowledged, accepted, and agreed:

[ENTER RECIPIENT NAME]

By: ___________________________________

(Name of Company official)

**<u>Exhibit 2</u>**

**Engagement Letter**

June 18, 2026

Philip A. Selden
Cole Schotz P.C.
1875 K Street NW, Suite 475
Washington, D.C. 20006

Asaf Ravid
SIMAD Holdings LTD
50 Quality Street, #110357
Trumball, CT 06611

**Re: _SIMAD Holdings LTD Forensic Analysis_**

Dear Philip:

This letter will confirm the retention of FTI Consulting, Inc. a ("FTI") by Cole Schotz P.C. ("Counsel"), in connection with its representation of SIMAD Holdings LTD ("Client") in the above referenced matter (the "Engagement") and incorporates by reference our June 8, 2026 engagement letter. FTI will work under the direction of Counsel in this matter.

The services, to be performed at your direction, are expected to include the following:

**Funds-Tracing Exercise**

- Trace the flow of funds through accounts owned by the Client to DAMIS Holdings LTD, or affiliates, including the initial receipt of bond proceeds and all outgoing transfers.
- For each transaction, record the date, amount, originating account, receiving party, and any available description or reference information.
- Prepare schedules and flow charts that illustrate the movement of bond proceeds from issuance through downstream transfers during selected periods, including the chronology of significant transfers.

**Bank Reconciliations**

- Establish an accurate and complete picture of cash activity and balances across the Clients accounts for selected periods.
- For each account, obtain and reconcile bank statements against the Client's internal books and records, identify and document reconciling items, and flag any unreconciled variances for further review.

The services may be performed by FTI or by any subsidiary or Affiliate of FTI, as FTI shall determine. FTI may also provide services through its or its subsidiaries' or Affiliates' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary, Affiliate, and to any such agents or independent contractors and their employees. For purposes of this Engagement Contract, the term "Affiliate" shall

mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term “control” means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise.

All professional conclusions will be those of the FTI professionals working on this matter. Counsel and the Client will make available to FTI the documents necessary for FTI to complete the analysis. Should FTI determine that additional documents are necessary, FTI will make all requests for such records through Counsel.

I will maintain overall administrative responsibility for the Engagement, including billing and client relations. I will be actively involved in the performance of the Engagement and will use such other staff for assistance as deemed necessary. FTI’s work will be billed at hourly rates applied to productive hours engaged in providing service and out-of-pocket expenses. Hourly rates are based upon the experience and skills of the personnel involved.

The current hourly rates by professional level are the following ranges:

| | |
|---|---|
| Senior Managing Directors | $1,270-1,580 |
| Directors / Senior Directors/Managing Directors | 940-1,195 |
| Consultants / Senior Consultants | 535-850 |
| Administrative / Paraprofessionals | 195-395 |

FTI understands that Client will be solely responsible for payment of its fees and expenses. As such, FTI will submit invoices for its fees and expenses incurred in connection with this Engagement directly to the Client, with a copy sent to Counsel. The parties acknowledge and agree that the attorney-client privilege between Counsel and FTI shall remain notwithstanding the fact that Client is billed directly for services provided under this Engagement. The name and address of the Client designee to receive and approve FTI’s invoice is indicated on the signature page of this letter.

Certain of our services may be subject to sales taxes when oral or written reports are delivered by us in a state that levies sales tax on fees for investigative services. Where divisible, fees for services that are taxable will be detailed separately from non-taxable services.

FTI will be actively reviewing documents and talking with Counsel to develop an understanding of the issues and supporting materials that have been collected to date. After this initial review, FTI will be able to prepare an estimate of the required work effort and associated fees. The nature of FTI’s work will require that the estimate be flexible, but FTI will discuss in advance with Counsel any substantial variances.

A copy of FTI’s standard terms and conditions, which Counsel and Client accept and hereby agree to, is attached, and together with this letter of engagement, constitute the “Engagement Contract.” The Engagement Contract comprises the entire agreement relating to the subject matter hereof, to the exclusion of any other express or implied terms, including any conditions, warranties and representations, and shall supersede all previous proposals, pre-engagement confidentiality agreements, letters of

engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the subject matter hereof.

Counsel and the Client acknowledge their respective agreement with this Engagement Contract as evidenced by their signatures below. In the event only Counsel is executing on behalf of its Client, Counsel represents and warrants that Client has been notified of the terms of this Engagement Contract, agrees to be bound hereby and has authorized Counsel to enter into this Engagement Contract on Client's behalf. Please return to FTI the signed copy of this Engagement Contract. FTI will not be able to begin work until it has received an executed Engagement Contract. If this Engagement Contract is not executed by Counsel and/or Client and returned to FTI within ten days of the date of this letter, the offer to provide services is revoked and this Engagement Contract shall be deemed null and void.

