**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

# JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE CAMP BUSINESS DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT, YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED HEREIN, OR THE TERMS OF THIS PLAN FOR ANY PURPOSE.**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel for the Debtors*
*and Debtors in Possession*

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

# TABLE OF CONTENTS

INTRODUCTION ........................................ 1

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ........................................ 1

A. Defined Terms. ........................................ 1

B. Rules of Interpretation and Computation of Time. ........................................ 16

C. Governing Law. ........................................ 16

D. Reference to Monetary Figures. ........................................ 16

E. Final Mishmeret DIP Order; Settlement Controls. ........................................ 17

ARTICLE II ADMINISTRATIVE CLAIMS, DIP CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES ........................................ 17

A. Administrative Claims. ........................................ 17

B. DIP Claims. ........................................ 18

C. Priority Tax Claims. ........................................ 19

D. Statutory Fees. ........................................ 19

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........................................ 19

A. Classification of Claims and Interests. ........................................ 19

B. Summary of Classification. ........................................ 20

C. Treatment of Claims and Interests. ........................................ 20

D. Special Provision Governing Unimpaired Claims. ........................................ 25

E. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ........................................ 25

F. Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ........................................ 25

G. Controversy Concerning Impairment ........................................ 25

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 26

A. Vesting of Assets. ........................................ 26

B. Sources of Consideration for Plan Distributions. ........................................ 26

C. Limited Consolidation. ........................................ 26

D. Liquidation Trust ........................................ 26

E. Dissolution of Liquidation Trust. ........................................ 29

F. Liquidation Trust Security Matters. ........................................ 29

G. Tax Returns. ........................................ 29

H. Cancellation of Existing Securities. ........................................ 29

I. Indemnification Obligations. 30
J. Effectuating Documents; Further Transactions. 30
K. Exemption from Certain Taxes and Fees. 31
L. Treatment of Causes of Action. 31
M. Camp Business Debtors' Directors, Officers, and Managers. 32
N. Director and Officer Liability Insurance. 32
O. Camp Business Debtors' Existence. 33
P. Dissolution of Creditors' Committee. 33
Q. Corporate Authority. 33
R. The Settlement. 34
S. Preservation of Intercompany Claims. 35
ARTICLE V FUNDING AND DISBURSEMENTS 36
A. Distribution Agent. 36
B. Cash Payments. 36
C. Objections to Claims. 36
D. Distribution for Allowed Claims. 37
E. Interest and Charges. 37
F. Compliance with Tax Requirements. 37
G. Fractional Dollars: De Minimis Distributions. 37
H. Delivery of Distributions to Holders of Allowed Claims. 38
I. Unclaimed Distributions. 38
J. No Penalty Claims. 39
K. Setoffs and Recoupment. 39
L. Distributions by Liquidation Trust. 39
M. Claims Paid or Payable by Third Parties. 39
ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES 40
A. Rejection of Executory Contracts and Unexpired Leases. 40
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. 40
ARTICLE VII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS 41
A. Settlement, Compromise, and Release of Claims and Interests. 41
B. Release of Liens. 41
C. Releases by the Camp Business Debtors. 42
D. Releases by Holders of Claims and Interests. 43

E. Liabilities to, and Rights of, Governmental Units. 45

F. Exculpation. 45

G. Injunction. 46

H. Term of Injunctions or Stays. 47

I. Document Retention. 47

J. Preservation of Claims Against Excluded Parties 47

ARTICLE VIII CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN 50

A. Conditions Precedent to the Effective Date. 50

B. Waiver of Conditions. 50

C. Substantial Consummation. 51

D. Effect of Failure of Conditions. 51

ARTICLE IX MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN 51

A. Modification and Amendments. 51

B. Effect of Confirmation on Modifications. 51

C. Revocation or Withdrawal of Plan. 51

ARTICLE X RETENTION OF JURISDICTION 52

ARTICLE XI MISCELLANEOUS PROVISIONS 53

A. Immediate Binding Effect. 53

B. Additional Documents. 53

C. Reservation of Rights. 53

D. Successors and Assigns. 54

E. Notices. 54

F. Entire Agreement. 54

G. Exhibits. 54

H. Severability of Plan Provisions. 55

I. Closing of the Chapter 11 Cases. 55

J. No Stay of Confirmation Order. 55

K. No Waiver. 55

L. Headings. 56

M. Conflicts. 56

## INTRODUCTION

The Camp Business Debtors (as defined herein) propose this plan (the "Plan") for the resolution of the outstanding claims against, and equity interests in, the Camp Business Debtors. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan constitutes a separate chapter 11 plan for each Camp Business Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each Camp Business Debtor.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Camp Business Debtors' history, businesses, assets, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters. Each Camp Business Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A. *Defined Terms.*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1. ***"9019 Settlement Order"*** means the *Order (I) Approving Settlement Pursuant To Bankruptcy Rule 9019 And (II) Granting Related Relief* [Docket No. 1388].

2. ***"Administrative Claim"*** means a Claim against the Camp Business Debtors or their Estates for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Camp Business Debtors' Estates and operating the business of the Camp Business Debtors (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code, provided that any Administrative Claim shall expressly exclude any Professional Fee Claim. "Administrative Claims" shall not include any claims against the Camp Business Debtors that have been assumed by a Purchaser pursuant to the terms of the applicable Asset Purchase Agreement and Sale Order.

3. ***"Affiliate"*** has the meaning set forth in section 101(2) of the Bankruptcy Code, as if each referenced Person or Entity were a debtor.

4. ***"Allowed"*** means with respect to any Claim against the Camp Business Debtors or their Estates (including any Administrative Claim) or any portion thereof: (a) a Claim that is listed on the Camp Business Debtors' Schedules, as such Schedule may be amended from time to time

in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Cases, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to allowance thereof, or action to reclassify, subordinate, or otherwise limit recovery with respect thereto, shall have been Filed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is allowed pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court or by agreement of the Liquidation Trustee following the Effective Date; or (c) a Claim as to which a Proof of Claim has been Filed and as to which no objection has been Filed or action to reclassify, subordinate, or otherwise limit recovery with respect thereto has been Filed by the Claims Objection Deadline. Except for any Claim that is expressly Allowed herein, any Claim that (i) has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which no Proof of Claim has been Filed or (ii) has been assumed by any Purchaser pursuant to an Asset Purchase Agreement and the Sale Orders, is not considered Allowed and any person or entity holding such Claim shall not be treated as a Creditor with respect to such Claim for the purposes of voting and distributions under the Plan.

5. ***“Amended Summit Sale Order”*** means that certain Amended Order *(I) Approving Asset Purchase Agreement Between Summit Camp and Travel LLC, 168 Duck Harbor Land LLC, and Summit Camp, LLC, (II) Authorizing the Sale of Substantially All Assets of Summit Camp, LLC Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. §§ 363(b) and 363(f), (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, and (IV) Granting Related Relief* [Docket No. 1181].

6. “***Approved Budget***” has the meaning ascribed to such term in the Settlement Term Sheet.

7. ***“Assets”*** means any and all of the right, title and interest of the Camp Business Debtors in and to property of whatever type or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action, and any other general intangibles of the Camp Business Debtors, as the case may be, including, without limitation, the Camp Business Debtors’ Estates; *provided*, *however*, that any Assets sold to the Purchasers pursuant to the Sale Orders shall not be considered Assets of the Estates under this Plan. For the avoidance of doubt, Assets include (a) all Causes of Action against the DAMIS Debtors and (b) any interests in and rights to sale proceeds being held in escrow pursuant to the Asset Purchase Agreements and related Sale Orders.

8. ***“Asset Purchase Agreements”*** means any asset purchase agreements whereby the Camp Business Debtors sold some or all of their assets under section 363 of the Bankruptcy Code and as approved by the Sale Orders, including all exhibits, appendices, supplements, and documents, schedules, and agreements thereto, and as may be amended, modified, or supplemented in accordance with the terms thereof.

9. ***“Avoidance Actions”*** means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Camp Business Debtors pursuant to

any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

10. ***"Bankruptcy Code"*** means title 11 of the United States Code.

11. ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of New Jersey.

12. ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

13. ***"Bar Date"*** or ***"Bar Dates"*** means the applicable bar date by which a proof of Claim or request for payment of an Administrative Claim must be, or must have been, Filed, as established by an order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

14. ***"Bar Date Order"*** means the *Order (I) Setting Bar Dates For Submitting Proofs of Claim, Including Requests for Payment under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 482].

15. ***"Beneficial Trust Interests"*** means a beneficial interest in the Liquidation Trust, which interest shall be uncertificated and which shall be non-transferable except as expressly provided otherwise in the Liquidation Trust Agreement.

16. ***"Business Day"*** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

17. ***"Camp Business Debtors"*** means (1) Achim Landco LLC; (2) Achim Operatingco, LLC; (3) BAHS Holdings LLC; (4) BAHS Operating Inc.; (5) Banner Operatingco, LLC; (6) Banner Landco, LLC; (7) Bluestar Operatingco LLC; (8) Bluestar Landco, LLC; (9) Club Getaway Operatingco, LLC; (10) Club Getaway Landco, LLC; (11) Country Roads Operatingco, LLC; (12) Country Roads Landco, LLC; (13) Eagle's Landing Day Camp LLC; (14) Green Lane Operatingco, LLC; (15) Green Lane Landco, LLC; (16) Greenvilleland LLC; (17) Island Lake Campco, LLC; (18) Island Lake Landco, LLC; (19) Kiwi Operatingco, LLC; (20) Lavco, LLC; (21) Lavland, LLC; (22) Malka Operatingco, LLC; (23) Meadowbrook Operatingco, LLC; (24) Meadowbrook Landco, LLC; (25) Mill Road Landco, LLC; (26) Mogenavco, LLC; (27) Mogenavland, LLC; (28) Mohawkcampco, LLC; (29) Mohawkland, LLC; (30) Mohawk Country Day School, Inc.; (31) RDM Camps, LLC; (32) Rolling Hills Operatingco, LLC; (33) Rolling Hills Landco, LLC; (34) SHAB Holdings, LLC; (35) SHAB Operating Inc.; (36) Summit Camp, LLC; and (37) Quadstar Realty LLC.

18. ***"Cash"*** means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks, and legal tender of the United States of America or equivalents thereof.

19. ***"Causes of Action"*** means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (d) any state or foreign law fraudulent transfer claim; (e) any claim to oppose the discharge of an individual under section 523 of the Bankruptcy Code; and (f) any Claim or Cause of Action against any Excluded Party, including Michael Shabsels and/or David Shabsels; and, *subject*, *however*, to any releases or exculpations provided in this Plan, the Confirmation Order, the Sale Orders, or any other Final Order of the Bankruptcy Court; *provided*, that, for the avoidance of doubt, no such release or exculpation shall apply to any Claim or Cause of Action against any Excluded Party.

20. ***"Chapter 11 Cases"*** means the jointly administered cases pending for the Debtors under chapter 11 of the Bankruptcy Code, case number 26-16388 (CMG).

21. ***"Claim"*** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

22. ***"Claims Objection Deadline"*** means, subject to any extension as set forth in Article V.C of the Plan, the date that is the first Business Day that is at least one hundred eighty (180) days after the Effective Date. For the avoidance of doubt, the Claims Objection Deadline may be extended one or more times by the Bankruptcy Court and applies to all Claims.

23. ***"Class"*** means pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Camp Business Debtors as set forth in Article III.

24. ***"Collateral"*** means any property or interest in property of the Camp Business Debtors or their Estates, as applicable, subject to a Lien to secure the payment or performance of a Claim, which Lien is not avoided under the Bankruptcy Code or applicable state laws.

25. ***"Committee Successor"*** means the Liquidation Trustee. From and after the Effective Date, it is the successor and designee of the Creditors' Committee for all purposes under the Settlement Term Sheet and the 9019 Settlement Order.

26. ***"Confirmation"*** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

27. ***"Confirmation Date"*** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

28. ***"Confirmation Hearing"*** means the hearing held by the Bankruptcy Court, as such hearing may be continued from time to time, to consider entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

29. ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30. ***"Consummation"*** means the occurrence of the Effective Date.

31. ***"Convenience Class Claim"*** means (a) all Allowed General Unsecured Claims in an amount not to exceed $500,000 and (b) all Allowed Disputed Unsecured MCA Claims and General Unsecured Claims where a holder of such Claim elects on its ballot to treat its Claim as a Convenience Class Claim by reducing its Allowed Disputed Unsecured MCA Claims or its Allowed General Unsecured Claim to $500,000.

32. ***"Creditors' Committee"*** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the Office of the United States Trustee [Docket No. 438].

33. ***"DAMIS Debtors"*** means all debtors and debtors in possession in the consolidated chapter 11 cases of *In re DAMIS Holdings, LLC*, Case No. 26-16439 (CMG) (Bankr. D.N.J.).

34. ***"D&O Liability Insurance Policies"*** means all insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Camp Business Debtors or any of their predecessors for current or former directors', managers', officers', and/or employees' liability and all agreements, documents, or instruments relating thereto, including but not limited to (a) that certain D&O Liability Policy No. UMR B0771IN0002503582 issued by Accredited Insurance (Europe) Limited – UK Branch through its underwriting representative Rising Edge Ltd., and (b) that certain Public Offering of Securities Insurance Policy No. UMR B0771IN0002503581 issued by Accredited Insurance (Europe) Limited – UK Branch through its underwriting representative Rising Edge Ltd.

35. "***Debtor Release***" means the release provision set forth in Article VII.C of the Plan.

