**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT OF THE HOLDING COMPANY DEBTORS; (II) SCHEDULING A COMBINED HEARING ON FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND PLAN CONFIRMATION AND DEADLINES RELATED THERETO; (III) APPROVING THE SOLICITATION, NOTICE, AND TABULATION PROCEDURES AND THE FORMS RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE CHRISTINE M. GRAVELLE
CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT:

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

The above-captioned debtors and debtors in possession (the "Debtors") by and through their undersigned counsel, respectfully state the following in support of this motion (the "Motion")[2] on behalf of the Holding Company Debtors[3]:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):

a) ***Adequacy of the Disclosure Statement***. Conditionally approving the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* dated November 20, 2026 [Docket No. 1546] (including all exhibits thereto and as amended, supplemented or otherwise modified from time to time, the "Disclosure Statement"), attached to the Order as Exhibit 1, as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b) ***Solicitation and Voting Procedures***. Approving the procedures for: (a) soliciting, receiving and tabulating votes to accept or reject the Plan; (b) voting to accept or reject the Plan; and (c) filing objections to the Plan, substantially in the form attached to the Order as Exhibit 2 (the "Solicitation and Voting Procedures");

c) ***Non-Voting Status Notice***. Approving the form of notice applicable to (a) Holders of Claims that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan; (b) Holders of Claims that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan; and (c) Holders of Claims or Interests that are subject to a pending objection by the Holding Company Debtors and who are not entitled to vote the disputed portion of such Claim, substantially in the form attached to the Order as Exhibit 3 (the "Non-Voting Status Notice", and together with the Combined Hearing Notice (defined below), the "Non-Voting Notices"), which notice includes the opt-out form with respect to the third-party release provision set forth in the Plan (the "Opt-Out Form");

d) ***Ballots***. Approving the form of beneficial holder ballot (the "Beneficial Holder Ballot") and master ballot (the "Master Ballot") for Mishmeret Prepetition

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Disclosure Statement (defined below) and the Plan (defined below).

[3] This Motion pertains to the following Holding Company Debtors, as defined in the Plan: (1) SIMAD Holdings Ltd.; (2) Intermediate SIMAD 1, LLC; and (3) SIMAD Equities LLC.

Secured Claims (Class 4) and the ballots for the other classes entitled to vote (collectively with the Beneficial Holder Ballot and the Master Ballot, the "Ballots"), substantially in the forms attached to the Order as Exhibit 4A, Exhibit 4B, Exhibit 4C, Exhibit 4D, and Exhibit 4E, respectively;

e) ***Cover Letter***. Approving the form of letter (the "Cover Letter") that the Holding Company Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan recommending that such parties vote in favor of the Plan, substantially in the form attached to the Order as Exhibit 5;

f) ***Committee Letter***. Approving (for Holders of Class 5, Class 6, and Class 7 Claims only) the form of cover letter (the "Committee Letter") from the Official Committee of Unsecured Creditors (the "Committee"), substantially in the form attached to the Order as Exhibit 9, to Holders of Class 5 Disputed Secured MCA Claims, Class 6 Disputed Unsecured MCA Claims, and Class 7 General Unsecured Claims regarding the Plan;

g) ***Combined Hearing***. Scheduling a combined hearing (the "Combined Hearing") to consider (a) approval of the Disclosure Statement on a final basis and (b) confirmation of the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* dated November 20, 2026 [Docket No. 1545] (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the "Plan"),[4] both of which have been filed contemporaneously with this Motion;

h) ***Combined Hearing Notice***. Approving the form and manner of notice of the Combined Hearing, substantially in the form attached to the Order as Exhibit 6 (the "Combined Hearing Notice");

i) ***Plan Supplement Notice***. Approving the notice related to the filing of the Plan Supplement, substantially in the form attached to the Order as Exhibit 7 (the "Plan Supplement Notice");

j) ***Assumption Notice***. Approving the form of notice to counterparties to Executory Contracts and Unexpired Leases that will be assumed pursuant to the Plan, substantially in the form attached to the Order as Exhibit 8 (the "Assumption Notice");

k) ***Solicitation Packages***. Finding that the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages") that will be sent to Holders of Claims entitled to vote to accept or reject the Plan are in compliance with rules 2002(b) and 3017(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

---

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in this Motion, the Plan or the Disclosure Statement, as applicable.

l) ***Confirmation Schedule***. Establishing the following dates and deadlines with respect to Confirmation, subject to modification as necessary, as follows (the "Confirmation Schedule"):

| Event | Date | Description |
|---|---|---|
| Conditional Disclosure Statement Hearing Date | December 3, 2026 at 12:00 p.m. (ET) | The date of the hearing to conditionally approve the Disclosure Statement, subject to the Court's availability. |
| Voting Record Date | December 3, 2026 | The date for determining which Holders of Claims in the Voting Classes (as defined herein) are entitled to vote to accept or reject the Plan (such date, the "Voting Record Date"). |
| Solicitation Deadline | Five (5) business days following entry of the Order (or as soon as reasonably practicable thereafter) | The deadline by which the Holding Company Debtors must distribute Solicitation Packages (including Ballots) and Non-Voting Status Notices (including Opt-Out Forms), as applicable (the "Solicitation Deadline"). |
| Publication Deadline | Five (5) business days following entry of the Order (or as soon as reasonably practicable thereafter) | The date by which the Holding Company Debtors will submit the Combined Hearing Notice in a format modified for publication (such notice, the "Publication Notice," and such date, the "Publication Deadline"). |
| Initial Plan Supplement Deadline | December 31, 2026, at 4:00 p.m. (ET) | The date by which the Holding Company Debtors shall File the initial version of the Plan Supplement (the "Initial Plan Supplement Deadline"). |
| Assumption Notice Deadline | December 31, 2026, at 4:00 p.m. (ET) | The date by which the Holding Company Debtors shall serve an Assumption Notice, if any (the "Assumption Notice Deadline"). |
| Voting and Opt-Out Deadline | January 6, 2027, at 4:00 p.m. (ET) | The deadline by which all Ballots and Opt-Out Forms must be properly executed, completed, and submitted so that they are **actually received** by Kroll Restructuring Administration LLC (the "Balloting Agent" or "Kroll," and such deadline, the "Voting Deadline" or "Opt-Out Deadline", as applicable, and, together, the "Voting Deadline and Opt-Out"). |
| Confirmation Objection Deadline | January 6, 2027, at 4:00 p.m. (ET) | The deadline by which parties in interest may File objections to final approval of the adequacy of the Disclosure Statement and Confirmation of the Plan, including the |

| Event | Date | Description |
|---|---|---|
| | | assumption or rejection of any Executory Contract or Unexpired Lease thereunder or as set forth in the Plan Supplement (the "Confirmation Objection Deadline"). |
| Voting Declaration Deadline | January 11, 2027, at 4:00 p.m. (ET) | The date by which the declaration certifying the results of the tabulation of votes on the Plan (the "Voting Declaration") shall be Filed with the Court (the "Voting Declaration Deadline"). |
| Confirmation Brief and Objection Reply Deadline | January 11, 2027, at 4:00 p.m. (ET) | The deadline by which the Holding Company Debtors shall File their brief in support of Confirmation of the Plan and reply to objections to Confirmation of the Plan (the "Confirmation Brief Deadline"). |
| Combined Hearing Date | January 13, 2027, at [●] (ET) or such other date as may be scheduled by the Court | The date and time of the confirmation hearing (the "Combined Hearing Date"). |

m) ***Other Related Relief***. Granting other related relief.

## Jurisdiction

2. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The legal and statutory predicates for the relief sought herein are sections 105, 502, 1123(a), 1124, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532

(the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and D.N.J. LBR 3018-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

### A. The Chapter 11 Cases

5. On June 4 and June 5, 2026 (collectively, the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered under Case No. 26-16388 (CMG) pursuant to Bankruptcy Rule 1015(b) [Docket No. 15]. The Debtors are operating their business and managing their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 9, 2026, the Office of the U.S. Trustee appointed the Committee in these Chapter 11 Cases [Docket No. 438]. As of the date hereof, no request for the appointment of a trustee or examiner has been made.

6. A detailed description of the Debtors, their business, and the facts and circumstances supporting these chapter 11 cases is set forth in the *Declaration of Assaf Ravid, Chief Restructuring Officer of the Debtors, in Support of the Chapter 11 Petitions and First Day Motions* [Docket No. 62].

### B. The Bar Dates

7. On July 7, 2026, the Debtors filed a motion seeking entry of an order [Docket No. 403] setting, (i) August 14, 2026 as the deadline for creditors (that are not governmental entities) (the "General Bar Date") for filing Claims against the Debtors that arose (or was deemed to have arisen) before the Petition Date for all creditors other than Governmental Units, including section 503(b)(9) claimants; (ii) December 2, 2026 as the deadline for all Governmental Units to file a claim against the Debtors (the "Governmental Bar Date"); (iii) in the

event the Debtors amend or supplement their schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), the later of (a) the General Bar Date or Governmental Bar Date, as applicable, and (b) 5:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days from the date on which the Debtors provide notice of the amendment to their Schedules, as the last date and time by which claimants holding Claims affected by such amendment must file Proofs of Claim against the Debtors (the "Amended Schedules Bar Date"); and (iv) in the event of Claims arising from the Debtors' rejection of executory contracts and unexpired leases, the later of (a) the General Bar Date or Governmental Bar Date, as applicable, and (b) 5:00 p.m., prevailing Eastern Time, on the date that is thirty (30) days following entry of the order approving the Debtors' rejection of the applicable executory contract or unexpired lease (the "Rejection Damages Bar Date"). On July 16, 2026, the Court entered an order granting the Bar Date Motion [Docket No. 482].

**C. The Sale Process**

8. On June 26, 2026, the Court entered an order granting the relief set forth in the Debtors' motion to establish bidding procedures in connection with the sale process and approving the bidding procedures contemplated thereby [Docket No. 298] (the "Bidding Procedures Order").

9. Prior to the Auction (defined below), the Debtors entered four (4) Private Sale Transactions (as defined in the Bidding Procedures Order) [Docket Nos. 433, 509, 551, and 601] with respect to Camp Achim, Camp Mesorah, Camp Chen-A-Wanda, and Pine Forest Camps. The Court has entered orders approving each of those Private Sale Transactions. [Docket Nos. 539, 785, 788, and 849].

10. Pursuant to the Bidding Procedures Order, on July 28 through July 30, 2026, the SIMAD Debtors held an auction (the "Auction") of the Debtors' various camp assets. Interested

parties submitted bids through July 31, 2026. Thereafter, the Debtors selected the best and highest bid as the purchaser for each of the respective camps that were subject to sale.

11. On August 4, 2026, the Debtors filed *Notice of Successful Bidders With Respect to Certain of the Debtors' Assets* [Docket No. 789] with respect to twenty-three (23) camps which were subject to the Auction. On August 5, 2026, the SIMAD Debtors separately filed *Notice of Successful Bidders With Respect to Certain of the SIMAD Debtors' Assets* [Docket No. 800] which noticed the successful bidder with respect to Camp Lavi.

12. Following the Auction, the Debtors submitted the *Declaration of J. Scott Victor in Support of Entry of Sale Orders Approving the Sale Transaction(s) For Certain of the SIMAD Debtors' Camp Asset* [Docket No. 825] (the "Victor Declaration"), which provided the factual predicate for approval of certain Sale Transactions. Among other things, the Victor Declaration detailed the marketing and sale process, the conduct of the Auction, the Debtors' process for obtaining the highest and best offers for the Debtors' assets, and the results of the Auction.

13. On August 10, 2026, the Court held the sale hearing (the "Sale Hearing") and, based on the record at that Sale Hearing, including the Victor Declaration, approved the sale of certain of the camp assets.

14. Since the Sale Hearing, the Court has entered numerous orders approving the sales of certain camp assets, as further detailed in the Disclosure Statement, and the Debtors have worked diligently with the various buyers to consummate the sale transactions.

## The Plan and Disclosure Statement

15. Contemporaneously with this Motion, the Holding Company Debtors filed the Plan and the Disclosure Statement. In general, the Plan provides for, among other things, the liquidation of the Holding Company Debtors' remaining Assets, which consist principally of Cash, SIMAD Holdings Ltd.'s interest in Willow Lake Day Camps, LLC and Willow Lake Land Corporation,

and Causes of Action. The Holding Company Debtors do not own or operate any camps and were not sellers under any of the Sale Transactions. Accordingly, the Plan proposes to: (i) vest all Liquidation Trust Assets, including the Retained Causes of Action, in the Liquidation Trust, for the purpose of distribution to holders of Allowed Claims; (ii) provide for the full and final resolution of all Claims and Interests against the Holding Company Debtors; (iii) designate a Liquidation Trustee to wind down the Holding Company Debtors' affairs, prosecute, continue, or settle Retained Causes of Action, pay and reconcile Claims, and administer the Plan; and (iv) provide for 100% recoveries for holders of Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Secured Claims, Other Priority Claims, and for Disputed Secured MCA Claims, to the extent Allowed as Secured Claims against Assets of the Holding Company Debtors.

16. In accordance with section 1126 of the Bankruptcy Code, the Plan contemplates classifying holders of Claims and Interests into certain Classes for all purposes, including with respect to voting rights, if any, as follows:[5]

| **Class** | **Claim / Interest** | **Treatment** | **Voting Rights** |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Mishmeret Prepetition Secured Claims | Impaired | Entitled to Vote |
| 5 | Disputed Secured MCA Claims | Impaired | Entitled to Vote |
| 6 | Disputed Unsecured MCA Claims | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Subordinated Securities Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

17. The Plan provides for the following treatment of Claims against and Interests in the Holding Company Debtors:

[5] In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests as set forth in Article III of the Plan.

- **Secured Tax Claims**: (a) payment in full in Cash of such holder's Allowed Secured Tax Claim; or (b) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five (5) years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Liquidation Trustee to prepay the entire amount of such Allowed Secured Tax Claim during such time period;

- **Other Secured Claims**: (a) payment in full in Cash of such holder's Allowed Other Secured Claim; (b) the Collateral securing such holder's Allowed Other Secured Claim; (c) Reinstatement of such holder's Allowed Other Secured Claim; or (d) such other treatment rendering such holder's Allowed Other Secured Claim Unimpaired;

- **Other Priority Claims**: payment in full in Cash of such holder's Allowed Other Priority Claim from the Liquidation Trustee or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired;

- **Mishmeret Prepetition Secured Claims**: to the extent not already paid in full pursuant to and in accordance with the Camp Business Plan, any value attributable to the Interests in SIMAD Equities LLC after payment in full of all Allowed Claims against SIMAD Equities LLC. Any unsecured portion of the Prepetition Obligations shall constitute Lender Deficiency Claims, classified in Class 7, but shall not be entitled to any distribution from the Settlement Fund;

- **Disputed Secured MCA Claims**: if Allowed, after payment of the Mishmeret Prepetition Secured Claims or other senior claims on the applicable Collateral, payment in full in Cash or such other treatment as determined by an order of the Bankruptcy Court;

- **Disputed Unsecured MCA Claims**: if Allowed, its pro rata share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their pro rata share of the Liquidation Trust Assets;

- **General Unsecured Claims**: its pro rata share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their pro rata share of the Liquidation Trust Assets. In addition, holders of Allowed General Unsecured Claims (other than Lender Deficiency Claims) may receive distributions from the Settlement Fund, as determined by the Committee Successor in its sole discretion, which distributions are in addition to, and shall not reduce, any distribution on account of Beneficial Trust Interests;

- **Subordinated Securities Claims**: no distribution under the Plan; and

- **Interests**: no distribution under the Plan, and all Interests shall be cancelled, released, and extinguished.

18. The Holding Company Debtors respectfully submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code; *however*, by this Motion, the Holding Company Debtors seek only conditional approval of the adequacy of the Disclosure Statement. At the Combined Hearing, the Holding Company Debtors will seek final approval of the adequacy of the Disclosure Statement (as well as confirmation of the Plan).

**The Holding Company Debtors' Solicitation and Noticing Plan**

19. The Holding Company Debtors have designed a comprehensive solicitation and noticing plan meant to afford Holders of Claims and Interests—including all parties on the creditor matrix as of the Voting Record Date—the maximum notice practicable under the circumstances and the greatest opportunity to cast their votes (as applicable) or be heard in connection with Confirmation of the Plan. As of the date hereof, there are more than 32,000 known parties required to be notified of the Combined Hearing pursuant to Bankruptcy Rule 2002 (collectively, the "Creditor Matrix"). These parties include current and former employees, vendors, customers, taxing authorities, insurers, and other similar parties in interest.

20. To serve notice as broadly as possible, the Holding Company Debtors request approval to take the following steps:

- distribute the Solicitation Packages by email or first-class mail, as applicable, to Holders of Claims in the Voting Classes;
- serve the Combined Hearing Notice by email or first-class mail, as applicable, to all parties listed on the Creditor Matrix, which will include information regarding the Combined Hearing, deadlines related thereto, and the releases contained in the Plan
- publish the Combined Hearing Notice in the national edition of the *New York Times* or such other similar daily publication; and
- provide notice of a hotline and restructuring website that parties may access for additional information.

21. Due to the voluminous nature of the Solicitation Packages, as well as the substantial costs to be incurred in connection with alternative service methods, the Holding Company Debtors request that to the extent their records include email addresses for Holders of Claims and Interests, they be authorized to distribute the Solicitation Packages and Non-Voting Status Notices and Opt-Out Form, as applicable, via email. The Holding Company Debtors estimate that providing materials to Holders of Claims and Interests in paper and/or flash drive format would be costly and time-intensive, thereby imposing an additional burden on the Holding Company Debtors' estates and possibly delaying the Holding Company Debtors' proposed confirmation timeline and/or reducing stakeholders' recoveries.

22. Accordingly, in lieu of providing such materials in paper format and/or by flash drive, the Holding Company Debtors will distribute via email: (a) to Holders of Claims in the Voting Classes, instructions on how to vote (and, if desired, to opt out of the consensual third-party release provision set forth in the Plan (the "Third-Party Release")) using an electronic ballot (an "E-Ballot") through a customized online balloting portal (the "E-Ballot Portal") maintained by the Balloting Agent (as defined below), as well as links to access electronic copies of the Disclosure Statement, the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Balloting Agent's website; and (b) to Holders of Claims and Interests in the Non-Voting Classes, instructions on how to opt out of the Third-Party Release through E-Ballot as well as links to access electronic copies of the Non-Voting Status Notices (including Opt-Out Forms), which will contain the full text of the Third-Party Release and information regarding each Holder's status as a Holder, or potential Holder, of Claims or Interests in the applicable Non-Voting Classes.

23. Mishmeret Trust Company Ltd. ("Mishmeret"), in its capacity as trustee for the Series A Bondholders, will coordinate with the underlying beneficial holders of the Series A Bonds

(the "Beneficial Holders") and/or any custodian, broker, dealer, commercial bank, trust company, proxy holder, or other agent or nominee that holds the Series A Bonds on behalf of a Beneficial Holder (a "Nominee"), as applicable, to collect the votes and any elections to opt-out of the Third-Party Release made by the Beneficial Holders and will convey the votes and elections to Kroll via a Master Ballot. The Debtors seek to authorize Mishmeret to use its customary methods to both distribute solicitation materials to (and collect votes from) the Beneficial Holders; however, if needed by Mishmeret, the Debtors attach a form Beneficial Holder Ballot (Exhibit 4A).

24. The Holding Company Debtors believe that the process described herein appropriately satisfies the need for broad notice in a case of this scope without incurring excessive costs. Specifically, utilizing electronic, rather than paper, service where possible will result in significant cost savings that will directly inure to the benefit of the Holding Company Debtors stakeholders and enhance recoveries under the Plan. Accordingly, all parties in interest will be on appropriate notice of their right to vote to accept or reject the Plan (as applicable) and their right to be heard in connection with Confirmation of the Plan.

## Basis for Relief Requested

## I. Conditional Approval of the Disclosure Statement is Appropriate

25. The Holding Company Debtors respectfully submit that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code; *however*, by this Motion, the Holding Company Debtors seek only conditional approval of the adequacy of the Disclosure Statement. At the Combined Hearing, the Holding Company Debtors will seek final approval of the adequacy of the Disclosure Statement (as well as confirmation of the Plan).

### A. The Standard of Approval of the Disclosure Statement

26. Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired

claims and interests entitled to vote on the plan. 11 U.S.C. § 1125. Specifically, section 1125(a)(1) of the Bankruptcy Code states, in relevant part:

> "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

*Id.* § 1125(a)(1).

27. The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision regarding the plan. *See, e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information" to "enable a creditor to make an informed judgment about the Plan") (internal quotations omitted); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1341 (8th Cir. 1985); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001). Congress intended that informed judgments would be needed to both negotiate the terms of, and vote on, a plan. *Century Glove*, 860 F.2d at 100.

28. Bankruptcy courts have broad discretion in determining whether a disclosure statement contains adequate information based on the unique facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From

the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 507 (D.N.J. 2005), *aff'd*, 241 Fed. App'x 1 (3d Cir. Aug. 2, 2007) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement.").

29. In making a determination about the adequacy of the information, courts will typically look at whether the disclosure statement contains information such as:

i. the circumstances that gave rise to the filing of the bankruptcy petition;

ii. a description of the available assets and their value;

iii. the anticipated future of the debtor;

iv. the source of the information provided in the disclosure statement;

v. the condition and performance of the debtor while in chapter 11;

vi. claims against the debtor's estate;

vii. a liquidation analysis setting forth the estimated return that creditors would receive if the debtor's case was converted to a case under chapter 7 of the Bankruptcy Code;

viii. the accounting and valuation methods used to produce the financial information in the disclosure statement;

ix. the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

x. a summary of the chapter 11 plan;

xi. an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

xii. the collectability of any accounts receivable;

xiii. any financial information, including financial valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

xiv. the risks to creditors and interest holders under the plan;

xv. the actual or projected value that can be obtained from avoidable transfers;

xvi. the existence, likelihood and possible success of nonbankruptcy litigation; and

xvii. the tax consequences of the plan.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988); *Phoenix Petroleum*, 278 B.R. at 393 (citing similar factors that courts have used to determine the adequacy of information contained in disclosure statements, while cautioning that "no one list of categories will apply in every case").

**B. The Disclosure Statement Contains Adequate Information in Accordance With Section 1125 of the Bankruptcy Code**

30. Here, the Disclosure Statement contains adequate, if not ample, information to allow the holders of Claims and Interests to make an informed judgment regarding the Plan. The Disclosure Statement is the product of the Holding Company Debtors' extensive review and analysis of their business, assets, and liabilities, and circumstances leading to these chapter 11 cases. Specifically, the Disclosure Statement contains detailed information in a number of categories relevant to a court's determination that a disclosure statement contains "adequate information," including: (i) the terms of the Plan, including a summary of the classifications and treatment of all Classes of Claims and Interests; (ii) the treatment of holders of Allowed Claims and Allowed Interests; (iii) the effect of the Plan on holders of Claims and Interests and other parties in interest thereunder; (iv) the Claims asserted against the Holding Company Debtors and the estimated amount of Claims that will ultimately be Allowed; (v) certain risk factors to consider

that may affect the Plan; (vi) certain tax issues related to the Plan and distributions; and (vii) the means for implementation of the Plan.

31. Accordingly, the Holding Company Debtors believe that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and contains more than sufficient information for a hypothetical reasonable investor to make an informed judgment about the Plan. Thus, the Holding Company Debtors submit that the Disclosure Statement should be conditionally approved. Through this Motion, the Holding Company Debtors seek only conditional approval of the Disclosure Statement. At the Combined Hearing, the Holding Company Debtors will seek final approval of the adequacy of the Disclosure Statement and confirmation of the Plan.

### C. The Disclosure Statement Provides Sufficient Notice of Release, Exculpation, and Injunction Provisions in the Plan

32. Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c).

33. Article VII.B of the Plan describes in detail the Release of Liens being provided. Article VII.C of the Plan describes in detail the Releases by the Holding Company Debtors. Article VII.D of the Plan describes in detail the Releases by Holders of Claims and Interests (i.e., the Third-Party Release). Article VII.F describes in detail the Exculpated Parties. Article VII.G of the Plan describes in detail the entities subject to an injunction under the Plan and the acts that certain Persons or Entities are enjoined from pursuing against the Holding Company Debtors, the Liquidation Trust, the Exculpated Parties, or the Released Parties. Article VII.J of the Plan describes in detail the preservation of Claims and Causes of Action against the Excluded Parties, none of which is entitled to the benefit of any release, exculpation, or injunction under the

Plan. Accordingly, the Holding Company Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan, and the Combined Hearing Notice complies with Bankruptcy Rule 2002(c) by conspicuously describing the nature and entities subject to the injunction under the Plan.

## II. <u>The Court Should Approve the Ballots, the Timeline and the Forms of Notices Related to Solicitation</u>

34. The Holding Company Debtors request that the Court approve the setting of certain dates described herein in accordance with section 1126(c) of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

### A. The Court Should Approve the Voting Record Date, Solicitation Deadline, and Voting and Opt-Out Deadline

35. Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "'creditors' and 'equity security holders' include record holders of stock, bonds, debentures, notes, and other securities on the date the order approving the disclosure statement is entered—or another date the court sets for cause and after notice and a hearing." Fed. R. Bankr. P. 3017(d)(4). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the Voting Record Date for voting purposes. Fed. R. Bankr. P. 3018(a). Additionally, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. See Fed. R. Bankr. P. 3017(c).

36. The Holding Company Debtors request that the Court exercise its authority under Local Rule 3018-1 and Bankruptcy Rules 3017(c), 3017(d), and 3018(a) to establish, subject to the Court's availability, (i) **<u>December 3, 2026</u>** as the Voting Record Date; (ii) **<u>five (5) business</u>**

**days following the entry of the Order** (or as soon as reasonably practicable thereafter) as the Solicitation Deadline; and (iii) **January 6, 2027, at 4:00 p.m.**, prevailing Eastern Time, as the Voting and Opt-Out Deadline. Moreover, the Holding Company Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if: (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date, or (b) the transferee Files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date. Where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim may be (a) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code and (b) required to vote every portion of such Claim collectively to accept or reject the Plan. In the event that (a) a Ballot, (b) a group of Ballots within one Voting Class received from a single creditor, or (c) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots will not be counted, and the Holding Company Debtors' treatment of such Ballots will be set forth in the Voting Declaration.

37. The Holding Company Debtors request that, after the Holding Company Debtors distribute Solicitation Packages to Holders of Claims entitled to vote on the Plan, the Court require that all Holders of Claims entitled to vote on the Plan complete and submit their Ballots so that they are actually received by the Balloting Agent on or before the Voting and Opt-Out Deadline.

Similarly, Holders of Claims or Interests who wish to opt out of the Third-Party Release must complete and submit the Opt-Out Form (or, in the case of Holders of Claims in the Voting Classes, check the opt-out box on their Ballot, regardless of whether they vote to accept or reject the Plan or abstain from voting) so that such form is actually received by the Balloting Agent on or before the Voting and Opt-Out Deadline.

38. The foregoing timing and materials will afford Holders of Claims entitled to vote ample time to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan, consistent with the Bankruptcy Rules regarding time to consider a chapter 11 plan.[6] Accordingly, the Holding Company Debtors request that the Court approve the form of, and the Holding Company Debtors' proposed procedures for distributing, the Solicitation Packages to the Holders of Claims in the Voting Classes and the deadline for Holders of Claims and Interests to vote to accept or reject the Plan and/or return Opt-Out Forms, as applicable.

**B. The Court Should Approve the Forms of the Ballots**

39. Bankruptcy Rule 3018(c) requires that "[a]n acceptance or rejection of a plan must: (i) be in writing; (ii) identify the plan or plans; (iii) be signed by the creditor or equity security holder—or an authorized agent; and (iv) conform to Form 314." Fed. R. Bankr. P. 3018(c). In accordance with Bankruptcy Rule 3018(c), the Holding Company Debtors have prepared and customized the Ballots. Although based on Official Form B 314, the Ballots have been modified to (a) address the particular circumstances of these Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Claims in the Voting Classes. The

---

[6] See Fed. R. Bankr. P. 2002(b)(2) (providing that creditors must have at least 28 days' notice of the time to file an objection to—and the time of the hearing to consider whether to confirm—a chapter 11 plan).

proposed Ballots for the Voting Classes are annexed as Exhibits 4A, 4B, 4C, 4D, and 4E to the Order. The Holding Company Debtors respectfully submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

### C. The Court Should Approve the Form and Distribution of the Solicitation Packages to Holders of Claims Entitled to Vote on the Plan

40. Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims and/or interests upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed. Fed. R. Bankr. P. 3017(d).

41. In accordance with this requirement, the Holding Company Debtors propose to send the Solicitation Packages to provide Holders of Claims in the Voting Classes with the information they need to be able to make informed decisions with respect to how to vote on the Plan. Specifically, on or before the Solicitation Deadline, the Holding Company Debtors will cause the Solicitation Packages to be distributed in electronic format (i.e., via email) or paper format, as applicable, through the Balloting Agent to such Holders of Claims in the Voting Classes. The Solicitation Packages for Holders of Class 5, Class 6, and Class 7 Claims will also include the Committee Letter recommending that such Holders vote to accept the Plan.

42. Each Solicitation Package will include the following materials, as applicable:

a) the conditionally approved Disclosure Statement, substantially in the form attached to the Order **Exhibit 1** (and exhibits thereto, including the Plan);

b) a copy of the Solicitation and Voting Procedures, substantially in the form attached to the Order as **Exhibit 2**;

c) the applicable form of Ballots, substantially in one of the forms of Ballots attached to the Order as **Exhibits** **4A**, **4B**, **4C**, **4D**, and **4E**, together with detailed voting instructions and instructions on how to submit the Ballots;

d) the Cover Letter, substantially in the form attached to the Order as **Exhibit 5**, describing the contents of the Solicitation Package and urging the Holders of Claims in each of the Voting Classes to vote to accept the Plan;

e) for Holders of Class 5, Class 6, and Class 7 Claims only), the Committee Letter to Holders of Class 5 Disputed Secured MCA Claims, Class 6 Disputed Unsecured MCA Claims, and Class 7 General Unsecured Claims regarding the Plan;

f) the Combined Hearing Notice, substantially in the form attached to the Order as **Exhibit 6**;

g) the Order (without exhibits, except for the Solicitation and Voting Procedures);

h) a pre-addressed, postage pre-paid reply envelope (if applicable); and

i) any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

43. The Holding Company Debtors request that they be authorized to distribute the Solicitation Packages in electronic format, via email, for those parties receiving service by email, and paper format for those parties receiving service by first-class mail. Distribution in this manner will translate into significant monetary savings for the Holding Company Debtors' Estates by reducing printing and postage costs. Bankruptcy courts have permitted debtors to transmit solicitation documents in electronic format in other large chapter 11 cases in the interest of saving printing and mailing costs. *See, e.g., In re STG Logistics, Inc.*, No. 26-10258 (MEH) (Bankr. D.N.J. Apr. 15, 2026) (authorizing the debtors to distribute solicitation packages in electronic format via email, hyperlink, and/or flash drive); *In re New Rite Aid, LLC*, No. 25-14861 (MBK) (Bankr. D.N.J. Sept. 22, 2025) (same); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Apr. 29, 2024) (authorizing the debtors to distribute solicitation packages via email); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Apr. 18, 2024) (same); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Apr. 18, 2024) (authorizing the

debtor to distribute solicitation packages in electronic format via email, hyperlink, and/or flash drive).

44. For Solicitation Packages distributed via first class mail, the Holding Company Debtors request that they be authorized to distribute the Disclosure Statement, Order, and Solicitation and Voting Procedures on a flash drive, and the applicable Ballot, Cover Letter, the Committee Letter, and Combined Hearing Notice via hardcopy (in paper format).

45. Additionally, the Holding Company Debtors will provide complete Solicitation Packages (excluding the Ballots) to the U.S. Trustee (in paper format) and all parties on the Master Service List in accordance with the *Chapter 11 Complex Case Management Order* [Docket No. 297] (in electronic format) as of the Voting Record Date. Any party that receives the materials in electronic format but would prefer paper format may contact the Balloting Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Holding Company Debtors' expense). The Holding Company Debtors will not provide Solicitation Packages or Non-Voting Status Notice and Opt-Out Form to: (a) Holders of Claims that have already been paid in full during these chapter 11 cases or that are otherwise paid in full in the ordinary course of business pursuant to an order previously entered by this Court; or (b) any party to whom the notice of the Motion was sent but was subsequently returned as undeliverable without a forwarding address by the Voting Record Date, unless an accurate updated address is provided in sufficient time to effectuate service before the Voting Deadline; and will not provide Solicitation Packages to parties that received a Non-Voting Status Notice, as applicable.

46. The Holding Company Debtors also request a waiver of: (i) any requirement to re-mail undeliverable Solicitation Packages or other undeliverable solicitation-related notices that

were returned marked "undeliverable," "moved—no forwarding address," or otherwise returned; and (ii) any obligation for the Holding Company Debtors or the Balloting Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages or other undeliverable solicitation-related notices (including undeliverable Ballots, Non-Voting Status Notices, Opt-Out Forms, and Combined Hearing Notices); *provided*, *however*, that if an accurate updated mailing address is supplied in sufficient time to effectuate service before the Voting Deadline, such materials shall be re-served; and *provided*, *further*, that if a Solicitation Package or Non-Voting Status Notice transmitted by email is returned as undeliverable, the Balloting Agent shall serve such materials by first-class mail to the physical mailing address, if any, reflected in the Holding Company Debtors' records.

47. Given the attendant timing considerations associated with tabulating Ballots, in addition to accepting hard copy Ballots via first-class mail, overnight courier, and personal delivery, the Holding Company Debtors request authorization to accept E-Ballots through the E-Ballot Portal, and, solely with respect to Master Ballots, by email as expressly permitted on the Master Ballot. Parties entitled to submit Ballots via the E-Ballot Portal may electronically sign and submit Ballots instantly. Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

48. All votes to accept or reject the Plan must be cast by using the appropriate Ballots. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions by: (a)(i) submitting such Ballot electronically through the E-Ballot Portal, after clicking "Submit E-Ballot" under the Case Navigation section of the website at

https://restructuring.ra.kroll.com/SIMAD, or (ii) solely with respect to Master Ballots, by email in accordance with the instructions on the Master Ballot; (b) first-class mail, in the return envelope provided with each Ballot; (c) overnight delivery; or (d) personal delivery, so that the Ballots are actually received by the Balloting Agent no later than the Voting and Opt-Out Deadline at the return address set forth in the applicable Ballot. Each Ballot contains detailed instructions that describe the appropriate means of Ballot submission.

**D. The Court Should Approve the Form of the Combined Hearing Notice**

49. The Combined Hearing Notice includes the following: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Balloting Agent, the Holding Company Debtors' case website, and/or the Court's website via PACER; (b) notice of the Voting and Opt-Out Deadline; (c) notice of the date by which the Holding Company Debtors will File the initial version of the Plan Supplement; (d) notice of the Confirmation Objection Deadline; and (e) notice of the Combined Hearing Date and information related thereto. The Holding Company Debtors will serve the Combined Hearing Notice on all parties on the Creditor Matrix (regardless of whether such parties are entitled to vote on the Plan) no later than the Solicitation Deadline.

50. Pursuant to Bankruptcy Rule 2002(b), the Holding Company Debtors are required to provide notice to all holders of claims or interests of the time fixed for filing objections to the combined hearing on final approval of a disclosure statement and confirmation of a chapter 11 plan. Fed. R. Bankr. P. 2002(b). To satisfy this requirement, the Holding Company Debtors intend to send to all holders of Claims and Interests a copy of the Combined Hearing Notice. In accordance with Bankruptcy Rules 2002 and 3017(d), the Combined Hearing Notice shall contain, among other things:

i. the time, date and place for the Combined Hearing;

ii. the Confirmation Objection Deadline and the manner in which objections shall be filed;

iii. a disclosure regarding the release, exculpation, and injunction provisions of the Plan (including the right of Holders of Claims and Interests to opt out of the Third-Party Release); and

iv. instructions on how to obtain electronic or print copies of any of the Plan Documents.

51. The Holding Company Debtors respectfully request that the Court find that the Combined Hearing Notice complies with the requirements of Bankruptcy Rules 2002(b) and (d). The Holding Company Debtors further request that the Court determine that the Combined Hearing Notice contains sufficient disclosure regarding the release, exculpation, and injunction provisions contained in Article VII of the Plan.

52. In addition to mailing the Combined Hearing Notice, the Holding Company Debtors will post the Combined Hearing Notice electronically on the website dedicated to these chapter 11 cases, https://restructuring.ra.kroll.com/SIMAD. Further, Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if notice by mail is impracticable or if it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). Therefore, in addition to the foregoing distribution of the Combined Hearing Notice, the Holding Company Debtors will publish the Publication Notice in the *New York Times* (national edition) or such similar publication no later than the Publication Deadline. The Holding Company Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting and Opt-Out Deadline, the Confirmation Objection Deadline, and the Combined Hearing to parties who did not otherwise receive notice thereof by mail. Additionally, service of the Combined Hearing Notice and publication of the Publication Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

### E. The Court Should Approve the Plan Supplement Notice

53. The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be Filed by the Holding Company Debtors prior to the Combined Hearing, or such later date as may be approved by the Court on notice to parties in interest. The Plan Supplement may include the following materials in connection with confirmation, as applicable: (a) Schedule of Assumed Executory Contracts and Unexpired Leases, (b) Schedule of Retained Causes of Action, (c) the Liquidation Trust Agreement, (d) any other necessary documentation in accordance with the Plan, and (e) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

54. To ensure that all Holders of Claims and Interests receive notice of the Holding Company Debtors' filing of the Plan Supplement, the Holding Company Debtors propose to send the Plan Supplement Notice on the date the Holding Company Debtors File the Plan Supplement, or as soon as practicable thereafter. Accordingly, the Plan Supplement Notice should be approved.

### F. The Court Should Approve the Form of the Notice to Non-Voting Classes and Opt-Out Form

55. As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. As a result, they will not receive Solicitation Packages and, instead, the Holding Company Debtors propose that such parties receive the Combined Hearing Notice and a Non-Voting Status Notice and applicable Opt-Out Form. Specifically, in lieu of solicitation materials, the Holding Company Debtors propose to provide the following to Holders of Claims and Interests in Non-Voting Classes.

| Class | Status | Treatment |
|---|---|---|
| Classes 1, 2, 3 | Unimpaired<br>(Presumed to Accept) | Holders of Claims that are presumed to accept the Plan are not entitled to vote. Therefore, in lieu of a Solicitation Package, Holders of such Claims, will receive the Combined Hearing Notice and a Non-Voting Status Notice, substantially in the form attached to the Order as Exhibit 3, which notice includes an Opt-Out Form. |
| Classes 8, 9 | Impaired<br>(Deemed to Reject) | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote. Therefore, in lieu of a Solicitation Package, Holders of such Claims or Interests, will receive the Combined Hearing Notice and a Non-Voting Status Notice, substantially in the form attached to the Order as Exhibit 3, which notice includes an Opt-Out Form. |

56. The Non-Voting Status Notice and Opt-Out Form will include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Balloting Agent, the Holding Company Debtors' case website, and/or the Court's website via PACER; (b) notice to recipients of their status as Holders or potential Holders of Claims or Interests in the Non-Voting Classes; (c) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VII of the Plan; and (d) the Opt-Out Form, by which Holders may elect to opt out of the Third-Party Release set forth in Article VII.D of the Plan.

57. The Holding Company Debtors believe that distributing the Non-Voting Status Notices and Opt-Out Forms in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d). Accordingly, unless the Court orders otherwise, the Holding Company Debtors do not intend to distribute Solicitation Packages to Holders of Claims, or Interests in the Non-Voting Classes. In addition, the Holding Company Debtors will serve the Combined Hearing

Notice and a Non-Voting Status Notice and Opt-Out Form (in lieu of a Ballot) on any Holder of a Claim in a Voting Class whose Claim is subject to a pending objection (other than a "reduce and allow" objection) filed and served at least fourteen (14) days before the Voting Deadline and who is therefore not entitled to vote pending a Resolution Event, as set forth in the Solicitation and Voting Procedures.

### G. The Court Should Approve the Assumption Notice

58. To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of potential assumption of their Executory Contract or Unexpired Lease (and any corresponding Cure Costs) pursuant to the Plan, the Holding Company Debtors will distribute through Kroll, an Assumption Notice, substantially in the forms attached to the Order as Exhibit 8 on or before the Assumption Notice Deadline. For the avoidance of doubt, the Holding Company Debtors will not distribute Assumption Notices to counterparties to Executory Contracts and Unexpired Leases whose Executory Contracts and Unexpired Leases have already been noticed for assumption and assignment. If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts or Unexpired Leases must file a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable.

## III. The Court Should Approve the Solicitation and Voting Procedures

59. Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

60. Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection of a plan must: (i) be in writing; (ii) identify the plan or plans; (iii) be signed by the creditor or equity security holder—or an authorized agent; and (iv) conform to Form 314." Fed. R. Bankr. P. 3018(c). Consistent with these requirements, the Holding Company Debtors propose using the Solicitation and Voting Procedures. The Solicitation and Voting Procedures include specific voting and tabulation requirements and procedures, as described below.

### A. Completion of Ballots

61. To ease and clarify the process of tabulating all votes received, the Holding Company Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria. Specifically, the Solicitation and Voting Procedures provide that the Holding Company Debtors will not count a Ballot if it is, among other things, submitted by a Holder of a Claim that is not entitled to vote on the Plan or incomplete. Further, the Holding Company Debtors, in consultation with the Committee, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Declaration. Notwithstanding the foregoing, a valid election to opt out of the Third-Party Release on a timely submitted Ballot will be honored even if such Ballot is not counted as a vote to accept or reject the Plan.

### B. General Ballot Tabulation and Voting Procedures

62. All Ballots received on or before the Voting Deadline will be tabulated by Kroll. Only properly completed and timely submitted Ballots will be counted towards acceptance or rejection of the Plan. Ballots will not be counted if they are not in proper form.

63. The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the general tabulation of Ballots, voting procedures applicable to Holders of Claims, and tabulation of such votes. The Holding Company Debtors believe that the proposed Solicitation and Voting Procedures will facilitate the Plan confirmation process. Specifically, the procedures will clarify any obligations of Holders of Claims entitled to vote to accept or reject the Plan and will create a straightforward process by which the Holding Company Debtors can determine whether they have satisfied the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code. Accordingly, the Holding Company Debtors submit that the Solicitation and Voting Procedures are in the best interests of the Holding Company Debtors' Estates, Holders of Claims, Holders of Interests, and other parties in interest, and that good cause supports the relief requested herein.

64. For purposes of calculating acceptances and rejections, votes will be aggregated and tabulated based on the amount of Claims held by each holder. Where a Nominee submits a Master Ballot reflecting votes of multiple Beneficial Holders, the votes reflected on such Master Ballot are to be tabulated in accordance with the voting instructions obtained from the Beneficial Holders.

65. The Holding Company Debtors respectfully request that the Balloting Agent be authorized to assist the Holding Company Debtors in: (a) distributing the Solicitation Package and Non-Voting Status Notice; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims; (c) receiving, tabulating, and reporting on Opt-Out Forms

and opt-out elections on Ballots received from Holders of Claims and Interests; (d) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, the Non-Voting Status Notices, the Opt-Out Forms, and all other documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan, opting out of the Third-Party Release, and for objecting to Confirmation of the Plan; (e) soliciting votes on the Plan; and (f) if necessary, contacting creditors regarding the Plan. The Holding Company Debtors and the Balloting Agent will use reasonable efforts, to the extent practicable before the Voting Deadline, to notify Holders of material, curable defects in timely submitted Ballots; *provided that*, neither the Holding Company Debtors nor the Balloting Agent shall incur any liability for failure to provide such notification; *provided*, further, that any such efforts to cure deficiencies will be undertaken without regard to whether the applicable Ballot accepts or rejects the Plan.

66. The Holding Company Debtors respectfully request that the Holding Company Debtors and/or the Balloting Agent be authorized, as applicable, to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots, which determination shall be subject to review by the Court upon the request of a party in interest.

### C. The Court Should Approve the Forms of the Ballot and Procedures for Tabulating Votes Thereon

67. Bankruptcy Rules 3017(d) and 3018(c) provide that the ballots for accepting or rejecting a plan under Chapter 11 should conform substantially to Official Form No. 314. The Holding Company Debtors propose to distribute to respective Holders of Claims in the Voting Classes the applicable ballot as set forth in Exhibit 4A, Exhibit 4B, Exhibit 4C, Exhibit 4D, and Exhibit 4E, attached to the Order (each, a "Ballot", and collectively, the "Ballots"). The Ballots

are based on Official Form No. 314 but have been modified to address the particular aspects of these chapter 11 cases and to include certain additional information that the Holding Company Debtors believe is relevant and appropriate for the Holders of Claims entitled to vote.

68. In order to properly submit a Ballot, parties must fully complete and execute a Ballot and return it by first class mail, overnight courier, or hand-delivery to Kroll at the address set forth in the Ballot so as to be received on or before the Voting Deadline.

69. Alternatively, parties may submit on or before the applicable Voting Deadline (i) a Ballot via electronic online transmission solely through the online portal on the Holding Company Debtors' case website, at https://restructuring.ra.kroll.com/SIMAD, and under the Case Navigation section, clicking on "Submit E-Ballot" and follow the instructions, and (ii) an Opt-Out Form via electronic online transmission solely through the online portal on the Holding Company Debtors' case website at https://restructuring.ra.kroll.com/SIMAD, and under the Case Navigation section, clicking on the "Submit E-Ballot" link located on the left-hand navigation panel of the Holding Company Debtors' case website (the "Opt-Out Portal"). Parties submitting a Ballot or Opt-Out Form via the online portals must not submit a Ballot or Opt-Out Form by mail.

70. Any Ballots sent by facsimile, telecopy, or electronic submissions (other than through the online portal or, solely with respect to Master Ballots, by email as expressly permitted on the Master Ballot) will not be accepted. Only properly completed, executed, and timely submitted Ballots will be accepted.

71. To that end, the Holding Company Debtors further propose that the following Ballots or Opt-Out Forms will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

a. any Ballot or Opt-Out Form received after the applicable Voting Deadline (as may be extended by the Holding Company Debtors as provided herein);

b. any Ballot or Opt-Out Form that is illegible or contains insufficient information to permit the identification of the claimant;

c. any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;

d. any Ballot or Opt-Out Form superseded by a later received, valid Ballot or Opt-Out Form; *provided* that such later received, valid Ballot shall be included in the final tabulation;

e. any Ballot that indicates neither an acceptance nor a rejection, or indicates both an acceptance and rejection, of the Plan;

f. any Ballot that casts part of its vote in the same class to accept the Plan and part to reject the Plan;

g. any form of Ballot or Opt-Out Form other than the form sent by the Balloting Agent, or a copy thereof;

h. any Ballot received that the Balloting Agent cannot match to an existing database record;

i. any Ballot or Opt-Out Form that does not contain a signature[7] *provided* that a valid opt-out election on a timely submitted Ballot shall be honored notwithstanding that such Ballot is unsigned or otherwise not counted as a vote; or

j. any Ballot or Opt-Out Form sent to the Holding Company Debtors' professionals or to Kroll at any address other than the official address set forth on the Ballot.

72. The Holding Company Debtors further propose that, subject to any contrary order of the Court and except as otherwise set forth herein, they may, in consultation with the Committee, waive any defects or irregularities as to any particular Ballot or Opt-Out Form at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the Voting Declaration prepared by the Balloting Agent.

[7] For the avoidance of doubt, any Ballot or Opt-Out Form submitted online, through the applicable portal in accordance with the instructions therein, will be deemed to contain a signature.

73. Further, the Holding Company Debtors propose to use the following hierarchy for purposes of determining the amount of a claim used to calculate acceptance or rejection of the Plan under section 1126 of the Bankruptcy Code, and the following conditions for purposes of determining the voting amounts and/or classifications:

a. if a Claim is deemed Allowed under the Plan, an order of the Court or a stipulated agreement between the parties, such Claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth therein; *provided that*, solely for purposes of voting in Class 7, and not for purposes of allowance or distribution, any Lender Deficiency Claim shall be temporarily allowed in the amount of $17,758,250, as agreed by the Holding Company Debtors, Mishmeret, and the Committee or, absent agreement, as estimated by the Court pursuant to Bankruptcy Rule 3018(a);

b. if a Claim for which a Proof of Claim has been timely filed for unknown or undetermined amounts, or is wholly unliquidated, or contingent (as determined on the face of the Claim or after a reasonable review of the supporting documentation by the Balloting Agent) and such Claim has not been Allowed, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00 unless a different amount is established by agreement or order of the Court; *provided*, *however*, that any liquidated, non-contingent portion of such Claim shall be temporarily allowed for voting purposes in such amount;

c. if a Claim, for which a Proof of Claim was timely filed, is listed in the Holding Company Debtors' filed Schedules as contingent, unliquidated or disputed in part, such Claim is temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, in the liquidated, non-contingent, undisputed amount set forth in such Proof of Claim, unless such Claim is subject to an objection filed in accordance with subsection (h) below;

d. if a Claim for which a Proof of Claim was timely filed or was listed in the Holding Company Debtors' filed Schedules in an amount that is liquidated, non-contingent, and undisputed, such Claim is allowed for voting in the amount set forth on the Proof of Claim or the Holding Company Debtors' filed Schedules;

e. if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

f. if a Claim is listed in the Holding Company Debtors' Schedules as contingent, unliquidated, disputed or for $0.00 and a Proof of Claim was not (i) filed by the applicable bar date for the filing of Proofs of Claim established by the Court; or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline; such Claim shall be disallowed for voting purposes; *provided*, *however*, if the applicable bar date has not yet passed, such Claim shall be entitled to vote at $1.00, subject to a different amount being allowed for voting purposes by order of the Court;

g. Proofs of Claim filed for $0.00 are not entitled to vote;

h. if the Holding Company Debtors have filed and served an objection or request for estimation as to a Claim at least fourteen (14) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court pursuant to Bankruptcy Rule 3018(a)(4); *provided*, *however*, that if such objection seeks only to reduce or reclassify such Claim (a "reduce and allow" objection), such Claim shall be temporarily allowed for voting purposes in the reduced amount and/or in the Class set forth in such objection; *provided*, *further*, that a Holder whose Claim is temporarily disallowed by reason of an objection may file a motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of such Claim for voting purposes no later than fourteen (14) days after service of the applicable objection, in which case the Balloting Agent will provide such Holder with a Ballot, which will be counted only upon the occurrence of a Resolution Event (as defined below);

i. for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one Claim against the Holding Company Debtors in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan; *provided* that, for the dollar-amount requirement of section 1126(c), the amounts of separate, nonduplicative Claims held by such creditor shall be aggregated;

j. notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased Claims arising from the same underlying obligation within the same Voting Class shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class in the amount of the largest such duplicative Claim, regardless of whether the Holding Company Debtors have objected to such duplicate Claims;

k. if a Proof of Claim has been amended by a later Proof of Claim that is filed on or prior to the Voting Record Date, the later filed amending Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Claim shall be disallowed for voting purposes, regardless of

whether the Holding Company Debtors have objected to such amended Claim. Except as otherwise ordered by the Court, any amendments to Proof of Claim after the Voting Record Date shall not be considered for purposes of these tabulation rules; *provided* that a holder whose Proof of Claim is timely filed after the Voting Record Date but on or before the applicable Amended Schedules Bar Date or Rejection Damages Bar Date shall be served with a Solicitation Package and shall be entitled to vote such Claim in accordance with these tabulation rules; and

l. for voting purposes, Claims asserted against more than one Holding Company Debtor on account of the same underlying obligation (including guaranty and joint and several Claims) shall be counted as a single Claim in the applicable Class, in the amount of such underlying obligation.

74. To the extent Claims in the Voting Classes are subject to an objection other than a "reduce and allow" objection that is filed with the Court and served on the affected holder on or prior to fourteen (14) days before the Voting Deadline, the holder of such Claims shall not be entitled to vote to accept or reject the Plan unless one or more of the following has occurred no later than two (2) business days prior to the deadline for Kroll to file the Voting Declaration or such later time as the Court may permit (each, a "Resolution Event"):

a. an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

b. an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

c. a stipulation or other agreement is executed between the holder of such Claim and the Holding Company Debtors, with notice to the Committee, temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount;

d. a stipulation or other agreement is executed between the Holder of such Claim and the Holding Company Debtors, with notice to the Committee, temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount and such stipulation or agreement is conveyed to the Balloting Agent by e-mail or otherwise; or

e. the pending objection is voluntarily withdrawn by the objecting party.

75. As noted above, Kroll shall conduct the solicitation process on behalf of the Holding Company Debtors. Pursuant to the Solicitation and Voting Procedures, Kroll will distribute the Ballot, as part of the Solicitation Package, to all holders of Class 4 (Mishmeret Prepetition Secured Claims), Class 5 (Disputed Secured MCA Claims), Class 6 (Disputed Unsecured MCA Claims), and Class 7 (General Unsecured Claims) (collectively, the "Voting Classes")[8]. All other Classes either are (i) unimpaired and conclusively deemed to have accepted the Plan or (ii) impaired and conclusively deemed to have rejected the Plan (Classes 8 and 9) (collectively, the "Non-Voting Classes"). As such, such holders of Claims and Interests in the Non-Voting Classes will receive the Non-Voting Notices. However, as described herein, the holders of Claims and Interests will be entitled to determine whether to opt-out of the Third-Party Release regardless of whether they vote to accept or reject the Plan or abstain from voting (in the case of holders in the Voting Classes, by checking the opt-out box on their Ballots, and in the case of holders in the Non-Voting Classes, pursuant to the Non-Voting Status Notice and Opt-Out Form).

## IV. The Court Should Approve the Procedures for Confirming the Plan

### A. The Combined Hearing Date

76. Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and that "[a] party in interest may object to confirmation of a plan." 11 U.S.C. § 1128; *see also* Fed. R. Bankr. P. 3017(c).[9] Section 105(d)(2)(B)(vi) of the

[8] Pursuant to the Plan, Holders of Claims in Classes 4, 5, 6, and 7 are entitled to vote to accept or reject the Plan and thus, their votes will be solicited. However, to the extent any Allowed Mishmeret Prepetition Secured Claim is paid in full under the Camp Business Plan before the Combined Hearing, Class 4 shall be treated as a vacant Class under Article III.F of the Plan.

[9] Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court . . . . may fix a date for the hearing on confirmation." Fed. R. Bankr. P. 3017(c).

Bankruptcy Code expressly authorizes the Court to "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the Court deems a combined hearing to be "appropriate to ensure that the case is handled expeditiously and economically." *See* 11 U.S.C. § 105(d)(2)(B)(vi); *see also In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) ("Section 1125(f) authorizes combined plans and disclosure statements in small business cases and § 105(d) authorizes the court to combine them in other cases.").

77. Courts in this district and beyond have previously allowed combined hearings to consider adequacy of a disclosure statement and confirmation of a plan in the context of chapter 11 cases. *See, e.g., In re Del Monte Foods Corporation II Inc.*, Case No. 25-16984 (MBK), Docket No. 1334 (Bankr. D.N.J. Mar. 19, 2026); *In re Powin, LLC*, Case No. 25-16137 (MBK), Docket No. 939 (Bankr. D.N.J. Oct. 14, 2025); *In re New Rite Aid, LLC*, Case No. 25-14861 (MBK), Docket No. 2535 (Bankr. D.N.J. Sept. 22, 2025); *In re Sam Ash Music Corporation*, Case No. 24-14727 (SLM), Docket No. 332 (Bankr. D.N.J. June 28, 2024); *In re DirectBuy Home Improvement, Inc.*, Case No. 23-19159 (SLM), Docket No. 462 (Bankr. D.N.J. Mar. 6, 2024); *In re Bed Bath & Beyond Inc.*, Case No. 23-13359 (VFP), Docket No. 1716 (Bankr. D.N.J. Aug. 2, 2023); *In re BlockFi Inc.*, Case No. 22-19361 (MBK), Docket No. 1306 (Bankr. D.N.J. Aug. 2, 2023); *In re L'Occitane, Inc.*, Case No. 21-10632 (MBK), Docket No. 407 (Bankr. D.N.J. July 15, 2021); *In re SLT Holdco, Inc.*, Case No. 20-18368 (MBK), Docket No. 461 (Bankr. D.N.J. Sept. 16, 2020); *In re Mountain Creek Resort, Inc.*, Case No. 17-19899 (SLM), Docket No. 1098 (Bankr. D.N.J. Dec. 12, 2019); *In re New England Motor Freight, Inc.*, Case No. 19-12809 (JKS) (Bankr. D.N.J. Nov. 14, 2019).

78. Consistent with the foregoing authority, the Holding Company Debtors respectfully request that the Court consolidate the hearing to consider approval of the Disclosure Statement and confirmation of the Plan at the single Combined Hearing. The Holding Company Debtors submit that a combined hearing will streamline and expedite the confirmation process, which will inure directly to the benefit of the Holding Company Debtors' estates and their creditors by hastening the implementation of the Plan and limiting the amount of time the Holding Company Debtors remain in chapter 11. In that regard, a combined hearing will spare the Holding Company Debtors from additional administrative expenses associated with a two-stage process and promote judicial efficiency and economy and is consistent with the agreed milestones arising under the debtor-in-possession financing in these cases.

79. In accordance with Bankruptcy Rules 2002 and 3017 and section 1128 of the Bankruptcy Code, the Holding Company Debtors request that the Court establish **January 13, 2027**, as the Combined Hearing Date. The Holding Company Debtors further request that the Combined Hearing may be continued from time to time by the Court or the Holding Company Debtors without further notice to parties in interest other than announcement of such adjournment in open court and/or filing a notice of adjournment with the Court and serving such notice on the Master Service List.

**B. The Court Should Approve the Procedures for Filing Objections to Confirmation of the Plan**

80. Bankruptcy Rule 2002 requires no less than twenty-eight days' notice to all Holders of Claims of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan. Fed. R. Bankr. P. 2002(b), (d). The Holding Company Debtors request that the Court establish **January 6, 2027 at 4:00 p.m.** prevailing Eastern Time, as the Confirmation Objection Deadline.

81. The Holding Company Debtors also request that the Court direct the manner in which parties in interest may object to Confirmation of the Plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within the time set by the court[.]" Fed. R. Bankr. P. 3020(b)(1). The Combined Hearing Notice will require that objections to Confirmation of the Plan or requests for modifications to the Plan, if any, must:

a) be in writing;

b) state with particularity the basis of the objection; and

c) be filed with the Clerk of the Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** on or before the Confirmation Objection Deadline.

82. The Holding Company Debtors believe that the Confirmation Objection Deadline for filing and service of objections (and proposed modifications, if any) will afford the Court, the Holding Company Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Combined Hearing.

83. Moreover, the Combined Hearing and any other confirmation date may be adjourned or continued from time to time by the Court or the Holding Company Debtors, without further notice other than adjournments announced in open court or as indicated in any notice of adjournment Filed by the Holding Company Debtors with the Court.

**Non-Substantive Modifications**

84. The Holding Company Debtors request authorization to make non-substantive changes to any of the Disclosure Statement, Plan (solely with the consent of the Committee), Combined Hearing Notice, Solicitation Package, Publication Notice, Non-Voting Status Notice, Opt-Out Form, Ballots, Cover Letter, the Committee Letter (solely with the consent of the Committee), Plan Supplement Notice, Solicitation and Voting Procedures, Assumption Notice, and related documents after the Order is entered without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan and any other materials in the Solicitation Package before distribution.

**Reservation of Rights**

85. Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Holding Company Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Holding Company Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is a secured claim, an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Holding Company Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Holding Company Debtors' estates; (g) a waiver or limitation of

the Holding Company Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Holding Company Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Holding Company Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Holding Company Debtors' rights to subsequently dispute such claim.

## **No Prior Request**

86. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## **Notice**

87. The Holding Company Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of New Jersey; (b) counsel to Bank of New Hampshire; (c) counsel to the Mishmeret Trust Company; (d) counsel to the Committee; (e) any known secured creditors; (f) the merchant cash advance lenders; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; (i) the attorney general in the states where the Holding Company Debtors conduct business operations; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Holding

Company Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**Conclusion**

**WHEREFORE,** the Holding Company Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as this Court may deem just and proper.

Dated: November 20, 2026

*/s/ Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors and*
*Debtors in Possession*

**Exhibit A**

**Proposed Order**

| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**COLE SCHOTZ P.C.**<br>Michael D. Sirota<br>Warren A. Usatine<br>David M. Bass<br>Felice R. Yudkin<br>Daniel J. Harris<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Telephone: (201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>dbass@coleschotz.com<br>fyudkin@coleschotz.com<br>dharris@coleschotz.com<br><br>*Counsel to the Debtors*<br>*and Debtors in Possession* |

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT OF THE HOLDING COMPANY DEBTORS; (II) SCHEDULING A COMBINED HEARING ON FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND PLAN CONFIRMATION AND DEADLINES RELATED THERETO; (III) APPROVING THE SOLICITATION, NOTICE, AND TABULATION PROCEDURES AND THE FORMS RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through twenty-four (24), is hereby **ORDERED**.

---

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Holding Company Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

Upon the Holding Company Debtors' *Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement of the Holding Company Debtors; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice, and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* (the "Motion");[2] and based on the record in these chapter 11 cases; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated June 6, 2025 (Bumb, C.J.); and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that sufficient notice of the Motion has been given; and the Court having found that the relief requested in the Motion is in the best interests of the Holding Company Debtors' estates, their creditors and other parties in interest; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND THAT:**

A. The Holding Company Debtors have all the necessary authority to propose and prosecute the Plan and the Disclosure Statement.

B. The Holding Company Debtors have provided adequate notice of the Motion, and the time fixed for filing objections thereto, and no other or further notice need be provided with respect to the Motion.

C. The period, set forth below, during which the Holding Company Debtors may solicit the Plan is a reasonable and adequate period of time under the circumstances for creditors entitled to vote to make an informed decision to accept or reject the Plan, including to make an informed decision to object to the Plan.

D. The notice substantially in the form attached hereto as **Exhibit 6** (the "Combined Hearing Notice") and the procedures set forth below for providing such notice to known and unknown creditors and interest holders of the time, date and place of the combined hearing to consider final approval of the Disclosure Statement and confirmation of the Plan, and the contents of the Combined Hearing Notice comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties.

E. The procedures for solicitation and tabulation of votes to accept or reject the Plan in the form attached hereto as **Exhibit 2** and as more fully set out in the Motion and in this Order (the "Solicitation and Voting Procedures") provide for a fair and equitable process and are consistent with section 1126 of the Bankruptcy Code.

F. The notice substantially in the form attached hereto as **Exhibit 3** (the "Non-Voting Status Notice"), the procedures set forth below for providing such notice to holders of Claims and Interests in the Non-Voting Classes of their non-voting status, and the content of the Non-Voting Notices, comply with the requirements of the Bankruptcy Code and are appropriate for the Non-Voting Classes who are deemed to accept or reject the Plan.

G. The forms of Ballots attached hereto as **Exhibit 4A**, **Exhibit 4B**, **Exhibit 4C**, **Exhibit 4D**, and **Exhibit 4E**, is sufficiently consistent with Official Form No. 314, adequately addresses the particular needs of this chapter 11 case, and are appropriate for the Voting Class to vote to accept or reject the Plan.

**NOW THEREFOR, IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** to the extent set forth herein.

2. Any objections to entry of this Order, to the extent not withdrawn or settled, are overruled.

## I. <u>Approval of the Disclosure Statement on a Conditional Basis</u>

3. The Disclosure Statement, substantially in the form attached hereto as **<u>Exhibit 1</u>**, is conditionally approved as providing Holders of Claims entitled to vote on the Plan adequate information, within the meaning of section 1125(a)(1) of the Bankruptcy Code, to make an informed decision as to whether to vote to accept or reject the Plan. Any objections to the adequacy of the information contained in the Disclosure Statement are expressly reserved for consideration at the Combined Hearing.

4. The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims and Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article VII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

## II. <u>Approval of the Procedures, Materials and Timeline for Soliciting Votes on and Confirming the Plan</u>

### A. Approval of the Solicitation and Voting Procedures

5. The Holding Company Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with the Solicitation and Voting Procedures attached hereto as **<u>Exhibit 2</u>**, which are hereby approved in their entirety and comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

## B. Approval of Certain Dates and Deadlines with Respect to the Plan and Disclosure Statement

6. The Confirmation Schedule is approved in its entirety as follows (subject to modifications as necessary):

| Event | Date | Description |
|---|---|---|
| Conditional Disclosure Statement Hearing Date | December 3, 2026 at 12:00 p.m. (ET) | The date of the hearing to conditionally approve the Disclosure Statement, subject to the Court's availability. |
| Voting Record Date | December 3, 2026 | The date for determining which Holders of Claims in the Voting Classes (as defined herein) are entitled to vote to accept or reject the Plan (such date, the "Voting Record Date"). |
| Solicitation Deadline | Five (5) business days following entry of the Order (or as soon as reasonably practicable thereafter) | The deadline by which the Holding Company Debtors must distribute Solicitation Packages (including Ballots) and Non-Voting Status Notices (including Opt-Out Forms), as applicable (the "Solicitation Deadline"). |
| Publication Deadline | Five (5) business days following entry of the Order (or as soon as reasonably practicable thereafter) | The date by which the Holding Company Debtors will submit the Combined Hearing Notice in a format modified for publication (such notice, the "Publication Notice," and such date, the "Publication Deadline"). |
| Initial Plan Supplement Deadline | December 31, 2026, at 4:00 p.m. (ET) | The date by which the Holding Company Debtors shall File the initial version of the Plan Supplement (the "Initial Plan Supplement Deadline"). |
| Assumption Notice Deadline | December 31, 2026, at 4:00 p.m. (ET) | The date by which the Holding Company Debtors shall serve an Assumption Notice, if any (the "Assumption Notice Deadline"). |

| Event | Date | Description |
|---|---|---|
| Voting and Opt-Out Deadline | January 6, 2027, at 4:00 p.m. (ET) | The deadline by which all Ballots and Opt-Out Forms must be properly executed, completed, and submitted so that they are **actually received** by Kroll Restructuring Administration LLC (the "Balloting Agent" or "Kroll," and such deadline, the "Voting Deadline" or "Opt-Out Deadline", as applicable, and, together, the "Voting Deadline and Opt-Out"). |
| Confirmation Objection Deadline | January 6, 2027, at 4:00 p.m. (ET) | The deadline by which parties in interest may File objections to final approval of the adequacy of the Disclosure Statement and Confirmation of the Plan, including the assumption or rejection of any Executory Contract or Unexpired Lease thereunder or as set forth in the Plan Supplement (the "Confirmation Objection Deadline"). |
| Voting Declaration Deadline | January 11, 2027, at 4:00 p.m. (ET) | The date by which the declaration certifying the results of the tabulation of votes on the Plan (the "Voting Declaration") shall be Filed with the Court (the "Voting Declaration Deadline"). |
| Confirmation Brief and Objection Reply Deadline | January 11, 2027, at 4:00 p.m. (ET) | The deadline by which the Holding Company Debtors shall File their brief in support of Confirmation of the Plan and reply to objections to Confirmation of the Plan (the "Confirmation Brief Deadline"). |
| Combined Hearing Date | January 13, 2027, at [●] (ET) or such other date as may be scheduled by the Court | The date and time of the confirmation hearing (the "Combined Hearing Date"). |

7. The period between the Solicitation Deadline and the Voting Deadline provides sufficient time for Holders of Claims entitled to vote on the Plan to make informed decisions with respect to voting on the Plan. The Holding Company Debtors may, in consultation with the Committee, adjourn the Combined Hearing Date, any related dates and deadlines from time to time, without notice to the parties in interest other than announcement of such adjournment in open court, or by posting such notice of adjournment on Kroll's website, and/or filing a notice of adjournment with the Court and serving such notice on the Master Service List.

**C. Approval of the Form and Distribution of Solicitation Packages to Parties Entitled to Vote on the Plan**

8. The Solicitation Packages to be transmitted on or before the Solicitation Deadline, or as soon as reasonably practicable thereafter, to those Holders of Claims in the Voting Classes entitled to vote on the Plan as of the Voting Record Date, shall include the following, the form of each of which is hereby approved:

a) the conditionally approved Disclosure Statement, substantially in the form attached hereto as **Exhibit 1** (and exhibits thereto, including the Plan);

b) a copy of the Solicitation and Voting Procedures, substantially in the form attached hereto as **Exhibit 2**;

c) the applicable form of Ballots, substantially in one of the forms of Ballots attached hereto as **Exhibits 4A**, **4B**, **4C**, **4D**, and **4E**, together with detailed voting instructions and instructions on how to submit the Ballots;

d) the Cover Letter, substantially in the form attached hereto as **Exhibit 5**, describing the contents of the Solicitation Package and urging the Holders of Claims in each of the Voting Classes to vote to accept the Plan;

e) for Holders of Class 5, Class 6, and Class 7 Claims only), the Committee Letter to Holders of Class 5 Disputed Secured MCA Claims, Class 6 Disputed Unsecured MCA Claims, and Class 7 General Unsecured Claims regarding the Plan;

f) the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 6**;

g) this Order (without exhibits, except for the Solicitation and Voting Procedures);

h) a pre-addressed, postage pre-paid reply envelope (if applicable); and

i) any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

9. The Holding Company Debtors shall distribute Solicitation Packages to all Holders of Claims entitled to vote on the Plan on or before the Solicitation Deadline, or as soon as reasonably practicable thereafter. Such service shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

10. The Solicitation Packages provide the Holders of Claims entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), the Bankruptcy Code, and the Local Rules.

11. The Holding Company Debtors are authorized to cause the Solicitation Packages to be delivered via first-class mail and/or distributed in electronic format via email, as applicable,

through the Balloting Agent to Holders of Claims in the Voting Classes. Any party that receives materials in electronic format, but would prefer to receive materials in paper format, may contact the Balloting Agent and request paper copies of the materials previously received in electronic format (to be provided at the Holding Company Debtors' expense). For Solicitation Packages distributed via first class mail, the Holding Company Debtors are authorized to distribute the Disclosure Statement, Order, and Solicitation and Voting Procedures on a flash drive, and the applicable Ballot, Cover Letter, the Committee Letter, and Combined Hearing Notice via hardcopy (in paper format).

12. The form of letter (the "Cover Letter"), attached hereto as **Exhibit 5**, describing the contents of the Solicitation Packages and recommending that such parties vote in favor of the Plan, is hereby approved.

13. The Ballots substantially in the forms attached hereto as **Exhibits 4A**, **4B**, **4C**, **4D**, and **4E**, are hereby approved and comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

14. The vote tabulation procedures set forth in the Solicitation and Voting Procedures, including the procedures for tabulating votes cast by Beneficial Holders through Nominees on Master Ballots, are approved.

15. The Holding Company Debtors are authorized to cause the Non-Voting Status Notices to be delivered via first-class mail and/or distributed in electronic format via email, as

applicable, through the Balloting Agent to Holders of Claims and Interests in the Non-Voting Classes.

16. On or before the Solicitation Deadline, the Holding Company Debtors (through the Balloting Agent) shall provide complete Solicitation Packages (excluding the Ballots) to the U.S. Trustee (in paper format) and all parties on the Master Service List (in electronic format) as of the Voting Record Date. The Solicitation Packages for Holders of Class 5, Class 6, and Class 7 Claims will also include the Committee Letter recommending that such Holders vote to accept the Plan.

17. For purposes of serving the solicitation materials, the Holding Company Debtors are authorized to rely on the mailing and email address information (for voting and non-voting parties alike) maintained by the Holding Company Debtors and provided by the Holding Company Debtors to the Balloting Agent or, with respect to Holders of Claims in the Voting Classes, by the applicable administrative agents therefor. The Holding Company Debtors and the Balloting Agent shall not be obligated to conduct any additional research for updated addresses based on undeliverable solicitation materials (including undeliverable Ballots, Non-Voting Status Notices, Opt-Out Forms, and Combined Hearing Notices), and the Balloting Agent shall not be required to resend Solicitation Packages or other solicitation materials, including the Combined Hearing Notice and Non-Voting Status Notices, that are returned as undeliverable, unless the Holding Company Debtors are provided with accurate addresses for such parties in sufficient time to effectuate service before the Voting Deadline; *provided* that (a) if a Solicitation Package or Non-

Voting Status Notice transmitted by email is returned as undeliverable, the Balloting Agent shall serve such materials by first-class mail to the physical mailing address, if any, reflected in the Holding Company Debtors' records, and (b) any Holder of a Claim in a Voting Class that has not received a Ballot may contact the Balloting Agent to request one.

18. The Balloting Agent is authorized to assist the Holding Company Debtors in: (a) distributing the Solicitation Packages and Non-Voting Status Notices; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors; (c) receiving, tabulating, and reporting on Opt-Out Forms and opt-out elections on Ballots received from Holders of Claims and Interests; (d) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the approved Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, the Non-Voting Status Notices, the Opt-Out Forms, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan, opting out of the Third-Party Release, and objecting to Confirmation of the Plan; (e) soliciting votes on the Plan; and (f) if necessary, contacting Holders of Claims or Interests regarding the Plan and/or the conditionally approved Disclosure Statement. The Holding Company Debtors and the Balloting Agent shall use reasonable efforts, to the extent practicable before the Voting Deadline, to notify Holders of material, curable defects in timely submitted Ballots; *provided that*, neither the Holding Company Debtors nor the Balloting Agent shall incur any liability for failure to provide such notification; *provided, further,* that any such

efforts to cure deficiencies shall be undertaken without regard to whether the applicable Ballot accepts or rejects the Plan.

19. The Holding Company Debtors and/or the Balloting Agent are authorized, as applicable, to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots, which determination shall be subject to review by the Court upon the request of a party in interest.

20. In addition to accepting Ballots and Opt-Out Forms, the Balloting Agent is also authorized to accept Ballots and Opt-Out Forms via electronic online transmission through an online balloting portal on the Holding Company Debtors' case website (the "E-Ballot Portal" and when used to submit Opt-Out Forms, the "Opt-Out Portal"), as set forth in the Solicitation and Voting Procedures. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

21. All votes to accept or reject the Plan must be cast by using the appropriate Ballot. All Ballots and/or Opt-Out Forms must be properly executed, completed, and delivered according to their applicable voting instructions by: (a)(i) submitting such Ballot electronically through the E-Ballot Portal or Opt-Out Portal, after clicking "Submit E-Ballot" under the Case Navigation section of the Holding Company Debtors' case website, at https://restructuring.ra.kroll.com/SIMAD, or (ii) solely with respect to Master Ballots, by email in

accordance with the instructions on the Master Ballot; (b) first-class mail, in the return envelope provided with each Ballot; (c) overnight delivery; or (d) personal delivery, so that the Ballots and Opt-Out Forms are actually received by the Balloting Agent, through the E-Ballot Portal or Opt-Out Portal, as applicable, or at the return address set forth in the applicable Ballot or Opt-Out Form, by no later than the Voting and Opt-Out Deadline.

22. Ballots and Opt-Out Forms otherwise sent by facsimile, telecopy, or electronic submissions (other than through the online portal or, solely with respect to Master Ballots, by email as expressly permitted on the Master Ballot) will <u>not</u> be accepted. Only properly completed, executed, and timely submitted Ballots and Opt-Out Forms will be accepted.

23. The following Ballots and/or Opt-Out Forms will <u>not</u> be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

a. any Ballot or Opt-Out Form received after the applicable Voting Deadline (as may be extended by the Holding Company Debtors as provided herein);

b. any Ballot or Opt-Out Form that is illegible or contains insufficient information to permit the identification of the claimant;

c. any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;

d. any Ballot or Opt-Out Form superseded by a later received, valid Ballot or Opt-Out Form; *provided* that such later received, valid Ballot shall be included in the final tabulation;

e. any Ballot that indicates neither an acceptance nor a rejection, or indicates both an acceptance and rejection, of the Plan;

f. any Ballot that casts part of its vote in the same class to accept the Plan and part to reject the Plan;

g. any form of Ballot or Opt-Out Form other than the form sent by the Balloting Agent, or a copy thereof;

h. any Ballot received that the Balloting Agent cannot match to an existing database record;

i. any Ballot or Opt-Out Form that does not contain a signature[3]; provided that a valid opt-out election on a timely submitted Ballot shall be honored notwithstanding that such Ballot is unsigned or otherwise not counted as a vote; or

j. any Ballot or Opt-Out Form sent to the Holding Company Debtors' professionals or to Kroll at any address other than the official address set forth on the Ballot.

**D. Approval of the Form and Non-Voting Status Notice and Opt-Out Forms**

24. On or before the Solicitation Deadline, or as soon as reasonably practicable thereafter, the Balloting Agent shall mail and/or email, as applicable, the Combined Hearing Notice and a Non-Voting Status Notice, attached hereto as **Exhibit 3**, and which shall include the Opt-Out Form, to those parties outlined below, who are not entitled to vote on the Plan. The Non-

[3] For the avoidance of doubt, any Ballot or Opt-Out Form submitted online, through the applicable portal in accordance with the instructions therein, will be deemed to contain an original signature.

Voting Status Notice is hereby approved and complies with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

| Class | Status | Treatment |
|---|---|---|
| Classes 1, 2, 3 | Unimpaired<br>(Presumed to Accept) | Holders of Claims that are presumed to accept the Plan are not entitled to vote. Therefore, in lieu of a Solicitation Package, Holders of such Claims, will receive the Combined Hearing Notice and a Non-Voting Status Notice, substantially in the form attached hereto as Exhibit 3, which notice includes an Opt-Out Form. |
| Classes 8, 9 | Impaired<br>(Deemed to Reject) | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote. Therefore, in lieu of a Solicitation Package, Holders of such Claims or Interests, will receive the Combined Hearing Notice and a Non-Voting Status Notice, substantially in the form attached hereto as Exhibit 3, which notice includes an Opt-Out Form. |

25. The Holding Company Debtors are not required to distribute Solicitation Packages or other solicitation materials to parties that receive a Non-Voting Status Notice. The Holding Company Debtors are not required to distribute Solicitation Packages, other solicitation materials, or Non-Voting Status Notices to: (a) Holders of Claims that have already been paid in full during these Chapter 11 Cases or that are otherwise paid in full in the ordinary course of business pursuant to an order previously entered by this Court; (b) any party to whom the notice of the Motion was sent but was subsequently returned as undeliverable without a forwarding address by the Voting

Record Date; or (c) parties that received a Non-Voting Status Notice, as applicable. For the avoidance of doubt, holders of Class 8 (Subordinated Securities Claims) and Class 9 (Interests) will receive the Combined Hearing Notice and a Non-Voting Status Notice and Opt-Out Form. In addition, the Holding Company Debtors shall serve the Combined Hearing Notice and a Non-Voting Status Notice and Opt-Out Form (in lieu of a Ballot) on any Holder of a Claim in a Voting Class whose Claim is subject to a pending objection (other than a "reduce and allow" objection) filed and served at least fourteen (14) days before the Voting Deadline and who is not entitled to vote pending a Resolution Event.

**E. Approval of the Combined Hearing Notice**

26. The Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 6**, which shall be Filed by the Holding Company Debtors and served upon parties in interest in these chapter 11 cases by no later than the Solicitation Deadline and published in a format modified for publication one time no later than the Publication Deadline, in the New York Times (national edition) or similar publication constitutes adequate and sufficient notice of the hearing to consider approval of the Plan, the manner in which a copy of the Plan and Disclosure Statement can be obtained, and the time fixed for filing objections thereto, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**F. Approval of Notice of Filing of the Plan Supplement**

27. The Holding Company Debtors are authorized to mail and/or email, as applicable, notice of the filing of the Plan Supplement to parties in interest, substantially in the form attached hereto as **Exhibit 7**, within the time periods specified in the Plan. Notwithstanding the foregoing, the Holding Company Debtors may amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with the Plan.

**G. Approval of Assumption Notice**

28. The Holding Company Debtors are authorized to mail and/or email, as applicable, the notice of assumption of Executory Contracts or Unexpired Leases, in the forms attached hereto as **Exhibit 8** to the applicable counterparties to Executory Contracts and Unexpired Leases that will be assumed pursuant to the Plan, within the time periods specified in the Motion. Counterparties who receive such notice shall have fourteen (14) calendar days to object to the Holding Company Debtors' proposed assumption. The date by which the Holding Company Debtors shall file the initial Plan Supplement, which shall include the list of assumed Executory Contracts and Unexpired Leases, if any, is the Initial Plan Supplement Deadline.

**H. Non-Substantive Modifications**

29. The Holding Company Debtors are authorized to make non-substantive changes to the Plan (solely with the consent of the Committee), the Disclosure Statement, the Solicitation and Voting Procedures, the Ballots, the Non-Voting Status Notice, the Opt-Out Form, the Combined

Hearing Notice, the Publication Notice, the Cover Letter, the Committee Letter (solely with the consent of the Committee), the Plan Supplement Notice, the Assumption Notice, and any notice attached hereto, and any related documents without further order of the Bankruptcy Court, including formatting changes, changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials (including any appendices thereto) in the Solicitation Packages before distribution. Subject to the foregoing, the Holding Company Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with this Order, without further order of the Bankruptcy Court.

## III. Approval of Procedures for Confirming the Plan

### A. Approval of the Procedures for Filing Objections to the Confirmation of the Plan

30. Objections to the Confirmation of the Plan will not be considered by the Court unless such objections are timely Filed and properly served in accordance with this Order and *Chapter 11 Complex Case Management Order* [Docket No. 297]. Specifically, all objections to the Confirmation of the Plan or requests for modifications to the Plan, if any, must: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of this Court; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

(d) be Filed with the Court (contemporaneously with a proof of service) and served upon the notice parties so as to be actually received on or before the Confirmation Objection Deadline by each of the notice parties identified in the Combined Hearing Notice.

**B. Approval of the Combined Hearing**

31. The combined hearing on final approval of the adequacy of the Disclosure Statement and confirmation of the Plan is scheduled for **January 13, 2027** at **[●] (ET)** (the "Combined Hearing"). The deadline to file objections to the adequacy of the Disclosure Statement and confirmation of the Plan is the Confirmation Objection Deadline, **January 6, 2027 at 4:00 p.m. (ET)**. The Combined Hearing may be continued from time to time by the Court or the Holding Company Debtors without further notice other than adjournments announced in open court and/or filing a notice of adjournment with the Court and serving such notice on the Master Service List.

**V. Miscellaneous**

32. The Holding Company Debtors' rights are reserved to modify the Plan without further order of the Bankruptcy Court in accordance with Article IX of the Plan, including the right to withdraw the Plan at any time before the Confirmation Date.

33. Nothing in this Order shall be construed as a waiver of the right of the Holding Company Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

34. With the exception of those entities in the Voting Classes and Non-Voting Classes, the Holding Company Debtors shall mail only the Combined Hearing Notice to other holders of Claims and Interests, all parties requesting notice pursuant to Bankruptcy Rule 2002, and any other parties on the creditor matrix, shall not be required to mail any Plan Documents to such entities. Instead, the Holding Company Debtors are authorized to provide in the Combined Hearing Notice directions for such parties to obtain electronic copies of the Plan Documents from the Balloting Agent.

35. To the extent Claims in the Voting Classes are subject to an objection other than a "reduce and allow" objection that is filed with the Court on or prior to fourteen (14) days before the Voting Deadline, the holder of such Claims shall not be entitled to vote to accept or reject the Plan unless one or more of the following has occurred no later than two (2) business days prior to the deadline for Kroll to file the Voting Declaration or such later time as the Court may permit (each, a "Resolution Event"):

a) an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

b) an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

c) a stipulation or other agreement is executed between the holder of such Claim and the Holding Company Debtors, with notice to the Committee, resolving the objection and allowing such Claim in an agreed upon amount; or

d) a stipulation or other agreement is executed between the Holder of such Claim and the Holding Company Debtors, with notice to the Committee, temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount and such stipulation or agreement is conveyed to the Balloting Agent by e-mail or otherwise; or

e) the pending objection is voluntarily withdrawn by the objecting party.

36. The Holder of a Claim in a Voting Class that is the subject of a pending objection on a "reduce and allow" basis shall be entitled to vote such Claim in the reduced amount contained in such objection. Holders of Claims that are not entitled to vote because of a pending objection may file a motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of such Claim for voting purposes no later than fourteen (14) days after service of the applicable objection, and the Balloting Agent shall provide such Holder (upon the filing of such motion or upon request) with a Ballot, which shall be counted only upon the occurrence of a Resolution Event.

37. Notwithstanding anything to the contrary herein, nothing contained in this Order or any actions taken pursuant to this Order is intended or should be construed as (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Holding Company Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Holding Company Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is a secured claim, an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or by this Order;

(e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Holding Company Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Holding Company Debtors' estates; (g) a waiver or limitation of the Holding Company Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Holding Company Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Holding Company Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Holding Company Debtors' rights to subsequently dispute such claim

38. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39. The Holding Company Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

40. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Complex Case Procedures, the terms and conditions of this Order shall be effective and enforceable immediately upon entry hereof.

41. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures are satisfied by such notice.

42. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Exhibit 1**

**Disclosure Statement on File at Docket No. [1546]**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE CAMP BUSINESS DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT HAS BEEN APPROVED ON AN INTERIM BASIS BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR INTERIM APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT ON AN INTERIM BASIS OR OTHERWISE. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES NOR IS IT SOLICITING AN OFFER TO BUY ANY SECURITIES. INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AN AUDIT.**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

---

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

# DISCLAIMER

**THE CAMP BUSINESS DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT[2] IN CONNECTION WITH THE PLAN OF LIQUIDATION OF THE CAMP BUSINESS DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE. THE CAMP BUSINESS DEBTORS ARE REQUESTING THAT THE BANKRUPTCY COURT CONFIRM THE PLAN PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE. YOU SHOULD NOT RELY ON OR USE THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR ANY PURPOSE OTHER THAN MAKING AN INFORMED JUDGMENT ABOUT VOTING TO EITHER ACCEPT OR REJECT THE PLAN.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT TO COMPLY WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAWS. THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS DETERMINED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR THE MERITS OF THE PLAN.**

**THIS DISCLOSURE STATEMENT MAY CONTAIN “FORWARD LOOKING STATEMENTS” WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS “MAY,” “EXPECT,” “ANTICIPATE,” “ESTIMATE” OR “CONTINUE” OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THE LIQUIDATION ANALYSIS, DISTRIBUTION PROJECTIONS, AND OTHER INFORMATION CONTAINED HEREIN ARE ESTIMATES ONLY, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. THEREFORE, ANY ANALYSES, ESTIMATES, OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.**

**NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE CAMP BUSINESS DEBTORS URGE EACH HOLDER OF A CLAIM OR AN INTEREST TO CONSULT WITH THEIR OWN ADVISORS WITH RESPECT**

---

[2] Unless otherwise defined herein, capitalized terms contained in this Disclosure Statement shall have the same meanings ascribed to them in either the Plan, the Bankruptcy Code, or the Bankruptcy Rules (each as defined herein), as applicable.

**TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S INTERIM APPROVAL OF THE ADEQUACY OF THE DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.**

**THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. RATHER, HOLDERS OF CLAIMS OR INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND/OR OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.**

**NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR POTENTIAL OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. THE CAMP BUSINESS DEBTORS MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS BEFORE AND AFTER THE CONFIRMATION OF THE PLAN OR EFFECTIVE DATE THEREOF IRRESPECTIVE OF WHETHER THIS DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.**

**THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE CAMP BUSINESS DEBTORS' CHAPTER 11 CASES, AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE CAMP BUSINESS DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. THE CAMP BUSINESS DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL OR NON-MATERIAL INACCURACY OR OMISSION.**

**THE CAMP BUSINESS DEBTORS' MANAGEMENT AND THEIR ADVISORS HAVE REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THE CAMP BUSINESS DEBTORS HAVE USED THEIR REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY**

**OF THIS FINANCIAL INFORMATION, NO ENTITY HAS AUDITED THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT.**

**THE CAMP BUSINESS DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE CAMP BUSINESS DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE CAMP BUSINESS DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE FILING OF THIS DISCLOSURE STATEMENT. EACH HOLDER OF A CLAIM OR INTEREST MUST RELY ON THEIR OWN EVALUATION OF THE CAMP BUSINESS DEBTORS AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN ORDER TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.**

**THE CAMP BUSINESS DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE OTHER MATERIALS INCLUDED IN THE SOLICITATION PACKAGE APPROVED BY THE BANKRUPTCY COURT, INCLUDING THE LETTER OF THE CREDITORS' COMMITTEE. THE CAMP BUSINESS DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE CAMP BUSINESS DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

**EACH HOLDER OF A CLAIM OR INTEREST SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN, IN ORDER TO MAKE AN INFORMED JUDGMENT ABOUT VOTING TO EITHER ACCEPT OR REJECT THE PLAN.**

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 13
- 1.1 PURPOSE OF THE DISCLOSURE STATEMENT ..... 13
- 1.2 CONFIRMATION OF THE PLAN ..... 14
- 1.3 VOTING ON THE PLAN ..... 17
- 1.4 ACCEPTANCE OF THE PLAN ..... 22
- 1.5 SOURCES OF INFORMATION ..... 22

II. THE DEBTORS ..... 23
- 2.1 THE DEBTORS' CORPORATE HISTORY, STRUCTURE, AND BUSINESS OPERATIONS AS OF THE PETITION DATE ..... 23
- 2.2 THE DEBTORS' PREPETITION CAPITAL STRUCTURE ..... 23
- 2.3 EVENTS LEADING TO THE BANKRUPTCY FILINGS ..... 30
- 2.4 THE DEBTORS' BANKRUPTCY PROCEEDINGS ..... 30

III. FEASIBILITY ..... 44
- 3.1 FINANCIAL FEASIBILITY ANALYSIS. ..... 44

IV. ALTERNATIVES TO THE PLAN ..... 44
- 4.1 CHAPTER 7 LIQUIDATION ..... 44
- 4.2 ALTERNATIVE PLAN(S) ..... 46

V. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ..... 46
- 5.1 GENERAL ..... 46
- 5.2 CONSEQUENCES TO THE CAMP BUSINESS DEBTORS ..... 48
- 5.3 CONSEQUENCES TO CERTAIN U.S. HOLDERS OF CLAIMS AND INTERESTS ..... 48
- 5.4 MATTERS RELATED TO THE DISPUTED CLAIMS RESERVE ..... 49
- 5.5 CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES TO NON-U.S. HOLDERS OF CLAIMS ..... 50
- 5.6 INFORMATION REPORTING AND BACK-UP WITHHOLDING ..... 51

VI. RISK FACTORS ..... 52
- 6.1 CERTAIN BANKRUPTCY CONSIDERATIONS ..... 52
- 6.2 CLAIMS ESTIMATION & CASH AVAILABLE AFTER DISTRIBUTION ..... 53

VII. ADDITIONAL RISK FACTORS ..... 53

VIII. CONCLUSION ..... 55

**EXHIBITS**

| | |
|---|---|
| **EXHIBIT A** | **Chapter 11 Plan** |
| **EXHIBIT B** | **Organizational Chart** |
| **EXHIBIT C** | **Liquidation Analysis** |

## EXECUTIVE SUMMARY

This disclosure statement (this "Disclosure Statement") provides information regarding the *Joint Chapter 11 Plan of Liquidation of the Camp Business Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"), which the Camp Business Debtors are seeking to have confirmed by the Bankruptcy Court. A copy of the Plan is attached hereto as **Exhibit A**. The rules of interpretation set forth in Article I.B of the Plan shall govern the interpretation of this Disclosure Statement.

The Camp Business Debtors believe that the Plan is in the best interests of the Estates. As such, the Camp Business Debtors recommend that all holders of Claims eligible to vote for the Plan vote to accept the Plan by returning their ballots (each, a "Ballot") so as to be **actually received** by Kroll Restructuring Administration, LLC ("Kroll")) no later than **[●], 2026, at 4:00 p.m. (ET)** for Solicitation Packages served by the Solicitation Deadline (as applicable, and as may be extended, the "Voting Deadline"). The Voting Deadline is also the deadline for holders of Claims and Interests to opt out of the third-party release, as described below. The Solicitation Packages for holders of Class 7, Class 8, and Class 9 Claims will also include a letter from the Official Committee of Unsecured Creditors (the "Creditors' Committee") recommending that such holders vote to accept the Plan (the "Committee Letter").

The Solicitation Deadline will be established by the order of the Bankruptcy Court conditionally approving this Disclosure Statement. Assuming the requisite acceptances to the Plan are obtained, the Camp Business Debtors will seek the Bankruptcy Court's approval of the Plan at the Confirmation Hearing.

### A. Overview of the Plan

The Camp Business Debtors propose to liquidate under chapter 11 of the Bankruptcy Code. Under chapter 11, a debtor may reorganize or liquidate its businesses for the benefit of its stakeholders. After having sold substantially all of their assets other than certain assets that already were liquidated, as described below, the consummation of a chapter 11 plan of liquidation is the principal final objective of these Chapter 11 Cases. A chapter 11 plan sets forth how a debtor will treat claims and equity interests.

The primary objectives of the Plan are to maximize the value of recoveries to all holders of Allowed Claims and generally to distribute all property of the Estates that is or becomes available for distribution in accordance with the priorities established by the Bankruptcy Code. The Settlement Fund established in connection with the Committee Settlement is not property of the Estates and, accordingly, is not subject to such distribution priorities. The Camp Business Debtors believe that the Plan accomplishes these objectives and is in the best interest of the Estates.

A bankruptcy court's confirmation of a chapter 11 plan binds the Camp Business Debtors, any entity or person acquiring property under the plan, any creditor of or equity security holder in a debtor, and any other entities and persons to the extent ordered by the bankruptcy court pursuant to the terms of the confirmed plan, whether or not such entity or person is impaired pursuant to the plan, has voted to accept the plan, or receives or retains any property under the plan. Among other things (subject to certain limited exceptions and except as otherwise provided in the Plan or the

Confirmation Order), the Confirmation Order will provide for the exclusive treatment of Claims against and Interests in the Camp Business Debtors, terminate all of the rights and interests of pre-bankruptcy equity security holders, and substitute the obligations set forth in the Plan for those pre-bankruptcy Claims and Interests. Under the Plan, Claims and Interests are divided into Classes according to their relative priority and other criteria.

The Camp Business Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Camp Business Debtors include the following entities: (1) Achim Landco LLC; (2) Achim Operatingco, LLC; (3) BAHS Holdings LLC; (4) BAHS Operating Inc.; (5) Banner Operatingco, LLC; (6) Banner Landco, LLC; (7) Bluestar Operatingco LLC; (8) Bluestar Landco, LLC; (9) Club Getaway Operatingco, LLC; (10) Club Getaway Landco, LLC; (11) Country Roads Operatingco, LLC; (12) Country Roads Landco, LLC; (13) Eagle's Landing Day Camp LLC; (14) Green Lane Operatingco, LLC; (15) Green Lane Landco, LLC; (16) Greenvilleland LLC; (17) Island Lake Campco, LLC; (18) Island Lake Landco, LLC; (19) Kiwi Operatingco, LLC; (20) Lavco, LLC; (21) Lavland, LLC; (22) Malka Operatingco, LLC; (23) Meadowbrook Operatingco, LLC; (24) Meadowbrook Landco, LLC; (25) Mill Road Landco, LLC; (26) Mogenavco, LLC; (27) Mogenavland, LLC; (28) Mohawkcampco, LLC; (29) Mohawkland, LLC; (30) Mohawk Country Day School, Inc.; (31) RDM Camps, LLC; (32) Rolling Hills Operatingco, LLC; (33) Rolling Hills Landco, LLC; (34) SHAB Holdings, LLC; (35) SHAB Operating Inc.; (36) Summit Camp, LLC; and (37) Quadstar Realty LLC.

Generally speaking, the Plan:

- vests all Liquidation Trust Assets, including Retained Causes of Action, in the Liquidation Trust on the Effective Date, for the purpose of distribution to holders of Allowed Claims (the Settlement Fund, the Liquidation Trust Claims Reserve, and the Professional Fee Claim Reserve are not Liquidation Trust Assets);

- provides for the treatment of the DIP Claims and the Mishmeret Prepetition Secured Claims, with any unsecured portion of the Prepetition Obligations treated as Lender Deficiency Claims in Class 8;

- designates a Liquidation Trustee to wind down the Camp Business Debtors' affairs, prosecute, continue, or settle Retained Causes of Action, pay and reconcile Claims, and administer the Plan; and

- provides for 100 percent recoveries for holders of Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Priority Claims, Other Secured Claims, and Disputed Prepetition Secured Loan Claims (to the extent Allowed).

The Debtors have commenced or intend to commence litigation against the holders of Disputed Prepetition Secured Loan Claims (i.e., Visions Federal Credit Union, NBL SPV II, LLC, and Enhanced Capital Pennsylvania Rural Fund, LLC). If the Camp Business Debtors are unable to avoid the liens and claims asserted by the holders of the Disputed Prepetition Secured Loan Claims, the proceeds of the Sale Transactions relating to the Mishmeret Collateral Pool Debtors may not

be sufficient to satisfy the Mishmeret Prepetition Secured Claims in full. Accordingly, the Camp Business Debtors expect that (i) Class 5 will be Impaired, (ii) Mishmeret will hold a Lender Deficiency Claim in Class 8, and (iii) distributions to holders of Allowed Disputed Unsecured MCA Claims and Allowed General Unsecured Claims will be funded principally from the Settlement Fund (as to holders of Allowed General Unsecured Claims other than Lender Deficiency Claims) and from the proceeds of Retained Causes of Action, rather than from the proceeds of the Sale Transactions. The Liquidation Analysis attached hereto as Exhibit C presents estimated recoveries by Class. Recoveries to holders of General Unsecured Claims under the Plan are presented on a consolidated basis consistent with the Plan's limited consolidation of the Camp Business Debtors.

The Camp Business Debtors believe that Confirmation of the Plan will avoid the lengthy delay and significant cost of liquidation under chapter 7 of the Bankruptcy Code.

**THERE CAN BE NO ASSURANCE THAT THE ACTUAL CLAIM AMOUNTS WILL NOT BE DIFFERENT, AND PERHAPS SIGNIFICANTLY DIFFERENT, FROM THE ESTIMATES SET FORTH HEREIN.**

The table beginning on the following page is only a summary of the classification and treatment of Claims and Interests under the Plan. Reference should be made to the entire Disclosure Statement and Plan for a complete description and understanding of the classification and treatment of Claims and Interests.

**SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**[3]

| Class | Claim / Interest | Estimated Amount of Asserted Claims | Treatment | Estimated Recovery |
|---|---|---|---|---|
| 1 | Secured Tax Claims | N/A | Unimpaired | 100% |
| 2 | Other Secured Claims | $4.4 million | Unimpaired | 100% |
| 3 | Other Priority Claims | $0.191 million | Unimpaired | 100% |
| 4 | Disputed Prepetition Secured Loan Claims | $37.1 million | Unimpaired | 0% (if Disallowed) / 100% (if Allowed) |
| 5 | Mishmeret Prepetition Secured Claims | $85.1 million | Impaired | 79.1% - 100%[4] |

[3] Estimated Claim amounts and recoveries in the table above are derived from the Liquidation Analysis attached hereto as Exhibit C (as of November 13, 2026), assume an Effective Date of February 1, 2027, and are subject to the assumptions and qualifications set forth therein. As detailed in the Liquidation Analysis, anticipated recoveries to creditors under the Plan assume that the Camp Business Debtors (or their successor) do not successfully challenge the Disputed Prepetition Secured Loan Claims (Class 4), the Disputed Secured MCA Claims (Class 6), or the Disputed Unsecured MCA Claims (Class 7).

[4] The Camp Business Debtors dispute each of the Disputed Prepetition Secured Loan Claims in Class 4 and intend to object to each Claim on the basis that, among other things, such Claims are not valid obligations of the Camp Business Debtors' Estates. If the Camp Business Debtors are successful in their objections to the Disputed Prepetition Secured Loan Claims, the Mishmeret Prepetition Secured Claims are estimated to recover 100% on account of their Claims. If the Camp Business Debtors are not successful in their objections to the Disputed Prepetition Secured Loan Claims, the Mishmeret Prepetition Secured Claims are estimated to recover approximately 79.1% of their Claims, as more fully described in the Liquidation Analysis attached hereto as Exhibit C.

| Class | Claim / Interest | Estimated Amount of Asserted Claims | Treatment | Estimated Recovery |
|---|---|---|---|---|
| 6 | Disputed Secured MCA Claims | $17.1 million | Impaired / Unimpaired | 0% (if Disallowed) - 54.1%[5] |
| 7 | Disputed Unsecured MCA Claims | $71.7 million | Impaired | 0% (if Disallowed) - 7.1%[6] |
| 8 | General Unsecured Claims | $104.0 million | Impaired | 5.9% - 9.7%[7] |
| 9 | Convenience Class Claims | $4.1 million | Impaired | 49.3%[8] |
| 10 | Subordinated Securities Claims | $0.546 million | Impaired | 0% |
| 11 | Interests | N/A | Impaired | 0% |

## B. The Plan Structure

Pursuant to the Plan, the Liquidation Trustee will pay or provide for payments of Claims as follows:

- **Secured Tax Claims**: (a) payment in full in Cash of such holder's Allowed Secured Tax Claim; or (b) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five (5) years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Liquidation Trustee to prepay the entire amount of such Allowed Secured Tax Claim during such time period;

- **Other Secured Claims**: (a) payment in full in Cash of such holder's Allowed Other Secured Claim; (b) the Collateral securing such holder's Allowed Other Secured Claim; (c) Reinstatement of such holder's Allowed Other Secured Claim; or

5 The Camp Business Debtors dispute each of the Disputed Secured MCA Claims in Class 6 and intend to object to each Claim on the basis that, among other things, such Claims are not valid obligations of the Camp Business Debtors' Estates as more fully described below in Section 2.2.2 below. If the Camp Business Debtors are not successful in their objections to the Disputed Secured MCA Claims, the Disputed Secured MCA Claims are estimated to recover approximately 54.1% of their Claims, as more fully described in the Liquidation Analysis attached hereto as Exhibit C.

6 The Camp Business Debtors dispute each of the Disputed Unsecured MCA Claims in Class 7 and intend to object to each Claim on the basis that, among other things, such Claims are not valid obligations of the Camp Business Debtors' Estates as more fully described below in Section 2.2.2 below. If the Camp Business Debtors are not successful in their objections to the Disputed Unsecured MCA Claims, the Disputed Unsecured MCA Claims are estimated to recover approximately 7.1% of their Claims, as more fully described in the Liquidation Analysis attached hereto as Exhibit C.

7 If the Camp Business Debtors are successful in their objections to the Disputed Unsecured MCA Claims in Class 7, the General Unsecured Claims in Class 8 are estimated to recover approximately 9.7%.

8 The Estimated Recovery for holders of Convenience Class Claims will decrease as holders of Disputed Unsecured MCA Claims or General Unsecured Claims opt into the Convenience Class. For illustrative purposes only, if all asserted General Unsecured Claims below $1,250,000.00 in face value elect to be treated as a Class 9 Convenience Class Claim, the Estimated Recovery for all holders of Convenience Class Claims would drop from 49.3% to 33.0%. The Estimated Recovery for holders of Convenience Class Claims may also decrease if the Camp Business Debtors are not successful in their objections to the Disputed Unsecured MCA Claims and the holders of such Claims elect to be treated as a Convenience Class Claim.

(d) such other treatment rendering such holder's Allowed Other Secured Claim Unimpaired;

- **Other Priority Claims**: payment in full in Cash of such holder's Allowed Other Priority Claim from the Liquidation Trustee or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired;

- **Disputed Prepetition Secured Loan Claims**: if Allowed, payment in full in Cash from the proceeds of the Sale Transactions or such other treatment as determined by an order of the Bankruptcy Court;

- **Mishmeret Prepetition Secured Claims**: the Prepetition Obligations, including any portion constituting a Lender Deficiency Claim, are Allowed in the aggregate principal amount of $98,162,349 as of the Petition Date, plus, without duplication, all accrued and unpaid postpetition interest, fees, costs, expenses, charges, premiums, and other amounts owing under the documents governing the Prepetition Obligations, reduced by the $19,916,170 held by the Prepetition Secured Parties and associated credits and applied in reduction of the Prepetition Obligations; Mishmeret shall receive the remaining proceeds of the Sale Transactions relating to the Mishmeret Collateral Pool Debtors, after payment of any Allowed Disputed Prepetition Secured Loan Claims in Class 4. The unsecured portion of the Prepetition Obligations shall constitute Lender Deficiency Claims, classified in Class 8, but shall not be entitled to any distribution from the Settlement Fund. The Settlement Fund was contributed from amounts otherwise recoverable on account of the Mishmeret Prepetition Secured Claims and shall not increase any Lender Deficiency Claim;

- **Disputed Secured MCA Claims**: if Allowed, after payment of the Mishmeret Prepetition Secured Claims or other senior claims on the applicable Collateral, payment in full in Cash from the proceeds of the Sale Transactions or such other treatment as determined by an order of the Bankruptcy Court;

- **Disputed Unsecured MCA Claims**: if Allowed, its pro rata share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their pro rata share of the Liquidation Trust Assets. Disputed Unsecured MCA Claims are classified separately from General Unsecured Claims because the Camp Business Debtors dispute the characterization, amount and allowability of the MCA Loans, as described in Sections 2.2.2 and 2.4.8;

- **General Unsecured Claims**: its pro rata share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their pro rata share of the Liquidation Trust Assets. In addition, holders of Allowed General Unsecured Claims (other than Lender Deficiency Claims) may receive distributions from the Settlement Fund, as determined by the Committee Successor in its sole discretion, which distributions are in addition to, and shall not reduce, any distribution on account of Beneficial Trust Interests;

- **Convenience Class Claims**: Except to the extent that a holder of an Allowed Convenience Class Claim by amount or election agrees to less favorable treatment, its pro rata share of $2 million, payable from the Settlement Fund, in Cash, on the Effective Date or as soon as reasonably practicable thereafter; *provided*, that to the extent that a holder of a Convenience Class Claim against a Camp Business Debtor holds any joint and several liability claims, guaranty claims, or other similar claims against any other Camp Business Debtor arising from or relating to the same obligations or liability as such Convenience Class Claim, such holder shall only be entitled to a distribution on one Convenience Class Claim against the Camp Business Debtors in full and final satisfaction of all such Claims. A Convenience Class Claim is (a) an Allowed General Unsecured Claim in an amount not to exceed $500,000 or (b) an Allowed Disputed Unsecured MCA Claim or Allowed General Unsecured Claim whose holder elects on its ballot to treat such Claim as a Convenience Class Claim by reducing such Claim to $500,000. Any election to reduce a Class 7 or Class 8 Claim to $500,000 for treatment as a Class 9 Convenience Class Claim will be effective only if the Holder votes to accept the Plan. Based on the October 7, 2026, claims register, the $500,000 Convenience Class threshold captures 143 holders of General Unsecured Claims totaling approximately $4.06 million in the aggregate;

- **Subordinated Securities Claims**: no distribution under the Plan; and

- **Interests**: no distribution under the Plan, and all Interests shall be cancelled, released, and extinguished.

The Camp Business Debtors believe that the Plan is in the best interest of the Estates and urge such holders to vote to accept the Plan.

## C. The Adequacy of this Disclosure Statement

Before soliciting acceptances of a proposed plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a written disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of a plan. The Camp Business Debtors submit this Disclosure Statement in accordance with such requirements. This Disclosure Statement includes, without limitation, information about:

- the Camp Business Debtors' corporate history, structure, business operations, and prepetition capital structure and indebtedness (Sections 2.1 & 2.2);

- the events leading to the Chapter 11 Cases (Section 2.3);

- the Camp Business Debtors' prepetition restructuring efforts (Section 2.3);

- the significant pleadings Filed in the Chapter 11 Cases and certain relief granted by the Bankruptcy Court in connection therewith (Section 2.4);

- the classification and treatment of Claims and Interests under the Plan, including identification of the holders of Claims entitled to vote on the Plan, the procedures for voting, and projected recoveries;
- the method of distribution of any recoveries that may be available to holders of Claims pursuant to the Plan and other significant aspects of the Plan;
- the statutory requirements for confirming the Plan (Section 1.2);
- certain United States federal income tax consequences of the Plan (Section 5); and
- certain risk factors that holders of Claims should consider before voting to accept or reject the Plan and information regarding alternatives to Confirmation of the Plan (Sections 4 and 6).

In light of the foregoing, the Camp Business Debtors believe that this Disclosure Statement contains "adequate information" to enable a hypothetical reasonable investor to make an informed judgment about the Plan and complies with section 1125 of the Bankruptcy Code.

The Plan and all documents to be executed, delivered, assumed, and/or performed in connection with the Consummation of the Plan, including the documents to be included in the Plan Supplement, are subject to revision and modification from time to time prior to the Effective Date (subject to the terms of the Plan).

**D. Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Camp Business Debtors' rights in respect of any Unimpaired Claims or Interests, including all rights of the Camp Business Debtors in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests.

**E. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims, determined without including acceptance of the Plan by any insider. The Camp Business Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Camp Business Debtors reserve the right to modify the Plan in accordance with Article IX of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**F. Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes**

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed

eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

## G. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## H. Releases, Exculpation, and Injunction

**Debtor Release**. Under Article VII.C of the Plan, as of the Effective Date, the Camp Business Debtors and their Estates release each Released Party (Mishmeret, the Prepetition Secured Parties, the DIP Lenders, and each of their Related Parties) from all Claims and Causes of Action relating to the Camp Business Debtors, the Chapter 11 Cases, and the other matters described therein, other than post-Effective Date obligations under the Plan, any Retained Causes of Action against any Entity other than a Released Party, any Claim or Cause of Action against any Excluded Party, and any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order. Separately, Article IV.S of the Plan provides that no release under the Plan impairs any intercompany Claim or Cause of Action of the Camp Business Debtors preserved thereunder.

**Third-Party Release**. Under Article VII.D of the Plan, each Releasing Party releases each Released Party from the Claims and Causes of Action described therein. Releasing Parties include, among others, (a) holders of Claims that vote to accept or reject the Plan, (b) holders of Claims or Interests that are deemed to accept or reject the Plan or that abstain from voting, and, in the case of both (a) and (b), who do not affirmatively opt out of the releases, and (c) each Related Party of the foregoing; *provided, however*, that (y) notwithstanding anything to the contrary in the Plan, this Disclosure Statement, any ballot or opt-out form, or the Confirmation Order, no Released Party shall be a Releasing Party, in any capacity, including as a holder of a Mishmeret Prepetition Secured Claim, DIP Claim, DIP Roll-Up Claim, Lender Deficiency Claim, or General Unsecured Claim, and regardless of whether such Released Party votes to accept or reject this Plan, is deemed to accept or reject this Plan, abstains from voting, or fails to opt out of the releases provided by this Plan, or is a Related Party of any Released Party, and (z) no release given by a Releasing Party (including any release given by or through any Related Party under clause (c)) shall release any Claim or Cause of Action against any Excluded Party. **IF YOU DO NOT WISH TO GRANT THE THIRD-PARTY RELEASE, YOU MUST AFFIRMATIVELY OPT OUT IN ACCORDANCE WITH THE INSTRUCTIONS ON YOUR BALLOT OR OPT-OUT FORM. YOU MAY OPT OUT OF THE THIRD-PARTY RELEASE REGARDLESS OF WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN, ABSTAIN FROM VOTING, OR ARE DEEMED TO ACCEPT OR REJECT THE PLAN.** An opt-out election will not affect the counting of a holder's vote to accept or reject the Plan or such holder's treatment under the Plan. The third-party release does not release any holder of Mishmeret Prepetition Secured Claims that has asserted Claims against the Debtors' Estates as part of a putative class in

the *Proxima Investment Management Ltd. v. SIMAD Holdings Ltd.*, *et al*. matter pending in the District Court of Tel Aviv-Jaffa (Economic Division), Class Action No. 88654-05-26.

**Exculpation**. Under Article VII.F of the Plan, the Exculpated Parties (the Camp Business Debtors and their representatives and agents who served during the Chapter 11 Cases, the Creditors' Committee and its members, Assaf Ravid, solely as Chief Restructuring Officer, Daniel Sasson, solely as Associate Restructuring Officer, the other Professional Persons (as defined in the Final Mishmeret DIP Order), and B. Riley Securities, Inc., solely for its role as financial advisor to the Camp Business Debtors between the Petition Date and June 8, 2026, but excluding any Excluded Party, any DAMIS Debtor, Michael Shabsels, and David Shabsels) are exculpated from Exculpated Claims arising from the Petition Date through the closing of the Chapter 11 Cases, except for liability resulting from gross negligence, fraud, or willful misconduct. The exculpation also covers Assaf Ravid, solely as Chief Restructuring Officer, for acts taken in contemplation of the Chapter 11 Cases from his appointment on June 2, 2026 through the Petition Date. In addition, under Article VII.J.10 of the Plan, each individual who served as an independent director of SIMAD Holdings Ltd. during the Chapter 11 Cases (excluding Michael Shabsels, David Shabsels, or any person described in clauses (f) or (g) of the definition of "Excluded Parties" with respect to each of them) is an Exculpated Party solely with respect to acts or omissions from the Petition Date until the Effective Date, and the Plan otherwise does not create, enlarge, or reduce any rights of or against such directors.

**Injunction**. The Plan does not discharge the Camp Business Debtors. Under Article VII.G of the Plan, holders of released or exculpated Claims and Causes of Action are permanently enjoined from pursuing them, and no Person may pursue a Claim or Cause of Action related to a matter subject to the third-party release against the Camp Business Debtors, the Liquidation Trust, the Exculpated Parties, or the Released Parties without the Bankruptcy Court first determining that it is colorable and authorizing it. Nothing in the injunction restricts the Liquidation Trust or the Committee Successor from prosecuting Retained Causes of Action.

**Excluded Parties**. The Plan defines "Excluded Parties" to include, among others, (a) each current and former insider of any Debtor, (b) each current and former direct or indirect holder of any equity security or other Interest in any Debtor, (c) Michael Shabsels, (d) David Shabsels, (e) each of the DAMIS Debtors, their respective estates, and any trustee, liquidating trust, plan administrator, or other successor to or representative of any DAMIS Debtor or its estate, (f) family members, Affiliates, trusts, nominees, and controlled Entities of any of the foregoing, and (g) transferees of any of the foregoing, but excluding Assaf Ravid, solely as Chief Restructuring Officer, and Daniel Sasson, solely as Associate Restructuring Officer. Under Article VII.J of the Plan, no Excluded Party is a Released Party (whether in its own right or as a Related Party of another Entity) or an Exculpated Party, and no Excluded Party is entitled to the benefit of any release, exculpation, injunction, gatekeeping provision, or bar order under the Plan or the Confirmation Order. All Claims and Causes of Action against Excluded Parties are Retained Causes of Action that vest in the Liquidation Trust, and the Liquidation Trust may pursue them, including against any D&O Liability Insurance Policy, without first obtaining Bankruptcy Court authorization. Nothing in the Settlement, the 9019 Settlement Order, the Final Mishmeret DIP Order, or the Sale Orders releases or impairs any such Claim or Cause of Action. In addition, no Claim or Interest held by an Excluded Party is Allowed under the Plan; all such Claims and Interests remain Disputed and subject to objection, setoff, disallowance, equitable subordination,

and recharacterization, and indemnification, contribution, reimbursement, and advancement obligations owed to Excluded Parties (other than certain independent director indemnification obligations in Article VII.J.10 of the Plan) will be rejected and will not be treated as Administrative Claims. However, under Article IV.H of the Plan, certain indemnification obligations of SIMAD Holdings Ltd. to its independent directors are not rejected but are not assumed; any resulting Claim is a prepetition Claim, is not an Administrative or priority Claim, is not payable from the Professional Fee Escrow, the Approved Budget, the Settlement Fund, or any reserve, and, if Allowed, is a General Unsecured Claim or Subordinated Securities Claim. Article VII.J controls over any conflicting provision of the Plan or related documents.

## I. The Settlement and the Settlement Fund

On the Effective Date, the $13 million Settlement Fund contributed by the Prepetition Secured Parties will be transferred from the GUC Trust Account to the Settlement Fund Account maintained by the Liquidation Trust. The Prepetition Secured Parties funded the Settlement Fund into the GUC Trust Account contemporaneously with, and as a condition to, any distribution on account of the Roll-Up Obligations. The Settlement Fund is not property of the Estates, is not a Liquidation Trust Asset, is free and clear of all Liens and Claims, and is not available to satisfy any Lender Deficiency Claim. Of the Settlement Fund, $2 million will be used to make the distribution to holders of Allowed Convenience Class Claims in Class 9. The Committee Successor has sole and absolute discretion over the use of the remainder of the Settlement Fund, subject to the 9019 Settlement Order, including to make distributions to holders of Beneficial Trust Interests (other than on account of any Lender Deficiency Claim) in such amounts, at such times, and on such basis as it determines, and such distributions are not subject to the Bankruptcy Code's distribution priorities. Consistent with the 9019 Settlement Order, no portion of the Settlement Fund may be distributed on account of any unsecured deficiency claim of the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders. The Prepetition Secured Parties' obligation to cooperate in the investigation and prosecution of Causes of Action against third parties runs to the Liquidation Trust and, if the Liquidation Trustee requests such cooperation, the Prepetition Secured Parties will be reimbursed for their documented fees, costs, and expenses of providing it.

## J. The Liquidation Trust and Limited Consolidation

On the Effective Date, the Liquidation Trust will be created for the benefit of holders of Beneficial Trust Interests, and the Liquidation Trust Assets, including the Retained Causes of Action, will be transferred to it. The Liquidation Trustee will be selected as provided in the Plan, namely, jointly by the Camp Business Debtors and the Creditors' Committee and, if the Prepetition Secured Parties hold no Lender Deficiency Claims, in consultation with the Prepetition Secured Parties (or, if the Prepetition Secured Parties hold any Lender Deficiency Claims, jointly with the Prepetition Secured Parties), and its identity and compensation will be disclosed in the Plan Supplement. The Liquidation Trustee will, among other things, reconcile and object to Claims, prosecute or settle Retained Causes of Action (including Causes of Action against the Debtors' insiders and equity holders, Michael Shabsels, and David Shabsels), and make distributions. The Liquidation Trust will dissolve no later than five (5) years after the Effective Date, subject to extension by the Bankruptcy Court. The Liquidation Trust is intended to be treated as a grantor trust for federal income tax purposes.

The Plan also provides for the limited consolidation of the Camp Business Debtors' Estates solely for purposes of voting and distributions, such that each Claim will be treated as a single Claim against the Camp Business Debtors and intercompany guarantees will be eliminated. The limited consolidation does not otherwise affect the Camp Business Debtors' legal and corporate structures and does not affect the Settlement Fund.

# I. INTRODUCTION

## 1.1 PURPOSE OF THE DISCLOSURE STATEMENT

The Camp Business Debtors provide this Disclosure Statement to the Office of the United States Trustee and to all of the Camp Business Debtors' known holders of Claims and Interests pursuant to section 1125(b) of the Bankruptcy Code for the purpose of seeking confirmation of the Plan. A copy of the Plan is attached hereto as **Exhibit A**. A hearing on the final approval of the Disclosure Statement and Confirmation of the Plan will be held on **[[●], 2026 at [●]] (ET)**.

The Camp Business Debtors strongly urge you to read this Disclosure Statement in its entirety before making any judgment about voting to either accept or reject the Plan because the Disclosure Statement contains a summary of the Plan and important information concerning the Camp Business Debtors' history and operations. The Disclosure Statement also provides information regarding alternatives to the Plan. Summaries of the Plan are included herein for the purpose of seeking Confirmation of the Plan and soliciting acceptances of the Plan and may not be relied upon for any purpose other than to make a judgment with respect to voting to either accept or reject the Plan.

**PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE CAMP BUSINESS DEBTORS' BOOKS AND RECORDS. STATEMENTS MADE IN THE DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN. ALTHOUGH THE CAMP BUSINESS DEBTORS HAVE ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, THE CAMP BUSINESS DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ERROR. UNLESS OTHERWISE INDICATED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.**

**NO STATEMENT CONCERNING THE CAMP BUSINESS DEBTORS OR THE VALUE OF THE CAMP BUSINESS DEBTORS' ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR ANY OTHER DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. THE CAMP BUSINESS DEBTORS ARE NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION, OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED HEREIN AND IN THE PLAN.**

## 1.2 CONFIRMATION OF THE PLAN

**1.2.1 <u>Requirements</u>**. The requirements for Confirmation of the Plan are set forth in section 1129 of the Bankruptcy Code. The following summarizes some of the pertinent requirements:

i. **<u>Acceptance by Impaired Classes</u>**. Except to the extent that the cram down provisions of section 1129(b) of the Bankruptcy Code may be invoked, each Class of Claims and each Class of Interests must either accept the Plan or be deemed to accept the Plan because the Claims or Interests of such Class are not Impaired.

ii. **<u>Feasibility</u>**. The Bankruptcy Court is required to find that the Plan is likely to be implemented and that parties required to perform or pay monies under the Plan will be able to do so.

iii. **<u>The "Best Interest" Test</u>**. The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court find that the Plan is in the "best interest" of all Creditors and Interest holders. To satisfy this requirement, the Bankruptcy Court must determine that each holder of a Claim against, or Interest in, the Camp Business Debtors: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount such holder would receive if the Camp Business Debtors' property were liquidated under Chapter 7 of the Bankruptcy Code on such date.

iv. **<u>"Cramdown" Provisions</u>**. The Bankruptcy Code contains provisions for confirmation of the Plan even if the Plan is not accepted by all Impaired Classes, as long as at least one Impaired Class of Claims has accepted it. These so-called "cramdown" provisions are set forth in section 1129(b) of the Bankruptcy Code. A plan may be confirmed under the cramdown provisions if, in addition to satisfying all other requirements of section 1129(a) of the Bankruptcy Code, it (i) "does not discriminate unfairly," and (ii) is "fair and equitable," with respect to each class of claims or interests that is impaired under, and has not accepted, such plan. As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have specific meanings unique to bankruptcy law.

In general, the cramdown standard requires that a dissenting class receive full compensation for its allowed claim or interests before any junior class receives any distribution. More specifically, section 1129(b) of the Bankruptcy Code provides that a plan can be confirmed under that section if: (a) with respect to a secured class, (i) the holders of such claims retain the liens securing such claims to the extent of the allowed amount of such claims and that each holder of a claim of such class receive deferred cash payments equaling the allowed amount of such claim as of the plan's effective date or (ii) such holders realize the indubitable equivalent of such claims; (b) with respect to an unsecured claim, either (i) the impaired unsecured creditor must receive property of a value equal to the amount of its allowed claim, or (ii) the holders of claims and interests that are junior to the claims of the dissenting class may not receive any property under the plan; or (c) with respect to a class of interests, either (i) each holder of an interest of such class must receive or retain on account of such interest property of a value, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest, or (ii) the holder of

any interest that is junior to the interest of such class may not receive or retain any property on account of such junior interest.

The "fair and equitable" standard, also known as the "absolute priority rule," requires, among other things, that unless a dissenting unsecured class of claims or a class of interests receives full compensation for its allowed claims or allowed interests, no holder of claims or interests in any junior class may receive or retain any property on account of such claims or interests. With respect to a dissenting class of secured claims, the "fair and equitable" standard requires, among other things, that holders either (i) retain their liens and receive deferred cash payments with a value as of the plan's effective date equal to the value of their interest in property of the estate, or (ii) otherwise receive the indubitable equivalent of these secured claims. The "fair and equitable" standard has also been interpreted to prohibit any class senior to a dissenting class from receiving under a plan more than 100% of its allowed claims. The requirement that a plan not "discriminate unfairly" means, among other things, that a dissenting class must be treated substantially equally with respect to other classes of equal rank.

Because certain Classes are deemed to have rejected the Plan, the Camp Business Debtors will request confirmation of the Plan, as it may be modified from time to time, under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code. The Camp Business Debtors will also seek confirmation of the Plan over the objection of individual holders of Claims who are members of an accepting Class.

The Camp Business Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, any exhibit or schedules thereto, or any Plan document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary. The Camp Business Debtors believe that the Plan will satisfy the "cramdown" requirements of section 1129(b) of the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court will determine that the Plan meets the requirements of section 1129(b) of the Bankruptcy Code.

**1.2.2 Procedure**. To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the requirements of section 1129 of the Bankruptcy Code. The Bankruptcy Court has set **[●], 2026 at [●] (ET)** for the combined hearing for final approval of this Disclosure Statement and confirmation of the Plan (the "Confirmation Hearing").

**1.2.3 Objections to Final Approval of the Disclosure Statement and Confirmation of the Plan**. Any party-in-interest may object to the final approval of the Disclosure Statement and/or to confirmation of the Plan and appear at the Confirmation Hearing to pursue any such objection. The Bankruptcy Court has set [●]**, 2026 at 4:00 p.m. (ET)**, as the deadline for filing and serving any objections to the final approval of the Disclosure Statement and/or to confirmation of the Plan for Solicitation Packages served by the Solicitation Deadline. Any objections must be filed with the Bankruptcy Court at the following address:

U.S. Bankruptcy Court for the District of New Jersey
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Trenton, NJ 08608

With a copy served upon the following parties:

(i) counsel to the Camp Business Debtors, Cole Schotz P.C., 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Warren A. Usatine, David M. Bass, Felice R. Yudkin, and Daniel J. Harris;

(ii) co-counsel to Mishmeret Trust Company Ltd., as DIP agent and Prepetition Trustee, Chapman & Cutler LLP, 1270 Avenue of the Americas, 30th Floor, New York, New York 10020, Attn: Michael Friedman, Yuliya Zahoroda, and Jorge Coronel; and Chapman & Cutler LLP, 320 South Canal Street, Chicago, Illinois 60606, Attn: Stephen R. Tetro II, and Riker Danzig LLP, 7 Giralda Farms, Suite 250, Madison, New Jersey 07940, Attn: Joseph L. Schwartz and Daniel A. Bloom;

(iii) the Office of the United States Trustee, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102, Attn. Jeffrey M. Sponder; and

(iv) co-counsel to the Creditors' Committee, McDermott Will & Schulte LLP, One Vanderbilt Avenue, New York, New York 10017, Attn: Darren Azman, Kristin K. Going, and Rachel Biblo Block; and Robinson & Cole LLP, 666 Third Avenue, 20th Floor, New York, New York 10017, Attn: Evan M. Lazerowitz.

Service shall be made through the CM/ECF system, with courtesy copies by email, other electronic form as provided under the Local Rules, or by hard copy via hand delivery, first class or other mail or delivery.

**1.2.4 Effect of Confirmation**. Except as otherwise provided in the Plan, any Asset Purchase Agreement(s), Sale Order(s), or the Confirmation Order, on the Effective Date the Liquidation Trust Assets will vest in the Liquidation Trust, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of creditors and interest holders, subject to the provisions of the Plan (including the continuation of the Liens securing the DIP Claims and the Mishmeret Prepetition Secured Claims until payment in full of such Claims). The Settlement Fund, the Liquidation Trust Claims Reserve, and the Professional Fee Claim Reserve are not Liquidation Trust Assets. Confirmation serves to make the Plan binding upon the Camp Business Debtors, all Creditors, Interest holders, and other parties-in-interest, regardless of whether they cast a Ballot to accept or reject the Plan.

### 1.3 VOTING ON THE PLAN[9]

**1.3.1 <u>Impaired Claims or Interests</u>**. Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims or Interests in Classes "Impaired" by the Plan may vote on the Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims or Interests may be "Impaired" if the Plan alters the legal, equitable, or contractual rights of the holders of such Claims or Interests treated in such Class. The holders of Claims or Interests not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. The holders of Claims or Interests in any Class which will not receive any payment or distribution or retain any property pursuant to the Plan are deemed to reject the Plan, unless they have agreed otherwise, and, in either event, do not have the right to vote. This Disclosure Statement is being distributed to all known holders of Claims classified as Class 5 (Mishmeret Prepetition Secured Claims), Class 6 (Disputed Secured MCA Claims), Class 7 (Disputed Unsecured MCA Claims), Class 8 (General Unsecured Claims), and Class 9 (Convenience Class Claims), all of which are entitled to vote to accept or reject the Plan (the "<u>Voting Classes</u>" and each individually, a "<u>Voting Class</u>").

**1.3.2 <u>Eligibility</u>**. Except as otherwise provided below, in order to vote on the Plan, each holder of a Claim in the Voting Classes must have timely filed or been assigned a timely filed Proof of Claim (including a Proof of Claim deemed timely filed by an order of the Bankruptcy Court), unless it holds a Claim that is scheduled by the Camp Business Debtors and is not identified as disputed, unliquidated, or contingent on the Schedules and Statements (as defined below).

Only the following holders of Claims in the Voting Classes are entitled to vote:

a. holders of Claims for which Proofs of Claim have been filed, as reflected on the Claims Register as of [●], 2026 (the "<u>Record Date</u>"), except as otherwise ordered by the Bankruptcy Court with respect to a Claim timely filed after that date;

b. holders of Claims that are listed in the Schedules and Statements, with the exception of those Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled Claims that have been superseded by a filed Proof of Claim);

c. holders whose Claims arise pursuant to an agreement or settlement with the Camp Business Debtors, as reflected in a document filed with the Bankruptcy Court, in a Final Order of the Bankruptcy Court, or in a document executed by the Camp Business Debtors pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a Proof of Claim has been filed; and

d. the assignee of any transferred or assigned Claim, only if such transfer or assignment: (i) has been fully effectuated pursuant to the procedures dictated by

---

[9] Capitalized terms used but not defined in this Section 1.3 shall have the meanings ascribed to such terms in the Plan or the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement of the Camp Business Debtors; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice, and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief*, as applicable.

Bankruptcy Rule 3001(e) and (ii) is reflected on the Claims Register on or before the Record Date.

**1.3.3 <u>Binding Effect</u>**. Whether a Creditor or Interest holder votes on the Plan or not, such Person or Entity will be bound by the terms of the Plan if the Plan is confirmed by the Bankruptcy Court. Absent timely submission of a Ballot in accordance with the solicitation procedures, a Creditor will not be included in the vote: (i) for purposes of accepting or rejecting the Plan or (ii) for purposes of determining the number of Persons voting on the Plan.

**1.3.4 <u>Procedure</u>**. Members of Class 1 (Secured Tax Claims), Class 2 (Other Secured Claims), Class 3 (Other Priority Claims), and Class 4 (Disputed Prepetition Secured Loan Claims) are Unimpaired and deemed to accept the Plan. Members of Class 5 (Mishmeret Prepetition Secured Claims) are entitled to vote to accept or reject the Plan, *provided, however*, that, to the extent the amount of the remaining proceeds from the sale of the Mishmeret Collateral Pool Debtors is sufficient to satisfy such Allowed Mishmeret Prepetition Secured Claims in full, Mishmeret shall be Unimpaired and shall be conclusively presumed to have accepted the Plan. Holders of Class 6 (Disputed Secured MCA Claims) are entitled to vote to accept or reject the Plan; *provided, however*, that, to the extent the amount of the remaining proceeds from the Sale Transactions is sufficient to satisfy such Allowed Disputed Secured MCA Claims in full, the Disputed Secured MCA Claims shall be Unimpaired and shall be conclusively presumed to have accepted the Plan. Solely for purposes of voting in Class 8, and not for purposes of allowance or distribution, any Lender Deficiency Claim shall be temporarily allowed in the amount of $[$17,758,250], as agreed by the Camp Business Debtors, Mishmeret, and the Creditors' Committee or, absent agreement, as estimated by the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a). Members of Class 7 (Disputed Unsecured MCA Claims), Class 8 (General Unsecured Claims), and Class 9 (Convenience Class Claims) may vote to accept or reject the Plan. Claims asserted by MCA Lenders on account of MCA Loans will be tabulated solely in Class 6 or Class 7, as applicable. For voting purposes, a General Unsecured Claim will be tabulated in Class 9 if the amount of such Claim, as determined under the tabulation rules set forth below, does not exceed $500,000. A Class 7 or Class 8 Holder that elects Class 9 treatment for a Claim in excess of $500,000 must also vote to accept the Plan for that election to be effective; otherwise, the Claim and any rejection vote remain in the original Class. Members of Class 10 (Subordinated Securities Claims) and Class 11 (Interests) are deemed to reject the Plan. Accordingly, holders of Claims or Interests in Classes 1, 2, 3, 4, 10, and 11 are not entitled to vote on the Plan. A holder in a Voting Class that has not received a Ballot may contact Kroll to request one. A holder whose Claim is subject to a dispute concerning its secured status or classification may seek a determination from the Bankruptcy Court concerning its right to cast a Ballot in any potentially applicable Voting Class. In order for your vote to count, holders of Claims in the Voting Classes must complete, date, sign and properly return the enclosed Ballot (please note that envelopes have been included with the Ballot) by first-class mail, overnight mail, or hand delivery to:

**First-Class Mail, Overnight Mail, or Hand Delivery**
SIMAD Holdings Ltd., Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

Alternatively, holders of Claims in the Voting Classes may submit the Ballot via electronic online transmission solely through the customized online balloting portal on the Camp Business Debtors' case website, https://restructuring.ra.kroll.com/SIMAD, and clicking on the "Submit E-Ballot" section of the website (the "E-Ballot Portal") on or before the Voting Deadline. Holders of Claims submitting the Ballot electronically via the E-Ballot Portal should not also submit a ballot by mail. If multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last properly completed, valid Ballot timely received will supersede and revoke any prior Ballot.

**BALLOTS MUST BE RECEIVED BY KROLL BY THE VOTING DEADLINE. BALLOTS SENT BY FACSIMILE, ELECTRONIC MAIL, OR OTHER FORM OF ELECTRONIC TRANSMISSION, EXCEPT FOR THE CAMP BUSINESS DEBTORS' E-BALLOT PORTAL, OR, SOLELY WITH RESPECT TO MASTER BALLOTS, BY EMAIL AS EXPRESSLY PERMITTED ON THE MASTER BALLOT, ARE NOT ALLOWED AND WILL NOT BE COUNTED. HAVING YOUR BALLOT POST-MARKED BY THE VOTING DEADLINE IS NOT SUFFICIENT. RATHER, IT MUST BE RECEIVED BY KROLL ON OR BEFORE THE VOTING DEADLINE.**

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that Ballots for the acceptance or rejection of the Plan must be **received** by Kroll using an approved submission method described above on or before **4:00 p.m. (ET) on [●], 2026**. After the Voting Deadline, you may not change your vote, except for cause shown to the Bankruptcy Court after notice and hearing. The Camp Business Debtors may extend the Voting Deadline, after consultation with the Creditors' Committee, by filing a notice of such extension with the Bankruptcy Court.

In tabulating votes, the following hierarchy will be used to determine the amount of the Claim associated with each vote:

a) if a Claim is deemed Allowed under the Plan, an order of the Bankruptcy Court or a stipulated agreement between the parties, such Claim will be temporarily allowed for voting purposes in the deemed allowed amount set forth therein; [*provided*, that any Lender Deficiency Claim shall be temporarily allowed for voting in Class 8 solely as set forth above];

b) if a Claim for which a Proof of Claim has been timely filed for unknown or undetermined amounts, or is wholly unliquidated, or contingent (as determined on the face of the Claim or after a reasonable review of the supporting documentation by Kroll) and such Claim has not been Allowed, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00 unless a different amount is established by agreement or order of the Bankruptcy Court; *provided*, *however*, that any liquidated, non-contingent portion of such Claim shall be temporarily allowed for voting purposes in such amount;

c) if a Claim, for which a Proof of Claim was timely filed, is listed in the Camp Business Debtors' filed Schedules as contingent, unliquidated or disputed in part, such Claim is temporarily allowed for voting purposes only, and not for purposes of allowance or distribution in the liquidated, non-contingent, undisputed amount set forth in such Proof of Claim, unless such Claim is subject to an objection filed in accordance with subsection (h) below;

d) if a Claim for which a Proof of Claim was timely filed or was listed in the Camp Business Debtors' filed Schedules in an amount that is liquidated, non-contingent, and undisputed, such Claim is allowed for voting in the amount set forth on the Proof of Claim or the Camp Business Debtors' filed Schedules;

e) if a Claim has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or distribution;

f) if a Claim is listed in the Camp Business Debtors' Schedules as contingent, unliquidated, disputed or for $0.00 and a Proof of Claim was not (i) filed by the applicable bar date for the filing of Proofs of Claim established by the Bankruptcy Court; or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline; such Claim shall be disallowed for voting purposes; *provided, however,* if the applicable bar date has not yet passed, such Claim shall be entitled to vote at $1.00, subject to a different amount being allowed for voting purposes by order of the Bankruptcy Court;

g) Proofs of Claim filed for $0.00 are not entitled to vote;

h) if the Camp Business Debtors have Filed and served an objection or request for estimation as to a Claim at least fourteen (14) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a)(4); *provided*, *however*, that if such objection seeks only to reduce or reclassify such Claim (a "reduce and allow" objection), such Claim shall be temporarily allowed for voting purposes in the reduced amount and/or in the Class set forth in such objection;

i) for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one Claim against the Camp Business Debtors in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan; *provided* that, for the dollar-amount requirement of section 1126(c), the amounts of separate, nonduplicative Claims held by such creditor shall be aggregated;

j) notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased Claims arising from the same underlying obligation within the same Voting Class shall only be entitled to vote on account of a single Claim in such Class in the amount of the largest such duplicate Claim, regardless of whether the Camp Business Debtors have objected to such duplicate Claims;

k) if a Proof of Claim has been amended by a later Proof of Claim that is filed on or prior to the Record Date, the later filed amending Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Claim shall be disallowed for voting purposes, regardless of whether the Camp Business Debtors have objected to such amended Claim. Except as otherwise ordered by the Bankruptcy Court, any amendments to Proof of Claim after

the Record Date shall not be considered for purposes of these tabulation rules. For the avoidance of doubt, and notwithstanding the foregoing, a holder whose Proof of Claim is timely filed after the Record Date but on or before the applicable Amended Schedules Bar Date or Rejection Damages Bar Date shall be served with a Solicitation Package and shall be entitled to vote such Claim in accordance with these tabulation rules; and

l) consistent with the limited consolidation of the Camp Business Debtors' Estates for voting purposes, Claims asserted against more than one Camp Business Debtor on account of the same underlying obligation (including guaranty and joint and several Claims) shall be counted as a single Claim in the applicable Class, in the amount of such underlying obligation.

To the extent Claims in a Voting Class are subject to an objection other than a "reduce and allow" objection that is filed with the Bankruptcy Court and served on the affected holder on or prior to fourteen (14) days before the Voting Deadline, the holder of such Claims shall not be entitled to vote to accept or reject the Plan unless one or more of the following has occurred no later than two (2) business days prior to the deadline for Kroll to file the Voting Declaration (as defined below) or such later time as the Bankruptcy Court may permit (each, a "Resolution Event")

a) an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

b) an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

c) a stipulation or other agreement is executed between the holder of such Claim and the Camp Business Debtors, with notice to the Creditors' Committee, resolving the objection and allowing such Claim in an agreed upon amount;

d) a stipulation or other agreement is executed between the holder of such Claim and the Camp Business Debtors, with notice to the Creditors' Committee, temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount; or

e) the pending objection is voluntarily withdrawn by the objecting party.

Holders of Claims that are not entitled to vote because of a pending objection will receive a notice of non-voting status and an opt-out form. The holder of any such Claim may file a motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of its Claim for voting purposes no later than fourteen (14) days after service of the applicable objection, and Kroll shall provide such holder with a Ballot, which shall be counted only upon the occurrence of a Resolution Event.

Kroll will file a declaration certifying the results of the tabulation of Ballots (the "Voting Declaration") no later than seven (7) days before the Confirmation Hearing. The Voting Declaration will (i) identify any Ballots that were not counted and the reasons therefor and (ii)

separately identify any Ballots cast by insiders of the Camp Business Debtors. Unless otherwise ordered by the Bankruptcy Court, any Ballot that is unsigned, or that does not indicate acceptance or rejection of the Plan or indicates both acceptance and rejection, will not be counted as a vote; provided, that a valid opt-out election made on any such Ballot that is timely submitted will be honored.

## 1.4 ACCEPTANCE OF THE PLAN

**1.4.1** **Creditor Acceptance**. As a creditor, your acceptance of the Plan is important. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must accept the Plan, or the Plan must qualify for cramdown of any non-accepting Class of Claims pursuant to section 1129(b) of the Bankruptcy Code. At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Plan. To the extent you hold a claim in Class 5 (Mishmeret Prepetition Secured Claims), Class 6 (Disputed Secured MCA Claims), Class 7 (Disputed Unsecured MCA Claims), Class 8 (General Unsecured Claims), or Class 9 (Convenience Class Claims), you are urged to complete, date, and sign the enclosed Ballot and promptly return it by mail, hand delivery, or the E-Ballot Portal. Please be sure to complete the Ballot properly and legibly identify the name of the Creditor. The amount of your Claim for voting purposes, as determined in accordance with the tabulation rules herein, will be set forth on your Ballot. If you identify a different Claim amount on your Ballot, your Claim will be counted for voting purposes in the amount determined under such tabulation rules, subject to Bankruptcy Rule 3018(a).

**1.4.2** **Cramdown Election**. As long as at least one Impaired Class votes to accept the Plan, excluding the votes of insiders, the Camp Business Debtors may attempt to invoke the "cramdown" provisions. Cramdown may be an available remedy, because the Camp Business Debtors believe that, with respect to each Impaired Class, the Plan is fair and equitable within the meaning of section 1129(b)(2) of the Bankruptcy Code and does not discriminate unfairly.

## 1.5 SOURCES OF INFORMATION

The information contained in this Disclosure Statement has been obtained from the Camp Business Debtors' books and records and from pleadings filed by the Camp Business Debtors and other parties-in-interest. Every reasonable effort has been made to present accurate information and such information is believed to be correct as of the date hereof. Any value given as to the Assets of the Camp Business Debtors is based upon an estimation of such value. You are strongly urged to consult with your financial, legal, and tax advisors to understand fully the Plan and the Disclosure Statement.

The financial information contained in this Disclosure Statement is given as of the date hereof, unless otherwise specified. The delivery of this Disclosure Statement does not, under any circumstance, imply that there has been no change in the facts set forth herein since such date. This Disclosure Statement is intended, among other things, to summarize the Plan and must be read in conjunction with the Plan and its exhibits, if any. If any conflict exists between the Plan and the Disclosure Statement, the terms of the Plan shall control.

# II. THE DEBTORS

## 2.1 THE DEBTORS' CORPORATE HISTORY, STRUCTURE, AND BUSINESS OPERATIONS AS OF THE PETITION DATE

2.1.1 **Corporate History**. The Debtors owned and operated one of the largest privately held networks of for-profit summer camps in the United States. The enterprise encompassed approximately thirty (30) camp properties, including overnight and day camps located primarily in New York, Pennsylvania, New Jersey, Maine, and North Carolina. The camps offered a diverse range of recreational, athletic, educational, arts, and specialty programming for children and teenagers. Over time, the SIMAD enterprise grew through the acquisition and ownership of numerous camp-related operating and real estate entities, ultimately serving approximately 20,500 children annually through its network of camps.

2.1.2 **Corporate Structure**. A chart illustrating the Debtors' organizational structure is attached hereto as **Exhibit B**.

2.1.3 **Business Operations**. The summer camps within the Camp Business Debtors' umbrella were previously known as: Camp Achim, Banner Day Camp, Blue Star Camps, Camp Chen-a-Wanda, Club Getaway, Country Roads Day Camp, Eagle's Landing Day Camp, Camp Echo, Camp Green Lane, Island Lake Camp, Kiwi Country Day Camp, Camp Lavi, Camp Lokanda, Malka, Meadowbrook Country Day Camp, Camp Mogen Avraham, Mohawk Day Camp, Rolling Hills Day Camp, and Summit Camp and Travel. Camp Chateaugay, Camp Mesorah and Pine Forest Camp, and the camps whose assets secured obligations to Bank of New Hampshire, were owned and operated by SIMAD Debtors that are not Camp Business Debtors and are not subject to the Plan. The Camp Business Debtors' camps captured a large and diversified audience through the various types of camp-options offered, such as camps focused on sports, academics, arts, technology, and religion. Each camp had its own unique character and internal culture. The camps were separately branded and operated independently, including through their own management team, individualized staff, distinct accounting departments, and dedicated operational infrastructure.

As detailed herein, each of the summer camps was sold to various buyers. The proceeds of the Sale Transactions consummated by the Camp Business Debtors have been or will be applied first to the DIP Claims and the Mishmeret Prepetition Secured Claims (as to the Mishmeret Collateral Pool Debtors) and to other Secured Claims in accordance with the Sale Orders and the Final Mishmeret DIP Order, with any remaining proceeds available to fund distributions under the Plan.

## 2.2 THE DEBTORS' PREPETITION CAPITAL STRUCTURE

### 2.2.1 Pre-Petition Secured Debt

#### A. The Series A Debentures

Prior to the Petition Date, in December 2025, SIMAD Holdings Ltd., a BVI holding company and the ultimate parent company of each of the Debtors, raised bonds on the Tel Aviv Stock Exchange.

These certain certificates of indebtedness (nonconvertible) that are publicly held (the "Debentures (Series A)") were offered to the public in Israel and are registered for trading on the Tel Aviv Stock Exchange. The Debentures (Series A) with a par value of NIS 620,000,000 (or approximately $211,600,000) bear a fixed annual interest rate of 7% and are not linked (principal and interest) to any index. In order to secure the Debtors' obligations towards certain Israeli Bondholders with respect to the Debentures (Series A), the Debtors pledged certain collateral in favor of the Bondholders and the Trustee for the Bondholders. The principal payments of the Debentures (Series A) were to be made annually on November 30 each year from 2026 through 2030. The interest of the Debentures (Series A) was to be paid semi-annually on May 31 and November 30 from 2026 through 2030. The Debtors defaulted in making the first interest payment of the Debentures (Series A) due on May 31, 2026. The principal amount of the outstanding Debentures (Series A) was approximately $214 million using the exchange rate as of the Petition Date. SIMAD Holdings Ltd., a Holding Company Debtor that is not a Camp Business Debtor, is the issuer of and primary obligor on the Debentures (Series A). The Mishmeret Collateral Pool Debtors pledged substantially all of their assets to secure the Prepetition Obligations. Pursuant to the Committee Settlement, the Prepetition Obligations are Allowed (including any portion constituting a Lender Deficiency Claim) in the aggregate principal amount of $98,162,349 as of the Petition Date plus, without duplication, all accrued and unpaid postpetition interest, fees, costs, expenses, charges, premiums, and other amounts owing under the document governing the Prepetition Obligations. The Prepetition Secured Parties hold $17,907,000 in a segregated account. That amount, together with associated credits, will reduce the Prepetition Obligations by $19,916,170.

## B. The Debtors' Other Secured Lenders

### 1. Wayne Bank

On or about August 8, 2017, Mesorahland LLC and Mesorahco LLC (the "Mesorah Debtors") entered into that certain Loan Agreement with Wayne Bank with a principal loan balance of approximately $3,733,140 as of the Petition Date. The Wayne Bank secured debt relating to the Mesorah Debtors was purchased by an entity affiliated with the purchaser of the Mesorah Debtors, DH1 Holdings LLC [Docket No. 551].

On or about December 7, 2022, Pine Forest Landco LLC and Pine Forest Campco LLC (the "Pine Forest Debtors") entered into that certain Loan Agreement with Wayne Bank for two (2) loans to be advanced to these entities. As of the Petition Date, the principal loan balance for the two (2) loans was approximately $13,834,962 and $4,558,550, respectively. This secured debt was assumed by the buyer of the Pine Forest Debtors, Pine Forest 1931 Holdings LLC, Pine Forest 1931, LLC, and Pine Forest 1931 Land, LLC (the "Pine Forest Buyers") pursuant to the order approving the sale of the Pine Forest Debtors to those entities [Docket Nos. 601, 788].

### 2. Visions Federal Credit Union

On June 14, 2024, RDM Camps, LLC and Visions Federal Credit Union ("Visions") allegedly entered into that certain loan facility consisting of, among other loan documents, that certain Promissory Note dated June 14, 2024 and that certain Security Agreement dated June 14, 2024 by and among Rocking Horse Ranch LandCo, Rocking Horse Ranch Operatingco LLC, and

RDM Camps, LLC as borrowers (the "Visions Loan"). On August 13, 2026, Visions filed a Proof of Claim asserting a secured claim against RDM Camps, LLC of $18,650,000 for "money loaned" to RDM Camps, LLC.

On September 24, 2026, the Debtors filed an adversary proceeding with respect to the Visions Loan seeking, among other things, to invalidate any liens and security interests granted to Visions in connection with the Visions Loan. Adv. Pro. No. 26-01439 (CMG). In light of the adversary proceeding and the Debtors' position set forth therein, the Visions Loan has been classified as a Disputed Prepetition Secured Loan Claim for purposes of the Plan (including distributions thereunder). On October 29, 2026, the Debtors filed a motion for summary judgment in the adversary proceeding seeking a determination that Visions does not hold a valid, perfected security interest in the assets of RDM Camps, LLC.

**3. Newtek (NBL SPV II, LLC)**

On or about June 30, 2025, certain of the SIMAD Debtors, IAFAOPERATINGCO, LLC; Belgrade Lakes Summer Camps LLC; Waukeela Operatingco LLC; Mainewekeelaco LLC; Poland Campco LLC; WM Camp, LLC; Camp Med-O-Lark, Inc.; and Banner Operatingco LLC, as "Borrower," allegedly entered into that certain Business Loan Agreement, pursuant to which Newtek Business Solutions Holdco 6, Inc. and/or NBL SPV II, LLC (together, "Newtek") funded the sum of $15,000,000 in accordance with the terms of the Business Loan Agreement (the "Newtek Loan"). On August 14, 2026, NBL SPV II, LLC, as servicer for U.S. Bank Trust Co. as Trustee, filed a Proof of Claim against Banner Operatingco LLC asserting a secured claim of $15,941,579.43 for a "Commercial Loan." Newtek's Claims have been classified as Disputed Prepetition Secured Loan Claims for purposes of the Plan (including distributions thereunder).

**4. Mizzen Capital, L.P.**

On or about October 6, 2023, Mizzen Capital, L.P. ("Mizzen") entered into that certain Senior Subordinated Note Purchase Agreement (the "Mesorah Note Purchase Agreement") with (a) Mesorahco LLC and (b) various guarantors, including Mesorahland LLC. As of the Petition Date, the balance of the Mesorah Note Purchase Agreement was approximately $982,500 (the "Mizzen-Mesorah Loan"). On August 13, 2026, Mizzen filed a Proof of Claim with respect to the Mizzen-Mesorah Loan alleging that, on July 30, 2026, Mizzen entered into a *Settlement Agreement, Consent to Private Sale and Grant of Contingent Profits Interest* with DHAN Masores LLC in connection with its purchase of Camp Mesorah free and clear of any of its liens. On August 4, 2026, the Bankruptcy Court entered an order approving the sale of Camp Mesorah [Docket No. 785] free and clear of all liens. As a result of the foregoing, the Debtors do not believe that Mizzen has any remaining secured claims against the Debtors arising from the Mizzen-Mesorah Loan.

On or about October 6, 2023, Mizzen also entered into that certain Note Purchase Agreement with (a) Pine Forest Campco LLC and (b) various guarantors, including Pine Forest Landco (the "Pine Forest Note Purchase Agreement"). As of the Petition Date, the balance of the Pine Forest Note Purchase Agreement was approximately $8,845,666 (the "Mizzen-Pine Forest Loan"). On August 4, 2026, the Court entered an order approving the sale of the Pine Forest Debtors to the Pine Forest Buyers [Docket No. 788] (the "Pine Forest Sale Order"). Pursuant to the Pine Forest Sale Order, the Pine Forest Buyers assumed the Mizzen-Pine Forest Loan and

Mizzen's secured claims arising from the Mizzen-Pine Forest Loan were waived against the Debtors' estates. As a result of the foregoing, the Debtors do not believe that Mizzen has any remaining secured claims against the Debtors arising from the Mizzen-Pine Forest Loan.

**5. HomeTrust Bank**

Prior to the Petition Date, HomeTrust Bank ("HTB") (i) made a loan in the original principal amount of $2,000,000.00 to Bluestar Landco, LLC (the "HTB Prepetition Loan"), evidenced by certain documents between and among Bluestar Landco, LLC, David A. Shabsels, Michael Shabsels, SIMAD Holdings LLC, Bluestar Operatingco, LLC, and HTB, including an Agreement dated February 2023, a Promissory Note executed by Bluestar Landco, LLC on February 3, 2023, in favor of HTB in the Principal Amount of $2,000,000, Commercial Guaranties of David A. Shabsels, Michael Shabsels, SIMAD Holdings LLC and Bluestar Operatingco, LLC in favor of HTB, and a Deed of Trust Securing Future Advances (a "Deed of Trust") and an Assignment of Rents (an "Assignment of Rents"), each dated February 3, 2023, executed by Bluestar Landco, LLC in favor of HTB (the "2023 Promissory Note"); (ii) Debtor Bluestar Landco, LLC executed a promissory note in the Principal Amount of $5 million, together with a Deed of Trust and Assignment of Rents securing advance guarantees executed by Debtor Bluestar Operatingco, LLC, SIMAD Holdings, LLC, Michael Shabsels and David Shabsels each dated September 21, 2021 (the "2021 Promissory Note") in favor of HTB; (iii) Debtor Bluestar Landco, LLC executed a promissory note in the Principal Amount of $850,000, together with a Deed of Trust and Assignment of Rents securing advance guarantees executed by Debtor Bluestar Operatingco, LLC, SIMAD Holdings, LLC, Michael Shabsels, David Shabsels, Seth Adam Herschthal and Lauren Popkin Herschthal each dated November 17, 2025 (the "2025 Promissory Note" and together with the 2021 Promissory Note and the 2023 Promissory Note, the "Promissory Notes") in favor of HTB; and (iv) a promissory note in the Principal Amount of $450,000, together with a Deed of Trust modifying the Promissory Notes, executed by Debtor Bluestar Operatingco, LLC, SIMAD Holdings, LLC, Michael Shabsels, David Shabsels, Seth Adam Herschthal and Lauren Popkin Herschthal, each dated April 20, 2026; and such other related agreements, instruments, and other documents executed in connection with the HTB Prepetition Loan.

As of the Petition Date, Bluestar Landco, LLC and Bluestar Operatingco, LLC were indebted to HTB in the aggregate principal amount of not less than $4,210,592. The Committee undertook a review of the liens and claims associated with the HTB loan to Bluestar Operatingco, LLC. On October 16, 2026, the Debtors satisfied HTB's claims with proceeds from the sale of Blue Star Camps. As a result of the foregoing, the Camp Business Debtors do not believe that HTB has any remaining claims against the Debtors.

**6. Community Bank, N.A.**

Prior to the Petition Date, Community Bank, National Association ("CBNA") made (i) a loan in the original principal amount of $2,775,000, evidenced by that certain Loan Agreement among Chateaugay Campco, LLC and Chateaugay Landco, LLC (together the "Chateaugay Debtor Borrowers") and CBNA dated June 23, 2022, together with other related loan documents, including a Promissory Note dated June 23, 2022, in the amount of $2,775,000, executed by the Chateaugay Debtor Borrowers in favor of CBNA, a Collateral Mortgage on certain real property owned by Chateaugay Landco LLC dated June 23, 2022, executed by Chateaugay Landco LLC in

favor of CBNA, and recorded in the Land Records of the Clinton County Clerk at Instrument Number 2022-00325375 on June 28, 2022, a Mortgage Assumption, Spreader and Consent Agreement, dated June 23, 2022, executed by Chateaugay Landco LLC in favor of CBNA, and recorded in the Land Records of the Clinton County Clerk at Instrument Number 2022-00325376 on June 28, 2022, an Assignment of Rents dated June 23, 2022, executed by the Chateaugay Debtor Borrowers in favor of CBNA, and recorded in the Land Records of the Clinton County Clerk at Instrument Number 2022-00325377 on June 28, 2022, a Security Agreement dated June 23, 2022, executed by the Chateaugay Debtor Borrowers in favor of CBNA granting CBNA a lien on the Collateral (as defined in the Security Agreement) of each applicable Chateaugay Debtor, which lien was perfected by the filing of a UCC-1 Financing Statement covering collateral identified thereon with the Secretary of State of New York at Filing Number 202207260315623 on July 26, 2022.

As of the Petition Date, the Chateaugay Debtor Borrowers were jointly and severally indebted to CBNA in the aggregate principal of approximately $2,269,928. CBNA has been paid out of the proceeds associated with the sale of Camp Chateaugay. As a result, the Debtors do not believe that CBNA has any remaining claims against the Debtors.

**7. Bank of America, N.A.**

On or about September 30, 2022, Summit Camp, LLC ("Summit Camp") entered into that certain Loan Agreement with Bank of America, together with other related loan documents, including an Open-End Mortgage, Assignment of Rents, Security Agreement and Fixture Filing on certain real property owned by Summit Camp and a Security Agreement. Bank of America asserts that, as of the Petition Date, its principal loan balance is approximately $3,380,079.

The Committee undertook a review of the liens and claims associated with the Bank of America loan to Summit Camp. On October 8, 2026, the Debtors satisfied Bank of America's claims with proceeds from the sale of Summit Camp. As a result of the foregoing, the Debtors do not believe that Bank of America has any remaining claims against the Debtors.

**8. Enhanced Capital Pennsylvania Rural Fund, LLC**

On January 31, 2022, Green Lane Operatingco, LLC ("Green Lane") and Enhanced Capital Pennsylvania Rural Fund, LLC ("Enhanced Capital") entered into that certain Loan and Security Agreement, pursuant to which Enhanced Capital provided a term loan to Green Lane in an original principal amount equal to $2,000,000.00 (the "Enhanced Term Loan"). Enhanced Capital also entered into several ancillary agreements to the Enhanced Term Loan, including, (i) that certain Guaranty Agreement between BAHS Holdings LLC and Enhanced Capital; (ii) that certain Entity Guaranty Agreement between BAHS Operating Inc. and Enhanced Capital; (iii) that certain Guaranty Agreement between Green Lane Landco, LLC and Enhanced Capital; and (iv) that certain Guaranty Agreement between Michael Shabsels and David Shabsels and Enhanced Capital.

Enhanced Capital asserts that, as of the Petition Date, it is owed $2,502,031, exclusive of any late fees or charges or attorneys' fees. Enhanced Capital's Claims have been classified as Disputed Prepetition Secured Loan Claims for purposes of the Plan (including distributions thereunder).

**9. U.S. Small Business Administration**

On varying dates prior to the Petition Date in 2020, the U.S. Small Business Administration (the "SBA") made various (COVID-19) Economic Injury Disaster Loans (each, an "EIDL") to certain of the Debtors. The SBA asserts that the EIDLs are comprised of the following:

| Debtor | Outstanding Amount (as of the Petition Date) |
|---|---|
| Greenvilleland LLC | $147,873.53 |
| Meadowbrook Landco LLC | $131,019.26 |
| Mohawkland LLC | $147,344.50 |
| Bluestar Landco LLC | $147,372.78 |
| Club Getaway Landco LLC | $147,951.79 |
| Eagle's Landing Day Camp LLC | $144,634.60 |
| Achim Operatingco LLC | $147,172.64 |
| Mogenavco LLC | $147,478.12 |
| Mesorahland LLC | $147,810.32 |
| Banner Landco | $147,905.09 |
| BAHS Operating Inc. | $146,989.95 |
| SHAB Operating Inc. | $147,677.15 |
| BAHS Holdings LLC | $147,915.40 |
| Malka Operatingco LLC | $148,141.28 |
| Kiwi Landco LLC | $144,762.05 |
| Country Roads Landco LLC | $126,188.17 |
| Mogenavland LLC | $147,857.73 |
| Lavland LLC | $121,164.05 |

**10. Seller Notes**

**a. Sports & Arts Center at Island Lake, Inc.**

Sports & Arts Center at Island Lake, Inc. ("Sport") entered into that certain Seller Note dated on or about January 18, 2022 with Island Lake Landco LLC and Island Lake Campco LLC as borrowers (the "Sport Note Purchase Agreement"). The obligations of Island Lake Landco LLC are secured by a mortgage lien pursuant to that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated on or about January 18, 2022 whereby Island Lake Landco LLC granted to Sport a mortgage on real property located at 50 Island Lake Road, Starrucca, Pennsylvania, 18462, which was recorded on January 21, 2022.

The Committee undertook a review of the liens and claims associated with the Sport Note Purchase Agreement. On September 28, 2026, the Debtors satisfied Sport's claims arising from the Sport Note Purchase Agreement with proceeds from the sale of Island Lake Camp. As a result of the foregoing, the Debtors do not believe that Sport has any remaining claims against the Debtors arising from the Sport Note Purchase Agreement.

**b. Camping Management Corporation**

Camping Management Corporation ("CMC") holds a subordinated mortgage lien, a security interest in fixtures and chattels, and a pledge of one hundred percent of the membership interests in the Pine Forest Debtors, each securing a Subordinated Promissory Note dated December 13, 2022 in the original principal amount of $3,860,000.00 (the "Subordinated Note"). CMC's lien is subordinate to Wayne Bank's lien pursuant to that certain Subordination and Intercreditor Agreement dated December 7, 2022 (effective December 13, 2022) among Wayne Bank, the Pine Forest Debtors, and CMC.

On August 4, 2026, the Court entered the Pine Forest Sale Order. Pursuant to the Pine Forest Sale Order, the Pine Forest Buyers credit bid the Subordinated Note and, at closing, CMC's claims arising from the Subordinated Note were waived against the Debtors' estates. As a result of the foregoing, the Debtors do not believe that CMC has any remaining claims against the Debtors arising from the Subordinated Note.

**c. Chateaugay Lake Camp Inc.**

Prior to the Petition Date, Chateaugay Lake Camp Inc. ("Chateaugay Lake") made a loan in the original principal amount of $1,045,000, evidenced by that certain Subordinated Promissory Note dated June 23, 2022, in the amount of $1,045,000, executed by the Chateaugay Debtor Borrowers in favor of Chateaugay Lake and Harold Lyons, a Mortgage and Security Agreement on certain real property owned by Chateaugay Landco LLC dated June 23, 2022, executed by Chateaugay Landco LLC in favor of Chateaugay Lake, and recorded in the Land Records of the Clinton County Clerk at Instrument Number 2022-00325378 on June 28, 2022, a Security Agreement dated June 23, 2022, executed by the Chateaugay Debtor Borrowers in favor of Chateaugay Lake granting Chateaugay Lake a lien in the Collateral Security (as defined in the Security Agreement) of each applicable Chateaugay Debtor, which lien was perfected against the Collateral Security owned by Chateaugay Landco LLC by the filing of a UCC-1 Financing Statement with the Secretary of State of New York at Filing Number 202207148333698 on July 14, 2022.

As of the Petition Date, the Chateaugay Debtor Borrowers were jointly and severally indebted to Chateaugay Lake in the aggregate principal amount of not less than $1,045,000.

**2.2.2 The MCA Loans**. In the weeks and months leading up to the Petition Date, the Debtors became obligated on short-term loans (the "MCA Loans") provided by approximately forty-two (42) merchant cash advance and short-term funders and lenders (the "MCA Lenders"). As of the Petition Date, the MCA Loans total in excess of $100 million in the aggregate. In general, the MCA Lenders were purportedly granted security interests in certain of the Debtors' collateral in the MCA Loans, subject to further review and investigation by the Debtors. Also, in many cases, the MCA Loans were guaranteed by multiple entities within the Debtors' organizational structure. Many MCA Lenders were also given access to the Debtors' bank accounts through ACH authorizations contained in the loan agreements. Claims asserted by MCA Lenders against the Camp Business Debtors are classified under the Plan as Disputed Secured MCA Claims (Class 6) or Disputed Unsecured MCA Claims (Class 7). The Camp Business Debtors dispute the characterization, amount and secured status of substantially all of the MCA Loans, including on

the grounds that (i) the Camp Business Debtors' books and records reflect no liability on account of certain asserted MCA Loans, (ii) the receivables purportedly purchased under certain MCA Loans were collected prior to the Petition Date or sold free and clear of all liens, claims and interests pursuant to the Sale Orders, and (iii) certain MCA Lenders asserting Secured Claims did not file financing statements or otherwise perfect any security interest.

**2.2.3** **General Unsecured Creditors**. Based on the claims register maintained by Kroll as of October 7, 2026 and the Camp Business Debtors' review thereof, the Camp Business Debtors estimate that General Unsecured Claims (including Convenience Class Claims), Disputed Unsecured MCA Claims, and the unsecured portion of the Disputed Secured MCA Claims against the Camp Business Debtors, counted once per underlying obligation across co-obligor Camp Business Debtors, aggregate approximately $170.5 million, before giving effect to any Lender Deficiency Claim. This estimate excludes approximately [$106] million of camper deposit Claims (relating strictly to the Camp Business Debtors) scheduled as contingent and unliquidated, which the Camp Business Debtors do not expect to be Allowed as General Unsecured Claims. The Camp Business Debtors reserve all rights to object to any Claim, and the actual amount of Allowed Claims may differ materially from these estimates.

## 2.3 EVENTS LEADING TO THE BANKRUPTCY FILINGS

These Chapter 11 Cases were filed due to the potential catastrophic impact on the SIMAD Debtors' ability to operate resulting from the substantial purported duplicate debt obligations to which the SIMAD Debtors were made a party. Among other things, prior to the Petition Date, the SIMAD Debtors were in default on payments owed to Israeli Bondholders in connection with obligations due under certain certificates of indebtedness (nonconvertible) (the "Debentures (Series A)"). Those obligations owed under the Debentures (Series A) were secured by pledges made by the Debtors against certain collateral in favor of the Bondholders and the Trustee for the Bondholders. The Debtors were unable to make the first interest payment on the Debentures (Series A) and were in default as of May 31, 2026.

Additionally, in the days leading up to the filing of these Chapter 11 Cases, the Debtors' and their affiliates' estates were at risk of defaulting on their obligations on the MCA Loans. The Debtors were concerned that if a single MCA Loan went into default and was accelerated, the MCA Lenders may have exercised remedies upon default that would have left the Debtors without access to cash and accounts receivable.

Ultimately, the Debtors determined that filing for Chapter 11 protection, utilizing cash collateral, and seeking approval of the DIP Financing and a sale while pursuing an orderly liquidation of their assets was their best available option.

## 2.4 THE DEBTORS' BANKRUPTCY PROCEEDINGS

**2.4.1** **The Petition Date**. On June 4 and 5, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

**2.4.2** **The First Day Operational Orders**. On June 8, 2026, the Debtors filed their *Emergency Motion for Entry of An Interim Order (I) Authorizing the Debtors' Immediate*

*Use of Cash Collateral and Existing Bank Accounts For Purposes of Satisfying Prepetition Gross Salaries, Payroll Taxes, and Other Critical Expenses, (II) Authorizing the Debtors to Satisfy and Direct Payroll Banks to Honor Certain Prepetition Gross Salaries and Payroll Taxes of their Employees, (III) Authorizing the Debtors' Continued Use of Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Continue Additional Transactions, and (IV) Granting Related Relief* [Docket No. 7] (the "Emergency Motion") seeking, among other things, operational relief on an emergent basis to afford the Debtors sufficient time to prepare a complete submission of operational motions. Shortly thereafter, the Debtors filed several motions seeking certain operational relief by virtue of so-called first day orders. The first day orders assisted the Debtors in transitioning into operating as debtors-in-possession by approving certain regular business practices that may not be specifically authorized under the Bankruptcy Code or as to which the Bankruptcy Code requires prior court approval. The first day orders in the Chapter 11 Cases authorized, among other things:

- payments to the Debtors' critical vendors on an interim basis [Docket No. 132];
- the continuation of the Debtors' insurance programs on an interim basis [Docket No. 134];
- safeguards to provide assurance to utility providers on an interim basis [Docket No. 135];
- the appointment of Kroll as the noticing agent in these Chapter 11 Cases [Docket No. 136];
- the continued maintenance of the Debtors' bank accounts, continued use of existing business forms, and continued use of the Debtors' existing cash management system on an interim basis [Docket No. 137]; and
- payments to employees for accrued prepetition wages, salaries, and benefits on an interim basis [Docket No. 156].

**2.4.3 The Cash Collateral Orders**. By the Emergency Motion, the Debtors asserted that continued access to cash collateral was necessary to maintain operations, pay employees and vendors, and avoid disruptions to the camps operated by the Debtors. The Bankruptcy Court held an emergency hearing and granted emergency relief on an interim basis. *See Interim Order (I) Authorizing the Debtors' Immediate Use of Cash Collateral and Existing Bank Accounts For Purposes of Satisfying Prepetition Gross Salaries, Payroll Taxes, and Other Critical Expenses, (II) Authorizing the Debtors to Satisfy and Direct Payroll Banks to Honor Certain Prepetition Gross Salaries and Payroll Taxes of their Employees, (III) Authorizing the Debtors' Continued Use of Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Continue Additional Transactions, and (IV) Granting Related Relief* [Docket No. 17].

On June 14, 2026, the Debtors filed their *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay,*

*and (V) Granting Related Relief* [Docket No. 61] (the "Cash Collateral Motion"), seeking Bankruptcy Court approval to utilize cash collateral of various prepetition secured parties in order to fund operations during the 2026 summer camp season and preserve going-concern value. Several parties filed reservations of rights and objections to the Debtors' requested use of cash collateral, raising various issues, including: (a) whether the objecting parties possessed valid, perfected, and enforceable liens in certain assets and cash proceeds; (b) the relative priority of competing security interests; (c) whether the proposed adequate protection package sufficiently protected the objecting parties against diminution in the value of their collateral; and (d) the appropriateness of proposed findings, stipulations, and waivers contained in the cash collateral orders [Docket Nos. 88, 96, 103, 108, 393, 435].

On June 17, 2026, the Bankruptcy Court held a hearing on the Cash Collateral Motion and subsequently entered certain orders approving the Debtors' use of cash collateral on an interim basis [Docket Nos. 142, 143, 144, 145, 146, 147, 148, 149, 150, 166, 167].

**2.4.4 The July 20, 2026 Hearing**. On July 20, 2026, the Bankruptcy Court held a final hearing on certain of the first day motions. As a result of that hearing, the Bankruptcy Court entered a further order authorizing the continued maintenance of the Debtors' bank accounts, continued use of existing business forms, and continued use of the Debtors' existing cash management system, on a second interim basis, and payments to the Debtors' critical vendors on a second interim basis [Docket No. 549]. Additionally, the Bankruptcy Court also entered orders which authorized, among other things:

- payments to the Debtors' critical vendors on a final basis [Docket No. 542];
- the continuation of the Debtors' insurance programs on a final basis [Docket No. 544];
- safeguards to provide assurance to utility providers on a final basis [Docket No. 546]; and
- payments to employees for accrued prepetition wages, salaries, and benefits on a final basis [Docket No. 548].

**2.4.5 The Debtors' Professionals Retention Applications**. To further facilitate the Debtors' restructuring efforts and ease administrative burdens, the Debtors filed applications to retain professionals postpetition pursuant to sections 327, 328, 105, and 363 of the Bankruptcy Code, including:

- ***Cole Schotz P.C., as Counsel for the Debtors and Debtors in Possession*** [Docket No. 308] (as approved at Docket No. 451);
- ***FTI Consulting, Inc., as Financial Advisors for the Debtors and Debtors in Possession*** [Docket No. 309] (as approved at Docket No. 458);
- ***SSG Advisors, LLC, as Investment Bankers for the Debtors and Debtors in Possession*** [Docket No. 310] (as approved at Docket No. 559); and

- ***Kroll Restructuring Administration LLC, as Claims and Noticing Agent and Administrative Advisor for the Debtors and Debtors in Possession*** [Docket Nos. 53 and 555] (as approved at Docket Nos. 136 and 782).

**2.4.6 DIP Financing**. Since the Petition Date, the Debtors have sought to obtain postpetition financing (collectively, "DIP Financing") to address immediate liquidity needs and continue to fund their obligations while avoiding any disruption to being able to open and operate the camps during the pinnacle summer season. Absent the DIP Financing, the enterprise value of the camps would have been in jeopardy, and, more critically, so would the health, safety, and well-being of thousands of young campers.

On June 24, 2026, the Debtors filed *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the SIMAD Debtor Borrowers to Obtain Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 225] (the "Bondholder DIP Motion"). On June 26, 2026, after a hearing, the Bankruptcy Court granted the relief requested in the Bondholder DIP Motion on an interim basis (the "Interim Bondholder DIP Order") [Docket No. 299]. The Interim Bondholder DIP Order, among other things, approved postpetition, superpriority, senior secured, priming Bondholder debtor-in-possession financing from the Series A Bondholders of SIMAD Holdings Ltd., including Klirmark Opportunity Fund IV L.P. in an aggregate principal amount not to exceed $174,000,000, which is inclusive of $58,000,000 of superpriority senior secured new money term loans comprising (i) $20,000,000 to be funded upon entry of the Interim Bondholder DIP Order, and (ii) $40,000,000 upon entry of a final order (the "Bondholder DIP Facility"). Additionally, this financing is subject to a roll-up in the collective aggregate principal amount of $116,000,000—the roll-up converted the Debtors' prepetition obligations on a 2:1 basis (*i.e.*, $2.00 of prepetition obligations converted for each $1.00 of new DIP loan funds actually drawn and funded). On July 21, 2026, the Bankruptcy Court entered its order approving the relief sought in the Bondholder DIP Motion on a final basis [Docket No. 552]. Pursuant to the Bondholder DIP Facility and the Bondholder Final DIP Order, the DIP Claims were paid in full in connection with the consummation of the Asset Purchase Agreements in accordance with the Final Mishmeret DIP Order and the 9019 Settlement Order; to the extent any DIP Claim remains outstanding as of the Effective Date, such DIP Claim and the related Liens and protections will remain in full force and effect until it is paid in full. Payment in full of the DIP Roll-Up Claim, including fees and expenses incurred and invoiced as of the Effective Date, is a condition precedent to the Effective Date.

On July 17, 2026, the Debtors filed *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Bluestar Debtor Borrowers to Obtain Postpetition Financing from HomeTrust Bank, (II) Authorizing the Bluestar Debtor Borrowers, LLC to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 504] (the "HTB DIP Motion"). On July 20, 2026, the Bankruptcy Court entered an interim order granting the HTB DIP Motion (the "Interim HTB DIP Order") [Docket No. 543]. The Interim HTB DIP Order authorizes the Bluestar Debtor Borrowers (as defined in the HTB DIP Motion) to obtain postpetition, superpriority, senior secured, priming debtor-in-possession financing from HomeTrust Bank ("HTB") in an amount not to exceed $4,500,000. On August 4, 2026, the

Bankruptcy Court entered its order approving the relief sought in the HTB DIP Motion on a final basis [Docket No. 787].

On July 17, 2026, the Debtors also filed *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Chateaugay Debtor Borrowers to Obtain Postpetition Financing from Community Bank, National Association, (II) Authorizing the Chateaugay Debtor Borrowers to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 506] (the "Chateaugay DIP Motion"). On July 20, 2026, the Bankruptcy Court entered an interim order granting the Chateaugay DIP Motion (the "Interim Chateaugay DIP Order") [Docket No. 545]. The Interim Chateaugay DIP Order approved postpetition, superpriority, senior secured, priming debtor-in-possession financing from Community Bank, National Association ("CBNA") in an aggregate principal amount not to exceed $1,200,000. On August 4, 2026, the Bankruptcy Court entered the second interim order concerning the Chateaugay DIP Motion [Docket No. 788]. On August 31, 2026, the Bankruptcy Court entered its order approving the relief sought in the Chateaugay DIP Motion on a final basis [Docket No. 1040].

**2.4.7 The Sale Transactions**. As explained above, the Debtors filed these Chapter 11 Cases to engage in a process to sell substantially all of their assets so that they could maximize the value of their Estates for the benefit of all of their constituents and preserve their ongoing business. Accordingly, the Debtors have been involved in sale processes as part of a concerted effort to maximize the value of their assets.

On June 24, 2026, the Debtors filed the *Motion For Entry of an Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* [Docket No. 227] seeking, among other things, entry into the Stalking Horse APA, approval of certain bidding procedures to effectuate a sale of certain or substantially all of their assets (the "Sale"), the scheduling of a sale hearing, and approval of a sale to a bidder or bidders submitting the highest and best offer(s) at an auction, if necessary (the "Auction"). On June 27, 2026, the Debtors filed an application to retain SSG Advisors, LLC as their investment banker pursuant to their prepetition engagement agreement with SSG Advisors, LLC. On July 22, 2026, the Bankruptcy Court entered an Order approving the Debtors' retention of SSG Advisors, LLC [Docket No. 559].

On June 26, 2026, the Bankruptcy Court entered the *Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* [Docket No. 298] (the "Bidding Procedures Order"). The Bidding Procedures Order, among other things, approved the Stalking Horse APA, specified procedures regarding bidding and the assumption and assignment of the Debtors' executory contracts and unexpired leases (the "Bidding Procedures"), and scheduled an Auction for July 28, 2026, at 10:00 a.m. prevailing Eastern Time, for the sale of the Debtors' Assets. The Bidding Procedures Order established July 17, 2026 at 4:00 p.m. as the deadline by which all bids must be received (the "Bid Deadline"). The Bidding

Procedures Order also authorized the Debtors to designate one or more Stalking Horse Bidders and required that the respective Stalking Horse Agreements must be entered into by no later than July 9, 2026 at 4:00 p.m. (ET). Pursuant to the Bidding Procedures Order, objections to any proposed Sale Transaction, Sale Order and Notice of Successful Bidders must be made on or before July 31, 2026 at 4:00 p.m. (ET).

Certain of the Sale Transactions described below were consummated by SIMAD Debtors that are not Camp Business Debtors, including the Chateaugay, Mesorah and Pine Forest Debtors and the Debtors whose assets secured obligations to Bank of New Hampshire (Indian Acres Camp for Boys & Forest Acres Camp for Girls, Camp Med-O-Lark, New England Golf & Tennis Camp, Camp North Star, Camp Waukeela, Camp Wekeela and Windsor Mountain Summer Camp). The proceeds of those Sale Transactions are not Assets of the Camp Business Debtors and are not available for distribution under the Plan.

Prior to the Auction, the Debtors entered into four (4) Private Sale Transactions (as defined in the Bidding Procedures Order) [Docket Nos. 433, 509, 551, and 601] with respect to Camp Achim, Camp Mesorah, Camp Chen-A-Wanda, and Pine Forest Camps. The Court entered orders with respect to these Private Sale Transactions as follows:

| Camp(s) | Buyer(s) | Sale Order Docket No. | Purchase Price |
|---|---|---|---|
| Camp Achim | Camp Achim LLC | 539 | $7,000,000 |
| Camp Mesorah | DHAN Masores LLC | 785 | $5,608,362.95[10] |
| Camp Chen-A-Wanda | Eleven11 Holdings LLC | 849 | $17,000,000 |
| Pine Forest Camps | Pine Forest 1931, LLC<br>Pine Forest 1931 Land, LLC | 788 | $35,079,000[11] |

The Auction took place on July 28, 2026 and concluded on July 30, 2026. Interested parties submitted bids through July 31, 2026. Thereafter, the Debtors selected the highest and best bid as the purchaser for each of the respective camps that were subject to sale. On August 4, 2026, the Debtors filed *Notice of Successful Bidders With Respect to Certain of the Debtors' Assets* [Docket No. 789] with respect to the following twenty-three (23) camps which were subject to the Auction:

1. Banner Day Camp
2. Club Getaway
3. Country Roads Day Camp
4. Eagle's Landing Day Camp
5. Camp Echo
6. Camp Green Lane
7. Island Lake Camp
8. Camp Lavi
14. Camp Mogen Avraham
15. Blue Star Camps
16. Indian Acres Camp for Boys & Forest Acres Camp for Girls
17. Camp Med-O-Lark
18. New England Golf and Tennis Camp
19. Camp North Star
20. Camp Waukeela

[10] Purchase Price consisted of a credit bid in the aggregate amount of at least $5,608,362.95, comprised of: (i) $3,808,362.95 in prepetition secured indebtedness under the related existing loan documents, and (ii) $1,800,000 of DIP Obligation under the DIP Consent Order [Docket No. 287].

[11] The Purchase Price consisted of, among other things, a Credit Bid of the Wayne Bank debt, the Mizzen-Pine Forest Loan, and the CMC Seller Note.

9. Camp Lokanda
10. Greenville Land / Malka
11. Meadowbrook Country Day Camp
12. Mohawk Day Camp
13. Rolling Hills Country Day Camp
21. Camp Wekeela
22. Windsor Mountain Summer Camp
23. Summit Camp and Travel

On August 5, 2026, the SIMAD Debtors separately filed *Notice of Successful Bidders With Respect to Certain of the SIMAD Debtors' Assets* [Docket No. 800] which noticed the Successful Bidder with respect to Camp Lavi.

The Bankruptcy Court held a hearing to approve the Sale Transactions on August 10, 2026 at 11:00 a.m. (ET) (the "Sale Hearing"). At the Sale Hearing, the Court approved the Sale Transactions as proposed. Subsequently, the Court entered the Sale Orders approving the following Sale Transactions:

| Camp(s) | Buyer(s) | Sale Order Docket No. | Purchase Price |
|---|---|---|---|
| Banner Day Camp | Yes Camps, LLC | 1502 | $26,880,000 |
| Club Getaway | LGTFPS Holdings LLC | 1174 | $13,250,000 |
| Country Roads Day Camp | Jewish Community Center of Greater Monmouth County | 877 | $14,500,000 |
| Eagle's Landing Day Camp | Mario Del Cueto | 936 | $5,200,000 |
| Camp Echo | American Youth Camping Holdco LLC | 1078[12] | $16,700,000 |
| Camp Green Lane | Camp Green Lane, LLC | 897 | $8,000,018.18 |
| Island Lake Camp | CMAO Land Co., LLC<br>CMAO, LLC | 865 | $13,000,000 |
| Camp Lavi | Ohel Children's Home and Family Services, Inc. | 967 | $8,750,000 |
| Camp Lokanda | American Youth Camping Holdco LLC | 1080 | $19,327,800 |
| Greenville Land / Malka | Cho Pro Holdings, LLC | 1364 | $8,150,000 |
| Meadowbrook Country Day Camp | Coleman Investments LLC | 1048 | $12,250,000 |
| Mohawk Day Camp | FW CampCo LLC | 860[13] | $120,750,000 |
| Rolling Hills Country Day Camp | YES Camps, LLC | 1049 | $28,500,000 |
| Camp Mogen Avraham | SHMA, LLC | 1046 | $22,400,000 |

[12] A *Supplemental Order Clarifying the Terms of the Sale Order Approving that Certain Asset Purchase Agreement Dated September 4, 2026 By and Between American Youth Camping Holdco, LLC, SHAB Operating Inc., and SHAB Holdings LLC* [Docket No. 1139] was entered on September 16, 2026 which clarified that certain leases were not deemed an "Acquired Asset" under that respective Asset Purchase Agreement.

[13] On October 6, 2026, the Court entered the *Supplemental Order (I) Authorizing the Sale of Substantially All Assets of Mohawk Country Day School and (II) Granting Related Relief* [Docket No. 1316].

| Camp(s) | Buyer(s) | Sale Order Docket No. | Purchase Price |
|---|---|---|---|
| Blue Star Camps | New Blue Star Opco LLC | 853 | $13,650,000 |
| Indian Acres Camp for Boys & Forest Acres Camp for Girls | American Youth Camping Holdco LLC | 1079[14] | $6,000,000 |
| Camp Med-O-Lark | American Youth Camping Holdco LLC | 1077[15] | $2,300,000 |
| New England Golf & Tennis Camp | Bank of New Hampshire | 888 | $2,000,000 (via credit bid) |
| Camp North Star | American Youth Camping Holdco LLC | 1081[16] | $6,250,000 |
| Camp Waukeela | Andrew Shlensky | 968 | $1,200,000 |
| Camp Wekeela | American Youth Camping Holdco LLC | 1082[17] | $9,900,000 |
| Windsor Mountain Summer Camp | Red Pines, LLC | 1522 | $8,500,000 |
| Summit Camp and Travel | 168 Duck Harbor Land LLC | 1181 | $4,800,000 |

On September 26, 2026, the Court entered an order approving the sale of Camp Chateaugay to Friends of Chateaugay LLC for a cash purchase price of $3,563,978.67 [Docket No. 1274].

On November 3, 2026, the Court entered an order approving the sale of Kiwi Country Day Camp to LKQE Associates, LLC for a cash purchase price of $9,200,000 [Docket No. 1482].

**2.4.8 OrcaFunding Characterization Dispute**. On August 25, 2026, the Debtors and OrcaFunding LLC ("OrcaFunding") entered into that certain Stipulation and Agreed Scheduling Order Regarding Characterization of OrcaFunding LLC's Sale of Future Receipts Agreements [Docket No. 932] (the "Scheduling Order") by which the Debtors and OrcaFunding agreed to have the Court make a determination of whether the Sale of Future Receipts Agreements

---

[14] A *Supplemental Order Clarifying the Terms of the Sale Order Approving that Certain Asset Purchase Agreement Dated September 4, 2026 By and Between American Youth Camping Holdco, LLC, IAFALANDCO LLC, and IAFAOPERATINGCO LLC* [Docket No. 1131] was entered on September 16, 2026 which clarified that certain leases were not deemed an "Acquired Asset" under that respective Asset Purchase Agreement.

[15] A *Supplemental Order Clarifying the Terms of the Sale Order Approving that Certain Asset Purchase Agreement Dated September 4, 2026 By and Between American Youth Camping Holdco, LLC, Camp Med-O-Lark, Inc. and Washington Lake, LLC* [Docket No. 1132] was entered on September 16, 2026 which clarified that certain leases were not deemed an "Acquired Asset" under that respective Asset Purchase Agreement.

[16] A *Supplemental Order Clarifying the Terms of the Sale Order Approving that Certain Asset Purchase Agreement Dated September 4, 2026 By and Between American Youth Camping Holdco, LLC, Poland Landco LLC and Poland Campco LLC* [Docket No. 1133] was entered on September 16, 2026 which clarified that certain leases were not deemed an "Acquired Asset" under that respective Asset Purchase Agreement.

[17] A *Supplemental Order Clarifying the Terms of the Sale Order Approving that Certain Asset Purchase Agreement Dated September 4, 2026 By and Between American Youth Camping Holdco, LLC, Wekeeland LLC, and Mainewekeelaco LLC* [Docket No. 1134] was entered on September 16, 2026 which clarified that certain leases were not deemed an "Acquired Asset" under that respective Asset Purchase Agreement.

between the parties constitute true sales of future receipts or disguised loans (the "Characterization Dispute"). In accordance with the Scheduling Order, the parties engaged in discovery regarding the Characterization Dispute and filed extensive pleadings and briefs regarding the Characterization Dispute at Docket Nos. 225, 312, 413, 414, 503, 518, 1092, 1156, 1162, 1177, 1182, 1188, and 1198. On September 29, 2026, the Court held a hearing to determine whether the agreements between the Debtors and OrcaFunding LLC constituted disguised loans or true sales. On October 19, 2026, the DAMIS Debtors filed a joinder to the SIMAD Debtors' position with respect to the Characterization Dispute [Docket No. 1362]. As of the date hereof, the Court has not rendered a decision on the issue presented.

**2.4.9 Committee Settlement**. On October 11, 2026, the Debtors filed the *Joint Motion of the Debtors, the Official Committee of Unsecured Creditors, and the Lender Parties for Entry of an Order (I) Approving Settlement Pursuant to Bankruptcy Rule 9019, and (II) Granting Related Relief* [Docket No. 1336] (the "Committee Settlement Motion"). The Committee Settlement Motion sought approval of a comprehensive, consensual settlement (the "Committee Settlement") which resolves the Committee's potential Challenges (as defined in the Committee Settlement Motion) relating to the Lender Parties' (as defined in the Committee Settlement Motion) asserted liens, secured claims, and roll-up DIP financing. The Committee Settlement includes, among other things, a $13 million cash fund for the exclusive benefit of holders of allowed general unsecured claims, continued funding of the chapter 11 cases through confirmation and consummation of a chapter 11 plan pursuant to the Approved Budget, the Lender Parties' support for a liquidation trust to pursue estate causes of action, and preservation of claims against non-settling parties. As described in the Committee Settlement Motion, the Committee Settlement avoids the expense, delay, and uncertainty of complex litigation while providing a substantial and immediate benefit to unsecured creditors and facilitating confirmation of a chapter 11 plan.

The United States, on behalf of the IRS, objected to the Committee Settlement Motion [Docket No. 1368], asserting, among other things, that the Settlement Fund would provide a recovery to holders of general unsecured claims without providing for payment of administrative and priority claims. The Committee, in its reply filed on October 23, 2026 [Docket No. 1376], disputed that objection on the grounds that the Settlement Fund is funded from amounts otherwise recoverable by the Prepetition Secured Parties on account of their secured claims, is not property of the Estates, and is not subject to the distribution priorities of the Bankruptcy Code. The Bankruptcy Court held a hearing on the Committee Settlement Motion on October 26, 2026 and, on that date, signed the 9019 Settlement Order approving the settlement, which was entered on the docket on October 27, 2026 [Docket No. 1388]. The 9019 Settlement Order is a final order of the Bankruptcy Court, and the Settlement Effective Date occurred on October 27, 2026. In the 9019 Settlement Order, the Bankruptcy Court found, among other things, that the Settlement is fair, reasonable, and in the best interests of the Debtors, their estates, and their creditors and satisfies the standards for approval under Bankruptcy Rule 9019, and that the Settlement Fund constitutes a voluntary contribution by the Prepetition Secured Parties from their own recoveries on account of the Prepetition Secured Claim, is held in trust solely for the benefit of holders of allowed general unsecured claims, and is not property of the Debtors' estates. The United States, on behalf of the IRS, has appealed the 9019 Settlement Order to the United States District Court for the District of New Jersey, which is pending at case number 26-CV-14496-GC.

**2.4.10 Tax Withholding Issues**. In connection with the sale of certain real property assets, the Debtors became aware that, as a result of their corporate structure, SIMAD Holdings Ltd. may be subject to tax liability and/or that certain withholding obligations may apply to the sale of assets owned by certain Exempt Entities (as defined in the FIRPTA Motion and the FIRPTA Supplement referenced below) pursuant to the Foreign Investment in Real Property Tax Act of 1980 ("FIRPTA"). Specifically, FIRPTA generally imposes a withholding obligation on purchasers acquiring United States real property interests from a transferor that the Internal Revenue Service (the "IRS") deems to be a foreign person or entity for federal income tax purposes.

As set forth in the *SIMAD Debtors' Emergency Motion Requesting a Determination of Certain Tax Withholding Obligations Pursuant to the Foreign Investment in Real Property Tax Act of 1980* [Docket No. 1141] (the "FIRPTA Motion")[18], the Debtors asserted that any purported withholding obligations apply only to certain Exempt Entities, that the transactions involving such Exempt Entities fall within an exception to FIRPTA withholding requirements, and that FIRPTA ultimately may not apply to the Debtors. In response, the IRS filed the *United States' Response to Motion for Tax Determination* [Docket No. 1286] (the "FIRPTA Objection"), asserting, among other things, that the Bankruptcy Court lacked jurisdiction to adjudicate the issues raised in the FIRPTA Motion and that no exception from FIRPTA withholding requirements applied.

On October 4, 2026, the Debtors filed the *Reply in Support of SIMAD Debtors' Emergency Motion Requesting a Determination of Certain Tax Withholding Obligations Pursuant to the Foreign Investment in Real Property Tax Act of 1980* [Docket No. 1305] (the "FIRPTA Reply").[19] The Bankruptcy Court conducted a hearing on the FIRPTA Motion on October 5, 2026, and granted the requested relief on the record. The IRS and the Debtors were unable to agree upon the form of the proposed order, and the Bankruptcy Court has deferred entry of an order pending the parties' agreement to participate in mediation. Pending the resolution of the FIRPTA Motion, the Debtors have entered into agreements with various purchasers of the assets of Exempt Entities to escrow funds on account of the purported FIRPTA withholding obligations. As of the date of this Disclosure Statement, no resolution has been reached. The Debtors reserve all rights with respect to the FIRPTA Motion and any related matters.

Approximately $19.9 million of proceeds of the Sale Transactions related to the Debtors had been withheld, escrowed or reserved on account of purported FIRPTA withholding obligations, including approximately $12.2 million withheld by the escrow agent in connection with the sale of Mohawk Day Camp. If the FIRPTA Motion is resolved in the Debtors' favor, such amounts (net of any tax determined to be due) will become available for application in accordance with the Sale Orders, the Final Mishmeret DIP Order and the Plan. If it is not, such amounts will be remitted to the IRS and will not be available to satisfy Claims. The Liquidation

---

[18] The SIMAD Debtors also filed a supplement to the FIRPTA Motion [Docket No. 1279] (the "FIRPTA Supplement") disclosing certain additional Exempt Entities.

[19] Since the filing of the FIRPTA Motion, the SIMAD Debtors have also filed certain supplemental notices advising the Bankruptcy Court of the closing of certain sales, as required under FIRPTA and contemplated in the FIRPTA Motion. *See* Docket Nos. 1161, 1351, 1396, 1489, and 1537. Similar notices will be filed with respect to additional closings involving Exempt Entities, as applicable.

Analysis attached hereto as Exhibit C treats such amounts as not available for distribution pending resolution of the FIRPTA Motion.

*$ in millions*

| Camps | Purchase Price | Purchase Price Allocation | FIRPTA Exposure |
|---|---|---|---|
| Achim | $ 7.0 | $ 3.5 | $ 0.5 |
| Echo | 16.7 | 8.4 | 1.3 |
| Mill Road | 5.2 | 4.5 | 0.7 |
| Mohawk | 120.8 | 28.9 | 12.2 |
| Chateaugay | 3.6 | 2.9 | 0.0 |
| Malka | 8.2 | 6.1 | 1.2 |
| MogenAv | 22.4 | 11.2 | 4.0 |
| **Total** | **$ 183.8** | **$ 65.4** | **$ 19.9** |

**2.4.11 SIMAD Investigations**. SIMAD Holdings Ltd. ("SIMAD") is currently the subject of parallel criminal and civil investigations by governmental authorities in the United States and Israel. In the United States, the U.S. Department of Justice ("DOJ"), specifically the United States Attorney's Office for the Eastern District of New York ("EDNY-USAO"), has opened a criminal grand jury investigation (Grand Jury Number 2026R000436) and, in connection therewith, issued a grand jury subpoena dated June 15, 2026 ("Subpoena") requesting company records and other documents from SIMAD. Separately, the DOJ, specifically the United States Attorney's Office for the Southern District of New York ("SDNY-USAO"), is conducting a civil investigation involving allegations of fraud in obtaining funds from the U.S. Small Business Administration's Paycheck Protection Program as provided by the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). The SDNY-USAO seeks damages and penalties for approximately $43 million under the False Claims Act, 31 U.S.C. § 3729 et seq. In addition, the New York Division of Enforcement of the U.S. Securities and Exchange Commission ("SEC") has opened an investigation relating to SIMAD and has requested that SIMAD produce all documents previously produced to EDNY-USAO pursuant to the Subpoena.

In Israel, the Israel Securities Authority ("ISA") has opened a criminal investigation to examine, among other things, SIMAD's alleged failure to make a scheduled interest payment on the Debentures (Series A), and the related subsequent disclosure that approximately $34 million belonging to Israeli Bondholders had been transferred to companies controlled by former SIMAD insiders Michael Shabsels and David Shabsels.

SIMAD, through its counsel, is cooperating with each of the foregoing criminal and civil investigations. SIMAD has produced documents in response to the Subpoena issued by EDNY-USAO and is continuing to respond to requests for information from SDNY-USAO. SIMAD has also voluntarily produced to the SEC the productions it produced in response to the EDNY-USAO Subpoena. SIMAD also reproduced each of the productions made in response to the EDNY-USAO Subpoena to the Creditors' Committee.

Given the nature of the investigations across multiple jurisdictions, SIMAD has coordinated its response to the investigations with the administration of these Chapter 11 Cases. As of the date of this Disclosure Statement, each of the investigations remains pending, and

SIMAD cannot predict the timing or outcome of any of them. SIMAD will continue to cooperate with the applicable governmental authorities, DOJ, SEC and ISA, going forward; any cooperation by the Liquidation Trust shall be determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement and/or applicable law, and shall be subject to the preservation of all applicable privileges and protections and to the resources of the Liquidation Trust. Nothing in this Disclosure Statement constitutes an admission of fact or liability with respect to any of the investigations, and SIMAD reserves all rights in connection therewith.

**2.4.12** **The Mulligan Adversary Proceeding**. On November 13, 2026, the SIMAD Debtors commenced an adversary proceeding against Mulligan Funding LLC ("Mulligan") and FinWise Bank ("FinWise") in the Bankruptcy Court, captioned *SIMAD Holdings Ltd., et al. v. Mulligan Funding LLC and FinWise Bank*, Adv. Pro. No. 26-01656 (CMG). The adversary proceeding concerns two loans of $7,500,000 each that FinWise made on January 20, 2026 to non-Debtor affiliates DAMIS Holdings, LLC and SIMAD Holdings LLC (together, the "Loans"). Mulligan has filed fifty-six (56) substantially identical proofs of claim against the SIMAD Debtors, each in the amount of $17,073,810.00 and some asserted as secured. Mulligan asserts that the SIMAD Debtors are liable on the Loans under a borrower addendum that purports to add more than one hundred (100) entities as borrowers. The SIMAD Debtors allege that they never expressly agreed to be bound by the Loan agreements. They further allege that no documentation shows the individuals who signed the addendum had authority to bind them, and that they did not receive the benefit of the Loan proceeds. The SIMAD Debtors also contend that the proofs of claim do not establish whether Mulligan owns the Loans or only services them as FinWise's agent. In addition, the SIMAD Debtors allege that the claims may include unmatured or usurious interest.

On these grounds, the SIMAD Debtors seek to disallow the proofs of claim under sections 502(b) and 502(d) of the Bankruptcy Code, or to reduce or reclassify them. They also seek a declaration under section 506 that any claims are unsecured. In the alternative, the SIMAD Debtors seek to avoid three categories of transfers and obligations under sections 547 and 548 of the Bankruptcy Code:

- liens perfected through UCC financing statements filed on or one day before the Petition Date;
- approximately $2.96 million in payments made within the ninety days before the Petition Date and approximately $9.48 million in payments made within the two years before it; and
- the SIMAD Debtors' obligations under the Loans themselves.

The SIMAD Debtors also seek to recover any avoided transfers under section 550 and to preserve them for the estates under section 551. The Defendants have not yet responded to the complaint. The SIMAD Debtors cannot predict the outcome of the adversary proceeding or its effect on recoveries for Holders of Claims, and all parties reserve their rights.

**2.4.13** **Retained Causes of Action and Liquidation Trust Assets**. On the Effective Date, the Liquidation Trust Assets, including the Retained Causes of Action, will vest in

the Liquidation Trust. The Camp Business Debtors currently estimate that the Liquidation Trust Assets will consist of (i) Cash remaining after payment of the DIP Claims, the Mishmeret Prepetition Secured Claims (to the extent of the proceeds of the Mishmeret Collateral Pool Debtors), other Allowed Secured Claims and the funding of the Liquidation Trust Claims Reserve, the Liquidation Trust Expense Reserve, and the Professional Fee Claim Reserve, in the estimated amount of $0.8 million; (ii) proceeds of the Sale Transactions held in escrow pursuant to the Asset Purchase Agreements or on account of purported FIRPTA withholding obligations, to the extent released to the Camp Business Debtors and subject to the payment of the claims listed in (i) above; (iii) rights under the Camp Business Debtors' insurance policies; and (iv) the Retained Causes of Action described below.

The Retained Causes of Action include, without limitation, and without any admission as to merit or amount: (a) claims and causes of action against Michael Shabsels, David Shabsels and other current and former insiders of the Debtors, including claims arising from transfers of proceeds of the Debentures (Series A) and other property of the Debtors to or for the benefit of such persons and entities controlled by them, and claims for breach of fiduciary duty; (b) claims and causes of action against the DAMIS Debtors, including claims on account of funds of the Camp Business Debtors received and held by the DAMIS Debtors and claims to avoid and recover transfers made to the DAMIS Debtors; (c) claims to avoid and recover transfers made to MCA Lenders and other creditors within the periods specified in sections 547, 548 and 550 of the Bankruptcy Code and applicable non-bankruptcy law, including transfers made during the ninety (90) days prior to the Petition Date as disclosed in the Schedules and Statements; (d) claims to avoid and recover transfers to insiders disclosed in the Schedules and Statements; (e) claims to avoid, subordinate or recharacterize liens and security interests asserted by MCA Lenders, Visions, Newtek, Enhanced Capital, the SBA and other parties, including the claims asserted in Adv. Pro. No. 26-01439; (f) claims arising from the Characterization Dispute and similar disputes with other MCA Lenders; (g) claims against the Debtors' former professionals, vendors and counterparties; (h) Claims and Causes of Action of the Camp Business Debtors against any other Debtor (including the Holding Company Debtors), Affiliate, or other related Entity, as preserved under Article IV.S of the Plan; and (i) rights to recover under any D&O Liability Insurance Policy on account of Claims and Causes of Action against Excluded Parties. A schedule of Retained Causes of Action identifying, by category and, where practicable, by defendant, the claims the Camp Business Debtors have identified to date will be Filed with the Plan Supplement. The failure to identify any claim or cause of action herein or in such schedule shall not constitute a waiver or release thereof. In accordance with the Plan, in no event shall any Claim or Cause of Action against Mishmeret, the Prepetition Secured Parties, the DIP Lenders, or any of their Related Parties (other than Excluded Parties) constitute a Retained Cause of Action.

**2.4.14 The Bar Dates**. On July 7, 2026, the Debtors filed the Debtors' *Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 406] seeking entry of an order (the "Bar Date Order"), establishing the following claims bar dates:

| | |
|---|---|
| ***General Claims Bar Date*** | **August 14, 2026, at 5:00 p.m., prevailing Eastern Time,** as the last date and time for all Persons and Entities to submit proofs of claim based on prepetition claims, including requests for payment under section 503(b)(9) of the Bankruptcy Code (collectively, "Proofs of Claim") against the Debtors (the "General Claims Bar Date"). |
| ***Governmental Bar Date*** | Solely as to Governmental Units, **December 2, 2026, at 5:00 p.m., prevailing Eastern Time**, as the last date and time for each such Governmental Unit to file Proofs of Claim asserting Claims against the Debtors that arose on or before the Petition Date (the "Governmental Bar Date"). |
| ***Amended Schedules Bar Date*** | In the event that the Debtors amend their Schedules (as defined herein), the later of (a) the General Claims Bar Date or the Governmental Bar Date, as applicable, and (b) 5:00 p.m., prevailing Eastern Time, on the date that is thirty (30) days from the date on which the Debtors provide notice of the amendment to the Schedules, as the last date and time by which claimants holding Claims affected by the amendment must file Proofs of Claim against the Debtors (such later date, the "Amended Schedules Bar Date"). |
| ***Rejection Damages Bar Date*** | Solely as to Claims arising from the Debtors' rejection of executory contracts and unexpired leases, the later of (a) (i) the General Claims Bar Date or (ii) the Governmental Bar Date, as applicable, and (b) 5:00 p.m., prevailing Eastern Time, on the date that is thirty (30) days following entry of the order approving the Debtors' rejection of the applicable executory contract or unexpired lease as the last date and time by which claimants holding Claims based upon such rejection must file Proofs of Claim against the Debtors, unless otherwise ordered by the Bankruptcy Court (such later date, the "Rejection Damages Bar Date" and together with the General Claims Bar Date, the Governmental Bar Date, and the Amended Schedules Bar Date, collectively, the "Bar Dates"). |

**2.4.15 Schedules and Statements**. On August 3, 2026, the Debtors filed their *Statements of Financial Affairs and Schedules of Assets and Liabilities* [Docket Nos. 712-771, 780] (as amended or modified and together as, the "Schedules and Statements").

**2.4.16 The Creditors' Committee**. On July 9, 2026, the Office of the U.S. Trustee appointed the Committee in these Chapter 11 Cases consisting of: (i) Smaller Earth Group *dba* Camp Leaders; (ii) American Institute for Foreign Study Inc. *dba* Camp America; (iii) Tavezio; (iv) Camp Specialists Ltd; and (v) Kelly Smith Brown, Individually. *See* Docket No. 438. On August 25, 2026, the Bankruptcy Court entered orders [Docket Nos. 934, 937, 938] authorizing

the Committee to employ and retain McDermott Will & Schulte LLP and Robinson & Cole LLP as its counsel and M3 Advisory Partners, LP as its financial advisor, effective as of July 10, 2026.

## III. <u>FEASIBILITY</u>

### 3.1 FINANCIAL FEASIBILITY ANALYSIS.

**3.1.1 <u>The Bankruptcy Code Standard</u>**. The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Camp Business Debtors unless contemplated by the Plan.

**3.1.2 <u>No Need for Further Reorganization of the Camp Business Debtors</u>**. The Plan provides for the liquidation or distribution of all of the Camp Business Debtors' Assets. Accordingly, the Camp Business Debtors believe that all Plan obligations will be satisfied without the need for further reorganization of the Camp Business Debtors.

## IV. <u>ALTERNATIVES TO THE PLAN</u>

### 4.1 CHAPTER 7 LIQUIDATION

**4.1.1 <u>The Plan is in the Best Interests of Creditors</u>**. Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each impaired class, that each holder of a claim or an equity interest in such impaired class either (1) has accepted the plan or (2) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting holder would receive or retain if the Camp Business Debtors liquidated under chapter 7.

The Camp Business Debtors believe that the Plan will satisfy the best interests test because, among other things, the recoveries expected to be available to Holders of Allowed Claims and Interests under the Plan will be greater than the recoveries expected to be available in a chapter 7 liquidation, as discussed more fully below.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets and to make distributions to creditors in accordance with the priorities established in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of their collateral. If any assets remain in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses are next to be paid. After accounting for administrative expenses, unsecured creditors (including any secured creditor deficiency claims) are paid from the sale proceeds of any unencumbered assets and any remaining sale proceeds of encumbered assets in excess of any secured claims, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, interest holders receive the balance that remains, if any, after all creditors are paid.

All or substantially all of the assets of the Camp Business Debtors' business will be liquidated through the Sale Transactions, and the Plan effects a wind down of the Camp Business Debtors' remaining assets not otherwise acquired in the Sale Transactions. Although a chapter 7 liquidation would achieve the same goal, the Camp Business Debtors believe that the Plan provides a greater recovery to Holders of Claims than a chapter 7 liquidation would. Liquidating the Camp Business Debtors' Estates under the Plan likely provides Holders of Claims with a larger, more timely recovery, primarily due to the additional costs of a chapter 7 liquidation, the order of distribution in chapter 7, and the absence in chapter 7 of any recovery comparable to the Settlement Fund.

A chapter 7 liquidation beginning on what would have been the Effective Date would provide less recovery for creditors than the Plan. Substantially all of the Sale Transactions have been consummated. A chapter 7 trustee would nonetheless be required to become familiar with the Camp Business Debtors' remaining assets, the Claims asserted against the Estates and the Retained Causes of Action, and would not have the knowledge of the Camp Business Debtors' businesses, the Claims and the Chapter 11 Cases that the Camp Business Debtors, the Committee and their respective professionals have developed, including in the reconciliation of Claims and the investigation of the Retained Causes of Action. Moreover, the distributable proceeds under a chapter 7 liquidation will be lower because of the chapter 7 trustee's fees and expenses.

In addition, recoveries would be further reduced (in comparison with the Plan) due to the expenses that would be incurred in a chapter 7 liquidation, including added expenses for wind down costs and costs incurred by the chapter 7 trustee and any retained professionals in familiarizing themselves with the Camp Business Debtors' assets, and these specific Chapter 11 Cases, in order to complete the administration of the Estates. *See, e.g.*, 11 U.S.C. § 326(a) (providing for compensation of a chapter 7 trustee up to three percent of the value of the assets); 11 U.S.C. § 503(b)(2) (providing administrative expense status for compensation and expenses of a chapter 7 trustee and such trustee's professionals).

The Camp Business Debtors' Estates would continue to be obligated to pay all unpaid expenses incurred by the Camp Business Debtors during the Chapter 11 Cases (such as compensation for Professionals), which may constitute Allowed Claims in any chapter 7 case. Moreover, the conversion to chapter 7 would also require entry of a new bar date for filing claims that would be more than ninety (90) days following conversion of the case to chapter 7. *See* Fed. R. Bankr. P. 1019(2); 3002(c). Thus, the amount of Claims ultimately filed and Allowed against the Camp Business Debtors could materially increase, thereby further reducing creditor recoveries versus those available under the Plan.

In light of the foregoing, the Camp Business Debtors submit that a chapter 7 liquidation would result in materially reduced sale proceeds, increased expenses, delayed distributions, and the prospect of additional claims that were not asserted in the Chapter 11 Cases. Accordingly, the Camp Business Debtors believe that the Plan provides an opportunity to bring the highest return for creditors. As set forth in the Liquidation Analysis attached hereto as <u>Exhibit C</u>, the Camp Business Debtors estimate that in a chapter 7 liquidation (i) the costs of administration, including chapter 7 trustee commissions under section 326(a) of the Bankruptcy Code, would be approximately $[●] million, (ii) holders of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims would receive estimated recoveries of approximately

[●] %, [●] % and [●] %, respectively, as compared with payment in full under the Plan, (iii) holders of Allowed Mishmeret Prepetition Secured Claims would receive an estimated recovery of approximately [●]%, as compared with approximately [●]% under the Plan, and holders of Allowed Disputed Secured MCA Claims would receive approximately [●]%, as compared with approximately [●]% under the Plan, (iv) holders of Allowed Disputed Unsecured MCA Claims would receive approximately [●]%, as compared with approximately [●]% under the Plan, and (v) holders of Allowed General Unsecured Claims (including Convenience Class Claims) would receive [●]% and [●]% as compared with estimated recoveries of approximately [●]% (Classes 7 and 8) and approximately [●]% (Class 9) under the Plan.

### 4.2 ALTERNATIVE PLAN(S)

If the Plan is not confirmed, the Camp Business Debtors or other Persons could attempt to formulate and propose a different plan. The Camp Business Debtors believe that the Plan, as described herein, enables holders of Claims or Interests to realize the greatest possible value under the circumstances, and that compared to any alternative plan, the Plan has the greatest chance of being confirmed and consummated.

## V. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### 5.1 GENERAL

The following discussion is a summary of certain U.S. federal income tax consequences of the consummation of the Plan to the Camp Business Debtors and to certain U.S. Holders and Non-U.S. Holders (each as defined below) of Claims entitled to vote on the Plan, and it does not address the U.S. federal income tax consequences to Holders of Claims and Equity Interests whose Claims and Equity Interests are unimpaired or otherwise not entitled to vote on the Plan. This summary is based on the Internal Revenue Code of 1986, as amended (the "IRC"), the U.S. Treasury Regulations promulgated thereunder (the "Treasury Regulations"), judicial decisions, revenue rulings and revenue procedures of the U.S. Internal Revenue Service (the "IRS") and any other published administrative rules and pronouncements of the IRS, all as in effect on the date of this Disclosure Statement and all of which are subject to change or differing interpretations. Changes in applicable tax law may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below. Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below. No opinion of counsel has been obtained and the Camp Business Debtors do not intend to seek a ruling from the IRS as to any of the tax consequences of the Plan discussed below. The discussion below is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This summary does not address non-U.S., state, local, or non-income tax consequences of the Plan (including such consequences with respect to the Camp Business Debtors), nor does it purport to address all aspects of U.S. federal income taxation that may be relevant to a Holder in light of its individual circumstances or to a Holder that may be subject to special tax rules (such as persons who are related to the Camp Business Debtors within the meaning of the IRC, U.S. Holders whose functional currency is not the U.S. dollar, U.S. expatriates, certain former citizens

or long-term residents of the United States, broker-dealers, banks, mutual funds, insurance companies, financial institutions, retirement plans, small business investment companies, regulated investment companies, real estate investment trusts, tax-exempt organizations, controlled foreign corporations, passive foreign investment companies, partnerships (or other entities treated as partnerships or other pass-through entities), beneficial owners of partnerships (or other entities treated as partnerships or other pass-through entities), subchapter S corporations, Holders of Claims as part of a straddle, hedge, conversion transaction, or other integrated investment, persons using a mark-to-market method of accounting, and Holders of Claims who are themselves in bankruptcy). Furthermore, this summary assumes that a Holder of a Claim holds only Claims in a single Class and holds such a Claim only as a "capital asset" (within the meaning of section 1221 of the IRC). This summary also assumes that the Claims against any of the Camp Business Debtors will be respected for U.S. federal income tax purposes in accordance with their form, and that the Claims constitute interests in the Camp Business Debtors "solely as a creditor" for purposes of section 897 of the IRC (and thus are not subject to withholding under the Foreign Investment in Real Property Tax Act). This discussion does not address the U.S. federal income tax consequences to Holders (a) whose Claims are unimpaired or otherwise entitled to payment in full under the Plan, or (b) that are deemed to accept or deemed to reject the Plan. Additionally, this discussion does not address any consideration being received other than in a person's capacity as a Holder of a Claim.

For purposes of this discussion, the term "U.S. Holder" means a Holder of a Claim (including a beneficial owner of a Claim), that is, for U.S. federal income tax purposes, (i) an individual citizen or resident of the United States, (ii) a corporation, or other entity treated as a corporation, created or organized in or under the laws of the United States or any state thereof or the District of Columbia, (iii) a trust if (a) a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more U.S. persons (within the meaning of section 7701(a)(30) of the IRC) have the authority to control all substantial decisions of the trust or (b) such trust has made a valid election under applicable Treasury Regulations to be treated as a U.S. person for U.S. federal income tax purposes, or (iv) an estate, the income of which is includible in gross income for U.S. federal income tax purposes regardless of its source.

For purposes of this discussion, a "Non-U.S. Holder" is any Holder of a Claim that is neither a U.S. Holder nor a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes). In the case of a Holder that is classified as a partnership for U.S. federal income tax purposes, the tax treatment of a partner generally will depend upon the status of the partner and the activities of the partner or the partnership. If you are a partner (or other beneficial owner) of a partnership (or other entity treated as a partnership or other pass-through entity) that is, or will be, a Holder of a Claim, then you should consult your own tax advisors.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO YOU. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE U.S. FEDERAL, STATE, LOCAL, NON-U.S., NON-INCOME, AND OTHER TAX CONSEQUENCES OF THE PLAN.**

## 5.2 CONSEQUENCES TO THE CAMP BUSINESS DEBTORS

**5.2.1 Cancellation of Debt Income**. In general, absent an exception, a taxpayer will realize and recognize cancellation of indebtedness income ("CODI") upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of CODI, in general, is the excess of (1) the adjusted issue price of the indebtedness satisfied, over (2) the fair market value of any consideration given in satisfaction of such indebtedness at the time of the exchange.

Under section 108 of the IRC, a taxpayer is not required to include CODI in gross income (a) if the taxpayer is under the jurisdiction of a court in a case under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that case, or (b) to the extent that the taxpayer is insolvent immediately before the discharge. Instead, as a consequence of such exclusion, a taxpayer-debtor must reduce its tax attributes by the amount of CODI that it excluded from gross income. In general, tax attributes will be reduced in the following order: (a) net operating losses; (b) most tax credits; (c) capital loss carryovers; (d) tax basis in assets (but not below the amount of liabilities to which the debtor remains subject); (e) passive activity loss and credit carryovers; and (f) foreign tax credits. Alternatively, the taxpayer can elect first to reduce the basis of its depreciable assets pursuant to section 108(b)(5) of the IRC.

## 5.3 CONSEQUENCES TO CERTAIN U.S. HOLDERS OF CLAIMS AND INTERESTS

**5.3.1 Consequences to Holders of Allowed General Unsecured Claims**. A U.S. Holder of Allowed General Unsecured Claims that receives Cash will be treated as receiving payment in a taxable exchange under section 1001 of the IRC. Other than with respect to any amounts received that are attributable to accrued but untaxed interest (or original issue discount), each U.S. Holder of such Claims should recognize gain or loss equal to the difference between the (a) sum of the Cash received in exchange for the Claim, and (b) such U.S. Holder's adjusted basis, if any, in such Claim. A U.S. Holder's ability to deduct any loss recognized on the exchange of its Claims will depend on such U.S. Holder's own circumstances and may be restricted under the IRC.

**HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.**

**5.3.2 Accrued Interest and OID**. A portion of the payment received by Holders of Allowed Claims may be attributable to accrued interest or original issue discount ("OID") on such Claims. Such amount should be taxable to that U.S. Holder as interest income if such accrued interest or OID has not been previously included in the Holder's gross income for United States federal income tax purposes. Conversely, U.S. Holders of Claims may be able to recognize a deductible loss to the extent any accrued interest or OID on the Claims was previously included in the U.S. Holder's gross income but was not paid in full by the Camp Business Debtors.

If the payment does not fully satisfy all principal and interest or OID on Allowed Claims, the extent to which payment will be attributable to accrued interest or OID is unclear. Under the

Plan, the aggregate consideration to be distributed to Holders of Allowed General Unsecured Claims will be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest or OID that accrued on such Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan is binding for United States federal income tax purposes, while certain Treasury Regulations generally treat payments as allocated first to any accrued but unpaid interest or OID and then as a payment of principal. The IRS could take the position that the payment received by the U.S. Holder should be allocated in some way other than as provided in the Plan.

**HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS AND THE FEDERAL INCOME TAX TREATMENT OF ACCRUED INTEREST.**

**5.3.3 Market Discount**. Under the "market discount" provisions of the IRC, some or all of any gain realized by a U.S. Holder of a Claim who exchanges the Claim for an amount may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on the debt instruments constituting the exchanged Claim. In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if its U.S. Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with original issue discount, its adjusted issue price, in each case, by at least a de minimis amount (equal to 0.25% of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

Any gain recognized by a U.S. Holder on the taxable disposition of Allowed Claims (determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Allowed Claims were considered to be held by the U.S. Holder (unless the U.S. Holder elected to include market discount in income as it accrued).

## 5.4 MATTERS RELATED TO THE DISPUTED CLAIMS RESERVE

Although not free from doubt, U.S. Holders should not recognize any gain or loss when amounts are set aside in the reserve for Disputed Claims but should recognize gain or loss in an amount equal to: (i) the amount of Cash actually distributed to such U.S. Holder from the reserve, less (ii) the U.S. Holder's adjusted tax basis of its Claim when and to the extent Cash is actually distributed to such U.S. Holder. The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the U.S. Holder, the nature of the Claim in such U.S. Holder's hands, whether the Claim was purchased at a discount, and whether and to what extent the U.S. Holder previously has claimed a bad debt deduction with respect to its Claim. It is possible that the recognition of any loss realized by a U.S. Holder may be deferred until the reserve for Disputed Claims has made all payments to Holders of Disputed Claims. U.S. Holders are urged to consult their tax advisors regarding the possible application (and the ability to elect out) of the "installment method" of reporting any gain that may be recognized by such Holders in respect of their Claims due to the receipt of cash in a

taxable year subsequent to the taxable year in which the reserve is established. The discussion herein assumes that the installment method does not apply.

The timing of the inclusion of income may be subject to alteration for accrual method U.S. Holders that prepare "applicable financial statements" (as defined in Section 451 of the IRC), which may require the inclusion of income no later than the time such amounts are reflected on such financial statement.

### 5.5 CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES TO NON-U.S. HOLDERS OF CLAIMS

The following discussion includes only certain U.S. federal income tax consequences of the payments to Non-U.S. Holders for Claims. The discussion does not include any non-U.S. tax considerations. The rules governing the U.S. federal income tax consequences to Non-U.S. Holders are complex. Each Non-U.S. Holder should consult its own tax advisor regarding the U.S. federal, state, and local and the foreign tax consequences of the payments to such Non-U.S. Holder.

Whether a Non-U.S. Holder realizes gain or loss on the payment of a Claim and the amount of such gain or loss is generally determined in the same manner as set forth above in connection with U.S. Holders.

**5.5.1 <u>Gain Recognition</u>**. Any gain realized by a Non-U.S. Holder on the exchange of its Claim generally will not be subject to U.S. federal income taxation unless (i) the Non-U.S. Holder is an individual who was present in the United States for 183 days or more during the taxable year in which the exchange occurs or who otherwise meets the so-called "substantial presence test" under Section 7701(b)(3) of the IRC, or (ii) such gain is effectively connected with the conduct by such Non-U.S. Holder of a trade or business in the United States (and if an income tax treaty applies, such gain is attributable to a permanent establishment maintained by such Non-U.S. Holder in the United States).

If the first exception applies, to the extent that any gain is taxable, the Non-U.S. Holder generally will be subject to U.S. federal income tax at a rate of 30 percent (or at a reduced rate or exemption from tax under an applicable income tax treaty) on the amount by which such non-U.S. Holder's gains allocable to U.S. sources exceed losses allocable to U.S. sources during the taxable year of the exchange. If the second exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax with respect to any gain realized on the exchange if such gain is effectively connected with the Non-U.S. Holder's conduct of a trade or business in the United States in the same manner as a U.S. Holder. To claim an exemption from withholding tax, such Non-U.S. Holder will be required to provide a properly executed IRS Form W-8ECI (or such successor form as the IRS designates). In addition, if such a Non-U.S. Holder is a corporation, it may be subject to a branch profits tax equal to 30 percent (or such lower rate provided by an applicable treaty) of its effectively connected earnings and profits for the taxable year, subject to certain adjustments.

**5.5.2 <u>Accrued Interest</u>**. The United States generally imposes a 30% U.S. federal withholding tax on payments of interest to Non-U.S. Holders. Subject to the discussion below of interest effectively connected with the conduct of a trade or business within the United States, a

Non-U.S. Holder will not be subject to the 30% U.S. federal withholding tax with respect to payments of interest, provided that:

i. it does not own, actually or constructively, 10% or more of the total combined voting power of all classes of stock entitled to vote;

ii. it is not a "controlled foreign corporation" with respect to which the Debtors are, directly or indirectly, a "related person"; and

iii. it provides its name and address, and certifies, under penalties of perjury, that it is not a U.S. person (on a properly executed IRS Form W-8BEN or W-8BEN-E (or other applicable form)), or it holds its notes through certain foreign intermediaries and the foreign intermediaries satisfy the certification requirements of applicable Treasury Regulations.

If you cannot satisfy the requirements described above, you will be subject to the 30% U.S. federal withholding tax with respect to payments of interest on the notes, unless you provide the applicable withholding agent with a properly executed IRS Form W-8BEN or W-8BEN-E or other applicable form claiming an exemption from or reduction in withholding under the benefit of an applicable U.S. income tax treaty.

If such interest is effectively connected with the conduct by the Non-U.S. Holder of a trade or business within the United States, provided the Non-U.S. Holder provides a properly executed IRS Form W-8ECI (or successor form) to the withholding agent, the Non-U.S. Holder (x) generally will not be subject to withholding tax, but (y) will be subject to U.S. federal income tax in the same manner as a U.S. Holder (unless an applicable income tax treaty provides otherwise), and a Non-U.S. Holder that is a corporation for U.S. federal income tax purposes may also be subject to a branch profits tax with respect to such Non-U.S. Holder's effectively connected earnings and profits that are attributable to the accrued but untaxed interest at a rate of 30 percent (or at a reduced rate or exemption from tax under an applicable income tax treaty).

**5.5.3 FATCA.** Under the Foreign Account Tax Compliance Act ("FATCA"), foreign financial institutions and certain other foreign entities must report certain information with respect to their U.S. account Holders and investors or be subject to withholding on the receipt of "withholdable payments." For this purpose, "withholdable payments" are generally U.S. source payments of interest on certain types of obligations. FATCA withholding may apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding tax. U.S. Holders that hold Claims through foreign financial institutions and Non-U.S. Holders are encouraged to consult their tax advisors regarding the possible implications of these rules on their Claims.

## 5.6 INFORMATION REPORTING AND BACK-UP WITHHOLDING

Information reporting requirements may apply to payments under the Plan. Additionally, under the backup withholding rules, a Holder of a Claim may be subject to backup withholding (currently at a rate of 24%) with respect to payments made pursuant to the Plan unless that Holder: (a) comes within certain exempt categories (which generally include corporations) and, when

required, demonstrates that fact; or (b) timely provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding (generally in the form of a properly executed IRS Form W-9 for a U.S. Holder, and, for a Non-U.S. Holder, in the form of a properly executed applicable IRS Form W-8 (or otherwise establishes such Non-U.S. Holder's eligibility for an exemption)). Backup withholding is not an additional tax but is, instead, an advance payment that may be refunded to the extent it results in an overpayment of tax; provided that the required information is timely provided to the IRS.

The Liquidation Trust, or the applicable agent, will withhold all amounts required by law to be withheld from payments under the Plan and comply with all applicable information reporting requirements.

**THE UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF UNITED STATES FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AGAINST THE CAMP BUSINESS DEBTORS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

## VI. RISK FACTORS

**Holders of Claims or Interests should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement, before making a judgment with respect to voting to either accept or reject the Plan.**

### 6.1 CERTAIN BANKRUPTCY CONSIDERATIONS

Even if all Impaired voting classes vote to accept the Plan and the requirements for "cramdown" are met, the Bankruptcy Court may exercise substantial discretion and may choose not to confirm the Plan. Section 1129 of the Bankruptcy Code requires, among other things, that the value of distributions to dissenting holders of Claims or Interests may not be less than the value such holders would receive if the Camp Business Debtors were liquidated under Chapter 7 of the Bankruptcy Code. Although the Camp Business Debtors believe that the Plan will meet such requirements, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

Any objection to the Plan by a member of a class of Claims or Interests could also prevent Confirmation of the Plan or delay such Confirmation for a significant period of time.

If the Plan is not confirmed or is confirmed but does not go effective, it is unclear what distribution, if any, holders of Allowed Claims ultimately would receive with respect to their Claims.

### 6.2 CLAIMS ESTIMATION & CASH AVAILABLE AFTER DISTRIBUTION

There can be no assurance that the estimated amounts of Claims and Interests set forth herein are correct, and the actual allowed amounts of Claims and Interests may differ from the estimates. The estimated amounts are subject to certain risks, uncertainties and assumptions, including, without limitation, that unanticipated proofs of claim are filed against the Estates prior to the Bar Dates and such Claims are either not subject to a valid objection by the Camp Business Debtors or such objections are overruled by the Bankruptcy Court. In particular, the Governmental Bar Date is December 2, 2026 and Governmental Units (including the IRS and the United States Department of Justice) may assert Claims in amounts that materially exceed the estimates set forth herein, including Claims arising from the matters described in Section 2.4.11.

## VII. ADDITIONAL RISK FACTORS

**FIRPTA Withholding**. As described in Section 2.4.10, approximately $19.9 million of proceeds of the Sale Transactions has been withheld, escrowed or reserved on account of purported FIRPTA withholding obligations. If the FIRPTA Motion is not finally resolved in the Debtors' favor, those amounts will not be available to satisfy the Mishmeret Prepetition Secured Claims or to fund distributions under the Plan, and the Lender Deficiency Claim in Class 8 will be correspondingly larger.

**Disputed Prepetition Secured Loan Claims and Disputed Secured MCA Claims**. The Visions Loan ($18,650,000 asserted) and the Newtek Loan ($15,941,579 asserted) are the subject of pending or anticipated litigation. The Enhanced Capital Loan ($2,502,031 asserted) is also classified as a Disputed Prepetition Secured Loan Claim under the Plan. If any such Claim is Allowed as a Secured Claim, it will be paid in full in Cash from the proceeds of the Sale Transactions ahead of the Mishmeret Prepetition Secured Claims and will reduce the amounts available to holders of Beneficial Trust Interests. The Liquidation Analysis conservatively assumes that the Visions, Newtek and Enhanced Capital Claims are each paid in full at their asserted secured amounts ahead of the Mishmeret Prepetition Secured Claims; to the extent any such Claim is disallowed or determined to be unsecured, the recovery on the Mishmeret Prepetition Secured Claims would increase and the Lender Deficiency Claim would decrease. Similarly, if any Disputed Secured MCA Claim is Allowed as a Secured Claim, it will be paid from the proceeds of the applicable Collateral ahead of junior Claims.

**The Characterization Dispute**. The Bankruptcy Court has not yet ruled on the Characterization Dispute described in Section 2.4.8. A determination that the OrcaFunding agreements constitute true sales of future receipts rather than disguised loans could affect the characterization and treatment of other MCA Loans, the amount of Allowed Claims in Classes 6 and 7, and the Retained Causes of Action against MCA Lenders.

**Lender Deficiency Claims**. The Camp Business Debtors expect that Mishmeret will hold a Lender Deficiency Claim in Class 8 in an amount that depends upon, among other things, the resolution of the FIRPTA Motion, the Disputed Prepetition Secured Loan Claims and the remaining Sale Transactions. The Lender Deficiency Claim will share pro rata with other Allowed General Unsecured Claims in the Liquidation Trust Assets (but not in the Settlement Fund) and

will reduce the recovery of other holders of Beneficial Trust Interests from the Liquidation Trust Assets.

**The Settlement Fund**. The Settlement Fund is held and administered by the Committee Successor in its sole and absolute discretion, is not property of the Estates and is not subject to the distribution priorities of the Bankruptcy Code. No assurance can be given as to the amount or timing of any distribution from the Settlement Fund to any particular holder of an Allowed General Unsecured Claim. The United States has appealed the 9019 Settlement Order; if the appeal is successful, the Settlement Fund and the other terms of the Settlement could be modified, vacated, or terminated.

**Recoveries Dependent on Litigation**. Apart from the Settlement Fund, distributions to holders of Beneficial Trust Interests will depend substantially upon the Liquidation Trustee's success in prosecuting or settling the Retained Causes of Action, including claims against the DAMIS Debtors, Michael Shabsels, David Shabsels and other insiders, and claims against MCA Lenders. Such litigation is inherently uncertain, may take several years to resolve, may be subject to defenses (including the defenses available to subsequent transferees under section 550(b) of the Bankruptcy Code), and will be funded from the Liquidation Trust Expense Reserve and the Liquidation Trust Assets. The DAMIS Debtors are debtors in separately administered chapter 11 cases, and any recovery from the DAMIS Debtors will depend upon the administration of their estates. No assurance can be given that the Liquidation Trust Expense Reserve will be sufficient to fund the prosecution of the Retained Causes of Action.

**Governmental Investigations**. As described in Section 2.4.11, SIMAD Holdings Ltd. is the subject of criminal and civil investigations in the United States and Israel, including a civil investigation by the SDNY-USAO seeking damages and penalties of approximately $43 million under the False Claims Act. The Camp Business Debtors cannot predict the outcome of those investigations, which could result in Claims against one or more of the Camp Business Debtors, require the Liquidation Trust to incur costs of cooperation, or otherwise affect the timing and amount of distributions.

**Remaining Sale Transactions and Conditions to the Effective Date**. Certain Sale Transactions have not closed as of the date hereof. Delay in or failure of any remaining Sale Transaction could delay the Effective Date and reduce the amounts available for distribution.

**Separate Plans; Intercompany Claims**. The Holding Company Debtors have proposed a separate chapter 11 plan, and the DAMIS Debtors and other SIMAD Debtors are not subject to any plan as of the date hereof. The treatment of intercompany claims among the Camp Business Debtors, the Holding Company Debtors, and such other SIMAD Debtors, and the allocation of certain Retained Causes of Action among their respective estates, has not been finally determined. Under Article IV.S of the Plan, all Claims and Causes of Action of the Camp Business Debtors against any other Debtor (including the Holding Company Debtors), any Affiliate, or any other related Entity are preserved and vest in the Liquidation Trust as Retained Causes of Action; however, the allowance, amount, priority, and collectability of such Claims in the Chapter 11 Cases of such other Debtors may affect the amount of Liquidation Trust Assets.

**Directors' and Officers' Insurance**. The Plan requires the Liquidation Trust to purchase a run-off or tail policy under the Camp Business Debtors' directors' and officers' insurance policies with a term of not less than six years, on terms and limits no less favorable than under the current D&O Liability Insurance Policy, with the premium paid on or before the Effective Date. No assurance can be given as to the cost or availability of such coverage, and the cost of such coverage will reduce the amounts available for distribution.

## VIII. CONCLUSION

It is important that you exercise your right to vote on the Plan. It is the Camp Business Debtors' belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against and Interests in the Camp Business Debtors. In the opinion of the Camp Business Debtors, the Plan is preferable to any potential alternatives described in this Disclosure Statement because the Plan provides for a larger distribution to the holders of Allowed Claims than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to holders of Allowed Claims than proposed under the Plan. Accordingly, the Camp Business Debtors recommend that holders of Claims entitled to vote on the Plan support Confirmation of the Plan and vote to accept the Plan. The Creditors' Committee supports Confirmation of the Plan and recommends that holders of Class 7 Disputed Unsecured MCA Claims, Class 8 General Unsecured Claims, and Class 9 Convenience Class Claims vote to accept the Plan. A letter from the Creditors' Committee setting forth its recommendation is included in the Solicitation Package for such holders.

Dated: November 20, 2026

Respectfully Submitted,

The Camp Business Debtors and Debtors-in-Possession

By:

/s/ *Assaf Ravid*
Assaf Ravid
Chief Restructuring Officer

**Exhibit A**

**Chapter 11 Plan**

(Intentionally Omitted)

**Exhibit B**

**Organizational Chart**

# SIMAD Holdings Ltd. — Corporate Organizational Chart

Prepared for Bankruptcy Court Filing | District of New Jersey | All Debtor Entities




= Non-filing entity

* References to "SIMAD" in the left branch refer to SIMAD Holdings Ltd.

** References to "SIMAD" in the right branch refer to SIMAD Equities LLC.

Note: "DAMIS" means and refers to DAMIS Holdings LLC, a separately administered debtor affiliate, pending under the case caption *In re DAMIS Holdings LLC*, Case No. 26-16439 (CMG) (Bankr. D.N.J.).

**Exhibit C**

**Liquidation Analysis**

**[TO COME]**

**Exhibit 2**

**Solicitation and Voting Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**SOLICITATION AND VOTING PROCEDURES**

**PLEASE TAKE NOTICE THAT** on [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order")[2] approving, among other things, the Disclosure Statement on a conditional basis and authorizing the Holding Company Debtors to provide notice of their intent to seek confirmation of the Plan pursuant to certain procedures set forth therein, including the solicitation of votes to accept or reject the Plan. The Bankruptcy Court's conditional approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

**A. Voting Record Date.**

The Bankruptcy Court has established **[●]**, as the Voting Record Date for purposes of determining which Holders of Claims in Class 4 (Mishmeret Prepetition Secured Claims), Class 5 (Disputed Secured MCA Claims), Class 6 (Disputed Unsecured MCA Claims), and Class 7 (General Unsecured Claims) are entitled to vote on the Plan (the "Voting Record Date").

**B. The Voting Deadline.**

The Bankruptcy Court has established **[●] at 4:00 p.m., prevailing Eastern Time**, as the voting deadline (the "**Voting Deadline**") and the deadline for Holders of Claims and Interests to opt out of the third-party release provided for in the Plan (the "**Opt-Out Deadline**" and, with the Voting Deadline, the "**Voting and Opt-Out Deadline**"). The Holding Company Debtors may extend the Voting Deadline after consultation with the Official Committee of Unsecured Creditors (the "Committee"), without further order of the Bankruptcy Court, by filing a notice of such extension with the Bankruptcy Court. To be counted as votes to accept or reject the Plan, all ballots (the "Ballots") must be executed, completed, and delivered pursuant to the instructions set forth therein so that they are actually received by Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent") no later than the Voting Deadline.

1 A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement Order.

### C. Form, Content, and Manner of Notices.

#### 1. The Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

(a) these Solicitation and Voting Procedures (the "Solicitation and Voting Procedures");

(b) the applicable form of Ballot, together with detailed voting instructions, and instructions on how to submit the Ballot;

(c) a cover letter (the "Cover Letter") which describes the contents of the Solicitation Package and urges Holders of Claims in the Voting Classes to vote to accept the Plan;

(d) for Holders of Class 5, Class 6, and Class 7 Claims only), the Committee's cover letter (the "Committee Letter"), substantially in the form attached to the Disclosure Statement Order as **Exhibit 9**, to Holders of Class 5 Disputed Secured MCA Claims, Class 6 Disputed Unsecured MCA Claims, and Class 7 General Unsecured Claims regarding the Plan;

(e) the notice of the Combined Hearing (the "Combined Hearing Notice");

(f) the Disclosure Statement (and exhibits thereto, including the Plan);

(g) the Disclosure Statement Order (without exhibits except these Solicitation and Voting Procedures);

(h) a pre-addressed, postage prepaid reply envelope (if applicable); and

(i) such other materials as the Court may direct.

#### 2. Distribution of the Solicitation Package.

The Solicitation Package shall provide certain materials, including the Ballots, the Cover Letter, the Committee Letter, and the Combined Hearing Notice by email, where applicable, and otherwise by first-class U.S. mail. In addition, these Solicitation and Voting Procedures, the Disclosure Statement, the Plan, and the Disclosure Statement Order shall be made available on the Holding Company Debtors' Chapter 11 website at https://restructuring.ra.kroll.com/SIMAD. Paper copies are available upon request by contacting Kroll Restructuring Administration LLC, the claims and noticing agent retained by the Holding Company Debtors in these Chapter 11 Cases (the "Balloting Agent") by: (i) accessing the Holding Company Debtors' Chapter 11 website at https://restructuring.ra.kroll.com/SIMAD; (ii) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232; (iii) calling Kroll at (844) 408-3264 (Domestic) or +1 (646) 814-4926 (International); (iv) emailing Kroll at SIMADinfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (v) visiting (for a fee) PACER at http://www.njb.uscourts.gov.

The Holding Company Debtors shall serve, or cause to be served, all of the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee, counsel to the Committee, and all parties required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1 (the "2002 List") as of the Voting Record Date. In addition, the Holding Company Debtors shall distribute (or cause to be distributed) by email, where available, and otherwise by first-class mail the Solicitation Package to all Holders of Claims

in the Voting Classes by no later than the Solicitation Deadline, who are entitled to vote, as described in **Section D** below.

For purposes of serving the Solicitation Package, the Holding Company Debtors may rely on the address and email address (as applicable) information for Voting Classes as compiled, updated, and maintained by the Balloting Agent as of the Voting Record Date. The Holding Company Debtors and the Balloting Agent are not required to conduct any additional research for updated addresses or email addresses based on undeliverable Solicitation Packages (including Ballots) or Non-Voting Status Notices. Notwithstanding the foregoing, if a Solicitation Package transmitted by email is returned as undeliverable, the Balloting Agent shall serve such Solicitation Package by first-class mail to the physical mailing address, if any, reflected in the Holding Company Debtors' records, and any Holder of a Claim in a Voting Class that has not received a Ballot may contact the Balloting Agent to request one.

The Holding Company Debtors will not distribute Solicitation Packages or other solicitation materials to: (i) Holders of Claims that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court, (ii) any party to whom notice of the Holding Company *Debtors' Motion for Entry of an Order Conditionally Approving (I) the Adequacy of the Disclosure Statement of the Holding Company Debtors; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice, and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [Docket No. __] was sent but was subsequently returned as undeliverable without a forwarding address by the Voting Record Date; or (iii) parties that received the Non-Voting Status Notice, as applicable.

To avoid duplication and reduce expenses, the Holding Company Debtors will use commercially reasonable efforts to ensure that each Holder of a Claim entitled to vote on the Plan receives no more than one Solicitation Package (and, therefore, one Ballot per Class) and is only entitled to submit one Ballot on account of such Holder's Claim in a particular Class.

### 3. Resolution of Disputed Claims for Voting Purposes; Resolution Event.

(a) If a Claim in a Voting Class is subject to an objection (other than a "reduce and allow" objection) that is filed with the Bankruptcy Court and served on the affected Holder on or prior to fourteen (14) days before the Voting Deadline: (i) the Holding Company Debtors shall cause the applicable Holder to be served with a Non-Voting Status Notice substantially in the form annexed as Exhibit 3 to the Disclosure Statement Order, and which will include an opt-out form (the "Opt-Out Form") whereby the Holder may opt out of the Plan's Third-Party Release; and (ii) the applicable Holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs as provided herein. The Holder of any such Claim may file a motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of its Claim for voting purposes no later than fourteen (14) days after service of the applicable objection, and the Balloting Agent shall provide such Holder with a Ballot, which shall be counted only upon the occurrence of a Resolution Event.

(b) If a Claim in a Voting Class is subject to an objection that is filed with the Bankruptcy Court less than fourteen (14) days prior to the Voting Deadline, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the Holder of such Claim and without further order of the Bankruptcy Court, unless the Bankruptcy Court orders otherwise.

(c) A "Resolution Event" means the occurrence of one or more of the following events no later than two (2) business days prior to the Voting Declaration Deadline or such later time as the Bankruptcy Court may permit:

i. an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

ii. an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

iii. a stipulation or other agreement is executed between the Holder of such Claim and the Holding Company Debtors, with notice to the Committee, resolving the objection and temporarily allowing such Claim in an agreed upon amount and such stipulation or agreement is conveyed to the Balloting Agent by e-mail or otherwise;

iv. a stipulation or other agreement is executed between the Holder of such Claim and the Holding Company Debtors, with notice to the Committee, temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount and such stipulation or agreement is conveyed to the Balloting Agent by e-mail or otherwise; or

v. the pending objection is voluntarily withdrawn by the objecting party.

(d) No later than two (2) business days following the occurrence of a Resolution Event, or as soon as reasonably practicable thereafter, the Holding Company Debtors shall cause the Balloting Agent to distribute to the relevant Holder via hand delivery, first-class mail, or email, a Solicitation Package and a pre-paid envelope to the relevant Holder, if not previously provided, with any Ballot submitted after the Voting Deadline to be counted only as permitted by the Bankruptcy Court.

**4. Forms of Non-Voting Status.**

Certain Holders of Claims and Interests that are (i) not classified pursuant to section 1123(a)(1) of the Bankruptcy Code, (ii) who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code, or (iii) who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code, will receive only the Non-Voting Status Notice, substantially in the form attached as Exhibit 3 to the Disclosure Statement Order. Such notice will instruct these Holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots). Such notice will also include a form by which all Holders or potential Holders of Claims or Interests can elect to opt out of the third-party release provision included in the Plan. The Holders of Claims or Interests may affirmatively opt out by completing and returning the form (the paper version or electronically) or file an objection with the Court on or before **[●] at 4:00 p.m., prevailing Eastern Time**.

In addition, the f Non-Voting Status Notice contains the full text of the release provisions set forth in the Plan, including the consensual third-party release (the "Third-Party Release") and advises such Holders in the Non-Voting Classes that they will be bound by the Third-Party Release unless they timely

and properly opt out. The Non-Voting Status Notice also includes a form to complete and return if the Holder elects to opt out of such Third-Party Release (the "Third-Party Release Opt-Out Form"). A Holder of Claims or Interests in a Non-Voting Class who properly and timely elects to opt out of the Third-Party Release will not be a Releasing Party or Released Party under the Plan. Holders of Claims in the Non-Voting Classes who choose to opt out of the Third-Party Release may do so (i) by first-class mail, (ii) by overnight courier, (iii) by hand delivery, or (iv) via the E-Ballot Portal so that (in each instance) it is actually received by the Balloting Agent no later than the Voting and Opt-Out Deadline (as defined above), which the Debtors may extend after consultation with the Committee, by filing a notice of such extension with the Bankruptcy Court and without further order of the Bankruptcy Court. The Non-Voting Status Notice includes information on how parties can opt out electronically via the E-Ballot Portal. An encrypted opt out data and audit trail will be created through the electronic submission process and become part of the record of any opt-out election submitted in this manner. Additionally, the parties' electronic signature will be deemed to be legally valid and effective immediately.

Holders of Claims in the Voting Classes may opt out of the Third-Party Release by checking the opt-out box on their Ballot, regardless of whether they vote to accept or reject the Plan or abstain from voting. An election to opt out of the Third-Party Release will not affect the counting of such Holder's vote or such Holder's treatment under the Plan. A Holder of a Claim in a Voting Class that returns a Ballot without checking the opt-out box, or that does not return a Ballot or Opt-Out Form by the Voting and Opt-Out Deadline, will be deemed to grant the Third-Party Release. A Holder of a Claim in a Voting Class that receives a Non-Voting Status Notice (because its Claim is subject to a pending objection) may opt out of the Third-Party Release by returning the Opt-Out Form in accordance with this Section C.4.

**5. Notices With Respect to Executory Contracts and Unexpired Leases.**

Counterparties to Executory Contracts or Unexpired Leases that receive an Assumption Notice substantially in the form attached as Exhibit 8 to the Disclosure Statement Order, may file an objection to the Holding Company Debtors' proposed assumption, assumption and assignment and/or cure amount, each under the Plan, as applicable. Such objections **must**: (a) be in writing; (b) state with particularity the basis of the objection; (c) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey; and (d) be filed with the Clerk of the Bankruptcy Court, and shall be served upon the following parties so as to be **actually received no later than fourteen (14) calendar days** after the date the Holding Company Debtors file and serve the relevant assumption notice. If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Bankruptcy Court, such Claim shall not be considered Allowed and the holder thereof shall not be treated as a creditor for purposes of distributions under the Plan unless a Proof of Claim is Filed with the Bankruptcy Court within twenty-one (21) days after the earlier of (a) service of the Notice of Effective Date or (b) service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto. The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order.

<table>
<tr><th colspan="2">Counsel to the Debtors</th></tr>
<tr><td colspan="2">Cole Schotz P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota, Warren A. Usatine, David M. Bass, Felice R. Yudkin and Daniel J. Harris<br>Email: msirota@coleschotz.com; wusatine@coleschotz.com; dbass@coleschotz.com; fyudkin@coleschotz.com; dharris@coleschotz.com</td></tr>
<tr><th colspan="2">United States Trustee</th></tr>
<tr><td colspan="2">Office of the United States Trustee for the District of New Jersey<br>One Newark Center, Suite 2100<br>Newark, New Jersey 07102<br>Attn: Jeffrey M. Sponder<br>Email: jeffrey.m.sponder@usdoj.gov</td></tr>
<tr><th colspan="2">Official Committee of Unsecured Creditors</th></tr>
<tr><td>McDermott Will & Schulte LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Attn: Darren Azman, Kristin K. Going, and Rachel Biblo Block<br>Email: dazman@mcdermottlaw.com; kgoing@mcdermottlaw.com; rbibloblock@mcdermottlaw.com</td><td>Robinson & Cole LLP<br>666 Third Avenue, 20th Floor<br>New York, New York 10017<br>Attn: Evan M. Lazerowitz<br>Email: elazerowitz@rc.com</td></tr>
<tr><th colspan="2">Counsel to Mishmeret Trust Company</th></tr>
<tr><td>Chapman & Cutler<br>1270 Avenue of the Americas, 30th Floor<br>New York, New York 10020<br>Attn: Michael Friedman, Stephen R. Tetro II, and Jorge Coronel<br>Email: friedman@chapman.com; stetro@chapman.com; jcoronel@chapman.com</td><td>Riker Danzig LLP<br>7 Giralda Farms, Suite 250<br>Madison, New Jersey 07940<br>Attn: Joseph L. Schwartz and Daniel A. Bloom<br>Email: jschwartz@riker.com; dbloom@riker.com</td></tr>
</table>

**D. Voting and Tabulation Procedures.**

**1. Holders of Claims Entitled to Vote.**

Only the following Holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

(a) Unless otherwise provided, Holders of Claims who have timely filed a Proof of Claim (or an untimely Proof of Claim that has been Allowed as timely by the Bankruptcy Court under applicable law) that: (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date; and (ii) is not the subject of a pending objection filed with the Bankruptcy Court at least fourteen (14) days prior to the Voting Deadline, pending a Resolution Event as provided herein; *provided* that a Holder of a Claim that is the subject of a pending objection on a "reduce and allow"

basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection absent a further order of the Bankruptcy Court;

(b) Holders of Claims that are listed in the Schedules; provided that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent, or unliquidated Claims that have been paid or superseded by a timely Filed Proof of Claim) shall be allowed to vote only in the amounts set forth in <u>Section D.2</u> of these Solicitation and Voting Procedures;

(c) Holders whose Claims arise: (i) pursuant to an agreement or settlement with the Holding Company Debtors, as reflected in a document filed with the Bankruptcy Court or conveyed to the Balloting Agent by e-mail with the Holding Company Debtors and counterparty copied thereto; (ii) from an order entered by the Bankruptcy Court; or (iii) from a document executed by the Holding Company Debtors pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a Proof of Claim has been filed or the Claim was scheduled as contingent, unliquidated, or disputed;

(d) Holders of any Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

(e) with respect to any Entity described in subparagraphs (a) through (d) above, who, on or before the Voting Record Date, has filed a Claim and transferred such Entity's Claim to another Entity, the assignee of such Claim; provided that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date. Where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim may be (a) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code and (b) required to vote every portion of such Claim collectively to accept or reject the Plan. In the event that (x) a Ballot, (y) a group of Ballots within one Voting Class received from a single creditor, or (z) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots will not be counted, and the Holding Company Debtors' treatment of such Ballots will be set forth in the Voting Declaration.

(f) For the avoidance of doubt, a holder will be entitled to receive a Solicitation Package on account of a timely filed Claim arising from the rejection of an Executory Contract or Unexpired Lease, including if filed after the Voting Record Date but on or before the applicable Rejection Damages Bar Date.

**2. Establishing Claim Amounts for Voting Purposes**

<u>Claims in Classes 4, 5, 6, and 7</u>. For voting purposes, claim amounts for Claims in Class 4 (Mishmeret Prepetition Secured Claims), Class 5 (Disputed Secured MCA Claims), Class 6 (Disputed Unsecured MCA Claims), and Class 7 (General Unsecured Claims) will be established by reference to the Plan, and, as applicable, the tabulation rules set forth below; *provided* that any Lender Deficiency Claim shall be temporarily allowed for voting in Class 7 solely in the amount agreed by the Holding Company Debtors, Mishmeret, and the Committee or, absent agreement, estimated by the Bankruptcy Court under Bankruptcy Rule 3018(a).

Filed and Scheduled Claims. The Claim amounts established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim. Moreover, any amounts filled in on Ballots by the Holding Company Debtors through the Balloting Agent, as applicable, are not binding for purposes of allowance and distribution. In tabulating votes, the amount of the Claim associated with each claimant's vote shall be determined as follows:

(a) the Claim amount: (i) settled and/or agreed upon by the Holding Company Debtors, as reflected in a document filed with the Bankruptcy Court or conveyed to the Balloting Agent with both the Holding Company Debtors and counterparty copied thereon; (ii) set forth in an order of the Bankruptcy Court; or (iii) set forth in a document executed by the Holding Company Debtors pursuant to authority granted by the Bankruptcy Court;

(b) the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event;

(c) the Claim amount contained in a Proof of Claim that has been timely filed by the applicable bar date (or deemed timely filed by the Bankruptcy Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; *provided, however*, that any Ballot cast by a Holder of a Claim who timely files a Proof of Claim in respect of a (i) contingent Claim or a Claim in a wholly-unliquidated or unknown amount (based on a reasonable review by the Holding Company Debtors and/or the Balloting Agent) that is not the subject of a pending objection will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count in the amount of $1.00 (unless a different amount is established by agreement or order of the Bankruptcy Court) solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (ii) a partially liquidated and partially unliquidated Claim, which Claim will be Allowed for voting purposes only in the liquidated amount; *provided, further, however*, that to the extent that any Claim amount contained in a Proof of Claim is different from the Claim amount set forth in a document filed with the Bankruptcy Court referenced in subparagraph (a) above, the Claim amount in the document filed with the Bankruptcy Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes;

(d) the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely Filed Proof of Claim); provided that such Claim is not scheduled as contingent, disputed, or unliquidated; if a Claim is listed in the Holding Company Debtors' Schedules as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for filing Proofs of Claim established by the Bankruptcy Court or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline, such Claim shall be disallowed for voting purposes; *provided, however*, that, if such Holder's deadline to file a Claim has not yet occurred, Holder will be entitled to vote in the amount of $1.00 on account of their Claim that has been scheduled in an undetermined amount or as contingent, unliquidated, or disputed, subject to a different amount being allowed for voting purposes by order of the Bankruptcy Court;

(e) Holders of Proofs of Claim filed for $0.00 are not entitled to vote;

(f) Claims that have been paid or otherwise satisfied in full, or that are authorized to be paid in full in the ordinary course of business pursuant to an order of the Bankruptcy Court, are disallowed for voting purposes;

(g) notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased Claims arising from the same underlying obligation within the same Voting Class shall, to the extent possible, be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Holding Company Debtors have objected to such duplicate Claims; and

(h) in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes.

If a Proof of Claim is amended, the last filed Claim shall be subject to these rules and will supersede any earlier filed Claim, and any earlier filed Claim will be disallowed for voting purposes; *provided that* any amendment(s) to any Proof of Claim after the Voting Record Date shall not be considered for purposes of these voting procedures, except as otherwise ordered by the Bankruptcy Court; *provided*, further, that a Holder whose Proof of Claim is timely filed after the Voting Record Date but on or before the applicable Amended Schedules Bar Date or Rejection Damages Bar Date shall be served with a Solicitation Package and shall be entitled to vote such Claim in accordance with these procedures.

**3. Voting and Ballot Tabulation Procedures.**

The following Ballots and/or Opt-Out Forms will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a) any Ballot or Opt-Out Form received after the Voting Deadline (as may be extended by the Holding Company Debtors as provided herein);

(b) any Ballot or Opt-Out Form that is illegible or contains insufficient information to permit the identification of the claimant;

(c) any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;

(d) any Ballot or Opt-Out Form superseded by a later received, valid Ballot or Opt-Out Form; *provided* that such later received, valid Ballot shall be included in the final tabulation

(e) any Ballot that indicates neither an acceptance nor a rejection, or indicates both an acceptance and rejection, of the Plan;

(f) any Ballot that casts part of its vote in the same class to accept the Plan and part to reject the Plan;

(g) any form of Ballot or Opt-Out Form other than the form sent by the Balloting Agent, or a copy thereof;

(h) any Ballot received that the Balloting Agent cannot match to an existing database record;

(i) any Ballot or Opt-Out Form that does not contain a signature[3]; *provided* that a valid opt-out election on a timely submitted Ballot shall be honored notwithstanding that such Ballot is unsigned or otherwise not counted as a vote;

(j) any Ballot or Opt-Out Form that is submitted by facsimile, email, or by other electronic means (other than through the online portal or, solely with respect to Master Ballots, by email as expressly permitted on the Master Ballot); or

(k) any Ballot or Opt-Out Form sent to the Holding Company Debtors' professionals or to the Balloting Agent at any address other than the official address set forth on the Ballot.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Holding Company Debtors' right to waive any of the below specified requirements for completion and submission of Ballots, so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

(a) except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted and actually received by the Balloting Agent on or prior to the Voting Deadline (as the same may be extended by the Holding Company Debtors), the Holding Company Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan;

(b) the Balloting Agent will date-stamp all Ballots when received;

(c) the Balloting Agent shall retain copies of Ballots and all solicitation-related correspondence for two (2) years following the closing of the Chapter 11 Cases, whereupon the Balloting Agent is authorized to destroy and/or otherwise dispose of: (a) all copies of Ballots; (b) printed solicitation materials including unused copies of the Solicitation Package; and (c) all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Holding Company Debtors or the Clerk of the Bankruptcy Court in writing within such two (2) year period;

(d) the Holding Company Debtors will file the Voting Declaration no later than [●]. The Voting Declaration shall, among other things, delineate every Ballot that was excluded from the voting results (each an "Irregular Ballot"), including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or other necessary information, or damaged. The Voting Declaration shall indicate the Holding Company Debtors' decision with regard to such Irregular Ballots. The Voting Declaration shall also separately identify any Ballots cast by insiders of the Holding Company Debtors;

(e) the method of delivery of Ballots to be sent to the Balloting Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Balloting Agent actually receives the executed Ballot;

---

[3] For the avoidance of doubt, any Ballot or Opt-Out Form submitted online through the applicable portal in accordance with the instructions therein, will be deemed to contain a signature.

(f) an executed Ballot is required to be submitted by the Entity submitting such Ballot. Delivery of a Ballot to the Balloting Agent by facsimile or any electronic means other than expressly provided in the applicable Ballot will not be valid;

(g) no Ballot should be sent to the Holding Company Debtors, the Holding Company Debtors' agents (other than the Balloting Agent), or the Holding Company Debtors' financial or legal advisors, and, if so sent, will not be counted;

(h) if multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last properly submitted, valid Ballot timely received by the Balloting Agent will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

(i) Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. Further, for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in a particular Class shall be aggregated as if such Holder held one Claim in such Class, and the votes related to such Claims shall be treated as a single vote; *provided* that, for the dollar-amount requirement of section 1126(c), the amounts of separate, nonduplicative Claims held by such Holder shall be aggregated;

(j) a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing;

(k) the Holding Company Debtors, in consultation with the Committee and subject to a contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Declaration or a supplemental voting declaration, as applicable;

(l) the Holding Company Debtors and the Balloting Agent shall use reasonable efforts, to the extent practicable before the Voting Deadline, to notify Holders of material, curable defects in timely submitted Ballots; *provided* that neither the Holding Company Debtors nor any other Person or Entity shall incur any liability for failure to provide such notification; *provided*, *further*, that any such efforts to cure deficiencies shall be undertaken without regard to whether the applicable Ballot accepts or rejects the Plan;

(m) unless waived or as ordered by the Bankruptcy Court, any defects or irregularities in connection with submissions of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted; provided that a valid opt-out election on an otherwise defective or irregular Ballot submitted prior to the Voting Deadline shall be honored as a valid opt-out election;

(n) in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

(o) subject to any order of the Bankruptcy Court, the Holding Company Debtors reserve the right to reject any and all ballots not in proper form, the acceptance of which, in the opinion of the Holding Company Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Declaration;

(p) if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Bankruptcy Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Bankruptcy Court for voting purposes only, and not for purposes of allowance or distribution;

(q) if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

(r) after the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Holding Company Debtors or further order of the Bankruptcy Court; and

(s) the Holding Company Debtors are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim for voting purposes, and for tabulation purposes, the Balloting Agent may rely on any e-mails sent to it by the Holding Company Debtors conveying the terms of the stipulation as long as the Holding Company Debtors copy the Holder of the affected Claim.

For holders of Mishmeret Prepetition Secured Claims in Class 4 (the "Beneficial Holders") who hold their position through custodian, broker, dealer, commercial bank, trust company, proxy holder, or other agent or nominee (a "Nominee"), such Beneficial Holders may cast their votes by completing and signing a Ballot (Exhibit 4A, the "Beneficial Holder Ballot") and returning it to Mishmeret (or causing such Beneficial Holder Ballot to be returned to Mishmeret) in the manner directed by Mishmeret and according to any deadline prescribed by Mishmeret to ensure that Mishmeret could collect and review Beneficial Holder Ballots and return a completed Master Ballot to Kroll by the Voting Deadline. Mishmeret is authorized to use its customary method of transmitting solicitation materials to the Beneficial Holders (or causing the transmission of such materials) in addition to (or in lieu) of the methods described herein and is also authorized to use its customary method of collecting votes from the Beneficial Holders in lieu of a Beneficial Holder Ballot, including by e-mail, online portal, or other method of communication. Mishmeret shall maintain records of all votes and elections received from Beneficial Holders, by whatever method collected, and shall make such records available upon reasonable request to the Balloting Agent, the Holding Company Debtors, the Committee, and the U.S. Trustee, or as ordered by the Bankruptcy Court.

Subject to any contrary order of the Court and except as otherwise set forth herein, the Holding Company Debtors may, in consultation with the Committee, waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the Voting Declaration prepared by the Balloting Agent.

**E. Amendments to the Plan and Solicitation and Voting Procedures.**

The Holding Company Debtors reserve the right to make non-substantive changes to the Disclosure Statement, Plan, Solicitation and Voting Procedures, Combined Hearing Notice, Non-Voting Status Notice, Ballots, Opt-Out Form, Publication Notice, Cover Letter, the Committee Letter (solely with the consent of the Committee), Plan Supplement Notice, Assumption Notice, and any related documents without further

order of the Bankruptcy Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to any materials in the Solicitation Packages before distribution.

* * * *

# Exhibit 3

## Non-Voting Status Notice

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| SIMAD HOLDINGS LTD., *et al.*,[1] | Case No. 26-16388 (CMG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS AND OPT-OUT FORM TO HOLDERS OR POTENTIAL HOLDERS OF UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN, HOLDERS OR POTENTIAL HOLDERS OF IMPAIRED CLAIMS OR INTERESTS CONCLUSIVELY DEEMED TO REJECT THE PLAN, AND HOLDERS OR POTENTIAL HOLDERS OF DISPUTED CLAIMS**

**PLEASE TAKE NOTICE THAT** on [●], 2026, the above-captioned debtors and debtors-in-possession (the "Debtors") filed the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") and the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, supplemented or modified, including all exhibits thereto, the "Plan").[2]

**PLEASE TAKE NOTICE THAT** on [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No. __] (the "Order") which, among other things, (a) conditionally approved the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (b) approved the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (c) approved procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** you are a holder or potential holder of a Claim or Interest against the Holding Company Debtors that is **not** entitled to vote on the Plan due to the nature and treatment of such Claim or Interest under the Plan. Specifically, a holder of a Claim in a class that is not Impaired under the Plan is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of

---

1 A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

2 Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan or Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein. If there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

the Bankruptcy Code and is **not** entitled to vote on the Plan. Further, a holder of a Claim or Interest in a class that is Impaired under the Plan and conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code is **not** entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** a combined hearing to consider final approval of the Disclosure Statement and confirm the Plan (the "Combined Hearing") will commence on **[●], at [●] (ET**) before the Honorable Chief Judge Christine M. Gravelle, United States Bankruptcy Judge, in Courtroom 3 of the United States Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608. Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Holding Company Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on parties entitled to notice under Bankruptcy Rule 2002 and the Local Rules or otherwise. In accordance with the Plan, the Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing by further action of the Holding Company Debtors and without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, subject to sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, including any required notice or re-solicitation.

**PLEASE BE ADVISED:** THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE HOLDING COMPANY DEBTORS WITHOUT FURTHER NOTICE OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE

**PLEASE TAKE FURTHER NOTICE THAT** the Bankruptcy Court has **established [●], at 4:00 p.m. (ET)**, as the last date and time for filing and serving objections to the adequacy of the information in the Disclosure Statement and to confirmation of the Plan (the "Confirmation Objection Deadline"). Any objection to the final approval of the Disclosure Statement and confirmation of the Plan must (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Rules, (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such Entity, (d) state with particularity the basis and nature of any objection to the Disclosure Statement, the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection, and (e) be filed with the Clerk of the Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, and served on the following, with proof of service of such objection filed when and as required under the Local Rules of the Bankruptcy Court:

| **Counsel to the Debtors** |
|---|
| **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota, Warren A. Usatine, David M. Bass, Felice R. Yudkin and Daniel J. Harris<br>Email: msirota@coleschotz.com; wusatine@coleschotz.com; dbass@coleschotz.com; fyudkin@coleschotz.com; dharris@coleschotz.com |
| **United States Trustee** |
| **Office of the United States Trustee for the District of New Jersey**<br>One Newark Center, Suite 2100<br>Newark, New Jersey 07102<br>Attn: Jeffrey M. Sponder |

| Email: jeffrey.m.sponder@usdoj.gov | |
|---|---|
| **Official Committee of Unsecured Creditors** | |
| **McDermott Will & Schulte LLP**<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Attn: Darren Azman, Kristin K. Going, and Rachel Biblo Block<br>Email: dazman@mcdermottlaw.com; kgoing@mcdermottlaw.com; rbibloblock@mcdermottlaw.com | **Robinson & Cole LLP**<br>666 Third Avenue, 20th Floor<br>New York, New York 10017<br>Attn: Evan M. Lazerowitz<br>Email: elazerowitz@rc.com |
| **Counsel to Mishmeret Trust Company** | |
| **Chapman & Cutler**<br>1270 Avenue of the Americas, 30th Floor<br>New York, New York 10020<br>Attn: Michael Friedman, Stephen R. Tetro II, and Jorge Coronel<br>Email: friedman@chapman.com; stetro@chapman.com; jcoronel@chapman.com | **Riker Danzig LLP**<br>7 Giralda Farms, Suite 250<br>Madison, New Jersey 07940<br>Attn: Joseph L. Schwartz and Daniel A. Bloom<br>Email: jschwartz@riker.com; dbloom@riker.com |

**PLEASE TAKE FURTHER NOTICE THAT** the Holding Company Debtors' Disclosure Statement, the Order, the Plan, and the other documents and materials included in the Solicitation Package except Ballots may be obtained by any of the following means: (a) accessing the Holding Company Debtors' chapter 11 case website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov.

The following chart summarizes the classification and treatment of Claims and Interests under the Plan:

| Class | Claim / Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Mishmeret Prepetition Secured Claims | Impaired | Entitled to Vote |
| 5 | Disputed Secured MCA Claims | Impaired | Entitled to Vote |
| 6 | Disputed Unsecured MCA Claims | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Subordinated Securities Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**PLEASE TAKE FURTHER NOTICE THAT** if you are a Holder of a Claim that is subject to a pending objection by the Holding Company Debtors, **you are not entitled to vote any disputed portion of your Claim on the Plan unless one or more of the following events have taken place before a date that is two (2) business days before the deadline for the Balloting Agent to file the Voting Declaration (or such later time as the Bankruptcy Court may permit)** (each, a "Resolution Event"):

a. an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

b. an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

c. a stipulation or other agreement is executed between the Holder of such Claim and the Holding Company Debtors, with notice to the Committee, resolving the objection and allowing such Claim in an agreed upon amount

d. a stipulation or other agreement is executed between the holder of such Claim and the Holding Company Debtors, with notice to the Committee, temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or

e. the pending objection is voluntarily withdrawn by the objecting party.

**PLEASE TAKE FURTHER NOTICE THAT if you are not entitled to vote because of a pending objection, you may file a motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of your Claim for voting purposes no later than fourteen (14) days after service of the applicable objection, and the Balloting Agent will provide you with a Ballot, which will be counted only upon the occurrence of a Resolution Event. Whether or not you are entitled to vote, you may opt out of the Third-Party Release by completing and returning the enclosed Opt-Out Form.**

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

**PLEASE TAKE FURTHER NOTICE THAT ARTICLE VII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS.**

### Releases, Injunction, and Exculpation Provisions

Article VII of the Plan contains the following release, injunction, and exculpation provisions. **YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

Article VII.B of the Plan provides for Release of Liens:

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order or any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, immediately following the making of all distributions to be made to an applicable holder pursuant to the Plan, and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the**

**applicable Holding Company Debtor and its successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Holding Company Debtor (including any Cash Collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Holding Company Debtors or the Liquidation Trust, as applicable, to evidence the release of such Lien and/or security interest, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens; provided that, notwithstanding the foregoing or anything to the contrary in the Plan, (a) the Liens securing the DIP Claims shall not be released and shall remain in full force and effect until Payment in Full (as defined in the Final Mishmeret DIP Order) of the DIP Claims; and (b) any Adequate Protection Liens (as defined in the Final Mishmeret DIP Order) granted pursuant to the Final Mishmeret DIP Order to secure any Diminution in Value (as defined in the Final Mishmeret DIP Order) in respect of the Mishmeret Prepetition Secured Claims shall not be released and shall remain in full force and effect until Payment in Full of the Mishmeret Prepetition Secured Claims.**

**If any holder of a Secured Claim that has been satisfied in full pursuant to the Plan or the Confirmation Order, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Holding Company Debtors or the Liquidation Trust that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidation Trust shall be entitled to make any such filings or recordings on such holder's behalf.**

Article VII.C of the Plan Provides for Releases by the Holding Company Debtors:

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the Holding Company Debtors, their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors, their Estates, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such holders or their Estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim against, or Interest in, a Holding Company Debtor or other Entity, or that any holder of any Claim against or Interest in a Holding Company Debtor or other Entity could have asserted on behalf of the Holding Company Debtors based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the**

**purchase or sale of the Series A bonds, the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim, or Interest before or during the Chapter 11 Cases, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the administration and implementation of this Plan, including the distribution of property under this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof; or (iv) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to implementing this Plan; (2) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Holding Company Debtors, the post-Effective Date Holding Company Debtors, or the Holding Company Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

Article VII.D of the Plan provides for Releases by Holders of Claims and Interests (i.e., Consensual Third-Party Release):

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors and their Estates (as applicable) whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued**

**or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any holder of Mishmeret Prepetition Secured Claims that has asserted Claims against the Debtors' Estates as part of a putative class in the Proxima Investment Management Ltd. v. SIMAD Holdings Ltd., et al. matter pending in the District Court of Tel Aviv-Jaffa (Economic Division), Class Action: 88654-05-26, (iv) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof, or (v) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the third-party release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the third-party release; (5) in the best interests of the Holding Company Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and**

**made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release**.

Article VII.F of the Plan provides for an exculpation of certain parties:

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim and any obligation, Cause of Action, or liability for any Exculpated Claim; *provided*, *however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; *provided further* that the foregoing shall release and exculpate Assaf Ravid, solely in his capacity as Chief Restructuring Officer of the Debtors, for all acts taken in contemplation of the Chapter 11 Cases from and after his appointment on June 2, 2026 through and including the Petition Date. The Exculpated Parties have, and upon Consummation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Article VII.G of the Plan establishes an injunction:

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Holding Company Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Holding Company Debtors. To the fullest extent permissible under applicable law, except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against or Interests in the Holding Company Debtors or Causes of Action, in each case that have been released or are subject to exculpation pursuant to the Plan, shall be precluded and are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated Parties (including the Holding Company Debtors but excluding any Excluded Party), and any successors, assigns or representatives of such Persons or Entities: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff or subrogation, of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and the Bankruptcy Court has entered a Final Order approving such request; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Holding Company Debtors, the Liquidation Trust, the Exculpated Parties, or the Released**

**Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VII.D hereof without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Holding Company Debtor, Liquidation Trust, Exculpated Party, or the Released Parties.**

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE THIRD-PARTY RELEASE INCLUDED IN THE PLAN. IF YOU HAVE QUESTIONS REGARDING YOUR RIGHTS UNDER THE PLAN OR ANYTHING STATED HEREIN OR THEREIN, YOU MAY CONTACT THE BALLOTING AGENT OR DEBTORS' COUNSEL AT THE ADDRESSES PROVIDED BELOW.

DATED: [•], 2026

Respectfully submitted,

**COLE SCHOTZ P.C.**

By: ______________________________________

Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to Debtors and Debtors in Possession*

**OPTIONAL: RELEASE OPT-OUT FORM**

You are receiving this opt out form (the "Opt-Out Form") because you may be a holder of a Claim or Interest that is not entitled to vote on the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as amended, supplemented, or otherwise modified from time to time, the "Plan"). Holders of Claims or Interests are deemed to grant the Third-Party Release set forth in the Notice unless a holder affirmatively opts out of the Third-Party Release or timely objects to the Third-Party Release on or before **[●] at 4:00 p.m. (ET),** and such objection is not resolved before confirmation.

If you believe you are a holder of a Claim or Interest with respect to the Holding Company Debtors and choose to opt out of the Third-Party Release set forth in Article VII.D of the Plan, you may submit your election to opt out through one of the following methods: (A) completing, signing, and returning the Opt-Out Form via first class mail or in the enclosed reply envelope provided, overnight courier, or hand delivery so that the Balloting Agent **actually receives** such form prior to the Voting and Opt-Out Deadline or (B) completing, signing, and submitting the Opt-Out Form online via electronic online transmission through the customized online balloting portal on the Holding Company Debtors' case website https://restructuring.ra.kroll.com/SIMAD, and clicking on the "Submit E-Ballot" section of the website, so that the Balloting Agent **actually receives** such form prior to the Voting and Opt-Out Deadline.

| |
|---|
| **RETURN INSTRUCTIONS:**<br><br>**If by First Class Mail, Overnight Courier or Overnight Mail:**<br>SIMAD Holdings Ltd., Ballot Processing<br>c/o Kroll Restructuring Administration LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, NY 11232 |
| **If by online submission:**<br><br>Visit: https://restructuring.ra.kroll.com/SIMAD and under the Case Navigation section click on "Submit E-Ballot" and follow the instructions to submit your form. |

**Opt-Out Form**

You must clearly sign and return this Opt-Out Form in the enclosed Business Reply Envelope or via First-Class Mail, Overnight Mail, or hand delivery to SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232, to ensure that your hard copy Opt-Out Form is counted.

**KROLL RESTRUCTURING ADMINISTRATION, LLC (THE "BALLOTING AGENT") MUST RECEIVE THIS OPT-OUT FORM ON OR BEFORE [●], AT 4:00 P.M. (ET) (THE "VOTING AND OPT-OUT DEADLINE"). IF THE OPT-OUT FORM IS RECEIVED AFTER THE VOTING AND OPT-OUT DEADLINE, IT WILL NOT BE COUNTED.**

**ITEM 1. OPTIONAL THIRD-PARTY RELEASE**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VII.D OF THE PLAN, AS SET FORTH BELOW. YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VII.D OF THE PLAN. YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN ONLY IF YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT OUT FORM BY THE VOTING AND OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION. YOU MAY OPT OUT OF THE THIRD-PARTY RELEASE REGARDLESS OF WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN, ABSTAIN FROM VOTING, OR ARE DEEMED TO ACCEPT OR REJECT THE PLAN.

☐ **By checking this box, you elect to opt out of the Third-Party Release set forth below.**

Article VII.D of the Plan provides for Releases by Holders of Claims and Interests (i.e., Consensual Third-Party Release):

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors and their Estates (as applicable) whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure**

**Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any holder of Mishmeret Prepetition Secured Claims that has asserted Claims against the Debtors' Estates as part of a putative class in the *Proxima Investment Management Ltd. v. SIMAD Holdings Ltd., et al. matter pending in the District Court of Tel Aviv-Jaffa (Economic Division)*, Class Action: 88654-05-26, (iv) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof, or (v) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the third-party release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the third-party release; (5) in the best interests of the Holding Company Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release**.

**ITEM 2. CERTIFICATION.**

By signing this Opt-Out Form, the undersigned certifies each of the following:

a) that, as of the Voting Record Date, either (i) the undersigned is the holder of Claims or Interests; or (ii) the undersigned is an authorized signatory for an Entity or Person that is the Holder of Claims or Interests;

b) that the holder has received a copy of the Non-Voting Status Notice and that this Opt-Out Form is submitted pursuant to the terms and conditions set forth therein;

c) that the undersigned has made the same election with respect to all Claims or Interests; and

d) that no other Opt-Out Form has been cast with respect to the Holder's Claims or Interests, or, if any other Opt-Out Forms have been cast with respect to such Claims or Interests, such Opt-Out Forms are hereby revoked.

YOUR RECEIPT OF THIS OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR CLAIM OR INTEREST HAS BEEN OR WILL BE ALLOWED.

| | |
|---|---|
| Name of Holder: | ______________________ (Print or Type) |
| Signature: | ______________________ |
| Name of Signatory: | ______________________ (If other than Holder) |
| Title: | ______________________ |
| Address: | ______________________<br>______________________ |
| Telephone Number: | ______________________ |
| Email: | ______________________ |
| Date Completed: | ______________________ |

If your address or contact information has changed, please note the new information here.

**IF ELECTING TO OPT OUT OF THE THIRD-PARTY RELEASE, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN IT IN THE ENVELOPE PROVIDED OR BY ONE OF THE FOLLOWING METHODS:**

**Via Opt-Out Portal. To submit your Opt-Out Form via the Balloting Agent's online portal, visit https://restructuring.ra.kroll.com/SIMAD, click on the "Submit E-Ballot" section of the website (the "E-Ballot Portal"), and follow the instructions to submit your Opt-Out Form.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-Out Form:**

**Unique E-Opt-Out ID #:______________________________**

**Kroll's Opt-Out Portal is the sole manner in which forms will be accepted via electronic or online transmission. Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Please complete and submit an electronic Opt-Out Form for each E-Opt-Out ID# you receive, as applicable.**

**Via Paper Form. Complete, sign, and date this Opt-Out Form and return it promptly by first-class mail, overnight courier, or hand delivery to the address below:**

| **If by First Class Mail, Overnight Courier or Overnight Mail:** |
|---|
| SIMAD Holdings Ltd., Ballot Processing<br>c/o Kroll Restructuring Administration LLC<br>850 3rd Avenue, Suite 412<br>Brooklyn, NY 11232 |

**To arrange hand delivery of your Opt-Out Form, please contact the Balloting Agent via email at SIMADBallots@ra.kroll.com (with "Holding Company Debtors Opt-Out Form Delivery" in the subject line)**

**at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.**

Parties that submit their Opt-Out Form using the Opt-Out Portal should NOT also submit a paper Opt-Out Form.

**IF THE BALLOTING AGENT DOES NOT ACTUALLY RECEIVE THIS OPT-OUT FORM PRIOR TO THE VOTING AND OPT-OUT DEADLINE, WHICH IS 4:00 P.M. (ET) ON [●], YOUR ELECTION TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.**

**OPT-OUT FORMS SENT BY FACSIMILE OR EMAIL WILL NOT BE ACCEPTED.**

**INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM**

1. Capitalized terms used in the Opt-Out Form or in these instructions (the "Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2. To ensure that your election is counted, you must complete the Opt-Out Form and take the following steps: (a) clearly indicate your decision to "opt out" of the Third-Party Release set forth in the Plan in Item 1 above; (b) make sure that the information required by Item 2 above has been correctly inserted; and (c) sign, date and return your Opt-Out Form in accordance with paragraph 3 directly below.

3. **Return of Opt-Out Form**: Your Opt-Out Form MUST be returned to the Balloting Agent so as to be **actually received** by the Balloting Agent on or before the Opt-Out Deadline, which is **4:00 p.m. (prevailing Eastern Time) on [●].**

4. If an Opt-Out Form is received by the Balloting Agent after the Opt-Out Deadline, it will not be effective. Additionally, the following Opt-Out Forms will NOT be counted:

   - ANY OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE CLAIM OR INTEREST;
   - ANY OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT OUT OF THE RELEASE;
   - ANY OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE BALLOTING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;
   - ANY OPT-OUT FORM TRANSMITTED BY FACSIMILE OR EMAIL;
   - ANY UNSIGNED OPT-OUT FORM; OR
   - ANY OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE DISCLOSURE STATEMENT ORDER.

5. The method of delivery of Opt-Out Forms to the Balloting Agent is at the election and risk of each Holder of a Claim or Interest. Except as otherwise provided herein, such delivery will be deemed made to the Balloting Agent only when the Balloting Agent **actually receives** the executed Opt-Out Form. Holders should allow sufficient time to ensure timely delivery.

6. If multiple Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest prior to the Opt-Out Deadline, the last Opt-Out Form timely received will supersede and revoke any earlier received Opt-Out Forms.

7. The Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to Opt-Out of the Third-Party Release. Accordingly, at this time, Holders of Interests should not surrender certificates or instruments representing or evidencing their Interests, and neither the Debtors nor the Balloting Agent will accept delivery of any such certificates or instruments surrendered together with an Opt-Out Form.

8. The Opt-Out Form does not constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

9. Please be sure to sign and date your Opt-Out Form. If you are signing an Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Balloting Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Opt-Out Form.

10. THE BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**PLEASE RETURN YOUR OPT-OUT FORM PROMPTLY!**

**IF YOU HAVE RECEIVED A DAMAGED OPT-OUT FORM OR HAVE LOST YOUR OPT-OUT FORM, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-OUT FORM OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT THE BALLOTING AGENT AT:**

**(844) 408-3264 (Toll Free, U.S. and Canada) or +1 (646) 814-4926 (International)**

**Or via email at SIMADInfo@ra.kroll.com**

**IF THE BALLOTING AGENT DOES NOT ACTUALLY RECEIVE THE OPT-OUT FORM ON OR BEFORE THE OPT-OUT DEADLINE, WHICH IS 4:00 P.M. PREVAILING EASTERN TIME ON [●], THEN YOUR OPT-OUT ELECTION TRANSMITTED THEREBY WILL NOT BE EFFECTIVE.**

**Exhibit 4A**

**BENEFICIAL HOLDER BALLOT – CLASS 4 MISHMERET PREPETITION SECURED CLAIMS**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**BENEFICIAL HOLDER BALLOT FOR (I) ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE HOLDING COMPANY DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPTING OUT OF THE THIRD-PARTY RELEASE**

**CLASS 4 — MISHMERET PREPETITION SECURED CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

**FOR YOUR VOTE TO COUNT, THIS BENEFICIAL HOLDER BALLOT (IF SUBMITTED DIRECTLY) OR THE CORRESPONDING MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE HOLDING COMPANY DEBTORS' NOTICE, CLAIMS AND BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION, LLC (THE "BALLOTING AGENT" OR "KROLL") BY [●] AT 4:00 P.M. (ET) (THE "VOTING DEADLINE")**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE*, PLEASE COMPLETE SIGN, AND DATE THE BENEFICIAL HOLDER BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY KROLL ON OR BEFORE THE VOTING DEADLINE.**

***IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO KROLL*, PLEASE COMPLETE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY KROLL BY THE VOTING DEADLINE.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") have sent this Ballot to you because their records indicate that you are a holder of a Class 4 Mishmeret Prepetition Secured Claim, and accordingly, you have a right to vote to accept or reject the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, supplemented or modified, including all exhibits thereto, the "Plan"). Your rights are described in the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto [Docket No. ●] (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

Statement"). On _____ ___, 2026, the Bankruptcy Court entered an order [Docket No. ___] (the "Order")[2] conditionally approving the Disclosure Statement. At the Combined Hearing, the Holding Company Debtors will seek final approval of the adequacy of the Disclosure Statement, as well as confirmation of the Plan.

The Holding Company Debtors are soliciting votes on the Plan from Holders of Class 4 (Mishmeret Prepetition Secured Claims). **You are receiving this Beneficial Holder Ballot because your custodian, broker, dealer, commercial bank, trust company, proxy holder or other agent or nominee (each a "Nominee") has identified you as a beneficial holder (a "Beneficial Holder") of a Class 4 Mishmeret Prepetition Secured Claim as of the Voting Record Date [●]. As such, you have the right to vote to accept or reject the Plan.**

The Disclosure Statement describes the rights and treatment for each Class under the Plan. The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Beneficial Holder Ballot. This Beneficial Holder Ballot may not be used for any purpose other than for (i) casting votes to accept or reject the Plan, (ii) opting out of Third-Party Release, and (iii) making certain certifications or elections with respect thereto. Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

This Beneficial Holder Ballot may not be used for any purpose other than for (i) casting your vote to accept or reject the Plan, and (ii) opting out of the Third-Party Release, and (iii) making certain certifications with respect to your vote. If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong Beneficial Holder Ballot, please contact the Balloting Agent immediately at the telephone number or email set forth herein.

Before voting, please review the Plan, the Disclosure Statement and each of their exhibits carefully. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Please note that Article VII of the Plan includes the release, exculpation, and injunction provisions. These provisions, set forth in Item 3 of this Ballot, affect your rights, including your rights against persons other than the Holding Company Debtors.

**If the Plan is confirmed and consummated through the Chapter 11 Cases, the releases set forth in Article VII of the Plan (the "Plan Releases") shall apply. THE PLAN RELEASES INCLUDE A THIRD-PARTY RELEASE (THE "THIRD-PARTY RELEASE"), WHICH IS SET FORTH IN ARTICLE VII.D OF THE PLAN AND AT ITEM 3 OF THIS BALLOT (TOGETHER WITH CERTAIN RELEVANT DEFINED TERMS FROM THE PLAN).**

**YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX IN ITEM 3 OF THIS BALLOT AND PROPERLY COMPLETE AND TIMELY SUBMIT THIS BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH HEREIN.**

Depending on the instructions you receive from your Nominee, in order for your vote to count, either (i) your "pre-validated" Beneficial Holder Ballot must be received by the Balloting Agent on or before the Voting Deadline, which is 4:00 p.m. (ET) on [●] or (ii) your Nominee must receive your Beneficial Holder Ballot in sufficient time for your Nominee to be able to submit a master ballot (a "Master Ballot") reflecting your vote in time for the Balloting Agent to receive it on or before the Voting Deadline. Please follow your Nominee's instructions to allow sufficient time for your vote to be included on the Master Ballot to be submitted by your Nominee to the Balloting Agent. If either your pre-validated Beneficial Holder Ballot or a Master Ballot recording your vote is not received on or before the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

Copies of the Disclosure Statement, the Order, the Plan, and certain other materials contained in the Solicitation Package are included in the packet you are receiving with this Ballot. Additionally, the Solicitation Package may be obtained by (a) accessing the Holding Company Debtors' chapter 11 case website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232; (c) calling Kroll at (844) 408-3264

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, the Disclosure Statement or the Order, as applicable.

(Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan, and, if desired, to opt out of the Third-Party Release. If you believe you have received this Ballot in error, please contact Kroll at the address or email address set forth above.

**If the Balloting Agent does not receive your Beneficial Holder Ballot or the Master Ballot on or before the Voting Deadline, [●] at 4:00 p.m. (ET) and if the Voting Deadline is not extended, your vote as either an acceptance or rejection of the Plan will not count. If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you vote.**

**Item 1. Amount of Class 4 Mishmeret Prepetition Secured Claim for Voting.**[3]

The undersigned hereby certifies that as of the Voting Record Date, [●], the undersigned was the holder of Class 4 Mishmeret Prepetition Secured Claim in the amount set forth below (insert amount in box below):

$ __________________

If a Nominee holds your Mishmeret Prepetition Secured Claim (Class 4) on your behalf and you do not know the principal amount, please contact your Nominee immediately.

**Item 2. Class 4 Mishmeret Prepetition Secured Claim Vote on the Plan.**

The holder of the Class 4 Mishmeret Prepetition Secured Claim set forth in Item 1 votes to (please check one):

☐ ACCEPT THE PLAN ☐ REJECT THE PLAN

**ANY BALLOT THAT IS EXECUTED BY THE HOLDER OF A CLAIM BUT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

**YOU MAY VOTE TO ACCEPT OR REJECT THE PLAN AND STILL OPT OUT OF THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VII.D OF THE PLAN BY FOLLOWING THE INSTRUCTIONS IN ITEM 3 BELOW.**

**YOUR VOTE ON THE PLAN WILL BE APPLIED TO EACH APPLICABLE DEBTOR IN THE SAME MANNER AS INDICATED IN ITEM 2 AND IN THE SAME AMOUNT AS INDICATED IN THIS ITEM 1.**

**Important Information Regarding the Plan Releases**

**You may opt out of the Third-Party Release regardless of whether you vote to accept or reject the Plan or abstain from voting. An election to opt out does not affect the counting of your vote. If you return this Ballot but do not check the opt-out box in Item 3, or if you do not return a Ballot or Opt-Out Form, the Plan provides that you are deemed to grant the Third-Party Release. If you timely submit this Ballot with the opt-out box in Item 3 checked, you will not grant the Third-Party Release.**

**Item 3. Article VII of the Plan provides for the following Debtor Releases, Exculpation and Injunction Provisions:**

[3] For voting purposes only, subject to tabulation rules.

**CHECK THE BOX BELOW TO OPT OUT OF THIRD-PARTY RELEASE PROVISION OF ARTICLE VII.D OF THE PLAN. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE AND IT WILL BE BINDING ON YOU.**

The undersigned holder of the Class 4 Mishmeret Prepetition Secured Claim set forth in Item 1 elects to:

☐ Opt Out of the Third-Party Release Provision

Article VII.B of the Plan provides for Release of Liens:

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order or any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, immediately following the making of all distributions to be made to an applicable holder pursuant to the Plan, and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Holding Company Debtor and its successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Holding Company Debtor (including any Cash Collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Holding Company Debtors or the Liquidation Trust, as applicable, to evidence the release of such Lien and/or security interest, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens; provided that, notwithstanding the foregoing or anything to the contrary in the Plan, (a) the Liens securing the DIP Claims shall not be released and shall remain in full force and effect until Payment in Full (as defined in the Final Mishmeret DIP Order) of the DIP Claims; and (b) any Adequate Protection Liens (as defined in the Final Mishmeret DIP Order) granted pursuant to the Final Mishmeret DIP Order to secure any Diminution in Value (as defined in the Final Mishmeret DIP Order) in respect of the Mishmeret Prepetition Secured Claims shall not be released and shall remain in full force and effect until Payment in Full of the Mishmeret Prepetition Secured Claims.**

**If any holder of a Secured Claim that has been satisfied in full pursuant to the Plan or the Confirmation Order, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Holding Company Debtors or the Liquidation Trust that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidation Trust shall be entitled to make any such filings or recordings on such holder's behalf.**

Article VII.C of the Plan Provides for Releases by the Holding Company Debtors:

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the Holding Company Debtors, their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors, their Estates, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute,**

**regulation, treaty, right, duty, requirement, or otherwise, that such holders or their Estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim against, or Interest in, a Holding Company Debtor or other Entity, or that any holder of any Claim against or Interest in a Holding Company Debtor or other Entity could have asserted on behalf of the Holding Company Debtors based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim, or Interest before or during the Chapter 11 Cases, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the administration and implementation of this Plan, including the distribution of property under this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof; or (iv) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to implementing this Plan; (2) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Holding Company Debtors, the post-Effective Date Holding Company Debtors, or the Holding Company Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

Article VII.D of the Plan provides for Releases by Holders of Claims and Interests (i.e., Consensual Third-Party Release):

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors and their Estates (as applicable) whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys,**

**representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any holder of Mishmeret Prepetition Secured Claims that has asserted Claims against the Debtors' Estates as part of a putative class in the Proxima Investment Management Ltd. v. SIMAD Holdings Ltd., et al. matter pending in the District Court of Tel Aviv-Jaffa (Economic Division), Class Action: 88654-05-26, (iv) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof, or (v) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the third-party release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the third-party release; (5) in the best interests of the Holding Company Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release**.

Article VII.F of the Plan provides for an exculpation of certain parties:

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim and any obligation, Cause of Action, or liability for any Exculpated Claim; *provided, however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; *provided further* that the foregoing shall release and exculpate Assaf Ravid, solely in his capacity as Chief Restructuring Officer of the Debtors, for all acts taken in contemplation of the Chapter 11 Cases from and after his appointment on June 2, 2026 through and including the Petition Date. The Exculpated Parties have, and upon Consummation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Article VII.G of the Plan establishes an injunction:

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Holding Company Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Holding Company Debtors. To the fullest extent permissible under applicable law, except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against or Interests in the Holding Company Debtors or Causes of Action, in each case that have been released or are subject to exculpation pursuant to the Plan, shall be precluded and are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated Parties (including the Holding Company Debtors but excluding any Excluded Party), and any successors, assigns or representatives of such Persons or Entities: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff or subrogation, of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and the Bankruptcy Court has entered a Final Order approving such request; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Holding Company Debtors, the Liquidation Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VII.D hereof without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Holding Company Debtor, Liquidation Trust, Exculpated Party, or the Released Parties.**

**Item 4. Certifications of Class 4 Mishmeret Prepetition Secured Claims.**

By completing and returning this Beneficial Holder Ballot, the Beneficial Holder of the Class 4 Claims identified in Item 1 certifies that: (i) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for the Class 4 Claims identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except as identified in the following table. **For the avoidance of doubt, if any Beneficial Holder holds Class 4 Claims through more than one Nominee, such Beneficial Holder must identify all Class 4 Claims held through each Nominee in the following table and must indicate the same vote to accept or reject the Plan on all Beneficial Holder Ballots submitted.**

ONLY COMPLETE ITEM 4 IF YOU HAVE SUBMITTED OTHER BENEFICIAL HOLDER BALLOTS ON ACCOUNT OF CLASS 4 MISHMERET PREPETITION SECURED CLAIMS.

| Account Number of Mishmeret Prepetition Secured Claims Voted in Class 4 | Name of Owner[4] | Principal Amount of Mishmeret Prepetition Secured Claims Voted in Class 4[5] | ISIN of Mishmeret Prepetition Secured Claims Voted in Class 4 |
|---|---|---|---|
| **Mishmeret Prepetition Secured Claim (Class 4)** | | | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

**Item 5. Other Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and to the Holding Company Debtors:

a. that either: (i) the undersigned is the holder of the Class 4 Claim being voted; or (ii) the undersigned is an authorized signatory for a holder of the Class 4 Claim being voted;

b. that the undersigned has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the undersigned has cast the same vote with respect to all Class 4 Claims that it holds or for which it is the authorized signatory; and

4 Insert your name if the Mishmeret Prepetition Secured Claims in Class 4 are held by you in your own name or, if held in a street name through a Nominee, insert the name of your broker or bank.

5 The Balloting Agent shall tabulate a Holder's Class 4 Mishmeret Prepetition Secured Claims by using the Claim amount of such Holder's Claim when calculating the voting results, which findings shall be included in the Voting Declaration.

d. that no other Ballots with respect to the amount of the Class 4 Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such Ballots dated earlier are hereby revoked.

Name of holder:______________________________________________________________
(Print or Type)

Signature:____________________________________________________________________

Name of Signatory:______________________________________________________________
(If other than holder)

Title:________________________________________________________________________

Address:_____________________________________________________________

Date Completed:______________________________________________________

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT PRIOR TO THE VOTING DEADLINE, WHICH IS 4:00 P.M. (PREVAILING EASTERN TIME) ON**
**[●].**

IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THE VOTE REFLECTED ON THIS CLASS 4 BALLOT ON OR BEFORE [●] AT 4:00 P.M. (ET), (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 4 BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE HOLDING COMPANY DEBTORS IN CONSULTATION WITH THE COMMITTEE.

**Exhibit A**

| Mishmeret Prepetition Secured Claims (Class 4) | |
|---|---|
| **DESCRIPTION** | **ISIN** |
| 7.000% Secured Notes due 11/30/2030 | ISIN IL0012328758 |

**INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT**

1. The Holding Company Debtors are soliciting votes on the Plan from Holders of Mishmeret Prepetition Secured Claims (Class 4) as of the Voting Record Date [●]. **PLEASE READ THE PLAN, THE DISCLOSURE STATEMENT AND EACH OF ITS EXHIBITS, THE SETTLEMENT TERM SHEET, THE 9019 SETTLEMENT ORDER, THIS BALLOT, AND THESE INSTRUCTIONS (THE "BALLOT INSTRUCTIONS") CAREFULLY BEFORE COMPLETING AND SUBMITTING THIS BALLOT.**

2. The Plan may be confirmed by the Bankruptcy Court and consummated, and thereby made binding upon you, provided that the Plan satisfies the requirements for confirmation set forth in the Bankruptcy Code.

3. Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Ballot to your Nominee so that your Nominee can submit a Master Ballot that reflects your vote so as to be ***actually received*** by the Balloting Agent no later than the Voting Deadline. You may instruct your Nominee to vote on your behalf in the Master Ballot by (a) completing your Ballot, (b) indicating your decision either to accept or reject the Plan in the boxes provided in Item 2 of your Ballot, (c) if you wish to opt out of the Third-Party Release, checking the opt-out box in Item 3 of your Ballot, and (d) signing and returning your Ballot to your Nominee in accordance with the instructions provided by your Nominee. The Voting Deadline for the receipt of Master Ballots by the Balloting Agent is [●] at 4:00 p.m., prevailing Eastern Time. Your completed Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes so as to be ***actually received*** by the Balloting Agent no later than the Voting Deadline.

4. **Return of Hard Copy Ballot to Nominee**. If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Balloting Agent so that it is ***actually received*** by the Voting Deadline. Your Nominee is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

5. **Return of Electronic Ballot to Nominee**. If you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot to your Nominee, including all certifications.

6. The time by a Master Ballot including your vote is ***actually received*** by the Balloting Agent shall be the time used to determine whether such Master Ballot has been submitted by the Voting Deadline. **The Voting Deadline is [●] at 4:00 p.m., prevailing Eastern Time**.

7. If a Ballot is received ***after*** the Voting Deadline, and if the Voting Deadline is not extended, it may be counted only in the sole discretion of the Holding Company Debtors, in consultation with the Committee, or as permitted by the Bankruptcy Court. Additionally, **the following Ballots will *not* be counted as votes (provided that a valid opt-out election on a timely submitted Ballot will be honored notwithstanding that such Ballot is not counted as a vote)**:

   (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

(b) any Ballot that was transmitted other than as specifically set forth in the Ballot;

(c) any Ballot that was cast by an entity that is not entitled to vote on the Plan;

(d) any Ballot that was sent to any person or entity other than the Balloting Agent;

(e) any Ballot that is unsigned;

(f) any Ballot that is not clearly marked to either accept or reject the Plan or is marked both to accept and reject the Plan;

(g) any Ballot that partially rejects and/or partially accepts the Plan in a particular Voting Class;

(h) any Ballot superseded by a later received, timely submitted valid Ballot;

(i) an improperly submitted Ballot; or

(j) any Ballot that is not actually received by the Balloting Agent by the Voting Deadline, unless the Holding Company Debtors, in consultation with the Committee, determine otherwise or as permitted by the Court.

8. The method of delivery of Ballots to the Balloting Agent is at the election and risk of each Holder of a Mishmeret Prepetition Secured Claims (Class 4). Except as otherwise provided herein, such delivery will be deemed made only when the Balloting Agent ***actually receives*** the executed Ballot.

9. If multiple Ballots are received from the same Holder, the latest, timely received, and properly completed Ballot or Master Ballot will supersede and revoke any earlier received Ballot(s) with respect to such Claims.

10. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (i) the Holding Company Debtors revoke or withdraw the Plan, (ii) the Confirmation Order is not entered, or (iii) consummation of the Plan does not occur.

11. You must vote each of your Mishmeret Prepetition Secured Claims (Class 4) either to accept or reject the Plan; you may ***not*** split your vote within the Mishmeret Prepetition Secured Claims (Class 4) classes.

12. This Ballot does ***not*** constitute and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

13. **Please be sure to sign and date your Ballot**. You should indicate that you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, and, if required or requested by the Balloting Agent, the Holding Company Debtors, or the Bankruptcy Court (if applicable), must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14. Each Ballot votes ***only*** your Claims indicated on that Ballot, so please complete and return each Ballot that you received.

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE BALLOTING AGENT AT OR BEFORE THE VOTING DEADLINE.**

**PLEASE RETURN YOUR BALLOT PROMPTLY.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE BALLOT INSTRUCTIONS, OR THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT SIMADINFO@RA.KROLL.COM OR CALL (844) 408-3264 (TOLL-FREE US / CANADA) OR +1 (646) 814-4926 (INTERNATIONAL).**

| |
|---|
| **IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT OR THE MASTER BALLOT AT OR BEFORE THE VOTING DEADLINE, WHICH IS [●] AT 4:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), THEN THE VOTE REFLECTED IN THIS BALLOT OR THE MASTER BALLOT MAY BE COUNTED ONLY IN THE SOLE DISCRETION OF THE HOLDING COMPANY DEBTORS, IN CONSULTATION WITH THE COMMITTEE, OR AS PERMITTED BY THE BANKRUPTCY COURT.** |

**Exhibit 4B**

**MASTER BALLOT – CLASS 4 MISHMERET PREPETITION SECURED CLAIMS**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**MASTER BALLOT FOR HOLDERS OF MISHMERET PREPETITION SECURED CLAIMS FOR (I) ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE HOLDING COMPANY DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPTING OUT OF THE THIRD-PARTY RELEASE**

**CLASS 4 — MISHMERET PREPETITION SECURED CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

**FOR YOUR VOTE TO COUNT, THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE HOLDING COMPANY DEBTORS' NOTICE, CLAIMS AND BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION, LLC (THE "BALLOTING AGENT" OR "KROLL") BY [●] AT 4:00 P.M. (ET) (THE "VOTING DEADLINE")**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") have sent this Ballot to you because their records indicate that you are a holder of a Class 4 Mishmeret Prepetition Secured Claim, and accordingly, you have a right to vote to accept or reject the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, supplemented or modified, including all exhibits thereto, the "Plan"). Your rights are described in the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto [Docket No. ●] (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement"). On _____ ___, 2026, the Bankruptcy Court entered an order [Docket No. ___] (the "Order")[2] conditionally approving the Disclosure Statement. At the Combined Hearing, the Holding Company Debtors will seek final approval of the adequacy of the Disclosure Statement, as well as confirmation of the Plan.

The Holding Company Debtors are soliciting votes on the Plan from Holders of Class 4 (Mishmeret Prepetition Secured Claims). **You are receiving this Master Ballot because you are the Nominee[3] of a Beneficial Holder of a Mishmeret Prepetition Secured Claim (Class 4) as of the Voting Record Date.**

---

1 A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

2 Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, the Disclosure Statement or the Order, as applicable.

3 As used herein, the term "Nominee" means the custodian, broker, dealer, commercial bank, trust company, proxy holder, or other agent or nominee for the Holder of a Mishmeret Prepetition Secured Claim (Class 4).

**This Master Ballot is to be used by you as a Nominee or as the proxy holder of a Nominee for certain Beneficial Holders' Mishmeret Prepetition Secured Claims (Class 4) to transmit to the Balloting Agent the votes of such Beneficial Holders in respect of their Mishmeret Prepetition Secured Claim (Class 4) to accept or reject the Plan and any elections to opt out of the Third-Party Release. The ISIN numbers (the "ISIN") for Mishmeret Prepetition Secured Claim (Class 4) entitled to vote and of which you are the Nominee is set forth on Exhibit A attached hereto. THE VOTES ON THIS MASTER BALLOT FOR BENEFICIAL HOLDERS OF MISHMERET PREPETITION SECURED CLAIM (CLASS 4) SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A MISHMERET PREPETITION SECURED CLAIM (CLASS 4).**

The Disclosure Statement describes the rights and treatment for each Class under the Plan. The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Master Ballot. This Master Ballot may not be used for any purpose other than for (i) casting votes to accept or reject the Plan, (ii) opting out of the Third-Party Release, and (iii) making certain certifications or elections with respect thereto. Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

You are authorized to disseminate information and materials pertaining to the solicitation of Plan votes, and to collect votes to accept or to reject the Plan and Plan release opt out elections from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder ballot (a "Beneficial Holder Ballot"), and collecting votes and Plan release opt out elections from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

The Bankruptcy Court may confirm the Plan and thereby bind all Mishmeret Prepetition Secured Claims (Class 4). To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan or an election to opt out of the Third-Party Release, you must properly complete, sign, and return this Master Ballot so that the Balloting Agent ***actually receives*** it no later than the Voting Deadline, which is **[•] at 4:00 p.m., prevailing Eastern Time** (the "**Voting Deadline**"). **If the Balloting Agent does not receive your Ballot on or before the Voting Deadline, and if the Voting Deadline is not extended, your vote as either an acceptance or rejection of the Plan will not count. If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you vote.**

**PLEASE TAKE FURTHER NOTICE THAT ARTICLE VII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS.**

**Releases, Injunction, and Exculpation Provisions**

Article VII of the Plan contains the following release, injunction, and exculpation provisions. **YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

Article VII.B of the Plan provides for Release of Liens:

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order or any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, immediately following the making of all distributions to be made to an applicable holder pursuant to the Plan, and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Holding Company Debtor and its successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Holding Company Debtor (including any Cash Collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Holding Company Debtors or the Liquidation Trust, as applicable, to evidence the release of such Lien and/or security interest, including the execution, delivery, and filing or recording of such**

**releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens; provided that, notwithstanding the foregoing or anything to the contrary in the Plan, (a) the Liens securing the DIP Claims shall not be released and shall remain in full force and effect until Payment in Full (as defined in the Final Mishmeret DIP Order) of the DIP Claims; and (b) any Adequate Protection Liens (as defined in the Final Mishmeret DIP Order) granted pursuant to the Final Mishmeret DIP Order to secure any Diminution in Value (as defined in the Final Mishmeret DIP Order) in respect of the Mishmeret Prepetition Secured Claims shall not be released and shall remain in full force and effect until Payment in Full of the Mishmeret Prepetition Secured Claims.**

**If any holder of a Secured Claim that has been satisfied in full pursuant to the Plan or the Confirmation Order, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Holding Company Debtors or the Liquidation Trust that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidation Trust shall be entitled to make any such filings or recordings on such holder's behalf.**

Article VII.C of the Plan Provides for Releases by the Holding Company Debtors:

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the Holding Company Debtors, their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors, their Estates, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such holders or their Estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim against, or Interest in, a Holding Company Debtor or other Entity, or that any holder of any Claim against or Interest in a Holding Company Debtor or other Entity could have asserted on behalf of the Holding Company Debtors based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim, or Interest before or during the Chapter 11 Cases, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the administration and implementation of this Plan, including the distribution of property under this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof; or (iv) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to implementing this Plan; (2) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Holding Company Debtors, the post-Effective Date Holding Company Debtors, or the Holding Company Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

Article VII.D of the Plan provides for Releases by Holders of Claims and Interests (i.e., Consensual Third-Party Release):

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors and their Estates (as applicable) whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any holder of Mishmeret Prepetition Secured Claims that has asserted Claims against the Debtors' Estates as part of a putative class in the Proxima Investment Management Ltd. v. SIMAD Holdings Ltd., et al. matter pending in the District Court of Tel Aviv-Jaffa (Economic Division), Class Action: 88654-05-26, (iv) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof, or (v) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the third-party release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the third-party release; (5) in the best interests of the Holding Company Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release**.

Article VII.F of the Plan provides for an exculpation of certain parties:

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim and any obligation, Cause of Action, or liability for any Exculpated Claim; *provided, however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; *provided further* that the foregoing shall release and exculpate Assaf Ravid, solely in his capacity as Chief Restructuring Officer of the Debtors, for all acts taken in contemplation of the Chapter 11 Cases from and after his appointment on June 2, 2026 through and including the Petition Date. The Exculpated Parties have, and upon Consummation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Article VII.G of the Plan establishes an injunction:

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Holding Company Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Holding Company Debtors. To the fullest extent permissible under applicable law, except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against or Interests in the Holding Company Debtors or Causes of Action, in each case that have been released or are subject to exculpation pursuant to the Plan, shall be precluded and are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated Parties (including the Holding Company Debtors but excluding any Excluded Party), and any successors, assigns or representatives of such Persons or Entities: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the**

**estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff or subrogation, of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and the Bankruptcy Court has entered a Final Order approving such request; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Holding Company Debtors, the Liquidation Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VII.D hereof without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Holding Company Debtor, Liquidation Trust, Exculpated Party, or the Released Parties.**

Copies of the Disclosure Statement, the Order, the Plan, and certain other materials contained in the Solicitation Package are included in the packet you are receiving with this Ballot. Additionally, the Solicitation Package may be obtained by (a) accessing the Holding Company Debtors' chapter 11 case website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan, and, if desired, opt out of the Third-Party Release. If you believe you have received this Ballot in error, please contact Kroll at the address or email address set forth above.

*You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 4 (Mishmeret Prepetition Secured Claims) under the Plan.*

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

- ☐ is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Mishmeret Prepetition Secured Claim (Class 4) listed in Item 2 below, and is the record holder of such claims;
- ☐ is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered Beneficial Holder of the aggregate principal amount of the Mishmeret Prepetition Secured Claim (Class 4) listed in Item 2 below; or
- ☐ has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a Beneficial Holder, that is the registered Beneficial Holder of the aggregate principal amount of the Mishmeret Prepetition Secured Claim (Class 4) listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Mishmeret Prepetition Secured Claim (Class 4) described in Item 2.

**Item 2 & 3. Mishmeret Prepetition Secured Claim (Class 4) Vote on Plan.**

The undersigned transmits the following votes and opt-out elections of Beneficial Holders of Mishmeret Prepetition Secured Claims (Class 4) against the Holding Company Debtors as set forth below and certifies that the following Beneficial Holders of the Mishmeret Prepetition Secured Claims (Class 4), as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date, and have delivered to the undersigned, as Nominee, Beneficial Ballots casting such votes. By submitting the votes and/or opt-out elections, the Beneficial Holders are deemed to have consented to, and expressly authorizes, the Nominee to disclose the Beneficial Holders' names and contact information to the Balloting Agent upon request.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table. Please note that each Beneficial Holder must vote all of their Claims in the Voting Class either to accept or reject the Plan and may not split such vote. Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

| **ISIN AS INDICATED ON EXHIBIT A ATTACHED HERETO** | | | | | |
|---|---|---|---|---|---|
| **Your Customer Account Number for Each Beneficial Holder of a Mishmeret Prepetition Secured Claim Who Voted in Class 4** | **Principal Amount of Mishmeret Prepetition Secured Claims Held as of the Voting Record Date, if applicable**[4] | **Item 2 & 3**<br>**Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below.** | | | **Item 4**<br>**If the Opt-Out Election in Item 3 of the Beneficial Holder Ballot was completed, place an "X" in the column below.** |
| | | **ACCEPT (vote FOR) the Plan** | **or** | **REJECT (vote AGAINST) the Plan** | |
| 1. | $ | | | | |
| 2. | $ | | | | |
| 3. | $ | | | | |
| 4. | $ | | | | |
| 5. | $ | | | | |
| 6. | $ | | | | |
| **TOTALS** | $ | | | | |

4 The Balloting Agent shall tabulate a Holder's Class 4 Mishmeret Prepetition Secured Claim by using the Claim amount of such Holder's Claim when calculating the voting results, which findings shall be included in the Voting Declaration.

**Item 4. Certification as to Transcription of Information from Item 4 of the Beneficial Holders Ballots as to Mishmeret Prepetition Secured Claims (Class 4) Voted Through Other Beneficial Holder Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 4 of each Beneficial Holder Ballot received from a Beneficial Holder. Please use additional sheets of paper if necessary.

| **Your Customer Account Number for Each Beneficial Holder Who Completed Item 4 of the Beneficial Holder Ballots** | **TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL HOLDER BALLOTS:** | | | |
|---|---|---|---|---|
| | **Account Number of Mishmeret Prepetition Secured Claims Voted in Class 4** | **Beneficial Holder's Account Number** | **Principal Amount of Mishmeret Prepetition Secured Claims Voted in Class 4[5]** | **ISIN of Mishmeret Prepetition Secured Claims Voted in Class 4** |
| **Mishmeret Prepetition Secured Claims (Class 4)** | | | | |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

[5] The Balloting Agent shall tabulate a Holder's Class 4 Mishmeret Prepetition Secured Claim by using the Claim amount of such Holder's Claim when calculating the voting results, which findings shall be included in the Voting Declaration.

**Item 5. Other Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1. it has received the Disclosure Statement and the Solicitation Package (including the Plan), has delivered the same to the Beneficial Holders of Mishmeret Prepetition Secured Claims (Class 4) listed in Item 2 and Item 3 above or delivered materials via other customary communications used to solicit or collect votes, and acknowledges that the Solicitation is being made pursuant to the terms and conditions set forth therein;

2. it has received appropriate voting instructions from each Beneficial Holder listed in Item 2 and Item 3 of this Master Ballot;

3. it is the Nominee of the Beneficial Holder of the securities being voted;

4. it has been authorized by each such Beneficial Holder to (i) vote on the Plan and (ii) elect to opt out of the Third-Party Release;

5. it has properly disclosed: (a) the number of Beneficial Holders who completed Beneficial Holder Ballots; (b) the respective amounts of the Mishmeret Prepetition Secured Claim (Class 4) as set forth in Item 2, as the case may be, by each Beneficial Holder who completed a Beneficial Holder Ballot; (c) each such Beneficial Holder's respective vote concerning the Plan; (d) such Beneficial Holder's respective Plan release opt out election; (e) each such Beneficial Holder's certification as to other Class 4 Mishmeret Prepetition Secured Claims voted; and (f) the customer account or other identification number for each such Beneficial Holder; and

6. it will maintain Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least two years after the Effective Date and disclose all such information to the Bankruptcy Court or the Holding Company Debtors, as the case may be, if so ordered.

| | |
|---|---|
| Name of Nominee: | ______________________ (Print or type) |
| Name of Proxy Holder or Agent for Nominee (if applicable): | ______________________ (Print or type) |
| Signature: | ______________________ |
| Name of Signatory: | ______________________ |
| Title: | ______________________ |
| Address: | ______________________ |
| | ______________________ |
| | ______________________ |
| Telephone Number: | ______________________ |
| Email: | ______________________ |
| Date Completed: | ______________________ |

## INSTRUCTIONS FOR COMPLETING AND RETURNING THIS MASTER BALLOT

**1.** The Holding Company Debtors are soliciting votes on the Plan from Holders of Mishmeret Prepetition Secured Claims (Class 4) as of the Voting Record Date [●]. **PLEASE READ THE PLAN, THE DISCLOSURE STATEMENT AND EACH OF ITS EXHIBITS, THE SETTLEMENT TERM SHEET, THE 9019 SETTLEMENT ORDER, THIS MASTER BALLOT, AND THESE INSTRUCTIONS (THE "MASTER BALLOT INSTRUCTIONS") CAREFULLY BEFORE COMPLETING AND SUBMITTING THIS MASTER BALLOT.**

**2.** The Plan may be confirmed by the Bankruptcy Court and consummated, and thereby made binding upon Holders of Claims and Interests provided that the Plan satisfies the requirements for confirmation set forth in the Bankruptcy Code.

**3.** **To ensure that the Master Ballot is counted, you must complete and sign the Master Ballot as provided herein and submit it to the Balloting Agent by one of the following methods so as to be *actually received* by the Balloting Agent no later than the Voting Deadline, which is [●] at 4:00 p.m., prevailing Eastern Time.**

**Via electronic mail service to (preferred method): SIMADBallots@ra.kroll.com[6] with a reference to "SIMAD Master Ballot" in the subject line.**

OR

**By First-Class Mail, Overnight Mail, or Hand Delivery to:**

SIMAD Holdings Ltd., Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

4. **Use of Hard Copy Master Ballot.** To ensure that your hard copy Master Ballot is counted, you must: (a) complete your Master Ballot in accordance with these instructions below; (b) clearly indicate the applicable Beneficial Holders decision either to accept or reject the Plan in the applicable box in Item 2 and Item 3 of your Master Ballot and any election to opt out of the Third-Party Release in the opt-out column; and (c) clearly sign and return your Master Ballot to the above street address so as to be ***actually received*** by the Balloting Agent no later than the Voting Deadline.

5. You should immediately distribute the Beneficial Holder Ballots (or other customary material used to collect votes in lieu of the Beneficial Holders Ballots) and the Solicitation Package to all Beneficial Holders of Mishmeret Prepetition Secured Claims (Class 4) and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds. You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means. Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Mishmeret Prepetition Secured Claims (Class 4) shall not be counted for

---

6 For any Ballot cast via electronic mail, the format of the attachment must be found in the common workplace and industry standard format (*i.e.*, industry-standard PDF file) and the received date and time in the Balloting Agent's inbox will be used as the timestamp for receipt.

purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Balloting Agent a Master Ballot that reflects the vote of such Beneficial Holders by **[●]** at 4:00 p.m., prevailing Eastern Time, or otherwise validate the Beneficial Holder Ballot in a manner acceptable to the Balloting Agent.

If you are transmitting the votes of any Beneficial Holders of Mishmeret Prepetition Secured Claims (Class 4), you must, within two (2) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Mishmeret Prepetition Secured Claims (Class 4) for voting (along with a return envelope provided by and addressed to the Nominee, if applicable), with the Beneficial Holder of the Mishmeret Prepetition Secured Claims (Class 4) then returning the individual Beneficial Holder Ballot to the Nominee. In such case, the Nominee will tabulate the votes of its respective Beneficial Holders on a Master Ballot that will be provided to the Nominee separately by the Balloting Agent, in accordance with any instructions set forth in the instructions to the Master Ballot and then return the Master Ballot to the Balloting Agent. The Nominee should advise the Beneficial Holders to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Balloting Agent so that the Master Ballot is ***actually received*** by the Balloting Agent on or before the Voting Deadline, which is **[●]** at 4:00 p.m., prevailing Eastern Time.

6. With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Balloting Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders of Mishmeret Prepetition Secured Claims (Class 4), whether in hard copy or by electronic direction, in your files for a period of two years after the Effective Date. You may be ordered to produce the Beneficial Holder Ballots, names and/or contact information to the Holding Company Debtors or the Bankruptcy Court.

7. The time by which a Master Ballot is ***actually received*** by the Balloting Agent shall be the time used to determine whether a Master Ballot has been submitted by the Voting Deadline. **The Voting Deadline is [●] at 4:00 p.m., prevailing Eastern Time**.

8. If a Master Ballot is received ***after*** the Voting Deadline, it will not be counted unless the Holding Company Debtors, in consultation with the Committee, determine in their sole discretion otherwise or as permitted by the Bankruptcy Court. Additionally, **the following Master Ballots and Beneficial Holder Ballots will *not* be counted as votes (provided that a valid opt-out election on a timely submitted Ballot will be honored notwithstanding that such Ballot is not counted as a vote)**:

    1. any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;
    2. any Ballot that was transmitted other than as specifically set forth in the Ballot;
    3. any Ballot that was cast by an entity that is not entitled to vote on the Plan;
    4. any Ballot that was sent to any person or entity other than the Balloting Agent;
    5. any Ballot that is unsigned;
    6. any Ballot that is not clearly marked to either accept or reject the Plan or is marked both to accept and reject the Plan;
    7. any Ballot that partially rejects and/or partially accepts the Plan in a particular Voting Class;
    8. any Ballot superseded by a later, timely submitted valid Ballot;
    9. an improperly submitted Ballot; or

10. any Ballot that is not actually received by the Balloting Agent by the Voting Deadline, unless the Holding Company Debtors, in consultation with the Committee, determine otherwise or as permitted by the Court.
11. The method of delivery of Master Ballots to the Balloting Agent is at the election and risk of each Nominee of a Mishmeret Prepetition Secured Claim (Class 4). Except as otherwise provided herein, such delivery will be deemed made only when the Balloting Agent ***actually receives*** the original executed Master Ballot, including by the expressly authorized e-mail submission method. For the avoidance of doubt, a Master Ballot submitted electronically via the online portal shall be considered an original. In all cases, Nominees should allow sufficient time to ensure timely delivery.

9. If multiple Master Ballots are received from the same Nominee with respect to the same Beneficial Holder Ballot belonging to a Beneficial Holder of a Mishmeret Prepetition Secured Claim (Class 4), the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballot(s) with respect to such Claims.

10. This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (i) the Holding Company Debtors revoke or withdraw the Plan, (ii) the Confirmation Order is not entered, or (iii) consummation of the Plan does not occur.

11. A Beneficial Holder must vote each of their Mishmeret Prepetition Secured Claims (Class 4) either to accept or reject the Plan; they may ***not*** split their vote within the Mishmeret Prepetition Secured Claim (Class 4) class.

12. This Master Ballot does ***not*** constitute and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

13. **Please be sure to sign and date your Master Ballot**. You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, and, if required or requested by the Balloting Agent, the Holding Company Debtors, or the Bankruptcy Court (if applicable), must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Master Ballot.

14. Each Ballot votes ***only*** the Claims indicated on that Master Ballot, so please complete and return each Master Ballot that you received.

**The following additional rules shall apply to Master Ballots**:

1. Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Mishmeret Prepetition Secured Claim (Class 4) as of the Voting Record Date, as evidenced by the record and depository listings.

2. Votes submitted by a Nominee pursuant to a Master Ballot will not be counted in excess of the record amount of the Mishmeret Prepetition Secured Claim (Class 4) held by such Nominee.

3. To the extent that conflicting votes or "overvotes" are submitted by a Nominee pursuant to a Master Ballot, the Balloting Agent will attempt to reconcile discrepancies with the Nominee.

4. To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Balloting Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Nominee's position in the Mishmeret Prepetition Secured Claim (Class 4).

For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Balloting Agent may be asked to adjust.

PLEASE RETURN YOUR MASTER BALLOT PROMPTLY.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THE MASTER BALLOT INSTRUCTIONS, OR THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT SIMADINFO@RA.KROLL.COM OR CALL (844) 408-3264 (TOLL-FREE US / CANADA) OR +1 (646) 814-4926 (INTERNATIONAL).**

**IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT AT OR BEFORE THE VOTING DEADLINE, WHICH IS [●] AT 4:00 P.M., PREVAILING EASTERN TIME (AND IF THE VOTING DEADLINE IS NOT EXTENDED), THEN THE VOTE REFLECTED IN THIS MASTER BALLOT MAY BE COUNTED ONLY IN THE SOLE DISCRETION OF THE HOLDING COMPANY DEBTORS, IN CONSULTATION WITH THE COMMITTEE, OR AS PERMITTED BY THE BANKRUPTCY COURT.**

**Exhibit A**

| Mishmeret Prepetition Secured Claims (Class 4) | |
|---|---|
| **DESCRIPTION** | **ISIN** |
| 7.000% Secured Notes due 11/30/2030 | ISIN IL0012328758 |

# Exhibit 4C

## CLASS 5 DISPUTED SECURED MCA CLAIM BALLOT

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**BALLOT FOR (I) ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE HOLDING COMPANY DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPTING OUT OF THE THIRD-PARTY RELEASE**

**CLASS 5 — DISPUTED SECURED MCA CLAIM**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

**FOR YOUR VOTE TO COUNT, THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE HOLDING COMPANY DEBTORS' NOTICE, CLAIMS AND BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION, LLC (THE "BALLOTING AGENT" OR "KROLL") BY [●] AT 4:00 P.M. (ET) (THE "VOTING DEADLINE")**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") have sent this Ballot to you because their records indicate that you are a holder of a Class 5 Disputed Secured MCA Claim, and accordingly, you have a right to vote to accept or reject the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, supplemented or modified, including all exhibits thereto, the "Plan"). Your rights are described in the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto [Docket No. ●] (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement"). On _____ ___, 2026, the Bankruptcy Court entered an order [Docket No. ___] (the "Order")[2] conditionally approving the Disclosure Statement. At the Combined Hearing, the Holding Company Debtors will seek final approval of the adequacy of the Disclosure Statement, as well as confirmation of the Plan.

The Holding Company Debtors are soliciting votes on the Plan from Holders of Class 5 (Disputed Secured MCA Claims). **You are receiving this Ballot because you are the Holder of a Disputed Secured MCA Claim (Class 5) as of the Voting Record Date.**

Copies of the Disclosure Statement, the Order, the Plan. and certain other materials contained in the Solicitation Package are included in the packet you are receiving with this Ballot. Additionally, the Solicitation Package may be obtained by (a) accessing the Holding Company Debtors' chapter 11 case website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, the Disclosure Statement or the Order, as applicable.

3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan and, if desired, to opt out of the Third-Party Release. If you believe you have received this Ballot in error, please contact Kroll at the address or email address set forth above.

*You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 5 (Disputed Secured MCA Claim) under the Plan.*

**If the Balloting Agent does not receive your Ballot on or before the Voting Deadline, [●] at 4:00 p.m. (ET) and if the Voting Deadline is not extended, your vote as either an acceptance or rejection of the Plan will not count. If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you vote.**

**Item 1. Amount of Class 5 Disputed Secured MCA Claim for Voting.**[3]

The undersigned hereby certifies that as of the Voting Record Date, [●] the undersigned was the holder of Class 5 Disputed Secured MCA Claim in the amount set forth below (insert amount in box below):

| |
|---|
| $ ________________ |
| Debtor:__________________________ |

**Item 2. Class 5 Disputed Secured MCA Claim Vote on the Plan.**

The holder of the Class 5 Disputed Secured MCA Claim set forth in Item 1 votes to (please check one):

☐ ACCEPT THE PLAN ☐ REJECT THE PLAN

**ANY BALLOT THAT IS EXECUTED BY THE HOLDER OF A CLAIM BUT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

**YOU MAY VOTE TO ACCEPT OR REJECT THE PLAN AND STILL OPT OUT OF THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VII.D OF THE PLAN BY FOLLOWING THE INSTRUCTIONS IN ITEM 3 BELOW.**

**YOUR VOTE ON THE PLAN WILL BE APPLIED TO EACH APPLICABLE DEBTOR IN THE SAME MANNER AND IN THE SAME AMOUNT AS INDICATED IN THIS ITEM 1.**

**Important Information Regarding the Plan Releases**

**You may opt out of the Third-Party Release regardless of whether you vote to accept or reject the Plan or abstain from voting. An election to opt out does not affect the counting of your vote. If you return this Ballot but do not check the opt-out box in Item 3, or if you do not return a Ballot or Opt-Out Form, the Plan provides**

[3] For voting purposes only, subject to tabulation rules.

**that you are deemed to grant the Third-Party Release. If you timely submit this Ballot with the opt-out box in Item 3 checked, you will not grant the Third-Party Release.**

**Item 3. Article VII of the Plan provides for the following Debtor Releases, Exculpation and Injunction Provisions:**

**CHECK THE BOX BELOW TO OPT OUT OF THIRD-PARTY RELEASE PROVISION OF ARTICLE VII.D OF THE PLAN. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE AND IT WILL BE BINDING ON YOU.**

The undersigned holder of the Class 5 Disputed Secured MCA Claim set forth in Item 1 elects to:

☐ Opt Out of the Third-Party Release Provision

Article VII.B of the Plan provides for Release of Liens:

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order or any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, immediately following the making of all distributions to be made to an applicable holder pursuant to the Plan, and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Holding Company Debtor and its successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Holding Company Debtor (including any Cash Collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Holding Company Debtors or the Liquidation Trust, as applicable, to evidence the release of such Lien and/or security interest, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens; provided that, notwithstanding the foregoing or anything to the contrary in the Plan, (a) the Liens securing the DIP Claims shall not be released and shall remain in full force and effect until Payment in Full (as defined in the Final Mishmeret DIP Order) of the DIP Claims; and (b) any Adequate Protection Liens (as defined in the Final Mishmeret DIP Order) granted pursuant to the Final Mishmeret DIP Order to secure any Diminution in Value (as defined in the Final Mishmeret DIP Order) in respect of the Mishmeret Prepetition Secured Claims shall not be released and shall remain in full force and effect until Payment in Full of the Mishmeret Prepetition Secured Claims.**

**If any holder of a Secured Claim that has been satisfied in full pursuant to the Plan or the Confirmation Order, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Holding Company Debtors or the Liquidation Trust that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidation Trust shall be entitled to make any such filings or recordings on such holder's behalf.**

Article VII.C of the Plan Provides for Releases by the Holding Company Debtors:

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the Holding Company Debtors, their Estates, in each case on behalf of themselves and their respective successors,**

**assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors, their Estates, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such holders or their Estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim against, or Interest in, a Holding Company Debtor or other Entity, or that any holder of any Claim against or Interest in a Holding Company Debtor or other Entity could have asserted on behalf of the Holding Company Debtors based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim, or Interest before or during the Chapter 11 Cases, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the administration and implementation of this Plan, including the distribution of property under this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof; or (iv) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to implementing this Plan; (2) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Holding Company Debtors, the post-Effective Date Holding Company Debtors, or the Holding Company Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

Article VII.D of the Plan provides for Releases by Holders of Claims and Interests (i.e., Consensual Third-Party Release):

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is**

**hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors and their Estates (as applicable) whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any holder of Mishmeret Prepetition Secured Claims that has asserted Claims against the Debtors' Estates as part of a putative class in the Proxima Investment Management Ltd. v. SIMAD Holdings Ltd., et al. matter pending in the District Court of Tel Aviv-Jaffa (Economic Division), Class Action: 88654-05-26, (iv) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof, or (v) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the third-party release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the third-party release; (5) in the best interests of the Holding Company Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to**

**any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release**.

Article VII.F of the Plan provides for an exculpation of certain parties:

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim and any obligation, Cause of Action, or liability for any Exculpated Claim; *provided, however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; *provided further* that the foregoing shall release and exculpate Assaf Ravid, solely in his capacity as Chief Restructuring Officer of the Debtors, for all acts taken in contemplation of the Chapter 11 Cases from and after his appointment on June 2, 2026 through and including the Petition Date. The Exculpated Parties have, and upon Consummation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Article VII.G of the Plan establishes an injunction:

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Holding Company Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Holding Company Debtors. To the fullest extent permissible under applicable law, except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against or Interests in the Holding Company Debtors or Causes of Action, in each case that have been released or are subject to exculpation pursuant to the Plan, shall be precluded and are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated Parties (including the Holding Company Debtors but excluding any Excluded Party), and any successors, assigns or representatives of such Persons or Entities: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff or subrogation, of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and the Bankruptcy Court has entered a Final Order approving such request; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Holding Company Debtors, the Liquidation Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VII.D hereof without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Holding Company Debtor, Liquidation Trust, Exculpated Party, or the Released Parties.**

**Item 4. Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and to the Holding Company Debtors:

a. that either: (i) the undersigned is the holder of the Class 5 Claim being voted; or (ii) the undersigned is an authorized signatory for a holder of the Class 5 Claim being voted;

b. that the undersigned has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the undersigned has cast the same vote with respect to all Class 5 Claims that it holds or for which it is the authorized signatory; and

d. that no other Ballots with respect to the amount of the Class 5 Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such Ballots dated earlier are hereby revoked.

Name of holder:________________________________________________
(Print or Type)

Signature:____________________________________________________________

Name of Signatory:_____________________________________________________
(If other than holder)

Title:_______________________________________________________________

Address:_____________________________________________________

Date Completed:________________________________________________

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT PRIOR TO THE VOTING DEADLINE, WHICH IS 4:00 P.M. (PREVAILING EASTERN TIME) ON [●]**

**To submit a paper Ballot by First Class Mail, Overnight Courier, or Hand Delivery (with a signature):**

SIMAD Holdings Ltd. Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please contact the Balloting Agent via email at SIMADBallots@ra.kroll.com (with "SIMAD Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**To submit your Ballot via electronic, online submission:**

To submit your ballot via the Claims and Noticing Agent's online portal, visit https://restructuring.ra.kroll.com/SIMAD, click on the "Submit E-Ballot" section of the website (the "E-Ballot Portal"), and follow the instructions to submit your Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized unique Ballot:**

Unique E-Ballot ID#: ______________________

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT SIMADINFO@RA.KROLL.COM, REFERENCING "SIMAD SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (888) 408-3264 (TOLL FREE, U.S. AND CANADA) OR +1 (646) 814-4926 (INTERNATIONAL).**

IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 5 BALLOT ON OR BEFORE [●] AT 4:00 P.M. (ET), (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 5 BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE HOLDING COMPANY DEBTORS, IN CONSULTATION WITH THE COMMITTEE.

**INSTRUCTIONS FOR COMPLETING THIS CLASS 5 BALLOT**

1. The Holding Company Debtors are soliciting the votes of holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Class 5 Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Disclosure Statement, a copy of which also accompanies the Class 5 Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. To ensure that your Class 5 Ballot is counted, you ***must*** complete and submit this Class 5 Ballot as instructed herein. **Ballots will not be accepted by electronic mail or facsimile.**

4. **Use of Hard Copy Ballot.** To ensure that your Class 5 Ballot is counted, you must: (a) complete your Class 5 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 5 Ballot; (c) if you wish to opt out of the Third-Party Release, check the opt-out box in Item 3 of the Class 5 Ballot; and (d) clearly sign and submit your Class 5 Ballot by first class mail, courier or hand delivery to Kroll Restructuring Administration LLC, at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232 if by First-Class Mail or Overnight Mail, or hand delivery, so that it is actually received by the Balloting Agent before the Voting Deadline.

5. **Use of Online Ballot Portal**. To ensure that your electronic Ballot is counted, please follow the instructions of the Holding Company Debtors' case administration website at https://restructuring.ra.kroll.com/SIMAD, and under the Case Navigation section of the website click on the "Submit E-Ballot" section.

   The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile, e-mail, or electronic means (other than the online balloting portal).**

6. Your Class 5 Ballot (whether submitted by hard copy or through the online balloting portal) ***must*** be returned to the Balloting Agent so as to be ***actually received*** by the Balloting Agent on or before the Voting Deadline. **The Voting Deadline is [●] at 4:00 p.m. (ET)**

7. If a Class 5 Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Holding Company Debtors in consultation with the Committee. Additionally, **the following** Class 5 Ballots **will *not* be counted as votes (provided that a valid opt-out election on a timely submitted Ballot will be honored notwithstanding that such Ballot is not counted as a vote)**:

   (a) any Ballot received after the Voting Deadline (as may be extended by the Holding Company Debtors as provided herein);
   (b) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;
   (c) any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;
   (d) any Ballot superseded by a later received, valid Ballot; *provided* that such later received, valid Ballot shall be included in the final tabulation;
   (e) any Ballot that indicates neither an acceptance nor a rejection, or indicates both an acceptance and rejection, of the Plan;
   (f) any Ballot that casts part of its vote in the same class to accept the Plan and part to reject the Plan;

(g) any form of Ballot other than the official form sent by the Balloting Agent, or a copy thereof;
(h) any Ballot received that the Balloting Agent cannot match to an existing database record;
(i) any Ballot that does not contain a signature (for the avoidance of doubt, Ballots submitted via the online portal will be deemed to contain a signature);
(j) any Ballot that is submitted by facsimile, email or by other electronic means (other than through the online portal); or
(k) any Ballot sent to the Holding Company Debtors' professionals or to Kroll at any address other than the official address set forth on the Ballot.

8. The method of delivery of Class 5 Ballot to the Balloting Agent is at the election and risk of each holder of a Disputed Secured MCA Claims. Except as otherwise provided herein, such delivery will be deemed made only when the Balloting Agent ***actually receives*** the originally executed Class 5 Ballot. In all cases, holders should allow sufficient time to ensure timely delivery.

9. If multiple Class 5 Ballots are received from the same holder of a Disputed Secured MCA Claim with respect to the same Disputed Secured MCA Claim prior to the Voting Deadline, the latest, timely received, and valid Class 5 Ballot will supersede and revoke any earlier received Class 5 Ballots.

10. You must vote all of your Disputed Secured MCA Claim within Class 5 either to accept or reject the Plan and may **not** split your vote. Further, if a holder has multiple Disputed Secured MCA Claims within Class 5, the Claims of any such holder within Class 5 will be aggregated for purposes of counting votes, as set forth in the Solicitation and Voting Procedures.

11. This Class 5 Ballot does ***not*** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12. **Please be sure to sign and date your Class 5 Ballot**. If you are signing a Class 5 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Balloting Agent, the Holding Company Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 5 Ballot.

13. Each ballot votes ***only*** your Claims indicated on that ballot, so please complete and return each ballot that you received.

PLEASE SUBMIT YOUR CLASS 5 BALLOT PROMPTLY

IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 5 BALLOT THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE HOLDING COMPANY DEBTORS' RESTRUCTURING HOTLINE AT: (844) 408-3264 (DOMESTIC) OR +1 (646) 814-4926 (INTERNATIONAL) OR EMAIL:SIMADINFO@RA.KROLL.COM WITH A REFERENCE TO "SIMAD SOLICITATION" IN THE SUBJECT LINE.

**IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 5 BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON [●] AT 4:00 P.M. (ET), (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE HOLDING COMPANY DEBTORS IN CONSULTATION WITH THE COMMITTEE.**

# Exhibit 4D

## CLASS 6 DISPUTED UNSECURED MCA CLAIM BALLOT

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**BALLOT FOR (I) ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE HOLDING COMPANY DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPTING OUT OF THE THIRD-PARTY RELEASE**

**CLASS 6 — DISPUTED UNSECURED MCA CLAIM**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

**FOR YOUR VOTE TO COUNT, THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE HOLDING COMPANY DEBTORS' NOTICE, CLAIMS AND BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION, LLC (THE "BALLOTING AGENT" OR "KROLL") BY [●] AT 4:00 P.M. (ET) (THE "VOTING DEADLINE")**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") have sent this Ballot to you because their records indicate that you are a holder of a Class 6 Disputed Unsecured MCA Claim, and accordingly, you have a right to vote to accept or reject the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, supplemented or modified, including all exhibits thereto, the "Plan"). Your rights are described in the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto [Docket No. ●] (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement"). On _____ ___, 2026, the Bankruptcy Court entered an order [Docket No. ___] (the "Order")[2] conditionally approving the Disclosure Statement. At the Combined Hearing, the Holding Company Debtors will seek final approval of the adequacy of the Disclosure Statement, as well as confirmation of the Plan.

The Holding Company Debtors are soliciting votes on the Plan from Holders of Class 6 (Disputed Unsecured MCA Claims). **You are receiving this Ballot because you are the Holder of a Disputed Unsecured MCA Claim (Class 6) as of the Voting Record Date.**

Copies of the Disclosure Statement, the Order, the Plan, and certain other materials contained in the Solicitation Package are included in the packet you are receiving with this Ballot. Additionally, the Solicitation Package may be obtained by (a) accessing the Holding Company Debtors' chapter 11 case website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-

---

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, the Disclosure Statement or the Order, as applicable.

3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan and, if desired, to opt out of the Third-Party Release. If you believe you have received this Ballot in error, please contact Kroll at the address or email address set forth above.

*You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 6 (Disputed Unsecured MCA Claim) under the Plan.*

**If the Balloting Agent does not receive your Ballot on or before the Voting and Opt-Out Deadline, [●] at 4:00 p.m. (ET) and if the Voting Deadline is not extended, your vote as either an acceptance or rejection of the Plan will not count. If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you vote.**

**Item 1. Amount of Class 6 Disputed Unsecured MCA Claim for Voting.**[3]

The undersigned hereby certifies that as of the Voting Record Date, [●], the undersigned was the holder of Class 6 Disputed Unsecured MCA Claim in the amount set forth below (insert amount in box below):

| |
|---|
| $ ________________ |
| Debtor:________________________ |

**Item 2. Class 6 Disputed Unsecured MCA Claim Vote on the Plan.**

The holder of the Class 6 Disputed Unsecured MCA Claim set forth in Item 1 votes to (please check one):

☐ ACCEPT THE PLAN ☐ REJECT THE PLAN

**ANY BALLOT THAT IS EXECUTED BY THE HOLDER OF A CLAIM BUT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

**YOU MAY VOTE TO ACCEPT OR REJECT THE PLAN AND STILL OPT OUT OF THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VII.D OF THE PLAN BY FOLLOWING THE INSTRUCTIONS IN ITEM 3 BELOW.**

**YOUR VOTE ON THE PLAN WILL BE APPLIED TO EACH APPLICABLE DEBTOR IN THE SAME MANNER AND IN THE SAME AMOUNT AS INDICATED IN THIS ITEM 1.**

**Important Information Regarding the Plan Releases**

**You may opt out of the Third-Party Release regardless of whether you vote to accept or reject the Plan or abstain from voting. An election to opt out does not affect the counting of your vote. If you return this Ballot but do not check the opt-out box in Item 3, or if you do not return a Ballot or Opt-Out Form, the Plan provides**

3 For voting purposes only, subject to tabulation rules.

**that you are deemed to grant the Third-Party Release. If you timely submit this Ballot with the opt-out box in Item 3 checked, you will not grant the Third-Party Release.**

**Item 3. Article VII of the Plan provides for the following Debtor Releases, Exculpation and Injunction Provisions:**

**CHECK THE BOX BELOW TO OPT OUT OF THIRD-PARTY RELEASE PROVISION OF ARTICLE VII.D OF THE PLAN. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE AND IT WILL BE BINDING ON YOU.**

The undersigned holder of the Class 6 Disputed Unsecured MCA Claim set forth in Item 1 elects to:

☐ Opt Out of the Third-Party Release Provision

Article VII.B of the Plan provides for Release of Liens:

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order or any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, immediately following the making of all distributions to be made to an applicable holder pursuant to the Plan, and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Holding Company Debtor and its successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Holding Company Debtor (including any Cash Collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Holding Company Debtors or the Liquidation Trust, as applicable, to evidence the release of such Lien and/or security interest, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens; provided that, notwithstanding the foregoing or anything to the contrary in the Plan, (a) the Liens securing the DIP Claims shall not be released and shall remain in full force and effect until Payment in Full (as defined in the Final Mishmeret DIP Order) of the DIP Claims; and (b) any Adequate Protection Liens (as defined in the Final Mishmeret DIP Order) granted pursuant to the Final Mishmeret DIP Order to secure any Diminution in Value (as defined in the Final Mishmeret DIP Order) in respect of the Mishmeret Prepetition Secured Claims shall not be released and shall remain in full force and effect until Payment in Full of the Mishmeret Prepetition Secured Claims.**

**If any holder of a Secured Claim that has been satisfied in full pursuant to the Plan or the Confirmation Order, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Holding Company Debtors or the Liquidation Trust that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidation Trust shall be entitled to make any such filings or recordings on such holder's behalf.**

Article VII.C of the Plan Provides for Releases by the Holding Company Debtors:

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the Holding Company Debtors, their Estates, in each case on behalf of themselves and their respective successors,**

**assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors, their Estates, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such holders or their Estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim against, or Interest in, a Holding Company Debtor or other Entity, or that any holder of any Claim against or Interest in a Holding Company Debtor or other Entity could have asserted on behalf of the Holding Company Debtors based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim, or Interest before or during the Chapter 11 Cases, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the administration and implementation of this Plan, including the distribution of property under this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof; or (iv) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to implementing this Plan; (2) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Holding Company Debtors, the post-Effective Date Holding Company Debtors, or the Holding Company Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

Article VII.D of the Plan provides for Releases by Holders of Claims and Interests (i.e., Consensual Third-Party Release):

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is**

**hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors and their Estates (as applicable) whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any holder of Mishmeret Prepetition Secured Claims that has asserted Claims against the Debtors' Estates as part of a putative class in the Proxima Investment Management Ltd. v. SIMAD Holdings Ltd., et al. matter pending in the District Court of Tel Aviv-Jaffa (Economic Division), Class Action: 88654-05-26, (iv) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof, or (v) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the third-party release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the third-party release; (5) in the best interests of the Holding Company Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to**

**any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release**.

Article VII.F of the Plan provides for an exculpation of certain parties:

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim and any obligation, Cause of Action, or liability for any Exculpated Claim; *provided, however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; *provided further* that the foregoing shall release and exculpate Assaf Ravid, solely in his capacity as Chief Restructuring Officer of the Debtors, for all acts taken in contemplation of the Chapter 11 Cases from and after his appointment on June 2, 2026 through and including the Petition Date. The Exculpated Parties have, and upon Consummation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Article VII.G of the Plan establishes an injunction:

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Holding Company Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Holding Company Debtors. To the fullest extent permissible under applicable law, except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against or Interests in the Holding Company Debtors or Causes of Action, in each case that have been released or are subject to exculpation pursuant to the Plan, shall be precluded and are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated Parties (including the Holding Company Debtors but excluding any Excluded Party), and any successors, assigns or representatives of such Persons or Entities: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff or subrogation, of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and the Bankruptcy Court has entered a Final Order approving such request; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Holding Company Debtors, the Liquidation Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VII.D hereof without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Holding Company Debtor, Liquidation Trust, Exculpated Party, or the Released Parties.**

**Item 4. Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and to the Holding Company Debtors:

a. that either: (i) the undersigned is the holder of the Class 6 Claim being voted; or (ii) the undersigned is an authorized signatory for a holder of the Class 6 Claim being voted;

b. that the undersigned has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the undersigned has cast the same vote with respect to all Class 6 Claims that it holds or for which it is the authorized signatory; and

d. that no other Ballots with respect to the amount of the Class 6 Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such Ballots dated earlier are hereby revoked.

Name of holder:____________________________________________________________
(Print or Type)

Signature:_________________________________________________________________________

Name of Signatory:_________________________________________________________________
(If other than holder)

Title:_____________________________________________________________________________

Address:__________________________________________________________________

Date Completed:___________________________________________________________

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT PRIOR TO THE VOTING DEADLINE, WHICH IS 4:00 P.M. (PREVAILING EASTERN TIME) ON [●].**

**To submit a paper Ballot by First Class Mail, Overnight Courier, or Hand Delivery (with a signature):**

SIMAD Holdings Ltd. Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please contact the Balloting Agent via email at SIMADBallots@ra.kroll.com (with "SIMAD Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**To submit your Ballot via electronic, online submission:**

To submit your ballot via the Claims and Noticing Agent's online portal, visit https://restructuring.ra.kroll.com/SIMAD, click on the "Submit E-Ballot" section of the website (the "E-Ballot Portal"), and follow the instructions to submit your Ballot.

**IMPORTANT NOTE**: **You will need the following information to retrieve and submit your customized unique Ballot:**

Unique E-Ballot ID#: ______________________

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT SIMADINFO@RA.KROLL.COM, REFERENCING "SIMAD SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (888) 408-3264 (TOLL FREE, U.S. AND CANADA) OR +1 (646) 814-4926 (INTERNATIONAL).**

IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 6 BALLOT ON OR BEFORE [●] AT 4:00 P.M. (ET), (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 6 BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE HOLDING COMPANY DEBTORS IN CONSULTATION WITH THE COMMITTEE.

**INSTRUCTIONS FOR COMPLETING THIS CLASS 6 BALLOT**

1. The Holding Company Debtors are soliciting the votes of holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Class 6 Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Disclosure Statement, a copy of which also accompanies the Class 6 Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. To ensure that your Class 6 Ballot is counted, you ***must*** complete and submit this Class 6 Ballot as instructed herein. **Ballots will not be accepted by electronic mail or facsimile.**

4. **Use of Hard Copy Ballot.** To ensure that your Class 6 Ballot is counted, you must: (a) complete your Class 6 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 6 Ballot; (c) if you wish to opt out of the Third-Party Release, check the opt-out box in Item 3 of the Class 6 Ballot; and (d) clearly sign and submit your Class 6 Ballot by first class mail, courier or hand delivery to Kroll Restructuring Administration LLC, at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232 if by First-Class Mail or Overnight Mail, or hand delivery, so that it is actually received by the Balloting Agent before the Voting Deadline.

5. **Use of Online Ballot Portal**. To ensure that your electronic Ballot is counted, please follow the instructions of the Holding Company Debtors' case administration website at https://restructuring.ra.kroll.com/SIMAD, and under the Case Navigation section of the website click on the "Submit E-Ballot" section.

   The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile, e-mail, or electronic means (other than the online balloting portal).**

6. Your Class 6 Ballot (whether submitted by hard copy or through the online balloting portal) ***must*** be returned to the Balloting Agent so as to be ***actually received*** by the Balloting Agent on or before the Voting Deadline. **The Voting Deadline is [●] at 4:00 p.m. (ET)**

7. If a Class 6 Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Holding Company Debtors in consultation with the Committee. Additionally, **the following** Class 6 Ballots **will *not* be counted as votes (provided that a valid opt-out election on a timely submitted Ballot will be honored notwithstanding that such Ballot is not counted as a vote)**:

   (a) any Ballot received after the Voting Deadline (as may be extended by the Holding Company Debtors as provided herein);
   (b) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;
   (c) any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;
   (d) any Ballot superseded by a later received, valid Ballot; *provided* that such later received, valid Ballot shall be included in the final tabulation;
   (e) any Ballot that indicates neither an acceptance nor a rejection, or indicates both an acceptance and rejection, of the Plan;
   (f) any Ballot that casts part of its vote in the same class to accept the Plan and part to reject the Plan;

(g) any form of Ballot other than the official form sent by the Balloting Agent, or a copy thereof;
(h) any Ballot received that the Balloting Agent cannot match to an existing database record;
(i) any Ballot that does not contain a signature (for the avoidance of doubt, Ballots submitted via the online portal will be deemed to contain a signature);
(j) any Ballot that is submitted by facsimile, email or by other electronic means (other than through the online portal); or
(k) any Ballot sent to the Holding Company Debtors' professionals or to Kroll at any address other than the official address set forth on the Ballot.

8. The method of delivery of Class 6 Ballot to the Balloting Agent is at the election and risk of each holder of a Disputed Unsecured MCA Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Balloting Agent ***actually receives*** the originally executed Class 6 Ballot. In all cases, holders should allow sufficient time to ensure timely delivery.

9. If multiple Class 6 Ballots are received from the same holder of a Disputed Unsecured MCA Claim with respect to the same Disputed Unsecured MCA Claim prior to the Voting Deadline, the latest, timely received, and valid Class 6 Ballot will supersede and revoke any earlier received Class 6 Ballots.

10. You must vote all of your Disputed Unsecured MCA Claims within Class 6 either to accept or reject the Plan and may **not** split your vote. Further, if a holder has multiple Disputed Unsecured MCA Claims within Class 6, the Claims of any such holder within Class 6 will be aggregated for purposes of counting votes, as set forth in the Solicitation and Voting Procedures.

11. This Class 6 Ballot does ***not*** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12. **Please be sure to sign and date your Class 6 Ballot**. If you are signing a Class 6 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Balloting Agent, the Holding Company Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 6 Ballot.

13. Each ballot votes ***only*** your Claims indicated on that ballot, so please complete and return each ballot that you received.

PLEASE SUBMIT YOUR CLASS 6 BALLOT PROMPTLY

IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 6 BALLOT THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE HOLDING COMPANY DEBTORS' RESTRUCTURING HOTLINE AT: (844) 408-3264 (DOMESTIC) OR +1 (646) 814-4926 (INTERNATIONAL) OR EMAIL: SIMADINFO@RA.KROLL.COM WITH A REFERENCE TO "SIMAD SOLICITATION" IN THE SUBJECT LINE.

**IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 6 BALLOT ON OR BEFORE THE VOTING AND OPT-OUT DEADLINE, WHICH IS ON [●] AT 4:00 P.M. (ET), (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE HOLDING COMPANY DEBTORS IN CONSULTATION WITH THE COMMITTEE.**

# **Exhibit 4E**

## **CLASS 7 GENERAL UNSECURED CLAIM BALLOT**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**BALLOT FOR (I) ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE HOLDING COMPANY DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OPTING OUT OF THE THIRD-PARTY RELEASE**

**CLASS 7 — GENERAL UNSECURED CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

**FOR YOUR VOTE TO COUNT, THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE HOLDING COMPANY DEBTORS' NOTICE, CLAIMS AND BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION, LLC (THE "BALLOTING AGENT" OR "KROLL") BY [●] AT 4:00 P.M. (ET) (THE "VOTING AND OPT-OUT DEADLINE")**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") have sent this Ballot to you because their records indicate that you are a holder of a Class 7 General Unsecured Claim, and accordingly, you have a right to vote to accept or reject the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●] (as may be amended, supplemented or modified, including all exhibits thereto, the "Plan"). Your rights are described in the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto [Docket No. ●] (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement"). On _____ ___, 2026, the Bankruptcy Court entered an order [Docket No. ___] (the "Order")[2] conditionally approving the Disclosure Statement. At the Combined Hearing, the Holding Company Debtors will seek final approval of the adequacy of the Disclosure Statement, as well as confirmation of the Plan.

The Holding Company Debtors are soliciting votes on the Plan from Holders of Class 7 (General Unsecured Claims). **You are receiving this Ballot because you are the Holder of a General Unsecured Claim (Class 7) as of the Voting Record Date.**

Copies of the Disclosure Statement, the Order, the Plan. and certain other materials contained in the Solicitation Package are included in the packet you are receiving with this Ballot. Additionally, the Solicitation Package may be obtained by (a) accessing the Holding Company Debtors' chapter 11 case website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll

1 A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

2 Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, the Disclosure Statement or the Order, as applicable.

Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov. Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan and, if desired, to opt out of the Third-Party Release. If you believe you have received this Ballot in error, please contact the Kroll at the address or email address set forth above.

*You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 7 (General Unsecured Claims) under the Plan.*

**If the Balloting Agent does not receive your Ballot on or before the Voting and Opt-Out Deadline, [●] at 4:00 p.m. (ET) and if the Voting Deadline is not extended, your vote as either an acceptance or rejection of the Plan will not count. If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you vote.**

**Item 1. Amount of Class 7 General Unsecured Claims for Voting.**[3]

The undersigned hereby certifies that as of the Voting Record Date, [●] the undersigned was the holder of Class 7 General Unsecured Claim in the amount set forth below (insert amount in box below):

| |
|---|
| $ ____________________<br>Debtor:________________________ |

**Item 2. Class 7 General Unsecured Claims Vote on the Plan.**

The holder of the Class 7 General Unsecured Claims set forth in Item 1 votes to (please check one):

☐ ACCEPT THE PLAN ☐ REJECT THE PLAN

**ANY BALLOT THAT IS EXECUTED BY THE HOLDER OF A CLAIM BUT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

**YOU MAY VOTE TO ACCEPT OR REJECT THE PLAN AND STILL OPT OUT OF THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VII.D OF THE PLAN BY FOLLOWING THE INSTRUCTIONS IN ITEM 3 BELOW.**

**YOUR VOTE ON THE PLAN WILL BE APPLIED TO EACH APPLICABLE DEBTOR IN THE SAME MANNER AND IN THE SAME AMOUNT AS INDICATED IN THIS ITEM 1.**

**Important Information Regarding the Plan Releases**

**You may opt out of the Third-Party Release regardless of whether you vote to accept or reject the Plan or abstain from voting. An election to opt out does not affect the counting of your vote. If you return this Ballot but do not check the opt-out box in Item 3, or if you do not return a Ballot or Opt-Out Form, the Plan provides**

3 For voting purposes only, subject to tabulation rules.

**that you are deemed to grant the Third-Party Release. If you timely submit this Ballot with the opt-out box in Item 3 checked, you will not grant the Third-Party Release.**

**<u>Item 3</u>. Article VII of the Plan provides for the following Debtor Releases, Exculpation and Injunction Provisions:**

**CHECK THE BOX BELOW TO OPT OUT OF THIRD-PARTY RELEASE PROVISION OF ARTICLE VII.D OF THE PLAN. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE AND IT WILL BE BINDING ON YOU.**

The undersigned holder of the Class 7 General Unsecured Claim set forth in Item 1 elects to:

☐ Opt Out of the Third-Party Release Provision

<u>Article VII.B of the Plan provides for Release of Liens</u>:

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order or any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, immediately following the making of all distributions to be made to an applicable holder pursuant to the Plan, and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Holding Company Debtor and its successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Holding Company Debtor (including any Cash Collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Holding Company Debtors or the Liquidation Trust, as applicable, to evidence the release of such Lien and/or security interest, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens; provided that, notwithstanding the foregoing or anything to the contrary in the Plan, (a) the Liens securing the DIP Claims shall not be released and shall remain in full force and effect until Payment in Full (as defined in the Final Mishmeret DIP Order) of the DIP Claims; and (b) any Adequate Protection Liens (as defined in the Final Mishmeret DIP Order) granted pursuant to the Final Mishmeret DIP Order to secure any Diminution in Value (as defined in the Final Mishmeret DIP Order) in respect of the Mishmeret Prepetition Secured Claims shall not be released and shall remain in full force and effect until Payment in Full of the Mishmeret Prepetition Secured Claims.**

**If any holder of a Secured Claim that has been satisfied in full pursuant to the Plan or the Confirmation Order, or any agent for such holder, has filed or recorded publicly any Liens and/or security interests to secure such holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such holder (or the agent for such holder) shall take any and all steps requested by the Holding Company Debtors or the Liquidation Trust that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidation Trust shall be entitled to make any such filings or recordings on such holder's behalf.**

<u>Article VII.C of the Plan Provides for Releases by the Holding Company Debtors</u>:

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the Holding Company Debtors, their Estates, in each case on behalf of themselves and their respective successors,**

**assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors, their Estates, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such holders or their Estates, affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the holder of any Claim against, or Interest in, a Holding Company Debtor or other Entity, or that any holder of any Claim against or Interest in a Holding Company Debtor or other Entity could have asserted on behalf of the Holding Company Debtors based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim, or Interest before or during the Chapter 11 Cases, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the administration and implementation of this Plan, including the distribution of property under this Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof; or (iv) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to implementing this Plan; (2) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Holding Company Debtors, the post-Effective Date Holding Company Debtors, or the Holding Company Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

<u>Article VII.D of the Plan provides for Releases by Holders of Claims and Interests (i.e., Consensual Third-Party Release)</u>:

**Except as otherwise specifically provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is**

**hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Holding Company Debtors and their Estates (as applicable) whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Holding Company Debtors (including the management, ownership, or operation thereof or otherwise), the purchase or sale of the Series A bonds, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Holding Company Debtor and any Released Party, the distribution of any Cash or other property of the Holding Company Debtors to any Released Party, the assertion of or enforcement of rights or remedies against the Holding Company Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Holding Company Debtors' in- or out-of-court restructuring efforts, including, but not limited to, the sale and marketing efforts related thereto, intercompany transactions between or among the Holding Company Debtors or between the Holding Company Debtors and their non-Debtor affiliates, the DIP Facility, the Final Mishmeret DIP Order, the DIP Documents, the Sale Orders, the Disclosure Statement Order, the Confirmation Order, the 9019 Settlement Order, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, this Plan, or the Plan Supplement, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, this Plan, or the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under this Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, (ii) any Retained Causes of Action against any Entity other than a Released Party, (iii) any holder of Mishmeret Prepetition Secured Claims that has asserted Claims against the Debtors' Estates as part of a putative class in the Proxima Investment Management Ltd. v. SIMAD Holdings Ltd., et al. matter pending in the District Court of Tel Aviv-Jaffa (Economic Division), Class Action: 8865-05-26, (iv) any Claim or Cause of Action against any Excluded Party, all of which are preserved as set forth in Article VII.J hereof, or (v) any obligation of any Released Party under the Settlement Term Sheet or the 9019 Settlement Order, each of which shall survive Confirmation and the occurrence of the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the third-party release is: (1) consensual; (2) essential to the Confirmation of this Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contribution to implementing this Plan; (4) a good faith settlement and compromise of the Claims released by the third-party release; (5) in the best interests of the Holding Company Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to**

**any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party release**.

Article VII.F of the Plan provides for an exculpation of certain parties:

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim and any obligation, Cause of Action, or liability for any Exculpated Claim; *provided, however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; *provided further* that the foregoing shall release and exculpate Assaf Ravid, solely in his capacity as Chief Restructuring Officer of the Debtors, for all acts taken in contemplation of the Chapter 11 Cases from and after his appointment on June 2, 2026 through and including the Petition Date. The Exculpated Parties have, and upon Consummation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

Article VII.G of the Plan establishes an injunction:

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Holding Company Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Holding Company Debtors. To the fullest extent permissible under applicable law, except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against or Interests in the Holding Company Debtors or Causes of Action, in each case that have been released or are subject to exculpation pursuant to the Plan, shall be precluded and are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated Parties (including the Holding Company Debtors but excluding any Excluded Party), and any successors, assigns or representatives of such Persons or Entities: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff or subrogation, of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and the Bankruptcy Court has entered a Final Order approving such request; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Holding Company Debtors, the Liquidation Trust, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VII.D hereof without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Holding Company Debtor, Liquidation Trust, Exculpated Party, or the Released Parties.**

**Item 4. Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and to the Holding Company Debtors:

a. that either: (i) the undersigned is the holder of the Class 7 Claims being voted; or (ii) the undersigned is an authorized signatory for a holder of the Class 7 Claims being voted;

b. that the undersigned has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the undersigned has cast the same vote with respect to all Class 7 Claims that it holds or for which it is the authorized signatory; and

d. that no other Ballots with respect to the amount of the Class 7 Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such Ballots dated earlier are hereby revoked.

Name of holder:________________________________________________
(Print or Type)

Signature:____________________________________________________________

Name of Signatory:_____________________________________________________
(If other than holder)

Title:________________________________________________________________

Address:________________________________________________________

Date Completed:__________________________________________________

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT PRIOR TO THE VOTING AND OPT-OUT DEADLINE, WHICH IS 4:00 P.M. (PREVAILING EASTERN TIME) ON [●].**

**To submit a paper Ballot by First Class Mail, Overnight Courier, or Hand Delivery (with a signature):**

SIMAD Holdings Ltd. Ballot Processing
c/o Kroll Restructuring Administration LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

To arrange hand delivery of your Ballot, please contact the Balloting Agent via email at SIMADBallots@ra.kroll.com (with "SIMAD Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery.

**To submit your Ballot via electronic, online submission:**

To submit your ballot via the Claims and Noticing Agent's online portal, visit https://restructuring.ra.kroll.com/SIMAD, click on the "Submit E-Ballot" section of the website (the "E-Ballot Portal"), and follow the instructions to submit your Ballot.

**IMPORTANT NOTE**: **You will need the following information to retrieve and submit your customized unique Ballot:**

Unique E-Ballot ID#: ______________________

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT SIMADINFO@RA.KROLL.COM, REFERENCING "SIMAD SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (888) 408-3264 (TOLL FREE, U.S. AND CANADA) OR +1 (646) 814-4926 (INTERNATIONAL).**

IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 7 BALLOT ON OR BEFORE [●] AT 4:00 P.M. (ET), (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS CLASS 7 BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE HOLDING COMPANY DEBTORS IN CONSULTATION WITH THE COMMITTEE.

**INSTRUCTIONS FOR COMPLETING THIS CLASS 7 BALLOT**

1. The Holding Company Debtors are soliciting the votes of holders of Claims with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Class 7 Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Disclosure Statement, a copy of which also accompanies the Class 7 Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of creditors that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. To ensure that your Class 7 Ballot is counted, you ***must*** complete and submit this Class 7 Ballot as instructed herein. **Ballots will not be accepted by electronic mail or facsimile.**

4. **Use of Hard Copy Ballot.** To ensure that your Class 7 Ballot is counted, you must: (a) complete your Class 7 Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Class 7 Ballot; (c) if you wish to opt out of the Third-Party Release, check the opt-out box in Item 3 of the Class 7 Ballot; and (d) clearly sign and submit your Class 7 Ballot by first class mail, courier or hand delivery to Kroll Restructuring Administration LLC, at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232 if by First-Class Mail or Overnight Mail, or hand delivery, so that it is actually received by the Balloting Agent before the Voting Deadline.

5. **Use of Online Ballot Portal**. To ensure that your electronic Ballot is counted, please follow the instructions of the Holding Company Debtors' case administration website at https://restructuring.ra.kroll.com/SIMAD, and under the Case Navigation section of the website click on the "Submit E-Ballot" section.

   The online balloting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile, e-mail, or electronic means (other than the online balloting portal).**

6. Your Class 7 Ballot (whether submitted by hard copy or through the online balloting portal) ***must*** be returned to the Balloting Agent so as to be ***actually received*** by the Balloting Agent on or before the Voting Deadline. **The Voting Deadline is [●] at 4:00 p.m. (ET)**

7. If a Class 7 Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Holding Company Debtors in consultation with the Committee. Additionally, **the following** Class 7 Ballot **will *not* be counted as votes (provided that a valid opt-out election on a timely submitted Ballot will be honored notwithstanding that such Ballot is not counted as a vote)**:

   (a) any Ballot received after the Voting Deadline (as may be extended by the Holding Company Debtors as provided herein);
   (b) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;
   (c) any Ballot cast by a person or entity that does not hold a claim in a class that is entitled to vote to accept or reject the Plan;
   (d) any Ballot superseded by a later received, valid Ballot; *provided* that such later received, valid Ballot shall be included in the final tabulation;
   (e) any Ballot that indicates neither an acceptance nor a rejection, or indicates both an acceptance and rejection, of the Plan;
   (f) any Ballot that casts part of its vote in the same class to accept the Plan and part to reject the Plan;

(g) any form of Ballot other than the official form sent by the Balloting Agent, or a copy thereof;
(h) any Ballot received that the Balloting Agent cannot match to an existing database record;
(i) any Ballot that does not contain a signature (for the avoidance of doubt, Ballots submitted via the online portal will be deemed to contain a signature);
(j) any Ballot that is submitted by facsimile, email or by other electronic means (other than through the online portal); or
(k) any Ballot sent to the Holding Company Debtors' professionals or to Kroll at any address other than the official address set forth on the Ballot.

8. The method of delivery of Class 7 Ballot to the Balloting Agent is at the election and risk of each holder of a General Unsecured Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Balloting Agent ***actually receives*** the originally executed Class 7 Ballot. In all cases, holders should allow sufficient time to ensure timely delivery.

9. If multiple Class 7 Ballots are received from the same holder of a General Unsecured Claim with respect to the same General Unsecured Claim prior to the Voting Deadline, the latest, timely received, and valid Class 7 Ballot will supersede and revoke any earlier received Class 7 Ballots.

10. You must vote all of your General Unsecured Claims within Class 7 either to accept or reject the Plan and may **not** split your vote. Further, if a holder has multiple General Unsecured Claims within Class 7, the Claims of any such holder within Class 7 will be aggregated for purposes of counting votes, as set forth in the Solicitation and Voting Procedures.

11. This Class 7 Ballot does ***not*** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12. **Please be sure to sign and date your Class 7 Ballot**. If you are signing a Class 7 Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Balloting Agent, the Holding Company Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Class 7 Ballot.

13. Each ballot votes ***only*** your Claims indicated on that ballot, so please complete and return each ballot that you received.

PLEASE SUBMIT YOUR CLASS 7 BALLOT PROMPTLY

IF YOU HAVE ANY QUESTIONS REGARDING THIS CLASS 7 BALLOT THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE HOLDING COMPANY DEBTORS' RESTRUCTURING HOTLINE AT: (844) 408-3264 (DOMESTIC) OR +1 (646) 814-4926 (INTERNATIONAL) OR EMAIL: SIMADINFO@RA.KROLL.COM WITH A REFERENCE TO "SIMAD SOLICITATION" IN THE SUBJECT LINE.

**IF THE BALLOTING AGENT DOES NOT *ACTUALLY RECEIVE* THIS CLASS 7 BALLOT ON OR BEFORE THE VOTING AND OPT-OUT DEADLINE, WHICH IS ON [●] AT 4:00 P.M. (ET), (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE HOLDING COMPANY DEBTORS IN CONSULTATION WITH THE COMMITTEE.**

**Exhibit 5**

**Cover Letter**

Via First-Class Mail or Email, as Applicable

**RE: SIMAD Holdings Ltd., *et al.***
**Chapter 11 Case No. 26-16388 (CMG) (Jointly Administered)**

Dear Holders of Claims entitled to vote on the Plan,

You have received this letter and the enclosed materials because you are entitled to vote on the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (as modified, amended, or supplemented from time to time, the "Plan");[1]

On June 4 and 5, 2026, SIMAD Holdings Ltd. and its affiliated debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

On [______], 2026, the Bankruptcy Court entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) conditionally approving the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (b) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (c) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan, among other things.

Additionally, Article VII of the Plan contains release, exculpation, and injunction provisions. Thus, you are advised to review and consider the Plan carefully because your rights may be affected thereunder. You may elect not to grant the third-party release contained in Article VII.D of the Plan by returning a Ballot or Opt-Out Form, as applicable, and checking the box to "opt-out" from the Third-Party Release. This option is available regardless of whether you vote to accept or reject the Plan or abstain from voting, and your decision to opt out will not affect how your vote is counted or your treatment under the Plan.

YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

In addition to this Cover Letter, the enclosed materials comprise your Solicitation Package, and were approved by the Bankruptcy Court for distribution to Holders of Claims in connection with the solicitation of votes to accept the Plan. The Solicitation Package consists of the following, as applicable:

1. a copy of the Solicitation and Voting Procedures;

2. Ballot, together with detailed voting instructions and instructions on how to submit the Ballot;

3. this letter;

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

4. (for Holders of Class 5, Class 6, and Class 7 Claims) the Committee Letter;

5. the Combined Hearing Notice;

6. the Disclosure Statement (and exhibits thereto, including the Plan) as conditionally approved by the Bankruptcy Court;

7. the Disclosure Statement Order (without exhibits, except for the Solicitation and Voting Procedures);

8. a pre-addressed, postage prepaid reply envelope (if applicable); and

9. any additional documents that the Bankruptcy Court has ordered to be made available to Holders of Claims in the Voting Classes.

The Holding Company Debtors have approved the filing of the Plan and the solicitation of votes to accept the Plan. The Holding Company Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims, and all other parties in interest. Moreover, the Holding Company Debtors believe that any alternative to Confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims asserted in the Chapter 11 Cases.

**THE HOLDING COMPANY DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS IN YOUR BALLOT. THE VOTING DEADLINE IS [●] AT 4:00 P.M. (PREVAILING EASTERN TIME).**

The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received the materials in electronic format), please feel free to contact the Holding Company Debtors' Balloting Agent, by: (a) visiting the Holding Company Debtors' restructuring website at: https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation Inquiry" in the subject line. You may obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Holding Company Debtors' restructuring website, https://restructuring.ra.kroll.com/SIMAD. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER on the Bankruptcy Court's website at: https://www.njb.uscourts.gov/. Please be advised that Kroll/the Balloting Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may not advise you as to whether you should vote to accept or reject the Plan or provide legal advice.

**Exhibit 6**

**Combined Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**NOTICE OF HEARING TO CONSIDER CONFIRMATION OF THE CHAPTER 11 PLAN FILED BY THE HOLDING COMPANY DEBTORS AND RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE THAT** on [______], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) authorizing the Holding Company Debtors (as defined in the Disclosure Statement) to solicit acceptances for the *Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider final approval of the Disclosure Statement and Confirmation of the Plan will commence on **[●] (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard (the "Combined Hearing") before the Honorable Chief Judge Christine M. Gravelle, United States Bankruptcy Judge, in Courtroom 3 of the United States Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.

**PLEASE BE ADVISED:** THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE HOLDING COMPANY DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

---

[1] A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

[2] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

**CRITICAL INFORMATION REGARDING VOTING ON THE PLAN**

**Voting Record Date**. The voting record date is **[●]** (the "Voting Record Date"), which is the date for determining which certain Holders of Claims are entitled to vote on the Plan.

**Voting and Opt-Out Deadline**. The deadline for voting on the Plan and for opting out of the Third-Party Release is **[●] at 4:00 p.m. (prevailing Eastern Time)** (the "Voting and Opt-Out Deadline"). If you received a Solicitation Package, including a Ballot and intend to vote on the Plan you **must**: (a) follow the instructions carefully; (b) complete all of the required information on the ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Holding Company Debtors' balloting agent, Kroll Restructuring Administration LLC (the "Balloting Agent") on or before the Voting and Opt-Out Deadline. **A failure to follow such instructions may disqualify your vote.** If you received a Ballot, you may opt out of the Third-Party Release by checking the opt-out box on your Ballot, regardless of whether you vote to accept or reject the Plan or abstain from voting, and your election to opt out will not affect how your vote is counted. If you received a Non-Voting Status Notice, you may opt out of the Third-Party Release by completing and returning the Opt-Out Form enclosed with that notice so that it is actually received by the Balloting Agent on or before the Voting and Opt-Out Deadline. **If you do not timely opt out, you will be deemed to grant the Third-Party Release.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**Confirmation Objection Deadline.** The deadline for filing objections to final approval of the adequacy of the Disclosure Statement and Confirmation of the Plan is **[●] (prevailing Eastern Time)** (the "Confirmation Objection Deadline"). Any objection to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; (c) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey; and (d) be filed with the Clerk of the Bankruptcy Court, and shall be served upon the following parties so as to be **actually received** on or before the Confirmation Objection Deadline:

<table>
<tr><th colspan="2">Counsel to the Debtors</th></tr>
<tr><td colspan="2">Cole Schotz P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota, Warren A. Usatine, David M. Bass, Felice R. Yudkin and Daniel J. Harris<br>Email: msirota@coleschotz.com; wusatine@coleschotz.com; dbass@coleschotz.com; fyudkin@coleschotz.com; dharris@coleschotz.com</td></tr>
<tr><th colspan="2">United States Trustee</th></tr>
<tr><td colspan="2">Office of the United States Trustee for the District of New Jersey<br>One Newark Center, Suite 2100<br>Newark, New Jersey 07102<br>Attn: Jeffrey M. Sponder<br>Email: jeffrey.m.sponder@usdoj.gov</td></tr>
<tr><th colspan="2">Official Committee of Unsecured Creditors</th></tr>
<tr><td>McDermott Will & Schulte LLP<br>One Vanderbilt Avenue<br>New York, New York 10017</td><td>Robinson & Cole LLP<br>666 Third Avenue, 20th Floor<br>New York, New York 10017<br>Attn: Evan M. Lazerowitz</td></tr>
</table>

| | |
|---|---|
| Attn: Darren Azman, Kristin K. Going, and Rachel Biblo Block<br>Email: dazman@mcdermottlaw.com; kgoing@mcdermottlaw.com; rbibloblock@mcdermottlaw.com | Email: elazerowitz@rc.com |
| **Counsel to Mishmeret Trust Company** | |
| **Chapman & Cutler**<br>1270 Avenue of the Americas, 30th Floor<br>New York, New York 10020<br>Attn: Michael Friedman, Stephen R. Tetro II, and Jorge Coronel<br>Email: friedman@chapman.com; stetro@chapman.com; jcoronel@chapman.com | **Riker Danzig LLP**<br>7 Giralda Farms, Suite 250<br>Madison, New Jersey 07940<br>Attn: Joseph L. Schwartz and Daniel A. Bloom<br>Email: jschwartz@riker.com; dbloom@riker.com |

**ARTICLE VII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VII.D OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**YOU MAY ELECT NOT TO GRANT THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VII.D OF THE PLAN BY RETURNING A BALLOT OR OPT-OUT FORM, AS APPLICABLE, AND CHECKING THE BOX TO "OPT-OUT" FROM THE THIRD-PARTY RELEASE. THIS OPTION IS AVAILABLE TO ALL HOLDERS OF CLAIMS OR INTERESTS, REGARDLESS OF WHETHER YOU VOTE TO ACCEPT THE PLAN, VOTE TO REJECT THE PLAN, ABSTAIN FROM VOTING, OR ARE DEEMED TO ACCEPT OR REJECT THE PLAN. YOUR DECISION TO OPT OUT OF THE THIRD-PARTY RELEASE WILL NOT AFFECT HOW YOUR VOTE IS COUNTED OR YOUR TREATMENT UNDER THE PLAN. IF YOU (A) FAIL TO SUBMIT A BALLOT OR OPT-OUT FORM, AS APPLICABLE, BY THE VOTING AND OPT-OUT DEADLINE, OR (B) SUBMIT A BALLOT OR OPT-OUT FORM, AS APPLICABLE, BUT DO NOT CHECK THE BOX TO "OPT-OUT" FROM THE THIRD-PARTY RELEASE, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VII.D OF THE PLAN, REGARDLESS OF WHETHER YOU VOTE TO ACCEPT THE PLAN, VOTE TO REJECT THE PLAN, ABSTAIN FROM VOTING, OR ARE DEEMED TO ACCEPT OR REJECT THE PLAN.**

**PLEASE TAKE FURTHER NOTICE THAT** the Holding Company Debtors' Disclosure Statement, the Disclosure Statement Order, the Plan, and the other documents and materials included in the Solicitation Package except Ballots may be obtained by any of the following means: (a) accessing the Holding Company Debtors' chapter 11 case website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov. Please be advised that the Balloting Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may not advise you as to whether you should vote to accept or reject the Plan.

**Filing the Initial Plan Supplement**. The Holding Company Debtors will file the initial Plan Supplement (as defined in the Plan) by **[●]** and will serve notice on all Holders of Claims entitled to vote on the Plan, which will: (a) inform parties that the Holding Company Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

**BINDING NATURE OF THE PLAN**

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THESE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

Dated: [●]

Respectfully submitted,

**COLE SCHOTZ P.C.**

By: ______________________________________

Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to Debtors and Debtors in Possession*

**Exhibit 7**

**Plan Supplement Notice**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

# NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on [______], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) conditionally approving the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (b) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (c) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan, among other things.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the Holding Company Debtors filed the Plan Supplement with the Bankruptcy Court on or before [●] [Docket No. [●]]. The Plan Supplement contains the following documents, each as defined in the Plan: (a) Schedule of Assumed Executory Contracts and Unexpired Leases, (b) Schedule of Retained

1 A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holding Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

Causes of Action, (c) the Liquidation Trust Agreement, (d) any other necessary documentation in accordance with the Plan and (e) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider final approval of the Disclosure Statement and Confirmation of the Plan will commence on **[●] (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard (the "Combined Hearing") before the Honorable Chief Judge Christine M. Gravelle, United States Bankruptcy Judge, in Courtroom 3 of the United States Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.

**PLEASE BE ADVISED:** THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE HOLDING COMPANY DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to final approval of the adequacy of the Disclosure Statement and Confirmation of the Plan is **[●] at 4:00 p.m. (prevailing Eastern Time)** (the "Confirmation Objection Deadline"). Any objection to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; (c) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey; and (d) be filed with the Clerk of the Bankruptcy Court, and shall be served upon the following parties so as to be **actually received** on or before the Confirmation Objection Deadline:

<table>
<tr><th colspan="2">Counsel to the Debtors</th></tr>
<tr><td colspan="2">Cole Schotz P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota, Warren A. Usatine, David M. Bass, Felice R. Yudkin and Daniel J. Harris<br>Email: msirota@coleschotz.com; wusatine@coleschotz.com; dbass@coleschotz.com; fyudkin@coleschotz.com; dharris@coleschotz.com</td></tr>
<tr><th colspan="2">United States Trustee</th></tr>
<tr><td colspan="2">Office of the United States Trustee for the District of New Jersey<br>One Newark Center, Suite 2100<br>Newark, New Jersey 07102<br>Attn: Jeffrey M. Sponder<br>Email: jeffrey.m.sponder@usdoj.gov</td></tr>
<tr><th colspan="2">Official Committee of Unsecured Creditors</th></tr>
<tr><td>McDermott Will & Schulte LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Attn: Darren Azman, Kristin K. Going, and Rachel Biblo Block<br>Email: dazman@mcdermottlaw.com; kgoing@mcdermottlaw.com; rbibloblock@mcdermottlaw.com</td><td>Robinson & Cole LLP<br>666 Third Avenue, 20th Floor<br>New York, New York 10017<br>Attn: Evan M. Lazerowitz<br>Email: elazerowitz@rc.com</td></tr>
</table>

| Counsel to Mishmeret Trust Company | |
|---|---|
| **Chapman & Cutler**<br>1270 Avenue of the Americas, 30th Floor<br>New York, New York 10020<br>Attn: Michael Friedman, Stephen R. Tetro II, and Jorge Coronel<br>Email: friedman@chapman.com; stetro@chapman.com; jcoronel@chapman.com | **Riker Danzig LLP**<br>7 Giralda Farms, Suite 250<br>Madison, New Jersey 07940<br>Attn: Joseph L. Schwartz and Daniel A. Bloom<br>Email: jschwartz@riker.com; dbloom@riker.com |

**PLEASE TAKE FURTHER NOTICE THAT** the Holding Company Debtors' Disclosure Statement, the Disclosure Statement Order, the Plan, and the other documents and materials included in the Solicitation Package except Ballots may be obtained by any of the following means: (a) accessing the Holding Company Debtors' chapter 11 case website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov.

**ARTICLE VII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE BALLOTING AGENT.**

Dated: [●], 2026

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors and*
*Debtors in Possession*

**Exhibit 8**

**Assumption Notice**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**NOTICE REGARDING EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED PURSUANT TO THE PLAN**

**PLEASE TAKE NOTICE THAT** on [______], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) conditionally approving the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Holding Company Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (b) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (c) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan, among other things.

---

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holding Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

**PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE HOLDING COMPANY DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT WILL BE ASSUMED PURSUANT TO THE PLAN. THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.**[2]

**PLEASE TAKE FURTHER NOTICE THAT** on [●], the Holding Company Debtors filed the Schedule of Assumed Executory Contracts and Unexpired Leases [Docket No. [●]] (the "Assumed Executory Contracts and Unexpired Leases List") with the Bankruptcy Court as part of the Plan Supplement as contemplated under the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Holding Company Debtors' records reflect that you are a party to a contract that is listed on the Assumed Executory Contracts and Unexpired Leases List. Therefore, you are advised to carefully review the information contained in this notice and the related provisions of the Plan, including the Assumed Executory Contracts and Unexpired Leases List.

**PLEASE TAKE FURTHER NOTICE THAT** counterparties to Executory Contracts and Unexpired Leases that receive a Notice of Assumption of Executory Contracts and Unexpired Leases may file an objection to the Holding Company Debtors' proposed assumption. Such objections **must**: (a) be in writing; (b) state with particularity the basis of the objection; (c) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey; and (d) be filed with the Clerk of the Bankruptcy Court, and shall be served upon the following parties so as to be **actually received no later than fourteen (14) calendar days** after the date the Holding Company Debtors file and serve the relevant assumption notice.

| **Counsel to the Debtors** |
|---|
| **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attn: Michael D. Sirota, Warren A. Usatine, David M. Bass, Felice R. Yudkin and Daniel J. Harris<br>Email: msirota@coleschotz.com; wusatine@coleschotz.com; dbass@coleschotz.com; fyudkin@coleschotz.com; dharris@coleschotz.com |

[2] Neither the inclusion nor exclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Leases List, nor anything contained in the Plan, shall constitute an admission by the Holding Company Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. Further, the Holding Company Debtors expressly reserve all rights with respect to the Assumed Contracts, including the right to add or remove any Executory Contract or Unexpired Lease to or from the Assumed Executory Contracts and Unexpired Leases List pursuant to the terms of the Plan, at any time prior to the Effective Date.

| United States Trustee | |
|---|---|
| **Office of the United States Trustee for the District of New Jersey**<br>One Newark Center, Suite 2100<br>Newark, New Jersey 07102<br>Attn: Jeffrey M. Sponder<br>Email: jeffrey.m.sponder@usdoj.gov | |
| **Official Committee of Unsecured Creditors** | |
| **McDermott Will & Schulte LLP**<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Attn: Darren Azman, Kristin K. Going, and Rachel Biblo Block<br>Email: dazman@mcdermottlaw.com; kgoing@mcdermottlaw.com; rbibloblock@mcdermottlaw.com | **Robinson & Cole LLP**<br>666 Third Avenue, 20th Floor<br>New York, New York 10017<br>Attn: Evan M. Lazerowitz<br>Email: elazerowitz@rc.com |
| **Counsel to Mishmeret Trust Company** | |
| **Chapman & Cutler**<br>1270 Avenue of the Americas, 30th Floor<br>New York, New York 10020<br>Attn: Michael Friedman, Stephen R. Tetro II, and Jorge Coronel<br>Email: friedman@chapman.com; stetro@chapman.com; jcoronel@chapman.com | **Riker Danzig LLP**<br>7 Giralda Farms, Suite 250<br>Madison, New Jersey 07940<br>Attn: Joseph L. Schwartz and Daniel A. Bloom<br>Email: jschwartz@riker.com; dbloom@riker.com |

**PLEASE TAKE FURTHER NOTICE THAT** the Holding Company Debtors' Disclosure Statement, the Disclosure Statement Order, the Plan, and the other documents and materials included in the Solicitation Package except Ballots may be obtained by any of the following means: (a) accessing the Holding Company Debtors' chapter 11 case website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT**, on the Effective Date, except as otherwise provided herein or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease is: (1) the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (2) a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (3) an Insurance Policy; (4) an Asset Purchase Agreement; or (5) to be assumed by the Holding Company Debtors and assigned to any Purchaser in connection with any Sale Transactions and pursuant to any Sale Transactions Documentation.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider final approval of the Disclosure Statement and Confirmation of the Plan will commence on **[●]**

**(prevailing Eastern Time)**, or as soon thereafter as counsel may be heard (the "Combined Hearing") before the Honorable Chief Judge Christine M. Gravelle, United States Bankruptcy Judge, in Courtroom 3 of the United States Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.

| |
|---|
| **PLEASE BE ADVISED:** THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE HOLDING COMPANY DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE. |

**PLEASE TAKE FURTHER NOTICE** that section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to Cure, or provide adequate assurance that it will promptly Cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Holding Company Debtors have conducted a thorough review of their books and records and have determined the amounts required to Cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in Schedule A hereto. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Holding Company Debtors believe that there is no Cure amount outstanding for such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with proposed Cure amounts, your objection (a "Cure Objection") **must**: (i) be in writing; (ii) state with particularity the basis of the objection and, if the objection pertains to the proposed Cure amounts, state the correct Cure amount alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (iii) be Filed with the Clerk of the United States Bankruptcy Court for the district of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, or electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) or by other parties in interest in accordance with applicable filing procedures, and shall be served in accordance with the General Order and the Supplemental Commentary no later than fourteen (14) days after the Holding Company Debtors file and serve the relevant assumption notice or any other deadline that may be set by the Bankruptcy Court (the "Cure Objection Deadline").

**PLEASE TAKE FURTHER NOTICE THAT** if no objection is filed by the Cure Objection Deadline, then: **(i) you will be deemed to have stipulated that the Cure amounts as determined by the Holding Company Debtors are correct; (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure amount under the proposed Assumed Contract; and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assumption**.

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption or assumption and assignment of the Executory Contract(s) and Unexpired Lease(s) and/or proposed Cure amounts in connection with the Plan that remain unresolved as of the Combined Hearing will be heard at the Combined Hearing or a later date as fixed by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT** nothing herein: (i) alters in any way the prepetition nature of the Assumed Contracts or the validity, priority, or amount of any claims of a counterparty to any Assumed Contract against the Holding Company Debtors that may arise under such Assumed Contract; (ii)

creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assumed Contract against the Holding Company Debtors that may arise under such Assumed Contract.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents at no additional cost**, you should contact Kroll Restructuring Administration LLC (the "Balloting Agent") by: (a) visiting the Holding Company Debtors' restructuring website at https://restructuring.ra.kroll.com/SIMAD; (b) writing to Kroll at SIMAD Holdings Ltd., Ballot Processing c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232; (c) calling Kroll at (844) 408-3264 (Domestic) or +1 (646) 814-4926 (International); (d) emailing Kroll at SIMADInfo@ra.kroll.com with a reference to "SIMAD Solicitation" in the subject line. You may obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Holding Company Debtors' restructuring website, https://restructuring.ra.kroll.com/SIMAD, or the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**ARTICLE VII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE BALLOTING AGENT.**

[*Remainder of Page Intentionally Left Blank*]

Dated: [●], 2026

/s/ *Michael D. Sirota*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email: msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors and*
*Debtors in Possession*

# <u>SCHEDULE A</u>

## SCHEDULE OF CONTRACTS AND LEASES AND PROPOSED CURE AMOUNTS

**[OMITTED]**

# **Exhibit 9**

**The Committee Letter**

**[TO BE FILED]**