UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**COMBINED MONTHLY FEE STATEMENT COVER SHEET FOR**
**THE PERIOD FROM SEPTEMBER 1, 2026 THROUGH OCTOBER 31, 2026**

IN RE:

SIMAD Holdings Ltd.

CASE NO.: 26-16388 (CMG)

CHAPTER: 11

APPLICANT:
Kroll Restructuring Administration LLC

CLIENT:
Debtors and Debtors-in-Possession

CASES FILED: 6/4/26

COMPLETION AND SIGNING OF THIS FORM CONSTITUTES A CERTIFICATION UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. §1746.

RETENTION ORDER ATTACHED.

*/s/ Gabriel Brunswick* 11/25/2026
GABRIEL BRUNSWICK DATE

**COMBINED MONTHLY FEE STATEMENT OF**
**KROLL RESTRUCTURING ADMINISTRATION LLC**
**FOR THE PERIOD FROM SEPTEMBER 1, 2026 THROUGH OCTOBER 31, 2026**

**SECTION I**
**FEE SUMMARY**

| | FEES | EXPENSES |
|---|---|---|
| TOTAL PREVIOUSLY REQUESTED | $191,321.62 | $0.00 |
| TOTAL ALLOWED TO DATE | $0.00 | $0.00 |
| TOTAL PREVIOUS HOLDBACK | $38,264.32 | $0.00 |
| TOTAL RECEIVED | $153,057.30 | $0.00 |
| TOTAL CURRENT FEE APPLICATION | $5,068.87 | $0.00 |
| MINUS: 20% HOLDBACK | $1,013.77 | $0.00 |
| AMOUNT SOUGHT AT THIS TIME | $4,055.10 | $0.00 |

| Name of Professional and Title | Hours | Rate | Fee |
|---|---|---|---|
| 1. Johnson, Craig<br>Director of Solicitation | 11.10 | $225.00 | $2,497.50 |
| 2. Kesler, Stanislav<br>Director of Solicitation | 1.00 | $225.00 | $225.00 |
| 3. Orchowski, Alex T<br>Director of Solicitation | 6.60 | $225.00 | $1,485.00 |
| 4. Kosinski, Nick<br>Director | 2.20 | $225.00 | $495.00 |
| 5. Labissiere, Pierre L<br>Director | 0.50 | $225.00 | $112.50 |
| 6. Imani, Roya<br>Director | 0.80 | $185.00 | $148.00 |
| 7. Ahmed, Aqeel<br>Senior Consultant | 0.90 | $175.00 | $157.50 |
| 8. Arfine, Anthony<br>Consultant | 3.60 | $195.00 | $702.00 |
| 9. Biagini, Nick<br>Consultant | 0.60 | $195.00 | $117.00 |
| 10. Jimenez, Gabe<br>Consultant | 4.20 | $195.00 | $819.00 |
| **TOTALS** | **31.50** | | **$6,758.50**[1] |
| **BLENDED RATE** | | **$214.56** | |

| | |
|---|---|
| FEE TOTALS (Before Discount) | $6,758.50 |
| FEE TOTALS (After Discount, Page 3) | $5,068.87 |
| DISBURSEMENTS TOTALS (Page 4) | $0.00 |
| TOTAL FEE APPLICATION | $5,068.87 |

[1] This amount has been discounted to $5,068.87 in accordance with the terms of Kroll's retention. Taking into account this discount, the blended hourly rate is $160.92.

**SECTION II**
**SUMMARY OF SERVICES**

| Services Rendered | Hours | Fee |
|---|---|---|
| a) Asset Analysis and Recovery | 0.00 | $0.00 |
| b) Asset/Business Disposition | 0.00 | $0.00 |
| c) Business Operations | 0.00 | $0.00 |
| d) Case Administration | 0.00 | $0.00 |
| e) Claims Administration and Objections | 0.00 | $0.00 |
| f) Due Diligence | 0.00 | $0.00 |
| g) Employee Benefits/Pensions | 0.00 | $0.00 |
| h) Fee/Employment Applications | 1.40 | $253.00 |
| i) Fee/Employment Objections | 0.00 | $0.00 |
| j) Financing | 0.00 | $0.00 |
| k) Litigation (Other than Avoidance Action Litigation) | 0.00 | $0.00 |
| l) Avoidance Action Litigation | 0.00 | $0.00 |
| m) Meetings of Creditors | 0.00 | $0.00 |
| n) Plan and Disclosure Statement | 0.00 | $0.00 |
| o) Relief from Stay Proceedings | 0.00 | $0.00 |
| p) Regulatory Compliance | 0.00 | $0.00 |
| q) Travel | 0.00 | $0.00 |
| r) Accounting/Auditing | 0.00 | $0.00 |
| s) Business Analysis | 0.00 | $0.00 |
| t) Corporate Finance and Valuation | 0.00 | $0.00 |
| u) Data Analysis | 0.00 | $0.00 |
| v) Litigation Consulting | 0.00 | $0.00 |
| w) Reconstruction Accounting | 0.00 | $0.00 |
| x) Tax Issues | 0.00 | $0.00 |
| y) Other (specify category), Schedules & SOFAs | 11.40 | $2,298.00 |
| z) Other (specify category), Solicitation | 18.70 | $4,207.50 |
| **SERVICES TOTALS** | **31.50** | **$6,758.50**[2] |