Very truly yours,

FTI CONSULTING, INC.

By: ________________________________

Jay Spinella
Senior Managing Director

Accepted by: Cole Schotz P.C.

By: ____________________

Print Name: Philip Selden

Title: ____________________

Date: 6/25/26

Email: pselden@coleschotz.com

Accepted by: SIMAD Holdings LTD

By: ____________________

Print Name: Asaf Ravid

Title: CRO

Date: 06/25/2026

Email: aravid@circleinv.com

Name and Address of person designated to receive and approve invoices related to this Engagement:

Name: Asaf Ravid
Address: ______________________
______________________
Phone: 347-962-0701
Email: aravid@circleinv.com

**FTI policy requires that we have contact information on file for the party ultimately responsible for payment (Client) to FTI. If this person is different than the person designated above to receive and approve invoices, please complete:**

Name: ______________________
Address: ______________________
______________________
Phone: ______________________
Email: ______________________

**Does Client require invoices to be submitted via an electronic billing system? Yes:____ No:____**

*If yes, which billing system*? ______________________

| **Contact Information of the person designated to receive & approve invoices:** | |
|---|---|
| Name: | |
| Address: | |
| Phone: | |
| Email: | |
| AP Invoice Email (if applicable): | |
| **Invoice Processing Information** | |
| Please list any information required on the Invoice (i.e., Purchase Order #, Hours by Resource, Fees broken down by workstream, etc) | |
| Require invoice submission via electronic billing system? | |
| If yes, please provide the necessary electronic billing system information (i.e., e-bill internet address): | |

**FTI STANDARD TERMS AND CONDITIONS**

FEES; PAYMENT TERMS

FTI's rates are subject to adjustment from time to time and at least annually effective October 1. FTI will advise Client and Counsel immediately if a rate adjustment is being made. Further, if any work needs to be performed by FTI personnel in our international offices, such work will be billed at the rates set forth for the specific international office.

FTI will bill for reimbursement of reasonable and customary out-of-pocket expenses that are directly incurred on the Engagement, such as messenger, travel, meals, accommodations, computing resources, and other expenses specifically related to the Engagement. Client shall be responsible for all sales, use, and excise taxes, and any other similar taxes, duties, and charges of any kind imposed by any federal, state, or local governmental entity on any amounts payable by Client hereunder. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this Engagement to which FTI is not a party, Client will compensate FTI at its hourly rates and reimburse FTI for reasonable direct and allocated expenses (including counsel fees) with respect thereto.

All payments will be due upon receipt of the invoice. For your information and use, FTI's Taxpayer Identification Number is 52-1261113. In the event Client disputes any of the fees or expenses on a specific invoice, the Client shall notify FTI within twenty (20) days of receipt of the invoice of such a dispute. If Client fails to notify FTI within the twenty (20) day period, the Client shall have waived its right to dispute such invoice.

Without limiting FTI's other rights and remedies, in the event any payment is not paid by Client within thirty (30) days of the date of invoice, then interest shall accrue, from the thirty-first (31st) day until payment in full is received, at the rate of one and one half (1 ½ %) percent per month. Nothing herein shall be construed as extending the due date of payments to be made by Client under this Engagement Contract. In addition to any other remedies set forth above, and any other remedies available at law, FTI reserves the right to halt further services until payment is received on past-due invoices. It is FTI's normal practice to be paid in full for all work performed to date prior to issuance of a report, deposition testimony and/or trial testimony. Client agrees to pay all court costs, attorney fees (whether or not contingent on collection from Client) and other expenses which may be associated with the collection of unpaid invoices.

All payments under this Engagement Contract shall be made in cleared funds, without any deduction or set-off and free and clear of and without deduction for or on account of any taxes, levies, imports, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental, fiscal or other authority. If Client is compelled to make any such deduction or such deduction is imposed by any governmental, fiscal or other authority, Client will pay to FTI such additional amounts as are necessary to ensure receipt by FTI of the full amount which FTI would have received but for the deduction.

FTI's fees and expenses are not contingent upon the final results, nor does it guarantee any result or resolution in connection with this Engagement. FTI will meet with Counsel regularly to discuss the ongoing work and associated fees and FTI will rely on Counsel to communicate these items to the Client.