36. ***"Debtors"*** means, collectively, the debtors and debtors-in-possession in the Chapter 11 Cases.

37. ***"DIP Claims"*** means any Claim in respect of the DIP Obligations (as defined in the Final Mishmeret DIP Order).

38. ***"DIP Documents"*** has the meaning ascribed to such term in the Final Mishmeret DIP Order.

39. ***"DIP Facility"*** has the meaning ascribed to such term in the Final Mishmeret DIP Order.

40. ***"DIP Lenders"*** means the Series A Bondholders of SIMAD Holdings Ltd. and Klirmark Opportunity Fund IV LP approved and authorized by the Final Mishmeret DIP Order.

41. ***"DIP Roll-Up Claim"*** means any Claim on account of the Roll-Up Obligations (as defined in the Final Mishmeret DIP Order) reduced solely by amounts actually paid or applied in reduction of the Roll-Up Obligations in accordance with the Final Mishmeret DIP Order.

42. ***"Disallowed"*** means any Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no proof of claim has been Filed or deemed Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed Filed under applicable law or the Plan, (iii) is not Scheduled and as to which no proof of claim has been deemed Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order or otherwise deemed Filed under applicable law or the Plan, (iv) has been withdrawn by agreement of the Camp Business Debtors and the holder thereof or (v) has been withdrawn by the holder thereof.

43. ***"Disclosure Statement"*** means the Disclosure Statement for the Plan of Liquidation of the Camp Business Debtors Pursuant to Chapter 11 of the Bankruptcy Code, dated November [●], 2026 as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

44. ***"Disclosure Statement Order"*** means the Final Order of the Bankruptcy Court approving the Disclosure Statement.

45. ***"Disputed"*** means, any Claim against or Interest in the Camp Business Debtors that is: (a) listed in the Schedules as disputed, contingent, or unliquidated and for which a Proof of Claim has not been Filed; (b) subject to an objection, and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order; (c) held by a party that is adverse to the Camp Business Debtors in any litigation or contested matter and as to which no Final Order resolving such litigation or contested matter has been entered; or (d) disallowed pursuant to section 502(d) of the Bankruptcy Code. A Claim or Interest that is Disputed as to its amount shall not be Allowed in any amount until it is no longer a Disputed Claim or Disputed Interest. For the avoidance of doubt, the Disputed Prepetition Secured Loan Claims shall be Disputed.

46. ***"Disputed Prepetition Secured Loan Claims"*** means any Claim filed against the Camp Business Debtors by (a) Newtek Business Services Holdco6, Inc., NBL SPV II, LLC, as Servicer, and NBL SPV II, LLC, as Servicer for U.S. Bank Trust Co., N.A., (b) Visions Federal Credit Union, and (c) Enhanced Capital Pennsylvania Rural Fund, LLC.

47. ***"Disputed Secured MCA Claim"*** means any MCA Claim that is alleged by the holder of such MCA Claim to be Secured. Any and all Claims asserted by Mulligan Funding, LLC shall be Disputed Secured MCA Claims for purposes of the Plan (including for purposes of distribution).

48. ***"Disputed Unsecured MCA Claim"*** means any MCA Claim that is Unsecured.

49. ***"Distribution Agent"*** means, from the Effective Date, any Person(s) selected by the Liquidation Trustee to make or to facilitate distributions required by this Plan.

50. ***"Distribution Date"*** means, with respect to (a) any Claim that is Allowed as of the Effective Date, the date that is as soon as reasonably practicable after the Effective Date; or (b) any Claim that is Allowed after the Effective Date, a date as soon as reasonably practicable after the date on which such Claim becomes Allowed.

51. ***"EIDL"*** means, in each case, an Economic Injury Disaster Loan, provided to any Camp Business Debtor by the U.S. Small Business Administration.

52. ***"Effective Date"*** means, with respect to the Plan, the date that is a Business Day selected by the Camp Business Debtors in consultation with the Creditors' Committee, on which (a) the conditions to the occurrence of the Effective Date have been met or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

53. ***"Entity"*** means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

54. ***"Escrowed Professional Persons"*** has the meaning ascribed to such term in the Settlement Term Sheet.

55. ***"Estates"*** means the estates created for each of the Camp Business Debtors in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

56. ***"Excluded Parties"*** means, collectively, and in each case whether in such Person's or Entity's individual capacity or in any other capacity: (a) each current and former insider (as defined in section 101(31) of the Bankruptcy Code) of any Debtor; (b) each current and former direct or indirect holder of any equity security or other Interest in any Debtor; (c) Michael Shabsels; (d) David Shabsels; (e) each of the DAMIS Debtors, their respective estates, and any trustee, liquidating trust, plan administrator, or other successor to or representative of any DAMIS Debtor or its estate (f) each spouse, family member, heir, executor, estate, trust, trustee, beneficiary, nominee, or Affiliate of any Person described in clauses (a) through (e), and each Entity directly or indirectly owned or controlled by, or under common control with, any Person described in clauses (a) through (e); and (g) each initial, immediate, or mediate transferee of any of the foregoing; *provided*, that the Excluded Parties shall not include (x) Assaf Ravid, solely in his capacity as Chief Restructuring Officer of the Debtors and (y) Daniel Sasson, solely in his capacity as Associate Restructuring Officer of the Debtors.

57. ***"Exculpated Claim"*** means any Cause of Action, arising during the period commencing on the Petition Date through the closing of the Chapter 11 Cases, related to any act or omission derived from, based upon, related to or arising from (a) the Camp Business Debtors' Chapter 11 Cases; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Camp Business Debtors' Chapter 11 Cases, the Disclosure Statement, the Plan, and/or the Plan Supplement; (c) the formulation, preparation, or negotiation of any documents with respect to, or the consummation of, any sale of the Camp Business Debtors' assets during the Chapter 11 Cases; (d) any contract, instrument, release, and/or other agreement or

document created or entered into in connection with the foregoing subsections (a), (b), or (c), including but not limited to the Asset Purchase Agreements; (e) the pursuit of Consummation; and/or (f) the filing, administration, and/or implementation of the Debtors' Chapter 11 Cases, the Plan, or the distribution of property in connection therewith or thereunder; *provided, however,* that no Claim or Cause of Action against any Excluded Party shall be an Exculpated Claim.

58. ***"Exculpated Party"*** means each of: (a) the Camp Business Debtors and their representatives and agents to the extent that such representatives and agents served in such capacity during the Chapter 11 Cases; (b) the Creditors' Committee; (c) the members of the Creditors' Committee solely in their capacities as such; (d) Assaf Ravid, solely in his capacity as Chief Restructuring Officer of the Debtors; (e) Daniel Sasson, solely in his capacity as Associate Restructuring Officer of the Debtors; (f) the other Professional Persons (as defined in the Final Mishmeret DIP Order) solely in their capacity as Professional Persons (as defined in the Final Mishmeret DIP Order) in these Chapter 11 Cases; and (g) B. Riley Securities, Inc. for its role as financial advisor to the Camp Business Debtors between the Petition Date and June 8, 2026; *provided, however*, that notwithstanding the foregoing, (x) no Excluded Party shall be an Exculpated Party and (y) this definition of "Exculpated Party" does not include (i) any DAMIS Debtor, (ii) Michael Shabsels, or (iii) David Shabsels.

59. ***"Executory Contract"*** means a contract to which a Camp Business Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

60. ***"File," "Filed,"*** or ***"Filing"*** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases of the Camp Business Debtors.

61. "***Final Distribution***" means the distribution under this Plan which, (a) after giving effect to such distribution, results in remaining assets held by such Liquidation Trust, including cash, of a value of less than $500.00 or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

62. ***"Final Mishmeret DIP Order"*** means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 552].

63. ***"Final Order"*** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to seek reconsideration or relief from judgment, appeal, or seek *certiorari* has expired and no request for reconsideration or relief from judgment, appeal, or petition for *certiorari* has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which *certiorari* could be sought or the reconsideration, relief from judgment, new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

64. ***"General Unsecured Claim"*** means any Claim against a Camp Business Debtor that is not Secured, not entitled to priority, and not an Administrative Claim, Professional Fee Claim, DIP Claim, Priority Tax Claim, Subordinated Securities Claim, or Interest. It includes Convenience Class Claims, Allowed Disputed Unsecured MCA Claims, and the unsecured deficiency portion of any Mishmeret Prepetition Secured Claim.

65. ***"Governmental Unit"*** means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

66. ***"GUC Trust Account"*** means the segregated account in the name of the Debtors, solely as custodian, established under the Settlement Term Sheet to hold the Settlement Fund.

67. ***"Holding Company Debtors"*** means, collectively, (1) SIMAD Holdings Ltd.; (2) Intermediate SIMAD 1, LLC; and (3) SIMAD Equities LLC.

68. ***"Impaired"*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

69. ***"Interests"*** means any equity security in a Camp Business Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of any Camp Business Debtor together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

70. ***"Interim Compensation Order"*** means the *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* [Docket No. 550].

71. ***"Judicial Code"*** means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

72. ***"Lender Deficiency Claims"*** means any Unsecured deficiency claim of the Prepetition Secured Parties or any holder of Debentures (each as defined in the Final Mishmeret DIP Order).

73. ***"Lender Parties"*** has the meaning ascribed to such term in the Settlement Term Sheet, and means Mishmeret Trust Company Ltd., as DIP Agent and as Prepetition Trustee (each as defined in the Final Mishmeret DIP Order).

74. ***"Lien"*** has the same meaning as set forth in section 101(10) of the Bankruptcy Code.

75. ***"Liquidation Trust"*** means the trust, of which the Liquidation Trustee shall serve as trustee, formed pursuant to this Plan, the Liquidation Trust Agreement, and the Confirmation Order.

76. ***"Liquidation Trust Agreement"*** means the agreement included in the Plan Supplement, as may be amended, established as of the Effective Date, setting forth the terms and conditions of the Liquidation Trust, as may be modified from time to time.

77. ***"Liquidation Trust Assets"*** means the Assets of the Estates as of the Effective Date, including without limitation, the Retained Causes of Action and any proceeds therefrom, except that the Liquidation Trust Assets shall expressly exclude (x) the Liquidation Trust Claims Reserve; (y) the Professional Fee Claim Reserve; and (z) the Settlement Fund, which shall be held by the Liquidation Trust in the Settlement Fund Account, shall not constitute Liquidation Trust Assets, and shall be administered solely under Article IV.R.

78. ***"Liquidation Trust Claims Reserve"*** shall mean the reserve established on or before the Effective Date to satisfy in full all Administrative Claims (other than Professional Fee Claims), Priority Tax Claims, Secured Tax Claims, Other Priority Claims, Other Secured Claims, Mishmeret Prepetition Secured Claims, and Convenience Class Claims asserted by such claimants subject to the Camp Business Debtors' and Liquidation Trustee's rights to object to such Claims. For the avoidance of doubt, the Liquidation Trust Claims Reserve will not include reserves for Disputed Prepetition Secured Loan Claims or Disputed Secured MCA Claims. Any excess amounts in the Liquidation Trust Claims Reserve after the payment in full or other satisfaction of all Allowed Administrative Claims (other than Professional Fee Claims), Priority Tax Claims, Secured Tax Claims, Other Priority Claims, Other Secured Claims, and Mishmeret Prepetition Secured Claims shall be paid to the holders of Allowed Disputed Secured MCA Claims, Allowed Disputed Unsecured MCA Claims, and Allowed General Unsecured Claims in accordance with the priorities set forth in Article III.B of the Plan.

79. ***"Liquidation Trust Expense Reserve"*** means an amount of Cash to be disclosed in the Plan Supplement and funded by the Camp Business Debtors to the Liquidation Trust on the Effective Date to be used in accordance with the Liquidation Trust Agreement, the Plan, and the Confirmation Order.

80. ***"Liquidation Trustee"*** means the trustee and any associate liquidation trustee to serve as the liquidation trustee under the Liquidation Trust Agreement or any successor appointed in accordance with the terms of the Plan and Liquidation Trust Agreement. The trustee and any associate liquidation trustee shall be selected jointly by the Debtors and the Creditors' Committee and, if the Prepetition Secured Parties (as defined in the Final Mishmeret DIP Order) hold no Lender Deficiency Claims, in consultation with the Prepetition Secured Parties; *provided* that if the Prepetition Secured Parties hold any Lender Deficiency Claims, the Liquidation Trustee shall be selected jointly by the Debtors, the Creditors' Committee, and the Prepetition Secured Parties.

81. ***"Local Rules"*** means the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

82. ***"MCA Claims"*** means any Claims asserted against any Camp Business Debtor on account of a merchant cash advance or similar transaction whereby a Camp Business Debtor became obligated for the repayment of an advance in exchange for a percentage of future sales.

83. ***"Mishmeret"*** means Mishmeret Trust Company Ltd., in its capacities as trustee for the Series A Bondholders under the Mishmeret Prepetition Loan Documents and the DIP Agent for the DIP Lenders under the DIP Documents (as defined in the Final Mishmeret DIP Order).