[2] This amount has been discounted to $5,068.87 in accordance with the terms of Kroll's retention.

**SECTION III**
**SUMMARY OF DISBURSEMENTS**

| **Disbursements** | **Amount** |
|---|---|
| a) Computer Assisted Legal Research<br>Westlaw | $0.00 |
| b) Facsimile (with rates)<br>Rate per Page $0.10 (Max. $1.00/pg.) | $0.00 |
| c) Long Distance Telephone | $0.00 |
| d) In-House Reproduction<br>No. of Pages ( ); Rate per Page $0.08 (Max. 20¢/pg.) | $0.00 |
| e) Outside Reproduction | $0.00 |
| f) Outside Research | $0.00 |
| g) Filing/Court Fees | $0.00 |
| h) Court Reporting | $0.00 |
| i) Travel | $0.00 |
| j) Courier & Express Carriers (e.g., Federal Express)<br>Federal Express<br>Messenger Service | $0.00 |
| k) Postage | $0.00 |
| l) Other | $0.00 |
| DISBURSEMENTS TOTAL | $0.00 |

**SECTION IV**
**CASE HISTORY**

(NOTE: Items (3) through (6) are not applicable to applications under 11 U.S.C. § 506)

(1) Date case filed: June 4, 2026

(2) Chapter under which case commenced: Chapter 11

(3) Date of retention: Order signed August 4, 2026, effective as of June 4, 2026 (Annex copy of order(s).) *See* **<u>Exhibit A</u>.** If limit on number of hours or other limitations to retention, set forth: N/A

(4) Summarize in brief the benefits to the estates and attach supplements as needed:

(A) Conferring and coordinating among the Kroll case team, SIMAD Debtors' counsel, and other professionals regarding the SIMAD Debtors' schedules of assets and liabilities (the "**Schedules**") and statements of financial affairs (the "**SOFAs**");

(B) Preparing, reviewing and revising the Schedules, including Schedules A/B, D, E/F, G and H and all questions therein for the SIMAD Debtors;

(C) Preparing, reviewing and revising the SOFAs, including parts 1 through 13, and all questions therein, for the SIMAD Debtors;

(D) Performing quality assurance reviews of the Schedules and SOFAs;

(E) Conferring and corresponding with SIMAD Debtors' counsel and other professionals regarding solicitation of the plan;

(F) Researching and compiling precedential solicitation materials and documents;

(G) Reviewing, analyzing and revising draft solicitation documents, including the disclosure statement, voting procedures and ballots;

(H) Conferring and corresponding with SIMAD Debtors' counsel and Kroll team regarding fee applications; and

(I) Drafting, reviewing, and filing the monthly fee application filed at Docket No. 1196.

**AN INVOICE ITEMIZING SERVICES RENDERED DURING THE PERIOD IS ATTACHED AS <u>EXHIBIT B</u>.**

(5) Anticipated distribution to creditors:

(a) Administration expense: Unknown at this time.

(b) Secured creditors: Unknown at this time.

(c) Priority creditors: Unknown at this time.

(d) General unsecured creditors: Unknown at this time.

(6) Final disposition of case and percentage of dividend paid to creditors (if applicable): Final dividend percentages are unknown at this time.

*/s/ Gabriel Brunswick* 11/25/2026
GABRIEL BRUNSWICK DATE

**Exhibit A**

**Kroll Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
David M. Bass
Felice R. Yudkin
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
dbass@coleschotz.com
fyudkin@coleschotz.com
dharris@coleschotz.com

*Counsel to the Debtors*
*and Debtors in Possession*

**Order Filed on August 4, 2026**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

| | |
|---|---|
| In re:<br><br>SIMAD HOLDINGS LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-16388 (CMG)<br><br>(Jointly Administered) |

**ORDER AUTHORIZING THE SIMAD DEBTORS' EMPLOYMENT AND RETENTION OF KROLL RESTRUCTURING ADMINISTRATION AS ADMINISTRATIVE ADVISOR EFFECTIVE AS OF THE PETITION DATE**

The relief set forth on the following pages, numbered two (2) through and including eight (8), is hereby **ORDERED**.