CONFLICTS OF INTEREST

FTI is a global firm and, through its practice groups and Affiliates, provides a variety of services to third parties on a non-exclusive basis including by way of example and not limitation, Forensic and Litigation Consulting, Technology Services, Corporate Finance/Restructuring, Economic Consulting and Strategic Communications. Other professionals of FTI may be engaged by parties with interests that are adverse to and may not be consistent with the interests of Counsel and Client. During the pendency of this Engagement, the FTI professionals providing services hereunder will not provide services in this matter to a party that is adverse to Client in this matter.

CONFIDENTIALITY

The parties hereto agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving services under this Engagement Contract. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. FTI understands that the confidential information, as well as its work product and files may become subject to discovery; however, until such materials are sought by subpoena or other process, they will be maintained by FTI as confidential. It is agreed that those materials and all other working papers and other documents prepared by FTI pursuant to this Engagement will be maintained as confidential materials and will not be disclosed to third parties without Counsel's consent, except as may be required by law, regulation, or judicial or administrative process. Unless prohibited by law, FTI agrees to notify Counsel promptly of any of the following events: (a) a request by anyone to examine, inspect, or copy such documents or records; or (b) any attempt to serve, or the actual service of, any court order, subpoena, or summons upon FTI that requires the production of such documents or records. Confidential information shall not include information that is or becomes generally available to the public other than as a result of a breach of a non-disclosure obligation hereunder, is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information, or is or has been independently developed by the recipient. Without prejudice to the above, the Client hereby agrees that FTI shall be entitled to cite the performance of the services hereunder to its clients and prospective clients as an indication of FTI's experience and use the Client's name and logo in association with such disclosure, unless FTI and the Client specifically agree otherwise in writing.

WORK PRODUCT; OWNERSHIP OF DELIVERABLES

Any deliverable or other advice given or report issued by FTI is provided solely for Client's use and benefit and only in connection with the purposes in which the services hereunder are provided, including but not limited to all Permitted Disclosures (defined below). Except for Permitted Disclosures (defined below), Client shall not provide any deliverable or other advice given or report issued by FTI to any third party, or refer to FTI or its services, without FTI's prior written consent, which consent shall not be unreasonably withheld or delayed but may be conditioned on the recipient executing a third party release letter in the form provided by FTI. "Permitted Disclosures" means any disclosure that is (a) required by law or legal process or is made in connection with the services or the related investigation, including disclosures in connection with related investigations, remediation, dispute or litigation; or (b) made to Client's Affiliates and its and their respective directors, officers, employees, legal counsel, accountants and auditors who have a need to know, and who are bound by written agreements and/or rules of professional conduct/ethics to maintain confidentiality. In no event shall FTI assume any responsibility to any third party to which any deliverable, advice or report is disclosed or otherwise made available.

If FTI is required to deliver, prepare or otherwise produce a written deliverable in connection with the services, then Client will, conditioned upon FTI's actual receipt of payment for the services rendered (and expenses incurred, if any) necessary to prepare and issue such deliverable, obtain ownership of such deliverable in its final form, subject to the restrictions on use or disclosure contained herein. To the extent that FTI uses any of its intellectual property ("FTI IP") in connection with the Services or any deliverable, then such FTI IP shall, at all times, remain the property of FTI. Client shall not acquire any ownership right or interest in FTI IP; provided, however, FTI grants to Client a perpetual, worldwide, irrevocable, limited license to use the FTI IP for the sole purpose for which such deliverable was prepared. FTI shall have all ownership and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting FTI's business.

INFORMATION AND ASSISTANCE

While FTI's work may include an analysis of financial and accounting data, the services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Client management will be responsible for any and all financial information they provide to FTI during the course of this Engagement, and FTI will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause FTI's advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, FTI will not express any opinion or other form of assurance on financial statements of the Client.

In the event the services involve prospective financial information, FTI's work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and FTI will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. FTI will take no responsibility for the achievability of results or events projected or anticipated by the management of the Client.

PERSONAL DATA; DATA PROTECTION; ARTIFICIAL INTELLIGENCE

The Client shall notify FTI in writing if Client delivers to FTI any personally identifiable information or equivalent and the Client shall instruct FTI in writing if any additional measures (i.e. data transfer protections) are required. Upon written notice to the Client, FTI will, at its option, degauss, destroy or return to the Client all original materials provided by the Client and/or Counsel to FTI, and all materials created by FTI specifically for the Client as a result of an engagement; provided, however, that with respect to back-up media, such materials will be overwritten, degaussed or destroyed, subject to FTI's normal schedule for overwriting and destruction, as the case may be.