84. ***"Mishmeret Collateral Pool Debtors"*** means the following Camp Business Debtors: (1) Achim Landco LLC; (2) Achim Operatingco, LLC; (3) BAHS Holdings LLC; (4) BAHS Operating Inc.; (5) Banner Operatingco, LLC; (6) Banner Landco, LLC; (7) Club Getaway Operatingco, LLC; (8) Club Getaway Landco, LLC; (9) Country Roads Operatingco, LLC; (10) Country Roads Landco, LLC; (11) Eagle's Landing Day Camp LLC; (12) Green Lane Operatingco, LLC; (13) Green Lane Landco, LLC; (14) Greenvilleland LLC; (15) Island Lake Campco, LLC; (16) Island Lake Landco, LLC; (17) Lavco, LLC; (18) Lavland, LLC; (19) Malka Operatingco, LLC; (20) Meadowbrook Operatingco, LLC; (21) Meadowbrook Landco, LLC; (22) Mill Road Landco, LLC; (23) Mogenavco, LLC; (24) Mogenavland, LLC; (25) Mohawkcampco, LLC; (26) Mohawkland, LLC; (27) Mohawk Country Day School, Inc.; (28) RDM Camps, LLC; (29) Rolling Hills Operatingco, LLC; (30) Rolling Hills Landco, LLC; (31) SHAB Holdings, LLC; and (32) SHAB Operating Inc.

85. "***Mishmeret DIP Documents***" means those DIP Documents (as defined in the Final Mishmeret DIP Order).

86. "***Mishmeret Prepetition Loan Documents***" means those Prepetition Loan Documents (as defined in the Final Mishmeret DIP Order).

87. ***"Mishmeret Prepetition Secured Claims"*** means the Prepetition Obligations (as defined in the Final Mishmeret DIP Order), and excluding any Lender Deficiency Claim.

88. ***"Notice, Claims and Balloting Agent"*** means Kroll Restructuring Administration LLC.

89. ***"Notice of Effective Date"*** means a notice to be Filed with the Bankruptcy Court by the Camp Business Debtors upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article VIII of the Plan.

90. ***"Ordinary Course Professional Order"*** means the *Order Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business* [Docket No. 617].

91. ***"Other Priority Claims"*** means any Claim against a Camp Business Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

92. ***"Other Secured Claims"*** means any Secured Claim that is not a Secured Claim in Classes 4, 5, or 6 or a Secured Tax Claim. For the avoidance of doubt, the Secured Claims of the SBA on account of an EIDL shall be Other Secured Claims and receive the treatment afforded to Class 2 herein; *provided however*, such Claims shall not be Other Secured Claims to the extent already satisfied prior to the Effective Date of the Plan.

93. ***"Person"*** means a person as such term is defined in section 101(41) of the Bankruptcy Code.

94. ***"Petition Date"*** means June 4 and 5, 2026, the date on which each of the Debtors commenced these Chapter 11 Cases.

95. ***"Plan"*** means this Plan of Liquidation of the Camp Business Debtors pursuant to Chapter 11 of the Bankruptcy Code (as modified, amended or supplemented from time to time).

96. ***"Plan Supplement"*** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, whereby the Camp Business Debtors will disclose the identity and affiliations of the Liquidation Trustee and file the Liquidation Trust Agreement, each in form and substance acceptable to the Camp Business Debtors and the Creditors' Committee and, if the Prepetition Secured Parties hold any Lender Deficiency Claims, in consultation with the Prepetition Secured Parties.

97. ***"Post-Effective Administrative Claims Bar Date"*** means the date that is thirty (30) days from service of the Notice of Effective Date or such other date ordered by the Bankruptcy Court. For the avoidance of doubt, the Post-Effective Administrative Claims Bar Date only applies to Administrative Claims incurred between the Petition Date through the Effective Date and the applicable Bar Dates apply to all other Administrative Claims.

98. ***"Priority Tax Claim"*** means any Claim against the Camp Business Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

99. ***"Professional"*** means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code after motion on notice under that section of the Bankruptcy Code.

100. ***"Professional Fee Claim"*** means a Claim for any accrued but unpaid fees and expenses owed to a Professional pursuant to such Professional's engagement letter or otherwise under sections 328, 330, 331, 503(b), 1103, or 503 of the Bankruptcy Code; *provided* that any such Professional Fee Claim shall be reduced by the amount of any retainer held by such Professional.

101. ***"Professional Fee Claim Reserve"*** means the reserve established by the Camp Business Debtors and maintained pursuant to the terms of this Plan and the Confirmation Order to be distributed to holders of Allowed Professional Fee Claims with respect to the Camp Business Debtors.

102. ***"Professional Fee Escrow"*** has the meaning ascribed to such term in the Settlement Term Sheet.

103. ***"Proof of Claim"*** means a written proof of Claim that is Filed against a Camp Business Debtor in these Chapter 11 Cases.

104. ***"Purchasers"*** means the "Buyers" as defined in and contemplated by the Sale Orders.

105. ***"Reinstate," "Reinstated," or "Reinstatement"*** means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

106. "***Related Parties***" means, with respect to an Entity, collectively, (a) such Entity's current and former Affiliates and (b) such Entity's and such Entity's current and former Affiliates' directors, managers, officers, shareholders, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, managers, fiduciaries, trustees, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, other representatives, and other professionals, representatives, advisors, predecessors, successors, and assigns, each solely in their capacities as such (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), and the respective heirs, executors, estates, servants and nominees of the foregoing; *provided, however*, that, for purposes of the Plan, no Excluded Party shall be a Related Party of any Released Party.

107. "***Released Parties***" means, collectively, and in each case solely in its capacity as such: (a) Mishmeret (including in its capacities as the Prepetition Trustee and the DIP Agent); (b) the Prepetition Secured Parties (as defined in the Final Mishmeret DIP Order); (c) the DIP Lenders; and (d) each Related Party of each Entity in clause (a) through (c); *provided, however*, that notwithstanding anything to the contrary contained herein, no Excluded Party (including the Debtors' insiders and equity holders, Michael Shabsels, David Shabsels, and the DAMIS Debtors) shall be a Released Party, whether in its own right or as a Related Party of any other Entity. For the avoidance of doubt, no Released Party shall be a Releasing Party, in any capacity, and nothing in this Plan or the Confirmation Order shall be construed to cause any Released Party to release, or be deemed to have released, any Claim or Cause of Action against any Releasing Party, any Related Party of a Releasing Party, any of its own Related Parties, or any Excluded Party. Notwithstanding anything to the contrary contained in this Plan or the Confirmation Order, any Person that is a Released Party solely by reason of being a Related Party of another Released Party shall not be entitled, as against such other Released Party, to the benefit of any release, exculpation, injunction, gatekeeping provision, or bar order in this Plan or the Confirmation Order, and all Claims and Causes of Action of such other Released Party against such Person are preserved.

108. "***Releasing Parties***" means, collectively, and in each case solely in its capacity as such: (a) the Camp Business Debtors; (b) the Creditors' Committee and each current and former member of the Creditors' Committee solely in their capacities as such; (c) all Holders of Claims that vote to accept this Plan and who do not affirmatively opt out of the releases provided by this Plan; (d) all Holders of Claims or Interests that are deemed to accept this Plan and who do not affirmatively opt out of the releases provided by this Plan; (e) all Holders of Claims or Interests that are deemed to reject this Plan and who do not affirmatively opt out of the releases provided by this Plan; (f) all Holders of Claims who abstain from voting on this Plan and who do not affirmatively opt out of the releases provided by this Plan; (g) all Holders of Claims who vote to reject this Plan and who do not affirmatively opt out of the releases provided by this Plan; and (h) each Related Party of each Entity in clause (a) through (g); *provided, however*, that (y) notwithstanding anything to the contrary in this Plan, the Disclosure Statement, any ballot or opt-out form, or the Confirmation Order, no Released Party shall be a Releasing Party, in any capacity, including as a holder of a Mishmeret Prepetition Secured Claim, DIP Claim, DIP Roll-Up Claim, Lender Deficiency Claim, or General Unsecured Claim, and regardless of whether such Released

Party votes to accept or reject this Plan, is deemed to accept or reject this Plan, abstains from voting, or fails to opt out of the releases provided by this Plan, or is a Related Party of any Released Party, and (z) no release given by a Releasing Party (including any release given by or through any Related Party under clause (h)) shall release any Claim or Cause of Action against any Excluded Party.

109. ***"Retained Causes of Action"*** means any Cause of Action of the Camp Business Debtors (or their Estates) other than any Cause of Action that (a) subject to Article VII.J hereof, is expressly subject to the exculpation provisions of the Plan; (b) was sold to the Purchasers pursuant to the applicable Asset Purchase Agreement and the Sale Orders; (c) was released by the Debtors, their Estates, or the Creditors' Committee, pursuant to the Final Mishmeret DIP Order and, effective upon the later of the Settlement Effective Date and the funding of the Settlement Fund, the 9019 Settlement Order; or (d) subject to Article VII.J, is released pursuant to Article VII of this Plan; *provided that* in no event shall any Claim or Cause of Action against Mishmeret, the Prepetition Secured Parties, the DIP Lenders, or any of their Related Parties (other than any Excluded Parties) constitute a Retained Cause of Action; *provided further* that all Causes of Action against non-settling parties, including, without limitation, the Excluded Parties (including the Debtors' insiders and equity holders, Michael Shabsels, David Shabsels, and the DAMIS Debtors), are Retained Causes of Action and are preserved as set forth in Article VII.J hereof; *provided further* that Retained Causes of Action shall not include any Claim or Cause of Action that any Person other than the Debtors or their Estates holds directly, rather than derivatively through the Debtors or their Estates.

110. ***"Sale Orders"*** means the orders entered by the Bankruptcy Court at Docket Nos. 539, 849, 853, 860, 865, 877, 897, 936, 967, 1046, 1048, 1049, 1078, 1080, 1131, 1132, 1133, 1134, 1174, 1181, 1274, 1316, 1364, 1502, 1522, and any subsequent orders concerning the sale of the Camp Business Debtors' Assets.

111. ***"Sale Transactions"*** means those sale transactions contemplated by the Sale Orders.

112. ***"SBA"*** means, the U.S. Small Business Administration.

113. ***"Schedules"*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Camp Business Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

114. ***"Secured"*** means when referring to a Claim: (a) secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estates' interests in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or (b) of the Bankruptcy Code or (b) Allowed as such pursuant to the Plan.

115. ***"Secured Tax Claim"*** means any Secured Claim that, absent its secured status would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claims for penalties.

116. ***"Security"*** shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

117. ***"Settlement"*** means the settlement between the Creditors' Committee and the Lender Parties embodied in the Settlement Term Sheet and approved by the 9019 Settlement Order.

118. ***"Settlement Effective Date"*** has the meaning ascribed to such terms in the Settlement Term Sheet.

119. ***"Settlement Fund"*** means the $13 million cash contribution by the Prepetition Secured Parties under the Settlement Term Sheet, together with any interest or earnings on it.

120. ***"Settlement Fund Account"*** means the segregated account established and maintained by the Liquidation Trust, under the exclusive control of the Committee Successor, to hold the Settlement Fund, which may be the GUC Trust Account.

121. ***"Settlement Term Sheet"*** means the Settlement Term Sheet dated as of October 11, 2026, among the Creditors' Committee and the Lender Parties, as may be amended pursuant to its terms.

122. ***"Subordinated Securities Claim"*** means a Claim subject to subordination under section 510(b) of the Bankruptcy Code, and any Claim for or that arises from the rescission of a purchase, sale, issuance or offer of a security of the Camp Business Debtors, or for damages arising from the purchase or sale of such a security, or for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim, including but not limited to any Claim that has a nexus or causal relationship between the Claim and the Security held by any such claimant, including but not limited to the Claims asserted against Summit Camp, LLC by Beton Holdings, LLC.

123. ***"Unclaimed Property"*** means any distribution to any Creditor under this Plan that is unclaimed thirty (30) days following the date of such distribution under this Plan.

124. ***"Unclaimed Property Reserve"*** means any Unclaimed Property reserved for a period of thirty (30) days by the Liquidation Trustee on behalf of holders of Unclaimed Property.

125. ***"Unexpired Lease"*** means a lease to which any Camp Business Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

126. ***"Unimpaired"*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

127. ***"Unsecured"*** means any Claim that is not Secured.

128. ***"U.S. Trustee"*** means the United States Trustee for Region 3.

B. *Rules of Interpretation and Computation of Time.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable law, including the Bankruptcy Code and the Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; and (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases of the Debtors, unless otherwise stated. Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction, action, or event shall or may occur pursuant to the Plan is a day that is not a Business Day, then such transaction, action, or event shall instead occur on the next succeeding Business Day.

C. *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

D. *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

E. *Final Mishmeret DIP Order; Settlement Controls.*

Except as modified by the Settlement Term Sheet and the 9019 Settlement Order, nothing in the Plan amends the Final Mishmeret DIP Order. In the event of any conflict among the Plan, the Final Mishmeret DIP Order, and the Settlement Term Sheet or the 9019 Settlement Order, the Settlement Term Sheet and the 9019 Settlement Order shall control. Any provision of the Plan, the Plan Supplement, the Liquidation Trust Agreement, or the Confirmation Order that affects the Settlement or the rights of holders of General Unsecured Claims shall be in form and substance acceptable to the Creditors' Committee and the Prepetition Secured Parties.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A. *Administrative Claims.*

1. <u>Administrative Claims</u>

Except to the extent that a holder of an Allowed Administrative Claim and the Camp Business Debtors or the Liquidation Trustee, as applicable, agree to less favorable treatment with respect to such Allowed Administrative Claim, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

2. <u>Professional Fee Claims</u>

Any Person asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than thirty (30) days after the Effective Date; *provided*, *however* that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than fourteen (14) days from the service of an application for final allowance of a Professional Fee Claim. Upon entry of a Final Order approving any such application for such Professional Fee Claim, the Camp Business Debtors shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim. To the extent that any Cash remains in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, the Camp Business Debtors shall promptly transfer any such remaining Cash to the Liquidation Trust and such

remaining Cash shall become Liquidation Trust Assets and be treated in accordance with the Liquidation Trust Agreement, the Plan, and the Confirmation Order.