**DATED: August 4, 2026**

Honorable Christine M. Gravelle, Chief Judge
United States Bankruptcy Judge

[1] A complete list of the SIMAD Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the SIMAD Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/SIMAD. The location of Debtor SIMAD Holdings Ltd.'s principal place of business and the SIMAD Debtors' service address in these chapter 11 cases is 50 Quality Street, #110357, Trumbull, CT 06611.

Upon the *SIMAD Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Kroll Restructuring Administration LLC as Administrative Advisor Effective as of the Petition Date* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order"), pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 2016-1, authorizing the SIMAD Debtors to employ and retain Kroll Restructuring Administration LLC ("Kroll") so that it may perform services as administrative advisor ("Administrative Advisor") effective as of the Petition Date; all as more fully set forth in the Application; and upon the First Day Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the SIMAD Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

**IT IS HEREBY ORDERED THAT:**

1. The Application is **GRANTED** to the extent set forth herein.

2. The SIMAD Debtors are authorized to retain Kroll as Administrative Advisor, effective as of the Petition Date, pursuant to section 327(a) of the Bankruptcy Code and under the terms of the Engagement Agreement attached hereto as Exhibit 1, as modified by this Order, and Kroll is authorized to perform the bankruptcy administration services described in the Application and set forth in the Engagement Agreement.

3. Any services Kroll will provide relating to the SIMAD Debtors' schedules of assets and liabilities and statements of financial affairs shall be limited to administrative and ministerial services. The SIMAD Debtors shall remain responsible for the content and accuracy of their schedules of assets and liabilities and statements of financial affairs.

4. Kroll is authorized to take all actions necessary to comply with its duties as Administrative Advisor as described in the Application and set forth in the Engagement Agreement.

5. Kroll shall apply to the Court for allowance of compensation and reimbursement of expenses incurred in its capacity as Administrative Advisor in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in these cases regarding professional compensation and reimbursement of expenses.

6. The indemnification provisions in the Engagement Agreement are approved, subject to the following modifications, applicable during the pendency of these chapter 11 cases:

(a) Kroll shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement unless the indemnification, contribution, or reimbursement is approved by the Court.

(b) Notwithstanding anything to the contrary in the Engagement Agreement, the SIMAD Debtors shall have no obligation to indemnify Kroll, or provide contribution or reimbursement to Kroll, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Kroll's gross negligence, willful misconduct, bad faith, self-dealing, or fraud; (ii) for a contractual dispute in which the SIMAD Debtors allege the breach of Kroll's contractual obligations under the Engagement Agreement, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Kroll should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Kroll believes that it is entitled to the payment of any amounts by the SIMAD Debtors on account of the SIMAD Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement, as modified by this Order, including, without limitation, the advancement of defense costs, Kroll must file an application therefor in this Court, and the SIMAD Debtors may not pay any such amounts to Kroll before the entry of an order of this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Kroll for indemnification, contribution, and/or reimbursement and not a provision limiting the duration of the SIMAD Debtors' obligation to indemnify or make contributions or reimbursements to Kroll. All parties in interest shall retain the right to object to any demand by Kroll for indemnification, contribution, or reimbursement.

7. The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

8. Notwithstanding anything to the contrary contained in the Application, Steele

---

Declaration, or the Engagement Agreement, the 1.5% late charge in paragraph 2(c) of the Engagement Agreement shall not be assessed during the pendency of these chapter 11 cases, and no late charges shall accrue on any invoices.

9. Notwithstanding anything to the contrary contained in the Application, Steele Declaration, or the Engagement Agreement, including paragraph 15 thereof, the Court shall have exclusive jurisdiction over Kroll's engagement during the pendency of these chapter 11 cases, and the arbitration clause shall have no force or effect during the pendency of these chapter 11 cases.

10. Notwithstanding anything to the contrary contained in the Application, Steele Declaration, or the Engagement Agreement, including paragraph 2(h) thereof, Kroll shall provide at least ten (10) business days' notice of any increases in its billing rates, subject to the parties in interest's right to object to any such increases, including, but not limited to, the reasonableness standard provided in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

11. Notwithstanding anything to the contrary in the Application, Steele Declaration, or the Engagement Agreement, in the event that any of these Chapter 11 Cases convert to a case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee appointed to such case or cases shall have no obligation to continue the engagement with Kroll. Additionally, paragraph 3(b) of the Engagement Agreement (indicating that Kroll will continue to be paid, notwithstanding conversion of these chapter 11 cases to chapter 7), shall be of no force or effect with respect to the services provided by Kroll pursuant to this Order.