In this paragraph, the terms "controller", "personal data", "processed", "processor", "processing" shall have the meaning given to them, or any equivalent terms, in applicable data protection laws. FTI and the Client will each act as separate and individual controllers in relation to any personal data processed by the Client or FTI in connection with this Engagement Contract. FTI and the Client will each comply with its own respective obligations under applicable data protection laws in relation to their processing of personal data under this Engagement Contract. Should the services involve cross border transfers of personal data, FTI and the Client hereby enter into Module 1 of the EU Standard Contractual Clauses

published by the European Commission and the UK Addendum to the EU Standard Contractual Clauses published by the ICO (where applicable) (together the ("Standard Contractual Clauses")), with either the Client or FTI acting as data exporter and either the Client or FTI as data importer, as appropriate), in respect of any international transfer of personal data which would be prohibited by applicable data protection law in the absence of the Standard Contractual Clauses, in the form, manner, and version set out at https://ftitechnology.com/trust/cidta, in effect as of the date of this Engagement Contract. The Client acknowledges that FTI may appoint processors to process personal data on its behalf in connection with the services. Such processors may be located overseas. Where required by applicable data protection law, FTI will enter into appropriate safeguards with these processors. Client and FTI agree that no "sale" (as that term is defined under applicable data protection laws) of personal data is intended as part of the Engagement Contract, and both parties will take steps to ensure no sale occurs. The parties agree that any provision of personal data by one party to another under the Engagement Contract is necessary to perform a business purpose and is not part of, and explicitly excluded from, the exchange of consideration, or any other thing of value, between the parties.

In the course of providing the services to Counsel and Client, FTI may utilize artificial intelligence ("AI") technologies, including machine learning, large language models, and generative AI. The AI technologies utilized by FTI may be developed internally by FTI, developed for FTI, or otherwise contained within third-party software. FTI has developed a policy setting forth guidelines and principles for its personnel regarding the responsible and ethical development, deployment and use of AI technologies. Additionally, FTI requires that its suppliers' use of AI conforms with FTI's existing standards or requirements, including those regarding confidentiality, data protection and information security.

LIABILITY AND INDEMNITY

Client and Counsel agree that FTI shall not be liable under this Engagement Contract to the Client, Counsel, or their respective successors, assigns or Affiliates for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. In no event shall FTI be liable for punitive or consequential damages of any kind. In the event that FTI agrees hereunder and/or in writing to accept liability to more than one party, the limit of FTI's liability set forth in this paragraph shall be shared between the parties, and in no event shall FTI's aggregate liability exceed the total amount of the fees paid to FTI under this Engagement Contract. The Client shall indemnify FTI, and hold FTI harmless against any and all claims by third parties for losses, damages or liabilities, including reasonable attorneys' fees and expenses ("Losses"), arising in any manner out of or in connection with this Engagement, unless it is finally judicially determined that such Losses resulted from the gross negligence or willful misconduct of FTI. The terms of this paragraph shall survive the termination of this Engagement Contract and shall apply to any controlling person, director, officer, employee or affiliate of FTI.

MISCELLANEOUS

The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof.

The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, New York City, shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an

inconvenient forum or to claim that those Courts do not have jurisdiction. In the event that differences concerning the services or other matters arising hereunder should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense, Counsel, the Client and FTI irrevocably and unconditionally agree to waive a trial by jury in any action, proceeding or counterclaim arising out of or relating to the Engagement Contract.

Each party agrees that it may be served with legal process, including a summons and complaint, by recognized overnight courier (e.g. Federal Express, UPS) and agrees to waive personal service of the same in any action or lawsuit. Service under this provision may be directed to each party's notice address as provided herein. The notice address shall be deemed valid unless updated or changed by written notice.

Each of FTI and the Client agrees that it will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. The Client further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. Each of FTI and the Client shall promptly notify the other in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by such party or its directors, officers, employees or agents.