Each Professional must deliver to the Camp Business Debtors, no later than five (5) business days before the anticipated Effective Date, a good-faith estimate of (a) unpaid fees and expenses incurred through the Effective Date, whether or not billed, and (b) fees and expenses reasonably anticipated to be incurred after the Effective Date in connection with fee applications and case closing. On the Effective Date, all amounts held in the Professional Fee Escrow shall be transferred to, and shall constitute part of, the Professional Fee Claim Reserve and shall be used solely to pay Allowed Professional Fee Claims of Escrowed Professional Persons. The Professional Fee Claim Reserve shall equal the aggregate of those estimates, plus all unpaid holdbacks under the Interim Compensation Order, without reduction, and shall be funded into a segregated interest-bearing account on the Effective Date. The Professional Fee Claim Reserve shall be held in trust for the benefit of the Professionals, shall not constitute property of the Estates or of the Liquidation Trust, and shall not be subject to any lien, claim or setoff of any DIP Lender or prepetition secured party. If the Professional Fee Claim Reserve is insufficient to pay Allowed Professional Fee Claims in full, the deficiency shall be resolved and/or paid in accordance with Article IV.R. For the avoidance of doubt, nothing herein constitutes a limit on, or otherwise caps, Professional Fee Claims.

3. <u>Administrative Claim Bar Dates</u>

Requests for payment of Administrative Claims must be or have been Filed with the Notice, Claims, and Balloting Agent on or before the Bar Dates or the Post-Effective Administrative Claims Bar Date, as applicable. Except as otherwise ordered by the Bankruptcy Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Camp Business Debtors or their property and such Administrative Claims shall be deemed released against the Camp Business Debtors as of the Effective Date. For the avoidance of doubt, Governmental Units asserting Administrative Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code shall not be required to File a request for payment prior to the Post-Effective Administrative Claims Bar Date.

B. *DIP Claims.*

To the extent not already paid in full, all DIP Claims shall be deemed Allowed in accordance with the terms of the DIP Documents and the Final Mishmeret DIP Order. All DIP Claims were paid in full in connection with the consummation of the Asset Purchase Agreements and in accordance with the Final Mishmeret DIP Order and the 9019 Settlement Order. For purposes of the Plan, on the Effective Date, DIP Claims that have been paid in full shall be deemed satisfied in full, no payments shall be made on account of such DIP Claims, and all Liens and security interests granted pursuant to the Final Mishmeret DIP Order securing such DIP Claims shall be deemed cancelled and of no further force and effect. To the extent any DIP Claim remains outstanding as of the Effective Date, such DIP Claim and any related rights, claims, liens, and protections under the applicable DIP Documents and Final Mishmeret DIP Order shall remain in full force and effect until such DIP Claim is paid in full.

C. *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Camp Business Debtors, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (ii) such other treatment (which treatment shall be no more favorable than the treatment set forth in subsection (i) of this section) as may be agreed upon by such holder and the Camp Business Debtors, with the consent of the Creditors' Committee or the Committee Successor, as applicable, or otherwise determined upon an order of the Bankruptcy Court. Allowed Priority Tax Claims shall be paid on or as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim against the Camp Business Debtors becomes an Allowed Priority Tax Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

D. *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Camp Business Debtors on the Effective Date. On and after the Effective Date, the Liquidation Trust shall be responsible for filing post-Confirmation quarterly reports and any pre-Confirmation monthly reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines. Each of the Camp Business Debtors and the Liquidation Trust shall be jointly and severally liable for the payment of all applicable Quarterly Fees in the Camp Business Debtors' Chapter 11 Cases until (i) the entry of final decrees in the Camp Business Chapter 11 Cases or (ii) the Camp Business Chapter 11 Cases are closed, converted, or dismissed.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Camp Business Debtors. All Claims and Interests, except for Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

The classification of Claims against and Interests in the Camp Business Debtors pursuant to the Plan is as set forth below. All of the potential Classes for the Camp Business Debtors are set forth herein.

B. *Summary of Classification.*

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4 | Disputed Prepetition Secured Loan Claims | Unimpaired | Deemed to Accept |
| 5 | Mishmeret Prepetition Secured Claims | Impaired | Entitled to Vote |
| 6 | Disputed Secured MCA Claims | Impaired / Unimpaired | Entitled to Vote / Deemed to Accept |
| 7 | Disputed Unsecured MCA Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Convenience Class Claims | Impaired | Entitled to Vote |
| 10 | Subordinated Securities Claims | Impaired | Deemed to Reject |
| 11 | Interests | Impaired | Deemed to Reject |

C. *Treatment of Claims and Interests.*

The treatment provided for the holders of Allowed Claims or Allowed Interests within each class is specified below:

1. Class 1 – Secured Tax Claims

i. *Classification*: Class 1 consists of all Secured Tax Claims.

ii. *Treatment*: Each holder of an Allowed Secured Tax Claim shall receive, in exchange for full and final satisfaction, settlement, and release of each Allowed Secured Tax Claim, at the option of the Liquidation Trustee: (a) payment in full in Cash of such holder's Allowed Secured Tax Claim; or (b) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five (5) years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Liquidation Trustee to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

iii. *Voting:* Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 1 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2. Class 2 – Other Secured Claims

i. *Classification:* Class 2 consists of all Other Secured Claims.

ii. *Treatment*: Each holder of an Allowed Other Secured Claim shall receive, in exchange for full and final satisfaction, settlement, and release of each Allowed Other Secured Claim, at the option of the Liquidation Trustee, (a) payment in full in Cash of such holder's Allowed Other Secured Claim; (b) the Collateral securing such holder's Allowed Other Secured Claim; (c) Reinstatement of such holder's Allowed Other Secured Claim; or (d) such other treatment rendering such holder's Allowed Other Secured Claim Unimpaired.

iii. *Voting*: Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3. Class 3 – Other Priority Claims

i. *Classification*: Class 3 consists of all Other Priority Claims.

ii. *Treatment*: Each holder of an Allowed Other Priority Claim shall receive, in exchange for full and final satisfaction, settlement, and release of each Allowed Other Priority Claim, payment in full in Cash of such holder's Allowed Other Priority Claim from the Liquidation Trustee or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

iii. *Voting*: Class 3 is Unimpaired by the Plan, and each holder of a Class 3 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Class 3 Other Priority Claims are not entitled to vote to accept or reject the Plan.

4. Class 4 – Disputed Prepetition Secured Loan Claims

i. *Classification*: Class 4 consists of all Disputed Prepetition Secured Loan Claims.

ii. *Treatment*: Each Disputed Prepetition Secured Loan Claim is Disputed. If Allowed by order of the Bankruptcy Court, in exchange for full and final satisfaction, settlement, and release of each Allowed Disputed Prepetition Secured Loan Claim, each holder of a Disputed Prepetition Secured Loan Claim shall receive payment in full in Cash from the proceeds of the Sale Transactions or such other treatment as determined by an order of the Bankruptcy Court.

iii. *Voting*: Class 4 is Unimpaired by the Plan, and each holder of a Class 4 Disputed Prepetition Secured Loan Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Class 4 Disputed Prepetition Secured Loan Claims are not entitled to vote to accept or reject the Plan.

5. Class 5 – Mishmeret Prepetition Secured Claims

i. *Classification*: Class 5 consists of all Mishmeret Prepetition Secured Claims.

ii. *Allowance*: The Prepetition Obligations, including any portion constituting a Lender Deficiency Claim, are Allowed in the aggregate principal amount of $98,162,349 as of the Petition Date, plus without duplication, all accrued and unpaid postpetition interest, fees, costs, expenses, charges, premiums, and other amounts owing under the documents governing the Prepetition Obligations, reduced by the $19,916,170 held by the Prepetition Secured Parties and associated credits and applied in reduction of the Prepetition Obligations. The Settlement Fund was contributed from amounts otherwise recoverable on account of the Mishmeret Prepetition Secured Claims and shall not increase any Lender Deficiency Claim.

iii. *Treatment*: In exchange for full and final satisfaction, settlement, and release of the Mishmeret Prepetition Secured Claims, Mishmeret shall receive the remaining proceeds of the Sale Transactions relating to the Mishmeret Collateral Pool Debtors, after payment of any Allowed Disputed Prepetition Secured Loan Claims in Class 4. The unsecured portion of the Prepetition Obligations shall constitute Lender Deficiency Claims, classified in Class 8, but shall not be entitled to any distribution from the Settlement Fund.

iv. *Voting*: Class 5 is Impaired by the Plan. Mishmeret is entitled to vote to accept or reject the Plan; *provided however*, that, to the extent the amount of the proceeds from the sale of the Mishmeret Collateral Pool Debtors is sufficient to satisfy such Allowed Mishmeret Prepetition Secured Claims in full, Mishmeret shall be Unimpaired and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

6. Class 6 – Disputed Secured MCA Claims

i. *Classification*: Class 6 consists of all Disputed Secured MCA Claims.

ii. *Treatment*: Each Disputed Secured MCA Claim is Disputed. If Allowed by order of the Bankruptcy Court, in exchange for full and final satisfaction, settlement, and release of each Allowed Disputed Secured MCA Claim, each holder of a Disputed Secured MCA Claim shall receive, after payment of the Mishmeret Prepetition Secured Claims or other senior claims on the applicable Collateral, payment in full in Cash from the proceeds of the Sale Transactions or such other treatment as determined by an order of the Bankruptcy Court.

iii. *Voting*: Class 6 is Impaired by the Plan. The Disputed Secured MCA Claims are entitled to vote to accept or reject the Plan; *provided however*, that, to the extent the amount of the proceeds from the Sale Transactions is sufficient to satisfy such Allowed Disputed Secured MCA Claim in full, the Disputed Secured MCA Claim shall be Unimpaired and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

7. <u>Class 7 – Disputed Unsecured MCA Claims</u>

i. *Classification*: Class 7 consists of all Disputed Unsecured MCA Claims.

ii. *Treatment*: Each Disputed Unsecured MCA Claim is Disputed. If Allowed by order of the Bankruptcy Court, in exchange for full and final satisfaction, settlement, and release of each Allowed Disputed Unsecured MCA Claim, each holder of a Disputed Unsecured MCA Claim shall receive its pro rata share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their pro rata share of the Liquidation Trust Assets.

iii. *Voting*: Class 7 is Impaired by the Plan. Holders of Disputed Unsecured MCA Claims are entitled to vote to accept or reject the Plan.

8. <u>Class 8 – General Unsecured Claims</u>

i. *Classification*: Class 8 consists of all General Unsecured Claims.

ii. *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive its pro rata share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the

holders thereof to receive their pro rata share of the Liquidation Trust Assets.

iii. *Voting*: Class 8 is Impaired by the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

9. Class 9 – Convenience Class Claims

i. *Classification*: Class 9 consists of all Convenience Class Claims.

ii. *Treatment*: Except to the extent that a holder of an Allowed Convenience Class Claim by amount or election agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Convenience Class Claim shall be paid its pro rata share of $2 million, payable from the Settlement Fund, in Cash; *provided*, that to the extent that a holder of a Convenience Class Claim against a Camp Business Debtor holds any joint and several liability claims, guaranty claims, or other similar claims against any other Camp Business Debtor arising from or relating to the same obligations or liability as such Convenience Class Claim, such holder shall only be entitled to a distribution on one Convenience Class Claim against the Camp Business Debtors in full and final satisfaction of all such Claims.

iii. *Voting*: Class 9 is Impaired by the Plan. Holders of Convenience Class Claims are entitled to vote to accept or reject the Plan.

10. Class 10 – Subordinated Securities Claims

i. *Classification*: Class 10 consists of the Subordinated Securities Claims against the Camp Business Debtors.

ii. *Treatment*: Holders of Subordinated Securities Claims against the Camp Business Debtors will receive no distribution under the Plan.

iii. *Voting*: Class 10 is Impaired by the Plan, and each holder of Class 10 Subordinated Securities Claims is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 10 Subordinated Securities Claims are not entitled to vote to accept or reject the Plan.

11. Class 11 – Interests

i. *Classification*: Class 11 consists of all Interests in the Camp Business Debtors.

ii. *Treatment*: Holders of Interests in the Camp Business Debtors will receive no distribution under the Plan, and all Interests shall be cancelled, released, discharged, and extinguished.

iii. *Voting*: Class 11 is Impaired by the Plan, and each holder of Class 11 Interests is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 11 Interests are not entitled to vote to accept or reject the Plan.

D. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Camp Business Debtors' rights in respect of any Unimpaired Claims or Interests, including all rights of the Camp Business Debtors in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests.

E. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Camp Business Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Camp Business Debtors reserve the right to modify the Plan in accordance with Article IX of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

F. *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

G. *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. *Vesting of Assets.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all of the Liquidation Trust Assets shall immediately vest in the Liquidation Trust.

B. *Sources of Consideration for Plan Distributions.*

Distributions under the Plan on account of the Beneficial Trust Interests will be funded by the Liquidation Trust Assets. All other distributions under the Plan, other than distributions on account of Beneficial Trust Interests, will be funded by Cash, Liquidation Trust Claims Reserve, or the Professional Fee Claim Reserve. On the Effective Date, the Camp Business Debtors shall fund the Liquidation Trust Claims Reserve, the Liquidation Trust Expense Reserve, and Professional Fee Claim Reserve, in full in Cash.