Case 26-16388-CMG Doc 157 Filed 01/05/26 Entered 01/05/26 14:56:21 Desc Main Document Page 6 of 15



12. Notwithstanding anything to the contrary in the Application, Steele Declaration, or Engagement Agreement, Kroll shall seek reimbursement from the SIMAD Debtors' estates for its engagement-related expenses at the firm's actual costs paid.

13. Notwithstanding anything to the contrary in the Application, Steele Declaration, or the Engagement Agreement, including paragraph 6 thereof, by this Order, the Court is not authorizing Kroll to establish financial accounts with financial institutions on behalf of the SIMAD Debtors.

14. Notwithstanding anything to the contrary in the Application, the Steele Declaration or the Engagement Agreement, Kroll shall, to the extent Kroll uses the services of independent contractors, subcontractors, or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, pass through the cost of such Contractors to the SIMAD Debtors at the same rate that Kroll pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required by Kroll; (iv) file with this Court disclosures pertaining to such use required by Bankruptcy Rule 2014; (v) and attach any such Contractor invoices to its monthly fee statements, interim fee applications and/or final fee applications filed in these cases.

15. Notwithstanding anything to the contrary in the Application, the Steele Declaration, or the Engagement Agreement, in the event Kroll seeks reimbursement for attorneys' fees and expenses, the invoices and supporting time records from such attorneys shall be included in Kroll's own application (both interim and final) and such invoices and time records shall be subject to the U.S. Trustee Guidelines and approval of the Court under the

standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Notwithstanding the foregoing, Kroll shall only be reimbursed for any legal fees incurred in connection with these Chapter 11 Cases to the extent permitted under applicable law.

16. Notwithstanding anything to the contrary contained in the Application, the Steele Declaration or the Engagement Agreement, this Order shall not apply to any services Kroll was authorized to provide pursuant to the *Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as of the Petition Date, and (II) Granting Related Relief* [D.I. 136].

17. Kroll shall not seek reimbursement of any fees or costs arising from the defense of its fee applications in the above-captioned cases.

18. In the event of any inconsistency between the Application, the Steele Declaration, or the Engagement Agreement and this Order, this Order shall govern.

19. The SIMAD Debtors and Kroll are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

20. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

21. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

(Page | 8)

| | |
|---|---|
| Debtors: | SIMAD HOLDINGS LTD., *et al*. |
| Case No. | 26-16388 (CMG) |
| Caption of Order: | Order Authorizing the SIMAD Debtors’ Employment of Kroll Restructuring Administration LLC as Administrative Advisor Effective as of the Petition Date |

22. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# Exhibit 1

## Engagement Agreement

KROLL
RESTRUCTURING
ADMINISTRATION

**Kroll Restructuring Administration LLC Engagement Agreement**

This Agreement is entered into as of June 3, 2026 between Kroll Restructuring Administration LLC ("***Kroll***") and SIMAD Holdings, Ltd. (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

(a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

(b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder. The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

(c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

(a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"); provided, however that Kroll will provide a discount of 25% off the attached hourly rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

(b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

(c) Kroll will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder. If any

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

KROLL RESTRUCTURING ADMINISTRATION

amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $25,000. Kroll may use such advance against unpaid fees and expenses hereunder. Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year. If any annual increase to the hourly rates therein represents an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

## 3. <u>Retention in Bankruptcy Case</u>

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4. <u>Confidentiality</u>

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

## 5. <u>Property Rights</u>

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

## 6. <u>Bank Accounts</u>

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that such accounts or other financial products are provided to the Company, pursuant to Kroll's agreement(s) with financial institutions, Kroll may receive fees and other compensation from such institutions.

## 7. <u>Term and Termination</u>

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "***Cause***" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b) If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(d) If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Rate Structure.

KROLL RESTRUCTURING ADMINISTRATION

**8. <u>No Representations or Warranties</u>**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**9. <u>Indemnification</u>**

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder. Without limiting the generality of the foregoing, Losses include (a) any liabilities resulting from claims by any third parties against any Indemnified Party, and (b) indemnification obligations of Kroll to its vendors.