All notices, requests, consents, claims, demands, waivers and other formal communications under this Engagement Contract shall be in writing and shall be deemed to have been given (a) when delivered by hand, (b) when received by the addressee, if sent by a nationally recognized overnight courier (evidence of receipt requested), (c) on the date sent by email if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient (in each case, if successfully transmitted and with a copy sent via one of the other methods of delivery specified in this paragraph), or (d) upon delivery, if mailed by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the addresses indicated below, or at such other address for a party as shall be specified in a notice given in accordance with this paragraph:

If to FTI: FTI Consulting, Inc.<br>555 12th Street NW, Suite 700<br>Washington, D.C., 20004<br>Attn: Legal Department<br>Email: LegalNotices@fticonsulting.com

**<u>Confidential Information of FTI Consulting</u>**

June 25, 2026

Philip A. Selden
Cole Schotz P.C.
1875 K Street NW, Suite 475
Washington, D.C. 20006

Asaf Ravid
SIMAD Holdings LTD
50 Quality Street, #110357
Trumball, CT 06611

**Re: Addendum to Letter of Engagement dated June 18, 2026 by and between FTI Consulting, Inc., and SIMAD Holdings LTD**

**1. Introduction**

This Addendum to that certain Letter of Engagement by and among FTI Consulting, Inc., Cole Schotz P.C. ("Counsel"), and SIMAD Holdings LTD (the "Client") dated June 18, 2026 (the "Engagement Contract"), hereby supplements the Engagement Contract with respect to the specific services set forth below that will be provided by FTI's subsidiary, FTI Consulting Technology LLC ("FTI Tech") and revises the payment terms accordingly (hereinafter referred to as the "Addendum"). This Addendum is in connection with the Counsel's/Client's request that FTI Tech provide additional services to Counsel and the Client pursuant to the terms of the Engagement Contract. This Addendum confirms that we have been retained by the Client to provide certain consulting services (the "Services") as set out below. The term of this Addendum shall begin on the date that you execute this Addendum and terminate upon completion of the Services, unless otherwise extended by agreement of the parties. References in the Engagement Contract and in this Addendum to FTI shall include both FTI Consulting, Inc. and FTI Consulting Technology LLC.

**2. Scope of our Services**

The Services, to be performed at your direction, are set forth on Exhibit A, attached hereto.

**3. Fees**

The Client shall be solely responsible for the payment of FTI Tech's fees in connection with FTI Tech's provision of the Services. At this time, the complete scope and volume of electronic devices and data sources requiring collection have not yet been determined. Once additional information becomes available regarding the number, type, location, and complexity of the devices and data sources to be collected, we reserve the right to provide a revised fee estimate and billing rates specific to the digital forensic collection work.

**4. Additional Terms and Conditions Governing the Services**

The Engagement Contract is hereby amended with respect to the Services by adding the following provisions:

Depending on certain state and/or municipality regulations, FTI may be required to collect sales and use tax on certain of FTI's products and services. Alternatively, client shall provide documentation of direct pay certification or exemption from such taxes.

Neither Client nor its Counsel acquires any interest in the copyright or any other intellectual property rights, including but not limited to any source code, enabling technology, information or other processes, know-how, scripts or sub-routines in or related to any software and/or intellectual property owned or licensed by FTI (the "FTI IP") and FTI shall be the sole and exclusive owner and copyright proprietor of all rights and title in and to the FTI IP in whatever stage of completion. Except as expressly set forth herein, all rights and licenses granted to Client are non-transferable and non-assignable. FTI reserves all rights not expressly granted herein. The FTI IP specifically excludes the content of any documents collected by or furnished to FTI by or on behalf of the Client or its Counsel (the "Client Data"). Client represents and warrants that the Client is the owner of the Client Data or otherwise has the express right to provide the Client Data to FTI in connection with FTI's provision of services hereunder.

In the event FTI's provision of Review Services (as defined herein) shall be performed using Client's or Counsel's software (the "3rd Party Software") licensed by Client or Counsel (the "Licensee"), the Licensee represents and warrants to FTI that the Licensee has the right to grant to FTI and the Reviewers (as defined herein) a sublicense to use the 3rd Party Software in connection with FTI's provision of Review Services. The Licensee further agrees to indemnify FTI and the Reviewers, and hold FTI and the Reviewers harmless from and against any and all claims for Losses (as defined herein) arising out of FTI's and the Reviewers' use of the 3rd Party Software.