The Camp Business Debtors are authorized to distribute the Segregated Sale Proceeds (as such term is defined in the Amended Summit Sale Order) to Bank of America, N.A. in accordance with the Plan. No proceeds shall be distributed to Beton Holdings, LLC on account of its asserted Claims.

C. *Limited Consolidation.*

The Plan provides for the limited consolidation of the Camp Business Debtors' Estates, but solely for the purposes of the Plan, including voting on the Plan by the holders of Claims and making any distributions to holders of Claims. Specifically, on the Effective Date, (i) all Assets and liabilities of the Camp Business Debtors will, solely for voting and distribution purposes, be treated as if they were merged, (ii) each Claim against the Camp Business Debtors will be deemed a single Claim against and a single obligation of the Camp Business Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Camp Business Debtors, (iv) all guarantees of any Camp Business Debtor of the payment, performance, or collection of obligations of any other Camp Business Debtor shall be eliminated and canceled, and (v) all transfers, disbursements, and distributions on account of Claims made by or on behalf of any of the Camp Business Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Camp Business Debtors' Estates. Holders of Allowed Claims entitled to distributions under the Plan shall be entitled to their share of Assets available for distribution to such Claim without regard to which Camp Business Debtor was originally liable for such Claim. Except as set forth herein, such limited consolidation shall not (other than for purposes related to the Plan) affect the legal and corporate structures of the Camp Business Debtors and shall not affect the Settlement Fund, which is not property of any Estate.

D. *Liquidation Trust.*

1. <u>Creation of Liquidation Trust</u>. On the Effective Date, the Liquidation Trust shall be created in accordance with the Liquidation Trust Agreement for the benefit of holders of Beneficial Trust Interests. The Liquidation Trust Agreement shall (i) be in form and substance

consistent in all respects with this Plan and (ii) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidation Trust as a grantor trust and the holders of Beneficial Trust Interests as the grantors and owners thereof for federal tax purposes. On the Effective Date, the Retained Causes of Action shall be assigned to the Liquidation Trust. All relevant parties (including the Camp Business Debtors, the Liquidation Trustee, and the holders of Beneficial Trust Interests) will take all actions necessary to cause title to the Liquidation Trust Assets to be transferred to the Liquidation Trust. The powers, authority, responsibilities, and duties of the Liquidation Trust and the Liquidation Trustee are set forth and will be governed by the Liquidation Trust Agreement, the Plan, and Confirmation Order.

2. Transfers to the Liquidation Trust. On the Effective Date, the Camp Business Debtors and their Estates shall transfer and shall be deemed to have irrevocably transferred to the Liquidation Trust, the Liquidation Trust Assets, which transfer shall be free and clear of Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided herein. For the avoidance of doubt, the Liens securing the DIP Claims and the Mishmeret Prepetition Secured Claims shall not be released and such Liens shall remain in full force and effect until payment in full.

3. Purpose of the Liquidation Trust. The Liquidation Trust shall be established for the primary purpose of liquidating its assets and making distributions in accordance with the Plan, Confirmation Order, and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidation Trust. The Liquidation Trust, acting through the Liquidation Trustee, shall be authorized to exercise and perform the rights, powers, and duties held by the Estates with respect to the Liquidation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, or any similar official who has been appointed to take control of, supervise, manage, or liquidate the Camp Business Debtors, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Liquidation Trust Assets.

4. Administration of the Liquidation Trust. The Liquidation Trust shall be administered by the Liquidation Trustee pursuant to the Liquidation Trust Agreement and the Plan. In the event of any inconsistency between the Plan or the Confirmation Order and the Liquidation Trust Agreement as such conflict relates to anything other than the establishment of a Liquidation Trust, the Plan, or Confirmation Order shall control.

5. Appointment of Liquidation Trustee. As of the Effective Date, the Liquidation Trustee shall be appointed as trustee of the Liquidation Trust pursuant to the Liquidation Trust Agreement, the Plan, and the Confirmation Order, and section 1123(b)(3) of the Bankruptcy Code, and shall have all of the rights, powers, authority, and obligations set forth in the Liquidation Trust Agreement, the Plan, the Confirmation Order, and the Bankruptcy Code. The Liquidation Trustee shall be the exclusive trustee of the Estates under Title 11 for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).

6. Compensation of the Liquidation Trustee. The Liquidation Trustee shall be compensated pursuant to the terms of the Liquidation Trust Agreement. Any professionals retained by the Liquidation Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred, subject to approval by the Liquidation Trustee. The payment of fees and expenses of the Liquidation Trustee and its professionals shall be made in the ordinary course of business from the Liquidation Trust Expense Reserve and shall not be subject to Bankruptcy Court approval. The identity of the Liquidation Trustee and the proposed compensation shall be disclosed in the Plan Supplement.

7. Responsibilities of the Liquidation Trustee. The responsibilities of the Liquidation Trustee under the Liquidation Trust Agreement and this Plan shall include those set forth in the Liquidation Trust Agreement, including, without limitation, the following (a) the receipt of the Liquidation Trust Assets; (b) the establishment and maintenance of such operating, reserve, and trust account(s) as are necessary and appropriate to carry out the terms of the Liquidation Trust and the Plan, including the Liquidation Trust Expense Reserve and Liquidation Trust Claims Reserve; (c) the investment of Cash that is a Liquidation Trust Asset; (d) the pursuit of objections to, estimation of, and settlements of all Claims, regardless of whether any such Claim is listed on the Camp Business Debtors' Schedules, other than Claims that are Allowed pursuant to the Plan; (e) the investigation, prosecution, settlement, or abandonment of any Retained Causes of Action; (f) unless otherwise provided in the Plan, the calculation of all distributions to be made under this Plan; (g) authorizing and making, through the Distribution Agent, all distributions to be made under this Plan; (h) consummating any transactions that have been approved by the Sale Orders; (i) liquidating any remaining or remnant assets of the Camp Business Debtors; and (j) such other responsibilities as may be vested in the Liquidation Trustee pursuant to this Plan, the Liquidation Trust Agreement, the Confirmation Order, other Bankruptcy Court Orders, or as otherwise may be necessary and proper to carry out the provisions of this Plan.

8. Powers of Liquidation Trustee. The powers of the Liquidation Trustee shall be set forth in the Liquidation Trust Agreement, the form of which shall be filed in the Plan Supplement.

9. Tax Treatment of the Liquidation Trust and Tax Reporting. The tax treatment of the Liquidation Trust and tax reporting responsibilities shall be set forth in the Liquidation Trust Agreement, the form of which shall be filed in the Plan Supplement.

10. Retained Causes of Action. The Liquidation Trustee shall have the sole right to pursue any existing or potential Retained Causes of Action, by informal demand and/or commencement or continuation of litigation.

11. Costs and Expenses of the Liquidation Trust. The costs and expenses of the Liquidation Trust, including the fees and expenses of the Liquidation Trustee and other professionals retained on behalf of the Liquidation Trust, shall be paid out of the Liquidation Trust Expense Reserve, subject to the terms of the Liquidation Trust Agreement.

12. Effective Date. On the Effective Date, the Liquidation Trustee shall have the rights and powers set forth herein, in the Confirmation Order and in the Liquidation Trust Agreement to carry out and implement the purposes and intent of the Plan.

E. *Dissolution of Liquidation Trust.*

The Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date, unless the Bankruptcy Court, upon motion made prior to the fifth (5th) anniversary without the need for a favorable letter ruling from the IRS that any further extension would not adversely affect the status of either as a Liquidation Trust for federal income tax purposes, determines that a fixed period extension, not to exceed five (5) years, is necessary to facilitate or complete the recovery on and liquidation of the Liquidation Trust Assets. Upon the filing of any motion for an extension of the date of dissolution, such date shall be deemed automatically extended until an order of the Bankruptcy Court is entered with respect to such motion or such motion is withdrawn.

F. *Liquidation Trust Security Matters.*

To the extent that the Beneficial Trust Interests are deemed to be "securities," the issuance of such interests under this Plan is exempt pursuant to section 1145 of the Bankruptcy Code, and from registration under the Securities Act of 1933, as amended, and any applicable U.S. federal, state, and local laws requiring registration of securities. It is currently anticipated that the Beneficial Trust Interests will be uncertificated and non-transferable except to the extent expressly provided otherwise in the Liquidation Trust Agreement.

G. *Tax Returns.*

After the Effective Date, the Liquidation Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for the Camp Business Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Camp Business Debtors or their Estates for any tax incurred during the administration of such Camp Business Debtors' Chapter 11 Cases, as determined under applicable tax laws.

H. *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the obligations of the Camp Business Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, and purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Camp Business Debtors related thereto shall be cancelled and deemed null and void; *provided*, *however*, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against the Camp Business Debtors shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan and/or pursue the Retained Causes of Action, in each case, as provided herein; *provided further, however*, that the preceding provision shall not result in any expense or liability to the Debtors, except to the extent set forth in or provided for under this Plan.

Notwithstanding anything to the contrary herein, the Mishmeret Prepetition Loan Documents shall continue in effect to the extent necessary to (i) allow Mishmeret and the Prepetition Secured Parties to enforce their rights, claims, and interests vis-à-vis any party other

than the Camp Business Debtors and (ii) preserve all rights of Mishmeret and the Prepetition Secured Parties with respect to the Mishmeret Prepetition Loan Documents; *provided* that none of the foregoing shall attach to, or be asserted against, the Settlement Fund, the GUC Trust Account, the Settlement Fund Account, or the Professional Fee Escrow, and the foregoing shall be subject in all respects to the Settlement Term Sheet, the 9019 Settlement Order, and this Plan.

I. *Indemnification Obligations.*

Except as otherwise provided in the Plan, the Confirmation Order, any and all indemnification obligations of the Camp Business Debtors, whether pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, or other document or applicable law, shall be rejected as of the Effective Date of the Plan, except that indemnification obligations of any Camp Business Debtor existing as of the Petition Date (if any), in each case solely to the extent in favor of an individual who served as an independent director of SIMAD Holdings Ltd. during the Chapter 11 Cases (and for the avoidance of doubt, excluding Michael Shabsels, David Shabsels, and any Person described in clause (f) or (g) of the definition of "Excluded Parties" with respect to either of them, excluding the aforesaid independent directors) and solely in such individual's capacity as such a director (collectively, the "Director Indemnification Obligations"), shall not be rejected pursuant to this Article IV.I or Article VI hereof; *provided*, *however*, that (a) the Director Indemnification Obligations are not assumed, reinstated, or ratified, and shall not be binding on the Liquidation Trust, the Liquidation Trustee, or the post-Effective Date Camp Business Debtors except to the extent of a Claim Allowed in accordance with clause (c) below; (b) notwithstanding anything to the contrary in this Plan, the Confirmation Order, or applicable law, any Claim arising under or relating to the Director Indemnification Obligations, whether on account of acts, omissions, services, defense costs, or other amounts incurred before, on, or after the Petition Date, and regardless of any asserted benefit to the Estates, shall be deemed a prepetition Claim and shall not constitute, and shall not be Allowed as, an Administrative Claim, a Professional Fee Claim, or a Claim entitled to priority or superpriority under any section of the Bankruptcy Code or otherwise, and no such Claim shall be paid from the Professional Fee Escrow, the Professional Fee Claim Reserve, the Approved Budget, the Settlement Fund, the Liquidation Trust Claims Reserve, or the Liquidation Trust Expense Reserve; (c) any such Claim shall be treated, if and solely to the extent Allowed, as a General Unsecured Claim or, to the extent subject to section 510(b) of the Bankruptcy Code or otherwise subordinated, as a Subordinated Securities Claim, and shall be subject to the applicable Bar Dates and Article VII.J.7 hereof; and (d) all objections and defenses to any such Claim, including under sections 502(d), 502(e)(1)(B), and 510 of the Bankruptcy Code, and all rights of setoff and recoupment, are expressly preserved; *provided*, *however*, that, any and all indemnification, contribution, reimbursement, and advancement obligations of the Camp Business Debtors to or for the benefit of any Excluded Party (other than the Israeli directors of SIMAD Holdings Ltd. as set forth above) shall be rejected as of the Effective Date, and any Claim arising therefrom shall not constitute an Administrative Claim and shall be subject to Article VII.J.7 hereof.

J. *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Camp Business Debtors and their directors, members, trustees, officers, and managers are and, after the Effective Date, the post-Effective Date Camp Business Debtors and the Liquidation Trustee are authorized to and may issue, execute, deliver,

file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Camp Business Debtors, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

K. *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

L. *Treatment of Causes of Action.*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, sold, or settled in the Plan or pursuant to a Bankruptcy Court order (including, without limitation, the Final Mishmeret DIP Order, the Sale Orders, the 9019 Settlement Order, and the release provisions in this Plan) (subject in all respects to Article VII.J hereof), the Camp Business Debtors reserve and assign to the Liquidation Trust, any and all Retained Causes of Action, whether arising before or after the Petition Date, and preserve the right to commence, continue, prosecute, or settle such Retained Causes of Action, notwithstanding the occurrence of the Effective Date. On and after the Effective Date, the Liquidation Trustee, on behalf of the Liquidation Trust, may pursue Retained Causes of Action. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Liquidation Trust will not pursue any and all available Retained Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation or Consummation. For the avoidance of doubt, all Claims and Causes of Action of the Debtors and their Estates against any Excluded Party are Retained Causes of Action, are reserved and assigned to the Liquidation Trust, and are preserved as set forth in Article VII.J hereof; *provided, however*, that no Claim or Cause of Action that any Person other than the Debtors or their Estates, including Mishmeret and the Prepetition Secured Parties (as defined in the Final Mishmeret DIP Order), holds directly, rather than derivatively through the Debtors or their Estates, against any Excluded Party shall be a Retained Cause of Action or be reserved or assigned to the Liquidation Trust, and each such Claim and Cause of Action is preserved for the benefit of its holder as set forth in Article VII.J hereof.