(b) Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

**10. <u>Limitations of Liability</u>**

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder. In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

**11. <u>Company Data</u>**

(a) The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**<u>SOFAs and Schedules</u>**"). Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the Company. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e) Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

**12. <u>Non-Solicitation</u>**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

**13. <u>Force Majeure</u>**

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**14. <u>Choice of Law</u>**

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

KROLL RESTRUCTURING ADMINISTRATION

**15. <u>Arbitration</u>**

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

**16. <u>Integration; Severability; Modifications; Assignment</u>**

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

**17. <u>Effectiveness of Counterparts</u>**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**18. <u>Notices</u>**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Kroll: Kroll Restructuring Administration LLC
1 World Trade Center, 31st Floor
New York, NY 10007
Attn: Legal Department

KROLL
RESTRUCTURING
ADMINISTRATION

| | |
|---|---|
| | Tel: 212-257-5450<br>Email: Legal@kbs.kroll.com |
| If to the Company: | SIMAD Holdings, Ltd.<br>50 Quality Street #110357<br>Trumbull, Connecticut 06611<br>Attn: Asaf Ravid<br>Tel: 347-962-0701<br>Email: aravid@circleinv.com |
| With a copy to: | Cole Schotz P.C.<br>Court Plaza North<br>25 Main Street<br>Hackensack, NJ 07601<br>Attn: Daniel J. Harris<br>Tel: 201-525-6202<br>Email: dharris@coleschotz.com |

*[Signature page follows]*

KROLL RESTRUCTURING ADMINISTRATION

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By: Christina Pullo
Title: Managing Director

**SIMAD Holdings, Ltd.**

Asaf Ravid

By: Asaf Ravid
Title: Chief Restructuring Officer

KROLL

# RATES

Quality.
Partnership.
Expertise.
Innovation.

## Claims and Noticing Rates

| TITLE | HOURLY RATE |
|---|---|
| Analyst<br>The Analyst processes data, including proofs of claim, ballots and return mail, and executes outgoing mailings with adherence to strict quality control standards. | \$30 - \$50 |
| Technology Consultant<br>The Technology Consultant provides database support for complex reporting<br>requirements and administers complicated variable data mailings. | \$55 - \$95 |
| Consultant<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing claims objections and transfers. | \$75 - \$165 |
| Senior Consultant<br>The Senior Consultant directs the data collection process for the master mailing list, oversees all mailings, performs quality control checks on claim and other data processes, and generates claim and other reports. | \$175 |
| Director<br>The Director is the lead contact for the company, counsel and advisors on the engagement and oversees all aspects of the bankruptcy administration, including managing the internal client service team and coordinating among case professionals. | \$175 - \$185 |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2026 Kroll, LLC. All rights reserved. KR21035106

KROLL

# RATES

Quality.
Partnership.
Expertise.
Innovation.

## Solicitation, Balloting and Tabulation

## Statements of Financial Affairs/Schedules of Assets and Liabilities

| TITLE | HOURLY RATE |
|---|---|
| Solicitation Consultant; SOFA/Schedule Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications.<br>The SOFA/Schedule Consultant directs the data collection process for the SOFAs and Schedules and prepares the official forms. | $195 |
| Solicitation Director; SOFA/Schedule Director<br>The Director of Solicitation is the lead client service contact in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes.<br>The SOFA/Schedule Director works closely with the company and advisors to oversee all aspects of collecting SOFA/Schedule data and preparing the official forms. | $225 |

## Managing Directors and Experts

| TITLE | HOURLY RATE |
|---|---|
| Managing Directors<br>Kroll Restructuring Administration's Managing Directors are expert witnesses or former restructuring attorneys with decades of restructuring experience. | $250 |
| Executives<br>Kroll Restructuring Administration's Executives are former restructuring professionals averaging more than 15 years of experience across hundreds or thousands of bankruptcy and other engagements. | No charge |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2026 Kroll, LLC. All rights reserved. KR21035106

KROLL

# RATES

Quality.
Partnership.
Expertise.
Innovation.

| | |
|---|---|
| **Printing & Noticing Services** | |
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard Email Noticing (Blast Email pricing on request) | No charge |
| Fax Noticing | $0.05 per page |
| Proof of Claim Acknowledgment Card | $0.05 per card |
| Envelopes | Varies by Size |
| **Newspaper and Legal Notice Publishing** | |
| Coordinate and publish legal notices | Available on request |
| **Case Website** | |
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Data Administration and Management** | |
| ***Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.*** | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| **Electronic Data Collection Platform** | |
| Electronic claim filing, ballot submission and complex data collection platform | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2026 Kroll, LLC. All rights reserved. KR21035106