Any advice given, or report issued by FTI is provided solely for Counsel's and Client's use and benefit and only in connection with the purpose for which the Services are rendered. Unless required by law, neither Client nor Counsel shall provide any advice given or report issued by FTI to any third party, or refer to FTI or the Services, without FTI's prior written consent, which shall be conditioned on the execution of a third party release letter in a form provided by FTI. Notwithstanding the foregoing, the Client may disclose any advice given or report issued by FTI to its Affiliates and its and their respective directors, officers, employees, legal counsel, accountants and auditors who have a need to know, and who are bound by written agreements and/or rules of professional conduct/ethics to maintain confidentiality. Further, nothing herein shall restrict Counsel or Client from using or disclosing any production logs, summaries, or reports provided in connection with the provision of e-discovery services by FTI. In no event, regardless of whether consent has been provided, shall FTI assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

In connection with the provision of services hereunder, and to provide the Client with 24-hour support, FTI may utilize the services of FTI personnel outside of the United States. FTI may utilize the services of and disclose Client Data to third parties in connection with (a) data retrieval, storage and transmission; (b) technical and support operations; and (c) products licensed by FTI for its delivery of services. In addition, if this Engagement will involve processing, analysis, management or transformation of data, in order to enable FTI to provide continuous support, such data may be

processed by those FTI teams or Affiliates in the United States, United Kingdom, India, and/or Australia (the "Third Countries"). By Client's and/or Counsel's signature on this Engagement Contract, Client consents to (a) the FTI Affiliates and teams processing Client's data in the Third Countries on Client's behalf, and (b) FTI's transfer of such data to those FTI Affiliates may be deemed a restricted transfer as defined in applicable data protection laws between Client or its relevant Affiliate and FTI or its relevant Affiliate. Notwithstanding the foregoing, Client and Counsel further acknowledge that FTI's email and associated collaboration records are processed through Microsoft 365 which is configured based on the designated location of the FTI personnel the email was addressed to and in accordance with multi-geo locations as published on: https://learn.microsoft.com/en-us/microsoft-365/enterprise/microsoft-365-multi-geo?view=o365-worldwide#microsoft-365-multi-geo-availability. FTI's global email archiving and spam filtering are provided through Mimecast which is replicated and retained, unless otherwise subject to an applicable legal process or litigation hold, for up to three (3) years in Germany. Client and Counsel consent to any Client Data provided to FTI by email will be replicated and retained accordingly. To the extent that the Client or Counsel wishes to transmit certain information or any data to FTI and objects to that data being replicated and retained in accordance with this clause, Client and Counsel will use a communication or transmission method other than e-mail and agree to not transmit or otherwise disclose Client Data or personal data via email to FTI.

Document review services (the "Review Services") requested by Client will be performed by FTI or a subcontractor of FTI (together, the "Reviewers"). The Reviewers are subject to the same conflict of interest and confidentiality undertakings as those set forth in this Engagement Contract. Notwithstanding the foregoing, FTI shall be entitled to disclose the existence of this Engagement to other law firms engaging FTI for Review Services solely for such law firm's conflict review purposes. Client, Counsel and FTI acknowledge and agree that the Review Services shall include document review for both responsiveness and privilege purposes. Client, Counsel and FTI further acknowledge and agree that FTI is not a law firm, Counsel shall oversee the responsiveness and privilege review, the Review Services will be at the direction of Counsel, and all final determinations regarding relevance, privilege and production shall be in the sole determinations of Counsel.

All of FTI's reviewers work remotely. Client has been informed that FTI implements various security measures to protect the integrity of Clients documents and data. Further, FTI takes reasonable steps to protect the security and integrity of Client's documents and data while Reviewers are working from a remote work location. At Client's request, FTI can provide Client with more detailed information regarding the security procedures it employs for the Review Services.

The Parties agree that they will comply with all anti-corruption, anti-money laundering, anti-bribery and other economic sanctions laws and regulations of the United States, United Kingdom, European Union and United Nations (collectively, the "ABC/AML/Sanction Laws") in connection with this Engagement. The Client further agrees that it shall not, and it shall procure its employees not to, pay or cause other person(s) to pay FTI using any funds that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI, or otherwise take any action that would result in a violation of any of the ABC/AML/Sanction Laws by either Client or FTI. Each Party shall promptly

notify the other in the event of any violation or failure to comply with ABC/AML/Sanction Laws in connection with this Engagement, or allegations relating thereto, by the non-compliant Party or its directors, officers, employees or agents.

**5.** If this Engagement involves, is expected to involve the processing of, or if FTI otherwise receives: (i) personal data as governed by Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 as amended, and/or (ii) personal information as governed by the California Consumer Privacy Act or any other data subject to the data protection laws of any other country, state or territory which apply to such processing, the terms of the FTI Consulting Data Protection Addendum (the "DPA"), published at https://www.ftitechnology.com/trust/dpa shall apply to this Engagement and it shall form an integral part of this Engagement Contract. In the event of a conflict between the terms of this Engagement Contract and the terms of the DPA, the terms of the DPA shall prevail in relation to the processing of such personal data and/or personal information. For purposes of this Engagement Contract, the term "Affiliate" shall mean and include any entity that directly or indirectly controls, is controlled by, or is under common control with a party, for as long as such relationship remains in effect. The term "control" means the possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities, through contract or otherwise.