M. *Camp Business Debtors' Directors, Officers, and Managers.*

On the Effective Date, all officers, directors, and managers of the Camp Business Debtors shall be deemed to have resigned and shall be discharged from any further duties and responsibilities in such capacity. On and after the Effective Date, the Liquidation Trustee shall serve as the sole officer, sole director, or sole manager of the Camp Business Debtors, but he or she shall retain and enforce Retained Causes of Action as the representative of the Estates in his or her capacity as the Liquidation Trustee under the Plan pursuant to section 1123(b) of the Bankruptcy Code and not as an officer, director, or manager of the Camp Business Debtors. Any and all operating agreements, certificates of organization, and related corporate documents are deemed amended by the Plan to permit and authorize such sole appointment.

N. *Director and Officer Liability Insurance.*

After the Effective Date, the Liquidation Trust shall not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Camp Business Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Liability Insurance Policy for the full term of such D&O Liability Insurance Policy, to the extent set forth therein and in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered, regardless of whether such directors and officers remain in such positions after the Effective Date. The Camp Business Debtors (prior to the Effective Date) and the Liquidation Trust (after the Effective Date) are authorized, but not directed, to pay the applicable policy retentions under the applicable D&O Liability Insurance Policies to facilitate coverage and reimbursement of covered defense costs incurred by the Camp Business Debtors' directors and officers. After the Effective Date, the Liquidation Trust shall purchase a run-off or tail policy with a term of not less than six years, on terms and limits no less favorable than under the current D&O Liability Insurance Policy, with the premium paid on or before the Effective Date. The treatment and assumption of the D&O Liability Insurance Policies herein shall not reduce, impair or interfere with the directors' and officers' rights or coverage under the D&O Liability Insurance Policies, regardless of the policyholder.

On the Effective Date, any and all D&O Liability Insurance Policies shall be assumed by the Camp Business Debtors pursuant to sections 105 and 365 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policy available to any individuals and/or entities under such D&O Liability Insurance Policy in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered.

Notwithstanding anything to the contrary in this Article IV.N, and subject to Article VII.J.8 hereof, (a) nothing herein shall limit the Liquidation Trust's right to pursue any Claim or Cause of Action against any Excluded Party or to recover from any D&O Liability Insurance Policy on account thereof; and (b) unless otherwise ordered by a court of competent jurisdiction, no defense cost or other amount for the benefit of any Excluded Party shall be paid from Liquidation Trust Assets without the prior written consent of the Liquidation Trustee, except that the Liquidation Trustee may pay any premium or retention necessary to preserve or access coverage. Nothing in

the Plan, the Confirmation Order, or the Liquidation Trust Agreement, including the transfer of the Causes of Action to the Liquidation Trust, shall (a) be construed as a claim by one insured against another insured, (b) trigger, or be deemed to trigger, any "insured versus insured," "entity versus insured," or similar exclusion in any D&O Liability Insurance Policy, or (c) otherwise diminish, impair, or eliminate any coverage available under any D&O Liability Insurance Policy.

O. *Camp Business Debtors' Existence.*

From and after the Effective Date, the Camp Business Debtors shall continue in existence for the purpose of winding up their affairs as expeditiously as practicable. Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Camp Business Debtors without any requirement of further action by the Camp Business Debtors. On and after the Effective Date, the Camp Business Debtors' remaining assets and affairs shall be administered and managed by the Liquidation Trustee in accordance with the Plan.

Upon certification to be filed with the Bankruptcy Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Chapter 11 Cases, the Camp Business Debtors shall be deemed to be dissolved without any further action by the Camp Business Debtors or the Liquidation Trustee, including the filing of any documents in any office in any jurisdiction where a Camp Business Debtor is organized. However, the Liquidation Trustee shall have the authority to take all necessary action to dissolve such Camp Business Debtor. Upon the Effective Date, the Camp Business Debtors shall turn over their books and records to the Liquidation Trustee.

Notwithstanding anything herein to the contrary, the Liquidation Trustee shall not dissolve Mohawk Country Day School, Inc. prior to the termination of the Administrative Services and Transition Agreement dated October 12, 2026 by FW Mohawk Opco LLC and Mohawk Country Day School, Inc. in accordance with its terms.

P. *Dissolution of Creditors' Committee.*

On the Effective Date, solely with respect to the Camp Business Debtors, (a) the Creditors' Committee shall dissolve automatically and its members shall be released and discharged from all rights, duties, responsibilities, obligations and liabilities arising from or related to the Chapter 11 Cases or the Plan and under the Bankruptcy Code and applicable law; and (b) the retention or employment of the Creditors' Committee's respective professionals and agents shall be terminated; *provided, however,* notwithstanding the foregoing, the Creditors' Committee shall not dissolve for purposes of the final fee applications, and the Professional Fee Escrow and all the rights of the Creditors' Committee under the Settlement Term Sheet and the 9019 Settlement Order shall vest in the Committee Successor.

Q. *Corporate Authority.*

The Confirmation Order shall constitute full and complete authority for the Camp Business Debtors and Liquidation Trust to take all other actions that may be necessary, useful, or appropriate to consummate the Plan without any further judicial or corporate authority.

R. *The Settlement.*

1. Approval and Effectiveness. On October 27, 2026, the Bankruptcy Court entered the 9019 Settlement Order approving the Settlement. The 9019 Settlement Order is a Final Order. The Settlement Effective Date occurred on October 27, 2026. The Settlement is binding on the Debtors, the Estates, the Liquidation Trust, and all parties in interest. Nothing in the Plan or the Confirmation Order modifies the Settlement or the 9019 Settlement Order, and the Plan shall be construed and implemented consistently with the Settlement and this Article IV.R.

2. Settlement Fund. On the Effective Date, the Settlement Fund shall be transferred from the GUC Trust Account to the Liquidation Trust and deposited into the Settlement Fund Account. The Settlement Fund (a) was contributed by the Prepetition Secured Parties from amounts otherwise recoverable on account of the Mishmeret Prepetition Secured Claims, is not and shall not become property of the Estates, and is not a Liquidation Trust Asset; (b) shall be accounted for separately from the Liquidation Trust Assets; (c) is free and clear of all Liens, Claims, and interests, including the DIP Liens, Prepetition Liens, Adequate Protection Liens, and any superpriority claims; (d) is not subject to setoff, recoupment, surcharge, or sweep; and (e) shall not be available to satisfy any Lender Deficiency Claim.

3. Use of Settlement Fund. The Committee Successor shall have sole and absolute discretion over the use of the Settlement Fund subject to the 9019 Settlement Order, including, without limitation, to make distributions to the holders of Beneficial Trust Interests (other than on account of any Lender Deficiency Claim) thereof in such amounts, at such times, and on such basis as the Committee Successor determines. Because the Settlement Fund is not property of the Estates, it is not subject to the distribution priorities of the Bankruptcy Code, including section 1129(b)(2)(B). Any distribution from the Settlement Fund is in addition to, and shall not reduce, any distribution otherwise payable on account of Beneficial Trust Interests.

4. No Lender Recovery. No holder of a Lender Deficiency Claim shall receive any distribution from the Settlement Fund.

5. Residual. Any Settlement Fund amounts remaining on dissolution of the Liquidation Trust shall be distributed as the Committee Successor directs.

6. Cooperation. The Prepetition Secured Parties' obligation under the Settlement to reasonably cooperate in good faith with the investigation and prosecution of avoidance actions and other Causes of Action against third parties shall run to the Liquidation Trust, as successor to the Estates. If the Liquidation Trustee requests that cooperation, the Prepetition Secured Parties shall be reimbursed for their documented fees, costs, and expenses of providing such cooperation.

7. Approved Budget and Professional Fee Escrow. As provided in the Settlement, the Approved Budget was funded in full from the proceeds of any sale or other disposition of the Debtors' assets before any such proceeds were paid, distributed, or released to or for the benefit of Mishmeret, the Lender Parties, the DIP Lenders, or the Prepetition Secured Parties; the Professional Fee Escrow shall be free and clear of all Liens, claims, interests, and encumbrances and shall be used solely to pay allowed fees and expenses of the Escrowed

Professional Persons; and the Approved Budget and the Professional Fee Escrow shall be separate from and shall not reduce the Settlement Fund.

8. Settlement Implementation. The Settlement, including the Settlement Parties' agreements in the Term Sheet with respect to the chapter 11 plan, is incorporated into and implemented by this Plan, and, notwithstanding anything to the contrary herein, all payments, distributions, and funding under this Plan shall be made in accordance with, and subject to, the Settlement and this Article IV.R. Consistent with the Term Sheet, to the extent there are insufficient funds available in the Approved Budget to pay all Allowed administrative expenses as provided for in this Plan, the Settlement Parties shall meet and confer in good faith with the Camp Business Debtors (or, after the Effective Date, the Liquidation Trustee) regarding potential resolutions of such shortfall to facilitate confirmation and consummation of this Plan, and all potential resolutions, sources of funds, and recoveries under the Settlement and this Plan may be considered in connection therewith. Any resolution shall be in writing, shall be agreed to by each party whose rights or recoveries are affected thereby, and shall be subject to any required approval of the Bankruptcy Court; nothing in this Article IV.R.8 shall obligate any party to agree to any particular resolution, to provide any funding or contribution not otherwise required by the Settlement, or alter any rights or treatment absent such agreement.

9. Non-Settling Parties. Consistent with the Settlement and the 9019 Order, nothing in the Settlement or this Article IV.R shall release, waive, or impair any Claims or Causes of Action against any non-settling party, including the Excluded Parties, all of which are preserved as set forth in Article VII.J hereof.

S. *Preservation of Intercompany Claims.*

Notwithstanding anything to the contrary in this Plan, the Confirmation Order, or any other chapter 11 plan or order entered in the Chapter 11 Cases, and for the avoidance of doubt, all Claims and Causes of Action of each Camp Business Debtor against any other Debtor (including the Holding Company Debtors), any Affiliate, or any parent, subsidiary, or other related Entity, of whatever kind or nature and however arising, are expressly preserved, shall constitute Retained Causes of Action, and shall vest in the Liquidation Trust on the Effective Date. For the avoidance of doubt, nothing in this Plan, the Confirmation Order, or any release, exculpation, or injunction herein shall release, waive, discharge, setoff, subordinate, or otherwise impair any such Claim or Cause of Action, and all rights of the Camp Business Debtors and the Liquidation Trust with respect to the allowance, amount, and priority thereof are reserved. This Article IV.S is in addition to, and shall not limit, Article IV.L, Article VII.J, or the definition of Retained Causes of Action, and the specific reference herein to any Claim, Cause of Action, or Entity shall not be construed to limit, or to imply the release, waiver, or abandonment of, any other Claim or Cause of Action of the Camp Business Debtors, their Estates, or the Liquidation Trust against any Entity, all of which are preserved.

## ARTICLE V
## FUNDING AND DISBURSEMENTS

A. *Distribution Agent.*

The Distribution Agent, on behalf of the Camp Business Debtors and/or Liquidation Trustee, shall make all distributions under the Plan on account of Allowed Claims against the Camp Business Debtors pursuant to the terms of the Plan, Confirmation Order and the Liquidation Trust Agreement, *provided*, *however*, that all Allowed Professional Fee Claims shall be paid out of the Professional Fee Claim Reserve. All distributions to holders of Beneficial Trust Interests shall be made by the Distribution Agent. The Distribution Agent shall act at the direction of the Liquidation Trustee.

B. *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Liquidation Trustee shall determine in his or her sole discretion.

C. *Objections to Claims.*

Except as expressly provided herein, the Camp Business Debtors and the Creditors' Committee (before the Effective Date) or the Liquidation Trustee (on or after the Effective Date), as applicable, shall have the exclusive authority and standing to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims or motions to estimate Claims. From and after the Effective Date, the Liquidation Trustee shall further have the authority to resolve and settle any and all Claims without approval of the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction to estimate any Claim, including during the litigation of any objection to such Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of Distributions), and the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.

Except as otherwise set forth in Article II.A.2 above with respect to Professional Fee Claims, any objections to Claims shall be filed and served on or before the Claims Objection Deadline, *provided*, *however*, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Liquidation Trustee.

Except as provided herein or otherwise agreed, any and all holders of Claims Filed after an applicable Bar Date shall not be treated as creditors for purposes of Distribution pursuant to Bankruptcy Rule 3003(c)(2) and the Bar Date Order unless on or before the Confirmation Date such late Claim has been deemed timely Filed by a Final Order. After the Confirmation Date, a proof of claim Filed or amended without the authorization of the Bankruptcy Court shall be automatically Disallowed.

D. *Distribution for Allowed Claims.*

Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to holders of Allowed Claims shall be made on the Distribution Date.