KROLL

# RATES

Quality.
Partnership.
Expertise.
Innovation.

| | |
|---|---|
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Payment issuance (check, wire, ACH, digital) and/or Form 1099 | Available on request |
| W-9 solicitation and maintenance of EIN/TIN database | Standard rates |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2026 Kroll, LLC. All rights reserved. KR21035106

# **Exhibit B**

## Kroll Time Detail

KROLL
RESTRUCTURING ADMINISTRATION

## Hourly Fees by Employee through September 2026

| Initial | Employee Name | Title | Hours | Rate | Total |
|---|---|---|---|---|---|
| ROI | Imani, Roya | DI - Director | 0.80 | $185.00 | $148.00 |
| CJ | Johnson, Craig | DS - Director of Solicitation | 0.30 | $225.00 | $67.50 |
| STK | Kesler, Stanislav | DS - Director of Solicitation | 0.20 | $225.00 | $45.00 |
| | | **TOTAL:** | **1.30** | | **$260.50** |

## Hourly Fees by Task Code through September 2026

| Task Code | Task Code Description | | Hours | Total |
|---|---|---|---|---|
| RETN | Retention / Fee Application | | 0.80 | $148.00 |
| SOLI | Solicitation | | 0.50 | $112.50 |
| | | **TOTAL:** | **1.30** | **$260.50** |

## Time Detail

| Date | Emp | Title | Description | Task | Hours |
|---|---|---|---|---|---|
| 09/22/26 | CJ | DS | Draft and send e-mail to D. Harris (Cole Schotz) re status of upcoming solicitation | Solicitation | 0.10 |
| 09/22/26 | ROI | DI | Draft and review August monthly fee application | Retention / Fee Application | 0.80 |
| 09/28/26 | CJ | DS | Confer with A. Orchowski and S. Kesler (Kroll) re correspondence with D. Harris (Cole Schotz) re upcoming solicitation | Solicitation | 0.10 |
| 09/28/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re correspondence with D. Harris (Cole Schotz) re upcoming solicitation | Solicitation | 0.10 |
| 09/30/26 | CJ | DS | Confer with A. Orchowski and S. Kesler (Kroll) re proposed solicitation procedures and timetable | Solicitation | 0.10 |
| 09/30/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re proposed solicitation procedures and timetable | Solicitation | 0.10 |
| | | | | **Total Hours** | **1.30** |

KROLL
RESTRUCTURING
ADMINISTRATION

## Hourly Fees by Employee through October 2026

| Initial | Employee Name | Title | Hours | Rate | Total |
|---|---|---|---|---|---|
| AQA | Ahmed, Aqeel | SC - Senior Consultant | 0.90 | $175.00 | $157.50 |
| ANAR | Arfine, Anthony | CO - Consultant | 3.60 | $195.00 | $702.00 |
| NIBI | Biagini, Nick | CO - Consultant | 0.60 | $195.00 | $117.00 |
| GAJI | Jimenez, Gabe | CO - Consultant | 4.20 | $195.00 | $819.00 |
| NKOS | Kosinski, Nick | DI - Director | 2.20 | $225.00 | $495.00 |
| PLL | Labissiere, Pierre L | DI - Director | 0.50 | $225.00 | $112.50 |
| CJ | Johnson, Craig | DS - Director of Solicitation | 10.80 | $225.00 | $2,430.00 |
| STK | Kesler, Stanislav | DS - Director of Solicitation | 0.80 | $225.00 | $180.00 |
| ATO | Orchowski, Alex T | DS - Director of Solicitation | 6.60 | $225.00 | $1,485.00 |
| | | **TOTAL:** | **30.20** | | **$6,498.00** |

## Hourly Fees by Task Code through October 2026

| Task Code | Task Code Description | Hours | Total |
|---|---|---|---|
| RETN | Retention / Fee Application | 0.60 | $105.00 |
| SOF2 | Schedules & SOFA | 8.70 | $1,690.50 |
| SOF3 | Schedules & SOFA | 2.70 | $607.50 |
| SOLI | Solicitation | 18.20 | $4,095.00 |
| | **TOTAL:** | **30.20** | **$6,498.00** |