To the extent FTI creates, receives, or maintains Protected Health Information (as defined by the Health Insurance Portability and Accountability Act of 1996) on Client's behalf as part of the Services or Engagement, FTI will enter into a Business Associate Agreement with the Client. In the event of any conflict between the Business Associate Agreement, on the one hand, and the terms of this Engagement Contract and/or the DPA, on the other hand, the terms of the Business Associate Agreement shall prevail in relation to the creation, receipt or maintenance of Protected Health Information.

The provision of our Services under this Engagement Contract may involve the use of Artificial Intelligence ("AI") technology. In order to provide AI services, FTI may leverage AI model/services providers (together, "AI Technology"). FTI undertakes to conduct the appropriate assessments and testing to incorporate responsible, lawful and ethical AI solutions and, although FTI will review the AI Technology outputs in order to evaluate accuracy and efficacy, Client acknowledges and agrees to the following: 1) some data may be incompatible with the AI Technology, 2) both the accuracy and quality of the outputs from AI Technology can be influenced by the quality of the data, and as such, may produce inaccurate or erroneous outputs, 3) FTI may produce aggregate, anonymized statistics about some of the AI Technology related tasks which will not identify the Client or the underlying Client Data, 4) prompts created and used to instruct any models may be stored as part of the AI Technology application or subject to clause 10 of the DPA, 5) Client Data sent to the AI Technology may be processed ephemerally within the AI model/services providers regions, but will not be retained by the AI model/services provider, nor do these services use any Client Data to train their AI models. However, FTI does not manage or participate in the updates to the AI models being leveraged through the AI Technology. Client also acknowledges and agrees the use of the AI Technology provided by FTI, will be in accordance with applicable laws and regulations governing the use of AI Technology including but not limited to the appropriate disclosures required for AI generated or AI derived content. Accordingly, Client will not use the AI

Technology or require FTI to use the AI Technology in any manner that does not duly observe and comply with applicable laws, FTI's governing policies or best practices.

**6. Other Terms and Conditions**

Unless specifically indicated within this Addendum, all terms and conditions of the Engagement Contract shall remain in full force and effect.

**7. Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Addendum by signing below.

If you have any questions regarding this letter, please do not hesitate to contact Corey Gildart at (212) 850 - 5621.

Very truly yours,

| FTI CONSULTING TECHNOLOGY LLC | FTI CONSULTING, INC. |
| --- | --- |
| By: ______________________ | By: ______________________ |
| Name: Corey E. Gildart | Name: Jay Spinella |
| Title: Senior Managing Director | Title: Senior Managing Director |

ACKNOWLEDGED AND AGREED:

By: ______________________

Name: Asaf Ravid

Title: Chief Restructuring Officer

COLE SCHOTZ, P.C.

Name: Philip Selden

Does client require invoices to be submitted via an electronic billing system? Yes___ No X

**EXHIBIT A**

FTI shall provide digital forensic collection services, as requested by the Client, which may include the identification, preservation, collection, and forensic imaging of electronically stored information from relevant custodians and data sources. Such services may include collecting data from desktop and laptop computers, mobile devices, email accounts, cloud-based storage repositories, collaboration and messaging platforms, and other relevant electronic systems.

The scope of collections may include, but is not limited to, computers, mobile phones, email accounts, messaging applications, cloud storage environments (including OneDrive and similar platforms), and other repositories containing potentially relevant information. FTI may also perform related activities necessary to preserve the integrity of the collected data, including chain-of-custody documentation, forensic imaging, data preservation, and collection validation procedures.

The specific custodians, devices, accounts, systems, and data sources to be collected will be determined in consultation with the Client and may be refined as additional information becomes available throughout the engagement.