No holder of a Disputed Claim shall be entitled to a distribution from the Liquidation Trustee, the Liquidation Trust, the Camp Business Debtors, or their Estates with respect to such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim except as provided in the Plan. Except as otherwise provided herein with respect to the Disputed Prepetition Secured Loan Claims and the Disputed Secured MCA Claims, the Liquidation Trustee shall establish a reserve in Cash in the full amount of any distributions that would otherwise be payable upon any Disputed Claims if they were Allowed Claims until such time as such Disputed Claims are determined by Final Order to be Allowed or not Allowed.

E. *Interest and Charges.*

Except as expressly provided in this Plan or as otherwise required by the Bankruptcy Code, no interest shall accrue or be paid on Allowed Claims.

F. *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Liquidation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidation Trust reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The Liquidation Trust shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all documentation, that in the Liquidation Trustee's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim have been satisfied. To the extent such documentation is not provided within thirty (30) days of the respective Distribution Date, the distribution on such Allowed Claim shall be deemed Unclaimed Property.

G. *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Liquidation Trust shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction

of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar. In addition, the Liquidation Trustee shall not be required to make any distribution in an amount less than $50.00. To the extent that such a distribution shall be called for as part of any interim distribution, the Liquidation Trust shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the holder of an Allowed Claim is entitled to a distribution of $50.00 or more, make such distribution at such time. The Liquidation Trust shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other holders of Allowed Claims, in accordance with the terms of the Plan, the Confirmation Order and the Liquidation Trust Agreement.

H. *Delivery of Distributions to Holders of Allowed Claims.*

Distributions to holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such holders if the Liquidation Trustee has been notified in writing of a change of address. If the distribution to any holder of an Allowed Claim is returned to the Liquidation Trustee as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Article V.I of the Plan.

I. *Unclaimed Distributions.*

If any distribution to holders of an Allowed Claim or Beneficial Trust Interest is unclaimed or returned as undeliverable, such Unclaimed Property shall be held by the Liquidation Trustee in the Unclaimed Property Reserve for a period of thirty (30) days. Once the distribution to holders of Allowed Claims or Beneficial Trust Interests becomes Unclaimed Property, the Liquidation Trustee shall, subject to the limitations set forth herein, (i) hold such Unclaimed Property in the Unclaimed Property Reserve solely for the benefit of such holder or holders who have failed to claim such Unclaimed Property, and (ii) release the Unclaimed Property from the Unclaimed Property Reserve and deliver to the holder entitled thereto upon presentation of proper proof by such holder of its entitlement thereto. After the expiration of thirty (30) days, the holders of Allowed Claims or Beneficial Trust Interests entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan, and such Allowed Claims shall be deemed disallowed and expunged in their entirety and the funds shall become Liquidation Trust Assets and redistributed to the other holders of Allowed Claims in accordance with the terms of this Plan, Confirmation Order and Liquidation Trust Agreement. Such funds shall not be subject to the escheat laws of any state.

If there is any residual Unclaimed Property at the time of dissolution of the Liquidation Trust, such residual Unclaimed Property shall be available for a subsequent distribution on a pro rata basis to holders of Beneficial Trust Interests or donated to a charitable organization at the sole discretion of the Liquidation Trust.

Nothing contained in the Liquidation Trust Agreement, this Plan, or the Confirmation Order shall require the Camp Business Debtors, the Liquidation Trustee, the Liquidation Trust, or the Distribution Agent to attempt to locate any holder of an Allowed Claim or Beneficial Trust Interest.

J. *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

K. *Setoffs and Recoupment.*

The Liquidation Trust may, but shall not be required to, setoff against or recoup from any Claims and the distributions to be made in accordance with the terms of the Plan in respect of such Claims, any claims of any nature whatsoever that the Camp Business Debtors may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Camp Business Debtors or the Liquidation Trust of any such Claim it may have against the holder of such Claim.

Notwithstanding anything to the contrary herein, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any current or former party to an Executory Contract or Unexpired Lease, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease(s) with the Camp Business Debtors, or any successors to the Camp Business Debtors, under the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Camp Business Debtors or any successors of the Camp Business Debtors.

L. *Distributions by Liquidation Trust.*

The Liquidation Trust shall not be obligated to make a distribution on account of the Beneficial Trust Interests that would impair the ability of the Liquidation Trust to pay the expenses incurred by the Liquidation Trust.

M. *Claims Paid or Payable by Third Parties.*

1. Claims Paid by Third Parties. The Liquidation Trustee shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Camp Business Debtors or Liquidation Trust. To the extent a holder of such Claim receives a distribution on account of such Claim and receives payment from a party that is not the Camp Business Debtors or the Liquidation Trust on account of such Claim, such holder shall repay, return, or deliver any distribution to the Liquidation Trust, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The Liquidation Trust and the Camp Business Debtors' Estates reserve all of their rights, remedies, claims, and actions against any such holders who fail to repay or return any such distribution.

2. Claims Payable by Third Parties. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to the Camp Business Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy; *provided* that distributions on any uninsured portion shall be made when otherwise due. To the extent that one or more of the Camp Business Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies. Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Camp Business Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; (iv) is identified in the Plan Supplement to be assumed under the Plan; or (v) has been assumed and assigned to a Purchaser of the Camp Business Debtors' assets; or (vi) constitutes an indemnification obligation that is not rejected pursuant to Article IV.I hereof, which shall not be assumed hereunder and shall be treated solely as set forth in Article IV.I hereof.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

B. *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases under this Plan, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after the earlier of (a) service of Notice of the Effective Date, or (b) service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto. The Notice of the Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the six clauses set forth in Article VI.A hereof are deemed rejected as of the Effective Date. The Notice of Effective Date also shall set forth the deadline for filing Proofs of Claim with respect to the same. Absent order of the Bankruptcy Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan. Claims arising from the rejection of the Camp Business Debtors' Executory Contracts or Unexpired Leases shall be

classified as General Unsecured Claims and shall be classified in Class 8 or Class 9, which information shall be included in the Notice of the Effective Date.

## ARTICLE VII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A. *Settlement, Compromise, and Release of Claims and Interests.*

To the greatest extent permissible under the Bankruptcy Code or applicable non-bankruptcy law, and in consideration of the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith release, compromise, and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. To the greatest extent permissible under the Bankruptcy Code or applicable non-bankruptcy law, the Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Camp Business Debtors, their Estates, and holders of Claims and Interests. Subject to Article V hereof, all distributions, if any, made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final. The Settlement was separately approved under the 9019 Settlement Order. Nothing in this Article VII.A releases any Retained Causes of Action. For the avoidance of doubt, nothing in this Article VII.A settles, compromises, or releases any Claim or Cause of Action against any Excluded Party.

B. *Release of Liens.*

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order or any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, immediately following the making of all distributions to be made to an applicable holder pursuant to the Plan, and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Camp Business Debtor and its successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Camp Business Debtor (including any Cash Collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Camp Business Debtors or the Liquidation Trust, as applicable, to evidence the release of such Lien and/or security interest, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens; provided that, notwithstanding the foregoing or anything to the contrary in the Plan, (a) the Liens securing the DIP Claims shall not be**

**released and shall remain in full force and effect until Payment in Full (as defined in the Final Mishmeret DIP Order) of the DIP Claims; and (b) any Adequate Protection Liens (as defined in the Final Mishmeret DIP Order) granted pursuant to the Final Mishmeret DIP Order to secure any Diminution in Value (as defined in the Final Mishmeret DIP Order) in respect of the Mishmeret Prepetition Secured Claims shall not be released and shall remain in full force and effect until Payment in Full of the Mishmeret Prepetition Secured Claims.**

**If any holder of a Secured Claim that has been satisfied in full pursuant to the Plan or the Confirmation Order, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Camp Business Debtors or the Liquidation Trust that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidation Trust shall be entitled to make any such filings or recordings on such holder's behalf.**

C. *Releases by the Camp Business Debtors.*

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the Camp Business Debtors, their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Camp Business Debtors, their Estates, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such holders or their Estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim against, or Interest, a Camp Business Debtor or other Entity, or that any holder of any Claim against or Interest in a Camp Business Debtor or other Entity could have asserted on behalf of the Camp Business Debtors based on or relating to, or in any manner arising from, in whole or in part, the Camp Business Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the Camp Business Debtors' in- or out-of-court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Camp Business**

**Debtor and any Released Party, the distribution of any Cash or other property of the Camp Business Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Camp Business Debtors, the restructuring of any Claim, or Interest before or during the Chapter 11 Cases, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Camp Business Debtors or between the Camp Business Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the administration and implementation of this Plan, including the distribution of property under this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof, or (iv) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to implementing this Plan; (2) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Camp Business Debtors, the post-Effective Date Camp Business Debtors, or the Camp Business Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

D. *Releases by Holders of Claims and Interests.*

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Camp Business Debtors and their Estates (as**

**applicable) whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Camp Business Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Camp Business Debtor and any Released Party, the distribution of any Cash or other property of the Camp Business Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Camp Business Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Camp Business Debtors' in- or out-of-court restructuring efforts, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Camp Business Debtors or between the Camp Business Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any holder of Mishmeret Prepetition Secured Claims that has asserted Claims against the Debtors' Estates as part of a putative class in the *Proxima Investment Management Ltd. v. SIMAD Holdings Ltd., et al.* matter pending in the District Court of Tel Aviv-Jaffa (Economic Division), Class Action: 88654-05-26, (iv) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof, or (v) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date. For the avoidance of doubt, a Holder of a Claim or Interest that timely and affirmatively opts out of the Third-Party Release shall not grant the release in this Article VII.D in its capacity as such Holder, regardless of whether it votes to accept**

**or reject this Plan, is deemed to accept or reject this Plan, or abstains from voting, and such an opt-out election shall not affect the counting of that Holder's vote or its treatment under this Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the third-party release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the third-party release; (5) in the best interests of the Camp Business Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release.**

E. *Liabilities to, and Rights of, Governmental Units.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit, registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

F. *Exculpation.*

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim and any obligation, Cause of Action, or liability for any Exculpated Claim; *provided, however,* that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; *provided further* that the foregoing shall release and exculpate Assaf Ravid, solely in his capacity as Chief Restructuring Officer of the Debtors, for all acts taken in contemplation of the Chapter 11 Cases from and after his appointment on June 2, 2026 through and including the Petition Date. The Exculpated Parties have, and upon Consummation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. For the avoidance of doubt, this Article VII.F is subject in all respects to Article VII.J hereof, and no Excluded Party shall be exculpated from any Claim or Cause of Action.**

G. *Injunction.*

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Camp Business Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Camp Business Debtors. To the fullest extent permissible under applicable law, except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against or Interests in the Camp Business Debtors or Causes of Action, in each case that have been released or are subject to exculpation pursuant to the Plan, shall be precluded and are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated Parties (including the Camp Business Debtors but excluding any Excluded Party), and any successors, assigns or representatives of such Persons or Entities: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff or subrogation, of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and the Bankruptcy Court has entered a Final Order approving such request; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Camp Business Debtors, the Liquidation Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VII.D hereof without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Camp Business Debtor, Liquidation Trust, Exculpated Party, or the Released Parties.**

**Notwithstanding anything herein to the contrary, nothing in this Article VII.G enjoins or restricts the Liquidation Trust or Committee Successor from prosecuting any Retained Cause of Action. For the avoidance of doubt, nothing in this Article VII.G. enjoins, restricts, or requires any Bankruptcy Court determination or authorization for the commencement or prosecution of any Claim or Cause of Action against any Excluded Party, as set forth in Article VII.J.6 hereof. For the avoidance of doubt, this Article VII.G does not enjoin, restrict, or require any Bankruptcy Court determination or authorization for the**

**commencement or prosecution of any Claim or Cause of Action described in the last sentence of the definition of "Released Parties."**

H. *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I. *Document Retention.*

On and after the Effective Date, the Liquidation Trustee may maintain or dispose of documents in accordance with its discretion; *provided however*, and notwithstanding anything to the contrary herein or in the Liquidation Trust Agreement, the Liquidation Trustee shall File a notice with the Bankruptcy Court to dispose, destroy or abandon any documents of the Camp Business Debtors or their Estates. Parties in interest shall have fourteen (14) days to respond to such notice. If no responses are Filed the Liquidation Trustee shall be deemed authorized to dispose, destroy or abandon any documents of the Camp Business Debtors without further notice or Order of the Bankruptcy Court.

J. *Preservation of Claims Against Excluded Parties*

Notwithstanding anything to the contrary in this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, the Liquidation Trust Agreement, or any other Plan Related Document:

1. No Release, Exculpation, or Injunction. Nothing in this Plan, the Confirmation Order, or any Plan Related Document, including Articles IV.L, VII.A, VII.C, VII.D, VII.F, and VII.G hereof, shall release, waive, discharge, exculpate, enjoin, settle, compromise, impair, limit, or otherwise affect any Claim, Cause of Action, right, or remedy of any Debtor, any Estate, the Liquidation Trust, the Liquidation Trustee, the Committee Successor, or any other Entity holding direct Claims or Causes of Action against any Excluded Party. For the avoidance of doubt, no Excluded Party is or shall be (a) a Released Party, whether in its own right or as a Related Party of any other Entity, (b) an Exculpated Party, or (c) entitled to the benefit of any injunction, gatekeeping provision, or bar order in this Plan or the Confirmation Order.