## Time Detail

| Date | Emp | Title | Description | Task | Hours |
|---|---|---|---|---|---|
| 10/01/26 | CJ | DS | Confer with A. Orchowski and S. Kesler (Kroll) re proposed solicitation procedures and timetable | Solicitation | 0.10 |
| 10/01/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re proposed solicitation procedures and timetable | Solicitation | 0.10 |
| 10/02/26 | ANAR | CO | Review and respond to J. Beets (FTI) re Schedule amendments | Schedules & SOFA | 0.40 |
| 10/02/26 | AQA | SC | Confer and correspond with FTI Consulting and schedules team re SOAL amendments | Schedules & SOFA | 0.30 |
| 10/05/26 | ANAR | CO | Prepare and format Schedule Amendments | Schedules & SOFA | 1.20 |
| 10/05/26 | ATO | DS | Confer with C. Johnson and S. Kesler (Kroll) re proposed timetable for upcoming solicitation | Solicitation | 0.10 |
| 10/05/26 | CJ | DS | Confer with A. Orchowski and S. Kesler (Kroll) re proposed timetable for upcoming solicitation | Solicitation | 0.10 |
| 10/05/26 | GAJI | CO | Confer and coordinate with A. Arfine (Kroll) re Schedules amendments | Schedules & SOFA | 1.70 |
| 10/05/26 | GAJI | CO | Update SOALs per incoming amendments | Schedules & SOFA | 2.00 |
| 10/05/26 | NKOS | DI | Quality assurance review of amended Schedules (.2) and confer with A. Arfine (Kroll) regarding same (.1) | Schedules & SOFA | 0.30 |
| 10/05/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re proposed timetable for upcoming solicitation | Solicitation | 0.10 |
| 10/06/26 | ANAR | CO | Prepare and format Schedule Amendments | Schedules & SOFA | 0.30 |
| 10/07/26 | ANAR | CO | Prepare and format SOFA Amendments | Schedules & SOFA | 1.40 |
| 10/07/26 | NKOS | DI | Review of SOFA Q3 and Q4 data received from J Beets (FTI) (1.1) and communications with A. Arfine (Kroll) regarding same (.2) | Schedules & SOFA | 1.30 |
| 10/08/26 | AQA | SC | Confer and correspond with Cole Schotz P.C. re fee application filing | Retention / Fee Application | 0.30 |
| 10/09/26 | ANAR | CO | Review and respond to J. Beets (FTI) re SOFA amendments | Schedules & SOFA | 0.30 |
| 10/09/26 | GAJI | CO | Confer and coordinate with N. Kosinski, A. Arfine, P. Labissiere, N. Biagini, and N. Scully (Kroll) re Schedules and SOFAs | Schedules & SOFA | 0.50 |
| 10/09/26 | NIBI | CO | Confer and coordinate with N. Kosinski, G. Jimenez, P. Labissiere, N. Scully, and N. Biagini (Kroll) re Schedule amendments | Schedules & SOFA | 0.60 |
| 10/09/26 | NKOS | DI | Confer and coordinate with A Arfine, G. Jimenez, P. Labissiere, N. Scully, and N. Biagini (Kroll) re Schedule | Schedules & SOFA | 0.60 |