Based on our understanding of the requirements and using the below assumptions, this proposal outlines the services FTI will provide and the estimated fees for an initial 2 custodian collection and preservation (1 individual custodian and 1 corporate custodian [shared Dropbox]. This budget estimate does not include data processing fees and/or consulting hours associated with analysis of the collected data beyond the collections effort.

| Item | Unit Type | Low Hours | High Hours | Blended Rate | Low Cost | High Cost | Comments |
|---|---|---|---|---|---|---|---|
| **Interviews & Onboarding** | Hours | 0.5 | 1 | $672.50 | $175.00 | $995.00 | Initial project onboarding and coordination discussions. |
| **Travel Costs** | Expense | 0 | 0 | $250.00 | $0.00 | $0.00 | Assumes local travel to counsel's NYC office, and handled with local resources. |
| **Computer Device Collection** | Hours per Device | 4 | 8 | $350.00 | $1,400.00 | $2,800.00 | Assumes standard Windows OS device imaging; does not include image extraction or analysis work. |
| **Mobile Device Collection** | Hours per Device | 2 | 6 | $350.00 | $700.00 | $2,100.00 | Assumes advanced logical iOS device imaging; does not include FFS imaging. |
| **Full File System Tech Fee** | Device | 1 | 1 | $2,500.00 | $2,500.00 | $2,500.00 | Additional licensing fee of $2,500 per device FFS collection required; assumes none for this project. |
| **Email Credential Exchange** | Hours per Account | 0.5 | 1 | $672.50 | $175.00 | $995.00 | Coordinate keys/creds with IT resources/personnel, and verify access to all necessary endpoints |
| **Email Collections** | Hours per Account | 1 | 2 | $350.00 | $350.00 | $700.00 | Assumes standard eDiscovery collections of Gmail data; does not include custom work, e.g. API work. |
| **Cloud File Extractions** | Hours per Account | 4 | 8 | $672.50 | $1,400.00 | $7,960.00 | Assumes a combination of traditional cloud forensics and custom programming solutions, e.g. |
| **Dropbox** | Account | 1 | 4 | $672.50 | $350.00 | $3,980.00 | Only includes preservation and collection of items currently accessible on enterprise box; no analysis. |
| **Chain of Custody** | Custodian per mo. | 1 | 1 | $100.00 | $1,200.00 | $1,200.00 | Chain of custody fee for securely maintaining preservation copies of evidence, in lab or on secure |
| **Data Handling & Tracking** | Hours | 2 | 5 | $672.50 | $700.00 | $1,750.00 | Includes documentation and tracking efforts in support of chain of custody, etc. |
| **BUDGET RANGE** | | | | | ***$8,950.00*** | ***$24,980.00*** | **Target budget with expected range of outcomes b/w ~$9K and ~$25K; discussion purposes only; assumes 6 mo. preservation for 2 custodians; subject to change based on complexity, size, etc.** |
| **TARGET BUDGET** | | | | | **$16,965.00** | | |

## EXHIBIT B: Rate Table

| One-Time Service Description | Unit | Rate (USD) |
|---|---|---|
| Brainspace Analytics (Document) (US) | Document | 0.01 |
| Database Decommission (US) | Each | 2,500.00 |
| Inbound data processing (US, Unit, Inbound/Outbound) | GB | 20.00 |
| Review data loading (processing outbound - promoted to review) (US, Unit, Inbound/Outbound) | GB | 85.00 |
| Emerging Data Sources Processing & Enrichment (US, Unit, Inbound/Outbound) | GB | 95.00 |
| Forensic Image Extraction (US) | Image | 500.00 |
| Forensic or logical data collection (US) | Hour | 350.00 |
| FTI reporting and analysis time (US) | Hour | 500.00 |
| TIFF / OCR / Endorsements (US) | GB | 250.00 |
| **Monthly Service Description** | **Unit** | **Rate (USD)** |
| Chain of Custody and Reference Data Storage (US) | Custodian | 100.00 |
| Near Line Data Hosting (US, 1000/mo. minimum) | GB | 5.00 |
| Online Data Hosting (US, Unit, 1000/mo. minimum) | GB | 9.00 |
| User fees (US, Relativity) | User | >= 1 @75.00 |

| Task Based Billing Rates* | Rate Per Hour (USD) |
|---|---|
| Task Based Billing: Data Collection and Management (US) | 350 |
| Task Based Billing: Emerging Digital Data Handling (Collect and Transform) (US) | 350 |
| Task Based Billing: Tech Time (US) | 265 |
| Task Based Billing: Case Management (US) | 495 |
| **Custom Requests and Strategic and Expert Services** (all other services) | Varies – See Professional Rate Table |

| | Standard Rates per Hour | |
|---|---|---|
| **Professional Title** | **Low (USD)** | **High (USD)** |
| Professional Time Consultant (US) | 250 | 370 |
| Professional Time Senior Consultant (US) | 300 | 490 |
| Professional Time Director (US) | 425 | 670 |
| Professional Time Senior Director (US) | 550 | 825 |
| Professional Time Managing Director (US) | 750 | 995 |
| Professional Time Senior Managing Director (US) | 750 | 995 |