2. All Claims Retained. All Claims and Causes of Action of the Debtors and their Estates against any Excluded Party, whether known or unknown, asserted or unasserted, and whether arising before, on, or after the Petition Date, under the Bankruptcy Code, state law, foreign law, or otherwise, are Retained Causes of Action. They are preserved in full and, on the Effective Date, shall be transferred to and vest in the Liquidation Trust, regardless of whether they are specifically identified in this Plan, the Plan Supplement, the Disclosure Statement, any schedule of retained causes of action, or otherwise. For the avoidance of doubt, such Claims and Causes of Action include, without limitation: (a) Avoidance Actions; (b) claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and unjust enrichment; (c) claims

for fraud, fraudulent inducement, and misrepresentation; (d) claims relating to the issuance, offering, sale, or use of proceeds of the Series A bonds or any other Security; (e) claims relating to any transfer, dividend, distribution, loan, or other transaction between any Debtor and any Excluded Party; (f) alter ego, veil-piercing, and successor liability claims; (g) claims for recharacterization or equitable subordination of any Claim of an Excluded Party; (h) claims against, and rights to the proceeds of, any D&O Liability Insurance Policy; and (i) objections to any Claim held by an Excluded Party.

3. No Preclusion. No Excluded Party may rely on the absence of a specific reference to it, or to any Claim or Cause of Action against it, in this Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order as any indication that such Claim or Cause of Action is not preserved. No doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, judicial estoppel, equitable estoppel, waiver, laches, or other preclusion doctrine shall apply to any such Claim or Cause of Action as a consequence of the Disclosure Statement, this Plan, Confirmation, or Consummation.

4. No Effect of Settlements, Releases, or Prior Orders. For the avoidance of doubt, nothing in (a) the Settlement, the Settlement Term Sheet, or the 9019 Settlement Order (which expressly preserve all claims and causes of action against non-settling parties, including the Debtors' insiders and equity holders), (b) the Final Mishmeret DIP Order, including any stipulation, release, or Challenge provision therein, (c) the Sale Orders or the Asset Purchase Agreements, or (d) any release granted to any Released Party shall release, waive, or impair any Claim or Cause of Action against any Excluded Party. No Excluded Party may assert that any such release, settlement, or order, including any release of a Related Party, bars, limits, or reduces any Claim or Cause of Action against it.

5. No Exculpation. For the avoidance of doubt, no Excluded Party shall be an Exculpated Party or receive the benefit of Article VII.F hereof, whether as a current or former officer, director, manager, employee, agent, or representative of any Debtor or otherwise, and regardless of whether such Excluded Party served in any such capacity during the Chapter 11 Cases.

6. No Gatekeeping. The Liquidation Trust, the Liquidation Trustee, and the Committee Successor may commence and prosecute any Claim or Cause of Action against any Excluded Party without first obtaining any determination, authorization, or order of the Bankruptcy Court under Article VII.G hereof or otherwise.

7. Claims of Excluded Parties. Nothing in this Plan Allows any Claim or Interest held by any Excluded Party. All such Claims and Interests are Disputed and remain subject to objection, setoff, recoupment, disallowance (including under section 502(d) of the Bankruptcy Code), equitable subordination, and recharacterization, and no distribution shall be made on account of any Claim held by an Excluded Party unless and until such Claim is Allowed by Final Order. Claims of Excluded Parties for indemnification, contribution, reimbursement, or advancement shall be treated as set forth in Article IV.I hereof, and no such Claim shall constitute an Administrative Claim.

8. Insurance. Nothing in this Plan, including Article IV.N hereof, shall limit or impair the right of the Liquidation Trust to pursue any Claim or Cause of Action against any Excluded Party or to recover from any D&O Liability Insurance Policy on account thereof. Unless otherwise ordered by a court of competent jurisdiction, no defense cost or other amount for the benefit of any Excluded Party shall be paid from Liquidation Trust Assets without the prior written consent of the Liquidation Trustee, except as permitted by Article IV.N hereof.

9. Controlling Provision. This Article VII.J shall control over any conflicting or inconsistent provision of this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, the Liquidation Trust Agreement, or any other Plan Related Document, and the Confirmation Order shall so provide.

10. Independent Directors of SIMAD Holdings Ltd. Notwithstanding Article VII.J.5 hereof, Article VII.J.4 hereof, clause (x) of the definition of "Exculpated Party", and the definition of "Exculpated Claim", and the definition of "Excluded Parties," each individual who served as an independent director of SIMAD Holdings Ltd. during the Chapter 11 Cases shall be an Exculpated Party, solely in such capacity and solely with respect to Exculpated Claims arising from acts or omissions occurring from and after the Petition Date until the Effective Date, and not with respect to any act or omission occurring before the Petition Date. Except as expressly set forth in the preceding sentence and in Article IV.I hereof, nothing in this Plan or the Confirmation Order, including the treatment of indemnification obligations pursuant to Article IV.I hereof and the treatment of the D&O Liability Insurance Policies pursuant to Article IV.N hereof, shall create, enlarge, enhance, reduce, diminish, impair, or otherwise affect any right, Claim, defense, or remedy of any such director, or of the Camp Business Debtors, their Estates, the Liquidation Trust, or any other Person against or with respect to any such director, whether arising under any contract, organizational document, D&O Liability Insurance Policy, or applicable law, and all such rights, Claims, defenses, and remedies are expressly reserved. Without limiting the foregoing, nothing in this Plan obligates the Liquidation Trust to pay any defense cost, retention, premium, or other amount from Liquidation Trust Assets for the benefit of any such director, other than any premium or retention the Liquidation Trustee, in its sole discretion, elects to pay to preserve or access coverage. The Liquidating Trustee may request that the insurer provide ten (10) business days' notice to the Liquidation Trustee prior to making any payments under the D&O Liability Insurance Policies and all parties' rights are reserved with respect to any such payment, in each case subject in all respects to the terms of the applicable D&O Liability Insurance Policy and applicable law. Nothing in the Plan shall impair or limit the rights of the independent directors of SIMAD Holdings Ltd. to coverage under the D&O Liability Insurance Policy, including the right to defense costs. For the avoidance of doubt, this Article VII.J.10 shall not apply to, and no benefit of this Article VII.J.10 or any other provision of this Plan shall inure to, Michael Shabsels, David Shabsels, or any Person described in clause (f) or (g) of the definition of "Excluded Parties" with respect to either of them, excluding the aforesaid independent directors.

# ARTICLE VIII
# CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A. *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

1. the Bankruptcy Court shall have entered the Confirmation Order; *provided* that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

2. all documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3. the DIP Roll-Up Claim, including fees and expenses incurred and invoiced as of the Effective Date shall have been paid in full;

4. the Debtors shall have taken all action necessary to vest control of the GUC Trust Account in the Committee Successor as of the Effective Date;

5. the Liquidation Trust Claims Reserve, the Liquidation Trust Expense Reserve, and the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan and the Confirmation Order;

6. the Liquidation Trust shall have been established in accordance with the Liquidation Trust Agreement and shall have been funded with the Liquidation Trust Assets;

7. the Liquidation Trust Agreement, the identity of the Liquidation Trustee, and the Confirmation Order shall be acceptable to the Creditors' Committee and Mishmeret; and

8. all actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

B. *Waiver of Conditions.*

The conditions to Consummation set forth in Article VIII of the Plan may be waived only by prior written consent of the Camp Business Debtors and the Creditors' Committee without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan; *provided* that the condition in Article VIII.A.3 shall be subject to prior written consent of Mishmeret and the DIP Lenders. Upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article VIII of the Plan, the Camp

Business Debtors shall immediately declare the Effective Date and file the Notice of Effective Date.

C. *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D. *Effect of Failure of Conditions.*

Unless expressly set forth herein, if the Consummation of the Plan does not occur the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Camp Business Debtors, any holders or any other Entity; (2) prejudice in any manner the rights of the Camp Business Debtors, any holders or any other Entity or (3) constitute an admission, acknowledgment, offer, or undertaking by the Camp Business Debtors, any holder of any Claim or any other Entity in any respect.

## ARTICLE IX
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A. *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Camp Business Debtors, with the consent of the Creditors' Committee, reserve the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code; *provided* that (i) from and after the Effective Date, references in this Article IX to the consent of the Creditors' Committee shall mean the consent of the Committee Successor. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Camp Business Debtors expressly reserve their rights, subject to the consent of the DIP Lenders and the Creditors' Committee, to revoke or withdraw, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

B. *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C. *Revocation or Withdrawal of Plan.*

The Camp Business Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date. If the Camp Business Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount

certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Camp Business Debtors, any holder of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Camp Business Debtors, any holder or any other Entity.

## ARTICLE X
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including accrued Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

4. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

5. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

6. hear and determine all disputes involving the existence, nature, scope, or enforcement of any releases, exculpations, and injunctions granted in the Plan, including under Article VII hereof;

7. hear and determine all matters relating to the Settlement, the Settlement Fund, the GUC Trust Account, and the Professional Fee Escrow;

8. hear and determine all Claims and Causes of Action brought by or on behalf of the Debtors, their Estates, or the Liquidation Trust against any Excluded Party, and all matters related to Article VII.J hereof, to the fullest extent permitted by law; *provided* that nothing in this clause, or the Plan or Confirmation Order, shall confer, expand, or make exclusive the Bankruptcy Court's jurisdiction over any direct Claim or Cause of Action held by any other Person, or require any such

Person to commence or prosecute any such Claim or Cause of Action in the Bankruptcy Court; and

9. enforce all orders previously entered by the Bankruptcy Court.

Notwithstanding the foregoing, nothing in this Plan shall grant the Bankruptcy Court any jurisdiction which it lacked prior to the Effective Date. The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect.*

Subject to Article VIII.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Camp Business Debtors, the Liquidation Trustee, and any and all present and former holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Camp Business Debtors, and each of the respective successors and assigns of the foregoing persons and Entities.

B. *Additional Documents.*

On or before the Effective Date, the Camp Business Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Camp Business Debtors, the Liquidation Trustee, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Camp Business Debtors, with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the holders of Claims and Interests or each other before the Effective Date. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside the Bankruptcy Court involving the Camp Business Debtors.

D. *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, if any, of such Entity.

E. *Notices.*

To be effective, all notices, requests, and demands to or upon the Camp Business Debtors shall be in writing. Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

The Camp Business Debtors:

SIMAD Holdings Ltd.
Attention: Assaf Ravid
Email: aravid@circleinv.com

with a mandated copy (which shall not constitute notice) to:

Counsel to Debtors and Debtors in Possession
Cole Schotz P.C.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Attention: Michael D. Sirota, Esq., Warren A. Usatine, Esq., David M. Bass, Esq., Felice R. Yudkin, Esq., and Daniel J. Harris, Esq.
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
Email: msirota@coleschotz.com; wusatine@coleschotz.com; dbass@coleschotz.com; fyudkin@coleschotz.com; dharris@coleschotz.com

F. *Entire Agreement.*

Except as otherwise indicated, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan; *provided* that the Settlement Term Sheet and the 9019 Settlement Order are not superseded and shall control.

G. *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed,

copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above, from the Notice, Claims and Balloting Agent's website at https://restructuring.ra.kroll.com/simad/ or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.njb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

H. *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall be prohibited from altering or interpreting such term or provision to make it valid or enforceable; *provided*, that at the request of the Camp Business Debtors, with the consent of the Creditors' Committee, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable, consistent with the original purpose of the term or provision held invalid, void, or unenforceable, and such terms or provisions shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be acceptable to the Camp Business Debtors and the Creditors' Committee. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Camp Business Debtors' and the Creditors' Committee's consent; and (3) non-severable and mutually dependent.

I. *Closing of the Chapter 11 Cases.*

On and after the Effective Date, the Liquidation Trustee may, in its discretion, File a notice or motion to close the Chapter 11 Cases of all Camp Business Debtors other than a single remaining chapter 11 case (the "Remaining Case"). Upon the Filing of such notice or the entry of an order granting such motion, the Chapter 11 Cases of such Camp Business Debtors shall be closed without further notice or action. All contested matters and adversary proceedings relating to any Camp Business Debtor shall then be administered and heard in the Remaining Case, whether those matters are pending on the Effective Date or commenced afterward, and whether they relate to Claims, Causes of Action, objections to Claims, Professional Fee Claims, or distributions. Any Claims, Causes of Action, or other matters that relate to the closed Chapter 11 Cases and are not finally resolved by that time shall also be administered and heard in the Remaining Case. No such closure shall affect the rights of the Liquidation Trustee or any Holder of a Claim, or the Bankruptcy Court's retention of jurisdiction under Article X of the Plan, with respect to any Camp Business Debtor.

J. *No Stay of Confirmation Order.*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

K. *No Waiver.*

Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action

against any Person other than the Camp Business Debtors. For the avoidance of doubt, nothing in this Plan, the Disclosure Statement, or the Confirmation Order shall be deemed a waiver or release of any Claim, right, or Cause of Action against any Excluded Party.

L. *Headings.*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor in any manner affects the terms, provisions or interpretation of the Plan.

M. *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of any other document or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "Plan Related Documents") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided* that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern; *provided further* that the Settlement Term Sheet and the 9019 Settlement Order shall control over the Plan and Plan Related Documents; and *provided furthe*r that Article VII.J hereof shall control over any conflicting or inconsistent provision of this Plan, the Plan Related Documents, and the Confirmation Order, and nothing in the Settlement Term Sheet or the 9019 Settlement Order shall be construed to release or impair any Claim or Cause of Action against any Excluded Party.

Dated: November 20, 2026

Respectfully Submitted,

The Camp Business Debtors
and Debtors-In-Possession

By:

*/s/ Assaf Ravid*
Assaf Ravid
Chief Restructuring Officer