| | | | | | |
|---|---|---|---|---|---|
| | | | amendments | | |
| 10/09/26 | PLL | DI | Confer and coordinate with N. Kosinski, A. Arfine, G. Jimenez, N. Biagini, and N. Scully (Kroll) re Schedules and SOFAs | Schedules & SOFA | 0.50 |
| 10/12/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re proposed solicitation and tabulation procedures | Solicitation | 0.10 |
| 10/13/26 | ATO | DS | Confer with C. Johnson (Kroll) re proposed solicitation and tabulation procedures pertaining to Israeli notes | Solicitation | 0.20 |
| 10/13/26 | ATO | DS | Confer with C. Johnson and S. Kesler (Kroll) re proposed solicitation and tabulation procedures | Solicitation | 0.10 |
| 10/13/26 | CJ | DS | Confer with A. Orchowski and S. Kesler (Kroll) re proposed solicitation and tabulation procedures | Solicitation | 0.10 |
| 10/13/26 | CJ | DS | Confer with A. Orchowski (Kroll) re proposed solicitation and tabulation procedures pertaining to Israeli notes | Solicitation | 0.20 |
| 10/13/26 | CJ | DS | Correspond with M. Friedman (Chapman & Cutler) re procedures and timetable for soliciting holders of Israeli bonds | Solicitation | 0.40 |
| 10/13/26 | CJ | DS | Research procedures and timetable for soliciting holders of Israeli bonds | Solicitation | 0.90 |
| 10/14/26 | ATO | DS | Confer with C. Johnson and S. Kesler (Kroll) re proposed solicitation and tabulation procedures | Solicitation | 0.10 |
| 10/14/26 | CJ | DS | Confer with A. Orchowski and S. Kesler (Kroll) re proposed solicitation and tabulation procedures | Solicitation | 0.10 |
| 10/14/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re proposed solicitation and tabulation procedures | Solicitation | 0.10 |
| 10/15/26 | AQA | SC | Confer and correspond with Kroll team re fee application | Retention / Fee Application | 0.30 |
| 10/22/26 | CJ | DS | Review, research and revise draft proposed motion to approve disclosure statement, proposed order, solicitation procedures, ballots and solicitation-related notices | Solicitation | 3.20 |
| 10/22/26 | CJ | DS | Correspond with A. Tersigni (Cole Schotz) re proposed solicitation procedures and timetable | Solicitation | 0.30 |
| 10/22/26 | CJ | DS | Correspond with M. Friedman (Chapman) re proposed solicitation and tabulation procedures for series A Israeli bonds | Solicitation | 0.20 |
| 10/22/26 | CJ | DS | Coordinate with A. Orchowski and J. Gache (Kroll) re comments to draft solicitation materials | Solicitation | 0.20 |
| 10/22/26 | CJ | DS | Confer with D. Harris (Cole Schotz) re status of upcoming solicitation | Solicitation | 0.20 |
| 10/23/26 | ATO | DS | Confer with C. Johnson and J. Gache (Kroll) regarding the draft disclosure statement motion | Solicitation | 0.80 |
| 10/23/26 | ATO | DS | Confer with C. Johnson and S. Kesler (Kroll) re proposed revised solicitation and tabulation procedures and timetable | Solicitation | 0.10 |
| 10/23/26 | ATO | DS | Coordinate with C. Johnson and J. Gache (Kroll) re proposed revisions to draft solicitation materials | Solicitation | 0.30 |
| 10/23/26 | ATO | DS | Review and analyze the draft disclosure statement motion | Solicitation | 4.60 |

| | | | | | |
|---|---|---|---|---|---|
| | | | and exhibits in preparation for solicitation | | |
| 10/23/26 | CJ | DS | Correspond with M. Friedman (Chapman) re proposed solicitation and tabulation procedures for series A Israeli bonds | Solicitation | 0.20 |
| 10/23/26 | CJ | DS | Coordinate with A. Orchowski and J. Gache (Kroll) re proposed revisions to draft solicitation materials | Solicitation | 0.30 |
| 10/23/26 | CJ | DS | Confer with A. Orchowski and S. Kesler (Kroll) re proposed revised solicitation and tabulation procedures and timetable | Solicitation | 0.10 |
| 10/23/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re proposed revised solicitation and tabulation procedures and timetable | Solicitation | 0.10 |
| 10/27/26 | ATO | DS | Confer with C. Johnson and S. Kesler (Kroll) re proposed, revised solicitation procedures, timetable and materials | Solicitation | 0.10 |
| 10/27/26 | CJ | DS | Research proposed procedures and precedents to govern convenience class election | Solicitation | 1.10 |
| 10/27/26 | CJ | DS | Confer with A. Orchowski and S. Kesler (Kroll) re proposed, revised solicitation procedures, timetable and materials | Solicitation | 0.10 |
| 10/27/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re proposed, revised solicitation procedures, timetable, and materials | Solicitation | 0.10 |
| 10/28/26 | ATO | DS | Confer with C. Johnson and S. Kesler (Kroll) re proposed solicitation procedures pertaining to convenience class | Solicitation | 0.10 |
| 10/28/26 | CJ | DS | Research proposed procedures and precedents to govern convenience class election | Solicitation | 1.20 |
| 10/28/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re proposed solicitation procedures pertaining to convenience class | Solicitation | 0.10 |
| 10/29/26 | ATO | DS | Confer with C. Johnson and S. Kesler (Kroll) re proposed, revised solicitation procedures, timetable and materials | Solicitation | 0.10 |
| 10/29/26 | CJ | DS | Review proposed solicitation procedures, timetable and materials in preparation for upcoming launch and tabulation | Solicitation | 0.80 |
| 10/29/26 | CJ | DS | Confer with A. Orchowski and S. Kesler (Kroll) re proposed, revised solicitation procedures, timetable and materials | Solicitation | 0.10 |
| 10/29/26 | STK | DS | Confer with A. Orchowski and C. Johnson (Kroll) re proposed, revised solicitation procedures, timetable, and materials | Solicitation | 0.10 |
| 10/30/26 | CJ | DS | Review proposed solicitation procedures, timetable and materials in preparation for upcoming launch and tabulation | Solicitation | 0.90 |
| | | | | **Total Hours** | **30.20** |